**BOIES SCHILLER FLEXNER LLP**
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richadson (CA Bar No. 238027)
brichardson@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

**SUSMAN GODFREY L.L.P.**
William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

**MORGAN & MORGAN**
John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for Plaintiffs; additional counsel listed in signature blocks below*

**WILLKIE FARR & GALLAGHER LLP**
Benedict Y. Hur (SBN: 224018)
bhur@willkie.com
Simona Agnolucci (SBN: 246943)
sagnolucci@willkie.com
Amanda Maya (SBN: 324092)
amaya@willkie.com
Eduardo E. Santacana (SBN: 281668)
esantacana@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400
Facsimile: (415) 858-7599

*Attorneys for Defendant Google LLC*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| ANIBAL RODRIGUEZ and JULIEANNA MUNIZ, ELIZA CAMBAY, SAL CATALDO, EMIR GOENAGA, JULIAN SANTIAGO, HAROLD NYANJOM, KELLIE NYANJOM, and SUSAN LYNN HARVEY, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:20-cv-4688-RS<br>**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

1. **PURPOSE**

   This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

2. **COOPERATION**

   The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. **LIAISON**

   a) The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

   b) Google appoints Jay Mitchell and Amanda Maya as its e-discovery liaison.

   c) Plaintiffs appoint Beko Richardson, Jean Martin, and Amy Gregory as its e-discovery liaisons.

4. **PRESERVATION**

   The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

   a) All ESI created or received after January 1, 2013 will be preserved, and the parties will meet and confer in good faith as to further limitations as provided in Paragraph 4(b). In delineating the scope of preservation herein, the Court does not address the relevance or proportionality or otherwise assess any pending or future requests for production.

   b) On or before January 29, 2021, the parties will meet and confer regarding the types of ESI they believe should be preserved, document retention policies during the relevant time period,

sources of custodial and noncustodial data, and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved (e.g., "Information Security Officer," "Information Security Analyst," "Data Security Analyst," "Software Engineer," "Project Manager," "Program Manager," "Data Insights Analyst," "Data Specialist," and "Marketing Manager"). The parties shall meet and confer in order to add or remove custodians and non-custodial data sources as reasonably necessary.

    c)    The parties will agree on the number of custodians per party for whom ESI will be preserved;

    d)    These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved pursuant to normal business retention, but not searched, reviewed, or produced

        1.    backup systems and/or tapes used for disaster recovery.

    e)    Among the sources of data the parties agree are not reasonably accessible, the parties agree not to preserve, search, or collect the following:

        1.    automatically saved versions of documents and emails, excluding drafts of emails that were not sent;

        2.    deleted, slack, fragmented, or other data accessible only by forensics;

        3.    random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

        4.    temporary internet files, history, and cache; and

        5.    data in metadata fields that are frequently updated automatically, such as last opened dates.

    f)    In addition to the above, the parties will continue to meet and confer to identify data sources that:

        1.    are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) where ESI from these sources will be preserved but not searched, reviewed, or produced; and

       2.       could contain relevant information but under the proportionality factors set forth in Rule 26(b)(1) should not be preserved.

5. **SEARCH**

    a)    The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

    b)    The parties recognize that a variety of search tools and methodologies, including but not limited to technology assisted review ("TAR") tools, exist and should be considered and discussed by the parties.

    c)    Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of file types based on file header information may include: Application Package File, Batch Files, Binary Disc Image, C++ File Formats, Configuration File, Compiled Dynamic Link Library, Event Log Files, Compiled Executable Files, Hypertext Cascading Stylesheet, Macintosh Resource Fork Files, Package Manager Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File as well as backup files containing only the file types above specified. Source code files will be provided according to the Protective Order. To the extent the custodial productions include source code, such source code will be provided according to the source code provisions of the Protective Order.

    d)    The parties agree that they will discuss and strive to agree upon appropriate data sources and custodians each party believes will possess responsive information, and propose search terms (if appropriate). In the event that the producing party proposes to use search terms, it will identify the terms to be utilized; those terms will be subject to negotiation.

e) A party is required to produce only a single copy of a responsive document, and a party may de-duplicate responsive ESI across Custodians. However, if a document is de-duplicated, (1) all family relationships must be maintained, (2) families shall be deduplicated only against families, (3) standalone documents shall not be deduplicated against documents in families, and (4) the producing party must identify each custodian or source where the document was located, as well as the "All Custodians" field of the produced document. Emails in an email thread that are collected and de-duped shall be produced individually as separate documents. The parties agree that email threading may be employed for production of email threads with redactions. The parties retain the right to request production of earlier-in-thread versions of any last-in-thread, redacted documents that are produced.

f) If applicable, no provision of this Order affects the inspection or production of source code which will be collected and made available consistent with the Protective Order governing this case.

**6. PRODUCTION FORMATS**

The parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

**7. PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI, if appropriate, by prioritizing selected sources and/or custodians.

Phasing of production of ESI shall not be used to delay or frustrate discovery in this case. If phasing of production is likely to cause a delay or frustration of discovery the parties shall confer in good faith to modify phasing to expedite discovery.

**8. DOCUMENTS PROTECTED FROM DISCOVERY**

a) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. Disclosures among

defendants' attorneys of work product or other communications relating to issues of common interest shall not affect or be deemed a waiver of any applicable privilege or protection from disclosure. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding. A producing party may assert privilege or protection over produced documents at any time by notifying the receiving party in writing of the assertion of privilege or protection. Information that contains privileged matter or attorney work product shall be returned immediately if such information appears on its face to have been inadvertently produced or if requested.

     b)    Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

     c)    Activities undertaken in compliance with the duty to preserve information are protected from discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

     d)    Nothing in this Agreement shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Redactions based on relevance are disallowed as matter of course, but the parties may nonetheless identify documents that they believe should be redacted before productions, triggering an expedited duty to meet and confer. If no agreement can be reached, the party seeking the redaction may seek a protective order in the ordinary course. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

## 9. **MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order re: Discovery of Electronically Stored Information for Standard Litigation," and each modified Stipulated Order will supersede the previous Stipulated Order.

**10.     MISCELLANEOUS PROVISIONS**

a)     Any practice or procedure set forth herein may be varied by agreement of the Parties, and first will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data or other covered discovery materials.

b)     Should any Party subsequently determine in good faith that it cannot proceed as required by this order or that the order requires modification, the Parties will meet and confer to resolve any dispute before seeking Court intervention.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

DATED: January 20, 2021                    **WILLKIE FARR & GALLAGHER LLP**

By     */s/ Eduardo E. Santacana*
Benedict Y. Hur (SBN: 224018)
bhur@willkie.com
Simona Agnolucci (SBN: 246943)
sagnolucci@willkie.com
Amanda Maya (SBN: 324092)
amaya@willkie.com
Eduardo E. Santacana (SBN: 281668)
esantacana@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400
Facsimile: (415) 858-7599

| | | |
|---|---|---|
| DATED: January 20, 2021 | | SUSMAN GODFREY L.L.P. |
| | By | */s/ Amanda K. Bonn* |
| | | Amanda K. Bonn |

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
Alexander Justin Konik (CA Bar No. 299291)
akonik@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

Jesse Panuccio (*pro hac vice*)
jpanuccio@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Tel.: (202) 237-2727
Fax: (202) 237-6131

William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330

1 | Amanda Bonn (CA Bar No. 270891)
2 | abonn@susmangodfrey.com
  | SUSMAN GODFREY L.L.P.
3 | 1900 Avenue of the Stars, Suite 1400
  | Los Angeles, CA 90067
4 | Telephone: (310) 789-3100

5 | John A. Yanchunis (*pro hac vice*)
  | jyanchunis@forthepeople.com
6 | Ryan J. McGee (*pro hac vice*)
  | rmcgee@forthepeople.com
7 | MORGAN & MORGAN, P.A.
  | 201 N Franklin Street, 7th Floor
8 | Tampa, FL 33602
9 | Telephone: (813) 223-5505
  | Facsimile: (813) 222-4736
10
11 | *Attorney for Plaintiffs*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Amanda Bonn, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of January, 2021, at Los Angeles, California.

                                        */s/ Amanda Bonn*
                                        Amanda Bonn

1  PURSUANT TO STIPULATION, **IT IS SO ORDERED**.

3  DATED: January 20, 2021

                                              Honorable Richard Seeborg
                                              United States District Judge

# APPENDIX 1
# PRODUCTION FORMAT AND METADATA

1. **Production Components.** Productions shall include, single page TIFFs, Text Files, an ASCII delimited metadata file (.txt, .dat, or .csv) and an image load file that can be loaded into commercially acceptable production software (e.g., Concordance).

2. **Image Load File** shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

3. **Metadata Fields and Metadata File.** Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. The metadata file shall be delimited according to the following characters:
   - Delimiter = ¶ (ASCII:020)
   - Text-Qualifier = þ (ASCII:254)
   - New Line = ® (ASCII:174)
   - Multi-value delimiter - ; (ASCII Code 059)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| SUBJECT | Subject line of email |
| TITLE | Title from properties of document |
| DATESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM:SS (UTC time zone)) |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |

| BCC | All recipients that were included on the "BCC" line of the email |
|---|---|
| OWNER | Any value populated in the Owner field of the document properties |
| AUTHOR | Creator of a document |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| DATEMOD | Date an electronic document was last modified or created (format: MM/DD/YYYY HH:MM:SS (UTC time zone)) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY HH:MM:SS (UTC time zone)) (Edoc or attachment) |
| NATIVELINK | Native File Link (Native Files only) |
| TEXTLINK | Link to text files |
| ATTACHMENT NAME | |
| MD5 | MD5 hash value |
| ALL CUSTODIANS | Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian), with multiple values separated by semi-colons |
| PRODVAL | Production volume that the document was produced in |
| REDACTED | Y/N |
| CONFIDENTIALITY | Confidential level assigned pursuant to applicable protective order or stipulation |

4. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the hard copy documents. TIFFs of ESI that contain comments, suggested edits, and speaker notes (collectively, "Revisions") at the time of ESI collection will make such Revisions visible in the image.

5. **Text Files.** A single multi-page text file shall be provided for each document, and the

filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR", set for its highest quality setting, shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. All documents shall be produced with a link in the TextLink field.

6. **Image Load Files / Data Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

7. **Bates Numbering.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

8. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

9. **Redaction Of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

10. **Native Files.** Spreadsheets (e.g., MS Excel, Google Sheets), media (audio/video) files, and delimited text files (e.g. comma-separated value (.csv) files and tab-separated value (.tsv) files) shall be produced in their native format or, for Google Sheets, MS Excel, along with a single page TIFF placeholder with the Bates number, and the text "Produced in Native Format". TIFF images of the native files themselves need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Appendix 1. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

11. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.

12. **Production Media.** Documents shall be encrypted and produced on external hard drives, readily accessible computer(s) or other electronic media ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). Each piece of Production Media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) the set(s) of requests for production for which the documents are being produced.

13. **Color**. The parties agree to produce Documents in black and white. A party may request that certain documents be re-produced in color, which the producing party will consider in good faith.

14. **Less Commonly Used File Types.** The Parties will meet and confer on the production format of less-commonly used file types, such as CAD, GIS data, materials and prototypes testing, etc.

15. **Emails**. Produced TIFF images of emails that are last-in-thread shall include all header information that would be visible if the email was viewed in Gmail including: (1) the individuals to whom the communication was directed ("To"), (2) the sender of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the file name of any attachments. Produced TIFF images of last-in-thread emails may also include earlier-in-thread emails in the same TIFF image. In that event, the TIFF image will include at least the sender and the date and time of the earlier-in-thread emails.