| | |
|---|---|
| **BOIES SCHILLER FLEXNER LLP**<br>Mark C. Mao (CA Bar No. 236165)<br>mmao@bsfllp.com<br>Beko Reblitz-Richardson (CA Bar No. 238027)<br>brichardson@bsfllp.com<br>44 Montgomery Street, 41st Floor<br>San Francisco, CA 94104<br>Telephone: (415) 293 6858<br>Facsimile: (415) 999 9695<br><br>**SUSMAN GODFREY L.L.P.**<br>William Christopher Carmody (*pro hac vice*)<br>bcarmody@susmangodfrey.com<br>Shawn J. Rabin (*pro hac vice*)<br>srabin@susmangodfrey.com<br>1301 Avenue of the Americas, 32nd Floor<br>New York, NY 10019<br>Telephone: (212) 336-8330<br><br>**MORGAN & MORGAN**<br>John A. Yanchunis (*pro hac vice*)<br>jyanchunis@forthepeople.com<br>Ryan J. McGee (*pro hac vice*)<br>rmcgee@forthepeople.com<br>201 N. Franklin Street, 7th Floor<br>Tampa, FL 33602<br>Telephone: (813) 223-5505<br><br>*Attorneys for Plaintiffs; additional counsel listed in signature blocks below* | **WILLKIE FARR & GALLAGHER LLP**<br>Benedict Y. Hur (SBN: 224018)<br>bhur@willkie.com<br>Simona Agnolucci (SBN: 246943)<br>sagnolucci@willkie.com<br>Eduardo E. Santacana (SBN: 281668)<br>esantacana@willkie.com<br>Lori Arakaki (SBN: 315119)<br>larakaki@willkie.com<br>Amanda Maya (SBN: 324092)<br>amaya@willkie.com<br>One Front Street, 34th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 858-7400<br>Facsimile: (415) 858-7599<br><br>*Attorneys for Defendant Google LLC* |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANIBAL RODRIGUEZ, JULIEANNA MUNIZ, ELIZA CAMBAY, SAL CATALDO, EMIR GOENAGA, JULIAN SANTIAGO, HAROLD NYANJOM, KELLIE NYANJOM, and SUSAN LYNN HARVEY, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:20-cv-4688-RS<br><br>**JOINT LETTER BRIEF RE: DISCOVERY DISPUTE CONCERNING PLAINTIFFS' DOCUMENT REQUESTS, SET NO. ONE, REQUESTS NOS. 1 & 2**<br><br>Judge: Hon. Richard Seeborg<br>Action Filed: July 14, 2020<br>Trial Date: Not Set<br>Place: Courtroom 3 – 17th Floor |

CASE NO. 3:20-cv-4688-RS
JOINT LETTER BRIEF RE: DISCOVERY DISPUTE — PLAINTIFFS' RFPS 1 AND 2

Plaintiffs and Google LLC ("Google") submit this joint letter brief regarding Plaintiffs' Document Requests, Set One, Request Nos. 1 & 2. Counsel for the parties met and conferred and reached an impasse on these requests. Ex. A includes Plaintiff's requests, and Ex. B includes Google's responses.

## PLAINTIFFS' STATEMENT

### 1. PLAINTIFFS SEEK RELEVANT DOCUMENTS

This case concerns Google's privacy practices, including with (1) Google's Firebase Software Development Kit ("Firebase"), a set of Google tools that allow Google to embed its code into third-party apps (e.g., the New York Times app for the iPhone) to collect user data, and (2) Google's Web & App Activity ("WAA"), one of Google's so-called privacy tools through which Google purports to enable consumers to stop Google's data collection by turning WAA off.

Google promises consumers – and regulators – that consumers have the power to control Google's data collection, using controls offered by Google, but Google then collects data in circumvention of those very controls. Dkt. 60 ("FAC") ¶¶ 1-11. Google uses Firebase to surreptitiously and without consent collect data while users have WAA turned off, violating the Wiretap Act, the California Invasion of Privacy Act, the Comprehensive Computer Data Access and Fraud Act, and California's Unfair Competition Law, and also intruding upon Plaintiffs' seclusion and their right to privacy under the California Constitution. FAC ¶¶ 235-314.

Given Google's promises to regulators regarding consumers' ability to stop Google's data collection, and the existence of certain regulator investigations focusing on Google's privacy practices, Plaintiffs served two document requests seeking, back to January 1, 2014, (1) documents Google has already provided to regulators concerning Firebase and Google's collection, interception, tracking, or use of user data, including through or with Google Analytics (a reporting service that Google provides to apps with the data Google collects from Firebase) (Ex. A Request 1) and (2) written requests Google has received from any regulator concerning Google's privacy practices or Firebase (Ex. A Request 2).

The requested documents are relevant as follows:

*First*, the requested documents are relevant to Plaintiffs' claims and Google's defenses. Plaintiffs' requests focus on key factual issues in this case – Firebase and Google's privacy practices – and reasonably seek such documents related to these issues from Google's prior productions to regulators and regulator requests. For example, if Google produced documents evidencing the lack of consent to Google's data collection with Firebase, in response to a regulator request regarding Firebase, then these requests seek such documents.

*Second*, the requested documents are relevant to Plaintiffs' contention that Google has violated the 2011 FTC consent decree and the FTC Act. FAC ¶ 307. As a basis for their claims under the Wiretap Act and the UCL, Plaintiffs contend that Google has violated the FTC consent decree and the FTC Act. FAC ¶¶ 195-97, 307. The requested documents, as limited to Firebase and Google's privacy practices, are relevant to those claims.

*Third*, the requested documents are relevant in terms of assessing the truthfulness of Google's assertions in this action. For example, in its motion to dismiss, Google represents that it has consent to collect user data even when WAA is turned off. Dkt. 62. Yet Google has asserted to regulators that users are in control. For example, in September 2020, a Google executive stated during a Senate hearing that users "have control" and that Google "[u]sers own their data" and are "able to make a decision on how they control their data." FAC ¶ 101. As detailed in the FAC, Google CEO Sundar Pichai has also repeatedly emphasized users' ability to control Google's data

collection. FAC ¶¶ 79, 90, 91, 99, 100. The requested documents are relevant in terms of assessing the truthfulness of these varying Google representations, including to regulators, regarding users' control over their data.

In addition to being highly relevant, the requested documents may help the parties streamline and avoid duplicative discovery in this action. To the extent there have already been regulator requests to Google and Google productions concerning the factual issues in this case, focusing on Firebase and Google's privacy practices, then producing those documents (in response to these requests) should help the parties navigate and streamline discovery here. It could avoid the need for duplicative discovery and also inform the parties' negotiations regarding custodians, search terms, and other discovery issues.

## 2. GOOGLE'S IMPROPER REFUSAL TO PRODUCE THESE DOCUMENTS

Google has refused to produce <u>any</u> documents responsive to these two requests. Ex. B at 8:1-2 & 9:10-11. Google's main objection is undue burden. *See* Ex B 6:20-8:2 (Request 1 objections iii, iv, vii) & 8:6-9:11 Request 2 objections iii, iv, vi). Google also raises other objections, including that the requests are not limited to seeking documents that "relate to the operative allegations in this Action." Ex. B at 7:16-17 & 8:25-26.

Google's objections are meritless and insufficient to support its burden in terms of withholding these documents. Google has not even stated the extent to which responsive documents exist, let alone established any undue burden in producing the requested documents. Plaintiffs seek a discrete set of documents (productions to or written requests from regulators) limited by time period (since January 1, 2014) and subject matter (Firebase and Google's privacy practices). It should be straightforward for Google to identify responsive documents, such as searching for "Firebase" or "Analytics" or "user data" in the productions and requests.

Given that Plaintiffs are seeking a subset of documents Google has already vetted, reviewed, and produced, this subset of documents would not require much additional effort or expense to produce compared to productions done from scratch. To the extent Google has concerns regarding the burden of re-reviewing documents, Google is free to turn over documents given to regulators and requests from regulators without further review, as such documents will necessarily already have been reviewed for applicable privileges. Plaintiffs also have no objection to Google re-asserting any previously-asserted confidentiality designations.

Nor are Plaintiffs requests particularly novel. In *Jones v. Deutsche Bank AG*, No. 5:04-CV-5357 JW (RS), 2005 WL 8177848, at *4 (N.D. Cal. Nov. 17, 2005) (Seeborg, J.), this Court ordered the defendant to produce documents previously produced "to any government agency" that "refer or relate to the CARDS Facility." Plaintiffs seek documents Google previously produced to regulators that refer or relate to Firebase or Google's user-data practices. This also would not be the first time Google has produced documents from other matters. *See Google, Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. 03-CV-5340 JF (RS), 2006 WL 5349265, at *1 (N.D. Cal. Feb. 8, 2006) (Seeborg, J.) (Google produced documents from other litigation "since it posed no burden to Google to provide copies of the *Geico* documents to American").

The importance of the documents subject to Plaintiffs' requests plainly outweighs any purported burden. Production of the requested documents is especially important given Google's pending motion to dismiss, where Google asserts that consumers are powerless to stop Google's collection of data using Firebase. Google executives have proclaimed that users are in control (*e.g.*, FAC ¶¶ 79, 90, 91, 99-101), and Plaintiffs believe that Google made similar representations to regulators. With its motion to dismiss, Google assert that users have consented to Google's data collection regardless of whether those users turn off Web & App Activity, and that the

controls Google offers with "My Account" have no impact whatsoever on Google's data collection using Firebase. Plaintiffs reasonably seek these regulator documents to demonstrate how Google's position in this litigation is contrary to the position Google has otherwise taken.

Plaintiffs do not, as Google argues below, seek a "document dump from Google's productions to regulators anywhere in the world dealing with privacy issues." Request 2 does not even ask for documents produced in other matters, and Request 1 is tailored to Firebase and Google's collection, interception, and use of user data. The cases Google cites are distinguishable for these (and other) reasons. Google's reliance on *In re eBay* is particularly misplaced. There, the court explained that the producing party should be the one to search for and identify responsive documents. 2010 WL 2836815, at *3. Here, Plaintiffs seek relevant documents from those prior productions.

## GOOGLE'S STATEMENT[1]

Plaintiffs' requests seek to circumvent the strictures of civil discovery. Plaintiffs accuse Google of violating the privacy of people who use third-party apps that have incorporated a Google product called Firebase SDK. Google Analytics for Firebase allows app developers to analyze how their users interact with their apps (whether or not they're Google users). The app developers know they're sending Google the data for analysis: they asked Google to do it. And Google requires app developers to obtain user consent for that analysis, and they in fact do that.

Plaintiffs don't allege there's anything wrong with this. They target a Google account setting called WAA that lets users save to their accounts information about their activity on Google services. Plaintiffs' case is based on the argument that their consent is rendered ineffective when a third-party app user who is also a Google user turns WAA off. That theory is baseless and Google has filed a Motion to Dismiss set to be heard on March 4, 2021.

Plaintiffs' RFPs 1 and 2 seek a document dump from Google's productions to regulators anywhere in the world dealing with privacy issues; RFP 3, which Plaintiffs chose to address in a separate letter brief, seeks all documents from ongoing litigation between Google and the Arizona Attorney General. Plaintiffs' counsel made the barest of efforts to tailor the RFPs to this case.

---

[1] This Court requires the parties to present their first discovery dispute in "a joint letter of not more than 5 pages explaining the dispute" so a to-be-assigned Magistrate Judge can "advise the parties of how that Judge intends to proceed." Dkt. 59 at 2. Google informed Plaintiffs that (1) Local Rule 3-4(c)(2) requires double-spacing, (2) Plaintiffs' section far exceeds the 5-page limit, and (3) Plaintiffs violated the page limit further by serving *two* discovery letters on just three RFPs. Plaintiffs responded that they've seen single-spaced letters before (in cases where a Magistrate Judge was assigned with her/his own procedures), and that they would proceed to file their statement regardless. In an abundance of caution, Google's statement is double-spaced.

Their brief argues that once a plaintiff has accused Google of *any* privacy violation, *everything* related to data privacy is relevant and discoverable. That's wrong.

RFP No. 1 seeks all documents Google has produced to a regulator relating to Firebase and user data. Google hasn't identified any production it has made in a regulatory investigation that was *focused* on Firebase and user data, and Plaintiffs have never identified one. But Google complies with requests from worldwide regulators, and to determine whether a document relating to Firebase and user data was provided to any given regulator would require an enormous burden; Google would have to collect each request, search them all, and review them. But "compelling a responding party to do duplicate searches—one for responsive documents in their custody and control and one for all documents in their custody and control that were previously produced in other litigation—is definitionally unduly burdensome." *Goro v. Flowers Foods, Inc.*, at *18 (S.D. Cal. Nov. 22, 2019). "If relevant and proportional documents exist in the custody or control of [Google], the appropriate thing to do is to request those documents." *Id.*; *see also In re eBay Seller Antitrust Litig.*, 2010 WL 2836815, at *3 (N.D. Cal. July 19, 2010) (discussing needle-in-haystack nature of requests for relevant documents in productions from other cases).

RFP 2 is no better. It seeks every written request a regulator has given to Google concerning "Google's privacy practices." This is a case about a *particular* Google practice, not *any* Google privacy practice. The request is fatally overbroad. What's more, Plaintiffs have never explained the utility of a written request from a regulator, anyway—certainly, such a request cannot tend to prove or disprove a relevant fact in this case.

Plaintiffs' first two RFPs are a shortcut, aimed not at documents related to the case, but at collections of documents compiled for other investigations on other subjects. The Court should require Plaintiffs to rely on RFPs tailored to the claims and defenses of *this* case. Indeed, Plaintiffs have no trouble writing RFPs—they've propounded 103 of them. That should be enough; Plaintiffs don't also need free rein to rummage through unrelated investigations.

This is not just common sense. It's the law. A document request "must describe with reasonable particularity each item or category of items to be inspected," and it must be relevant to the claims or defenses in the case. Fed. R. Civ. P. 26(b)(1); 34(b)(1)(A). A request for "a *carte*

*blanche* production of all documents" that were produced in another case doesn't meet these criteria. *Chen v. Ampco Sys. Parking*, 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009). And it's worse where the other proceeding is a government investigation, because some regulators have discovery powers that exceed the permissible scope of civil discovery. As courts have held repeatedly, even if documents "produced in the government investigations" are relevant, Plaintiffs' must "make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them." *King Cty. v. Merrill Lynch & Co.*, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011). To hold otherwise "would expand the scope of discovery beyond that allowed by the Federal Rules." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 4680242, at *1 (N.D. Cal. Oct. 18, 2017).

      Plaintiffs' three relevance arguments speculate about what these document dumps might contain, and they all suffer from the same problem: they miss that whatever documents Google may have produced to a regulator that are truly relevant to *this* action will be produced in *this* case pursuant to the parties' discovery negotiations and legitimate RFPs. As for Plaintiffs' argument that this will streamline discovery, they are not the first to make that argument. But while it may be more efficient for them, it is costly and prejudicial to Google. *See In re Volkswagen*, at *1 (rejecting similar argument).

      Finally, *Jones v. Deutsche Bank* is way off the mark. Deutsche Bank identified the materials relating to a *specific* investment vehicle in relation to the plaintiff's claims that the investment injured him. That kind of search, expected to yield few documents, is nothing like the unbounded search Plaintiffs request here.

| | | |
|---|---|---|
| 1 | DATED: January 26, 2021 | By: */s/ Amanda Bonn* |
| 2 | | |
| 3 | | SUSMAN GODFREY L.L.P. |
| | | Amanda Bonn (CA Bar No. 270891) |
| 4 | | abonn@susmangodfrey.com |
| | | 1900 Avenue of the Stars, Suite 1400 |
| 5 | | Los Angeles, CA 90067 |
| 6 | | Telephone: (310) 789-3100 |
| 7 | | BOIES SCHILLER FLEXNER LLP |
| | | Mark C. Mao (CA Bar No. 236165) |
| 8 | | mmao@bsfllp.com |
| | | Beko Reblitz-Richardson (CA Bar No. 238027) |
| 9 | | brichardson@bsfllp.com |
| 10 | | Alexander Justin Konik (CA Bar No. 299291) |
| | | akonik@bsfllp.com |
| 11 | | 44 Montgomery Street, 41st Floor |
| | | San Francisco, CA 94104 |
| 12 | | Telephone: (415) 293 6858 |
| | | Facsimile (415) 999 9695 |
| 13 | | |
| 14 | | James W. Lee (pro hac vice) |
| | | jlee@bsfllp.com |
| 15 | | Rossana Baeza (pro hac vice) |
| | | rbaeza@bsfllp.com |
| 16 | | 100 SE 2nd Street, Suite 2800 |
| 17 | | Miami, FL 33130 |
| | | Telephone: (305) 539-8400 |
| 18 | | Facsimile: (305) 539-1304 |
| 19 | | Jesse Panuccio (pro hac vice) |
| | | jpanuccio@bsfllp.com |
| 20 | | 1401 New York Ave, NW |
| | | Washington, DC 20005 |
| 21 | | Telephone: (202) 237-2727 |
| 22 | | Facsimile:  (202) 237-6131 |
| 23 | | |
| | | SUSMAN GODFREY L.L.P. |
| 24 | | William Christopher Carmody (pro hac vice) |
| | | bcarmody@susmangodfrey.com |
| 25 | | Shawn J. Rabin (pro hac vice) |
| | | srabin@susmangodfrey.com |
| 26 | | Steven Shepard (pro hac vice) |
| 27 | | sshepard@susmangodfrey.com |
| | | 1301 Avenue of the Americas, 32nd Floor |
| 28 | | New York, NY  10019 |

JOINT LETTER BRIEF RE: DISCOVERY DISPUTE — PLAINTIFFS' RFPS 1 AND 2

|   |   |   |
|---|---|---|
| | | Telephone: (212) 336-8330 |
| | | MORGAN & MORGAN |
| | | John A. Yanchunis (pro hac vice) |
| | | jyanchunis@forthepeople.com |
| | | Ryan J. McGee (pro hac vice) |
| | | rmcgee@forthepeople.com |
| | | Ra Olusegun Amen (pro hac vice) |
| | | ramen@forthepeople.com |
| | | 201 N. Franklin Street, 7th Floor |
| | | Tampa, FL 33602 |
| | | Telephone: (813) 223-5505 |
| | | *Attorneys for Plaintiffs* |

DATED: January 26, 2021        WILLKIE FARR & GALLAGHER, LLP

By: */s/ Eduardo E. Santacana*
    Eduardo E. Santacana (SBN: 281668)
    esantacana@willkie.com
    Benedict Y. Hur (SBN: 224018)
    bhur@willkie.com
    Simona Agnolucci (SBN: 246943)
    sagnolucci@willkie.com
    Lori Arakaki (SBN: 315119)
    larakaki@willkie.com
    Amanda Maya (SBN: 324092)
    amaya@willkie.com
    One Front Street, 34th Floor
    San Francisco, CA  94111
    Telephone:  (415) 858-7400
    Facsimile:  (415) 858-7599

*Attorneys for Defendant Google LLC*

**ATTESTATION**

I, Amanda Bonn, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED:  January 26, 2021                                By:   */s/ Amanda Bonn*
                                                               Amanda Bonn