**BOIES SCHILLER FLEXNER LLP**
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

**SUSMAN GODFREY L.L.P.**
William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330

**MORGAN & MORGAN**
John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for Plaintiffs; additional counsel listed in signature blocks below*

**WILLKIE FARR & GALLAGHER LLP**
Benedict Y. Hur (SBN: 224018)
bhur@willkie.com
Simona Agnolucci (SBN: 246943)
sagnolucci@willkie.com
Eduardo E. Santacana (SBN: 281668)
esantacana@willkie.com
Lori Arakaki (SBN: 315119)
larakaki@willkie.com
Amanda Maya (SBN: 324092)
amaya@willkie.com
One Front Street, 34th Floor
San Francisco, CA  94111
Telephone: (415) 858-7400
Facsimile: (415) 858-7599

*Attorneys for Defendant Google LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANIBAL RODRIGUEZ, JULIEANNA MUNIZ, ELIZA CAMBAY, SAL CATALDO, EMIR GOENAGA, JULIAN SANTIAGO, HAROLD NYANJOM, KELLIE NYANJOM, and SUSAN LYNN HARVEY, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:20-cv-4688-RS<br><br>**JOINT LETTER BRIEF RE: DISCOVERY DISPUTE CONCERNING PLAINTIFFS' DOCUMENT REQUEST, SET TWO REQUEST NO. 3**<br><br>Judge: Hon. Richard Seeborg<br>Action Filed: July 14, 2020<br>Trial Date: Not Set<br>Place: Courtroom 3 – 17th Floor |

Plaintiffs and Google LLC ("Google") submit this joint letter brief regarding Plaintiffs' Document Request, Set Two, Request No. 3. Counsel for the parties met and conferred and reached an impasse on this request. Ex. A includes Plaintiff's request, Ex. B includes Google's response, and Ex. C includes portions of four documents produced by Google in a different action (with Google's redactions.)

## PLAINTIFFS' STATEMENT

**1.   PLAINTIFFS SEEK RELEVANT DOCUMENTS**

Plaintiffs allege that Google surreptitiously and without consent collects user data while users have Google's Web & App Activity ("WAA") turned off. Google promised users that turning off WAA would prevent Google from collecting the data Google typically collects, but those Google promises were just a ruse. Dkt. 60 ("FAC") ¶¶ 1-11, 59-84, 235-314. Google's unauthorized collection of data from users who turned off WAA violates the Wiretap Act, the California Invasion of Privacy Act, the Comprehensive Computer Data Access and Fraud Act, and California's Unfair Competition Law, and also intrudes upon Plaintiffs' seclusion and their right to privacy under the California Constitution. FAC ¶¶ 235-314.

The FAC describes four documents concerning Google's WAA functionality that Google produced in an action brought against Google by the Arizona Attorney General. FAC ¶¶ 77–78. Because these documents bear on the accuracy of Google's data collection disclosures concerning the WAA feature, Plaintiffs served Request No. 3, seeking production of unredacted copies of the filings and all discovery from the Arizona action. Ex. A. The documents from the Arizona action that Plaintiffs highlight in the FAC contain numerous references to WAA and users' consent (or lack thereof) to Google's data collection process. Ex. C includes portions of these four documents, each heavily redacted by Google (emphasis added):

- On February 2, 2017, one Google employee (name redacted by Google) referenced "work in progress" at Google "trying to rein in the <u>overall mess</u> that we have with regards to data collection, <u>consent</u>, and storage." This was in response to a Google employee (name redacted by Google) asking whether "users with significant privacy concerns understand what data we are saving?" Another Google employee (name redacted by Google) stated this was "<u>super messy</u>" and users needed to "make sense out of this mess."

- On August 13, 2018, one Google employee (name redacted by Google) referenced "Web/App Activity" and commented that the "current UI [user interface] feels like it is designed to make things possible, yet <u>difficult enough that people won't figure it out</u>." The Google employee also noted that selections were "defaulted to on, silently appearing in setting menus you may never see is <redacted>."

- On August 14, 2018, one Google employee (name redacted by Google) referenced Web & App Activity, stating "I did not know Web and App activity had anything to do with location. And seems like we are not good at explaining this to users." Another Google employee (name redacted by Google) added: "<u>Definitely confusing from a user point of view</u> if we need googlers [to] explain it to us[.]"

- One heavily redacted 2017 Google presentation concerns a study that specifically focused on "Consent" and asked, "<u>Do users comprehend what will happen if they turn on the Web & App activity setting</u> . . . ." The presentation includes a lengthy, but mostly redacted, section of "Detailed findings."

## 2. GOOGLE'S IMPROPER REFUSAL TO PRODUCE THESE DOCUMENTS

Google has refused to produce any documents responsive to this request. Ex. B at 7:18-19. Google's primary objections are relevance and burden. *Id.* at 6:21-7:17. Google's counsel in this action also represents Google in the Arizona action. Google's counsel first asserted that there is "absolutely no connection" between this action and the Arizona action. Counsel later conceded that there is some overlap, as both actions involve WAA, but claimed that the cases are distinct and that the documents cited in the FAC reflect "irrelevant" Google employee "musings."

Google's objections are meritless and insufficient to support its burden in terms of withholding these documents. This is a discrete set of documents, including the filings and documents already produced by Google, in an action that also concerns Google's data-collection practices and WAA. There is no undue burden in Google now providing those documents to Plaintiffs, and the fact that these documents were separately produced by Google in the Arizona action is not a basis to object to their production in this action. *E.g.*, *Jones v. Deutsche Bank AG*, No. 5:04-CV-5357 JW (RS), 2005 WL 8177848, at *4 (N.D. Cal. Nov. 17, 2005) (Seeborg, J.) (ordering defendant to produce documents previously produced "to any government agency" that "refer or relate to the CARDS Facility").

Unable to dispute that both cases involve Google's data-collection practices and Google's WAA controls, Google now also opposes production on the basis that the Arizona action concerns "what Google does when WAA is turned on" while Plaintiff's claims concern "what Google does when WAA is turned off." This argument contradicts the position that Google takes in the motion to dismiss, where Google relies on disclosures purporting to explain what happens when WAA is turned on. Dkt. 62 at 7. In any event, this on/off distinction provides no basis for Google to withhold these documents. Needless to say, documents describing what happens when WAA is turned on may bear on what happens (or does not happen) when WAA is turned off. Plaintiffs are entitled to discovery tied to their factual allegations, which focus on WAA. WAA is the proper subject for discovery, regardless of whether it is turned on or off.

Indeed, Plaintiffs' contention is that the on/off functionality is a ruse because – contrary to the representation Google has otherwise made regarding WAA – Google is always tracking consumers, regardless of whether they turn WAA on or off. Google may not "unilaterally" make "factual and legal determination[s]" and "refuse to produce documents on that basis …." *Jones v. Deutsche Bank AG*, No. C 04 5357 JW (RS), 2006 WL 648369, at *3 (N.D. Cal. Mar. 10, 2006) (Seeborg, J.) (ordering production). Google's own initial disclosures reference WAA without any on/off distinction, and there is no basis for Google to now reverse course and seek to withhold documents from Plaintiffs based on this distinction. As for Google's argument that the documents cited in the FAC only reflect "irrelevant" Google employee "musings," it is impossible to assess because Google has redacted the names of all the employees such that it is impossible to tell their job function or importance.

Google's objections are particularly meritless given its pending motion to dismiss, which asserts as a defense the doctrine of consent. Dkt. 62. Google contends that users and apps consented to Google's data collection while WAA is turned off. *E.g.*, *id.* at 1-2. Google at the same time seeks to withhold documents concerning consent, including admissions by Google employees that "people won't figure it out," that WAA is "confusing," and that users may not "comprehend what will happen if they turn on the Web & App activity." In short, Google employees have admitted to an "overall mess" with respect to "consent" and WAA. Google should not be permitted to make such assertions to the Court regarding the existence of consent while at the same time withholding discovery regarding that issue of consent.

Plaintiffs are also hopeful that these documents can streamline discovery in this case. For example, in its discovery submissions in the Arizona action, Google identified its "person most knowledgeable about Web & App Activity" but redacted that person's name. It appears that Google had just 13 document custodians in the Arizona action, including Google's person most knowledgeable about WAA. Given the focus on WAA in the Arizona action, and the representations made by Google, it is reasonable to seek that discovery, which may streamline and avoid duplicative discovery here. Plaintiffs should not be required to simply take Google at its word that these and other documents produced in the Arizona action are somehow irrelevant.

The cases Google cites below are inapposite. For example, *Chen* turned on FLSA limits to discovery prior to class certification. *See* 2009 WL 2496729, at *1 ("As stated in the Court's previous order denying Plaintiff's motion to compel further discovery regarding his Rule 30(b)(6) deposition notices, while 'some limited discovery is appropriate prior to certification [in an FLSA action] unlimited discovery is not warranted.'" (alteration in original)). *In re eBay* addressed a request for documents from another action in which there was "little or no overlap of issues." 2010 WL 2836815, at *3. The propounding party in *In re eBay* was claiming usury law violations yet sought discovery produced by the defendant in an antitrust case. *Id.* Similarly, the plaintiffs in *In re Volkswagen* were shareholders alleging violations of the securities laws, yet they sought all discovery produced by the defendant in an MDL brought by a class of consumers. 2017 WL 4680242, at *1.

## GOOGLE'S STATEMENT[1]

Plaintiffs' RFP No. 3 is irrelevant and overbroad. It seeks "[u]nredacted copies of the filings (including exhibits and attachments) and all discovery from *State of Arizona ex rel. Mark Brnovich, Attorney General v. Google LLC*, No. CV 2020-006219 (Ariz. Super. Ct. 2020). From 30,000 feet, the Arizona case and this case resemble each other, in that they both concern allegations of privacy violations. But the resemblance ends there. That case at heart addresses location-related data and concerns numerous settings and features, including: Location Master, Google Location Accuracy, Usage and Diagnostics, WiFi Scanning, Bluetooth Scanning, Location History, Location Reporting, Web & App Activity ("WAA"), Google Location Sharing and Google Ad Personalization. Only one of those settings—WAA—is common to the settings at issue in this case, and even the focus within that setting is different between the two cases. The allegations about WAA in the Arizona case relate to what is stored in WAA when the setting is

---

[1] This Court requires the parties to present their first discovery dispute in "a joint letter of not more than 5 pages explaining the dispute" so a to-be-assigned Magistrate Judge can "advise the parties of how that Judge intends to proceed." Dkt. 59 at 2. Google informed Plaintiffs that (1) Local Rule 3-4(c)(2) requires double-spacing, (2) Plaintiffs' section far exceeds the 5-page limit, and (3) Plaintiffs violated the page limit further by serving *two* discovery letters on just three RFPs. Plaintiffs responded that they've seen single-spaced letters before (in cases where a Magistrate Judge was assigned with her/his own procedures), and that they would proceed to file their statement regardless. In an abundance of caution, Google's statement is double-spaced.

*on*, while the allegations in this case are about the data third-party apps collect and send to Google for analysis when WAA is *off*. Not only is the request overbroad, even the one technical setting in common does not substantially overlap.

Here, Plaintiffs allege that Google violated the Wiretap Act and committed other privacy violations by providing a tool to app developers called Firebase SDK, which includes Google Analytics for Firebase, that helps app developers learn how their users interact with their apps. For example, third parties like the New York Times can determine how popular certain articles are by seeing how many users clicked on it. This is the sort of interaction tracking that has been around since the dawn of the Internet, and critical to its success. Firebase is publicly disclosed, app developers consent to its use, and they are required to obtain the consent of their users, too. There are no secrets here. The question in this case is simple: was there consent for Firebase to send data from third party apps to Google about how users interacted with the apps? As discussed in Google's Motion to Dismiss, the answer is yes, and it can be determined from public materials.

Because Firebase is no secret, Plaintiffs' claims hinge on the made-for-litigation argument that when they turned off WAA, they expected Google to shut off app developer's use of Firebase, too. Per Plaintiffs, users believed that turning WAA off was a single Google-wide switch that would bar Google from receiving any information about them from any source. The proposed class consists only of users who turned WAA "off."

To be sure, some of the documents produced in the Arizona case are responsive to RFPs in this case and Google will produce them. But the request is vastly overbroad, as it also seeks documents that have nothing to do with this case.

This request also circumvents the discovery rules. As discussed in response to Plaintiffs' other letter brief on RFPs 1 and 2, a request for "a *carte blanche* production of all documents" that were produced in another proceeding doesn't meet the relevance standard, nor the requirement that a document request "describe with reasonable particularity each item or category of items to be inspected." *Chen v. Ampco Sys. Parking*, 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009). So-called "cloned discovery" requests ""expand the scope of discovery beyond that allowed by the Federal Rules" because they seek a set of documents, without limitation, and

without explaining "how these documents have any tendency to make a fact of consequence to their [] claims more or less probable." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 4680242, at *1 (N.D. Cal. Oct. 18, 2017); *see also In re eBay Seller Antitrust Litig.*, No. C07-01882 JF (HRL), 2010 WL 2836815, at *3 (N.D. Cal. July 19, 2010); *King Cty. v. Merrill Lynch & Co.*, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011). Indeed, they don't. While Plaintiffs here argue that documents concerning WAA are related to their claims, the complaint in the Arizona case accuses at least twelve Google settings of having relevance to their fraud claim. Counsel for Google here are counsel for Google in the Arizona action; the documents produced there relate to all twelve settings and more. The entire document production from the Arizona case would comprise a trove of information unrelated to any allegation in this case. And notably, no aspect of the Arizona complaint touches on Firebase or Google Analytics.

      Plaintiffs rely on a few emails they chose to cite in their complaint as a justification for forcing Google to hand over the entire Arizona production. One does not follow from the other. First, Google's intent is irrelevant in this case; none of Plaintiffs' claims put it at issue. Instead, each of Plaintiffs' claims focuses on what Google did and the functionality of Firebase, not, as in the Arizona case, various location-related settings and features. Discovering what a few low-level Google employees said about WAA when it is on will not make any fact of consequence in this case more or less likely, especially because the *Brown* case is focused on location-based data, which isn't at issue here. And even if it were helpful, Plaintiffs' request isn't targeted in any way. That there may be four emails of interest to Plaintiffs doesn't justify producing other documents Plaintiffs would never otherwise be entitled to.

      Plaintiffs' statement contains no other arguments for why the entirety of the Arizona production would be relevant. It is Plaintiffs' burden to propound RFPs describing the sought-after documents with particularity, and it is their burden to show relevance. They've failed to do either.

| | | |
|---|---|---|
| 1 | DATED: January 26, 2021 | By: */s/ Amanda Bonn* |
| 2 | | |
| 3 | | SUSMAN GODFREY L.L.P. |
| 4 | | Amanda Bonn (CA Bar No. 270891)<br>abonn@susmangodfrey.com |
| 5 | | 1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067 |
| 6 | | Telephone: (310) 789-3100 |
| 7 | | BOIES SCHILLER FLEXNER LLP |
| 8 | | Mark C. Mao (CA Bar No. 236165)<br>mmao@bsfllp.com |
| 9 | | Beko Reblitz-Richardson (CA Bar No. 238027)<br>brichardson@bsfllp.com |
| 10 | | Alexander Justin Konik (CA Bar No. 299291)<br>akonik@bsfllp.com |
| 11 | | 44 Montgomery Street, 41st Floor<br>San Francisco, CA 94104 |
| 12 | | Telephone: (415) 293 6858<br>Facsimile (415) 999 9695 |
| 13 | | |
| 14 | | James W. Lee (pro hac vice)<br>jlee@bsfllp.com |
| 15 | | Rossana Baeza (pro hac vice)<br>rbaeza@bsfllp.com |
| 16 | | 100 SE 2nd Street, Suite 2800<br>Miami, FL 33130 |
| 17 | | Telephone: (305) 539-8400<br>Facsimile: (305) 539-1304 |
| 18 | | |
| 19 | | Jesse Panuccio (pro hac vice)<br>jpanuccio@bsfllp.com |
| 20 | | 1401 New York Ave, NW<br>Washington, DC 20005 |
| 21 | | Telephone: (202) 237-2727<br>Facsimile: (202) 237-6131 |
| 22 | | |
| 23 | | SUSMAN GODFREY L.L.P. |
| 24 | | William Christopher Carmody (pro hac vice)<br>bcarmody@susmangodfrey.com |
| 25 | | Shawn J. Rabin (pro hac vice)<br>srabin@susmangodfrey.com |
| 26 | | Steven Shepard (pro hac vice) |
| 27 | | sshepard@susmangodfrey.com<br>1301 Avenue of the Americas, 32nd Floor |
| 28 | | New York, NY  10019 |

JOINT LETTER BRIEF RE: DISCOVERY DISPUTE

|   |   |   |
|---|---|---|
| 1 | | Telephone: (212) 336-8330 |
| 2 | | MORGAN & MORGAN |
| 3 | | John A. Yanchunis (pro hac vice)<br>jyanchunis@forthepeople.com |
| 4 | | Ryan J. McGee (pro hac vice)<br>rmcgee@forthepeople.com |
| 5 | | Ra Olusegun Amen (pro hac vice)<br>ramen@forthepeople.com |
| 6 | | 201 N. Franklin Street, 7th Floor<br>Tampa, FL 33602 |
| 7 | | Telephone: (813) 223-5505 |
| 8 | | *Attorneys for Plaintiffs* |
| 10 | DATED: January 26, 2021 | WILLKIE FARR & GALLAGHER, LLP |
| 12 | | By: */s/ Eduardo E. Santacana*<br>Eduardo E. Santacana (SBN: 281668)<br>esantacana@willkie.com |
| 13 | | Benedict Y. Hur (SBN: 224018)<br>bhur@willkie.com |
| 14 | | Simona Agnolucci (SBN: 246943)<br>sagnolucci@willkie.com |
| 16 | | Lori Arakaki (SBN: 315119)<br>larakaki@willkie.com |
| 17 | | Amanda Maya (SBN: 324092)<br>amaya@willkie.com |
| 18 | | One Front Street, 34th Floor<br>San Francisco, CA 94111 |
| 19 | | Telephone: (415) 858-7400<br>Facsimile: (415) 858-7599 |
| 20 | | *Attorneys for Defendant Google LLC* |

JOINT LETTER BRIEF RE: DISCOVERY DISPUTE

**ATTESTATION**

I, Amanda Bonn, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: January 26, 2021                         By:   */s/ Amanda Bonn*
                                                      Amanda Bonn