WILLKIE FARR & GALLAGHER LLP
Benedict Y. Hur (SBN: 224018)
bhur@willkie.com
Simona Agnolucci (SBN: 246943)
sagnolucci@willkie.com
Eduardo E. Santacana (SBN: 281668)
esantacana@willkie.com
Amanda Maya (SBN: 324092)
amaya@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400
Facsimile: (415) 858-7599

Attorneys for Defendant Google LLC

**UNITED STATE DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANIBAL RODRIGUEZ, JULIEANNA MUNIZ, ELIZA CAMBAY, SAL CATALDO, EMIR GOENAGA, JULIAN SANTIAGO, HAROLD NYANJOM, KELLIE NYANJOM, and SUSAN LYNN HARVEY, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:20-cv-4688-RS<br><br>**NOTICE OF ERRATA FOR JOINT LETTER BRIEF RE: DISCOVERY DISPUTE CONCERNING PLAINTIFFS' DOCUMENT REQUEST, SET TWO, REQUEST NO. 3**<br><br>Judge: Hon. Richard Seeborg<br>Referred to: Hon. Alex G. Tse<br>Action Filed: July 14, 2020<br>Trial Date: Not Set<br>Place: Courtroom 3 – 17th Floor |

## NOTICE OF ERRATA

Defendant Google LLC ("Google") respectfully submits this errata to the Joint Letter Brief regarding Discovery Dispute Concerning Plaintiffs' Document Request, Set Two, Request No. 3 ("Joint Letter Brief"), which was filed on January 26, 2021 at Docket No. 75, in order to correct an inadvertent typographical error. At page 5, the Joint Letter Brief refers to the "*Brown*" case on Line 19, when it fact the Joint Letter Brief should state the "Arizona" case. We are attaching a revised Joint Letter Brief as an exhibit to this errata. *See* Exhibit A.

DATED: January 27, 2021

WILLKIE FARR & GALLAGHER, LLP

By: */s/ Benedict Y. Hur*

Benedict Y. Hur (SBN: 224018)
bhur@willkie.com
Simona Agnolucci (SBN: 246943)
sagnolucci@willkie.com
Eduardo E. Santacana (SBN: 281668)
esantacana@willkie.com
Amanda Maya (SBN: 324092)
amaya@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400
Facsimile: (415) 858-7599

*Attorneys for Defendant Google LLC*

# EXHIBIT A

**BOIES SCHILLER FLEXNER LLP**
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

**SUSMAN GODFREY L.L.P.**
William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

**MORGAN & MORGAN**
John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for Plaintiffs; additional counsel listed in signature blocks below*

**WILLKIE FARR & GALLAGHER LLP**
Benedict Y. Hur (SBN: 224018)
bhur@willkie.com
Simona Agnolucci (SBN: 246943)
sagnolucci@willkie.com
Eduardo E. Santacana (SBN: 281668)
esantacana@willkie.com
Lori Arakaki (SBN: 315119)
larakaki@willkie.com
Amanda Maya (SBN: 324092)
amaya@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400
Facsimile: (415) 858-7599

*Attorneys for Defendant Google LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

ANIBAL RODRIGUEZ, JULIEANNA MUNIZ, ELIZA CAMBAY, SAL CATALDO, EMIR GOENAGA, JULIAN SANTIAGO, HAROLD NYANJOM, KELLIE NYANJOM, and SUSAN LYNN HARVEY, individually and on behalf of all other similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No. 3:20-cv-4688-RS

**JOINT LETTER BRIEF RE: DISCOVERY DISPUTE CONCERNING PLAINTIFFS' DOCUMENT REQUEST, SET TWO REQUEST NO. 3**

Judge: Hon. Richard Seeborg
Action Filed: July 14, 2020
Trial Date: Not Set
Place: Courtroom 3 – 17th Floor

Plaintiffs and Google LLC ("Google") submit this joint letter brief regarding Plaintiffs' Document Request, Set Two, Request No. 3. Counsel for the parties met and conferred and reached an impasse on this request. Ex. A includes Plaintiff's request, Ex. B includes Google's response, and Ex. C includes portions of four documents produced by Google in a different action (with Google's redactions.)

## PLAINTIFFS' STATEMENT

### 1. PLAINTIFFS SEEK RELEVANT DOCUMENTS

Plaintiffs allege that Google surreptitiously and without consent collects user data while users have Google's Web & App Activity ("WAA") turned off. Google promised users that turning off WAA would prevent Google from collecting the data Google typically collects, but those Google promises were just a ruse. Dkt. 60 ("FAC") ¶¶ 1-11, 59-84, 235-314. Google's unauthorized collection of data from users who turned off WAA violates the Wiretap Act, the California Invasion of Privacy Act, the Comprehensive Computer Data Access and Fraud Act, and California's Unfair Competition Law, and also intrudes upon Plaintiffs' seclusion and their right to privacy under the California Constitution. FAC ¶¶ 235-314.

The FAC describes four documents concerning Google's WAA functionality that Google produced in an action brought against Google by the Arizona Attorney General. FAC ¶¶ 77–78. Because these documents bear on the accuracy of Google's data collection disclosures concerning the WAA feature, Plaintiffs served Request No. 3, seeking production of unredacted copies of the filings and all discovery from the Arizona action. Ex. A. The documents from the Arizona action that Plaintiffs highlight in the FAC contain numerous references to WAA and users' consent (or lack thereof) to Google's data collection process. Ex. C includes portions of these four documents, each heavily redacted by Google (emphasis added):

- On February 2, 2017, one Google employee (name redacted by Google) referenced "work in progress" at Google "trying to rein in the overall mess that we have with regards to data collection, consent, and storage." This was in response to a Google employee (name redacted by Google) asking whether "users with significant privacy concerns understand what data we are saving?" Another Google employee (name redacted by Google) stated this was "super messy" and users needed to "make sense out of this mess."

- On August 13, 2018, one Google employee (name redacted by Google) referenced "Web/App Activity" and commented that the "current UI [user interface] feels like it is designed to make things possible, yet difficult enough that people won't figure it out." The Google employee also noted that selections were "defaulted to on, silently appearing in setting menus you may never see is <redacted>."

- On August 14, 2018, one Google employee (name redacted by Google) referenced Web & App Activity, stating "I did not know Web and App activity had anything to do with location. And seems like we are not good at explaining this to users." Another Google employee (name redacted by Google) added: "Definitely confusing from a user point of view if we need googlers [to] explain it to us[.]"

- One heavily redacted 2017 Google presentation concerns a study that specifically focused on "Consent" and asked, "Do users comprehend what will happen if they turn on the Web & App activity setting . . . ." The presentation includes a lengthy, but mostly redacted, section of "Detailed findings."

Case 3:20-cv-04688-RS Document 75 Filed 01/26/21 Page 36 of 124

**2. GOOGLE'S IMPROPER REFUSAL TO PRODUCE THESE DOCUMENTS**

Google has refused to produce any documents responsive to this request. Ex. B at 7:18-19. Google's primary objections are relevance and burden. *Id.* at 6:21-7:17. Google's counsel in this action also represents Google in the Arizona action. Google's counsel first asserted that there is "absolutely no connection" between this action and the Arizona action. Counsel later conceded that there is some overlap, as both actions involve WAA, but claimed that the cases are distinct and that the documents cited in the FAC reflect "irrelevant" Google employee "musings."

Google's objections are meritless and insufficient to support its burden in terms of withholding these documents. This is a discrete set of documents, including the filings and documents already produced by Google, in an action that also concerns Google's data-collection practices and WAA. There is no undue burden in Google now providing those documents to Plaintiffs, and the fact that these documents were separately produced by Google in the Arizona action is not a basis to object to their production in this action. *E.g.*, *Jones v. Deutsche Bank AG*, No. 5:04-CV-5357 JW (RS), 2005 WL 8177848, at *4 (N.D. Cal. Nov. 17, 2005) (Seeborg, J.) (ordering defendant to produce documents previously produced "to any government agency" that "refer or relate to the CARDS Facility").

Unable to dispute that both cases involve Google's data-collection practices and Google's WAA controls, Google now also opposes production on the basis that the Arizona action concerns "what Google does when WAA is turned on" while Plaintiff's claims concern "what Google does when WAA is turned off." This argument contradicts the position that Google takes in the motion to dismiss, where Google relies on disclosures purporting to explain what happens when WAA is turned on. Dkt. 62 at 7. In any event, this on/off distinction provides no basis for Google to withhold these documents. Needless to say, documents describing what happens when WAA is turned on may bear on what happens (or does not happen) when WAA is turned off. Plaintiffs are entitled to discovery tied to their factual allegations, which focus on WAA. WAA is the proper subject for discovery, regardless of whether it is turned on or off.

Indeed, Plaintiffs' contention is that the on/off functionality is a ruse because – contrary to the representation Google has otherwise made regarding WAA – Google is always tracking consumers, regardless of whether they turn WAA on or off. Google may not "unilaterally" make "factual and legal determination[s]" and "refuse to produce documents on that basis …." *Jones v. Deutsche Bank AG*, No. C 04 5357 JW (RS), 2006 WL 648369, at *3 (N.D. Cal. Mar. 10, 2006) (Seeborg, J.) (ordering production). Google's own initial disclosures reference WAA without any on/off distinction, and there is no basis for Google to now reverse course and seek to withhold documents from Plaintiffs based on this distinction. As for Google's argument that the documents cited in the FAC only reflect "irrelevant" Google employee "musings," it is impossible to assess because Google has redacted the names of all the employees such that it is impossible to tell their job function or importance.

Google's objections are particularly meritless given its pending motion to dismiss, which asserts as a defense the doctrine of consent. Dkt. 62. Google contends that users and apps consented to Google's data collection while WAA is turned off. *E.g.*, *id.* at 1-2. Google at the same time seeks to withhold documents concerning consent, including admissions by Google employees that "people won't figure it out," that WAA is "confusing," and that users may not "comprehend what will happen if they turn on the Web & App activity." In short, Google employees have admitted to an "overall mess" with respect to "consent" and WAA. Google should not be permitted to make such assertions to the Court regarding the existence of consent while at the same time withholding discovery regarding that issue of consent.

Plaintiffs are also hopeful that these documents can streamline discovery in this case. For example, in its discovery submissions in the Arizona action, Google identified its "person most knowledgeable about Web & App Activity" but redacted that person's name. It appears that Google had just 13 document custodians in the Arizona action, including Google's person most knowledgeable about WAA. Given the focus on WAA in the Arizona action, and the representations made by Google, it is reasonable to seek that discovery, which may streamline and avoid duplicative discovery here. Plaintiffs should not be required to simply take Google at its word that these and other documents produced in the Arizona action are somehow irrelevant.

The cases Google cites below are inapposite. For example, *Chen* turned on FLSA limits to discovery prior to class certification. *See* 2009 WL 2496729, at *1 ("As stated in the Court's previous order denying Plaintiff's motion to compel further discovery regarding his Rule 30(b)(6) deposition notices, while 'some limited discovery is appropriate prior to certification [in an FLSA action] unlimited discovery is not warranted.'" (alteration in original)). *In re eBay* addressed a request for documents from another action in which there was "little or no overlap of issues." 2010 WL 2836815, at *3. The propounding party in *In re eBay* was claiming usury law violations yet sought discovery produced by the defendant in an antitrust case. *Id.* Similarly, the plaintiffs in *In re Volkswagen* were shareholders alleging violations of the securities laws, yet they sought all discovery produced by the defendant in an MDL brought by a class of consumers. 2017 WL 4680242, at *1.

**GOOGLE'S STATEMENT[1]**

Plaintiffs' RFP No. 3 is irrelevant and overbroad. It seeks "[u]nredacted copies of the filings (including exhibits and attachments) and all discovery from *State of Arizona ex rel. Mark Brnovich, Attorney General v. Google LLC*, No. CV 2020-006219 (Ariz. Super. Ct. 2020). From 30,000 feet, the Arizona case and this case resemble each other, in that they both concern allegations of privacy violations. But the resemblance ends there. That case at heart addresses location-related data and concerns numerous settings and features, including: Location Master, Google Location Accuracy, Usage and Diagnostics, WiFi Scanning, Bluetooth Scanning, Location History, Location Reporting, Web & App Activity ("WAA"), Google Location Sharing and Google Ad Personalization. Only one of those settings—WAA—is common to the settings at issue in this case, and even the focus within that setting is different between the two cases. The allegations about WAA in the Arizona case relate to what is stored in WAA when the setting is

[1] This Court requires the parties to present their first discovery dispute in "a joint letter of not more than 5 pages explaining the dispute" so a to-be-assigned Magistrate Judge can "advise the parties of how that Judge intends to proceed." Dkt. 59 at 2. Google informed Plaintiffs that (1) Local Rule 3-4(c)(2) requires double-spacing, (2) Plaintiffs' section far exceeds the 5-page limit, and (3) Plaintiffs violated the page limit further by serving *two* discovery letters on just three RFPs. Plaintiffs responded that they've seen single-spaced letters before (in cases where a Magistrate Judge was assigned with her/his own procedures), and that they would proceed to file their statement regardless. In an abundance of caution, Google's statement is double-spaced.

*on*, while the allegations in this case are about the data third-party apps collect and send to Google for analysis when WAA is *off*.   Not only is the request overbroad, even the one technical setting in common does not substantially overlap.

Here, Plaintiffs allege that Google violated the Wiretap Act and committed other privacy violations by providing a tool to app developers called Firebase SDK, which includes Google Analytics for Firebase, that helps app developers learn how their users interact with their apps. For example, third parties like the New York Times can determine how popular certain articles are by seeing how many users clicked on it. This is the sort of interaction tracking that has been around since the dawn of the Internet, and critical to its success. Firebase is publicly disclosed, app developers consent to its use, and they are required to obtain the consent of their users, too. There are no secrets here. The question in this case is simple: was there consent for Firebase to send data from third party apps to Google about how users interacted with the apps? As discussed in Google's Motion to Dismiss, the answer is yes, and it can be determined from public materials.

Because Firebase is no secret, Plaintiffs' claims hinge on the made-for-litigation argument that when they turned off WAA, they expected Google to shut off app developer's use of Firebase, too. Per Plaintiffs, users believed that turning WAA off was a single Google-wide switch that would bar Google from receiving any information about them from any source. The proposed class consists only of users who turned WAA "off."

To be sure, some of the documents produced in the Arizona case are responsive to RFPs in this case and Google will produce them.  But the request is vastly overbroad, as it also seeks documents that have nothing to do with this case.

This request also circumvents the discovery rules. As discussed in response to Plaintiffs' other letter brief on RFPs 1 and 2, a request for "a *carte blanche* production of all documents" that were produced in another proceeding doesn't meet the relevance standard, nor the requirement that a document request "describe with reasonable particularity each item or category of items to be inspected." *Chen v. Ampco Sys. Parking*, 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009). So-called "cloned discovery" requests ""expand the scope of discovery beyond that allowed by the Federal Rules" because they seek a set of documents, without limitation, and

without explaining "how these documents have any tendency to make a fact of consequence to their [] claims more or less probable." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 4680242, at *1 (N.D. Cal. Oct. 18, 2017); *see also In re eBay Seller Antitrust Litig.*, No. C07-01882 JF (HRL), 2010 WL 2836815, at *3 (N.D. Cal. July 19, 2010); *King Cty. v. Merrill Lynch & Co.*, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011). Indeed, they don't. While Plaintiffs here argue that documents concerning WAA are related to their claims, the complaint in the Arizona case accuses at least twelve Google settings of having relevance to their fraud claim. Counsel for Google here are counsel for Google in the Arizona action; the documents produced there relate to all twelve settings and more. The entire document production from the Arizona case would comprise a trove of information unrelated to any allegation in this case. And notably, no aspect of the Arizona complaint touches on Firebase or Google Analytics.

Plaintiffs rely on a few emails they chose to cite in their complaint as a justification for forcing Google to hand over the entire Arizona production. One does not follow from the other. First, Google's intent is irrelevant in this case; none of Plaintiffs' claims put it at issue. Instead, each of Plaintiffs' claims focuses on what Google did and the functionality of Firebase, not, as in the Arizona case, various location-related settings and features. Discovering what a few low-level Google employees said about WAA when it is on will not make any fact of consequence in this case more or less likely, especially because the Arizona case is focused on location-based data, which isn't at issue here. And even if it were helpful, Plaintiffs' request isn't targeted in any way. That there may be four emails of interest to Plaintiffs doesn't justify producing other documents Plaintiffs would never otherwise be entitled to.

Plaintiffs' statement contains no other arguments for why the entirety of the Arizona production would be relevant. It is Plaintiffs' burden to propound RFPs describing the sought-after documents with particularity, and it is their burden to show relevance. They've failed to do either.

DATED: January 26, 2021

By: */s/ Amanda Bonn*

SUSMAN GODFREY L.L.P.
Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

BOIES SCHILLER FLEXNER LLP
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
Alexander Justin Konik (CA Bar No. 299291)
akonik@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

James W. Lee (pro hac vice)
jlee@bsfllp.com
Rossana Baeza (pro hac vice)
rbaeza@bsfllp.com
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

Jesse Panuccio (pro hac vice)
jpanuccio@bsfllp.com
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

SUSMAN GODFREY L.L.P.
William Christopher Carmody (pro hac vice)
bcarmody@susmangodfrey.com
Shawn J. Rabin (pro hac vice)
srabin@susmangodfrey.com
Steven Shepard (pro hac vice)
sshepard@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019

Case 3:20-cv-04688-RS Document 75 Filed 01/26/21 Page 8 of 9

Telephone: (212) 336-8330

MORGAN & MORGAN
John A. Yanchunis (pro hac vice)
jyanchunis@forthepeople.com
Ryan J. McGee (pro hac vice)
rmcgee@forthepeople.com
Ra Olusegun Amen (pro hac vice)
ramen@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for Plaintiffs*

DATED: January 26, 2021

WILLKIE FARR & GALLAGHER, LLP

By: */s/ Eduardo E. Santacana*
Eduardo E. Santacana (SBN: 281668)
esantacana@willkie.com
Benedict Y. Hur (SBN: 224018)
bhur@willkie.com
Simona Agnolucci (SBN: 246943)
sagnolucci@willkie.com
Lori Arakaki (SBN: 315119)
larakaki@willkie.com
Amanda Maya (SBN: 324092)
amaya@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400
Facsimile: (415) 858-7599

*Attorneys for Defendant Google LLC*

Case 3:20-cv-04688-RS Document 75 Filed 01/26/21 Page 9 of 9

**ATTESTATION**

I, Amanda Bonn, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: January 26, 2021

By: *_/s/ Amanda Bonn_*
Amanda Bonn

8
CASE NO. 3:20-cv-4688-RS
JOINT LETTER BRIEF RE: DISCOVERY DISPUTE

# EXHIBIT A

(h) DOCUMENTS should be produced in full, without abbreviation or expurgation, regardless of whether YOU consider the entire DOCUMENT to be relevant or responsive.

(i) In instances where two or more exact duplicates of any DOCUMENT exist, the most legible copy shall be produced.

6. **Privilege Log:** To the extent YOU object to or claim a privilege with respect to any Request in whole or in part, provide the following information for each DOCUMENT and each portion of any DOCUMENT withheld: (a) its Bates Number; (b) its type (e.g., email, memorandum, spreadsheet, text message); (c) any author(s) or sender(s); (d) any recipients; (e) any persons cc'd or bcc'd; (f) its date; (g) whether it was redacted or withheld; (h) the applicable privilege(s) or protection(s); and (i) a brief description of why the privilege(s) or protection(s) justify the redaction or withholding. For all persons identified as author(s), sender(s), recipient(s), or copyees or blind copyees, identify for each person, her affiliation(s), title(s), and whether she is an attorney.

7. **Lost Materials**: If any responsive DOCUMENT was, but no longer is, in YOUR possession, custody, or control, then provide a log that lists for each such DOCUMENT (a) its type (e.g., email, memorandum, spreadsheet, text message); (b) any author(s) or sender(s); (c) any recipients; (d) any persons cc'd; (e) its date; and (f) its subject matter.

8. **Continuing Obligation**: These Requests are to be considered continuing in nature, and YOU must promptly furnish supplemental responses if any additional DOCUMENTS or information is discovered or created after YOUR responses are tendered, or if any of YOUR responses are subsequently determined to be incorrect, incomplete, or misleading in any respect.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 3:**

Unredacted copies of the filings (including exhibits and attachments) and all discovery from *State of Arizona ex rel. Mark Brnovich, Attorney General v. Google LLC*, No. CV 2020-006219 (Ariz. Superior Ct. 2020).

# EXHIBIT B

unduly burdensome or disproportionate to the needs of this Action. Google also objects to the definition as overly broad and unduly burdensome because it purports to include "without limitation" "all government agencies, officials, and employees that have requested documents or information from Google and/or initiated any investigation or action concerning Google's data collection practices and disclosures," "any written responses" and "privilege logs submitted by Google to the Regulators."

23.     Google objects to the definition of "YOU" and "YOUR" as incomprehensible. Google construes "YOU" and "YOUR" to mean Google LLC. Google further objects to this definition to the extent that it purports to include forms of information not discoverable under the Federal Rules, the Local Rules, or any other applicable authority. Google also objects to the definition to the extent that it defines a category of documents in an overbroad manner and/or requests a production of documents, which would be unduly burdensome or disproportionate to the needs of this Action. Google further objects to the extent it seeks information or refers to documents controlled by individuals who are not parties to this litigation and/or which are not within Google's control.

**RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 3:**

Unredacted copies of the filings (including exhibits and attachments) and all discovery from State of Arizona ex rel. Mark Brnovich, Attorney General v. Google LLC, No. CV 2020-006219 (Ariz. Superior Ct. 2020).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Google incorporates its general responses and objections as set forth above. Google further objects to this Request on the grounds that: (i) it is unduly burdensome, overbroad, and disproportionate to the needs of the Action to the extent it seeks "all" discovery from another litigation; (ii) its scope is overbroad and disproportionate to the needs of the Action and thus any corresponding search and production would be unduly burdensome; (iii) it is vague and ambiguous as to the undefined term "discovery"; (iv) it seeks documents that are not relevant to any claim or defense in the Action and thus seeks documents outside the scope of permissible discovery; (v) it is unduly burdensome, overbroad, and disproportionate to the

needs of the Action to the extent that it is unbounded in time and/or seeks documents from a time period unrelated to the operative factual allegations; (vi) it is premature because Plaintiffs served these Requests almost one month before filing their amended complaint and Google has only two business days to review the amended complaint to evaluate the possible relevance of this Request to the claims and/or defenses at issue in the Action; (vii) a Protective Order and order concerning the production of ESI have not yet been agreed to or entered in this Action; and (viii) on its face, that action does not concern Firebase SDK. Google further objects to this Request as overly broad and unduly burdensome because it is not reasonably limited in scope and seeks documents that do not relate to the operative allegations in this Action. Requesting documents solely on the basis that they were produced in discovery in another case is inconsistent with the permissible scope of discovery under the Federal Rules, which limit discovery to information that is "relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1). The mere fact that documents were produced in another matter does not *ipso facto* render them relevant to or discoverable in this Action. Indeed, the documents produced in another matter are highly likely to include a vast number of documents that are neither relevant nor material to the claims and defenses in this Action. This Request also contravenes the Federal Rules' requirement that the requesting party "describe with particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). The Request is thus not proportional to the needs of this Action and the burden of the requested discovery outweighs any likely benefit.

Subject to and without waiving the foregoing responses and objections, Google will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 4:**

Documents concerning the purpose and function of Web & App Activity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Google incorporates its general responses and objections as set forth above. Google further objects to this Request because a Protective Order and order concerning the production of ESI have not yet been agreed to or entered in this Action. Google also objects to this Request because it is vague and ambiguous as to "purpose and function of Web & App activity." For purposes of this response, Google construed Web & App Activity to mean the account-level setting called Web & App Activity and that the "function" of

Case 3:20-cv-04688-RS Document 75-1 Filed 01/26/21 Page 6 of 12

# EXHIBIT C



**From:** [redacted]
**To:** [redacted]
**Sent:** Mon, 06 Feb 2017 21:02:51 +0000
**Subject:** Re: user location product excellence
**Cc:** [redacted]

[redacted]

[redacted]

On Mon, Feb 6, 2017 at 08:53 [redacted] wrote:

> [redacted]
>
> [redacted]

--
[redacted]

On 2 February 2017 at 20:00, [redacted] wrote:

On Thu, Feb 2, 2017 at 1:56 PM [redacted] wrote:

> hey [redacted], I'll go ahead and schedule a 1:1 to get some guidance as to how to package all of this discussion in one item that's presentable to [redacted]
> To be clear - Platform Excellence, as I initially conceived of it, is not a Critical User Journey. It's a client-facing excellence for [redacted] org is in the same boat, so to speak. I think I'll follow that track separately from what the CUJs that [redacted] is our task force is looking at. (unless you guys think we should have a Platform Excellence as an entry in that list and focus on internal "users" a la Geo as a Platform). I didn't get the sense that the task force is particularly passionate about platforms.

I have the same sense. I'm not sure if I have very good ideas about platform excellence either. [redacted]

That said, we have Location as a product umbrella that includes Location History, [redacted] and a bunch of other stuff that's super messy. And it's a Critical User Journey to make sense

out of this mess. This is what I'd like to pursue as part of the task force (and I need help from [redacted] por favor :) ).

[redacted]

[redacted]

On Thu, Feb 2, 2017 at 8:55 AM, [redacted] wrote:

[redacted], regarding your last point, what do you feel we should put together as a vehicle for persuasion to the PE task force?

Should it be questions, answers/proposal, or a sad story about our current state?

On Thu, Feb 2, 2017 at 08:52 [redacted] wrote:

Very good points. Thanks for carring about it!

I'm adding [redacted] and [redacted] who have been helping build a robust PE story around user location.

Also, take a look at [redacted] - work in progress, trying to rein in the overall mess that we have with regards to data collection, consent, and storage.

I hope we could land on [redacted] top 5 as "make user location work and make it simple".

On Thu, Feb 2, 2017 at 08:32 [redacted] wrote:

I wrote this note on the main thread with [redacted]

"User location issues. I have trouble framing exactly the CUJ here. I believe users mostly expect that Google knows their precise location when they are using GMM or searching from a mobile device. Yet we often don't know where they are. How can we provide a good location for every user who wants it? How can we be clear and transparent when we don't know precisely where they are? How can we do a great job of respecting people's privacy when they don't want to share their location. Tests: This one feels pretty broad. In fact there's a team in local that has been working across 3 PAs to make progress on the issue."

I think these issues are kind of related to your platform excellence ideas. As I think about it:
- Users expect we know where they are right now almost all of the time.
- Do users with significant privacy concerns understand what data we are saving? Do they know how to control when we store location information?

**From:** [redacted]
**To:** [redacted]
**Sent:** Tue, 14 Aug 2018 10:36:52 -0700
**Subject:** Re: [Industryinfo] AP Exclusive: Google tracks your movements, like it or not
**Cc:** [redacted]

On Tue, Aug 14, 2018 at 1:50 AM, [redacted] wrote:

There are three location-related settings on Android:
Location History: this controls whether your location is recorded in your timeline in Google Maps.

Location toggle on the device: simplifying a little, this controls whether GPS is enabled and can be found in the notification pulldown. If this is off, the phone will not attempt to determine its precise location. Most people never turn this off, since it will prevent Maps from telling you where you are.

Web and App Activity: a catch-all for recording search and Assistant query history. If you turn this off, you can't use Assistant.

The complaint in this article is that if you have Web and App Activity enabled and the location toggle enabled, then your search history entries contain your approximate location at the time you made the query. It's also not possible to remove them by clearing your location history, which is counter-intuitive - you have to clear your search history instead.

I believe the complaint of the article is that Google records location information when "Location" is off. The rest of the article is giving an example of the additional information gathered. It is not the primary complaint.

[I hope that commenting on the article proper is still acceptable.]

On Tue, Aug 14, 2018, 09:03 [redacted] wrote:

It is a bit complicated, and we might need better messaging.
There is a general location tracking for figuring out your home, work locations, and routines (you go to a cafe at the same time every week, then you might get a notification for that etc). This seems to run in the background all time.

But there is also a location information passed on with individual requests, like when you search for "Walmart", or ask for weather forecast. each app, search, news, home, etc seem to have a separate setting.

There is a valid use case. I might want to keep getting local results, while disabling always on location tracking. Or disable location in weather but keep it in news, etc.

On Monday, August 13, 2018 at 6:52:57 PM UTC-7, [redacted] wrote:

I agree with the article. Location off should mean location off; not except for this case or that case.

The current UI feels like it is designed to make things possible, yet difficult enough that people won't figure it out. New exceptions, defaulted to on, silently appearing in settings menus you may never see is <redacted>.

The general concept of what I'd like to see on the location settings :

Location: On/Off (Off disables everything; On enables the ones selected items)
Enable GPS location (on/off)
Enable Bluetooth location (on/off)
Enable Bluetooth to report, even when Bluetooth is off (on/off)
Enable Web/App Activity (on/off)
Enable ... (on/off)

We already have this menu/style for non-Google apps.

This way the user can see and set, in ONE place all of the items related to location. If users find it useful for all of the bluetooth settings to be together, then have the "enable bluetooth to report location when bluetooth is off" in both menus.

Btw. Thank you whomever added the option for bluetooth to not respond to queries when bluetooth is off. (It used to respond, thereby giving location information away, even when location and bluetooth were off.)

On Mon, Aug 13, 2018 at 7:06 AM, [REDACTED] wrote:

> IIRC we've had reports like this in the past on this list but I don't remember major outlets like AP reporting this.

https://apnews.com/828aefab64d4411bac257a07c1af0ecb

---

SAN FRANCISCO (AP) — Google wants to know where you go so badly that it records your movements even when you explicitly tell it not to.

An Associated Press investigation found that many Google services on Android devices and iPhones store your location data even if you've used privacy settings that say they will prevent it from doing so.

Computer-science researchers at Princeton confirmed these findings at the AP's request.

**From:** [redacted]
**To:** [redacted]
**Sent:** Tue, 14 Aug 2018 12:45:17 +0200
**Subject:** Re: [Industryinfo] AP Exclusive: Google tracks your movements, like it or not
**Cc:** [redacted]

Although I know how it works and what the difference between "Location" and "Location History" is, I did not know Web and App activity had anything to do with location. Also seems like we are not very good at explaining this to users.

Here is the screenshot from "My activity" setting:
[redacted]

And When You click on Learn More:
[redacted]

cheers
[redacted]

--

- [redacted]
- Google Inc.
- [redacted]

*This email may be confidential and privileged. If you received this communication by mistake, please don't forward it to anyone else, please erase all copies and attachments, and please let me know that it has gone to the wrong person.*
*The above terms reflect a potential business arrangement, are provided solely as a basis for further discussion, and are not intended to be and do not constitute a legally binding obligation. No legally binding obligations will be created, implied, or inferred until an agreement in final form is executed in writing by all parties involved.*
*This sample code is an experimental, unsupported Beta Feature (as such term is defined in the Google DoubleClick Platform Services Terms and Conditions, Advertising Platform Agreement, or Google Services Agreement related to AdX, that is in place between your company and the applicable Google entity that entered into such agreement, whichever is currently in effect (the "Agreement")). This sample code is hereby provided to you by the applicable Google entity that entered into the Agreement. It is provided for your convenience and is intended to model a possible solution.*

On Tue, Aug 14, 2018 at 11:28 AM [redacted] wrote:

Definitely confusing from a user point of view if we need googlers explain it to us :)

[redacted]

> [redacted]



## Research questions

- Do users comprehend what will happen if they turn on the Web & App activity setting (in the context of an app)?
- Does adding "My Activity" in Activity controls help comprehension?
- Do they understand what happens to their already stored data when they turn it off?

Feed einrichten?
Web- & App-Aktivitäten
Speichert Ihre Google-Aktivitäten und die verwendeten Apps
Standortverlauf
Erstellt eine private Karte von besuchten Orten, wenn mit dem Gerät im Google-Konto angemeldet
Geräteinformationen
Umfasst unter anderem Kontakte, Kalender, Apps, Musik, Akkustand und Sensorwerte
Sprach- & Audioaktivitäten
Ihre Sprach- und Audioeingaben werden aufgezeichnet, damit Ihre Stimme besser erkannt und die Spracherkennungsfunktion optimiert werden kann.
NEIN DANKE
JA, AKTIVIEREN

Google
Web- & App-Aktivitäten
Web- & App-Aktivitäten speichern (AN)
Speichert Ihre Google-Aktivitäten und die verwendeten Apps
Diese Daten werden von jedem Gerät gespeichert, auf dem Sie angemeldet sind. Nur Sie können diese Daten sehen.
Wenn diese Einstellung deaktiviert ist, werden Ihre zuvor gespeicherten Aktivitäten (siehe unten) nicht gelöscht.
Heute

Google 2017 Trust.Next Proprietary + Confidential 7

CONFIDENTIAL GOOG-GLAZ-00126374