# EXHIBIT A

1   Mark C. Mao, CA Bar No. 236165
    Beko Reblitz-Richardson, CA Bar No. 238027
2   **BOIES SCHILLER FLEXNER LLP**
    44 Montgomery St., 41st Floor
3   San Francisco, CA 94104
4   Tel.: (415) 293-6800
    mmao@bsfllp.com
5   brichardson@bsfllp.com

6   Jesse Panuccio (admitted *pro hac vice*)
    **BOIES SCHILLER FLEXNER LLP**
7   1401 New York Ave, NW
8   Washington, DC 20005
    Tel.: (202) 237-2727
9   Fax: (202) 237-6131
    jpanuccio@bsfllp.com
10
11  Amanda K. Bonn, CA Bar No. 270891
    **SUSMAN GODFREY L.L.P**
12  1900 Avenue of the Stars, Suite 1400
    Los Angeles, CA 90067
13  Tel: (310) 789-3100
    Fax: (310) 789-3150
14  abonn@susmangodfrey.com
15
    *Attorneys for Plaintiffs*
16

    William Christopher Carmody
    (admitted *pro hac vice*)
    Shawn J. Rabin (admitted *pro hac vice*)
    Steven M. Shepard (admitted *pro hac vice*)
    Alexander P. Frawley
    (admitted *pro hac vice*)
    **SUSMAN GODFREY L.L.P.**
    1301 Avenue of the Americas,
    32nd Floor
    New York, NY  10019
    Tel.: (212) 336-8330
    bcarmody@susmangodfrey.com
    srabin@susmangodfrey.com
    sshepard@susmangodfrey.com
    afrawley@susmangodfrey.com

    John A. Yanchunis (admitted *pro hac vice*)
    Ryan J. McGee (admitted *pro hac vice*)
    Michael F. Ram (admitted *pro hac vice*)
    Ra O. Amen (admitted *pro hac vice*)
    **MORGAN & MORGAN**
    201 N. Franklin Street, 7th Floor
    Tampa, FL 33602
    Tel.: (813) 223-5505
    jyanchunis@forthepeople.com
    rmcgee@forthepeople.com
    mram@forthepeople.com
    ramen@forthepeople.com

17
18           **UNITED STATES DISTRICT COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**
19
20  ANIBAL RODRIGUEZ, JULIEANNA
    MUNIZ, ELIZA CAMBAY, SAL             Case No.:  3:20-cv-04688
21  CATALDO, EMIR GOENAGA, JULIAN
    SANTIAGO, HAROLD NYANJOM,            **PLAINTIFFS' [PROPOSED] SURREPLY**
22  KELLIE NYANJOM, and SUSAN LYNN       **IN OPPOSITION TO GOOGLE'S**
    HARVEY, individually and on behalf of all  **MOTION TO DISMISS THE FIRST**
23  others similarly situated,           **AMENDED COMPLAINT**

24           Plaintiffs,                 The Honorable Richard Seeborg
                                         Courtroom 3 – 17th Floor
25   vs.                                 Date: March 4, 2021
                                         Time: 1:30 p.m.
26  GOOGLE LLC,
27
             Defendant.
28
                                    i

## I. INTRODUCTION

On February 4, 2021, Google LLC ("Google") filed its Reply in Support of Motion to Dismiss the First Amended Complaint. Dkt 82 ("Reply Brief"). The Reply Brief included three new arguments that were not made in Google's initial motion to dismiss, but could have been. *See* Dkt 62 ("Opening Brief"). Google's three new arguments are (1) that Plaintiffs' theory of the case has "pivoted" away from the allegations in the FAC; (2) that Plaintiffs' claims trigger Federal Rule of Civil Procedure 9(b)'s heightened pleading standard; and (3) that Firebase SDK is not a Google "service" as defined by Google's Privacy Policy.

All three arguments are meritless.

## II. ARGUMENT

### A. Plaintiffs Have Not "Pivoted"

Google's Reply Brief attempts to justify its belated invocation of Rule 9(b) by claiming that Plaintiffs' Opposition Brief, Dkt 71 ("Opp'n Br."), "pivots" from the First Amended Complaint (Dkt 60) ("FAC"). *See, e.g.*, Reply Br. at 2 (arguing that Plaintiffs' Opposition Brief "pivot[s] away from the FAC's allegations" toward a new "'secret scripts' theory"). Specifically, Google's Reply Brief contends that "the only facts pleaded in the FAC relate to [Google Analytics] for Firebase," and that "Plaintiffs assert in their opposition that the FAC is not about [Google Analytics] for Firebase." Reply Br. at 3.

Plaintiffs' Opposition Brief does not "pivot" from the FAC. Plaintiffs' allegation is and always has always been that Google uses the software scripts embedded within Google's Firebase SDK to collect the personal user data at issue in this case. The FAC clearly states this. *See, e.g.*, FAC ¶ 6 ("[E]ven when users turn off Web & App Activity, Google continues to use its **Firebase SDK scripts** to collect users' communications made via the apps on users' devices . . . ."); *see also id.* ¶ 11 ("Plaintiffs are individuals whose apps transmitted data to Google **as a result of Google's Firebase SDK scripts** even though Plaintiffs had turned off the 'Web and App Activity' feature.");

1

*id.* ¶¶ 38-58 (describing in detail what information the Firebase SDK scripts transmit to Google).[1] The FAC distinguishes these Firebase SDK scripts (which transmit the users' app-interaction data to Google) from Google Analytics for Firebase (a service that Google then provides to some apps). *See* FAC ¶¶ 40, 42, 49. As Plaintiffs noted in their Opposition Brief (Opp'n Br. at 5-6) but ignored by Google in its Reply, Google's own exhibits make this same distinction between the Firebase SDK scripts (which transmit the data to Google) and Google Analytics for Firebase (the service Google provides). Specifically, Google's Exhibit 1-A distinguishes the Firebase SDK "software," which Google uses to collect users' app-interaction data from users' devices, from the Google Analytics "service" that Google separately offers. MTD Ex. 1-A at 1, 3-4. Google's unsupported and inaccurate say-so regarding how Google's data collection works is not a basis to narrow or disregard Plaintiffs' detailed allegations, and there has been no "pivot" by Plaintiffs in connection with this motion to dismiss.

      **B.**     **Rule 9(b) Does Not Apply Or Warrant Any Dismissal**

In the Reply Brief, Google for the first time asks this Court to apply Rule 9(b)'s heightened pleading standard to each of Plaintiffs' claims. *See* Reply Br. at 4, 5, 11, 14. As a threshold matter, this argument is waived because Google could have (but didn't) make this argument in its opening brief. *See Ashker v. Cate*, No. 09-CV-05796-CW (RMI), 2019 WL 6895978, at *4 (N.D. Cal. Dec. 18, 2019) ("[A]rguments raised for the first time in reply briefs are waived." (citing *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1035 (N.D. Cal. 2014))). Additionally, because Google's reliance on Rule 9(b) is entirely predicated on the incorrect assumption that Plaintiffs have "pivoted" to a new theory, this Court should decline to apply Rule 9(b).

In any event, Google's cases applying Rule 9(b) are readily distinguishable. The plaintiffs in those cases (a) claimed that the defendants misled them, but (b) failed to identify any specific

---

[1] *See also id.* ¶¶ 3, 5, 6, 11, 38-58, 64, 108, 117, 118, 120, 124-25, 128-29, 136, 139, 153, 173, 177, 179, 182, 199, 202, 207, 209, 211, 213, 215, 217, 219, 221, 223, 225, 243, 260 (repeatedly referencing Firebase SDK, and describing how Google collects data through the Google software scripts embedded within Firebase SDK, including with specific claims).

(purportedly) misleading statements.² Here, Plaintiffs have not asserted any fraud claim. It is Google that is attempting to point to Google's own disclosures in order to raise a consent defense to Plaintiffs' causes of action. By making a consent defense, Google does not thereby transform Plaintiffs' causes of action into fraud claims that must satisfy Rule 9(b). *See Kleiman v. Equable Ascent*, No. CV 12-9729 CAS AJWX, 2013 WL 49754, at *3 (C.D. Cal. Jan. 3, 2013) (holding that Rule 9(b) does not apply to invasion of privacy claims).

Even if Rule 9(b) were to apply, its standard is easily met by the FAC. The FAC identifies particular statements within Google's Privacy Policy and other uniform Google disclosures representing that Google would not collect users' app-interaction data if users switched off Web & App Activity. *See* Opp'n Br. at 10-11 (citing FAC ¶¶ 5, 66-68, 70-72). Because the FAC identifies these specific statements and provides particularized allegations explaining why these statements were misleading, the FAC satisfies Rule 9(b). *See, e.g.*, *McCoy v. Google*, No. 20-CV-05427-SVK, 2021 WL 405816, at *10 (N.D. Cal. Feb. 2, 2021) (applying Rule 9(b) and denying Google's motion to dismiss UCL claim because "Plaintiff alleges that [Google's] Privacy Policy only partially discloses the extent of the data being collected"). The cases Google cites are easily distinguished because in those cases the plaintiffs failed to identity any specific misleading statements. *See supra* n.2 (citing and distinguishing Google's authorities).

---

² *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) ("[Plaintiff] alleges that the APA misrepresented its connection to Novartis, but he does not identify any specific misrepresentations or specify when and where they occurred."); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1046-47 (N.D. Cal. 2018) (Seeborg, J.) ("Because plaintiffs do not identify in the complaint an omission or a specific misleading contact upload prompt, they fail to state their fraud-based claims with sufficient particularity."); *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 636 (N.D. Cal. 1980) (dismissing securities fraud claims because the plaintiffs' allegations "leave[] this Court only with additional questions," including "how were sales revenues misrepresented?"; "which costs should have been accounted for in prior periods?"; and "in what manner do the audited financial statements misrepresent the financial condition of [the company]?"). And *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.* is completely inapposite. *See* 631 F.3d 436, 440 (7th Cir. 2011). That was a consumer fraud claim that was primarily based on allegations made by a whistleblower in a separate *qui tam* case, and the whistleblower did not even work for the defendant-company. *Id.* The court accordingly dismissed the complaint for relying on mere "suspicions." *Id.* at 443.

### C. Google's Privacy Policy Applies to Firebase SDK's Data Transmissions

For the first time, Google's Reply Brief argues that Google's Privacy Policy does not apply to the Firebase SDK scripts' transmission of Plaintiffs' data because (Google contends) Firebase SDK is not a Google "service" as that term is defined by Google's Privacy Policy. *See* Reply Br. at 8-9 (arguing that the "premise of Plaintiffs' 'services' exegesis is unreasonable" and asserting that "GA for Firebase is not a 'product . . . like ads and embedded Google Maps'" (alteration in original)).

Google also waived this argument by not raising it in the opening brief. *See Ashker*, 2019 WL 6895978, at *4. Plaintiffs' FAC specifically pleads that "Google's own Privacy Policy defines the term 'Google service' to include Firebase SDK." FAC ¶ 70; *see also id.* ¶¶ 5, 66, 246. Google's Opening Brief did not address this allegation, much less challenge it.

Even if not waived, Google's belated argument fails based on the plain text of its Privacy Policy. Google's Privacy Policy defines Google's "services" to include "products that are integrated into third-party apps and sites." FAC ¶ 70; *see also* FAC Ex. A at 1 (Google's Privacy Policy). Google's Firebase SDK scripts are "integrated into third-party apps." FAC ¶¶ 5, 66, 70. Therefore, Google's Privacy Policy assured users that by switching off Web & App Activity, the users would stop Google's Firebase SDK scripts from transmitting the users' data to Google, which is what Plaintiffs reasonably believed. FAC ¶¶ 65-68, 75-76. If Google meant to exclude Firebase SDK from the Privacy Policy's definition of Google "services," then Google should have written its Privacy Policy very differently. Google's belated and unfounded argument regarding the definition of "services" only further demonstrates the lack of clarity and consent.

Google's contention that Google Analytics is not one of the "services" referenced in Google's Privacy Policy contradicts the position Google has taken in other pending cases. These inconsistencies further undermine Google's consent defense. In the *Brown v. Google* action before

4

Judge Koh,[3] Google describes Google Analytics as a Google "service" covered by the Privacy Policy. *See* Case No. 5:20-cv-03664-LHK, Dkt 82 (Google's Mot. to Dismiss) at 6 n.6 (the Privacy Policy applies "'to all of the services offered by Google Inc. and its affiliates, including . . . services offered on other sites (such as our advertising services)'—*e.g.*, Google Analytics"). In the *McCoy v. Google* action before Magistrate Judge van Keulen,[4] Google argued that the Privacy Policy "makes clear" that Google collects data regarding "activity on third-party sites and apps that use our services." Case No. 5:20-cv-5427-SVK, Dkt 24 (Google's Mot. to Dismiss) at 3.

The outlier position that Google takes in this case regarding the definition of "services" undermines Google's consent defense. While Plaintiffs do not believe that the Privacy Policy is ambiguous or subject to multiple interpretations, Google's different interpretations at a minimum establish that dismissal based on consent is inappropriate. As Magistrate Judge van Keulen explained in rejecting Google's consent defense in *McCoy*: "If the contract language at issue is reasonably susceptible to more than one interpretation, with one of those interpretations suggesting consent and another belying it, the Court cannot decide the consent issue in [Defendant's] favor at the motion to dismiss stage." *McCoy*, 2021 WL 405816, at *6 (citation omitted).

## III.  CONCLUSION

For the foregoing reasons, and for the reasons stated in Plaintiffs' Opposition Brief, this Court should deny Google's Motion to Dismiss in its entirety. If this Court were to grant any part of Google's Motion, then any dismissal should be without prejudice.

Dated: February 17, 2021                              Respectfully submitted,


                                                      By: */s/ Amanda Bonn*

---

[3] *Brown* involves Google's unlawful interception of users' private browsing communications with third-party websites and Google's undisclosed and illegal collection and use of that private browsing user data.

[4] *McCoy* involves Google's collection of app data from Android devices. Plaintiffs in this case filed a Request for Judicial Notice (Dkt 84) regarding this Court's recent motion to dismiss decision in *McCoy*, in which Magistrate Judge van Keulen rejected many of the arguments that Google raises in this case. Magistrate Judge van Keulen issued that decision after Plaintiffs' filed their Opposition Brief in this case but before Google filed its Reply.

1 | Amanda Bonn (CA Bar No. 270891)
2 | abonn@susmangodfrey.com
  | SUSMAN GODFREY L.L.P.
3 | 1900 Avenue of the Stars, Suite 1400
  | Los Angeles, CA 90067
4 | Telephone: (310) 789-3100

5 | Mark C. Mao (CA Bar No. 236165)
  | mmao@bsfllp.com
6 | Beko Rebitz-Richardson (CA Bar No. 238027)
  | brichardson@bsfllp.com
7 | BOIES SCHILLER FLEXNER LLP
  | 44 Montgomery Street, 41st Floor
8 | San Francisco, CA 94104
  | Telephone: (415) 293 6858
9 | Facsimile (415) 999 9695

10 | Jesse Panuccio (admitted *pro hac vice*)
   | jpanuccio@bsfllp.com
11 | BOIES SCHILLER FLEXNER LLP
   | 1401 New York Ave, NW
12 | Washington, DC 20005
   | Tel.: (202) 237-2727
13 | Fax: (202) 237-6131

14 |
15 | James Lee (admitted *pro hac vice*)
   | jlee@bsfllp.com
16 | BOIES SCHILLER FLEXNER LLP
   | 100 SE 2nd Street, Suite 2800
17 | Miami, FL 33131
   | Telephone: (305) 539-8400
18 | Facsimile: (305) 539-1307

19 | William Christopher Carmody (*pro hac vice*)
20 | bcarmody@susmangodfrey.com
   | Shawn J. Rabin (*pro hac vice*)
21 | srabin@susmangodfrey.com
   | Steven Shepard (*pro hac vice*)
22 | sshepard@susmangodfrey.com
   | Alexander P. Frawley
23 | afrawley@susmangodfrey.com
   | SUSMAN GODFREY L.L.P.
24 | 1301 Avenue of the Americas, 32nd Floor
25 | New York, NY 10019
   | Telephone: (212) 336-8330

26 |
27 | John A. Yanchunis (*pro hac vice*)
   | jyanchunis@forthepeople.com
28 | Ryan J. McGee (*pro hac vice*)

6

|   |   |
|---|---|
| 1 | rmcgee@forthepeople.com |
| 2 | Michael F. Ram (*pro hac vice*) |
|   | mram@forthepeople.com |
| 3 | Ra O. Amen (*pro hac vice*) |
|   | ramen@forthepeople.com |
| 4 | MORGAN & MORGAN, P.A. |
|   | 201 N Franklin Street, 7th Floor |
| 5 | Tampa, FL 33602 |
|   | Telephone: (813) 223-5505 |
| 6 | Facsimile: (813) 222-4736 |

*Attorneys for Plaintiffs*

7

PLAINTIFFS' [PROPOSED] SURREPLY     CASE NO. 3:20-CV-04688