**WILLKIE FARR & GALLAGHER LLP**
Benedict Y. Hur (SBN: 224018)
Simona Agnolucci (SBN: 246943)
Eduardo E. Santacana (SBN: 281668)
Amanda Maya (SBN: 324092)
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400
Facsimile: (415) 858-7599
bhur@willkie.com
sagnolucci@willkie.com
esantacana@willkie.com
amaya@willkie.com

Attorneys for
GOOGLE LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

| | |
|---|---|
| ANIBAL RODRIQUEZ, *et al.* individually and on behalf of all other similarly situated,<br><br>        Plaintiffs,<br><br>    vs<br><br>GOOGLE LLC,<br><br>        Defendant. | Case No. 3:20-CV-04688 RS<br><br>**DEFENDANT GOOGLE LLC's OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SURREPLY IN CONNECTION WITH GOOGLE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge:   Hon. Richard Seeborg<br><br>Court:   Courtroom 3 – 17th Floor<br>Date:    March 4, 2021<br>Time:    1:30 p.m. |

Google respectfully opposes Plaintiffs' motion for leave to file a sur-reply addressing arguments that were implicated by Google's motion to dismiss. "A court generally should not consider evidence submitted for the first time in reply without giving the opposing party an opportunity to respond." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 11505721, at *3 (N.D. Cal. Mar. 9, 2016). But "evidence submitted in direct response to evidence raised in the preceding brief is not 'new.'" *Id.* (internal quotation marks and alterations omitted). Further, "the opportunity for rebuttal need not be in writing; an opportunity for oral rebuttal may be sufficient." *Id.* (internal quotation marks and alterations omitted). Here, none of Plaintiffs' purported justifications for seeking to now have the last word hold up under scrutiny. Google's reply brief responded fairly to Plaintiffs' opposition brief, and each argument was raised in Google's Motion to Dismiss.

*First*, Plaintiffs are correct that their complaint includes references to "secret scripts," but everywhere they are mentioned, they are linked to the Google Analytics for Firebase product and public documentation about that product. *See, e.g.*, FAC, ECF No. 60, ¶¶ 52–57. Google moved to dismiss on the grounds that there was two-way consent for all of the challenged conduct concerning Google Analytics for Firebase, as demonstrated by Plaintiffs' own cited documentation and the privacy policy attached to Plaintiffs' complaint. And, just in case Plaintiffs would pivot to focus on undisclosed secret scripts, in footnote 2, Google also noted that:

> The FAC alleges that Google embeds secret software code or scripts into Firebase that copies and sends data to Google unbeknownst to the apps when WAA is off. FAC ¶ 44. This argument is as nonsensical as it is implausible. It makes no sense that Google would rely on secret codes in Firebase to collect app data when the app developers integrated Firebase into their apps for the very purpose of allowing Google to collect app data and provide analytics services.

ECF No. 62 at 13 n.2.

Sure enough, in their opposition, Plaintiffs all but disavowed the central factual allegations, each of which relates to GA for Firebase, and relied instead on their "secret scripts" allegation to mean that Google does, in fact, have a parallel program that does the same thing as GA for Firebase, but unlike GA for Firebase, this secret program has never been disclosed to the public, and so, Plaintiffs argue, they could not have consented to it. Plaintiffs' complaint cites no

article, report, investigation, or discovery of information that led them to learn of this "secret scripts" program. In the complaint itself, each such reference is either directly linked to GA for Firebase, *see* FAC ¶¶ 42, 45–58, or is worded as a callback to those factual allegations about GA for Firebase, one of nineteen products on the Firebase SDK platform, *see, e.g.*, *id.* ¶¶ 3, 64, 108, 120.

But in Plaintiffs' opposition, Plaintiffs distance themselves from GA for Firebase, and they go so far as to claim that

> Plaintiffs' complaint is about Google's secret scripts within its Firebase SDK, *regardless of whether Google Analytics is installed*. If Google disputes whether Firebase SDK is the code collecting user communications, that is a factual dispute that is improper for the purposes of a motion to dismiss."

Opp., ECF No. 71, at 3 n.1. Google was entitled to and did respond to that argument, and pointed out in its reply that no allegation in the First Amended Complaint supports that claim, including the paragraphs cited by Plaintiffs in the opposition. FAC ¶¶ 45, 117–20. This is not grounds for a sur-reply; a party is entitled to point out inaccuracies in an opposition brief.

*Second*, and relatedly, Plaintiffs argue that they should be permitted to respond to Google's argument that their new "secret scripts" argument is subject to the Rule 9(b) pleading standard. Google objects to Plaintiffs' characterization of how this happened. Google interpreted the First Amended Complaint in the light most favorable to Plaintiffs, as it is required to do on a motion to dismiss, and so it never imagined Plaintiffs would eschew their factual allegations about GA for Firebase only to rely on bare assertions of secret, undisclosed conduct that duplicates what GA for Firebase does. For Google to have assumed such a thing would have been unreasonable. Indeed, if "secret scripts" is just a colorful name for the computer code used by GA for Firebase, the allegations fail to state a claim, but they are sufficiently particularized.

But once Plaintiffs decided to run with their theory of "secret scripts" untethered to any specific Google feature, the allegations fell well below the Rule 9(b) standard for putting forth this fraud-based theory. In any case, no amount of sur-reply will change the fundamental reality that Plaintiffs' complaint is either about GA for Firebase, which is publicly disclosed and documented, and consented to by all parties, or it's about undisclosed "secret scripts" that Plaintiffs seem to

have invented out of whole cloth, which don't pass muster even under the regular Rule 12 pleading standard, much less the Rule 9(b) standard. No sur-reply is needed or justified here.

***Third***, Plaintiffs argue that they should be permitted another opportunity to explain why and how the description of Web & App Activity (WAA) somehow overcomes the clear and express consent that both apps and their users provide to GA for Firebase. Google's Reply reiterated the argument in its Motion that when users read that WAA can save "activity on sites, apps, and devices that use Google services," that doesn't include the data collected by GA for Firebase.  Indeed, GA for Firebase is not a Google service for *users*, but a product offered to businesses that obtains separate consents from end users to analyze data on an app developers site. And none of the other disclosures Plaintiffs identify—including the privacy policy—could supersede the consent the app developers provided to Google (and that their users were required to provide to the app). Google argued this in its Motion in several places. For example:

> Importantly, while the class is limited to those who used "**non-Google** branded mobile apps" (First Amended Complaint ("FAC") ¶ 225), WAA "saves your activity on **Google** sites, apps and services." Id. ¶ 71. There is no allegation that WAA saves the data that third-party apps authorize GA for Firebase to collect, nor could there be. Whether WAA is "on" or "off," the data that **non-Google** apps collect using GA for Firebase is not stored in a user's Google account . . . .

> Indeed, nothing in the FAC links WAA to the separate and independent product Google provides to app developers (not its users) allowing them to analyze user's interactions with their apps—not a Google service or app. And there is no allegation that GA for Firebase stores that information in a user's Google Account, regardless of whether WAA is on or off. Likewise, there is no allegation that if WAA were turned "on," it would store the information that apps use GA for Firebase to collect . . . .

> These [WAA] disclosures are about what Google stores in users' Google Accounts relating to their use of Google services. Plaintiffs cannot rely on the WAA disclosures to establish Plaintiffs' purported expectation about an entirely separate practice (the collection of *third party* app data for analytics) governed by separate disclosures . . . .

> The webpage states that: "[i]f Web & App Activity is turned on, your searches and activity from ***other Google services*** are ***saved in your Google Account***, so you may get more personalized experiences, like faster searches and more helpful app and content recommendations." *See id*. ¶ 70, n.21 (emphasis added). This language does not suggest that turning off WAA obligates Google to prevent third-party app developers from using Google's analytics tool . . . .

|   |   |
|---|---|
| 1 | App developers of all kinds integrated that tool into their apps. They obtained the consent of users to employ the tool. And Plaintiffs turned off WAA, which stopped the storage of those users' activity on certain *Google* products and services. |
| 2 | |
| 3 | Mot. at 1:20–2:3, 6:20–7:7; 24:12–14 (original emphasis). |
| 4 | Not surprisingly, Plaintiffs vigorously responded to these arguments in their opposition |
| 5 | brief. The second paragraph of the brief argues that "Google defined its 'services' to 'include . . . |
| 6 | [p]roducts that are integrated into third-party apps," and so the description of "Google services" in |
| 7 | the WAA description must extend to GA for Firebase. Opp. at 1:7–16; *see also id.* at 3–4 (arguing |
| 8 | that Plaintiffs interpreted the WAA description to extend to GA for Firebase). The opposition's |
| 9 | argument section on pages 10 through 12 are devoted to this argument. |
| 10 | It was therefore appropriate and necessary for Google to respond to this argument, which it |
| 11 | anticipated in its opening motion. Three paragraphs on pages 9 and 10 of Google's reply brief |
| 12 | discuss and rebut this argument, explaining that Plaintiffs are willfully misconstruing the WAA |
| 13 | disclosure to shoehorn it into a different and unrelated product that is thoroughly disclosed, |
| 14 | documented, and consented to. These three paragraphs are not a basis to permit Plaintiffs to |
| 15 | filibuster on this issue in a sur-reply. |
| 16 | Nor did Google contradict its position in other cases. Google's motion and reply brief |
| 17 | underline the greater context of the Privacy Policy, demonstrating repeated disclosures about GA |
| 18 | for Firebase and other types of third-party data collection, as well as the disclosure from Google |
| 19 | that data collection by third parties using Google Analytics can be addressed by those third parties, |
| 20 | not Google. It is in this context that Google argues that the separate use of the term "Google |
| 21 | services" on the *WAA* website (which is *not* the Privacy Policy) was never meant to, and cannot |
| 22 | reasonably be interpreted to mean, that Google would interrupt the products and services it makes |
| 23 | available to third party businesses under separate disclosures, terms, and consent, and subject to |
| 24 | different data protections, all of which are thoroughly disclosed, based on whether a user's WAA |
| 25 | setting is on or off. Plaintiffs' proposed sur-reply doubles down on the idea that simply matching |
| 26 | the single word "services" to an isolated piece of the Privacy Policy renders their consent- |
| 27 | revocation theory plausible. Google was permitted to and did respond to that argument to explain |
| 28 | |

1  why the Privacy Policy will not support Plaintiffs' unreasonable interpretation of the isolated

2  phrase "Google services" on the WAA webpage.

3        For these reasons, the Court should deny Plaintiffs' motion for leave to file a sur-reply.

4  The Reply fairly raised each issue because it was either raised in the Motion or fairly responded to

5  Plaintiffs' shifting theory of liability articulated in their Opposition.

7  Dated:  February 18, 2021         Respectfully submitted,

9           WILLKIE FARR & GALLAGHER LLP

10           By:   /s/ *Benedict Y. Hur*_____

11           Benedict Y. Hur