Pages 1 - 39

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Alex G. Tse, Magistrate Judge

```
ANIBAL RODRIGUEZ, et al.      )
                              )
          Plaintiffs,         )
                              )
  VS.                         )    NO. C 20-04688 RS (AGT)
                              )
GOOGLE, LLC,                  )
                              )
          Defendant.          )
_____)
```

San Francisco, California
Friday, February 5, 2021

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:

    BOIES, SCHILLER & FLEXNER LLP
    44 Montgomery Street - 41st Floor
    San Francisco, California  94104
  BY:  **BEKO OSIRIS RA REBLITZ-RICHARDSON**
    **ATTORNEY AT LAW**

For Defendant:

    WILKIE FARR & GALLAGHER LLP
    One Front Street - 34th Floor
    San Francisco, California  94111
  BY:  **BENEDICT Y. HUR, ATTORNEY AT LAW**
    **EDUARDO E. SANTACANA, ATTORNEY AT LAW**

Reported By:    Marla F. Knox, RPR, CRR, RMR
        United States Official Court Reporter

<u>**Friday - February 5, 2021**</u>                                    <u>**10:05 a.m.**</u>

**P R O C E E D I N G S**

**---oOo---**

          **THE CLERK:**  Please come to order.  This court is now

in session.  The Honorable Alex Tse presiding.

     Calling civil action 20-CV-04688, Rodriguez, et al. versus

Google, et al.

     Counsel beginning with Plaintiffs' Counsel, state your

appearances, please.

          **MR. RICHARDSON:**  Good morning, Your Honor, this is

Beko Richardson from Boies Schiller Flexner on behalf of the

Plaintiffs.

          **THE COURT:**  Good morning.

          **MR. HUR:**  Good morning, Your Honor, Ben Hur and

Eduardo Santacana from Wilkie Farr & Gallagher for Defendant

Google.

     Mr. Santacana will be handling the argument today.

          **THE COURT:**  Very good.  Good morning.

     If you don't mind, if we can begin with request number 3,

so -- I'm sorry.  Did somebody say something?

          **MR. HUR:**  I was going to say absolutely starting with

request number 3.

          **THE COURT:**  All right.  So as written, my reaction is

I do think it is overly broad.  You are seeking for all

documents related to the State case, but I do think there is a

1    way possibly to fashion a request that wouldn't be overly

2    broad; and I think that would be irrelevant.

3        But before I decide, there is an argument that makes a

4    distinction based on WAA being on versus off.

5        So and I believe that -- that Google is making that

6    argument.  So I will take argument with Google first on that

7    point.

8            **MR. SANTACANA:**  Sure.  Thank you, Your Honor.

9        So a couple of points about the RFP Number 3.  With

10   respect to the distinction that you are focusing on, in this

11   case the Plaintiffs' claims are that they thought that when

12   they turned the setting off, WAA -- or we sometimes call it WAA

13   for ease.

14       When they turned WAA off, they claim that they thought

15   that would cause something else to happen in an unrelated

16   product that Google offers to businesses.  That is the basis of

17   the Plaintiffs' claim.

18       And so the relevance of WAA in this case -- of Web & App

19   Activity -- the setting, is really what did Google say publicly

20   about what it does and doesn't do.

21       In the Arizona case there are a large number of products

22   at issue.  One of them is the Web & App Activity toggle.  And

23   the claim of the Attorney General there is that consumers

24   believed that when they turned a different toggle off called

25   the Location History toggle, yet -- that they had left the Web

 1  & App Activity toggle on, that they believe no location history

 2  would ever be saved to their account.

 3       And the question in that case is whether, you know, what

 4  Google did and what those users believed when the Web & App

 5  Activity setting was turned on.

 6       So the investigation with respect to WAA in Arizona is

 7  focused on what users were thinking about when they turned on

 8  that setting.

 9       This case really is focused on Firebase and the accused

10  functionality in Firebase in light of public disclosures about

11  what happens when WAA turns off.

12       **THE COURT:**  So is it your position that there is no

13  documents in that State case that discuss, refer, relate, to

14  what happens when WAA is on?

15       **MR. SANTACANA:**  No, that's not our position,

16  Your Honor.

17       Our position -- and really I think that the core of this

18  is that --

19       **THE COURT:**  It is different.  They are different

20  lawsuits, different issues.

21       **MR. SANTACANA:**  Well, not only that; but we are going

22  to search for documents in response to the document requests

23  that have been propounded -- that specifically target the

24  issues in this case from sources at Google.

25       So if the Plaintiffs -- the Plaintiffs have 103 document

1    requests out there.

2        This is just one of them.

3        **THE COURT:**  Right.

4        **MR. SANTACANA:**  And so there isn't really a

5    justification in the case law for searching for these documents

6    twice, once if at Google and then again in the Arizona

7    production.  And the percentage of documents in the Arizona

8    production that might be relevant, we believe, is low relevant

9    and responsive to a scope of production that we have in this

10   case.

11       And I think that -- one more thing I would like to add to

12   that is, you know, the parties are very deep in the process of

13   meeting and conferring about these other 102 document requests

14   and what the scope of production in this case should and

15   shouldn't be.

16       And we are disputing before Judge Seeborg in the Motion To

17   Dismiss just what the scope of the case is because we argue

18   that the Complaint is vague with respect to some of the

19   arguments the Plaintiffs are making and meritless with respect

20   to the arguments that are not vague that we know about.

21       So because of that, our objection is that this document

22   request would really short circuit all of that process that we

23   are going through.

24       Instead of coming to you, Your Honor, and saying -- the

25   Plaintiff saying:  We need this particular set of documents

1    about WAA, they are simply just asking for everything from this

2    case -- or, perhaps, as you have proposed to narrow it --

3    everything related to what happens when WAA is off from the

4    Arizona case.

5         But that's going to take work to figure out; whereas, we

6    are already doing that work at Google to find the relevant

7    documents.

8         **THE COURT:**  Okay.  Well, that actually raises a

9    different -- a couple of follow-up questions regarding burden

10   that you are raising.

11        But if what you are suggesting is that you are not even

12   certain that this may be relevant, you know, that may raise a

13   different argument that -- I don't necessarily have that.

14        I mean, I can sit here and hear your arguments; but my

15   purchase from the standard -- the position of the pleadings as

16   they exist today -- what you are saying is the pleadings may

17   look completely different and WAA isn't even relevant, then

18   maybe this is premature.  And maybe this is something that

19   actually both sides should stand down until that is settled.

20        But let's hear from the Plaintiff first on -- first

21   addressing the point about if -- if I am interested in saying

22   that this request for production of documents can be saved, by

23   focusing the search on WAA-related documents, what do you have

24   to say in response to the position that Google's advancing

25   about the WAA off and on and that?

1          And then I want to take the other question about the

2     state -- the status of the claim.

3          **MR. RICHARDSON:**  Absolutely.  Thank you, Your Honor.

4          You know, obviously there is overlap between the two cases

5     with respect to the discovery that has occurred related to WAA.

6          And one of our main concerns has been during the meeting

7     and conferring with Google's Counsel on this Request 3, they

8     have taken the position that none of the documents in Arizona

9     are relevant because the case there deals with WAA being on,

10    and our case deals with WAA being off.

11         And we don't see it that way.  I mean, we look at the

12    documents that we already have.  Clearly, they are heavily

13    redacted, so we can't see the full context.  But these are

14    documents where Google employees have admitted that Google's

15    efforts to obtain consent is a mess and that the disclosures

16    are something people won't figure out -- these are direct

17    quotes from Google's e-mails -- and that WAA, the controls are

18    confusing.

19         And there is a study that Google included in that set of

20    documents that talks about what users understand with respect

21    to WAA being on.

22         And obviously, what users understand with respect to WAA

23    being on is, you know, relevant to understanding what users

24    believe when it is turned off.

25         So we think that this on/off distinction is going to cause

1  huge problems in terms of Google withholding relevant documents

2  that go to the core issue in this case with respect to WAA,

3  which is tied up with every one of our claims.

4      So this is not, you know, a side issue or a functionality

5  that is not core to the case.  This is the case.

6      The case is about Google telling regulators and users that

7  users get to control what Google collects, and Google is

8  required to do that by the 2011 FTC consent decree.  It is

9  supposed to give users control.

10     But what we have discovered is that in a way Google didn't

11 connect the switch to the process.

12     Firebase is collecting data automatically regardless of

13 whether users turn the switch on or off.

14     So this artificial distinction of the on/off switch, we

15 think that all the documents related to that from the Arizona

16 case should be produced.  And they can be produced right away.

17     I mean, this was a -- you know, the four documents we

18 provided to, Your Honor --

19         **THE COURT:**  Uh-huh.

20         **MR. RICHARDSON:**  -- came from a declaration that was

21 submitted by the Wilkie firm in August because the same law

22 firm is representing Google in the Arizona action and in this

23 action.

24     And I had a series of exhibits that were redacted, and so

25 that's where these come from.  Those documents, they have them

1  and they can be turned over right away.

2       **THE COURT:**  Well, they can -- I mean, they can

3  certainly hand over every piece that they handed over in

4  discovery because it is probably on some hard drive or Cloud or

5  something like that.  But that's not my charge.

6       My charge is -- this isn't necessarily a burden analysis.

7  It is whether or not it is relevant.  And your request

8  basically is asking for every bit of discovery in that case,

9  and I'm not convinced that -- that everything in Arizona

10  mirrors with what this case is.

11       And so that's why I am focusing on the WAA connection and

12  in particular the -- whether or not it really does make a

13  distinction that -- the on/off.

14       But what about what Google is saying that they are in the

15  midst of challenging on 12(b) some of these claims, and it

16  could be that the claims that come out of this pleading battle

17  don't implicate WAA.  I don't know if that's possible.

18       But let's say that is what happens.  I mean, should that

19  affect what I order?

20       **MR. RICHARDSON:**  So every one of the claims in this

21  case implicates -- WAA is implicated in every one of our

22  claims.

23       **THE COURT:**  Okay.

24       **MR. RICHARDSON:**  So if you look at the other action

25  that is preceding before -- proceeding before Judge Koh, Google

1    in that case sought a stay of discovery pending a ruling on the

2    Motion To Dismiss.  And the Court denied that.

3        So we are in the middle of negotiating production with

4    custodians and non-custodial documents and search terms to kind

5    of -- the hard work that the lawyers need to do with the

6    assistance of the Court to get a case moving forward.

7        The problem in this case, you know, we have tried to get

8    things going because we have a November ordered cut-off for

9    fact discovery.  That is in Judge Seeborg's ruling.

10       But so far Google has only produced public documents.  To

11   us it has produced no non-public documents.  It has identified

12   only three individuals in its initial disclosures.

13       Google's Counsel recently suggested to us that it believes

14   there should be no custodial productions in this case at all

15   and has only agreed to give us a letter with one or more

16   proposed custodians.

17       And, meanwhile, in the ESI meet-and-confer, they refuse to

18   give us the names of any Google employees involved with WAA or

19   otherwise.

20       So we were really trying in good faith to move this

21   process forward using the Arizona documents where we understand

22   there were 13 custodians.

23       We don't know who they were because Google hasn't told us,

24   and that information is redacted.  And Google even identified

25   the person most knowledgeable about WAA in that case.

```
 1        But, again, we don't know who that person is.  And so we
 2   are trying to use these documents -- some of which are clearly
 3   on point with Google's pending Motion To Dismiss and I think
 4   undermine the arguments Google is making to the Court there --
 5   but more broadly, I think these documents are really important
 6   in terms of getting the parties to a place where they can move
 7   forward with discovery here to obtain relevant documents.
 8        You know, right now I feel like we are really playing hide
 9   the ball and not getting what we need to move this case
10   forward.  That's where Google is.
11            THE COURT:  Okay.  Does Google want to say something
12   on this point on Number 3?
13            OTHER ATTORNEY:  Yes, Your Honor.
14        MR. SANTACANA:  Your Honor --
15        MR. HUR:  I'm sorry to interrupt.  I am lead counsel
16   in the Arizona case, so just one quick point of clarification.
17            THE COURT:  Sure.
18        MR. HUR:  In the Arizona case -- to the extent WAA is
19   relevant -- it is based on an assertion that consumers were
20   misled into keeping it on.
21        In this case whatever it is about WAA, that cannot be the
22   case because all of the users who are potential class members
23   in this case affirmatively turned it off.
24        So that's why by definition WAA is not relevant to this
25   case in the same way it is in Arizona.
```

1      **THE COURT:**  Okay.  That point I understand, which is

2   why I had the follow-up point.  And that is while I understand

3   the difference and the distinction in the case with the

4   position of WAA, what I don't know is what kind of documents

5   were produced in that Arizona litigation.

6      And if in connection with that litigation there were WAA

7   documents that relates to it being on and off, then arguably

8   wouldn't that be relevant in this case?

9      **MR. HUR:**  So, Your Honor, there are some documents --

10     **THE COURT:**  Right.

11     **MR. HUR:**  -- in the Arizona case that are relevant.

12  But in order to -- as Mr. Santacana said --

13     **THE COURT:**  Yeah.

14     **MR. HUR:**  -- we are going to be producing documents

15  about the WAA functionality that is relevant to this case

16  anyway.

17     And to go and basically do that twice is both unnecessary

18  and burdensome, and it is not the request either that the

19  Plaintiff put forward.

20     **THE COURT:**  I agree with that.  That what we are

21  talking about is not the request.  And my point that I said at

22  the top is that I would agree that that request is overly

23  broad.

24     But that said, I think that there was a way that they

25  could be -- redraft that request that might be more consistent

 1   with where this argument is going and that would survive a

 2   discovery dispute.

 3          **MR. RICHARDSON:**  Your Honor, may I respond very

 4   briefly?

 5          **THE COURT:**  Yes.  Go ahead.

 6          **MR. SANTACANA:**  I would like to make a couple

 7   additional points in response to what the Plaintiff said.  And

 8   in particular what you just said, Your Honor.

 9       That's exactly the problem is that to craft a scope of

10   production based on what has been produced in another case is

11   the exact danger that clone discovery presents.

12       As Mr. Richardson alluded to, the parties do have a number

13   of disagreements right now about what the scope of discovery

14   should be in this case including how much should Google produce

15   about WAA.

16       Should it be producing just what it says publicly about

17   how it works?  Does it need to be producing technical

18   documents?  Does it need to be producing internal e-mails?

19       These are disputes that Your Honor may see in the future.

20          **THE COURT:**  True.

21          **MR. SANTACANA:**  But they aren't ripe yet.  And so to

22   just blanket order the production of everything relating to WAA

23   or even just when WAA is turned off from Arizona, it will

24   circumvent that entire process that we are going through.

25          **THE COURT:**  Or maybe I will be highlighting to you

1   what the direction I'm inclined to go.  And, therefore, it can

2   direct the discovery disputes that are ongoing now that are not

3   before me.

4         **MR. SANTACANA:**  Perhaps, Your Honor; but we haven't

5   fully -- part of it is that we haven't fully briefed these

6   questions.  These are detailed questions, and we --

7         **THE COURT:**  I understand.  I understand.  But I will

8   be giving you some guidance with respect to this production on

9   what I think is relevant; what can be produced.  And that may

10  guide you and maybe assist you and may move discovery along.

11      So I hear what you are saying, which is everything is

12  still being negotiated; but -- the discovery dispute is before

13  me.  I can't just make it go away.

14      So one party wants a resolution.  They are teeing it up.

15  I have to rule on it unless I find that there is no reason to

16  rule on it.

17      I hear your argument.  And, I guess, maybe the Plaintiff

18  is going to address that more fully now.

19        **MR. RICHARDSON:**  If I may, Your Honor, we very much

20  appreciate your time and any guidance you can provide here.

21      You know, we are here because we served these first three

22  requests, and Google said categorically it will produce zero

23  documents in response to any of these requests.

24      So, you know, we are open and certainly focused on making

25  this an efficient process.

1          **THE COURT:**  Yeah.

2          **MR. RICHARDSON:**  So that we can obtain relevant

3     documents and present our clients fairly.

4          Now, Google has tried to characterize these Arizona

5     documents as just the musings of Google employees.  They are

6     free to make that argument to the Court and the jury and any

7     motions in limine.

8          What we are concerned about is Google is trying to use

9     that to withhold these documents, and we are really concerned

10    about this on/off distinction because -- you know, Mr. Hur just

11    said that, you know, that that is limited to keeping it on.

12         But the fact is the disclosures are the same.  These are

13    disclosures about Google's functionality, which is the WAA

14    on/off switch.

15         So if we are in a situation where Google is parsing

16    through -- whether it is the documents given to the Arizona AG

17    or other documents that we are considering production here and

18    asking its reviewers to draw this distinction if it is dealing

19    with WAA being on, withhold it; if it deals with WAA being off,

20    produce it -- we think that is going to lead to a huge number

21    of problems.

22         The WAA functionality as a whole is core to the case, and

23    that's why we are seeking these documents.

24         I have seen other cases -- you know, there is a mixed

25    number of decisions where you are seeking documents from other

1    cases, and I know we will talk about this more with requests

2    Number 1 and 2.  But with respect to the documents in Arizona,

3    we thought this was a very discrete and relevant set.

4        If we want to focus on the WAA documents, you know, one

5    approach would be to use a set of search terms that are WAA

6    focused and apply those to the set of documents and, you know,

7    consent focused documents and have those produced.

8        But we are very concerned about that next step where

9    Google looks at the document and says:  This is about WAA on

10   withholding.

11           **THE COURT:**  Okay.  All right.  I think I have heard

12   argument on this one.  And why don't we move to request Number

13   1 regarding the Regulator 2014.

14       I would like to hear from Google regarding the burdens

15   you -- that objection here is principally that it is very

16   burdensome.

17       So describe for me what those burdens are.

18           **MR. SANTACANA:**  Sure, Your Honor, and I think actually

19   I would characterize our principal objection as one of

20   relevance, but I will address the burden first as you have

21   asked.

22       We have investigated the question of how many

23   investigations from regulatory authorities are even at issue,

24   and we are talking about at least several dozen, maybe three

25   digits of investigations that resulted in the production

1  documents.

2       **THE COURT:**  Several dozen to three digits, that's a

3  huge range.  I mean, is it more dozens or more to a hundred?

4       **MR. SANTACANA:**  We think it is around a hundred.  It

5  may be a little less.  It may be a little more.

6       **THE COURT:**  Okay.

7       **MR. SANTACANA:**  And the -- the process that would be

8  required to comply with RFP Number 1 -- we have already

9  identified that none of them focus on anything related to these

10 allegations; that none of these investigations have ever

11 accused Google of misleading people in this way.  Only

12 Plaintiffs' Counsel have ever come up with that argument.

13      So we would have to be looking at these investigations

14 that related to other things and figuring out if they contain

15 relevant and responsive documents to the Plaintiffs' document

16 requests, and we would have to do it one-by-one.

17      So each one would need to be sort of made live; searched;

18 hand reviewed and probably the -- in our view the sort of stray

19 references to Firebase that may be contained in them would make

20 up a very small percentage of the overall documents because

21 none of those investigations were really about Firebase.

22      Firebase is a big product that Google has that it offers

23 to businesses.  So there will probably be stray references, but

24 whether any of them are relevant and responsive is a different

25 question.

1          **THE COURT:**  Uh-huh.

2          **MR. SANTACANA:**  That's why when -- you know, when we

3    looked at the case law, we looked at cases like *Volkswagen*

4    where Judge Corley said:  Even when the cases overlap in

5    subject matter, in that case Volkswagen Clean Diesel scandal

6    was the issue in both of the productions that were being talked

7    about, both of the cases that were being discussed.

8          Even there she said:  Why don't you just ask for what you

9    want and let the Defendant go get it, rather than say:  Look

10   for everything you have ever produced to anybody.  And if it

11   happens to mention something in my Complaint, then give that to

12   me.

13         **THE COURT:**  So in connection with this position that

14   you have about a hundred investigations, what kind of details

15   can you provide about the different regulators?

16         Are they all over the place?  Are they one board or one

17   regulator?

18         That's just for my background in terms of when you are

19   talking about the regulators.  Are they -- I'm assuming they

20   are varied and they may be all over the globe.

21         **MR. SANTACANA:**  Yes, Your Honor, it is a variety.  And

22   I don't have a list of each one of those where, you know, where

23   each one is located.  But Google, of course, responds to

24   investigations from regulators all over the world.

25         **THE COURT:**  Right.  And you have already touched upon

1   the relevance part of your position, which is that your

2   position that -- represented to the Court -- is that there are

3   no investigations that are similar to this one.

4       **MR. SANTACANA:**  Yes, Your Honor, there aren't any --

5   the only potentially responsive documents would be in one of

6   these productions by happenstance, not by virtue of overlap

7   between this case and any of those investigations.

8       **THE COURT:**  I see.  Okay.  All right.  Now, I will

9   hear from the Plaintiff, please.

10      **MR. RICHARDSON:**  Thank you, Your Honor.

11      You know, these first two requests in a way, they probably

12  should have had the order flipped.

13      I mean, Request Number 2 is just asking for copies of the

14  requests, the written requests, that Google has received from

15  regulators during a set time period concerning Firebase or

16  Google's privacy practices.

17      So that was kind of to try and understand the contours of

18  what might exist.  And, again, this is the first time that

19  Google has provided any information about the scope of what

20  might be responsive to these two requests.

21      We are happy to try and work through these issues and come

22  up with, you know, the relevant set, the most focused set, to

23  do this efficiently.

24      So Request Number 2 is just one of the requests that

25  Google received.  And then Request Number 1 is consistent, we

 1    thought, with Judge Seeborg's ruling in the *Jones V Deutsche*

 2    *Bank* case where it was productions to regulators on a focused

 3    topic.  And here it was focused on Firebase and the collection

 4    of user data, which is the topic at issue in, again, all of our

 5    claims.

 6          So this isn't a possibility that, you know, if one claim

 7    gets dismissed on the Motion To Dismiss, this will somehow

 8    become irrelevant.  This is the case.

 9          And so we have been trying to get information from Google

10    to try and understand what can be done reasonably with these

11    requests.  And so far they have given us no information.

12          It sounds like they are saying there are no investigations

13    focused on Firebase.  I guess one follow-up question is:  Are

14    there any requests to Google from any regulators that are

15    responsive to Request Number 2?

16          Because if there are, that would be a relevant and narrow

17    set of documents that can be evaluated to try and identify the

18    documents that are responsive to Request Number 1.

19          Now, Request Number 1, I mean, it comes out of this

20    problem that we have in the case where Google in this

21    litigation is saying that WAA and Firebase are separate.

22          But for years Google has been telling the public and

23    regulators that users have control over Google's data

24    collection including with WAA.

25          They tell the regulators that users get to choose whether

1  Google collects data, and turning WAA off is supposed to stop

2  that data collection.

3      And so that's what has been told to regulators.  That is

4  what Google is representing to regulators.  But now in the

5  Motion To Dismiss Google is going to the Court and saying:  No,

6  that has nothing to do with Google's data collection.  And, in

7  fact, the users are powerless to stop this data election.

8      It is not just that it is the wrong switch.  Google is

9  saying there is no switch.

10      And so we think that these regulator documents are

11  important because there is this fundamental inconsistency

12  between what Google has been telling regulators and what Google

13  is now arguing to the Court on a dispositive motion.

14      So that's why we have been seeking these documents now.

15      Also, you know, the FTC history is directly relevant.  We

16  have included allegations in the Complaint.  There is the 2011

17  consent decree which requires consent for Google's data

18  collection.  And then there has been three actions by the FTC

19  saying that Google has falsely represented user control and

20  then collected data without consent.

21      That's where we are in this case as well.  We have the

22  same issue.

23          **THE COURT:**  Uh-huh.

24          **MR. RICHARDSON:**  Google is making representations of

25  user control that are incorrect and at the same time collecting

1    user data without consent.

2         So that's why we are seeking these regulator documents.

3    We served these requests consistent with Judge Seeborg's

4    ruling.  We are happy to meet and confer with Google on these.

5         We served these three months ago, and this is the first

6    time we are getting information about what documents might

7    exist in response.

8         **THE COURT:**  So in terms of the meet-and-confer

9    process -- I mean, it has been represented to me that you have

10   been very diligently and actually pretty robustly meeting and

11   conferring.  But now I'm getting the impression that you might

12   actually benefit from further and meeting and conferring at

13   least with respect to numbers 1 and 2 but I don't know.

14        If you are hitting a wall and you feel like you have

15   exhausted the meet-and-confer process, that's fine.  And that's

16   why you can bring it to the Court's attention.  But are you

17   suggesting that maybe there is work that can be done to refine

18   1 and 2?

19        Because I do think 1 and 2 are also overly broad.  Again,

20   I'm of the similar vein -- maybe less so number 2 because of

21   the burden issues that might be with 1 too -- but is there a

22   way that you can work together to narrow the scope of what can

23   be searched?

24        **MR. RICHARDSON:**  You know, we certainly -- we

25   unfortunately hit a wall with our many negotiations up until

1   this point.

2           **THE COURT:**  Okay.

3           **MR. RICHARDSON:**  We are now hearing information for

4   the first time that I think is highly relevant.

5        You know, if, for example, there were a production

6   responsive to request 2, that would be helpful in, you know,

7   discussing and navigating any production in response to Request

8   Number 1.

9        You know, they are talking about Firebase.  But, you know,

10  obviously WAA is very critical here as well.  So we are just

11  trying to understand what are the documents that exist and what

12  is the most efficient process to have those documents produced

13  in a timely way.

14          **THE COURT:**  Okay.

15       Maybe you can now address the point -- the burden issue.

16  I mean, why isn't -- that sounds pretty burdensome to me.

17          **MR. RICHARDSON:**  In terms of --

18          **THE COURT:**  Hand review of all the records related to

19  the regulatory work.

20          **MR. RICHARDSON:**  Yes.  So we see it a little bit

21  differently.

22       I mean, in terms of Request Number 2, we don't see much of

23  a burden there.  It is just the request that Google has

24  received.

25       This is the first time that we have heard any number

attached to what might be responsive there, though, it is still unclear to me Google's position as to whether that is something less than the dozens or three-digit number they referred to in terms of investigations overall.

      **THE COURT:**  Well, I think he clarified that.  He said it is closer to a hundred.

    So assuming there is a hundred but the hand review, there only may be a stray reference to Fire --

      **MR. RICHARDSON:**  To Firebase.

      **THE COURT:**  -- to Firebase.  What kind of -- other than just coming back and saying it is not burdensome, why isn't that burdensome?

      **MR. RICHARDSON:**  So in terms of burden, I mean, these are documents that Google has already produced.  So reproducing a document is not burdensome.

    The only burden comes about if Google wants to re-review those documents to only produce a subset.

    Now, that could be done fairly quickly and efficiently by just using search terms without any additional relevance determinations.

    And, again, we are very concerned about the relevance determinations with that on/off distinction.  So it is possible to take these -- the set of documents and apply search terms and produce those documents.

    I mean, that's something that was done in another case.

```
 1    And, perhaps, I can give you the citation for that case.  It
 2    was Capital Ventures versus Morgan Mortgage Acquisition.  And
 3    it is 2014 Westlaw 143-1124.
 4        And that's where there was, you know, agreed upon search
 5    terms that were run on the documents produced in the other
 6    matters.
 7        So that is an approach here that I think actually limits
 8    the burden and makes this manageable.
 9        Again, we see this as consistent with Judge Seeborg's
10    order in the prior case in terms of trying to obtain relevant
11    documents that were otherwise turned over to regulators.
12            MR. SANTACANA:  Your Honor, if I may.
13            THE COURT:  Yes, of course.
14            MR. SANTACANA:  So there is a number of things I want
15    to respond to, but I want to start on this question of meet and
16    confer.
17        Mr. Richardson said, you know, maybe we could work through
18    these issues.  And it is true that we have exchanged many
19    letters and had many multi-hour phone calls about these
20    requests.
21        It is also true -- and it hasn't been mentioned -- that
22    Mr. Richardson and Boies Schiller represent different
23    Plaintiffs in a different case where these same document
24    requests have been propounded; virtually identical document
25    requests with virtually identical arguments.  And that
```

discovery dispute has also come to a head in that case.

I don't think it is accurate -- and I'm not sure why he is mentioning that these are the first time we have discussed numbers.

Both we and the counsel in the other case have always said that the burden would be very significant.  It shouldn't be any surprise that Google has produced documents in a lot of investigations around the world.  And that has always been the basis of our burden objection.

But it's true.  Producing a document is almost never the source of the burden.  It is reviewing the document that is the problem.  That's what causes the burden here.

We can't produce a document without looking at it, as Mr. Richardson suggested.  And that really would amount to what the cases that we cited said is impermissible, which is the fact that it was produced elsewhere and has a particular search term in it means you can just open the books and let the other side rifle through it to see what is relevant.

That is prejudicial to Google.  Even if we could do it with no burden at all -- which is not possible and not true because we still have to go through each one of these one-by-one -- it's prejudicial to Google because it is not relevant.

The Plaintiffs and the Plaintiffs' Counsel don't have the right to see documents that aren't responsive and relevant to

1  this case, and we would have to review them to know that.

2      I do, however, want to bring this back to the main point,

3  which is that -- the fact that there has been a prior

4  investigation that happened to include documents that touch on

5  issues in this case is not relevant to this case.

6      And court after court after court has said that asking for

7  every document in another matter or even every document limited

8  by a broad topic -- so in the *Goro versus Flower Foods* case

9  that we cited, the broad topic was -- it was a

10 misclassification case.  And they said:  Give us everything

11 from this specific litigation in Georgia relating to the

12 classification of distributors as independent contractors.

13     So that sounds like a specific topic.  And even still

14 Judge Burkehardt in the Southern District said:  No, that's not

15 what you do.

16     What you do is you say:  Give me the documents from your

17 files that are relevant and responsive.

18     And then if there is a dispute about that scope, bring

19 that to me.  Bring that to the Judge.

20     The other point I wanted to make -- and I guess the last

21 point -- I don't know about this case from Massachusetts that

22 Mr. Richardson cited.  I don't think they have ever cited that

23 to us before, and I haven't had a chance to read it.

24     But the only relevance argument that the Plaintiffs have

25 ever made is that they say it's possible -- they speculate --

1   it's possible that Google said something to a regulator -- and

2   by "said," I guess they mean produced a document to a

3   regulator -- that somehow undermines the arguments that it is

4   making in this case.

5        I'm not sure I understand the logic of that position.  Of

6   course, if Plaintiffs are asking for relevant responsive

7   documents, we will produce them.

8        This dispute has never been about whether Google with

9   withhold relevant documents.  We are producing documents.

10       The dispute is just about whether we have to in addition

11  to that go find ones we have produced to other regulators and

12  produce them again.

13           **THE COURT:**  Well, I think the Plaintiff wants whatever

14  communications you have had with the regulator regarding

15  hopefully topical instances because it is basically like an

16  admission or it is basically something that can be used.

17       You are making representations about something to a

18  third-party, a regulator.  And to the extent it is relevant --

19  I agree you have to meet that threshold; that has to be

20  relevant.  But if there are any documents to a regulator, they

21  should get it.

22       And I don't think I hear you disagreeing with that.  I

23  think what you are saying is that there is a high burden in

24  order to see if there is any relevant records.

25       But what about this idea that that maybe there is a way to

1   get there with alleviating some of the burden to do a term

2   search?  Is that feasible here?

3            **MR. SANTACANA:**  Well, again, we -- each one would have

4   to be done individually.  So it is not like we can just press

5   one button and search for one topic and see everything.

6        So what -- we are talking about a very significant amount

7   of energy and effort just to figure out what the -- what the

8   responsive number of documents are to a particular search term.

9            And, of course, we would have to negotiate what the search

10  terms are; and that would determine how many documents we are

11  even talking about.

12       And then after that, we would have to -- we would have to

13  review those documents.  Of course, we wouldn't just hand over

14  any document that mentions Firebase.

15       And I don't think -- I don't think that the Plaintiffs

16  would even take the position that any document that mentions

17  Firebase is relevant.  This case deals with a particular sliver

18  of Firebase and a particular functionality in that sliver of

19  Firebase.  So I don't think that would be appropriate.

20       And that's -- I mean, if you look at how the first

21  document request is worded, it really does capture, if you read

22  it broadly, an enormous potential number of documents that

23  aren't actually fixated on any of the issues in this case.

24       I think I may have said something I need to clarify

25  earlier about the Motion To Dismiss.  The issue that Judge

1   Seeborg is going to help us clarify is just how big is the

2   sliver of Firebase that is at issue in this case.

3        We think that, you know, we have been put on notice about

4   one particular product and one particular functionality out of

5   19 that there are in Firebase.

6        The Plaintiffs have been telling us in meet-and-confer

7   they want much more than that.  But their Complaint doesn't

8   discuss any of the other 18 products.

9        So Judge Seeborg is going to have to decide whether they

10  have adequately alleged anything about the other 18 products

11  essentially.  That is just kind of a simplified way of saying

12  it.

13       So that also impacts these document requests because right

14  now as they are worded, they reach essentially anything that

15  may mention Firebase.

16       **THE COURT:**  Before I let you go and Mr. Richardson

17  respond, do you have a sense of what the universe in total

18  number of documents, records, that we are talking about here?

19  terabytes?  Give us a sense of that.

20       **MR. SANTACANA:**  I don't -- I don't know how many

21  documents.  I think even to do that we would have to open up

22  each production -- I don't think all of them are live -- and

23  then count them -- you know, run a count function which we have

24  not done.

25       **THE COURT:**  Okay.  All right.  Mr. Richardson, go

1   ahead and respond.

2           **MR. RICHARDSON:**  Thank you, Your Honor.

3       You are absolutely right.  The representations made by

4   Google about the functionalities at issue in this case are

5   relevant.  That's what we are trying to explore here.

6       And that includes the Arizona Attorney General action, the

7   representations about WAA and how that functions.

8       So I do want to be clear that with respect to request 3,

9   it is not just the internal e-mails.  It is what Google said

10  about this critical functionality, and it is the same question

11  with Request Number 1 and 2.

12      So I think Request Number 2 can help the parties make

13  progress in terms of what is reasonable and what is efficient

14  and what can be done in the near term.

15      But so far, we have only heard the, we are not going to

16  give you anything, response.

17      You know, Counsel raised the fact that I'm representing a

18  separate group of Plaintiffs in another case.  In that case,

19  interestingly enough, the requests are slightly different.

20      Because like in this case they are not just all regulator

21  documents.  They are regulator documents focused on the

22  particular issues in that case which is private browsing.  It

23  is a separate settle of issues.

24      But counsel in that case has been willing to engage with

25  us; talk about what exists and consider, like, a possible

1   compromise.

2       So right now we have proposed a compromise that involves,

3   you know, us getting information about what exists; Google

4   turning over the documents from Arizona that are relevant in

5   the case; the FTC consent decree that requires these regular

6   reports by Google to the FTC about Google's controls and how

7   users are able to control Google's data collection.

8       And so we have asked for those because that might help us

9   cut through some of the dispute on the FTC matters and make

10  sure that we are getting what is relevant there.

11      And so we have been trying to explore these possibilities

12  in the other case.  It is only in this case where we have hit a

13  wall, and we have been told that nothing is going to be

14  produced in response to these three requests.

15      You know, one other proposal that we made in the other

16  case is Google has a chief privacy officer.  He is the

17  individual who is responsible for the interaction with

18  regulators.  That's what it says on his LinkedIn profile and

19  otherwise.  He is the person.

20      So if there are, you know, regulator communications and

21  investigations, we proposed including him because that cuts

22  through some of this.  Just make sure we are not missing what

23  Google is telling regulators about the core functionality.

24      And, of course, with respect to his documents, there would

25  be the negotiations over search terms to make sure that we are

1   getting, you know, what is relevant.

2       And so we are trying to make progress.  It is only -- we

3   are here before Your Honor because we have been unable to do so

4   in this case.

5           **THE COURT:**  When is the Motion To Dismiss?

6           **MR. SANTACANA:**  March 4th.

7           **MR. RICHARDSON:**  That's the hearing.  It has been

8   fully briefed.  So we are just awaiting a ruling on that one.

9           **THE COURT:**  So I'm going to ask this question of both

10  sides:  Why shouldn't we stay this until the resolution of the

11  Motion To Dismiss?

12      I will hear from the Plaintiffs first on that.

13          **MR. RICHARDSON:**  Yes, Your Honor.  So from our

14  perspective, you know, Judge Koh correctly denied the stay

15  request in the case that is pending on the private browsing.

16      And Google did not seek a stay here.  And instead, Judge

17  Seeborg directed the parties in the October case management

18  conference to proceed with discovery and to do so in a

19  reasonable way.

20      And so what we did was we focused on document discovery.

21  This is the hard work that we have to do to prepare for

22  depositions, to try and meet the Court's schedule of a close of

23  fact discovery in November of this year.

24      So right now we thought that these three requests would

25  help us make considerable progress in terms of obtaining

```
 1    relevant documents, identifying relevant custodians and making
 2    sure that we were in a position that we could be prepared to
 3    launch into depositions.
 4        We haven't noticed any depositions yet.  We have served a
 5    limited number of ROGs and RFAs.
 6        We also think that these are issues that are teed up by
 7    Google's own Motion To Dismiss.  So Google says in its Motion
 8    To Dismiss that its disclosures are clear and that users
 9    consented.
10        We think these documents from the Arizona case are
11    directly contrary to that and are admissions by Google
12    employees.
13        So I think we very reasonably thought we should be
14    entitled to that discovery.
15        THE COURT:  But don't you think your discovery
16    position would be stronger if you had the guidance from Seeborg
17    after the Motion To Dismiss potentially?
18        MR. RICHARDSON:  I guess --
19        THE COURT:  It depends how he rules obviously.  But
20    some guidance from Seeborg as to what is a viable claim framing
21    the claim gives you either the complete ammunition for the
22    discovery or you know that you need to move on.
23        Why isn't -- I can appreciate why Judge Seeborg wanted
24    discovery to go on because these things take time; and there is
25    work to be done, so let's keep it moving.
```

1    Judge Koh's ruling, I don't know how relevant that is

2    here.  But it's -- it does seem a more prudent course that if

3    it is March 4th we are talking about -- and, clearly, you have

4    hit a wall.  I'm not saying that you don't need court

5    intervention.  Clearly, you have met and conferred.  But it

6    does seem like some guidance may be on the way.

7        **MR. RICHARDSON:**  Well -- I guess, from our

8    perspective, I mean, we would appreciate the court guidance

9    from Your Honor at this stage because I think we are actually

10   hitting some fundamental disputes regarding the nature of

11   discovery in this case that will cover all claims.

12       We don't see a scenario in which all of our claims are

13   going to be dismissed.

14       And the fact is that each and every one of the claims

15   deals with WAA.  It deals with Firebase, and it deals with

16   Google's, you know, general disclosures and representations to

17   regulators about user control.

18       So these are issues that we think really deserve attention

19   now early on so that we can make some real progress.  We have

20   otherwise had a very difficult time getting going with any

21   meaningful discovery.

22       Like I said earlier, we have only so far received public

23   documents from Google.  No information to identify custodians,

24   no copies of any of these e-mails that were heavily redacted in

25   the Arizona case that seem directly on point to the issues in

1    the Motion To Dismiss.

2         So we really think that it's important to move forward.

3         We also don't know that Judge Seeborg is going to rule on

4    March 4.

5              THE COURT:  No, I know.  I realize that.

6              MR. RICHARDSON:  It takes time.

7              THE COURT:  I realize that.

8         I will hear from Google.  Should I wait until after the

9    Motion To Dismiss?  Should we wait?

10             MR. SANTACANA:  Your Honor, we asked them to wait on

11   these until the Motion To Dismiss; and they declined to do

12   that.

13        And unlike in this other case Mr. Richardson is

14   discussing, the Plaintiffs haven't proposed any compromises to

15   us.  They have only said they want every document from Arizona

16   and every document that mentions privacy or Firebase from any

17   other investigation.

18        So that's -- you know, when we talk about hitting a wall,

19   that's how we hit this wall.

20        The March 4th ruling will illuminate a significant portion

21   of this case.  It would be good to know if there are any

22   claims.

23        The Plaintiffs view it one way, and that's fine.  We view

24   it a very different way.  And we think that the scope of their

25   claims is not what they are representing to you right now.

1    There are no fraud claims in this case, Your Honor.

2    Whether Google is saying one thing to one person and another

3    thing to another person, that is not actually what this case is

4    about.

5    We have a wire tap claim.  We have a computer data abuse

6    and fraud act claim (sic).  These are claims that deal with the

7    question of what does Google's product do and what did Google

8    say it would do.  That's it.  Those are the questions of

9    relevance in the case.

10   This isn't like some of these other cases.  And there are

11   plenty of cases where something like this is dismissed based on

12   the privacy policy, the user's consent to the use of an app.

13   So that's the kind of thing that we are hoping to see on

14   March 4th is clarity about what the scope of the case is.

15   The other point I want to make sure I have made -- because

16   I think it has gotten lost here -- the Plaintiffs have

17   propounded 103 document requests.

18   Judge Seeborg asked them to be reasonable while the Motion

19   To Dismiss is pending because we actually would have had it

20   heard in December, and the Plaintiffs chose to amend their

21   Complaint rather than respond to our last motion.  That's why

22   we have a hearing now in March rather than three months

23   earlier.

24   Judge Seeborg asked them to be reasonable.  And they

25   propounded document requests for things like every document

1  relating to Google lobbying Congress about privacy laws and

2  every document relating to Google's finances with respect to

3  ads, things that are very far afield from any of the

4  substantive matters in this case.

5      We came to a head on that issue.  We were going to move

6  for a protective order, and then the Plaintiffs withdrew their

7  remand that we respond to 60 of the 80 document requests.

8          **THE COURT:**  How is this relevant to this motion?

9          **MR. SANTACANA:**  This is relevant because we are

10  proceeding on document requests other than these three.

11      Mr. Richardson over and over again:  We are just trying to

12  get this started.  Do this the easy way.

13      The case law says you don't get to do it the easy way.

14  You don't get to take a shortcut on document requests that are

15  narrowly tailored with reasonable particularity by simply

16  asking for everything you have given to somebody else in a

17  broad scope.

18      So we have got document requests.  We are meeting and

19  conferring about them.  And they actually -- you know, they

20  target specific topics we can discuss with you if we have

21  disputes.

22      But a document request like this which just says:

23  Everything related to Firebase or privacy, does not reasonably

24  target the issues in this case.

25          **THE COURT:**  Okay.  All right.  Anything further or is

1    this submitted?

2            **MR. SANTACANA:**  Not from me, Your Honor.

3            **THE COURT:**  Okay.

4            **MR. RICHARDSON:**  I believe it is submitted,

5    Your Honor.  And I would just reiterate that any guidance you

6    have to offer the parties would be very much appreciated --

7            **THE COURT:**  Okay.

8            **MR. RICHARDSON:**  -- at this point.

9            **THE COURT:**  All right.  The matter is submitted thank

10   you very much I appreciate it .

11           **MR. SANTACANA:**  Thank you, Your Honor.

12           **MR. RICHARDSON:**  Thank you, Your Honor.

13           **MR. HUR:**  Thank you.

14               (Proceedings adjourned at 10:56 a.m.)

15                       ---oOo---

16

17

18

19

20

21

22

23

24

25

1

2

3                    __CERTIFICATE OF REPORTER__

4           We certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:   Monday, February 22, 2021

8

9

10

11    _____

12              Marla F. Knox, RPR, CRR
                  U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25