May 4, 2021

**Submitted via ECF**

Magistrate Judge Alex G. Tse
San Francisco Courthouse
Courtroom A - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

    Re:    Joint Letter Brief re: Google Custodians
             *Rodriguez v. Google LLC*, Case No. 3:20-cv-04688-RS (N.D. Cal.)

Dear Magistrate Judge Tse:

    Plaintiffs and Google LLC ("Google") submit this joint letter brief regarding Plaintiffs' request for an order that Google search additional custodians' ESI. Counsel for the parties met and conferred in good faith, including by videoconference on March 31, and reached an impasse. Ex. A includes Plaintiffs' proposed order, and Ex. B includes Defendant's proposed order.

**PLAINTIFFS' STATEMENT**

Plaintiffs respectfully request an order compelling Google to add ten Google employees as custodians: Sundar Pichai, Greg Fair, Eric Miraglia, Stephan Micklitz, Guemmy Kim, Jason Titus, Jan Hannemann, Rahul Roy-Chowdhury, Keith Enright, and Donald Harrison. *See Vasudevan Software, Inc. v. Microstrategy Inc.*, No. 11-CV-06637-RS-PSG, 2012 WL 5637611, at *6 (N.D. Cal. Nov. 15, 2012) (granting motion to add custodians whose documents did not appear "duplicative or unreasonable," including CEO's documents).

These Google employees likely have highly relevant documents. Google so far has produced only a small set of emails, all reproduced from the Arizona action, but even that small subset of emails confirms the importance of custodial productions. For example, Google claims in its motion to dismiss that its disclosures were clear, including with Web & App Activity ("WAA"), and that it had consent. But Google employees emailed that WAA "is so nebulous that it causes problems," that Google's Privacy Policy is "hard to understand," and Google has an "overall mess" with respect to obtaining user "consent."

Judge Seeborg scheduled a November 12, 2021 close of fact discovery. Plaintiffs reasonably seek to add these custodians now to prepare for depositions of Google witnesses this summer. In the *Brown* matter against Google, before Magistrate Judge van Keulen, there are already 17 Google agreed-to or court-ordered custodians. Here, Google has only offered and agreed to three custodians. Google relies on *Bull. Mktg. LLC v. Google LLC*, but that dispute concerned custodians for one RFP, and the defendant had already offered eight custodians.

**Sundar Pichai:** Mr. Pichai made key decisions regarding WAA. One email describes, for example, how Mr. Pichai ███████████████████████████████████ GOOG-RDGZ-00014262. Mr. Pichai also made public statements regarding relevant controls. Dkt. 60 ("FAC") ¶¶ 90–91, 99–100. For example, he represented that Google gives "you clear, meaningful choices around your data" and that "you get to decide how your information is used." FAC ¶ 90. An internal Google email discussing Mr. Pichai's article expressed concern that "'App Activity' is ███████████ GOOG-RDGZ-00014578. A Google employee commented that ███████████ *Id.* Another related internal Google email stated that "[███████████ GOOG-RDGZ-00014597. Given his central role in Google's decision to intentionally collect and use app activity data while users had WAA turned off while making public statements on behalf of Google suggesting the opposite, Mr. Pichai should be a custodian. *See Shenwick v. Twitter, Inc.*, No. 16-CV-05314-JST (SK), 2018 WL 833085, at *1 (N.D. Cal. Feb. 7, 2018) (ordering Twitter "to include [CEO, Jack] Dorsey's files in the group of records that will be searched from individual custodians").

**Greg Fair:** Mr. Fair had a key role in developing the WAA controls, with internal emails noting his involvement "since the earliest days of My Account, Activity Controls, and the like." GOOG-RDGZ-00013767. Mr. Fair wrote that he and agreed-to custodian David Monsees "███████████ GOOG-RDGZ-00014207. Mr. Fair also acknowledged that "███████████

1

**Eric Miraglia:**  Mr. Miraglia is the Director of Google's Product Management, Privacy, and Data Protection Office, having "founded and led Google's Privacy & Data Protection Office."[1] ████████████████████████████████████████████████████████████████ GOOG-RDGZ-00015110. ████ ████████████████████████████████████ *Id.*  Mr. Miraglia likely has other documents that are directly relevant to Google's asserted consent defense.

**Stephan Micklitz:**  Mr. Micklitz's is the "head" of Google's "privacy hub" with a "leading role" on topics relating to "security and data privacy."  Mr. Micklitz reported that Google tested users' understanding of Google Account, with WAA, and admitted that "[i]t was clear those users didn't understand Google Dashboard," and that "this [wa]sn't going the way I imagined."[2]  Google has not designated any custodians from Google's "privacy hub."

**Guemmy Kim:**  Ms. Kim is a Product Manager of Account Controls and Settings at Google who published articles in 2015 and 2016 suggesting WAA and the other features in My Account "put you in control" and could be used to "decided what information is used to make Google services work better for you" and for "safeguarding your data and protecting your privacy on Google."  FAC ¶¶ 86–87.  In this lawsuit, Google asserts the opposite, asserting that users are powerless to stop its Firebase-based data collection with those controls.

**Jason Titus:**  Mr. Titus is a Google VP in Google's Developer Products Group who should have documents concerning Google's development of Firebase SDK and Google's efforts to get app developers to use Firebase SDK, with knowledge about Google's expansion of Firebase and its value to Google.[3]  Given Google's focus on app developers, Plaintiffs fairly seek a custodian who interacts with those app developers.

**Jan Hannemann:**  Mr. Hannemann is a Google Product Manager who for many years has had a "leading role on topics relating to only security and data privacy"[4] and published articles about transparency, control, and privacy regarding Google accounts.[5]  Plaintiffs anticipate that he will have relevant documents concerning those controls and user privacy.

**Rahul Roy-Chowdhury:**  Mr. Roy-Chowdhury is the Vice President of Product Privacy at Google with a lead role in connection with "user trust, safety and privacy at Google."  He has published articles on Google's privacy practices where he specifically discussed the WAA feature at issue in this lawsuit (FAC ¶ 95) and should have relevant, non-duplicative emails.

---

[1] The quotations without citations are all from public LinkedIn profiles.

[2] https://about.google/stories/micklitz-debooij/.

[3] https://venturebeat.com/2016/05/18/google-expands-firebase-with-analytics-remote-config-crash-reporting-and-dynamic-links/; FAC ¶ 41.

[4] https://about.google/stories/micklitz-hannemann/.

[5] https://blog.google/technology/safety-security/more-transparency-and-control-your-google-account/.

**Keith Enright:** Mr. Enright is Google's Chief Privacy Officer who leads a "team of privacy specialists in support of Google's worldwide privacy effort" and "[r]egularly present[s] before domestic and international regulators." Given his interactions with regulators, Plaintiffs seek to include him as a custodian. *See* Feb. 5, 2021 Hearing Tr. at 28:13–29:2 (Court: noting burden in collecting documents from other investigations but noting "If there are any documents to a regulator, they should get it."). Mr. Enright has also testified that Google Account (which includes the WAA control) allows users to "set their preferences for how Google should store and use their information" and that Google has "made mistakes in the past, from which we have learned, and improved our robust privacy program."[6] He should be a custodian.

**Donald Harrison:** Mr. Harrison is the President of Google's Global Partnership and Corporate Development. Given his role in Google's mergers and acquisitions team, he likely has information about Google's 2014 acquisition of Firebase. Mr. Harrison has also acknowledged publicly that consent at times "appears confusing" and is likely to have unique discovery relevant to Google's defenses, including Google's consent defense. FAC ¶ 101.

## GOOGLE'S STATEMENT

The parties agreed that Google would search three custodians' files using agreed search terms. The custodians were selected based on Plaintiffs' allegations, and the search terms were drafted by Plaintiffs and narrowed by Google. Google has begun the process of reviewing those search-term hits for production. Meanwhile, Google's Motion to Dismiss remains under submission, and the Court's ruling could substantially alter the scope of this case, or end it altogether. Plaintiffs are rushing to obtain as much discovery as possible before that happens. This is an impermissible fishing expedition, and the Court shouldn't allow it.

Plaintiffs propose that Google quadruple its custodian roster by listing Google officials Plaintiffs found on LinkedIn without any attention to whether they actually have responsive, non-duplicative documents. There is a better way. Google proposed to Plaintiffs that they receive Google's productions from the first three custodians, review it, and *then* determine if they need any more custodians, and if so, *whom*. That is a reasonable proposal that will produce better results than Plaintiffs' blunderbuss approach, which will result in duplication and false positives at great expense. *See Bull. Mktg. LLC v. Google LLC*, 2018 WL 6718604, at *2 (N.D. Cal. Dec. 21, 2018) (phasing custodial discovery so that plaintiffs could first review the first tranche of custodial ESI before determining if anything is missing).[7]

In any case, Plaintiffs aim too high and too broad, seeking documents from senior Google

---

[6] https://www.commerce.senate.gov/services/files/5D32673E-D11D-4EE1-A7F3-8B03E407128D.

[7] Plaintiffs rely on *Vasudevan Software, Inc. v. Microstrategy Inc.*, No. 11-CV-06637-RS-PSG, 2012 WL 5637611, at *6 (N.D. Cal. Nov. 15, 2012), which was decided under the old discovery standard. Under Rule 26 proportionality, there are additional questions the Court must ask, including whether the burden of quadrupling the custodian list will yield real benefits to the case. Further, even in that case, the Court noted that the defendant hadn't named alternative custodians who were more appropriate, unlike here, where Google has done just that.

3

officials whose portfolios of responsibilities don't reach the granular claims Plaintiffs actually assert. There is no reason for Plaintiffs' poor aim. They propounded an interrogatory seeking the names of Google employees with responsibility for the products at issue in this case, and after extensive meet-and-confer clarifying that Plaintiffs wanted the response to choose custodians, Google responded through great effort by identifying over 40 names. *None* of those names is on Plaintiffs' proposed custodian list.

Further, the Court has the Motion to Dismiss under submission and the only reason the ruling didn't come sooner is because Plaintiffs chose to amend their complaint rather than oppose Google's first motion to dismiss last fall. Regardless, a ruling could come any day, and with it greater clarity about whether this case will proceed, and if so, about its proper scope. Nevertheless, Plaintiffs argue that they need more custodians *right away* because of the November 12, 2021 fact discovery cut-off. But seven months is more than enough time to wait for Judge Seeborg's ruling and for Google's production of the first three custodians' files, which is already underway, before Plaintiffs request any more custodians. And if seven months isn't enough time, Google has offered to Plaintiffs to work with them on a stipulated modified schedule. Plaintiffs never responded to that offer, opting to file this brief instead.

The three custodians Google selected cover the issues implicated by the complaint. **Steve Ganem** is a Product Lead for the Google Analytics for Firebase (GA4F) product. He has substantial knowledge and responsibilities for the very aspects of GA4F that are accused in the complaint: the collection and use of data, the terms of use and policies surrounding the product, and the impact or lack of impact the WAA control has on the collection of data via GA4F. None of the other proposed custodians are as centrally involved in the aspects of GA4F accused by Plaintiffs, and none are as likely to have responsive documents. **David Monsees** has extensive responsibilities that cover the gamut of Plaintiffs' interest in WAA. [REDACTED] and none of the names on Plaintiffs' list are likely to have non-duplicative responsive documents relating to the specific WAA-related questions raised by this case. Finally, although Google's position is that Firebase SDK writ large is not competently accused by the complaint, it nevertheless agreed to make **Frances Ma** a custodian, to provide Plaintiffs a larger context of Firebase SDK to see if any follow-up is needed (it won't be).

As for Plaintiffs' comparisons to other cases, none of those is this case. There is no magic number of custodians. The Court's analysis must hew to the facts of the case at hand. The facts in *this* case are not complicated, and the questions are straightforward.

Plaintiffs' specific justifications for each custodian are meritless, and the Court should require more than a couple sentences for each of ten custodians before ordering a massive expansion of discovery. Plaintiffs are using the Court's procedures to force a premature decision with far-reaching implications based on minimal (and misrepresented) information.

**Sundar Pichai**, Alphabet's CEO, is not an appropriate custodian in a case that is primarily about the inner workings of a sub-product of Firebase SDK, which is itself just a single product made by Google, one of several entities Mr. Pichai oversees. Plaintiffs' justification is sleight of hand, pointing the Court to documents not authored by, but discussing Mr. Pichai weighing in one time on a discussion of [REDACTED]. That

4

has nothing to do with this case—in fact, the discussion was about ████████████ ██████ it wasn't even about the WAA control itself. This case is about data that is *never* stored by WAA in the first place, and the issue regarding WAA has to do with how it was publicly described, not how long its data retention period is. There is no evidence to suggest Mr. Pichai has ever worked on the connection or lack thereof between WAA and GA4F (indeed, that is very unlikely). As for the representations Mr. Pichai has made in public that Plaintiffs include in their complaint, they are all true and go to high-level questions; none of them address the *specific* issue identified by Plaintiffs in this case. Mr. Pichai has represented that Google has privacy controls, and that those controls give users control over their data. That doesn't make his custodial ESI relevant to every case related to Google and privacy. Plaintiffs have never identified a connection between Mr. Pichai and the functioning of GA4F while WAA is turned off, and Google is aware of none. Finally, Plaintiffs should "exhaust[] other less intrusive discovery methods" before demanding the sensitive files of the CEO of Google's parent company. *Affinity Labs of Texas v. Apple, Inc.*, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011). This case is in its infancy. Demanding Mr. Pichai's e-mail now is a transparent attempt to garner leverage.

**Greg Fair** was involved in the development of WAA, but that alone is not enough to justify pulling his documents now. WAA is a far-reaching setting that goes beyond the narrow issue raised by this case. And to the extent Mr. Fair has responsive documents, they are likely to be duplicative of the documents found in Mr. Monsees' files because their time working on the relevant WAA issues overlapped almost completely.

**Eric Miraglia** is a high-level executive responsible for privacy issues in a much more general way than the issue complained of here, and he is very unlikely to have documents useful to this litigation. Plaintiffs' argument about whether controls are defaulted to on or off is misleading, and perhaps intended for some other litigation. This case is about a proposed class of users who turned WAA off on purpose; the default issue is not implicated.

Likewise, **Stephan Micklitz**, **Jan Hannemann**, and **Rahul Roy-Chowdhury** are far removed from the issues here. They have responsibilities related to high-level decisions about Google's privacy controls, but the decisions at issue in this case, including most importantly how WAA is described to users and how it applies to third party apps using Firebase, are more closely associated with David Monsees. The little benefit these three custodians could add would be an abstract, 80,000 foot view of Google's privacy-controls landscape. And, Messrs. Hannemann and Micklitz are in Germany, which could complicate discovery. **Guemmy Kim Jason Titus**, and **Donald Harrison** are even further afield: they have no responsibility for the issues in this case.

**Keith Enright** is an attorney and Google's Chief Privacy Offer, and collecting and searching his files will result in a massive, burdensome privilege-logging exercise and little to no production of documents. There is no reason to put the parties through that now, or ever. Judge Van Keulen has already made the same determination in another case where Plaintiffs sought Mr. Enright's files using the same justifications.

Respectfully,

| WILLKIE FARR & GALLAGHER, LLP | SUSMAN GODFREY LLP |
|---|---|
| By: */s/ Eduardo E. Santacana*<br>Eduardo E. Santacana (SBN: 281668)<br>esantacana@willkie.com<br>Benedict Y. Hur (SBN: 224018)<br>bhur@willkie.com<br>Simona Agnolucci (SBN: 246943)<br>sagnolucci@willkie.com<br>Lori Arakaki (SBN: 315119)<br>larakaki@willkie.com<br>One Front Street, 34th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 858-7400<br>Facsimile: (415) 858-7599<br><br>*Attorneys for Defendant Google LLC* | /s/ *Amanda Bonn*<br>Amanda Bonn (CA Bar No. 270891)<br>Mark C. Mao (CA Bar No. 236165)<br>mmao@bsfllp.com<br>Beko Reblitz-Richardson (CA Bar No. 238027)<br>brichardson@bsfllp.com<br>BOIES SCHILLER FLEXNER LLP<br>44 Montgomery Street, 41st Floor<br>San Francisco, CA 94104<br>Telephone: (415) 293 6858<br>Facsimile (415) 999 9695<br><br>James W. Lee (*pro hac vice*)<br>jlee@bsfllp.com<br>Rossana Baeza (*pro hac vice*)<br>rbaeza@bsfllp.com<br>100 SE 2nd Street, Suite 2800<br>Miami, FL 33130<br>Telephone: (305) 539-8400<br>Facsimile: (305) 539-1304<br><br>William Christopher Carmody (*pro hac vice*)<br>bcarmody@susmangodfrey.com<br>Shawn J. Rabin (*pro hac vice*)<br>srabin@susmangodfrey.com<br>Steven Shepard (*pro hac vice*)<br>sshepard@susmangodfrey.com<br>SUSMAN GODFREY L.L.P.<br>1301 Avenue of the Americas, 32nd Floor<br>New York, NY 10019<br>Telephone: (212) 336-8330<br><br>Amanda Bonn (CA Bar No. 270891)<br>abonn@susmangodfrey.com<br>SUSMAN GODFREY L.L.P.<br>1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067<br>Telephone: (310) 789-3100 |

        John A. Yanchunis (*pro hac vice*)
        jyanchunis@forthepeople.com
        Ryan J. McGee (*pro hac vice*)
        rmcgee@forthepeople.com
        MORGAN & MORGAN, P.A.
        201 N Franklin Street, 7th Floor
        Tampa, FL 33602
        Telephone: (813) 223-5505
        Facsimile: (813) 222-4736

        *Attorneys for Plaintiffs*

## ATTESTATION

I, Amanda Bonn, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: May 4, 2021          By:   /s/ *Amanda Bonn*

                                          Amanda Bonn (CA Bar No. 270891)

8