**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
  bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
  sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
  esantacana@willkie.com
LORI C. ARAKAKI (SBN: 315119)
  larakaki@willkie.com
ARGEMIRA FLOREZ  (SBN: 331153 )
  aflorez@willkie.com

Attorneys for
GOOGLE LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO

| | |
|---|---|
| ANIBAL RODRIGUEZ, et al., individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>GOOGLE LLC,<br><br>                   Defendant. | Case No. 3:20-cv-04688-RS<br><br>**DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6), AND IN THE ALTERNATIVE, MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(F)**<br><br>Date:      August 12, 2021<br>Time:     1:30 p.m.<br>Place:    Courtroom 3 - 17th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that, on August 12, 2021 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Richard Seeborg of the United States District Court for the Northern District of California at the San Francisco Courthouse, Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Google LLC will, and hereby does, move this Court, pursuant to Rules 8(a), 9(b), 12(b)(6), and 12(f) of the Federal Rules of Civil Procedure, for an order dismissing Counts One and Two of Plaintiffs' Second Amended Complaint ("SAC").

The Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings and other papers on file in this action, any oral argument, and any other evidence that the Court may consider in hearing this Motion.

Google requests that the Court dismiss Plaintiffs' breach of contract claim and California Invasion of Privacy section 631 claim with prejudice.

**Statement of Issues to be Decided (L.R. 7-4)**

1. Whether the SAC's three isolated mentions of AdMob and Cloud Messaging—without accompanying factual allegations describing those products or which aspects of their functionality are unlawful—is sufficient to plead any causes of action as to those two products upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

2. Whether Plaintiffs fail to state a breach of contract claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

3. Whether Plaintiffs fail to state a California Invasion of Privacy claim under California Penal Code section 631 upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

4. Whether Plaintiffs' request for consequential damages and non-restitutionary disgorgement for breach of contract should be stricken pursuant to Federal Rule of Civil Procedure 12(f).

Dated:  June 25, 2021

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

By:   */s/ Benedict Y. Hur*
       Benedict Y. Hur

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 3:20-cv-04688-RS

# **TABLE OF CONTENTS**

Page(s)

I.   INTRODUCTION .................................................................................................1

II.  BACKGROUND AND RELEVANT PROCEDURAL HISTORY............................2

    A.   Background.................................................................................................2

    B.   Procedural History .....................................................................................2

    C.   Plaintiffs' Second Amended Complaint ......................................................4

III. LEGAL STANDARD............................................................................................5

IV.  ARGUMENT ........................................................................................................7

    A.   Plaintiffs' claims based on AdMob and Cloud Messaging are as
        underdeveloped as their "secret scripts" theory and should be dismissed.........7

    B.   Plaintiffs fail to state a claim for breach of contract because they have not
        identified an enforceable contract provision that Google breached...................9

        1.   Plaintiffs have not identified an enforceable provision in the Privacy
            Policy or a corresponding breach.......................................................11

        2.   The Help Center page is not an enforceable contract. .........................14

        3.   The Android Google Account help statements are not an enforceable
            contract..............................................................................................15

        4.   There is no implied contract, either. ...................................................16

    C.   Plaintiffs' new factual allegations confirm their California Invasion of Privacy
        Act claim under section 631 should be dismissed. ...........................................17

        1.   Plaintiffs' allegations concerning the functionality of GA for Firebase
            have changed slightly, but materially ..................................................17

        2.   Plaintiffs' new allegations are fatal to their section 631 claim.............19

    D.   Plaintiffs' request for non-restitutionary disgorgement and consequential
        damages for their breach of contract claim should be stricken.......................22

    E.   Plaintiffs should be denied leave to amend....................................................25

V.   CONCLUSION.....................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Nextera Energy Operating Servs., LLC,*
 No. C 12-01610 LB, 2012 WL 1918930 (N.D. Cal. May 25, 2012) ......................................16

*Anderson v. Kimpton Hotel & Rest. Grp., LLC,*
 No. 19-CV-01860-MMC, 2019 WL 3753308 (N.D. Cal. Aug. 8, 2019) .................................8

*United States ex rel. Anita Silingo v. WellPoint, Inc.,*
 904 F.3d 667 (9th Cir. 2018) ..................................................................................................6

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009)...........................................................................................................7, 10

*ASP Props. Grp. v. Fard, Inc.,*
 133 Cal. App. 4th 1257 (2005) ............................................................................................10

*Balistreri v. Pacifica Police Dep't,*
 901 F.2d 696 (9th Cir. 1990) ..................................................................................................6

*Banga v. Kanios,*
 No. 16-cv-04270-RS, 2016 WL 7230870 (N.D. Cal. Dec. 14, 2016) ....................................10

*Bass v. Facebook, Inc.,*
 394 F. Supp. 3d 1024 (N.D. Cal. 2019) ..........................................................................23, 24

*Bassam v. Bank of Am.,*
 No. CV 15–00587 MMM, 2015 WL 12697873 (C.D. Cal. Nov. 3, 2015) ...........................10

*Be In, Inc. v. Google Inc.,*
 No. 12-CV-03373-LHK, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013)...................................17

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007)........................................................................................................5, 6, 7

*Benton v. Baker Hughes,*
 No. CV 12-07735 MMM, 2013 WL 3353636 (C.D. Cal. June 30, 2013).............................16

*Berkla v. Corel Corp.,*
 302 F.3d 909 (9th Cir. 2002) ................................................................................................16

*Block v. eBay, Inc.,*
 747 F.3d 1135 (9th Cir. 2014) .........................................................................................11, 12

*Bly-Magee v. California,*
  236 F.3d 1014 (9th Cir. 2001) ................................................................6

*Bureerong v. Uvawas,*
  922 F. Supp. 1450 (C.D. Cal. 1996) ........................................................23

*Coffen v. Home Depot U.S.A. Inc.,*
  No. 16-cv-03302-PJH, 2016 WL 4719273 (N.D. Cal. Sept. 9, 2016) ...................16

*Darnaa, LLC v. Google LLC,*
  756 F. App'x 674 (9th Cir. 2018) ...........................................................24

*Dunkel v. eBay Inc.,*
  No. 5:12-CV-01452-EJD, 2014 WL 1117886 (N.D. Cal. Mar. 19, 2014) ..............14

*Elan Microelectronics Corp. v. Apple, Inc.,*
  No. C 09-01531 RS, 2009 WL 2972374 (N.D. Cal. Sept. 14, 2009) ................7, 8

*In re Facebook, Inc. Internet Tracking Litig.,*
  956 F.3d 589 (9th Cir. 2020) ..........................................9, 12, 13, 14, 15, 16, 21

*Fantasy, Inc. v. Fogerty,*
  984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds,* 510 U.S. 517 (1994) ..........6, 9

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.,*
  209 Cal. App. 4th 1118 (2012) ..............................................................24

*Gonzales v. Uber Techs., Inc.,*
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) .....................................................8

*In re Google Assistant Priv. Litig.,*
  457 F. Supp. 3d 797 (N.D. Cal. 2020) .....................................................15

*In re Google Location Hist. Litig.,*
  No. 5:18-cv-05062-EJD, 2021 WL 519380 (N.D. Cal. Jan. 25, 2021) .................13

*Graham v. Noom, Inc.,*
  No. 20-CV-06903-LB, 2021 WL 1312765 (N.D. Cal. Apr. 8, 2021) ...............20, 21

*Hill v. Opus Corp.,*
  841 F. Supp. 2d 1070 (C.D. Cal. 2011) .....................................................8

*Huynh v. Quora, Inc.,*
  No. 18-CV-07597-BLF, 2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ..............24

*Konop v. Hawaiian Airlines, Inc.,*
  302 F.3d 868 (9th Cir. 2002) ...............................................................20

*La Fosse v. Sanderson Farms, Inc.,*
  No. 19-CV-06570-RS, 2020 WL 3617786 (N.D. Cal. July 2, 2020) ....................9

*Lewis v. YouTube, LLC,*
   244 Cal. App. 4th 118 (2015) ...................................................................................24

*Mountain View Surgical Ctr. v. Cigna Health Corp.,*
   No. CV 13-08083 DDP, 2015 WL 5456592 (C.D. Cal. Sept. 17, 2015)..............................16

*Navarro v. Block,*
   250 F.3d 729 (9th Cir. 2001) ...............................................................................5, 12

*Oasis W. Realty, LLC v. Goldman,*
   51 Cal. 4th 811 (2011) ........................................................................................9, 10

*People v. Ratekin,*
   212 Cal. App. 3d 1165 (Ct. App. 1989) ...........................................................................17

*Quigley v. Yelp, Inc.,*
   No. 17-CV-03771-RS, 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018)................................20

*Revitch v. New Moosejaw, LLC,*
   No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)................................21

*Rogers v. Ulrich,*
   52 Cal. App. 3d 894 (Ct. App. 1975)............................................................19, 21, 22

*ROTFL Prods., LLC v. Gzebb,*
   No. 13-cv-0293 RS, 2013 WL 12181763 (N.D. Cal. Aug. 5, 2013) ........................................7

*Ruskell v. North County Fire Protection District of Monterey County,*
   No. 15-CV-03540-BLF, 2016 WL 1365949 (N.D. Cal. Apr. 6, 2016) ....................................8

*Schulken v. Washington Mut. Bank, Henderson, NV,*
   No. 09-CV-02708-LHK, 2010 WL 3987680 (N.D. Cal. Oct. 12, 2010)..............................8

*Semi-Materials Co. v. SunPods, Inc.,*
   No. 11-CV-06719-LHK, 2012 WL 3962487 (N.D. Cal. Sept. 10, 2012)..............................10

*Shaw v. Regents of Univ. of California,*
   58 Cal. App. 4th 44 (1997) ...............................................................................14

*Tietsworth v. Sears,*
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ...........................................................................9

*Tota Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.,*
   252 F. App'x 123 (9th Cir. 2007) ...........................................................................17

*USA Petroleum Co. v. Atl. Richfield, Co.,*
   577 F. Supp. 1296 (C.D. Cal. 1983) ...........................................................................8

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003) ...........................................................................9

iv

*Warden v. Kahn,*
99 Cal. App. 3d 805 (Ct. App. 1979) .......................................................................19

*Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC,*
814 F. Supp. 2d 1033 (S.D. Cal. 2011) .....................................................................8

*Williams v. Facebook, Inc.,*
384 F. Supp. 3d 1043 (N.D. Cal. 2018) .....................................................................6

*Wiskind v. JPMorgan Chase Bank, N.A.,*
No. 14-cv-04223 NC, 2015 WL 1798962 (N.D. Cal. Apr. 17, 2015) ..............10, 14

*Woods v. Google Inc.,*
No. 05:11-cv-1263-JF, 2011 WL 3501403 (N.D. Cal. Aug. 10, 2011)............14, 15

*Worldwide Media, Inc. v. Twitter, Inc.,*
No. 17-cv-07335-VKD, 2018 WL 5304852 (N.D. Cal. Oct. 24, 2018) .....................16

*In re Yahoo Mail Litig.,*
308 F.R.D. 577 (N.D. Cal. 2015) ............................................................................20

*Young v. Facebook, Inc.,*
790 F. Supp. 2d 1110 (N.D. Cal. 2011) ...................................................................10

**Statutes**

Cal. Penal Code § 631 ....................................................1, 4, 17, 18, 19, 20, 21, 22, 25

Cal. Penal Code § 632 ................................................................3, 4, 17, 18, 19, 21

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

After promising the Court they had more facts to support their "secret scripts" theory, Plaintiffs have excised that theory from the case entirely. In its stead, they've tacked on the names of two new products everywhere they mention Google Analytics for Firebase (GA for Firebase), without explanation. There are no factual allegations concerning either of these two new products—AdMob and Cloud Messaging for Firebase. (AdMob isn't a Firebase product at all.) The Court should strike these products from the Second Amended Complaint or dismiss the claims as applied to these products to avoid an unjustified expansion of discovery. The Court found that Plaintiffs pleaded a plausible theory relating to GA for Firebase, but nothing else.  Plaintiffs should not be permitted to triple the scope of discovery by throwing in two other products with no explanation.

Similarly, Plaintiffs have abandoned their Wiretap Act claim. In its place, Plaintiffs assert a new breach of contract and implied contract claim based on non-contractual "commitments" they allege Google made. This is an attempt to plead around the Court's ruling, and to jettison the elements of their true claims because they can't allege them adequately. Plaintiffs aren't really alleging any contract claim here: theirs is simply a complaint that the description of a product feature provided *after* any contract was executed was ambiguous and misleading. Plaintiffs have failed to identify a contractual obligation, much less one that Google breached. Nor would it get them anything: the contract they purport to rely upon contains a limitation on liability clause that prevents them from obtaining anything more than nominal damages.

Finally, Plaintiffs' amended complaint excises various allegations, and clarifies others, to comport with what they've learned in discovery. In so doing, Plaintiffs have pleaded themselves out of their CIPA section 631 claim. While the Court allowed that claim to proceed on the last motion to dismiss, the amended allegations in the new complaint are fatal to that claim because Plaintiffs' allegations regarding the functionality of GA for Firebase take it outside the ambit of section 631, which only applies to "interception" of communications while they are "in transit," and not, as Plaintiffs allege, when they are duplicated on the device and subsequently sent to Google.

## II.   BACKGROUND AND RELEVANT PROCEDURAL HISTORY

### A.   Background

The entirety of Plaintiffs' *factual* allegations remain the same. Google LLC (Google) is a technology company that offers a multitude of services and products—some are enterprise-facing and offered to businesses like app developers, and others are offered directly to users. ECF No. 113 (Second Amended Complaint ("SAC")) ¶¶ 23, 40. The Firebase Software Development Kit (Firebase SDK) is an example of an enterprise-facing product. SAC ¶ 40. As this Court put it, Firebase SDK is "[b]est understood as a digital 'toolkit,' . . . compris[ing] eighteen distinct 'tools'" that app developers can use to build and maintain an app. ECF No. 109 (Order on Google's Motion to Dismiss Plaintiffs' First Amended Complaint ("MTD Order") at 4. One of the eighteen Firebase SDK tools is GA for Firebase. *Id.*; SAC ¶ 6. It is optional, and if an app developer chooses to use it, GA for Firebase will record certain user app-interaction data to send to Google for analysis. MTD Order at 4; SAC ¶¶ 50, 52, 55. This Court dismissed Plaintiffs' federal Wiretap Act claim because app developers necessarily consent to the use of GA for Firebase to log app-interaction data. MTD Order at 12. Developers who choose to use GA for Firebase are also required to obtain the consent of their users for the incorporation of GA for Firebase. *Id.* at 5.

While GA for Firebase is a tool for developers, Web & App Activity (WAA) is an account-level setting for Google users. *E.g.*, SAC ¶ 62. Google tells users that WAA enables them to allow Google to save your activity on Google "sites and apps" to your Google account in order to provide users with better recommendations and service. SAC ¶¶ 71–73. In its Order granting in part and denying in part Google's Motion to Dismiss the First Amended Complaint, the Court took judicial notice of and analyzed the documents that formed the basis of Plaintiffs' claims: Google's Privacy Policy, documents to which the Privacy Policy links that further describe Google's Privacy Policy, and Google's public description of WAA and how it works. *See generally* MTD Order.

### B.   Procedural History

Plaintiffs filed this case almost a year ago, on July 14, 2020. Rather than respond to Google's first motion to dismiss, Plaintiffs filed an amended complaint advancing six claims for relief, under (i) section 2511(1)(a) of the Wiretap Act, (ii) sections 631 and 632 of the California Invasion of

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 3:20-cv-04688-RS

Privacy Act (CIPA), (iii) the California Computer Data Access and Fraud Act (CDAFA), (iv) California's common law right against intrusion upon seclusion, (v) California's constitutional proscription of invasion of privacy, and (vi) California's Unfair Competition Law (UCL). ECF No. 60 (First Amended Complaint ("FAC")) at 65–77. Plaintiffs' amendment did not change the fundamental allegations in the case. Google moved to dismiss again. ECF No. 62 (MTD FAC).

On May 21, 2021, the Court issued its order granting Google's motion to dismiss in part and denying in part. As a "threshold" matter, the Court determined that Plaintiffs' claims arise from two theories of liability—one concerning the disclosed functionality of GA for Firebase, and the other from secret functionality. MTD Order at 1, 7. Plaintiffs' primary theory was that Google's liability arises from the GA for Firebase tool "that, when functioning as advertised in a given app" sends Google information about an individual's app interactions in contravention of the user-facing statements about WAA. *Id.* at 1. As for their "secret scripts" theory, Plaintiffs alleged a nefarious and surreptitious feature of Firebase SDK that "trawls for data on Google's behalf unbeknownst to users and app developers alike." *Id.* Although allegedly surreptitious, the supposed "secret" scripts collect "strikingly similar" information to GA for Firebase. *Id.* at 6. As the Court observed, Plaintiffs' counsel "carefully walked back" the FAC's "most sensational accusation" concerning secret scripts at the hearing. *Id.* at 11–12. The Court held that Plaintiffs' "secret scripts" theory is "woefully underdeveloped," "wilts under Rule 9(b) scrutiny, and has no bearing on the claim-specific analysis." *Id.* at 12. The Court made additional "threshold determinations" that "developers did consent to . . . data collection" by GA for Firebase and "plaintiffs did not consent to Google collecting their data, through GA for Firebase, with WAA turned 'off.'" *Id.* at 7.

In addition to dismissing Plaintiffs' secret scripts theory in its entirety, the Court dismissed Plaintiffs' Wiretap Act claim based on the existence of developer consent, and dismissed the UCL claim for lack of UCL standing. MTD Order at 12, 17. The Court also dismissed Plaintiffs' CIPA claim under section 632 because Plaintiffs failed to plead unique, definite circumstances rebutting the "presumption that [i]nternet communications do not reasonably give rise to [an] expectation" that the conversation is not being recorded. *Id.* at 13–14 (citation omitted). The Court declined to

dismiss the CIPA claim under section 631 because Plaintiffs alleged that Google intercepted their communications with apps. *Id.* at 13. The Court granted Plaintiffs leave to amend.

### C.      Plaintiffs' Second Amended Complaint

On June 11, 2021, Plaintiffs filed their Second Amended Complaint. There are three principal differences in the allegations of the Second Amended Complaint as compared to the First Amended Complaint.

1.      Every mention of Plaintiffs' "secret scripts" theory in the First Amended Complaint has been stricken. ECF No. 112-5 (SAC Redline to FAC) ¶¶ 3, 7, 44, 53, 55, 58, 65, 109, 121, 135, 137.

2.      In three places where the SAC mentions GA for Firebase as a product that "cause[s] the copying and duplication of browsing data to be sent to Google" through a "backdoor[]" in Firebase SDK, Plaintiffs threw in a reference to "AdMob and Cloud Messaging for Firebase." SAC ¶¶ 6, 58, 245. Apart from those three mentions, the SAC doesn't discuss those products *at all*.[1]

3.      Where the FAC formerly discussed the agent doing the intercepting as either "apps" or "secret scripts," it now identifies the agent as the user's "device." SAC Redline to FAC ¶¶ 7, 13, 46, 52, 53, 55, 56, 58, 118, 121.

While some references to the "secret scripts" theory were excised entirely, and others were asserted in the exact same manner but without using the word "secret,"[2] in many other places, the mention of secret scripts was replaced by either the above-described reference to "AdMob and Cloud Messaging," or the above-described reference to "device."

As for the FAC's causes of action, although Plaintiffs were given leave to amend their dismissed claims, Plaintiffs made no attempt to salvage their Wiretap Act, UCL, or CIPA section 632 claims. None of them appear in the SAC. Instead, Plaintiffs replaced the Wiretap Act claim with a breach of contract claim. *See* SAC ¶¶ 236–49. Plaintiffs allege that Google made "commitments" in the Privacy Policy, a Google help center webpage titled "Find & control your

---

[1] Paragraph 51 does describe that GA for Firebase is able to log activity generated by Cloud Messaging, but it doesn't describe Cloud Messaging itself, or any aspect of it that is both separate from GA for Firebase and responsible for any of the violations asserted in the SAC.

[2] To the extent Plaintiffs are re-alleging the existence of secret scripts, the Court should dismiss the theory again, since Plaintiffs didn't add any allegations on this score.

Web & App Activity,"[3] and a settings page on Android devices that describes WAA. SAC ¶¶ 238, 240, 241. Plaintiffs assert that these "commitments, either standing alone or as incorporated into Google's Terms of Service and/or Privacy Policy, constitute express promises by Google" that Plaintiffs now seek to enforce. SAC ¶ 242. Plaintiffs allege that these commitments were made to "induce users" to turn off WAA and "continue to use Google Services," which Plaintiffs allege accrued to Google's benefit "not only in its effect of helping to retain such users, but also in allowing Google to accrue goodwill" with its privacy controls. SAC ¶ 243. Plaintiffs plead in the alternative that Plaintiffs and Google entered "implied contracts, separate and apart from Google's Terms of Service," placing on Google the same contractual obligations alleged with respect to the express commitments on which Plaintiffs sue. SAC ¶ 244. To satisfy the damage element of their contract claim, Plaintiffs plead that they "paid valuable consideration in the form of personal information . . . which has ascertainable value to be proven at trial." SAC ¶ 248.

Plaintiffs thus now have these five remaining claims: (i) breach of (express or implied) contract, (ii) violation of CIPA section 631, (iii) violation of CDAFA, (iv) common law intrusion upon seclusion, and (v) common law invasion of privacy.

## III.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires plaintiffs to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[4] Dismissal is proper as a matter of law where there is a "lack of a cognizable legal theory" or an "absence of sufficient facts alleged under

---

[3] The version Plaintiffs last viewed appears to have been titled "See and Control your Web & App Activity," but the hyperlink Plaintiffs incorporated in footnote 68 leads to a page called "Find & control your Web & App Activity." SAC ¶ 240 & n.68.

[4] Unless otherwise noted, emphases are added; all internal quotation marks and citations have been omitted unless otherwise indicated.

a cognizable legal theory." *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1048 (N.D. Cal. 2018) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

To survive a motion to dismiss, a complaint must offer "more than labels and conclusions"; "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiffs' allegations do not bring their "claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570. And fairness dictates that a claim unsupported by factual allegations establishing a plausible entitlement to the relief requested should be dismissed *before* the parties engage in "costly and protracted discovery." *Id.* at 558.

Claims based on allegations of fraud are subject to a heightened pleading requirement under Federal Rule of Civil Procedure 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy this requirement, a pleading must identify 'the who, what, when, where, and how of the misconduct charged.'" *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018). The allegations "must be specific enough . . . so that [defendants] can defend against the charge and not just deny that they have done anything wrong." *Id.* (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). This heightened pleading standard not only serves to give defendants notice of their alleged misconduct, but also serves "'to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *Id.* (quoting *Bly-Magee*, 236 F.3d at 1019).

Finally, Rule 12(f) provides that a court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

1

## IV.   **ARGUMENT**

2

 **A.** **Plaintiffs' claims based on AdMob and Cloud Messaging are as underdeveloped as their "secret scripts" theory and should be dismissed.**

3

4

 Plaintiffs' claims must be "sufficiently detailed to give fair notice to the opposing party of

5

the nature of the claim so that the party may effectively defend against it[.]" *ROTFL Prods., LLC v.*

6

*Gzebb*, No. 13-cv-0293 RS, 2013 WL 12181763, at *2 (N.D. Cal. Aug. 5, 2013). While Rule 8's

7

pleading standard "does not require 'detailed factual allegations,' . . . it [certainly] demands more

8

than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S.

9

662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Although "the line between facts and legal

10

conclusions is not always easy to draw," merely referencing the name of a product as forming the

11

basis for a claim is not specific enough to save a claim from dismissal under Rule 12(b)(6). *See,*

12

*e.g., Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS, 2009 WL 2972374, at *2

13

(N.D. Cal. Sept. 14, 2009) (dismissing patent claim as inadequately pleaded where Apple alleged

14

infringement through "design, marketing, manufacture and/or sale of touch sensitive input devices

15

or touchpads, including . . . the Smart–Pad").

16

 Plaintiffs' sprinkling of three passing references to AdMob and Cloud Messaging

17

throughout its 300-paragraph SAC falls far short of Rule 8's pleading requirements. For example,

18

Plaintiffs aver that "Firebase SDK scripts . . . cause the copying and duplication of browsing data

19

to be sent to Google, for at least Google Analytics for Firebase, AdMob, and Cloud Messaging for

20

Firebase." SAC ¶ 58. Formerly, this paragraph only mentioned GA for Firebase. As it now stands,

21

it says nothing of what AdMob or Cloud Messaging are (*e.g.*, settings, products, services, features,

22

toolkits, teams, widgets, etc.), how they work, what aspect of each violates the law, or how they

23

violate the law. Not to mention AdMob is not even part of the Firebase SDK toolkit that Plaintiffs

24

so cavalierly accused of secretly tracking user behavior unbeknownst to anyone via "secret scripts."[5]

25

_____

26

[5] *See* https://firebase.google.com/ (listing 18 products within Firebase SDK). Plaintiffs incorrectly allege that AdMob is a "such as" product of Firebase SDK without explanation or citation, but it's

27

not. *See* SAC ¶ 58; *id*. ¶ 245 ("Firebase SDK products such as . . . AdMob"). The difference isn't critical to resolution of this motion; Google notes it here only to underline the continuing looseness

28

of Plaintiffs' conclusory "factual" allegations.

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 3:20-cv-04688-RS

The rest of the complaint does no more to reveal what AdMob and Cloud Messaging are, or how they support Plaintiffs' theories. These allegations are insufficient to put Google on notice of its wrongdoing under Rule 8. *See Elan Microelectronics*, 2009 WL 2972374, at *2.[6] The Court should construe them as separate theories of the case and dismiss them, just as it did with the secret scripts theory. MTD Order at 11–12.[7]

To the extent Plaintiffs' allegations relating to AdMob and Cloud Messaging are an attempt to resurrect their "secret scripts" theory, that effort flounders on Rule 9's heightened pleading standard, just as before. MTD Order at 11–12. Each time the SAC mentions AdMob and Cloud Messaging it contends those products are part of a hidden scheme to collect data. SAC ¶ 6 (alleging Google "surreptitiously" collects user data through "backdoors made available through and in connection with . . . AdMob and Cloud Messaging"); *id*. ¶ 58 (same; and alleging AdMob and Cloud Messaging "scripts are hidden from users and run without any notice" . . . "surreptitiously provid[ing] app browsing data to Google").

---

[6] *See also, e.g.*, *Anderson v. Kimpton Hotel & Rest. Grp., LLC*, No. 19-CV-01860-MMC, 2019 WL 3753308, at *5 (N.D. Cal. Aug. 8, 2019) (dismissing breach of contract claim for failure to plead facts supporting the conclusory assertions that defendant did not "act in a 'reasonable' and 'appropriate' manner and failed to take 'obligatory,' 'sufficient,' and 'adequate' steps to protect plaintiffs' PII"); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018) ("boilerplate[] allegations" on *how* CDAFA was violated "do not survive Rule 8").

[7] When appropriate, courts dismiss parts of claims, effectively striking portions of a complaint where there is no viable theory or facts supporting recovery under that theory. *See, e.g.*, *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1082 (C.D. Cal. 2011) (finding claim "separable" and granting Rule 12(b)(6) motion as to part of single claim that was preempted by ERISA); *Schulken v. Washington Mut. Bank, Henderson, NV*, No. 09-CV-02708-LHK, 2010 WL 3987680, at *5 (N.D. Cal. Oct. 12, 2010) (dismissing portion of Truth in Lending Act claim premised on a March 13 letter and requiring Plaintiffs to amend their complaint to omit allegations about the March 13 letter); *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1042 (S.D. Cal. 2011) (assessing intentional interference claim based on three underlying communications and dismissing in parts for failure to plead a cause of action); *Ruskell v. North County Fire Protection District of Monterey County*, No. 15-CV-03540-BLF, 2016 WL 1365949, at *4–5 (N.D. Cal. Apr. 6, 2016) (granting without leave to amend a motion to dismiss portions of claims seeking punitive damages that were not available as a matter of law); *USA Petroleum Co. v. Atl. Richfield, Co.*, 577 F. Supp. 1296, 1308 (C.D. Cal. 1983) (selectively dismissing legally infirm bases for antitrust claims).

This Court dismissed Plaintiffs' "secret scripts" theory because plaintiffs failed to allege "the 'who, what, when, where, and how' of the misconduct charged,'" including "when the 'secret scripts' plot was hatched; which Google departments (let alone employees) were involved; and anything resembling a particular date, time, or place." MTD Order at 11 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003)). And none of Plaintiffs' new allegations about AdMob and Cloud Messaging can save that secret scripts theory, because none of them include any factual matter—they are, literally, just the bare utterance of the names of two products.

Even if the Court does not dismiss the AdMob and Cloud Messaging theories outright under Rule 8 and 9, it should, at a minimum, strike the allegations under Rule 12(f). The unexplained references to these two products are so impertinent and immaterial that they should be stricken "to avoid the expenditure of time and money that must arise from litigating spurious issues." *Fantasy*, 984 F.2d at 1527; Fed. R. Civ. P. 12(f). Indeed, the impropriety of these new allegations is underscored by the fact that Plaintiffs abandoned all three claims that the Court dismissed with leave to amend, meaning there were no claims to salvage. The Court should reject this transparent effort to triple the scope of discovery in this case without a good faith basis.[8]

**B.** **Plaintiffs fail to state a claim for breach of contract because they have not identified an enforceable contract provision that Google breached.**

To state a claim for breach of contract, Plaintiffs must allege: (1) the existence of an enforceable contract, (2) their performance under that contract, (3) Google's breach of the contract, and (4) damages. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020) (citing *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Plaintiffs have not identified a specific, enforceable contract provision that Google purportedly breached.

The "existence of an enforceable contract is an essential element" of a breach of contract claim. *Banga v. Kanios*, No. 16-cv-04270-RS, 2016 WL 7230870, at *5 (N.D. Cal. Dec. 14, 2016)

---

[8] To the extent Plaintiffs attempt to amend their allegations again through their opposition brief, Google reserves the right to respond in its reply brief—though the Court should not consider allegations made in a brief in any event. *La Fosse v. Sanderson Farms, Inc.*, No. 19-CV-06570-RS, 2020 WL 3617786, at *3 (N.D. Cal. July 2, 2020) (citing *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010)).

1   (citing *Oasis W. Realty*, 51 Cal. 4th at 821). An enforceable contract under California law "'requires

2   parties capable of consent, the consent of those parties, a lawful object, and

3   sufficient consideration.'" *Semi-Materials Co. v. SunPods, Inc.*, No. 11-CV-06719-LHK, 2012 WL

4   3962487, at *3 (N.D. Cal. Sept. 10, 2012) (quoting *ASP Props. Grp. v. Fard, Inc.*, 133 Cal. App.

5   4th 1257, 1268–69 (2005)). Each separate contract requires separate consideration. *Wiskind v.*

6   *JPMorgan Chase Bank, N.A.*, No. 14-cv-04223 NC, 2015 WL 1798962, at *7 (N.D. Cal. Apr. 17,

7   2015) ("doing or promising to do what one is already legally bound to do cannot be consideration").

8   "In addition, 'for a contract to be enforceable, a promise must be definite enough that a court can

9   determine the scope of the duty[,] and the limits of performance must be sufficiently defined to

10   provide a rational basis for the assessment of damages.'" *Semi-Materials*, 2012 WL 3962487, at *3.

11       Plaintiffs' breach of contract claim falters at the start: the SAC fails to identify breach of any

12   enforceable provisions in Google's Terms of Service, which govern Plaintiffs' use of "Google

13   services." Santacana Decl., Ex. 1 at 1–2. Plaintiffs allege that under a purported "express contract[]"

14   Google is "require[ed] . . . not to save their activity data."  SAC ¶ 243. Yet Plaintiffs conspicuously

15   fail to identify "specific provisions" in the Terms of Service that create this purported obligation,

16   because there are none. *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (to

17   survive a motion to dismiss, a plaintiff must allege the "specific provisions" creating the obligation).

18   To be sure, Plaintiffs sometimes point generally to the Terms of Service as the basis of their breach

19   of contract claim. *See* SAC ¶ 242 ("[t]hese commitments. . . as incorporated into Google's Terms

20   of Service . . . constitute express promises by Google"); *cf. id.* ¶ 244 ("Plaintiffs and Class members

21   entered into implied contracts, separate and apart from Google's Terms of Service"). But that is

22   precisely the type of conclusory, unadorned accusation that must be dismissed out of hand. *See*

23   *Ashcroft*, 556 U.S. at 678. Unsurprisingly, courts routinely dismiss breach of contract claims on that

24   ground alone. *See Young*, 790 F. Supp. 2d at 1117, 1119 (dismissing for failure to identify an

25   applicable contract provision); *Bassam v. Bank of Am.*, No. CV 15–00587 MMM (FFMx), 2015

26   WL 12697873, at *10 (C.D. Cal. Nov. 3, 2015) (same). This Court need not let Plaintiffs' claim

27   pass the starting gate either.

28

Unable to rely on the Terms of Service, Plaintiffs reach beyond its four corners in an effort to cobble together a contract claim. Plaintiffs first turn to three extra-contractual representations: (1) an explanatory phrase in Google's Privacy Policy, SAC ¶¶ 238, 242; (2) language from a WAA Help Center support page explaining the WAA feature, *id*. ¶¶ 240, 242; and (3) the "same" WAA Help Center language that was also shown on Android devices, *id*. ¶¶ 240–42.

In the alternative, Plaintiffs allege an implied agreement stitched together from some combination of these representations and Google's conduct. SAC ¶ 244. None are sufficient alone or together to support Plaintiffs' breach of contract claim.

**1.    Plaintiffs have not identified an enforceable provision in the Privacy Policy or a corresponding breach.**

Plaintiffs begin by directing this Court to Google's Privacy Policy as one basis for its claim. *See* SAC ¶ 238 (citing SAC, Ex. A (Google's Privacy Policy effective July 1, 2020)). Plaintiffs identify part of a sentence that they allege forms the basis of an enforceable promise: "My Activity allows you to review and control data that's created when you use Google services. . . ." *Id.* ¶ 238 (emphases omitted); *id.* ¶ 242. According to Plaintiffs, "Google breached [that] promise[] by continuing to intercept . . . communications [with third-party apps] . . . while Plaintiffs and Class members had Web & App Activity turned off." *Id.* ¶ 245. There are at least two problems with this claim.

*First*, the provision of the Privacy Policy that Plaintiffs point this Court to is insufficient to sustain a breach of contract claim.[9] The statement that "My Activity allows you to review and control data that's created when you use Google services," SAC ¶ 238 (emphases omitted), contains "no explicit promissory language" that would impose a *contractual obligation* on Google, *Block v. eBay, Inc.*, 747 F.3d 1135, 1138–40 (9th Cir. 2014).  In *Block*, the Ninth Circuit analyzed the following representations in eBay's User Agreement:

---

[9] The Privacy Policy Plaintiffs identify is dated July 1, 2020. SAC, Ex. A at 2. The Terms of Service effective at that time unequivocally stated that the "Privacy Policy . . . [is] not part of these terms."  Santacana Decl., Ex. 1 at 1. The privacy policy is described as a "*resource[]* available to [users] to answer common questions and to set expectations." *Id*. at 4.

11

> You acknowledge that we are not a traditional auctioneer.  Instead, our sites are venues to allow anyone to offer, sell, and buy just about anything, at any[ ]time, from anywhere, in a variety of pricing formats and locations, such as stores, fixed price formats and auction-style formats. We are not involved in the actual transaction between buyers and sellers.

*Id.* at 1138–39. Even though the language states what eBay does and does not do, the court held that it was not promissory in nature. Indeed, "[t]he provision's explanatory function is not confusing: . . . [it] is a broad description of the eBay marketplace" and cannot be read as "a promise not [to be] involved in the actual transaction between buyers and sellers." *Id.* at 1139. The Court also looked to other portions of the User Agreement to confirm that the agreement as a whole is "written in an informal, conversational style, indicating that the agreement is not simply a set of legally enforceable promises, but also an introduction to the eBay marketplace for new users." *Id.* Because the provision the plaintiff identified as the basis for its breach of contract case was merely "explanatory" and therefore not an "enforceable promise," the Ninth Circuit affirmed dismissal of the breach of contract claim. *Id.* at 1139–40. Applying that rule is even easier here where the representation Plaintiffs identify as the basis for their claim contains even less promissory-style language than the one at issue in eBay. Unlike the statement in *Block* that "[eBay is] not involved in the actual transaction," the statement here that "My Activity allows you to review and control data that's created when you use Google services," says nothing about what Google does or does not do. Instead, it explains what the user ("you") can do.

At most, the language Plaintiffs point to informs users that they can adjust their data settings when they use Google services and can review that data; it doesn't commit Google to providing any settings in particular. And a statement that "merely provides information[,] not commitments"— even if contained within a binding contract—cannot form the basis of a breach-of-contract claim. *Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 610–11 (affirming dismissal of breach-of-contract claim premised on Facebook's alleged violation of its Data Use Policy because the policy only provided information). Indeed, the Privacy Policy explicitly states that it is intended to provide information: "[t]his Privacy Policy is meant ***to help you understand*** what information we collect,

1  why we collect it, and how you can update, manage, export, and delete your information." SAC,

2  Ex. A at 2; *see also id.* ("To help ***explain*** things as clearly as possible . . .").

3        The court's analysis in *In re Google Location Hist. Litig.*, No. 5:18-cv-05062-EJD, 2021

4  WL 519380, at *9 (N.D. Cal. Jan. 25, 2021), is particularly instructive because it assesses a

5  statement resembling the one at issue here. That court considered a representation in Google's

6  Terms of Service that "states that users 'can adjust [their] privacy settings to control what [Google]

7  collect[s] and how [their] information is used.'" *Id.* The court found the "provision does not actually

8  bind Google to offer any particular privacy settings, but rather, merely explains to users where they

9  can go to adjust their settings." *Id.* The same analysis applies with equal force here. The Privacy

10  Policy statement Plaintiffs identify merely explains "that users 'can adjust [their] [My Activity]

11  settings to control what [Google] collect[s] and how [their] information is used.'" *Id.* It does not

12  bind Google to offer a specific WAA setting. *See id.*

13        *Second*, Plaintiffs cannot adequately allege breach of the alleged promise that "My Activity

14  allows you to review and control data that's created when you use Google services." Plaintiffs

15  concede that Google offered a privacy control in the My Account dashboard—indeed, the settings

16  in that dashboard, of which there are several, form the basis of Plaintiffs' other claims. And Plaintiffs

17  don't "allege that they had no control whatsoever over their" data via My Account settings. *Google*

18  *Location Hist. Litig.*, 2021 WL 519380, at *9. As in *Google Location Hist. Litig*, Plaintiffs here

19  "allege that they were misled about the effect of the [WAA] setting specifically," but that is not the

20  same as a contract breach. *See id.* Unsurprisingly, the alleged breach Plaintiffs identify—that

21  "Google . . . continu[ed] to intercept [app-interaction] communications to collect and use such

22  activity data"—has nothing to do with whether Plaintiffs can use My Activity "to review and control

23  data." SAC ¶ 245. This mismatch between the alleged promise and alleged breach is exactly the

24  type that courts find sufficient cause for dismissal. *See Facebook, Inc. Internet Tracking Litig.,* 956

25  F.3d at 610 & n.11 (plaintiffs failed adequately to plead breach of contract even though Facebook

26  admittedly tracked users because Facebook's Privacy Policy said "'[i]f you log out of Facebook. . .

27  , [third-party websites] will not be able to access your information," which "does not make any

28  promises regarding Facebook's receipt of data"); *see also In re Google Assistant Priv. Litig.*, 457 F.

Supp. 3d 797, 833 (N.D. Cal. 2020) (concluding Plaintiffs failed to plead a breach when Privacy Policy stated Google could "share users' personal information" in "four circumstances" and Plaintiffs did not address three of them).

### 2. The Help Center page is not an enforceable contract.

In the alternative, Plaintiffs put forward the WAA Help Center page as a basis for their contract claim. SAC ¶ 240. That page explains what types of activity are "saved as Web & App Activity," and that "[t]o let Google save this information: . . . Web & App Activity must be on." *Id.* Plaintiffs assert that the Help Center page is an enforceable contract "either standing alone or as incorporated into Google's Terms of Service and/or Privacy Policy." SAC ¶ 242. Not so.

*First*, the Web & App Activity Help Center is not a stand-alone contract. Plaintiffs cannot allege separate, adequate consideration for the Help page beyond what they provided in exchange for the Terms of Service. That is why courts do not hesitate to dismiss breach of contract claims in such circumstances. *See Wiskind*, 2015 WL 1798962, at *7; *see also, e.g., Dunkel v. eBay Inc.*, No. 5:12-CV-01452-EJD, 2014 WL 1117886, at *4 (N.D. Cal. Mar. 19, 2014) (dismissing for "fail[ure] to properly allege the existence of an agreement, particularly in . . . how the 'Help' articles themselves constitute a contract.").

*Second*, the WAA Help Center page is not incorporated by reference into the Terms of Service or Privacy Policy. To "properly incorporate another document, the [contract] . . . '[must at least] guide[] the reader to the incorporated document'" by specifically "referenc[ing]" it. *Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 610 (citing *Shaw v. Regents of Univ. of California*, 58 Cal. App. 4th 44, 54 (1997)). At a minimum, "the reference must be [1] clear and unequivocal, the [2] reference must be called to the attention of the other party and he must consent thereto, and [3] the terms of the incorporated document must be known or easily available to the contracting parties." *Woods v. Google Inc.*, No. 05:11-cv-1263-JF, 2011 WL 3501403, at *3 (N.D. Cal. Aug. 10, 2011). The SAC does not properly allege incorporation.

Nor can it. Neither the Terms of Service nor the Privacy Policy reference the WAA Help Center page. The Help page therefore cannot be incorporated in, or otherwise be a part of, Plaintiffs' alleged contract with Google. The Ninth Circuit's decision in *Facebook, Inc. Internet Tracking*

14

1   *Litig.*, 956 F.3d at 589, is dispositive. There, the parties agreed that Facebook's Statement of Rights

2   and Responsibilities ("SRR") was a contract with its users. *Id.* at 610. In that case, the SRR "[did]

3   not contain [the] explicit promise not to track logged-out users" that the plaintiffs sought to rely on

4   as the basis of their breach of contract claim. *Id.* For that allegation, the plaintiffs instead relied, in

5   part, on language from Facebook's Data Use Policy and Help Center pages. *Id.* But the SRR "does

6   not reference a Data Use Policy and thus, it does not guide the reader to the incorporated document."

7   *Id.* "As such, as a matter of law, any promise not to track logged-out users therein was not

8   incorporated." *Id.* The same is true here. *See id.*; *see also cf. In re Google Assistant Priv. Litig.*, 457

9   F. Supp. 3d 797, 832 (N.D. Cal. 2020) (concluding the "Google Nest Help Center" and the "Google

10  Safety Center" page were not binding because they were not incorporated by reference into the

11  Terms of Service which only contained a "vague statement" that "additional terms" apply).

12      Further, even if an explicit reference to the Help Center page were unnecessary, Plaintiffs'

13  claim would still fail because neither the Terms of Service nor the Privacy Policy "clear[ly] and

14  unequivocal[ly]" "guide[]" the reader to the WAA Help Center page.  *See Woods*, 2011 WL

15  3501403, at *3.[10]

16          **3.      The Android Google Account help statements are not an enforceable
                      contract.**

17
18      Plaintiffs' final effort to manufacture an enforceable contract based on written

19  representations is even more strained than their reliance on the WAA Help Center page. Plaintiffs

20  allege that the "same Google commitments" as those in the WAA Help Center page "were made

21  through Google-presented and required controls for the Android device manufacturers."  SAC

22  ¶ 241. They contend these are valid either by incorporation by reference or standing alone. But just

23

24  [10] Plaintiffs make no effort to allege the Terms of Service are linked to the WAA Help Center page.
    And Plaintiffs' allegations charting a path between the Privacy Policy and WAA Help Center page
25  are far too attenuated to be a clear guide, as they require a user to navigate through at least three
    hyperlinks before arriving at the WAA Help Center page Plaintiffs contend is part of their contract
26  with Google.  SAC ¶¶ 238, 240 (Privacy Policy contains a "Go to My Activity" link, which "link[s]
    to a Google webpage with the Web & App Activity controls," which itself has a "hyperlink with the
27  words 'Learn more,'" which leads to the WAA Help Page (after clicking through an Activity
    controls page)).

28

as with the Help Center page, neither the Terms of Service nor the Privacy Policy mention support language shown on Android OS phones, so as a matter of law, the language is not incorporated into a contract between Google and Plaintiffs. *See Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 610–11. Unsurprisingly, Plaintiffs fail to allege any facts suggesting they provided separate consideration for Android support language.

### 4.    There is no implied contract, either.

Under California law, "[a]n implied in fact contract has the same elements as an express contract, except that the offer and acceptance are not expressed in words but rather are implied from the parties' conduct." *Benton v. Baker Hughes*, No. CV 12-07735 MMM (MRWx), 2013 WL 3353636, at *6 (C.D. Cal. June 30, 2013). It is also subject to the same Rule 8 pleading standard. In other words, to survive a motion to dismiss, a plaintiff must plead details including "when the implied contract took effect, how it was formed, or its specific terms." *Allen v. Nextera Energy Operating Servs., LLC*, No. C 12-01610 LB, 2012 WL 1918930, at *2 (N.D. Cal. May 25, 2012).

Plaintiffs here fall far short of that pleading requirement. They contend the supposed implied contract terms were set by Google's unspecified "communications describing the function of the Web & App Activity setting in conjunction with its conduct in providing a control to change that setting." SAC ¶ 244. That is insufficient to allege an implied contract, which requires Plaintiffs to allege underlying "facts from which" the conduct forming the purported promise is implied. *Worldwide Media, Inc. v. Twitter, Inc.*, No. 17-cv-07335-VKD, 2018 WL 5304852, at *6–7 (N.D. Cal. Oct. 24, 2018). Plaintiffs' reference to "communications" and "conduct," SAC ¶ 244, does not even "make clear whether the breach is based on the terms of a written" or "implied-in-fact contract." *Coffen v. Home Depot U.S.A. Inc.*, No. 16-cv-03302-PJH, 2016 WL 4719273, at *5 (N.D. Cal. Sept. 9, 2016).

The implied contract claim fails for the separate reason that (i) an undisputed "valid, express contract . . . embrac[es] the same subject matter," *Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002), and (ii) Plaintiffs "have not sufficiently alleged a distinct claim for breach of implied contract" "distinguish[ed]" from their express contract claim, *see Mountain View Surgical Ctr. v. Cigna Health Corp.*, No. CV 13-08083 DDP (AGRx), 2015 WL 5456592, at *2 (C.D. Cal. Sept.

17, 2015). Rule 8 allows alternative pleading, but where, as here, "the parties do not dispute the existence of . . . an enforceable express contract" (the Terms of Service agreement) "cover[ing] the same subject matter" (Plaintiffs' use of Google's services) and prohibiting the same conduct (requiring Google not to save their activity data[11]) "there can be no cause of action" arising from either an alleged implied- or quasi-contract. *Be In, Inc. v. Google  Inc.*, No. 12-CV-03373-LHK, 2013 WL 5568706, at *5 (N.D. Cal. Oct. 9, 2013); *see also Tota Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 F. App'x 123, 126 (9th Cir. 2007).

### C.      Plaintiffs' new factual allegations confirm their California Invasion of Privacy Act claim under section 631 should be dismissed.

Plaintiffs have amended their complaint in a number of ways that clarify their theory of unauthorized interception in the wake of the Court's ruling that Plaintiffs failed to plead a CIPA section 632 claim. Their clarified allegations also compel dismissal of their CIPA section 631 claim for two reasons: (1) Plaintiffs fail to allege an "interception," and (2) even if there is an interception, they do not allege that it occurs "in transit."

#### 1.      Plaintiffs' allegations concerning the functionality of GA for Firebase have changed slightly, but materially.

"Penal Code section 631, subdivision (a) (the 'wiretap' section) provides that it is illegal for any person to tap or make any unauthorized connection with any telephone line, etc. (Section 631 does not address nor proscribe the use of 'eavesdropping' techniques to intercept communications.)." *People v. Ratekin*, 212 Cal. App. 3d 1165, 1168 (Ct. App. 1989) (emphasis omitted). Critically, section 631 applies to intercepting a communication *while it is in transit* over a line. *Id.* By contrast, section 632 applies to *recordings* of communications. *Id.* For example, in a phone conversation, it's impossible for one participant to wiretap the other—the conduct proscribed by section 631—because the participant is not a third party and she therefore cannot "intercept" the communication "in transit." But a participant to a conversation can violate section 632 by unlawfully *recording* the conversation, subject to certain heightened requirements. California courts have

---

[11] *Compare* SAC ¶ 243 ("requiring Google not to save their activity data") *with id*. ¶ 244 ("requiring Google not to intercept or save *such information*").

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 3:20-cv-04688-RS

repeatedly recognized this distinction, and the legislature's intent in creating it. *See id.*

At the last motion to dismiss, Plaintiffs argued that Google violated CIPA section 632 because GA for Firebase made a *recording* of confidential communications between users and app developers. This Court held that Plaintiffs failed to allege a section 632 CIPA claim because of the participation of the app developers and the nature of the communications alleged.

Pleading in the alternative, however, Plaintiffs argued that Google violated CIPA section 631. Google argued that GA for Firebase, as alleged and publicly disclosed, doesn't "intercept" communications; instead it saves information on a user's *device*, and *subsequently* uploads information to Google, where it is stored for the app developer's analysis, akin to a dictaphone. *See* Mot. to Dismiss FAC, ECF No. 62 at 14; Reply iso Mot. to Dismiss FAC, ECF No. 82 at 3 (discussing functionality), 12 (discussing that it is app developers, not Google, who integrate GA for Firebase into their apps). To avoid dismissal, Plaintiffs argued strenuously that Google was wrong, and that in fact, both GA for Firebase *and* Google's "secret scripts" got *in between* users and app developers while the transmission was occurring. *See* Pl's Opp. to Mot. to Dismiss FAC, ECF No. at 71. Plaintiffs' alternative pleading passed muster. The Court allowed the section 631 claim to proceed based on Plaintiffs' allegations about how GA for Firebase works. MTD Order at 13.

As Plaintiffs must now appreciate thanks to discovery, the allegations that won the day on section 631 were factually wrong, and the SAC doesn't stand by them anymore. Through amendment, Plaintiffs' SAC now pleads Plaintiffs out of a section 631 claim: it alleges that it is the user's *device* that *records* communications and "transmit[s] the intercepted browsing data"; and, that transmission occurs not while the original communication is *in transit*, but in a separate transmission, using "a background process called Google Mobile Service (GMS), which aggregates similarly intercepted messages across all the apps using Firebase SDK. SAC ¶¶ 13, 44, 46, 54; *see also* SAC ¶ 56 ("Firebase *records* that interaction by *copying* and transmitting to Google's servers *through the device* at least those five parameters."); *id.* ¶ 58.

What is now paragraph 46 in Plaintiffs' redlined SAC underscores the point: "The Firebase SDK scripts cause the ~~apps~~ device to intercept these communications and send surreptitious copies of them to Google even if the user is not engaged with any Google site or functionality." ECF No.

112-5 at 16:15-22. Although this paragraph ostensibly applied to Plaintiffs' "secret scripts" theory before, Plaintiffs have kept it in amended form as a description of GA for Firebase.  It now alleges that the path of the alleged communications does not involve an interception *between* a user and an "app," but rather a duplication and recording separate and apart from the communication itself:

**User Device → App Developer's Server → User Device → Duplication → Google**

Likewise, gone from Plaintiffs' SAC is the allegation in what was paragraph 245, which alleged simultaneous interception. *See* ECF No. 112-5 at 74:17–19. Instead, the only allegation of simultaneity with respect to GA for Firebase that remains is at paragraph 49 of the SAC, which merely alleges that *after* the recording and copying of data, GA for Firebase "overrid[es] device and account level controls" and "simultaneously transmits the browsing data." SAC ¶ 49. But this is not alleged to occur simultaneous with the communication, nor could it be; as alleged, GA for Firebase must first record a completed communication, and then a background process that "aggregates" such information from multiple apps subsequently sends the recording to Google for storage.

### 2.    Plaintiffs' new allegations are fatal to their section 631 claim.

These clarifications coupled with the Court's prior Order underline two critical factual allegations about GA for Firebase: (1) the app developers' incorporation of GA for Firebase is known to users, and (2) Google receives information solely because the app developer's inclusion of GA for Firebase causes the "communication" to be recorded, duplicated, and subsequently sent to Google. These two aspects of the alleged functionality of GA for Firebase are fatal to the section 631 claim.

California courts have long held that section 631 applies "only to eavesdropping by a third party," and unlike section 632, it does not apply "to recording by a participant to a conversation," *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (Ct. App. 1979), especially where the recording is made by a disclosed third party at the participant's invitation. *See, e.g.*, *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898–99 (Ct. App. 1975) (no section 631 claim because "a recording made by a participant does not intercept the message while it is in transit; the recording rather transcribes the message as it is being received" and "participant recording was not meant to be included" in section 631).

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 3:20-cv-04688-RS

1   Plaintiffs fail to allege both the "interception," and the "in transit" requirements of section

2   631. *See, e.g.*, *Quigley v. Yelp, Inc.*, No. 17-CV-03771-RS, 2018 WL 7204066, at *4 (N.D. Cal. Jan.

3   22, 2018) (where plaintiff alleged surveillance via websites and apps, dismissing CIPA section 631

4   claim because plaintiff "has not alleged facts giving rise to an inference that his communications

5   were intercepted while 'in transit' as required under Section 631 of the California Penal Code"); *In*

6   *re Yahoo Mail Litig.*, 308 F.R.D. 577, 591 (N.D. Cal. 2015) ("Should it be the case that Yahoo does

7   not, in fact, intercept the emails of non-Yahoo Mail subscribers while those emails are 'in transit,'

8   but rather accesses those emails while the emails are 'in electronic storage,' then

9   Plaintiffs' CIPA [section 631] claim would be defeated."); *see also Konop v. Hawaiian Airlines,*

10  *Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (holding under Wiretap Act that "for a website . . . to be

11  'intercepted' in violation of the Wiretap Act, it must be acquired during transmission, not while it

12  is in electronic storage").

13  An interception must be the use of a device to get *in between* the sender and recipient of a

14  communication (1) while the communication is sent, and (2) without the consent of all parties. But

15  Plaintiffs now allege—as they must—that the communication between the user and the app is

16  completed before the information is transmitted to Google.  SAC ¶ 46.  Moreover, far from being a

17  stranger to the communication, Google is there at the app developer's invitation, and Google's

18  presence is known to the user. Indeed, in its Order on the last motion to dismiss, this Court

19  acknowledged that Plaintiffs did not contest that app developers are required to and do disclose the

20  use of GA for Firebase to their users. *See* MTD Order at 5:1–2, 7:25–27 ("Plaintiffs do not deny,

21  for each app at issue, reading and agreeing to a developer-generated disclosure—made at Google's

22  behest—outlining the 'use of the [GA for Firebase] Service . . . [to] collect[] and process[] data.'").

23  The recent decision in *Graham v. Noom, Inc.*, No. 20-CV-06903-LB, 2021 WL 1312765, at

24  *5 (N.D. Cal. Apr. 8, 2021), is instructive. There, the court held that there was no violation of section

25  631 where the website Noom's "vendor [] provides a software service that captures its clients' data,

26  hosts it on [the vendor's] servers, and allows the clients to analyze their data" because the vendor's

27  software was "a tool—like the tape recorder in *Rogers*," and therefore the vendor's software was

28  "an extension of Noom." Importantly, the *Noom* court distinguished two other cases where section

631 violations had been found on similar facts. In each of the distinguished cases, the defendant was alleged to have intercepted communications for purposes of marketing (1) while the communication was "in transit," and (2) where the communication served no purpose at all for the primary participant to the communication. *See id.* (discussing *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at \*1–2 (N.D. Cal. Oct. 23, 2019) and *Facebook Internet Tracking Litig.*, 956 F.3d 589, 607–08 (9th Cir. 2020)). Those distinctions, both of which apply here, compelled a different result in *Noom*, and they do here, too.[12]

In the parlance of the traditional wiretap case, the essence of Plaintiffs' case is *not* that Google is listening on the phone line, without the knowledge of all parties. Google is on the phone *with* the participants, both participants know it's there, and both participants know Google is transcribing the conversation for the app developer. But, Plaintiffs allege, when WAA is off, the user doesn't expect Google also to "save" the communications to the user's "Google Account." *See* MTD Order at 8–9 (holding Plaintiffs' lack of consent was adequately pleaded because, as alleged, the description of WAA caused them reasonably to "fail[] to grasp" that their data would not just be

---

[12] In *Moosejaw*, the plaintiff alleged that (1) Moosejaw allowed NaviStone's software to intercept browsing histories on its website while the communications were "in transit" because a parallel signal was created the moment a user clicked his mouse button and that (2) NaviStone's purposes were separate from Moosejaw's. On those facts, the court allowed the section 631 claim to proceed, but not the section 632 claim, for reasons similar to those articulated by this Court on the last motion to dismiss. The court also noted that "Moosejaw is correct that it would not have violated the statute by creating a record of Revitch's communications and then later transmitting that record to NaviStone. That's because section 631 is an eavesdropping statute, and sharing a record is not eavesdropping." *Moosejaw*, 2019 WL 5485330, at \*2. In *Facebook Internet Tracking Litigation*, as the Ninth Circuit later held, the interception of communications by Facebook via a "separate, but simultaneous, channel" constituted interception while in transit. Notably, the court did not opine on the other elements of a section 631 claim, and it was concerned that the "separate, but simultaneous" interception by Facebook would not otherwise be captured by the law (unlike here, where recording is captured by section 632, subject to certain claim elements). *Facebook Internet Tracking Litig.*, 956 F.3d at 596 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc. v. Davis*, 141 S. Ct. 1684 (2021). Unlike both of these cases, the primary purpose of GA for Firebase is to serve the analytics needs of app developers; it is included only by the app developer's affirmative conduct, users are aware of its inclusion, and when WAA is on, users consent to Google's use of the recordings. The sole allegation that when WAA is off, users did not understand that Google would still receive the recordings at its servers may support other claims, but it does not support a section 631 claim.

used by the app developer, but also "saved in a user's 'Google Account.'"). Plaintiffs have never taken issue with GA for Firebase *logging* activity data to the device; in fact, they concede that logging is publicly disclosed functionality. They alleged, however, that despite that public disclosure, "[t]his Google documentation [] does not disclose that these scripts transmit this information and surreptitious copies of the data to Google even when the user switches the 'Web & App Activity' feature off." SAC ¶ 50. And while they formerly alleged this happened in between user and sender, their new "device"-focused allegations, and the absence of the simultaneity requirement, place beyond question the fact that the communications are first completed, the logging is a form of recording, and the transmissions are non-simultaneous.

Thus, taking Plaintiffs' allegations as true, the logging of user activity data by GA for Firebase on the user's device is not the issue; it is merely whether the recorded communication is sent not only to the app developer but also saved by Google for its own purposes. Like in *Rogers*, app developers' decision to "transcribe" communications with users via GA for Firebase—a process disclosed to those users—does not convert the conduct into a violation of section 631.

Because Plaintiffs' clarified allegations make clear that GA for Firebase does not "intercept" communications while they are "in transit," the Court should dismiss Plaintiffs' section 631 claim.

### D.   Plaintiffs' request for non-restitutionary disgorgement and consequential damages for their breach of contract claim should be stricken.

Plaintiffs' request for non-restitutionary disgorgement and consequential damages for their breach of contract claim runs headlong into the limitation of liability clause in the Terms of Service in effect (i) between 2014, when Google acquired Firebase, and March 30, 2020 and (ii) between March 31, 2020 and the present. The Terms of Service govern Plaintiffs' use of "Google's services," and Plaintiffs rely on that agreement as an express contract between the parties. *See* SAC ¶ 242 ("[t]hese commitments. . . as incorporated into Google's Terms of Service . . . constitute express promises by Google"); *cf. id.* ¶ 244 ("Plaintiffs and Class members entered into implied contracts, separate and apart from Google's Terms of Service"). To the extent the Court does not dismiss Plaintiffs' breach of contract claim, it should strike Plaintiff's request for non-restitutionary disgorgement and consequential damages. *See* SAC at 78–79, ¶ 249.

"[A] motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1479, n.34 (C.D. Cal. 1996). As a matter of California law, where an express contract governing the conduct of the parties contains a limitation-of-liability clause, it applies to limit recovery unless it is deemed unconscionable. *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037 (N.D. Cal. 2019) ("[T]he only way the breach of contract claims may move forward is if the limitation-of-liability clause is deemed unconscionable."). Plaintiffs have not pleaded any facts establishing that the limitation-of-liability clause should be deemed unenforceable. Plaintiffs' prayer for non-restitutionary disgorgement and consequential damages should thus be stricken.

**Firebase acquisition (2014) to March 30, 2020:**  The limitation of liability clause in the Terms of Service, effective between 2014 and March 30, 2020, limits Plaintiffs' recovery to the amount Plaintiffs paid to Google. Here, they do not dispute they paid nothing, so there can be no consequential or non-restitutionary disgorgement damages to support their contract claim. Each of three versions of the Terms of Service in effect during that time contain the following limitation:

> WHEN PERMITTED BY LAW, GOOGLE, AND GOOGLE'S SUPPLIERS AND DISTRIBUTORS, WILL NOT BE RESPONSIBLE FOR LOST PROFITS, REVENUES, OR DATA, FINANCIAL LOSSES OR INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES.

> **TO THE EXTENT PERMITTED BY LAW, THE TOTAL LIABILITY OF GOOGLE, AND ITS SUPPLIERS AND DISTRIBUTORS, FOR ANY CLAIMS UNDER THESE TERMS,** INCLUDING FOR ANY IMPLIED WARRANTIES, **IS LIMITED TO THE AMOUNT YOU PAID US TO USE THE SERVICES** (OR, IF WE CHOOSE, TO SUPPLYING YOU THE SERVICES AGAIN).

> IN ALL CASES, GOOGLE, AND ITS SUPPLIERS AND DISTRIBUTORS, WILL NOT BE LIABLE FOR ANY LOSS OR DAMAGE THAT IS NOT REASONABLY FORESEEABLE.

Santacana Decl., Ex. 2 at 5; *id.*, Ex. 3 at 5 (same). Limitation of liability clauses like this one "'have long been recognized as valid in California,'" and have been applied to dismiss claims accordingly. *Huynh v. Quora, Inc.*, No. 18-CV-07597-BLF, 2019 WL 11502875, at *11 (N.D. Cal. Dec. 19, 2019) (quoting *Food Safety Net Servs. v. Eco Safe Sys. USA*, 209 Cal. App. 4th 1118, 1126 (2012)).

The Court's decision in *Bass* is instructive. There, the Court was asked to determine whether Facebook's terms of service limitation-of-liability clause—which is analogous to the one at issue

23

here—foreclosed the plaintiffs' contract-based claims arising out of a data breach. *Compare Bass*, 394 F. Supp. 3d at 1037–38 *with* RJN, Ex. 2 at 5. The Court concluded Facebook's limitation-of-liability clause was a "showstopper." *Bass*, 394 F. Supp. 3d at 1037–38. The clause applied to all four contract-based claims—including one for non-restitutionary disgorgement—and directed dismissal of each. *Id.* at 1032, 1037; *see also, e.g., Huynh*, 2019 WL 11502875, at *10-11 (dismissing breach of implied contract claim due to a limitation-of-liability clause). The same is true here.

Indeed, Plaintiffs do not set forth any allegation that would support finding the limitation unenforceable. To do so, Plaintiffs would have to plead facts establishing both procedural and substantive unconscionability. *Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 675–76 (9th Cir. 2018). They have not (and cannot). *See also Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125 (2015) (limitation of liability clauses are particularly "appropriate when one party is offering a service for free").

Applying the limitation of liability clause, it is clear that, as a matter of law, Plaintiffs will never be able to allege non-restitutionary disgorgement or consequential damages as viable theories for recovery under their breach of contract claim. *See Bass*, 394 F. Supp. 3d at 1037–38.

**March 30, 2020 to present:** The limitation of liability clause in the Terms of Service, effective between March 30, 2020 and present limits Plaintiffs' recovery as well. That version includes the following limitation: "Other than the rights and responsibilities described in this section . . . Google won't be responsible for any other losses, unless they're caused by our breach of these terms." Santacana Decl., Ex. 1 at 11. Plaintiffs cannot recover damages for alleged breaches of terms other than those in the Terms of Service; they cannot, for example, recover damages for breaches of the WAA Help Center page, or any other extra-contractual language that has not been incorporated by reference. Because Plaintiffs do not allege any other source for Google's alleged contractual obligations besides those documents, the limitation-of-liability clause in effect since March 30, 2020 bars recovery too.

1

**E.      Plaintiffs should be denied leave to amend.**

2

The Court should not grant Plaintiffs any more chances to expand the scope of this case.

3

Plaintiffs have amended twice. In two earlier complaints, they alleged a theory they now plead no

4

factual matter to support when given an opportunity to do so. And they seek to engulf the parties in

5

a fishing expedition for two new products without providing any reason to believe it is plausible, or

6

even possible, that those products violate Plaintiffs' rights. Plaintiffs have had enough opportunity.

7

This case is simple; it deals with the collection of data via GA for Firebase. That collection is

8

*anonymous*, a fact Plaintiffs pointedly fail to allege. No further amendment is justified.

9

**V.      <u>CONCLUSION</u>**

10

For the foregoing reasons, Google respectfully requests that the court dismiss Plaintiffs' first

11

and second causes of action for breach of contract and violation of California Penal Code § 631,

12

with prejudice.

13

14

Dated:  June 25, 2021                                    Respectfully submitted,

15

                                                         WILLKIE FARR & GALLAGHER LLP

16

17

                                                         By:     */s/ Benedict Y. Hur*
                                                                 Benedict Y. Hur

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 3:20-cv-04688-RS