**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
esantacana@willkie.com
LORI C. ARAKAKI (SBN: 315119)
larakaki@willkie.com
ARGEMIRA FLOREZ (SBN: 331153)
aflorez@willkie.com

Attorneys for
GOOGLE LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

ANIBAL RODRIGUEZ, et al., individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

GOOGLE LLC,

Defendant.

Case No. 3:20-cv-04688-RS

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6), AND IN THE ALTERNATIVE, MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(F)**

Date: August 19, 2021
Time: 1:30 p.m.
Place: Courtroom 3 - 17th Floor

**TABLE OF CONTENTS**


Page(s)

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT ................................................................................................. 1

A. The SAC says nothing about AdMob and Cloud Messaging. .................................. 1

B. The Opposition fails to save the breach of contract claim. ...................................... 3

1. Plaintiffs haven't identified an enforceable provision of the Privacy Policy.. 3

2. Plaintiffs fail to identify a breach of the Privacy Policy. ............................... 7

3. The Help Center language is not enforceable. ............................................. 8

4. The implied contract theory is foreclosed as a matter of law......................... 9

C. Plaintiffs' request for non-restitutionary disgorgement and consequential damages for their breach of contract claim is foreclosed as a matter of law. ......................... 10

D. Plaintiffs' section 631 claim should be dismissed. ................................................ 12

III. CONCLUSION .............................................................................................. 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adkins v. Facebook, Inc.*,
No. C 18-05982 WHA, 2019 WL 3767455 (N.D. Cal. Aug. 9, 2019)....................................11

*Aguilera v. Bigham*,
No. 2:15-CV-1781-KJM-EFB PS, 2016 WL 4540834 (E.D. Cal. Aug. 30, 2016).................. 8

*Aisenman v. City & Cty. of San Francisco*,
No. C 03-4557 MJJ, 2005 WL 43497 (N.D. Cal. Jan. 6, 2005)............................................. 6

*Alberts v. Liberty Life Assurance Co. of Bos.*,
No. C 14-01587 RS, 2014 WL 2465121 (N.D. Cal. June 2, 2014)........................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................................2, 3

*Be In, Inc. v. Google Inc.*,
No. 12-CV-03373-LHK, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013)..................................10

*Block v. eBay, Inc.*,
747 F.3d 1135 (9th Cir. 2014)..........................................................................................4, 5, 6

*Calhoun v. Google LLC*,
Case No. 20-CV-05146-LH, 2021 WL 1056532 (N.D. Cal. Mar. 17, 2021).......................5, 6

*Darnaa, LLC v. Google, Inc.*,
No. 15-CV-03221-RMW, 2015 WL 7753406 (N.D. Cal. Dec. 2, 2015) ...............................12

*Dewi v. Wells Fargo Bank*,
No. CV 12-2891, 2012 WL 10423239 (C.D. Cal. Aug. 8, 2012) ..........................................11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)...................................................................................5, 7, 9, 14

*Flores v. United Parcel Serv., Inc.*,
768 F. App'x 677 (9th Cir. 2019)......................................................................................... 5

*In re Google Assistant Priv. Litig.*,
No. 19-CV-04286-BLF, 2021 WL 2711747 (N.D. Cal. July 1, 2021) .................................. 6

*In re Google Location Hist. Litig.*,
No. 5:18-CV-05062-EJD, 2021 WL 519380 (N.D. Cal. Jan. 25, 2021) ................................ 4

*Graham v. Noom, Inc.*, No. 20-CV-06903-LB, 2021 WL 1312765 (N.D. Cal. Apr. 8, 2021) .................................15

*Hickcox-Huffman v. US Airways, Inc.*, No. 10-CV-05193-HRL, 2017 WL 4842021 (N.D. Cal. Oct. 26, 2017)...............................10

*Jara v. Suprema Meats, Inc.*, 121 Cal. App. 4th 1238 (2004)........................................................................... 8

*Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052 (9th Cir. 2013)........................................................................11

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002)..........................................................................14

*Levinson v. Transunion LLC*, No. CV 16-00837, 2016 WL 3135642 (C.D. Cal. June 2, 2016)..........................................11

*Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118 (2015)............................................................................12

*Malibu Behav. Health Servs. Inc. v. Magellan Healthcare, Inc.*, No. 2:20-CV-01731 ODW, 2020 WL 7646974 (C.D. Cal. Dec. 23, 2020) ..........................10

*Mayssami Diamond, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 3:20-CV-01230, 2021 WL 1226447 (S.D. Cal. Mar. 30, 2021)...................................11

*Mountain View Surgical Ctr. v. Cigna Health Corp.*, No. CV 13-08083 DDP, 2015 WL 5456592 (C.D. Cal. Sept. 17, 2015) ............................... 9

*Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12 (2021) ..............................................................................12

*O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989 (N.D. Cal. 2014)....................................................................10

*Rodman v. Safeway, Inc.*, No. C 11-03003 JSW, 2011 WL 5241113 (N.D. Cal. Nov. 1, 2011)..................................... 7

*Sprint Nextel Corp. v. Wireless Buybacks Holdings, LLC*, 938 F.3d 113 (4th Cir. 2019)........................................................................... 5

*Williams v. Apple, Inc.*, No. 19-CV-04700-LHK, 2021 WL 2186223 (N.D. Cal. May 28, 2021) ............................... 7

**Statutes**

Cal. Penal Code § 631 ............................................................................ 1, 12, 13, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Court should grant Google's Motion to Dismiss and keep this case moving toward resolution of the one theory the Court found adequately pled: that Google Analytics ("GA") for Firebase collected a user's data even I f that user had the Web & App Activity setting turned "off," in contravention of Google's relevant disclosures. Google will prove that theory lacks merit. But Plaintiffs' attempt to triple the scope of discovery by adding the terms "AdMob" and "Cloud Messaging"—without any factual support—fails as a matter of law. Plaintiffs' belated attempt to add a contract claim a year after filing their complaint should also fail. In addition to identifying no relevant contractual obligation, the Limitation on Liability clause would doom recovery for any actionable contract claim, anyway. Finally, Plaintiffs' amendment to the factual description regarding how information is provided to Google—although subtle—is fatal to Plaintiffs' CIPA section 631 claim, which requires simultaneous interception of a message while in transit. GA for Firebase doesn't do that, and Plaintiffs do not (and cannot) allege a violation of section 631.

## II. ARGUMENT[1]

### A. The SAC says nothing about AdMob and Cloud Messaging.

The Opposition assures this Court that Plaintiffs have jettisoned their "secret scripts" theory entirely. Opp. at 4 n.2, 24:18-20. But what Plaintiffs have actually done is substitute their "secret scripts" theory with the names of two new Google products, without any notice of how these products fit into Plaintiffs' claims, in an effort to expand discovery beyond its proper scope.

Plaintiffs say their AdMob and Cloud Messaging theories are mere "clarifica[tions] [of] the scope of the relevant Google technologies." Opp. at 2:6-7. But the Court never invited such a clarification. This Court permitted Plaintiffs' claims against GA for Firebase to proceed because what are now paragraphs 49–57 of the SAC provided factual allegations concerning the accused functionality, with citations to public documentation about that product. And the Court dismissed

[1] Unless otherwise noted, emphases are added and all internal quotation marks and citations have been omitted from case quotations.

the "secret scripts" theory because no such detail was provided. Plaintiffs apparently believe that all they had to do to overcome their failed "secret scripts" theory was substitute the words "AdMob" and "Cloud Messaging." *See* ECF No. 112-5 [FAC-SAC Redline] ¶ 58; SAC ¶ 58. But the SAC still alleges that AdMob and Cloud Messaging "scripts are *hidden* from users and run *without any notice*," SAC ¶ 58, and that they "*surreptitiously* copy and provide Google with app activity data," *id.* ¶ 6, without any explanation of what is "secret," "hidden" or "surreptitiously" copied by these products. This Court should not countenance Plaintiffs' effort to triple the scope of discovery under the guise of "clarification"—especially where they had no claims to save by clarification in the first place. This plainly fails to meet the pleading requirements of Rule 9(b).

Even under Rule 8, Plaintiffs' passing references to AdMob and Cloud Messaging fall far short. *See* Mot. at 7–8. Plaintiffs' Opposition does not deny that the SAC contains ***zero*** factual allegations about these products. Plaintiffs direct this Court to their allegation that "Google . . . collects data from users who turn off the [WAA] feature . . . [through] AdMob and Cloud Messaging for Firebase." Opp. at 23 (quoting SAC ¶ 6). That is a textbook "unadorned, the-defendant-unlawfully-harmed-me accusation" that cannot survive a motion to dismiss because it fails to explain *how* or *why* AdMob and Cloud Messaging improperly collect data, or how they are substantively related to *any* of Plaintiffs' claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Opposition relies heavily on documents outside the pleadings, underscoring their absence in the SAC itself. And even if Plaintiffs' quoted documents *were* included in the SAC, that still wouldn't cut it. Plaintiffs argue that AdMob and Cloud Messaging are "integrated" with GA for Firebase and that AdMob "share[s] a core library dependency" with GA for Firebase. Opp. at 23–24. That these products are "integrated" with GA for Firebase could mean anything, or nothing. Those statements do not reveal to Google—or this Court—*how* AdMob and Cloud Messaging are related to Plaintiffs' claims of violation of privacy, or what aspect of what they do is purportedly unlawful. The fact that Google's AdMob and Cloud Messaging products can be integrated into other products and can interact with one another does not equate to data collection, let alone improper data collection. The SAC's "naked assertions" concerning AdMob and Cloud Messaging are "devoid of [the] factual enhancement" that could push their claims "across the line from conceivable

to plausible," *Ashcroft*, 556 U.S. at 678, 680, and the Court should dismiss them from the case.[2]

**B. The Opposition fails to save the breach of contract claim.**

Plaintiffs have not alleged a cognizable breach of contract claim based on Google's Terms of Service, Privacy Policy, WAA Help Center page language, or an implied obligation. Mot. at 9–17. Plaintiffs concede at the outset that Google did not breach a promise in the Terms of Service. *See* Opp. at 10:12–16. Notably, Plaintiffs also narrow the time period during which they contend Google could have breached promises in the Privacy Policy to the period between August 19, 2015 and March 31, 2020; the Opposition makes no attempt to assert that Plaintiffs can base a breach of contract claim on the Privacy Policy for alleged conduct after that.[3] *See* Opp. at 10 (Google's Terms of Service only incorporates the Privacy Policy "through . . . March 31, 2020"). They cannot argue otherwise: the Terms of Service in effect as of March 31, 2020 states that the Privacy Policy "[is] not part of these terms." Santacana Decl., Ex. 1 at 1. And Plaintiffs abandon the theory that the Privacy Policy is a separate stand-alone contract. *See* Opp. at 11:11–12 (relying only on incorporation into Terms of Service).

**1. Plaintiffs haven't identified an enforceable provision of the Privacy Policy.**

Unable to rely on any statements in the post-March 2020 Privacy Policy, Plaintiffs redouble their reliance on three informational statements in Google's Privacy Policies effective between May 25, 2018, and March 30, 2020.[4] Those three statements are:

---

[2] Plaintiffs alternatively suggest that their allegations should be allowed to stand because the Court accepted "the FAC's parallel allegations concerning Google Analytics" which "mirror" their new allegations. Opp. at 23, 24. But paragraphs 49–57 obviously don't apply to AdMob and Cloud Messaging, which are concededly different products or features, and the SAC contains no other allegations on which the Court could have made or could now make such a conclusion.

[3] Google hasn't reversed its position. Google argued that the *specific* representations Plaintiffs identify here are not themselves enforceable promises, even if other aspects of the Privacy Policy are. *See* Mot. at 9–10. Indeed, Google accepted for purposes of its Motion that the Privacy Policy was incorporated into the Terms of Service before March 30, 2020. But, Google argued, the limitation of liability section precludes recovery for violations of the Policy during that time. *See* Mot. at 18–19. There is no daylight between that and Google's position in other cases. *Cf*. Opp. at 9–10 (discussing Google's positions in other cases).

[4] Plaintiffs also identify statements in the Privacy Policy effective between August 19, 2015 and May 24, 2018 as "contain[ing] similar promises" (Opp. at 11 n.7 (citing SAC ¶ 68 & n.20)), but none of those representations are enforceable because they are even less promissory in nature. Even

- "[A]cross our services, you can adjust your privacy settings to control what we collect and how your information is used."
- "Our services include . . . [p]roducts that are integrated into third-party apps and sites, like ads . . . ."
- "My Activity allows you to review and control data that's created when you use Google services . . . . Go to My Activity."

Opp. at 11:14–17. None of Plaintiffs' arguments render these statements enforceable promises.

First, the Opposition focuses on the wrong question entirely, advancing arguments about how these statements should be *interpreted*, claiming the Court has already ruled on that question because of its ruling concerning Google's consent defense. Opp. at 11–12. But the key question—whether the alleged promises are enforceable in the first place—is virtually overlooked by the Opposition. That separate prerequisite to a breach of contract claim is not met here.

For example, Plaintiffs fail to address how the promise they identify as the key one—that "My Activity allows you to review and control data that's created when you use Google services" (Opp. at 12:11-17 & n.8)—is any different than the representation the court in *In re Google Location History Litigation* found unenforceable because it "merely provides information—not commitments." *See* Opp. at 12 & n.8. That case concerned Google's representation that users "can adjust [their] privacy settings to control what [data] [Google] collect[s]." No. 5:18-CV-05062-EJD, 2021 WL 519380, at *9 (N.D. Cal. Jan. 25, 2021). The representation at issue here is exactly the same, except it concerns a different setting (WAA instead of general "privacy settings") that users can adjust "to review and control data that's created." Opp. at 11:16–17.

Plaintiffs' attack on *Block v. eBay, Inc.*, 747 F.3d 1135 (9th Cir. 2014), is equally ineffectual. Opp. at 13. Not every provision in a contract is enforceable. *See id.* at 1138–40. To tell the difference, the Ninth Circuit advises courts to compare the specific representations at issue against others within the contract to determine whether the identified language is enforceable. In *Block*, the court compared statements communicating enforceable promises "by the user (e.g., "While using eBay sites, services and tools, *you will* not . . . violate any laws. . . ."), and by eBay (e.g., "If we resolve a dispute in the buyer's favor, *we will* refund the buyer for the full cost of the item. . . ."),"

---

more than the statements on which Plaintiffs base their claim, the earlier statements simply explain what users can do, but do not commit Google to offering any specific function.

with ones that were merely "explanatory" because they explain how eBay functions (e.g., "our sites are venues to allow anyone to offer, sell, and buy just about anything"; "We are not involved in the actual transaction . . . ."). *Id.* at 1139. The explanation in the Privacy Policy of what users can expect with respect to My Activity cannot be distinguished from the unenforceable statements in *Block*.

Plaintiffs attempt to distinguish the Ninth Circuit's ruling in *Block* by arguing the alleged promises at issue there are different because they "attempt to distance" the defendant from liability whereas the representations here allegedly identify a "promise[] to honor users' choice[]." Opp. at 13. Nothing in *Block* supports that. Determining whether a representation is enforceable doesn't turn on the *type* of promise; it turns on whether the representation is written in "promissory," rather than informative, "*language*," irrespective of subject matter. *See Block*, 747 F.3d at 1138, 1139.

Plaintiffs run from another Ninth Circuit case, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), by ignoring parts of the opinion. The Ninth Circuit found that an exchange of promises committing Facebook to "'*provide* . . . tools'" and committing users "*not to 'send or otherwise post* unauthorized . . . communications'" was enforceable, while the representation in a Facebook Data Use Policy that "[y]our information is the information that's required when you sign up for the site" was merely informational. *Id.* at 610–11. Plaintiffs argue that the court concluded the Privacy Policy "was not incorporated into Facebook's SRR." Opp. at 13. But Plaintiffs ignore that the Ninth Circuit also analyzed the alternative argument that statements in the data use policy were "*separate*" enforceable commitments—and it is within that analysis that the court articulated the difference between information and commitments. 956 F.3d at 610–11.[5]

Finally, Plaintiffs invoke the decision in *Calhoun v. Google LLC*, Case No. 20-CV-05146-LH, 2021 WL 1056532 (N.D. Cal. Mar. 17, 2021), but that ruling doesn't alter the analysis here

[5] *See also Flores v. United Parcel Serv., Inc.*, 768 F. App'x 677, 679 (9th Cir. 2019) (affirming dismissal of contract claim because representation that UPS would ship packages "via 'Next Day Air'" "cannot plausibly be read to constitute an enforceable promise in light of other provisions that do contain promissory language"); *accord Sprint Nextel Corp. v. Wireless Buybacks Holdings, LLC*, 938 F.3d 113, 127 (4th Cir. 2019) (comparing the informative quality of the "Nature of the Service" clause (i.e., devices "are" and "are not" intended for certain uses) that makes it "descripti[ve]" as compared to "other provisions in the contract [that] impose obligations" (e.g., "[y]ou cannot")).

because the *Calhoun* court only considered whether the Privacy Policy *as a whole* "ma[de] commitments;" it did not engage in the analysis from *Block* of whether specific statements were informational or enforceable. *Id.* at *19. Google does not dispute that the Privacy Policy in effect before March 30, 2020 contains *some* commitments. The statements Plaintiffs identify, however, do not. Plaintiffs' remaining cases are equally inapt because those courts *assumed* the enforceability of the promises at issue, and considered only the separate elements of breach and harm.[6]

Plaintiffs claim the three statements in the Privacy Policy are enforceable because "a reasonable user could interpret these provisions to promise that My Activity (WAA) can be used to control data that Google collects through Google's services." Opp. at 11–12. Plaintiffs' argument goes like this: this Court determined—in the context of Google's consent-defense analysis—that Google's reference to "services" in its Privacy Policy "permits [a user to] infer[] that GA for Firebase is a 'Google service,'" and because "'Go to My Activity' . . . in the third bullet point [above] contains a hyperlink . . . to the WAA control," that means both parties came to an (enforceable) meeting of the minds as to how WAA functions vis-à-vis GA for Firebase. *See id.*

As discussed, this argument focuses on the wrong question. It is focused on interpretation, not enforceability. Even if the statements are susceptible to Plaintiffs' reading (as this Court already found), that does not mean they constitute enforceable promises. Plaintiffs' argument is thus premised on a false equivalency. Plaintiffs equate—without any basis—what one party to the alleged contract (the user) might believe, to what both parties (the user and Google) have actually agreed to. This Court's interpretation of a user's potential understanding cannot bear such weight; at most, it gets Plaintiffs half way. *E.g., Aisenman v. City & Cty. of San Francisco*, No. C 03-4557 MJJ, 2005 WL 43497, at *3 (N.D. Cal. Jan. 6, 2005) (meeting of the minds on all material points is essential to contract formation). Indeed, even if users believed they were not "consent[ing] to Google collecting their data, through GA for Firebase, with WAA turned 'off'" that is not the same

---

[6] *See In re Google Assistant Priv. Litig.*, No. 19-CV-04286-BLF, 2021 WL 2711747, at *10–12 (N.D. Cal. July 1, 2021) (assessing breach); *McCoy v. Alphabet, Inc.*, No. 20-CV-05427-SVK, 2021 WL 405816, at *12 (N.D. Cal. Feb. 2, 2021) (assessing breach and harm); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 801 (N.D. Cal. 2019) (assessing breach).

as an obligation that Google ensure WAA is coded to work a certain way. ECF No. 109 at 7. A party can fail to have a consent defense without having entered into a contract; after all, unilateral understanding is not the same as mutual obligation.

An analysis of the plain language of the Privacy Policy reveals that Google—for its part—could only have intended the statements to be explanatory, regardless of what Plaintiffs did or did not think. *See* Mot. at 11–13; *supra* at 3–5. Google knew how to use and could have used promissory language in those bullet points, but it didn't. As a matter of law, it is unreasonable to conclude that Google nevertheless intended these statements to be enforceable.

Because Plaintiffs haven't identified an enforceable promise, and Plaintiffs' remaining cases are inapposite.[7] Their breach of contract claim thus fails at the first step.

**2. Plaintiffs fail to identify a breach of the Privacy Policy.**

Even assuming Plaintiffs identified an enforceable promise, they fail to alleged a breach of the promise that "My Activity allows you to review and control data that's created when you use Google services." Mot. at 13–14. Plaintiffs argue that Google breached the Privacy Policy since the WAA feature does not "stop[] Google from collecting [app-activity] data." Opp. at 14:20–22. But Plaintiffs do not dispute that Google does have a WAA control and that it does allow users to review and control data created when they use Google services. Their allegations would require a far more specific promise—that the WAA control could affect the flow of data made available to third-party businesses through GA for Firebase—akin to the promise the Ninth Circuit found missing in *In re Facebook, Inc. Internet Tracking Litig.* (affirming dismissal of contract claim because privacy policy "does not contain any agreement that Facebook would not track logged-out user data"). While this Court has held that Plaintiffs did not necessarily *consent* to GA for Firebase's ordinary functioning when WAA is turned off, that is not the same as holding that Google was contractually

[7] *See Rodman v. Safeway, Inc.*, No. C 11-03003 JSW, 2011 WL 5241113, at *3 (N.D. Cal. Nov. 1, 2011) (assuming, without deciding, that promise was enforceable). Plaintiffs' remaining case is further afield; it merely provides a general rule statement and wasn't decided at the pleadings stage. *See Williams v. Apple, Inc.*, No. 19-CV-04700-LHK, 2021 WL 2186223, at *5 (N.D. Cal. May 28, 2021).

bound to offer specific functionality to prevent it from doing so.

**3. The Help Center language is not enforceable.**

The Oppositions' argument that the Help Center page is enforceable is like arguing that the description of particular features in the product manual for a toaster forms a binding contract. Plaintiffs cite no authority to support such a far-fetched application of contract law.

***First***, Plaintiffs cannot allege they provided consideration for the WAA Help page. *Id.* at 14. Plaintiffs argue that Google's receipt of a benefit constitutes adequate consideration because: (1) "Google . . . gained and retained users" and (2) "accrued goodwill by claiming that it was . . . respecting users' privacy choices." Opp. at 15–16. Neither theory identifies a benefit that was "actually [] bargained for as the exchange for the promise." *Id*. at 16. Google did not bargain to gain and retain users in exchange for alleged promises in the WAA Help page. Like a product manual, that page is "gratuitous in the sense of being offered without expectation of any exchanged promise." *Jara v. Suprema Meats, Inc.*, 121 Cal. App. 4th 1238, 1251 (2004). Plaintiffs and other users are free to use or not use third-party apps. Indeed, Plaintiffs admit that "the Terms of Service did not obligate Plaintiffs to interact with apps that use Google services." Opp. at 15:19-20. The WAA Help page is no different. Nothing in it forces Plaintiffs "to perform any act in exchange for [Google's] performance," and Plaintiffs do not claim otherwise. *Aguilera v. Bigham*, No. 2:15-CV-1781-KJM-EFB, 2016 WL 4540834, at *4 (E.D. Cal. Aug. 30, 2016). Nor did Google bargain with Plaintiffs to obtain "goodwill." As Plaintiffs admit, the purported goodwill comes from the act of publishing the WAA page, and that act is independent of and uncontrolled by Plaintiffs' actions.

***Second***, the WAA Help Center page is not incorporated by reference into the Terms of Service. Plaintiffs' web-linking argument is predicated, as it must be, on whether the underlying statement containing the link is promissory in nature.[8] Here, the fact that the link itself says "You ***can learn*** more here" indicates what is behind the link is informational, rather than promissory. So, even if the Privacy Policy and WAA Help page were read together, the WAA Help page would not

[8] To be clear, as Plaintiffs admit, their web-linking theory only applies between May 25, 2018 and March 30, 2020, which is the time period in which the Terms of Service incorporated the Privacy Policy and the Privacy Policy linked to the WAA page.

be viewed as containing enforceable promises. *See* Mot. at 11–13; *supra* at 3–6.

***Finally***, Plaintiffs abandoned the argument that the Android Google Account help statements are incorporated by reference into a valid contract. Indeed, they make no effort to allege that either the Terms of Service or the Privacy Policy adequately "guide[] a reader" to the "settings menu of Android devices." Opp. at 15:1-3; *see Facebook Internet Tracking*, 956 F.3d at 610–11. And because the alleged promises are the "same" as those that appear in the WAA Help Center page, SAC ¶¶ 240–42, Plaintiffs' contention that they are stand-alone express or implied contracts fails for the same reasons that argument fails with respect to the WAA Help page.

**4. The implied contract theory is foreclosed as a matter of law.**

Plaintiffs now argue that the previously-unspecified "communications" which formed the basis of their implied contract claim arise from a "deal that Google proposed in the WAA [Help Center page]." Opp. at 16–17. Putting aside that the Court must ignore allegations outside the complaint (*see* Mot. at 9 n.8)—that still does not establish a contract. Plaintiffs contend the WAA Help page offered a "deal" where "users [would] continue interacting with apps that use certain Google services so long as Google agrees not to collect their data." Opp. at 16–17. The WAA Help page contains no such promise. According to the SAC, the WAA Help page identifies "What's saved as Web & App Activity" and states that "To let Google save this information: Web & App Activity must be on." SAC ¶¶ 71, 74, 240; *see also* Opp. at 14–15. That contains no offer on Google's part to do anything in particular—let alone refrain from receiving user data—in exchange for conduct by Plaintiffs.

Further, Plaintiffs have no cogent response to Google's argument that the implied contract claim cannot be distinguished from the express contract claim. Mot. at 16–17 (citing *Mountain View Surgical Ctr. v. Cigna Health Corp.*, No. CV 13-08083 DDP (AGRx), 2015 WL 5456592, at *2 (C.D. Cal. Sept. 17, 2015)). Plaintiffs contend Google "cannot have it both ways" by arguing "that the Terms of Service and Privacy Policy do not make any enforceable commitments about WAA." Opp. at 17:10–18. But Google argued only that the particular language in the Privacy Policy identified by Plaintiffs does not constitute an enforceable promise. As for the Terms of Service, Google argued they *do* constitute an "enforceable express contract" "cover[ing] the same subject

matter" (Plaintiffs' use of Google's services, including WAA) as the alleged implied contract.[9] Mot. at 16–17. As in *Be In, Inc. v. Google Inc.*, No. 12-CV-03373-LHK, 2013 WL 5568706, at *5 (N.D. Cal. Oct. 9, 2013), Plaintiffs cannot maintain an implied contract claim where the Terms of Service and alleged implied contract both cover use of WAA, which is the same "subject matter."

And while Plaintiffs accurately recite that Rule 8 allows pleading in the alternative, they omit a critical detail: the pleading must be based on "a reasonable belief that each of the theories pleaded is legally tenable." *Malibu Behav. Health Servs. Inc. v. Magellan Healthcare, Inc.*, No. 2:20-CV-01731 ODW (PVCx), 2020 WL 7646974, at *5 n.7 (C.D. Cal. Dec. 23, 2020). That cannot be true here. Any assertion that Google made implied-in-fact promises about the function of WAA is foreclosed by the explicit disclaimers in Google's Terms of Service: "Other than as expressly set out in these Terms [of Service] or additional Terms, . . . Google [does not] . . . make any specific promises about the services. For example, ***we don't make any commitments about . . . the specific functions of the services***." Santacana Decl., Ex. 2 at 5 (Terms of Service effective October 25, 2017 to March 31, 2020); *id.*, Ex. 3 at 5 (same for Terms of Service effective April 14, 2014 to October 25, 2017).[10] Plaintiffs lack a reasonable, alternative basis on which to ground their implied contract claim. *See O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1001 (N.D. Cal. 2014) (granting judgment on the pleadings because "the purported implied contract encompasses the same subject (Uber's advertising) and requires a result contrary to that required by the Terms and Conditions of the express contract—a result not allowed by California law of contracts").

**C. Plaintiffs' request for non-restitutionary disgorgement and consequential damages for their breach of contract claim is foreclosed as a matter of law.**

Plaintiffs' request for non-restitutionary disgorgement and consequential damages for their

---

[9] This case is therefore unlike *Hickcox-Huffman v. US Airways, Inc.*, No. 10-CV-05193-HRL, 2017 WL 4842021, at *5–6 (N.D. Cal. Oct. 26, 2017), where the defendant argued that the *same* document was and was not a contract.

[10] This disclaimer is also contained in the Terms of Service effective as of March 31, 2020. *See* Santacana Decl., Ex. 1 at 11 ("The only commitments we make about our services (including . . . the specific functions of our services . . .) are (1) described in the Warranty section [of the Terms of Service], (2) stated in the service-specific additional terms [which do not exist for WAA], or (3) provided under applicable laws. We don't make any other commitments about our services.").

breach of contract claim is precluded by the limitation of liability in the Terms of Service.[11] Mot. at 22–24. The Oppositions' arguments to the contrary are specious. First, Plaintiffs argue the second clause in the Limitation of Liability section does not apply to their use of Google services because it is limited to users who pay Google for services. *See* Opp. at 21–22. That confuses applicability with result. Nothing in the second clause limits who the clause *applies* to. Mot. at 23. The clause limits the *result* of a lawsuit, for users in all cases, to recovering no more than what they paid. What's more, Plaintiffs' surplusage argument crumbles under textual scrutiny. The first clause specifies that certain types of damage are not recoverable; the second specifies that any recoverable damages are capped; the third limits damages to those that are reasonably foreseeable. *Id*. None of these overlap, even if they all apply to users who did not pay for services. And Plaintiffs' argument that Google could have drafted the clause more clearly cannot vitiate its effect. *See* Opp. at 22 n.15.

Plaintiffs' only other argument for why the Court should disregard the Limitation of Liability clause is a half-hearted footnote claiming the clause is unconscionable. *See* Opp. at 22 n.16. That argument is baseless. Plaintiffs failed to plead facts establishing either procedural or substantive unconscionability. For example, Plaintiffs haven't alleged surprise; to the contrary, Plaintiffs purport to be sophisticated users concerned about and familiar with Google's privacy policies. And even if they did not see the Limitation of Liability, it is enforceable nonetheless. *Adkins v. Facebook, Inc.*, No. C 18-05982 WHA, 2019 WL 3767455, at *3 (N.D. Cal. Aug. 9, 2019). The clause is "in its own section, clearly labeled" and printed in all caps. *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013). Nor have Plaintiffs alleged there were no alternatives to using Google's

[11] When damages are precluded as a matter of law, they can be disposed of on a Rule 12(b)(6) motion to dismiss. *Alberts v. Liberty Life Assurance Co. of Bos.*, No. C 14-01587 RS, 2014 WL 2465121, at *4 & n.4 (N.D. Cal. June 2, 2014) (dismissing claim for punitive damages). Some courts strike damages that are unavailable as a matter of law under Rule 12(f). *E.g., Levinson v. Transunion LLC*, No. CV 16-00837, 2016 WL 3135642, at *7 (C.D. Cal. June 2, 2016) (striking claim for "pain and suffering" damages); *Dewi v. Wells Fargo Bank*, No. CV 12-2891, 2012 WL 10423239, at *9 (C.D. Cal. Aug. 8, 2012) (same). Where courts believe damages cannot be stricken, they do not hesitate to dismiss under Rule 12(b)(6) instead in the interest of judicial economy. *See, e.g.*, *Mayssami Diamond, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 3:20-CV-01230, 2021 WL 1226447, at *6 (S.D. Cal. Mar. 30, 2021) (collecting cases converting Rule 12(f) motions to Rule 12(b)(6) motions to dismiss).

services such that the clause was oppressive. It is not sufficient that Plaintiffs may hold the subjective belief "it would be far more difficult to navigate today's world without a Google account" (Opp. at 22 n.16), where they haven't alleged they had no "meaningful choice" but to use Google's services. *See, e.g.*, *Darnaa, LLC v. Google, Inc.*, No. 15-CV-03221-RMW, 2015 WL 7753406, at *2 (N.D. Cal. Dec. 2, 2015) ("procedural unconscionability [is] slight" in an agreement governing use of YouTube "as plaintiff does not lack meaningful choice," even though "YouTube 'has emerged as the dominant, outcome-determinative website' for displaying music videos"). Finally, Plaintiffs cannot allege substantive unconscionability, since Google provides its services to Plaintiffs for free. *See Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125 (2015) (limitation of liability clauses are particularly "appropriate when one party is offering a service for free"); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 36 (2021) ("Courts have . . . recognized service providers that offer free services to Internet users may have a legitimate commercial need to limit their liability and have rejected claims that such limitations are so one-sided as to be substantively unconscionable.").

**D. Plaintiffs' section 631 claim should be dismissed.**

Google expects that Plaintiff will ultimately fail to prove its CIPA 631 claim because user consent is fatal to all of Plaintiffs' claims. But the SAC demonstrates that Plaintiffs' CIPA claim fails now for a second, technical reason made plain by Plaintiffs' subtle change to its description of how and from where Google receives the data at issue—from the user's "device" rather than from the "app." SAC ¶ 46. Plaintiffs now allege that Google saved a copy of data it recorded for app developers ***after it had been transmitted to the user***, and ***then*** transmitted to Google for the app developers' purposes, all because Google used it for its own purposes, too. While Plaintiffs' Opposition seeks to distance them from their amendments, they now concede—as they must—"that an app cannot communicate with an app server without going through the mobile device." Opp. at 5:23, 6:19–20. Because Plaintiffs do not and cannot allege that the app sent two simultaneous and identical messages—one to Google and one to the user—the claim must fail.

Indeed, Plaintiffs' created-for-litigation diagram on page 6 of the Opposition supports Google's argument. It shows two *separate* and *non-simultaneous* processes: a blue arrow

representing a completed communication between the New York Times and a red arrow representing a separate duplication and transmission of information to Google. Nothing about the diagram suggests simultaneity. In contrast, if the same diagram were used to depict the facts in *Facebook Internet Tracking Litigation*, then the arrows would be conjoined at one end, because unlike here, in that case Facebook's code caused a single user interaction to send *two* simultaneous and identical GET requests—one to the intended recipient and the other to Facebook:

Excerpt of *Rodriguez* Plaintiffs' Diagram
("Time 1 and Time 2" added by Google)




Google's Depiction of the allegations in
*In re Facebook Tracking Litig.* as described by the Ninth Circuit




The "technical context" that led the Court to find an adequately alleged violation in that case dictates the opposite result here. Indeed, Plaintiffs' other diagram is even more problematic. Seeking to amend Google's depiction of how the alleged communication flows, Plaintiffs strike through the entire communication, arguing that the data flow goes only from "User Device" to "Duplication" to "Google." Opp. at 5. That misses the point entirely, as the duplication and subsequent transmission is what dooms the section 631 claim. But it also raises the question of what, specifically, qualifies as the statutory "communication." The SAC alleges that the communication constitutes the interaction between the user's app and the app developer's server, SAC ¶ 49, and so does the diagram on page 6 (depicted by the blue arrow and the box labeled New York Times), but the Opposition inexplicably strikes through that portion of the data flow. By striking it out in an effort to avoid dismissal on one ground, Plaintiffs walk into a second ground for dismissal. Without the involvement of the app developer's server, there can be no communication, and the CIPA claim would fail for this independent reason.

In any case, Plaintiffs' only legal argument against dismissal is that Google raises a factual

dispute that is not ripe at the pleading stage. That's wrong; just as in the raft of cases Google cited where Plaintiffs were *required* to plead the technical facts underlying their claim of interception, the Court here should hold Plaintiffs to that reasonable standard, and Plaintiffs have fallen short of it. *See* Mot. at 19-21 (citing cases). If simply pleading the ultimate facts of violation were enough, the Ninth Circuit would not have needed to engage in detailed technical analysis to determine that some interception claims must be dismissed while others can survive. *Compare Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (detailing technical aspects of secure websites) *with Facebook*, 956 F.3d at 607 (detailing GET requests). And any plaintiff could allege there is unseen code in virtually any program or app that constitutes an interception without further explanation, subjecting any technology provider to expensive and intrusive discovery.

What's more, the Opposition doesn't even describe what facts Plaintiffs could or would add to their allegations that would give rise to the inference they seek, other than adding the word "simultaneous." This is especially important in light of the Opposition's striking explanation for why Plaintiffs don't re-assert their "secret scripts" theory after promising they could amend it with additional facts, including from expert investigation: footnote 2 claims the parties' dispute over "secret scripts" was merely a misunderstanding born from poor word choice. Plaintiffs claim they only meant to assert a theory based on the publicly documented functionality of GA for Firebase, which they said was "secret" only insofar as users did not expect GA for Firebase to ***"save" analytics data to their "Google Account,"*** in contravention of the description of WAA. Exactly—that's not an interception, and it wasn't clear before now that this was Plaintiffs' only true theory.[12]

[12] Of course, Plaintiffs could have said all this the last time around, instead of arguing that Google improperly "conflates Google Analytics with Google's Firebase SDK," that "the two products are not the same," that "[t]he scripts embedded in Firebase SDK allow Google to collect user data directly from the user's phone," and that "this collection occurs whether or not an app developer has enabled Google Analytics." ECF No. 71 at 5–6. Or they could have cleared it up at the hearing. There, the Court noted that "secret scripts" could have meant "secret scripts, in the sense that unbeknownst to the users and anybody else, that Google is, for its own purposes, retrieving this data." MTD Tr. at 9:21–24. But Plaintiffs' counsel disagreed; when given the opportunity to clarify whether Plaintiffs' had one theory or two, Plaintiffs' counsel responded: "I think our point is it's really both" and that "I think our view is we do have claims under both scenarios." *Id.* at 36–37. The lesson is this: it's easier to promise a claim-saving amendment in a brief or at a hearing than it is to actually come up with one.

Finally, Plaintiffs miss the point of Google's argument based on *Graham v. Noom, Inc.*, No. 20-CV-06903-LB, 2021 WL 1312765, at *5 (N.D. Cal. Apr. 8, 2021). As *Graham* held, section 631 cannot prohibit developers from inviting third parties to record their communications, especially when they have given notice of it to the user, because only a third party can intercept a communication. Here, as this Court has already acknowledged, "Plaintiffs do not deny, for each app at issue, reading and agreeing to a developer-generated disclosure—made at Google's behest—outlining the 'use of the [GA for Firebase] Service . . . [to] collect[] and process[] data.'" MTD Order at 7:25-27. Plaintiffs' complaint is not that Google made a recording for the New York Times; it is that Google also made a copy for itself, *after* the communication between the user and the app developer was complete. Indeed, even the transmission of the recorded data to Google is done at the app developer's behest, and would have to be done anyway to serve solely the app developer's purposes. Why, then, do Plaintiffs allege that GA for Firebase runs afoul of section 631? Plaintiffs' only answer is that Google's *purpose* is dispositive. While that argument won the day for Plaintiffs on their tort claims, there's no authority for the proposition that Google's subsequent use of data that an app developer shared with it constitutes an interception under section 631; the analysis under that statute turns on the technical question of whether there was an interception in the first place.

The cases *Graham* distinguishes were decided differently because the interception was adequately alleged to happen simultaneously, and because the presence of the third party was entirely unknown to the plaintiff. Here, Plaintiffs do not complain that Google records analytics data for third-party app developers. Their complaint is that *after* the recording was made, and *after* the recording was sent to Google for storage on behalf of the app developer, Google made a copy for itself, exceeding the scope of the user's consent. While the Court found that this alleged conduct could constitute a violation of the scope of users' consent, it does not constitute a CIPA Section 631 violation because section 631 is addressed solely to interceptions while in transit.

## III. CONCLUSION

Google respectfully requests that the Court dismiss Plaintiffs' first and second causes of action for breach of contract and violation of California Penal Code § 631, with prejudice.

Dated: July 30, 2021

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

By: */s/ Benedict Y. Hur* ________________
Benedict Y. Hur