**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
  bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
  sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
  esantacana@willkie.com
LORI C. ARAKAKI (SBN: 315119)
  larakaki@willkie.com
ARGEMIRA FLOREZ  (SBN: 331153)
  aflorez@willkie.com

Attorneys for
GOOGLE LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO

| | |
|---|---|
| ANIBAL RODRIGUEZ, et al., individually and on behalf of all others similarly situated,<br><br>                                  Plaintiffs,<br><br>        vs.<br><br>GOOGLE LLC,<br><br>                                  Defendant. | Case No. 3:20-cv-04688-RS<br><br>**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Date:        October 28, 2021<br>Time:        1:30 p.m.<br>Place:       Courtroom 3 - 17th Floor<br>Judge:       Hon. Richard Seeborg<br><br>Action Filed:        7/14/2020<br>Trial Date:          Not Yet Set |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that, on October 28, 2021 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Richard Seeborg of the United States District Court for the Northern District of California at the San Francisco Courthouse, Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Google LLC will, and hereby does, move this Court, pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Counts One and Two of Plaintiffs' Third Amended Complaint.

The Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings and other papers on file in this action, any oral argument, and any other evidence that the Court may consider in hearing this Motion.

Google requests that the Court dismiss Plaintiffs' claims for violation of California Invasion of Privacy section 631 and breach of contract with prejudice.

**Statement of Issues to be Decided (L.R. 7-4)**

1.     Whether Plaintiffs fail to state a California Invasion of Privacy claim under California Penal Code section 631 upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

2.     Whether Plaintiffs fail to state a breach of contract claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

Dated: September 22, 2021                    Respectfully submitted,

                                                      WILLKIE FARR & GALLAGHER LLP

                                                      By:   */s/ Eduardo E. Santacana*
                                                         Eduardo E. Santacana

# <u>TABLE OF CONTENTS</u>

Page(s)

I.     INTRODUCTION ........................................................................................1

II.    LEGAL STANDARD..................................................................................1

III.   ARGUMENT..............................................................................................2

      A.     The Third Amended Complaint defies this Court's directive to allege simultaneity "in a manner strictly honoring the duty to litigate in good faith"; the CIPA section 631 claim should be dismissed with prejudice. .....................2

            1.     Except for aesthetic changes, the Third Amended Complaint alleges the same conduct this Court already found does not violate section 631................................................................................................4

            2.     Plaintiffs' amendments to paragraph 49 cannot save their section 631 claim...............................................................................................6

            3.     The TAC does not deny that Google acts as a vendor for app developers. ......................................................................................10

      B.     Plaintiffs have not identified an enforceable contract on which they can recover.................................................................................................11

            1.     The "Activity controls" explanation cannot form a valid unilateral contract because it contains no valid offer...........................................12

            2.     Plaintiffs fail to allege breach of the "Activity controls" language......16

            3.     The Terms of Service limit Plaintiffs' recovery for non-restitutionary disgorgement and consequential damages based on use of Google's services...............................................................................................17

      B.     Plaintiffs' quasi-contract claim should be dismissed.......................................19

IV.   CONCLUSION..........................................................................................22

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5

*AdTrader, Inc. v. Google LLC,*
   No. 17-CV-07082-BLF, 2018 WL 3428525 (N.D. Cal. July 13, 2018)...........................20, 21

6

*Aiello v. BAC Home Loan Servicing, LP,*
   No. C 11-03655 RS, 2012 WL 174808 (N.D. Cal. Jan. 20, 2012) .........................................21

7

*Alberts v. Liberty Life Assurance Co. of Bos.,*
   No. C 14-01587 RS, 2014 WL 2465121 (N.D. Cal. June 2, 2014) .........................................18

8

9

*United States ex rel. Anita Silingo v. WellPoint, Inc.,*
   904 F.3d 667 (9th Cir. 2018) ...................................................................................................2

10

*Balistreri v. Pacifica Police Dep't,*
   901 F.2d 696 (9th Cir. 1990) ...................................................................................................1

11

12

*Bass v. Facebook, Inc.,*
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) ....................................................................17, 18, 19

13

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)..............................................................................................................1, 2

14

15

*Block v. eBay, Inc.,*
   747 F.3d 1135 (9th Cir. 2014) ..........................................................................................13, 14

16

17

*Bly-Magee v. California,*
   236 F.3d 1014 (9th Cir. 2001) .................................................................................................2

18

19

*Brodsky v. Apple Inc.,*
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................................................................................9

20

*Carrico v. City & Cnty. of San Francisco,*
   656 F.3d 1002 (9th Cir. 2011) .................................................................................................2

21

22

*Darnaa, LLC v. Google LLC,*
   756 F. App'x 674 (9th Cir. 2018)...........................................................................................19

23

24

*Donohue v. Apple, Inc.,*
   871 F. Supp. 2d 913 (N.D. Cal. 2012) ..............................................................................14, 15

25

*Donovan v. RRL Corp.,*
   26 Cal. 4th 261 (2001) ...........................................................................................................12

26

27

28

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS THIRD AMENDED COMPLAINT
Case No. 3:20-cv-04688-RS

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020)............................................................3, 5, 7, 8, 9, 16

*Food Safety Net Servs. v. Eco Safe Sys. USA*,
  209 Cal. App. 4th 1118 (2012) ................................................................18

*Frezza v. Google Inc.*,
  No. 5:12-CV-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013)............16

*In re Google Location Hist. Litig.*,
  514 F. Supp. 3d 1147 (N.D. Cal. 2021) ......................................................21

*Graham v. Noom, Inc.*,
  No. 20-CV-06903-LB, 2021 WL 1312765 (N.D. Cal. Apr. 8, 2021)....................8

*Harris v. Time, Inc.*,
  191 Cal. App. 3d 449 (1987) ............................................................12, 15

*Huynh v. Quora, Inc.*,
  No. 18-CV-07597-BLF, 2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ...........18, 19

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002) ..................................................................3

*Missouri ex rel. Koster v. Harris*,
  847 F.3d 646 (9th Cir. 2017) ..................................................................2

*Letizia v. Facebook Inc.*,
  267 F. Supp. 3d 1235 (N.D. Cal. 2017) ..................................................20, 21

*Lewis v. YouTube, LLC*,
  244 Cal. App. 4th 118 (2015) ................................................................19

*London v. New Albertson's, Inc.*,
  No. 08-CV-1173 ................................................................................17

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014) ..................................................................6

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ..................................................................1

*Peterson v. Cellco Partnership*,
  164 Cal.App.4th 1583 (2008) ................................................................21

*Quigley v. Yelp, Inc.*,
  No. 17-CV-03771-RS, 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018)..................3

*Rogers v. Ulrich*,
  52 Cal. App. 3d 894 (1975) ................................................................3, 11

*Roley v. Google LLC,*
    No. 18-CV-07537-BLF, 2019 WL 1779974 (N.D. Cal. Apr. 23, 2019) ...............................14

*Sateriale v. R.J. Reynolds Tobacco Co.,*
    697 F.3d 777 (9th Cir. 2012) ...............................................................12, 14, 15, 16

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ...........................................................................22

*Williams v. Facebook, Inc.,*
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) ...............................................1, 21, 22

*Wright v. Old Gringo Inc.,*
    No. 17-CV-1996-BAS-MSB, 2018 WL 6568199 (S.D. Cal. Dec. 13, 2018).........................13

*In re Yahoo Mail Litig.,*
    308 F.R.D. 577 (N.D. Cal. 2015)..........................................................................3

*In re Yahoo Mail Litig.,*
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) .....................................................................5

*In re Zynga Priv. Litig.,*
    750 F.3d 1098 (9th Cir. 2014) .............................................................................9

**Statutes**

Cal. Penal Code § 631 ...............................................1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 22

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS THIRD AMENDED COMPLAINT
Case No. 3:20-cv-04688-RS

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.   <u>INTRODUCTION</u>**

3

Every time this Court grants a motion to dismiss, Plaintiffs broaden their case. In the place

4

of every claim or theory this Court dismisses, Plaintiffs find two more to assert. Fourteen months

5

into this litigation, Plaintiffs continue the cycle of disavowing portions of their prior complaints and

6

supplanting them with increasingly tenuous theories of liability. The Third Amended Complaint is

7

the latest example: it defies this Court's efforts at narrowing the issues in dispute by (1) discarding

8

the technical "recording" allegations made in the preceding complaint and supplanting them with

9

bare and conclusory assertions of simultaneous interception; and (2) re-asserting their meritless

10

contract claim with a slight tweak of no material import. The Court should reject both these efforts

11

and dismiss with prejudice Plaintiffs' claims for violation of California Invasion of Privacy Act

12

(CIPA) section 631 and breach of contract.

13

**II.   <u>LEGAL STANDARD</u>**

14

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the

15

legal sufficiency of the claims alleged in the complaint. *Navarro v. Block*, 250 F.3d 729, 732

16

(9th Cir. 2001). Rule 8(a) requires plaintiffs to plead each claim with sufficient specificity to "give

17

the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl.*

18

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[1] Dismissal is proper as a matter of law where there is

19

a "lack of a cognizable legal theory" or an "absence of sufficient facts alleged under

20

a cognizable legal theory." *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1048 (N.D. Cal. 2018)

21

(quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

22

To survive a motion to dismiss, a complaint must offer "more than labels and conclusions";

23

"a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

24

If the plaintiffs' allegations do not bring their "claims across the line from conceivable to plausible,

25

[the] complaint must be dismissed." *Id*. at 570. And fairness dictates that a claim unsupported by

26

27

---

[1] Unless otherwise noted, emphases are added; all internal quotation marks and citations have been omitted unless otherwise indicated.

28

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS THIRD AMENDED COMPLAINT
Case No. 3:20-cv-04688-RS

1    factual allegations establishing a plausible entitlement to the relief requested should be dismissed

2    *before* the parties engage in "costly and protracted discovery." *Id.* at 558.

3         Claims based on allegations of fraud are subject to a heightened pleading requirement under

4    Federal Rule of Civil Procedure 9(b). "In alleging fraud or mistake, a party must state with

5    particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy this

6    requirement, a pleading must identify 'the who, what, when, where, and how of the misconduct

7    charged.'" *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018).

8    The allegations "must be specific enough . . . so that [defendants] can defend against the charge and

9    not just deny that they have done anything wrong." *Id.* (quoting *Bly-Magee v. California*, 236 F.3d

10   1014, 1019 (9th Cir. 2001)).

11        Dismissal without leave to amend is appropriate if "amendment would be futile." *Carrico*

12   *v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). An amendment is futile

13   when "'no set of facts can be proved under the amendment to the pleadings that would constitute a

14   valid and sufficient claim or defense.'" *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir.

15   2017).

16   **III.   ARGUMENT**

17        **A.    The Third Amended Complaint defies this Court's directive to allege
             simultaneity "in a manner strictly honoring the duty to litigate in good faith";**
18           **the CIPA section 631 claim should be dismissed with prejudice.**

19        This is not a section 631 case. Section 631 requires the interception of a "communication"

20   while it is "in transit." Cal. Penal Code § 631(a). Plaintiffs' Second Amended Complaint (SAC)

21   made plain that there is no interception at play here; by the terms of Plaintiffs' own allegations, the

22   conduct alleged is the *use* of a *recording* beyond the permitted scope, *not* an "interception" of a

23   communication while it is "in transit." On that basis, this Court dismissed the interception claim.

24   Order on Mot. to Dismiss SAC, ECF No. 127 at 7. Further, the Court warned Plaintiffs that their

25   vague, unadorned promise in their briefing that they could simply add back in the allegation of

26   "simultaneity" was "not well taken." *Id.* And, the Court warned, any amendment would be permitted

27   only if done so "in a manner strictly honoring the duty to litigate in good faith." *Id.* at 8.

28

1    Plaintiffs ignored the Court's directive. With their Third Amended Complaint (TAC), they

2    simply added back in the allegation of simultaneity without a single additional factual allegation

3    concerning the good faith basis from which the Court could draw the plausible inference that any

4    interception occurred here. In fact, the TAC contains ***fewer factual allegations*** concerning the

5    technical context of the alleged interception than the SAC did, not more. And the bulk of the

6    allegations that demonstrated a fundamental mismatch between the alleged conduct and section 631

7    remain in the TAC, untouched.

8        This Court was right to be skeptical of Plaintiffs' interception claim, and right to require

9    sufficient factual allegations concerning the "technical context" at play to determine whether

10   liability has been alleged. That is precisely what the Ninth Circuit requires, too. *See In re Facebook,*

11   *Inc. Internet Tracking Litig.*, 956 F.3d 589, 596, 607-10 (9th Cit. 2020). Indeed, the Ninth Circuit

12   has repeatedly engaged in a detailed technical analysis to determine liability under section 631 at

13   the pleading stage. *Compare Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878-79 (9th Cir. 2002)

14   (detailing technical aspects of secure websites) *with Facebook Internet Tracking*, 956 F.3d at 607

15   (detailing GET requests).

16       Part of this analysis is to determine whether the alleged conduct constitutes the making of a

17   recording of a confidential communications rather than an interception of a communication in transit

18   because recordings were "not meant to be included" in section 631. *Rogers v. Ulrich*, 52 Cal. App.

19   3d 894, 898-99 (1975). As a result, where plaintiffs allege facts that make clear the conduct at issue

20   does not involve interception of an "in transit" communication, courts, including this one, do not

21   hesitate to dismiss. *See, e.g.*, *Quigley v. Yelp, Inc.*, No. 17-CV-03771-RS, 2018 WL 7204066, at *4

22   (N.D. Cal. Jan. 22, 2018) (where plaintiff alleged surveillance via websites and apps, dismissing

23   CIPA section 631 claim because plaintiff "has not alleged facts giving rise to an inference that his

24   communications were intercepted while 'in transit' as required under Section 631 of the California

25   Penal Code"); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 591 (N.D. Cal. 2015) ("Should it be the case

26   that Yahoo does not, in fact, intercept the emails of non-Yahoo Mail subscribers while those emails

27   are 'in transit,' but rather accesses those emails while the emails are 'in electronic storage,' then

28   Plaintiffs' CIPA [section 631] claim would be defeated."); *see also Konop*, 302 F.3d at 878 (holding

3

1  under Wiretap Act that "for a website . . . to be 'intercepted' in violation of the Wiretap Act, it must

2  be acquired during transmission, not while it is in electronic storage").

3      There are three reasons why the Court should now dismiss the CIPA section 631 claim with

4  prejudice: (1) the alleged conduct remains the same as the conduct this Court found incompatible

5  with section 631; (2) Plaintiffs' amendments cannot save their claim; and (3) Google's logging of

6  app activity on behalf of third party app developers cannot give rise to a section 631 claim because

7  Google is acting as a transcribing vendor for the app developer.

8         **1.**       **Except for aesthetic changes, the Third Amended Complaint alleges the**
   **same conduct this Court already found does not violate section 631.**

9

10     All but one of the factual allegations that Google pointed to as fatal to the section 631 claim

11 in its last motion to dismiss are still in the TAC. Google's last motion argued that Plaintiffs failed

12 to allege "interception" while communications are "in transit" because they affirmatively alleged

13 the opposite: that "it is the user's *device* that *records* communications and 'transmit[s] the

14 intercepted browsing data'; and, that transmission occurs not while the original communication is

15 *in transit*, but in a separate transmission, using 'a background process called Google Mobile Service

16 (GMS), which aggregates similarly intercepted messages across all the apps using Firebase SDK."

17 Google's Mot. to Dismiss SAC, ECF No. 115 at 18:19-23 (citing and quoting SAC ¶¶ 13, 44, 54,

18 56, 58). Each of those paragraphs remains unchanged (apart from their numbering) in the TAC. The

19 TAC still alleges:

20 - that it is the user's *device* that transmits data to Google, TAC ¶ 15;

21 - that the scripts in question "'log the user's interactions with the app,'" *id.* ¶ 53;

22 - that a "*copy*" of the relevant data is first made by the accused Google scripts and
     then that the user's device "*transmits*" that copy to Google's servers, *id.* ¶¶ 46,
     57, 59; and

23

24 - that the allegedly intercepted data is "aggregated and facilitated by a background
     process called Google Mobile Service (GMS), which aggregates similarly
     intercepted messages across all the apps using Firebase SDK," *id.* ¶ 56.

25     These unchanged allegations in the TAC were fatal to the last complaint. As the Court held,

26 an allegation that Google's scripts first "cop[y]" and "then . . . transmit" data to Google servers

27 conclusively removes the challenged conduct from the technical requirements for violation of

28

4

section 631. Order on MTD SAC at 7. These allegations are indeed fundamentally irreconcilable with the requirement for section 631 liability that they be "intercepted" "*while in transit*." Cal. Penal Code § 631(a); *see* Order on MTD SAC at 7 (quoting *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1036 (N.D. Cal. 2014)).

Also remaining in the TAC is the diagram that Google pointed out in its last motion demonstrates non-simultaneous *logging*, *copying*, and *then* transmitting data to Google, rather than the type of simultaneous interception discussed by the Ninth Circuit in the *Facebook Internet Tracking* case.

 

*Compare* TAC ¶ 125 *with Facebook Internet Tracking*, 956 F.3d at 596, 607–10.

Indeed, this case has never been about "in transit" interception. From the start, Plaintiffs' theory of the case has been that Google was invited to *log* data by third-party app developers (with their consent), and upload the data to Google's servers for app developers' use in analytics, but that Google *then made a copy* of the data for its own unauthorized use. *See* TAC ¶¶ 3 (alleging Google "saved and used . . . for Google's purposes" data it collected for app developers without authorization); *id.* ¶ 4 (alleging Google users believed the WAA control would "stop Google from 'sav[ing]' the users' app data"); *id.* ¶ 120 (alleging Google unlawfully "*associates* the confidential communications" that Google logged for app developers "with a user profile" so it can "later use[] the user's profile . . . to direct targeted advertisements to consumers"); *id.* ¶ 124 (alleging Google unlawfully "combines the data, transmitted to Google by the Firebase SDK scripts, with additional data"); *id.* ¶ 126 (alleging that Google "then uses" the combined data and "detailed profiles to"

1
2
3

target advertisements). The falsity of this theory will be proven in due course, but it is, fundamentally, a theory about the subsequent copying and use of existing data, not the interception of a communication while in transit.

4
5

### 2. Plaintiffs' amendments to paragraph 49 cannot save their section 631 claim.

6
7
8
9
10
11

In its Order dismissing Plaintiffs' section 631 claim, this Court quoted from paragraph 49 of the SAC, which had changed from its wording in the First Amended Complaint. In the TAC, that paragraph is now in its third incarnation as paragraphs 51 and 52; the former paragraph 49 is the only allegation Plaintiffs changed in response to this Court's Order dismissing the section 631 claim. The changes do nothing to save the claim; if anything, they further underline Plaintiffs' loose pleading.

12
13
14
15
16
17
18

Gone from the TAC is the specific sentence this Court quoted in its Order, which formerly alleged that Google "copies that request, and then while overriding device and account level controls simultaneously transmits the browsing data to Google servers." *See* Order on MTD SAC, ECF No. 127 at 7:13-14 (quoting SAC ¶ 49). Of course, as discussed above, this allegation is made in myriad other places. That the Court chose to be concise by quoting this one sentence and not every single other instance of it in the SAC is of no moment; what is relevant is that Plaintiffs simply cut this sentence from the TAC without amending the other similar allegations described above.

19
20
21
22
23
24
25
26
27

In this manner, Plaintiffs run afoul of this Court's admonition that they amend their complaint "in a manner strictly honoring the duty to litigate in good faith." *Id.* at 8. Just as they passed off their "secret scripts" theory as inartful wording and a miscommunication, the TAC similarly passes off the sentence the Court quoted as a miscommunication. Footnote 2 of the TAC argues that Google mischaracterized the SAC, and that the new paragraphs 51 and 52 of the TAC "clarify" that "interception occurs while the communication between the user and the third-party app server is in transit." TAC ¶ 3 n.2. This amendment also runs afoul of longstanding principles concerning amended pleadings. A plaintiff cannot simply "re-ple[a]d the same facts and legal theories" on amendment in order to bypass a motion to dismiss. *Loos v. Immersion Corp.*, 762 F.3d 880, 891 (9th Cir. 2014). By striking the one sentence the Court quoted and otherwise leaving the

28

1   allegations about the technical context of the accused technology unchanged, Plaintiffs fail to save

2   their claim from dismissal.

3          In place of the sentence they struck, Plaintiffs added *no* factual allegations relevant to section

4   631; instead, they put forward a novel legal theory based on the same factual context. Paragraphs

5   51 and 52 are the meat of it. There, the TAC alleges that "one example" of the interception Plaintiffs

6   allege is that when a user "clicks on an app icon on his or her mobile device, that opens the app and

7   a line of communication between the user, through his or her mobile device, and the app's

8   application server." TAC ¶ 51; *see also* TAC redline to SAC, ECF No. 130-5 at 12. This "line of

9   communication" allows, for example, "the New York Times' application server to request content

10  to be delivered to the user, such as the most current news of the day." *Id.* The TAC next alleges that

11  Google "surreptitiously ~~copies~~ **intercepts** the user's request **as the request is in transit to the app's**

12  **application server**, and simultaneously transmits **a copy of** ~~the browsing data~~ **request** to Google

13  without disclosure to the user or the user's consent." TAC ¶ 51 (red and green highlights added by

14  Google to demonstrate key changes from SAC ¶ 49).

15         This "line of communication" theory of liability does nothing to save Plaintiffs' claim. ***First***,

16  it is merely a gloss on the same facts; it provides no basis to find interception of any communication.

17  Plaintiffs have always alleged that communications for purposes of analyzing the wiretap statutes

18  constituted individual requests for and receipts of data that, for the reasons stated above, have not

19  been intercepted.[2] ***Second***, that is how the Ninth Circuit analyzes it in analogous contexts, too. If it

20  were as easy to establish section 631 liability as saying that a "line of communication" is

21  permanently open between the app developer and the app user, the *Facebook Internet Tracking*

22  _____

23  [2] For just a few of dozens of examples, *see, e.g.*, Compl., ECF No. 1 ¶ 116 ("The communications
    intercepted by Google included 'contents' of electronic communications made from the Plaintiffs

24  to apps other than Google in the form of **detailed URL requests**, **app browsing histories**, and
    **search queries** which Plaintiffs sent to those apps and for which Plaintiffs **received**

25  **communications in return** from those apps."); FAC, ECF No. 60 ¶ 49 ("When a user selects a
    link to an article within The New York Times app on the user's phone, that selection generates a

26  communication from the users' phone to The New York Times' servers."); *id.* ¶ 241 (same as
    Compl. ¶ 116); SAC, ECF No. 113 ¶ 49 ("When a user selects a link to an article within The New

27  York Times app on the user's phone, that selection generates a communication from the users'
    phone to The New York Times' servers.").

28

1   court would never have needed to conduct its detailed analysis because the fact that a single click

2   generated two identical, simultaneous GET requests would have been immaterial. Instead, the

3   "message" in the form of a GET request, and whether it was simultaneously intercepted, was the

4   central question in that case. *See* 956 F.3d at 607.

5          Further, the "line of communication" theory misses the point entirely; it does nothing to fix

6   the fundamental problem with the section 631 claim. Per the TAC, Plaintiffs don't deny that the

7   accused scripts log event data on behalf of app developers, nor do they deny that those logs would

8   be sent to Google servers to service app developers regardless, nor do they deny that app developers

9   are required to and do disclose that fact to users, nor do they take issue with app developers' right

10   to enlist Google's help to do that. The law, of course, permits app developers to use Google as a

11   vendor in this manner. *See Graham v. Noom*, *Inc.*, No. 20-CV-06903-LB, 2021 WL 1312765, at

12   *4-6 (N.D. Cal. Apr. 8, 2021). Plaintiffs' complaint is thus that Google allegedly *also* duplicates the

13   data for itself while WAA is turned off, and "saves" the data to a user's profile for advertising

14   purposes. That theory is false. It is also not actionable under section 631, whether analyzed as part

15   of a "line of communication" or a series of independent communications. Either way, the technical

16   context of the alleged conduct falls outside section 631.

17          Plaintiffs' new paragraph 52 is even further afield. It adds nothing by way of factual

18   allegation about the technical context of the challenged conduct. Instead, it merely reiterates what

19   Plaintiffs have said before: that Google allegedly advertises with data sent to it via Google Analytics

20   for Firebase while WAA is turned off. TAC ¶ 52. This paragraph also adds the word "simultaneous"

21   or some derivation of it five times, all in conclusory fashion. *Id.* None of this amounts to a fix for

22   the otherwise fatally defective allegations elsewhere in the TAC.

23          Paragraph 52 also adds yet another Google product to the mix—"Real-Time Bidding" —to

24   argue simplistically that because ad bidding can happen in "real time," that must mean that the

25   alleged interception of communications happens "simultaneously." This is more artful wording

26   devoid of factual matter. The "Real-Time" in "Real-Time Bidding" refers to the rapid auction

27   process that occurs between sellers of ad space and buyers of ad space. Relying on the semantics of

28   a product that has never been mentioned before to argue that Plaintiffs have a good faith basis to

allege simultaneous interception of "in transit" communications borders on bad faith. Indeed, Real Time Ad Bidding (RTB) relates to the transaction between buyers and sellers of ads, not Firebase. In 14 months, dozens of meet-and-confer communications, over 100 discovery requests, and four complaints, Plaintiffs' counsel have never mentioned it before. It is not clear to what, specifically, Plaintiffs' reference to RTB applies, other than to reiterate previous allegations that Google Analytics data combined to create user profiles for advertising purposes. But that says nothing about whether the alleged conduct occurs through the logging and recording of data (as Plaintiffs allege elsewhere in the TAC) or through the interception of an "in transit" communication, as Plaintiffs would be required to plead in order for their section 631 claim to survive. Paragraph 52 does nothing to address the Court's Order dismissing the section 631 claim.

Further, paragraph 52 fails to allege the use of the "contents" of any electronic communication in conjunction with "Real Time Ad Bidding."[3] It merely alleges that when a user is to be served an advertisement, a real-time auction is held to determine which ad will appear, and that auction includes an identification of the device that must receive the ad and the page the request for an ad came from—not unlike identifying the phone number placing a call and the phone number receiving it. As this Court knows, the name of a webpage or a device identification is not the "contents" of an electronic communication, it is "record" information that is inactionable under section 631. *See, e.g.*, *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (dismissing section 631 claim where Apple was alleged to have intercepted "requests" to third party apps because the Ninth Circuit has held that "record information regarding the characteristics of the message that is generated in the course of the communication" does not qualify as 'contents'") (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014))[4]

---

[3] Real Time Ad Bidding is used across the Internet by different advertisers to sell ad space. The "real time" part of the term refers to the auctioning of advertising space in real time, as a user is presented with advertising space on a web page. It does not imply anything concerning the simultaneity or lack thereof of the collection of Google Analytics for Firebase data on behalf of app developers.

[4] The Ninth Circuit has distinguished what Plaintiffs allege in paragraph 52—simply "the mobile app page being requested," TAC ¶ 52—from a referrer URL, which, when combined with "detailed URLs," and "user ID, time stamp, browser settings, and even the type of browser used"

9

### 3. The TAC does not deny that Google acts as a vendor for app developers.

In moving to dismiss the SAC's section 631 claim, Google made two related but independent arguments. The first argument is addressed above. The second concerned Google's status vis-à-vis the app developers who incorporated its technology into their apps.[5] Google noted that this Court has already acknowledged the disclosure made to users by app developers for their own use of Google's analytics service. *See* MTD SAC, ECF No. 115 at 20 (quoting MTD FAC Order, ECF No. 109 at 5:1-2, 7:25-27 ("Plaintiffs do not deny, for each app at issue, reading and agreeing to a developer-generated disclosure—made at Google's behest—outlining the 'use of the [GA for Firebase] Service . . . [to] collect[] and process[] data.'")).

The TAC makes no amendments to address this reality. That is critical, and dispositive. The essence of Plaintiffs' case is not that, in the analogy of a phone call, Google is listening on the phone line without the knowledge of all parties. Everyone on the phone knows Google is there, and everyone knows Google is, at a minimum, logging details of the conversation for the app developer's later use in performing analysis of its app's performance. And, when WAA is on, Plaintiffs allege, everyone expects Google to "save" the communications to the user's "Google Account" as well, so that it may be used for targeted advertising, among other things. But, Plaintiffs argue, when WAA is off, users do not expect Google to make a copy of the log for advertising purposes. That, this Court held, is a viable theory of tort liability because the description of WAA could reasonably cause a user to "fail[] to grasp" that their data would not just be used by the app developer, but also "'saved in' a user's 'Google Account.'" MTD FAC Order, ECF No. 109 at 8–9.

Because Plaintiffs have never taken issue with Google Analytics for Firebase logging activity data to the device, and in fact concede that such logging is a publicly disclosed functionality,

---

could give rise to a reasonable expectation of privacy. *Facebook Internet Tracking*, 956 F.3d at 605. The former is clearly not the contents of a communication, but record information. The latter can be considered contents when combined with other data, for the reasons discussed in that opinion.

[5] The Court did not reach this issue in deciding the last motion to dismiss because it found the first argument discussed here—that Plaintiffs' allegations failed to allege an "in transit" interception— dispositive.

they cannot allege a section 631 interception "while in transit." At most, they are alleging unlawful copying or recording of a communication that exceeds the authorized scope—for example, via their tort claims. That alone does not satisfy section 631's requirements. Taking Plaintiffs' allegations as true, the app developers' decision to "transcribe" communications with users via Google Analytics for Firebase—a process disclosed to those users—does not convert the alleged copying and later usage of that data for other purposes by Google into a violation of section 631. *See, e.g.*, *Rogers*, 52 Cal. App. 3d at 898–99 (holding section 631 claim was not viable because "a recording made by a participant does not intercept the message while it is in transit; the recording rather transcribes the message as it is being received" and "participant recording was not meant to be included" in section 631).

**B.**     **Plaintiffs have not identified an enforceable contract on which they can recover**.

This Court held that Plaintiffs failed to state a claim for breach of contract based on Google's Terms of Service, Privacy Policy, or WAA Help Center support page. Order on MTD SAC, ECF No. 127 at 4–6. Plaintiffs seek to circumvent the Court's ruling by pointing to nearly identical language in the "Activity controls" description displayed within the "Settings" menu on Android devices and on Google's website, and claiming Google breached that "unilateral" contract. TAC ¶¶ 244–48. Plaintiffs' "new" theory is that through the "Activity controls" explanation, Google offered to "stop collecting [Plaintiffs'] third-party app activity data if Plaintiffs . . . turned off their 'Web & App Activity' control." TAC ¶ 244; *see also id.* ¶ 254 (similar). Plaintiffs theorize that they accepted this offer "by switching off 'Web & App Activity' and continuing to use Google services," *id*. ¶ 250, and that "Google breached" that contract "by continuing to collect and use third-party app activity data while Plaintiffs . . . had 'Web & App Activity' switched off," *id*. ¶ 262.

Nothing in the "Activity controls" explanation—which links to the WAA Help Center page, *id*. at ¶¶ 256–57 & n.70, and contains nearly identical language[6]—supports this theory. As this Court

---

[6] *Compare* TAC ¶ 257 [WAA Help Page language] ("The box next to 'Include Chrome history and activity from sites, apps, and devices that use Google services' must be checked.") *with id.* ¶¶ 245–46 [Android Settings menu description of "Activity controls") ("beneath the 'Web & App Activity' control switch, there is a separate box that the user may click to allow Google to 'Include

11

already determined, Plaintiffs cannot allege a contractual violation based on the WAA Help page because that page contains no "shared commitments to which users must abide" and therefore there can be no "valid consideration." Order on MTD SAC, ECF No. 127 at 5–6. Plaintiffs now claim that even if no bilateral contract could have existed, a *unilateral* one did. The only difference between bilateral and unilateral contracts is the method of acceptance. *E.g., Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 785 (9th Cir. 2012). "In contrast to a bilateral contract," where the offer is accepted by "providing a promise," a unilateral contract is created when "[t]he offer is accepted by rendering a performance." *Id.* "[A]ny bargained-for act or forbearance" as specified in the offer "will constitute adequate consideration for a unilateral contract." *Harris v. Time, Inc.*, 191 Cal. App. 3d 449, 456 (1987).

This new unilateral contract theory cannot save Plaintiffs' claim,  because Plaintiffs again fail to plead the basic elements of a contract claim:  (1) Plaintiffs have not alleged an enforceable contract because the "Activity controls" explanation contains neither a promise nor a request for specific performance in return and therefore is not a valid offer for a unilateral contract; (2) Plaintiffs have not alleged a breach of the "Activity controls" terms; and (3) Plaintiffs are barred from recovering non-restitutionary disgorgement and consequential damages due to the limitation of liability in the Terms of Service.

### 1.      The "Activity controls" explanation cannot form a valid unilateral contract because it contains no valid offer.

The "Activity controls" explanation cannot sustain a breach of contract claim because it contains no offer. A valid unilateral contract requires that the promisor make an offer that "calls for performance of a specific act without further communication and leaves nothing for further negotiation." *Harris*, 191 Cal. App. 3d at 455; *accord Sateriale*, 697 F.3d at 784, 788. "The operative question under California law, . . . [is] 'whether [Google], *in clear and positive terms, promised to render performance* in exchange for something requested . . ., and whether [Plaintiffs] . . . reasonably might have concluded that by acting in accordance with the request a contract would

---

Chrome history and activity from sites, apps, and devices that use Google services'"), *and id.* ¶¶ 247-248 ["Activity controls" webpage] (same).

be formed.'" *Sateriale*, 697 F.3d at 788 (quoting *Donovan v. RRL Corp.,* 26 Cal. 4th 261, 272 (2001)). The promise must be "*expressly conditioned on particular performance*" to be a valid offer. *Wright v. Old Gringo Inc.*, No. 17-CV-1996-BAS-MSB, 2018 WL 6568199, at *7 (S.D. Cal. Dec. 13, 2018). Here, there is no offer in the "Activity controls" explanation for at least two reasons: it contains neither a promise in clear and positive terms nor a request for particular performance in return.

        *First*, Google made no promise in clear and positive terms. Plaintiffs point to the statement that "Subsettings" to WAA "Include Chrome history and activity from sites, apps, and devices that use Google services," and the inclusion of a "separate box the user may click" that is unavailable when WAA is toggled off, as the alleged promise. TAC ¶¶ 245–48. But neither those statements nor anything within the "Activity controls" explanation contains "explicit promissory language" that would impose a *contractual obligation* on Google. *Block v. eBay, Inc.*, 747 F.3d 1135, 1138–40 (9th Cir. 2014). In *Block*, the Ninth Circuit analyzed the following representations in eBay's User Agreement:

> You acknowledge that we are not a traditional auctioneer. Instead, our sites are venues to allow anyone to offer, sell, and buy just about anything, at any[ ]time, from anywhere, in a variety of pricing formats and locations, such as stores, fixed price formats and auction-style formats. We are not involved in the actual transaction between buyers and sellers.

*Id.* at 1138–39. Even though the language states what eBay does and does not do, the court held that it was not promissory in nature. Indeed, "[t]he provision's explanatory function is not confusing: . . . [it] is a broad description of the eBay marketplace" and cannot be read as "a promise not [to be] involved in the actual transaction between buyers and sellers." *Id.* at 1139. Because the provision the plaintiff identified as the basis for its breach of contract case was merely "explanatory" and therefore not an "enforceable promise," the Ninth Circuit affirmed dismissal of the breach of contract claim. *Id.* at 1139–40. Applying that rule here results in the same conclusion. Like the statements in *Block* that explain what eBay does ("our sites are venues"), what it allows ("a variety of pricing"), and its role ("[eBay is] not involved in the actual transaction"), Google's "Activity controls" description is likewise explanatory. For instance, it explains that users can "Choose which

settings will save data in your Google Account," what WAA does generally ("Saves your activity on Google sites and apps"), TAC ¶¶ 245, 247 (text in screenshots), and that there is a "Subsetting[]" of WAA which allows users to "Include Chrome history and activity from sites, apps, and devices that use Google services" in their saved Google account, *id.* ¶¶ 246, 248. All of these statements, even with Plaintiffs' added gloss that the "Subsettings" checkbox "is automatically turned off" when WAA is off, *id.*, merely illuminate how certain of Google's controls work. Those statements promise nothing about precisely how the WAA setting will or will not function, or what data Google will or will not receive from third-parties or even collect. *Cf. Roley v. Google LLC*, No. 18-CV-07537-BLF, 2019 WL 1779974, at *2, 4–5 (N.D. Cal. Apr. 23, 2019) (finding plaintiff adequately pled a unilateral contract where Google promised that "Local Guides who reach Level 4 in the next 2 weeks can still unlock the original offer of 1TB of free Drive storage" and the plaintiff allegedly reached Level 4 in two weeks). The fact that *Block* concerned a bilateral contract does not change this conclusion because both bilateral and unilateral contracts require a definite promise; the only difference is in the form of acceptance. *See Sateriale*, 697 F.3d at 785.

Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913 (N.D. Cal. 2012), is also instructive because it concerns similar explanatory language offered gratuitously by the defendant. That court rejected the plaintiff's breach of contract claim based on Apple's iPhone User Guide which "'come[s] with the purchase' of an iPhone," "describes the [iPhone's] 'capabilities, specifications and functionality,'" and indicates what a specific feature, "the signal meter," can do. *Id.* at 917. The court reasoned that the User Guide "includes no 'promises' which plaintiff could have 'accepted'" because it merely provides "directions for using an iPhone and descriptions of the device's functions." *Id.* at 931 (discussing "contract formation [which] requires an 'offer communicated to an offeree'"). Accordingly, it was "merely an instruction manual, and therefore does not give rise to contractual obligations." *Id.* at 931 (agreeing with Apple's argument). The same is true here. Like the Apple iPhone User Guide in *Donahue*, Google's "Activity controls" explanation did not communicate an offer to Plaintiffs because "it provides directions for using [WAA] and descriptions of [WAA's] functions, but includes no 'promises' which [P]laintiff[s] could have 'accepted.'" *See id.* at 931. Even though the "Activity controls" language explains what WAA can do, like the Apple iPhone

1    manual explains what the "signal meter" can do, that does not rise to the level of an enforceable

2    promise. *See id.* Indeed, courts resist "adopting the position that an [explanation could form] a

3    contract" because it "would vastly expand the scope of" liability and "creat[e] perverse incentive[s]

4    . . . to avoid including comprehensive [and helpful explanations] with . . . products" and services.

5    *See, e.g., Donahoe*, 871 F. Supp. 2d at 931 (discussing liability for warranties).

6          ***Second***, Google made no request for particular performance by Plaintiffs in the "Activity

7    controls" language. According to Plaintiffs, Google "promised . . . [it] would stop collecting . . .

8    activity data if Plaintiffs acted by  "turn[ing] off their 'Web & App Activity' control." TAC ¶ 244.

9    But nowhere in the language Plaintiffs cite does Google request that Plaintiffs "turn[] off" the WAA

10   control to form a contract, nor does Google agree that *if* the condition of users switching the WAA

11   toggle to off is fulfilled, Google will stop receiving third-party app-interaction data. *See* TAC

12   ¶¶ 245–48 (citing WAA switch that allows users to toggle on *or* toggle off). The explanation of

13   "Activity controls" does not "call[] for performance of a specific act without further

14   communication," "leav[ing] nothing for further negotiation." *See Harris*, 191 Cal. App. at 455

15   *Sateriale*, 697 F.3d at 78. This case is therefore unlike ones where there is a clear request for specific

16   performance. In *Harris*, for instance, the defendant sent a mailer which visibly stated "I'll give you

17   this versatile new calculator watch free just for opening this envelope before Feb. 15, 1985." *Id.* at

18   452–53 (capitalization removed). The court held that there was a unilateral contract because the

19   "promisor made a promise to do something (give the recipient a calculator watch) in exchange for

20   the performance of an act by the promisee (opening the envelope)." *Id.* at 455–56. Similarly, in

21   *Sateriale*, which involved a cigarette rewards program where purchasers could trade proofs of

22   purchase for rewards, the court reasoned that the cigarette manufacturers' communications to

23   consumers constituted an offer because they "invited the performance of specific acts (saving

24   [proofs of purchase] and redeeming them for rewards in accordance with the catalog) without further

25   communication, and leaving nothing for negotiation." *Id.* at 787–88. Unlike with the specific

26   requests for performance in *Harris* (to open the envelope) and *Sateriale* (to save proofs of purchase

27   and redeem them), Plaintiffs cannot identify a specific act Google requested that Plaintiffs complete.

28

The "Activity controls" language at issue says nothing about what Plaintiffs must do. At most, it offers *Google's*, not Plaintiffs' view of the WAA setting.

Moreover, "'[t]he determination of whether a particular communication constitutes an operative offer,' can include consideration of 'the surrounding circumstances.'" *Sateriale*, at 697 F. 3d at 785. The circumstances of the "Activity controls" explanations further indicate it does not contain a clear promise and request for performance. For instance, the Android Settings language plaintiff relies on is nested within the menu, amongst a number of other explanatory pages, including ones labeled "Usage & diagnostics," "Ads," "Google location history," "Customization Service," "Device Personalization Services," "Autofill service from Google." TAC ¶ 245. A reasonable person would not take that to mean each explanation of various settings required their performance to create individual contracts with Google. *See, e.g.*, *Frezza v. Google Inc.*, No. 5:12-CV-00237-RMW, 2013 WL 1736788, at *3 (N.D. Cal. Apr. 22, 2013) (dismissing unilateral contract claim where promotional materials directed users to Google's help page but "[n]o reasonable person would understand visiting the . . . 'help center' as being the performance sought.")

The language in the "Activity controls" Android setting page and Google webpage cannot form a valid offer for a unilateral contract as a matter of law because it does not specifically explain what Google will do and what performance Google expects from Plaintiffs in response. *See Sateriale*, 697 F. 3d. at 788.

### 2.    Plaintiffs fail to allege breach of the "Activity controls" language.

Even assuming the parties entered into a unilateral contract based on the language describing "Activity controls" in either the Android settings page or on Google's website (they did not), Plaintiffs have not and cannot allege breach. Plaintiffs contend "Google breached its unilateral contract . . . by continuing to *collect and use* third-party app activity data while Plaintiffs . . . had [WAA ] switched off." TAC ¶ 262. Even accepting the factual allegations as true, they do not line up with the alleged representations within Google's "Activity controls" representations. The "Activity controls" language contains no discussion of Google's *collection, use, or even receipt* of third-party interaction data. *See* TAC ¶¶ 245–48. It explains something different: what can be *saved* to a users' account. *See id.* This mis-match between the breach and alleged contract terms is a

separate reason to dismiss Plaintiffs' claim. *See, e.g., Facebook Internet Tracking,* 956 F.3d at 610 & n.11 (plaintiffs failed adequately to plead breach of contract even though Facebook admittedly tracked users because Facebook's Privacy Policy said "'[i]f you log out of Facebook. . . , [third-party websites] will not be able to *access* your information," which "does not make any promises regarding Facebook's *receipt* of data"); *see also London v. New Albertson's, Inc.*, No. 08-CV-1173 H (CAB), 2008 WL 4492642, at *6 (S.D. Cal. Sept. 30, 2008) (plaintiffs failed to plead breach where they alleged defendant "inadequately de-identif[ied] medical information before disclosing" where "[d]efendants only promised to not disclose [p]laintiff's individually identifying information, and made no promises regarding de-identified data").

> **3.      The Terms of Service limit Plaintiffs' recovery for non-restitutionary disgorgement and consequential damages based on use of Google's services.**

Plaintiffs' request for non-restitutionary disgorgement and consequential damages for their breach of contract claim is thwarted by the limitation of liability clause in the Terms of Service in effect (i) between 2014, when Google acquired Firebase, and March 30, 2020 and (ii) between March 31, 2020 and the present. The Terms of Service govern Plaintiffs' use of and "interact[ion] with [Google's] services." Santacana Decl., Ex. A at 1 (Terms of Service eff. March 31, 2020); *see id.*, Ex. B at 1 (Terms eff. Oct. 25, 2017; "By using our Services, you are agreeing to these terms."); *id.*, Ex. C at 1 (same for Terms eff. April 14, 2014); *see also* TAC ¶ 239 (relying on Terms of Service). And Plaintiffs admit the conduct at issue here stems from the fact that they "continued using Google services" after turning off WAA. *E.g.*, TAC ¶¶ 251–53.

As a matter of California law, where an express contract governing the conduct of the parties contains a limitation-of-liability clause, it applies to limit recovery unless it is deemed unconscionable. *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037 (N.D. Cal. 2019) ("[T]he only way the breach of contract claims may move forward is if the limitation-of-liability clause is deemed unconscionable."). Plaintiffs have not pleaded any facts establishing that the limitation-of-liability clause should be deemed unenforceable. Plaintiffs' breach of contract claim insofar as Plaintiffs

1   seek non-restitutionary disgorgement and consequential damages, TAC ¶¶ 265, 271, should thus be

2   dismissed.[7]

3         **Firebase acquisition (2014) to March 30, 2020:**  The limitation of liability clause in the

4   Terms of Service, effective between 2014 and March 30, 2020, limits Plaintiffs' recovery to the

5   amount Plaintiffs paid to Google. Here, they do not dispute they paid nothing, so there can be no

6   consequential or non-restitutionary disgorgement damages to support their contract claim. Each of

7   three versions of the Terms of Service in effect during that time contain the following limitation:

8         WHEN PERMITTED BY LAW, GOOGLE, AND GOOGLE'S SUPPLIERS AND
          DISTRIBUTORS, WILL NOT BE RESPONSIBLE FOR LOST PROFITS,
9         REVENUES, OR DATA, FINANCIAL LOSSES OR INDIRECT, SPECIAL,
          CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES.
10

11        **TO THE EXTENT PERMITTED BY LAW, THE TOTAL LIABILITY OF
          GOOGLE, AND ITS SUPPLIERS AND DISTRIBUTORS, FOR ANY CLAIMS
12        UNDER THESE TERMS,** INCLUDING FOR ANY IMPLIED WARRANTIES, **IS
          LIMITED TO THE AMOUNT YOU PAID US TO USE THE SERVICES** (OR,
13        IF WE CHOOSE, TO SUPPLYING YOU THE SERVICES AGAIN).

14        IN ALL CASES, GOOGLE, AND ITS SUPPLIERS AND DISTRIBUTORS, WILL
          NOT BE LIABLE FOR ANY LOSS OR DAMAGE THAT IS NOT REASONABLY
15        FORESEEABLE.

16   Santacana Decl., Ex. B at 5; *id.*, Ex. C at 5 (same). Limitation of liability clauses like this one "'have

17   long been recognized as valid in California,'" and have been applied to dismiss claims accordingly.

18   *Huynh v. Quora, Inc.*, No. 18-CV-07597-BLF, 2019 WL 11502875, at *11 (N.D. Cal. Dec. 19,

19   2019) (quoting *Food Safety Net Servs. v. Eco Safe Sys. USA*, 209 Cal. App. 4th 1118, 1126 (2012)).

20         The Court's decision in *Bass* is instructive. There, the Court was asked to determine whether

21   Facebook's terms of service limitation-of-liability clause—which is analogous to the one at issue

22   here—foreclosed the plaintiffs' contract-based claims arising out of a data breach. *Compare Bass*,

23   394 F. Supp. 3d at 1037–38 *with* Santacana Decl., Ex. B at 5, and *id.*, Ex. C at 5. The Court

24   concluded Facebook's limitation-of-liability clause was a "showstopper." *Bass*, 394 F. Supp. 3d at

25   1037–38. The clause applied to all four contract-based claims—including one for non-restitutionary

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [7] When damages are precluded as a matter of law, they can be disposed of on a Rule 12(b)(6)
     motion to dismiss. *E.g.*, *Alberts v. Liberty Life Assurance Co. of Bos.*, No. C 14-01587 RS, 2014
28   WL 2465121, at *4 & n.4 (N.D. Cal. June 2, 2014) (dismissing claim for punitive damages).

disgorgement—and directed dismissal of each. *Id.* at 1032, 1037; *see also, e.g., Huynh*, 2019 WL 11502875, at *10-11 (dismissing breach of implied contract claim due to a limitation-of-liability clause). The same is true here.

Indeed, Plaintiffs do not set forth any allegation that would support finding the limitation unenforceable. To do so, Plaintiffs would have to plead facts establishing both procedural and substantive unconscionability. *Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 675–76 (9th Cir. 2018). They have not (and cannot). *See also Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125 (2015) (limitation of liability clauses are particularly "appropriate when one party is offering a service for free"). Accordingly, Plaintiffs will never be able to allege non-restitutionary disgorgement or consequential damages as viable theories for recovery under their breach of unilateral contract claim. *See Bass*, 394 F. Supp. 3d at 1037–38.

**March 30, 2020 to present:** The limitation of liability clause in the Terms of Service, effective between March 30, 2020 and present limits Plaintiffs' recovery as well. That version includes the following limitation: "Other than the rights and responsibilities described in this section . . . Google won't be responsible for any other losses, unless they're caused by our breach of these terms." Santacana Decl., Ex. A at 11. Plaintiffs cannot recover damages for alleged breaches of terms other than those in the Terms of Service; they cannot, for example, recover damages for breaches of the Android Settings menu explanation of "Activity controls" or similar language displayed on Google's webpage, or any other extra-contractual language that has not been incorporated by reference. Because Plaintiffs now rely solely on the "Activity controls" explanation and make no effort to argue Android settings menu or "Activity controls" webpage are incorporated into Google's Terms of Service, the limitation-of-liability clause in effect since March 30, 2020 bars recovery too.

### B.   Plaintiffs' quasi-contract claim should be dismissed.

Plaintiffs plead a quasi-contract claim for unjust enrichment in the alternative. As an initial matter, this Court did not grant Plaintiffs leave to add a new claim. Order on MTD SAC, ECF No. 127 at 8. Although Plaintiffs were given leave to amend their breach of contract claim, which they previously alleged could alternatively be predicated on "implied contracts" "entered into" by

19

the parties, SAC ¶ 244, that is not the same as a claim for quasi-contract. Indeed, in opposing Google's Motion to Dismiss their Second Amendment Complaint, Plaintiffs assured this Court the SAC did not contain a quasi-contract theory, which they argued is "different" than an implied-in-fact contract theory. *See* Opp. to MTD SAC, ECF No. 120-4 at 18:14-15 & n.12. The distinction between those two types of claims—a quasi-contract claim and a breach of contract claim premised on an implied contract—is why Plaintiffs cannot disguise their new claim as an "alternate" one for breach of contract, as they have attempted to do here. *See, e.g.*, ¶ 266 ("[i]n the alternative"). The lack of leave to amend is reason alone to dismiss Plaintiffs' new claim. *See* Order on MTD SAC at 8; *see also* Fed. R. Civ. P. 15(a)(2).

Setting aside Plaintiffs' attempt to exceed the spirit of the Court's authorization, the quasi-contract claim also fails as a matter of law because there is a valid contract governing Plaintiffs' use of Google's services, and Plaintiffs fail to plead the elements of quasi-contract with requisite specificity under Fed. R. Civ. P. 9(b). It is "well-settled" in California that a "quasi-contract [claim] cannot lie where there exists between the parties a valid express contract ***covering the same subject matter***." *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1253–54 (N.D. Cal. 2017). This is so "even though Federal Rule of Civil Procedure 8 allows Plaintiffs to seek inconsistent causes of action, [because] this rule does not overcome the California state-law doctrine." *Id.* Critically, the phrase "same subject matter" must not be viewed too "narrow[ly]." *See AdTrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2018 WL 3428525, at *11 (N.D. Cal. July 13, 2018). The decision in *Letizia* illustrates how broadly "same subject matter" should be viewed. There, the court dismissed the quasi-contract claim because Facebook's Statement of Responsibilities and Rights and other express contracts governed the *general* subject matter at issue ("Facebook's advertising services"). *Id.* at 1253. The plaintiff had alleged Facebook's misleading calculation of two advertising metrics unfairly induced purchases to buy video advertisements and inflated their prices. *Id.* at 1240. Even though "Facebook's contracts do not expressly mention the two advertising metrics at issue" the court reasoned that "does not mean the contract does not govern the subject matter at issue." *Id.* at 1253. It dismissed the unjust enrichment claim with prejudice because "amendment would be futile" where an express contract exists. *Id.* at 1254.

20

1    This Court should come to the same conclusion. Plaintiffs' quasi-contract claim is predicated

2    on the factual theory that Google collected their data when they "continu[e]d to *use Google services*"

3    after turning off WAA. *See, e.g.*, ¶¶ 250–53; *id.* ¶ 268 (discussing that Google allegedly received

4    and used Plaintiffs' data). An express contract—Google's Terms of Service—governs the same

5    topic: users who "interact with [Google's] services." *See supra* at 17:15–20. As in *Letizia*, Google's

6    Terms of Service cover the same "subject matter" and the quasi-contract claim should thus be

7    dismissed even if there are no explicit provisions in the Terms addressing the factual theory

8    Plaintiffs allege here. *See Letizia*, 267 F. Supp. 3d at 1253–54; *see also, e.g., AdTrader*, 2018 WL

9    3428525, at *11 (rejecting Plaintiff's attempt to narrow the relevant subject matter to "refunds for

10   invalid activity" which is too "narrow" when the general, relevant subject matter is "Google's

11   advertisement services"); *cf. In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1159–60

12   (N.D. Cal. 2021) (denying motion to dismiss quasi-contract claim where allegations concerned

13   conduct *separate* from and not governed by "Google's provision of services."). And as in *Letizia*,

14   dismissal should be with prejudice because Plaintiffs will never be able to plead around the Terms

15   of Service which govern their use of Google's services. *See Letizia*, 267 F. Supp. 3d at 1253–54;

16   *see also, e.g., Aiello v. BAC Home Loan Servicing, LP*, No. C 11-03655 RS, 2012 WL 174808, at

17   *4 (N.D. Cal. Jan. 20, 2012) (dismissing without leave to amend where Plaintiff failed to state facts

18   sufficient to establish the absence of a valid agreement).

19   Plaintiffs claim for quasi-contract fails for the separate reason that they fail to allege the

20   elements of quasi-contract with the specificity required by Rule 9(b). "In order to sufficiently plead

21   a quasi-contract claim, the plaintiff must allege (1) a defendant's receipt of a benefit and (2) unjust

22   retention of that benefit at the plaintiff's expense." *Letizia*, 267 F. Supp. 3d at 1253 (citing *Peterson*

23   *v. Cellco Partnership*, 164 Cal.App.4th 1583, 1593 (2008)). The actions underlying Plaintiffs'

24   quasi-contract claims of unjust enrichment sound in fraud and thus Rule 9(b) applies. *See, e.g.*,

25   *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1057 (N.D. Cal. 2018) (recognizing that a quasi-

26   contract claim for "unjust enrichment . . . could proceed," in theory "assuming plaintiffs can satisfy

27   the pleading requirements of Rule 9(b)"); TAC ¶ 269 (alleging Google knowingly obtained a benefit

28   from the "unwitting[]" Plaintiffs). Although the TAC contains general allegations that Google was

21

1  unjustly enriched, Plaintiffs fail to describe the "who, what, when, where, and how" of their theory.

2  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). For instance, Plaintiffs do

3  not specify what data beyond "third-party app activity data" defendant received; how Google

4  obtained additional advertising revenue; or when, specifically, this data was transmitted by

5  Plaintiffs. *See* TAC ¶¶ 267–69. That falls short of Rule 9(b)'s pleadings standard and independently

6  requires dismissal of Plaintiffs' claim. *See Williams*, 384 F. Supp. 3d at 1057.

7  **IV.** <u>**CONCLUSION**</u>

8  For the foregoing reasons, the Court should dismiss with prejudice Plaintiffs' claim for

9  violation of California Penal Code section 631 and for breach of unilateral contract or quasi-

10  contract.

11

12  Dated:  September 22, 2021                    Respectfully submitted,

13                                                WILLKIE FARR & GALLAGHER LLP

14

15                                                By:    */s/ Eduardo E. Santacana*
                                                         Eduardo E. Santacana

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS THIRD AMENDED COMPLAINT
Case No. 3:20-cv-04688-RS