1   **WILLKIE FARR & GALLAGHER LLP**
    BENEDICT Y. HUR (SBN: 224018)
2     bhur@willkie.com
    SIMONA AGNOLUCCI (SBN: 246943)
3     sagnolucci@willkie.com
    EDUARDO E. SANTACANA (SBN: 281668)
4     esantacana@willkie.com
    LORI C. ARAKAKI (SBN: 315119)
5     larakaki@willkie.com
    ARGEMIRA FLOREZ  (SBN: 331153)
6     aflorez@willkie.com
7
    Attorneys for
8   GOOGLE LLC

9

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12                   **SAN FRANCISCO**

13  ANIBAL RODRIGUEZ, et al., individually and   | Case No. 3:20-cv-04688-RS
    on behalf of all others similarly situated,
14                                                | **DEFENDANT GOOGLE LLC'S REPLY**
                         Plaintiffs,              | **IN SUPPORT OF MOTION TO DISMISS**
15                                                | **THIRD AMENDED COMPLAINT**
            vs.                                   | **PURSUANT TO FED. R. CIV. P. 12(B)(6)**
16
    GOOGLE LLC,                                   | Date:      October 28, 2021
17                                                | Time:      1:30 p.m.
                         Defendant.               | Place:     Courtroom 3 - 17th Floor
18
19                                                | Action Filed:   July 14, 2020
                                                  | Trial Date:     Not Yet Set
20

21

22

23

24

25

26

27

28

1

**<u>TABLE OF CONTENTS</u>**

2

Page(s)

3

I.    INTRODUCTION ...................................................................................................1

4

II.    ARGUMENT ........................................................................................................1

5

A.    Plaintiffs' section 631 claim should be dismissed. ......................................1

6

7

1.    The opposition confirms that the TAC's amendments are bare assertions that should be ignored in analyzing simultaneity. ...................................................2

8

9

2.    Plaintiffs disavow paragraph 51 of the TAC and fail to explain how paragraph 52 supports their assertion of simultaneity. ...................................3

10

3.    The opposition fails to explain the other allegations in the TAC that undermine the allegation of simultaneity. ..........................................................6

11

12

4.    The opposition misunderstands the implication of Google's status as a GA for Firebase vendor. ..............................................7

13

B.    The opposition fails to save the breach of contract claim. ...........................................9

14

15

1.    The "Activity controls" explanation cannot form a unilateral contract because it contains no offer calling for specific performance. .......................9

16

2.    Plaintiffs fail to allege breach. ...................................................................13

17

3.    Plaintiffs' request for non-restitutionary disgorgement and consequential damages for their breach of contract claim is foreclosed as a matter of law. 13

18

19

C.    The opposition fails to save Plaintiffs' new quasi-contract claim. ...........................14

20

III.    CONCLUSION ..................................................................................................15

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AdTrader, Inc. v. Google LLC,*
　2018 WL 3428525 (N.D. Cal. July 13, 2018)................................................................15

*Alberts v. Liberty Life Assurance Co. of Bos.,*
　No. C 14-01587 RS, 2014 WL 2465121 (N.D. Cal. June 2, 2014) ...........................13

*Asmus v. Pac. Bell,*
　23 Cal. 4th 1 (2000) ................................................................................................9, 12

*Bell Atl. Corp. v. Twombly,*
　550 U.S. 544 (2007)......................................................................................................2

*Block v. eBay, Inc.,*
　747 F.3d 1135 (9th Cir. 2014) ....................................................................................11

*Brodsky v. Apple Inc.,*
　445 F. Supp. 3d 110 (N.D. Cal. 2020) ..........................................................................6

*Donohue v. Apple, Inc.,*
　871 F. Supp. 2d 913 (N.D. Cal. 2012) ........................................................................11

*In re Facebook, Inc., Consumer Priv. User Profile Litig.,*
　402 F. Supp. 3d 767 (N.D. Cal. 2019) ..................................................................10, 12

*In re Facebook, Inc. Internet Tracking Litig.,*
　956 F.3d 589 (9th Cir. 2020) ...............................................................................1, 6, 9

*Frezza v. Google Inc.,*
　No. 5:12-CV-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013)......................12, 13

*In re Google Assistant Priv. Litig.,*
　No. 19-CV-04286-BLF, 2021 WL 2711747 (N.D. Cal. July 1, 2021)....................................10

*Graham v. Noom, Inc.,*
　No. 20-CV-06903-LB, 2021 WL 1312765 (N.D. Cal. Apr. 8, 2021)........................................8

*Harris v Time, Inc.,*
　191 Cal. App. 3d 449 (App. 1987)..........................................................................9, 10, 12

*Konop v. Hawaiian Airlines, Inc.,*
　302 F.3d 868 (9th Cir. 2002) ...................................................................................1, 2

*Letizia v. Facebook Inc.*,
   267 F. Supp. 3d 1235 (N.D. Cal. 2017) ...................................................................15

*Mayssami Diamond, Inc. v. Travelers Cas. Ins. Co. of Am.*,
   No. 3:20-CV-01230-AJB-RBB, 2021 WL 1226447 (S.D. Cal. Mar. 30, 2021) ...................13

*Quiqley v. Yelp, Inc.*,
   No. 17-CV-03771-RS, 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018)......................................1

*Rodman v. Safeway, Inc.*,
   No. C 11-03003 JSW, 2011 WL 5241113 (N.D. Cal. Nov. 1, 2011) ....................................12

*Rogers v. Ulrich*,
   52 Cal. App. 3d 894 (1975) ..............................................................................................1, 8

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012) ..........................................................................................9, 12

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .......................................................................................14, 15

*Williams v. Apple, Inc.*,
   No. 19-CV-04700-LHK, 2021 WL 2186223 (N.D. Cal. May 28, 2021) ..............................12

*Williams v. Facebook, Inc.*,
   498 F. Supp. 3d 1189 (N.D. Cal. 2019) ..............................................................................15

*In re Yahoo Mail Litig.*,
   308 F.R.D. 577 (N.D. Cal. 2015)...........................................................................................1

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) .....................................................................................3

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ...............................................................................................6

**Statutes**

Cal. Penal Code § 631 .........................................................................1, 2, 3, 4, 5, 6, 7, 15

GOOGLE'S REPLY ISO MOTION TO DISMISS THIRD AMENDED COMPLAINT
Case No. 3:20-cv-04688-RS

1    I.    **INTRODUCTION**

2        Plaintiffs' opposition confirms that their fourth incarnation of their CIPA section 631 claim

3    is no better than the last (arguably, it's worse); all they've done is add bare assertions of simultaneity

4    without mentioning any facts that would make such a theory plausible. That's not good enough.

5    Without any allegations of the "technical context" of GA for Firebase that would make it plausible

6    that the product intercepts "in transit" communications, the CIPA claim fails.

7        Plaintiffs' attempt to save their contract claim fares no better. The opposition concedes that

8    their restyled claim is based on language that is virtually identical to the WAA Help Center language

9    that this Court already found insufficient to sustain a bilateral contract claim. The Third Amended

10    Complaint (TAC) still fails to allege a valid contract, breach, or a recoverable damages theory.

11    Google will ultimately prove Plaintiffs' fundamental theory of the case lacks merit; until then, the

12    Court should grant Google's motion and keep this case moving toward resolution.

13    II.    **ARGUMENT**[1]

14        A.    **Plaintiffs' section 631 claim should be dismissed.**

15        The opposition does not dispute (or even address) Google's argument that CIPA section 631

16    requires the Court to determine whether the alleged conduct constitutes the making of a recording

17    of a confidential communication rather than an interception of a communication in transit—*the*

18    critical question, since recordings were not meant to be included in section 631. Mot. at 3:16–28,

19    4:1–2 (citing *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898–99 (1975); *Quigley v. Yelp, Inc.*,

20    No. 17-CV-03771-RS, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018); *In re Yahoo Mail Litig.*,

21    308 F.R.D. 577, 591 (N.D. Cal. 2015); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878–79

22    (9th Cir. 2002)). But establishing that the "technical context" of Plaintiffs' allegations fits their

23    counsel's arguments is exactly what this amendment needed to do, so the Court could render its

24    ruling. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596, 607–10 (9th Cir. 2020)

25    (explaining that, to answer this question, the Court must examine the "technical context" of the

26

27    _____

28    [1] Unless otherwise noted, emphases are added and all internal quotation marks and citations have been omitted from case quotations.

GOOGLE'S REPLY ISO MOTION TO DISMISS THIRD AMENDED COMPLAINT
Case No. 3:20-cv-04688-RS

allegations); *see also Konop*, 302 F.3d at 878 (holding technical context of alleged conduct fatally undermined the bare assertion of simultaneous interception under Wiretap Act). It doesn't.

Instead, the opposition hinges the CIPA claim on the notion that Google has somehow conceded Plaintiffs' claim. It has not. Google admits, of course, that Plaintiffs added the word "simultaneous" to the TAC in the precise spot the Court happened to note its absence in the Court's last Order. *Compare* TAC ¶ 51 *with* SAC ¶ 49. Plaintiffs did so despite the Court's warning that such "artful" pleading would not be well taken.[2] Apart from the bare recitation that the precise element of the statute at issue—interception "while . . . in transit"—is what Google allegedly does, there are no facts in the complaint to support the assertion of simultaneity.

1. **The opposition confirms that the TAC's amendments are bare assertions that should be ignored in analyzing simultaneity.**

Even on a first complaint, let alone with this much water under the bridge, it is improper for Plaintiffs to make the bare assertion of simultaneity without any mention of a fact that would make it plausible that a communication was, in fact, intercepted while in transit. Recognizing that defendants know their technology best, both the Ninth Circuit and this Court rightly require that Plaintiffs nevertheless allege the "technical context" that led them to assert a claim of "in transit" interception in the first place (else such an assertion could be leveled against any defendant without a good faith basis and still pass muster). The Rule 8 pleading standard requires that each claim be pled beyond a mere recitation of the elements of a cause of action with sufficient specificity to push the asserted claim beyond the conceivable to the realm of the plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It is not enough to put a defendant on notice of what is at issue; fairness dictates that a claim unsupported by factual allegations establishing a *plausible* entitlement to relief should be dismissed. *Id.* at 558.

Here, Plaintiffs are switching theories and adding statutory buzzwords like "simultaneous" to chase what they think the Court will approve, not what the facts they can in good faith allege will

---

[2] "Trying to pass this artful addition to the pleadings off as some sort of typographical error, plaintiffs posit that they 'could amend their complaint to add back in' the requisite § 631 simultaneity . . . . this suggestion is not well taken." Order re: MTD SAC, ECF No. 127 at 7.

1   bear out. Indeed, this amended complaint does not come with a blank slate. This is Plaintiffs' fourth

2   incarnation of their theory that GA for Firebase violates section 631. Those allegations have changed

3   in every single pleading, including the technical context relating to the allegation of interception

4   while the communications are "in transit." The alleged intercepting device, the communications,

5   and the moment of interception have all shifted over time. And in the Second Amended Complaint

6   (SAC), as the Court found, Plaintiffs alleged that communications between users and app developers

7   were completed, logged, and then sent to Google, which takes the conduct outside the ambit of

8   section 631, since Plaintiffs are alleging a recording and improper use of that copied recording, not

9   an "in transit" interception akin to tapping a telephone wire. *See* Order re: MTD SAC, ECF No. 127

10  at 7 (citing *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1036 (N.D. Cal. 2014).

11      As Google has always said, and as Plaintiffs have always alleged, including in the TAC,

12  Google Analytics for Firebase *logs* information that is later sent to Google. That's a recording, not

13  an interception, and section 632, which applies to recordings, has a higher bar for a finding of

14  liability than section 631—a bar that the Court already found Plaintiffs failed to clear. No matter

15  how many bare assertions Plaintiffs make, they cannot convert this case about recordings into a case

16  about interception just to hold onto their section 631 claim.

17          **2.   Plaintiffs disavow paragraph 51 of the TAC and fail to explain how
                   paragraph 52 supports their assertion of simultaneity.**
18

19      In response to the Court's last Order, Plaintiffs made one revision to the SAC: they replaced

20  the former paragraph 49 with new paragraphs 51 and 52. The opposition concedes no other revisions

21  are relevant to their attempt to revise their section 631 claim. Opp. at 4 (claiming that "[b]eyond

22  fixing the sole issue identified by the Court, the TAC bolsters the claims by adding new allegations,"

23  and citing solely paragraphs 51 and 52 as support). The Court's analysis, then, comes down to

24  whether these two new paragraphs overcome the conclusions the Court already drew about the

25  balance of the allegations in the complaint and the former paragraph 49.[3]

26  _____

27  [3] The entirety of Plaintiffs' defense of these two paragraphs amounts to five lines on paragraph 51
    (disavowing it, as discussed below) and eight lines on paragraph 52, plus a block quote of paragraph

28  52 itself. Opp. at 4:12–25. Contrary to the assertion made in the opposition, Google gives those
    paragraphs the full treatment here because the length of Google's analysis on these paragraphs is

**Paragraph 51.** While difficult to follow, Google understood paragraph 51 to be an attempt to expand the time horizon of the statutory term "in transit" by asserting a "line of communication" argument—that once a user opens an app, a line of communication is permanently open between the user and the app developer. Google's motion outlined why such a theory is legally wrong. Thankfully, Plaintiffs disavow that "line of communication" theory entirely in their opposition. Opp. at 4 (claiming Google's "line of communication" interpretation is a "straw man" because "Plaintiffs nowhere allege that an open line of communication is sufficient in and of itself."). That renders paragraph 51 essentially irrelevant, and certainly incapable of supporting their section 631 claim.

The only other "new" material in paragraph 51 is the reappearance of the assertion that Google intercepts a request to the New York Times server for an article "as the request is in transit" and that Google "simultaneously transmits a copy of the request to Google." As discussed, this bare recitation of the statutory requirement doesn't come with a blank slate. Plaintiffs chose not to make any allegation (other than the "line of communication" bit that they've disavowed just as quickly) to support this assertion in paragraph 51. Given the narrow scope of the Court's leave to amend, paragraph 51 should be considered a violation of the Court's directive. Further, the bare assertion of simultaneity in paragraph 51 is belied by the rest of the TAC, which is replete with factual allegations that repeatedly undermine that theory. These are the same allegations Google relied upon in its last motion, and Plaintiffs didn't bother changing any of them. The opposition says they remain unchanged because Google misreads them, too. But these allegations speak for themselves. *See* Mot. at 4–5; *infra* § II.A.3 at 6–7.

In defense of paragraph 51, Plaintiffs argue that the Court should give the TAC's CIPA claim a pass because it is "modeled" on the FAC. But it's not. Noticeably absent are several other allegations relating to interception that Plaintiffs removed between the First Amended Complaint (FAC) and the SAC. Apparently, simply because the Court didn't mention them in its last Order, Plaintiffs didn't add them back in—just another example of Plaintiffs chasing the Court's analysis, not the facts. More importantly, the proper comparison here is to the SAC, which the Court found

---

set not by the magnitude of the factual allegations Plaintiffs added (they've barely added any), but by the extensive list of defects in those two paragraphs that sink the CIPA claim.

GOOGLE'S REPLY ISO MOTION TO DISMISS THIRD AMENDED COMPLAINT
Case No. 3:20-cv-04688-RS

1  was inadequate to state a CIPA section 631 claim. The Court warned Plaintiffs not to simply

2  re-insert their simultaneity allegation without anything more, yet that is what they did.

3      **Paragraph 52.** Paragraph 52 discusses for the first time in any communication from

4  Plaintiffs in this case to the Court or to Google the fact that some ads on Google's platforms are

5  sold using "*real-time*" bidding. Paragraph 52 argues that because the auction for ad space between

6  advertisers and ad space owners happens in "real time," so must the interception of communications

7  made by Google Analytics, *a different product*, between app developers and Google account

8  holders. The theory stretches credulity and is based solely on the name of the bidding process, a

9  semantic coincidence that cannot support liability under section 631.

10     Plaintiffs' entire defense in response to Google's motion on this subject is one sentence, and

11  it's beside the point: "Google does not deny that data collected through GA for Firebase can be used

12  for RTB [real-time bidding] purposes." Opp. at 4:19–20. Google does not deny that. Obviously,

13  Google can receive information from GA for Firebase non-contemporaneously with the

14  communications, while ad auctions can subsequently use that information during real-time bidding,

15  all without meeting the "in transit" requirement of section 631. Paragraph 52 does not otherwise

16  allege that GA for Firebase intercepts communications *while they are in transit* in order to support

17  *real-time ad auctions*. Nothing in the TAC supports the notion that the time window when the

18  information was allegedly intercepted for GA for Firebase and the time window when the auction

19  is held are the same.[4]

20     Paragraph 52 does identify two pieces of information that Plaintiffs allege must be used by

21  real-time bidding ad auctions for the auction to work: "the mobile app page being requested" and

22  the "device from which the request is being made." Critically, this is a new allegation unrelated to

23  GA for Firebase, which has otherwise been the focus of this case since its inception. This allegation

24  amounts to a separate claim that real-time ad auctions are intercepting the contents of

---

[4] The very *next* sentence pivots to chiding Google for not mentioning AdMob and Cloud Messaging, which is confusing, since neither of those products are mentioned in paragraph 52, and the TAC otherwise contains no factual allegations about those products.

GOOGLE'S REPLY ISO MOTION TO DISMISS THIRD AMENDED COMPLAINT
Case No. 3:20-cv-04688-RS

communications while they are in transit, which has no bearing on whether GA for Firebase intercepts contents of communications while they are in transit.

Taking the paragraph 52 allegation about real-time bidding as true solely for purposes of this motion, the transmission of (1) which device needs to receive the ad (there is no allegation that any personally identifying information is being sent to the advertiser, the ad space owner, or Google via real-time bidding) and (2) which page it will be served on is hardly an interception of the "contents" of a communication while "in transit." Indeed, Google's motion points out that such information has already been held not to be the "contents" of a communication for purposes of CIPA. Mot. at 9 & n.4 (discussing *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *Facebook Internet Tracking Litig.*, 956 F.3d at 605. The opposition distinguishes *Brodsky* only on the grounds that *Brodsky* held that user names and passwords are not the contents of communications. Plaintiffs do not otherwise deny that neither of these two pieces of information are the contents of communications. Noticeably absent is any allegation that Google's real-time bidding ad auctions are sending advertisers personally identifiable information that could be used to determine who is viewing the page on which the ad will be viewed while users have WAA turned off (it doesn't). This is an independent reason for dismissing any CIPA section 631 claim related to real-time bidding.

### 3. The opposition fails to explain the other allegations in the TAC that undermine the allegation of simultaneity.

Plaintiffs largely ignore the other allegations that undermine the assertion of simultaneity— allegations that Google pointed out in its last motion and again in this motion.

First there is the allegation about Google Mobile Services (GMS), an Android service that runs on user devices to *record* information related to Google Analytics by aggregating logged information from various apps together. *See* TAC ¶ 56. Google's last motion to dismiss the SAC pointed out that this GMS allegation was irreconcilable with the notion of simultaneous interception of in-transit communications because it was alleged that "GA for Firebase must first record a completed communication, and then a background process that 'aggregates' such information from multiple apps subsequently sends the recording to Google for storage." Mot. to Dismiss SAC, ECF

No. 115 at 19:11-13. Those allegations remain unchanged in the TAC. The TAC thus retains the same aggregation theory that led to dismissal before: that GMS operates in the background to record communications from various apps on Android devices for transmission to Google. It is obviously impossible to both "aggregate" multiple different communications and to transmit them to Google while the communications are "in transit." The opposition provides no answer to this inescapable conclusion. Indeed, paragraph 56 of the TAC discussing GMS says that the Firebase SDK will "copy and transmit these and many additional events to Google's servers, through the user's devices," and that "[o]n Android OS," it is GMS that "facilitate[s]" that process.[5]

And, the opposition doesn't address the rest of the allegations that undermine the simultaneity assertion: that GA for Firebase "*logs*" data, *i.e.* records it, to the user's *device*, then it makes a "*copy*" of the recording, and then "*transmits*" it to Google's servers. *See* Mot. at 4; TAC ¶¶ 3, 4, 15, 46, 53, 56, 57, 59, 120, 124, 126. Plaintiffs simply profess confusion as to why these allegations make it implausible that GA for Firebase intercepts communications while they're in transit. The Court was not so confused on Google's last motion; it held that an allegation that GA for Firebase copies the information and then transmits it to Google servers separated chronologically the different steps at issue. The TAC still alleges that GA for Firebase logs to a device, copies, and then transmits user data. This is Plaintiffs' fourth try, and they knew what caused dismissal last time. If they could allege facts to make their assertion plausible, they would have. But they did not.

### 4. The opposition misunderstands the implication of Google's status as a GA for Firebase vendor.

Plaintiffs repeatedly claim that Google has conceded the CIPA claim by analogizing the communications here to a phone call. Plaintiffs miss the point. Obviously, Google denies that it is actually or metaphorically on the phone with users and app developers, intercepting their

---

[5] Plaintiffs also say, as a fallback, that GMS only exists in Android, so at a minimum, Plaintiffs' theory of interception should survive as to iOS. But there are no iOS-specific allegations in the TAC discussing simultaneous interception at all, meaning that theory still fails. (And, in fact, that's not how it works on iOS, either, as Plaintiffs already know from Google's interrogatory responses.) If the Court's decision turns on the GMS allegation, Google asks that it make that clear in its Order, because Plaintiffs have sought intrusive discovery into GMS on the basis of their new, defective allegations, even as they contemplate dismissal of their Android-related theories in connection with this motion.

GOOGLE'S REPLY ISO MOTION TO DISMISS THIRD AMENDED COMPLAINT
Case No. 3:20-cv-04688-RS

communications. The point of analogizing to phone calls is to better explain how section 631 is meant to work. Here, the Court's task is to determine whether the purported misuse of Plaintiffs' private communications is alleged to have occurred through recordings or in-transit interception. In that context, it is useful to remember the essence of Plaintiffs' complaint: that Google allegedly exploited the otherwise lawful data collection by app developers for analyzing their apps' performance by *copying* or *duplicating* the developers' data and *saving* those data points to users' Google Accounts to service advertising, in contravention of the description of the Web & App Activity feature, which discusses when Google will *save* app activity data to a user's Google Account. *See* Order re: MTD FAC, ECF No. 109 at 8–9 (holding Plaintiffs' lack of consent was adequately pleaded because WAA description caused them reasonably to "fail[] to grasp" that their data would not just be used by the app developer, but also "saved in a user's 'Google Account.'").

***Even taking Plaintiffs' theory as correct*** that Google is metaphorically listening on the phone while the communications are in transit, that cannot amount to an interception of in-transit communications because *that* data collection was concededly lawful, even in Plaintiffs' version of events. Per Plaintiffs, Google was allegedly there to transcribe communications for third-party app developers, and *that* is permissible. *See* Mot. at 10; Mot. to Dismiss SAC, ECF No. 115 at 19; *Graham v. Noom, Inc.*, No. 20-CV-06903-LB, 2021 WL 1312765, at *4–6 (N.D. Cal. Apr. 8, 2021) (holding that acting as an analytics vendor alone does not violate CIPA); *Rogers*, 52 Cal. App. 3d at 898–99 (holding a recording made by a participant "does not intercept the message while it is in transit"). The only allegedly wrongful conduct necessarily would have come *later*: the alleged *duplication* of *already collected* information. Indeed, whether or not Google duplicated the data for its own purposes, as Plaintiffs allege, GA for Firebase would still be collecting the same information, and it would still be sending that to Google, since the app developers have lawfully used the product. *See* Order re: MTD FAC, ECF No. 109 at 5:1–2, 7:25–27 (noting that "Plaintiffs do not deny, for each app at issue, reading and agreeing to a developer-generated disclosure—made at Google's behest—outlining the 'use of the [GA for Firebase] Service . . . .[to] collect[] and process[] data.'"). The only chronological aspect of Google's conduct that *could* violate CIPA *must* come after the analytics data has already been recorded and subsequently uploaded to Google.

**B.    The opposition fails to save the breach of contract claim.**

The TAC does nothing to save Plaintiffs' contract claim—it simply takes the same language from a different settings page and calls it a "unilateral" contract. Indeed, Plaintiffs' opposition concedes that their restyled (unilateral) contract claim is based on language—from Google's "Activity controls" description on a Google web page and an Android settings page—that is virtually identical to the WAA Help Center language this Court already found insufficient to sustain a bilateral contract claim. Opp. at 11:6-10; *see also* Mot. at 11–12. They contend the "key difference" is the presence of the "WAA button." Opp. at 11:8-10. But neither the existence of the WAA button/toggle, nor Plaintiffs' shift to a unilateral-contract theory, can save Plaintiffs' claim because the TAC does not allege a valid offer, breach, or a recoverable damages theory.

**1.    The "Activity controls" explanation cannot form a unilateral contract because it contains no offer calling for specific performance.**

In previously dismissing Plaintiffs' contract claim, the Court explained:

> [R]egarding the notion that the WAA Help Page functions as an independently enforceable agreement, plaintiffs do not allege their having secured that document's terms with valid consideration. Nor can they; as the Ninth Circuit has made clear, "[f]or a contract to exist" in this context, the document needs to "outline shared commitments to which users must abide." *In re Facebook [Internet Tracking Litig.]*, 956 F.3d at 610. That the WAA Help Page fails to do so (indeed, it asks *nothing* of users) precludes it from functioning as a standalone contract . . . .

Order re: MTD SAC, ECF No. 127 at 6 (emph. in original). Relying on the same language previously considered by the Court, Plaintiffs contend that they have "fixed" their pleading deficiencies because they no longer need to establish mutuality and therefore Google's "Activity controls" description forms a valid contract. Opp. at 11–12. Not so. As also supported by Plaintiffs' authorities,[6] it is black letter law that a valid unilateral contract requires an offer that "calls for

---

[6] *Harris v Time, Inc.*, 191 Cal. App. 3d 449, 455 (App. 1987) ("the promisor made a promise to do something (give the recipient a calculator watch) *in exchange for the performance of a[ specific] act* by the promise (opening the envelope)"); *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 788 (9th Cir. 2012) (the cigarette manufacturers' communications to consumers constituted an offer because they "*invited the performance of specific acts* (saving [proofs of purchase] and redeeming them for rewards in accordance with the catalog) without further communication, and leaving nothing for negotiation"); *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 10 (2000) (employment security agreements are unilateral contracts where they "offer additional advantages" in exchange for the act of "continu[ing] in employment"); 1 Witkin, Summary 11th Contracts § 105 ("A unilateral contract

9

performance of a specific act without further communication and leaves nothing for further negotiation." Mot. at 12 (quoting *Harris v. Time, Inc.*, 191 Cal. App. 3d 449, 455 (App. 1987)); *see also id.* at 13–16. Whether unilateral or bilateral, a contract must contain a valid offer. The only difference is that in a unilateral contract, the offer is accepted by performance, which constitutes the consideration. *Id.* Like with the WAA Help Center page, the "Activity controls" language simply describes how the WAA toggle works, and Google offers nothing of value akin to contractual consideration to Plaintiffs, nor requires them to do anything.

*First*, Plaintiffs' supposed promise—that "Google promised . . . to stop collecting third-party app data *provided* that users switched off WAA," Opp. at 13[7]—requires reading language into the "Activity controls" description that isn't there. The language Plaintiffs identify, Opp. at 13–14 (citing TAC ¶¶ 65–66, 245–48), does not offer any promises concerning precisely what Google will and will not do when Plaintiffs toggle the WAA setting on or off. Nor does it contain the words "stop" or "collect[]." *See id.* The existence of the WAA toggle on the "Activity controls" webpage or Android settings menu does not change this conclusion; even if its mere existence *could* stand for something, it does not promise Google will "stop" anything. (It would be a strange result, indeed, if every toggle on every website and app was some sort of unilateral contract).

Plaintiffs' position also requires viewing clearly explanatory language as promissory. *See* Mot. at 13–16. This Court's findings concerning the invasion of privacy and CIPA claims don't change that. This Court observed that the Help Center language affected users' "expectation[]" *of privacy* not their expectation of *contract formation*. Representations can create an expectation of privacy without forming a contract. Plaintiffs' cases do nothing to bolster its claim because those courts did not address whether there was a valid offer since the parties *assumed* the enforceability of the bilateral contracts at issue and considered only the separate elements of breach and harm.[8]

_____

is one in which a promise is given in exchange for some act, forbearance or thing").

[7] *See also* Opp. at 14:23-24 ("*if* [users] switched off WAA, Google would not collect their activity on apps that use Google services")

[8] *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 801 (N.D. Cal. 2019) (assessing breach); *In re Google Assistant Priv. Litig.*, No. 19-CV-04286-BLF, 2021 WL 2711747, at *10–12 (N.D. Cal. July 1, 2021) (same).

1    Plaintiffs' attack on *Block v. eBay, Inc.*, 747 F.3d 1135 (9th Cir. 2014), is equally ineffectual.

2    Opp. at 16:5-14. Plaintiffs attempt to distinguish the Ninth Circuit's ruling based on differences

3    between the location and type of alleged promises at issue, but nothing in *Block* or any other case

4    supports this argument. Both the location of a contract section in which the purported promise is

5    found and the type of commitment at issue are immaterial; the legal issue turns on whether the

6    representation is written in "promissory," rather than informative, "language," regardless of subject

7    matter.[9] *See Block*, 747 F.3d at 1138, 1139.

8    ***Second***, Google made no request for particular performance by Plaintiffs in the "Activity

9    controls" language:  there is no request to provide any performance (consideration) to Google at all.

10    Plaintiffs respond by identifying the purported specific request:  "Plaintiffs reasonably understood

11    Google to be inviting them to exercise that control ***by turning 'off' WAA***." Opp. at 17:7-8. But this

12    Court already rejected that theory, which is separately belied by the "Activity controls" language

13    itself, as well as Plaintiffs' description of the language. To begin, this Court found that the WAA

14    Help page—which contains nearly identical language—cannot "function[] as a standalone contract"

15    in part because it "**asks *nothing* of users**." Order re: MTD SAC, ECF No. 127 at 5–6 (ital. in

16    original). That the Court was addressing a bilateral contract theory is irrelevant because both types

17    of contracts require an offer that requests *something*—a promise of value (bilateral) or any act or

18    forbearance (unilateral). And the existence of the WAA button/toggle cannot transform the WAA

19    Help Page language, which "asks nothing of users" into a request for a specific act. The "Activity

20    controls" language, including the toggle, does not solicit users to toggle WAA a certain way,

21    including off, or even to continue using Google services. *See* TAC ¶¶ 65–66, 245–48; Opp. at

22    13–14. Indeed, Plaintiffs admit Google did not actually invite the specific act of "turning 'off'

23    WAA." Rather, as Plaintiffs describe it, "Google's WAA button is presented . . . [so that] users ***may***

24    ***switch WAA 'on' or 'off*.'"** Opp. at 14:19-20. Google did not ask users to "turn WAA off"; it

25

26    _____

27    [9] Plaintiffs also run from *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012), by arguing that "[u]nlike *Donahue*, this is not a warranty case about a defective product." Opp. at

28    16:15-26. That *factual* distinction is immaterial because both *Donahue* and this case involve the *same legal claim*—breach of contract. *Donahue*, 871 F. Supp. 2d at 930.

provided options with explanations. That is insufficient to create a unilateral contract.[10] *See Harris*, 191 Cal. App. 3d at 455; *Sateriale*, 697 F.3d at 787–88.

Plaintiffs fail to escape the analysis in *Harris* and *Sateriale.* Opp. at 17–18. Plaintiffs again rely on a supposed request for specific performance (i.e., "turning off WAA"), Opp. at 17:22, that plainly is not contained in the "Activity controls" language (or elsewhere), *supra* at 10:8-16. This is a stark contrast to *Harris*, where the court held a unilateral contract could be formed where the promisor made a promise to do something (give the recipient a calculator watch) in exchange for the performance of a[ specific] act by the promisee (opening the envelope)." *Harris*, 191 Cal. App. 3d at 455. Similarly, in *Sateriale,* the cigarette manufacturers' communications to consumers "invited the performance of specific acts (saving [proofs of purchase] and redeeming them for rewards in accordance with the catalog) without further communication, and leaving nothing for negotiation." *Sateriale*, 697 F.3d at 788. And in *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 10 (2000), another case the Plaintiffs rely on, Opp. at 12, the employment security agreements were unilateral contracts because they "offer additional advantages" in exchange for the specific act of "continu[ing] in employment." Here, Google did not request a specific act, let alone something as specific as opening an envelope, saving proofs of purchase and redeeming them, or continuing employment. Google required nothing of Plaintiffs; it merely provided an optional feature.

Plaintiffs' effort to distinguish *Frezza v. Google Inc.*, No. 5:12-CV-00237-RMW, 2013 WL 1736788, at *3 (N.D. Cal. Apr. 22, 2013), is even further afield.  In *Frezza*, the court found there was no unilateral contract based on Google's representation to users that they could "visit our signup page or check out the help center for more details" "[t]o start your 30 day trial period today."  2013 WL 1736788, at *3. Plaintiffs attempt to distinguish the instant case by contending "[m]ore was

---

[10] None of Plaintiffs cases discussing the general rule that a users' "reasonable expectations" are relevant to contract interpretation address the specific question before this court: whether an alleged offer contains a request for specific performance sufficient to create a contract without further negotiation. *See Williams v. Apple, Inc.*, No. 19-CV-04700-LHK, 2021 WL 2186223, at *5 (N.D. Cal. May 28, 2021) (assessing whether class members' interpretation of the contract can defeat predominance); *Rodman v. Safeway, Inc.*, No. C 11-03003 JSW, 2011 WL 5241113, at *3 (N.D. Cal. Nov. 1, 2011) (court assumed, without deciding, that the promise at issue was enforceable); *Facebook Consumer Priv. Litig.*, 402 F. Supp. 3d at 791 (assessing breach).

12

plainly required" to create a contract in *Frezza*, but that is not so here where "[t]here was nothing more for Plaintiffs to do." Opp. at 18:9-13. That is incorrect. The purported offer in *Frezza* was presented in clear terms—it requested action (visiting a sign-up page or viewing the help center) in exchange for a promise (of a 30 day trial period). In contrast, the representation contained in the "Activity controls" description explains how WAA works but does not *direct* users to take a specific action with WAA. This is an even clearer case for dismissal.

### 2. Plaintiffs fail to allege breach.

Even assuming Plaintiffs identified an enforceable unilateral contract, they fail to allege a breach of any promise contained within the "Activity controls" page. Mot. at 16–17. As Google's motion explained, Plaintiffs contend "Google breached its unilateral contract . . . by continuing to *collect and use* third-party app activity data while Plaintiffs . . . had [WAA ] switched off." Mot. at 16 (citing TAC ¶ 262). But the "Activity controls" language contains no discussion of Google's *collection, use, or even receipt* of third-party interaction data, and instead explains what can be *saved* to a users' account. *Id.* (citing TAC ¶¶ 245–48). Plaintiffs respond that this Court already rejected this argument. Not so. In its first motion to dismiss, Google argued that WAA was never meant to address analytics data received through GA for Firebase from third-party apps. *E.g.*, Mot. to Dismiss FAC, ECF No. 62 at 1:27-28, 7:15-22. Google did not argue there is a difference between saving on the one hand and collection, use, or receipt on the other. *See id.* That is why this Court's statements that Plaintiffs quote, which concern WAA's relationship to GA for Firebase, have no bearing on the mis-match between the "Activity controls" language and Plaintiffs allegations. Opp. at 18–19 (citing Order re: Mot. to Dismiss FAC, ECF No. 109 at 7–9).

### 3. Plaintiffs' request for non-restitutionary disgorgement and consequential damages for their breach of contract claim is foreclosed as a matter of law.

Plaintiffs' efforts to escape the limitation of liability in the Terms of Service are specious.[11]

---

[11] Plaintiffs complain that Google's request is procedurally improper, but when damages are precluded as a matter of law, they can be disposed of on a Rule 12(b)(6) motion to dismiss. *Alberts v. Liberty Life Assurance Co. of Bos.*, No. C 14-01587 RS, 2014 WL 2465121, at *4 & n.4 (N.D. Cal. June 2, 2014) (dismissing claim for punitive damages); *Mayssami Diamond, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 3:20-CV-01230-AJB-RBB, 2021 WL 1226447, at *6 (S.D. Cal. Mar. 30, 2021) (collecting cases converting motions to strike to Rule 12(b)(6) motions and dismissing when

13

1  *First*, Plaintiffs argue the limitation of liability in the pre-March 2020 Terms of Service does not

2  apply because the second clause limits application to "claims under these terms." Opp. at 20:1-8.

3  But that ignores that the first clause in the limitation-of-liability provision is not limited to claims

4  brought under the Terms of Service and disclaims liability for damages including "indirect, special,

5  consequential, exemplary, or punitive damages." Santacana Decl., ECF No. 141, Ex. B at 5; *id.*,

6  Ex. C at 5. Plaintiffs offer no explanation for why the first clause should be ignored, nor could

7  they.[12] *Second*, as to the post-March 2020 Terms of Service, Plaintiffs do not contest—and thus

8  concede—that the limit on liability precludes recovery of consequential damages. *Third*, Plaintiffs

9  contend that the Court should disregard the Limitation of Liability clause as procedurally and

10  substantively unconscionable. *See* Opp. at 22 n.4. This argument should be rejected at the outset

11  because Plaintiffs have not adequately pled any of the elements of unconscionability; nor could

12  they. And to the extent Plaintiffs are alleging willful breach of a written contract, Opp. at 21, that

13  confirms Plaintiffs must plead each of the elements of their claim with the specificity required by

14  Rule 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

15  ### C.   The opposition fails to save Plaintiffs' new quasi-contract claim.

16  Setting aside that Plaintiffs have exceeded their (acknowledged) authorization to only

17  "amend their contract claim," Opp. at 22:8, their quasi-contract claim fails as a matter of law because

18  there is a valid contract governing their use of Google services:  the Terms of Service. Mot. at

19  19–22.[13] Plaintiffs contend the subject of their complaint is "Google's privacy features," Opp. at

20  23:10, not "use of Google's services." But Plaintiffs went to great trouble to persuade this Court

21  that GA for Firebase is "a Google *service*" in the context of the Privacy Policy. Opp. to Mot. to

22  _____

23  damages are unavailable).

[12] Plaintiffs attempt to distinguish Google's cases because they arose in different underlying factual circumstances, Opp. at 21:13-24, but that ignores that each case addressed the same legal question at issue here (applicability of a limitation-of-liability clause) and concerned similar claims (breach of contract or breach of implied covenant of good faith and fair dealing). *See* Mot. at 18–19.

[13] Plaintiffs also falsely contend Google "only cites the post-March 2020 Terms of Service" and therefore Plaintiffs "may still state a claim for Google's pre-March 2020 conduct." Opp. at 22:15, 23:7-8. Google cited the Terms of Service in effect between April 14, 2014 and the present as the "express contract . . . [that] governs the same topic" as at issue with the quasi-contract claim. Mot. at 21:4-5 (citing Mot. at 17:15-20, which identifies all versions of the Terms of Service at issue).

1    Dismiss FAC, ECF No. 71 at 6:5-7, 9:14-15. They allege that now, too. TAC ¶¶ 267–68; *see also*

2    *id.* ¶¶ 252–53. And the opposition relies on the Court's acceptance of that argument. Opp. at 15:7-9

3    (quoting Order re: Mot. to Dismiss FAC, ECF No. 109 at 8). Plaintiffs cannot now about-face and

4    claim this case is *not* about a Google service that, per Plaintiffs, violated their privacy.

5        The law precludes Plaintiffs' argument, too. The proper view of the relevant subject matter

6    should be broad. *See* Mot. at 20–21. And Plaintiffs' effort to distinguish *Letizia v. Facebook Inc.*,

7    267 F. Supp. 3d 1235 (N.D. Cal. 2017) and *AdTrader, Inc. v. Google LLC*, 2018 WL 3428525 (N.D.

8    Cal. July 13, 2018) is unpersuasive. Plaintiffs contend those cases are inapposite because "there was

9    already an agreement about the defendant's advertising services, so the plaintiffs could not rewrite

10   those agreements to add a new commitment about the advertising services." Opp. at 23:20-23.[14]

11   But the same is true here. There is an agreement about users' use of and interaction with Google

12   services. Mot. at 17:15-20. And Plaintiffs cannot rewrite the agreement to include the "Activity

13   controls" description (of a Google service) as part of the contact (concerning use of Google's

14   services). Were that acceptable, every time a defendant company offered a user manual, help page,

15   support language, mobile phone menu, or other explanation, they would be at risk of entering into

16   separate quasi-contracts. Plaintiffs offer no law supporting such an absurd result.

17       Plaintiffs separately contend they meet Rule 9(b)'s heightened pleading standard. Opp. at

18   23–25. But they fail to allege, for instance, *that* they saw the "Activity controls" language, *when*

19   they saw it, or *how* (e.g., on the Android settings page or web page). That failure alone is reason to

20   dismiss the quasi-contract claim. *See Vess*, 317 F.3d at 1106. Plaintiffs' reliance on *Williams v.*

21   *Facebook, Inc.*, 498 F. Supp. 3d 1189, 1201 (N.D. Cal. 2019), is therefore inapposite, because there,

22   the plaintiffs had allegedly seen the language at issue.

23   **III.    CONCLUSION**

24       Google respectfully requests that the Court dismiss Plaintiffs' first and second causes of

25   action for breach of contract and violation of California Penal Code § 631, with prejudice.

26   _____

27   [14] At a minimum, this argument is limited to conduct post-March 2020 because Plaintiffs rely only
     on the post-March 2020 Terms of Service. Opp. at 23:22-23. This is because before March 2020
28   Google's Terms of Service incorporated its Privacy Policy which covers the same subject Plaintiffs
     identify as relevant. *Cf. id.* (arguing the Privacy Policy is not part of the post-March 2020 terms).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  October 13, 2021

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP


By:    */s/ Eduardo E. Santacana*
       Eduardo E. Santacana

GOOGLE'S REPLY ISO MOTION TO DISMISS THIRD AMENDED COMPLAINT
Case No. 3:20-cv-04688-RS