November 1, 2021

**Submitted via ECF**

Magistrate Judge Alex G. Tse
San Francisco Courthouse
Courtroom A - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    Joint Letter Brief re: Google Custodians
               *Rodriguez v. Google LLC*, Case No. 3:20-cv-04688-RS (N.D. Cal.)

Dear Magistrate Judge Tse:

      Plaintiffs and Google LLC ("Google") submit this joint letter brief regarding Plaintiffs' renewed request for an order that Google search additional custodians' ESI. Counsel for the parties previously met and conferred on this topic in good faith, including by videoconference on March 31, 2021, in connection with ten custodians: Sundar Pichai, Greg Fair, Eric Miraglia, Stephan Micklitz, Guemmy Kim, Jason Titus, Jan Hannemann, Rahul Roy-Chowdhury, Keith Enright, and Donald Harrison. Plaintiffs seek to compel that nine of those individuals become custodians (all but Sundar Pichai). Plaintiffs also seek ten additional custodians (Arne de Booij, Sam Heft-Luthy, Nick Linkow, Dale Nil, Sree Pothana, Mark Risher, Chris Ruemmler, Dan Stone, Katie Virk, and Xinyu Ye), for a total of nineteen new custodians.

      Following motion practice, you ordered the parties to revisit the need for additional Google custodians after reviewing the production for the first three custodians. Dkt. 106. Google represented that it had completed all custodial productions for those three custodians via three principal productions on July 6, 2021, August 27, 2021, and September 7, 2021. Google has also designated two additional custodians, Todd Hansen and Ed Weng, and will complete production of their documents by mid-November.

      Ex. A includes Plaintiffs' proposed order, and Ex. B includes Defendant's proposed order.

## PLAINTIFFS' STATEMENT

Plaintiffs respectfully request an order compelling Google to add nineteen Google employees as custodians: Greg Fair, Arne de Booij, Keith Enright, Jan Hannemann, Donald Harrison, Sam Heft-Luthy, Guemmy Kim, Nick Linkow, Stephan Micklitz, Eric Miraglia, Dale Nil, Sree Pothana, Mark Risher, Chris Ruemmler, Dan Stone, Jason Titus, Rahul Roy-Chowdhury, Katie Virk, and Xinyu Ye.

Custodial documents are critical, where Google's own employees admit (internally) that "we don't accurately describe what happens when WAA is off" (GOOG-RDGZ-00024690) and acknowledge that WAA "does not actually control what is stored by Google" which "is really bad" and turning WAA off leaves users with a "false sense of security that their data is not being stored at Google, when in fact it is" (GOOG-RDGZ-00024698). So far, Google has produced only 6,304 documents from three Google-selected custodians. That pales in comparison to the more than 5.3 million pages produced in the *Brown v. Google* action, where there are 42 Google custodians.

Given the limited pages, Plaintiffs include below descriptions for only nine of the nineteen individuals. Plaintiffs are willing to provide additional information and briefing.

**Greg Fair:** Mr. Fair had a key role in developing the WAA control at the heart of this lawsuit, with internal Google emails noting his involvement "since the earliest days of My Account, Activity Controls, and the like." GOOG-RDGZ-00013767. In July 2015, following a UX "session outlining user concerns where Google is collecting and surfacing more user data," Mr. Fair was tasked with "tak[ing] input from UX session and shar[ing] findings with other stakeholders across the org." GOOG-RDGZ-00035824. In response to an email from Chris Ruemmler criticizing Google's WAA disclosures (see below), another employee looped in Mr. Fair "to represent the PDPO [Privacy & Data Protection Office] perspective." GOOG-RDGZ-00043813.

**Arne de Booij:** He is a Google User Experience Research Manager tasked with analyzing "how people navigate an application like Google Account," which he does by "conduct[ing] surveys." de Booij will likely have unique documents regarding Google's efforts to ascertain users' understanding of WAA. For example, Mr. de Booij conducted studies to determine "[h]ow much granularity in settings provides the most gain in understanding," including for WAA. GOOGRDGZ-00037579. His responsibilities do not overlap with the other custodians.

**Sam Heft-Luthy / Eric Miraglia:** Mr. Heft-Luthy and Mr. Miraglia were a Product Manager and the "founder" respectively of Google's Privacy & Data Protection Office that "[c]oordinates development of privacy products across the company, ensuring that Google products work in a way that users can understand and control." Both were involved in internal Google discussions regarding Google's tracking of WAA and sWAA opt-in rates (GOOG-RDGZ-00014953), "WAA-off" logging changes by Google (GOOG-RDGZ-00013797), presentations for Mr. Pichai regarding "How users consent to LH and WAA" (GOOG-RDGZ-00014927), Google's development of a "Privacy Hub" to explain "what data Google collects from a given product, how it's used, and what mechanisms of controls users have over their data" including with WAA (GOOG-RDGZ-00014410), Google's launch of "My Activity" as a "control tool" with WAA and tied to Google's ████████████████████ (GOOG-RDGZ-00013908) with Google employees invited to "discuss issue of a sensitive nature" with Mr. Miraglia directly (GOOG-RDGZ-

1

00018661). They have also discussed "what data Google collects", "what mechanisms of controls users have over their data", and explaining "to the user better what they are choosing to opt-in or out of" with WAA. GOOG-RDGZ-00038602. Mr. Miraglia likewise discussed how WAA is supposed to be a "Google-wide control" (GOOG-RDGZ-00014949), efforts to "[r]edefine UDC offering as one way to obtain valid consent" (GOOG-RDGZ-00014768), efforts to "explain to the user better what they are choosing to opt-in or out of" with WAA (GOOG-RDGZ-00013767). Mr. Miraglia's central role in these issues is further demonstrated by a 2018 email to Mr. Miraglia, stating "[y]our name came up during our Monday morning 'Oh Shit' meeting in relation to" the article concerning Google's data collection while WAA is turned off. GOOG-RDGZ-00020740.

**Xinyu Ye:** Mr. Ye was a Software Engineer in the Privacy Working Group and has documents on how Google stores and uses the data collected from users who switched off WAA. In one document, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ GOOG-RDGZ-00033244. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ GOOG-RDGZ-00054795.

**Nick Linkow / Katie Virk:** Mr. Linkow appears to have drafted the "See & control your Web & App Activity" Help Center webpage at issue in this lawsuit. GOOG-RDGZ-00024493. Subsequent productions underscore his involvement in drafting WAA-related disclosures, where Mr. Linkow asked Mr. Monsees whether a portion of the WAA disclosures "need[]s to be broader." GOOG-RDGZ-00040092. Mr. Linkow was also listed as an author of a document titled "UDC & Updates to Help Center articles," i.e., the WAA disclosures. GOOG-RDGZ-00039845. The document discusses the need to "Improve structure of how we explain activity controls: When <setting> Is on, When <setting> Is off." The document also discusses the need to help users "[u]nderstand[] what happens when they turn off a setting." GOOG-RDGZ-00039845. Katie Virk was listed as responsible for drafting a version of "See & control your Web & App Activity" Help Center webpage (GOOG-RDGZ-00035866), and she should also be a custodian.

**Dale Nil:** Mr. Nil is a Software Engineer who Mr. Monsees appears to rely on to solve technical issues regarding logging data collected from users who switch off WAA. In one internal email, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ GOOG-RDGZ-00036800. Mr. Nil responded, noting ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ GOOG-RDGZ-00037779.

**Chris Ruemmler:** Mr. Ruemmler is a Senior Staff Engineering Manager at Google in Security/Trust/Privacy. In July 2019, Mr. Ruemmler emailed Mr. Monsees to express his concerns about WAA. Citing the "See & control your Web & App Activity" webpage, Mr. Ruemmler correctly observed that Google "actually doesn't describe what happens when [WAA] is disabled." GOOG-RDGZ-00024690. Mr. Ruemmler pointed out that the webpage describes what happens when WAA is switched on, and that "given the way on/off works, one has to assume that disabled (off) would be the exact opposite of what is described for what happens when the WAA bit is on."

2

*Id.* "So, when Web & App Activity is OFF, I'd expect the opposite to happen. The opposite of the above is: When Web & App Activity is off, Google does not save information like . . . ." *Id.* "[S]o it appears that we have a real problem here with accurately describing what happens when WAA is disabled." *Id.* Google apparently disregarded Mr. Ruemmler's concerns regarding the WAA disclosures and controls. Mr. Monsees assured Mr. Ruemmler that "Nick Linkow and I have discussed rewrites of all the UDC help center articles (including WAA) to create a more consistent structure to explain the kind of 'if it's on'; vs. 'if it's off' points you bring up." *Id.* Plaintiffs believe Mr. Ruemmler has other documents about his concerns regarding Google's representations and the functionality of WAA. He reached out to Bryan Horling to discuss his concerns, GOOG-RDGZ-00024690, and planned to raise those concerns with others. GOOG-RDGZ-00024709.

Plaintiffs also seek relief for Google's delay. After arguing in May that it was premature to add custodians, Google took four months to substantially complete productions for the three it selected (it still hasn't finished). Google then ignored August 11 and September 23 letters from Plaintiffs that identified more custodians. And Google took over two weeks to respond to this brief. Google still hasn't responded to another brief that Plaintiffs sent with this one. Therefore, Plaintiffs ask the Court to require Google to respond to letter briefs within five days. Plaintiffs are separately moving for an extension of the discovery deadlines given Google's delay tactics. Google cannot complain about the timing because Google chose the timing.

## GOOGLE'S STATEMENT

This Court ordered six months ago that Plaintiffs evaluate Google's custodial productions rather than take a shot in the dark at which custodians might be relevant. Google has been producing those documents since July 6 and finished on September 7. Now, there are ten weeks left in fact discovery, and Plaintiffs are asking to *quintuple* document discovery by adding 19 custodians— an impossible feat in ten weeks—based on a letter brief that doesn't contain *any* legal argument and focuses on vague sound bites that don't relate to the claims in this case.

Rule 26 permits discovery that is both relevant and "proportional to the needs of the case, considering" *inter alia*, "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, 24 custodians (the 5 Google has designated plus 19 more) is facially excessive. Plaintiffs fall short of justifying it under Rule 26.

Per Judge Seeborg's Orders dismissing various aspects of this case, "plaintiffs allege Google's capture and analysis of data via GA for Firebase, on behalf of app developers who knowingly utilize that service, violates the WAA Materials' representations to individuals who have disabled the WAA feature." ECF 109 at 6. "Under this theory of liability, GA for Firebase— when running as marketed—allows Google to collect information about an individual's 'activity on apps that use Google services,' notwithstanding the WAA Materials' statement that '[t]o let Google save this information Web & App Activity must be on.'" *Id.* Judge Seeborg permitted Plaintiffs' CDAFA claim to proceed because Plaintiffs alleged that Google took activity data "without permission," *id.* at 14, and the invasion of privacy tort claim to proceed because Google allegedly "set an expectation" of what it would do when WAA was off, but nevertheless took "data akin to browsing habits and histories," in contravention of that expectation. *Id.* at 15-16.

3

The questions of fact that remain in this case are therefore: (1) what Google told users about WAA, (2) how GA for Firebase works, and (3) the proper calculation of damages, if any. Google has designated five custodians: one individual each who has responsibility for the aspects discussed by Plaintiffs in their complaints of Firebase, GA for Firebase, WAA, AdMob, and Cloud Messaging.[1] The first three custodians' documents now total 7,054 files, and Google is in the process of searching thousands more for the latter two. Google ran the vast majority of search terms Plaintiffs proposed (hundreds of terms in total). Google so far has produced over 13,000 documents and served verified interrogatory responses detailing comprehensively the inner functioning of the accused products. Depositions are about to begin, including the Rule 30(b)(6) deposition Plaintiffs previously moved to compel. More mass email searches at this juncture will not yield discovery that is "importan[t] . . . in resolving the issues," even as it imposes a significant burden on Google. Searching five times as much e-mail as Google has already searched will not make any fact related to what Google told users, how its technology works, or damages more or less likely. What Plaintiffs want here is to rummage through thousands of e-mails fishing for sound bites they can use against Google even though they don't relate to any specific element of any claim remaining in this case.[2]

Indeed, most of the custodians Plaintiffs seek merely comment on WAA, but Plaintiffs already have the custodian who is actually responsible for Google's WAA disclosures. The remaining custodians are at best redundant to Steve Ganem, who is responsible for how data is received by Google Analytics for Firebase and in what form; many don't even work on a relevant team, or are too low level to justify the burden of searching their-email. Plaintiffs have failed to make any showing of what non-redundant, relevant information additional custodians will provide.

This case, as narrowed by Judge Seeborg, poses central questions of fact that will not be informed by further e-mail discovery. Indeed, none of the documents cited by Plaintiffs in this brief relates to a claim or concern about GA for Firebase's data collection in light of the WAA control. Nine of the 24 documents Plaintiffs cite were produced from the Arizona WAA litigation, which is centered on whether *location history* (an entirely different Google product) is collected when WAA is *switched on*. Plaintiffs told this Court that those Arizona documents would give them a head start on identifying good custodians, but each of those 9 documents relates to internal discussions about a different practice or product than the one at issue here. (That includes the salacious quote above concerning an "oh shit" moment after an article was published about *location history*). Those discussions will not affect the factfinder's analysis of whether Google misled users about what WAA would do *when switched off* with anonymized app activity data collected via GA for Firebase.

---

[1] In a later motion to dismiss, Judge Seeborg permitted Plaintiffs to expand their theory of liability to include the integration of GA for Firebase data with AdMob and Cloud Messaging. ECF 127 at 8. Google voluntarily designated a custodian for each product.

[2] Plaintiffs mention a different case in which Google is the Defendant with higher numbers of custodians and documents. But the analysis under Rule 26 is case-specific. Plaintiffs make no attempt to explain why the Brown case should be a guide for this one, and they can't. That case deals with different issues, and discovery is combined with a related case dealing with yet other products and alleged practices.

Plaintiffs' argument for **Greg Fair** is that he had a role in creating the WAA control, but none of the documents Plaintiffs cite point to Mr. Fair ever discussing the intersection of GA for Firebase data with WAA. To the extent Plaintiffs are seeking documents to understand WAA generally, they already have thousands of documents from the key custodian on those issues, David Monsees. Mr. Fair's documents would be duplicative or of marginal relevance. Similarly, **Dale Nil** is supervised by Mr. Monsees, and the potential relevance Plaintiffs identify for him is that he worked with Mr. Monsees on a project involving the intersection of WAA and the logging of user *Search* information on web browsers. This case as limited relates solely to the logging of *mobile app* activity on third party apps using GA for Firebase. The project in question is unrelated to this case. **Nick Linkow** and **Katie Virk** likewise reported to Mr. Monsees, and the correspondence between them and Mr. Monsees in developing the WAA disclosures has been produced. Searching their e-mail will not add to that, since Mr. Monsees directed their work.

**Xinyu Ye** worked on a document detailing how to *mitigate* the risk of anonymized data being joined together to identify users while implementing a new GA for Firebase feature. Mr. Ye was supervised by Steve Ganem, who is a custodian, and whose documents include the document in question, including back-and-forth on its drafting. The relevant e-mail concerning this project has therefore already been produced, and Mr. Ganem can testify about it.

**Sam Heft-Luthy** and **Eric Miraglia** are too removed from the issues in this case to have relevant documents. Most of the citations in Plaintiffs' brief relate to the Arizona location history issue, or otherwise demonstrate that their involvement with WAA is at a very high level. None of the documents focus on the GA for Firebase issues raised by Plaintiffs here, or anything close to that level of granularity.

Plaintiffs seek **Arne de Booij**'s documents based on a single document summarizing comments on a Google doc relating to user studies about WAA. Google *produced* those studies from the Arizona WAA-related production, and Mr. de Booij's team compiled their findings in the studies themselves. His e-mail will not add anything meaningful to that production (and the studies did not relate to GA for Firebase, anyway).

Finally, Plaintiffs seek a search of **Chris Ruemmler**'s documents because he expressed to Mr. Monsees confusion about how WAA works when it's off. Mr. Monsees responded to those concerns in-line, and explained that the data Mr. Ruemmler was concerned about is pseudonymous, *i.e.*, *not tied to any particular user*, so his concerns were misplaced. This exchange demonstrates Mr. Ruemmler's lack of familiarity with the technology at issue here – how GA for Firebase stores data without tying it to a particular person's identity. There is no reason to believe a broader search of Mr. Ruemmler's e-mail will yield relevant documents, as Plaintiffs themselves seem to point to this as a random, one-off expression of confusion.[3]

---

[3] Plaintiffs' other ten custodians they seek are not mentioned in their brief. Six of them are custodians Plaintiffs have never mentioned since the last custodian letter brief. Having abandoned them sub silentio, the only explanation for appearance on this list is to anchor the Court's analysis to an artificially high number. As for the others, they do not merit Plaintiffs' top 9 list. Google is willing to brief them on their merits if the Court invites it.

Respectfully,

| WILLKIE FARR & GALLAGHER, LLP | SUSMAN GODFREY LLP |
|---|---|
| By: */s/ Eduardo E. Santacana* <br> Eduardo E. Santacana (SBN: 281668) <br> esantacana@willkie.com <br> Benedict Y. Hur (SBN: 224018) <br> bhur@willkie.com <br> Simona Agnolucci (SBN: 246943) <br> sagnolucci@willkie.com <br> Lori Arakaki (SBN: 315119) <br> larakaki@willkie.com <br> One Front Street, 34th Floor <br> San Francisco, CA 94111 <br> Telephone: (415) 858-7400 <br> Facsimile: (415) 858-7599 <br><br> *Attorneys for Defendant Google LLC* | /s/ *Amanda Bonn* <br> Amanda Bonn (CA Bar No. 270891) <br> Mark C. Mao (CA Bar No. 236165) <br> mmao@bsfllp.com <br> Beko Reblitz-Richardson (CA Bar No. 238027) <br> brichardson@bsfllp.com <br> BOIES SCHILLER FLEXNER LLP <br> 44 Montgomery Street, 41st Floor <br> San Francisco, CA 94104 <br> Telephone: (415) 293 6858 <br> Facsimile (415) 999 9695 <br><br> James W. Lee (*pro hac vice*) <br> jlee@bsfllp.com <br> Rossana Baeza (*pro hac vice*) <br> rbaeza@bsfllp.com <br> 100 SE 2nd Street, Suite 2800 <br> Miami, FL 33130 <br> Telephone: (305) 539-8400 <br> Facsimile: (305) 539-1304 <br><br> William Christopher Carmody (*pro hac vice*) <br> bcarmody@susmangodfrey.com <br> Shawn J. Rabin (*pro hac vice*) <br> srabin@susmangodfrey.com <br> Steven Shepard (*pro hac vice*) <br> sshepard@susmangodfrey.com <br> SUSMAN GODFREY L.L.P. <br> 1301 Avenue of the Americas, 32nd Floor <br> New York, NY 10019 <br> Telephone: (212) 336-8330 <br><br> Amanda Bonn (CA Bar No. 270891) <br> abonn@susmangodfrey.com <br> SUSMAN GODFREY L.L.P. <br> 1900 Avenue of the Stars, Suite 1400 |

Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

## ATTESTATION

I, Amanda Bonn, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED:  November 1, 2021         By:    */s/  Amanda Bonn*