# SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
SUITE 1400
1900 AVENUE OF THE STARS
LOS ANGELES, CALIFORNIA 90067-6029
(310) 789-3100
FAX (310) 789-3150
WWW.SUSMANGODFREY.COM

_____

| Suite 5100 | Suite 3800 | 32nd Floor |
| 1000 Louisiana Street | 1201 Third Avenue | 1301 Avenue of the Americas |
| Houston, Texas 77002-5096 | Seattle, Washington 98101-3000 | New York, New York 10019-6023 |
| (713) 651-9366 | (206) 516-3880 | (212) 336-8330 |

Amanda Bonn
Direct Dial (310) 789-3131

E-Mail ABonn@susmangodfrey.com

November 8, 2021

**Submitted via ECF**

Magistrate Judge Alex G. Tse
San Francisco Courthouse
Courtroom A - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

    Re:    Plaintiffs' Supplemental Letter Brief re: Google Custodians in Response to Supplemental Briefing Order (Dkt. 157)
*Rodriguez v. Google LLC*, Case No. 3:20-cv-04688 (N.D. Cal.)

Dear Magistrate Judge Tse:

    Pursuant to the Court's order (Dkt. 157), Plaintiffs submit this supplemental letter brief regarding the nineteen Google employees Plaintiffs seek to add as ESI custodians. The parties' joint filing (Dkt. 155) included information describing the basis for adding nine of the nineteen requested custodians. This submission includes, as requested, information regarding the other ten Google employees and explanations regarding the disputed factual and legal issues for which the requested custodial ESI is relevant.

## Factual and Legal Disputes

    This case is about Google presenting fictitious settings to consumers so that it can collect data from their mobile devices. Instead of getting data directly from app servers, Google saves billions of dollars every year in processing power, bandwidth, and hardware costs by collecting it secretly from consumer devices and making them work for Google. Without controls, it is impossible for consumers to escape Google's tracking from cradle to grave, given its market power to collect data via backdoors on countless apps. Although Google tries to excuse itself by arguing that it has "consent" from developers to wiretap users' devices, the devices do not belong to Google or developers. And Google cannot have consent where it has concurrently represented to users that their "Web & App Activity" will not be tracked if the settings are turned off.

Magistrate Judge Alex G. Tse
November 8, 2021
Page 2

Plaintiffs request ESI from 19 additional custodians who have information that Plaintiffs believe is relevant to the case and that will bear on issues of class certification, liability, and damages. Plaintiffs further note that there are still numerous factual issues in dispute.

As demonstrated by the few documents produced so far, Google custodians have critical evidence demonstrating that Google collects information from users while WAA is off without disclosure or consent. *E.g.*, Dkt. 138 ("TAC") ¶¶ 8-9 (quoting custodial emails noting Google's promise was "just not true" where "we don't accurately describe what happens when WAA is off" with Google leaving users with a "false sense of security"). Such custodial documents not only undermine Google's asserted consent defense but also demonstrate that Google acted intentionally and in ways that warrant an award of high statutory damages and punitive damages.

Such documents will also be relevant to class certification. That Google's own employees recognize that users are unaware of Google's collection of information while WAA is off, and that Google is concealing this fact, support class certification. *E.g.*, *Grace v. Apple, Inc.*, 328 F.R.D. 320, 329 (N.D. Cal. 2018) (certifying class where "some senior Apple executives were aware of what was occurring and issued a directive to falsely blame the FaceTime Break on a 'bug.'"); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 584 (N.D. Cal. 2015) (certifying class and noting internal emails referred to Yahoo's practices as "an invasion of [] privacy and too much 'big brother.'").

Although Google has represented that it is already preserving records identifying all of the people who turned off WAA and the time period during which they turned off WAA (which will identify class members), Google has not yet provided information regarding the specific data Google collected and how Google used that data. Google's interrogatory responses suggest only a limited use of that data, which Plaintiffs dispute. For example, Plaintiffs allege that data at issue "is not 'anonymized' in any meaningful sense of that word" because that data can easily be linked to a user or user's device (Dkt. 138 ¶ 126), but Google claims the data is "pseudonymous, i.e., not tied to any particular user." Dkt. 155 at 5; *see also id.* at 4 (describing "anonymized app activity data"). Plaintiffs anticipate that custodial documents will help address these disputes regarding the nature of the data collected and stored by Google.

The parties also have a dispute about how Google uses the data that it illegally collected. Plaintiffs allege that Google generates illicit advertising profits, including by directing targeted advertisements to users. TAC ¶¶ 126-31. Plaintiffs also allege that Google uses the data to develop new products and refine existing ones. TAC ¶¶ 132-41. Google denies these allegations, asserting that "[t]he falsity of this theory will be proven in due course." Dkt. 139 at 6. This dispute is in part why Plaintiffs seek production of custodial ESI beyond just the people responsible for WAA and aspects of Firebase. Plaintiffs reasonably seek custodial productions concerning how Google *uses* that data, including in connection with the services of advertisements and other products.

These factual disputes are all closely tied to Plaintiffs' claims and Google's defenses. The CDAFA applies to anyone who "[k]nowingly accesses and without permission takes, *copies, or*

Magistrate Judge Alex G. Tse
November 8, 2021
Page 3

*makes use of* any data." Cal. Penal Code § 502(c)(2) (emphasis added). CIPA § 631 similarly applies to anyone "who *uses, or attempts to use*, in any manner, or for any purpose, or to communicate in any way, any information" obtained in violation of the statute. Cal. Penal Code § 631(a) (emphasis added). Google's use of the data is also relevant to the common law and constitutional claims. Google (unsuccessfully) moved to dismiss those claims in part on the ground that Google's collection of the data does not constitute a "highly offensive invasion of privacy that constitutes an egregious breach of social norms." Dkt. 62 at 17-18. Plaintiffs reasonably seek additional ESI to prove that Google's conduct was highly offensive and egregious, particularly insofar as Google knew that users were misled and yet Google continued to collect and profit from the data. Finally, Google's use of the data is plainly relevant to Plaintiffs' unjust enrichment claim.

Google's pending motion to dismiss certain of Plaintiffs' claims puts this factual dispute regarding Google's storage and use of this information front and center. According to Google:

> The essence of Plaintiffs' case is not that, in the analogy of a phone call, Google is listening on the phone line without the knowledge of all parties. Everyone on the phone knows Google is there . . . . But, Plaintiffs argue, when WAA is off, users do not expect Google to make a copy of the log for advertising purposes. That, this Court held, is a viable theory of tort liability . . . .

Dkt. 139 at 16. Google thus takes the position that users consented to Google's initial collection of the data, and that the claims only have merit insofar as Google subsequently used the data for unauthorized purposes. To be clear, Plaintiffs disagree. Users did not consent to Google's initial collection of the data, or to Google's use of that data. In any event, Google's motion to dismiss confirms that Google's use of the data is both relevant and disputed.

Finally, this custodial ESI is highly relevant in terms of assessing the extent to which Google knew users misunderstood WAA. The Court has already ruled that Plaintiffs "offer a cogent account of why they saw WAA as capable of turning off GA for Firebase's collection of their third-party app data." Dkt. 109 at 10. Plaintiffs have since amended their complaint and now also allege that "Google knew that it was inequitable for it to collect, use, and profit from this data, including as shown by admissions from Google employees." TAC ¶ 269. It is only as a result of Google's limited custodial production to date that Plaintiffs obtained key email admissions regarding how "we don't accurately describe what happens when WAA is off. . . . We need to change the description to indicate even with the control off, Google retains this data and uses it for X purposes." TAC ¶ 261. Google never made that change, even after this lawsuit was filed. With Google continuing to insist that users consented to its initial collection of the data, Plaintiffs reasonably seek additional evidence to prove that Google knew that it was in fact collecting and using this WAA-information without disclosure or consent.

## First Nine Custodians

The parties already briefed nine of the nineteen custodians that Plaintiffs seek. *See* Dkt. 155. Plaintiffs here briefly identify the disputed factual and legal issues for which their ESI is relevant.

**Greg Fair**: Mr. Fair's central role in developing WAA and his work for the Privacy & Data Protection Office means that he will have documents relating to the disputed factual issue regarding the extent to which Google collected user information without users' knowledge or consent, which is relevant to liability, Google's consent defense, the calculation of damages, and class certification. Mr. Fair's ESI is not duplicative to Mr. Monsees, as shown by an email chain ███████████ GOOG-RDGZ-00043813.

**Arne de Booij**: As a Google User Experience Research Manager whose job is to conduct user surveys, including for WAA, Mr. de Booij will have unique documents relating to users' perceptions of the WAA disclosures, which will be relevant to the disputed issues regarding Google's disclosures and user consent and also for class certification.

**Sam Heft-Luthy**: As a Product Manager in the Privacy & Data Protection Office, Mr. Heft-Luthy "[c]oordinates development of privacy products across the company, ensuring that Google products work in a way that users can understand and control."[1] His documents are relevant to Google's awareness of its WAA problem and the disputed issues regarding Google's disclosures and user consent, as well as class certification.

**Xinyu Ye**: As a Software Engineer who is part of Google's Privacy Working Group, Ye will provide relevant ESI regarding how Google stores and uses the data at issue in this lawsuit, which is relevant for disputed issues tied to class certification, liability, and damages. ███████████ GOOG-RDGZ-00033244.

**Eric Miraglia**: As the founder of the Privacy & Data Protection Office, Mr. Miraglia has extensive involvement with Google's (failed) efforts to make control a reality for users, including efforts to ███████████ GOOG-RDGZ-00013767. Mr. Miraglia's documents will prove that Google knowingly collected WAA-off information without disclosure or consent, a key disputed factual issue for purposes of liability, damages, and class certification.

---

[1] Where there is no citation, the reference is to the employee's LinkedIn page.

**Dale Nil**: As a Google Software Engineer, Mr. Nil will have unique documents relevant to Google's storage and use of the data at issue in this lawsuit, which is the subject of the key disputes noted above. ███████████████████████████████████████████████████████ GOOG-RDGZ-00036800. As such, Mr. Nil is a critical custodian for this dispute.

**Chris Ruemmler**: A Google Senior Staff Engineering manager responsible for Security/Trust/Privacy, Mr. Ruemmler pointed out to other Google employees that "we have a real problem here with accurately describing what happens when WAA is disabled." GOOG-RDGZ-00024690. ███████████████████████████████████████████████████████ GOOG-RDGZ-00043813. ███████████████████████████████████████████████████████ GOOG-RDGZ-00024709. Mr. Ruemmler's ESI should be searched so that Plaintiffs can understand who else at Google became aware of these concerns, and why they were wrongly dismissed. Such ESI is highly relevant to the key dispute over Google's knowing collection and use of WAA-off information without disclosure or consent, for purposes of liability, damages, and class certification.

**Nick Linkow and Katie Virk**: Mr. Linkow and Ms. Virk drafted the WAA disclosures on which Plaintiffs ground their claims. Their ESI is relevant to the adequacy of these disclosures and also the disputed issue of Google's intentional misconduct, with Google continuing to insist (wrongly) that users consented to Google's collection. That these employees reported to Mr. Monsees is of no moment. Plaintiffs are entitled to know what they did not share with their boss, including any disagreements about Google's disclosures.

### Additional Ten Custodians

**Donald Harrison**: Mr. Harrison is the President of Google's Global Partnership and Corporate Development. Google has been unwilling to identify anyone from Google who was involved in Google's 2014 acquisition of Firebase. Given his role in Google's mergers and acquisitions team, Plaintiffs selected Mr. Harrison as a custodian because he likely has information and documents relating to that acquisition, including Google's valuation of Firebase and its impact on Google's data collection. Such documents are especially relevant here in terms of assessing Google's unjust enrichment, where there may be Google documents tied to that Firebase acquisition from Mr. Harrison's files reflecting Google's anticipated revenues and data collection in connection with Firebase, and possibly also discussions regarding how WAA would or would not impact those revenues and collection. Mr. Harrison has also acknowledged publicly that consent at times "appears confusing" (TAC ¶ 107) and is likely to have unique discovery relevant to Google's defenses, including Google's consent defense. Plaintiff therefore expect that Mr. Harrison will have ESI relevant to disputed issues of liability and also the calculation of damages.

**Dan Stone**:  GOOG-RDGZ-00033341. GOOG-RDGZ-00029866. GOOG-RDGZ-00033245. GOOG-RDGZ-00021792. GOOG-RDGZ-00021581, GOOG-RDGZ-00030532, GOOG-RDGZ-00022417. As such, Plaintiffs anticipate that Mr. Stone will have relevant ESI concerning disputed issues of Google's storage and use of the data at issue in this lawsuit, as well as documents relevant to quantifying damages.

**Jan Hannemann**: Mr. Hannemann is a Google Product Manager who has published articles about transparency, control, and privacy regarding Google accounts.[2] Mr. Hannemann is part of what Google has described as a privacy-focused office based in Munich, where he reportedly "helped develop My Account and is responsible for Google Account to this day"—earning the nickname "Mr. Google Account."[3] As exhibited by an October 2015 email, GOOG-RDGZ-00013980. Plaintiffs anticipate that Mr. Hannemann will have relevant documents concerning the functionality of and disclosures tied to WAA as well as the disputed issue of Google's knowing collection of WAA-off information without users' knowledge or consent.

**Jason Titus**: Mr. Titus is a Google VP in Google's Developer Products Group who should have documents concerning Google's development of Firebase SDK, Google's efforts to get app developers to use Firebase SDK, and Google's expansion of Firebase.[4] For example, one document plainly states that . GOOG-RDGZ-00056947. Plaintiffs anticipate that Mr. Titus will have documents regarding Google's

---

[2] https://blog.google/technology/safety-security/more-transparency-and-control-your-google-account/.
[3] https://safety.google/intl/en_us/stories/micklitz-hannemann/.
[4] https://venturebeat.com/2016/05/18/google-expands-firebase-with-analytics-remote-config-crash-reporting-and-dynamic-links/.

Magistrate Judge Alex G. Tse
November 8, 2021
Page 7

valuation of Firebase (as a result of data collection and ad serving), which relates to Plaintiffs' unjust enrichment claim and disputed issues regarding the calculation of damages.

**Keith Enright**: According to his LinkedIn profile, Mr. Enright is Google's Chief Privacy Officer who leads a "team of privacy specialists in support of Google's worldwide privacy effort" and "[r]egularly present[s] before domestic and international regulators." In that role, Plaintiffs anticipate that Mr. Enright likely has highly relevant documents provided to and reflecting Google's interactions with regulators, including any documents given to regulators regarding WAA and Google's WAA-off data collection. *See* Feb. 5, 2021 Hearing Tr. at 28:13–29:2 (Court: noting burden in collecting documents from other investigations but noting "If there are any [relevant ]documents to a regulator, they should get it."). In addition to his interactions with regulators, Mr. Enright has also testified that the Google Account (which includes the WAA control) allows users to "set their preferences for how Google should store and use their information" and that Google has "made mistakes in the past, from which we have learned, and improved our robust privacy program."[5] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (GOOG-RDGZ-00019099), Plaintiffs anticipate that documents from Mr. Enright's files are highly relevant in terms of understanding the development and functionality of WAA, Google's representations regarding that WAA functionality, and the extent to which Google's WAA-off data collection violates what Mr. Enright describes as Google's "robust privacy program."  This is a data privacy case, and Plaintiffs reasonably seek to add the person at Google responsible for data privacy. Plaintiffs anticipate that Mr. Enright's ESI will be relevant primarily to the disputed issues of liability and consent. Moreover, Plaintiffs at this point have limited documents regarding the creation of WAA, and expect that Mr. Enright will fill that void.

**Guemmy Kim**: Ms. Kim is a Product Manager of Account Controls and Settings at Google. Documents produced by Google indicate ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ GOOG-RDGZ-00036282 at -282; *see also* GOOG-RDGZ-00020684 at -684-85 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). As quoted in Plaintiffs' complaint, Ms. Kim published articles in 2015 and 2016 suggesting that WAA and the other features in My Account "put you in control" and could be used to "decide what information is used to make Google services work better for you" and for "safeguarding your data and protecting your privacy on Google." TAC ¶¶ 92-93. In this lawsuit, Google asserts the opposite: that users are powerless to stop Google's data collection with those controls, with Google continuing to collect WAA-off data. Plaintiffs anticipate that Ms. Kim will have additional documents which speak to Google's public representations about WAA and Google's awareness of its failure to live up to them.

---

[5] https://nsarchive.gwu.edu/media/17926/ocr.

Magistrate Judge Alex G. Tse
November 8, 2021
Page 8

**Stephan Micklitz**: As the head of Google's "privacy hub" tasked with "helping [users] manage their data,"[6] Mr. Micklitz's has a "leading role" on topics relating to "security and data privacy."[7] ▮▮▮▮▮ *E.g.*, GOOG-RDGZ-00043358.R and GOOG-RDGZ-00044065 ▮▮▮; GOOG-RDGZ-00020684 (▮▮▮▮▮); GOOG-RDGZ-00017647 ▮▮▮▮▮. Mr. Micklitz was also involved with Google's testing of users' understanding of Google Account (which includes WAA) and admitted that "[i]t was clear those users didn't understand Google Dashboard," and that "this [wa]sn't going the way I imagined."[8] Google has not designated any custodians from Google's Privacy Hub, touted by CEO Sundar Pichai, which Mr. Micklitz led. Plaintiffs anticipate that Mr. Micklitz will have relevant documents concerning Google's knowledge of the misrepresentations it made regarding WAA, reflecting Google's intentional acts, and documents that contradict and undermine Google's asserted consent defense. His documents will also be unique given the combination of his engineering background and privacy focus.

**Sree Pothana**: Ms. Pothana is a member of the Google Analytics team who will have documents regarding how Google collects, stores, and uses information collected from WAA-off users, including ▮▮▮▮▮. *See* GOOG-RDGZ-00033115. ▮▮▮▮▮ GOOG-RDGZ-00031668. ▮▮▮▮▮ GOOG-RDGZ-00028616, GOOG-RDGZ-00033699. Ms. Pothana's ESI is relevant to identifying WAA-off data tied to class members, for purposes of class certification and liability, and also calculating damages.

**Mark Risher**: Mr. Risher is a Senior Director of Product Management for Google's Identity and Security Platforms. ▮▮▮▮▮ GOOG-RDGZ-00026172. ▮▮▮▮▮ GOOG-RDGZ-00014876. ▮▮▮▮▮

---

[6] https://www.forbes.com/sites/samshead/2019/05/14/google-sets-up-engineering-centre-in-munich-to-combat-safety-and-privacy-issues/?sh=15ef374d2302.
[7] https://safety.google/intl/en_us/stories/micklitz-hannemann/.
[8] https://about.google/stories/micklitz-debooij/.

GOOG-RDGZ-00043427. Plaintiffs anticipate that he will have relevant documents concerning disputed issues of Google's storage and use of the data collected from users who switched off WAA.

**Rahul Roy-Chowdhury**: Mr. Roy-Chowdhury is Google's Vice President of Product Management with a lead role in connection with "user trust, safety and privacy at Google." He has published articles on Google's privacy practices where he specifically discussed the WAA feature at issue in this lawsuit. TAC ¶¶ 101, 103. Mr. Roy-Chowdhury was also one of the point persons needed to approve ████████████████████████████████████ GOOG-RDGZ-00043427. ████████████████████████████████████

Mr. Roy-Chowdhury will have unique documents relevant to Plaintiffs' allegations that Google knew users misunderstood WAA, as well as Google's storage use of the data. ████████████████████████████████████ GOOG-RDGZ00026172. ████████████████████████████████████ *Id.*

Respectfully,

SUSMAN GODFREY LLP

/s/ *Amanda Bonn*

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)

Magistrate Judge Alex G. Tse
November 8, 2021
Page 10

rbaeza@bsfllp.com
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*