**WILLKIE FARR & GALLAGHER LLP**
Benedict Y. Hur (SBN: 224018)
bhur@willkie.com
Simona Agnolucci (SBN: 246943)
sagnolucci@willkie.com
Eduardo E. Santacana (SBN: 281668)
esantacana@willkie.com
Lori C. Arakaki (SBN: 315119)
larakaki@willkie.com
Argemira Florez (SBN: 331153)
aflorez@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400
Facsimile: (415) 858-7599

Attorneys for Defendant Google LLC

**BOIES SCHILLER FLEXNER LLP**
Mark C. Mao (CA Bar No. 236165)
Beko Reblitz-Richardson (CA Bar No. 238027)
mmao@bsfllp.com
brichardson@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

**SUSMAN GODFREY L.L.P.**
William Christopher Carmody (pro hac vice)
bcarmody@susmangodfrey.com
Shawn J. Rabin (pro hac vice)
srabin@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

**MORGAN & MORGAN**
John A. Yanchunis (pro hac vice)
jyanchunis@forthepeople.com
Ryan J. McGee (pro hac vice)
rmcgee@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

Attorneys for Plaintiffs; additional counsel listed in signature blocks below

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANIBAL RODRIGUEZ, JULIEANNA MUNIZ, ELIZA CAMBAY, SAL CATALDO, EMIR GOENAGA, JULIAN SANTIAGO, HAROLD NYANJOM, KELLIE NYANJOM, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,<br><br>    v.<br><br>GOOGLE LLC<br><br>    Defendant. | Case No. 3:20-cv-4688-RS<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge: Hon. Richard Seeborg<br>Date: Thursday, November 18, 2021<br>Time: 10:00 a.m.<br>Place: Courtroom 3 – 17th Floor |

Pursuant to Federal Rule of Civil Procedure 16, Civil Local Rules 16-9 and 16-10, the Standing Order for All Judges of the Northern District of California, the Court's Order of October 23, 2020 (Dkt. No. 59), and in advance of the Case Management Conference set by the Court for Thursday, November 18, 2021, at 10:00 a.m., Plaintiffs and Defendant, Google LLC ("Google"), hereby submit this Joint Case Management Statement to report the parties' progress since the previous Joint Case Management Statement was filed on October 8, 2020 (Dkt. 47).

## I.   JURISDICTION AND SERVICE

Google has been served and the Court has jurisdiction over this matter.

## II.   FACTS

**Plaintiffs' Statement:**

This case is about Google's unlawful interception of user communications with third-party apps while users have "Web & App Activity" turned off. Google undertakes this WAA-off collection of user data without disclosure or consent by way of, at a minimum, Google's GA for Firebase, AdMob, and Cloud Messaging services.

Instead of getting user data directly from app servers, Google collects this information from users' devices. Google saves billions of dollars every year in processing power, bandwidth, and hardware costs by unlawfully collecting data from consumer devices and making them work for Google. Without controls, it is impossible for consumers to escape Google's tracking from cradle to grave, given Google's market power and ability to collect data via backdoors on countless apps. Although Google tries to excuse itself by arguing that it has "consent" from app developers to wiretap users' devices, the devices do not belong to Google or developers. And Google cannot have consent where it has concurrently represented to users that their "Web & App Activity" will not be tracked if the settings are turned off. Indeed, this Court has rejected Google's consent defense as to users, holding that "Plaintiffs offer a cogent account of why they saw WAA as capable of turning off GA for Firebase's collection of their third-party app data." Dkt. 109 at 10.

Discovery has shown that Google's own employees agree with the Court (and Plaintiffs). One employee, for example, complained that: "Today, we don't accurately describe what happens when WAA is off … given the way on/off works, one has to then assume that disabled (off) would be the exact opposite of what is described for what happens when the WAA bit is on." Dkt. 138 ¶ 261.  The WAA and other controls imply we don't log the data, but obviously we do. We need to change the description to indicate even with the control off, Google retains this data and uses it for X purposes." Dkt. 138 ¶ 261.  Other employees admit that people "don't know what WAA means" and that turning WAA off leaves users with a "false sense of security that their data is not being stored by Google, when in fact it is." Dkt. 138 ¶¶ 8-9.

Google initially claimed that this case was limited to data collected through Google Analytics for Firebase.  Plaintiffs' Second Amended Complaint added allegations about AdMob and Cloud Messaging, and the Court denied Google's motion to strike those allegations, holding that the allegations "expand[] the scope of discovery." Dkt. 109 at 7-8.  Plaintiffs are now exploring in discovery how the data is also collected through and used by these additional Google services.  With their Third Amended Complaint, Plaintiffs added allegations about how Google's Real Time Bidding product substantiates Plaintiffs' CIPA § 631 claim.  Dkt. 138 ¶ 52.  Google in their Reply Brief admitted that Google uses data collected through GA for Firebase for Real Time Bidding, Dkt. 145 at 5, and Plaintiffs are now seeking discovery about this use.

**Google's Statement:**

The claims Plaintiffs assert relate to the use by third-party app developers of a Google tool called Google Analytics for Firebase ("GA for Firebase").  The apps at issue used GA for Firebase to learn more about their users' interaction with the apps. App developers incorporated Google's analytics tool into their app, causing some data about their users' interactions with their apps to be sent to Google to be analyzed for the app developers. The apps that used GA for Firebase were required by Google to disclose to users that they had authorized GA for Firebase to receive data about user activity on the app, and they did.  This case is therefore about the authorized collection of data that users knowingly provided to apps so the app developers could

understand the data using Google's tool. There is no actual claim that could be proved against Google for providing this tool to app developers, the use of which is premised on the consent of all involved in order to make apps better for everyone.

Plaintiffs therefore manufacture their theory of liability on the basis of a separate Google account-level setting called Web & App Activity ("WAA"). While GA for Firebase is a tool for developers, WAA is a tool for Google users. When WAA is "on," it allows Google to save a user's online searches and activity in the user's Google account to help Google provide faster, more relevant searches and other forms of personalized experiences across Google services. Plaintiffs allege that when WAA is "off," GA for Firebase collects Plaintiffs' personalized information contrary to Google's WAA-related disclosures.

Google denies Plaintiffs' claims. Setting aside the fact that apps and their users consented to providing data to Google through GA for Firebase, the central allegation of Plaintiffs' case is false. As Google has explained through documents and in a verified interrogatory response, if a user has WAA off, Google takes extraordinary steps to ensure the data cannot be linked to any particular user's identity or Google account.  Because the data at issue is not personalized, all of Plaintiffs' claims must fail.

**III.   LEGAL ISSUES**

Apart from the currently-pending motions and ones the parties intend to file, as well as legal issues relating to the Third Amended Complaint, the parties have no new legal issues to present at this time.

**IV.   MOTIONS**

Motions Decided Since the Last CMC Statement:

The Court granted in part and denied in part Google's motion to dismiss the First Amended Complaint, as well as Google's motion to dismiss the Second Amended Complaint. Dkts. 109, 127.

The Court has resolved certain discovery disputes. *See* Dkts 85 (granting in part and denying in part Plaintiffs' motion to compel documents); 106 (denying Plaintiffs' motion to

compel Google to add additional custodians); 111 (order on Plaintiffs' motion to compel 30(b)(6) deposition).

The Court has granted numerous *pro hac vice* applications.  Dkts. 81, 90, 133, 150.

The Court denied a motion to seal.  Dkt. 108.

Pending Motions:

Pending before the Court is Google's Motion to Dismiss the Third Amended Complaint. Dkts. 139, 144 & 145.  Also pending before the Court is Plaintiffs' Motion for Relief from the Case Management Schedule seeking a six-month extension of the fact discovery deadline. Dkt. 153. Google's deadline to file a response to that motion is November 12, 2021.

Plaintiffs' Request for Google to Search Additional Custodians' ESI (Dkts. 155 & 163) is pending before Magistrate Judge Tse.  The parties will tomorrow file a letter brief regarding Plaintiffs' Request for an Order Requiring Google to Negotiate and Propose a Preservation Plan for this Case and Perform Other Related Preservation Actions.

Various administrative motions to seal are pending.  Dkts. 152, 154, 162.

Anticipated Motions:

Plaintiffs anticipate seeking class certification and summary judgment.  Plaintiffs also anticipate filing several discovery disputes with Magistrate Judge Tse.  These disputes were outlined in Plaintiffs' Motion for Relief from Case Management Order, Dkt. 153 at 8-9, and they are briefly summarized below:

- **Claw Back Dispute**: Plaintiffs are challenging Google's decision to claw back a document pursuant to the Stipulated Protective Order.  Google is drafting its portion of the letter brief.

- **Search Terms:** Plaintiffs and Google are continuing to negotiate compromises for some search terms, but have reached impasse on others and will file a letter brief.

- **Privilege Log Challenges:** Plaintiffs anticipate challenging some of Google's privilege log entries.

- **Source Code:** Plaintiffs anticipate moving to compel Google to produce source code.

5      CASE NO. 3:20-cv-4688-RS
JOINT CASE MANAGEMENT STATEMENT

- **30(b)(6) Depositions:** The parties are trying to reach an agreement on the manner in which 30(b)(6) depositions will proceed and whether Plaintiffs can amend their 30(b)(6) notice to add additional topics. If necessary, Plaintiffs will raise the issue with Magistrate Judge Tse.

- **Regulatory Documents:** Plaintiffs seek documents relating to internal Google projects regarding data collection and use that Plaintiffs believe violate regulatory orders. If necessary, Plaintiffs will move to compel.

- **Production of WAA Data and Identification of Logs and Data Sources:** Plaintiffs seek data identifying all individuals who turned off WAA and the time period during which WAA was off, as well as all logs and data sources reflecting WAA-off data collection and use of that data. Google believes this request is premature prior to class certification. If this dispute cannot be resolved, Plaintiffs will move to compel.

- **RFPs:** Google has objected to various RFPs that Plaintiffs have served, including requests for documents regarding GMS, Real Time Bidding, and Google's profits from WAA-off data collection and use. If these disputes cannot be resolved, Plaintiffs will raise them with Magistrate Judge Tse.

- **Plaintiffs' Consulting Experts:** Google has objected to Plaintiffs sharing protected material with certain retained consultants. The parties will meet and confer to attempt to resolve this dispute without court intervention.

Google anticipates filing a motion for summary judgment. Google will oppose Plaintiffs' motion for class certification and motion for summary judgment. Google plans to oppose Plaintiffs' anticipated discovery disputes.

## V.   AMENDMENT OF PLEADINGS

Plaintiffs filed the Third Amended Complaint on September 1, 2021. Dkt. 138. Although Plaintiffs believe that their Complaint is well-pleaded, and not subject to a motion to dismiss, a fully briefed motion to dismiss has been submitted to the Court for decision. Dkts. 139, 144 & 145. Nonetheless, depending on the Court's decision, Plaintiffs reserve their right to seek leave to file an amended complaint to expedite the adjudication of this case.

## VI.   EVIDENCE PRESERVATION

**Plaintiffs' Statement:**

Plaintiffs remain concerned that Google is not preserving and is in fact destroying relevant evidence, including without limitation data from two relevant logs that it admits contain the data

sent to and held by Google via GA for Firebase when users' Web & App Activity WAA toggle is not set to 'on'—material that Google routinely purges every 56 days. Plaintiffs also believe that Google is deleting information relating to Google's collection and use of private browsing data, in violation of its "duty to preserve evidence that is relevant or could reasonably lead to the discovery of admissible evidence." *Bright Sols. for Dyslexia, Inc. v. Doe 1*, No. 15-CV-01618-JSC, 2015 WL 5159125, at *2 (N.D. Cal. Sept. 2, 2015). Further, Google has steadfastly refused to identify which data sources may be relevant to other at-issue WAA-off collection and use of that data and has not identified any data sources or logs for AdMob even though Goggle does not dispute that AdMob is used for real-time-bidding, which includes the mobile app URLs even when WAA/sWAA is off. Google has further refused to identify any data sources or logs for Cloud Messaging. Plaintiffs believe these logs exist and fear Google is routinely spoliating this and other relevant evidence.

Plaintiffs have asked Google whether it has and is preserving this relevant data and Google has not provided a meaningful response. Plaintiffs were seeking to negotiate a preservation plan with Google as was done in the similar *Brown* and *Calhoun* cases pending before Judge Koh, but Google has refused to engage in those negotiations. A joint discovery letter brief will be filed tomorrow that raises these issues with Magistrate Judge Tse.

**Google's Statement:**

There is no federal or local rule that requires a "preservation plan." Google is complying with its obligations to preserve relevant ESI under the Federal Rules of Civil Procedure and this Court's guidance on ESI issues. Since the inception of this case, Google's counsel has engaged in dozens of conversations with Plaintiffs' counsel regarding its plans for preserving relevant ESI. And it has complied with its obligations to disclose to Plaintiffs information about its preservation efforts in good faith. That includes telling Plaintiffs from the very beginning, at the parties' Rule 26(f) conference, that Google would not preserve raw data flows from millions of users, numbering billions of entries per day, because doing so would be unreasonable, not called for by Google's evidence preservation obligations, and unprecedented. Plaintiffs have known Google's

JOINT CASE MANAGEMENT STATEMENT

position for thirteen months, but they have only recently brought the issue to a motion to compel; that motion will be filed tomorrow. The information Plaintiffs seek is extraordinarily burdensome to preserve, un-useable and irrelevant.

## VII. DISCLOSURES

The parties exchanged initial disclosures. Plaintiffs served their initial disclosures on October 7, 2020. Google served its initial disclosures on October 27, 2020.

## VIII. DISCOVERY

### A. Case Schedule

The Court entered the initial Case Management Scheduling Order in the case on October 23, 2020. Dkt. 59. Plaintiffs amended their complaint on November 11, 2020. Dkt. 60. The parties stipulated on August 13, 2021, to extend the fact discovery cut-off and expert disclosure deadlines by 60 days, to January 11, 2022.

On October 29, 2021, Plaintiffs filed a Motion for Relief from the Case Management Schedule seeking a 6-month extension of all deadlines. Google intends to oppose. Dkt. 153. Google's current deadline to file a response to that motion is November 12, 2021.

On November 1, 2021, the Court issued a Case Management Scheduling Order extending fact discovery and expert disclosure deadlines 30 days until February 10, 2022 to permit the parties to complete their briefing on Plaintiffs' Motion for Relief without risking the need for duplicative depositions. Dkt. 156.

### B. Written Discovery Since Last Joint CMC Statement.

Plaintiffs have served six sets of Requests for Production (RFPs) totaling 184 requests; five sets of Interrogatories totaling 11 interrogatories; and two sets of Requests for Admission (RFAs) totaling 13 requests. Google has served two sets of Interrogatories totaling five requests; two sets of RFPs totaling 11 requests; and one set of RFAs totaling 25 requests. Both parties have responded to each set of discovery requests.

### C. Depositions

No depositions have yet been conducted in the matter. Google has noticed the depositions

of the named Plaintiffs for the December 6-9, 2021. Plaintiffs intend to depose Google employees and 30(b)(6) depositions of Google.

### D.     Protective Order

The parties were able to agree on all terms of a protective order, which Judge Seeborg approved on January 7, 2021.  Dkt. 70.

### E.     ESI Protocol

The parties stipulated to an order related to ESI discovery, which was approved on January 20, 2021.  Dkt. 73.

### F.     Discovery Update

**Plaintiffs' Statement:**   Given the complexity of the case, Google's production of documents has been underwhelming and Google's unwillingness to produce documents and identify information sources is holding up depositions in the case. To date, Google has only produced 13,707 documents, which were limited to Google Analytics. Included in that number, only 6,304 documents have been produced from Google's ESI search of just three Google-selected custodians. That production pales in comparison to the 714,197 documents comprising of more than 5.3 million pages produced by Google in the similarly complex *Brown v. Google* matter pending before Judge Koh and Magistrate Judge van Keulen, where there are 42 Google custodians. Worse yet, Google has only agreed to produce documents from five custodians of its own choosing, including documents from a single custodian for AdMob and a single custodian for Cloud Messaging—both of which are complex technologies put at issue in the Third Amended Complaint and are critical to Plaintiffs' case. Plaintiffs believe this is insufficient.

**Google's Statement:**

Google has been diligently working to identify and produce responsive documents for over 11 months. Google has thus far produced over 40,000 pages of documents comprising nearly 13,000 documents, covering the relevant topics implicated by Plaintiffs' remaining claims. This is a straightforward case and Plaintiffs' theory is limited following this Court's rulings on Google's motions to dismiss dismissing various aspects of this case. Dkt. 109. The questions of fact that

remain are: (1) what Google told users about WAA, (2) how GA for Firebase works, and (3) the proper calculation of damages, if any. Dkt. 155. Google has designated five custodians: one individual each who has responsibility for the aspects discussed by Plaintiffs in their complaints of Firebase, GA for Firebase, WAA, AdMob, and Cloud Messaging. Google has substantially completed production of documents for the first three custodians, now totaling over 7,000 files, and Google is in the process of searching thousands more for the latter two. Over the last eight months, Google has made repeated compromises to employ the vast majority of Plaintiffs' proposed search terms.

## IX.   CLASS CERTIFICATION

The parties have reviewed the Procedural Guidance for Class Action Settlements.

**Plaintiffs' Statement**:  Plaintiffs propose that two classes be certified pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4), and intend to file a motion for class certification on a schedule to be set by the Court for the following classes:

- Class 1 – All individuals who during the Class Period (a) turned off "Web & App Activity," and (b) whose mobile app activity was still transmitted to Google, from (c) a mobile device running the Android operating system (OS), because of Firebase SDK scripts, on a non-Google branded mobile app.

- Class 2 – All individuals who during the Class Period (a) turned off "Web & App Activity," and (b) whose mobile app activity was still transmitted to Google from (c) a mobile device running a non-Android operating system (OS), because of Firebase SDK scripts, on a non-Google branded mobile app.

Plaintiffs contend the classes meet all of the requirements set forth in Rule 23. Plaintiffs' claims are typical of the claims of all other members of the proposed classes because they were uniformly affected by Google's wrongful conduct in violation of federal and state law. Plaintiffs will fairly and adequately protect the interests of the members of the proposed classes, as they have retained counsel who are competent and experienced in class litigation, including nationwide class actions and privacy violations. Plaintiffs and their counsel have no interests that

conflict with, or are otherwise antagonistic to the interests of the members of the proposed classes, they are committed and have the resources to vigorously prosecute this action on behalf of the members of the proposed classes. Plaintiffs also contend a class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the proposed classes is impracticable. The proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of a single adjudication, economies of scales, and comprehensive supervision by this qualified Court. Furthermore, the expense and burden of individual litigation make it impossible for members of the proposed classes to individually redress the wrongs done to them through Google's conduct.

Google's Terms of Service also compel application of California law, which states "California law will govern all disputes arising out of or relating to the[] terms, service specific additional terms, or any related services, regardless of conflict of laws rules. These disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts." By choosing California law for the resolution of disputes covered by its Terms of Service, Google concedes that it is appropriate for this Court to apply California law to the instant dispute.

Further, California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the proposed classes under the Due Process Clause, *see* U.S. CONST. amend. XIV, § 1, and the Full Faith and Credit Clause, *see* U.S. CONST. art. IV, § 1, of the U.S. Constitution. California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs and all members of the proposed classes, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair. Google's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible. The application of California laws to the proposed classes is also appropriate under California's choice of law rules because California has significant contacts to

the claims of Plaintiffs and the proposed classes, and California has a greatest interest in applying its laws here.

Plaintiffs will also seek injunctive relief.  Google should delete all of the data it has impermissibly collected from users.

**Google's Statement**:  Google does not believe that any class should be certified.

## XII. SETTLEMENT AND ADR

No settlement discussions have taken place.  Pursuant to ADR Local Rule 3-5 and Civil Local Rule 16-8, on September 23, 2020, the parties met and conferred regarding the available dispute resolution options. Google has filed its ADR Certification. Dkt. 40. Plaintiffs have filed or will file shortly their respective ADR Certifications. The parties do not believe that ADR is appropriate at this time.

DATED: November 10, 2021            SUSMAN GODFREY L.L.P.

By: */s/ Amanda Bonn*
    Amanda Bonn (CA Bar No. 270891)
    abonn@susmangodfrey.com
    1900 Avenue of the Stars, Suite 1400
    Los Angeles, CA 90067
    Telephone: (310) 789-3100

    William Christopher Carmody (pro hac vice)
    bcarmody@susmangodfrey.com
    Shawn J. Rabin (pro hac vice)
    srabin@susmangodfrey.com
    Steven Shepard (pro hac vice)
    sshepard@susmangodfrey.com
    1301 Avenue of the Americas, 32nd Floor
    New York, NY  10019
    Telephone: (212) 336-8330

BOIES SCHILLER FLEXNER LLP
    Mark C. Mao (CA Bar No. 236165)
    mmao@bsfllp.com
    Beko Reblitz-Richardson (CA Bar No. 238027)
    brichardson@bsfllp.com
    44 Montgomery Street, 41st Floor
    San Francisco, CA 94104

47941

422.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Telephone: (415) 293 6858
Facsimile (415) 999 9695

James W. Lee (pro hac vice)
jlee@bsfllp.com
Rossana Baeza (pro hac vice)
rbaeza@bsfllp.com
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

Jesse Panuccio (pro hac vice)
jpanuccio@bsfllp.com
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile:  (202) 237-6131

MORGAN & MORGAN
 John A. Yanchunis (pro hac vice)
 jyanchunis@forthepeople.com
 Ryan J. McGee (pro hac vice)
 rmcgee@forthepeople.com
 Ra Olusegun Amen (pro hac vice)
 ramen@forthepeople.com
 201 N. Franklin Street, 7th Floor
 Tampa, FL 33602
 Telephone: (813) 223-5505

*Attorneys for Plaintiffs*

DATED: November 10, 2020  WILLKIE FARR & GALLAGHER, LLP

By: */s/ Eduardo E. Santacana*
 Benedict Y. Hur (SBN:  224018)
 bhur@willkie.com
 Simona Agnolucci (SBN:  246943)
 sagnolucci@willkie.com
 Eduardo E. Santacana (SBN: 281668)
 esantacana@willkie.com
 Lori C. Arakaki (SBN: 315119)
 larakaki@willkie.com
 Argemira Florez (SBN: 331153)
 aflorez@willkie.com

13          CASE NO. 3:20-cv-4688-RS
JOINT CASE MANAGEMENT STATEMENT

One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400
Facsimile: (415) 858-7599

*Attorneys for Defendant Google LLC*

## ATTESTATION

I, Eduardo E. Santacana, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED:  November 10, 2021				By:	*/s/ Eduardo E. Santacana*