Redacted Version Sought to be Filed Under Seal

November 12, 2021

**Submitted via ECF**

Magistrate Judge Alex G. Tse
San Francisco Courthouse
Courtroom A - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    Joint Letter Brief re: Google Preservation
               *Rodriguez v. Google LLC*, Case No. 3:20-cv-04688-RS (N.D. Cal.)

Dear Magistrate Judge Tse:

      Plaintiffs and Google LLC ("Google") submit this joint letter brief regarding Plaintiffs' request for an order that Google negotiate and propose a preservation plan for this case and perform other related preservation actions. Counsel for the parties met and conferred in good faith, including by videoconference on October 6 and again on October 12, and reached an impasse. Ex. A includes Plaintiffs' proposed order, and Ex. B includes Defendant's proposed order.

**PLAINTIFFS' STATEMENT**

I.   **GOOGLE IS DESTROYING RELEVANT ESI.**

This case involves Google's surreptitious collection and use of users' app activity information while users had WAA turned off. As detailed in Plaintiffs' amended complaint (Dkt. 138), Google's employees recognized that Google's promise of control was "just not true" and that "we don't accurately describe what happens when WAA is off," giving users a "false sense of security that their data is not being stored at Google, when in fact it is."

Judge Seeborg denied most of Google's motion to dismiss (Dkt. 109), and Plaintiffs have been seeking to understand the extent to which Google is preserving ESI consistent with the ESI Guidelines and the ESI Order in this case. Google's preservation efforts have been clouded by Google's refusal to identify or to produce documents identifying specific data sources containing relevant ESI. As stated in Plaintiffs' motion for an extension of the case management schedule (Dkt. 153), Plaintiffs' evolving understanding of Google's complicated data sources confirms that Google continues to delete relevant ESI. Google's preservation should include, at a minimum, three categories of ESI: (1) ESI to identify class members; (2) ESI to identify the information Google collected from class members while they had WAA turned off; and (3) ESI to identify the ways in which Google used the information Google collected, including Google's enrichment.

It appears that Google is preserving data relating to (1) but not (2) or (3). Google's counsel has represented that it has records identifying all individuals who turned off WAA, and the time period during which Google turned off WAA (although Google's counsel to date has not provided any description of the format of or nature of this data, despite many requests to do so). While Google's counsel claims it is retaining that data, which will identify class members, Google has represented that it has not changed any of its data retention periods for data sources tied to the data Google actually collects while WAA is off and how Google uses that WAA-off information. Plaintiffs seek that data in connection with their class certification motion and for the parties' experts, to quantify the number of illegal interceptions and Google's unjust enrichment.

Google has identified two logs that "contain the data sent to and held by Google via GA for Firebase when users' Web & App Activity WAA toggle is not set to 'on'": (1) gfstmp/gmp:tmp-app_measurement and (2) gfstmp/gmp:tmp-app_measurement_clicks. Despite conceding that these logs are relevant and contain information responsive to Plaintiffs' discovery requests, Google has not committed to preserving this data beyond Google's standard retention practice, with Google deleting that data *every 56 days*. This means Google has already deleted data regarding its illegal interceptions during the pendency of this lawsuit, with ongoing deletion of records. Google has not identified any logs or data sources concerning Google's use of that WAA-off information, and also has not changed any retention periods for those additional ESI sources.

II.  **GOOGLE REFUSES TO NEGOTIATE WITH PLAINTIFFS TO DETERMINE A REASONABLE PRESERVATION PLAN.**

Despite more than a year of negotiations, Google has refused to identify which ESI sources may contain data and documents relevant to other at-issue WAA-off collection and use. Google's

1

refusal to identify those data sources is particularly concerning given that much of this data is likely being deleted pursuant to Google's data retention policies. Google conceded that it only looked into relevant logs in early summer 2021. Despite two amendments to the Complaint that expand the allegations, Google has not gone back to identify additional relevant ESI. Plaintiffs reasonably seek such discovery in preparation for class certification and trial.

Plaintiffs requested that Google negotiate with Plaintiffs with the aim of entering into a preservation plan. Google's position that a preservation plan is not needed or required is contrary to the position this Court has taken in the related *Calhoun* and *Brown* cases. Google's refusal to negotiate any such ESI preservation is also improper. *Del Campo v. Kennedy*, No. C-01-21151 JW (PVT), 2006 WL 2586633, at *1 (N.D. Cal. Sept. 8, 2006) (ordering the defendant to meet and confer to produce a document preservation plan at plaintiff's request after noting that "the need to meet and confer to develop a document preservation plan is obvious"); *National Assoc. of Radiation Survivors v. Turnage*, 53 F. Supp. 1443, 1455 (C.D. Cal. 1984) (litigant is "under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.").

### III.  REQUESTED RELIEF.

Plaintiffs respectfully request four things. *First*, Plaintiffs ask that this Court order the parties to exchange preservation plan proposals within one week of any order on this filing and provide a stipulated joint preservation plan or competing proposals to the Court within 30 days of any order. *Second*, Plaintiffs ask that the Court order Google to identify any relevant data sources falling in buckets (1), (2), and (3) identified above. *Third*, Plaintiffs ask that, until the parties "reach an agreement[] on a preservation plan or the Court orders otherwise," the Court order the parties to preserve all data arguably falling within those buckets. *In re Flash Memory Antitrust Litig.*, No. C-07-00086-SBA, 2008 WL 1831668, at *1 (N.D. Cal. Apr. 22, 2008). *Fourth*, given the admitted relevance of the two logs identified by Google, Plaintiffs seek an order requiring Google to preserve that data every 55 days, to prevent its spoliation in this case. Plaintiffs agree to limit this request to data related to all US persons and devices who disabled the WAA feature.

### IV.  GOOGLE'S MERITLESS OBJECTIONS.

Google's burden objection is overstated and meritless. Plaintiffs are *not* requesting that Google retain all data from all users of all apps that use GA for Firebase. Plaintiffs seek only data related to all US persons and devices who disabled the WAA feature. The numbers presented by Google with Mr. Ganem's declaration are ***global*** numbers for ***all of*** GA Firebase. Further, this burden exists only because Google made the decision to continue collecting WAA-off data even after Plaintiffs filed this lawsuit, for Google's own financial benefit. Google should not be permitted to both continue collecting and profiting from that collection and at the same time destroy evidence of that collection and use, particularly when the Court has already rejected Google's consent defense. *See* Dkt. 109. "[D]efendants may not attempt to avoid a class suit merely because their own actions have made the class more difficult to identify [or locate]." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) (alteration in original). Google "should not be allowed to [oppose] class certification due to a record-keeping

problem of its own making." *Frlekin v. Apple Inc.*, 309 F.R.D. 518, 526 (N.D. Cal. 2015). As an alternative to preserving entire logs, Google can also write a customized script to preserve relevant aspects of the data that Plaintiffs seek—a solution Google is silent about. Unless Google will stipulate to the number of interceptions and Google's profits from them, then Google should not be permitted to destroy evidence that would help Plaintiffs calculate those figures. In addition, Plaintiffs are and have been actively trying to obtain the app_instance_ids Google claims is needed to "query the logs," despite Plaintiffs' doubts that the information is actually needed. Those collection efforts are technically complicated, require travel to each device, and have been hampered by the pandemic. This in an additional reason why more time for discovery is needed, and it is irrelevant to whether Google should be preserving relevant ESI.

Plaintiffs are not tardy in seeking relief. Plaintiffs raised this issue in late 2020, and during two meet and confers in January. In a February 1 letter, Plaintiffs stated their expectation that Google preserve ESI relevant to Plaintiffs' claims and Google's defenses. *See* FRCP 37(e). Despite multiple requests for an outline of Google's preservation efforts, along with discussions of sampling (where Google's counsel stated categorically that Google would never agree that any sample was representative), Google claims it set the record straight in a letter dated June 16. Far from it. That letter addressed only the following narrow issues: (1) Plaintiffs' request for Google to preserve raw data flows from GA4F and (2) RFP No. 18, which sought "[d]ocuments concerning Plaintiffs." It did not outline Google's preservation efforts. After litigating the SAC, Plaintiffs sent a letter to Google addressing this issue on September 15. Google responded five days later, and Plaintiffs again responded three days later. Plaintiffs then sent this draft motion to Google, who sat on it for two weeks.

### **GOOGLE'S STATEMENT**

There is no federal or local rule that requires a "preservation plan." Google is complying with its obligations to preserve relevant ESI under the Federal Rules of Civil Procedure and this Court's guidance on ESI issues. Since the inception of this case, Google's counsel has engaged in dozens of conversations with Plaintiffs' counsel regarding its plans for preserving relevant ESI. And it has complied with its obligations to disclose to Plaintiffs information about its preservation efforts in good faith. That includes telling Plaintiffs from the very beginning, at the parties' Rule 26(f) conference, that Google would not preserve raw data flows from millions of users, numbering billions of entries per day, because doing so would be unreasonable, not called for by Google's evidence preservation obligations, and unprecedented. We are at the end of the discovery period. Plaintiffs have known Google's position for thirteen months, but they raise it now, accusing Google of spoliation. Those accusations are meritless, and Plaintiffs' requested relief is either unreasonable or pointless.

**A.    Google complied with its evidence preservation obligations.**

Google issued legal hold notices to potential ESI custodians, preserved public and non-public documentation and code relating to the accused technology, preserved internal dashboards and wikis related to the accused technology, and updates and checks compliance with its legal hold. Plaintiffs ask for a "preservation plan" anyway, but they don't say what such a plan is, or how it would differ from what Google has already disclosed.

Rule 37(e) "does not call for perfection" in preserving ESI; it "calls for reasonable[ness]."

3

Adv. Comm. Notes to 2015 Amend. of Fed. R. Civ. P. 37(e). "Whether preservation or discovery conduct is . . . reasonable [] in turn depends on whether what was done—or not done—was *proportional* to that case and consistent with clearly established applicable standards."). *Pettit v. Smith*, 45 F. Supp. 3d 1099, 1107 (D. Ariz. 2014). Google has not changed its standard retention period for event-level GA for Firebase data, because doing so would be unreasonable and disproportional. In essence, Plaintiffs ask that Google retain all data from all WAA-off users of all apps that use GA for Firebase. The app measurement logs record ▮▮▮▮▮▮ entries per day, on average. *See* Ganem Decl. ISO Joint Letter Brief Re: Google Preservation ("Ganem Decl.") ¶ 3. Just 56 days' worth of data totals over ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ganem Decl. ¶ 4. Using public storage cost figures as an example, storing two years' worth of such data would cost ▮▮▮▮▮, and three years would cost ▮▮▮▮▮; preserving it indefinitely would continue to increase cumulatively over time. *Id.* ¶ 5. When Google queries these logs, it can take days or weeks of engineer and computer time for the queries to turn up results. *Id* ¶ 4. Many users turn WAA on and off repeatedly, and the logs are anonymized, so only preserving them in their entirety would enable Google to query them for particular WAA-off users in particular moments in time. *Id.* ¶ 7.

To picture it, a typical 40-server rack cabinet 7 feet tall might hold 600 terabytes of data in it. Plaintiffs (and Google) would need ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 6. The idea that Plaintiffs will ever be able to use this data is ludicrous. And Plaintiffs do not explain what, if anything, they would do with years' worth of GA for Firebase data that they can't do with, for example, their own GA for Firebase data. *See, e.g.*, *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 5477639, at *3 (N.D. Cal. Oct. 29, 2014) (stating "[t]his district recognizes that the proportionality principle applies to the duty to preserve potential sources of evidence"; holding that paying $500 per month to store computers outweighed the likely benefit of maintaining the computers.)

Google has repeatedly offered to produce data relating to Plaintiffs' own devices in GA-related logs if Plaintiffs would cooperate by providing critical information needed to query the logs. Even producing that would require weeks of engineering time because ***each entry of event-level data is rendered pseudonymous, which means the data is not linked to a particular person.*** For this reason, Plaintiffs' claims fail on the merits. It also means Google cannot simply find Mr. Rodriguez's GA for Firebase entries while his WAA was turned off.

B.      **Plaintiffs have known for a year that Google wouldn't preserve raw data.**

The parties held their Rule 26(f) conferences on September 23, 29, and 30, 2020. ECF 47 at 1. At the time, Plaintiffs made no mention of their concerns to the Court. *Id.* at 5-6. During those discussions, Google told Plaintiffs it would not preserve raw user data. Google said it again in a letter on December 31, 2020, in response to a request from Plaintiffs that, as Google explained, "implies that Google must freeze in place troves of data that otherwise would be deleted for the protection of the users themselves for no perceptible benefit." During phone calls at that time, Google repeatedly explained that it would not engage in such preservation. Plaintiffs responded in writing by simply saying "Plaintiffs do not agree to Google's destruction of such data."

In connection with the negotiation of the ESI stipulation in this case, Plaintiffs again pushed for a specification that Google must preserve raw data flows. After negotiations, the final version of

4

the ESI stipulation sent to the Court on January 20, 2021, did not include the provision Plaintiffs proposed. The parties then had several more conversations throughout the end of January about ESI preservation. Google made its position known again.

Plaintiffs then demanded preservation of raw data flows on February 1. Google again reiterated in response: "As you know and as we have discussed many times, preserving *all* GA4F is simply not practical. We need to find an alternative way to satisfy Plaintiffs' desires and concerns in this regard, and we remain open to any proposed compromise you may have." Plaintiffs have never made any such compromise proposal. Instead, Plaintiffs demanded preservation again in another letter on April 28. In early May, Judge Van Keulen ruled in another case that Google was not required to preserve raw user data flows in a privacy class action. Google asked Plaintiffs if that changed their position; on May 7, Plaintiffs said that it didn't.

Google explained again on June 16 that it would not preserve raw data flows, and it confirmed the two logs at issue have a retention period of 56 days. On July 22, Plaintiffs responded by letter, did not mention any further demand that Google preserve raw user data, and instead focused on asking that Google identify more logs than the two Google had identified. Then, radio silence until late September, when suddenly Plaintiffs expressed their intention to move to compel Google to preserve data flows that it had steadfastly refused to preserve.

Meanwhile, Google pleaded with Plaintiffs for six months to provide the app_instance_ids from their mobile devices, which would have enabled Google to preserve and produce the raw data associated with Plaintiffs' devices in particular. Plaintiffs have never taken the necessary steps (despite being provided the instructions on how to do so) to produce the app_instance_ids. Recently, Plaintiffs did provide device IDs, and Google is exploring whether it can query its logs using this ID to preserve data about Plaintiffs' devices going forward.

Plaintiffs claim that Google won't identify any more ESI data sources that may contain relevant information. That's wrong. Google has identified the ESI data sources it believes contain relevant and responsive information. In negotiations, Plaintiffs' counsel have insisted that "there must be more," "you must keep this type of information in this sort of place," and other similar theories that are not based on fact. Google has identified what it believes is relevant, and it did so long ago. If Plaintiffs become aware of something more they believe should be preserved, they should identify it specifically.

### D.   Google has already identified collection and use information.

Plaintiffs ask for an Order that Google must preserve ESI that identifies the information Google has collected from members of the proposed class and how Google used that information. But Google has already done that, in the form of public documentation, non-public documentation, a detailed interrogatory response that Google has continually supplemented with technical details, e-mail from five custodians, documents from the Arizona WAA litigation, and now by offering Rule 30(b)(6) testimony on these precise questions. Plaintiffs insist that what they need is raw event-level data. But there are many ways to provide Plaintiffs the information they seek that are more direct and far less burdensome than filling a warehouse with massive server cabinets full of anonymous individuals' data. Google has complied with each of the other ways Plaintiffs have sought such information. That is enough.

Respectfully,

| WILLKIE FARR & GALLAGHER, LLP | SUSMAN GODFREY LLP |
|---|---|
| By: */s/ Eduardo E. Santacana*<br>Eduardo E. Santacana (SBN: 281668)<br>esantacana@willkie.com<br>Benedict Y. Hur (SBN: 224018)<br>bhur@willkie.com<br>Simona Agnolucci (SBN: 246943)<br>sagnolucci@willkie.com<br>Lori Arakaki (SBN: 315119)<br>larakaki@willkie.com<br>WILLKIE, FARR & GALLAGHER LLP<br>One Front Street, 34th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 858-7400<br>Facsimile: (415) 858-7599<br><br>*Attorneys for Defendant Google LLC* | /s/ *Amanda Bonn*<br>Amanda Bonn (CA Bar No. 270891)<br>Mark C. Mao (CA Bar No. 236165)<br>mmao@bsfllp.com<br>Beko Reblitz-Richardson (CA Bar No. 238027)<br>brichardson@bsfllp.com<br>BOIES SCHILLER FLEXNER LLP<br>44 Montgomery Street, 41st Floor<br>San Francisco, CA 94104<br>Telephone: (415) 293 6858<br>Facsimile (415) 999 9695<br><br>James W. Lee (*pro hac vice*)<br>jlee@bsfllp.com<br>Rossana Baeza (*pro hac vice*)<br>rbaeza@bsfllp.com<br>100 SE 2nd Street, Suite 2800<br>Miami, FL 33130<br>Telephone: (305) 539-8400<br>Facsimile: (305) 539-1304<br><br>William Christopher Carmody (*pro hac vice*)<br>bcarmody@susmangodfrey.com<br>Shawn J. Rabin (*pro hac vice*)<br>srabin@susmangodfrey.com<br>Steven Shepard (*pro hac vice*)<br>sshepard@susmangodfrey.com<br>SUSMAN GODFREY L.L.P.<br>1301 Avenue of the Americas, 32nd Floor<br>New York, NY 10019<br>Telephone: (212) 336-8330<br><br>Amanda Bonn (CA Bar No. 270891)<br>abonn@susmangodfrey.com<br>SUSMAN GODFREY L.L.P.<br>1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067<br>Telephone: (310) 789-3100 |

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

## ATTESTATION

I, Amanda Bonn, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED:  November 12, 2021                                  By:    /s/ *Amanda Bonn*

                                                                                Amanda Bonn (CA Bar No. 270891)