**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
  bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
  sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
  esantacana@willkie.com
LORI C. ARAKAKI (SBN: 315119)
  larakaki@willkie.com
ARGEMIRA FLOREZ  (SBN: 331153)
  aflorez@willkie.com

Attorneys for
GOOGLE LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO

| | |
|---|---|
| ANIBAL RODRIGUEZ, et al., individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>      vs.<br><br>GOOGLE LLC,<br><br>                              Defendant. | Case No. 3:20-cv-04688-RS<br><br>**DEFENDANT GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULE**<br><br>The Honorable Richard Seeborg<br>Date:          December 9, 2021<br>Time:         1:30 p.m.<br>Place:        Courtroom 3 - 17th Floor<br><br>Action Filed:      July 14, 2020<br>Trial Date:         Not Yet Set |

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................4

II.     COUNTER-STATEMENT OF FACTS ....................................................................6

    A.      Google complied with its discovery obligations throughout the time its motions to dismiss were pending. ...................................................................................................6

    B.      Plaintiffs sought but did not receive a promise from Google to extend the case schedule six months. ....................................................................................................8

    C.      Plaintiffs had ample opportunity to take discovery and to seek an extension of the case schedule if they needed it. ....................................................................................8

    D.      Plaintiffs are seeking a schedule extension because they haven't been diligent. ........9

    E.      Google provided extensive discovery into the material issues in dispute. ................10

        1.      Google has complied with all of its document production obligations. ........10

        2.      Plaintiffs' discovery complaints are irrelevant and meritless. ......................11

        3.      Plaintiffs grossly mischaracterize non-public documents about WAA in their motion, as they have throughout this case. ...................................................13

III.    ARGUMENT .............................................................................................................14

    A.      Plaintiffs' motion misstates the legal standards; they bear the burden to show diligence, and their lack of diligence is inquiry-ending.............................................15

    B.      Plaintiffs cannot secure an extension based on their own failure to raise issues to the Court in a timely manner. .........................................................................................16

    C.      Plaintiffs are not in the dark about Google's defenses. ............................................20

    D.      Google has always made its position on extending the case schedule clear..............21

IV.     CONCLUSION..........................................................................................................21

GOOGLE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULE
Case No. 3:20-cv-04688-RS

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                   **Page(s)**

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers,*
   781 F.2d 1393 (9th Cir. 1986) ................................................................................................16

*Applied Med. Res. Corp. v. Tyco Healthcare Grp. LP,*
   No. SACV 11-1406 JVS (ANx), 2013 WL 12472050, at *3 (C.D. Cal. Jan. 14,
   2013) .......................................................................................................................................20

*Design Data Corp. v. Unigate Enter., Inc.,*
   No. 12-CV-04131-WHO, 2014 WL 4477244 (N.D. Cal. Sept. 11, 2014), *aff'd,*
   847 F.3d 1169 (9th Cir. 2017) ................................................................................................20

*Harper v. Lugbauer,*
   No. 11-CV-01306-JST, 2013 WL 3938699 (N.D. Cal. July 29, 2013), *aff'd,* 709
   F. App'x 849 (9th Cir. 2017) ..................................................................................................17

*Hill v. Goodfellow Top Grade,*
   No. 18-CV-01474-HSG, 2019 WL 2716487 (N.D. Cal. June 28, 2019)...............................15

*Jacobson v. Persolve, LLC,*
   No. 14-CV-00735-LHK, 2015 WL 2061712 (N.D. Cal. May 1, 2015) ...........................15, 16

*Johnson v. Mammoth Recreations, Inc.,*
   975 F.2d 604 (9th Cir. 1992) ..................................................................................................15

*Keck v. Alibaba.com Hong Kong Ltd.,*
   No. 17-CV-05672-BLF, 2019 WL 2029072 (N.D. Cal. May 8, 2019) ...................................16

*Krzyzanowski v. Orkin Exterminating Co.,*
   No. C 07-05362 SBA, 2009 WL 4573318, at *1 (N.D. Cal. Dec. 1, 2009) ...........................19

*Cotton, ex rel. Ngondji v. City of Eureka, Cal.,*
   No. C 08-4386 SBA, 2010 WL 2382255, at *2 (N.D. Cal. June 10, 2010) ...........................17

*Osakan v. Apple Am. Grp.,*
   , No. C 08-4722 SBA, 2010 WL 1838701, at *3–4 (N.D. Cal. May 5, 2010) .......................17

*Philadelphia Indem. Ins. Co. v. Danco Builders,*
   No. 15-CV-03945-WHO, 2017 WL 24755 (N.D. Cal. Jan. 3, 2017) ...............................15, 16

*Schaffner v. Crown Equip. Corp.,*
   No. C 09-00284 SBA, 2011 WL 6303408, at *2 (N.D. Cal. Dec. 16, 2011) ..........................17

*In re Sulfuric Acid Antitrust Litig.,*
   231 F.R.D. 331 (N.D. Ill. 2005)..............................................................................................19

*Zivkovic v. S. Cal. Edison Co.,*
   302 F.3d 1080 (9th Cir. 2002) ................................................................................15

**Other Authorities**

Fed. R. Civ. Pro. 16(b) .............................................................................................15

Fed. R. Civ. Pro. 30(b)(6) ................................................................................*Passim*

GOOGLE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULE
Case No. 3:20-cv-04688-RS

1    **I.      INTRODUCTION**

2          Plaintiffs' motion tells a story that never happened. Plaintiffs' retelling of the parties'

3    discovery efforts goes to great lengths to disguise Plaintiffs' halfhearted approach to litigating this

4    case, and the inescapable conclusion that their case suffers from a fatal legal defect, prompting

5    this last-minute plea to cast a dragnet across Google for anything that might save their claims. The

6    legal standard for this motion takes only one thing into account: Plaintiffs' diligence in attempting

7    to abide by the Court's discovery deadline. By that yardstick, Plaintiffs fall far short of meeting

8    their burden to justify a case extension.

9          Despite the *sturm und drang* about purportedly unfinished business, the most important

10   fact here is that ***no*** outstanding discovery order exists requiring Google to produce any document

11   or disclose any information that Google has not already complied with. Indeed, in lieu of pursuing

12   their right to relief before Judge Tse, Plaintiffs lay a litany of complaints at this Court's feet

13   without asking for relief in any forum for the purported deficiencies in Google's discovery

14   responses. Plaintiffs cannot acquiesce to Google's objections and positions in discovery, and then

15   turn around and accuse Google of gamesmanship near the close of discovery, seeking more time

16   for discovery they had ample opportunities to take.

17         Regardless, with adequate diligence, Google and Plaintiffs can complete discovery by the

18   February 10 discovery cut-off. Depositions can proceed later this month or in early December. So

19   can Google's Rule 30(b)(6) deposition—a deposition that Plaintiffs moved to compel in June, but

20   that they now say they're not ready to take. Nor, they say, can they sit for their own duly noticed

21   depositions unless Google agrees to various conditions concerning its document productions—an

22   issue Google will bring to Judge Tse's attention if necessary.

23         Of course, if Judge Tse issues any discovery orders before this motion becomes ripe,

24   Google will re-evaluate its position, but as of now, Google is on track to complete discovery,

25   make its witnesses available for deposition, sit for a Rule 30(b)(6) deposition, and depose

26   Plaintiffs by February 10. As Google made clear to Plaintiffs before this motion was filed, if Judge

27   Tse issues any orders that would bring Google's ability to meet the Court-ordered deadline for fact

28

**GOOGLE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULE
Case No. 3:20-cv-04688-RS**

discovery into question, it would in good faith accommodate a change to the schedule to allow the time needed to comply with any such orders. Currently, no extra time is needed, and even if Plaintiffs prevail on some of their discovery disputes, it is highly likely Google will be able to comply before discovery closes. Any extension of the case schedule should be tailored to the actual discovery that must be done, not hypothetical relief Plaintiffs hope they obtain.

As for Plaintiffs' accusation that Google offered and then reneged on a schedule extension, that is false. Contemporaneous documentation filed with this motion demonstrates that Plaintiffs tried to secure that exact promise from Google and that Google *refused* to give it, for the same reason it opposes this motion now: Google can comply with its discovery obligations by the discovery cut-off. In the run-up to this motion, Google repeatedly offered Plaintiffs a several-weeks  extension, but Plaintiffs declined the offer, arguing that nothing short of six months would do.

Google is not trying to be difficult.  But this case has been pending since mid-2020, and Plaintiffs have not carried their burden to demonstrate that they are missing any discovery that Google has either agreed to provide or been ordered to provide. Google has provided extensive discovery into the material issues in the case, including a verified interrogatory response served August 4, 2021, demonstrating that, contrary to Plaintiffs' allegations, when a user turns the Web & App Activity (WAA) toggle to "off," Google respects that decision by anonymizing GA for Firebase data in a manner that is not re-associated with the user's identity; and when WAA and a number of other privacy settings are set to "on," Google may associate GA for Firebase data with a user's Google Account, and it shows the user that it has done so.

Since serving its interrogatory response, Google completed document production for three custodians and offered deposition dates for each of them and for the Rule 30(b)(6) deposition Plaintiffs moved to compel in June. Within days of receiving that offer, Plaintiffs spun up four discovery letter briefs and this motion. This Court should see this motion for what it is and deny it.

GOOGLE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULE
Case No. 3:20-cv-04688-RS

## II.   COUNTER-STATEMENT OF FACTS

### A.   Google complied with its discovery obligations throughout the time its motions to dismiss were pending.

This case was filed on July 14, 2020. Plaintiffs asked for and received the very schedule they now seek to extend on the grounds that this extended timetable for discovery is not uncommon in complex cases. ECF No. 47 at 19. Google stipulated to that schedule, and the Court set a fact discovery cut-off of November 12, 2021.

Google first moved to dismiss in October 2020. ECF No. 48. Rather than oppose, Plaintiffs filed a (virtually identical) amended complaint, which Google moved to dismiss in December 2020. ECF No. 62. One of the central issues in that motion was whether Plaintiffs could pursue a "secret scripts" theory of the case unbounded by the specific Google Analytics ("GA") for Firebase product that they identified in their first two complaints.

While the motion was pending, per this Court's directive, Google moved ahead in discovery, producing documents and information about GA for Firebase and the Web & App Activity Control (WAA). The parties entered an ESI protocol in January 2021, ECF No. 73; that same month, Plaintiffs filed two discovery briefs seeking production of documents from regulators and a separate litigation in Arizona concerning WAA. In early February, Judge Tse granted in part and denied in part both requests. Google completed that production of over 1,000 documents on March 24 and April 2, 2021. Santacana Decl. ¶ 5. Between December 16, 2020 and February 9, 2021, Google also produced thousands of "non-custodial" documents comprising documentation about GA for Firebase and WAA. *Id.* ¶ 6.

On February 12, Google designated three ESI custodians and it began negotiating search terms with Plaintiffs. *Id.* ¶ 7.

During this time period, Google refused to produce discovery *unrelated* to GA for Firebase because it believed that the secret scripts theory was fatally deficient. *Id.* ¶ 8. This Court agreed, dismissing it in May 2021. ECF No. 109 at 11–12. Google's decision not to produce documents unrelated to GA for Firebase to enable Plaintiffs' wild goose chase for secret scripts was therefore

harmless to Plaintiffs; indeed, though they (unsuccessfully) pursued broad discovery into other Firebase products for six months, and though they were given leave to amend by this Court to re-assert a "secret scripts" theory, Plaintiffs excised that theory from their Second Amended Complaint. ECF No. 113. Whatever delay the motions to dismiss had caused in producing non-GA-for-Firebase documents is therefore of no moment here; to this day, Google refuses to produce documents related to the "secret scripts" theory, and Plaintiffs have (rightly) never moved to compel them. Santacana Decl. ¶ 8.

On May 4, 2021, Plaintiffs moved to compel Google to designate ten more custodians—a blunderbuss motion that was not limited to the issues actually raised in this case. ECF No. 105. Judge Tse denied that motion on the same day it was filed and ordered Plaintiffs to review Google's custodial ESI production before coming back for more custodians (the idea being that reviewing Google's productions would help Plaintiffs select a slate of custodians targeted to the issues in the case, not a list of ten people who Plaintiffs speculated might be relevant based on their LinkedIn profiles. ECF No. 106. Plaintiffs also moved, on June 1, to compel a Rule 30(b)(6) deposition concerning the data flow related to GA for Firebase. Judge Tse denied the motion on June 4 as premature and permitted Plaintiffs to "re-notice these topics after Google substantially completes production of the topic-related documents." ECF No. 111 ¶ 1.

Plaintiffs filed their Second Amended Complaint on June 11, 2021. In place of the secret scripts theory, Plaintiffs identified two GA for Firebase integrations that they believe are relevant to their claims: the "AdMob and Firebase" integration, and the Firebase Cloud Messaging integration. Google moved to strike or dismiss Plaintiffs' references to those products on the grounds that their allegations fell below the Rule 8 standard. As that motion was pending, Google refused to produce documents related to AdMob and Cloud Messaging, since its motion could have disposed of those products from the case. Santacana Decl. ¶ 9.

On July 8, Google began producing custodial ESI from the three designated custodians according to search terms it disclosed to Plaintiffs. *Id.* ¶ 10.

**B.      Plaintiffs sought but did not receive a promise from Google to extend the case schedule six months.**

On July 9, counsel for Plaintiffs and counsel for Google met and conferred concerning Plaintiffs' request for an extension of the case schedule. Santacana Decl. ¶ 11. Plaintiffs' counsel requested a 180-day extension on the grounds that Google was refusing to produce documents related to AdMob and Cloud Messaging. *Id.* Google's counsel agreed to relay the request to Google. *Id.* The parties discussed an extension of the case schedule again on July 22. *Id.* ¶ 12. During that call, as contemporaneous communications indicate, Google's counsel relayed to Plaintiffs' counsel that Google would not agree to a 180-day extension. *Id.* Plaintiffs had only introduced AdMob and Cloud Messaging to the case a month earlier, and there was no reason to believe such an extension would be necessary. *Id.* Nevertheless, since the time period between the filing of the Second Amended Complaint introducing AdMob and Cloud Messaging and the expected date of this Court's Order deciding the motion to dismiss added up to a few months, Google agreed to extend the fact discovery cutoff until January 11. *Id.* Further, Google agreed to consider any further extension of the case schedule after the Court ruled on the motion to dismiss. *Id.* ¶ 13.

At no time did Google promise to agree to any further extension of the case schedule. *Id.* ¶ 13. Indeed, in Plaintiffs' first draft  served August 5 of a stipulation extending the case schedule to January 11, Plaintiffs wrote: "the parties agree to negotiate a second extension as needed after the Court has issued an order on the pending motion to dismiss." *Id.* ¶ 14. In a redline served August 9, Google excised that language and replaced it with: "the parties agree to negotiate in good faith whether and to what extent a second extension may be needed after the Court has issued an order on the pending motion to dismiss." *Id.* Plaintiffs responded to that redline: "[Y]our edits are good with us," and filed Google's version. *Id.*; *see* ECF No. 126.

**C.      Plaintiffs had ample opportunity to take discovery and to seek an extension of the case schedule if they needed it.**

This Court issued its ruling on Google's motion to dismiss the Second Amended Complaint on August 18, just over two months after the first time Plaintiffs accused AdMob and Cloud Messaging. ECF No. 127. In the wake of that ruling, Plaintiffs did not raise the question of

GOOGLE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULE
Case No. 3:20-cv-04688-RS

1  a schedule extension again, despite the Court's Order. Santacana Decl. ¶ 15. Since Google

2  opposed any further extension, it likewise did not address the issue again. *Id.* ¶ 16. It did move to

3  dismiss Plaintiffs' Third Amended Complaint, but not as to AdMob and Cloud Messaging; that

4  motion is pending, but Google has not withheld documents related to Plaintiffs' claims in light of

5  the pending motion. *Id.* ¶ 17.

6      After further requests for search terms from Plaintiffs, Google continued producing

7  documents through September 8, 2021, well in advance of the then-scheduled fact discovery cut-

8  off of January 11, 2022. *Id.* ¶ 18. Google communicated that it had completed custodial ESI

9  production for Messrs. Ma, Ganem, and Monsees on September 9. *Id.* ¶ 18. In response, Plaintiffs

10  asked for a third slate of search terms to be used. *Id.* ¶ 19. Rather than provoke motion practice,

11  Google agreed to the bulk of those terms, too, and completed productions for the three custodians

12  in late October and early November. *Id.* ¶ 19. Since then, Plaintiffs asked for a *fourth* slate of

13  search terms, and Google, in the interest of compromise, again offered to complete production

14  using those terms by the end of November, leaving almost two months for depositions for those

15  three custodians. *Id.* ¶ 21.

16      Meanwhile, even though AdMob and Cloud Messaging were subject to a motion to

17  dismiss, Google made preparations to produce documents concerning those products

18  expeditiously. *Id.* ¶ 20. Google designated a custodian for each product in October and it prepared

19  to run similar search terms across their ESI .*Id.*  Given the Court's ruling on the Second Amended

20  Complaint, Google moved ahead with reviewing these documents, and it completed production of

21  the custodial ESI for Messrs. Weng and Hansen for all agreed-upon search terms on November

22  12, 2021. *Id.* Google also produced non-custodial documents relating to AdMob and Cloud

23  Messaging responsive to Plaintiffs' document requests. *Id.* ¶ 20.

24      **D.     Plaintiffs are seeking a schedule extension because they haven't been diligent.**

25      In early October, given Google's progress with document production and in light of

26  Plaintiffs' earlier motion to compel a Rule 30(b)(6) deposition concerning the data flow for GA

27  for Firebase, Google—unprompted—offered dates in early November for the Rule 30(b)(6)

28  deposition and for Messrs. Ganem, Ma, and Monsees. *Id.* ¶ 22. That e-mail, sent October 12,

- 9 -

2021, unleashed a torrent of activity from Plaintiffs. After months of inactivity, Plaintiffs: (1) served four letter briefs seeking 19 new custodians, more search terms, greater log preservation, and a privilege decision on a single document Google clawed back after it was inadvertently produced; (2) moved to continue the case schedule; and (3) refused to take the Rule 30(b)(6) deposition that they had moved to compel in June 2021. *Id.* ¶ 23–31.

Of particular relevance to Plaintiffs' claim that Google engaged in gamesmanship, it was not until October 21, sixty-four days after this Court's ruling on the motion to dismiss the Second Amended Complaint, and just two months before the close of fact discovery (that include the holidays), and only after Google announced completion of its ESI production and offered dates for depositions before the January 11 fact discovery cutoff, that Plaintiffs first re-raised the question of a case schedule extension. *Id.* ¶ 27. Since Google was on track to complete all fact discovery by January 11, it declined to agree to such an extension, but it did offer an extension "on the order of weeks" as a courtesy if Plaintiffs believed they needed a month or so extra to complete discovery on their end. *Id.* Plaintiffs declined that proposal. *Id.* There can be no basis to conclude that Plaintiffs were confused about Google's position on a case schedule extension. As Google explained repeatedly, more time begets more discovery, whether it's merited or not. From Google's perspective, it has provided appropriate discovery and complied with all discovery orders, so no more time should be needed.

### E.   Google provided extensive discovery into the material issues in dispute.

#### 1.   Google has complied with all of its document production obligations.

Google has made twenty-three separate document productions. Santacana Decl. ¶ 32.. By February 19, 2021, it had produced several thousand documents detailing the documentation relating to GA for Firebase and Google's disclosures related to WAA and its privacy policies. *Id.* ¶ 6. Google also made several major custodial productions using search terms proposed by Plaintiffs on July 8, August 30, and September 8, 2021, from the files of Messrs. Ma, Ganem, and Monsees, totaling several thousand more documents. *Id.* ¶¶ 10, 18. In response to those productions, Plaintiffs proposed another slate of search terms, and Google ran the bulk of those as

well, prompting a production of almost 1,000 more custodial documents in October. *Id.* ¶ 19.

Google also ran more search terms for AdMob custodian Ed Weng and Cloud Messaging

custodian Todd Hansen, generating another production of 531 documents on November 12, 2021.

*Id.* ¶ 20.

Finally, Plaintiffs proposed yet another slate of search terms aimed specifically at AdMob

and Cloud Messaging, and the parties reached compromise on the bulk of those as well. *Id.* ¶ 21.

Google is reviewing those search term hits now and will complete production of the custodial

documents on a rolling basis well in advance of the discovery cut-off.

*Id.* ¶ .

In all, Google used hundreds of search terms to target relevant and responsive documents.

In Google and defense counsel's experience, this slate of search terms is remarkably long, well

targeted, and highly likely to reach almost any document of relevance in the custodians' files.

There are no outstanding discovery orders with which Google has not yet complied. *Id.* ¶

33. Plaintiffs have asked Judge Tse to order additional custodians, and they plan to ask Judge Tse

to order more expansive search terms, but as of today, no such order has been issued, and Google

will not presume to pre-judge the outcome. Nevertheless, Google plans to update the Court with

an estimate of when it can complete any further document discovery ordered by Judge Tse.

### 2.   Plaintiffs' discovery complaints are irrelevant and meritless.

Google has complied with all of Judge Tse's orders.  Plaintiffs are moving for a

continuance based on their prediction that Judge Tse will award them expansive new discovery.

But that prediction may or may not come true, and the analysis of this Court should hew solely to

the discovery issues that have actually been presented to the Court.

For example, Plaintiffs have neither served nor filed any discovery motion concerning

Google's privilege log, the Rule 30(b)(6) deposition negotiations, the production of source code,

or for further document production with respect to any particular Request for Production.[1]

---

[1] In a draft CMC statement served on November 10, Plaintiffs indicated for the first time their
intention to file more discovery motions, including with respect to source code and Google's
privilege log. As of today, Google is unaware of the basis for those motions, the parties have not

- 11 -

Nevertheless, each of these complaints is wholly meritless:

- Plaintiffs are in possession of Google's privilege log, which covers all documents withheld for privilege to date. Google served it by the date the parties agreed on, on November 2 (the parties had agreed on the end of October, which fell on a weekend, and subsequently agreed on November 2). *Id.* ¶ 34.

- Google has offered the Rule 30(b)(6) deposition Plaintiffs moved to compel in June, and it offered to provide a deposition in response to a more fulsome deposition notice. Google only asked that Plaintiffs serve that notice in a timely manner so that individuals need not testify twice as a result of piecemeal deposition notices. Plaintiffs ultimately agreed to that approach, and they plan to serve their comprehensive notice shortly. Google will then designate deponents for depositions in December and January.

- Google has never agreed to produce source code. *Id.* ¶ 35. But, if the goal is to understand Google's technology, Google has: produced non-public documentation about the functionality of GA for Firebase; served a detailed interrogatory response detailing how the product works and how it does, in fact, respond to a user's WAA setting; and offered a Rule 30(b)(6) deposition notice so Plaintiffs can have answered any lingering questions about how the product works. *Id.* ¶ 36. In this case, there is no compelling need to produce source code, and Plaintiffs have never moved to compel it, making their complaint on this score irrelevant, too.

- Though Plaintiffs complain that "there are also several RFP-specific discovery disputes," which the motion does not specify, Google is not aware of any RFP-specific dispute that Plaintiffs intend to bring to Judge Tse.

The remaining complaints about discovery in the Motion relate to pending or about-to-be-pending disputes before Judge Tse. Those complaints are also meritless, for the reasons discussed in Google's portions of the letter briefs on each one. The custodian letter brief has already been filed, ECF No. 155, and Judge Tse ordered supplemental briefing, ECF No. 157. The log preservation brief has also been filed. ECF No. 167. The letter brief concerning the "clawback issue" and the search-term letter brief will likely be filed next week. In the latter, Google will oppose Plaintiffs' inappropriate request that Google search every document in each custodians' possession relating to the product on which they primarily work, *e.g.*, searching WAA for Dave Monsees or "Cloud Messaging" for Todd Hansen. Such an approach is unlikely to yield further

---

had the required videoconference to discuss them, and Plaintiffs have not served their portion of any such motion on Google.

GOOGLE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULE
Case No. 3:20-cv-04688-RS

responsive documents given the extensive and well-targeted search terms Google has already run, but it will yield massive numbers of documents for Google to review, since Dave Monsees is likely to have as many documents with the term "WAA" in them as this Court is likely to have documents with the term "complaint" in them. It's a needle-in-a-haystack request, and it is wholly disproportionate to the issues in dispute.

### 3. Plaintiffs grossly mischaracterize non-public documents about WAA in their motion, as they have throughout this case.

Plaintiffs have identified documents in which Google product managers and engineers discuss whether different aspects of WAA not at issue here are confusing to users. Plaintiffs have steadfastly relied on these documents (many of which came from other litigations) in their complaints and in briefs to this Court to try and drum up a negative impression of Google and of the WAA control. These attempts are disingenuous. This Court can ignore these documents completely, since they have nothing to do with the legal question presented by this motion. But because Plaintiffs insisted on providing them to the Court and discussing them at length, Google provides a response here concerning each document for the Court's benefit, should it be curious.

Mao **Exhibit A** is an internal discussion about a newspaper article. Plaintiffs' motion says the e-mail relates to an "article concerning ***Google's data collection while WAA is turned off***." Mot. at 6:22 (original emphasis). That is false. The article and the discussion are about functionality when the ***Location History*** control is turned "off" while the WAA control is turned "on." The Location History/WAA question is far afield of this case and would require a mini-trial just to analogize it to Plaintiffs' claims here.

**Exhibit B** is an old chestnut of Plaintiffs', but they deeply misunderstand it; The engineer opined that the feature would increase joinability risks, *i.e.*, the risk that someone at Google could accidentally or purposefully re-associate pseudonymous data with a user's identity against the user's wishes. This is also evident from **Exhibit E**, relating to the same issue; in it, the original question is reproduced—a request for "mitigations" to prevent inadvertently creating joinability risks. Exhibits B and E are evidence that Mr. Ganem and his team are focused on *mitigating* joinability risks, not exploiting them.

1    In **Exhibit C**, a senior Google employee who does not work on WAA raises questions

2  about what happens when WAA is turned off, knowing that Google can still receive some types of

3  user data in some form. Mr. Monsees explains that when WAA is off, the data is "never associated

4  with an identity," so the employee's concerns are unfounded. Far from a smoking gun for

5  Plaintiffs, this is, if anything, more evidence that Google honors user privacy controls. **Exhibit D**

6  is more of the same e-mail thread.

7    **Exhibit F** has nothing to do with this case. It is a performance self-evaluation, and

8  Plaintiffs appear to rely on it to discuss an irrelevant Google effort regarding user consents and

9  controls. The portions of Exhibit F on which Plaintiffs rely demonstrate the efforts Google has

10  made to ensure that users consent to the collection of their data, and to honor their decisions when

11  they opt out of such collection or usage.

12  **III.  ARGUMENT**

13    There is no unfinished business in this case that cannot be completed by the fact discovery

14  cut-off. Google is wrapping up its outstanding document productions now, it has offered

15  deposition dates for itself and its witnesses, and it has noticed Plaintiffs' depositions. All those

16  depositions can happen in the next three months without any rushing or jamming of anyone. As

17  this case stands today, Plaintiffs have not secured any relief from this Court that would justify

18  expanding the case schedule. And in any case, to the extent they do secure such relief in the

19  future, it should be Google's motion to expand the case schedule to allow it time to comply with

20  discovery orders, not Plaintiffs', since it is Google who is best positioned to estimate how much

21  time it needs to fulfill its discovery obligations.

22    The Motion provides a single basis for extending the fact discovery cut-off: that Plaintiffs

23  wish to take more discovery than can be done in the remaining three months of the discovery

24  period. But their estimate is based purely on speculation about how Judge Tse might rule on late-

25  breaking motions to compel on discovery disputes Plaintiffs have known about for months or even

26  since the start of this case; and most of those motions have not even been served on Google, much

27  less filed. It wasn't until two days ago that Plaintiffs indicated for the first time their intention to

28

GOOGLE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULE
Case No. 3:20-cv-04688-RS

1    move to compel Google to produce source code, even though Google long ago refused to produce

2    it. Plaintiffs' complaints about Google's preservation of user data likewise is an issue that has

3    stagnated since the Rule 26 conference; Plaintiffs have always known that Google would not

4    preserve hundreds of billions of entries of raw event-level data for this case and chose to remain

5    silent about it until now. The list goes on. What matters for now is that Google is in compliance

6    with all outstanding discovery orders. Plaintiffs do not claim otherwise. Countless courts in this

7    precise situation have denied leave to exceed the discovery cut-off. This Court should, too.

8       **A.    Plaintiffs' motion misstates the legal standards; they bear the burden to show diligence, and their lack of diligence is inquiry-ending.**

9

10      Plaintiffs' request for a stay of the fact discovery cut-off is subject to the Rule 16(b) good

11   cause standard, which "primarily considers the diligence of the party seeking the amendment."

12   *Hill v. Goodfellow Top Grade*, No. 18-CV-01474-HSG, 2019 WL 2716487, at *2 (N.D. Cal. June

13   28, 2019). Plaintiffs bear the "burden to show that [they] acted diligently to comply with the

14   Court's deadline but [were] unable to comply because of the development of matters which could

15   not have been reasonably foreseen or anticipated at the time of the Rule

16   16 scheduling conference." *Jacobson v. Persolve, LLC*, No. 14-CV-00735-LHK, 2015 WL

17   2061712, at *3 (N.D. Cal. May 1, 2015). "[C]arelessness is not compatible with a finding of

18   diligence and offers no reason for a grant of relief." *Johnson v. Mammoth Recreations, Inc.*, 975

19   F.2d 604, 609 (9th Cir. 1992). "Where the moving party has not been diligent, the inquiry ends,

20   and the motion should be denied." *Hill v. Goodfellow Top* Grade, 2019 WL 2716487, at *2

21   (quoting *Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002)).

22      "Although the existence or degree of prejudice to [Google] might supply additional

23   reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking

24   modification." *Johnson v. Mammoth Recreations*, 975 F.2d at 609. Nevertheless, contrary to the

25   assertions in the motion, the "notion [that a litigant] will not be prejudiced if it has to conduct

26   additional discovery is meritless." *Philadelphia Indem. Ins. Co. v. Danco Builders*, No. 15-CV-

27   03945-WHO, 2017 WL 24755, at *4 (N.D. Cal. Jan. 3, 2017). "[T]he need for a party to conduct

28   supplemental discovery or to consider a new line of legal argument are classic sources of

- 15 -

prejudice that have regularly proven sufficient to defeat a motion for leave to amend" under the same good cause standard, and courts frequently combine the good cause analysis on such motions. *Id.*; *see also Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398–99 (9th Cir. 1986) (holding no good cause to amend pleadings and enlarge discovery period because "allowing amendment would prejudice the [defendant] because of the necessity for further discovery.").

### B.  Plaintiffs cannot secure an extension based on their own failure to raise issues to the Court in a timely manner.

Where a litigant moves to extend the discovery cut-off, the first question this Court asks is why they weren't able to complete discovery within the Court-ordered deadline. Where courts find that a litigant could have completed discovery within the deadline through reasonable diligence, the motion fails. *See, e.g.*, *Keck v. Alibaba.com Hong Kong Ltd.*, No. 17-CV-05672-BLF, 2019 WL 2029072, at *1 (N.D. Cal. May 8, 2019) (denying motion to amend scheduling order to extend discovery four and a half months because Magistrate Judge's discovery orders left room to diligently complete discovery within existing deadlines); *Philadelphia*, 2017 WL 24755, at *4 (finding no good cause for amendment and schedule extension where plaintiff failed to raise issues it knew about for a year and a half, until nearly the close of discovery because "new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action"); *Jacobson*, 2015 WL 2061712, at *4 (finding no good cause where plaintiff was "aware of her potential alter-ego and veil-piercing theories" months before the deadline to amend pleadings, and waited "nearly three months" after the defendant's document production to move the Court).

Here, Plaintiffs point to a single reason for why, in their view, they haven't been able to complete discovery: because Google has produced "hardly any documents" and has not finished producing them.[2] Mot. at 11. As discussed above, Google will complete document production

---

[2] Plaintiffs say that Google's production here is inconsistent with the number of documents Google has produced in a different case dealing with different issues before different judges, and where the very same Plaintiffs' counsel have engaged in regular discovery motion practice when they have wanted to pursue ripe discovery disputes. The argument makes no sense. There is no

1    with ample time left in discovery for depositions. The one-month extension this Court granted

2    already is the same extension Google offered Plaintiffs as a courtesy in the run-up to this motion,

3    but they refused that offer. As for documents Plaintiffs believe Google should have but has not

4    produced, there are no such documents. And unless and until Judge Tse orders otherwise, there

5    won't be. If Google is ordered to produce significantly more documents, it will revisit the case

6    schedule with Plaintiffs..

7            For purposes of *this* motion, there can be no question that Plaintiffs have not been diligent.

8    The issues Plaintiffs complain about are issues Plaintiffs chose not to present to the Court until

9    now, near the close of discovery, despite knowing about them for months. That is textbook lack of

10   diligence. Where a plaintiff has "waited to serve discovery requests and to attempt to resolve

11   discovery disputes until the last minute," courts do not hesitate to find a lack of adequate

12   diligence. *Harper v. Lugbauer*, No. 11-CV-01306-JST, 2013 WL 3938699, at *2 (N.D. Cal. July

13   29, 2013), *aff'd*, 709 F. App'x 849 (9th Cir. 2017). In *Harper*, the discovery period had been open

14   for a year and was about to close when the plaintiff sought to enlarge the discovery period and

15   seek discovery relief. The Court found a lack of diligence there, just as it should here.

16           As for Plaintiffs' supposed discovery disputes, "[t]o the extent that Plaintiff[s] legitimately

17   believed that [Google] was obstructing [their] efforts to obtain relevant discovery, it was

18   incumbent upon Plaintiff[s] to *expeditiously* seek relief from the Court to ensure that [they] would

19   be sufficiently prepared for trial within the time-frame set by the Court." *Schaffner v. Crown

20   Equip. Corp.*, No. C 09-00284 SBA, 2011 WL 6303408, at *2 (N.D. Cal. Dec. 16, 2011); *see also

21   Cotton, ex rel. Ngondji v. City of Eureka, Cal.*, No. C 08-4386 SBA, 2010 WL 2382255, at *2

22   (N.D. Cal. June 10, 2010) (refusing to extend discovery where, "[g]iven the alleged significance

23   of the decedent medical records, it was incumbent upon Defendants to have sought this

24   information at the outset of the case, rather than waiting until the close of discovery"). *Osakan v.*

25

26   rational reason for the same Plaintiffs' counsel to have secured hundreds of thousands of
     documents in one case and tens of thousands in another from the same defendant, other than that
27   the cases are different. Given the case-specific nature of this motion, the Court should disregard
     Plaintiffs' argument.
28

GOOGLE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULE
Case No. 3:20-cv-04688-RS

*Apple Am. Grp.*,, No. C 08-4722 SBA, 2010 WL 1838701, at *3–4 (N.D. Cal. May 5, 2010)

(refusing to substitute new plaintiff and expand discovery period because "Plaintiff should

promptly have taken appropriate steps to resolve the dispute and/or seek to join or substitute

himself with an appropriate class representative or representatives. Instead, Plaintiff persisted in

claiming that the Settlement Agreement is irrelevant and waited until the discovery cut-off and eve

of trial to join additional representatives in the event he is found to lack standing."). Here, they did

not do that:

- Google began producing custodial ESI in July and completed it on September 8 (before Plaintiffs demanded more search terms). There is no reason why Plaintiffs could not have moved the Court to compel more custodians then, but they didn't.

- Google informed Plaintiffs at the outset of the case that it would not preserve hundreds of billions of raw event-level GA for Firebase data because it was unnecessary and doing so would be unreasonably burdensome and disproportionate to the needs of the case. They chose to wait to file a motion to compel on this issue until now, a year later.

- Google has worked with Plaintiffs to run as many of their search terms as possible, resulting in a massive list of search terms targeted at every conceivable relevant issue in the case. Google ran those terms, but it has steadfastly refused since March to run broad product-name terms like "WAA" against the custodial files of people who primarily work on the product. Yet Plaintiffs did not move to compel Google to use such broad search terms until now.

- Google has never agreed to produce source code in this case. To date, Plaintiffs have never moved to compel it, though they announced two days ago that they *might*.

- Plaintiffs claim there are "RFP-specific" disputes on which they *may* move to compel, but they don't identify any RFP in particular. Since Google does not know what they intend on this score, it cannot respond, other than to say that its position on Plaintiffs' RFPs has been known for a very long time. Recently, Plaintiffs, apparently realizing they had let their earlier RFP sets stagnate, served another set of document requests that closely mirrored already-existing document requests. Google timely objected to this effort to duplicate discovery. To date, Plaintiffs have neither served nor filed any motion to compel on this as-yet undisclosed discovery dispute.

This Court should be skeptical, as others are, of motions to compel filed at the close of

discovery where the "plaintiffs knew from the outset what [the defendant]'s position was, and they

had the option to do something about it," but made a "conscious decision . . . not to bring the

GOOGLE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULE
Case No. 3:20-cv-04688-RS

matter to the court's attention." *In re Sulfuric Acid Antitrust Litig.,* 231 F.R.D. 331, 337 (N.D. Ill. 2005). As the *Sulfuric Acid* court put it, "by consciously deciding not to file a motion to compel, the plaintiffs acquiesced" to the defendant's position. *Id.* Just as there, here, Plaintiffs "cannot be heard to complain now about the conscious decision they made not to bring the matter to the court's attention." *Id.* To grant this motion would be to "reward[ Plaintiffs] for the kind of purposeful delay exemplified by the[m] in this case." *Id.*; *see also Krzyzanowski v. Orkin Exterminating Co.*, No. C 07-05362 SBA, 2009 WL 4573318, at *1 (N.D. Cal. Dec. 1, 2009) ("To the extent that Plaintiffs believed that Defendants were interfering with the discovery process, thereby impeding their ability to file a motion for class certification, it was incumbent upon Plaintiffs to seek relief from the assigned discovery magistrate—as opposed to waiting until after the close of discovery to seek yet another continuance of the trial date.").

The only other issues raised by Plaintiffs fall into the different category of issues that are highly unlikely to affect the case schedule:

- Plaintiffs' motion to compel a clawed back document applies to a single document.

- Any motion Plaintiffs may have concerning Google's November 2 privilege log can be expeditiously presented to the Court for resolution. Experience dictates it is highly unlikely any privilege log-related ruling will imperil the case schedule.

- There is no "deposition issue." The parties have worked out a framework for proceeding with depositions in a manner that aims to ensure individuals need only testify once, even if they are designated as Rule 30(b)(6) deponents.

Finally, Plaintiffs claim they were diligent in this case because, near the start of the discovery period in the March through May time period, they filed four discovery letter briefs with Judge Tse. Mot. at 8 n.1 (citing ECF Nos. 74, 75, 105, 110). But of those, the only issue on which Plaintiffs won was a Court-ordered production of documents from a litigation in Arizona dealing with WAA, and Google completed that production on April 20, 2021. Since then, Plaintiffs have not sought, nor obtained, any relief from Judge Tse. This motion and the most recent discovery letter briefs were borne of time anxiety, once Plaintiffs realized that Google had reached the end of its document production and was prepared to schedule depositions. That is no basis for

extending the case schedule.

**C.      Plaintiffs are not in the dark about Google's defenses.**

The Motion asserts that it is "axiomatic that where the pleadings are unsettled, good cause generally exists for a modification of the scheduling order." Mot. at 14:10-11. There is no such rule. The only authority Plaintiffs cite for that proposition is a decision in which the Court found that new discovery at the end of the discovery period revealing new theories of the case justified a late amendment to the pleadings and extension of the discovery period. *Applied Med. Res. Corp. v. Tyco Healthcare Grp. LP*, No. SACV 11-1406 JVS (ANx), 2013 WL 12472050, at *3 (C.D. Cal. Jan. 14, 2013) (finding good cause to extend discovery where "new allegations [were] based on facts obtained and confirmed during discovery which took place after the scheduling order's deadline for amended pleadings"). Nothing in that case stands for the proposition for which Plaintiffs cite it, and there can be no question that Plaintiffs did not discover anything new during discovery that would justify extending the discovery schedule. To the contrary, Plaintiffs' motion is based on a desire to take additional discovery on theories of the case that were known or should have been known to them when the case was filed. *See Design Data Corp. v. Unigate Enter., Inc.*, No. 12-CV-04131-WHO, 2014 WL 4477244, at *3 (N.D. Cal. Sept. 11, 2014), *aff'd*, 847 F.3d 1169 (9th Cir. 2017) (finding lack of diligence where moving party "had knowledge of the majority of the facts it claims supports its motion" a year earlier).

Nevertheless, to address this concern, Google offered to provide Plaintiffs a list of its affirmative defenses, which will not surprise Plaintiffs. Santacana Decl. ¶ 27. Plaintiffs did not accept that offer. And regardless, Plaintiffs should wait to see Google's Answer before assuming it will require *six months* of extra discovery. Google predicts it will require *none*; the parties are well versed in their disagreements over the facts and the law in this case, having litigated it for a year and a half.

Plaintiffs also fault Google for continuing to move to dismiss. The same could be said of Plaintiffs, who have delayed resolution of the pleadings by switching theories after every motion. Plaintiffs chose not to oppose Google's first motion. After the second motion, Plaintiffs dropped their "secret scripts" and Wiretap Act claims and added new AdMob and Cloud Messaging

theories and a new breach of contract claim. After the third motion, Plaintiffs dropped their original contract claim and supplanted it with a new one, along with a CIPA claim that contains the same fatal deficiency as the prior iteration. The only reason the pleadings aren't settled is that Plaintiffs failed to plead all their claims and theories from the start and have amended contrary to the Court's directives.

### D. Google has always made its position on extending the case schedule clear.

The motion claims that Google executed a bait and switch, agreeing to a case extension with a promise for a larger one once the Court ruled on the motion to dismiss the Second Amended Complaint. As discussed *supra*, § II.B., that's not true. Google made clear by phone and in a redlined draft of the joint stipulation extending the case schedule two months that it would consider any further extension based on the situation then present. The Court ruled on that motion to dismiss five days after the stipulation was filed, on August 18, 2021. Plaintiffs did not raise the issue of extending the case schedule again until over two months later, and only because Google attempted to move the discovery ball forward by voluntarily offering deposition dates for three percipient witnesses and the Rule 30(b)(6) deposition.

The irony here is that Google, the defendant, is not asking for a case extension, it has offered depositions of its witnesses, it has offered a Rule 30(b)(6) deposition, and it has noticed Plaintiffs' depositions, all in a timely manner. Plaintiffs, who usually would prefer a shorter case schedule, are the ones seeking delay, even as they accuse Google of delaying. To the extent Plaintiffs are jammed now, it's their fault, not Google's.

## IV.   **CONCLUSION**

Because Plaintiffs were not diligent during the discovery period in raising the issues they now say justify extending the case schedule, this motion should be denied. Denial is also supported by the fact that extending the case schedule would prejudice Google, though such prejudice is not necessary to deny the motion.

1    Dated:  November 12, 2021                    Respectfully submitted,

2                                                 WILLKIE FARR & GALLAGHER LLP

3

4                                                 By:    */s/ Eduardo E. Santacana*
                                                         Eduardo E. Santacana

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULE
Case No. 3:20-cv-04688-RS