| | |
|---|---|
| Mark C. Mao, CA Bar No. 236165 | William Christopher Carmody |
| Beko Reblitz-Richardson, CA Bar No. 238027 | (admitted *pro hac vice*) |
| **BOIES SCHILLER FLEXNER LLP** | Shawn J. Rabin (admitted *pro hac vice*) |
| 44 Montgomery St., 41st Floor | Steven M. Shepard (admitted *pro hac vice*) |
| San Francisco, CA 94104 | Alexander P. Frawley |
| Tel.: (415) 293-6800 | (admitted *pro hac vice*) |
| mmao@bsfllp.com | **SUSMAN GODFREY L.L.P.** |
| brichardson@bsfllp.com | 1301 Avenue of the Americas, 32nd Floor |
| | New York, NY 10019 |
| James Lee (admitted *pro hac vice*) | Tel.: (212) 336-8330 |
| **BOIES SCHILLER FLEXNER LLP** | bcarmody@susmangodfrey.com |
| 100 SE Second Street, Suite 2800 | srabin@susmangodfrey.com |
| Miami, FL 33131 | sshepard@susmangodfrey.com |
| Tel.: (305) 357-8434 | afrawley@susmangodfrey.com |
| jlee@bsfllp.com | |
| | John A. Yanchunis (admitted *pro hac vice*) |
| Amanda K. Bonn, CA Bar No. 270891 | Ryan J. McGee (admitted *pro hac vice*) |
| **SUSMAN GODFREY L.L.P** | Michael F. Ram (admitted *pro hac vice*) |
| 1900 Avenue of the Stars, Suite 1400 | Ra O. Amen (admitted *pro hac vice*) |
| Los Angeles, CA 90067 | **MORGAN & MORGAN** |
| Tel: (310) 789-3100 | 201 N. Franklin Street, 7th Floor |
| Fax: (310) 789-3150 | Tampa, FL 33602 |
| abonn@susmangodfrey.com | Tel.: (813) 223-5505 |
| | jyanchunis@forthepeople.com |
| *Attorneys for Plaintiffs* | rmcgee@forthepeople.com |
| | mram@forthepeople.com |
| | ramen@forthepeople.com |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, JULIEANNA MUNIZ, ELIZA CAMBAY, SAL CATALDO, EMIR GOENAGA, JULIAN SANTIAGO, HAROLD NYANJOM, KELLIE NYANJOM, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No.: 3:20-cv-04688<br><br>**DECLARATION OF JAMES LEE IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULE**<br><br>Magistrate Judge Alex G. Tse<br>Courtroom A – 15th Floor<br>Date: December 9, 2021<br>Time: 1:30 p.m. |

**DECLARATION OF JAMES LEE**

I, James Lee, declare as follows.

1. I am a partner with the law firm of Boies Schiller Flexner LLP, counsel for Plaintiffs in this matter. I am an attorney at law duly licensed to practice in Florida. I have personal knowledge of the matters set forth herein and am competent to testify.

2. Since the filing of the initial complaint on July 14, 2020, Plaintiffs have made their best efforts to push discovery forward in this case. But receiving information from Google has been difficult and slow. At every step in this litigation, Plaintiffs have had to navigate the following complex process: (1) they have had to sleuth out how Google's technology works, (2) they have had to litigate whether specific ways in which Google collects and uses Plaintiffs' WAA-off information are within the scope of this case, and (3) they have had to predict with specificity what documents, information, and data Google might possess that could prove their claims and argue with Google about whether that information exists and whether it will be produced. As demonstrated by the more than fifty formal discovery letters that the parties have exchanged in this case on various issues, that process takes time and now has resulted in the clear need to bring a litany of discovery disputes before the Court. Given the slow pace of discovery in this case, Plaintiffs have repeatedly raised the need to extend the discovery schedule in the case with Google.

3. The need to extend the discovery schedule in this case first emerged in July 2021 during the pendency of Google's motion to dismiss Plaintiffs' Second Amended Complaint. At the time, Google refused to produce broad categories of documents that went beyond Google Analytics, particularly those related to AdMob and Cloud Messaging, claiming that it required the pleadings to be closed before committing to such production. Google refused to produce those documents while its motion was pending since a ruling in its favor on that motion might have disposed of those products from the case and prevented the need for discovery at all. To accommodate the delay caused by this refusal, Plaintiffs met and conferred with Google and asked for a six-month extension of the existing discovery and expert disclosure deadlines. Google agreed to a preliminary modification of the schedule until after a ruling on its second motion to dismiss. Additionally, Google represented it was amenable to extending the discovery deadline further, but

1

wanted to wait for the ruling to appropriately tailor the length of an additional extension, which would depend in part on whether the AdMob and Cloud Messaging products remained as part of the case. The implication was that, if Plaintiffs prevailed and production needed to be made regarding those products, a further extension would be agreed upon and entered into. In the meantime, the parties submitted a joint requested modification of the existing scheduling order that sought to push the fact discovery deadline sixty days to January 11, 2022 and also reset the expert disclosure deadline to the same date—moving it from its prior December 13, 2021 date. Dkt. 125. The joint requested modification also acknowledged that the "parties agree to negotiate in good faith whether and to what extent a second extension may be needed after the Court has issued an order on the pending motion to dismiss." *Id.* Ultimately, on August 18, 2021, Plaintiffs prevailed on keeping AdMob and Cloud Messaging in the case, meaning that discovery into those products was necessary and needed to begin.

4. Following that order, while the parties worked on further settling the pleadings and gearing up for the expanded discovery, Plaintiffs believed in good faith that Google would negotiate a further extension of the schedule as it had previously promised to do, especially now that the AdMob and Cloud Messaging discovery was in play. Plaintiffs also filed a Third Amended Complaint and Google filed a motion to dismiss that complaint, further emphasizing the need for a scheduling extension.

5. Plaintiffs approached Google in October regarding the need to finally negotiate and enter into a further extension of the schedule given the increased scope of the case and the still unsettled pleadings. In light of Google's prior representations, Plaintiffs were surprised when Google refused to meaningfully negotiate and denied any further extension. In fact, Google did not acquiesce at all until a few days before Plaintiffs made clear that they would be filing the instant motion. It was only then that Google offered an extension "on the order of weeks" as a professional courtesy and it was clear to Plaintiffs that the offer was made only in an effort to entice Plaintiffs not to file the currently pending motion. During these discussions, at no point did Google ever offer to provide Plaintiffs with a list of Google's affirmative defenses. Tellingly, there is no written confirmation of such an offer ever being made, which is entirely inconsistent with

2

how the parties have handled offers of compromise following meet and confer discussions. A true and accurate copy of the only email providing any extension offer is attached as **Exhibit A.** It is an email from Benedict Hur sent at 4:07 PM on the evening Plaintiffs filed their motion which merely offered to provide "a short courtesy extension of the fact discovery deadline" in an effort to "obviate motion practice." Nowhere does it mention offering any "list" of affirmative defenses. And Plaintiffs do not believe Google would have or could have provided a list of affirmative defenses. Google recently asked for a stipulation on the motion to dismiss certain claims in the Third Amended Complaint and took the position that Google may not even be ready to answer Plaintiffs' allegations. If Google had made such an offer to provide a list of affirmative defenses (which it did not) Plaintiffs would have accepted (and still would accept) any offer by Google to provide a list of affirmative defenses without further conditions. While disclosure of Google's defenses at this late stage would not obviate the need for an extension of deadlines requested in Plaintiffs' pending motion, it would certainly help to move the ball forward.  As it stands, however, Plaintiffs remain entirely in the dark regarding Google's defenses and have no idea which allegations in any complaint Google will admit or deny. When Plaintiffs do have that information, they intend to serve targeted contention interrogatories regarding the basis for Google's responses to their allegations.

6. Google also impeded Plaintiffs' ability to ask the Court for more custodians at an earlier date. Plaintiffs previously raised the custodian issue before Magistrate Judge Tse, who on May 4, 2021, ordered the parties to proceed with the production of the initial three Google-selected custodians, allow Plaintiffs to review those documents, and instructed the parties to "then meet and confer . . . regarding any further custodians Plaintiffs believe are justified in this case." Dkt. 106. Google began making those required productions in July. On August 11, 2021, Plaintiffs sent Google a letter identifying necessary custodians from Google's productions. Google did not respond to Plaintiffs' letter and Plaintiffs followed up on August 23, 2021. Google then told Plaintiffs that Google was not yet finished with custodial productions and that "I think it makes the most sense for Plaintiffs to evaluate those productions first, so we can have a productive

3

discussion about what is truly unique and non-duplicative." A true and correct copy of that email from Google's counsel is attached as **Exhibit B**.

7. After Google represented that it was nearing completion of its custodial productions, on September 13, 2021 Plaintiffs followed up to ask Google for its position on producing documents for the custodians that Plaintiffs had identified in early August. Google did not respond. Plaintiffs then sent another letter to Google on September 15, 2021, identifying additional custodians that it wished to add based on information from Google's later productions. Google never responded to that letter either. It took an October draft of a joint letter brief for Google to finally acknowledge the dispute, which Google then sat on for weeks even though it had known since August that Plaintiffs were seeking additional custodians and their basis for seeking most of those individuals. After promising a "a productive discussion" about custodians, Google refused to respond to any of Plaintiffs' informal meet-and-confer attempts and then refused to add a single custodian from Plaintiffs' list.

8. Google has refused to consider any additional custodian beyond the initial three for Google Analytics, Firebase SDK, and WAA and two later-identified and self-selected custodians, one for each of AdMob and Cloud Messaging. Google produced almost nothing on AdMob and Cloud Messaging until this Motion was pending, with its first custodial production regarding these materials being made on November 12, 2021. And Plaintiffs have had zero say in selecting any of the custodians, which is improper given that AdMob is one of Google's largest revenue generators on mobile. Five custodians in a case of this complexity and size is plainly inadequate. By way of comparison, in the similar *Brown v. Google* case, Magistrate Judge Van Keulen ordered Google to produce documents for 42 custodians.

9. Google's claim that it has produced ample documents in this case is also belied by the facts demonstrating that Google has only produced 15,171 documents including only 7,821 custodial documents from five Google-selected custodians. Much of Google's overall production is from publicly-available documents as well as duplicates. Again, in the similar *Brown* case, which is operating under nearly identical discovery deadlines, Google has produced more than 50

times the number of documents than it has here. This is partly because Google actually produced documents and information relating to its ads business in *Brown*.

10. Contrary to its representations, Google is also still currently withholding documents related to claims in the Third Amended Complaint pending its motion to dismiss. Google has, for example, objected to Plaintiffs' request for documents concerning revenues attributable to Real Time Bidding, despite acknowledging that data collected through GA for Firebase is used for Real-Time Bidding. Dkt. 145 at 5. Google has also not yet agreed to produce any information relating to Google's profits from its collection and use of WAA-off data.

11. Despite Google's efforts to minimize the ongoing disputes, much is still going on and things are still moving slowly. Plaintiffs are preparing joint discovery briefs and continuing to negotiate with Google on the following issues: (1) source code; (2) data logs and sources for AdMob and Cloud Messaging; (3) depositions of class representatives; (4) production of regulatory documents; and (5) ensuring that documents have been produced responsive to all RFPs. The parties are about to file a brief on a privilege issue relating to Google claw-back of a "Privacy Design Document" created by and for Google engineers. Plaintiffs first sent over their portion of that joint letter brief to Google almost a month ago. It has taken quite some time for the parties to get that filing before the Court, but if the Court finds the document not privileged, it is likely to affect a number of documents that Google has withheld. The search term dispute—also inaccurately described by Google—is also ripe for resolution. And, contrary to Google's representations, both parties have acknowledged the need to discuss RFP-specific issues when some of the macro discovery disputes are resolved. It is up to the Court, not Google, to determine whether any of these disputes are "meritless" as Google presumptively claims. The 30(b)(6) discovery issue was finally resolved under the pressure of this Motion when an agreement was reached on Wednesday, November 17, 2021. A true and correct copy of that email from Google's counsel is attached as **Exhibit C**. That agreement paves the way for depositions to finally begin in earnest in the new year after Google identifies its designees. Other areas of dispute have only recently started to progress under pressure of this Motion, and Google has only now agreed to

several weekly meet and confers on various discovery disputes and has provided its portion of several letter briefs for Judge Tse.

12. All of the documents produced by Google that Plaintiffs have identified are directly relevant to this dispute as they ground and support Plaintiffs' reasonable requests for further discovery. It is up to a judge and jury to determine which party's view of the documents is correct. And they shouldn't be ignored at this juncture. More documents have trickled in since Plaintiffs filed this motion that further substantiate Plaintiffs' claims. A true and accurate copy of one such document produced by Google starting with Bates Number GOOG-RDGZ-00061293 is attached as **Exhibit D**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 19th day of November, 2021, at Miami, Florida.

*/s/ James Lee*