December 3, 2021

**Submitted via ECF**

Magistrate Judge Alex G. Tse
San Francisco Courthouse
Courtroom A - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    Joint Letter Brief re: Google Privilege Clawback Dispute
               *Rodriguez v. Google LLC*, Case No. 3:20-cv-04688-RS (N.D. Cal.)

Dear Magistrate Judge Tse:

      Plaintiffs and Google LLC ("Google") submit this joint letter brief regarding a dispute about Google's decision to claw back a document previously produced to Plaintiffs. Plaintiffs request that the Court order Google to provide two versions of the document at issue for *in camera* inspection: (i) a completely unredacted version of the document Google has now clawed back in its entirety, and (ii) the version Google initially produced to Plaintiffs, which included some redactions. Both versions should be highlighted to show the portion of the document that Plaintiffs initially brought to Google's attention. Plaintiffs complied with Google's clawback request, so Plaintiffs briefed this submission without the document, as required by the Protective Order. Ex. A includes Plaintiffs' proposed order, and Ex. B includes Google's proposed order.

## PLAINTIFFS' STATEMENT

Plaintiffs respectfully ask the court to perform an *in camera* review of a technical document that Google has improperly clawed back. Following review, Plaintiffs request an Order both requiring Google to re-produce the document and requiring Google to produce any similar "Privacy Design Documents" that Google has so-far withheld on the grounds of privilege.

This clawback dispute arose in connection with the parties' pending briefing before Chief Judge Seeborg on Google's latest motion to dismiss ("MTD"). Google's MTD accused Plaintiffs of alleging facts concerning how Google's technology works in "bad faith." Dkt. 139 at 6, 9. Plaintiffs then asked to meet-and-confer to discuss what Plaintiffs have learned in discovery about how Google intercepts outgoing user→app server communications. *See* Dkt. 146-6 at 3. Plaintiffs left two calls under the impression that the parties agree that Google captures communications between users and third-party app servers while those communications are in transit. Yet Google's Reply Brief again accused Plaintiffs of alleging facts relating to this perceived agreement in bad faith. Dkt. 145 at 2. To resolve these serious accusations, Plaintiffs sent Google an email seeking another meet-and-confer, and included a screenshot of a Google-produced technical document. Dkt. 146-12 at 2. But rather than engage with Plaintiffs, Google immediately sent Plaintiffs an email clawing back the *entire* document (notwithstanding that the document had *already* been redacted for privilege). Dkt. 146-6 at 3.

Google is improperly using a "privilege" designation to hide a technical document that contains factual descriptions about how its technology works. Google's sole motivation for clawing it back amounts to clear litigation gamesmanship: it wishes to hide the document from Plaintiffs and the Court because it undermines Google's claim that Plaintiffs alleged facts in bad faith (and instead calls into question whether Google had an evidentiary basis for making such representations to the Court). The document should be re-produced. The attorney-client privilege is "narrowly and strictly construed" and the proponent bears the burden of proving that it applies. *Shopify Inc. v. Express Mobile, Inc.*, 2020 WL 4732334, at *2 (N.D. Cal. Aug. 14, 2020). The privilege "protects confidential disclosures made by a client to an attorney in order to obtain legal advice…as well as an attorney's advice in response to such disclosures." *Id.* (quotation marks and citation omitted). "When a communication may relate to both legal and business advice, the proponent of the privilege must make a 'clear showing' that the 'primary purpose' of the communication was securing legal advice." *Dolby Labs. Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 873 (N.D. Cal. 2019).

The document at issue here is a "Privacy Design Document" concerning Google Analytics for Firebase. Google's independent auditors submit routine reports to the government describing the nature and function of such "Privacy Design Documents" ("PDDs"), which fatally undermines Google's claim of privilege here.[1] According to such public sources, PDDs are technical documents created by and for Google engineers in the ordinary course of business. *Id.* at 16.

---

[1] Independent Assessor's Report on Google Inc's Privacy Program, Promontory Financial Group, LLC ("Independent Assessor's Report"), June 24, 2016, https://www.ftc.gov/system/files/documents/foia_requests/2016_Google_Privacy_Assessment%28C-4336%29.pdf (last accessed Dec. 2, 2021).

1

Google's product engineers are required to draft PDDs in connection with new product launches or changes to existing products in the ordinary course of business as part of Google's efforts to comply with the 2011 FTC Consent Decree. *Id.* PDDs are factual, technical documents that require product engineers to answer "a structured and consistent set of questions about the product's data lifecycle, covering data collection, use, notice/control, sharing, storage/access, and deletion/retention." *Id.* at 16. These are not legal documents. Below, Google refers to the document as a "memorandum" to divert the Court's attention from the fact that the document is a technical PDD. But (as it must) Google concedes that the document's actual title is "Google Analytics for Firebase *Privacy Design Doc*." Santaguida Decl. ¶ 4 (emphasis added).

After being drafted by Google engineers, PDDs are then reviewed by members of Google's Privacy Working Group ("PWG")—comprised of "engineers (software, privacy, and security), program and product managers, and engineering managers." Independent Assessor's Report at 13. The PWG is charged with reviewing "every Google product launch" and providing "*technical* privacy expertise." *Id.* at 13, 16 (emphasis added). The PWG "provides oversight of the privacy review process for product launches," as well as "engineering support for privacy-related products, guidance for privacy software-related improvements, and assistance performing privacy code audits." *Id.* at 13. Notably, the PWG is separate from the "Privacy Legal Group." *Id.* at 20 n.4. Upon receiving a PDDs, the assigned PWG member may approve the documentation or raise any "privacy concerns," including by requesting a "Privacy Code Audit," which is a "detailed, targeted review of a product's underlying code by Google software engineers." *Id.* at 16.

Google cannot maintain its privilege assertion for several reasons. *First*, PDDs are not confidential communications between client and counsel. They are technical documents created by non-lawyers (the product engineering team) for review by another set of non-lawyers (the PWG engineering team). *Second*, the "primary purpose" of the documents is not to seek legal advice, but rather to secure "*technical* privacy expertise" and feedback from the PWG on the product's technical design. *Third*, even if at some point, a lawyer later reviewed a PDD, that would not render the underlying PDD itself privileged.

Whether lawyers later reviewed this PDD is irrelevant. Google has not "submit[ted] particularized evidence establishing that the specific purpose of any of the documents was to obtain advice only of counsel with copies sent to others only secondarily." *In re CV Therapeutics, Inc. Sec. Litig.*, 2006 WL 2585038, at *3 (N.D. Cal. Aug. 30, 2006). To the contrary, publicly available sources show that PDDs are primarily reviewed and used by Google engineers. "A document that was not privileged to begin with may not be made so by subsequent delivery to the attorney." *Doe 2 v. Super. Ct.*, 132 Cal. App. 4th 1504, 1522 (2005). That this PDD wound up in the files of a Google engineer undercuts any assertion by Google that the document's primary purpose was to obtain legal advice.

Equally irrelevant is whether the template used to create PDDs contains "a set of questions" drafted by counsel. Santaguida Decl. ¶ 6. To credit Google's argument would allow companies to shield as privileged an employee's HR complaint merely because counsel played some role in crafting the template form. That is not the law. Counsel's "involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a transaction." *Matter of Fischel*, 557 F.2d 209, 212 (9th Cir. 1977). At best, the Declaration supports the

2

redaction of attorney comments within a PDD, which is what Google initially (and correctly) did. Nothing in the Declaration supports withholding the entire document. Rather, the Declaration does not even dispute that PDDs are drafted for and used by *engineers* in the PWG, as explained above, and even concedes that PDDs "serve . . . business purposes." Santaguida Decl. ¶ 16.

Google wrongly asserts that *in camera* review is prohibited, citing Cal. Rule of Evidence 915. As a threshold matter, "[i]t is not clear that Section 915 . . . applies to federal courts," *Shenzhenshi v. Rearden*, 2017 WL 8948739, at *7 (N.D. Cal. Nov. 15, 2017). In any event, California law expressly permits *in camera* review when, as here, the dispute involves a clawed back document. *See* Cal. Code. Civ. P. 2031.285(d). Google's reliance on this case's ESI Order, Paragraph 13, is also misguided. The provision merely clarifies that a receiving party must immediately destroy any clawed back document, rather than unilaterally submit the document to the Court. Dkt. 70 ¶ 13. Plaintiffs never understood this provision to completely bar *in camera review*. To the extent it is so interpreted, Plaintiffs ask the Court to strike it. *See CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009) ("[D]istrict courts have inherent authority to grant a motion to modify a protective order where good cause is shown"). Google should not be allowed to shield important technical documents based on an interpretation of Paragraph 13 that was never made clear to Plaintiffs. In any event, the public information about PDDs, as well as the Santaguida Declaration, confirm that PDDs are not privileged in their entirety. Even without *in camera* review, the Court should order Google to produce a redacted version to Plaintiffs.

## GOOGLE'S STATEMENT

**The GA for Firebase product Memorandum is absolutely privileged because it is an attorney-client communication.** Plaintiffs ask this Court to ignore well-settled privilege law and violate the sanctity of the attorney-client relationship based purely on the fact that the Memorandum at issue contains facts and technical information. That position cannot withstand scrutiny. The subject of this dispute is a Memorandum concerning GA for Firebase.[2] The document was created by corporate privacy counsel for Google as a set of questions posed to employees requesting that those employees communicate certain aspects of GA for Firebase to counsel as part of ongoing communications between counsel and the product team relating to legal advice concerning GA for Firebase's compliance with privacy laws and regulations. Decl. of Bryson Santaguida ("Santaguida Decl.") ¶¶ 4, 6–14, 16. Those facts are enough to render the Memorandum absolutely privileged. And Google's inadvertent disclosure of the document does not alter this conclusion. This is thus a textbook case for application of the attorney-client privilege.

Under California law[3], the party claiming the attorney client-privilege "has the burden of

---

[2] The Memorandum was produced with Bates labels GOOG-RDGZ-00032746 to -32767, and is referred to in Google's Nov. 2, 2021 privilege log with a ".C" suffix to indicate it was clawed back.
[3] "California state law governs application of the attorney-client privilege," where, as here, the federal court is sitting in "diversity." *AdTrader, Inc. v. Google LLC*, 405 F. Supp. 3d 862, 864 (N.D. Cal. 2019); Fed. R. Evid. 501; *see also* Compl. ¶¶ 27, 241–323 (asserting diversity jurisdiction). As such, Plaintiffs' citations to federal cases are inapposite. In any case, both state and federal courts consider similar factors when analyzing privilege. *See, e.g.*, *Fed. Trade Comm'n v. Qualcomm Inc.*, 2018 WL 2317835, at *3 (N.D. Cal. May 22, 2018).

establishing the . . . communication [was] made in the course of an attorney-client relationship." *Costco Wholesale Corp. v. Superior Ct.*, 47 Cal. 4th 725, 733 (2009). Once a party establishes those "preliminary facts," "the communication is presumed to have been made in confidence and the opponent of the claim . . . has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id.*; Cal. Evid. Code § 917(a). Such a prima facie showing is "usually ma[de] . . . via declarations." *Citizens for Ceres v. Superior Ct.*, 217 Cal. App. 4th 889, 911 (2013) (citing Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (Rutter Group 2012) ¶ 8:192). And only a minimal showing is required. *See, e.g., Wellpoint Health Networks, Inc. v. Superior Ct.*, 59 Cal. App. 4th 110, 123 (1997) (concession that party to the communication was an attorney hired for investigation is sufficient to shift burden to party opposing the claim to establish the privilege does not apply).

Here, Google's declaration establishes that the GA for Firebase Memorandum was made in the course of an attorney-client relationship for at least four reasons. <u>First</u>, the Memorandum was prepared at the request of counsel. Santaguida Decl. ¶¶ 4, 6–8. Specifically, counsel requested that non-lawyer employees responsible for the GA for Firebase product provide information on its features and functions. *Id.* ¶¶ 6–8. <u>Second</u>, the GA for Firebase Memorandum was transmitted to counsel. *Id.* ¶¶ 8, 10–11, 13–14, 16. <u>Third</u>, counsel discussed the Memorandum with Google employees in back-and-forth discussions that resulted in changes to the Memorandum itself. *Id.* <u>Fourth</u>, counsel rendered legal advice concerning GA for Firebase's compliance with privacy laws and regulations based on the information in the Memorandum. *Id.* ¶¶ 4, 11–12.

Because the Memorandum was created to, and did, facilitate obtaining legal advice, it is presumptively confidential. *See Costco*, 47 Cal. 4th at 733. Plaintiffs respond that the document was shared with certain non-legal employees. That does not undermine its confidentiality. Indeed, courts "recognize[] that in a corporate setting, the attorney-client privilege may extend to communications involving middle- and lower-level employees." *Zurich Am. Ins. Co. v. Superior Ct.*, 155 Cal. App. 4th 1485, 1497–98 (2007). This is because "[i]n the corporate context, . . . it will frequently be . . . [m]iddle-level—and indeed lower-level—employees . . . [that] have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential [legal] difficulties." *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 391 (1981)). Here, it is the engineers who understand how GA for Firebase works, and those are the individuals among whom the document was shared, apart from counsel.

Plaintiffs' only remaining attack is that the document contains technical information. But that ignores black letter law: "the attorney-client privilege … bars discovery of the communication ***irrespective of whether it includes unprivileged material***." *Costco*, 47 Cal.4th at 734 (emph. added). This is so even if the information is otherwise publicly-available because "the actual fact of the transmission [is what] merits protection," not the underlying facts. *Id.* That makes sense: the purpose of the privilege is to engender forthcoming communications between clients and their counsel. *See, e.g., Mitchell v. Superior Ct.*, 37 Cal. 3d 591, 599 (1984).

Next, because the "privilege is absolute," "disclosure may not be ordered, without regard to relevance, necessity or any particular circumstances peculiar to the case." *Costco*, 47 Cal. 4th at 741. Accordingly, Plaintiffs' assertion that the Memorandum is relevant to Google's pending MTD is beside the point. And besides, Google has produced extensive documentation concerning

4

the functionality of GA for Firebase, including a comprehensive interrogatory response, and it has offered depositions of key custodians, as well as a Rule 30(b)(6) designee on the functionality at issue in this case. In addition, in an effort to resolve this dispute, Google served a supplemental interrogatory response that relayed the factual matter in the Memorandum outside the context of a privileged document. There could be no prejudice to Plaintiffs even if that were a factor (it is not).

Plaintiffs claim without evidence that this document is part of a category of documents called "Privacy Design Docs" that Google somehow shares with outside parties such as regulators. That is false. Santaguida Decl. ¶ 15. Google does not share these documents with anyone; it maintains such documents as privileged. *Id.* And the authority Plaintiffs cite does not undermine this fact. Similarly, Plaintiffs' claim that "Privacy Design Docs" serve a business or technical purpose is meritless. Google's engineers use "Privacy Design Docs" to engage in cross-functional conversations with counsel for the "principal purpose" of facilitating counsel rendering legal advice. *Id.* ¶¶ 16-19. In any case, the Court's analysis should focus on *this* Memorandum, not others that may bear the same title but that may have followed a different method or sequence of preparation. That Google reported to the FTC that "Privacy Design Docs" exist or that engineers review it does not change this analysis. Google is not concealing that this Memorandum exists, but its contents are unquestionably privileged, as established by the Declaration of Bryson Santaguida.

***In Camera* Review Is Prohibited**. Ignoring that it is ***prohibited*** by this Court's order and California law, Plaintiffs seek *in camera* review of the Memorandum at issue. Section 13 of the Stipulated ESI Order contains a "restriction against presenting the [clawed-back] information to the Court for a determination of the claim." ECF No. 70 § 13. That is dispositive on Plaintiffs' request and the Court need go no further. But even if it did, California law makes clear that *in camera* review is prohibited: under Evidence Code section 915, "a court may not order disclosure of a communication claimed to be privileged to allow a ruling on the claim." *Costco*, 47 Cal. 4th at 739. Plaintiffs argue that section 915 does not apply because it is procedural. But that is wrong: as "the majority of California district courts"—including this one—have determined, section 915 is "'part and parcel of [California]'s entire body of privilege law,'" and is thus "an important subset of attorney-client privilege, as opposed to a peripheral procedural rule." *Laub v. Horbaczewski*, 2019 WL 1744846, at *6 (C.D. Cal. Feb. 8, 2019) (rejeting *Shenzhenshi*, cited by Plaintiffs, as a minority view); *see also Fourth Dimension Software v. Der Touristik Deutschland GMBh*, No. 19-cv-05561-CRB (AGT), 2021 WL 4170693, at *1 n.1 (N.D. Cal. Sept. 14, 2021). Plaintiffs paradoxically urge this court to apply Cal. Code. Civ. P. 2031.285(d), which is surely procedural, and in any event is separately inapplicable because it is preempted by this Court's ESI Order which governs the same topic (i.e., procedures for producing ESI). Further, given the clear claim of privilege outlined above, there is no basis for *in camera* review; Plaintiffs have fallen far short of any conceivable bar that could be set to rebut the presumption of confidentiality before *in camera* review would be justified. *See Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 353 (9th Cir. 2014) (more than "unfounded suspicion" is required).

For these reasons, Plaintiffs' motion to compel Google to produce the clawed-back Memorandum and all similar memoranda, and for *in camera* review, should be denied.

Respectfully,

WILLKIE FARR & GALLAGHER, LLP

By: */s/ Eduardo E. Santacana*
Eduardo E. Santacana (SBN: 281668)
esantacana@willkie.com
Benedict Y. Hur (SBN: 224018)
bhur@willkie.com
Simona Agnolucci (SBN: 246943)
sagnolucci@willkie.com
Lori Arakaki (SBN: 315119)
larakaki@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400
Facsimile: (415) 858-7599

*Attorneys for Defendant Google LLC*

SUSMAN GODFREY LLP

*/s/ Amanda Bonn*
Amanda Bonn (CA Bar No. 270891)
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

## ATTESTATION

I, Amanda Bonn, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED:  December 3, 2021              By:   */s/ Amanda Bonn*