Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE Second Street, Suite 2800
Miami, FL 33131
Tel.: (305) 357-8434
jlee@bsfllp.com

Amanda K. Bonn, CA Bar No. 270891
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
abonn@susmangodfrey.com

*Attorneys for Plaintiffs*

William Christopher Carmody
(admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander P. Frawley
(admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas,
32nd Floor
New York, NY  10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
Michael F. Ram, CA Bar No. 238027
Ra O. Amen (admitted *pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com
ramen@forthepeople.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

ANIBAL RODRIGUEZ, JULIEANNA MUNIZ, ELIZA CAMBAY, SAL CATALDO, EMIR GOENAGA, JULIAN SANTIAGO, HAROLD NYANJOM, KELLIE NYANJOM, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

GOOGLE LLC,

Defendant.

Case No.:  3:20-cv-04688

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULE**

Magistrate Judge Alex G. Tse
Courtroom A – 15th Floor
Date: December 9, 2021
Time: 1:30 p.m.

i

1

## TABLE OF CONTENTS

2   TABLE OF CONTENTS ...................................................................................................i

3   TABLE OF AUTHORITIES ............................................................................................ii

4   INTRODUCTION ...........................................................................................................1

5   FACTUAL BACKGROUND ..........................................................................................1

6   ARGUMENT  ..................................................................................................................6

7          I.      Plaintiffs Diligently Pursued Discovery. ................................................6

8          II.     Google's Argument that Plaintiffs Were Not Diligent Is Belied By Its
                   Admission that Its Actions Slowed Discovery. .......................................8
9
           III.    Discovery Cannot Be Completed Before the Fact Discovery Deadline
10                 Expires. ..................................................................................................11

11  CONCLUSION .............................................................................................................13

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cotton, ex rel. Ngondji v. City of Eureka, Cal.*,
   No. C 08-4386 SBA, 2010 WL 2382255 (N.D. Cal. June 10, 2010) ...................................11

*Harper v. Lugbauer*,
   No. 11-CV-01306-JST, 2013 WL 3938699 (N.D. Cal. July 29, 2013)...............................6, 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. C-07-5944-SC, 2014 WL 5462496 (N.D. Cal. Oct. 23, 2014)......................................1, 6

*In re Sulfuric Acid Antitrust Litig.*,
   231 F.R.D. 331 (N.D. Ill. 2005) ...........................................................................................11

*Infanzon v. Allstate Ins. Co.*,
   335 F.R.D. 305 (C.D. Cal. 2020).............................................................................................9

*Jacobson v. Persolve, LLC*,
   No. 14-CV-00735-LHK, 2015 WL 2061712 (N.D. Cal. May 1, 2015)...................................7

*Keck v. Alibaba.com Hong Kong Ltd.*,
   No. 17-CV-05672-BLF, 2019 WL 2029072 (N.D. Cal. May 8, 2019)....................................7

*Krzyzanowski v. Orkin Exterminating Co.*,
   No. C 07-05362 SBA, 2009 WL 4573318 (N.D. Cal. Dec. 1, 2009)....................................11

*Lytel v. Simpson*,
   No. C 05-1937 JF (PVT), 2006 WL 8459764 (N.D. Cal. June 23, 2006)...............................1

*Osakan v. Apple Am. Grp*,
   No. C 08-4722 SBA, 2010 WL 1838701 (N.D. Cal. May 5, 2010)......................................11

*Philadelphia Indem. Ins. Co. v. Danco Builders*,
   No. 15-CV-03945-WHO, 2017 WL 24755 (N.D. Cal. Jan. 3, 2017)......................................7

*Sali v. Corona Reg'l Med. Ctr.*,
   884 F.3d 1218 (9th Cir. 2018) .............................................................................................4, 9

*Schaffer v. Crown Equip.*
   Corp., No. C 09-00284 SBA, 2011 WL 6303408 (N.D. Cal. Dec. 16, 2011)........................11

*Shi v. Cent. Arizona Coll.*,
   No. 08-80131-RMW(HRL), 2008 WL 4665985 (N.D. Cal. Oct. 21, 2008).........................1, 5

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................ 1, 5

iii

**INTRODUCTION**

The rules of civil procedure designed discovery to be a tool for both parties to explore the actual merits of a case. Google instead seeks to weaponize discovery to foreclose Plaintiffs' investigation before Google has even answered a single allegation in the complaint, identified a meaningful number of custodians, or produced a modicum of documents relative to the complexities of this case.  Google's gamesmanship does violence to the liberal standards enshrined in Federal Rule of Civil Procedure 26 that "permits discovery of any nonprivileged matter relevant to any party's claim or defense that appears *reasonably calculated* to lead to admissible evidence." *Shi v. Cent. Arizona Coll*., No. 08-80131-RMW(HRL), 2008 WL 4665985, at *1 (N.D. Cal. Oct. 21, 2008) (emphasis in original); *see also Lytel v. Simpson*, No. C 05-1937 JF (PVT), 2006 WL 8459764, at *1 (N.D. Cal. June 23, 2006) ("Courts follow a policy favoring discovery to facilitate proper litigation through a liberal construction of the discovery rules."). It further ignores the general "good cause" standard for obtaining an extension of the schedule—a standard Google admits is easily established so long as the moving party was diligent. Dkt. 168 at 5 (admitting that diligence is the test of whether Plaintiffs should get their extension); *see also In re Cathode Ray Tube (CRT) Antitrust Litig*., No. C-07-5944-SC, 2014 WL 5462496, at *3 (N.D. Cal. Oct. 23, 2014).

Because the pleadings are not settled, Plaintiffs have been diligent, and the need for more time is the result of the slow pace at which Google has conducted discovery, an extension of the deadlines should be granted.

**FACTUAL BACKGROUND**

Plaintiffs dispute the "counter-statement" of facts put forth by Google in its opposition. Dkt. 168 at 7-15. Although Plaintiffs' statement of facts is outlined in its own motion, Dkt. 153 at 8-14, Plaintiffs find it necessary to respond to a number of Google's misstatements.

Google's opposition plays up that Google never agreed to a "six-month" extension of the fact-discovery deadline. Dkt. 168 at 9-10. That much is obvious; this motion wouldn't be necessary if it had. More importantly, Google admits that it only abated an earlier dispute by agreeing to

PLAINTIFFS' REPLY ISO MOTION FOR RELIEF FROM
CASE MANAGEMENT SCHEDULE                          CASE NO. 3:20-CV-04688

1   negotiate a "further extension of the case schedule after the Court ruled on the motion to dismiss"

2   the Second Amended Complaint. *Id.* at 9. That motion to dismiss sought to strike from the

3   Complaint Plaintiffs' allegations about AdMob and Cloud Messaging, Dkt. 115 at 9, and Google's

4   opposition brief admits that, while its motion was pending, "Google refused to produce documents

5   related to AdMob and Cloud Messaging, since its motion could have disposed of those products

6   from the case," Dkt. 168 at 7. The Court denied Google's motion, ruling instead that Plaintiffs'

7   allegations "expand[] the scope of discovery," Dkt. 127 at 8—thus echoing the parties' stipulated

8   agreement that "the scope of discovery may change depending on the Court's ruling on Google's

9   pending motion to dismiss," Dkt. 125 at 2. Yet Google **has now** refused to negotiate further,

10  denying outright any meaningful extension despite Plaintiffs' Second Amended Complaint

11  expanding the scope of discovery, and despite a subsequent Third Amended Complaint (and a

12  motion to dismiss it).

13      Worse yet, Google's admission that Plaintiff sought an extension of the current deadlines

14  in both July and October contradicts its argument that Plaintiffs should have earlier moved for "an

15  extension of the case schedule if they needed it." Dkt. 168 at 9 & 11. Plaintiffs believed in good

16  faith that Google would negotiate a further extension of the schedule as it had previously promised,

17  especially once the Court made clear that the AdMob and Cloud Messaging documents were in

18  play and while the motion to dismiss the Third Amended Complaint was pending. Lee Decl. ¶ 4.

19  Google's assertion that it offered an extension "on the order of weeks" as a courtesy was made just

20  before Plaintiffs had promised to file the instant motion and was made only in an effort to entice

21  Plaintiffs not to file. Lee Decl. ¶ 5, Ex. A. In any event, an extension of a few weeks would not

22  cure any prejudice to Plaintiff caused by Google's delays.

23      The parties' dispute regarding additional Google custodians is another example of how

24  Google has strung Plaintiffs along in an improper effort to run out the clock. Google in their

25  opposition brief accuses Plaintiffs of "textbook lack of diligence," claiming "[t]here is no reason

26  why Plaintiffs could not have moved the Court to compel more custodians [in September]."

27  Dkt. 168 at 19. The reason Plaintiffs did not move sooner is that Google forced Plaintiffs to wait.

28

2

1    After reviewing Google's first batch of custodial productions made in July, on August 11th

2    Plaintiffs sent Google a letter identifying additional custodians. Lee Decl.  ¶ 6. When Google did

3    not respond, Plaintiffs followed up on August 23rd. *Id.* Google then told Plaintiffs that Google was

4    not yet finished with custodial productions and that "I think it makes the most sense for Plaintiffs

5    to evaluate those productions first, so we can have a productive discussion about what is truly

6    unique and non-duplicative." Lee Decl.  ¶ 6, Ex. B. After Google represented that it was nearing

7    completion of its custodial productions, on September 13th, Plaintiffs followed up to ask Google

8    for its position on producing documents for the custodians that Plaintiffs had identified in early

9    August. Lee Decl.  ¶ 7. Google did not respond. *Id.* Plaintiffs then sent another letter on September

10    15th identifying additional custodians that it wished to add based on information from Google's

11    later productions. *Id.* Google never responded to that letter, either. *Id.* It took an October draft of

12    a joint letter brief for Google to finally acknowledge the dispute, which Google then sat on for

13    weeks even though it had known since August that Plaintiffs were seeking additional custodians

14    and their basis for seeking most of those individuals. *Id.* After promising a "a productive

15    discussion" about custodians, Google refused to respond to any of Plaintiffs' informal meet-and-

16    confer attempts and then refused to add a single custodian from Plaintiffs' list. *Id.*

17    Google's suggestion that it offered to provide Plaintiffs with a list of Google's affirmative

18    defenses in advance of this Motion is just as incredible. *See* Dkt. 168-1, ¶ 27 (stating that as part

19    of the offer for a few-week extension that Google would "provide a list of its affirmative defenses

20    to Plaintiffs before its Answer is due"). That offer was never made and was never rejected by

21    Plaintiffs.[1] Lee Decl. ¶ 5.  Indeed, Plaintiffs would have accepted (and still would accept) any offer

22    by Google to provide a list of affirmative defenses without further conditions, *id.*, which even by

23    Mr. Santacana's version of events appears not to be the case since the apparent offer was made in

---

[1] One would expect that had Google actually made this offer, it would have reduced to writing
when it later wrote to confirm its "courtesy" extension offer. Lee Decl. ¶ 5 & Ex A. It did not do
so. *Id.*  Moreover, Plaintiffs do not believe Google would have or could have provided a list of
affirmative defenses. *Id.* Google recently asked for a stipulation on the motion to dismiss certain
claims in the Third Amended Complaint and took the position that Google may not even be ready
to answer Plaintiffs' allegations. *Id.*

3

1    the context of forcing Plaintiffs to accept an extension "on the order of weeks," Dkt. 168-1, ¶ 27.

2    Contrary to the statements made by Google, Plaintiffs remain entirely in the dark regarding

3    Google's affirmative defenses. Lee Decl. ¶ 5. But the affirmative defenses alone do not solve the

4    problem. Before discovery can be closed, Plaintiffs need to know from Google which allegations

5    in ***Plaintiffs'*** complaint Google admits and denies. Once they know this information, Plaintiffs

6    intend to serve targeted contention interrogatories regarding the basis for Google's responses. Lee

7    Decl. ¶ 5.

8         Google has refused to consider any additional custodians beyond the initial three for

9    Google Analytics, Firebase SDK, and WAA and two much-later-identified and self-selected

10   custodians, one for each of AdMob and Cloud Messaging, after those products were firmly

11   cemented in the case. Lee Decl. ¶ 8 & Ex. B. Google produced almost nothing on AdMob and

12   Cloud Messaging until this Motion was pending, with its first custodial production regarding these

13   materials being made on November 12, 2021. *Id.* And Plaintiffs have had zero say in selecting any

14   of those custodians, which is improper given that AdMob is one of Google's largest revenue

15   generators on mobile. *Id.* That is not completion of discovery in a "cooperative" fashion as

16   envisioned by the Rules. *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1219-20 (9th Cir. 2018).

17   Google's claim that it has produced ample documents in this case is also belied by the facts

18   demonstrating that Google has only produced 15,171 documents including only 7,821 custodial

19   documents from five Google-selected custodians and that much of Google's overall production is

20   admittedly from publicly-available documents as well as duplicates. Lee Decl. ¶ 9. Again, as a

21   reminder, in the similar *Brown v. Google* case, which is operating under nearly identical discovery

22   deadlines, Google has produced ***more than 50 times*** the number of documents than it has here. *Id.*

23   This is partly because Google actually produced documents and information relating to its ads

24   business in *Brown*. *Id.*

25        Equally misleading is Google's argument that it "has not withheld documents related to

26   Plaintiffs' claims in light of the pending motion [to dismiss.]" Dkt. 168 at 11. Google has, for

27   example, objected to Plaintiffs' request for documents concerning revenues attributable to Real

28                                                 4

---

PLAINTIFFS' REPLY ISO MOTION FOR RELIEF FROM
CASE MANAGEMENT SCHEDULE                          CASE NO. 3:20-CV-04688

1    Time Bidding in mobile ads, despite acknowledging that data collected through GA for Firebase

2    is used for Real-Time Bidding. Dkt. 145 at 9; *see also* Lee Decl. ¶ 10. Indeed, Google has not yet

3    agreed to produce any information relating to Google's profits from its collection and use of WAA-

4    off data. Lee Decl. ¶ 10. Google's claims about agreeing to Plaintiffs' proposed search terms is

5    also untrue, Dkt. 168 at 9, which will become clear once Google finally gets around to completing

6    its portion of that letter brief.

7          Plaintiffs are also preparing joint discovery briefs and continuing to negotiate with Google

8    on the following issues: (1) source code; (2) data logs and sources for AdMob and Cloud

9    Messaging; (3) depositions of class representatives; (4) production of regulatory documents; and

10   (5) ensuring that documents have been produced responsive to all RFPs. Lee Decl. ¶ 11. It is up

11   to the Court, not Google, to determine whether any of these disputes are "meritless" as Google

12   presumptively claims. *Id.*

13         Finally, Google attempts to usurp the judge and jury's role by claiming in a self-serving

14   manner that the Court should "ignore" bad documents for Google that Google produced on the

15   grounds that Google believes that "[p]laintiffs grossly mischaracterize" them. *Id.* at 14. The

16   documents identified by Plaintiffs are directly relevant to this dispute as they ground and support

17   Plaintiffs' reasonable requests for further discovery. Lee Decl. ¶ 12. More documents that have

18   trickled in since Plaintiffs filed this motion further substantiate Plaintiffs' claims. For example,

19   one document from a Google employee reviewing WAA disclosures laments that: "I've spent more

20   than the average person looking at this and I'm still not getting it." *Id.*, Ex. D.

21         In any event, the Rule 26 discovery standard is not as limited as Google would like,

22   allowing for the discovery of "any nonprivileged matter relevant to any party's claim or defense

23   that appears *reasonably calculated* to lead to admissible evidence." *Shi*, 2008 WL 4665985, at *1.

24   Regardless of whether Google's interpretation or Plaintiffs' interpretation ends up being correct in

25   the eyes of the jury, Plaintiffs' view is certainly relevant to whether further discovery is warranted.

26

27

28

PLAINTIFFS' REPLY ISO MOTION FOR RELIEF FROM
CASE MANAGEMENT SCHEDULE                          CASE NO. 3:20-CV-04688

1

**ARGUMENT**

2
    Contrary to Google's contentions, Dkt. 168 at 16, Plaintiffs have not misstated the legal

3
standard and have always noted that, to obtain an extension, they first must show that they have

4
diligently pursued discovery and that good cause exists to extend the discovery deadline. Dkt. 153

5
at 14 (citing *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 5462496, at *9). Google

6
does not actually dispute that Plaintiffs have diligently pursued discovery. *See generally* Dkt. 168.

7
Indeed, in the agreed upon preliminary extension sought by both parties just three months ago,

8
Google expressly stated that "the parties have been working to complete discovery in this case

9
pursuant to the Court's deadlines." Dkt. 125. Only now has Google suddenly changed its tune.

**I.    Plaintiffs Diligently Pursued Discovery.**

10
    As Plaintiffs stated in their moving papers, they have gone to great lengths to obtain

11
necessary discovery in this highly technical case that has required Plaintiffs' counsel to spend

12
much time sleuthing out how Google's technology works. Unlike the facts in the *Harper* case that

13
Google relies heavily upon where plaintiff "waited to serve discovery requests" "until the last

14
minute," Dkt. 168 at 18, Plaintiffs' counsel began serving discovery requests in this matter less

15
than three months after filing Plaintiffs' initial complaint and just days after Google filed its first

16
motion to dismiss. Dkt. 153-1, ¶ 2; *see also Harper v. Lugbauer*, No. 11-CV-01306-JST, 2013 WL

17
3938699, at *2 (N.D. Cal. July 29, 2013). Plaintiffs have continued to serve requests for relevant

18
documents, interrogatories, and requests for admission. 153-1, ¶ 2. Plaintiffs noticed a 30(b)(6)

19
deposition in March 2021, and they have wanted to move full-steam-ahead on the discovery

20
process but have been filibustered by Google at every turn. *Id.* ¶¶ 3 & 23. Plaintiffs have engaged

21
in hundreds of hours of letter exchanges, totaling more than fifty letters, and meet and confers with

22
Google on discovery deficiencies, often waiting many weeks before receiving any substantive

23
response from Google (if any response is received at all). Lee Decl. ¶ 2. And Plaintiffs have

24
repeatedly brought discovery issues to this Court's attention, both through the summer and through

25
the fall. Dkts. 74, 75, 105, 110, 155, 163, 167.

26

27

28
                                                6

1    Because Google cannot dispute Plaintiffs' efforts, it attempts to cast Plaintiffs as seeking

2  an extension to fish for new claims. But the cases cited by Google hurt rather than help it. Most of

3  them, including *Philadelphia Indem. Ins. Co. v. Danco Builders* and *Jacobson* address plaintiff

4  requests to amend the pleadings to add new claims that had long been known to Plaintiffs. No. 15-

5  CV-03945-WHO, 2017 WL 24755, at *1 (N.D. Cal. Jan. 3, 2017); *see also Jacobson v. Persolve,*

6  *LLC*, No. 14-CV-00735-LHK, 2015 WL 2061712, at *4 (N.D. Cal. May 1, 2015). That is

7  obviously not the case here where Plaintiffs do not seek to push the schedule to add new claims to

8  the case, merely to seek discovery on already-pending claims. *Philadelphia* is distinguishable for

9  the wholly separate reason that in denying the motion to amend and extend the schedule, the Court

10  relied heavily on the fact that it had already "repeatedly extended the case scheduling deadlines to

11  continue the fact-discovery cut-off, initial expert disclosures and the expert discovery cut-off." No.

12  15-CV-03945-WHO, 2017 WL 24755, at *1 (N.D. Cal. Jan. 3, 2017). That is not the case here

13  where only one agreed-upon minor extension has been sought and granted with a longer future

14  extension in mind. Dkts. 125 & 126.[2]

15    *Keck v. Alibaba.com Hong Kong Ltd.* is also distinguishable. There, the Court compelled

16  the production of "tens (or, likely, hundreds) of thousands of documents" more than a month before

17  the class needed to serve class certification expert reports. No. 17-CV-05672-BLF, 2019 WL

18  2029072, at *1 (N.D. Cal. May 8, 2019). The Court denied a further four and a half month

19  extension of that deadline because Plaintiff's only argument for that deadline was the fact that the

20  additional production had been ordered and the court Order providing for the production had

21  already set the production deadline with the class certification expert report deadline in mind. *Id.*

22    Google is incorrect that Plaintiffs have not been diligent and Plaintiffs' request to extend

23  the schedule should not be denied on that basis.

24

25

26  ───────────────────

   [2] The *Philadelphia* Court also noted that Defendants would be prejudiced by allowing the
27  amendment and extension of fact discovery. 2017 WL 24755, at *1. Google makes no such claims
   of prejudice here.

28                                                    7

**II.    Google's Argument that Plaintiffs Were Not Diligent Is Belied By Its Admission that Its Actions Slowed Discovery.**

Google's tall tale of Plaintiffs' lack of diligence is undercut by actions even it acknowledges have slowed the case.

***First***, Google ***concedes*** that it has repeatedly turned the dial of discovery to a slow drip by denying requested documents. Dkt. 168 at 7 (admitting that Google refused to produce discovery unrelated to GA for Firebase while the first amended complaint was pending); *Id.* at 8 (admitting that Google refused to produce any documents relating to AdMob and Cloud Messaging until after the Court had ruled on the second motion to dismiss).

***Second***, Google does not deny that its own process preferences have delayed discovery progress. Google correctly states that it has offered limited November dates for the depositions of three custodians: Messrs. Ganem, Ma, and Monsees, Dkt. 168 at 9. But it conveniently omits the conditions it attached to these depositions that made it impossible for Plaintiffs to proceed with them. For example, Google ignores that the dates offered would have forced these depositions to be taken in some cases just days after Google completed the custodial discovery for these individuals ordered by the Court back on May 4, 2021 (Dkt. 106). Dkt. 153 at 13. It also omits that Google only offered these dates in an attempt to force Plaintiff to take overlapping fact and 30(b)(6) depositions despite that Google had already stated that Plaintiffs would not be able to expand or amend the 30(b)(6) notice once any 30(b)(6) deposition had begun. Dkt. 153-1 ¶ 23. Effectively, that meant that before the pleadings were settled, and before Google completed its custodial document productions, Plaintiffs needed to complete a fulsome 30(b)(6) notice. Only under the pressure of this Motion was an agreement reached only on Wednesday, November 17. Lee Decl. ¶ 11, Ex. C, paving the way for depositions to finally begin in earnest in the new year after Google identifies its designees. *Id.*

***Third***, Google also does not deny that it has taken a hide-and-seek approach to discovery. *See generally* Dkt. 168. Plaintiffs' case has always been about one thing: Google's misrepresentations to its customers regarding what data it collects and uses when the WAA-button is "off" and how Google ultimately uses that data in pursuit of its own profit in a manner contrary

8

---

to what it tells the public. Compl., Dkt. 1 ¶ 7; FAC, Dkt. 60 ¶ 1; SAC, Dkt. 113 ¶ 1; TAC, Dkt. 138 ¶ 1. At every step in this litigation, Plaintiffs have had to navigate the following complex process: (1) they have had to sleuth out how Google's technology works, (2) they have had to litigate whether specific ways in which Google collects and uses Plaintiffs' WAA-off information are within the scope of this case, and (3) they have had to predict with specificity what documents, information, and data Google might possess that could prove their claims and argue with Google about whether that information exists and whether it will be produced. Lee Decl. ¶ 2. As demonstrated by the more than fifty formal discovery letters that the parties have exchanged in this case on various issues, that process takes time and now has resulted in the clear need to bring a litany of discovery disputes before the Court. *Id.*

Google's insistence that everything be done in the most complicated manner possible defies the "cooperative" spirit of discovery contemplated by the Federal Rules. *Sali*, 884 F.3d at 1219-20; *see also Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 311 (C.D. Cal. 2020) (noting that the Federal Rules have been "amended precisely to rid federal discovery practice of these hide-and-seek games"). It is also exactly the action that has resulted in any perceived delay in this complex case that has run fairly swiftly considering the extensive motion practice involved, including several attempts by Plaintiffs to push discovery along through motion practice. *See* Dkts. 74, 75, 105, 110. It is simply not true that Plaintiffs "spun up" disputes for the purposes of obtaining this extension. Dkt. 168 at 6. It is well documented that the now-litigated disputes had been brewing between the parties for a long time and filing them despite Google's repeated delay became of upmost importance when Google shockingly denied any further meaningful extension in an effort to run out the clock.

**_Fourth_**, although Google suggests Plaintiffs created discovery disputes to justify the request for relief from the schedule, that is undercut by the fact that ***it is only since filing this motion*** that Google has started moving on discovery at all. In just the last three weeks, Google has provided the privilege log that Plaintiff had long requested, has agreed to a 30(b)(6) and fact deposition protocol, and has started finally producing AdMob and Cloud Messaging documents.

9

*See, e.g.*, Dkt. 168 at 12-14; Lee Decl. ¶ 9. Further, faced with having to finally answer for its repeated delay, Google has only now agreed to several weekly meet and confers on various discovery disputes and has provided its portion of several letter briefs for Judge Tse. Lee Decl. ¶ 11.

***Fifth***, Google's accusation that Plaintiffs were not diligent because they "fail[ed] to raise [discovery] issues to the Court" earlier totally ignores Google's own role in preventing issues from reaching the Court. *See* Dkt. 168 at 18. As mentioned above, it was Google who impeded Plaintiffs' ability to ask the Court for more custodians at an earlier date, telling Plaintiffs in late-August in response to their request for more custodians that Google needed to finish its custodial production on the first three custodians and that only after "Plaintiffs evaluate those productions" would Google "have a productive discussion about what is truly unique and non-duplicative." Lee Decl. ¶ 6, Ex. B. Google also flat-out ignored many of Plaintiffs' pleas for more custodians. *Id.* ¶ 7. Google's own correspondence and lack thereof contradict any accusation that it was Plaintiffs who were preventing the custodian issue from reaching the Court. Google also ignores the time it has taken to get any joint letter briefs before the Court. As noted, the parties are about to file a brief on a privilege issue relating to a Google claw-back of a "Privacy Design Document" created by and for Google engineers. Plaintiffs first sent over their portion of the joint letter brief to Google almost a month ago. Lee Decl. ¶ 11. It is not yet on file. *Id.* As stated in the Motion, Google also sat on the preservation brief for quite some time, preventing that issue from quickly reaching the Court. Dkt. 153 at 12. Google's accusations that Plaintiffs "chose not to present [issues] to the Court until now, near the close of discovery," Dkt. 168 at 18, represent litigation gamesmanship at its worst. As the facts show, it wasn't Plaintiffs' choice to prevent the presentation of discovery issues to the Court at all, it was Google's choice. The blame cannot therefore lie with Plaintiffs, who in any event brought this motion for relief from the schedule before the Court more than two months before the current close of fact discovery.

In all of the cases relied on by Google, the defendants had no discernable role in slowing the pace of discovery or the pace of bringing issues before the Court. To the contrary, *in nearly all*

10

*cases* Google relies on, the plaintiffs were freely granted multiple extensions of the discovery deadlines before the Court finally concluded that no more discovery process could be made. As a result, they counsel in favor of Plaintiffs' extension request. *Harper*, 2013 WL 3938699, at *2 (noting that plaintiff had already received two extensions of the schedule in a case that had been pending for more than two years and was unable to show "any indication that the circumstances [previously] preventing her from completing discovery . . . have been resolved and that she will be able to complete the discovery she needs if the Court grants her request for yet another extension"); *Schaffer v. Crown Equip*. Corp., No. C 09-00284 SBA, 2011 WL 6303408, at *3 (N.D. Cal. Dec. 16, 2011) (noting that plaintiff had received "three prior" extensions of the discovery deadline in a case that had been pending for three years); *Cotton, ex rel. Ngondji v. City of Eureka, Cal*., No. C 08-4386 SBA, 2010 WL 2382255, at *1 (N.D. Cal. June 10, 2010) (noting two extensions had already been granted, the Court had warned no more extensions would be granted, and faulting plaintiff for waiting more than a year to request key evidence); *In re Sulfuric Acid Antitrust Litig*., 231 F.R.D. 331, 332 (N.D. Ill. 2005) (a case where two extensions of the fact discovery schedule had been granted that Google takes entirely out of context as it addresses motions to compel filed on the day discovery closed, not those filed more than two, now three months, before the discovery deadline); *Krzyzanowski v. Orkin Exterminating Co*., No. C 07-05362 SBA, 2009 WL 4573318, at *1 (N.D. Cal. Dec. 1, 2009) (denying a request for relief brought after the close of discovery).[3]

## III.    Discovery Cannot Be Completed Before the Fact Discovery Deadline Expires.

Beyond the fact that Plaintiffs have demonstrated diligence and Google has admitted to contributing to (if not causing) the current discovery crunch, Plaintiffs' motion should be granted for a far more practical reason: discovery simply cannot be completed by the current February 10 deadline.

---

[3] The *Osakan* case cited by Google is also inapposite as it involved a motion to amend and join four new plaintiffs on the eve of fact discovery. *Osakan v. Apple Am. Grp*, No. C 08-4722 SBA, 2010 WL 1838701, at *3 (N.D. Cal. May 5, 2010).

1    Google's contrary contention is fantasy. Dkt. 168 at 4. As Google well knows, very few

2    witnesses will be available during late-December and early-January given the holiday season.  That

3    leaves just over a month for the parties to take the nine depositions already noticed by Google, the

4    at-least five fact/30(b)(6) combination depositions of Google custodians[4] (depositions that by

5    agreement may spill into two days), as well as any further 30(b)(6) depositions needed to cover

6    the remaining topics. Even if it were possible to cram so many depositions into such a limited

7    timeframe, it is not possible here where Google has still only produced limited AdMob and Cloud

8    Messaging documents for only two custodians and only began that production on November 12,

9    2021. Dkt. 168 at 10; *see also* Lee Decl. ¶ 8.

10    Google also admits that more document issues are also outstanding and will need to be

11    briefed for the Court. Specifically, for the first time in its response to this motion, Google has

12    concretely taken the position that it will not produce source code. Dkt. 168 at 13. Further, the

13    parties are about to file a brief on a privilege issue relating to Google claw-back of a "Privacy

14    Design Document" created by and for Google engineers. Lee Decl. ¶ 11. It has taken quite some

15    time for the parties to get that filing before the Court, but if the Court finds the document not

16    privileged, it is likely to affect a number of documents that Google has withheld. *Id.* The search

17    term dispute—also inaccurately described by Google—is also ripe for resolution. And, contrary to

18    Google's representations, both parties have acknowledged the need to discuss RFP-specific issues

19    when some of the macro discovery disputes are resolved. Lee Decl. ¶ 11.

20    It also remains the case, contrary to Google's assertion, that Plaintiffs have no idea what

21    Google's affirmative defenses will be or what allegations in the complaint Google will admit or

22    deny. Lee Decl. ¶ 5. Google has never offered that information. *Id.* Plaintiffs would have accepted

23    it. *Id.* When Plaintiffs do have that information, they intend to serve targeted contention

24    interrogatories regarding the basis for Google's responses to their allegations. *Id.* Discovery should

25 ───────────────────────────

26    [4] Plaintiffs seek far more than five fact depositions and note that meeting the current discovery
      deadline is impossible even under the super limited scope of fact discovery envisioned by Google
27    if Google were to prevail on every single dispute.

28                                            12

1    not close before that is even possible. This Court has already noted that good cause for an extension

2    exists when the pleadings are open. Dkt. 126. The pleadings remain open and an extension of the

3    fact discovery deadline is required.

4                             **CONCLUSION**

5        A fact discovery extension is not only warranted but it is badly needed. Plaintiffs have been

6    diligent but there is more work to be done. The Court should grant the requested extension.

7

8    Dated: November 19, 2021               Respectfully submitted,

9

10                                   By:   *_/s/ Amanda Bonn_*

11                                  Mark C. Mao (CA Bar No. 236165)
                                     mmao@bsfllp.com

12                                  Beko Reblitz-Richardson (CA Bar No. 238027)
                                     brichardson@bsfllp.com

13                                  BOIES SCHILLER FLEXNER LLP
                                     41st Floor

14                                  San Francisco, CA 94104
                                     Telephone: (415) 293 6858

15                                  Facsimile (415) 999 9695

16

17                                  Jesse Panuccio (admitted *pro hac vice*)
                                     jpanuccio@bsfllp.com

18                                  BOIES SCHILLER FLEXNER LLP
                                     1401 New York Ave, NW

19                                  Washington, DC 20005
                                     Tel.: (202) 237-2727

20                                  Fax: (202) 237-6131

21                                  James Lee (admitted *pro hac vice*)
                                     jlee@bsfllp.com

22                                  BOIES SCHILLER FLEXNER LLP
                                     100 SE 2nd Street, Suite 2800

23                                  Miami, FL 33131
                                     Telephone: (305) 539-8400

24                                  Facsimile: (305) 539-1307

25

26                                  William Christopher Carmody (*pro hac vice*)
                                     bcarmody@susmangodfrey.com

27                                  Shawn J. Rabin (*pro hac vice*)
                                     srabin@susmangodfrey.com

28                                  13

Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
Ra  O. Amen (*pro hac vice*)
ramen@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

14