Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

Jesse Panuccio (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave, NW
Washington, DC 20005
Tel.: (202) 237-2727
Fax: (202) 237-6131
jpanuccio@bsfllp.com

Amanda K. Bonn, CA Bar No. 270891
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
abonn@susmangodfrey.com

*Attorneys for Plaintiffs*

William Christopher Carmody
(admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander P. Frawley
(admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas,
32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
Michael F. Ram, CA Bar No. 238027
Ra O. Amen (admitted *pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com
ramen@forthepeople.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, JULIEANNA MUNIZ, ELIZA CAMBAY, SAL CATALDO, EMIR GOENAGA, JULIAN SANTIAGO, HAROLD NYANJOM, KELLIE NYANJOM, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>    vs.<br><br> GOOGLE LLC,<br><br>            Defendant. | Case No.:  3:20-cv-04688<br><br>**PLAINTIFFS' MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULE**<br><br>**(CIVIL LOCAL RULE 16-2)**<br><br>The Honorable Richard Seeborg<br>Courtroom 3 – 17th Floor<br>Date: December 9, 2021<br>Time:  1:30 p.m. |

### NOTICE OF MOTION AND
### MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULE

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Thursday, December 9, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Richard Seeborg, the undersigned Plaintiffs will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 16 and Northern District of California Civil Local Rule 16-2 and 7-2, for an Order modifying the current Case Management Order in the instant action by extending all deadlines six months.

Plaintiffs seek to extend the operative fact discovery deadline from January 11, 2022 to July 13, 2022, and to similarly change the remaining deadlines in the Case Management Order so that Plaintiffs can obtain the discovery that they have long-sought and that Defendant Google has delayed and so far withheld.

This Motion is based upon this Notice and Motion, the following Memorandum of Points and Authorities, the Declaration of Mark Mao, other materials in the record, argument of counsel, and such other matters as the Court may consider.

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... ii

POINTS AND AUTHORITIES ......................................................................................... iii

STATEMENT OF THE ISSUE ............................................................................................ 1

INTRODUCTION ............................................................................................................... 2

LEGAL STANDARD .......................................................................................................... 3

FACTUAL BACKGROUND ............................................................................................... 4

ARGUMENT ..................................................................................................................... 10

    I.     Plaintiffs Have Diligently Pursued Discovery and Google has Caused Delay ........................................................................................................... 10

        A.     Plaintiffs Have Timely Pursued Discovery in this Case. .......................... 10

        B.     Google Has Produced Few Documents and Has Caused Delay ................ 11

    II.    Good Cause Exists For a Six Month Extension of the Discovery and Expert Disclosure Deadlines. .................................................................... 14

        A.     The Pleadings Are Still Not Settled ........................................................ 14

        B.     More Time is Needed to Conduct Further Document Discovery Before Depositions. ................................................................................. 15

        C.     A Six-Month Extension is Appropriate. .................................................. 16

        D.     All Other Factors Weigh In Favor of Granting the Requested Extension. ............................................................................................... 16

CONCLUSION .................................................................................................................. 18

PLAINTIFFS' MOTION FOR RELIEF FROM
CASE MANAGEMENT SCHEDULE             CASE NO. 3:20-CV-04688

1

# TABLE OF AUTHORITIES

**Page(s)**

2

**Cases**

3

*Applied Med. Res. Corp. v. Tyco Healthcare Grp. LP*,
    No. SACV111406JVSANX, 2013 WL 12472050 (C.D. Cal. Jan. 14, 2013) ........................ 14

4

*Calloway v. Scribner*,
    No. 1:05-CV-01284-BAM PC, 2014 WL 1317608 (E.D. Cal. Mar. 27, 2014) ..................... 17

5

6

*Fenerjian v. Nong Shim Co., Ltd*,
    2016 WL 1019669 (N.D. Cal. Mar. 15, 2016) ........................................................................ 12

7

*Green v. City & Cty. of San Francisco*,
    No. 17-CV-00607-TSH, 2018 WL 6181572 (N.D. Cal. Nov. 27, 2018) ............................... 18

8

9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. C-07-5944-SC, 2014 WL 5462496 (N.D. Cal. Oct. 23, 2014) ............................. 4, 10, 14

10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. C 09-5840 SI, 2011 WL 2837405 (N.D. Cal. July 18, 2011) .......................................... 16

11

12

*Jo Ann Howard & Assocs., P.C. v. Cassity*,
    2014 WL 6845854 (E.D. Mo. Dec. 3, 2014) .......................................................................... 13

13

*Johnson v. Mammoth Recreations, Inc.*
    975 F.2d 604 (9th Cir. 1992) ................................................................................................... 4

14

15

*Lujan v. Nat'l Wildlife Fed.*,
    497 U.S. 871 (1990) ................................................................................................................. 3

16

*Orozco v. Midland Credit Mgmt. Inc.*, No. 2:12-cv-02585-KJM-CKD,
    2013 WL 3941318 (E.D. Cal. July 30, 2013) ........................................................................ 10

17

18

*Shenwick v. Twitter, Inc.*,
    2018 WL 5750119 (N.D. Cal. Oct. 30, 2018) ........................................................................ 13

19

*Walker v. Life Ins. Co. of the Sw.*,
    2018 WL 5905121 (C.D. Cal. Oct. 23, 2018) ........................................................................ 12

20

*Woodard v. City of Menlo Park*, No. C 09-331 SBA, 2012 WL 2119278
    (N.D. Cal. June 11, 2012) ................................................................................................. 17, 18

21

**Rules**

22

23

Fed. R. Civ. P. 16 ..............................................................................................................i, 2, 4

24

Fed. R. Civ. P. 26 ..................................................................................................................... 17

25

Local Rule 6-3 .......................................................................................................................... 17

26

Local Rule 7-2 ........................................................................................................................i, 2

27

Local Rule 16-2 ................................................................................................................*passim*

28

PLAINTIFFS' MOTION FOR RELIEF FROM
CASE MANAGEMENT SCHEDULE                   CASE NO. 3:20-CV-04688

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STATEMENT OF THE ISSUE**

Whether the district court should grant Plaintiffs' modest 6-month extension request for relief from the Case Management Order (Dkt. 59) under the good cause standard where Plaintiffs have diligently and persistently sought discovery from Google, where Google previously represented that it would agree to a further continuance of the schedule and has now changed course, where there are a litany of discovery disputes that need to be resolved, and where Plaintiffs' inability to complete discovery by the current January 11, 2022 deadline is the result of Google's stonewalling on discovery?

Proposed Answer:     Yes

1

**INTRODUCTION**

Pursuant to Federal Rule 16(b)(4) and Local Rules 16-2 and 7-2, Plaintiffs respectfully seek a six-month extension of the deadlines in the Case Management Schedule, Dkts.59, & 126, to complete fact discovery. The need for a six-month extension is straightforward—Google has stonewalled virtually all means of discovery, making the completion of necessary fact discovery by the currently pending January 11, 2022 deadline impossible. Google has caused delays in the following ways:

1. Because the pleadings remain open, Google has refused to file an answer or disclose its affirmative defenses.

2. In a case about illegal collection and misuse of data, Google has refused to produce any source code, algorithms, data schemas, or logs for the data, which are necessary to understanding how class members' data is collected and how it is used.

3. Google has mostly limited its discovery production to documents regarding Google Analytics, and not AdMob or Cloud Messaging, despite the Court's clear ruling on Google's last motion to dismiss. Google is also only willing to designate just one custodian each for AdMob and Cloud Messaging, and Google has refused to identify any logs for AdMob or Cloud Messaging.

4. Although the class members at issue likely involve tens of millions of consumers, Google has tried to limit the number of custodians for document searches to just *five* Google employees. This incredibly narrow scope has resulted in the production of less than 14,000 documents. By way of comparison, the *Brown v. Google LLC* class action currently pending before Judge Koh which likewise involves the collection and misuse of browsing data without user consent, has no less than 42 Google custodians resulting in the production of over 700,000 documents.

5. Although Google has yet to complete document production for its currently designated custodians, Google is demanding that Plaintiffs depose them in early November, with no option to depose them again after further document productions.

2

1    Plaintiffs have worked diligently to move these discovery disputes forward with Magistrate

2    Judge Tse. Within the last few weeks, Plaintiffs have sent Google four joint letter briefs, which

3    have largely been met with further delay by Google. Declaration of Mark C. Mao In Support of

4    Plaintiffs' Motion for Relief from Case Management Schedule (hereinafter "Mao Declaration")

5    ¶ 16.

6    Most troubling is that Google's delay appears to be by design. When Plaintiffs raised

7    concerns about the lack of progress between the parties regarding discovery several months ago,

8    Google agreed that the deadlines were not realistic and initially represented to Plaintiffs and the

9    Court that it was amenable to extending the discovery deadline further to appropriately tailor the

10   length of an additional extension after a Court ruling on Google's second motion to dismiss. *See*

11   Dkt. 125. But, with Court deadlines approaching, Google has suddenly changed course, refusing

12   to meaningfully extend the discovery deadline in a naked attempt to jam Plaintiffs by forcing them

13   to litigate their case at hyper-speed and without the necessary documents.

14   This is pure gamesmanship. Google's continued slow-rolling of discovery and about-face

15   on cooperation around the schedule has but one purpose: to advantageously squeeze Plaintiffs and

16   push them across the finish line before Google is forced to provide the key information it is

17   withholding. Google's behavior should not be rewarded. Plaintiffs are unable to complete

18   discovery by the current discovery cut-off due to Google's intransigence at both producing

19   documents and providing relevant information necessary to propel this case forward. Plaintiffs

20   have been diligent and good cause exists for the requested extension of the schedule.

21                                            **LEGAL STANDARD**

22   The Court has "extensive flexibility to modify the fixed time periods found throughout the

23   rules, whether the enlargement is sought before or after the actual termination of the allotted time."

24   *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 906 n.7 (1990) (quotation marks and citation omitted).

25   Under the Local Rule 16-2(a) factors applicable here, the movant must: (1) describe the

26   circumstances which support the request; (2) affirm that counsel for the moving party has

27   conferred with all other counsel in an effort to reach agreement about the matter and, for each other

28

PLAINTIFFS' MOTION FOR RELIEF FROM
CASE MANAGEMENT SCHEDULE                                    CASE NO. 3:20-CV-04688

1    party, report whether that party supports or opposes the request for relief; (3) be accompanied by

2    a proposed revised case management schedule; and (4) indicate any changes required in the

3    schedule in the case. N.D. Cal. LR 16-2(d). Requests to modify a schedule are warranted if good

4    cause is shown. Fed. R. Civ. P. 16(b)(4); *see also In re Cathode Ray Tube (CRT) Antitrust Litig*.,

5    No. C-07-5944-SC, 2014 WL 5462496, at *3 (N.D. Cal. Oct. 23, 2014) (noting that scheduling

6    orders may be modified for good cause and extending an extension of discovery to "permit

7    document discovery and depositions to go forward"). Good cause exists so long as the moving

8    party was diligent. *Id.* (quoting *Johnson v. Mammoth Recreations, Inc.* 975 F.2d 604, 609 (9th Cir.

9    1992)).

10                              **FACTUAL BACKGROUND**

11          Plaintiffs filed their initial complaint in this case on July 14, 2020. Dkt. 1. At Google's

12    request, the parties twice stipulated to an extension of time for Google to file a response. Dkt. 33

13    & 35. Google eventually filed a motion to dismiss on October 13, 2020. Dkt. No. 48. Plaintiffs

14    then notified Google that they intended to amend their complaint and the parties stipulated to an

15    amendment and briefing schedule. Dkt. 58. On October 23, 2020, the Court entered the Case

16    Management Scheduling Order. Dkt. 59.

17          Plaintiffs then filed a First Amended Complaint, Dkt. 60, and Google filed a new opposed

18    motion to dismiss that complaint, Dkt. 62. After full briefing, the Court granted in part and denied

19    in part Google's motion to dismiss. Dkt. 109. In June 2021, Plaintiffs filed a Second Amended

20    Complaint. Dkt. 113. Google moved to dismiss and, in the alternative, to strike portions of that

21    pleading. Dkt. 121. While that motion was pending, Google refused to produce broad categories

22    of documents that went beyond Google Analytics, claiming that it required the pleadings to be

23    closed before committing to such production. Mao Decl. ¶ 4. To accommodate this delay, Plaintiffs

24    asked for a six-month extension of the existing discovery and expert disclosure deadlines. *Id.*

25    Google agreed that the parties had "been working to complete discovery in this case" and that "the

26    pleadings ha[d] not yet been settled" and agreed to push the expert discovery deadline "by 60 days

27    to January 11, 2022" and to "extend the expert disclosure date, which [was] currently set on

28    December 13, 2021 (Dtk. 59 [sic]), to January 11, 2022, to match the new discovery deadline."

4

1    Dkt. 125. Acknowledging that "the scope of discovery may change depending on the Court's

2    ruling on Google's pending motion to dismiss," Google promised to "negotiate in good faith [with

3    Plaintiffs on] whether and to what extent a second extension may be needed." *Id.* That stipulation,

4    which was granted by the Court, Dkt. 126, is the only modification to the Case Management Order

5    that has occurred. Dkt. 125.

6        Less than a week after extending the schedule, on August 18, 2021, the Court granted in

7    part and denied in part Google's motion to dismiss the Second Amended Complaint. Dkt. 129. The

8    Court rejected Google's attempt to limit the case to Google Analytics and allowed Plaintiffs to

9    proceed with discovery on AdMob and Cloud Messaging. *Id*. Plaintiffs filed their Third Amended

10   Complaint, Dkt. 138, on September 9, 2021 to correct for some deficiencies identified by the Court.

11   Google also seeks to dismiss that complaint. Dkt. 139. The motion is currently pending.

12       To date, Google has still not provided any answer to any complaint in this action and has

13   not otherwise identified ***any*** of its alleged "affirmative defenses." Mao Decl. ¶ 6. Google recently

14   asked for a stipulation on the motion to dismiss certain claims in the Third Amended Complaint

15   and took the position that Google may not even ***be ready*** to answer Plaintiffs' allegations. *Id.*

16       In the midst of these efforts to settle the pleadings, Plaintiffs have diligently sought

17   discovery from Google. Plaintiffs have served six sets of document requests on Google, with their

18   first set served on October 15, 2020. Mao Decl. ¶ 2. Similarly, Plaintiffs have served five sets of

19   interrogatories on Google, with the first set served on November 4, 2020 and have served two sets

20   of requests for admission. *Id.* Despite Plaintiffs' efforts, Google has repeatedly thwarted and

21   delayed Plaintiffs' efforts to obtain necessary discovery. *Id.* ¶ 3. To date, Google has only produced

22   13,707 documents, which were limited to Google Analytics. *Id.* Included in that number, only

23   6,304 documents have been produced from Google's ESI search of just three Google-selected

24   custodians. *Id.* That production pales in comparison to the 714,197 documents comprising of more

25   than 5.3 million pages produced by Google in the similarly complex *Brown v. Google* matter

26   pending before Judge Koh and Magistrate Judge van Keulen, where there are 42 Google

27   custodians. *Id.* While the production in *Brown v. Google* is considerably further along, the fact

28

PLAINTIFFS' MOTION FOR RELIEF FROM
CASE MANAGEMENT SCHEDULE                    CASE NO. 3:20-CV-04688

1   discovery deadlines in the two cases are nearly identical. *Id.* This only underscores the need for

2   an extension of the Case Management Schedule here.

3         Worse yet, Google has only agreed to produce documents from five custodians of its own

4   choosing, including documents from a single custodian for AdMob and a single custodian for

5   Cloud Messaging—both of which are complex technologies put at issue in the Third Amended

6   Complaint and are critical to Plaintiffs' case. *Id.* ¶ 8. Plaintiffs have asked for five (5) AdMob

7   custodians to start, given that AdMob produces the most revenue. *Id.* Plaintiffs have asked for

8   three (3) Cloud Messaging custodians—the same number as requested and granted by the Court

9   for Google Analytics. *Id.* But Google maintains that it will offer only a ***total*** of five custodians for

10  the entire case. *Id.* The notion that fact discovery in a case of this magnitude should be completed

11  through just five custodians is absurd.

12        The last time the custodian issue was presented to Magistrate Judge Tse, he ordered the

13  parties to (1) complete the production of the initial three Google-selected custodians, (2) allow

14  Plaintiffs to review those documents, and (3) instructed the parties to "then meet and confer . . .

15  regarding any further custodians Plaintiffs believe are justified in this case." Dkt. 106. Plaintiffs

16  have diligently complied with that order, reviewing the few documents produced so far and timely

17  requesting information for 19 potential custodians and requesting additional relevant search terms.

18  Mao Decl. ¶ 9.

19        Google's productions support the need for more custodians. For example, one internal

20  Google email to requested custodian Eric Miraglia (the "founder" of Google's Privacy & Data

21  Protection Office) states: "[y]our name came up during our Monday morning ***'Oh Shit' meeting***

22  in relation to" the article concerning ***Google's data collection while WAA is turned off.*** Mao Decl.

23  ¶ 11, Ex. A (emphasis added). Other documents from requested custodians raise concerns about

24  the "joinability risks" with respect to "***link[ing] app events collected by GA4F to GAIA ID even***

25  ***if end users turn off WAA***." *Id.* ¶ 12, Ex. B (emphasis added); *see also id.* ¶ 15, Ex. E (noting that

26  "Firebase wants to associate Firebase's Instance Identifier (IID) with Google Analytics data to

27  target audiences. However this will create joinablity risks between GAIA and device ids.").

28

PLAINTIFFS' MOTION FOR RELIEF FROM
CASE MANAGEMENT SCHEDULE                          CASE NO. 3:20-CV-04688

1    Documents produced also reveal that Google was well aware of its false promises regarding

2    Web & App Activity ("WAA") and what data Google collects and uses when the WAA button is

3    turned off. For example, one internal email states that the Google "See & control your Web & App

4    Activity" webpage at the heart of this litigation "actually doesn't describe what happens when

5    [WAA] is disabled." *Id.* ¶ 13, Ex. C. It further explains that the page doesn't describe what happens

6    when WAA is switched on, noting that the webpage is misleading and that "it appears that we have

7    a real problem here with accurately describing what happens when WAA is disabled." *Id.* Yet

8    another internal email from Chris Ruemmler to David Monsees and Nick Linklow discusses what

9    happens when WAA is off, where "the user has a ***false sense of security*** that their data is not being

10   stored at Google, ***when in fact it is***." *Id*. ¶ 14, Ex. D (emphasis added). The email notes that "[t]his

11   is ***really bad***" and confirms that not even Mr. Ruemmler "realize[d] Google actually ***stored all of***

12   ***my activity even if those controls were off*** and I work at Google!" *Id.* (emphasis added).

13   Despite Plaintiffs' identification of these documents in support of their request for more

14   custodians, Google has fully declined to provide discovery from ***any*** additional Google employees.

15   Mao Decl. ¶ 16. If that was not enough, Google has stonewalled Plaintiffs' efforts to raise this

16   issue with Magistrate Judge Tse. Plaintiffs provided their custodian letter brief to Google on

17   October 14, 2021. *Id.* ¶ 17. Plaintiffs followed up repeatedly, and Google made many empty

18   promises regarding when it would complete its submission. *Id.* Plaintiffs only received Google's

19   submission today—more than two weeks after Plaintiffs sent their submission. *Id.*

20   Google has also refused to produce other critical information. For example, Google has

21   withheld all of its technical source code, algorithms, schemas for data, or logs for the data at issue.

22   Mao Decl. ¶ 24. Despite the case being about data illegally collected and used, Google has only

23   identified two single logs for the entire case. *Id.* ¶ 20. Google has also taken the position that it

24   will only produce relevant logs after a class has been certified. *Id.*

25

26

27

28

7

1      Google has also refused to meaningfully engage in resolving discovery disputes. Plaintiffs

2  have teed up multiple disputes for the Court.[1] Several have remained sidelined by Google's

3  obstinacy. Indeed, Plaintiffs are currently waiting on Google's portions of **three** joint discovery

4  submissions, and waited over two weeks for a fourth that was received just before Plaintiffs filed

5  this motion. Mao Decl. ¶ 17. These disputes and others will need the Court's attention before

6  discovery can be completed. A list of outstanding disputes is below:

7     • ***Search Term Issue:*** Google has delayed Plaintiffs' request for additional search terms to

8  be run against agreed-upon custodians. Despite repeatedly raising the issue with Google in detailed

9  letters, Google appears to have unilaterally run only a portion of Plaintiffs' proposed terms without

10  providing any hit counts or evidence supporting Google's decision to reject others on the grounds

11  of "overbreadth." Mao Decl. ¶ 19. Plaintiffs provided Google with a joint submission for the Court

12  to consider more than a week ago. *Id.* Plaintiffs have not received Google's response. *Id.* But

13  Plaintiffs continue to work with Google to address these issues. *Id.*

14     • ***Preservation Issue***: Google is also stonewalling Plaintiffs' efforts to present certain ESI

15  preservation issues to the Court. Plaintiffs sent Google a draft joint dispute letter regarding

16  preservation issues more than two weeks ago on October 14, 2021, and Google still has not

17  provided its insert. *Id.* ¶ 20. This is critical, as it appears that Google is not only withholding but

18  also destroying relevant evidence. Google has declined to preserve data in two relevant logs that

19  it admits "contain the data sent to and held by Google via GA for Firebase when users' Web &

20  App Activity WAA toggle is not set to 'on'" and that it routinely purges every 56 days. *Id.* Despite

21  months of negotiations regarding ESI preservation, Google has steadfastly refused to identify

22  which data sources may be relevant to other at-issue WAA-off collection and use of that data.

23  Google is not only refusing to allow inspection of the technology at issue, such as source code,

24  algorithms, schemas, and logs. It is refusing to preserve them.

---

[1] Any argument that Plaintiffs have been delinquent is further undercut but the fact that the parties previously filed ***four different*** discovery letter briefs with the Court, including one relating to custodians and one relating to Plaintiff's 30(b)(6) motion. *See* Dkts. 74, 75, 105, 110.

- **_Claw-Back Issue:_** Google has recently "clawed-back" documents harmful to it—documents that on their face contain no indicia of privilege and that were **_already_** redacted for privilege prior to production. Mao Decl. ¶ 21. Plaintiffs intend to bring this issue before the Court and have already sent Google their portion of a joint discovery brief on the topic. _Id._ Google has not yet responded with its portion of the joint submission but has offered a compromise. _Id._

- **_Privilege Log Issue:_** Google has not produced any privilege log, even with respect to documents **_already_** produced. Mao Decl. ¶ 22. Plaintiffs have requested this log but have yet to receive it. _Id._

- **_Deposition Issue:_** Google is now attempting to force Plaintiffs to take overlapping fact and 30(b)(6) depositions only days after its promised end-of-October production containing limited custodial documents relating to the individuals to be deposed—well before it has even come close to making the bulk of its document production. Mao Decl. ¶ 23. Simultaneously, Google has previously taken the position that Plaintiffs, who it is intent into forcing into immediate depositions, will be unable to amend the 30(b)(6) notice once those depositions have begun. _Id._ Plaintiffs have drafted a motion on this topic, but are still attempting to work with Google to reach a compromise on this issue. _Id._ For now, however, Google seems intent on forcing Plaintiffs into depositions before the dispute can be raised, let alone resolved, by the Court if court intervention is necessary. _Id._

- **_Source Code Issue:_** Despite repeated requests, Google has not produced **_any_** source code or algorithms, even source code related to Google Analytics that Google claimed it was "examining" in summer 2021, and it has made no commitment to producing similar source code relating to AdMob and Cloud Messaging. Mao Decl. ¶ 24.

- **_RFP and Other Identification Issues_:** In addition to the above issues, there are also several RFP-specific discovery disputes, many of which relate to Google's failure to identify any data sources or logs for AdMob even though it does not dispute that AdMob is used for real-time-bidding ("RTB"), which includes the mobile app URLs even when WAA/sWAA ("Supplemental

9

Web & App Activity") is off. Mao Decl. ¶ 25. This issue will almost certainly require Court intervention.

ARGUMENT

To obtain an extension, Plaintiffs need only show that they have diligently pursued discovery and that good cause exists to extend the discovery deadline. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 5462496, at *9 (noting that the purpose of this requirement is to "prevent[] parties from profiting from carelessness, unreasonability, or gamesmanship, while also not punishing parties for circumstances outside their control" (citing *Orozco v. Midland Credit Mgmt. Inc.,* No. 2:12-cv-02585-KJM-CKD, 2013 WL 3941318, at *3 (E.D. Cal. July 30, 2013))). Both factors are present here.

**I.     Plaintiffs Have Diligently Pursued Discovery and Google has Caused Delay.**

**A.     Plaintiffs Have Timely Pursued Discovery in this Case.**

Plaintiffs have gone to great lengths to obtain necessary discovery in this highly technical case that has required Plaintiffs' counsel to spend much time sleuthing out how Google's technology works. *See supra* § Factual Background. Plaintiffs' counsel began serving discovery requests in this matter less than three months after filing Plaintiffs' initial complaint and just days after Google filed its first motion to dismiss. Mao Decl. ¶ 2. Plaintiffs have continued to serve requests for relevant documents, interrogatories, and requests for admission. *Id.* Plaintiffs noticed a 30(b)(6) deposition in March 2021, and they have wanted to move full-steam-ahead on the discovery process but have been filibustered by Google at every turn. *Id.* ¶¶ 3 & 23.

In an attempt to push things forward, Plaintiffs have engaged in hundreds of hours of letter-exchanges and meet and confers with Google on discovery deficiencies, often waiting many weeks before receiving any substantive response from Google (if any response is received at all). *Id.* ¶ 18. And Plaintiffs have repeatedly brought discovery issues to this Court's attention. *See id.* ¶ 17. Currently, Plaintiffs have sent more than four letter briefs to Google and have not yet received responses to three of them (the fourth was received just before the filing of this motion). *Id.* Google's stalling is just one of many examples of how Google has slowed progress in this case.

10

Plaintiffs timely sought additional discovery after learning about how Google's technology operates and as the claims developed through amendment and motion practice. Any claim by Google that Plaintiffs have not been diligent is belied by the stipulation Google signed just two months ago, representing that the parties had "been working to complete discovery in this case" and that an extension of the discovery schedule was necessary since "the pleadings have not yet been settled." Dkt. 125. In that **same** stipulation, Google acknowledged that "the scope of discovery may change depending on the Court's ruling on Google's pending motion to dismiss" and agreed to "negotiate in good faith [with Plaintiffs on] whether and to what extent a second extension may be needed." *Id.*

Google has now declined to do so despite that the pleadings ***remain*** unsettled, that Google has ***still not*** answered the allegations in any complaint, Google's third motion to dismiss remains pending, and several discovery disputes between the parties remain unresolved. Google's refusal to negotiate an extension of the schedule is in line with its "hide the ball" discovery strategy that is a direct result of Plaintiffs' discovery of a limited number of damaging documents Google has already produced, Plaintiffs' evolving understanding of Google's technology, and Plaintiffs' further document requests that are eliciting damaging material.

### B.    Google Has Produced Few Documents and Has Caused Delay.

Plaintiffs' inability to complete discovery prior to the currently established January 11, 2022 deadline rests squarely in the hands of Google.

First, Google has produced hardly ***any*** documents. Despite that Plaintiffs have issued 184 separate requests for production, Google has so far produced only 13,707 documents—including only 6,304 custodial documents from three Google-selected custodians, most of which are limited to Google Analytics. Mao Decl. ¶ 3. And much of Google's overall production appears to be publicly-available documents and as well as duplicates. *Id.* This is dwarfed by 714,197 documents totaling more than 5.3 million pages produced in the similarly complex *Brown v. Google*. *Id.* Google has also so far refused to produce documents responsive to many of Plaintiffs' document requests, which the parties are still negotiating. *Id*.

11

Second, despite producing documents from only three Google-selected custodians and agreeing to produce documents from only two more Google-selected custodians, Google **admits** that it has not yet completed a full custodial production for **any** custodian. Mao Decl. ¶ 9. This is true despite that the Court ordered this production in May when Plaintiffs first requested a greater number of custodians and the Court instructed the parties to proceed with the first three custodians, allow Plaintiffs to review those documents, and instructed the parties to "then meet and confer . . . regarding any further custodians Plaintiffs believe are justified in this case." Dkt. 106.

Plaintiffs have requested information for 19 additional individuals, which would bring the current custodial total to 22. Mao Decl. ¶ 9. This is roughly half the number of custodians for which ESI was produced in the comparable *Brown* case, where 42 custodians have been identified and have had their documents produced. *Id.* ¶ 3. Predictably, however, Google has refused to produce documents for **any** of those additional custodians, despite Plaintiffs' offering of lengthy explanations regarding why **each** custodian is likely to possesses information highly relevant to this case. *Id.* ¶ 16. Google repeatedly cites to "burden" as a reason for why it will not add additional custodians and will not search additional terms against the existing custodians. *See id.* But Google offers no evidence of burden and its own limited production for the **existing** three custodians undercuts its burden claim. *Walker v. Life Ins. Co. of the Sw.*, 2018 WL 5905121, at *2 (C.D. Cal. Oct. 23, 2018) ("Although [Google] claim[s] that the additional search . . . would lead to a large number of non-responsive hits, [Google] ha[s] not offered any evidence of the scope of such non-responsive hits, or the time it would take to exclude them during a review."); *see also Fenerjian v. Nong Shim Co., Ltd***,** 2016 WL 1019669, at *6 (N.D. Cal. Mar. 15, 2016) (noting where a party has "put forth no evidence that the requested discovery is disproportionate or unduly burdensome" it has failed "to show that performing these simple searches is disproportionate or unduly burdensome").

Third, Google has **still** not produced any documents, code, algorithms, or data schema relating to Real Time Bidding (RTB), AdMob, or Cloud Messaging. Mao Decl. ¶ 24. And Google has failed to even identify which data sources or logs exist for these features, let alone preserve

12

1  them. *Id.*; *see also id.* ¶ 20. It is Plaintiffs' understanding that Google is refusing to produce any

2  of this data for examination until ***after*** class certification and well after depositions have been

3  taken. *Id.* ¶ 20. That is unacceptable. Google has even declined to preserve data in in two relevant

4  logs that it admits that "contain the data sent to and held by Google via GA for Firebase when

5  users' Web & App Activity WAA toggle is not set to 'on'" and that Google routinely purges every

6  56 days. *Id.*

7        Fourth, Google has refused to produce source code of any kind, even source code directly

8  related to Google Analytics that Google claimed it was "examining" in summer 2021. *Id.* ¶ 24.

9  And Google has made no commitment to producing any source code relating to AdMob and Cloud

10 Messaging. *Id.*

11       Fifth, Google has not produced ***any*** privilege log, despite Plaintiffs' repeated requests for

12 one with respect to documents ***already*** produced. *Id.* ¶ 22. This is particularly troubling given

13 Google recently clawed back a document that undercut its baseless argument that Plaintiffs acted

14 in bad faith in making allegations in its Third Amended Complaint, despite that the produced

15 version of the document ***was already redacted for privilege prior to its production*** and the

16 document is purely technical in nature given its status as a "Privacy Design Document" created by

17 and for Google engineers. *Id.* ¶ 21. *Shenwick v. Twitter, Inc.*, 2018 WL 5750119, at *1 (N.D. Cal.

18 Oct. 30, 2018) ("Corporations may not conduct their business affairs in private simply by staffing

19 a transaction with attorneys."); *see also Jo Ann Howard & Assocs., P.C. v. Cassity*, 2014 WL

20 6845854, at *1 (E.D. Mo. Dec. 3, 2014) (document "[n]ot privileged because the communication

21 concerned only underlying facts" despite that lawyers were involved).

22       This delay has been exacerbated by the conduct of Google's counsel. Google's counsel has

23 repeatedly refused to respond to discovery letters and demands sent by Plaintiffs. Mao Decl. ¶¶ 3,

24 17. Even joint letter briefs sent to Google for the addition of their statement to submit to Magistrate

25 Judge Tse for resolution remain unanswered for weeks, stymying the process of promptly

26 resolving discovery disputes. *Id.* ¶ 17 (pointing out that Google is currently sitting on several such

27

28

13

1    joint letter briefs). As expected, Google only began responding to these letter briefs hours before

2    this motion was filed. *Id.*

3        Google's derailment of discovery is the sole reason for Plaintiffs' inability to complete

4    discovery by the current January 11, 2022 deadline.

5    **II.    Good Cause Exists For a Six Month Extension of the Discovery and Expert Disclosure**

6    **Deadlines.**

7        Good cause exists to support the extension of the discovery deadline in this case. *In re*

8    *Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 5462496, at *10.

9        **A.    The Pleadings Are Still Not Settled.**

10       It is axiomatic that where the pleadings are unsettled, good cause generally exists for a

11   modification of the scheduling order. *See, e.g.*, *Applied Med. Res. Corp. v. Tyco Healthcare Grp.*

12   *LP*, No. SACV111406JVSANX, 2013 WL 12472050, at *5 (C.D. Cal. Jan. 14, 2013) (allowing a

13   party to amend the pleadings to add facts revealed during the end of discovery even though the

14   deadline to amend the pleadings had passed). In granting the parties' prior extension of the

15   discovery schedule due to the fact that "the pleadings have not yet been settled," this Court

16   confirmed that unsettled pleadings may constitute good cause for modification. Dkts. 125 & 126.

17       Just as before, the pleadings in this case remain unsettled. Plaintiffs filed their Third

18   Amended Complaint on September 20, 2021. Dkt. 138. Instead of answering, Google decided to

19   file yet another motion to dismiss. That motion is fully briefed, and the parties are waiting for the

20   Court's ruling. *See* Dkt. 151 (submitting the motion without oral argument). As a result, Google

21   has still not responded to any complaint and Plaintiffs remain in the dark about what Google's

22   affirmative defenses may be. Mao Decl. ¶ 6. Maintaining the current discovery deadline would put

23   Plaintiffs in the untenable position of having to conduct and complete discovery, and depose

24   Google witnesses, without even knowing what defenses Google may assert and which allegations

25   Google admits are true. This would not only be inefficient but prejudicial.

26

27

28
                                                       14

**B.    More Time is Needed to Conduct Further Document Discovery Before Depositions.**

As already noted above, there are several categories of documents that Plaintiffs' reasonably seek and for which the parties may need guidance from Magistrate Judge Tse: (1) source code for GA for Firebase, AdMob, and Cloud Messaging; (2) data associated with WAA logs and logs yet to be identified for AdMob, Cloud Messaging, and RTB; (3) documents from additional custodians and that hit on additional search terms; (4) documents associated with RTB, AdMob, and Cloud Messaging; (5) documents and data showing Google's use of WAA-off consumer data, including that of class members, including ad targeting, conversions, measurements, etc.; (6) data to identify class member and to assess damages; and (7) privilege logs and technical documents Google has improperly withheld or clawed back as "privileged."

Google has more than 100,000 employees, with complex data processes and sources, and more time and more documents are necessary for Plaintiffs to uncover the full extent of Google's illegal conduct and present their claims. For example, Plaintiffs still lack basic documents concerning Google's creation of the WAA controls at issue in this lawsuit, and more documents are needed to put together a timeline of the changes Google has made to its Firebase-collected data over time. Mao Decl. ¶ 20. ███████████████████████████

███████████████████████████████████

███████████████████████████████████

*Id.*, Ex. F. ██████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████ *Id.*

█████████████████ *Id.* From the internal Google documents produced to date, it is not easy to piece these events and others like them together. Plaintiffs reasonably seek additional relevant documents, and Plaintiffs are entitled to review them before being forced to take the important depositions in the case.

1

**C.    A Six-Month Extension is Appropriate.**

2

For the aforementioned reasons, Plaintiffs request a six-month extension of the fact

3

discovery and expert disclosure deadlines—moving those deadlines from January 11, 2022 to July

4

13, 2022. Plaintiffs' also ask to Court for clarity regarding the remaining schedule, which Plaintiffs

5

suggest should proceed on the following schedule:

6

7

| Action | Scheduling Order Deadline (Dkt. 59) | Court Ordered Modification (Dkt. 125) | Plaintiffs' Proposed Deadline |
|---|---|---|---|
| Fact Discovery | November 12, 2021 | January 11, 2022 | July 13, 2022 |
| Expert Disclosure / Opening Report Date | December 13, 2021 | January 11, 2022 | July 13, 2022 |
| Supplemental and Rebuttal Expert Report Deadlines | April 14, 2022 | N/A | October 28, 2022 |
| Close of Expert Discovery | May 13, 2022 | N/A | December 16, 2022 |
| Hearing on Motion for Class Certification | June 2, 2022 | N/A | TBD |

8

9

10

11

12

13

The six-month extension request is reasonably short given the scope and complexity of the

14

case and the work that remains to be done. In the scheme of complicated litigation like this, which

15

involves a nationwide class composed of millions of users, six months is not an extensive period

16

of time. Entering the schedule proposed above would give the parties approximately three to four

17

months to flesh out the document and data production issues and another two to three months to

18

conduct the necessary depositions. This is a realistic extension under these circumstances. The

19

requested extension is also commensurate with extensions granted in similarly complex cases,

20

which were much further along in discovery. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*,

21

No. C 09-5840 SI, 2011 WL 2837405, at *2 (N.D. Cal. July 18, 2011) (noting that the court granted

22

a motion to extend the "fact- and expert-discovery deadlines in this case by three to four months"

23

despite that "discovery in this case has been voluminous" and that "more than 28 million pages of

24

discovery have been produced" and "more than 100 depositions" had been taken).

25

**D.    All Other Factors Weigh In Favor of Granting the Requested Extension.**

26

All other factors that could be at issue[2] have been satisfied, paving the way for the grant of

27

28

---

[2] This includes the requirements of LR 16-2 and LR 6-3.

16

1    Plaintiffs' extension request.

2        First, the impetus for the request is clear: Plaintiffs have repeatedly tried to push discovery

3    forward in the face of Google's stalling but more time is needed to complete discovery. *See supra*

4    § I.

5        Second, Plaintiffs have twice raised the need for an extension and have been unable reach

6    any agreement with Google. Just over two months ago, Plaintiffs asked for a six-month extension

7    of the discovery deadline. Mao Decl. ¶ 4. Though Google agreed at the time that an extension was

8    needed, it only stipulated to an initial 60-day extension with the understanding that a more realistic

9    extension would be negotiated thereafter. Dkt. 125. Given the current state of the case, more time

10   is required. Mao Decl. ¶ 26. Plaintiffs have repeatedly raised the need for a further extension, most

11   recently in an October 21, 2021 email sent to Google's counsel. Google has declined to offer any

12   meaningful extension of the fact discovery deadline despite its prior commitment to negotiate in

13   good faith a more realistic extension of the deadlines. *Id.*; *see also* Dkt. 125. Instead, Google

14   opposes Plaintiffs' request for an extension.

15       Third, failure to grant the requested extension, especially without dramatic Court

16   intervention compelling Google to immediately satisfy its discovery obligations, would put

17   Plaintiffs at a significant disadvantage and would be tantamount to allowing Google to unilaterally

18   determine the scope of discovery and thereby the scope of its own liability in this case. Allowing

19   that to occur, especially in light of Google's stonewalling, does violence to the broader notions

20   and purpose of litigation and specifically to Federal Rule of Civil Procedure 26, which presents a

21   liberal discovery standard. Moreover, Google will not be inappropriately prejudiced by an

22   extension of discovery since there is no trial date and they will be "afforded sufficient time to

23   respond to any permitted discovery." *Calloway v. Scribner*, No. 1:05-CV-01284-BAM PC, 2014

24   WL 1317608, at *4 (E.D. Cal. Mar. 27, 2014); *see also Woodard v. City of Menlo Park*, No. C 09-

25   331 SBA, 2012 WL 2119278, at *1-2 (N.D. Cal. June 11, 2012) (reopening discovery and noting

26   that "any prejudice suffered by Defendant in this regard is substantially outweighed by Plaintiff's

27   need to engage in discovery to adequately prepare for trial").

28

1    Fourth, the only extension of the discovery scheduled entered in this case to date modestly

2    pushed back the discovery deadline by 60 days and the expert disclosure date by less than 30 days.

3    Dkt. 125. That stipulation also expressly contemplated the need to further push these deadlines

4    and acknowledged that there would be a need to "meet and confer regarding other deadlines," such

5    as the deadline for Plaintiffs' to file a motion for class certification, which had previously been set

6    at January 14, 2022 and would have been impossible to satisfy in light of the new fact discovery

7    deadline on January 11, 2022. *Compare id.*, *with* Dkt. 47 at 19. Because no other meaningful

8    extensions to the schedule have been sought, this factor weighs in favor of the continuance.

9    Fifth, the requested time modification will allow the Court and the parties to settle the

10    pleadings, resolve the myriad discovery disputes, and allow Plaintiffs to take their depositions

11    ***after*** receiving the relevant documents, thus avoiding the risk of having to take depositions twice.

12    Dkt. 125; *see also Green v. City & Cty. of San Francisco*, No. 17-CV-00607-TSH, 2018 WL

13    6181572, at *4 (N.D. Cal. Nov. 27, 2018) (granting a motion to reopen and allow plaintiff to take

14    additional discovery in part because "[t]here is no pretrial conference or trial date currently set in

15    this matter, so those dates will not be impacted by the reopening of discovery"). The necessary

16    adjustment of the fact-discovery deadline will not prejudice Google—a company who has

17    repeatedly sought delay—in any way. The only hearing that would need to be moved is the class-

18    certification hearing currently set for June 2, 2022. Plaintiffs' proposed revised Case Management

19    Schedule is contained within this motion and within the proposed order submitted therewith.

20                                        **CONCLUSION**

21    Google's ongoing obstruction and delay makes it impossible for the parties to complete

22    discovery before January 11, 2021. Plaintiffs respectfully request that the Court extend the dates

23    in the Case Management Schedule by six-months so as to not reward Google's inappropriate

24    campaign blatantly aimed at hindering Plaintiffs' ability to litigate their claims.

25

26    Dated: October 29, 2021                    Respectfully submitted,

27

28                                           18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: */s/ Amanda Bonn*

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

Jesse Panuccio (admitted *pro hac vice*)
jpanuccio@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Tel.: (202) 237-2727
Fax: (202) 237-6131

James Lee (admitted *pro hac vice*)
jlee@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

19

PLAINTIFFS' MOTION FOR RELIEF FROM
CASE MANAGEMENT SCHEDULE                    CASE NO. 3:20-CV-04688

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
Ra  O. Amen (*pro hac vice*)
ramen@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION FOR RELIEF FROM
CASE MANAGEMENT SCHEDULE          CASE NO. 3:20-CV-04688