**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
  bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
  sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
  esantacana@willkie.com
LORI C. ARAKAKI (SBN: 315119)
  larakaki@willkie.com
ARGEMIRA FLOREZ (SBN: 331153)
  aflorez@willkie.com

Attorneys for
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| ANIBAL RODRIGUEZ, *et al.* individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>vs<br><br>GOOGLE LLC, *et al.*<br><br>Defendant. | Case No. 3:20-CV-04688 RS<br><br>**DECLARATION OF BRYSON SANTAGUIDA RELATED TO PRIVILEGE DISPUTE**<br><br>Judge:        Hon. Alex Tse<br>Action Filed: July 14, 2020<br>Trial Date:   Not Set |

I, BRYSON SANTAGUIDA, declare:

1.  I am a Senior Counsel at Google LLC, where I have served as in-house counsel for Google related to a variety of technology products and services, including Google Analytics for Firebase. I have served as product or senior counsel at Google since 2013.

2.  I am an active member of the California State Bar, to which I was admitted in February 2008 after graduating from the University of Chicago Law School.

3.  I understand that a memorandum with Bates number GOOG-RDGZ-00032746 to -32767 was inadvertently produced by Google in the above-captioned matter, after which Google issued notice that the document is protected by the Attorney-Client Privilege and clawed back by Google's outside counsel pursuant to the Protective Order entered by the Court in this case.

4.  The document at issue is a product memorandum for privacy legal review created in the Google Docs platform, a word processing system that enables multiple authors and collaborators to work and comment on a document simultaneously. The memorandum's title is "Google Analytics for Firebase Privacy Design Doc" (hereafter "the Memorandum"). The purpose of the Memorandum is to facilitate conversation between me as product counsel for GA for Firebase and the product team as I prepare and render legal advice concerning liability risks related to GA for Firebase.

5.  The Memorandum is dated June 8, 2018. It also contains comments dated from the summer of 2019 and the summer of 2020.

6.  The Memorandum began as a document crafted by Google's privacy counsel's office as a set of questions to pose to Google employees to facilitate the request for and receipt of information from Google employees relevant to legal advice that Google's corporate counsel provides to the corporation relating to privacy laws, regulations, ongoing litigation, and potential litigation. The questions in the document are designed by counsel to be targeted at significant privacy-related legal issues on which I and other counsel at Google provide legal advice, including issues relating to user consent, data collection, data sharing, and disclosures given to users and third party customers.

7.      In the summer of 2018, I oversaw the launch of Google Analytics for Firebase (GA for Firebase). As part of this launch, it was my responsibility to provide legal advice to Google concerning whether and how GA for Firebase complies with applicable privacy laws and regulations, as well as the potential impact of the product launch on ongoing and potential litigation. As part of executing that responsibility, it was my obligation to perform an investigation to establish certain information about the product team's plans for the planned new features and inner functionality of GA for Firebase in order to render accurate legal advice.

8.      The preparation of the Memorandum followed the model of a live conversation rather than a single drafting and final publication model. The technology underlying Google Docs enabled this live conversation to continue over a lengthy period of time. As the product team (primarily engineers) prepared the answers to the Memorandum's questions posed by counsel, I engaged in numerous live meetings with the engineers and product managers to pose follow-up questions that I believed needed to be answered so that I could render accurate legal advice to the corporation.

9.      The product team and I had undergone a similar exercise over the prior three years relating to "Firebase Analytics," a predecessor product to GA for Firebase. A similar memorandum was prepared by the product team in connection with "Firebase Analytics," and I provided extensive comments both in live meetings and in the document itself in an effort to refine that predecessor memorandum so that it would reflect accurate answers to the key legal questions posed. The Memorandum at issue here contains very similar answers to the predecessor product's memorandum because it was crafted in part by leveraging the earlier work that the product team and I had done on the "Firebase Analytics" memorandum.

10.     The follow-up questions I posed to the product team in live team meetings and in comments on the predecessor memorandum resulted in changes to the content of the GA for Firebase Memorandum and the earlier memorandum related to "Firebase Analytics." Those follow-up questions were crafted by me as an exercise of my independent legal judgment as corporate counsel for Google, designed to ascertain information necessary to establish whether and how "Firebase Analytics" and GA for Firebase complied with privacy laws and regulations,

and whether and how those product and/or feature launches might impact ongoing or potential litigation.

11. As part of the launch process for GA for Firebase, the Memorandum at issue here was submitted to me as one basis for reaching final pre-launch approval. I reviewed the Memorandum as of late May 2018 and approved the launch. My approval is recorded in an internal Google system used to track the launch progress of GA for Firebase, and in particular, sign-off from legal counsel. That internal system notes that I provided my approval on May 14, 2018.

12. Had I declined to approve the launch or advised further developmental steps, such as design modifications at that time, that would have constituted advice from me to the corporation that further legal review (and potentially changes to the product) was needed before the product could launch with approval from Google's corporate counsel. Without my approval, the product would not have launched when it did.

13. In the summer of 2019, the product team and legal counsel revisited the document to ensure it remained accurate one year later. Some changes were made to the document as a result of changes in the product, and some of the engineer's comments on the Memorandum expressly invite another Google product counsel, Joy Su, to comment on specific content.

14. In the summer of 2020, the product team and legal counsel revisited the document to ensure it remained accurate one year later. Some changes were made to the document as a result of changes in the product.

15. Google has never shared the document with outside parties, including the FTC. Google treats this document internally and others like it, including other "Privacy Design Docs," as confidential, attorney work product, and attorney-client privileged. To the extent Plaintiffs' brief concerning this document implies that this document was shared with outside regulators, such an implication is false.

16. I understand that Plaintiffs have argued based on public sources that Privacy Design Documents like the document at issue here are technical documents created by and for Google engineers in the ordinary course of business. That is also incorrect to the extent that it implies that

such documents serve only business purposes unrelated to the provision of legal advice. This document, and other Privacy Design Documents, is part of an ongoing conversation with Google's in-house lawyers to facilitate the provision of legal advice to Google. Engineers and privacy working groups are also typically involved in that conversation. All of that is under the aegis of a cross-functional committee with members from various fields of expertise. The principal purpose of all this cross-functional conversation was to facilitate my ability, as counsel for Google, to render legal advice about Google's efforts to comply with complicated regulatory and legal regimes relating to privacy issues.

17. As Plaintiffs describe, it is the case that Privacy Design Documents like the one at issue here contain factual matter, as do many documents created for the provision of legal advice. That does not change the fundamental origin of the document—a set of questions drafted by lawyers—or the purpose of the document, which is to facilitate legal advice from Google's in-house counsel.

18. A privacy working group provides technical expertise. Of course, in-house and external technical experts advise and consult Google and its in-house counsel routinely, and that does not change the character of privileged conversations and communications.

19. The Privacy Legal Group is an expert legal team within Google. The product counsel team, of which I am a member, has broader legal responsibilities but provides similar legal advice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed December 1, 2021, at San Francisco, California.

                                      */s/ Bryson Santaguida*
                                      BRYSON SANTAGUIDA