January 28, 2022

**Submitted via ECF**

Magistrate Judge Alex G. Tse
San Francisco Courthouse
Courtroom A - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    Letter Brief re: Court's Order re: Search Terms (Dkt. No. 208)
               *Rodriguez v. Google LLC*, Case No. 3:20-cv-04688-RS (N.D. Cal.)

Dear Magistrate Judge Tse:

This Court's Order dated January 20, 2022, Dkt. No. 208, requests supplemental information regarding search terms 40a, 40b, 40c, 43a, 43b, and 43c. *See id.* at 4 nn. 5, 6. In its Order, the Court ordered that Google perform 21 of the 43 searches that were at issue. Those 21 searches comprise a Court-Ordered review of at least 135,000 documents. Google had proposed that it perform 15 searches adding to ~33,000 documents, and Plaintiffs had proposed that Google perform 43 searches adding to ~600,000 documents.

The Court left open terms 40 and 43. Plaintiffs' proposal that Google perform searches 40b, 40c, 43b, and 43c would result in an additional review of ~85,000 documents. In its last brief, Google had proposed searches 40a and 43a, which were significantly narrowed versions of Plaintiffs' proposal, and which added to ~12,000 documents. Now, Google has reconsidered search terms 40 and 43 in light of the Court's Order regarding the other search terms that were in dispute. In the interest of compromise, Google no longer asks that this Court adopt 40a and 43a. Instead, Google proposes less narrowed versions of 40b, 40c, 43b, and 43c that would result in a search of 22,385 additional documents. *See* **Exhibit A**. Plaintiffs seek those narrowed versions plus more, as described below.

**Custodians Steve Ganem, David Monsees, Francis Ma, and Todd Hansen**: The Court asked Google to explain in more detail where Custodians Ganem, Monsees, Ma and Hansen are located within Google's org chart and how their roles are different.

Custodian Monsees is Google's product manager for Web & App Activity (WAA). Google has already employed dozens of search strings on Mr. Monsees's ESI, targeted at all aspects of Plaintiffs' case, including ones concerning WAA, GA for Firebase (e.g., GA4F, "GA for Firebase"), disclosures (e.g., "data we collect"), and app-interaction data (e.g., "correlate* /5 data*").

Custodian Ganem is a Group Product Manager with supervisory authority for GA for Firebase. As with Mr. Monsees, Google has already employed dozens of search strings on Mr. Ganem's ESI targeted at all aspects of Plaintiffs' case, including terms concerning WAA, GA for Firebase, disclosures, and app-interaction data.

1

Custodian Ma oversees all of Firebase SDK, which comprises 19 products; just one of those is GA for Firebase, the product at issue in this case. Mr. Ma's title is Director, Product Management. Google designated Mr. Ma as a custodian at the start of this case in an abundance of caution, when Plaintiffs asserted that portions of the Firebase SDK *other than* GA for Firebase contained "secret scripts" that amounted to illegal wiretaps. Judge Seeborg rejected the "secret scripts" theory in his first Order on Google's motion to dismiss (Dkt. No. 109 at 11–12), and the Court's recent Order dismissing with prejudice the remaining wiretap claim (Dkt. No. 209 at 7) makes Mr. Ma almost completely irrelevant as a custodian.

Custodian Hansen is an engineering manager for Firebase Cloud Messaging (FCM), another Firebase product. Plaintiffs allege that FCM uses data from GA for Firebase to send mobile notifications to smartphone users. Mr. Hansen is the sole FCM custodian, given the minor role FCM plays in Plaintiffs' case. The central FCM-related question in this case is a technical one: whether the data it uses from GA for Firebase to send mobile notifications to smartphone users is anonymized or not (it is).

**Search Term 40b (Ma) and 40c (Hansen)**: Google's original proposal 40a for this search term sought to cut out problematic terms in Plaintiffs' compound search string that were either facially overbroad or appeared to disproportionately expand the review population with little anticipated benefit. Google has looked at those terms again in more detail and has added some of them back in in order to compromise. At this point, Google seeks only to cut out the combination of "(FCM or 'cloud messaging')" with the words "firebase," "perform*," "event," and "audience." These terms result in large hit counts, as evidenced in Google's attached chart. And they violate the spirit of the Court's decision that Google need not search plain product-name terms unadorned by relevant limiters:

- Combining "FCM" or "cloud messaging" with "**firebase**" is redundant. The name of that product is "Firebase Cloud Messaging." It would be like combining "ND Cal" with "Northern."

- "**perform\***" is overbroad. The only aspect of FCM accused by Plaintiffs is the specific (optional) integration that a customer can make between FCM and GA for Firebase to better target a mobile notification, *e.g.*, The *New York Times* can use its GA for Firebase and FCM accounts together to send a notification about Tennis-related news to a list of (anonymous) users who selected "Tennis" as an interest in their app. Targeting any discussion concerning the performance of FCM, or the performance of anything else, does not adequately target what matters. The other remaining terms in the search string result in plenty of documents related to the core issues, *e.g.*, "interact*," "measure," and "appmeasurement."

- "**event**" is also overbroad for the same reason. The entire Firebase SDK functions on an event basis. Engineers discuss "events" in connection with myriad facets of the SDK, including FCM, which can be triggered to send messages to smartphone users upon certain events. None of this is in dispute in the case, and it isn't tailored to the specific issue Plaintiffs accuse: the use of GA for Firebase data by FCM to know to whom to send the notifications.

50308436.4

- "**audience**" is redundant the way "firebase" is. The way FCM works is to send a "notification" or "message" to a defined "audience." Every single FCM message sent to a smartphone is sent to an "audience," regardless of anything else. That an "audience" receives a message has no relationship to whether FCM leverages or doesn't leverage anonymous GA for Firebase data.

There are no other differences between Google's proposal and Plaintiffs' for search term 40.

**Search Term 43b (Ganem) and 43c (Ma, Monsees, Hansen, Weng)**: As with search term 40, Google's original search term 43a proposal sought to cut out problematic terms. Upon reconsideration, Google has added some back in. Google's proposal is to use Plaintiffs' 43b and 43c as a starting point, with a few key differences. As to search term 43b, which relates to Custodian Ganem (whose responsibilities involve GA for Firebase):

- Cut out "**firebase**" in the first half of the search string because that still leaves "analytics," "scion," and other more specific product names that actually relate to this case. As Judge Seeborg held, this case is no longer about "firebase" writ large; it is about the specific analytics product within it.

- Cut out "**perform\***," "**event**," and "**audience**," for the same reasons as above. Discussions about performance without context are not reasonably tailored to the aspect of GA for Firebase that is accused here. GA for Firebase works on the basis of "events." "Analytics AND event" is like searching "ND Cal" and "Order." It's overbroad and not helpful. And "audience" is a feature of GA for Firebase that isn't really at issue, for the reasons discussed above. It would be like searching "ND Cal" and "(plaintiff OR defendant)." Google notes here, too, that unlike with FCM, Google has already employed dozens of search strings targeting GA for Firebase already. These specific words, likely to produce many false positives, are not needed for Plaintiffs to get the documents they need to understand their case.

- Cut out "**GMS**," "**Google Mobile Service**," and "**clearcut**" from the second half of the search string because those terms are overbroad and cause significantly large hit counts in light of their facial overbreadth. GMS is an even broader concept than "firebase"; it includes a wide variety of products and APIs unrelated to this case. It's a core technical facet of Android that helps make it run.[1] In its initial proposal for search term 40a, Google agreed to employ "GMS" and "Google Mobile Service" in a string that was more strictly limited than Plaintiffs' current proposal.[2] "Clearcut" is a data source that relates to this case only in that some of the data Plaintiffs are interested in Plaintiffs apparently believe is stored there. It otherwise has no relevance, even as it serves as a data source for all kinds of unrelated things. And, again, insofar as these terms are meant to capture analytics-related documents, there are hundreds of terms that are already targeted at what matters.

---

[1] *See* https://www.android.com/gms/.

[2] Google proposed to limit the GMS-string with the terms (log\* OR user /2 data OR measurement).

3

- The parties agreed to switch the term "**gold**" into the first half of the search string rather than the second half. That makes more sense, since "gold" just refers to "analytics." Google proposes to run it without the limiters discussed above (perform*, event, audience, etc.).

Finally, with respect to search term 43c, the only difference between Plaintiffs' proposal and Google's is that Google seeks to cut the limiters "firebase," "perform*," "event," and "audience" for the same reasons discussed above in connection with terms 40b, 40c, and 43b.

Respectfully,


WILLKIE FARR & GALLAGHER, LLP


By: /s/ *Eduardo E. Santacana*
    Eduardo E. Santacana (SBN: 281668)
    esantacana@willkie.com
    Benedict Y. Hur (SBN: 224018)
    bhur@willkie.com
    Simona Agnolucci (SBN: 246943)
    sagnolucci@willkie.com
    Lori Arakaki (SBN: 315119)
    larakaki@willkie.com
    One Front Street, 34th Floor
    San Francisco, CA 94111
    Telephone: (415) 858-7400
    Facsimile: (415) 858-7599

*Attorneys for Defendant Google LLC*