February 2, 2022

**Submitted via ECF**

Magistrate Judge Alex G. Tse
San Francisco Courthouse
Courtroom A - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    Joint Letter Brief re: Concur IP Consultants
               *Rodriguez v. Google LLC*, Case No. 3:20-cv-04688-RS (N.D. Cal.)

Dear Magistrate Judge Tse:

      Plaintiffs and Google LLC ("Google") submit this joint letter brief regarding Plaintiffs' request to disclose materials marked "Confidential" or "Highly Confidential" to certain consulting experts employed by Concur IP Consulting Pvt. Ltd. Counsel for the parties met and conferred in good faith, including by videoconference on December 6, 2021 and by phone on December 10, 2021. Exhibit A is Google's proposed order, Exhibit B is Plaintiffs' proposed order, and Exhibit C is a declaration drafted by Sachin Sinha, Concur IP's co-founder.

# **GOOGLE'S STATEMENT**

Google objects to Plaintiffs' request to disclose confidential and highly confidential information to 11 specific consultants employed by Concur IP because Plaintiffs cannot show that disclosure to those consultants is "reasonably necessary," and such disclosure would unacceptably raise the risk of a violation of the Protective Order's prohibition on using protected material for any purpose other than in connection with this litigation. ECF No. 70 (P.O. § 7.1). Google seeks an Order requiring that Plaintiffs segregate the Concur IP consultants so that each one works only on this case or on Plaintiffs' counsel's other case against Google, *Brown v. Google*, but not both.

The Protective Order negotiated by Plaintiffs and entered by Judge Seeborg limits disclosure of Confidential and Highly Confidential materials to experts to whom disclosure is "reasonably necessary." P.O. §§ 7.2(c), 7.3(b). For Highly Confidential materials, such disclosure must be preceded by a disclosure to the producing party of the expert's identity, resume, employers, credentials, and the other litigations on which the expert is or has been working. P.O. § 7.5(a). If the producing party (here, Google) objects, the receiving party (here, Plaintiffs) must file a motion that (1) "set[s] forth in detail the reasons why the disclosure to the Expert is reasonably necessary"; (2) "assess[es] the risk of harm that the disclosure would entail"; and (3) "suggest[s] any additional means that could be used to reduce that risk." P.O. § 7.5(c). The producing party bears the burden of demonstrating that "the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert." P.O. § 7.5(d).

Google does not object to Plaintiffs using Concur IP for both cases, and so does not seek to disqualify any expert. Instead, it seeks one simple and non-controversial safeguard: that the teams used at that large expert outfit be segregated into their respective litigations to reduce the risk that materials produced in one case bleed into another.

The Protective Order anticipates this commingling concern. Its "Basic Principles" include that "A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation, and shall not be used for any business purpose, in connection with any other legal proceeding, or directly or indirectly for any other purpose whatsoever." P.O. § 7.1. Both of this District's Model Protective Orders provide the same language in the same section 7.1, except the underlined portion above, which was specifically negotiated by the parties as an addition here.

There is good reason for this standard provision. Without it, the risk that a litigant could use discovery to root around a party's files for purposes unconnected to the litigation, such as filing a new case in the future, using the discovery in another legal proceeding, or waging a PR war in the press would be unacceptably high. But putting the burden of proving what goes on in a person's mind on the disclosing party in such a situation would unfairly raise the barrier to vindicating the Protective Order. So, as is done routinely in many courts, the burden is shifted by this standard provision: cross-use is forbidden unless expressly approved by a Court. *See On Command Video Corp. v. LodgeNet Ent. Corp.*, 976 F. Supp. 917, 922 (N.D. Cal. 1997) (finding plaintiff's use of material produced under protective order to file new litigation in state court was sanctionable).

1

In this case, the same counsel who represent Plaintiffs also represent different plaintiffs asserting different claims in a different, co-pending case in this District: *Brown v. Google*, No. 5:20-CV-3664-LHK-SVK (N.D. Cal.). As a result, the same Plaintiffs' counsel who in this case receive Attorneys' Eyes Only information also receive such information in the *Brown* case, and vice versa. Plaintiffs have disclosed ***twenty-two*** experts in this case, and every single one of them has also been disclosed in *Brown*. Even not including the eleven Concur IP consultants at issue here, there are eleven other experts who purportedly are working on both cases. Google has thus far not objected to those experts, bending over backwards to accommodate Plaintiffs' right to choose their experts in good faith.[1] But when Plaintiffs disclosed eleven more consultants in both this case and in *Brown*, and because the scope of the claims and the document production in *Brown* are far greater in volume than those in this case, Google was left with no other conclusion to draw but that Plaintiffs' counsel were intentionally cross-pollinating their cases in order to use each to inform the other. This was a bridge too far: cross-pollination of expert consultants can serve no legitimate purpose, and Plaintiffs, upon request, have never identified one. Their response below identifies only an *illegitimate* purpose: that they want their experts to have "background" education about Google gleaned from Attorneys' Eyes Only material in different cases. That's not allowed.

"[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*, No. C-09-02180 SBA DMR, 2011 WL 197811, at *3 (N.D. Cal. Jan. 20, 2011) (quoting *FTC v. Exxon Corp.,* 636 F.2d 1336, 1350 (D.C.Cir.1980)); *see also Pellerin v. Honeywell Int'l Inc.,* No. 11CV1278-BEN CAB, 2012 WL 112539, at *3 (S.D. Cal. Jan. 12, 2012) (sustaining defendant's objection to plaintiff's independent expert for reasons including that "the human brain does not compartmentalize information in that manner."). Allowing expert consultants to commingle Google's documents from this case and from *Brown* effectively circumvents the Court's right to reject a request for coordinating discovery between this case and that case. Even the best-intentioned person will not be able to separate in their mind the information they learn from this case and the information they learn from *Brown*. And while all the information is Google's, the Protective Order is clear that any other purpose is prohibited, including to aid Plaintiffs' counsel in their prosecution of Google in a separate case or to achieve, in effect, discovery coordination without a Court Order authorizing it. Indeed, Section 10 of the Protective Order is devoted to the procedures that should be followed when a third party (like the other plaintiffs these Plaintiffs' counsel represent in *Brown*) seeks to use a document produced in this case. No such procedure has been followed here.

This is not an academic concern. Plaintiffs' counsel already tried to force Google to hand over its production to the Arizona Attorney General in a third unrelated case. In turn, the Arizona Attorney General subpoenaed the plaintiffs in this case to try and force them to hand over Google's productions in this case. The *Brown* case is itself coordinated with a fourth case against Google in this District. And Google, being located in this District, is a repeat player here. Judges handling discovery disputes should be confident that when they order a production, it is solely for purposes of the instant litigation. And Google should have the confidence to know that when it produces a document, it will not snake its way through the federal and state court systems thanks to a chain

---

[1] Of course, Google continues to closely monitor the disclosure and use of its confidential information, and it reserves the right to request relief from a violation of the Protective Order by these other experts, Plaintiffs' counsel, or anyone else.

of overlapping counsel who are themselves repeat players, too. To permit the open and intentional cross-pollination that Plaintiffs seek here is to render the prohibition in the Protective Order a dead letter.

Plaintiffs must establish that disclosure to these 11 additional consultants is "reasonably necessary" to litigate this case. P.O. § 7.5(c) and (3). Plaintiffs have eleven other experts already disclosed in this case. Surely that is enough. And to the extent they want to use more consultants to help them understand the case, they can use some who are not also working on *Brown*.

Finally, that Google did not object to the disclosure of highly confidential information to Concur IP in *Brown* is a red herring. If they solely work on *Brown*, then Google will not object.

Plaintiffs should segregate their Concur IP consultants into two cases. That is all Google, at this juncture, is asking for, though it will continue to monitor closely for other potential violations of the Protective Order that could arise by Plaintiffs' counsel's decision to blur the lines between these cases. For now, because Plaintiffs cannot demonstrate why they cannot adopt the safeguard Google has requested in order to reduce the risk of harm, and because Google has established that the risk of a violation of the Protective Order through cross-pollination of experts in this posture is too high without that safeguard, the Court should order segregation of the Concur IP team into respective cases.[2]

## PLAINTIFFS' STATEMENT

There have already been more than 15,000 highly technical documents produced in this case, and Plaintiffs expect Google to produce many more from the 19 new custodians. Plaintiffs' counsel enlisted expert consultants to review these materials, as any responsible putative class counsel would. And given the importance of the task, Plaintiffs' counsel selected trusted consultants, with whom they have worked before. Everything about this course of action is ordinary. And yet Google vociferously objects.

Google's suggestion that disclosure of protected materials to the consultants at issue would violate the protective order—simply because they also work on another case in which Google is a defendant—is utterly baseless. To the extent Google's objection is premised on the *risk* of a violation, it is unmoored from the protective order and any coherent articulation of prejudice. Plaintiffs' counsel and experts have taken great care to segregate materials in this case from those in *Brown*. And if they violate the protective order at some future time, the Court can hold them accountable. Neither the likelihood of a violation nor the injuries that might flow from one are so great in this case as to justify the additional, extreme measure of expert disqualification.

The protective order provides that those who receive protected material may not "*use*" that material in another legal proceeding. P.O. ¶ 7.1. Google's concern, by contrast, is that the experts Plaintiffs selected *know about* confidential material that Google has disclosed in *Brown*. These are different concepts. Courts agree that the mere fact that someone "saw [protected material] and

---

[2] For the avoidance of doubt, the segregation order should prohibit Concur IP consultants who have already worked on *Brown* to also work on *Rodriguez*, too, as reflected in Google's proposed order.

thereafter could not unsee it" "does not suffice" to establish "use," as that word is "ordinar[ily]" understood. *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 182 (S.D.N.Y. 2020); *In re Roundup Prods. Liab. Litig.*, — F. Supp. 3d —, 2021 WL 3161590, at *12 (N.D. Cal. June 22, 2021) (recognizing that an attorney can *access* confidential work product in one case but not necessarily *use* it in a related case). Stated differently, it would "strain[]" the word "use" to find a violation of the protective order whenever someone who "acquired a familiarity" with confidential material produced in one case has an easier time making sense of similar materials in another. *Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*, 1999 WL 528545, at *2 (N.D. Ill. July 19, 1999); *see also Streck, Inc. v. Res. & Diagnostic Sys., Inc.*, 250 F.R.D. 426, 435 (D. Neb. 2008) (same); *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, 840 F. Supp. 2d 1072, 1075 (N.D. Ill. 2012) (expert did not "consider[]" confidential materials that merely contributed to his "background knowledge"). A restriction on "use" only prohibits working with confidential materials in a "concrete" way. *United States v. Wells Fargo Bank, N.A.*, 2016 WL 11408180, at *1 (N.D. Ga. June 16, 2016); *see In re eBay Seller Antitrust Litig.*, 2010 WL 2106004, at *1-2 (N.D. Cal. May 25 2010) (mere knowledge of confidential materials does not constitute use, but reviewing documents in one case "for some purpose other than [that] litigation" would); *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d at 182 (the word "use" "demands some active engagement" with the documents at issue).

The authorities upon which Google relies do not suggest otherwise. In fact, one of Google's cases recognizes a distinction between provisions that prohibit "use" of confidential materials (which is what the protective order does here) and provisions that prohibit recipients of confidential materials from working on similar matters (which is what Google now seeks). *Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*, 2011 WL 197811, at *1 (N.D. Cal. Jan. 20, 2011) (considering whether to include a prosecution bar in addition to a use restriction). In another, there was no dispute that a party used confidential information as the basis for a new lawsuit; the only question was whether the protective order prohibited such use. *See On Command Video Corp. v. LodgeNet Entm't Corp.*, 976 F. Supp. 917, 921 (N.D. Cal. 1997).

With that background, it is obvious that Plaintiffs have neither done nor proposed to do anything that would come close to violating the protective order. As Plaintiffs' counsel have repeatedly assured Google, documents in this case are stored separately from those produced in *Brown*, attorneys analyze each case without relying on confidential materials produced in the other, attorneys account for their time on each case separately, and experts do the same. Bringing Concur IP's consultants onto this case will not change that. *See* Ex. C (Sinha Decl.), ¶ 7 (Concur IP and its employees have never violated, nor been accused of violating, a protective order).

Google offers no evidence—none—that Plaintiffs have acted improperly. As far as Plaintiffs can tell, Google's handwringing about purported "cross-pollination" is based on three contentions. *First*, Plaintiffs' counsel also represent the plaintiffs in *Brown*. But Google cites no authority for the proposition that it is inappropriate for attorneys to represent "different plaintiffs asserting different claims" in a different case, and there is none. *Supra* at 1. In fact, the kind of bar that Google appears to desire would be in serious tension with ethics rules, which prohibit attorneys from restricting their right to practice law as part of the settlement of a controversy. *See Hu-Friedy Mfg. Co.*, 1999 WL 528545, at *2-3. *Second*, Plaintiffs served document requests for materials Google produced to the Arizona Attorney General in another case. But the protective order does not prohibit Plaintiffs from using normal discovery tools to seek relevant documents produced in

4

another case, and it would be odd if it did. And *third*, many of the experts Plaintiffs retained in this case were also retained in *Brown*. As we have thoroughly explained, that is permissible under the protective order.

Google repeats general principles from inapposite cases and uses vague terms like "cross-pollination" to obscure the fact that it seeks to impose far more onerous restrictions than those contemplated by the protective order. And Google falls far short of making the necessary showing of good cause. Disqualification of experts based on their background knowledge is a "drastic" measure, *Applied Signal Tech.*, 2011 WL 197811, at *1, and it is justified only when even someone's mere *familiarity* with confidential information poses grave danger, such as "competitive" injury to the business, *see id.* at *2-3 (barring recipients of a business's proprietary competitive information from representing its competitors in the prosecution of competing patents, for fear it might inadvertently affect the scope of the patent); *see In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1376, 1378-81 (Fed. Cir. 2010) (explaining the rationale for prosecution bars, which are "unique to patent law"); *cf. Allstate Ins. Co.*, 840 F. Supp. 2d at 1083-84 (disqualifying experts who "switch[] sides" may preserve public trust, but disqualifying those who only testify *against* a party does not).

This case presents no such exceptional circumstances. In fact, a close reading of Google's statement reveals no articulable harm at all. *See In re eBay Seller Antitrust Litig.*, 2010 WL 2106004, at *2 ("it is not clear whether an actual violation occurred," and even if it had, "it is equally unclear what harm, if any, has been visited upon eBay as a result"). There is no risk of inadvertent disclosure because the Concur IP consultants will not testify. If anything, Google's demand that Plaintiffs work with 11 new experts would expand the universe of people with access to Google's confidential material, *weakening* the materials' confidentiality. Given that Google is uninterested in confidentiality, it is worth asking, what is this really about? Plaintiffs can conceive of only one answer: Google wants to delay these proceedings and increase costs by forcing Plaintiffs to use experts who might have to spend more time building background knowledge. That position is, in a word, "unimpressive." *Hu-Friedy Mfg. Co.*, 1999 WL 528545, at *3.

There are important considerations on the other side of the ledger. First, Google's position could disqualify any expert from working on a case against Google more than once, a significant problem because Google is a "repeat player" in privacy litigation. *Supra* at 2; *see also Allstate Ins. Co.*, 840 F. Supp. 2d at 1081 (disqualifying experts because of their background knowledge would "undermine[] the valuable role of experts in litigation"). Equally important, Plaintiffs need a team of consultants to review and contextualize technical documents produced in this case, especially as Plaintiffs await productions from 19 new custodians—which Google estimates will "*quintuple* document discovery." ECF No. 155 at 3. Plaintiffs chose *these* consultants for a simple and perfectly legitimate reason: Plaintiffs' counsel and other experts have worked well with them before and know they are technically skilled. They also know these consultants to be efficient, trustworthy, and good at what they do. Plaintiffs' counsel and experts do not have that same relationship with others at Concur IP.

Although Google pays lip service to "Plaintiffs' right to choose their experts in good faith," *supra* at 2, they seek to compromise it—and for no good reason. Google's objection, which assumes impropriety despite Plaintiffs' counsel's consistent professionalism, should be overruled.

5

Respectfully,

WILLKIE FARR & GALLAGHER, LLP

By: /s/
    Eduardo E. Santacana (SBN: 281668)
    esantacana@willkie.com
    Benedict Y. Hur (SBN: 224018)
    bhur@willkie.com
    Simona Agnolucci (SBN: 246943)
    sagnolucci@willkie.com
    Lori Arakaki (SBN: 315119)
    larakaki@willkie.com
    One Front Street, 34th Floor
    San Francisco, CA 94111
    Telephone: (415) 858-7400
    Facsimile: (415) 858-7599

*Attorneys for Defendant Google LLC*

SUSMAN GODFREY LLP

/s/
    Amanda Bonn (CA Bar No. 270891)
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
    Beko Reblitz-Richardson (CA Bar No. 238027)
    brichardson@bsfllp.com
    BOIES SCHILLER FLEXNER LLP
    44 Montgomery Street, 41st Floor
    San Francisco, CA 94104
    Telephone: (415) 293 6858
Facsimile (415) 999 9695

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

William Christopher Carmody (*pro hac vice*)
  bcarmody@susmangodfrey.com
  Shawn J. Rabin (*pro hac vice*)
  srabin@susmangodfrey.com
  Steven Shepard (*pro hac vice*)
  sshepard@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

  Amanda Bonn (CA Bar No. 270891)
  abonn@susmangodfrey.com
  SUSMAN GODFREY L.L.P.
  1900 Avenue of the Stars, Suite 1400
  Los Angeles, CA 90067

6

Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

7

## ATTESTATION

I, Eduardo Santacana, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: February 2, 2022                             By:   /s/ _____