April 29, 2022

**Submitted via ECF**

Magistrate Judge Alex G. Tse
San Francisco Courthouse
Courtroom A - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:     Joint Letter Brief re: Motion for Protective Order
               *Rodriguez v. Google LLC*, Case No. 3:20-cv-04688-RS (N.D. Cal.)

Dear Magistrate Judge Tse:

      Google LLC ("Google") and Plaintiffs submit this joint letter brief regarding Plaintiffs' Requests for Production of Documents (RFPs), Set Seven, RFP Nos. 192–246, through which they seek the documents that hit on the following three search terms—(1) WAA, (2) sWAA, and (3) Firebase—that were produced in a different case pending in this jurisdiction, *Brown v. Google*, Case No. 5:20-CV003664-LHK, and cross-produced in *Brown* from *Calhoun v. Google*, No. 5:20-cv-05146-LHK. Counsel for the parties have met and conferred by videoconference on March 3, 2022 but have reached an impasse as to the appropriateness of these requests. Google respectfully moves this Court to issue a protective order excusing Google from reviewing the requested documents and producing any responsive to agreed-upon requests. Exhibit A is Plaintiffs' proposed order, and Exhibit B is Google's proposed order. Exhibit C is Plaintiffs' Requests for Production of Documents to Defendant Google, LLC, Set 7.

## GOOGLE'S STATEMENT

Google seeks a protective order over 55 requests contained in Plaintiffs' 7th Set of RFPs. Plaintiffs' counsel copied and pasted nearly all of them from requests they served in the unrelated case *Brown v. Google* (in which they also serve as counsel). Those requests would require Google to undertake a burdensome review of documents produced in two cases, *Brown* and *Calhoun v. Google*. Not only is this an inefficient and burdensome approach to obtaining relevant information, it is a transparent attempt to circumvent the established discovery process, its limits, and the Court's prior orders. If Plaintiffs have concerns about the breadth of discovery in this case, they should focus on relevant discovery here rather than forcing the Court into the morass of evaluating the facts of unrelated matters.

Plaintiffs demand documents Google produced in *Brown* and *Calhoun* that include the terms "WAA," "sWAA," or "Firebase." *See* Exhibit C (original requests). Those cases have been related to one another, but, tellingly, not to this one. For good reason: *Brown* and *Calhoun* concern different methods of data collection, Google representations, and data controls—and neither concern the method of data collection at issue here: GA for Firebase. *Brown* and *Calhoun* concern data collected through web browsers such as Google's Chrome browser, and representations about web browsers such as the Chrome Privacy Notice, Incognito Splash Screen, and Chrome Privacy Policy. *Brown*, Dkt. 113 at 1–2, 5; *Calhoun*, Dkt. 142 at 2, 4. Web browsing is not at issue here. The plaintiffs allege that Google's data collection should be governed by "private browsing mode" in *Brown*, Dkt. 113 at 2:19-20, and the Chrome browser "Sync" feature in *Calhoun*, Dkt. 142 at 1:26-2:1. By contrast, the data control at issue here is the Google Account WAA toggle. So aside from the superficial, high-level similarity in the allegation that "Google collects . . . browsing data without authorization," the connection between this case and *Brown*/*Calhoun* is tenuous.

There are four fundamental problems with Plaintiffs' request: it is duplicative, overbroad, disproportionate, and ignores the discovery negotiations, agreements, and orders to date.

*First*, the relevant part of Plaintiffs' request is duplicative. In response to Plaintiffs' first 191 RFPs, Google is already reviewing and producing ESI from 24 custodians with responsibility for all aspects of this case. To the extent there are documents relevant to *Rodriguez* and *Brown/Calhoun*, they will be produced through the normal course of discovery in each. For example, Plaintiffs seek *Brown*/*Calhoun* documents to understand WAA. They will get those documents from overlapping custodians including Google's WAA product manager (PM), David Monsees, and nine others ranging from Google Account and privacy, safety, and security PMs and engineers, to a user experience researcher. At a minimum, this request is premature because the parties have not even settled on search terms for the latest *Rodriguez* custodians (*see* Dkt. 233 & additional letter brief forthcoming). For that reason, Plaintiffs' argument (at n.3) that the low volume of pre-2015 documents produced warrants their demand for *Brown* ESI is meritless. And even if Google had a significant volume of 2012–14 ESI available (not so), it is unlikely many documents would be surfaced for review or be responsive because the products at issue here did not exist a decade ago. Firebase was acquired in October 2014, and app activity was added to WAA later than that. As for GA for Firebase, it has nothing to do with *Brown*, and Plaintiffs make no attempt to argue otherwise. If Google's production thus far omitted information on WAA or GA for Firebase, Plaintiffs could propound a targeted RFP or interrogatory. But they know they can't substantiate a request for more, so they seek to evade Rule 26 and 34 by opening this parallel discovery track.

*Second*, Plaintiffs' request is overbroad in at least two ways: it seeks documents from irrelevant custodians and documents concerning Firebase writ large. There are 34 custodians in *Brown* that do not overlap with those in *Rodriguez*. Plaintiffs have never mentioned those 34 names—even when they sought this Court's intervention to order more custodians—presumably because those custodians have nothing to do with this case. Indeed, many have responsibility for Google's Chrome web browsing product. *See, e.g.*, *Brown*, Dkt. 258 at 1 (Chrome Head of Design, Ainslie, as custodian). Because the non-overlapping custodians work on irrelevant products, it is unlikely they will have ESI relevant to this case, even if there are stray references to WAA, sWAA, or Firebase. Separately, Judge Seeborg has already determined that this case is narrower than Firebase writ large. Order on MTD FAC, Dkt. 109 at 11–12; *see also* Order on MTD SAC, Dkt. 127 at 7-8. In fact, Plaintiffs have abandoned their request for "Firebase" as a stand-alone term for *all Rodriguez* custodians. There is no reason it should be employed for *Brown* ESI, even if discovery from that case were appropriate. And Plaintiffs' citation to *Davis v. Pinterest, Inc.*, 2021 WL 3044958, at *3 (N.D. Cal. July 20, 2021), supports Google's position: the responding party is the one best situated to make "choices about where to look for responsive documents." *See also* 19 Sedona Conf. J. 1, Principle 6, 118 (2018). Google has done so here in producing custodial and non-custodial ESI, and there is no reason to reach beyond those sources.

*Third*, because *Brown* and *Calhoun* are so tenuously related to this case, Plaintiffs' request is disproportionate. It would require Google to review ESI from irrelevant, i.e., non-overlapping custodians, that was selected through the review process in *Brown* and *Calhoun* to relate to irrelevant topics, i.e., web browsing and Chrome. For example, a document may contain 20 pages of Chrome-related discussion and a stray reference to Firebase. That is the type of document for which Plaintiffs would have Google conduct time consuming manual review and determine is not responsive. Plaintiffs respond that their request "does not require any additional review or work" because Google has already screened for privilege and relevance. But they ignore that the screening was for relevance to the claims in *Brown/Calhoun*. Google cannot satisfy Plaintiffs' "with the click of a button" because Google has a right under the Federal Rules to review documents for responsiveness *in Rodriguez*. *See In re eBay Seller Antitrust Litig.*, 2010 WL 2836815, at *3 (N.D. Cal. July 19, 2010) ("the litigant responding to discovery requests" is the one entitled to "identif[y] responsive documents").

Some courts have allowed copying of discovery from other cases if there is "significant factual and legal overlap" between the host and target cases. *See, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 1101799, at *4 (N.D. Cal. Mar. 24, 2017). That's not the case here. Plaintiffs nonetheless attempt to manufacture an overlap (at 5) by misrepresenting Google's consent defense in *Calhoun*. There, Google argued that Plaintiffs consented to data collection by "select[ing] the 'I AGREE' button on" the "New Account Creation" and "Consent Bump" agreements, neither of which are at issue here. Google did not argue that users consented by toggling the WAA button "on," as Plaintiffs contend. *Calhoun*, Dkt. 395 at 1:14 n.2, 14:26–15:2 (consent defense); Dkt. 429 at 10 (same). In any event, whether WAA is "on" or "off" is irrelevant to Google's defense because users provided separate consent to Google's receipt of their data through agreements with app developers. Next, Plaintiffs argue (at n.2) that they are entitled to documents from *Brown* concerning classic web analytics because Google "integrated" GA for Firebase with web analytics in 2020. *See* GOOG-RDGZ-00021680, at -681. The integration of a relevant service (GA for Firebase) and an irrelevant one (web analytics) is far from sufficient factual and legal overlap to warrant producing documents solely concerning web analytics. And

Plaintiffs' citation confirms Google is already producing documents concerning both types of analytics. *See id.* The similarities Plaintiffs identify are "not enough to require a *carte blanche* production." *Chen v. Ampco Sys. Parking*, 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009). Indeed, a court in this District recently confronted a similar question and determined that "the fact that Google has . . . used similar vehicles to obtain consent in [other] contexts . . . is too slim a reed to support an order requiring Google" to produce discovery from another matter, even where the request is limited to issues "alleged in the complaint." *In re Google RTB Consumer Privacy Litigation*, Dkt. 184 at 3:9-10, 4:16-25 (N.D. Cal. Apr. 25, 2022). "Such a production obligation is not proportional to the needs of this case, particularly where plaintiffs may use much more targeted requests for production of documents to obtain the discovery they require." *Id.*

*Finally*, Plaintiffs baselessly accuse Google of "gamesmanship" while ignoring Court orders and the parties' extensive negotiations to date. Indeed, this Court adjudicated part of Plaintiffs' current request when it determined that stand-alone "WAA" terms are inappropriate for Mr. Monsees, the custodian whose job responsibility is WAA. 1/20/22 Order, Dkt. 208 at Row 1. As for "Firebase," the parties long ago agreed that is not an appropriate term, in keeping with Judge Seeborg's motion to dismiss Order on that subject. Plaintiffs thumb their nose at those negotiations and rulings: Plaintiffs have already secured 24 custodians and a massive trove of documents, and now they want ESI from two other cases. The Court will recall that Plaintiffs started this case by asking for productions Google made to regulators worldwide about "privacy." Where does the logic of Plaintiffs' approach end? Discovery is for one case at a time; yet Plaintiffs' approach results in a never-ending train of productions from one case to the next for defendants like Google who face multiple lawsuits. Plaintiffs never sought to relate this case to *Brown* or *Calhoun* because they aren't related. *A fortiori* piggyback discovery is not appropriate.

## PLAINTIFFS' STATEMENT

Although Google labors to cast Plaintiffs' discovery request as an overreach, it cannot mask reality: Google is seeking the Court's protection from having to produce a very narrow set of documents that are patently relevant to this case and that already have been reviewed and segregated and could be produced with the click of a button. Despite Google's contrary contentions, Plaintiffs' claims are extremely similar to, and substantially overlap with, the *Brown* claims.[1] And it is undisputed that Plaintiffs seek only documents that include terms core to the allegations here: (1) "WAA," (2) "sWAA," and (3) "Firebase." Google concedes the relevance of these terms by admitting that "the data control at issue here is the Google Account WAA toggle." The narrow request is not "copied discovery" as defined by Google's own authority, since Plaintiffs are only after a small set of documents hitting on search terms **specific to this case**, not "all documents produced" during other litigation or investigations. *Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 2017 WL 1101799, at *2 (N.D. Cal. Mar. 24, 2017). Plaintiffs' search term limitations provide a "simple way for [Google] to produce only discovery relating to" this case.

---

[1] In *Brown*, as here, the plaintiffs contend that Google collects their browsing data without authorization. In *Brown*, as here, Google does not deny that it collects browsing data. In *Brown*, as here, Google contends that the data it collects is not and cannot be linked to a specific user. In *Brown*, as here, the parties are litigating the value of purportedly pseudonymous browsing data to users and to Google.

*Chen v. Ampco Sys. Parking*, 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009). Relevance of the requested documents is clear.[2]

Google's real reason for shielding these documents from production is more sinister than relevance or burden: The documents are likely to be wholly inconsistent with the narratives it wishes to take here. Specifically, Google has expressly relied on the WAA and sWAA disclosures in *Calhoun v. Google*, No. 5:20-cv-05146-LHK (N.D. Cal.), whose discovery has been cross-produced in *Brown*. In both Google's motion for summary judgment and plaintiffs' motion for class certification in that case, Google argued that the plaintiffs consented to collection of data through Google Analytics because they switched WAA to "on." *Calhoun*, Dkt. 395 at 16, Dkt. 429 at 5; *see also Calhoun*, Dkt. 430-3 at ¶ 15 (extensively citing to WAA disclosures throughout). Google surely relied on documents in making that argument (indeed, it cited some). Plaintiffs are entitled to those ***same documents*** to further the corollary argument that it is reasonable for users to understand that switching WAA "off" ***prevents*** data collection. That the documents produced in *Brown* may be inconvenient to Google in this case does not make them irrelevant.

Considering the high hurdles required to establishing the need for a protective order—heights Google cannot clear—the Court should reject its request and order Google to produce the limited set of sought after documents. As the "party wish[ing] to resist discovery, [Google] must carry the heavy burden of showing why discovery should be denied." *Dairy v. Harry Shelton Livestock, LLC*, 2021 WL 4476778, at *1 (N.D. Cal. Sept. 30, 2021). "The resisting party must show that the discovery request is overly broad, unduly burdensome, irrelevant or disproportional to the needs of the case." *Id.* "The Federal Rules of Civil Procedure broadly interpret relevancy, such that each party has the right to the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'" *Abadia-Peixoto v. U.S. Dep't of Homeland Sec.*, 2013 WL 4511925, at *1 (N.D. Cal. Aug. 23, 2013) (quoting Fed. R. Civ. P. 26(b)(1)). In the context of discovery, evidence is relevant if it "bears on, or … reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Synchronoss Techs., Inc. v. Dropbox Inc.*, 2018 WL 4613151, at *5 (N.D. Cal. Sept. 26, 2018). Google's manufactured bases to prevent the limited desired discovery fall short.

*First,* Plaintiffs' request is ***not*** duplicative; if it were, Google would not be seeking a protective order to prevent production. Google has routinely refused to run the three requested search terms against the ESI files of the existing custodians in this case, arguing that its review would be burdensome. The documents sought here also date back beyond December 30, 2012—the earliest date on which Google claims to have custodial documents in this case due to application

---

[2] Google's documents show that app activity data is likely stored and used together with, or at least very similarly to, web browsing data: Google Analytics for Firebase, which collects app activity data, is integrated with Google Analytics on the web. *See* GOOG-RDGZ-00021680, at -681 ("Project Gold" "Bring[s] Google Analytics + Firebase Together in App + Web properties in Google Analytics"); *id.* at -696 (plans for "[a]pp + web conversion tracking"). To the extent documents produced in *Brown* illuminate how Google uses pseudonymous and non-pseudonymous data collected by Google Analytics, they are likely relevant here, too—especially if they contain terms at the heart of this case.

of Google's retention policies.[3] Plaintiffs have now sought documents responsive to three terms in a specific, defined database that is likely to yield only a small subset of responsive documents from a broad set of individuals encompassing a more complete date range.

*Second,* Plaintiffs' requests are not overbroad. Plaintiffs seek documents produced in another case concerning Google's collection, storage, and use of data from users who do not consent, and Plaintiffs have limited their requests to documents that include the terms at the core of this case: "WAA," "sWAA," or "Firebase." It does not matter that the custodians in *Brown* are not identical to those here because a party's discovery obligations extend well beyond custodial documents—especially when collection and production is simple, as it would be here. *Davis v. Pinterest, Inc.*, 2021 WL 3044958, at *3 (N.D. Cal. July 20, 2021) ("A party responding to an RFP has to make reasonable choices about where to look for responsive documents, including reasonable custodial and non-custodial documents."). Google's generalized claims of burden are without evidence; Google has tellingly refused to provide a hit count on the number documents produced in *Brown* that include the terms "WAA," "sWAA" or "Firebase."

*Third,* and relatedly, Plaintiffs' requests are proportional to the litigation. Google would not be required to conduct any further ESI review. Because Google has **already** produced the requested documents in another case, no further privilege review is necessary. Google also screened out documents wholly irrelevant to Google's collection and use of data from unconsented users. And Plaintiffs' request is limited to documents containing search terms that expressly tie the documents to the allegations here. On the off chance any of those documents **are** wholly irrelevant, Plaintiffs cannot fathom how production would prejudice Google. Google has already disclosed these documents to Plaintiffs' counsel (in *Brown*); production would only affect the **use** of those documents here. To the extent any produced documents are irrelevant, they will not be used at all. *See* Fed. R. Evid. 402; *Earl v. Gulf & Western Mfg. Co.*, 366 N.W.2d 160, 162 (Wis. Ct. App. 1985). As Plaintiffs already noted, the documents sought are relevant precisely because they likely support positions that Google has taken in *Calhoun* and *Brown*, positions similar to those that Plaintiffs take here. Google's desire to run from these same positions (and the documents that support them) is not a valid reason to stop discovery.

Google seeks a protective order to keep relevant evidence out of Plaintiffs' hands, not because of any burden or prejudice. The Court should ignore Google's patent attempt at gamesmanship, including its efforts to twist the Court's orders and exaggerate the intrusiveness of Plaintiffs' RFPs. Plaintiffs' request would involve no burden at all, let alone one like the burden of reviewing all of Mr. Monsees's "WAA" documents. As this Court has recognized, parties *can* be required to produce sets of documents produced in other cases, provided that those documents are largely relevant and producing them would not be overly burdensome. *See* ECF No. 85 at 2-3 (ordering production of discovery from an Arizona action that relate to WAA). The requests at issue satisfy those requirements. Google possesses at its fingertips highly relevant documents that can be identified and produced at the click of a button; it should be ordered to make that click.

---

[3] Google has produced only a few dozen documents that pre-date 2015, and it represented that because of its standard retention policy, the *Rodriguez* custodians have few emails predating February 2019. Producing the limited requested documents from *Brown* would provide an effortless avenue through which Plaintiffs can obtain relevant older documents.

Respectfully,

WILLKIE FARR & GALLAGHER, LLP          SUSMAN GODFREY LLP

By: */s/ Benedict Y. Hur*                              /s/ *Amanda Bonn*

    Eduardo E. Santacana (SBN: 281668)          Amanda Bonn (CA Bar No. 270891)
    esantacana@willkie.com                               Mark C. Mao (CA Bar No. 236165)
    Benedict Y. Hur (SBN: 224018)                     mmao@bsfllp.com
    bhur@willkie.com                                      Beko Reblitz-Richardson (CA Bar No.
    Simona Agnolucci (SBN: 246943)                  238027)
    sagnolucci@willkie.com                              brichardson@bsfllp.com
    Lori Arakaki (SBN: 315119)                         BOIES SCHILLER FLEXNER LLP
    larakaki@willkie.com                                 44 Montgomery Street, 41st Floor
    One Front Street, 34th Floor                       San Francisco, CA 94104
    San Francisco, CA 94111                           Telephone: (415) 293 6858
    Telephone: (415) 858-7400                        Facsimile (415) 999 9695
    Facsimile: (415) 858-7599
    *Attorneys for Defendant Google LLC*          James W. Lee (*pro hac vice*)
                                                             jlee@bsfllp.com
                                                             Rossana Baeza (*pro hac vice*)
                                                             rbaeza@bsfllp.com
                                                             100 SE 2nd Street, Suite 2800
                                                             Miami, FL 33130
                                                             Telephone: (305) 539-8400
                                                             Facsimile: (305) 539-1304

                                                             William Christopher Carmody (*pro hac vice*)
                                                             bcarmody@susmangodfrey.com
                                                             Shawn J. Rabin (*pro hac vice*)
                                                             srabin@susmangodfrey.com
                                                             Steven Shepard (*pro hac vice*)
                                                             sshepard@susmangodfrey.com
                                                             SUSMAN GODFREY L.L.P.
                                                             1301 Avenue of the Americas, 32nd Floor
                                                             New York, NY 10019
                                                             Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

**ATTESTATION**

I, Amanda Bonn, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence
to the filing of this document has been obtained from each signatory hereto.

DATED: April 29, 2022                    By:    /s/ *Amanda Bonn*