May 6, 2022

**Submitted via ECF**

Magistrate Judge Alex G. Tse
San Francisco Courthouse
Courtroom A - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    Joint Letter Brief re: Plaintiffs' Privilege Log
               *Rodriguez v. Google LLC*, Case No. 3:20-cv-04688-RS (N.D. Cal.)

Dear Magistrate Judge Tse:

      Google LLC ("Google") and Plaintiffs submit this joint letter brief regarding Plaintiffs' privilege log. Counsel for the parties met and conferred by videoconference on March 3, but have reached an impasse regarding what details Plaintiffs must provide concerning their privilege claims over communications with counsel that occurred after the filing of the initial complaint but before certain Plaintiffs joined this case. Google respectfully moves this Court to order Plaintiffs to log communications with counsel that occurred before each plaintiff appeared in this case and to produce non-privileged documents responsive to RFP 3 that have not been produced. Exhibit A is Google's proposed order, Exhibit B is Plaintiffs' proposed order, Exhibit C is Google's Request for Production of Documents to Plaintiffs, Set One, and Exhibit D is an email thread.

## GOOGLE'S STATEMENT

Google has been attempting to discover information concerning the viability of two named Plaintiffs' claims due to lack of standing. Google's account records reveal that those two plaintiffs first turned Web & App Activity (WAA) off *after* this lawsuit was filed. In other words, they may have "injured" themselves so they could seek to represent a putative class of WAA-off plaintiffs. The only question is whether those plaintiffs learned about the WAA-off requirement before or after they changed their settings. There is a simple way to answer this temporal question: determine when Plaintiffs first discussed this case with another person. Non-privileged records, or a properly substantiated privilege assertion, would establish those dates. Yet Plaintiffs inexplicably neglected to produce documents that bear on this question, even though Google sought "all documents consisting of [Plaintiffs'] pre-filing investigation." Ex. C at 6 (RFP 3). Now, only after deposition testimony exposed their concealment, Plaintiffs refuse to answer Google's questions, instead hiding behind strained interpretations of Google's discovery requests and their own privilege logging obligations. Based on an unreasonable interpretation of RFP 3, Plaintiffs argue that pre-suit communications are not *responsive*; that's wrong, and beside the point. Even if Google propounded a new request mooting Plaintiffs' responsiveness argument, the question before the Court would be unchanged: Should later-added plaintiffs be required to substantiate their privilege assertions for the period between the initial complaint and the date of their first filings? Rule 26(b)(5) and this Court's standing order require it, particularly where, as here, there is a concern that at least two named plaintiffs do not have standing. Google accordingly seeks an order requiring Plaintiffs to log communications with counsel that occurred before each plaintiff appeared in this case and to otherwise produce all non-privileged communications responsive to RFP No. 3.

### Plaintiffs' pre-suit communications are responsive and relevant.

Article III standing cannot be manufactured by self-imposed injury. *E.g.*, *Makaryan v. Volkswagen Grp. of Am., Inc.*, 2017 WL 6888254, at *6 (C.D. Cal. Oct. 13, 2017) (collecting cases). Because Plaintiffs' theory of wrongdoing depends on their lack of knowledge of how they allege Google's technology works while their WAA was turned off, *e.g.*, TAC, Dkt. 130-3 ¶ 231, they have no standing if they turned WAA off *after* learning about the allegations underlying this case. Yet Google's account records show two of the five named Plaintiffs—Sal Cataldo and Julian Santiago—turned off WAA for the first time *after* the initial complaint was filed on July 14, 2020. Mr. Cataldo first turned WAA off on August 4, 2020, and Mr. Santiago on September 15, 2020. Both joined the case with the first amended complaint on November 11, 2020, but testified they discussed the case with counsel a "couple months" earlier. Cataldo Tr. 37:16-19; Santiago Tr. 17:6. Both were aware of this case around Summer 2020, when they first turned WAA off, but neither could pinpoint exactly when those conversations occurred. All signs point to a situation where they turned WAA off *after* speaking with Plaintiffs' counsel, just so they could join this case.

Records that should have been produced long ago would establish the dates of those conversations. Indeed, over a year ago, on February 8, 2021, Google propounded RFP No. 3 seeking "all documents consisting of [Plaintiffs'] pre-filing investigation." Ex. C at 6. By June 10, 2021, Plaintiffs asserted their "production regarding RFP 3 [wa]s substantially complete" and it "consist[ed] of non-privileged documents." Plaintiffs produced no documents concerning their pre-suit communications investigating their claims, nor asserted that their investigation involved privileged communications. Google was therefore surprised to learn during a recent deposition

2

that such communications existed. Even worse, Plaintiffs had withheld one such e-mail thread, knowing it was relevant, responsive, and not privileged, and only reluctantly produced it after Mr. Cataldo's deposition. And, it turns out, Plaintiffs silently chose to withhold others over which they do claim privilege, though they refuse to substantiate the privilege claim with a privilege log.

**Exhibit D** reveals that Mr. Cataldo manufactured Article III injury by turning WAA off *after* learning the setting requirements for joining this case. A day after the initial complaint was filed on July 14, 2020, Mr. Cataldo contacted a third party, Ethan Dunn, because he heard Mr. Dunn was involved in a search "for someone who fits the profile of having an [A]ndroid [mobile device], having a [G]oogle [A]ccount, and turning privacy settings to Off." Mr. Dunn asked Mr. Cataldo whether he "had the 'Web & App Activity' on [his] [G]oogle [A]ccount shut off." On July 28, 2020, after Plaintiffs' counsel was added to the thread, Mr. Cataldo explained that when he first learned Mr. Dunn was searching for someone with the necessary account settings, his "web & app activity was turned on" (emph added). He turned WAA off a week later for the first time. This conversation and its timing are directly relevant to the question of standing. Google is entitled to understand details of similar non-privileged communications, whether Plaintiffs are withholding others on the basis of privilege, and whether those conversations involve third-party plaintiff-finders like Mr. Dunn.

Plaintiffs excuse their conduct by arguing that emails like Exhibit D are merely a "descript[tion] [of] privacy settings" and are therefore not responsive to Google's request for "documents consisting of [a] pre-filing investigation." That is belied by Exhibit D: Mr. Cataldo reached out to investigate "what other info [is] need[ed]" from him and what Mr. Dunn is "looking to find out." He also discovers the WAA-off requirement from Mr. Dunn. It is hard to think of a more squarely investigatory, and thus responsive, document. Next, Plaintiffs argue that there is "nothing left for the Court to order" because Plaintiffs agreed to produce "communications . . . regarding their account and device settings." Once again, that parsing of Google's request is contrived. A pre-suit investigation would also include, for example, an investigation into whether Google is receiving user data as alleged. At bottom, Plaintiffs' willingness to hide behind a contrived reading of Google's RFP is concerning. Plaintiffs have ***not produced a single email, text message, or byte of mobile device data***. And now Google knows responsive information exists.

### Plaintiffs have no basis for refusing to produce or log pre-suit communications.

Where, as here, a party seeks to withhold relevant communications on the basis of privilege, the withholding party has "the burden of demonstrating that [the discovery] should not be allowed." *Snipes v. United States*, 334 F.R.D. 548, 550 (N.D. Cal. 2020). "To meet this burden, . . . the party asserting the privilege must make a *prima facie* showing that the privilege" applies. *In re Grand Jury Investigation*, 974 F.2d 1068, 1070-71 (9th Cir. 1992). Rule 26(b)(5) requires that the party must not only "expressly make the [privilege] claim" but must "describe the nature of the documents [or] communications . . . in a manner that . . . will enable other parties to assess the claim." Fed R. Civ. P. 25(b)(5); *see also* Judge Tse's Civil Standing Order at 5 § VII.D.

Plaintiffs' communications concerning the factual allegations underlying their claims are relevant. This is true whether the communications involved counsel or third parties, and whether they occurred before or after the filing of the initial complaint. Tellingly, Plaintiffs have never argued these categories of communications are irrelevant. Plaintiffs instead argue their relevant

3

pre-suit communications "involving trial counsel . . . are almost certainly privileged." But there is no such blanket privilege. Exhibit D is one example of a communication that is not privileged because it involves a third party. There may be others. *See* Santiago Tr. at 11:25-12:1-7 (second plaintiff learned about this case from his girlfriend's aunt). Here, Plaintiffs have not identified the dates of the privileged communications they are withholding, whether third parties were involved, or provided Google other information that would allow Google (and this Court) to evaluate their privilege claims. Plaintiffs have not even identified the number of documents they have withheld.

Plaintiffs attempt to shield their dereliction behind a strained reading of the parties' stipulated ESI order. According to them, four of five plaintiffs have no Rule 26(b)(5) obligation to substantiate their privilege assertions for the four-month period between the initial complaint and their first filing. They rely on the ESI order, which includes boilerplate language from this Court's model order that does not require logging of "[c]ommunications involving trial counsel that post-date the filing of the complaint." ESI Order, Dkt. 73 ¶ 8(b). Under Plaintiffs' reading, only the plaintiff who filed the *initial* complaint (here, Anibal Rodriguez) must log privileged pre-suit communications. That position violates the letter and spirit of Rule 26(b)(5). Nothing allows four plaintiffs to withhold relevant information and also refuse to explain why. Adopting Plaintiffs' reading would incentivize gamesmanship: it would encourage counsel to file early complaints on behalf of a single plaintiff so they can use the "privilege" shield to hide the fact that they asked later-added plaintiffs to manipulate their settings to manufacture standing. And even if the Court were to adopt Plaintiffs' strained reading, there is good cause in *this* case to modify the ESI order to require each plaintiff to log communications before the initial filing of their respective complaints. *See id.* ¶ 9. It is clear some non-privileged pre-suit communications exist and Plaintiffs are withholding others. All must be disclosed.

## PLAINTIFFS' STATEMENT

Google buries the key fact at the end of its statement, and no wonder: ***Google stipulated***, and ***the Court ordered***, that Google is not entitled to what it now seeks. The text of that stipulation is plain as day: "Communications involving trial counsel that post-date the filing of the complaint need not be placed on the privilege log." ECF No. 73 ("ESI Order"), ¶ 8b. Google cannot credibly advance an interpretation of its stipulation that requires logging the documents at issue—each of which is a communication, involving trial counsel, dated after the complaint was filed—and so it does not even try. Instead, Google attempts to distract the Court with baseless accusations that Plaintiffs have (1) withheld responsive, non-privileged documents; (2) refused to explain why attorney-client communications are privileged; and (3) violated Rule 26(b)(5). None of these accusations are true. Plaintiffs have fully complied with their discovery obligations and indeed *exceeded* them by producing documents responsive to Google's requests and agreeing to review their documents *a second time* to assuage Google's purported concerns. Google's request for an order compelling production of all documents responsive to RFP 3 and an expanded privilege log should be denied as unnecessary and contrary to the parties' prior agreement reached in this case.

### I.   Google's Interpretation of the ESI Order Is Untenable

Early in this case, the parties agreed, and the Court ordered, that "[c]ommunications involving trial counsel that post-date the filing of the complaint need not be placed on the privilege log." ESI Order, ¶ 8b. In full compliance with the ESI Order, Plaintiffs have not logged

4

communications involving trial counsel after July 14, 2020, the day the complaint was filed. *See* ECF No. 1. Google cannot escape that stipulation, and it barely even tries.

Google entirely ignores the ESI Order's text. As Google claims to interpret the stipulation, it would only cover "communications <u>between</u> trial counsel <u>and a named plaintiff</u> that post-date <u>that plaintiff's first appearance in the case</u>." But the underlined words do not appear in the stipulation. The applicability of the ESI Order's exclusion turns on the involvement of *trial counsel and nobody else*; the provision does not even *reference* the plaintiff involved. Google knows this: It agreed to an identical exclusion in *Brown v. Google*, 4:20-CV-3664-YGR (N.D. Cal.), *see* ECF No. 91, ¶ 8b, and it did not object to the privilege log in that case, which also did not include post-filing communications with plaintiffs who joined in an amended complaint. *See Teledyne Instruments, Inc. v. Cairns*, 2013 WL 5781274, at *14 (M.D. Fla. Oct. 25, 2013) (court may consider past practice when assessing logging obligations); *Mattel, Inc. v. MGA Entm't, Inc.*, 2010 WL 3705782, at *1 (C.D. Cal. Aug. 3, 2010) (same). When the parties entered into the same stipulation here, Plaintiffs had already filed the amended complaint, which added more Plaintiffs. Google could have proposed adding language that carved out those Plaintiffs, but it didn't do so.

The stipulation is also wholly consistent with the Federal Rules. Even supposing Rule 26(b)(5) were to require logging post-filing communications, Rule 29(b) allows parties to modify discovery procedures and obligations by stipulation. Indeed, courts universally enforce stipulations like the one at issue here. *See, e.g.*, *DataTreasury Corp. v. Wells Fargo & Co.*, 2010 WL 11468809, at *5 (E.D. Tex. Mar. 9, 2010) (enforcing "the customary practice, agreed to by the parties … that documents created after filing of suit need not be logged on a privilege log"). Many courts—including Judge Seeborg—have gone further and concluded that Rule 26(b)(5) does not require logging post-filing communications even in the absence of a stipulation, *see, e.g.*, *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, 2009 WL 5114077, at *3 (N.D. Cal. Dec. 18, 2009) (Seeborg, J.), and some district courts' local rules, which must be consistent with the Federal Rules, *see* Fed. R. Civ. P. 83, embrace this approach by default, *see, e.g.*, S.D. Fla. Civ. R. 26.1(e)(2)(C); N.D. Okla. Civ. R. 26-4(b). Other district courts have even extended this reasoning to circumstances where litigation had not yet begun, provided the party was then considering litigation, *see, e.g.*, *Capital Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 51 (S.D.N.Y. 2009). In short, Google's vague ideas about "the letter and spirit of Rule 26(b)(5)," *supra* at 4, are both irrelevant and wrong.

The parties' agreement serves important interests. After the complaint is filed, any responsive communications involving trial counsel—including communications with Plaintiffs who have not yet appeared in a complaint—are almost certainly privileged. The negligible value of a log describing those obviously privileged communications would be far outweighed by the burden of creating it. Post-filing communications are also especially difficult to describe without revealing privileged information, and logging them would chill critical communication between parties and their attorneys. Douglas C. Rennie, *Why the Beginning Should Be the End: The Argument for Exempting Postcomplaint Materials from Rule 26(b)(5)(A)'s Privilege Log Requirement*, 85 Tul. L. Rev. 109, 143-48 (2010) (describing these interests). Even if this approach could enable gamesmanship, stipulations like the ESI Order reflect the parties' agreement about how to balance these various interests—especially when, as here, the defendant is already aware that additional plaintiffs joined the case. The Court should not disrupt that balance by adopting an atextual interpretation of the parties' agreement. Besides, Google does not accuse Plaintiffs of gamesmanship here, and Plaintiffs emphatically deny any suggestion of such conduct.

There is no good cause to allow Google to renege on its agreement. Amending the ESI Order would upset the parties' relied-upon expectations, jeopardize the interests that the agreement protects, and provide Google with no conceivable benefit. Privilege logs support assertions of privilege, and Plaintiffs have repeatedly explained that they have withheld responsive attorney-client communications because they were made for the purpose of seeking or providing advice about litigating this case. Google intends to use the log to gather *substantive* information about Plaintiffs' knowledge, but other discovery tools—such as interrogatories and depositions—are better suited for that purpose. There is no reason (let alone a good one) to amend the ESI Order.

## II.     Communications with Counsel Are Not Responsive to Google's RFPs

Plaintiffs are not withholding responsive, non-privileged documents, and Google has not shown otherwise. Google contends that all attorney-client communications are responsive to an RFP calling for documents "consisting of your pre-filing investigation." Google did not define the word "investigation," so that word carries its ordinary meaning: "observ[ation] or study by close examination and systematic inquiry." *Investigate*, Merriam Webster's Dictionary, https://www.merriam-webster.com/dictionary/investigation; *Boston v. ClubCorp USA, Inc.*, 2019 WL 1873293, at *2 (C.D. Cal. Mar. 11, 2019) (responding party should "attribute ordinary definitions to terms and phrases utilized"). Communications like Exhibit D—an email concerning only Mr. Cataldo, in which he solicited and answered questions about his privacy settings—do not fit that definition. Plaintiffs provided this email as a courtesy; it is not responsive.

Google knows that its RFPs do not cover the information it now seeks, and that is why it requests a Court order compelling Plaintiffs to log *all* communications with counsel "before each plaintiff appeared in this case." *Supra* at 2. Google's request is clearly improper: Unless a privileged document is responsive, it is inappropriate to include it on a privilege log. Judicial intervention is also unnecessary. Plaintiffs have never refused to produce non-privileged, responsive documents, nor to log documents withheld as privileged as set forth in the ESI Order. Indeed, in the spirit of compromise, Plaintiffs ***already agreed*** to re-review Plaintiffs' documents and to produce non-privileged communications between Plaintiffs and counsel regarding their account and device settings, to the extent they have not already been produced. Because Plaintiffs have already adopted the idiosyncratic interpretation of RFP 3 that Google first asserted after Mr. Cataldo's deposition, there is nothing left for the Court to order.

Finally, although Plaintiffs do not currently seek to limit discovery on this basis, Plaintiffs note that Google mischaracterizes both Exhibit D and the law of standing. Exhibit D concerns only Mr. Cataldo. Exhibit D suggests that, consistent with his sworn testimony, Mr. Cataldo remembered turning WAA off ***years earlier***, was surprised to discover that WAA had mysteriously been turned on, and then turned it off again. With respect to standing, injuries are self-inflicted when the plaintiff, not the defendant, is responsible for their failure to obtain whatever they claim to have been deprived of. *See, e.g.*, *Makaryan v. Volkswagen Grp. of Am., Inc.*, 2017 WL 6888254, at *1, *6 (C.D. Cal. Oct. 13, 2017) (plaintiff deprived of feature of vehicle because she used the vehicle improperly). That would not be the case here even if Google's interpretation of Exhibit D were correct. Mr. Cataldo does not authorize Google to collect his data, and Google invades his privacy by collecting it anyway. Mr. Cataldo does not invite his injuries; he genuinely seeks to prevent Google's collection. Mr. Cataldo, Mr. Santiago, and every other Plaintiff have standing.

6

Respectfully,

| WILLKIE FARR & GALLAGHER, LLP | SUSMAN GODFREY LLP |
|---|---|
| By: */s/ Eduardo E. Santacana* | */s/ Amanda Bonn* |
| Eduardo E. Santacana (SBN: 281668) | Amanda Bonn (CA Bar No. 270891) |
| esantacana@willkie.com | abonn@susmangodfrey.com |
| Benedict Y. Hur (SBN: 224018) | SUSMAN GODFREY L.L.P. |
| bhur@willkie.com | 1900 Avenue of the Stars, Suite 1400 |
| Simona Agnolucci (SBN: 246943) | Los Angeles, CA 90067 |
| sagnolucci@willkie.com | Telephone: (310) 789-3100 |
| Lori Arakaki (SBN: 315119) | |
| larakaki@willkie.com | Mark C. Mao (CA Bar No. 236165) |
| One Front Street, 34th Floor | mmao@bsfllp.com |
| San Francisco, CA 94111 | Beko Reblitz-Richardson (CA Bar No. 238027) |
| Telephone: (415) 858-7400 | brichardson@bsfllp.com |
| Facsimile: (415) 858-7599 | BOIES SCHILLER FLEXNER LLP |
| | 44 Montgomery Street, 41st Floor |
| *Attorneys for Defendant Google LLC* | San Francisco, CA 94104 |
| | Telephone: (415) 293 6858 |
| | Facsimile (415) 999 9695 |
| | |
| | James W. Lee (*pro hac vice*) |
| | jlee@bsfllp.com |
| | Rossana Baeza (*pro hac vice*) |
| | rbaeza@bsfllp.com |
| | 100 SE 2nd Street, Suite 2800 |
| | Miami, FL 33130 |
| | Telephone: (305) 539-8400 |
| | Facsimile: (305) 539-1304 |
| | |
| | William Christopher Carmody (*pro hac vice*) |
| | bcarmody@susmangodfrey.com |
| | Shawn J. Rabin (*pro hac vice*) |
| | srabin@susmangodfrey.com |
| | Steven Shepard (*pro hac vice*) |
| | sshepard@susmangodfrey.com |
| | SUSMAN GODFREY L.L.P. |
| | 1301 Avenue of the Americas, 32nd Floor |
| | New York, NY 10019 |
| | Telephone: (212) 336-8330 |
| | |
| | John A. Yanchunis (*pro hac vice*) |
| | jyanchunis@forthepeople.com |

1

Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*


**ATTESTATION**

I, Eduardo E. Santacana, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: May 6, 2022                    By:    /s/ *Eduardo E. Santacana*