October 26, 2022

**Submitted via ECF**

Magistrate Judge Alex G. Tse
San Francisco Courthouse
Courtroom A - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:    Response to Court's October 21, 2022 Order (Dkt. 251)
        *Rodriguez v. Google LLC*, Case No. 3:20-cv-04688-RS (N.D. Cal.)

Dear Magistrate Judge Tse:

Plaintiffs and Google LLC ("Google") submit this supplemental joint letter brief in response to the Court's October 21, 2022 Order (Dkt. 251).

## PLAINTIFFS' STATEMENT

At its inception, this case alleged that Google engaged in "surreptitious and unlawful interception, tracking and data collection of users' app activity through its Firebase SDK" and noted that the automatic collection was often done through "Google's older app SDK, called AdMob SDK." Dkt. 1 ¶¶ 8, 34. Notably, Plaintiffs were alarmed that this use of data occurred when users had adjusted their privacy settings to turn WAA off. *Id.* ¶ 7. Following discovery, Plaintiffs have now realized a plain truth: Google's privacy controls simply do not work. Google witnesses could not identify a single instance where data manipulable through changing the WAA control was not ***already*** recorded in another part of Google's systems, a part unchanged by manipulating WAA. Fair Depo. 81:17-88:8; *see also id.* 142:1-145:15 (suggesting that Google's privacy controls, such as WAA, only alter records on ***copies*** of data made by Google and that Google continues to save, use, and monetize the underlying master data regardless of what privacy controls a user engages).

As initially requested in the joint statement, Plaintiffs seek an order requiring Google to provide information about Google logs and data sources that contain (s)WAA bits and fields as well as information about specific, named dashboards mentioned in Google documents, including some that indicate that Google tracks information for "signed-in ***WAA-off users***." (Dkt. 250 at 3, quoting GOOG-RDGZ-00042769 at -70). Both the logs and the dashboards are important.

1. **WAA-Off and sWAA-Off Bits and Fields**

***First,*** Google data logs reveal what Google ***does*** with the data it collects.[1] This information is particularly important given that Google has entirely refused to identify any (s)WAA-related ad-logs—logs that, if identified, would undercut Google's already suspect position that the collected data is only used for "analytics."  In similar cases, companies like Google generally provide a list of the logs and data sources at issue. Such lists should be easy to generate since they are routinely compiled as a good engineering and security practice. As explained within a Court order governing a data production process in the *Brown v. Google* case pending before this Court, which adopted in part a technical Special Master's recommendation, "[a] reasonable person with experience working in the IT field would expect that live production systems are fully documented. Accordingly, within four days of [this order] Google is to provide to the Special Master full schemas [and] a list of all fields with their descriptions." Case No. 5:20-cv-03664, Dkt. 339-3 at 8.  Google in this case does not deny that such a list of logs can be created.

Plaintiffs are further entitled to look at the "bits" and fields contained within logs, particularly where the logs contain bits and fields that specifically tag collected data as (s)WAA-off. Google has conceded that logs containing this information number in the "thousands." Dkt. 250 at 4. Looking at these logs will allow Plaintiffs to understand whether enablement of a (s)WAA feature actually affects how the data is used. For example, if a bit or field such as (s)WAA appears in the log, the presumption is that whatever technology is using and digesting the log may behave one way or the other depending on whether the (s)WAA bits are "on" or "off." As noted above, in similar cases, companies like Google generally provide a "schema" of the logs that show the fields

---

[1] Use can be determined by looking at the combination of parameter sets contained within a log.

that comprise it. Such lists should be easy to generate since they are routinely compiled as a good engineering and security practice. Google does not deny that such schemas can be provided.

Notably, there is also no dispute that sought-after Google logs contain and/or leverage data Google collected via Firebase; Google has not argued otherwise. Instead, the only information Google has provided is a list of for logs Google has unilaterally deemed "the relevant ones." *Id*. at 4. Tellingly, however, these four logs are totally devoid of any (s)WAA bit or field, fields that drove this request and that would allow Plaintiffs to see how WAA-off data is used.

Google can provide a list of logs and fields (via a schema) at the click of a few buttons.[2] To quantify the number of logs, Google presumably used a search and created a list of the relevant logs. That list can readily be turned over with the associated schemas. That information will enable Plaintiffs to identify logs that contain relevant information, will allow Plaintiff's experts see where and how data travels throughout the Google products, and how Google digests and uses that data across its ecosystem. At a minimum, this information is needed to allow Plaintiffs to calculate their damages.[3]

## 2. Dashboards

**_Second_**, with respect to dashboards, Plaintiffs seek an identification and description of all dashboards containing or built upon WAA-off information as well as screenshots showing how these dashboards can be queried. This is necessary so that Plaintiffs may follow-up and ask Google to run specific queries and determine how data is used. Production of these dashboards make it less burdensome for Google by eliminating the need for Google to produce voluminous amounts of data, thus preserving resources of both the Courts and the litigants. These dashboards should reveal what Google is using and doing with the collected data; information Google refuses to share. Plaintiffs should at the very least be allowed to test Google's own calculations of Plaintiffs' damages by using Google's data. But Google refuses to provide the data that would allow for such a fair test to be conducted.

The Court asked whether Google offered screenshots of the dashboards Plaintiffs requested. Google's answer below is that it has, but Google characteristically overstates what it has done. The truth is that Google has provided screenshots of just *one* of the four dashboards Plaintiffs identified. Within the October 17 letter-brief, Plaintiffs sought screenshots "showing all the ways in which the following three dashboards can be queried: Magic Eye, d****v, and R***a." Dkt. 250-1 at 3. Google *still* has not offered to do that for any of those three dashboards, and Plaintiffs reiterate their request for an order requiring Google to provide them. By contrast, Google *did* provide such screenshots for the go/d***e dashboard, which raises the question of why Google will not do the same for these others.

With respect to **Magic Eye**, Google admitted in an email today that Magic Eye is in fact a

---

[2] Plaintiffs also request the Google proto comments associated with any (s)WAA bit or field (information that already exists in Google's systems).

[3] The parties have also been discussing a process to select and evaluate a set of sample data, and this will also be informative for those discussions.

"dashboard . . . that can be filtered," and Google (only today) committed to producing a screenshot for just one table within Magic Eye—as opposed to screenshots showing *all* the ways in which it can be filtered and/or queried. Google should not get to unilaterally decide what parts of Magic Eye are relevant before Plaintiffs even know what is available. Instead, Google should produce the requested screenshots, and then the parties can meet and confer about what, if any, follow-up discovery should occur with respect to Magic Eye.

As for **d****v** and **R***a**, the Court should disregard Google's word games. Whether these are characterized as "dashboards" or something else, Plaintiffs have cited documents showing that Google employees rely on these tools to track information about WAA-off traffic and revenues. Dkt. 250 at 4. For example, Google today confirmed that **R***a** "collects experiments" and that Google "can provide screenshots" related to those experiments, but Google will not do so because it claims that Plaintiffs have not identified a specific experiment. Plaintiffs obviously cannot be expected to guess the name of an experiment saved away within Google's systems. Google should at a minimum produce a list of all experiments and then the parties can meet and confer about what, if any, follow-up discovery should occur with respect to any experiments. As for **d****v**, Google should at a minimum produce screenshots showing what is available within the "All WAA Logging" portion, which is an "automatically provided" part of **d****v**. GOOG-RDGZ-00045452 at -54.

Hours before the filing deadline, Google attempted to lay the blame for this discovery dispute at Plaintiffs' feet, accusing Plaintiffs of identifying a variety of documents and dashboards tonight for the very first time. But Plaintiffs identified each of the documents and dashboards addressed above in discovery requests served on May 27, 2022—requests that explicitly sought screenshots of Magic Eye, D***v, and R***a, as well as all of the ways in which it can be queried. Google has neither done nor committed to do that simple task. It is Google, not Plaintiffs, who have failed to investigate and produce the requested information. Google cannot be allowed to write Plaintiffs off as "uninitiated" while denying Plaintiffs (and their experts) the right to conduct their own analysis.

Plaintiffs believe a hearing would be helpful to answer any questions the Court might have about how Plaintiffs would use the requested information. It would also be helpful for Google to clarify on the record why it is unwilling to provide even the limited and readily available information that Plaintiffs are seeking, including a list of log names and dashboards.

## GOOGLE'S STATEMENT

Google disputes Plaintiffs' recycled arguments, but won't burden the court by re-refuting them. Instead, Google responds only to the Court's question. This Court asked Google to explain its statement in Dkt. 250 at 6 that Google "offered every dashboard Plaintiffs requested" by answering whether Google offered "plaintiffs screenshots of the dashboards" or something else.

In answer to the Court's question, Google offered screenshots to Plaintiffs of two of the four dashboards they identified to Google as potentially responsive—d***e and a dashboard for Magic Eye. With the Dashboard screenshots, Plaintiffs requested two specific searches equaling

16 different permutation be run and printed for Plaintiffs. They have not yet asked for any reports from Magic Eye because Google has not yet produced the Magic Eye screenshots. To the extent Plaintiffs request that Google run dashboard queries that are irrelevant or unduly burdensome, the parties may need to meet and confer about that. The other two they requested—D****v and R***a are not dashboards, as discussed further below.

After this Court's Order at Dkt. 251 issued on October 21, 2022, Plaintiffs sent Google an e-mail stating: "Following up on Judge Tse's October 21 Order, Plaintiffs reiterate their request for Google to produce screenshots for the following dashboards which show all of the ways in which they can be queried:  R***a, Magic Eye, and D****v." Plaintiffs then wrote: "Plaintiffs have identified other dashboards where Google should likewise provide screenshots showing all of the ways in which they can be queried," and listed six more links to dashboards they had not previously requested.

Since Plaintiffs' email, Google has confirmed four of these six new links do not point to dashboards at all. Google will provide screenshots from the other two dashboards. Then, tonight, Plaintiffs identified a seventh new dashboard; Google has now confirmed that link does not point to a dashboard, either; the link, like the other four, is a dead link. This is not surprising given the age of the documents from which Plaintiffs secured the names of the purported dashboards.

Plaintiffs' portion of this letter accuses Google of misleading them and the Court, and claims without evidence that D****v is, in fact, a dashboard. It's not. Google would be happy to submit a declaration substantiating that, but the accusation that Google is misrepresenting the facts was first made late tonight, and Google does not have one at the ready.

As for the citation to a document that supposedly confirms D****v is a dashboard, that document makes clear it's talking about a dashboard with a completely different name. In the interest of compromise, despite that this dashboard is wholly irrelevant, Google agreed to provide screenshots from that dashboard (if the link still works).

Plaintiffs also ask the Court to simply Order that Google turn over a list of all experiments in R***a. That doesn't solve any problems. This is a system that is used for experimentation across Google, far beyond the subject matter of this case. It's not feasible to produce a single list of every experiment in it, nor does it make sense to. Such a list would have be gibberish to the uninitiated; valueless even under the old standard of discovery reasonably calculated to lead to admissible evidence. Plaintiffs asked Google to investigate whether there were relevant experiments, and Google found none after interviewing those Google employees who would know. Plaintiffs, having taken five depositions already and reviewed documents from 24 custodians, have never identified one, either. That should be the end of it. And if they do find one they're interested in, Google will supply what it can in good faith, as it has throughout the dashboard process.

At bottom, Plaintiffs are frustrated that their shots in the dark didn't hit anything. Tonight, Google asked Plaintiffs for their good faith bases for the accusations Plaintiffs make above that Google has misled Plaintiffs concerning D****v and R***a. Plaintiffs did not supply any such bases. There are none.

Respectfully,

WILLKIE FARR & GALLAGHER, LLP

By: */s/ Eduardo Santacana*
    Eduardo E. Santacana (SBN: 281668)
    esantacana@willkie.com
    Benedict Y. Hur (SBN: 224018)
    bhur@willkie.com
    Simona Agnolucci (SBN: 246943)
    sagnolucci@willkie.com
    Lori Arakaki (SBN: 315119)
    larakaki@willkie.com
    One Front Street, 34th Floor
    San Francisco, CA 94111
    Telephone: (415) 858-7400
    Facsimile: (415) 858-7599

    *Attorneys for Defendant Google LLC*

SUSMAN GODFREY LLP

/s/ *Amanda Bonn*
    Amanda Bonn (CA Bar No. 270891)
    abonn@susmangodfrey.com
    SUSMAN GODFREY L.L.P.
    1900 Avenue of the Stars, Suite 1400
    Los Angeles, CA 90067
    Telephone: (310) 789-3100

    Mark C. Mao (CA Bar No. 236165)
    mmao@bsfllp.com
    Beko Reblitz-Richardson (CA Bar No. 238027)
    brichardson@bsfllp.com
    BOIES SCHILLER FLEXNER LLP
    44 Montgomery Street, 41st Floor
    San Francisco, CA 94104
    Telephone: (415) 293 6858
    Facsimile (415) 999 9695

    James W. Lee (*pro hac vice*)
    jlee@bsfllp.com
    Rossana Baeza (*pro hac vice*)
    rbaeza@bsfllp.com
    100 SE 2nd Street, Suite 2800
    Miami, FL 33130
    Telephone: (305) 539-8400
    Facsimile: (305) 539-1304

    William Christopher Carmody (*pro hac vice*)
    bcarmody@susmangodfrey.com
    Shawn J. Rabin (*pro hac vice*)
    srabin@susmangodfrey.com
    Steven Shepard (*pro hac vice*)
    sshepard@susmangodfrey.com
    SUSMAN GODFREY L.L.P.

1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

## ATTESTATION

I, Amanda Bonn, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


DATED: October 26, 2022                    By:    /s/ *Amanda Bonn*