1
Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027

2
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor

3
San Francisco, CA 94104
Tel.: (415) 293-6800

4
mmao@bsfllp.com
brichardson@bsfllp.com

5

6
James Lee (admitted *pro hac vice*)

7
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor

8
Miami, FL 33131
Tel.: (305) 539-8400

9
jlee@bsfllp.com

10
Amanda K. Bonn, CA Bar No. 270891

11
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400

12
Los Angeles, CA 90067
Tel: (310) 789-3100

13
Fax: (310) 789-3150
abonn@susmangodfrey.com

14

15
*Attorneys for Plaintiffs*

Bill Carmody (admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander P. Frawley
(admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas,
32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
Michael F. Ram, CA Bar No. 238027
Ra O. Amen (admitted *pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com
ramen@forthepeople.com

16

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No.: 3:20-cv-04688 <br><br> **PLAINTIFFS' RULE 15(a) MOTION FOR LEAVE TO AMEND COMPLAINT (R. CIV. P. 15(a))** <br><br> The Honorable Richard Seeborg <br> Courtroom 3 – 17th Floor <br> Date: December 8, 2022 <br> Time: 1:30 p.m. |

## <u>NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND COMPLAINT</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 8, 2022, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Richard Seeborg, the undersigned Plaintiffs will and hereby do move the Court for an order pursuant to Rule 15(a) of the Federal Rules of Civil Procedure granting Plaintiffs leave to file their proposed Fourth Amended Complaint, which seeks to revise Plaintiffs' proposed class definitions. This Motion is based upon this Notice and Motion, the following Memorandum of Points and Authorities, the Declaration of Mark C. Mao, other materials in the record, argument of counsel, and such other matters as the Court may consider.

### ISSUE PRESENTED

Whether Plaintiffs should be granted leave to file their proposed Fourth Amended Complaint, which, based on discovery, seeks to clarify the true scope of Google's improper collection, saving, and use of data collected from users who switched off Web & App Activity?

### RELIEF REQUESTED

Plaintiffs respectfully request an Order providing that Plaintiffs may file their proposed Fourth Amended Complaint, attached as Exhibit 1 to the concurrently filed Declaration of Mark C. Mao. A redline showing the proposed changes to the Complaint is attached as Exhibit 2 to the Mao Declaration.

Dated: October 28, 2022                     BOIES SCHILLER FLEXNER LLP

By: _/s/ Mark Mao_____
    Mark C. Mao (CA Bar No. 236165)

1

## **<u>TABLE OF CONTENTS</u>**

2
**Page**

3
INTRODUCTION ........................................................................................................1

4
BACKGROUND ..........................................................................................................4

5
    I.    This Court's Denial in Part of Google's First Motion to Dismiss..........................4

6
    II.   This Court's Decisions on Google's Subsequent Motions to Dismiss and Strike................................................................................................................5

7

8
    III.  Discovery Has Substantiated Plaintiffs' Claims and Revealed that Google's Misconduct Extends Beyond Google Analytics for Firebase ................6

9
        A.    With WAA, Google Knew Users Thought "Off" Meant Off.....................6

10
        B.    Google's Misconduct with WAA-Off Data Extends Far Beyond Firebase...........................................................................................9

11

12
    IV.  Proposed Amendments ...............................................................................10

ARGUMENT ............................................................................................................12

13
    I.    Legal Standard............................................................................................12

14

15
    II.   All Four *Foman* Factors Favor Granting Leave to Amend Classes 1 and 2, Relating to Non-Google Apps. ...............................................................13

16
        A.    Prejudice .......................................................................................13

17
        B.    Undue Delay .................................................................................17

18
        C.    Bad Faith ......................................................................................19

19
        D.    Futility .........................................................................................20

20
    III.  The *Foman* Factors Also Favor Granting Leave to Add Class 3, Relating to ██████████. ................................................................................21

21
CONCLUSION ..........................................................................................................23

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Boulder Brands, Inc.*,
  2014 WL 4352169 (S.D. Cal. Sept. 2, 2014) ............................................................ 14, 18, 19

*Bowen v. Target Corp.*,
  2019 WL 9240985 (C.D. Cal. Nov. 12, 2019) .................................................................... 19

*Brown v. Google LLC*,
  2022 WL 2289057 (N.D. Cal. Mar. 18, 2022) .................................................................. 7, 14

*Clayborne v. Chevron Corp.*,
  2020 WL 11563087 (N.D. Cal. Dec. 2, 2020) ...................................................................... 13

*Crawford v. Uber Techs., Inc.*,
  2021 WL 4846893 (N.D. Cal. Oct. 18, 2021) (Seeborg, J.) .................................................. 19

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ...................................................................................... 4, 13

*Foman v. Davis*,
  371 U.S. 178 (1962) ................................................................................. 3, 13, 21, 22

*Gasperin v. Furniture & Mattress Superstore*,
  2009 WL 10710497 (N.D. Cal. Oct. 5, 2009) (Seeborg, J.) .................................................. 13

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ................................................................................ 4, 12, 17

*Malaney v. UAL Corp.*,
  2011 WL 13153253 (N.D. Cal. Oct. 24, 2011) (Seeborg, J.) ............................................ 16, 20

*McCabe v. Six Continents Hotels, Inc.*,
  2013 WL 12306494 (N.D. Cal. Oct. 10, 2013) ................................................................ 16, 17

*Meaux v. Nw. Airlines, Inc.*,
  2006 WL 8459606 (N.D. Cal. July 17, 2006) .................................................................. 3, 13

*Nangle v. Penske Logistics*,
  2016 WL 9503736 (S.D. Cal. July 20, 2016) ....................................................................... 14

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  2017 WL 3149297 (N.D. Cal. July 25, 2017) ................................................................ 13, 14

*Risher v. Adecco Inc.*,
  2021 WL 9182421 (N.D. Cal. Sept. 17, 2021) ..................................................................... 14

*Synchronoss Techs., Inc. v. Dropbox Inc.*,
   2019 WL 95927 (N.D. Cal. Jan. 3, 2019)..............................................................15

*Unicolors, Inc. v. Kohl's, Inc.*,
   2016 WL 9211658 (C.D. Cal. Aug. 23, 2016) .......................................................15

**Rules**

Fed. R. Civ. P. 15(a)(2) ...........................................................................................12, 13

Fed. R. Civ. P 12(b)(6) ...................................................................................................20

**Treatises**

6 Alan Wright & Arthur Miller, Fed. Prac. & Proc. Civ. § 1474 (3d ed. 2011) ...........16

1

## INTRODUCTION

2

Plaintiffs respectfully seek leave to amend their Complaint—not to add any legal claims,

3 but to instead conform their class definitions to the evidence Google has produced. The core of the

4 case remains the same: Plaintiffs and putative class members are individuals who turned "off"

5 Google's "Web & App Activity" control ("WAA"). In this Court's own words, Google "'set an

6 expectation' that it would not save plaintiffs' 'activity on . . . apps . . . that use Google services'

7 unless plaintiffs turned WAA 'on.'" Dkt. 109 at 16 (citations omitted). Google did not live up to

8 its promises, and Plaintiffs now understand the actual scope of Google's improper collection and

9 saving of data that Google collected from class members' activity while the class members had

10 switched WAA "off" (their "WAA-off data").

11

Discovery has substantiated Plaintiffs' claims. Google's employees privately recognize,

12 but do not publicly disclose, that Google's WAA disclosures are ████████████" (Ex.[1] 3,

13 GOOG-RDGZ-00021160 at -82) and "████████████ (Ex. 4, GOOG-RDGZ-00130745 at -

14 46), that WAA "████████ (Ex. 5, GOOG-RDGZ-00015004 at -04) and people "███████

15 ████████████" (Ex. 3, GOOG-RDGZ-00021160 at -84), and that Google's promise of control

16 is ████████" (Ex. 6, GOOG-RDGZ-00020680 at -80).

17 ████████████████████████████████████████████████

18 ████████████████████████████████████████████████

19 ████████████████████████████████████." Ex. 7, GOOG-

20 RDGZ-00130381 at -81. Another Google employee, evaluating how the WAA control worked,

21 truthfully described WAA as a ████████ Ex. 8, GOOG-RDGZ-00130416 at -601.

22

Through discovery and Google's representations in this case, Plaintiffs have been learning

23 just how ████████. Google's collection and saving of users' WAA-off data is

24 not limited to Google Analytics for Firebase; even Google's counsel claims that some of the

25 documents cited above "discuss[] completely unrelated products and circumstances." Dkt. 247 at

26 5 n.3. Google also saves and ultimately profits from WAA-off data collected by way of additional

27

28

---

[1] "Ex." refers to the exhibits attached to the Declaration of Mark Mao, concurrently filed herewith.

1  Google ▮▮▮▮▮▮▮▮▮▮▮ embedded within non-Google apps, as well as ▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮▮

3      Despite Google's efforts to obstruct all discovery beyond Google Analytics for Firebase,

4  the documents produced in this case have provided additional clarity on the full scope of Google's

5  WAA-off data collection and of Google's saving and use of that WAA-off data. Based on this

6  further discovery, Plaintiffs now seek to conform the complaint to the true scope of Google's

7  improper collection, saving and use of WAA-off data.

8      A number of different ▮▮▮▮▮▮▮▮▮▮▮—in addition to Google

9  Analytics for Firebase—collect, save, and use WAA-off data. These include (for example) ▮

10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮ *See* Fourth Amended Complaint ("FAC") ¶¶ 59-

12  71.

13      That is just the tip of the iceberg. Despite Google's steadfast efforts to limit discovery to

14  Google Analytics for Firebase, Plaintiffs have uncovered the enormous base that lies beneath—

15  that the WAA "control" is entirely illusory. In fact, Google saves and uses WAA-off data generated

16  from users' interactions with ▮▮▮▮▮▮▮▮▮ as well, including ▮▮▮

17  ▮▮▮▮▮▮▮▮▮. *See id.* ¶¶ 72-77. For example, one Google

18  document describes a ▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮ Ex. 10, Monsees Tr. 232:1-12. Google's saving of WAA-off ▮▮▮ data flies in the face

26  of Google's disclosures to its users, which promise that ▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮ are "save[d]" "[w]hen Web & App Activity is *on*," not off. FAC

28  ¶ 95. Google must be held accountable for its plain disregard of its assurances of privacy.

1    Even with these proposed amendments to the complaint, this case remains limited to those

2  people who turned off WAA. That includes both those who turned off WAA and those who turned

3  off a subsetting referred to "Supplemental Web & App Activity" or "SWAA." And the case

4  remains focused on Google's violation of the same set of disclosures that have been at the heart of

5  this case from the beginning. Consistent with the discovery obtained to date and the additional

6  factual allegations included in this proposed amendment, Plaintiffs seek leave to amend their

7  current class definitions as follows, remaining focused on data generated during users' interactions

8  with non-Google apps.

9        Class 1 – All individuals who during the Class Period (a) turned off "Web & App Activity,"
10       <span style="color:red;text-decoration:underline">or supplemental "Web & App Activity"</span> and (b) whose mobile app activity was still
         transmitted to Google, from (c) a mobile device running the Android operating system
11       (OS), because of ████████████████████, <span style="color:red">including</span> Firebase SDK <span style="color:red">a</span>
         ████████ <span style="color:red;text-decoration:line-through">scripts</span>, on a non-Google branded mobile app.

12       Class 2 – All individuals who during the Class Period (a) turned off "Web & App Activity,"
13       <span style="color:red;text-decoration:underline">or "supplemental Web & App Activity,"</span> and (b) whose mobile app activity was still
         transmitted to Google, from (c) a mobile device running a *non*-Android operating system
14       (OS), because of ████████, <span style="color:red">including</span> Firebase SDK ████████
         ████████ <span style="color:red;text-decoration:line-through">scripts</span>, on a non-Google branded mobile app.

15  Plaintiffs also seek leave to add an additional third class, focused on ████████████:

16

17

18

19    With this amendment, Plaintiffs seek to conform their class definitions to what discovery

20  has revealed and to cover the true scope of Google's illicit collection, saving, and use of users'

21  WAA-off data. Plaintiffs do <u>not</u> seek to add any new claims. The existing three claims, which have

22  survived three motions to dismiss, apply to the revised class definitions.

23    Leave to amend Classes 1 and 2 is warranted because Google cannot meet its burden to

24  establish any of the *Foman* factors: "undue delay, bad faith or dilatory motive, futility of

25  amendment, and prejudice to the opposing party." *Meaux v. Nw. Airlines, Inc.*, 2006 WL 8459606,

26  at *1 (N.D. Cal. July 17, 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Plaintiffs have

27  not delayed in seeking this amendment; Plaintiffs are merely seeking to conform the pleadings to

28

the evidence obtained in discovery, including recent depositions. Google also cannot establish that Plaintiffs seek this amendment in bad faith, nor that amendment will be futile, particularly because Plaintiffs' theory of the case remains the one this Court already affirmed. And since this amendment simply conforms the class definition to evidence Google itself provided, there is no prejudice (the most significant factor). *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Plaintiffs do not seek to extend the case deadlines nor serve new discovery on the basis of this amendment.

This analysis is nearly identical for the new class relating to ▮▮▮▮▮▮ (Class 3). The only difference is that Plaintiffs will need to serve new discovery. Although Plaintiffs now know that Google *is* improperly saving Plaintiffs' and Class members' WAA-off ▮▮▮▮▮▮ data, discovery to date includes limited information about what specific WAA-off data is saved, where that data is saved, and how Google uses it. The benefit of such discovery substantially outweighs any burden. Unless Plaintiffs are permitted to pursue these claims, on behalf of the same users who turned off WAA, Google's liability would not correspond with the evidence that discovery has yielded. Relatedly, class members who have been doubly wronged would be denied the opportunity to pursue the full scope of their claims against Google for Google's use of their WAA-off data. The amendment is simply guided by "the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Google should not be rewarded for (until now) concealing the true scope of its improper saving and use of WAA-off data. Plaintiffs believe that judicial economy would be best served by pursuing these allegations in this litigation, including because the parties have already litigated the meaning of Google's WAA disclosures and the parties have conducted discovery into WAA. But Plaintiffs are open to the Court's guidance regarding whether their allegations relating to ▮▮▮▮▮▮ (Class 3) are better raised in separate litigation.

## BACKGROUND

### I.    This Court's Denial in Part of Google's First Motion to Dismiss

Plaintiffs are Google account holders who sought to exercise control over their data by using the "control" that Google purports to provide—the Web & App Activity ("WAA") control,

which is a switch that users can turn on or off (sometimes referred to as "paused" or "disabled"). Google uniformly represented to users that WAA "must be on" to "let Google save" "info about your searches and other activity on Google sites, apps, and services" as well as "info about your browsing and other activity on . . . apps . . . that use Google services." FAC ¶ 95. Plaintiffs alleged in their First Amended Complaint that they understood this uniform Google disclosure to mean that turning off WAA would prevent Google from collecting, saving, and using data related to their interactions with non-Google apps that use Google services (e.g., Firebase). First Am. Compl. ¶¶ 75-76, Dkt. 113. Google moved to dismiss Plaintiffs' claims, including the CDAFA, intrusion upon seclusion, and invasion of privacy claims, principally arguing that Plaintiffs consented to Google's collection of their WAA-off data. *See* Dkt. 62 at 11-12 ("Because Plaintiffs consented to the collection of the data that forms the basis of each claim, the Complaint should be dismissed in its entirety with prejudice.").

This Court rejected Google's principal defense, holding that "plaintiffs did not consent to Google collecting their data, through GA for Firebase, with WAA turned 'off.'" Dkt. 109 at 7. "Google, through the WAA Materials, set an expectation that it would not save plaintiffs' 'activity on . . . apps . . . that use Google services' unless plaintiffs turned WAA 'on.'" *Id.* at 16. The definition of "Google services" within the Google Privacy Policy "permits the inference that GA for Firebase is a 'Google service'—that is, a '[p]roduct[] that [is] integrated into third party apps[.]'" *Id.* at 8. This Court also explained that "[w]here, as here, a company's public-facing statements are legitimately confusing, it is not the public's fault for being confused," and held that "Plaintiffs offer a cogent account of why they saw WAA as capable of turning off GA for Firebase's collection of their third-party app data." *Id.* at 10.

## II.    This Court's Decisions on Google's Subsequent Motions to Dismiss and Strike

Plaintiffs then filed their Second Amended Complaint, which added (1) a breach of contract claim and (2) allegations that Google also impermissibly collects WAA-off data by way of additional Google services named AdMob and Cloud Messaging. Dkt. 113. The new allegations regarding AdMob and Cloud Messaging were based in part on internal Google documents that had been produced in discovery. Dkt. 121 at 23-24 (citing internal Google documents). Google moved

5

1    to dismiss the breach of contract claim and Plaintiffs' CIPA § 631 claim, and Google moved to

2    strike the allegations about AdMob and Cloud Messaging. Dkt. 115.

3         This Court granted Google's motion to dismiss the contract claim, holding that the WAA

4    Help Page was neither an enforceable standalone contract nor incorporated into the Google Privacy

5    Policy. Dkt. 127 at 6. The Court also dismissed Plaintiffs' CIPA claim, concluding that the SAC

6    did "not allege Google's interception of user communications 'while the same [are] in transit' to

7    third-party apps." *Id.* at 7. But the Court denied Google's motion to strike AdMob and Cloud

8    Messaging from the Complaint, holding that those allegations "were pled." *Id.*

9         Two weeks following the Court's ruling, Plaintiffs filed their Third Amended Complaint,

10   in which Plaintiffs sought to correct the identified deficiencies in their CIPA claim, and to allege

11   breach of a unilateral contract. Dkt. 131. Google again moved to dismiss those two claims, and the

12   Court granted Google's motion in January 2022. Dkt. 209.

13   **III.     Discovery Has Substantiated Plaintiffs' Claims and Revealed that Google's Misconduct Extends Beyond Google Analytics for Firebase**

14

15        Since the Court's January 2022 ruling, Plaintiffs have uncovered additional examples of

16   Google products and services by which Google collects and saves WAA-off data. With this

17   amended complaint, Plaintiffs are not seeking to revive any previously dismissed claim, nor to add

18   any new claims. Instead, with the benefit of additional discovery made possible by this Court's

19   denial of Google's motion to strike, Plaintiffs now seek to conform their class definitions to

     additional facts uncovered through discovery.

20        **A.     With WAA, Google Knew Users Thought "*Off*" Meant Off**

21        Google's own employees agree with Plaintiffs (and the Court) that Google's "public-facing

22   statements [about WAA] are legitimately confusing." Dkt. 109 at 10. ███████████████████

23   ████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████.

28



7



1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████████████████

4 ████████████████████████████████████████████████████████

5 ██████████████████████████████████████████████████████

6 ██████████████████████████████████████████████████████████

7 ██████████████████████████████████████████████████████████

8     **B.**     ***Google's Misconduct with WAA-Off Data Extends Far Beyond Firebase***

9     Google has tried to deflect these concerns about Google collecting and saving WAA-off

10 data by suggesting they are irrelevant to Google Analytics for Firebase. For example, according to

11 Google, ████████ concerns addressed "completely unrelated products and circumstances."

12 Dkt. 247 at 5 n.3. Google's argument shows why Plaintiffs' proposed amendment is warranted.

13 The problems with WAA are so pronounced that even Google cannot pinpoint them to any

14 particular Google product or service. Google's improper collection and saving of WAA-off data

15 extends far beyond Google Analytics for Firebase. ████████████████████████

16 ████████████

17 ████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████

21 ███████████████████████████████████████████████████

22     Consistent with the concerns and criticisms expressed by Google's own employees,

23 Plaintiffs now seek to amend their Complaint to identify additional Google services and products

24 by which Google impermissibly collects and saves WAA-off data. ████████████ The

25 case remains limited to people who turned off WAA, but the amendment will ensure that the class's

26 claims can be fully and fairly addressed in this case.

27     By way of example, relating to Classes 1 and 2, one additional ████████████

28 ████████████ that Google uses to collect and save WAA-off app activity information is

9



Based on the discovery to date, the proposed amendment also includes Google's collecting and saving WAA-off data

**Proposed Amendments**

With this amendment, Plaintiffs are <u>not</u> seeking to add any additional claims. Rather, for the existing claims (where the Court already denied Google's motion to dismiss), Plaintiffs seek

to amend their class definitions to match the scope of Google's misconduct, as revealed through Google's representations and discovery in this case.

Plaintiffs seek to amend the class definitions for Class 1 and 2 as follows:

Class 1 – All individuals who during the Class Period (a) turned off "Web & App Activity," or supplemental "Web & App Activity" and (b) whose mobile app activity was still transmitted to Google, from (c) a mobile device running the Android operating system (OS), because of ██████████████████ including Firebase SDK ████████ ████████ on a non-Google branded mobile app.

Class 2 – All individuals who during the Class Period (a) turned off "Web & App Activity," or "supplemental Web & App Activity" and (b) whose mobile app activity was still transmitted to Google, from (c) a mobile device running a *non*-Android operating system (OS), because of ██████████████████ including Firebase SDK ████████ ████████ on a non-Google branded mobile app.

These first two classes remain focused on Google collecting, saving, and using WAA-off data obtained from users' interactions with non-Google apps. And these classes remain focused on the same uniform Google disclosures underlying Plaintiffs' initial Complaint. Without altering that focus, the amendments to Classes 1 and 2 accomplish two goals.

First, the amendments to Classes 1 and 2 clarify that these classes include users who had WAA "on" but sWAA "off." ████████████████████████████████ But the inverse is not true. A user can elect to turn on WAA but turn off sWAA and/or keep sWAA off. FAC ¶ 84. Such a user would be providing consent for Google to "save [their] activity on Google sites and apps" but would not consent to Google collecting and saving their "activity from . . . apps . . . that use Google services," i.e., third-party apps. FAC ¶ 95.

Second, consistent with the Second Amended Complaint, which added allegations about AdMob and Cloud Messaging (*see supra* Background § B), the other alteration to Classes 1 and 2 clarifies that Google's improper collection of WAA-off data is not limited to Firebase SDK. Google also collects and saves WAA-off data about users' interactions with non-Google apps using additional Google services, including without limitation ████████████████ ████████████ *See supra* Background § C. The proposed amendment contains detailed

allegations regarding examples of such additional Google services, relying on evidence produced in discovery. FAC ¶¶ 59-71.

Plaintiffs also seek leave to add an additional class, focused on ████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

This Class 3 is limited to those people who turned WAA off, and the claims are based on the same uniform WAA disclosures which this Court interpreted in its initial motion to dismiss ruling: "Google, through the WAA Materials, set an expectation that it would not save plaintiffs' 'activity on . . . apps . . . that use Google services' unless plaintiffs turned WAA 'on.'" Dkt. 109 at 16 (ellipsis in original). ████████████████████████████████████████████ ██████████████████████████████████ Plaintiffs have learned through discovery that Google saves information about WAA-off users' ██████████████████████████ and Plaintiffs properly seek to conform the Complaint to that evidence.

## ARGUMENT

### I.      Legal Standard

Under this case's Management Scheduling Order, "any amendment of the pleadings shall be governed by Rule 15 of the Federal Rules of Civil Procedure." Dkt. 59 at 1. Under Rule 15, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The Supreme Court has stated that 'this mandate is to be heeded.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Foman*, 371 U.S. at 182). Similarly, the Ninth Circuit has "repeatedly stressed that the court must remain guided by the 'underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Id.* at 1127 (alteration in original). "In short, the policy permitting amendment is to be applied with 'extreme liberality.'" *Gasperin v. Furniture & Mattress Superstore*, 2009 WL 10710497, at *1 (N.D. Cal. Oct. 5, 2009) (Seeborg, J.) (quoting *Eminence Capital*, 316 F.3d at 1051).

1   "The Supreme Court has identified four factors relevant to whether a motion for leave to

2   amend should be denied: undue delay, bad faith or dilatory motive, futility of amendment, and

3   prejudice to the opposing party." *Meaux v. Nw. Airlines, Inc.*, 2006 WL 8459606, at *1 (N.D. Cal.

4   July 17, 2006) (citing *Foman*, 371 U.S. at 182). "As this circuit and others have held, it is the

5   consideration of prejudice to the opposing party that carries the greatest weight." *Eminence*

6   *Capital*, 316 F.3d at 1052 (9th Cir. 2003) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183,

7   185 (9th Cir. 1987)). "Absent prejudice, or a strong showing of any of the remaining *Foman*

8   factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.*

9   (emphasis in original). As "[t]he non-moving party[, Google] bears the burden of demonstrating

10  why leave to amend should not be granted." *Clayborne v. Chevron Corp.*, 2020 WL 11563087, at

11  *1 (N.D. Cal. Dec. 2, 2020) (citing *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074,

12  1079 (9th Cir. 1990). Google cannot carry its burden with respect to any of the three classes.

13  **II.    All Four *Foman* Factors Favor Granting Leave to Amend Classes 1 and 2, Relating to Non-Google Apps.**

14

15  Start with Classes 1 and 2. Google cannot meet its burden as to any of the *Foman* factors,

16  particularly because Plaintiffs are not seeking to serve new discovery and because the crux of the

17  case remains Google's collection, saving, and use of WAA-off data, focused on the same uniform

    Google disclosures.

18  **A.    Prejudice**

19
    Leave to amend should be granted because the prejudice factor "carries the greatest

20  weight," and Google cannot demonstrate any prejudice.

21  "[T]o overcome Rule 15(a)'s liberal policy with respect to the amendment of pleadings a

22  showing of prejudice must be substantial. Neither delay resulting from the proposed amendment

23  nor the prospect of additional discovery needed by the non-moving party in itself constitutes a

24  sufficient showing of prejudice." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2017 WL

25  3149297, at *3 (N.D. Cal. July 25, 2017) (quoting *Stearns v. Select Comfort Retail Corp.*, 763 F.

26  Supp. 2d 1128, 1158 (N.D. Cal. 2010)).

27

28

1    Courts routinely conclude there is no substantial prejudice and that leave to amend is

2  warranted where a party merely seeks to conform the complaint to evidence revealed in discovery.

3  "[T]here is nothing inherently improper about amending class definitions in light of discovery

4  issues," which is all that Plaintiffs seek to accomplish here. *Risher v. Adecco Inc.*, 2021 WL

5  9182421, at *1 (N.D. Cal. Sept. 17, 2021) (granting motion for leave to file fourth amended

6  complaint, which included revised class definitions); *Brown v. Google LLC*, 2022 WL 2289057,

7  at *1 (N.D. Cal. Mar. 18, 2022) (granting plaintiffs' motion to amend complaint "to change their

8  class definitions to cover additional Google products and services" based on evidence produced in

9  discovery); *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2017 WL 3149297, at *3 (N.D. Cal.

10  July 25, 2017) (granting motion for leave to amend complaint where the plaintiff sought to

11  "clarify[] the pleadings based on what it has learned in discovery").

12    Moreover, there is no prejudice when "[d]iscovery should not be substantially impacted."

13  *Aguilar v. Boulder Brands, Inc.*, 2014 WL 4352169, at *5 (S.D. Cal. Sept. 2, 2014). Here, Plaintiffs

14  have already served a small handful of targeted written discovery requests relating to the additional

15  Google services for third-party apps named in the proposed amended complaint, all of which fit

16  within Plaintiffs' existing allotment of discovery requests. Mao Decl. ¶ 36. Plaintiffs' latest sets of

17  written discovery requests are their last set relating to Google's collection of WAA-off data from

18  third-party apps. Mao Decl. ¶ 36. And Plaintiffs have also already sought dates for all of their

19  selected depositions relating to WAA-off data collected from third-party apps. Mao Decl. ¶ 37.

20    Brand new discovery is unnecessary for Classes 1 and 2 because, as before, "the focus

21  remains on Defendant's [collection, saving, and use of WAA-off third-party app-activity

22  information] and their . . . representations" regarding WAA. *Aguilar*, 2014 WL 4352169, at *5.

23  Plaintiffs are asserting the same legal claims, focused on WAA, and the amendment "will therefore

24  not require voluminous discovery and will have little impact on the length of the judicial

25  proceedings since no trial date had been set and motion practice is still ongoing." *Nangle v. Penske

26  Logistics*, LLC, 2016 WL 9503736, at *4 (S.D. Cal. July 20, 2016) (granting leave to amend); *see

27  also Unicolors, Inc. v. Kohl's, Inc.*, 2016 WL 9211658, at *2 (C.D. Cal. Aug. 23, 2016) (granting

28

1    leave to amend because the proposed amendment "will not result in significant additional

2    discovery, nor would it affect the scheduled trial date").

3         Google will not suffer any prejudice from defending against the newly added facts

4    regarding Classes 1 and 2. The revised class definitions are based on representations by Google

5    and documents Google produced to Plaintiffs *in this case*, which means Google should not be

6    surprised by these additional products and services. Google correctly chose to produce those

7    documents, deeming them within the scope of Plaintiffs' claims.  Moreover, "[i]t is currently

8    unclear what additional discovery [Google] might need, [particularly] given that any evidence to

9    refute the [new allegations] is presumably within [Google's] control. And even if some limited

10   discovery were necessary, the mere need for additional discovery, by itself, does not constitute

11   sufficient prejudice under Rule 15 to withhold leave to amend." *Synchronoss Techs., Inc. v.*

12   *Dropbox Inc.*, 2019 WL 95927, at *3 (N.D. Cal. Jan. 3, 2019) (granting motion to amend after

13   close of fact discovery). Furthermore, under the current schedule, opening expert reports are not

14   due until January 20, 2023, with rebuttal reports due on May 1, 2023—leaving Google plenty of

15   time to conduct additional investigations (if any is warranted) in advance of those deadlines. Dkt.

16   245 at 2. And while seemingly unnecessary, Plaintiffs have informed Google that, if Google has

17   any questions about the amendment as it relates to the named plaintiffs, it is free to serve discovery.

18   Mao Decl. ¶ 38.

19        To be clear, Plaintiffs have sought a limited extension of the fact discovery cutoff because

20   of certain outstanding discovery disputes (Dkt. 255), but that request is necessary regardless of the

21   outcome of this motion. For example, since early spring, Plaintiffs have sought to conduct testing

22   to determine how WAA and sWAA affect how Google collects, saves, and uses app-activity data.

23   Mao Decl. ¶ 39. To do so, Plaintiffs have sought information about the logs in which Google stores

24   this WAA-off data (including sWAA-off). To date, Google has provided Plaintiffs with very little

25   information, identifying only four logs while withholding thousands more. For example, Google

26   continues to withhold logs that contain "fields" or "bits" dedicated to indicating whether the data

27   was generated while WAA was "off." Dkt. 250 (joint letter brief). Plaintiffs served written requests

28   aimed at discovering this information in May; yet it took Google until September to complete even

PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT
Case No. 3:20-cv-04688-RS

1   a preliminary investigation, and then Google refused to provide the information it found to

2   Plaintiffs, resulting in Plaintiffs' October 17 motion to compel (Dkt. 250). Mao Decl. ¶¶ 39-41;

3   *see also* Dkt. 250 at 1. The outcome of that motion to compel will inform Plaintiffs' data testing

4   proposal to Google. And regardless of the outcome of that motion to compel and this motion for

5   leave to amend, Google's delay has necessitated more time to complete the data production

6   process.

7       Finally, that this amendment might increase Google's liability—by incorporating

8   additional Google services—provides no basis to deny leave. "A Rule 15(a) amendment also is

9   appropriate for increasing the amount of damages sought, or for electing a different remedy than

10  the one originally requested." 6 Alan Wright & Arthur Miller, Fed. Prac. & Proc. Civ. § 1474 (3d

11  ed. 2011) (cited with approval in *Malaney v. UAL Corp.*, 2011 WL 13153253, at *2 (N.D. Cal.

12  Oct. 24, 2011) (Seeborg, J.)).

13      *McCabe v. Six Continents Hotels, Inc.*, 2013 WL 12306494 (N.D. Cal. Oct. 10, 2013), is

14  instructive. In *McCabe*, the plaintiffs initially alleged that the "defendant unlawfully recorded,

15  without consent or notice, calls to toll-free telephone numbers through which callers made

16  reservations for Holiday Inn Hotels." *Id.* at *1. During discovery, "plaintiffs came to learn that

17  toll-free reservation numbers associated with Six Continents Hotels' other hotel brands likely were

18  routed to the same call centers as the numbers identified in the complaint." *Id.* Plaintiffs therefore

19  sought leave to amend to "add allegations regarding the additional hotel brands." *Id.* at *2. The

20  court granted leave, reasoning: "While the proposed amended complaint would cover a larger

21  number of telephone numbers and hotel brands, it would be based on the same alleged unlawful

22  practice—the unauthorized recording of telephone conversations." *Id.*

23      Here, as in *McCabe,* to the extent the amendment "would cover a larger [amount] of

24  [WAA-off data that Google collects and saves]," leave is warranted because claims asserted on

25  behalf of Classes 1 and 2 are still "based on the same alleged unlawful practice—the unauthorized"

26  collection and saving (and subsequent use) of WAA-off data generated during users' interactions

27  with third-party apps. *Id.* This "proposed amendment does not raise a new legal or factual theory

28  that would alter the nature of the action." *Id.* And "even if it were the case that [Plaintiffs are] now

16

1  attempting to 'change the narrative,' Rule 15 exists for the very purpose of allowing such changes

2  in the interest of reaching a proper decision on the merits.'" *Pinterest, Inc. v. Pintrips*, Inc., 2014

3  WL 12611300, at *1 (N.D. Cal. Aug. 26, 2014) (Seeborg, J.).

4  Plaintiffs properly seek to amend their class definitions as they begin to prepare their

5  motion for class certification. To deny leave in these circumstances would lead to a final judgment

6  on "technicalities" rather than the merits—thereby flouting the "underlying purpose of Rule 15."

7  *Lopez*, 203 F.3d at 1127.

8  **B.    Undue Delay**

9  Nor can Google establish that Plaintiffs have delayed in seeking this amendment, much

10  less unduly delayed. Plaintiffs filed their last complaint on September 1, 2021 (Dkt. 131), before

11  any meaningful discovery had taken place. Google had at that point only designated three

12  document custodians, and the parties had not yet concluded their negotiations nor motion practice

13  on search terms for those three custodians. Mao Decl. ¶ 42. The parties ultimately filed a joint

14  letter brief regarding their search terms dispute for the first five custodians (the initial three, plus

15  one each for AdMob and Cloud Messaging) on January 7, 2022 (Dkt. 201), which resulted in

16  Google being ordered to review an additional 135,000 documents for those custodians (Dkt. 213).

17  Only on July 28, 2022, did Google represent that its productions for those custodians were

18  substantially complete. And following Plaintiffs' successful motion to compel (Dkt. 184), Google

19  has produced documents for nineteen additional custodians. Again, only at the end of July 2022

20  did Google represent that those productions were substantially complete. Dkt. 245. In short, the

21  scope of discovery has significantly changed since Plaintiffs filed their prior Complaint over a year

22  ago, and even in the last few months.

23  To the extent there has been "undue delay" in this case, that delay is entirely of Google's

24  making. The Court granted Plaintiffs' motion to compel document productions for the nineteen

25  additional custodians on December 1, 2021, and it resolved the parties' final disputes over search

26  terms for those custodians on May 9, 2021. Dkts. 184, 238. But somehow, Google did not produce

27  a single unique document from the files of those nineteen additional custodians until July 28, 2022.

28  Mao Decl. ¶ 43. Google's delay meant that Plaintiffs could not begin depositions until the fall,

17

1   which prevented Plaintiffs from earlier receiving and piecing together the discovery that forms the

2   basis of this proposed amendment.

3       Plaintiffs' prior attempts to amend their Complaint should not foreclose this amendment.

4   Unlike with Plaintiffs' Second and Third Amended Complaints, this proposed amendment does

5   not seek to any new claims, nor revive any old ones. Plaintiffs are solely seeking to conform their

6   proposed class definitions to the evidence that has been provided in discovery.

7       Over a year ago, when Plaintiffs filed their prior Complaint, the Court had only two weeks

8   earlier denied Google's motion to strike AdMob from the Complaint. Dkt. 127 at 3. Google sought

9   to strike AdMob so that it would not have to provide any discovery about AdMob, arguing that

10  Plaintiffs should not be permitted to "expand discovery beyond its proper scope." Dkt. 122 at 1.

11  This Court denied that motion, and in doing so clarified that Plaintiffs' AdMob allegations

12  "expands the scope of discovery." Dkt. 127 at 7-8.

13      Discovery into AdMob has clarified that, through additional Google services (███████

14  ███████ Google also improperly collects and saves WAA-off data. Notably, in seeking to strike

15  AdMob from the Complaint, Google did <u>not</u> inform the Court that Google had by then developed

16  ████████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████

20  ██████████████████████████████████Consistent with Plaintiffs' Second Amended

21  Complaint, and this Court's denial of Google's motion to strike AdMob from the Complaint,

22  Plaintiffs now seek to make clear that AdMob and ████████ are within the scope of the class

23  definitions.

24      Finally, even if Plaintiffs have delayed in seeking this amendment (and they have not),

25  "delay, by itself, is insufficient to justify denial of leave to amend," *Aguilar*, 2014 WL 4352169,

26  at *1 (quoting *DCD Programs, LTD v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)), particularly

27  when the amendment is triggered by information learned through discovery. "The volume and

28  complexity of discovery in a case is an acceptable reason for delayed amendment." *Bowen v.*

1  *Target Corp.*, 2019 WL 9240985, at \*3 (C.D. Cal. Nov. 12, 2019). The lack of any prejudice to

2  Google far outweighs any conceivable delay.

3          *Crawford v. Uber Techs., Inc.*, 2021 WL 4846893 (N.D. Cal. Oct. 18, 2021) (Seeborg, J.)

4  is instructive. In that case, the defendant (Uber) opposed the plaintiffs' motion to amend their

5  complaint on the ground that "Plaintiffs have previously amended their complaints." *Id.* at \*3. This

6  Court rejected that argument, reasoning that although the prior amendments "may incline in Uber's

7  favor," that is "outweighed when considering the goals of the Federal Rules of Civil Procedure.

8  The Federal Rules of Civil Procedure 'effectively abolish[ed] the restrictive theory' of the prior

9  pleadings doctrine." *Id.* (quoting *Johnson v. Cty. of Shelby, Miss.*, 574 U.S. 10, 12 (2014)). The

10 Court ruled that "allowing leave to amend is in the interest of justice," and that same outcome is

11 also warranted here, where Plaintiffs are merely seeking to conform the pleadings to discovery and

12 where the defendant will suffer "relatively little prejudice" (if any at all). *Id.*

13      **C.      Bad Faith**

14          Plaintiffs do not seek to amend in bad faith. "Bad faith has been construed by the Ninth

15 Circuit as an amendment sought with wrongful motive or a plaintiff merely . . . seeking to prolong

16 the litigation by adding new but baseless legal theories.'" *Bowen*, 2019 WL 9240985, at \*5

17 (quoting *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 881 (9th Cir. 1999)). To the contrary,

18 Plaintiffs' amendment "can be fairly characterized as a clarification of the allegations." *Aguilar*,

19 2014 WL 4352169, at \*4. Plaintiffs are simply clarifying that the class definitions should not be

20 limited to Firebase, particularly because discovery has confirmed that other Google products,

21 besides Firebase, collect, save and use WAA-off data.

22          This Court has previously rejected an accusation by Google that Plaintiffs are litigating in

23 bad faith. *See* Dkt. 209 at 7 ("Plaintiffs take umbrage with Google's casual accusations of 'bad-

24 faith' litigation. Such contentions should not be made lightly or casually interjected. Moreover,

25 the record does not reflect such bad-faith litigation tactics. This area of law is complicated. . . .

26 While Plaintiffs' CIPA claims lack factual support, they do not evidence some kind of improper

27 litigation conduct."). Insofar as Google tries to revive its baseless bad-faith accusations, the same

28 outcome is warranted here.

19

1       **D.      Futility**

2           Given the Court's prior rulings and evidence produced, the amendments are well-founded

3       and in no way futile. Regardless, any "futility" arguments raised by Google should be dealt with

4       by way of a Rule 12 motion. "The sufficiency of the plaintiffs' pleadings has not yet been tested

5       under Federal Rule of Civil Procedure 12(b)(6), and it would be premature to deny plaintiffs'

6       request for leave to amend as futile on the basis of a full dismissal analysis without an appropriate

7       motion and full briefing by the parties." *Malaney v. UAL Corp.*, 2011 WL 13153253, at *2 (N.D.

8       Cal. Oct. 24, 2011) (Seeborg, J.).

9           Plaintiffs are confident they would prevail on any motion to dismiss. The amendments to

10      Class 1 and Class 2 rely on the exact same language this Court considered when it denied Google's

11      motion to dismiss the current claims (CDAFA, intrusion upon seclusion, and invasion of privacy).

12      "Google, through the WAA Materials, 'set an expectation' that it would not save plaintiffs'

13      'activity on . . . apps . . . that use Google services' unless plaintiffs turned WAA 'on.'" Dkt. 109

14      at 16 (citing WAA Help Page). And the definition of "Google services" within the Google Privacy

15      Policy "permits the inference that GA for Firebase is a 'Google service'—that is, a '[p]roduct[]

16      that [is] integrated into third party apps.'" *Id.* at 8. The expansion to Classes 1 and 2 simply clarifies

17      additional Google products that are integrated into third-party apps, including ███████████████

18      ████████████████████████████ Google, through the WAA Help Page, "set an expectation that

19      it would not save plaintiffs' 'activity on . . . apps . . . that use [these new services] unless plaintiffs

20      turned WAA 'on.'"" Dkt. 109 at 16. That prior holding applies to the proposed expansion to

21      Classes 1 and 2.

22          This Court's subsequent denial of Google's motion to strike also shows why this motion

23      to amend should be granted (and why any motion to dismiss or strike should be denied). In this

24      Court's own words, the SAC "name[d] two new Google services—AdMob and Cloud Messaging

25      for Firebase ('Cloud Messaging')—as vehicles for Google's supposed misconduct." Dkt. 127 at 3.

26      Plaintiffs' current motion likewise (and solely) seeks to clarify AdMob's role and to specify

27      additional Google products as vehicles for Google's misconduct, while remaining focused on the

28      same misleading WAA disclosures underlying Plaintiffs' case.

1                                    *       *       *

2          In sum, all four *Foman* factors weigh in favor of granting Plaintiffs' motion to amend

3   Classes 1 and 2. Substantial discovery is not necessary to show that Google collects, saves, and

4   uses WAA-off, third-party app data ███████████████████ other than the Firebase SDK.

5   Plaintiffs have not delayed in seeking this amendment, which is based largely on Google's

6   representations and discovery. Plaintiffs seek this amendment in good faith, and cannot imagine a

7   cogent argument to the contrary. These amendments could not possibly be futile because they

8   clarify what Plaintiffs and the Court have always understood to be part of this case. And Plaintiffs'

9   amendments are based on the very same disclosures and conduct that is already at issue in this case

10  regarding Google's collection of WAA-off data using Firebase, which even Google concedes is

11  within the case as it stands.

12  **III.     The *Foman* Factors Also Favor Granting Leave to Add Class 3, Relating to ██████
            ████**

13

14          Nearly the same analysis applies with respect to Plaintiffs' request to add Class 3. Class 3

    relates to Google's violation of its promise not to save ██████████ when users have turned off the
15
    WAA feature.[2] The bulk of discovery, relating to Class 3, occurred after Plaintiffs filed the Third
16
    Amended Complaint, since Google failed to produce documents for most custodians until late July
17
    2022. Based on Google's representations and the discovery that has unfolded, Plaintiffs have come
18
    to better understand the true breadth of Google's misconduct. Plaintiffs have not delayed—much
19
    less unduly—seeking to amend their Complaint in the wake of that discovery. Plaintiffs seek this
20
    amendment not in bad faith, but instead to hold Google accountable for acts that it has admitted to
21
    committing, which violate Google's promises to users. This effort is not futile. As the Court has
22
    already recognized, Google's WAA disclosures "set an expectation" amongst users that Google
23
    would not save WAA data, which includes ██████████ unless WAA is turned on. Dkt. 109 at 16;
24
    FAC ¶ 95 (WAA control purports to control saving of ██████████████████████ Three
25

26  _____

27  █████████████████████████████████████████████████████████████████████████

28  █████████████████████████████████████████████████████████████████████████

                                              21



1    of the four *Foman* factors—delay, bad faith, and futility—are the same across all three Classes.

2    Plaintiffs' allegations relating to ███████████ however, will require new discovery.

3    Google's representations and discovery produced to date confirm that ███████████

4    ███████████ notwithstanding Google's clear promise to save that

5    information only "[w]hen Web & App Activity is on." FAC ¶ 95; *see* Ex. 9, GOOG-RDGZ-

6    00014556 at -58; Ex. 10, Monsees Tr. 232:1-12. Google's witnesses have also confirmed that

7    Google uses WAA-off ███████████ enrich itself. ███████████

8    ███████████████████████████████████████████████████

9    ███████████████████████████████████████████████████

10   ███████████ But to prove the extent of Google's invasion of users' privacy—and how much

11   Google profits from it—Plaintiffs intend to serve new, targeted discovery requests relating to ██

12   ███████████████████████████████████████████████████

13   While this amendment would both change the scope of the case and the scope of Google's liability,

14   Plaintiffs seek to add Class 3 "in the interest of reaching a proper decision on the merits"—"the

15   very purpose of Rule 15." *Pinterest, Inc.*, 2014 WL 1261130, at *1 (Seeborg, J.).

16   Google should not be permitted to escape liability for this misconduct simply because fully

17   investigating it will require additional discovery. That is doubly true because Google has

18   throughout this case sought to conceal from Plaintiffs the true scope of its improper saving and use

19   of WAA-off data. ███████████████████████████████████

20   ███████████████████████████████████████████████████

21   ███████████████████████████████████████████████

22   ███████████████████████████████████████████

23   ███████████████████████████████████████████

24   ███████████████████████████████

25   ███████████████████████████████████████████████████

26   ███████████████████████████████████████████████████

27   ███████████████████████████████████████████████████

28   ███████████████████████████████████████████████████

22

1  ████████████████████████████████████████ Google should not be rewarded

2  for (until recently) concealing the full scope of its improper saving and use of WAA-off data, in

3  violation of its promises to the same group of users who already comprise Classes 1 and 2.

4        This action is the proper forum to litigate Google's misconduct with respect to ██████

5  ████████ There has already been substantial discovery on the WAA disclosures and users'

6  failure to understand them, and the parties have been through several rounds of dispositive motions

7  addressing those disclosures, not to mention significant discovery motions. Because all of that

8  work might have to be repeated if this issue were litigated separately, judicial economy favors

9  amendment. But if the Court prefers that Plaintiffs file a separate case to litigate this issue,

10  Plaintiffs will do so.

11  **CONCLUSION**

12        Plaintiffs respectfully request leave to file their proposed Fourth Amended Complaint,

13  attached as Exhibit 1 to the Mao Declaration.

14  Dated: October 28, 2022               Respectfully submitted,

15

16                                  By: */s/ Mark Mao*

17                                  Mark C. Mao, CA Bar No. 236165
                                Beko Reblitz-Richardson, CA Bar No. 238027

18                                  Erika Nyborg-Burch, CA Bar No. 342125

19                                  **BOIES SCHILLER FLEXNER LLP**
                                44 Montgomery St., 41st Floor

20                                  San Francisco, CA 94104
                                Tel.: (415) 293-6800

21                                  Fax: (415) 293-6899

22                                  mmao@bsfllp.com
                                brichardson@bsfllp.com

23                                  enyborg-burch@bsfllp.com

24                                  Alison Anderson, CA Bar No. 275334
                                aanderson@bsfllp.com

25                                  **BOIES SCHILLER FLEXNER LLP**

26                                  725 S. Figueroa Street, 31st Floor
                                Los Angeles, CA 90017

27  _____

28  [3] █████████████████████████████████████████

Tel.: (213) 995-5720

Jesse Panuccio (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave, NW
Washington, DC 20005
Tel.: (202) 237-2727
Fax: (202) 237-6131
jpanuccio@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
Fax: (303) 539-1307
jlee@bsfllp.com
rbaeza@bsfllp.com

John A. Yanchunis (admitted *pro hac vice*)
Michael F. Ram CA Bar No. 104805
Ryan J. McGee (admitted *pro hac vice*)
Ra Amen (admitted *pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
mram@forthepeople.com
rmcgee@forthepeople.com
ramen@forthepeople.com

Amanda K. Bonn, CA Bar No. 270891
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA. 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
abonn@susmangodfrey.com

William S. Carmody (admitted *pro hac vice*)
Shawn Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander P. Frawley (admitted *pro hac vice*)
Ryan K. Sila (admitted *pro had vice*)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor

24

New York, NY 10019-6023
Tel.: (212) 336-8330
Fax: (212) 336-8340
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@ susmangodfrey.com
rsila@susmangodfrey.com

Ian B. Crosby (admitted *pro hac vice*)
Jenna G. Farleigh, CA Bar No. 288811
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880
Fax: (206) 516-3883
icrosby@susmangodfrey.com
jfarleigh@susmangodfrey.com

*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT
Case No. 3:20-cv-04688-RS