November 7, 2022

**Submitted via ECF**

Magistrate Judge Alex G. Tse
San Francisco Courthouse
Courtroom A - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

    Re:    Joint Letter Brief re: Special Master appointment
              *Rodriguez v. Google LLC*, Case No. 3:20-cv-04688-RS (N.D. Cal.)

Dear Magistrate Judge Tse:

    Plaintiffs and Google LLC ("Google") submit this joint letter brief regarding the parties' dispute over the process by which Google will produce data to Plaintiffs, including whether there should be a Special Master to assist with that process. Counsel for the parties met and conferred in good faith about these data-focused disputes, including by videoconference on July 26, July 28, August 2, August 9, August 18, and September 1. Exhibit A is Plaintiffs' proposed order, and Exhibit B is Google's proposed order.

## PLAINTIFFS' STATEMENT[1]

Plaintiffs respectfully seek an order appointing a special master to assist with the process by which Google will search for and produce data in this case, consistent with the Court's prior ruling that "some form of statistical sampling" be used for data production. Dkt. 185 (denying request for Google to preserve all data and noting that Google may need to "turn over a subset" of that data at a later time). As explained below, Plaintiffs propose that Douglas Brush be appointed as Special Master. Mr. Brush already has familiarity and experience with Google's systems and logging structure based on his work in *Brown v. Google*, which Plaintiffs expect would help streamline these efforts, so that Google can produce a relevant subset of data in a timely and cost-efficient manner, in advance of expert discovery.

This Court is familiar with the parties' longstanding disputes over Google's identification of WAA-related logs and fields, with Plaintiffs seeking information so that the parties can then work together to design a process for Google to produce certain data from some (not all) logs and fields (the "sample" or "subset" referred to above). The parties on October 17 and October 26 submitted joint letter briefs addressing these disputes, which followed months of delay while Google was claiming to "investigate" which logs contain (s)WAA-off bits and fields. Dkts. 250, 253. Plaintiffs served written discovery requests many months ago (in May 2022) seeking to obtain this information, following months of unsuccessful informal efforts to work with Google. *See* Dkt. 254-6 (email thread showing the parties' dialog about these issues going back to December 2021, with Google taking months to respond to one email).

Plaintiffs seek production of a subset of the data stored by Google both to support their claims and to refute arguments that they predict Google will make. Seeking to avoid or narrow this dispute, Plaintiffs proposed that Google stipulate to certain positions, including that WAA-off data can be linked with users' Google accounts. Google declined. Plaintiffs then served RFA 40, which asked Google to admit that **"**it is possible to join WAA-off Data with data tied to a user's Google account." Google employee Eric Miraglia confirmed as much during his deposition in this case,[2] but Google refused to even respond to RFA 40. Google thus signaled its intention to contest these propositions, including perhaps for purposes of opposing Plaintiffs' motion for class certification. It is improper for Google to plan to contest these propositions while denying Plaintiffs access to logs and data that Plaintiffs can use to refute Google's assertions.

---

[1] Plaintiffs provided their portion of this letter brief to Google on November 3. Google did not provide its portion until 10:26 p.m. on November 7, the filing deadline. Plaintiffs therefore are unable to respond to Google's portion below. However, Plaintiffs must point out that Google's description of its August 11 email is inaccurate, and Plaintiffs refer the Court to that email. *Compare* Dkt. 254-6 (Ex. 4 to extension Motion), *with* Google's Portion, *infra* at 4). Plaintiffs are happy to supplement this filing if the Court has questions.

[2] *See* Miraglia Rough Tr. at 93:15-17 ("Pseudonymous is usually referring to data that has not been mathematically anonymized. And so there's always at least the hypothetical possibility of reidentification."); *see also* GOOG-RDGZ-00033244 (Google engineer acknowledging "joinability risks" with respect to "link[ing] app events collected by GA4F to GAIA ID even if end users turn off WAA").

While the parties may disagree about the process and scope for the data production process, Google has agreed that this data production process will occur regardless. *See, e.g.*, Dkt. 254-8 (email from Google's counsel). Google stated in meet-and-confers that it considers this process to fall under "expert discovery," but linking (and delaying) data production to expert discovery threatens to prejudice Plaintiffs. Plaintiffs seek data so that their experts can consider the data in advance of preparing their reports. That data should be produced in advance of expert discovery, not during expert discovery. Advance production is also important to ensure that Google's experts do not cite and rely on data or technical positions that Google has otherwise withheld during fact discovery.

Plaintiffs have given significant thought to how the data production process should play out for this case, and they have raised these issues with Google repeatedly. For example, in May, Plaintiffs proposed that Google, over an agreed upon two-week period, search for identifiers across both "pseudonymous" logs as well as logs tied to users' Google accounts, and that Google produce the resulting data. *See* Dkt. 254-6. Google took three months to reply, only to claim that Plaintiffs' proposal was "unacceptable." Google's objections led to additional meet-and-confer efforts, which in part led to the parties' October 20 and 26 joint letter briefs.

Because Google still has not produced the requested data or agreed to any sampling process for data production, Plaintiffs now seek relief from the Court. Due to Google's intransigence, Plaintiffs submit this request without having even basic information regarding the identity of the logs with the (s)WAA-off fields and how Google stores data—information that can be used to confirm class members, identify relevant transactions, and calculate damages. Given the large number of unanswered questions, and Plaintiffs' desire to not further burden the Court, Plaintiffs now propose (as in *Brown*) the assistance of a Special Master. The most efficient way to resolve the parties' disputes and efficiently move the process forward is appointment of a technical Special Master to oversee (1) Google's identification of relevant logs and fields and (2) Google's production of a subset of data from those logs and fields.

Courts routinely employ technical special masters to assist with data production processes. In *Brown*, which involves Google's collection and use of private browsing information, this Court appointed Douglas Brush as Special Master, with Mr. Brush overseeing a data production process that consisted of the following: (1) Google was required to identify to the all data sources "that *may* contain responsive information," as well as particular information about those sources; (2) the Special Master facilitated the parties' agreement on a subset of data sources to be subject to searches, with Google then required to provide additional information about each selected source including schemas; and (3) the Special Master facilitated the parties' creation of search strings to query the selected data sources. *Brown v. Google*, Case No. 5:20-cv-03664, Dkt. 273 (N.D. Cal.). Such a process is beneficial to both parties, where the Special Master can resolve inevitable disputes relating to which sources are relevant and how they should be searched. *Brown* Dkt. 196 (appointing Special Master because "at least for technical matters, [doing so] will increase the efficacy of resolving discovery disputes"); *see also Calhoun v. Google*, Case 5:20-cv-05146 Dkt. 309 (N.D. Cal.) (adopting similar process for the same special master (Douglas Brush) to oversee data production in that case).

*Joffe v. Google* is also instructive. *See* 2014 WL 4681403, at *1 (N.D. Cal. Aug. 13, 2014), *report and recommendation adopted in relevant part*, 2014 WL 4681035 (N.D. Cal. Sept. 19, 2014). That case also involved Google's collection and storage of data, focusing on "street view" data. Like here, the parties agreed in principle that data needed to be produced, but there were significant disagreements as to scope and process. The Court granted Google's request to appoint a technical special master to oversee the process, citing factors that apply to this case:

> [G]iven the likelihood of disagreements if one party or the other conducts the search, the Court agrees with Plaintiffs that this is likely to lead to further disputes. Instead, the Court finds Google's second suggestion, the appointment of a special master, appropriate in this case. Such an appointment would permit a technical expert to review all the data in a timely and effective manner, and would limit collateral attacks and claims of bias that are likely to result if either party conducts the search.

*Id.* at *2. Appointment of a technical special master in this case is warranted for the same reasons. As this Court is aware, the parties have already identified threshold disputes, and allowing the parties to proceed on their own "is likely to lead to further disputes." *Id.* A special master can help the parties resolve those disputes and efficiently move forward with the data production process previously ordered by the Court. A special master can also minimize the burden on this Court.

Plaintiffs believe that Mr. Brush is an ideal candidate for this role, particularly given his very recent experience in the *Brown v. Google* and *Calhoun v. Google* cases. Moreover, Google was the party that initially recommended Mr. Brush for those cases. *See Brown* Dkt. 212 (describing Mr. Brush as "Google's first nomination"). But Plaintiffs are open to considering any other candidate that Google might propose.

## GOOGLE'S STATEMENT

Google received this letter brief asking for a special master before any member of Plaintiffs' 20+ lawyer team had ever mentioned it to Google's counsel, at any point in this two-year litigation, despite constant and productive meet-and-confer discussions. Plaintiffs' purpose here is a mystery. But one thing is perfectly clear: Plaintiffs do not want a special master in this case because it will be helpful; they want one because they perceive a tactical advantage to having one. There are no disputes on the horizon that could justify the appointment of a master, and Plaintiffs' highly-spun retelling of how we got here is internally illogical and, in any case, no basis for a special master.

Federal Rule of Civil Procedure 53(a)(1) forbids the appointment of a special master for discovery proceedings without either the consent of the parties or a finding that pretrial matters "cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Appointment of a special master "must be the exception and not the rule." Fed. R. Civ. P. 53 Adv. Cmtee's Note (2003). As such, where appointment of a master is opposed, the Ninth Circuit "require[s] a showing of exceptional conditions to justify the appointment." *Burlington N. R. Co. v. Dep't of Revenue of State of Wash.*, 934 F.2d 1064, 1071 (9th Cir. 1991).

Here, unlike in *Brown*, *Calhoun*, and *Joffe*, Google does not consent to a discovery special master. In such circumstances, the bar for appointing a master is very high. *See Trustees of Operating Engineers Pension Tr. v. Smith-Emery Co.*, No. 219CV04058CASAFMX, 2022 WL 1122832, at *4 (C.D. Cal. Apr. 11, 2022) (refusing to appoint special master where requesting party failed to show existing judges could not "effectively and timely address" disputes over financial audit). Special masters should not "displace" the Court, as litigants are entitled to trial by Court and jury. *Castaneda v. Burger King Corp.*, 264 F.R.D. 557, 569 (N.D. Cal. 2009).

Further, where as here discovery is already closed, "[a]ppointing a special master now would seem to be opening up an unorthodox avenue for re-visiting discovery rulings while avoiding the usual hurdles of untimely reconsideration motions." *Stone Brewing Co., LLC v. MillerCoors LLC*, No. 3:18-CV-00331-BEN-LL, 2021 WL 4442177, at *2 (S.D. Cal. Sept. 28, 2021). This Court has already resolved 15 joint letter brief disputes, it has two pending on its desk, and this is one of six letter brief Plaintiffs served on Google between November 1 and 4. Given the parties' extensive experience with this Court's resolution of discovery disputes, it is mystifying that Plaintiffs would now, *after* discovery is *closed*, ask that the Court delegate all further disputes to a special master they've been working with in a co-pending case against Google (with different defense counsel) for over a year. Google cannot think of a reason why this Court cannot continue to resolve outstanding discovery disputes, as it has throughout this case.

Nearly a year ago, this Court held that Google need not preserve indefinitely all incoming user-generated data from GA for Firebase because of the crushing burden it would have imposed. In so doing, the Court observed that "[i]nstead some form of statistical sampling will likely be necessary, and the plaintiffs haven't explained why they can't conduct such a sampling [1] using the data Google regularly saves, **or** [2] using the named plaintiffs' data (which Google has offered to save and produce) as opposed to all of the proposed class members' data (which is what the plaintiffs seek)." Dkt. 185 (emphasis added). Long ago, Google provided, as promised, over 80,000 log entries representing event-level data associated with pseudonymous device IDs that Plaintiffs provided and represented belonged to them. This production properly satisfied this Court's Order.

After waiting almost a year to do anything about it and now that discovery has closed, Plaintiffs are attempting to rewrite the history of this case in order to conjure the specter of a looming deluge of disputes over sampled log data. Not only are there no looming disputes, there are no logs at issue to dispute in the first place: Google has already identified the four relevant logs through which GA for Firebase data flow and Plaintiffs already explained to Google the sampling they'd like from those logs as conducted by experts on dummy devices. While Google considered Plaintiffs' request carefully, it had several objections to the proposal. It provided those objections in an August 11 e-mail explaining why Plaintiffs should not be entitled to the use of an expert to generate fake data to prosecute their case. The parties then met and conferred by video during which Plaintiffs' counsel expressed a lack of certainty as to how specifically they wanted to proceed. Then, in late October, on the eve of discovery closing, realizing they had never made a decision on how to proceed and were running out of time, Plaintiffs filed a joint letter brief seeking *all* logs that contain *any* WAA data in them at Google. Dkt. 250.

Dkt. 250 is a pending letter brief before this Court wherein Plaintiffs ask the Court to Order Google to "[i]dentify every data source or log that at any point during the class period contained WAA-off data or sWAA-off data, including a list of all field names and descriptions." Dkt. 250 at 1. In that brief, Google explains why this request would be unduly burdensome and disproportional. Furthermore, and more importantly, even if the Court orders the requested relief, "statistical sampling" is not appropriate for these data sources and logs because they are not sources through which GA for Firebase data flow. Instead, these sources are like the search and ads logs Google has already identified – logs that relate to products and services *other than* GA for Firebase that receive user-generated data and treat it in varying ways depending on user consent and the needs of the products – and are far outside the scope of this case. The Court does not need a special master to recognize that.

Having no actual disputes to rely on for the appointment of a special master, Plaintiffs argue that the Court must nevertheless appoint one now due to Google's "intransigence," which, they argue, has led discovery to close (after Plaintiffs extended the discovery deadline three times, once over Google's objection) with them lacking "even basic information regarding the identity of the logs with the (s)WAA-off fields and how Google stores data." Per Plaintiffs, there are a "large number of unanswered questions" in the case, and even as Plaintiffs "have given significant thought to how the data production process should play out in this case," they waited until the week before discovery closed to ask for *any* logs-related relief from this Court. None of this makes sense. And if it is all true, then Plaintiffs severely mishandled discovery and allowed their discovery rights to lapse without ever asking for relief.

What actually happened is far simpler. Google identified the relevant logs a very long time ago, and produced data from them per the Court's suggestion in Dkt. 185; there were four relevant logs. Plaintiffs would not accept that there were just four logs from which data should be produced. They asked about many other logs they read about in the documents Google produced from 24 different custodians that Plaintiffs themselves identified. Google duly investigated each log and responded on August 11 stating "we have completed our investigation" into the additional logs Plaintiffs identified and re-confirmed that the four logs Google identified were the relevant logs. Plaintiffs have had the opportunity to ask six different deponents and three corporate designees about logs, and yet they cannot make any factual showing here that Google's investigation or representations are incomplete or inaccurate.

In sum, nothing in this history justifies appointing a special master. Instead, Plaintiffs sat on their hands for months, knowing full well the scope of production Google was willing to make and Google's clear objections to pursuing other avenues. Appointing a special master now is unnecessary, unripe, and unproductive. The Court should not allow it.

Respectfully,

| WILLKIE FARR & GALLAGHER, LLP | BOIES SCHILLER FLEXNER LLP |
|---|---|
| By: */s/ Eduardo E. Santacana* | /s/ *Mark C. Mao* |

<div style="columns:2">

Eduardo E. Santacana (SBN: 281668)
esantacana@willkie.com
Benedict Y. Hur (SBN: 224018)
bhur@willkie.com
Simona Agnolucci (SBN: 246943)
sagnolucci@willkie.com
Lori Arakaki (SBN: 315119)
larakaki@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400
Facsimile: (415) 858-7599

*Attorneys for Defendant Google LLC*

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)

</div>

6

```
```

jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

7

## ATTESTATION

I, Mark C. Mao hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: November 7, 2022          By:   /s/ *Mark C. Mao*