November 7, 2022

**Submitted via ECF**

Magistrate Judge Alex G. Tse
San Francisco Courthouse
Courtroom A - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    Joint Letter Brief re: Disputed Requests for Admissions and Interrogatories
              *Rodriguez v. Google LLC*, Case No. 3:20-cv-04688-RS (N.D. Cal.)

Dear Magistrate Judge Tse:

      Plaintiffs and Google LLC ("Google") submit this joint letter brief regarding disputed Requests for Admission and Interrogatories. Counsel for the parties met and conferred by videoconference on November 2, 2022. Exhibit A is Plaintiffs' proposed order, and Exhibit B is Google's proposed order. Exhibit C is Google's Responses and Objections to the disputed Requests for Admission, and Exhibit D is Google's Responses and Objections to the disputed Interrogatories.

# PLAINTIFFS' STATEMENT[1]

Plaintiffs respectfully seek an order requiring Google to respond to ten RFAs and three Interrogatories, where Google has refused to provide any response. Plaintiffs also seek an order conditionally requiring Google to respond to five RFAs, which seek information relevant to Plaintiffs' newly added allegations.

### 1. *Relevant Discovery Pertaining to the Operative Complaint*

The first set of requests break down into the following categories.

Injunctive Relief:

Four of Plaintiffs' RFAs are relevant to their prayer for injunctive relief, where Plaintiffs seek to craft a demand that can be applied class-wide. **RFA 28** asks Google to admit that it "can delete all WAA-Off Data stored by Google," and **RFA 31** asks Google to admit that "[s]ince the start of the Class Period, Google has not provided Users with any way to delete WAA-Off Data stored by Google." **RFA 30** asks Google to admit that it "has not provided Users with any way to view WAA-Off Data stored by Google," and **RFA 45** asks Google to admit that "Google can change its processes so that Google no longer saves WAA-Off Data."

For RFAs 28, 30, and 31, Google violated Federal Rule 36 by asserting a lack of knowledge without stating "that it has made reasonable inquiry." Fed. R. Civ. P. 36(a)(4). *See* Google's Responses ("Google responds that it can neither admit or deny this Request, as it calls for information beyond Google's knowledge"). Even if Google had included a "bare assertion" of reasonable inquiry (which it did not), that also would be insufficient. Where, as here, "the question asks for information that [Google] is very likely to have, [Google] must respond in much more detail and explain why [it] does not have that information. A bare assertion that [it] performed a reasonable inquiry and lacks information on this matter is insufficient." *Subramani v. Wells Fargo Bank, N.A.*, 2014 WL 7206888, at *1 (N.D. Cal. Dec. 18, 2014) (compelling responses to RFAs); *see also*, *Astellas Pharma, Inc. v. Impax Lab's., Inc.*, (N.D. Cal. Aug. 4, 2009) (Seeborg, J.) (compelling responses where defendant claimed to lack sufficient knowledge). Moreover, each of these requests seek relevant information regarding Google's own activities and capabilities.

For RFA 45, Google does not even claim that it is unable to respond. Instead, Google suggests that "the term 'saves' is vague and ambiguous," which is ironic because Google uses that exact term to describe WAA to users. *See, e.g.*, Dkt. 109 (MTD Order) at 16 ("Google, through the WAA Materials, set an expectation that it would not *save* plaintiffs' activity on . . . apps . . . that use Google services unless plaintiffs turned WAA 'on.'").

---

[1] Plaintiffs provided their portion of this letter brief to Google on November 2. Google did not provide its portion until 9:57 p.m. on November 7, the filing deadline. Plaintiffs therefore are unable to respond to Google's portion below, including the amended RFA responses Google served even later. However, Plaintiffs must object to Google's efforts to mischaracterize their claims. Plaintiffs are happy to supplement this filing if the Court has questions.

Class Identification:

**RFA 40** asks: "Using data that is stored within Google logs and data sources, and setting aside any and all Google policies and technical impediments, it is possible to join WAA-off Data with data tied to a user's Google account." Again, Google does not claim that it is unable to respond to this request. Google Eric Miraglia confirmed that the data can be joined during his deposition in this case.[2]

Plaintiffs in part served this RFA to streamline the upcoming data production process, which Plaintiffs have described in two recent joint letter briefs. Dkts. 250, 253. Plaintiffs already explained that: "In an effort to avoid or narrow this dispute, Plaintiffs proposed that Google stipulate to certain positions, including that . . . [WAA-off] data can be linked with users' Google accounts." Dkt. 250 at 2. If Google is unwilling to take a position on this issue, that underscores why Google should be ordered to provide the logs and schema identified in the parties' October 17 and 26 letter briefs. Dkts. 250, 253. Insofar as Google intends to argue that the class cannot be identified, Plaintiffs are entitled to discovery to refute that assertion. *See In re Hulu Priv. Litig.*, 2014 WL 3421036, at *2 (N.D. Cal. July 14, 2014).

Relatedly, Google should be ordered to respond to **Interrogatory 22**, which asks Google to "describe the types of WAA-Off Data that Google saved or currently saves related to Users' interactions with Google Apps," including by "describ[ing] how that data differs, if at all, from the types of WAA-Off Data related to users' interactions with Non-Google Apps." Google's response to this request will shed light on how these data streams can be used to identify class members.

Damages:

**RFA 8** asks Google to admit that "Google has been earning advertising revenue using browsing history data Google collects from users' interaction with apps that use Google's Firebase SDK while those users have Web & App Activity turned off." Google claimed that it "does not understand this request" and therefore could not respond. That objection is meritless.

**RFA 29** asks Google to admit that "it has used WAA-Off Data to track, model, or measure cross-app or -site conversions." Google again simply gives the Glomar response. Setting aside Google's violation of Rule 36, its claim that it cannot answer the request is highly dubious. Google has already admitted that it uses WAA-off data for conversion tracking. Google's Resp. to Interrog. 15. Google knows whether it uses WAA-off data for cross-app or -site conversions, and Google can and should provide a substantive response to this RFA.

**RFA 48** asks Google to admit that it "has used WAA-Off Data it saves to train at least one machine-learning algorithm used by at least one Google product or service, including but not limited to Google Search, YouTube, Gmail, AdMob, Ad Manager, or Ads." Google claims that "the request is irrelevant," but that objection misses the point. This request focuses on Google's *use* of WAA-off data, which is relevant to both liability and damages. Insofar as Google uses data

---

[2] *See* Miraglia Rough Tr. at 93:15-17 ("Pseudonymous is usually referring to data that has not been mathematically anonymized. And so there's always at least the hypothetical possibility of reidentification."); *see also* GOOG-RDGZ-00033244 (Google engineer acknowledging "joinability risks" with respect to "link[ing] app events collected by GA4F to GAIA ID even if end users turn off WAA").

collected by way of Firebase to improve other Google products and services, even Google must concede such conduct is squarely relevant to the operative Complaint.

Google's Defenses:

Google has argued that it cannot be liable for the alleged conduct because it is providing a service to app developers. *E.g.*, Dkt. 62 at 1. The following RFAs seek admissions related to that Google argument: **RFA 27** ("Google could have redesigned its products that save WAA-Off Data . . . so that no WAA-Off Data would be saved by Google"); **RFA 33** ("Non-Google Apps that use any of GA for Firebase, AdMob, and Cloud Messaging would continue to function and be usable even if Google did not store WAA-off Data collected by way of GA for Firebase, AdMob, and Cloud Messaging")[3]; **RFA 52** ("Google Firebase, Google Analytics for Firebase, AdMob, and Cloud Messaging are not essential to the functioning of Non-Google Apps."). For RFAs 27 and 33, Google again violated Rule 36 by merely claiming that "it can neither admit or deny this Request." And for RFA 52, Google does not even claim that it cannot respond.

Finally, Google should be ordered to respond to **Interrogatory 23**, which asks Google to "describe the types of data that Google received or currently receives by way of the Google Mobile Ads SDK," including by explaining "how a User's decision to switch off WAA and/or sWAA impacted or currently impacts Google's receipt and storage of that information." Google claims this request is "abusive" on the ground that it is not limited to "GA for Firebase, Cloud Messaging, or AdMob." But as Google is surely aware, the Google Mobile Ads SDK is the code by which Google collects data for AdMob. Weng Tr. 59:16-18.

### 2. *Relevant Discovery Relating to Google-Owned and Operated Properties*

Plaintiffs also wish to bring to the Court's attention that Google refused to provide any response to each of RFAs 39, 41, 42, 43 and 51. These requests are relevant to Plaintiffs' allegations that Google saves WAA-off data generated during users' interactions Google-owned and -operated properties, including Google Search. *See* Dkt. 257-8 (proposed Fourth Amended Complaint) ¶¶ 72-79. If the Court permits Plaintiffs' amendment to include these allegations, then Plaintiffs ask that the Court also order Google to respond to these.

---

[3] Plaintiffs have also served **Interrogatory 24**, which states: "If Google's Response to Request for Admission No. 33 is anything but an unqualified admission, please explain how Non-Google Apps that use any of GA for Firebase, AdMob, or Cloud Messaging would cease functioning and/or become unusable to their users if Google no longer stored WAA-off Data collected by way of GA for Firebase, AdMob, and Cloud Messaging." If applicable, Google should be ordered to respond to this request as well, which tracks the format of other Interrogatories where Google did provide a response. *E.g.*, Interrogs. 18 & 25.

3

# GOOGLE'S STATEMENT[4]

Most of the disputed RFAs and Interrogatories employ the defined term "WAA-Off Data," which includes *all* data generated by a user's use of *any* app, whether a Google or third party app, using *any* service, whether Firebase or not, while either WAA or sWAA are disabled. That defies several Orders limiting the case to the interaction of third party apps using Google Analytics (GA) for Firebase and WAA. *See e.g.*, Order, Dkt. 248 ("This case is principally about how Google's WAA-off disclosures square with the company's use of Firebase to collect app-usage data. To the extent that Google performed WAA-off financial analyses unrelated to Firebase, plaintiffs haven't persuaded the Court that those analyses are relevant.").

Even if "WAA-Off Data" were narrowed to mean only the app-usage data generated by GA for Firebase, **RFAs 28 and 45** would still be impermissible hypotheticals. *See, e.g.*, *Evans v. Tilton*, No. 1:07CV01814-DLB PC, 2010 WL 1610988, at *4 (E.D. Cal. Apr. 21, 2010) (refusing to compel hypothetical RFAs); *Friedman v. Godiva Chocolatier, Inc.*, No. 09CV977-L BLM, 2010 WL 4009660, at *2 (S.D. Cal. Oct. 13, 2010) (same). While metaphysically speaking, deleting data or closing up the analytics business may be theoretically possible, doing so would have ramifications and burdens associated with it, and Plaintiffs shouldn't be able to generate a gotcha admission so they can sidestep difficult expert discovery questions and legal balancing issues (such as public interest) if they do in fact intend to ask Judge Seeborg to Order Google to delete massive quantities of anonymized data and shutter its enterprise-facing analytics product. Put a different way, these RFAs are asking oversimplified and incomplete hypotheticals, not information about historical facts. Without more information, Google cannot admit or deny these hypothetical RFAs. If it had to choose one, it would have to deny, as it is not true that Google "can" engage in the mass deletion or destruction Plaintiffs propose without first determining its likely impact on a host of stakeholders, including millions of third parties to whom the data belongs.

**RFA 45** (admit that "Google can change its processes so that Google no longer saves WAA-Off Data") suffers from another problem. The word "saves" in RFA 45 is apparently intended to mirror the phrase "save to your Google Account" in the description of what the WAA control does to user data it controls, but "to your Google Account" was omitted. If Plaintiffs mean "saves" to mean "to your Google Account," then the RFA would be impossible to admit or deny because Google does not save WAA-off data to a user's account. If Plaintiffs mean "saves" to mean save in any form, *e.g.*, temporarily log an anonymous interaction to provide aggregate reporting, then the RFA is irrelevant to Plaintiffs' claim.

Plaintiffs' **RFA 40** underlines just how far this case has strayed from where it began. Plaintiffs' first four complaints in this case all alleged that Google uses Firebase SDK data from WAA-off users to "build[] and maintain[] 'profiles' relating to each individual . . . and to each of

---

[4] In the interest of compromise, Google amended its responses to **RFAs 29, 30, 31, and 48** to provide substantive responses and considers the dispute as to these RFAs resolved.

The parties had previously agreed that the opposing party would have at least one week to respond to a letter brief. Plaintiffs, however, have sent 8 letter briefs since November 1, including two that were sent today.

their devices . . . to effectively target advertisements." *See* 3d Am. Compl., Dkt. 131 ¶¶ 121–22. That allegation was a wild guess, and it was wrong. So Plaintiffs' focus has shifted to "joinability risk"--the concept that a bad actor could identify overlapping identifiers in anonymized data and personalized data, join them, and use that to invade someone's privacy. To be clear, Google forbids such practices, takes sophisticated technological steps to prevent them, and enforces Google's rules where necessary. Plaintiffs haven't presented evidence of any unauthorized join, ever. Nevertheless, Plaintiffs suggest joinability "risk" is somehow actionable. It's not. Not only is that outside the scope of Plaintiffs' complaints, but it posits that Google could be liable for the theoretical risk that a bad actor could, in the future, invade a class member's privacy.

RFA 40 is a hypothetical that asks Google to set aside "any and all Google policies and technical impediments," another way of forcing Google to answer a fantastical hypothetical. Whether or not it's theoretically possible to join data is not relevant to whether it's actually happened. If Plaintiffs want to argue that joinability risk is nevertheless too great, they can do so with their paid experts; they should not be able to force Google to provide a gotcha admission that is nonsensical, hypothetical, and irrelevant to the case they brought. *See Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C 03-5340 JF (RS), 2006 WL 3290402, at *3 (N.D. Cal. Nov. 13, 2006) (denying motion to compel "incomplete and confusing" RFA).

Plaintiffs toss in **Interrogatory No. 22** asking for an accounting of WAA-Off data sent via Google Owned & Operated (O&O) apps, not the third-party Firebase apps this case is about. It's completely irrelevant, and Plaintiffs don't even try to make a relevance argument.

**RFA 8** is incomprehensible because this case is not about browsing data, it's about third-party apps on mobile devices. The parties have never referred to any data in this case as "browsing data," and the term is undefined. Furthermore, Google provided a detailed accounting in an interrogatory response after this RFA was served about how Google earns revenue directly and indirectly from data generated by Google Analytics for Firebase.

**RFAs 27, 33, and 52** and **Interrogatory No. 24** are facially inappropriate hypotheticals about what third parties can and cannot do. Parties are not required to obtain information from third parties in order to answer RFAs, and the hypotheticals are plainly incomplete and confusing, regardless. *See* Rutter Group Prac. Guide Fed. Civ. Proc. Before Trial (Nat Ed.) Ch. 11(IV)-D. Here again, Plaintiffs cannot short-circuit contested expert discovery with an RFA.

**Interrogatory No. 23** is "abusive" because Plaintiffs know or should know by now that the Google Mobile Ads SDK (GMA) doesn't collect app-usage data; when app developers link their Firebase account to AdMob, Firebase still provides the app-usage data. GMA is just software that facilitates ad requests. Any response to this interrogatory that is relevant to this case would simply say that; any aspect of this interrogatory outside that scope is outside the scope of the case.

Finally, Plaintiffs' **RFAs 39, 41, 42, 43 and 51** are unripe, and the Court should ignore them. Plaintiffs ask the Court to order in advance that, if Judge Seeborg allows them to add certain products to the case, this Court should preemptively Order Google to respond to RFAs about those products. This Court should refrain from providing an advisory opinion and wait until any such

discovery dispute is ripe (including because the parties have not actually met and conferred about these RFAs in substance).

Respectfully,

| WILLKIE FARR & GALLAGHER, LLP | BOIES SCHILLER FLEXNER LLP |
|---|---|
| By: */s/ Eduardo E. Santacana*<br>Eduardo E. Santacana (SBN: 281668)<br>esantacana@willkie.com<br>Benedict Y. Hur (SBN: 224018)<br>bhur@willkie.com<br>Simona Agnolucci (SBN: 246943)<br>sagnolucci@willkie.com<br>Lori Arakaki (SBN: 315119)<br>larakaki@willkie.com<br>One Front Street, 34th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 858-7400<br>Facsimile: (415) 858-7599<br><br>*Attorneys for Defendant Google LLC* | /s/ *Mark C. Mao*<br>Mark C. Mao (CA Bar No. 236165)<br>mmao@bsfllp.com<br>Beko Reblitz-Richardson (CA Bar No. 238027)<br>brichardson@bsfllp.com<br>BOIES SCHILLER FLEXNER LLP<br>44 Montgomery Street, 41st Floor<br>San Francisco, CA 94104<br>Telephone: (415) 293 6858<br>Facsimile (415) 999 9695<br><br>James W. Lee (*pro hac vice*)<br>jlee@bsfllp.com<br>Rossana Baeza (*pro hac vice*)<br>rbaeza@bsfllp.com<br>100 SE 2nd Street, Suite 2800<br>Miami, FL 33130<br>Telephone: (305) 539-8400<br>Facsimile: (305) 539-1304<br><br>William Christopher Carmody (*pro hac vice*)<br>bcarmody@susmangodfrey.com<br>Shawn J. Rabin (*pro hac vice*)<br>srabin@susmangodfrey.com<br>Steven Shepard (*pro hac vice*)<br>sshepard@susmangodfrey.com<br>SUSMAN GODFREY L.L.P.<br>1301 Avenue of the Americas, 32nd Floor<br>New York, NY 10019<br>Telephone: (212) 336-8330<br><br>Amanda Bonn (CA Bar No. 270891)<br>abonn@susmangodfrey.com<br>SUSMAN GODFREY L.L.P.<br>1900 Avenue of the Stars, Suite 1400 |

Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

# ATTESTATION

I, Mark C. Mao hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: November 7, 2022          By:  /s/ *Mark C. Mao*