November 7, 2022

**Submitted via ECF**

Magistrate Judge Alex G. Tse
San Francisco Courthouse
Courtroom A - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    Joint Letter Brief re: Plaintiffs' Tenth Set of Requests for Production
              *Rodriguez v. Google LLC*, Case No. 3:20-cv-04688-RS (N.D. Cal.)

Dear Magistrate Judge Tse:

      Plaintiffs and Google LLC ("Google") submit this joint letter brief regarding disputes arising from Plaintiffs' Tenth Set of Requests for Production. Specifically, Plaintiffs seek an order compelling Google to produce documents relating to Google's Pr***Na*** program, including documents referenced in public filings in other cases, as well as performance reviews of the custodians in this case. Counsel for the parties previously met and conferred on this topic in good faith, including by videoconference on November 2, 2022. Exhibit A is Plaintiffs' proposed order and Exhibit B is Google's proposed order.

## PLAINTIFFS' STATEMENT

*Plaintiffs provided their portion of this letter-brief on November 3. Google did not provide its portion until 11:40 p.m. on November 7, the filing deadline. Given the hour and the number of disputes to be filed, Plaintiffs are unable to respond to Google's portion below. Plaintiffs are happy to supplement this filing if the Court has questions.*

Plaintiffs respectfully ask the Court to order Google to produce documents responsive to two narrow requests for production seeking plainly relevant documents. **RFP 281** seeks production of documents relating to a Google program called Pr\*\*\*Na\*\*\*, which was Google's mid-2020 effort to reevaluate and improve its privacy offerings companywide, including the relevant Web & App Activity ("WAA") setting. **RFP 279** seeks production of performance reviews relating to the custodians in this case. Google can satisfy both requests without significant effort, and the resulting productions will be useful to this case.

### 1. Google's Company-Wide Privacy Revamp (Pr\*\*\*Na\*\*\*)

**RFP 281** seeks production of "all Documents related to the Pr\*\*\*Na\*\*\* project." Recent discovery has revealed that this Google project unveiled substantial shortcomings in Google's approach to privacy, both with respect to WAA and more generally. Google has not agreed to produce these documents. Instead, in response to this RFP, Google agreed only to produce custodial documents, and only custodial documents that contain previously agreed-upon or ordered search terms (where Google had never identified "Pr\*\*\*Na\*\*\*" as a relevant term). Given the importance of this Google project, Google should also be required to produce responsive documents from non-custodial sources as well (such as any central repositories relating to Pr\*\*\*Na\*\*\*) and search the custodians' files for documents referring to Pr\*\*\*Na\*\*\* (including also "Pr\*\*\* Na\*\*\*" and "Pr\*\*\*-Na\*\*\*").

Documents produced by Google on July 28, 2022 revealed that Pr\*\*\*Na\*\*\* was a companywide effort to "embed[] easy-to-understand, meaningful [privacy] choices" in Google's services, with the intent to "go[] far beyond how [Google thought] about privacy management" until then. GOOG-RDGZ-00173600, at -601. It was not until August 30, 2022 that Google produced a final report regarding Pr\*\*\*Na\*\*\*, authored by the Privacy & Data Protection Office (GOOG-RDGZ-00184430) as well as a handful of other documents.

On September 19, 2022, when Judge Van Keulen made her sanctions order in *Calhoun v. Google* public (Dkt. 871-3, at 50-54), it became clear that important documents relating to Pr\*\*\*Na\*\*\* were missing from Google's productions in this case.[1] The publicly available *Calhoun* order referenced Google "interview notes summariz[ing] interviews with Google stakeholders, including high-ranking executives," and included quotes from those Google interviews. These quotes reflect Google's privacy failures generally (*e.g.*, "There is no coherent strategy" on "privacy at Google," "Our approach [to consent] has become out-of-step with user expectations and

---

[1] Although the *Calhoun* order is redacted, the unredacted material makes clear that the document at issue concerns Pr\*\*\*Na\*\*\*. *Compare Calhoun*, Dkt. 871-3 at 50 (referring to a document titled [Redacted] Perspective: Toward a [Redacted] Google experience"), *with* GOOG-RDGZ-00184430 ("Pr\*\*\*Na\*\*\* Perspective: Toward a pri\*\*\*-na\*\*\* Google experience").

regulations," "They (users) don't understand what is going on, and nobody is talking to them about it") and specifically with WAA (*e.g.*, "[W]hat is sWAA v. WAA vs. YT? They don't make sense."). Google only produced this missing document in this case on October 20, 2022, after Plaintiffs served a separate RFP specifically requesting that production. *See* GOOG-RDGZ-00188868.

This belated production reveals a critical gap in Google's production in this case. Although the parties agreed to include at least one custodian involved with the Pr***Na*** program, Google's custodial review did not result in the production of such an obviously important document relating to Pr***Na***. With this motion, Plaintiffs seek production of documents that evidently slipped through the cracks of Google's review process in this case, not documents that Google already produced. Accordingly, Plaintiffs ask that Google be required to conduct non-custodial searches (including any central repositories relating to the Pr***Na*** project) and also to search the custodians' files for the terms Google used in connection with this project: "Pr***Na***" or "Pr*** Na***" or "Pr***-Na***."

Google's assertion that the Pr***Na*** project is irrelevant in this case is meritless. The Pr***Na*** project uncovered significant deficiencies in Google's approach to privacy management, including with respect to the WAA settings. Google has so far produced 52 documents containing one or more of these three search terms (Pr***Na***, "Pr*** Na***," or "Pr***-Na***"), 51 of which include the term WAA. With this motion, Plaintiffs simply seek to have Google complete its production of these highly relevant documents. The relevance of the Pr***Na*** project also goes beyond WAA, revealing more broadly that Google employees understood that Google's "data infrastructure is not designed for privacy" but that at "Google we still seem to believe in the fantasy that users agreed to this." GOOG-RDGZ-00188868, at -916. Google should not be permitted to assert a consent defense while at the same time withholding documents recognizing that any such consent is a "fantasy." The Pr***Na*** project is plainly relevant to Plaintiffs' allegations, even without WAA-specific terms, and Google should produce the related documents from both custodial and non-custodial sources.

## 2. Performance Reviews

**RFP 279** is even more limited. It calls for production of "all Documents relating to any Google job performance reviews … for each of the 24 Google custodians in this case."

Performance reviews are routinely the subject of discovery, and for good reason. Material included in performance reviews might reflect that an entity "incentiv[izes]" or "encourage[s]" its employees to engage in wrongful conduct, which here might include drafting intentionally misleading disclosures and engaging in data collection that pushes the bounds of users' consent. *Ghorbanian v. Guardian Life Ins. Co. of Am.*, 2016 WL 4467942, at *1-2 (W.D. Was. Mar. 31, 2016) (compelling production of performance reviews). The material in performance reviews might also bear on a party's state of mind, which juries consider when deciding whether to award punitive damages. *See Shoar v. Cnty. of Santa Clara*, 2022 WL 10177673, at *4 (N.D. Cal. Oct. 17, 2022). If, for example, Google employee Chris Ruemmler received glowing performance reviews until he sounded the alarm that the WAA disclosures are "completely broken," GOOG-RDGZ-00130745, at -746, that would be probative of Google's culpability. Or maybe one of the

custodians received a negative performance review because the products and logs at issue here are inconsistent with Google's promises to users. *See Turner v. The Paul Revere Life Ins. Co.*, 2015 WL 5097805, at *3 (D. Nev. Aug. 28, 2015) (compelling production of performance reviews because they "may contain probative information" regarding whether the relevant employees acted appropriately). At a minimum, performance reviews bear on the credibility of Google's witnesses.

Google has refused to produce this discrete set of documents, relying on objections that make little sense even on their face. *First*, Google objects on the ground that the *set* of requests in which RFP 279 appears "is largely duplicative of earlier document requests." Google's R&O to RFP 279. Even if that were true (and it is not), the relevant question is whether *this request* is duplicative. It is not: Google has withheld the requested documents. *Second*, Google objects on the ground that it is "unduly burdensome and abusive" because it has produced "thousands" of documents. *Id.* But that is a *small* number, not a large one. In litigation of this magnitude and complexity, it is common for parties to produce *hundreds of thousands of documents*, where Google has so far produced less than 40,000 documents. Regardless of the number, that production does not include the requested set of performance reviews. Google's *third* and final objection to RFP 279 is that material in the custodians' performance reviews might not refer specifically to "the subject of the lawsuit." *Id.* But even if a document does not specifically reference the WAA control or the products at issue in this case, it might be relevant because it relates to "broader" or similar topics. *Krouse v. Ply Gem Pac. Windows Corp.*, 803 F. Supp. 2d 1220, 1230 (D. Or. 2011) (compelling production of performance reviews even though the responding party represented that they did not specifically reference the matters at issue, reasoning that "Plaintiff should not be required to accept defendant's assessment that the documents contain no relevant information").

This is a "small amount of additional discovery," and it is not burdensome. *Arjangrad v. JPMorgan Chase Bank, N.A.*, 2011 WL 13253324, at *4 (D. Or. Oct. 19, 2011). Plaintiffs expect that Google has a central repository of performance reviews. Producing the reviews for the custodians in this case will require little effort.

## GOOGLE'S STATEMENT[2]

After 27 months of litigation, and with the close of discovery upon them, Plaintiffs realize they lack a viable case theory. So they've filed this Motion as a last-ditch effort to trawl through Google's files for anything they can use to paper over their lack of evidence of wrongdoing. These requests, improperly made at the end of discovery, are not targeted to missing information about the key products in this case and should be denied.

### 1. RFP 281 (Pr\*\*\*Na\*\*\*)

Plaintiffs seek "all Documents related to the Pr\*\*\*Na\*\*\* project." Pr\*\*\*Na\*\*\* has nothing to do with Firebase, GA for Firebase, AdMob, or FCM, and little to do with Web & App Activity (WAA). Google has dozens of products and services company-wide, ranging from Gmail to AndroidTV to Waze. *See* https://about.google/products/. Pr\*\*\*Na\*\*\* was a broad,

---

[2] The parties had previously agreed that the opposing party would have at least one week to respond to a letter brief. Plaintiffs, however, have sent 8 letter briefs since November 1, including two that were sent today.

company-wide project intended to "develop a 5-year" *forward-looking* "user privacy experience vision" that would cover a multitude of products by considering "privacy" in the context of an "ecosystem of ~70 services." GOOG-RDGZ-00184430, at -432. The project was not focused on WAA, nor was WAA a critical or substantial piece of the project.

This is evident upon review of the document Plaintiffs claim is critical to their case and was purportedly "missing" from Google's production. *See* GOOG-RDGZ-00188868. After Plaintiffs identified the document from a co-pending case against Google (*Calhoun v. Google*)[3] and requested production of it, Google promptly produced it. The document is a 73-page comprehensive set of notes about the Pr***Na*** project that contains nearly 30,000 words, in which WAA appears once, in a stray reference. Other products are discussed within those 73 pages, many in far more depth.

This document wasn't missing from Google's production, it just doesn't really relate to WAA. Plaintiffs accuse Google of "belated[ly]" producing that "critical" document; and that failure is the linchpin of their motion. They say the set of Pr***Na*** notes is evidence there are documents that "slipped through the cracks." But the one reference Plaintiffs quote is one person's comment in the set of notes, which accounts for one line in the midst of hundreds. Google's previous searches, and specifically the one it has committed to perform in response to RFP 281, comply with its discovery obligations. As Plaintiffs admit, Google has already produced a number of Pr***Na*** documents that contain the word WAA, including a final and draft versions of the comprehensive project report. GOOG-RDGZ-00184430; GOOG-RDGZ-00173600.

In response to Plaintiffs' latest request (RFP 281), served on the last day possible to propound new discovery requests, Google has also committed to searching its collection of custodial files for documents with the terms of "Pr***Na***" or "Pr*** Na***," in order to identify any additional relevant documents. In other words, Google has agreed to search through the collected files of the 24 custodians that were heavily negotiated and litigated by the parties and also adjudicated by this Court. But Plaintiffs now say that's not enough. They want the Court to order Google to go beyond the 24 agreed-upon custodians, start at step one, and conduct a comprehensive search of all of Google's files for information about a project that has little to do with this case. Plaintiffs have fallen far short of establishing such a search is necessary for documents about a project that has little to do with WAA, and for which Google has already produced draft and final reports and comprehensive notes.

## 2. RFP 279 (Performance Reviews)

Plaintiffs seek "all Documents relating to any Google job performance reviews . . . for each of the 24 Google custodians in this case."

That request is overbroad on its face. Many of the custodians have no responsibility for the products at issue here, as Google told Plaintiffs last year. For example, Keith Enright is a lawyer

---

[3] Plaintiffs also asked Google to investigate a number of other Pr***Na*** documents cited in the *Calhoun* order. (Dkt. 871-3, at 50-54). Many of those documents were not in the files of the 24 custodians in this case, but Google identified and reviewed them. Apart from the ones that have been produced in this case, none references WAA.

responsible for broad privacy projects; Jason Titus for developer products. It is unlikely their performance reviews would even mention any of the products relevant to Plaintiffs' case.

The request is also duplicative. Indeed, for example, Google produced and Plaintiffs questioned Francis Ma, Director of Firebase products, about his performance review, and questioned Steve Ganem, GA for Firebase Product Manager, about his Google resume which discussed his relevant accomplishments. *See* Ma Rough Tr. 30:13–37:24, Exhibit 128; Ganem Rough Tr. Part 1 at 7, Ex. 200. Plaintiffs have not established a good reason to require Google to search for additional performance reviews beyond what it has already produced.

Plaintiffs say performance reviews are routinely the subject of discovery. But nothing Plaintiffs cite establishes that irrelevant performance reviews are broadly discoverable in a case like this one. In the cases Plaintiffs cite, unlike here, the performance reviews were directly relevant to the issues being litigated. For example, in *Ghorbanian v. Guardian Life Ins. Co. of Am.*, 2016 WL 4467942, at *1-*2 (W.D. Wash. Mar. 31, 2016), the court rejected the defendant's privacy objections in a case that involved an insurance coverage dispute where two of defendant's employees were responsible for denying plaintiff's insurance claim. The plaintiff alleged the employees "received monetary or other incentives to deny claims," which would have been reflected in their reviews. Similarly, in *Turner v. The Paul Revere Life Ins. Co.*, 2015 WL 5097805, at *3 (D. Nev. Aug. 28, 2015), the court rejected the defendant's privacy objections where the performance reviews at issue were for employees who handled plaintiff's insurance coverage claim. *Krouse v. Ply Gem Pac. Windows Corp.*, 803 F. Supp. 2d 1220 (D. Or. 2011), is likewise inapposite. There, the plaintiff alleged his supervisors pressured him to "refrain from documenting the overtime hours he worked," and the court ordered production of the supervisors' performance reviews because it might reflect those directives. *Id.* at 1222, 1230.

Unlike in *Ghorbanian*, *Turner*, and *Krouse*, Google's objection is not based solely on the privacy of its employees, and the conduct of Google's employees that would only be reflected in reviews is not directly relevant to Plaintiffs' claims. Plaintiffs do not allege, for example, that they complained about privacy violations to certain Google employees who ignored their complaints. Plaintiffs have not offered any explanation for why performance reviews would be broadly relevant, apart from saying they bear on credibility. That is insufficient where Plaintiffs have thousands of emails from the 24 custodians that reflect their in-the-moment thoughts and can be used as impeachment evidence.

Respectfully,

WILLKIE FARR & GALLAGHER, LLP          SUSMAN GODFREY LLP


By: */s/ Eduardo Santacana*                        */s/ Mark Mao*
    Eduardo E. Santacana (SBN: 281668)     Mark C. Mao (CA Bar No. 236165)
    esantacana@willkie.com                 mmao@bsfllp.com
    Benedict Y. Hur (SBN: 224018)          Beko Reblitz-Richardson (CA Bar No.
    bhur@willkie.com                       238027)
    Simona Agnolucci (SBN: 246943)         brichardson@bsfllp.com
    sagnolucci@willkie.com                 BOIES SCHILLER FLEXNER LLP
    Lori Arakaki (SBN: 315119)             44 Montgomery Street, 41st Floor
    larakaki@willkie.com                   San Francisco, CA 94104
    One Front Street, 34th Floor           Telephone: (415) 293 6858
    San Francisco, CA 94111                Facsimile (415) 999 9695
    Telephone: (415) 858-7400
    Facsimile: (415) 858-7599              James W. Lee (*pro hac vice*)
                                           jlee@bsfllp.com
    *Attorneys for Defendant Google LLC*    Rossana Baeza (*pro hac vice*)
                                           rbaeza@bsfllp.com
                                           100 SE 2nd Street, Suite 2800
                                           Miami, FL 33130
                                           Telephone: (305) 539-8400
                                           Facsimile: (305) 539-1304

                                           William Christopher Carmody (*pro hac vice*)
                                           bcarmody@susmangodfrey.com
                                           Shawn J. Rabin (*pro hac vice*)
                                           srabin@susmangodfrey.com
                                           Steven Shepard (*pro hac vice*)
                                           sshepard@susmangodfrey.com
                                           SUSMAN GODFREY L.L.P.
                                           1301 Avenue of the Americas, 32nd Floor
                                           New York, NY 10019
                                           Telephone: (212) 336-8330

                                           Amanda Bonn (CA Bar No. 270891)
                                           abonn@susmangodfrey.com
                                           SUSMAN GODFREY L.L.P.
                                           1900 Avenue of the Stars, Suite 1400
                                           Los Angeles, CA 90067
                                           Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

7

**ATTESTATION**

I, Mark Mao, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


DATED: November 7, 2022                    By:    /s/ *Mark Mao*_____