October 28, 2022

**Submitted via ECF**

Magistrate Judge Alex G. Tse
San Francisco Courthouse
Courtroom A - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

       Re:    Joint Letter Brief re: Additional Depositions
              *Rodriguez v. Google LLC*, Case No. 3:20-cv-04688-RS (N.D. Cal.)

Dear Magistrate Judge Tse:

      Plaintiffs and Google LLC ("Google") submit this joint letter brief regarding Plaintiffs' request for leave of court to take short 3.5-hour depositions of four Google document custodians: Sam Heft-Luthy, Arne de Booij, JK Kearns, and Xinyu Ye. Plaintiffs' request seeks these depositions beyond the ten (10) depositions permitted as a matter of right by Rule 30(a)(1) of the Federal Rules of Civil Procedure. Counsel for the parties previously met and conferred on this topic in good faith, including by videoconference on October 20, 2022. Exhibit A is Plaintiffs' proposed order and Exhibit B is Google's proposed order.

## PLAINTIFFS' STATEMENT

Plaintiffs respectfully request leave to take short 3.5-hour depositions of four Google employees in this complex case, three of whom were selected as document custodians (Sam Heft-Luthy, Arne de Booij, and Xinyu Ye) and another from whom Google produced relevant documents: JK Kearns. Plaintiffs request these additional depositions under Rule 30, which recognizes that in complex litigation like this, additional depositions will often be required. *City of Lincoln v. United States*, 2018 WL 3917711, *8-9 (E.D. Cal. Aug. 16, 2018) (allowing more where the benefits of the discovery outweigh the burdens or where "litigation is complex").

Google's refusal to agree to any deposition beyond ten—no matter how few, no matter how short—is part and parcel of its efforts to unreasonably cabin discovery. Until this week, Google had disclosed only *three* individuals as "likely having discoverable information." When Plaintiffs pressed for more information, Google provided laundry lists of individuals associated with various "teams," without specifying the engineers or ad-side employees likely to have relevant information about how app activity data is stored and used. By withholding and then flooding Plaintiffs with names, Google has forced the parties into a game of "Guess Who," requiring Plaintiffs to take depositions to discover who has relevant knowledge.[1] Rule 30 of the Federal Rules of Civil Procedure guarantees to every party the right to take ten depositions, and it also provides that more may be permitted when the liberal standards of Rule 26 are satisfied. *See* Fed. R. Civ. P. 30(a).

Google's position that only three of its over 100,000 employees can answer "Plaintiffs' questions," Response to Interr. No. 5, is at odds with the evidence. In the five depositions Plaintiffs have taken so far (custodians Monsees, Ruemmler, and Weng, Fair, and Moraglia), witnesses have confirmed the need for more than ten depositions. Weng Dep. 21:17-25 (noting Google "is a very large organization" that is highly matrixed and in which employees have specific and limited responsibilities; *see also* Monsees Dep. 70:15-75:17 (noting there are many different Google teams and employees that were involved with the at-issue conduct during the relevant time period, "like the history UI, help center documentation, UDC integration"). Google witnesses have also noted that the "data systems in Google are very complex," suggesting that Plaintiffs should speak directly with engineers, in addition to product managers. Weng Dep. at 140:17-18; *see also* Ruemmler Dep. 54:17-19 ("The systems are complex. There may be stuff stored in different locations."). Google itself even claims that the "downstream users" of WAA-off data are too numerous to list. Resp to Interr. No.14.

Plaintiffs have diligently sought discovery from Google on matters important to Plaintiffs' claims and anticipated motion for class certification, including through depositions. But the depositions taken to date demonstrate that Google's employees know little (or profess to know little) about the goings-on of other members *of their own team*, let alone *other* teams. *See* Monsees Dep. 68:7-69:6 (claiming limited knowledge); Weng Dep. 40:18-25 (product manager in Google's app ads business "just d[id]n't know the systems well enough" to answer whether Google derives

---

[1] Worse yet, Google's gamesmanship has effectively forced Plaintiffs to seek testimony on a wide range of important topics only from Google's 30(b)(6) designees, who may not have personal knowledge. But the fact that Google's designees *will* cover a litany of topics reflects that there *are* individuals at Google who possess personal knowledge—just individuals Google will not identify. Plaintiffs should be permitted to take testimony from witnesses who speak for themselves, rather than parrot back the company line.

revenue from the sell-side of the app ads business, as "[t]hat is not what [he] was responsible for"); *id.* 44:4-11 ("product managers aren't super familiar with the underlying details around data storage. … that knowledge … belongs more to the engineering side of things"); Ruemmler Dep. 29: 7-8 ("I don't know how WAA works. … I don't work in that area."); *id.* 45:1-21 (employee "do[es]n't know" where users could see records of ads because he "do[es]n't work in ads").

The four requested additional depositions (beyond the presumptive 10-deposition limit) are warranted so that Plaintiffs may obtain relevant testimony concerning the disclosures Google provides to its users concerning the WAA control and how they are understood; the ways in which Google collects and saves WAA-off data; and how Google uses and monetizes that WAA-off data.

***Sam Heft-Luthy***: Mr. Heft-Luthy, a Google employee since 2016,was a Product Manager in Google's Privacy & Data Protection Office. He was involved in creating a Google "Privacy Hub" to explain "what data Google collects from a given product, how it's used, and what mechanisms of controls users have over their data" including with WAA. GOOG-RDGZ-00014410. His work involved "research meta-analysis" and "a series of stakeholder interviews . . . with people working on privacy across Google." *Calhoun v. Google*, No. 20-cv-05146-YGR, ECF No. 871-3 (order with findings) ¶¶ 128, 140. Google asserts a consent defense, and internal Google documents relating to the "Pri***Na***e" project state that Google's consent approach was "out-of-step with user expectations and regulations" in a manner that "makes it difficult for people to understand how we use their data." *Id.* ¶ 141. Interview notes further acknowledge that Google had "gaps in how our system works and what we promise to people" such that "[u]sers don't know what is happening." *Id.* ¶ 142. Testimony by Mr. Heft-Luthy concerning these projects and admissions is clearly relevant to Plaintiffs' claims and Google's defenses.

***Arne de Booij***: Mr. de Booij is a Google User Experience Research Manager tasked with designing and overseeing studies of user preferences and views, including WAA. Through a limited 3.5 hours deposition of Mr. de Booij, Plaintiffs seek to develop testimony regarding these studies of users' understanding of WAA disclosures. Plaintiffs deposed Mr. de Booij's former manager Greg Fair, but Mr. Fair could not provide the more detailed testimony that Plaintiffs anticipate from Mr. de Booij. Fair Rough Tr. 144:14-149:25 (declining to provide testimony). Plaintiffs also deposed the Founder of Google's Privacy and Data Protection Office, Eric Miraglia, who described Mr. de Booij as "the researcher who founded the Pi*** program" which oversaw one study that sought to determine why "users don't understand what WAA means." Miraglia Rough Tr. 174:7-175:21. Mr. Miraglia also explained that "I'm sure there have been many studies over the years that touched on" "what users would expect to happen when WAA is off," but he could not recall "specific studies." *Id.* 196:12-19. This case focuses on Google's WAA controls, and Plaintiffs should hear from the employee responsible for studying users' perceptions of WAA.

***JK Kearns***: Mr. Kearns is a Group Product Manager who vocalized discomfort with the fact that Google continued to collect and save data even when the WAA/sWAA button had been toggled to "off." *See, e.g.*, GOOG-RDGZ-00043966 (Mr. Kearns wrote: "To me, it feels like a fairly significant bug that a user can choose to turn off WAA but then ***we still collect and use the data*** (even locally)") (emphasis added); GOOG-RDGZ-00090741 (Mr. Kearns noting that the disclosures "feel[] ***misleading*** as it's currently written") (emphasis added); GOOG-RDGZ-00039094 (Mr. Kearns stating that "teams ***should not use user data at all if WAA is off***") (emphasis added). These admissions go to the heart of this case.

2

*Xinyu Ye*: Plaintiffs seek the testimony of Ye, a Software Engineer in Google's Privacy Working Group, to shed light on what data Google collects when WAA is off, where Google saves that WAA-off data, and how Google uses that WAA-off data. Ye has documents showing what percent of data is used by various Google products such as AdMob, GOOG-RDGZ-00180644, as well as documents demonstrating how Google uses Google Analytics and AdWords to convert data using "client ID." GOOG-RDGZ-00179824. Ye also has documents on how Google stores and uses data collected from users who switched off WAA as well as documents regarding "joinability risks" with respect to "link[ing] app events collected by GA4F to GAIA ID even if end users turn off WAA." GOOG-RDGZ-00033244; GOOG-RDGZ-00181801 ("ID joinability has been one of the biggest challenges in Google Analytics since introduction of Gaia IDs in GA"); GOOG-RDGZ-00184488 ("Firebase: IID which can map to GAIA to join to app instance id").

Seeking to resolve this dispute without involving the Court, Plaintiffs proposed to spend no more than 3.5 hours on the record with each of these additional four witnesses. Google refused and now blames Plaintiffs for lacking information that only Google knows, but refuses to share. Plaintiffs therefore ask that the Court allow these depositions. *Nosrati v. Provident Life & Accident Ins. Co.*, 2020 WL 1181497, at *4 (C.D. Cal. Mar. 10, 2020) (granting similar request where party "articulat[ed] both the individuals' roles in the case and the potentially relevant information each one may possess"); *City of Lincoln*, 2018 WL 3917711, at *8-9 (adopting a "benefits versus burdens" approach and allowing additional depositions).

## GOOGLE'S STATEMENT

Plaintiffs ask this Court to hand them a mulligan on their deposition strategy. That is not how Rule 30 works. Plaintiffs have had years to craft their strategy based on extensive document discovery. Plaintiffs complain this is a game of "Guess Who." But over a year ago, Google not only identified 50 employees with knowledge about Firebase, GA for Firebase, and WAA, but Google also listed their roles, business titles, and managers (ranging from software engineers to ads marketing product managers) so that Plaintiffs could determine who had granular versus high-level knowledge and on what topics. Plaintiffs ignored that list. They instead created their own, demanding and obtaining 19 off-list custodians. At that time, Google warned none would have the information Plaintiffs sought. Plaintiffs then insisted on deposing nine percipient witnesses, most of whom are not on that list either. Once again, Google explained up front that certain deponents would be unlikely to have much relevant information, including because several are no longer employed by Google. Plaintiffs ignored those warnings, too. And now, unhappy with how their strategy is panning out, Plaintiffs ask this Court for relief, all without waiting to learn what testimony will be offered by the remaining percipient witnesses and Rule 30(b)(6) designees on 28 outstanding topics. Plaintiffs do not explain why the additional depositions will not be duplicative or cumulative; why the information was unavailable within the limits of Rule 30; or why any unique, non-duplicative information they might learn is essential to resolve this case. This is fatal to their Motion. *See* Fed. R. Civ. P. 26(b). To obscure these deficiencies, Plaintiffs label this case "complex" and cherry-pick out-of-context quotes to argue the four witnesses may have relevant testimony. But Rule 30 isn't limited to non-complex cases, nor does it anticipate that only ten people in any case will have relevant testimony. That is simply not the standard.

Rule 30's ten-deposition limit "compel[s] [parties] to make strategic choices about which individuals they will depose." *Koninklijke Philips v. Acer Inc.*, 2019 WL 11499342, at *4 (N.D.

Cal. Jan. 18, 2019). Simply because an individual may have relevant information does not warrant a deposition. Where, as here, the Court is being asked to expand the scope of discovery, the party seeking more depositions must make a "showing of **necessity**," *Jordan v. Wonderful Citrus Packing*, 2019 WL 176264, at *2 n.1 (E.D. Cal. Jan. 11, 2019) (collecting cases). Courts reject requests for expansion if they determine "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source…; (ii) the party seeking discovery has had ample opportunity to obtain the information …; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering … the importance of the discovery in resolving the issues." *Perfect 10 Inc v. Yandex*, 2013 WL 12174215, at *1 (N.D. Cal. July 15, 2013).

Plaintiffs fail to meet the "necessity" burden. Each issue Plaintiffs say more testimony will clarify is duplicative of other discovery. First, Plaintiffs argue they need to understand "disclosures Google provides to its users concerning the WAA control." But they have already questioned David Monsees, Google's WAA Product Manager (PM), about WAA. Plaintiffs have not identified a single question about WAA disclosures that Mr. Monsees was unable to answer. Plaintiffs' only citation to his lack of knowledge concerns a product outside his scope of responsibility. Monsees Tr. 68:7-69:6 ("I'm not an expert on GMS Core product.  That's managed by a separate team."). Second, Plaintiffs argue they need to understand "the ways in which Google collects and saves WAA-off data." Plaintiffs' theory is that Google uses GA for Firebase to collect data. They are scheduled to depose Google's PM responsible for GA for Firebase, Steve Ganem. He is Google's 30(b)(6) corporate designee on this issue: "[t]he collection and transmission to Google from a user's device while WAA is turned off of user data by [GA] for Firebase …, including the functionality," related "technical process," and any relevant "changes." (Topic 1.) Plaintiffs "cannot possibly know what information [they] need[] but cannot obtain from [their] 10 permitted depositions" since they have not completed taking ones that bear directly on the purportedly unexplored topic. *Authentec v. Atrua Techs.*, 2008 WL 5120767, at *2 (N.D. Cal. Dec. 4, 2008). Third, Plaintiffs want to understand "how Google uses and monetizes … WAA-off data." Once again, Plaintiffs have yet to question Google's corporate designee on topics that encompass this issue, including "Google's use of user data … to derive revenues," "for purposes of tracking conversions," "targeted advertisements," or "providing real-time bidding services." (Topics 11, 25-27, 31.) Plaintiffs cannot contend they don't understand Google's use and monetization of data. And *all* their topics are aimed at *functionality* or damages issues, which are not typically the subject of percipient testimony. Indeed, none of the four proposed witnesses has responsibility for advertising, finance, or revenue, so this cannot serve as a basis for seeking their depositions.

Nor have Plaintiffs explained why ten depositions is insufficient to answer their questions. Plaintiffs could have deposed some of or all four of the witnesses they now seek instead of the roster they did choose. Google long ago warned Plaintiffs. For example, Google told Plaintiffs that Chris Ruemmler had a "lack of familiarity with the technology at issue here." *See, e.g.*, Dkt. 155 at 6. Plaintiffs' complaint now that Mr. Ruemmler didn't know the products at issue at his deposition is *déjà vu*. Plaintiffs similarly insisted on deposing Eric Miraglia, who Google also explained is "removed from the issues in this case" and has only had "high level" "involvement with WAA," *id*. at 5, as well as Rahul Oak, a former employee who has appeared on less than 2.5% of documents produced in this case. Greg Fair and Ed Weng, about whom they also complain, are also now former employees who testified solely as to their memory of their time at Google. Plaintiffs fail to explain why they couldn't have replaced one of those witnesses.

As for the specific witnesses Plaintiffs seek: **Sam Heft-Luthy** is a former employee who worked on *general* privacy projects. Plaintiffs say they need information on two projects (Privacy Hub and Pri\*\*\*Na\*\*e) that Mr. Heft-Luthy worked on for the Privacy Data & Protection Office (PDPO). But that is belied by their failure to ask Mr. Miraglia, the PDPO "founder," as they describe him, Dkt. 155 at 1, a single question about either project. **Arne de Booij** is a European employee who Plaintiffs say is needed to "develop testimony regarding studies of users' understanding of WAA disclosures." Plaintiffs complain that Messrs. Fair and Miraglia were unable to provide "detailed" testimony about "specific" user studies. They knew that would happen. A year ago, Plaintiffs told this Court those witnesses' "responsibilities do not overlap" with Mr. de Booij's, who is a user experience researcher. *Id.* Plus, Plaintiffs' complaint that Mr. Fair "declin[ed] to testify" about user studies is not only beside the point, it is false. *See* Fair Tr. 144:14-149:25 (answering user study questions in detail). Most importantly, they neglected to ask Mr. Monsees, WAA PM, a single question about WAA user studies or their results, presumably so they could tell this Court they had no user study testimony. As for *JK Kearns*, he is a PM for Google *Search*, a first-party product that is not relevant. Mr. Kearns has never been responsible for WAA, and to the extent he has commented on WAA, those comments concerned its interaction with Google Search. GOOG-RDGZ-00090741 (commenting on "*Search* Privacy"); GOOG-RDGZ-00039094 (discussing "Search" and "search history"). Finally, Plaintiffs seek to question **Xinyu Ye** about the collection, storage, and use of WAA-off data. Mr. Ye is a junior software engineer, just three years out of college. Everything he knows about the collection, storage, and use of GA for Firebase data he would have learned from Mr. Ganem or someone else on the Google Analytics team. Plaintiffs fail to explain why they can't ask Mr. Ganem their questions on the topics they identify above, such as joinability risk and client ID ad conversions.

Finally, Plaintiffs' argument that they should be allowed to take additional depositions because this case is "complex" is meritless. While this case is technically and factually complex, it does not have either of the hallmarks of cases in which courts allow additional depositions: complex legal issues or numerous opposing parties to depose.[2] Here, the central questions at issue—whether Google collects app activity data through GA for Firebase and how Google uses it—can be answered by the currently-scheduled depositions, to the extent they have not already been answered by extensive discovery. And Google has or will designate a corporate representative to testify on 31 broad-ranging topics—28 of which are still outstanding—that cover the waterfront of this case and will lead to binding party testimony.

This is a case where "[t]aking additional percipient depositions [is] unlikely to add much to the truth-of-the-matter equation." *Crystal Lakes v. Bath & Body Works*, 2018 WL 10467489, at *3 (E.D. Cal. Aug. 15, 2018). Plaintiffs' purpose in pursuing these witnesses is plain from their section, and it has nothing to do with plugging important evidentiary holes; they simply want to take more swings under oath, at Google's expense, at current and former employees who expressed constructive criticism internally about Google's privacy practices in an attempt to manufacture juicy quotes to make up for the utter lack of evidence of any corporate wrongdoing.

---

[2] *See, e.g., Gamino v. KPC Healthcare Holdings, Inc.,* 2022 WL 601047, at *6 (C.D. Cal. Feb. 28, 2022); *City of Lincoln v. United States*, 2018 WL 3917711, at *7 (E.D. Cal. Aug. 16, 2018); *Del Camp v. American Corr. Counseling Servs.*, 2007 WL 3306496, at *2 (N.D. Cal. Nov. 6, 2007).

Respectfully,

WILLKIE FARR & GALLAGHER, LLP

By: */s/ Eduardo E. Santacana*
    Eduardo E. Santacana (SBN: 281668)
    esantacana@willkie.com
    Benedict Y. Hur (SBN: 224018)
    bhur@willkie.com
    Simona Agnolucci (SBN: 246943)
    sagnolucci@willkie.com
    Lori Arakaki (SBN: 315119)
    larakaki@willkie.com
    One Front Street, 34th Floor
    San Francisco, CA 94111
    Telephone: (415) 858-7400
    Facsimile: (415) 858-7599

*Attorneys for Defendant Google LLC*

SUSMAN GODFREY LLP

/s/ *Amanda Bonn*
Amanda Bonn (CA Bar No. 270891)
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

William Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

**ATTESTATION**

I, Eduardo E. Santacana, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: November 11, 2022                        By: */s/ Eduardo E. Santacana*
                                                      Eduardo E. Santacana