**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
  bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
  sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
  esantacana@willkie.com
LORI C. ARAKAKI (SBN: 315119)
  larakaki@willkie.com
ARGEMIRA FLOREZ (SBN: 331153 )
  aflorez@willkie.com
HARRIS MATEEN (SBN: 335593)
  hmatten@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400
Facsimile:  (415) 858-7599

Attorneys for Defendant
GOOGLE LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ANIBAL RODRIGUEZ, et al. individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>     vs.<br><br>GOOGLE LLC,<br><br>                              Defendant. | Case No. 3:20-CV-04688-RS<br><br>**DEFENDANT GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT**<br><br>The Honorable Richard Seeborg<br>Date:  December 8, 2022<br>Time: 1:30 p.m.<br>Place: Courtroom 3 - 17th Floor<br><br>Action Filed:        July 14, 2020<br>Trial Date:          Not Yet Set |

# **TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION ................................................................................................1

II.   RELEVANT BACKGROUND AND PROCEDURAL HISTORY............................3

    A.    This case has always been about app measurement data sent by third-party apps to Google. .........................................................................................3

        1.    Plaintiffs' initial complaint accused Google's software for third-party app developers. .......................................................................3

        2.    Plaintiffs' First Amended Complaint did not change their fundamental allegations about third-party apps. .........................................3

        3.    Plaintiffs' Second Amended Complaint advanced a similar theory about third-party apps. ..........................................................4

        4.    Plaintiffs' Third Amended Complaint was more of the same. ..............5

    B.    There has been extensive discovery and motion practice based on the factual allegations in the Second and Third Amended Complaints...............................6

    C.    Plaintiffs propose to modify classes and add a *new* Google Search Class. .......7

III.  LEGAL STANDARD ..........................................................................................8

IV.   ARGUMENT ......................................................................................................9

    A.    Plaintiffs' proposed amendment to the Class 1 and 2 definitions includes one word the Court should strike....................................................................9

    B.    Plaintiffs' proposed amendment to add a Google Search Class and a Search-Related legal theory should be denied. ...........................................................10

        1.    Google will be prejudiced if Plaintiffs are allowed leave to amend....10

        2.    Plaintiffs' counsel have always known that Google uses anonymized Search data for product improvement purposes, but inexcusably delayed in suing over it until now.........................................................16

        3.    The Other *Foman* Factors Including Bad Faith, Futility, and Number of Amendments Each Support Denying Plaintiff's Motion.................19

V.    CONCLUSION.................................................................................................22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aguilar v. Boulder Brands, Inc.*,
  2014 WL 4352169 (S.D. Cal. Sept. 2, 2014) ........................................................................13

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
  465 F.3d 946 (9th Cir. 2006) .........................................................................................16, 17

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................................9

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) .................................................................................................10

*Brown v. Google LLC*,
  2022 WL 2289057 (N.D. Cal. Mar. 18, 2022) ..................................................................12, 13

*California v. Neville Chem. Co.*,
  358 F.3d 661 (9th Cir. 2004) ...................................................................................................21

*Callan v. Amdahl Corp.*,
  1995 WL 261420 (N.D. Cal. Apr. 24, 1995) ...........................................................................12

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
  2016 WL 5869758 .....................................................................................................................20

*City of L.A. v. San Pedro Boat Works*,
  635 F.3d 440 (9th Cir. 2011) .....................................................................................................8

*Dep't of Fair Emp. & Hous. v. L. Sch. Admission Council, Inc.*,
  2013 WL 485830 (N.D. Cal. Feb. 6, 2013) ............................................................................10

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) .................................................................................................10

*Foman v. Davis*,
  371 U.S. 178 (1962) ................................................................................................2, 8, 10, 19

*Hightower v. City & Cty. of San Francisco*,
  2015 WL 926541 (N.D. Cal. Mar. 3, 2015) ...........................................................................12

*Jackson v. Bank of Hawaii*,
  902 F.2d 1385 (9th Cir. 1990) ...............................................................................8, 10, 12, 16

*Jackson v. Laureate, Inc.*,
  186 F.R.D. 605 (E.D. Cal. 1999) .............................................................................................22

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

<u>Page(s)</u>

*Johnson v. Buckley,*
   356 F.3d 1067 (9th Cir. 2004) ...................................................................................8

*Johnson v. Mammoth Recreations, Inc.,*
   975 F.2d 604 (9th Cir. 1992) .....................................................................................8

*Jordan v. Los Angeles Cty.,*
   669 F.2d 1311 (9th Cir.) .........................................................................................16

*Kittel v. City of Oxnard,*
   2018 WL 6004522 (C.D. Cal. July 9, 2018) ............................................................8

*Koch v. Koch Indus.,*
   127 F.R.D. 206 (D. Kan. 1989)...............................................................................19

*Lockheed Martin Corp. v. Network Sols., Inc.,*
   194 F.3d 980 (9th Cir. 1999) ...................................................................................11

*McCabe v. Six Continents Hotels, Inc.,*
   2013 WL 12306494 (N.D. Cal. Oct. 10, 2013)........................................................13

*McGlinchy v. Shell Chem. Co.,*
   845 F.2d 802 (9th Cir. 1988) ...................................................................................16

*Menendez-Gonzalez v. Kelly,*
   2017 WL 11632799 (C.D. Cal. Mar. 22, 2017)........................................................19

*Moore v. Kayport Package Exp., Inc.,*
   885 F.2d 531 .........................................................................................................21

*Muench Photography, Inc. v. Pearson Educ., Inc.,*
   2013 WL 4426493 (N.D. Cal. Aug. 15, 2013) .......................................................11

*Nunes v. Ashcroft,*
   348 F.3d 805 (9th Cir. 2004) ...................................................................................10

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.,*
   2017 WL 3149297 (N.D. Cal. July 25, 2017)........................................................13

*Pinterest, Inc. v. Pintrips, Inc.,*
   2014 WL 12611300 (N.D. Cal. Aug. 26, 2014) .....................................................15

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.,*
   522 F.3d 1049 (9th Cir. 2008) .................................................................................21

# TABLE OF AUTHORITIES (CONTINUED)

Page(s)

*Risher v. Adecco Inc.*,
  2021 WL 9182421 (N.D. Cal. Sept. 17, 2021) .................................................................13

*Sisseton-Wahpeton Sioux Tribe of Lake Traverse Indian Reservation v. United States*,
  90 F.3d 351 (9th Cir. 1996) .....................................................................................10, 22

*Solomon v. N. Am. Life & Cas. Ins. Co.*,
  151 F.3d 1132 (9th Cir. 1998) ........................................................................................12

*Stambanis v. TBWA Worldwide, Inc.*,
  2020 WL 4060171 (C.D. Cal. July 20, 2020) .............................................................11, 15

*Synchronoss Techs., Inc. v. Dropbox Inc.*,
  2019 WL 95927 (N.D. Cal. Jan. 3, 2019) .........................................................................13

*United Ass'n of Journeyman & Apprentices of the Plumbing & Pipe Fitting Indus., Underground Util./Landscape Loc. Union No. 355 v. Maniglia Landscape, Inc.*,
  2019 WL 7877822 (N.D. Cal. July 22, 2019) ...................................................................20

*Wash. St. Repub. Party v. Wash. St. Grange*,
  676 F. 3d 784 (9th Cir. 2012) ..........................................................................................8

*Wheeler v. Estee Lauder Companies, Inc.*,
  2013 WL 12121543 (C.D. Cal. Feb. 12, 2013).................................................................10

*Zivkovic v. S. Cal. Edison Co.*,
  302 F.3d 1080 (9th Cir. 2002) ........................................................................................12

**Other Authorities**

Fed. R. Civ. P. 15(a).......................................................................................... *passim*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.    **INTRODUCTION**

A complaint is not a moving target.  It crystallizes the claims of wrongdoing so the parties can investigate and resolve genuine disputes fairly.  Litigation is not intended to allow parties to peek behind the curtain of a complex organization, taking advantage of liberal discovery rules to take shots in the dark hoping to find something sensitive around which to build new and yet more new cases.  For the last 28 months, the Court and Google have been along for the ride on just such a shifting-sands approach to litigation which Plaintiffs have driven.  When factual dead ends are presented, Plaintiffs recast their claims.  And even still, the Court winnowed this case to two claims and one factual theory.  This latest request to amend, which came on the business day before the close of discovery, seeks to upend that winnowing again.  The Court should deny it.

Plaintiffs have already amended their complaint three times.  Each time their legal theories shifted and metastasized, but the key factual allegations remained fundamentally the same.  Since Plaintiffs filed their initial complaint in July 2020, this case has been about app measurement data sent to Google by third-party mobile app developers.  Initially, Plaintiffs claimed Google caused that data to be sent to it with "secret scripts" in source code surreptitiously running in the background of its Firebase Software Development Kit.  After the Court dismissed that factual theory, Plaintiffs resorted to their theory that while GA for Firebase's functionality was publicly disclosed, it was still wrongful.  This involved several about-faces concerning their theory of simultaneity of app data transmission, which Plaintiffs dismissed as "typographical errors."  This Court rejected those artful pleading tactics as "not well taken," leaving Plaintiffs with claims for violation of California's Comprehensive Computer Data Access and Fraud Act and common law invasion of privacy.  Each of those claims is premised on the same factual theory concerning Google's receipt of data through GA for Firebase or through products with GA for Firebase integrations (AdMob and Cloud Messaging).

Now, with discovery closed, and with judgment day approaching, Plaintiffs are seemingly unhappy with their chances of succeeding on the merits.  They've advanced this Motion seeking to amend their complaint in two primary ways—one concerning their existing allegations, and one

adding an entirely new, never-before-mentioned factual theory.  Plaintiffs take great pains to conflate the two categories of amendments and present them as requiring the "same analysis." Mot. at 21.  That is false: one is largely permissible; one is not.

*First*, Plaintiffs seek to revise their existing class definitions concerning third-party, non-Google apps that use Google's Firebase or AdMob SDKs, and to add related facts.  The Court should strike one word in Plaintiffs' proposed class definition—the term "including," in the phrase "Google tracking or advertising code, including Firebase SDK and AdMob SDKs"—because it fails to specify what Google code is implicated apart from the two identified SDKs.  Worse than a moving target, this is not a target at all.  The definition is fatally overbroad and unconstitutionally vague.

*Second*, Plaintiffs seek leave to add an entirely new factual theory and class of named plaintiffs based on Google's first-party Search product.  This is no ordinary request for leave to make ministerial updates to the complaint.  As Plaintiffs concede, their proposed amendment to graft Google Search into this case would "both change the scope of the case and the scope of Google's liability." Mot. at 22.  And Plaintiffs admit they will seek additional discovery. Tellingly, Plaintiffs do not specify any numeric or temporal limits to the discovery they seek, nor identify how they will topically "target[]" their additional discovery requests. *Id.*  The need for additional discovery—which will require extending the case schedule since fact discovery closed on October 31, 2022—is a textbook example of the prejudice sufficient to deny leave to amend.

Plaintiffs' Motion ignores the substantial body of case law in which courts reject requests like this one. *See infra* at pp. 10–12.  Under Federal Rule of Civil Procedure 15(a), courts consider whether to grant leave to amend by considering five factors: prejudice, delay, bad faith, futility, and number of prior amendments. *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Each one here supports rejecting Plaintiffs' request to amend, including prejudice, which is the most important factor.  The Court should deny Plaintiffs' Motion.

## II.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY[1]

For the last two years, the parties have been litigating about how a particular product (Google Analytics for Firebase and its integrations with AdMob and Cloud Messaging)[2] used by third-party app developers (*e.g.*, the New York Times) sends app measurement data to Google for analysis.  Plaintiffs alleged this data flow was improper if a user's Web & App Activity" setting (WAA) is toggled off.

For years, the parties have made strategic choices based on those key allegations.  Google has expended significant resources investigating and litigating Plaintiffs' theories, and this Court has expended judicial resources, too.  Fact discovery is now closed (11 months after initially scheduled), and Plaintiffs seek leave to amend their claims and to reopen discovery for an unspecified amount of additional information and time.

### A.    This case has always been about app measurement data sent by third-party apps to Google.

#### 1.    Plaintiffs' initial complaint accused Google's software for third-party app developers.

This case started 28 months ago, on July 14, 2020.  Plaintiffs began with a theory that Google "tracks and compiles" user communications "by covertly integrating Google's tracking software" into app developer products. Dkt. 1 (Compl.), ¶ 7.  Plaintiffs alleged that Google "accomplishes this surreptitious and unlawful interception, tracking, and data collection of users' app activity through its Firebase SDK."  Compl. ¶ 8.  When Google moved to dismiss (Dkt. 48), Plaintiffs decided not to oppose and instead sought to amend their allegations.  Google stipulated to the amendment.  Dkt. 58 (Stip.).

#### 2.    Plaintiffs' First Amended Complaint did not change their fundamental allegations about third-party apps.

Plaintiffs filed their First Amended Complaint ("FAC") on November 11, 2020.  Dkt. 60. It was full of irrelevant information and prolix charges, nearly doubling the length of the initial

---

[1] Unless otherwise noted, all internal quotation marks and citations have been omitted.

[2] AdMob has been integrated with Firebase during the Class Period.  AdMob+ is an upgraded version of AdMob also known as Google Ads SDK.

complaint to 78 pages. Plaintiffs added two new claims for UCL violations and common law

intrusion upon seclusion. But their fundamental factual theory and allegations did not change.

Google moved to dismiss again. Dkt. 62

On May 21, 2021, the Court issued its order granting Google's motion to dismiss in part.

As the Court determined, Plaintiffs' claims arise from two theories of liability—one concerned

"Firebase's disclosed functionality" through which Google receives data "on behalf of [third-

party] app developers who knowingly utilize that service"; and the other concerning "Firebase's

undisclosed functionality" that purportedly "hides 'secret scripts' . . . throughout the Firebase

toolkit" unbeknownst to developers and users alike. Dkt. 109 at 6. The Court dismissed

Plaintiffs' "secret scripts" theory, holding that it is "woefully underdeveloped," "and has no

bearing on the claim-specific analysis." *Id*. at 12. In addition, the Court dismissed Plaintiffs'

Wiretap Act claim based on the existence of developer consent, and the UCL claim for lack of

standing. *Id*. at 12, 17. The Court also dismissed Plaintiffs' CIPA section 632 claim because

Plaintiffs failed to plead unique, definite circumstances rebutting the "presumption that [i]nternet

communications do not reasonably give rise to [an] expectation" that the conversation is not being

recorded. *Id*. at 13–14. The Court granted Plaintiffs leave to amend. *Id*. at 14.

### 3.  Plaintiffs' Second Amended Complaint advanced a similar theory about third-party apps.

Plaintiffs filed their Second Amended Complaint ("SAC") 17 months ago on June 11,

2021. Dkt. 113. With that amendment, Plaintiffs abandoned their Wiretap Act, UCL, CIPA

section 632, and "secret scripts" claims, and replaced those with a breach of contract claim.

*See* SAC, Dkt. 113, ¶¶ 236–49. Their fundamental factual theory that third-party apps send data

to Google via Firebase did not change. None of the three principal differences between the FAC

and SAC[3] altered Plaintiffs' factual theory. With their CIPA section 631 theory, however,

---

[3] Google identified three changes between Plaintiffs' FAC and SAC in its motion to dismiss. *See* Dkt. 115 at 4. First, Plaintiffs abandoned the phrase "secret scripts." *Id*. Second, Plaintiffs added stray references to "AdMob and Cloud Messaging for Firebase" at three points where they had also alleged that GA for Firebase sends data to Google through a "backdoor[]" in Firebase SDK.

4

Plaintiffs attempted to end-run the Court's dismissal of their CIPA section 632 and secret scripts

theory. They tried to salvage those claims by averring that Google's recording of app

measurement data was sequential following transmission, rather than a simultaneous interception

of communications. Google moved to dismiss. Dkt. 115. And Plaintiffs backtracked, trying to

pass "this artful addition to the pleadings off as some sort of typographical error" that the Court

held was "not well taken." Dkt. 127 at 7 (Order on SAC).

On August 18, 2021, the Court issued its order granting Google's motion to dismiss the

SAC in part and denying in part. The Court dismissed Plaintiffs' breach of contract claim that was

premised on Google's Privacy Policy and WAA Help page. Dkt. 127 at 4–7. The Court found the

CIPA section 631 claim "likewise deficient" and rejected Plaintiffs' claim that their shifting

theory and factual allegations was a "typographical error." *Id*. Although Plaintiffs had only

referenced AdMob and Firebase Cloud Messaging (FCM) in three passing references, the Court

allowed the addition of those products "as vehicles for Google's supposed misconduct," even

though that would expand the scope of discovery over a year into litigation. *Id*. at 3, 7–8. The

Court also generously allowed Plaintiffs leeway to amend their two dismissed claims, but in light

of Plaintiffs' repeated about-faces with their CIPA claim, the Court cautioned Plaintiffs "to

[amend] in a manner strictly honoring the duty to litigate in good faith." *Id*. at 8.

4. Plaintiffs' Third Amended Complaint was more of the same.

Plaintiffs filed their Third Amended Complaint ("TAC") on September 1, 2021. Dkt. 131.

The TAC sought "to revitalize the[] breach of contract claim by arguing it was a unilateral

contract" "created by Google's provision of [the WAA] button to adjust privacy settings," and

alternatively a quasi-contract. Dkt. 209 (Order on TAC) at 1. The TAC also attempted to revive

Plaintiffs' CIPA claim (which can carry statutory penalties) by reversing course yet again and

"revert[ing] to averring Google simultaneously intercepts [user] data in transit." *Id*. at 2. That

---

*Id*. Third, Plaintiffs identified the user's "device" as the agent doing the intercepting rather than
"secret scripts" or "apps" generally. *Id*.

claim was dead on arrival, and no amount of artful pleading, re-pleading, and purported "typographical errors" could save it.

In its January 25, 2022 Order, the Court rejected both theories and dismissed the contract and CIPA claims for a final time.  *Id*. at 4–6.  Because Plaintiffs had by then "been afforded several opportunities to amend and ha[d] failed to do so successfully," this Court held "further leave to amend wa[s] not warranted."  *Id*. at 7 (citing *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006)).  Google answered.  Dkt. 230.

**B.     There has been extensive discovery and motion practice based on the factual allegations in the Second and Third Amended Complaints.**

Plaintiffs have never before accused Google's first-party Google Search product.  Both parties and the Court have been proceeding based on the factual theories first alleged over two years ago.  Google has exhaustively investigated those factual theories and the products Plaintiffs identified, specifically: GA for Firebase and its integration with AdMob and Firebase Cloud Messaging.  Google conducted countless interviews of engineers and product managers on each of those teams, along with those involved with the Google Account WAA setting, to understand the products' functionality, the data Google receives, how it receives the data, where the data goes, and how it's used.

Google also responded to 285 RFPs and produced tens of thousands of documents based on Plaintiffs' theories, all after months-long negotiation and litigation concerning custodians and search terms.  Plaintiffs obtained 19 additional custodians from the Court over Google's objection, which brought the total to 24 ESI custodians.  Dkt. 184.  None has responsibility for Google Search.  Google agreed to employ hundreds of search terms and Plaintiffs obtained hundreds more from the Court.  Dkt. 238.  None concerns Search, either.

Google answered 25 written interrogatories and 52 RFAs, including laying out for Plaintiffs in painstaking detail the data flow for the app measurement data Google receives through GA for Firebase (Response to Interrogatory No. 1).  Those answers did not include any information on Search or data Google receives through Search.  And Plaintiffs are at their Rule 33

limit on interrogatories, meaning they cannot serve more without Google's agreement or leave of Court. Fed. R. Civ. P. 33(a)(1).

Google crafted its investigation, litigation, and discovery strategy based on the allegations in Plaintiffs' operative complaint. Indeed, just six months ago, on April 29, 2022, Plaintiffs conceded that web activity is not a part of this case. Plaintiffs told the Court that while there may be "irrelevant documents about web activity," Google should manually "disentangle the two types of data," app and web, "in its responsiveness review." Dkt. 233 at 2. Google has undertaken that manual, time-consuming, and costly approach.

By the time the Court hears this motion, Google will also have made eleven different people available for deposition, and Plaintiffs will have no more depositions left to take under Rule 30. *See* Fed. R. Civ. P. 30(a)(2). Those depositions included four different corporate designees who spent weeks preparing to testify about 31 of Plaintiffs' detailed Rule 30(b)(6) topics. None of those topics concerned Search, either.

**C.     Plaintiffs propose to modify classes and add a *<u>new</u>* Google Search Class.**

On the business day before the close of discovery, Plaintiffs filed this Motion for Leave to Amend. Dkt. 258 ("Mot."). Plaintiffs seek to make two categories of amendments. First, Plaintiffs propose to amend Classes 1 and 2 to "clarify that these classes include users who had WAA 'on' but 'sWAA off.'" Mot. at 11. Plaintiffs also seek to include an unspecified set of "Google tracking or advertising code" within the ambit of the class definition. *Id*. Second, Plaintiffs seek to "add an additional class, focused on Search." *Id*. at 12.

Plaintiffs concede the two categories of amendments are "differen[t]" because they do not plan to seek new discovery for the amendments to Classes 1 and 2, but they "will need to serve new discovery" for Google Search. *Id*. at 4. Nowhere in their Motion do Plaintiffs commit to any limits on that "new discovery."

Discovery is closed. So is the briefing period for motions to compel. And by the time the Court considers this Motion, all the trailing discovery including the remaining two depositions the parties were unable to schedule in October 2022, supplemental privilege log review and related productions (for documents Google has agreed to produce as of the date of this filing), and

7

briefing of motions to compel will be completed.  Plaintiff's expert reports are due January 20,

2023, with rebuttal reports due May 1, 2023, and expert discovery set to close June 2, 2023,

followed by class certification in Summer 2023.  Dkt. 246 (Scheduling Order).  In a co-pending

motion, Plaintiffs have also sought to extend the fact discovery period based on their existing

requests, but claim the schedule extension is not intended to support their new allegations.

Dkt. 255 at 3 n.1.  As Google explained in its opposition, that motion is meritless.  *See* Dkt. 265.

### III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a), a party may amend pleadings before trial

"when justice so requires."  Fed. R. Civ. P. 15(a)(2).  While leave to amend is liberally granted, it

is not automatic.  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).

Under Rule 15(a), "a district court may exercise its discretion to deny leave to amend due

to undue delay, bad faith or dilatory motive on part of the movant, . . .  undue prejudice to the

opposing party . . ., [or] futility of amendment."  *Wash. St. Repub. Party v. Wash. St. Grange*, 676

F. 3d 784, 797 (9th Cir. 2012) (citing *Foman*, 371 U.S. at 182); *see also Johnson v. Buckley*, 356

F.3d 1067, 1077 (9th Cir. 2004).  If these factors counsel against allowing the plaintiffs to amend

the complaint, the court has discretion to foreclose amendment.  *See Foman*, 371 U.S. at 182.  The

court's "discretion to deny leave to amend is particularly broad where plaintiff has previously

amended the complaint."  *City of L.A. v. San Pedro Boat Works*, 635 F.3d 440, 454 (9th Cir.

2011).  And where, as here, "considerable time has passed between the filing of the original

pleading and the motion to amend," the movant must also "show some valid reason for the delay."

*Kittel v. City of Oxnard*, 2018 WL 6004522, at \*4 (C.D. Cal. July 9, 2018).  In some cases, courts

apply the more rigid "good cause" standard of Rule 16(b) where the scheduling order has expired.

That standard "primarily considers the diligence of the party seeking the amendment."  *Johnson v.*

*Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

## IV.   ARGUMENT

### A.   Plaintiffs' proposed amendment to the Class 1 and 2 definitions includes one word the Court should strike.

Google does not oppose most of Plaintiffs' proposed amendments to factual allegations concerning Classes 1 and 2 or their Firebase-related claims.  Plaintiffs assure this Court and Google that they "are not seeking to serve new discovery" for their claims concerning Classes 1 and 2 and non-Google, *i.e.*, third-party, apps.  Mot. at 13–14 ("new discovery is unnecessary"). Because they seek no new discovery related to Classes 1 and 2, including Google's supplemental Web & App Activity setting and AdMob SDK, (*id.* at 3), Plaintiffs avow that the "outcome of this motion" will have no effect on their request for a fact discovery extension (*id.* at 15).

Accordingly, the only amendment to Classes 1 and 2 that Google opposes is the insertion of "including" in the following class definitions (emphasis added):

> Class 1 – All individuals who during the Class Period (a) turned off "Web & App Activity," or supplemental "Web & App Activity" and (b) whose mobile app activity was still transmitted to Google, from (c) a mobile device running the Android operating system (OS), because of Google tracking or advertising code, **including** Firebase SDK and AdMob SDKs scripts, on a non-Google branded mobile app.

> Class 2 – All individuals who during the Class Period (a) turned off "Web & App Activity," or "supplemental Web & App Activity" and (b) whose mobile app activity was still transmitted to Google, from (c) a mobile device running a *non*-Android operating system (OS), because of Google tracking or advertising code, **including** Firebase SDK and AdMob SDKs scripts, on a non-Google branded mobile app.

The use of "including" makes these definitions unconstitutionally vague and fatally problematic.  As drafted, it is unclear what code in particular is affected by Plaintiffs' claims. Plaintiffs have alleged no facts relating to other SDKs apart from Firebase and AdMob.  Since they have not—and cannot—the use of "including" in the class definitions renders Plaintiffs' claim meritless.  Purely speculative allegations, like this, that do not "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), are insufficient to support a claim.  Further, the word "including" makes unclear the scope of any judgment in favor of or against the proposed Class, making it facially impermissible as part of a class

definition, unfair and prejudicial both to Google and the proposed Class. *See, e.g.*, Fed. R. Civ. P. 23(a); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017); *Wheeler v. Estee Lauder Companies, Inc.*, 2013 WL 12121543, at *4 (C.D. Cal. Feb. 12, 2013) (rejecting class definition that was so "vague and overbroad, as it encompasses any product of [d]efendants," without limitation to those at issue or evidence that no other products "fall[] within the ambit of the proposed definition").

Indeed if this case is certified as a class action and resolved under the Class 1 or 2 definitions proposed by Plaintiffs, it could bind all future litigants nationwide who may wish to try their luck with similar non-Firebase, non-AdMob SDK claims. Surely that's not what Plaintiffs intended. The word "including" doesn't help anyone. It should be omitted as futile. *See Nunes v. Ashcroft*, 348 F.3d 805, 808 (9th Cir. 2004) ("Futility alone can justify the denial of a motion for leave to amend.").

### B. Plaintiffs' proposed amendment to add a Google Search Class and a Search-Related legal theory should be denied.

Class 3 is different. Plaintiffs' request to add Google's first-party Search product to the case is prejudicial and inappropriate. To determine whether amendment is appropriate under Rule 15(a), a court must consider "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint." *Sisseton-Wahpeton Sioux Tribe of Lake Traverse Indian Reservation v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). "[C]onsideration of prejudice to the opposing party carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *Jackson*, 902 F.2d at 1387 (affirming denial of motion for leave to amend complaint). Each *Foman* factor weighs against allowing Plaintiffs to amend the complaint.

#### 1. Google will be prejudiced if Plaintiffs are allowed leave to amend.

Of the factors courts analyze when adjudicating motions for leave to amend, the potential for prejudice to the opposing party "carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052. It is well settled that "prejudice may effectively be established by demonstrating that a motion to amend was made . . . when discovery had closed or was about to close." *Dep't of Fair*

1  *Emp. & Hous. v. L. Sch. Admission Council, Inc.*, 2013 WL 485830, at *5 (N.D. Cal. Feb. 6,

2  2013) (collecting cases).  Prejudice occurs because, after significant discovery, amendment would

3  force a party to "expend more time and incur additional litigation costs to conduct additional

4  discovery." *Stambanis v. TBWA Worldwide, Inc.*, 2020 WL 4060171, at *2 (C.D. Cal. July 20,

5  2020).

6       Fact discovery is closed.  Over the last 28 months, Google has devoted thousands of hours

7  and business and attorney resources to investigating Plaintiffs' claims concerning its products for

8  third-party developers, including GA for Firebase, AdMob, and FCM, and to collecting,

9  reviewing, and producing information and documents related to those claims.  This process has

10  been particularly burdensome because Plaintiffs sought discovery going back seven years from

11  24 custodians.  Google also prepared numerous percipient and 30(b)(6) witnesses on 31 topics

12  unrelated to Google Search.  Plaintiffs now want to leave all of that hard work behind, and add a

13  completely new factual theory.

14       Plaintiffs concede the amendment to Class 3 would "both change the scope of the case and

15  the scope of Google's liability."  Mot. at 22.  And Plaintiffs admit they *will* seek additional

16  discovery.  *Id*. at 4:8-9, 22:2.  Tellingly, Plaintiffs do not specify *any* numeric or temporal limits to

17  the discovery they seek.  Plaintiffs say new discovery will be "targeted" to Google's storage and

18  use of Search data (*id.* at 22:11), but that is the same broad category of discovery Plaintiffs have

19  sought concerning GA for Firebase that has taken over two years and thousands of hours to

20  litigate.  If permitted, Plaintiffs will doubtless take leave to amend as license to start discovery

21  anew.  And because fact discovery closed one business day after Plaintiffs filed their Motion, it

22  will have to be reopened.

23       These facts and concessions are sufficient to deny Plaintiffs leave to amend.  The "need to

24  reopen discovery . . .  supports a district court's finding of prejudice from a delayed motion to

25  amend the complaint." *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir.

26  1999); citing *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998).

27  Indeed, courts routinely reject requests for leave to amend that come on the eve of the close of fact

28  discovery and require discovery to be reopened.  *See, e.g.*, *Muench Photography, Inc. v. Pearson*

*Educ., Inc.*, 2013 WL 4426493, at *3 (N.D. Cal. Aug. 15, 2013) (denying motion for leave to amend where case "was filed over 15 months ago," "discovery began one year ago," plaintiff brought the motion "approximately two weeks before the end of fact discovery," and "the need to reopen discovery . . . for even six weeks" would prejudice defendant); *Hightower v. City & Cty. of San Francisco*, 2015 WL 926541, at *2 (N.D. Cal. Mar. 3, 2015) (denying motion for leave to amend complaint where motion was filed slightly less than three months before fact-discovery cutoff, noting that "[a]t this point, it will be impossible to maintain the April 30, 2015 discovery cutoff" and that "[s]uch delay constitutes legal prejudice under *Foman*, and thus warrants denial of Plaintiffs' motion under Rule 15").

This rule holds even where "plaintiff[s] complain[] [they] could not file [a] proposed amended complaint until [they] had received certain discovery from defendants." *Callan v. Amdahl Corp.*, 1995 WL 261420, at *5 (N.D. Cal. Apr. 24, 1995) (denying leave to amend "fourteen months after plaintiff first filed his complaint, only two weeks before the discovery cut-off"). The Ninth Circuit regularly upholds such rulings, finding such belated requests "manifestly unfair and prejudicial." *Jackson*, 902 F.2d at 1388.[4]

Plaintiffs ignore this substantial body of case law. They instead advance three legally and factually incorrect arguments. <u>*First*</u>, Plaintiffs offer the conclusory assertion that the "same analysis" with respect to prejudice applies to both their attempt to amend Classes 1 & 2 and their attempt to add Search to the case. Mot. at 21. That is wrong. Each of Plaintiffs' cases they cite in support of their argument that there is no prejudice is inapplicable to their Search allegations, which would require reopening discovery to delve into a topic that has never before been part of this case. *Id.* at 13–17. In *Brown v. Google LLC*, 2022 WL 2289057, at *1 (N.D. Cal. Mar. 18,

---

[4] *See also*, *e.g.*, *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1138-39 (9th Cir. 1998) (affirming denial of motion for leave to amend that was filed "on the eve of the discovery deadline"—two weeks before the close of discovery—where granting the motion "would have required re-opening discovery, thus delaying the proceedings"); *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming denial of a motion for leave to amend filed five days before the close of discovery where the additional claims would have required additional discovery, delaying proceedings and prejudicing defendants).

2022) (cited at Mot. at 14)—plaintiffs' counsel's other case against Google concerning its Chrome product—plaintiffs "agree[d] not to seek any further or supplemental discovery on the basis of the amendment." On that basis, the court allowed amendment. *Id*. Likewise, in *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2017 WL 3149297, at *3 (N.D. Cal. July 25, 2017) (cited at Mot. at 13–14), the court allowed the plaintiff to amend because the request occurred before the close of discovery and no new discovery was required. *Id.*

Similarly, in *Synchronoss Techs., Inc. v. Dropbox Inc.*, 2019 WL 95927, at *2–3 (N.D. Cal. Jan. 3, 2019) (cited at Mot. at 15:11-13), the court allowed the defendant to amend its answer because it sought leave right "after learning of the relevant facts to support its proposed unclean hands defense." Unlike here, the party seeking the amendment (the defendant) was *not* seeking more discovery; rather, the plaintiff as the opposing party argued it would be prejudiced because it needed to *take* more discovery. The court rejected that argument because it was both "unclear what additional discovery" plaintiff might need, and also because the information that would be sought in discovery was already in plaintiffs' possession. *Id.* Neither of those conditions exist here where Plaintiffs admit they will seek new discovery concerning Google Search, which is not in their possession. And in *Aguilar v. Boulder Brands, Inc.*, 2014 WL 4352169, at *5 (S.D. Cal. Sept. 2, 2014) (cited at Mot. at 14), where the plaintiffs sought leave to amend before the close of discovery, the court allowed amendment because the proposed changes would not affect the products at issue, observing that "the focus remains on [d]efendant's butter products." *Id.* In explaining its decision, the *Aguilar* court reasoned that "the need for new discovery can constitute sufficient prejudice to bar a motion to amend a complaint," although that was not the case there. *Id.* That is the case here.[5]

---

[5] Plaintiffs' other cases they cite for why Google will not be prejudiced if plaintiffs amend Classes 1 & 2 plainly do not apply to Class 3. For example, *McCabe v. Six Continents Hotels, Inc.*, 2013 WL 12306494, at *3 (N.D. Cal. Oct. 10, 2013) (cited at Mot. at 16) concerned a request for leave at the "early stages" of litigation where "no other case deadlines have been scheduled" apart from class certification. *Risher v. Adecco Inc.*, 2021 WL 9182421, at *1 (N.D. Cal. Sept. 17, 2021) (cited at Mot. at 14), concerned an existing subclass that plaintiffs merely sought to "recharacterize" as a 'separate class." Plaintiffs admit Class 3 is new.

1
        *Second*, in a footnote, Plaintiffs contend "Search has always been part of Plaintiffs'

2
Complaint" and their efforts to add a new class and factual theory are merely "clarifi[cations]."

3
Mot. at 21 n.2.  That misleading claim is belied by the language of the FAC Plaintiffs cite, and by

4
Plaintiffs' conduct in discovery over the last two years.  FAC paragraphs 114, 127–35, and 163–

5
68 concern Google's downstream *use* of data collected through GA for Firebase (and later

6
AdMob) to "refine" and "develop" existing products such as Google Search.[6]  Nowhere in the

7
FAC did Plaintiffs contend Google *Search* collects data in the first instance from users.  Tellingly,

8
Plaintiffs' discovery demands in this case have focused on Firebase (which includes FCM), GA

9
for Firebase, and later AdMob.  Plaintiffs never once requested a Search custodian or terms

10
focused on Google Search (*e.g.*, they requested only WAA terms + Firebase and AdMob terms;

11
never Search).  Plaintiffs cannot credibly contend that Search has "always been part of" this case.

12
Until now, they've never even mentioned it in a pleading, much less filed a motion to compel

13
production of Search-related documents.

14
        *Third*, Plaintiffs say that "Google should not be permitted to escape liability" and "the

15
interest of reaching a proper decision on the merits" means any prejudice to Google should be

16
ignored.  Mot. at 22.  This is a gambit to obtain more discovery in hopes of uncovering

17
wrongdoing somewhere else in Google's organization, based on no more substance than

18
Plaintiffs' far-fetched "secret scripts" theory that this Court dismissed as "woefully

19
underdeveloped."  Dkt. 109 at 6.  Plaintiffs' accusations about Google Search are not only

20
baseless, their theory on prejudice plainly ignores the case law.  In considering prejudice, courts

21
do not consider the *merits* of the proposed claim (which is the focus of the futility factor).  Instead,

22
courts consider whether the party opposing the motion will be *prejudiced* in light of the stage of

23
litigation, the discovery that has occurred, and whether the amendment will require discovery to

24
be reopened.  *See supra* at pp. 10–12.

25

26
_____

[6] *See, e.g.*, Dkt. 60 (FAC) ¶ 114 ("Google uses the *results*" of "the data collected from apps" "to

27
modify Google's own algorithms and technology, such as Google Search"); *id*. ¶ 127 ("Google
Search, . . . make[s] use of the data Google has obtained from the Firebase SDK transmissions at

28
issue here").

The single case Plaintiffs cite (Mot. at 22), *Pinterest, Inc. v. Pintrips, Inc.*, 2014 WL 12611300, at *1 (N.D. Cal. Aug. 26, 2014), supports Google's position. Unlike here, in *Pinterest*, the plaintiff sought to amend their complaint at an "early stage in the litigation." *Id.* And unlike here, the plaintiff's initial complaint encompassed the facts the plaintiff sought to add. Specifically, the plaintiff sought to add the "results of [a patent] application" to their complaint. *Id.* The Court reasoned that the amendment "should come as no surprise" to the defendant since the "original complaint averred that an application for registration of the mark in question was pending." *Id.* Unlike in *Pinterest*, the request here is coming at the end of fact discovery with no prior warning.

To date, Plaintiffs' discovery conduct, negotiations, and even assertions to this Court about the scope of the case provided no foreshadowing of their eleventh-hour request to add Search. *E.g.*, Dkt. 233 at 2 ("irrelevant documents about web activity" can be manually "disentangle[d]"). This Court has already adjudicated three motions to dismiss; never once did the Court hear Plaintiffs mention Search in the briefing on those motions, nor did the Court mention it in its Orders. Nothing Plaintiffs say in their Motion diminishes the prejudice to Google. Plaintiffs cannot deny that Google has litigated this case based on the allegations concerning third-party apps that use GA for Firebase and AdMob. This prejudice is alone sufficient to deny Plaintiffs' request to add Google Search to the case. *See Stambanis*, 2020 WL 4060171, at *2. The Court need go no further.[7]

---

[7] If on Reply, Plaintiffs backtrack and say they will not seek new discovery on the basis of their Google Search amendments or that discovery will somehow be limited—that will not negate the prejudice Google will suffer. Even if Plaintiffs seek no new discovery, in order to avoid prejudice in defending itself, Google, for its part, may seek additional information from Plaintiffs (and may have additional affirmative information to investigate and produce). For example, Google proceeded with Plaintiffs' depositions on the mobile app-based theory Plaintiffs advanced over two years ago; if the case is dramatically expanded to include Search, Google may need to re-open Plaintiffs' depositions to question Plaintiffs about their Search activity. Google also propounded affirmative discovery about Plaintiffs' mobile app activity, and Google would have to evaluate whether Search-focused written discovery is necessary, too. This is precisely why courts resist allowing such dramatic amendments after the close of discovery.

2.   <u>Plaintiffs' counsel have always known that Google uses anonymized Search data for product improvement purposes, but inexcusably delayed in suing over it until now.</u>

Though delay is not necessary to deny this Motion, the delay here is particularly egregious. Especially when considering the potential prejudice to Google, the Court should keep in mind that Plaintiffs' counsel could have brought their Search-related allegations into this case over two years ago, but chose not to.

A party who delays in alleging facts or claims it knew or should have known at the outset of the litigation is not entitled to the benefits of Rule 15(a)'s liberal amendment policy. *Jordan v. Los Angeles Cty.*, 669 F.2d 1311, 1324 (9th Cir.), vacated on other grounds, 459 U.S. 810 (1982) (motion to amend may be denied for lack of diligence). While there is no hard-and-fast rule regarding delay, the Ninth Circuit has found that delays as short as six months warrant denying leave to amend when coupled with prejudice as here. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809 (9th Cir. 1988); *see also, e.g.*, *AmerisourceBergen*, 465 F.3d at 953 (15 month delay); *Jackson*, 902 F.2d at 1388 (seven-month delay).

Plaintiffs have known the facts underlying their proposed allegations against Search since well before this lawsuit was filed 28 months ago. Plaintiffs' new Google Search allegation is that Google receives user Search data when users conduct an internet search on Google's Search product. Remarkably, Plaintiffs argue this is new information. That's impossible. Search is a ubiquitous product whose basic functionality is hardly secret. When a search query is entered, Google Search returns results. For Google to do so in response to a user's query, it necessarily must receive the query at its servers, process the query, and return appropriate search results based on its algorithm. While Google's Search algorithm is proprietary, the fact that Google receives a search query from a user is not.

To distract from their unreasonable and unjustifiable delay, Plaintiffs devote pages of their brief to marshaling incendiary but out-of-context quotes from Google's document productions and depositions to divert from the merits of their request. *See*, *e.g.*, Mot. at 6–9. Plaintiffs say the purportedly new "examples of Google products and services by which Google collects and saves

1    WAA-off data" means they should be allowed to amend their claims.  *Id.* at 6.   That is wrong for

2    two reasons.

3            *First*, the majority of the quotes are similar in nature and content to ones already in the

4    complaint.  Plaintiffs spend pages quoting from employees who purportedly identified WAA as a

5    confusing control.  *Id.* at 7–9.  But the operative complaint includes similar (out-of-context)

6    quotations.  *E.g.*, TAC ¶¶ 8, 9.  Indeed, Plaintiffs admit they learned much of this from public

7    filings in a now-settled action against Google brought by the Arizona Attorney General.  *Id.*

8    ¶¶ 36–38.  The quotes alleging WAA is confusing are neither new nor material to Plaintiffs'

9    Search-based theory of the case.  For that reason, Plaintiffs' cannot rely on the documents Google

10   produced and recent witness testimony to excuse their dilatory conduct.  *See AmerisourceBergen*,

11   465 F.3d at 953 ("in evaluating undue delay [courts] . . . inquire whether the moving party knew

12   or should have known the facts and theories raised by the amendment in the original pleading").

13   And, on top of all that, a large majority of the quotations Plaintiffs say is new information all

14   come from the same Google employee, Chris Ruemmler, who patiently explained during his all-

15   day deposition that Plaintiffs had grossly misread his quotations, and that some of them were

16   formulated because he had a misunderstanding about Google's internal data practices.[8]

17           *Second*, Plaintiffs' allegation that they recently learned Google's misconduct with

18   WAA-off extends beyond GA for Firebase to Search is too incredible to take seriously.  Mot. at 9–

19   10, 22.  Plaintiffs rely on documents and testimony about a "WAA-off logging" project.  Plaintiffs

20   fail to tell this Court that when they questioned David Monsees, Google's corporate designee on

21   the topic of WAA, and one of the authors of the document, he disposed of Plaintiffs' supposed

22   smoking gun in one fell swoop.  Mr. Monsees testified that the WAA-off project has nothing to do

---

[8] *See, e.g.*, Santacana Decl., Ex. 1 (Ruemmler Tr.) at 79:7–80:8 ("This was my misunderstanding that I didn't know the data was saved anonymously even with WAA off. . . . I didn't understand how the WAA off actually worked back then."); *id.* at 84:13–85:8 ("But, again, . . . that's my misinterpretation of what was going on here.  I thought the data was GAIA tied.  Right.  If you're seeing the data off of GAIA information and it's tied  to the user directly, that was my misunderstanding here"); *id.* at 115:25–116:2 ("Again, this is my misunderstanding about GAIA tied versus non-GAIA tied and collecting anonymous data versus GAIA-tied data.").

with the app measurement analytics data at issue here.  *See, e.g.*, Santacana Decl., Ex. 2 (Monsees Tr.) at 258:8–260:17.  Plaintiffs had misread a reference to "GA" in the document to mean "Google Analytics," when it actually meant "Google Apps," meaning the WAA-off logging change had no "impact" on Analytics.  *Id.*  That too cannot serve as a basis for Plaintiffs' delay in amending the complaint.

As for whether Plaintiffs' "discovery" of the WAA-off logging project can serve as a basis for amending: it cannot. The sum and substance of Plaintiffs' new case against Google Search is that "Google employee Eric Miraglia, the founder of Google's Privacy and Data Protection Office, recently confirmed at his deposition in this case that 'Google does save pseudonymous data if WAA is off,' including data relating to Google Search, and that Google uses this data for multiple purposes, including 'product improvement.'" Mot. at 2; *see also id.*, Ex. 2 (Fourth Am. Compl.) ¶ 74. And, Plaintiffs seek to allege, "[I]nternal Google documents show that Google saves information generated from users' interactions with Google-owned and operated properties (including Search) while WAA was switched off." Mot., Ex. 2, ¶ 75.

But Google tells its users just that, in those exact terms, and Plaintiffs' counsel knew or should have known that since the day they filed this case.  The Privacy Policy tells users: "We use the information we collect from all our services for the following purposes: . . . . Maintain & ***Improve Our Services***. [W]e use your information to make improvements to our services — for example, ***understanding which search terms are most frequently misspelled*** helps us improve spell-check features used across our services." Santacana Decl., Ex. 3.  A section of the Privacy Policy called "How Google retains data we collect" says "We keep some data for the life of your Google Account if it's useful for helping us understand how users interact with our features and how we can improve our services.  For example, ***after you delete a specific Google search from My Activity, we might keep information about how often you search for things***, but not what you searched for."  Santacana Decl., Ex. 4.  In a section of the Privacy Policy called "How Google anonymizes data," Google tells users "By analyzing anonymized data, we are able to build safe and valuable products and features, ***like autocompletion of an entered search query***, and better detect security threats, like phishing and malware sites, all while protecting user identities."

18

Santacana Decl., Ex. 5.  And: "For example, imagine a group of people searched for the same sensitive health topic (e.g. flu symptoms) all at the same time.  If we look at this data set, we wouldn't be able to tell who searched for the topic, thanks to k-anonymity."  *Id*.  On a help page accessible from the Privacy Policy under the "Google Search" section, in a sub-heading called "Delete searches and browing history," a Help Center page called "How Google helps you delete data from your account" tells users "if you delete a search from My Activity, an anonymized version of what you searched for may be retained to create functionality like global search trends." Santacana Decl., Ex. 7.

Finally, when a user turns off WAA, a pop-up informs them that "Even when this setting is paused, Google may temporarily use information from recent searches in order to improve the quality of the active search session." Santacana Decl., Ex. 6.

There is no credible basis for Plaintiffs' counsel to claim they did not know that Google uses anonymized Search activity data for product improvement purposes.  If that was the case they wanted to bring, they could have brought it in July 2020 with the rest of their meritless claims.

3.    The Other *Foman* Factors Including Bad Faith, Futility, and Number of Amendments Each Support Denying Plaintiff's Motion

**Bad Faith.**  Plaintiffs' Motion should be denied for the additional reason that it has been brought in bad faith.  Courts will not permit amendment where plaintiffs attempt to have the Court "entertain 'theories seriatim' which would permit them to fulfill their apparent wish of conducting open-ended discovery."  *Koch v. Koch Indus.*, 127 F.R.D. 206, 211– 12 (D. Kan. 1989); *accord Menendez-Gonzalez v. Kelly*, 2017 WL 11632799, at *5 (C.D. Cal. Mar. 22, 2017) (collecting cases).  That is precisely what Plaintiffs are doing here.

Plaintiffs' seriatim additions of new products to the complaint, starting two years ago with a Firebase "secret scripts" theory, then focusing on GA for Firebase, then adding AdMob and FCM a year ago, and now a completely different type of product is a textbook example of bad faith conduct, seeking to extend discovery endlessly.  Courts routinely deny parties leave to amend in such circumstances where they have engaged in "constant recasting of [their] claims," which "leaves the impression that [Plaintiffs are] attempting to game the court and hedge its position,

19

1    recharacterizing it when faced with resistance." *Circle Click Media LLC v. Regus Mgmt. Grp.*

2    *LLC*, 2016 WL 5869758, at *5 (N.D. Cal. Oct. 7, 2016). This is little more than an "attempt to

3    reshape the litigation shortly before the close of fact discovery," which courts find to be an

4    improper "tactic designed to prolong the case and extend fact discovery." *United Ass'n of*

5    *Journeyman & Apprentices of the Plumbing & Pipe Fitting Indus., Underground Util./Landscape*

6    *Loc. Union No. 355 v. Maniglia Landscape, Inc.*, 2019 WL 7877822, at *2 (N.D. Cal. July 22,

7    2019). This sort of "tactical shifting of positions" is "troubling" and contrary to efforts of courts

8    in this District to "eliminate . . . 'shifting sands' litigation tactics." *Circle Click*, 2016 WL

9    5869758, at *5.

10         Plaintiffs' attempts here are particularly galling because their new theory comes on the

11   heels of confirming through deposition testimony what Google has been telling them all along: the

12   WAA button does work. When WAA is turned off, data sent to Google via GA for Firebase data

13   isn't saved to a user's account and it isn't used to personalize ads or build marketing profiles.

14   Plaintiffs have wasted two years trying to disprove that. If they had succeeded, they'd no doubt

15   tell the Court as much, and they'd dispute this statement. But they can't. There isn't a shred of

16   evidence that Google personalizes ads or builds marketing profiles with WAA-off Firebase data.

17   Instead, the best Plaintiffs can offer is (out of context) self-critical quotations from Google

18   employees about whether WAA is well named and a complaint that Google should not be able to

19   study Search trends using WAA-off data, even when it's anonymized. That's a far cry from the

20   promises Plaintiffs made in their original Complaint that "[t]his case is about Google's illegal

21   interception of consumers' private activity on consumer mobile applications ('apps')—a huge and

22   growing treasure trove of data that Google amasses by the second to sustain profits in its ever-

23   growing share of the market for consumer advertising." Compl. ¶ 2. Whatever this case was

24   supposed to be about, as of now, it's not that.

25         Nor is this case about the Firebase "secret scripts" theory Plaintiffs fought so hard to keep,

26   only to abandon once the Court ruled they would have to allege the secret scripts with more than a

27   mere guess in the form of a factual allegation.

28

GOOGLE'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT
CASE NO. 3:20-CV-04688-RS

1   This Court should consider the bad faith factor in light of the history of this case and the

2   dramatic gulf between what Plaintiffs promised they'd prove and what they are now trying to

3   litigate. The Court (and Google) should not have to be wrenched from one wild guess to another

4   as Plaintiffs iterate, refine, abandon, and restate case theory after case theory.  And the bad faith

5   case law cited above says just that.

6       **Futility.**  Plaintiffs' Search-related amendments are also futile.  Courts will deny leave to

7   amend where the claim as amended is not actionable. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,

8   522 F.3d 1049, 1054 (9th Cir. 2008).  Futility is found when the amendments do not adequately

9   plead a cause of action and could not survive a pleadings challenge or judgment on the merits.

10  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 537 (9th Cir. 1989.  Futility also "includes

11  the inevitability of a claim's defeat on summary judgment."   *California v. Neville Chem. Co.*, 358

12  F.3d 661, 673 (9th Cir. 2004).

13      Here, Plaintiffs' amendment would be subject to both a new pleadings challenge and a host

14  of affirmative defenses.  For example, because Google Search is a first-party product, users'

15  decisions to interact with Search is covered by Google's Terms of Service and Privacy Policy.

16  *See supra* at pp. 18–19.   Plaintiffs consent to those terms when they use Search, and the

17  disclosures explicitly discuss Google's use of Search data, including explaining the type of

18  activity that's collected (e.g., "terms you search").  *See, e.g.*, Santacana Decl., Exs. 3 & 8.   If

19  Plaintiffs obtain leave to add Search, Google will of course bring a pleadings challenge on the

20  merits of the claim. If history is a guide, Plaintiffs will no doubt try over and over again to find a

21  way to get their allegations through.

22      **Number of Amendments.**  Finally, Plaintiffs have amended their complaint three times

23  over the two-plus-year pendency of this case.  This would be their fourth attempt.  While Rule 15

24  calls for a liberal pleading standard, courts often apply Rule 16 when a complaint has been

25  amended this many times.  Indeed, courts have particularly wide latitude to deny requests to

26

27

28

amend where there have already been multiple amendments.  *See, e.g.*, *Sisseton-Wahpeton Sioux Tribe*, 90 F.3d at 355.  This Court can exercise that latitude.[9]

## V.    **CONCLUSION**

For the foregoing reasons, Google respectfully requests that the Court deny Plaintiff's Motion for Leave and reject their request to file their fourth amended complaint.


Dated: November 14, 2022                    Respectfully submitted,

                                            **WILLKIE FARR & GALLAGHER LLP**


                                            By:    */s/ Eduardo E. Santacana*
                                                   Eduardo E. Santacana

---

[9] While Google does not dispute that the Scheduling Order indicates that Rule 15 applies to pleading amendments, (Dkt. 59 at 1), the standard set forth in Rule 16 for pleadings after the initial deadline to amend and the surrounding case law offer important guidance on the diligence and good faith necessary to amend pleadings after a certain point in litigation.  Rule 16 sets a high bar for amendments.  *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999).  The touchstone of the "good cause" analysis under Federal Rule of Civil Procedure 16(b) is the "diligence of the party seeking the amendment."  *Id.* at 607.  Here, as described above, Plaintiffs have not acted diligently in pursuing the amendments because they cannot credibly claim they had no idea Google receives their Search data with WAA off.  *See supra* at pp. 16–19.  Plaintiffs may also be using this Motion for the ancillary (and improper) benefit of an insurance policy against an unfavorable ruling on their Motion for Relief from the Case Schedule.  Dkt. 265.  That too is a basis for viewing this request with strict scrutiny.

22