Redacted Version of Plaintiffs' Reply ISO Motion for Leave to Amend Complaint

FILED UNDER SEAL

**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
Erika Nyborg-Burch, CA Bar No. 342125
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com
enyborg-burch@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 629-9040
alanderson@bsfllp.com

*Attorneys for Plaintiffs*

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br>vs.<br><br>GOOGLE LLC,<br>　　　　　Defendant. | Case No.:  3:20-cv-04688<br><br>**REPLY ISO PLAINTIFFS' RULE 15(a) MOTION FOR LEAVE TO AMEND COMPLAINT (DKT. 258)**<br><br>The Honorable Richard Seeborg<br>Courtroom 3 – 17th Floor<br>Date: December 8, 2022<br>Time: 1:30 P.M. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

    I.    Rule 15's Liberal Amendment Standard Applies ............................................ 3

    II.    Plaintiffs' Amendments Relating to Classes 1 and 2 Are Proper ................... 4

    III.    Plaintiffs' Additional Class 3 Is Proper ......................................................... 7

        A.    Prejudice .............................................................................................. 7

        B.    Undue Delay ....................................................................................... 11

        C.    Bad Faith ............................................................................................ 13

        D.    Futility ................................................................................................ 15

CONCLUSION ..................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bowen v. Target Corp.*,
2019 WL 9240985 (C.D. Cal. Nov. 12, 2019) ........................................................................11

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ................................................................................................6

*Brown v. Google LLC*,
2022 WL 2289057 (N.D. Cal. Mar. 18, 2022) .........................................................................5

*Callan v. Amdahl Corp.*,
1995 WL 261420 (N.D. Cal. Apr. 24, 1995) ...........................................................................9

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
2016 WL 5869758 (N.D. Cal. Oct. 7, 2016) ..............................................................8, 9, 13, 14

*Crawford v. Uber Techs., Inc.*,
2021 WL 4846893 (N.D. Cal. Oct. 18, 2021) (Seeborg, J.) .......................................................11

*Dep't of Fair Emp. & Hous. v. L. Sch. Admission Council, Inc.*,
2013 WL 485830 (N.D. Cal. Feb. 6, 2013) .........................................................................2, 9

*Hightower v. City & Cnty. of San Francisco*,
2015 WL 926541 (N.D. Cal. Mar. 3, 2015) ...........................................................................9

*Howey v. United States*,
481 F.2d 1187 (9th Cir. 1973) ..............................................................................................10

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ................................................................................................14

*Jackson v. Bank of Hawaii*,
902 F.2d 1385 (9th Cir. 1990) ..............................................................................................9

*Jackson v. Laureate, Inc.*,
186 F.R.D. 605 (E.D. Cal. 1999) ...........................................................................................3

*Jordan v. Los Angeles Cnty.*,
669 F.2d 1311 (9th Cir. 1982) ..............................................................................................11

*Koch v. Koch Indus.*,
127 F.R.D. 206 (D. Kan. 1989) .....................................................................................8, 9, 14

*LaSalvia v. United Dairymen of Arizona*,
804 F.2d 1113 (9th Cir. 1986) ..............................................................................................8

ii

*Lockheed Martin Corp. v. Network Sols., Inc.*,
   194 F.3d 980 (9th Cir. 1999) ................................................................................. 9

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) .............................................................................. 7

*Lyon v. U.S. Immigr. & Customs Enf't*,
   308 F.R.D. 203 (N.D. Cal. 2015) ....................................................................... 8, 10

*Malaney v. UAL Corp.*,
   2011 WL 13153253 (N.D. Cal. Oct. 24, 2011) (Seeborg, J.) ................................. 15

*McCabe v. Six Continents Hotels, Inc.*,
   2013 WL 12306494 (N.D. Cal. Oct. 10, 2013) ........................................................ 5

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988) ................................................................................ 11

*Menendez-Gonzalez v. Kelly*,
   2017 WL 11632799 (C.D. Cal. Mar. 22, 2017) ..................................................... 14

*Muench Photography, Inc. v. Pearson Educ., Inc.*,
   2013 WL 4426493 (N.D. Cal. Aug. 15, 2013) ......................................................... 9

*Nunes v. Ashcroft*,
   348 F.3d 815 (9th Cir. 2003) .................................................................................. 6

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
   2017 WL 3149297 (N.D. Cal. July 25, 2017) ....................................................... 7, 8

*Sisseton-Wahpeton Sioux Tribe of Lake Traverse Indian Rsrv., N. Dakota & S. Dakota v. United States*,
   90 F.3d 351 (9th Cir. 1996) .................................................................................... 3

*Solomon v. N. Am. Life & Cas. Ins. Co.*,
   151 F.3d 1132 (9th Cir. 1998) ................................................................................ 9

*Stambanis v. Tbwa Worldwide, Inc.*,
   2020 WL 4060171 (C.D. Cal. July 20, 2020) .......................................................... 9

*United Ass'n of Journeyman & Apprentices of the Plumbing & Pipe Fitting Industries, Underground Util./Landscape Loc. Union No. 355 v. Maniglia Landscape, Inc.*,
   2019 WL 7877822 (N.D. Cal. July 22, 2019) (Seeborg, J.) ................................... 14

*Wheeler v. Estee Lauder Companies, Inc.*,
   2013 WL 12121543 (C.D. Cal. Feb. 12, 2013) ........................................................ 6

*Wizards of the Coast LLC v. Cryptozoic Ent. LLC*,
   309 F.R.D. 645 (W.D. Wash. 2015) .................................................................. 7, 8, 13

iii

*Zivkovic v. S. California Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002) ................................................................................... 9

**Rules**

Fed. R. Civ. P. 15(a)(2) ................................................................................................. 3, 7

Fed. R. Civ. P. 16 ............................................................................................................ 3

REPLY ISO PLAINTIFFS' RULE 15(a) MOTION FOR LEAVE TO AMEND COMPLAINT
CASE NO. 3:20-CV-04688

**INTRODUCTION**

Google's opposition largely ignores the many Google admissions cited and quoted in Plaintiffs' amended complaint, which support every aspect of Plaintiffs' proposed amendment. This case is about Google's broken WAA control. Internally, Google employees admit that WAA is a ███████████ control that gives ██████████████████████ ██████████████████████████████ Mot. Ex. 4 at -46, Mot. Ex. 11 at -10. The proposed amendment cites and quotes numerous Google admissions establishing that ████████████████, not only with respect to the full scope of Classes 1 and 2 but also Class 3 (Google Search).

Google also disregards how these three classes overlap. All three classes are limited to people who turned off WAA or supplemental WAA (sWAA). Google has admitted that ████████ active Google accounts in the United States turned off" either WAA or supplemental sWAA during the class period. Reply Ex.[1] 34 at 5-6. Those are the people Plaintiffs seek to represent in this action, where Google nonetheless collected and saved their data when they visited non-Google apps (Classes 1 and 2) and used Google Search (Class 3). It is both inefficient and unnecessary to carve out Class 3 for some separate action.

With this amendment, Plaintiffs are not taking "shots in the dark." Google's Opposition, Dkt. 268 ("Opp'n") at 1. ████████████████████ *E.g.*, Mot. Ex. 7 at -81. That includes Class 3, but Google employees have admitted that Google continues to save Search data even when WAA is off, and not just to return Search results. In a document Google produced just over a week ago (which Google previously improperly withheld as privileged), ███████████████████ ████████████████████████████████████████████████████████ ██████████ Reply Ex. 35 at 45-46. And just today, Google produced a document from its ████████████ program where an employee described Google's WAA disclosures as ████████

---

[1] "Reply Ex." refers to the exhibits attached to the November 21, 2022 Declaration of Mark Mao, concurrently filed with this Reply. "Mot. Ex." refers to the exhibits attached to the October 28, 2022 Declaration of Mark Mao, filed with Plaintiffs' opening brief in support of their motion for leave to amend (Dkt. 257-5).

1    ████████████████████████████ Reply Ex. 39 at -80. This evidence supports each and

2    every aspect of Plaintiffs' proposed amendment.

3    ████████████████████████████ Google repeatedly presented WAA as the

4    master switch people could use to control Google's data vacuum. This was not just with Google's

5    WAA disclosures. For example, Google CEO Sundar Pichai testified to Congress that, within "My

6    Account" users can "clearly see what information we have" and "we give clear toggles by category

7    where they can decide whether that information is collected, stored."[2] The supposedly "clear

8    toggle" Mr. Pichai was referring to could only be WAA.

9    ████████████████████████████

10   ████████████████████████████

11   ████████████████████████████

12   ████████████████████████████

13   ████████████████████████████

14   83:13-23. Google seeks to paint Plaintiffs as somehow "unhappy with their chances of succeeding

15   on the merits" (Opp'n at 1), but the truth is that the evidence in this case fully supports all of their

16   legal theories and allegations, including with Class 3.

17       With this motion, for the same set of people who turned WAA off, Plaintiffs seek to

18   conform their class definitions to the evidence that Google has produced in discovery. Plaintiffs

19   are not seeking to "recast" their claims. Opp'n at 1. These are the same three claims based on the

20   same WAA disclosures. The only change is with respect to the Google conduct at issue, for the

21   people who turned WAA off, because discovery has proved that Google saved and used more

22   WAA-off data than it previously let on. Google's Opposition brief offers lots of rhetoric and big

23   words—and yet another bad faith accusation—but where Google is silent is most telling. Google

24

25   [2] Sundar Pichai, December 11, 2018 Testimony before the House Judiciary Committee at 45:50,
26   www.youtube.com/watch?v=WfbTbPEEJxI; *see also id.* 2:11:05 ("we give you the choice of
     whether you want to store the data or not"); *id.* 3:33:31 ("We are pretty explicit about data which
27   we collect and give you protections for you to turn them on or off").

28                                              2

1  does not deny that it collects, saves, and uses (s)WAA-off data generated by way of additional

2  Google products, including Google-owned and -operated products like Search.

3      All *Foman* factors squarely cut in favor of granting the Motion. Google admits it has no

4  objections to the amendments to Classes 1 and 2 (focused on non-Google apps), save for one gripe

5  that should be easily dismissed. Google focuses on Class 3, relating to Google Search. Google's

6  arguments are meritless. The limited additional discovery Plaintiffs would seek regarding Search

7  provides no basis to deny this motion, and there was no undue delay or bad faith in seeking this

8  reasonable amendment.  Courts permit amendments where plaintiffs are merely seeking to expand

9  their class definitions to account for new facts because "the purpose of the litigation process is to

10  vindicate meritorious claims." *Dep't of Fair Emp. & Hous. v. L. Sch. Admission Council, Inc.*,

11  2013 WL 485830, at *3 (N.D. Cal. Feb. 6, 2013). That is exactly what Plaintiffs seek here: to

12  vindicate meritorious claims for people who turned WAA off, including with Class 3.

13                                    **ARGUMENT**

14  **I.    Rule 15's Liberal Amendment Standard Applies.**

15      Google agrees that this Motion is governed by Rule 15, which requires courts to "freely

16  give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see* Opp'n at 22 n.9. But

17  in a footnote near the end of its brief, Google vaguely suggests that "the standard set forth in Rule

18  16 . . . offer[s] importance guidance." Opp'n at 22 n.9. Google cites just one case to support this

19  confusing proposition, and that case is entirely inapposite. In that case, an "Order was entered . . .

20  that prohibits amending the pleadings absent a showing of 'good cause.'" *Jackson v. Laureate,*

21  *Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999). By contrast, the Case Management Order here provides

22  that "any amendment of the pleadings shall be governed by Rule 15." Dkt. 59 at 1. This Court

23  should also disregard Google's suggestion that "courts often apply Rule 16" when there have been

24  prior amendments. Opp'n at 21. The sole case Google cites in support *applied Rule 15* without

25  even mentioning Rule 16. *Sisseton-Wahpeton Sioux Tribe of Lake Traverse Indian Rsrv., N.*

26  *Dakota & S. Dakota v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Google's passing allusion

27  to Rule 16 is entirely misplaced. Relatedly, this Court should disregard Google's suggestion that

28                                          3

1    "strict scrutiny" applies (whatever that means in this context) because Plaintiffs filed a motion to

2    extend the case schedule. As Plaintiffs clarified in that motion, the amended complaint "in no way

3    impacts the relief requested in this [extension] motion," particularly because "the discovery

4    Plaintiffs currently seek is responsive to discovery requests and deposition notices served months

5    ago, and Plaintiffs are entitled to an extension" regardless of this motion's result. Dkt. 255 at 15.

6    **II.     Plaintiffs' Amendments Relating to Classes 1 and 2 Are Proper.**

7    Plaintiffs' proposed Fourth Amended Complaint includes allegations about additional

8    software (aside from Google's Firebase SDK) through which Google collects, saves, and uses data

9    generated from (s)WAA-off users' interactions with non-Google apps. *E.g.*, FAC (Dkt. 257-7)

10   ¶¶ 4, 8-9, 59-71. "This additional Google tracking and advertising code includes without limitation

11   ████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████  FAC ¶ 4.

14   Google has no objection to including these additional Google tracking and advertising code

15   used with non-Google apps. *See* Opp'n at 9 ("Google does not oppose most of Plaintiffs' proposed

16   amendments to factual allegations concerning Classes 1 and 2"). The "**only**" amendment to Classes

17   1 and 2 that Google opposes is the insertion of 'including' in the . . . class definitions." *Id.*

18   Class 1 – All individuals who during the Class Period (a) turned off "Web & App Activity,"
     or supplemental "Web & App Activity" and (b) whose mobile app activity (including

19   "webviews") was still transmitted to Google, from (c) a mobile device running the Android
     operating system (OS), because of Google tracking or advertising code, including Firebase

20   SDK and AdMob SDKs scripts, on a non-Google branded mobile app.

21   FAC ¶ 257 (highlighting signifies Google's objection).[3] Because there is nothing improper about

22   Plaintiffs' proposed definitions, the Court should overrule Google's sole objection.

23   _____

24   [3] Plaintiffs wish to bring to the Court's attention a typo from their motion to amend brief, which
     Plaintiffs found while preparing this Reply brief. The phrase "including webviews" was
     inadvertently omitted from the class definitions copied into the brief. Mot. at 3, 11. That phrase

25   was included in the revised class definitions in the amended complaint that Plaintiffs filed. FAC ¶
     257. That revision is also correctly reflected in the redlined complaint that Plaintiffs filed. Mot.

26   Ex. 2 (Dkt. 257-9). "Webviews" are also addressed in detail throughout the proposed complaint.

27   FAC ¶¶ 4, 8, 68-69, 95. Plaintiffs also identified "webviews" in their brief as one additional Google

28   4

1    Plaintiffs' amendments are entirely proper because the class definitions remain focused

2  "on the same alleged unlawful practice"—namely, Google's collection, saving, and use of

3  (s)WAA-off data generated from users' visits to non-Google apps that use Google services.

4  *McCabe v. Six Continents Hotels, Inc.*, 2013 WL 12306494 (N.D. Cal. Oct. 10, 2013). Google

5  tellingly ignores *McCabe*'s application to Classes 1 and 2. Opp'n at 13 n.5 (addressing Plaintiffs'

6  reliance on *McCabe* but only as applied to Class 3).

7    *Brown v. Google LLC*, 2022 WL 2289057, at *1 (N.D. Cal. Mar. 18, 2022), is squarely on

8  point. Like here, the plaintiffs sought leave "to change their class definitions to cover additional

9  Google products and services" based on evidence produced in discovery. *Id*. Also like here, the

10  revised definitions were open-ended, applying to users who visited a non-Google website

11  "containing Google tracking or advertising code" and without limitation to specific examples of

12  such code. *Brown*, No. 4:20-cv-03664, Dkt. 395-2 ¶ 192. Google did not object to the open-ended

13  nature of the definitions, and the Court permitted the amendment. Here, Google does not even

14  address this aspect of the *Brown* decision. As in *Brown*, Plaintiffs reasonably seek to amend their

15  class definitions to encompass all relevant Google "tracking or advertising code," which for

16  Classes 1 and 2 is limited to Google code embedded within non-Google apps.

17    Google suggests that "it is unclear what code in particular is affected by Plaintiffs' claims"

18  (Opp'n at 9), but the proposed Complaint includes detailed allegations of specific tracking and

19  advertising code uncovered through discovery. FAC ¶¶ 4, 59-71 (identifying and describing in

20  detail ████████████████████████████████████████████████████

21  ██████████████████████████████████████████████████████████

22  ██████████████████████████████████████████████████████████

23  █████████████████████████ Google does not deny that it collects and saves (s)WAA-off data

24

25

26    ───────────────────────────
      tracking and advertising code being added to the Complaint. *See* Mot. at 2. Although Plaintiffs do
27  not expect Google to change its position on Classes 1 and 2, Plaintiffs brought this typo to Google's
      attention. Google has not yet responded.

28                                                      5

1    through these technologies, and it did not object to Plaintiffs adding these technologies to the

2    Complaint. There is nothing "speculative" about these facts. Opp'n at 9.

3        Rather than re-list in the class definition every specific Google code identified in the

4    proposed Complaint, and because discovery is ongoing, Plaintiffs used "including" in these class

5    definitions. Google is still producing documents, fact depositions are not yet complete, Plaintiffs

6    have not yet obtained access to key logs and data, and no expert reports have been served. If history

7    is any indication, Plaintiffs may uncover additional examples of tracking and advertising code by

8    which Google collects and saves (s)WAA-off data generated from users' interactions with non-

9    Google apps. The parties can address any additional products in their expert reports. Based on

10   expert discovery, Plaintiffs can also add more specificity when they move for class certification.

11   Until then, Google's feigned concern about "bind[ing] all future litigants" is premature. Opp'n at

12   10. Google's reliance on class certification cases proves the point.[4] Google should make these

13   arguments within its opposition to class certification based on the actual (and potentially narrower)

14   class definitions that Plaintiffs propose. In the meantime, there can be no prejudice to Google

15   because Plaintiffs are not seeking to serve new discovery relating to Classes 1 and 2.

16       Limiting this case to specific tracking code, before expert discovery and class certification,

17   is also inefficient. If this case is certified as a class action, it can and should include any and all

18   Google tracking and advertising code by which Google saves and uses (s)WAA-off data from

19   users' interactions with non-Google apps, in this one action. Plaintiffs' claims as applied to each

20   Google service will rise or fall together. This Court has already held that "Google, through the

21   WAA Materials, set an expectation that it would not save plaintiffs' 'activity on . . . ***apps . . . that***

22   ***use Google services'*** unless plaintiffs turned WAA 'on.'" Dkt. 109 at 16. Google defines "Google

23   services" to include any "[p]roduct[] that [is] integrated into third party apps[.]" *Id.* at 8.

24

---

25   [4] *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4. (9th Cir. 2017); *Wheeler v. Estee
     Lauder Companies, Inc.*, 2013 WL 12121543, at *4 (C.D. Cal. Feb. 12, 2013). Google's only other
26   case is even further afield. It had nothing to do with class actions. *See Nunes v. Ashcroft*, 348 F.3d
     815, 816 (9th Cir. 2003). That case addressed an immigration appeal, where the court applied *res
27   judicata* to deny as futile a defendant's request to amend his habeas petition.

28

1    Plaintiffs' amended definitions are also unlikely to add any new class members. Internal

2  Google documents show that ███████████████████████████████████████. Reply

3  Ex. 36 at -729. Accordingly, the (s)WAA-off users whose data was tracked through GA for

4  Firebase are largely or entirely the same (s)WAA-off users whose data was tracked through other

5  Google tracking and advertising code. On behalf of the same users, Plaintiffs reasonably seek to

6  hold Google accountable for the full scope of its improper collection. Striking "including" would

7  artificially cap Google's liability before discovery has ended, and potentially force those same

8  class members to raise those claims in a separate action.

9    If the Court is inclined to grant Google's request to strike "including" on the ground that a

10 class definition cannot be open-ended, Plaintiffs respectfully ask the Court to clarify that the

11 definitions still include the specific Google tracking and advertising code identified and described

12 in the proposed Complaint. FAC ¶¶ 4, 8, 59-71. Alternatively, Plaintiffs respectfully seek leave to

13 amend the class definitions with all Google tracking and advertising code after discovery is

14 complete. The Ninth Circuit has "repeatedly stressed that the court must remain guided by the

15 underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings

16 or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Google did not object to

17 the Complaint's inclusion of additional tracking and advertising code, and Plaintiffs do not

18 understand Google to be seeking to exclude these already-identified Google tracking and

19 advertising code. In any event, Plaintiffs respectfully seek this clarification. To effectively jettison

20 these additions by striking "including" would facilitate a decision on technicalities.

21 **III.    Plaintiffs' Additional Class 3 Is Proper.**

22    **A.    Prejudice**

23    Google falls far short of its burden to establish "substantial prejudice." *Wizards of the Coast*

24 *LLC v. Cryptozoic Ent. LLC*, 309 F.R.D. 645, 653 (W.D. Wash. 2015). Google's only argument is

25 that it will suffer prejudice because Plaintiffs seek additional discovery relating to Search. But

26 "[n]either delay resulting from the proposed amendment nor the prospect of additional discovery

27

28                                              7

1  needed by the non-moving party in itself constitutes a sufficient showing of prejudice." *Oracle*

2  *Am., Inc. v. Hewlett Packard Enter. Co.*, 2017 WL 3149297, at *3 (N.D. Cal. July 25, 2017).

3  Google tries to minimize *Oracle*'s lesson by mischaracterizing the facts. It is simply untrue

4  that the plaintiff sought "no new discovery." Opp'n at 13. The *Oracle* opinion makes clear that the

5  plaintiff was seeking new discovery based on the amendment, and the court held the plaintiff was

6  entitled to it. *See, e.g.*, *id.* at *3 (noting that "Oracle's proposed amendments . . . expand[] the

7  scope of discovery"). *Oracle* also rejects Google's argument that it will suffer prejudice merely

8  because it has already (supposedly) worked hard in discovery. Opp'n at 11. Plaintiffs are not

9  seeking "to leave all of that [alleged] hard work behind." *Id.* As in *Oracle*, "the expansion of

10  discovery based on what has already been revealed, however, will not render the prior discovery

11  or motion practice irrelevant. [Plaintiffs'] main claims and legal theories remain the same,"

12  focused on the same WAA disclosures, for people who turned (s)WAA off. Moreover, the "Ninth

13  Circuit has affirmed the grant of leave to supplement [a complaint] even where it required

14  reopening discovery." *Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203, 215 (N.D. Cal.

15  2015) (citing *LaSalvia v. United Dairymen of Arizona*, 804 F.2d 1113, 1119 (9th Cir. 1986)).

16  "To justify denying leave to amend, the prejudice to the non-moving party must be

17  'substantial.'" *Wizards*, 309 F.R.D. at 652. Google "must do more than merely assert prejudice; it

18  must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or

19  evidence which it would have offered had the amendments been timely." *Id.* (cleaned up). Cases

20  that Google cites underscore the point. "Any amendment invariably causes some 'practical

21  prejudice,' but leave to amend is not denied unless the amendment would work an injustice to the

22  defendants." *Koch v. Koch Indus.*, 127 F.R.D. 206, 209-10 (D. Kan. 1989). The question is whether

23  the amendment causes "undue prejudice," *id.*, such as costs that "that could have easily been

24  avoided had [Plaintiff] pursued its [new] theory in its original complaint," *Circle Click Media LLC*

25  *v. Regus Mgmt. Grp. LLC*, 2016 WL 5869758, at *4 (N.D. Cal. Oct. 7, 2016).

26  Google does not claim that it has been "unfairly disadvantaged or deprived of the

27  opportunity to present facts or evidence." *Wizards*, 309 F.R.D. at 652. Nor could Google. Any

28

8

1    evidence is entirely within Google's corner. Plaintiffs also informed Google that they will "not

2    oppose reasonable discovery requests relating to matters that are newly addressed in the Fourth

3    Amended Complaint." Dkt. 258-1 ¶ 38. Nor will Plaintiffs oppose giving Google the time it needs

4    to undertake any additional investigations and productions. This is also not a case where

5    amendment will "work an injustice" on the non-moving party, *Koch*, 127 F.R.D. at 209-10, such

6    as imposing costs "that could have been easily avoided," *Circle Click*, 2016 WL 5869758, at *4.

7    Plaintiffs' Search allegations are based on information Plaintiffs uncovered in discovery, from

8    Google, and only recently. *See infra* Section III.B.

9        Google claims that courts deny leave to amend even where "plaintiffs complain they could

10    not file a proposed amended complaint until they had received certain discovery from defendants."

11    Opp'n at 12 (quoting *Callan v. Amdahl Corp.*, 1995 WL 261420, at *5 (N.D. Cal. Apr. 24, 1995)).

12    *Callan* is the only case that Google cites for this proposition, and Google omits the punch line:

13    "While plaintiff complains he could not file his proposed amended complaint until he had received

14    certain discovery from defendants, ***the record suggests otherwise***." *Callan*, 1995 WL 261420, at

15    *5 (emphasis showing what Google omitted); *see also id.* (plaintiff already "had in his possession

16    many of the key documents upon which he relies"). The remaining cases that Google cites are each

17    distinguishable because, in all of them, the plaintiffs were seeking to add new claims based on old

18    information.[5] Here, Plaintiffs are not seeking to add new claims and are simply conforming the

19    pleadings to new facts uncovered through discovery.

_____

20    [5] *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (plaintiffs could "cite no

21    facts or theories gleaned from the additional discovery period" to support their motion for leave to
      amend); *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming

22    denial of leave to amend where the plaintiff sought to add a new claim but did not allege the
      elements); *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999)

23    ("Nothing in the proposed amended complaint relied on facts that were unavailable before the

24    stipulated deadline."); *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002)
      (denying proposed amendment that came "three months before trial was to commence"); 

25    *Stambanis v. Tbwa Worldwide, Inc.*, 2020 WL 4060171, at *2 (C.D. Cal. July 20, 2020)  ("[S]he
      had sufficient information to have filed her proposed claims earlier without the recently discovered

26    factual allegations."); *Hightower v. City & Cnty. of San Francisco*, 2015 WL 926541, at *2 (N.D.

27    Cal. Mar. 3, 2015) ("Plaintiffs' proffered amendment largely pleads facts that . . . could have been

28                                                      9

1    Google cites just one case where (like here) the plaintiffs were merely seeking to amend

2    their class definitions without adding new claims. *See Dep't of Fair Emp. & Hous. v. L. Sch.*

3    *Admission Council, Inc.*, 2013 WL 485830, at *3 (N.D. Cal. Feb. 6, 2013); Opp'n at 10-11. The

4    court permitted the amendment, explaining that "the purpose of the litigation process is to vindicate

5    meritorious claims." *Id.* (citing *Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973)).

6    Google should not get to evade liability for the full scope of its misconduct merely because Google

7    (until recently) successfully concealed some of that misconduct.

8    Finally, Google has no response to Plaintiffs' argument that, although they could file a new

9    case covering Class 3, "this action is the proper forum to litigate Google's misconduct with respect

10   to WAA-off Search data," particularly because "[t]here has already been substantial discovery on

11   the WAA disclosures and users' failure to understand them and the parties have been through

12   several rounds of dispositive motions addressing those disclosures, not to mention significant

13   discovery motions." Mot. at 23. Plaintiffs are not seeking to redo any of that.

14   Any further discovery for purposes of Class 3 will be limited. Plaintiffs do not wish to

15   serve any additional interrogatories or requests for admission. Plaintiffs anticipate seeking only 2-

16   4 additional document custodians (with specific search terms and production tied to Search), 2-4

17   additional depositions focused on these Search-related issues (including additional 30(b)(6)

18   testimony), a log and data production that can be combined with the other two classes (which has

19   not yet begun), and targeted damages-focused discovery.

20   *Lyon*, 308 F.R.D. at 215, is instructive. An already-certified class of immigration detainees

21   moved to amend their complaint to include detainees at a recently opened facility. The court

22   granted the motion to amend, including because "requiring Plaintiffs to bring a second suit on

23   behalf of detainees at the Bakersfield facility would force them to duplicate several depositions

24   already taken for this suit," and amendment was necessary to "award complete relief in one

---

added during any of the prior amendments this Court permitted"); *Muench Photography, Inc. v. Pearson Educ., Inc.*, 2013 WL 4426493, at *3 (N.D. Cal. Aug. 15, 2013) (denying motion for leave to add two new claims where the court concluded that the plaintiff unduly delayed).

10

1   action." *Id.* (cleaned up). Here, if Plaintiffs were required to file a new case, both parties would

2   likewise be exposed to duplicative efforts, and the class could not receive "complete relief in one

3   action." But Plaintiffs will file a separate case if the Court prefers that route.

### B.    Undue Delay

5   There has been no undue delay, as the amendments are based on information Google

6   produced relatively recently in discovery. Mot. at 17-18. Google does not address Plaintiffs'

7   argument that discovery had barely begun when Plaintiffs last amended their Complaint. *Id.*

8   Google also ignores the cases Plaintiffs cited which show that leave to amend is warranted where,

9   as here, the amendment is triggered by information learned through discovery. Mot. at 18-19

10  (citing *Bowen v. Target Corp.*, 2019 WL 9240985, at *3 (C.D. Cal. Nov. 12, 2019); *Crawford v.

11  Uber Techs., Inc.*, 2021 WL 4846893 (N.D. Cal. Oct. 18, 2021) (Seeborg, J.)).

12  Rather than address Plaintiffs' timeline and case law, Google relies on inapposite cases

13  where courts denied leave to add new claims based on facts previously available. Opp'n at 16;

14  *Jordan v. Los Angeles Cnty.*, 669 F.2d 1311, 1324 (9th Cir. 1982) ("Jordan's attorneys have

15  proffered no satisfactory reasons for failing to include the equal protection causes of action in the

16  original complaint."); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809 (9th Cir. 1988)

17  ("Appellants should have been aware of a claim for negligent interference when they filed their

18  original complaint, which included a claim for tortious interference."). Here, Plaintiffs are not

19  seeking to add new claims, let alone claims based on facts available all along. Plaintiffs merely

20  seek to include new facts adduced through discovery that support their existing claims.[6]

21  Next, Google incredulously suggests that "Plaintiffs have known the facts underlying their

22  proposed allegations against Search since well before this lawsuit." Opp'n at 16. For support,

23  Google relies on (1) Google disclosures, and (2) a pronouncement that Search "is a ubiquitous

24

25

26  [6] *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) is even

27  further afield. That case concerned a request to amend a reply to a counterclaim where the moving
    party wanted to backtrack from a prior admission. *Id.*

28

---

11

1    product whose basic functionality is hardly secret." Opp'n at 17-19. Neither comes close to

2    shouldering the weight of Google's assertion that "everybody knew."

3         As for the disclosures that Google cites (Opp'n at 18-19), three do not even mention WAA.

4    Opp'n Exs. 4, 5, 7. The Google Privacy Policy (Opp'n Ex. 3) does mention WAA, but Google

5    cites a different portion, likely because the Privacy Policy nowhere discloses that Google saves

6    and uses WAA-off data (for any product—not just Search). Exhibit 6—the only Google disclosure

7    focused on WAA—supports Plaintiffs. That Google disclosure tells users that when WAA is off,

8    "Google may _temporarily use information_ from recent searches in order to improve the quality _of_

9    _the active search session_." Exhibit 6 fails to inform users that Google will also save and use that

10   WAA-off data long after the duration of the "active search session." Google has not identified a

11   single disclosure that provides this information.

12        Google's second argument (about the "basic functionality" of Search) is already accounted

13   for with the proposed class definition. Class 3 concerns Google saving and using WAA-off Search

14   data "for any _purpose other than returning the requested search results page_." FAC ¶ 257. That

15   Google "must receive the query" to "return appropriate search results" (Opp'n at 16) is irrelevant.

16   Plaintiffs had no way of knowing that Google also subsequently saves and uses WAA-off Search

17   data for _other_ purposes, including to improve Google products.

18        Key admissions by employees also undermine Google's argument that everybody knew.

19   For example, on July 14, 2020, the day Plaintiffs filed this lawsuit, Google employee JK Kearns

20   wrote: ███████████████████████████████████████████

21   ███████████████████████████████████████████████

22   ███████████████████████████████████████████████

23   ██████████████████████████████████████  In Google's

24   own words, Mr. Kearns "is a PM for Google Search, . . . and to the extent he has commented on

25   WAA_, those comments concerned its interaction with Google Search_." Dkt. 256 at 5.

26        Google ignores almost all of the internal documents that Plaintiffs cited throughout the

27   Motion. _See_ Mot. at 6-9. The only document that Google grapples with (which Google

12

1    characterizes as "Plaintiffs' supposed smoking gun") shows why amendment is warranted. Opp'n

2    at 17-18 (citing Opp'n Ex. 2). Dave Monsees' clarification during his deposition that a document's

3    reference to "GA" means "Google apps" (as opposed to "Google Analytics") is just one example

4    of how Plaintiffs learned through discovery that Google is also saving WAA-off data generated

5    during users' interactions with Google owned-and-operated properties.

6        **C.    Bad Faith**

7        "Bad faith" "implies the conscious doing of a wrong because of dishonest purpose or moral

8    obliquity." *Wizards*, 309 F.R.D. at 651. This Court already warned Google that accusations of bad

9    faith "should not be made lightly or casually interjected." Dkt. 209 at 7. Google ignored that

10   warning and "casually interjected" yet another bad faith accusation. That accusation is particularly

11   inappropriate since Google does not even dispute the timeline laid out in Plaintiffs' Motion,

12   showing how these amendments are triggered by facts adduced through recent discovery, where

13   Google withheld documents from the majority of custodians until July 28, 2022. Mot. at 17-18.

14       Discovery has shown that WAA is far more ███████ (Mot. Ex. 4 at -46) than Plaintiffs

15   initially understood. Not only does Google collect, save, and use WAA-off data collected through

16   products embedded within non-Google apps (e.g., Firebase, AdMob), but Google also violates its

17   WAA representations within its own first-party products, including Search. Discovery has proven

18   the fact of this saving and use of WAA-off data, beyond just returning search results, which Google

19   does not dispute. Discovery has also proven that employees were concerned about Google's

20   violation of its WAA commitment across numerous product areas, including Search.

21       On behalf of the same WAA-off users in Classes 1 and 2, Plaintiffs with Class 3 reasonably

22   seek to hold Google accountable for the full scope of its improper saving and use of WAA-off

23   data. Plaintiffs' three claims apply equally to this Class 3. The claims, for all classes, are based on

24   the same WAA disclosures this Court has already interpreted. There is no excuse for repeatedly

25   accusing Plaintiffs of bad faith litigation, particularly where Plaintiffs seek to amend based on

26   recently adduced discovery that Google itself provided.

27

28                                    13

1    The cases cited by Google are inapplicable, involving amendments seeking to add new

2    claims (which is not what Plaintiffs are doing here). Those cases also addressed circumstances

3    nothing like this Motion, which is based on evidence recently adduced in discovery. In *Circle*

4    *Click*, the plaintiffs sought to add a new claim for breach of contract "based on facts long known

5    to Plaintiffs," and after the "the parties have fully briefed and argued two separate motions for

6    class certification, as well as a motion for reconsideration of this Court's denial of class

7    certification." 2016 WL 5869758, at *4. The plaintiffs in *Koch*, 127 F.R.D. at 212, likewise sought

8    to add a brand new claim to their complaint after four years of litigating a different claim, where

9    "[n]othing prevented plaintiffs from advancing a RICO claim on the seven alleged racketeering

10   activities" at the outset of the lawsuit, and where the court determined that plaintiffs were seeking

11   "to discover and litigate issues which they settled and released after bringing [a separate] action."

12   Google's other cases are more of the same.[7] Plaintiffs are not seeking to add new claims, let alone

13   relitigate claims (or even issues) they've already lost; everything here is entirely new. Google's

14   bad faith accusations, like its WAA disclosures, are just smoke and mirrors.

15       Finally, while irrelevant to this Motion, Plaintiffs must address Google's merits-based

16   argument that "the WAA button does work." Opp'n at 20. Google's argument cannot be squared

17   with the many Google employees screaming otherwise internally. *See* Mot. at 1, 6-9 (citing

18   documents). To make this claim, contrary to the concerns expressed by Google's own employees,

19   Google mischaracterizes Plaintiffs' claims. Google focuses on ***how*** it logs (s)WAA-off data, but

20   Plaintiffs reasonably believed Google ***would not*** log that data, at all. This case has always been

21   about Google's collection, saving, and use of data that Google was never supposed to save in the

22   first place. "Google, through the WAA Materials, set an expectation that it ***would not save***

---

[7] In *Menendez*, a habeas case, the petitioner repeatedly "attempted to circumvent the recommended

24   jurisdictional dismissal by attempting to amend his petition to abandon claims the Magistrate Judge
     found insufficient." *Menendez-Gonzalez v. Kelly*, 2017 WL 11632799, at *5 (C.D. Cal. Mar. 22,

25   2017). And *United Ass'n of Journeyman & Apprentices of the Plumbing & Pipe Fitting Industries,*
     *Underground Util./Landscape Loc. Union No. 355 v. Maniglia Landscape, Inc.*, 2019 WL

26   7877822, at *1 (N.D. Cal. July 22, 2019) (Seeborg, J.) is even further afield. The plaintiffs in

27   *United* sought to add nine new defendants where it was "undisputed that Plaintiffs knew the
     identities of the nine contracting defendants at the outset of this litigation." *Id.*

28

1  plaintiffs' 'activity on . . . apps . . . that use Google services' unless plaintiffs turned WAA 'on.'"

2  Dkt. 109 at 16. The "critical fact" for these claims is "that the online entity represented to the

3  plaintiffs that their information would not be collected, but then proceeded to collect it anyway."

4  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020). In any event,

5  Google has admitted ████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████████████████

8  ████████████████████████████████████ Plaintiffs properly seek relief tied to that misconduct.

9      **D.**    **Futility**

10      Google also fails to establish any futility. The disclosures Google identifies cannot help

11  Google for the reasons discussed above. *See supra* Section III.B. Google also ignores the employee

12  admissions cited throughout Plaintiffs' Motion, including from a Search employee (JK Kearns).

13      Most importantly, Google has no answer to Plaintiffs' application of this Court's motion

14  to dismiss ruling to Google's saving and use of WAA-off Search data. Mot. at 21. Google entirely

15  ignores this argument. As this Court has held: "Google, through the WAA Materials, set an

16  expectation that it would not save" [the listed data] unless plaintiffs turned WAA 'on,'" and that

17  list of data includes "Searches and other things you do on Google products and services." Dkt. 109

18  (MTD order) at 16; FAC ¶ 95. Adding a class to include WAA-off Search data conforms this case

19  not only to the evidence Plaintiffs recently obtained from Google, but also to this Court's

20  conclusions on the representations Google made to users. This Court's holding squarely applies to

21  Google's saving and use of WAA-off Search data. Regardless, these Google arguments are more

22  appropriately addressed through a motion to dismiss. As explained in *Malaney v. UAL Corp.*, 2011

23  WL 13153253, at *2 (N.D. Cal. Oct. 24, 2011) (Seeborg, J.)—another case which Google ignores,

24  "it would be premature to deny plaintiffs' request for leave to amend as futile on the basis of a full

25  dismissal analysis without an appropriate motion and full briefing by the parties."

26                                         **CONCLUSION**

27      Plaintiffs respectfully request leave to file their proposed Fourth Amended Complaint.

28                                            15

1

Dated: November 21, 2022                    Respectfully submitted,

2

3                                           By:  */s/Mark Mao*

4                                           Mark C. Mao, CA Bar No. 236165
5                                           Beko Reblitz-Richardson, CA Bar No. 238027
                                            Erika Nyborg-Burch, CA Bar No. 342125
6                                           **BOIES SCHILLER FLEXNER LLP**
                                            44 Montgomery St., 41st Floor
7                                           San Francisco, CA 94104
                                            Tel.: (415) 293-6800
8                                           Fax: (415) 293-6899
                                            mmao@bsfllp.com
9                                           brichardson@bsfllp.com
                                            enyborg-burch@bsfllp.com
10

11                                          Alison Anderson, CA Bar No. 275334
                                            aanderson@bsfllp.com
12                                          **BOIES SCHILLER FLEXNER LLP**
                                            725 S. Figueroa Street, 31st Floor
13                                          Los Angeles, CA 90017
                                            Tel.: (213) 995-5720
14

15                                          Jesse Panuccio (admitted *pro hac vice*)
                                            **BOIES SCHILLER FLEXNER LLP**
16                                          1401 New York Ave, NW
                                            Washington, DC 20005
17                                          Tel.: (202) 237-2727
                                            Fax: (202) 237-6131
18                                          jpanuccio@bsfllp.com

19

20                                          James Lee (admitted *pro hac vice*)
                                            Rossana Baeza (admitted *pro hac vice*)
21                                          **BOIES SCHILLER FLEXNER LLP**
                                            100 SE 2nd St., 28th Floor
22                                          Miami, FL 33131
                                            Tel.: (305) 539-8400
23                                          Fax: (303) 539-1307
                                            jlee@bsfllp.com
24                                          rbaeza@bsfllp.com

25

26                                          John A. Yanchunis (admitted *pro hac vice*)
                                            Michael F. Ram CA Bar No. 104805
                                            Ryan J. McGee (admitted *pro hac vice*)
27                                          Ra Amen (admitted *pro hac vice*)

28                                                              16

**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
mram@forthepeople.com
rmcgee@forthepeople.com
ramen@forthepeople.com

Amanda K. Bonn, CA Bar No. 270891
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA. 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
abonn@susmangodfrey.com

William S. Carmody (admitted *pro hac vice*)
Shawn Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander P. Frawley (admitted *pro hac vice*)
Ryan K. Sila (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel.: (212) 336-8330
Fax: (212) 336-8340
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@ susmangodfrey.com
rsila@susmangodfrey.com

Ian B. Crosby (admitted *pro hac vice*)
Jenna G. Farleigh, CA Bar No. 288811
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880
Fax: (206) 516-3883
icrosby@susmangodfrey.com
jfarleigh@susmangodfrey.com

*Attorneys for Plaintiffs*

17