1

**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
 bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
 sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
 esantacana@willkie.com
LORI C. ARAKAKI (SBN: 315119)
 larakaki@willkie.com
ARGEMIRA FLOREZ  (SBN: 331153 )
 aflorez@willkie.com
HARRIS MATEEN (SBN: 335593)
 hmateen@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone:  (415) 858-7400
Facsimile:  (415) 858-7599

Attorneys for Defendant
GOOGLE LLC

2

3

4

5

6

7

8

9

10

11

12

13

14    **UNITED STATES DISTRICT COURT**

15    **NORTHERN DISTRICT OF CALIFORNIA**

16    **SAN FRANCISCO DIVISION**

17

| ANIBAL RODRIGUEZ, et al. individually and on behalf of all others similarly situated, | Case No. 3:20-CV-04688-RS |
|---|---|
| Plaintiff, | **GOOGLE'S STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO SEAL PORTIONS OF PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE (DKT. NO. 272)** |
| vs. | |
| GOOGLE LLC, | |
| Defendant. | Judge:        Hon. Richard Seeborg<br>Courtroom:    3, 17th Floor<br>Action Filed:  07/14/2020<br>Trial Date:     Not Yet Set |

18

19

20

21

22

23

24

25

26

27

28

## I.      <u>INTRODUCTION</u>

Pursuant to Civil Local Rule 79-5(f)(3), Defendant Google LLC submits this statement of reasons in support of Plaintiffs' Administrative Motion to File Under Seal Plaintiffs' Reply in Support of the Motion for Leave to File the Fourth Amended Complaint ("Reply") and supporting exhibits (Dkt. 272).

Google has significantly narrowed the material it seeks to keep under seal. Google seeks to make narrowly-tailored redactions to Plaintiffs' Reply and six exhibits, to seal internal project names, non-public email addresses of Google employees, confidential business information and proprietary technical information. In many cases, Google only seeks to redact certain words or parts thereof. These are the most restrictive redactions possible.

Because the underlying dispute for leave to file an amended complaint is non-dispositive, the lower good cause standard applies. *Kamakana v. Cty & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). There is good cause to seal the information Google seeks to seal, which falls into three categories. *First*, Google seeks to redact commercially sensitive business information in its response to Interrogatory No. 1, contained in Exhibit 37 to Plaintiffs' Reply because the entire response discloses highly confidential, technical, and proprietary information regarding Google's process for collecting, storing, logging, and processing data received through GA for Firebase. Google also seeks to make minimal redactions to seal confidential business information concerning its Google Account product and Firebase top customer list contained in Exhibits 34 and 36. *Second*, Google seeks to redact portions of three internal code names in Plaintiffs' Reply, and Exhibits 35 and 38. *Third*, Google seeks to redact its third-party employees' personal company email addresses in Exhibits 35, 36, and 39, in order to protect the employees' privacy.

None of the information Google seeks to keep under seal is necessary to the public's understanding of the underlying dispute. Plaintiffs' Motion to Seal should be granted with respect to the limited material identified in Google's accompanying proposed order.

## II.    LEGAL STANDARD

The Ninth Circuit has "'carved out an exception to the presumption of access' to judicial records" for non-dispositive motions. *Kamakana v. Cty & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). A request for leave to file an amended complaint is considered a non-dispositive motion for purposes of a motion to seal. *See, e.g.*, *Dunbar v. Google, Inc.*, 2012 WL 6202719, at *2 (N.D. Cal. Dec. 12, 2012) ("Motion for Leave to Amend is a non-dispositive motion. Therefore, the parties need only demonstrate 'good cause' in order to support their requests to seal."); *Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*, 2021 WL 1312748, at *5 (N.D. Cal. Apr. 8, 2021) (same). "[T]he public has less of a need for access to court records attached only to non dispositive motions because those documents are often unrelated, or only tangentially related, to the underlying cause of action." *Id.* "[A] particularized showing under the good cause standard of Rule 26(c) will suffice to warrant preserving the secrecy of sealed discovery material attached to non-dispositive motions." *Id.* at 1180 (cleaned up).

## III.    DISCUSSION

### A. Commercially sensitive business information (Reply, Exs. 34, 36, and 37)

Google seeks to seal commercially sensitive business information in Plaintiffs' Reply, and Exhibits 34, 36, and 37. There is good cause to seal "business information that might harm a litigant's competitive standing, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598–99 (1978), or any other "commercially sensitive information," *Palantir Techs. Inc. v. Abramowitz*, 2021 WL 1925459, at *2 (N.D. Cal. Mar. 5, 2021). Good cause to seal is shown when a party seeks to seal materials that "contain[] confidential information about the operation of [the party's] products and [] public disclosure could harm [the party] by disclosing confidential technical information." *Digital Reg. of Texas, LLC v. Adobe Sys., Inc.*, 2014 WL 6986068, at *1 (N.D. Cal. Dec. 10, 2014).

Exhibit 37 (Response to Interrogatory No. 1). Exhibit 37 contains Google's response to Interrogatory No. 1. Google's response reveals highly confidential, technical, and proprietary

2

details about the flow of GA for Firebase data from app developer customers to and within Google. Ganem Decl. ¶ 6. In a step-by-step manner, the response explains Google's back-end data flow, including specific details about the processes for data generation, bundling, consent checks, data flow, and storage decisions. *Id.* The response further reveals the functionality of each process and their relative location position within Google's back-end data flow system vis-a-vis the point of data origin. *Id.* For example, the interrogatory response identifies the fields Google has programmed its systems to log on both Android and iOS devices, how Google bundles app measurement data on the server side to other data, back-end processes for allowing developers to send data to Google in bundled packets, the steps Google takes to conduct consent checks and what it does upon receiving the results of the checks. *Id.* Additionally, the interrogatory response describes the design of Google's data logging system and "Encryption Technology," business decisions regarding GA for Firebase data, and highly confidential information about Google's infrastructure, including the code name for a server that receives user data. *Id.* ¶ 7.

Revealing the specific information contained in Google's interrogatory response presents a serious risk of irreparable harm to Google. Ganem Decl. ¶ 8. The information contained within the response is the result of countless hours of extensive internal research, analysis, and engineering. *Id.* ¶¶ 6, 9. If proprietary information regarding GA for Firebase's backend data flow and infrastructure architecture is disclosed, competitors can infer how the GA for Firebase product functions, and how it was developed. *Id.* Competitors could mimic Google's approach to data processing, organization, and storage to unfairly compete with Google's product offerings to Google's detriment. *Id.*

This risk is particularly acute because the interrogatory response compiles in one place the flow of GA for Firebase data in a way that is not typically compiled in a single document. Ganem Decl. ¶ 9. Indeed, a competitor could take this single interrogatory response and immediately understand the entire structure of Google's GA for Firebase data processing system—something that has taken countless employee and engineer hours to develop, refine, and maintain. *Id.* This is why Google carefully maintains the confidentiality of the information contained within Exhibit

GOOGLE'S STATEMENT ISO PLAINTIFFS' ADMINISTRATIVE MOTION TO SEAL
(DKT. 272)
CASE NO. 3:20-CV-04688-RS

37, both within Google by restricting access to certain teams with access rights, and externally including in litigation. *Id.* ¶ 10. Courts routinely seal information that discloses the technical functionality of proprietary products. *See, e.g*, *Garrity Power Servs. LLC v. Samsung Elecs. Co.*, 2021 WL 3473937, at *1 (N.D. Cal. July 29, 2021) ("Significant descriptions of technical product features are also sealable.").

Google has narrowly tailored the information to be sealed in Exhibit 37 to only redact Google's response to Interrogatory No. 1. Google does not seek to seal the interrogatory request, Google's objections, or portions of its response to Interrogatory No. 2. Because the response to Interrogatory No. 1—in its entirety—discusses highly confidential, technical, and proprietary information concerning Google's data processing and storage systems and back-end data processing flow and infrastructure, the entire interrogatory response should be sealed. Ganem Decl. ¶ 11. There is no way to adequately disentangle portions of the information that are highly confidential from others that are not. *Id.* No more limited sealing would appropriately protect Google's confidential information. *Id.*

Reply and Exhibit 34 (Numerical Calculation of Google Account Holders). Exhibit 34 contains Google's responses and objections to Interrogatory Nos. 12–16. Google's response to Interrogatory No. 12 discloses the number of active Google accounts in the United States that have turned off the WAA and sWAA settings during an identified time period. Ganem Decl. ¶¶ 3, 12. Plaintiffs' Reply cites to the figure in Google's response, at 1:11. *Id.* There is good cause to seal this information because the numbers are important to Google's business interests. For example, if the numbers are disclosed, Google's competitors can unfairly capitalize on these statistics by targeting Google products that rely on these settings by understanding the volume of users who use those products. *Id.* ¶ 13; *see, e.g.*, *Dynetix Design Sols. Inc. v. Synopsys Inc.*, 2013 WL 2285210, at *1 (N.D. Cal. May 23, 2013) (sealing "information that could help competitors develop competing products.").

Google has narrowly tailored the information to be sealed. In the Reply, Google only seeks to redact the numerical amount in one sentence, at 1:10-12 ("Google has admitted that

'[REDACT] active Google accounts in the United States turned off' either WAA or supplemental

sWAA during the class period.'"). Ganem Decl. ¶ 15. In Exhibit 34, Google only seeks to redact

the numerical amount in the following two sentences: at 5:18-20 ("From July 27, 2016 to July 27,

2020, [REDACT] active Google Accounts in the United State turned off Web & App Activity

settings…."), and at 6:3-4 ("From July 27, 2016 to July 27, 2020, [REDACT] active Google

accounts in the United States turned off the "sWAA" setting …."). *Id.*

       Google does not seek to redact Plaintiffs' interrogatory request, Google's objections, the

date range or parameters for Google Account calculations, or any of the other four interrogatory

requests or responses. As such, no other more narrowly tailored redactions would appropriately

protect Google's interests. Ganem Decl. ¶ 15.

       <u>Exhibit 36 (Customer List).</u> Exhibit 36 is a slide deck concerning Firebase & Google

Analytics that discloses, at GOOG-RDGZ-00060729, a list of Google's top Firebase customers in

a list of company logos. Ganem Decl. ¶¶ 3, 12. There is good cause to seal the list of company

logos because that information is important to Google's business interests. If disclosed, for

example, Google's competitors could unfairly target Google's customers and induce them to

switch from using Firebase to another product. Ganem Decl. ¶ 13; s*ee, e.g., Dynetix Design*, 2013

WL 2285210, at *1 (sealing "a customer list, disclosure of which may be prejudicial to Synopsys'

ability to compete in the marketplace.").

       Google only seeks to redact part of one slide in the deck that discloses by name and

company logo a list of Google's top Firebase customers. Ganem Decl. ¶ 15. No more narrowly

tailored redaction would adequately protect Google's business interest in protecting its Firebase

customer list. *Id.*

                     *     *     *

       Courts routinely grant motions to seal confidential business information like that in the

Reply and Exhibits 34, 36, and 37 in order to protect the litigant's business interests, and this

Court should do so here. *See Nixon*, 435 U.S. at 598–99; *Palantir Techs.*, 2021 WL 1925459, at

1    *2. Public disclosure of the information Google seeks to keep under seal would harm Google's

2    competitive standing it has earned through years of innovation and careful deliberation, by

3    revealing sensitive aspects of Google's proprietary data processing systems, strategies, and

4    designs, product information, and customer list to Google's competitors. That alone is a proper

5    basis to seal such information. *See, e.g.*, *Free Range Content, Inc. v. Google Inc.*, No. 14-cv-

6    02329-BLF, Dkt. No. 192, at 6–8 (N.D. Cal. May 3, 2017) (granting Google's motion to seal

7    certain sensitive business information).

8

9        **B.    References to Internal Project Names (Reply, Exs. 35, 38, and 39).**

10        Google seeks to seal internal project names within the Reply and Exhibits 35, 38, and

11    39. Specifically, Google seeks to redact three internal names allowing the first and second letters

12    in each to be publicly filed. In the Reply and Exhibits 35 and 39, Google seeks to redact

13    "Pr***Na***." In Exhibit 38, Google seeks to redact "Na***," which the Court has previously

14    sealed, and "Do***." Google does not seek to redact the descriptions of the projects, employee

15    commentary about the projects, or any other related comments or material.

16        Here, there is good cause to seal Google's confidential, internal names which have nothing

17    to do with the underlying merits of Plaintiffs' request for leave to file a Fourth Amended

18    Complaint. Google's code names are not disclosed publicly, and if they are, there will be a risk of

19    harm to Google, including, for example, because individuals interested in improperly accessing

20    Google's systems could target particular proprietary documents and information using Google's

21    confidential internal names. Ganem Decl. ¶ 16.

22        Courts routinely seal this type of information including because it would place companies

23    at increased risk of cyber security threats if the internal names become public. *See, e.g.*, *Apple,*

24    *Inc. v. Samsung Elecs. Co.*, 2012 WL 4120541, at *2 (N.D. Cal. Sept. 18, 2012) (sealing "Apple's

25    internal code names" for its projects); *Campbell v. Facebook Inc.*, 2016 WL 7888026, at *2 (N.D.

26    Cal. Oct. 4, 2016) (sealing "names of internal tables" in Facebook's database); *Bohannon v.*

27    *Facebook, Inc.*, 2019 WL 188671, at *7 (N.D. Cal. Jan. 14, 2019) (sealing internal task names and

28

6

GOOGLE'S STATEMENT ISO PLAINTIFFS' ADMINISTRATIVE MOTION TO SEAL
(DKT. 272)
CASE NO. 3:20-CV-04688-RS

1    URLs); *see also, e.g., In re Google Inc. Gmail Litig.*, 2013 WL 5366963, at *3 (N.D. Cal. Sept.

2    25, 2013) (sealing material that "if made public Google contends could lead to a breach in the

3    security" of Google's systems).

4         This Court has previously sealed the internal name in Exhibit 38 ("Na***"), and others

5    similar to the ones Google now seeks to keep under seal. *See, e.g.*, Dkt. 223 (2/10/2022 Order

6    Granting in Part Mot. to Seal) ("Google's internal project names may be sealed and replaced with

7    N***, K***, and T***."); Dkt. 208 (1/20/2022 Discovery Order) (same); Dkt. 184, at ¶ 3

8    (12/1/2021 Discovery Order) (sealing codename in the parties' joint letter brief re custodians (Dkt.

9    154)). Sealing the three internal names Google seeks to seal is consistent with those rulings. *See*

10   *also Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 4120541.

11        Google has narrowly tailored the information to be sealed to allow the first one or two

12   letters in each internal name to be filed publicly. No other more narrow tailoring would adequately

13   protect Google's interests. Ganem Decl. ¶ 16. What's more, much of the information Google

14   seeks to seal is not relevant to the underlying dispute or even relied upon by Plaintiffs. For

15   example, in Exhibit 38, four of the five redactions Google seeks to make are to a list of exhibits

16   introduced during the deposition of Eric Miraglia. *See* Ex. 38 at 6:23, 7:9, 11:17, and 15:21.

17   None of those exhibits to the Miraglia declaration are cited in the Reply. And the public does not

18   need to know full internal project names to understand the underlying disputes.

19        **A.    Non-Public Email Addresses (Exs. 35, 36, and 39).**

20        Google seeks to redact the non-public employee email addresses contained within Exhibits

21   35, 36, and 39. Google has narrowly tailored its request and proposes to redact only the email

22   addresses of employees, allowing their names, titles, and accompanying statements to be filed

23   publicly. For example, when an email is sent from "First Name Last Name

24   <uniqueaddress@google.com>," Google only proposes to seal the "uniqueaddress" part of the

25   email. When an employee's email address includes the "@" symbol, but does not include the

26   domain, Google proposes to redact the "@."

27

28

GOOGLE'S STATEMENT ISO PLAINTIFFS' ADMINISTRATIVE MOTION TO SEAL
(DKT. 272)
CASE NO. 3:20-CV-04688-RS

1    A showing that "privacy concerns" would be implicated by the disclosure of personal

2    information such as the email address of an individual employed by the defendant is sufficient to

3    establish good cause to seal. *E. & J. Gallo Winery v. Instituut Voor Landbouw-En*

4    *Visserijonderzoek*, 2018 WL 4961606, at *2 (E.D. Cal. Oct. 12, 2018).

5         Here, there is good cause to seal Google's employees' email addresses because those

6    employees' privacy would be placed at risk if their confidential email addresses were to be

7    filed publicly. Google does not publish employee email addresses. Ganem Decl. ¶ 17. Disclosure

8    could lead to potential harassment of Google employees by individuals choosing to contact them

9    through their revealed email addresses, instead of through Google's formal channels. *Id.* Courts

10   routinely seal employee email addresses, even under the higher "compelling reasons"

11   standard. *See, e.g.*, *E. & J. Gallo*, 2018 WL 4961606, at *2 (sealing employee email addresses

12   under compelling reason standard for dispositive motion to dismiss); *Hill v. Builder Servs. Grp.,*

13   *Inc.*, 2021 WL 4026315, at *5 n.6 (W.D. Wash. Sept. 3, 2021) ("find[ing] that the interest in

14   keeping [employees' personal e-mail addresses] private constitutes good cause to seal").

15        This Court has previously sealed "personally identifying information (e.g., phone numbers,

16   work and residential addresses, [and] email addresses)" because "[t]he public doesn't need access

17   to this information in order to understand the dispute, and public disclosure could cause harm,

18   such as identity theft." Dkt. 242 (5/16/2022 Order Granting Mot. to Seal). Where, as here, the

19   email address at issue is a non-party's, courts find that the "non-party's privacy interests . . . can

20   be appropriately balanced with the public's right to access by redacting personal identifying

21   information." *Ehret v. Uber Techs., Inc.*, 2015 WL 12977024, at *3 (N.D. Cal. Dec. 2,

22   2015). "While the [Google] employees are employed by a party in this case and have a lower

23   privacy interest" than a neutral third party, the employees' "specific e-mail addresses are not

24   relevant to the merits of the motion." *Id.* The email addresses should be redacted. *See id.*

25        Google has narrowly tailored the information to be sealed to allow its employees' names,

26   job titles, and statements to be filed publicly, along with Google's domain name indicating that the

27   email is from an employee. No other more narrow tailoring would protect Google's employees'

28

8

privacy interests. *See* Ganem Decl. ¶ 17. Nor does the public need to know employees' private email addresses (or even their names) to understand the underlying dispute.

**IV.    CONCLUSION**

For the reasons set forth above, Google respectfully requests that the Court seal the limited information identified herein and in the accompanying [Proposed] Order.

Dated: November 29, 2022                                 **WILLKIE FARR & GALLAGHER LLP**

By: */s/ Eduardo E. Santacana*
Eduardo Santacana

GOOGLE'S STATEMENT ISO PLAINTIFFS' ADMINISTRATIVE MOTION TO SEAL
(DKT. 272)
CASE NO. 3:20-CV-04688-RS