UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>GOOGLE LLC,<br><br>          Defendant. | Case No. 20-cv-04688-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT AND DENYING ADMINISTRATIVE MOTIONS** |

Plaintiffs bring three separate motions relating to the Complaint and case schedule in the matter.[1] Dkts. 254, 257, 260. For the reasons that follow, the Motion for Relief from the Case Management Schedule and the Request for the Appointment of a Special Master are both denied; and the Motion for Leave to File a Fourth Amended Complaint is granted in part and denied in part.

**I. Motion for Relief from Case Management Schedule**

Plaintiffs' first motion requests a three-month extension of all the deadlines in the Case Management Schedule on the grounds that Google has engaged in "gamesmanship," resulting in discovery delays that would, without such an extension, prejudice Plaintiffs. Dkt 254 at 1-3. Plaintiffs' motion, filed four days before the fact discovery deadline (October 31, 2022), was

---

[1] Plaintiffs have also recently filed two additional motions—another requesting relief from the Case Management Schedule (Dkt. 279) and a motion to shorten Defendant's time to respond to said motion (Dkt. 280), which will be addressed separately.

accompanied by a flurry of discovery issues raised both in the motion itself and in letter briefs before and after the motion. *See, e.g.*, Dkts. 250, 253, 260-64. These issues concern various topics, such as Google's alleged failure to produce responsive data and documents concerning certain enumerated topics; the identity of witnesses and complications in scheduling relating to certain depositions; and Plaintiffs' requests for additional discovery, including depositions beyond the presumptive 10-deposition limit and responses to interrogatories and requests for admission.

To obtain an extension, Plaintiffs must show both their diligence in pursuing discovery and that good cause exists to extend the discovery deadline. Good cause does not exist to warrant a further extension to the case management schedule at this time. The case management schedule has already undergone several extensions to the discovery deadlines: two months in August 2021 (Dkt. 126), six months in November 2021 (Dkt. 180), two and a half months in May 2022 (Dkt. 244); and another month in August 2022 (Dkt. 246). There is no good cause for a fifth extension of three months for discovery in a case where the issues have been narrowed. Dkt. 209.

Plaintiffs' arguments about the outstanding discovery necessitated by Defendant's purported delinquency do not disturb this conclusion. As Defendant correctly notes, the proper recourse for compliance with discovery obligations is to file discovery motions or otherwise take prompt actions regarding the specific delinquencies complained of, rather than requesting an extension on the eve of the end of the discovery period. Plaintiffs' further argument that post-cutoff completion of depositions and discovery poses risks given Defendant's conduct to date is no more persuasive. Plaintiffs cite as an example Google's purported "about face" regarding data production: "Despite initially acknowledging that WAA-off data was relevant, Google did an about face and now will not produce any WAA-off data without order of the Court." Dkt. 254 at 13. Yet if Defendant's behavior during the discovery period is as dire as Plaintiffs paint it to be, there is no explanation of how prolonging the discovery period would address the root problem identified; indeed, this would only highlight the necessity of court intervention for any recalcitrance from Defendant, and reinforce the futility of an extension.

Ultimately, the Court expects that the Parties, both sophisticated entities, can adhere to

their discovery obligations—or else, court orders[2]—in completing any residual discovery matters.

**II. Request for Appointment of a Special Master**

Plaintiffs next request the appointment of a technical Special Master to oversee Defendant in its identification of relevant WAA-related logs and fields, as well as Defendant's production of a subset of data from those logs and fields—a measure Plaintiffs claim is the most efficient way to resolve the parties' disputes without further burden to the Court. Dkt. 260.[3]

Under Federal Rule of Civil Procedure 53, a master may be appointed either: (A) to perform duties consented to by the parties; (B) hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by some exceptional condition or the need to perform an accounting or resolve a difficult computation of damages; or (C) address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district. Fed. R. Civ. P. 53(a)(1). The Ninth Circuit has found that reference of a matter to a special master "shall be the exception and not the rule" and shall be "made only upon a showing that some exceptional condition requires it"—a standard which the Ninth Circuit "strictly appl[ies]." *Burlington N. R. Co. v. Dep't of Revenue of State of Wash.*, 934 F.2d 1064, 1071 (9th Cir. 1991) (citations omitted).

Plaintiffs have not made a showing required to sustain their request. First, there is no consent of both Parties. Defendant—claiming to have learned about the request only upon receipt of the letter brief—clearly does not consent to the appointment, a factual distinction that renders Plaintiffs' citations to cases like *Brown v. Google,* Case No. 5:20-cv-03664, Dkt. 273 or *Calhoun v. Google*, Case No. 5:20-cv-05146, Dkt. 309 inapposite. Second, neither Plaintiffs' statement that they "have given significant thought to how the data production process should play out" nor their claims about Defendant's "intransigence" regarding data production demonstrate exceptional conditions. Finally, there is no argument or evidence advanced that Plaintiffs' issues "cannot be

---

[2] As a reminder, disgruntled litigants have at their disposal not only motions to compel, but also motions for sanctions for egregious failures of compliance with discovery obligations.

[3] Initially raised in a discovery letter brief, Plaintiffs' request was subsequently referred to Judge Seeborg for resolution, in light of potential case management implications. Dkt. 270.

1  effectively and timely addressed" by the Court. As a result, Plaintiffs' request for a technical
2  special master is denied.

3  **III. Motion for Leave to Amend**

4  Plaintiffs also seek leave to file a Fourth Amended Complaint, by: (1) appending to
5  Classes 1 and 2 phrasing regarding "supplemental Web & App Activity" and expanding the scope
6  of the allegations to Google's "tracking or advertising code" more broadly; and (2) adding a third
7  class—one covering all individuals who turned off WAA, but whose activity relating to Google
8  Search (including on the web) was allegedly saved and inappropriately used. Dkt. 257-7 (FAC) at
9  ¶ 257. Such amendments are necessary, according to Plaintiffs, in order to conform the complaint
10 to evidence revealed in discovery, and serve judicial economy while affording Plaintiffs complete
11 relief regarding Google's wrongdoing. Dkt. 257-1 at 14.

12 Federal Rule of Civil Procedure 15 provides that parties may amend their pleadings once
13 as a matter of course, provided that amendment occurs within 21 days of service or, if the pleading
14 is one to which a responsive pleading is required, 21 days after service of that responsive pleading.
15 Fed. R. Civ. P. 15(a)(1). Rule 15 also states that leave to amend "shall be freely given when justice
16 so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit holds "'[t]his policy is to be applied with
17 extreme liberality.'" *Eminence Capital, L.L.C. v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir.
18 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc*., 244 F.3d 708, 712 (9th Cir. 2001)).
19 Courts generally consider four factors: (1) bad faith on the part of the movant; (2) undue delay; (3)
20 prejudice to the opposing party; and (4) futility of the proposed amendment. *Foman v. Davis*, 371
21 U.S. 178, 182 (1962). Of these factors, prejudice to the opposing party carries the most weight.
22 *Eminence Capital*, 316 F.3d at 1052. In addition, courts may also consider whether the plaintiff
23 has previously amended his complaint. *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2017 WL
24 3149297, at *2 (N.D. Cal. July 25, 2017).

25 *A. Amendments to Classes 1 & 2*

26 Insofar as the amendments to Classes 1 and 2 are consistent with the Court's prior decision
27 regarding Plaintiffs' Second Amended Complaint (Dkt. 127)—that is, to clarify that AdMob and

AdMob+ are within the scope of the class definitions—leave to amend is granted. The Court is satisfied that Plaintiffs evince no bad faith or undue delay in requesting these changes, which resulted from information learned in discovery, and that they are neither futile nor unduly prejudice the opposing party. Indeed, Defendant itself does not object, noting Plaintiffs' assurance that such modifications require no new discovery. Dkt. 268 at 9.

Plaintiffs' inclusion of the word "including" in the class definition, however, is disputed. Inserting "Google tracking or advertising code, including" before "Firebase SDK and AdMob SDKs" makes the latter two merely illustrative examples that do not meaningfully identify or narrow what among Google's surely voluminous code is at issue. Indeed, this may be practically tantamount to defining classes that have been harmed by *any* "Google tracking or advertising code." As such a class definition runs the risk of potentially encompassing any or all of Defendant's products, it is therefore entirely too open-ended to be proper. Plaintiffs claim that the exact same phrase—"tracking or advertising code"—was approved in an amendment to the classes in *Brown v. Google LLC*, No. 4:20-cv-03664, Dkt. 395-1 ¶ 192. Notably, however, the amendment in *Brown* inserted "Google tracking or advertising code" to replace "Google Analytics or Ad Manager" in the previously pled class definition. *Brown v. Google LLC*, No. 4:20-cv-03664, Dkt. 395-3 ¶ 192. This was more or less a one-to-one substitution, more akin to a renaming. Here, by contrast, Plaintiff seeks to make a wholesale addition of the phrase, and insert it as a means of expanding the class definition, such that the previously-pled items (Firebase SDK and AdMob SDKs) are merely examples, or subsets, of a broader category. The substantive differences in circumstances therefore make the insertion, albeit of the same phrase, distinguishable here. Plaintiffs are therefore not given leave to modify the class with the insertion of "including"; if Plaintiffs wish to retain "Google tracking or advertising code," it would therefore be an appositive of "Firebase SDK and AdMob SDK."

Plaintiffs also note in a footnote that they inadvertently omitted the phrase "(including 'webviews')" from the brief in support of their motion for leave to file the Fourth Amended Complaint, but included it in the actual amended complaint and redlined complaint filed. Dkt 272-

1 at 4 n.3. Given that Google's opposition quotes the class definitions included in Plaintiffs' motion (without the "webviews" reference), Dkt. 268 at 9, it appears that Defendant has not had the opportunity to consider or react to its inclusion. Moreover, the phrase at issue is a parenthetical whose function is merely to clarify the scope of "mobile app activity," but which is still subject to the limiting conditions expressed afterward: such activity must be transmitted from a mobile device because of the relevant SDKs. Therefore, unless there is an argument to be made that webviews do not properly constitute mobile app activity transmitted from a mobile device because of Firebase or AdMob SDKs, the parenthetical is not additive and therefore not strictly necessary. Because there is no evidence suggesting the Parties differ on this issue—and especially because Defendant has not properly addressed its potential inclusion in the opposition briefing—the phrase "(including 'webviews')" does not seem necessary to include, and leave to insert it into the class definition is not given at this time.[4]

### B. Proposed Addition of Class 3

A very different analysis applies with respect to Plaintiffs' attempt to add a third class. As Google correctly notes, Plaintiffs' claims have always been premised on the same factual theory concerning receipt of data *through* Firebase or products integrated with Firebase (such as AdMob and Cloud Messaging), rather than accusing Search of wrongdoing. Dkt. 268 at 1, 6. Indeed, Google Search has *not* always been part of the Complaint in the manner that the new proposed class suggests. *See* Dkt. 257-1 at 21 n.2. To the extent that Search has been previously referenced, it was not done so as a mechanism for Google's wrongdoing with respect to improper collection or storage of WAA-off data, but as a background explanation for Google's motivations for the alleged collections done by its SDK. *See* Dkt. 60 ¶ 114 ("Google uses the results to modify Google's own algorithm technology, such as Google Search"); ¶ 128 ("Google Search would not be nearly as effective without the Firebase SDK data at issue here," under the section titled "Google Refines and Develops Products Using the Data Transmitted to Google by the Firebase

---

[4] Should either party disagree with the Court's analysis on this issue, briefing for leave to amend the class definition on this limited issue—and only this issue—is permitted.

1  SDK Scripts"); ¶¶ 163-168 (discussing background regarding the dominance of search and
2  Google's resulting need for tracking aggregate consumer data). Introducing Defendant's flagship
3  product at this late stage would certainly cause it prejudice, particularly as Defendant's litigation
4  strategy has been crafted with the understanding that the case concerned Firebase SDK and third-
5  party applications. That is precisely the kind of surprise that would unfairly prejudice litigants.

   In addition, Defendant would be prejudiced by the certain violence that such an added
6  class would do to the case schedule. Ninth Circuit caselaw does often find that "prejudice may
7  effectively be established by demonstrating that a motion to amend was made . . . when discovery
8  had closed or was about to close." *Dep't of Fair Emp. & Hous. v. L. Sch. Admission Council, Inc.*,
9  2013 WL 485830, at *5 (N.D. Cal. Feb. 6, 2013) (collecting Ninth Circuit cases). While certain
10 cases have held that the mere need for additional discovery, by itself, does not necessarily justify a
11 denial of leave to amend, the additional delay in the circumstances present here amount to
12 sufficient prejudice. Plaintiffs' citation to cases like *Risher v. Adecco Inc.*, 2021 WL 9182421
13 (N.D. Cal. Sept. 17, 2021) and *Brown v. Google LLC*, 2022 WL 2289057, at *2 (N.D. Cal. Mar.
14 18, 2022) are therefore inapposite. In *Risher*, the deadline for close of fact discovery had not yet
15 been set, let alone extended four times. *Risher*, No. 19-cv-05602-RS, Dkt. 118, at 3. Likewise in
16 *Brown*, Plaintiffs' amendment was requested with an agreement "not to seek any further or
17 supplemental discovery on the basis of the amendment," and therefore the leave to amend was
18 granted with the express condition that "plaintiffs may not rely on their newly revised class
19 definitions to seek additional or supplemental 30(b)(6) testimony, seek additional or supplemental
20 document productions, request that Google supplement any of its discovery responses, or *seek to
21 extend any case deadlines*." 2022 WL 2289057, at *2 (N.D. Cal. Mar. 18, 2022) (emphasis added).
22 Here, as discussed above, after four extensions, the deadline for the close of fact discovery has
23 come and gone. The Parties have gone through extensive discovery, including the production of
24 tens of thousands of documents, hundreds of RFPs, and dozens of depositions. Dkt. 268 at 6. This
25 is not a case in its early stages, where a minor expansion of discovery or extension to the schedule
26 cannot be said to cause prejudice. In light of Plaintiffs' behavior—and its *fifth* request for the
27 extension of case deadlines, Dkt. 279—any suggestion by Plaintiffs of the minimal impact of any

United States District Court
Northern District of California

resulting additional discovery is simply not credible. Leave to add this third class is therefore denied.

For the reasons indicated above, the motion for leave to amend is granted in part. Plaintiffs shall file a copy of the Fourth Amended Complaint consistent with the reasoning set out above. Defendants shall file responsive pleadings within 30 days thereafter.

**IT IS SO ORDERED**.

Dated: December 22, 2022

RICHARD SEEBORG
Chief United States District Judge