Exhibit 34
to Mao Declaration ISO
Plaintiffs' Motion for Leave to
Amend Complaint

Public Redacted Version

**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
  bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
  sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
  esantacana@willkie.com
LORI C. ARAKAKI (SBN: 315119)
  larakaki@willkie.com
ARGEMIRA FLOREZ (SBN: 331153)
  aflorez@willkie.com
HARRIS MATEEN (SBN: 335593)
  hmateen@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400

Attorneys for Defendant
GOOGLE LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

| | |
|---|---|
| ANIBAL RODRIGUEZ AND JULIE ANNA MUNIZ, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE LLC, *et al.*,<br><br>Defendant. | Case No. 3:20-CV-04688<br><br>**DEFENDANT GOOGLE LLC'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' INTERROGATORIES, SET SIX (NOS. 12, 16, & 17)**<br><br>Judge:  Hon. Richard Seeborg<br>Courtroom: 3, 17th Floor<br>Action Filed: July 14, 2020 |

PROPOUNDING PARTY:  PLAINTIFFS ANIBAL RODRIGUEZ AND JULIEANNA MUNIZ

RESPONDING PARTY:  DEFENDANT GOOGLE LLC

SET NO.:  SIX

CONFIDENTIAL

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("Federal Rules"), Defendant Google LLC hereby submits its second supplemental objections and responses to Plaintiffs' Sixth Set of Interrogatories, Set Six.

**PRELIMINARY STATEMENT AND GENERAL OBJECTIONS**

1. Each of Google's responses is subject to, and incorporates, the following general objections. Google specifically incorporates each of these general objections into its responses to each of Plaintiffs' Interrogatories, whether or not each such general objection is expressly referred to in Google's responses to a specific Interrogatory.

2. Google objects to the instructions, definitions, and Interrogatories to the extent that they are broader than, or attempt to impose conditions, obligations, or duties beyond those required by the Federal Rules and/or the Local Rules. Google's responses will be provided in accordance with the Federal Rules and the Local Rules.

3. Google objects to any Interrogatory to the extent that it is overbroad, unduly burdensome, compound, and/or oppressive, or purports to impose upon Google any duty or obligation that is inconsistent with or in excess of those obligations that are imposed by the Federal Rules, the Local Rules, or any other applicable rule or Court order. In particular, Google objects to any Interrogatory to the extent that it calls for information not relevant to the claims or defenses of the parties, or not proportional to the needs of this case.

4. Google objects to each Interrogatory to the extent it is vague, ambiguous, overly broad, or unduly burdensome as to time frame.

5. Google objects to each Interrogatory to the extent that it purports to attribute any special or unusual meaning to any term or phrase.

6. Google objects to each Interrogatories to the extent they seek confidential, proprietary, or trade secret information of third parties.

7. Google's objections and responses to these Interrogatories are not intended to waive or prejudice any objections Google may assert now or in the future, including, without limitation, objections as to the relevance of the subject matter of any Interrogatory, or as to the admissibility

CONFIDENTIAL

of any information or category of information at trial or in any other proceedings. Google expressly reserves any and all rights and privileges under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules, and any other applicable laws or rules, and the failure to assert such rights and privileges or the inadvertent disclosure by Google of information protected by such rights and privileges shall not constitute a waiver thereof, either with respect to these responses or with respect to any future discovery responses or objections.

8. Google has responded to the Interrogatories as it interprets and understands them. If Plaintiffs subsequently assert an interpretation of any Interrogatory that differs from Google's understanding of that Interrogatory, Google reserves the right to supplement its objections and/or responses. Google objects to each and every one of the purported Instructions as unduly burdensome and inconsistent with the Federal Rules and Local Rules.

9. Discovery in this matter is ongoing. Accordingly, Google reserves the right to change, amend, or supplement any or all of the matters contained in these responses as Google's investigation continues, additional facts are ascertained, analyses are made, research is completed, and additional documents are subsequently discovered, collected, and/or reviewed.

## OBJECTIONS TO DEFINITIONS

10. Google objects to the definition of the terms "GOOGLE," "YOU," and "YOUR" as incomprehensible. Google construes GOOGLE, YOU, and YOUR to mean Google LLC. Google further objects to this definition to the extent that it purports to include forms of information not discoverable under the Federal Rules, the Local Rules, or any other applicable authority.

11. Google objects to the definition of "ALL" as overbroad and nonsensical.

12. Google objects to the definition of the terms "AUTHENTICATED DATA" and "UNAUTHENTICATED/PSEUDONYMOUS DATA" as vague, ambiguous, unintelligible, and/or unrelated to this case. Plaintiffs appear to have used terminology that relates to other litigation in which Plaintiffs' counsel are involved, but that has no bearing in this case.

13. Google objects to the definition of "CLASS PERIOD" as vague, ambiguous, and overbroad. Plaintiffs' definition of the class period in this case is circular and legally impermissible.

14. Google objects to the definition of "GOOGLE" as overbroad.

15. Google objects to the definition of the terms "DESCRIBE," "DESCRIPTION," "CONCERNING," "ASSOCIATED," and "RELATING TO" as overbroad, oppressive, and circular.

16. Google objects to the definition of the terms "FINGERPRINTING" as vague, ambiguous, and/or unrelated to this case.

17. Google objects to the definition of the terms "INCLUDE" or "INCLUDING" as circular and vague.

18. Google objects to the definition of "USER" as ambiguous, overbroad, unduly burdensome, and partially irrelevant, including because it purports to incorporate the vague, ambiguous, and overbroad term "service" without limitation, and also purports to include applications that use Firebase SDK writ large.

19. Google objects to the definition of the terms "WAA OFF DATA" as ambiguous, overbroad, unduly burdensome, and partially irrelevant, including because it purports to seek "data generated by a user's use of non-GOOGLE apps that employ or embed any GOOGLE service" without limitation to the services at issue in this action.

## SUPPLEMENTAL RESPONSES TO INTERROGATORY

**INTERROGATORY NO. 12:**

State the numbers of unique GOOGLE Accounts, for which the user disabled (i.e., "turned off") WAA or sWAA during the Class Period, associated with the following three geographical locations: the world, the United States, and California. Include, in your answer:

a) The number of unique GOOGLE Accounts for which the user disabled (i.e., turned "off") WAA or sWAA at least once during the class period.

**CONFIDENTIAL**

b) The number of unique GOOGLE Accounts (i) for which the user disabled (i.e., turned "off") WAA or sWAA at least once during the class period, AND (ii) the geographical and/or geolocation data, associated with the Account, indicate that the user resided in the United States during any part of the Class Period.

c) The number of unique GOOGLE Accounts (i) for which the user disabled (i.e., turned "off") WAA or sWAA at least once during the class period, AND (ii) the geographical and/or geolocation data, associated with the Account, indicate that the user resided in California during any part of the Class Period.

**RESPONSE TO INTERROGATORY NO. 12:**

Google objects to this Interrogatory as vague and ambiguous as to several undefined terms and phrases susceptible to multiple meanings. For purposes of this response, Google construes "Google" to mean Google LLC and "WAA" to mean the account-level setting called Web & App Activity. Google further objects to this Interrogatory as overbroad, unduly burdensome, and abusive to the extent it seeks information "associated" with Google Accounts around "the world" and across "the United States," both of which are beyond the jurisdictional scope of this action. Google further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Subject to and without waiving the foregoing objections, Google responds as follows: From July 27, 2016 to July 27, 2020, ▓▓▓▓▓ active Google Accounts in the United State turned off Web & App Activity settings for any period of any time.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

Subject to and without waiving the foregoing, Google responds further as follows:

Google can only track an existing Google Account's historical Web & App Activity status. As a result, Google cannot provide figures for Google Accounts that have been deleted, but may have turned off Web & App Activity at some point during the Class Period. Further, the database from which Google pulls metrics regarding the Web & App Activity status of Google

**CONFIDENTIAL**

Accounts does not include information on residence by state. Accordingly, Google cannot readily provide figures specific to California.

From July 27, 2016 to July 27, 2020, ▮▮▮▮ active Google accounts in the United States turned off the "sWAA" setting for any period of any time.

Google will supplement Interrogatory No. 12 during expert discovery to the extent a continued diligent search uncovers additional responsive information.

**INTERROGATORY NO. 13:**

Please IDENTIFY and DESCRIBE every GOOGLE dashboard, bit, field, or tracking tool that currently contains or previously during the CLASS PERIOD contained any information related to the WEB & APP ACTIVITY status (e.g., disabled vs. enabled, including for WAA and/or sWAA) of any GOOGLE Account, including aggregated statistics. This Request includes a DESCRIPTION of all information available (or previously available) from that dashboard, bit, field, or tracking tool. This Interrogatory includes any dashboard, bit, field, or tracking tool that includes or included information regarding revenues associated with traffic according to WEB & APP ACTIVITY status.

**RESPONSE TO INTERROGATORY NO. 13:**

Google objects to this Interrogatory as vague and ambiguous as to several undefined terms and phrases susceptible to multiple meanings. For purposes of this response, Google construes "Google" to mean Google LLC and "WAA" to mean the account-level setting called Web & App Activity. Google additionally objects to this Interrogatory as vague, ambiguous, and confusing as to the use of THE undefined phrase "dashboard, bit, field, or tracking tool." Google further objects to this Interrogatory as overbroad, unduly burdensome, and abusive to the extent it seeks information that is not relevant to any claim or defense in this Action, including because it seeks information concerning "*every* Google dashboard, bit, field, or tracking tool" containing "*any* information related to the Web & App Activity status of *any* Google account" without limitation to data sent to Google by third-party app developers after collection, if any, through GA for Firebase, Cloud Messaging, or AdMob—i.e. concerning, Plaintiff's theory of wrongdoing in the Third Amended Complaint. Google further objects to this Interrogatory or overbroad and unduly

burdensome to the extent that Google does not have a central source of dashboards or tracking tools. Google further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Subject to and without waiving the foregoing objections, Google responds as follows: Google maintains the "My Activity Metrics" dashboard, which provides certain measurements of Google account interactions with the Web & App Activity setting, and the "Web & App Activity Log," which tracks Web & App Activity on-and-off events for all Google Account IDs on an individual level.

**INTERROGATORY NO. 14:**

Please IDENTIFY every data source (including logs) that includes or during the CLASS PERIOD included WAA OFF DATA. For each such data source, please include a list of field names and descriptions, the retention period, and how such data sources are used.

**RESPONSE TO INTERROGATORY NO. 14:**

Google objects to this Interrogatory as vague and ambiguous as to several undefined terms and phrases susceptible to multiple meanings. For purposes of this response, Google construes "Google" to mean Google LLC and "WAA" to mean the account-level setting called Web & App Activity. Google additionally objects to this Interrogatory as vague, ambiguous, and confusing as to the use of THE undefined phrases "every data source (including logs)," and "how such data sources are used."

Google further objects to this Interrogatory as overbroad, unduly burdensome, and abusive to the extent it seeks data sources without limitation to data sent to Google by third-party app developers after collection, if any, through GA for Firebase, Cloud Messaging, or AdMob—i.e. concerning, Plaintiff's theory of wrongdoing in the Third Amended Complaint.

Google further objects to this Interrogatory as overbroad, unduly burdensome, and compound because it seeks an identification of every "data source (including logs)" without a clear definition of what Plaintiffs consider to qualify as a "data source."

CONFIDENTIAL

Google further objects to this Interrogatory as overbroad, unduly burdensome, and abusive to the extent it seeks information regarding all uses of "WAA OFF DATA" without limitation to data sent to Google by third-party app developers after collection, if any, through GA for Firebase—i.e. concerning Plaintiff's theory of wrongdoing in the Third Amended Complaint.

Google further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Subject to and without waiving the foregoing, Google responds as follows:

Google has provided exacting detail of its main logs associated with the transmission of app-interaction / measurement data to Google via Google Analytics for Firebase when a user has turned WAA to "off," *inter alia*, in response to Plaintiffs' Interrogatory No. 1. Google has also provided samples of those primary logs that store the transmitted data, and is investigating further potential data sources that may contain such data. Google states, however, that it is not practical or relevant to account for every single potential data source (including logs) that may contain such data because there are various downstream users of the pseudonymous data described in response to Plaintiffs' Interrogatory No. 1. Nevertheless, the policies in place as described in response to Interrogatory No. 1, including the policies that forbid the re-association of pseudonymous data with personal identifiers, apply to all such downstream users of the data.

**INTERROGATORY NO. 15:**

Please DESCRIBE how GOOGLE currently uses and previously during the CLASS PERIOD has used WAA OFF DATA, including by explaining the extent to which and how GOOGLE currently uses and previously during the CLASS PERIOD used WAA OFF DATA to track or measure conversions and personalize advertisements.

**RESPONSE TO INTERROGATORY NO. 15:**

Google objects to this Interrogatory as vague and ambiguous with respect to the phrases "track or measure conversions" and "personalize advertisements." Google objects to this Interrogatory as vague and ambiguous as to several undefined terms and phrases susceptible to

multiple meanings. For purposes of this response, Google construes "Google" to mean Google LLC and "WAA" to mean the account-level setting called Web & App Activity.

Google further objects to this Interrogatory as overbroad, unduly burdensome, and abusive to the extent it seeks information regarding all uses of "WAA OFF DATA" without limitation to data sent to Google by third-party app developers after collection, if any, through GA for Firebase—i.e. concerning Plaintiff's theory of wrongdoing in the Third Amended Complaint. Google further objects to this Interrogatory as duplicative, including because Google has already responded to an interrogatory describing "what occurs when users . . . turn off (or previously paused) Web & App Activity."

Google further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Subject to and without waiving the foregoing objections, Google responds as follows: Google hereby incorporates its response and supplemental responses to Plaintiffs' Interrogatory No. 1 as if set forth here, and objects to this Interrogatory to the extent it is duplicative of Interrogatory No. 1. In addition to Google's responses to Interrogatory No. 1, Google responds here that it uses data sent to it via Google Analytics for Firebase for each of the uses described in its Privacy Policy and Google Analytics for Firebase Terms of Service, according to the settings and consents provided by both end users and Firebase customers. This includes pseudonymous conversion tracking and ad targeting for anonymized ad profiles.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15**

Subject to and without waiving the foregoing, Google responds further as follows:

DeviceID-keyed advertising interactions with an advertiser, such as views and clicks of that advertiser's ads, are joined to conversions recorded in that advertiser's app using Firebase (or other third party conversion tracking products or services). In this way, Google serves as an accountant, helping advertisers understand when the same device that interacted with their ad subsequently converted (e.g., opened their app, or made an in-app purchase, depending on how the advertiser has defined a conversion for the ad campaign).

When a user is signed in and has sWAA off, app activity data sent to Google via GA4F while sWAA is off cannot be used for personalization. If a user is signed out on a device and also happens to have one or more Google accounts that have sWAA turned off at the time of app activity in a GA4F-enabled app on that device, that app activity data could become part of an anonymized ad profile for ads personalization.

**INTERROGATORY NO. 16:**

Please DESCRIBE all facts that support or undermine a defense or affirmative defense that YOU have asserted, intend to, will, or may assert in the present litigation.

**RESPONSE TO INTERROGATORY NO. 16:**

Google objects to this Interrogatory as compound and unduly burdensome. Google objects to this Interrogatory as vague and ambiguous with respect to the phrase "support or undermine a defense or affirmative defense." Google further objects to this Interrogatory because it prematurely seeks expert opinion. Google further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Subject to and without waiving the foregoing objections, Google responds that it is willing to meet and confer with Plaintiffs over an appropriate response to this Interrogatory, including with respect to how to address its compound nature.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16:**

Subject to and without waiving the foregoing, Google responds further as follows:

App developers who use the GA for Firebase SDK must agree to Google Analytics Terms of Service, which requires that app developers disclose the use of Google Analytics and how it collects and processes data. *See* https://firebase.google.com/terms/analytics; https://marketingplatform.google.com/about/analytics/terms/us/. App developers who use GA for Firebase SDK have been expected to comply with the Google Analytics Terms of Service and/or the GA for Firebase Terms of Service, including disclosing to end users that they use Google's analytics services, and that certain data is being collected by the app developer and transmitted to Google to store, process, and analyze.