# EXHIBIT 2

| | |
|---|---|
| **From:** | owner-waagoogleteam@lists.susmangodfrey.com on behalf of Ryan Sila |
| **To:** | Santacana, Eduardo E.; WAAGOOGLETEAM@LISTS.SUSMANGODFREY.COM |
| **Cc:** | FIREBASE-WFGE |
| **Subject:** | RE: Rodriguez: Letter Brief on 9th Set of RFPs and Open Requests |
| **Date:** | Thursday, December 8, 2022 2:27:14 PM |

EXTERNAL Email

Counsel,

When can we expect Google to produce the information and documents described in this email?

In particular, Google agreed to produce:
1. Any estimates of accounts per user, including as derived through a user study, found within the custodians' files.
2. Formal documentation of the revenue-share percentage between Google and AdMob publishers.
3. Screenshots of the go/firebase-dashboard, including all the ways that reports can be generated from that dashboard.
4. Lists of apps using the GMA SDK and GA4F by month for the entire class period, as well as counts of the total number of such apps by month.
5. The presentation that Eric Miraglia gave to Sundar Pichai regarding Na▮ 2.0.
6. Produce the number of U.S. accounts that turned off (1) WAA and (2) sWAA during the class period that were neither Enterprise nor Supervised accounts.

Thanks,
Ryan

---

**From:** Ryan Sila
**Sent:** Monday, November 7, 2022 10:00 PM
**To:** Santacana, Eduardo E. <ESantacana@willkie.com>; WAAGOOGLETEAM@LISTS.SUSMANGODFREY.COM
**Cc:** FIREBASE-WFGE <FIREBASE-WFGE@willkie.com>
**Subject:** RE: Rodriguez: Letter Brief on 9th Set of RFPs and Open Requests

Thanks, Eduardo.  This letter-brief is resolved.

---

**From:** Santacana, Eduardo E. <ESantacana@willkie.com>
**Sent:** Monday, November 7, 2022 9:09 PM
**To:** Ryan Sila <RSila@susmangodfrey.com>; WAAGOOGLETEAM@LISTS.SUSMANGODFREY.COM
**Cc:** FIREBASE-WFGE <FIREBASE-WFGE@willkie.com>
**Subject:** RE: Rodriguez: Letter Brief on 9th Set of RFPs and Open Requests

EXTERNAL Email

Ryan,

See further responses in green.

Thanks,
Eduardo

**Eduardo E. Santacana**
**Willkie Farr & Gallagher LLP**
One Front Street | San Francisco, CA 94111
Direct: +1 415 858 7421 | Fax: +1 415 858 7599
esantacana@willkie.com | vCard | www.willkie.com bio
Pronouns: he, him, his

**From:** Ryan Sila <RSila@susmangodfrey.com>
**Sent:** Monday, November 7, 2022 8:59 PM
**To:** Santacana, Eduardo E. <ESantacana@willkie.com>; FIREBASE-WFGE <FIREBASE-WFGE@willkie.com>
**Cc:** WAAGOOGLETEAM@LISTS.SUSMANGODFREY.COM
**Subject:** RE: Rodriguez: Letter Brief on 9th Set of RFPs and Open Requests

**\*\*\* EXTERNAL EMAIL \*\*\***

Eduardo,

Thank you for your response.  Google's response substantially narrows the dispute, but we don't think it's quite moot.  Please see our comments in-line below.

Thanks,
Ryan

**From:** Santacana, Eduardo E. <ESantacana@willkie.com>
**Sent:** Monday, November 7, 2022 7:46 PM
**To:** Ryan Sila <RSila@susmangodfrey.com>; FIREBASE-WFGE <FIREBASE-WFGE@willkie.com>
**Cc:** WAAGOOGLETEAM@LISTS.SUSMANGODFREY.COM
**Subject:** RE: Rodriguez: Letter Brief on 9th Set of RFPs and Open Requests

EXTERNAL Email
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Counsel,

I write regarding your letter brief related to RFP Set 9. I think this brief is moot as follows:

**RFP 274:** Google does not make efforts to connect accounts to individual users, so there would be no reliable and accurate way to determine the average and median number of unique Google accounts held by an individual user. But if you have seen anything in the production that might go toward this question, we'd be happy to discuss a factual stipulation if that will resolve this.
If Google has conducted a study—based on log data, user surveys, or otherwise—that has generated

estimates of the average number of accounts per user, that would be responsive to this Request. If Google has no responsive documents, then a representation to that effect will resolve this RFP. We will look through our database of 24 custodians for this and ask someone who might know. If we can't find it, we can arrive at a mutually agreeable stipulation of fact on this.

**RFP 275:** Per our discussion last week, we have been able to determine that the average AdMob pay to publishers is a revenue share of ▮. Beyond this, all payments are variable. We can also provide some historical information in this vein.
This is not consistent with our discussion last week. Exhibit 62 from the Weng deposition suggests that revenue-share is "▮," or about ▮. Revenue-share percentages (and other revenue and cost-related figures) are likely to be memorialized in other documentation. We ask that Google product those business documents, not rely on engineering documents or representations of counsel. Will Google commit to producing that formal documentation, plus the historical information you reference? I think this is just a phrasing issue about which is the denominator. Before March 2022, the share percentage was right around ▮, which mirrors the ▮ you saw. In any case, we agree to produce formal documentation of this.

**RFP 276:** We investigated this again after our call last week and we do not have any responsive documents. But we think we have identified a way to do something along these lines by using the Firebase Metrics Dashboard (go/firebase-dashboard). Some of the reports we can run off this dashboard include top 5,000 Firebase apps by Daily App instances, top 1,000 Android and top 1,000 iOS apps, top customers according to Google's partners by top grossing apps or publisher group (if they had Data Sharing enabled), top customer usage (i.e., penetration rates), etc. We will get you the screenshots for this dashboard soon so we can figure out exactly which reports you need. The specific statistic you asked for is not something we have found in a document or dashboard, but this is the compromise we can offer.
Okay. Given Google's representation that it has no responsive documents and commitment to run reports of go/firebase-dashboard, we will drop this one from the brief.

**RFP 277 and 278:** When constrained by GA for Firebase app usage data (or AdMob+ and AdMob+Firebase integration data, which is generated through the same infrastructure), we cannot provide this information. Because there is no WAA bit in the analytics data, it just can't be done. To the extent you are seeking this sort of information outside the bounds of app measurement data from Firebase (and AdMob+/AdMob+Firebase), it is beyond the scope of discovery Judge Tse has permitted, and outside the scope of this case.
Okay. Given Google's representation that it has no responsive documents when limited in this way, then we can agree to drop this one from the brief on the condition that if Judge Seeborg grants Plaintiffs' motion for leave to amend, it will produce documents responsive to this request if they exist. We do not commit to producing anything in particular in response to an Order that doesn't exist. We can meet and confer if and when that happens.

**RFP 283** seeks "Documents sufficient to show the Google Apps and Non-Google Apps using the Firebase SDK, Google Analytics for Firebase, the Google Mobile Ads SDK, and AdMob+, throughout the Class Period." As you know, we were able to identify a way to do this for GA for Firebase. We have now identified a way to do it for AdMob, too. This method does not specify for certain whether the GMA SDK apps we can count had AdMob+ enabled, but AdMob+ has been default since it launched, and the vast majority of publishers have either that or a Firebase integration incorporated in their apps. We will have both counts by month

and app lists by month for the entire class period, but the list of apps themselves is highly sensitive, and we'd like to discuss an approach to transferring that information to you that ensures its security.
<span style="color:red">Thank you.  We appreciate the sensitivity of the list, and we will work with Google to handle the transfer and storage of that list appropriately.  We can drop this one from the brief on the condition that Plaintiffs ultimately receive this information.</span>

Next, your letter brief asks about a "a presentation that [Mr. Miraglia] gave to Google's CEO Sundar Pichai regarding a Google initiative called N***** 2.0, which Mr. Miraglia described as an effort 'to refine the way [Google's] settings worked to give users more control and simpler control over the way data was collected and used.'" *See* Miraglia Rough Tr. 57-60. We will produce this document this week.
<span style="color:red">Thank you.  We can drop this one from the brief.</span>

Finally, for **RFP 280**, you've requested that we "show the number of U.S.- and California-based Google accounts for which WAA or sWAA was turned off during the class period, identified by type (e.g., consumer, enterprise)." We can show the number of US accounts that turned off WAA or sWAA during the class period that were not enterprise (dasher) or supervised (minors, unicorn, etc.) accounts. We can also stipulate that California makes up a proportional number of US accounts, but we can't measure reliably how many are California accounts. Does that get at what you're looking for here?
<span style="color:red">It does.  Thank you.  We can drop this one from the brief.</span>

Thanks,
Eduardo


**Eduardo E. Santacana**
**Willkie Farr & Gallagher LLP**
One Front Street | San Francisco, CA 94111
Direct: +1 415 858 7421 | Fax: +1 415 858 7599
esantacana@willkie.com | vCard | www.willkie.com bio
Pronouns: he, him, his

**From:** Ryan Sila <RSila@susmangodfrey.com>
**Sent:** Friday, November 4, 2022 9:33 AM
**To:** FIREBASE-WFGE <FIREBASE-WFGE@willkie.com>
**Cc:** WAAGOOGLETEAM@LISTS.SUSMANGODFREY.COM
**Subject:** Rodriguez: Letter Brief on 9th Set of RFPs and Open Requests

**\*\*\* EXTERNAL EMAIL \*\*\***

Counsel,

Please find attached Plaintiffs' draft of a letter brief regarding the 9th set of RFPs, as well as a few other open requests.

Thanks,

Ryan

**Ryan Sila | Susman Godfrey LLP**

1301 Avenue of the Americas, 32nd Floor | New York, New York 10019

212-336-8341 (office) | 314-853-1355 (cell)

rsila@susmangodfrey.com | www.susmangodfrey.com

---

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

---

This e-mail contains communication that may constitute attorney/client privileged information and/or attorney work product. If you received this message in error, please notify the sender and delete it immediately.

To unsubscribe from the WAAGOOGLETEAM list, click here