**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
　bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
　sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
　esantacana@willkie.com
NOORJAHAN RAHMAN  (SBN: 330572)
　nrahman@willkie.com
ARGEMIRA FLÓREZ (SBN:  331153)
　aflorez@willkie.com
HARRIS MATEEN (SBN: 335593)
　hmateen@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone:  (415) 858-7400

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, et al. individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>GOOGLE LLC, *et al.*,<br><br>　　　　　　　Defendant. | Case No.  3:20-CV-04688 RS<br><br>**REPLY IN SUPPORT OF MOTION AND MOTION TO EXCLUDE OPINION OF PLAINTIFFS' DAMAGES EXPERT MICHAEL J. LASINSKI**<br><br>Date:　　October 5, 2023<br>Time:　　1:30 p.m.<br>Judge:　　Hon. Richard Seeborg<br>　　　　　Ctrm. 3, 17th Floor, SF |

REPLY IN SUPPORT OF MOTION AND MOTION TO EXCLUDE OPINION OF PLAINTIFFS'
DAMAGES EXPERT MICHAEL J. LASINSKI
Case No.  3:20-CV-04688

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 2

    A. Plaintiffs fail to fit the facts of this case within the strictures of a disgorgement-of-profits remedy. ................................................................................ 2

    B. Plaintiffs seek to dispense with the need to show that the profits they target for disgorgement were attributable to the allegedly wrongful conduct. ............................. 4

    C. The Opposition fails to defend Lasinski's 100% disgorgement opinion. ..................... 7

    D. The Opposition confirms Lasinski's $3 damages figure is arbitrary. ......................... 10

III. CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ...................................................................................................3

*Campbell v. Facebook Inc.*,
    315 F.R.D. 250 (N.D. Cal. 2016) ..............................................................................................6

*CTC Real Estate Servs. v. Lepe*,
    140 Cal. App. 4th 856 (2006) ................................................................................................1, 6

*ESG Cap. Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) ...................................................................................................3

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ..................................................................................................3, 6

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
    772 F.2d 505 (9th Cir. 1985) .....................................................................................................7

*Hart v. TWC Prod. & Tech. LLC*,
    No. 20-CV-03842-JST, 2023 WL 3568078 (N.D. Cal. Mar. 30, 2023) ..........................5, 6, 11

*Ivie v. Kraft Foods Glob., Inc.*,
    2015 WL 183910 (N.D. Cal. Jan. 14, 2015) .............................................................................2

*Katz-Lacabe v. Oracle Am., Inc.*,
    No. 22-CV-04792-RS, 2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ........................................3

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ............................................................................................................2

*Looksmart Grp., Inc. v. Microsoft Corp.*,
    No. 17-CV-04709-JST, 2019 WL 4009263 (N.D. Cal. Aug. 5, 2019) ......................................7

*Meister v. Mensinger*,
    230 Cal. App. 4th 381 (2014) ................................................................................................4, 5

*Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*,
    No. 21-CV-06536-EMC, 2023 WL 4108838 (N.D. Cal. June 21, 2023) .................................8

*Oracle Am., Inc. v. Google Inc.*,
    No. C 10-03561 WHA, 2016 WL 1743154 (N.D. Cal. May 2, 2016) ......................................8

*Silva v. B&G Foods, Inc.*,
    No. 20-CV-00137-JST, 2022 WL 4596615 (N.D. Cal. Aug. 26, 2022) ....................................7

*Uzyel v. Kadisha*,
    188 Cal. App. 4th 866 (2010) ................................................................................4

**Statutes**

Fair and Accurate Credit Transactions Act.........................................................................9

Patent Act and Copyright Act to Lanham Act ....................................................................3

Unfair Competition Law, the Consumer Legal Remedies Act, or the False
    Advertising Law..........................................................................................................2

**Other Authorities**

55 Cal. Jur. 3d Restitution § 2.............................................................................................4

Rest. (3d) of Restitution § 51 cmt. a ............................................................................5, 10

Rule 30(b)(6)........................................................................................................................9

I.       INTRODUCTION

Plaintiffs begin their argument with the incantation, enshrined by statute in California, that "[n]o one can take advantage of his own wrong." Opp. at 6:27 (quoting Cal. Civ. Code s. 3517). The rest of their brief leans so hard on that aphorism, they risk crushing it. The cavalcade of criticisms in Plaintiffs' brief cannot conceal the true nature of their arguments. Plaintiffs failed to propose a class-wide method to measure damages in this privacy case that relies on the *true* harm *real* people suffered in the *actual* world because there is none to find, or because they concluded it would be too hard to do class-wide. So, they cling to disgorgement of profits and a simple "average" actual damages figure, hoping their desperate stand will re-imbue this case with *in terrorem* settlement value. But the law is not with them.

Even if there were some hypothetical privacy class action for which disgorgement of profits was viable enough to allow such a damages model to be presented to the fact-finder, this case isn't it. For their part, Plaintiffs cite no case where such a disgorgement award was actually made to a privacy class, though courts have acknowledged at times that in the right circumstances such an award is theoretically possible. In an attempt to fit inside the remedy, Plaintiffs eschew the strictures applied to such an award: they argue they need not show causation; they need not take into account *any* facts in the real world undermining the idea that 100% of Google's profits are attributable to the allegedly wrongful conduct; they need not be subject to the requirement that disgorgement is for mistake, fraud, or coercion; and, they need not show anything but Google's top-line earnings from sWAA-off users, which they say shifts the burden to Google to disentangle it all. All of this would make Plaintiffs' job easier, but it is far from just, and certainly not what their authorities prescribe.

Plaintiffs mistake Google's argument concerning Lasinski's disgorgement figure. It's not that Google could have served ads some other way in a hypothetical world that undermines the figure; it is that Lasinski's figure is itself by definition speculative. Plaintiffs seek disgorgement of all of Google's advertising revenue based upon an alleged misrepresentation that led Google to keep anonymized receipts Plaintiffs claim it should not have kept. Lasinski inexplicably credits a tiny cog in the ads machine as the but-for cause of the entire machine's revenue, even as his lawyers disclaim any need to prove causation.

When it comes to Lasinski's $3 actual damages figure, the opinion as explicated and expanded by Plaintiffs' brief is not even the subject of expert opinion. Any lay person can look at the Screenwise website and see that survey participants get paid $3 for mobile phones. What does Lasinski add? What specialized knowledge does he contribute? There is no model to speak of, and Plaintiffs' efforts to revive the model just confirm its flaws.

Besides, Plaintiffs concede that Lasinski's "model" intentionally ignores real differences in the class that would dramatically affect the amount of actual damages. They also concede that no matter what Google used the data for (personalized advertising or "banal" record-keeping), the actual damage to the class is the same. It doesn't take an expert to see the problem with that theory. Neither of Lasinski's models are reliable and the Court should exclude them both.

## II. ARGUMENT

### A. Plaintiffs fail to fit the facts of this case within the strictures of a disgorgement-of-profits remedy.

Unjust enrichment measured as disgorgement of profits is, as Plaintiffs concede, an equitable remedy or quasi-contractual cause of action limited to certain circumstances, certain types of claims, and in light of certain conduct. It is not a shortcut; Plaintiffs cannot use it to ignore all other types of damage available for their claim. As an equitable claim and remedy, unjust enrichment is an exception, not the rule.

Plaintiffs note in their brief that it's "utterly implausible that the California Legislature" did not intend for CDAFA claims to carry disgorgement of profits in all cases. They cite no authority so holding. And the California Supreme Court doesn't agree with them. Where the "remedy of nonrestitutionary disgorgement is not expressly authorized by the statute," the court must make a determination of legislative intent, a detailed analysis that has occupied many California courts over the years. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1146 (2003). Those courts have concluded, for example, that disgorgement is not available for claims asserted under the Unfair Competition Law, the Consumer Legal Remedies Act, or the False Advertising Law, even though all three of those statutes authorize equitable remedies. *Ivie v. Kraft Foods Glob., Inc.*, 2015 WL 183910, at *2 (N.D. Cal. Jan. 14, 2015). The Ninth Circuit, too, has noted that California case law is

"unsettled" when it comes to unjust enrichment, and will allow it in some cases, but not others. *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038–39 (9th Cir. 2016). And the Restatement notes that under federal law, some causes of action permit disgorgement and some do not. Rest. (3d) of Rest. and Unjust Enrichment § 42 (2011) (comparing Patent Act and Copyright Act to Lanham Act).

Plaintiffs do not undertake any legislative intent analysis (or cite to any common law case concerning the invasion of privacy tort). And, even if a claim does allow for disgorgement, it is still subject to limitations. The enrichment must be at the actual expense of the plaintiff, for example. This Court has already so held, rejecting Plaintiffs' analogy to the *Facebook Tracking* case as an unduly broad reading of that case's holding. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020). In *Katz-Lacabe v. Oracle Am., Inc.*, No. 22-CV-04792-RS, 2023 WL 2838118, at *10 (N.D. Cal. Apr. 6, 2023), this Court set the Ninth Circuit decision in "the opinion's full context," and denied disgorgement of profits where the " class members have neither directly expended their own resources, nor shown that their property has become less valuable." *Id.* Here, Plaintiffs make no attempt to do that.

Further, to be entitled to disgorgement, the defendant's conduct must involve "mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing 55 Cal. Jur. 3d Restitution § 2). Plaintiffs do not try to argue that this case meets that standard. Instead, they put forward bespoke sophistry: that the requirement does not apply if the request for unjust enrichment is styled as a remedy rather than an independent cause of action. Opp. at 9. They say this is so because the requirement exists only to ensure there was actual harm in cases where unjust enrichment is an independent cause of action, as though actual harm is simply unnecessary in all other cases. The point of the "mistake, fraud, coercion, or request" requirement is not to ensure liability has been established, but to ensure equitable circumstances deserving of an award of unjust enrichment are present. In all other cases, legal remedies should and do suffice. Because Plaintiffs don't try to meet this requirement, that should settle the issue. Indeed, the Restatement on which Plaintiffs rely discusses this issue explicitly, concluding that the label is irrelevant; "Unjust enrichment" can be an independent cause of action, or a remedy, but whatever

the label, entitlement to it and how it is measured will depend on a variety of factors, not the label. Rest. (s) 1 cmt. e; *see also* 55 Cal. Jur. 3d Restitution § 2.

### B. Plaintiffs seek to dispense with the need to show that the profits they target for disgorgement were attributable to the allegedly wrongful conduct.

Quoting *Uzyel v. Kadisha*, 188 Cal. App. 4th 866, 894 (2010), Plaintiffs' opening defense of Lasinski's disgorgement model is that "the scope of disgorgement is not defined by the 'presence or absence of but-for causation.'" Opp. at 10:21. But that's not what *Uyzel* says. Summarizing a Restatement section, it says instead that "[t]he determination of the amount of a defendant's profits attributable to wrongful conduct can be a difficult task," and that this is usually a "problem of attribution," which "involves questions of causation and remoteness, that is, how far to follow a chain of causation before deciding that the causal connection is too attenuated to justify a recovery." *Uyzel*, 188 Cal. App. 4th at 894. And, it says, "[t]he presence or absence of but-for causation ***is not necessarily determinative*** of unjust enrichment." *Id.* From this passage, Plaintiffs apparently concluded they could recover whatever profits they choose without demonstration of *any* causation at all. In this, they again see unjust enrichment as a panacea for their problems in measuring injury, harm, damages, expended resources, diminishment of property value, emotional distress, anxiety, or any other recognized measures of damage traditionally associated with their claims.

Plaintiffs' view on causation would surprise Mr. Lasinski, who made clear his task was, as instructed, to determine Google's profits "attributable to conversion tracking" and "attributable to the serving and monetization of ads" for sWAA-off users. Lasinksi Rpt., ECF 314 ¶ 75; *see also* Lasinski Dep. Tr., ECF 326-2 at 194 (confirming that his task was to measure profit with a "causal connection" to the "alleged unlawful conduct"), 129-30 (confirming his task was to measure the money Google earned "[i]n the but-for world," where Google "should not have been able to" serve the sWAA-off ads). And later in their own brief, Plaintiffs defend Lasinski's model as something that measures what would have happened in the "but-for" world, even as they seek to be free of the requirement to do so. Opp. at 13:3-6.

*Meister v. Mensinger*, 230 Cal. App. 4th 381 at 398 (2014), on which Plaintiffs greatly rely, acknowledges the attribution rule, which comes from the Restatement, too: "[T]he fact that one

4
REPLY IN SUPPORT OF MOTION AND MOTION TO EXCLUDE OPINION
OF PLAINTIFFS' DAMAGES EXPERT MICHAEL J. LASINSKI
Case No. 3:20-CV-04688 RS

person benefits another is not, by itself, sufficient to require restitution. . . . The profit for which the wrongdoer is liable . . . is the net increase in the assets of the wrongdoer, *to the extent that this increase is attributable to the underlying wrong.*" *Id.*; *Accord* Rest. 3d of Rest. and Unjust Enrichment § 51 (2011) ("[T]he unjust enrichment of a conscious wrongdoer, or of a defaulting fiduciary without regard to notice or fault, is the net profit *attributable to the underlying wrong*. The object of restitution in such cases is to eliminate profit from wrongdoing while avoiding, so far as possible, the imposition of a penalty."). Section 51 of the Restatement empowers the court in this regard, providing that "[i]n determining net profit the court may apply such tests of causation and remoteness, may make such apportionments, may recognize such credits or deductions, and may assign such evidentiary burdens, as reason and fairness dictate, consistent with the object of restitution." In all cases, the calculation concerns "the identification and measurement of those gains to the defendant that should be regarded as unjust enrichment, in that they are *properly attributable* to the defendant's interference with the claimant's legally protected rights." *Id.* § 51 cmt. a.

The issue here is that Lasinski assumed without foundation that all of Google's revenue from ads served to sWAA-off users is attributable to Google's ability to keep a record the ad was served. That unfounded assumption led Lasinski to decline to provide a reasonable approximation of attributable profits, opting instead to try and grab them all. Lasinski disclaimed any expertise in the advertising industry yet assumed that advertisers would simply stop placing ads rather than use an obvious alternative; that is not a reliable damages model.

Plaintiffs cite no case where a court has confronted the attribution problem head-on in the context of a privacy class action; but Google did. In *Hart v. TWC Prod. & Tech. LLC*, No. 20-CV-03842-JST, 2023 WL 3568078, at *13 (N.D. Cal. Mar. 30, 2023), the plaintiffs alleged the wrongful collection of user location data and its use for advertising. The plaintiffs' expert, Ms. Thompson, presented a model that measured *only* disgorgement of profits, as Mr. Lasinski does here, and Thompson's model amounted to little more than the calculation "(Gross Revenue from Products using user device location services) - (Costs, if any, identified) = (Unjustly Retained Benefit) Allocated to Putative Class Members." *Id.* As to whatever advertising revenue the defendant obtained "from users' location data, the amount necessarily varied depending on a variety of factors

including frequency of use, user location, and user movement." *Id.* As a result, Thompson's model was inadmissible, as it could not be used to show the amount of unjust enrichment on a class-wide basis. *Id.* Lasinski did the same thing here: he simply identified "Gross Revenue from Products using [sWAA-off ads record data]" and subtracted some costs in order to calculate unjust enrichment. *See also Campbell v. Facebook Inc.*, 315 F.R.D. 250, 268 (N.D. Cal. 2016) ("[P]laintiffs' expert relies on the assumption that, because Facebook derives value (and therefore profit) from its Social Graph, and because part of the Social Graph is constructed based on information gleaned from the challenged interceptions, then each challenged interception resulted in an equal amount of profit to Facebook. While this assumption has the benefit of expediency, as it would lead to a straightforward damages distribution, it makes no attempt to actually calculate the profit attributable to each individual interception.")

The "peculiar circumstances" of *CTC Real Estate Servs. v. Lepe*, 140 Cal. App. 4th 856, 860-61 (2006), don't help Plaintiffs either. There, the court ruled that disgorgement of profits from a literal identity theft—the taking and use of personally identifiable information to buy real property—could be awarded. Here, Mr. Lasinski *agrees*, as does Mr. Hochman (Plaintiffs' technical expert), that the data in question is not logged with personally identifying information and is not used to personalize advertising. Ex. 5 (Hochman Deposition Tr.), ECF 326-6 at 194:17-195:4, 203:7-16; Hochman Rpt., ECF 315-10 ¶ 139; Lasinksi Rpt., ECF 315-12 ¶ 44 ("I understand that Google represents that it does not use data from GA4F to personalize ads when WAA or sWAA is set to 'off.'..."); Ex. 1 (Lasinski Dep. Tr.), ECF 326-2 at 79: 15-18, 80:13-17, 81:2:-9, 82:19-22. The use in question—logging the fact that an ad was served to an anonymous alphanumeric string and that later the same device installed or somehow interacted with the advertiser's app or website—does not fall under the rubric set by the above-cited cases.

And, *Facebook Tracking* is even farther afield here than it was in *Oracle America*, because the Ninth Circuit was addressing whether disgorgement could be awarded in light of allegations, taken as true, that Facebook created "cradle-to-grave," personally identifiable profiles of users, that it took steps to personally identify users, and that the users' browsing histories had financial value that was diminished by Facebook's conduct. *Facebook Tracking*, 956 F.3d at 600-01. Here, by

1  contrast, the allegation is simpler and much less salacious; Lasinski argues that total disgorgement of
2  profit is appropriate for anonymized receipt-keeping. No authority so holds.

3        **C.**      **The Opposition fails to defend Lasinski's 100% disgorgement opinion.**

4        Plaintiffs downplay the many contributing factors to Google's profits, from serving ads to
5  sWAA-off users that have nothing to do with logging, to the fact that the ad was served. *See* Knittel
6  Rpt., ¶¶101-1; Ex. 7 ("Black Rpt."), ¶¶205–212; 4. That evidence amply supports a judicial
7  conclusion that Lasinski's 100% disgorgement figure is simply too speculative to permit.

8        Plaintiffs likewise discard *Silva v. B&G Foods, Inc.*, No. 20-CV-00137-JST, 2022 WL
9  4596615, at *3 (N.D. Cal. Aug. 26, 2022), as a restitution case, not an unjust enrichment case. Opp.
10 at 11:20. But the principle the court relied on was simply that an expert cannot demand "full
11 restitution" without demonstrating there weren't other reasons for the revenue in question.  There, as
12 here, there was evidence the plaintiffs would not have changed their behavior had they known the
13 "truth" about the defendant's conduct. *Silva*, 2022 WL 4596615, at *3.

14       And Plaintiffs elide the prior exclusion of Lasinski because that case was about a reasonable
15 royalty for patent infringement. *Looksmart Grp., Inc. v. Microsoft Corp.*, No. 17-CV-04709-JST,
16 2019 WL 4009263, at *1 (N.D. Cal. Aug. 5, 2019). In that case, Lasinski made the "insupportable"
17 assumption that, of the potential figures the parties might have agreed upon in a hypothetical
18 negotiation, the one that was *most* favorable to the patentee, the one that "arbitrarily allocates the
19 entire value" to the plaintiff, was the right one. *Id.* Here, Lasinski arbitrarily allocates the entire
20 value of sWAA-off ad serving to Google's logging of anonymous ad service records. As in
21 *Looksmart*, the assumption that the entire pool of money can be attributed to the wrongful conduct is
22 insupportable "[a]s a matter of both rudimentary economics and common sense." *Id.* Regardless of
23 the type of claim, an expert cannot just pick the biggest number available (or the smallest, as
24 Lasinski then inexplicably does for his actual damages opinion in order to be "conservative") and
25 declare the job done. *See id.* at *5 (criticizing Lasinski for defending arbitrary choices as
26 "conservative"). Indeed, when a trial court tried to do just that in a copyright case, the Ninth Circuit
27 reversed it. *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 518–19 (9th Cir.
28 1985) (reversing trial court for declaring what would be a "fair approximation of the profits . . .

attributable to the infringement" rather than providing "reasoned explanation of or formula for its apportionment.").

Plaintiffs argue the burden of bringing the disgorgement-of-profits figure back down to Earth is Google's, not Plaintiffs'. By that logic, it would seem, Plaintiffs could simply tag Google for all profits it makes and let Google explain the rest. But Plaintiffs take pains to persuade that Lasinski *did* try and calculate how much revenue Google made that was "attributable" to the allegedly wrongful conduct. And for good reason: Plaintiffs are *required* to present a "reasonable approximation" of the profits attributable to the wrongful conduct. Rest. § 51(5)(d). Plaintiffs are allowed to point to a profits figure; the problem is that they made no attempt to reasonably approximate attributable profits at all. Instead, they simply ask the Court to Order disgorgement of the entire pie, every cent Google collected for serving ads to sWAA-off users, because Google kept anonymized receipts.

Plaintiffs next claim to identify a "fundamental error" in Google's position: that non-infringing alternatives are not relevant to disgorgement of profits, as explained by Judge Alsup in *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2016 WL 1743154, at *3 (N.D. Cal. May 2, 2016). Maybe so, at least in that complex copyright case. But Google isn't arguing that non-infringing alternatives defeat disgorgement. Google's experts describe *actual* conduct in the real world demonstrating the minimal value the challenged data receipts contribute to Google's bottom line. This includes the fact that Google is *actually* modeling conversions rather than using actual conversion data. Knittel Rpt. ¶85; *see also* Hochman Rpt. ¶295. And it includes the fact that, since iOS 14.5 launched, on iOS, Google has recorded neither the ad service nor conversion data Plaintiffs complain about, though it still serves ads on that operating system. Black Rpt. ¶¶ 103–107. These facts torpedo Lasinski's argument that, without the data at issue, Google could never have served the ads or measured the conversions. *See Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*, No. 21-CV-06536-EMC, 2023 WL 4108838, at *7 (N.D. Cal. June 21, 2023) (rejecting attempted application of *Oracle Am., Inc. v. Google* because expert wasn't presenting a non-infringing alternative, but instead providing a "correction" of opposing expert's "apportionment" based on conduct that "actually exists.").

Throughout much of the class period, Google lacked the challenged data at least as to large chunks of the proposed class, and that didn't appreciably lower its profits. And even if it did, the point here is that Lasinski didn't try to measure *by how much* those profits dropped. Plaintiffs' opposition brief does not address either of these facts because there is no answer to them—it is beyond dispute that Google doesn't need and never did need the data at issue to serve ads because it already serves ads without it.

Consider instead if this were a Fair and Accurate Credit Transactions Act (FACTA) case, and a grocery store were accused of failing to truncate credit card numbers on actual receipts. Obviously Plaintiffs would not be entitled to disgorge all revenue the store makes on grocery sales because the receipts for each item include six trailing credit card number digits instead of the statutorily required five. Why, here, should it be any different? Plaintiffs do not claim that Google did anything with the supposedly sensitive information collected by its SDKs, that it personally identified them for any purpose, that it disclosed any information about them to anyone, or that it exploited knowledge about their identities for profit. In truth, Plaintiffs have no interest in Google's anonymized record-keeping at all, as it does not affect their privacy.

Finally, Plaintiffs' consistent reliance on the ChromeGuard study underlines the dangers of having the same plaintiffs' counsel prosecuting multiple cases against the same defendant relating to different technologies. Plaintiffs' Opposition mischaracterizes the ChromeGuard study to conceal that it cannot be used as foundation for Lasinski's opinion. This is no accident. After years of discovery in this case, Plaintiffs submitted a damages report that bore no relation to the battlegrounds on which the parties fought during those years. In *this* case, as opposed to *Brown*, Google produced 5 documents that mention ChromeGuard, and Plaintiffs never requested ChromeGuard documents in this case at all. Compare that with *Brown*, where Google produced almost 3,000 ChromeGuard documents and provided Rule 30(b)(6) testimony about it. The conclusion is inescapable: Lasinski's disgorgement opinion was transferred wholesale from *Brown* (because he could not come up with anything that fit this case) but without a transfer of the factual record in *Brown*. Instead, in briefing, Plaintiffs make attorney argument about what it all means. And those explanations are misleading and sometimes wrong.

The ChromeGuard study measured blocking *all* third party cookies–that is, cookies that measure all sorts of data for all sorts of purposes, including, potentially, personalized advertising, whether it is a Google cookie or not. Plaintiffs agree, but they say it does not matter because Google will always have to keep at least *some* record that it served an ad. Opp. at 13. Per Plaintiffs, "[t]hird-party analytics providers like Kochava can collect some data regarding users' behavior, but they do not collect app activity data reflecting the ads Google serves and places." Opp. at 13:22-14:1. With attorney argument only, Plaintiffs declare: "[t]he upshot is that whichever analytics provider an advertiser uses, Google would earn nothing from (s)WAA-off conversions—just like with ChromeGuard." Opp. at 14:7-8.

This argument unmasks the true nature of Plaintiffs' disgorgement theory—it does not matter how the hypothetical situation changes, it does not matter what caused Google to earn the advertising revenue, it does not matter whether Google measures the actual app activity data (the first open or install of the app, for example) as opposed to just the fact of service of an ad to a random device. No matter what, Plaintiffs say they get the exact same disgorgement amount. The profits Google generated from the wrongful conduct, they argue, don't even depend on the wrongful conduct; if an ad was served to a person who had sWAA off, they say, the entirety of the revenue from that ad is disgorged no matter what Google did. Lasinski Rpt. ¶¶ 75, 77–80, 113. That is just the type of opinion this District routinely strikes as inadmissible.

### D.     The Opposition confirms Lasinski's $3 damages figure is arbitrary.

Lasinski defined his task on actual damages as follows: "actual damages can be determined as a function of the payments necessary to incentivize an individual to knowingly surrender the choice to keep activity on mobile apps private and allow an organization to track app activity data." Lasinski Rpt. ¶ 130. Though he does not say it, this is a species of a license analysis, not unlike the license anticipated by the Restatement. *See* Rest. (3d) of Restitution § 51 cmt. a ("Market value may be identified, where appropriate, with the reasonable cost of a license.") But unlike any license analysis this District has approved, Lasinski's "license" has no factors. According to Lasinski, nothing can push the number up. Nothing can push the number down. It is, in Lasinski's view, a "conservative" "floor" that is "appropriate." And no change in circumstances—an increased or

1  decreased severity of intrusion, the collection of a dating app's data as opposed to the ESPN app's

2  data, the frequency or quantity of data collected—*nothing* justifies a different actual damages figure.

3          Plaintiffs set out to revive Lasinski's model exclusively through attorney argument. They use

4  more words in their "fact" section and argument to explain how Lasinski selected $3 per device than

5  Lasinski himself used to explain it. *Compare* Opp. at 4-5, 16-20 *with* Lasinski Rpt. ¶ 151. And most

6  of the words Lasinski used were copy-pasted from *Brown*, anyway. The unique part of his opinion,

7  "fitted" to this case, is a sentence long. *See* Mot. at 18 (sentence in blue at the bottom of Figure 1).

8  Further, Plaintiffs' attempt to revive the model relies on mis-citations to Lasinski's report and

9  uncited assertions. For example, the Opposition claims that Lasinski intentionally "excluded

10 enrollment payments, which require the participant to provide additional information and an

11 agreement to abide by certain rules set forth by Screenwise, *and are not compensation for activity*

12 *data*." Opp. at 5:14-16 (citing Lasinski Rpt. ¶ 140) (emphasis added). But the cited paragraph

13 doesn't say that. This is the first time Google has heard this (faulty) justification. It both has no

14 grounding in Lasinki's disclosed actual damages opinion, nor supplies any grounding to it. Lasinski's

15 $3 opinion is no expert opinion at all. There is no specialized knowledge applied by Lasinski. Any

16 lay person can read the public documentation of Screenwise and cling to the $3 figure without

17 reason or method.

18         Plaintiffs' answer to Lasinski's admission that his model does not differ as to any factor,

19 including the severity of the alleged intrusion, is similarly misguided. They distinguish *Hart* and

20 *Utne* because those cases "did not involve uniform market transactions," whereas Screenwise treats

21 all participants the same. But that's the wrong comparison. As in *Hart* and *Utne*, the question here is

22 whether the *allegedly unlawful conduct* affected the class members uniformly (not Lasinski's

23 selected comparable transaction, Screenwise). Plaintiffs do not dispute that, in this case, no two class

24 members suffered the same alleged intrusion. How could they? Plaintiffs accuse over a million apps

25 and each purported class member used any number of them in virtually innumerable ways. It is just

26 this kind of variation that led those courts to deny class certification on damages grounds.

27         Plaintiffs also claim that Lasinski "identified four comparable transactions," and hinge the

28 success of their actual damages model to background law on how assets are valued using the

recognized "market approach." Opp. at 16-17. Yet Lasinsi's report never mentions either the "market approach" nor the word "comparable." And that's not just semantics; the selection of a proper comparable is a subject of heated debate in litigation, and not infrequently, opinions about comparables are excluded by courts because the comparable is inadequate. Here, the inadequacy of Lasinski's comparable is too great to permit, especially in the face of millions of comparables he never even considered: the consistent willingness of users to provide similar record-keeping data to other ad networks and analytics providers solely in exchange for using an app.

Screenwise is a textbook inadequate comparable. In this case, the claim is that Google uses anonymized logs to keep track of which ads it serves and which ads result in conversions, all without personalizing advertising, identifying users, or otherwise exploiting the identity of any user. Contrast that with Screenwise, where Google monitors and tracks, with the survey participant's consent, *everything*—text messages, keystrokes, all activity, *everything*—and specifically discloses that it may use it for personalized advertising, to personally identify users, and to rejoin data from the users with other data Google previously collected. Nothing in the record explains how this distinction was taken into account by Lasinski, because it wasn't. He admitted that his model does not depend on the severity of the intrusion at all. Lasinski Tr. at 285:15-23; 286:8-16, 287:1-10.

Finally, Plaintiffs complain that Google won an early discovery motion allowing it to retain its pre-existing retention period for granular Google Analytics data. This is not the forum for such grievances. Plaintiffs accepted the outcome of the motion, and in their opposition brief, they make no showing that the data deleted pursuant to Google's retention policy would fix Lasinski's problem. Besides, if the data are missing, that still does not excuse Lasinski propounding a model with no methodology. *Daubert* applies here, and an unreliable opinion is unreliable, regardless of the discovery history.

On the subject of the $3-***per-device*** opinion, however, by Lasinski's own (flawed) logic, if a user has ten apps on their phone, there is a 99.9% chance one of them uses one of the accused SDKs, and the average user uses ten different apps every day. Lasinski Rpt. ¶ 157. Why, then, did Lasinski not multiply $3 by both devices and months? The answer is obvious – a trillion dollar damages figure doesn't pass the smell test. And fairly so, but then why should a single $3 payment? That is

grounded neither in a calculation *nor* the structure of Screenwise payments. It is, in short, a number plucked for a specific outcome, not for its accuracy.

Plaintiffs conclude their defense of the $3 figure with a proposition: if Google will stipulate that the $3 payment is inadequate and so should apply on a per-month basis over the class period, Plaintiffs will accept it. That proposal confirms that Lasinski's actual damages model is not reliable—it is apparently negotiable.

## III.   CONCLUSION

For the foregoing reasons, the Court should strike Lasinski's inadmissible damages models.

Dated:  September 14, 2023

**WILLKIE FARR & GALLAGHER LLP**

By: */s/ Benedict Y. Hur*

Benedict Y. Hur
Simona Agnolucci
Eduardo E. Santacana
Noorjahan Rahman
Argemira Flórez
Harris Mateen

*Attorneys for Defendant Google LLC*