```
 1  WILLKIE FARR & GALLAGHER LLP
    BENEDICT Y. HUR SBN: 224018
 2    bhur@willkie.com
    SIMONA AGNOLUCCI SBN: 246943
 3    sagnolucci@willkie.com
    EDUARDO E. SANTACANA SBN: 281668
 4    esantacana@willkie.com
    NOORJAHAN RAHMAN SBN: 330572
 5    nrahman@willkie.com
    ARGEMIRA FLÓREZ SBN: 331153
 6    aflorez@willkie.com
    HARRIS MATEEN SBN: 335593
 7    hmateen@willkie.com
    One Front Street, 34th Floor
 8  San Francisco, CA 94111
    Telephone: 415 858-7400
 9
10  Attorneys for Defendant
    GOOGLE LLC
11
12
13              UNITED STATES DISTRICT COURT
14            NORTHERN DISTRICT OF CALIFORNIA
15                 SAN FRANCISCO DIVISION
16
```

| | |
|---|---|
| ANIBAL RODRIGUEZ, et al. individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:20-CV-04688-RS<br><br>**GOOGLE LLC'S STATEMENT IN SUPPORT OF MOTION TO SEAL PORTIONS OF CLASS CERTIFICATION & *DAUBERT* BRIEFING (DKTS. 314 & 321)**<br><br>**(CIVIL LOCAL RULE 79-5)**<br><br>Judge: Hon. Richard Seeborg<br>Courtroom: 3, 17th Floor<br>Action Filed: July 14, 2020<br>Trial Date: Not Set |

## I. INTRODUCTION

Pursuant to Civil Local Rule 79-5, Defendant Google LLC submits this statement of reasons in support of sealing select portions of the Parties' Class Certification and *Daubert* Briefing pursuant to this Court's August 15, 2023 Order (Dkt. 321) and in response to Plaintiffs' Administrative Motion to File Under Seal Portions of Plaintiffs' Motion for Class Certification (Dkt. 314). As further outlined below, the Parties seek to seal portions of: Plaintiffs' Motion for Class Certification ("Motion") (Dkt. 315) and its corresponding exhibits and attached expert reports, Plaintiffs' Trial Plan (Dkt. 315-1), Google's Opposition to Plaintiffs' Motion ("Opposition") (Dkt. 323), Plaintiffs' Reply ISO Motion for Class Certification ("Reply") (Dkt. 333), Google's Motion to Exclude Opinion of Plaintiffs' Damages Expert Michael J. Lasinski ("*Daubert* Motion") (Dkt. 326), and Plaintiffs' Opposition to Google's *Daubert* Motion ("*Daubert* Opposition") (Dkt. 331), and each of these briefs' corresponding exhibits. *See* Decl. of Mark Mao ISO Motion (Dkt. 315-14); Decl. of E. Santacana ISO Opposition (Dkt. 327); Decl. of E. Santacana ISO Google's *Daubert* Motion (Dkt. 328); Decl. of Mark Mao ISO *Daubert* Opposition (Dkt. 331-1); and Decl. of Mark Mao ISO Reply (Dkt. 333-1).

Google has narrowed the material it seeks to keep under seal. Google only seeks to seal select lines, code names, and email addresses in 43 of the 94 exhibits submitted with Plaintiffs' Motion for Class Certification and the *Daubert* briefing. There are only 4 documents it seeks to seal in their entirety.

Because courts within the Ninth Circuit evaluate a request to seal documents that are more than tangentially related to the underlying cause of action under a "compelling reasons" standard, the "compelling reasons" standard applies. *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1098–1099 (9th Cir. 2016). The material identified by Google for sealing is all commercially sensitive business information that falls into four categories that each deserve protection under the compelling reasons standard. The materials consist of: (1) product design, performance, and improvement deliberations and presentations; (2) internal studies and projections; (3) non-public

1  documents detailing the technical operation of Google's internal systems; and (4) employee
2  personally identifiable information.
3   None of the information that Google seeks to keep under seal is necessary to the public's
4  understanding of the underlying dispute.  Google's Motion to Seal should be granted with respect
5  to the limited material identified in Google's accompanying [Proposed] Order.

6  **II.   DISCUSSION**

7   "Historically, courts have recognized a 'general right to inspect and copy public records
8  and documents, including judicial records and documents.'" *Kamakana v. City & Cnty. Of*
9  *Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc*., 435
10 U.S. 589, 597 & n.7 (1978)).  Parties seeking to seal judicial records relating to dispositive
11 motions bear the burden of overcoming this presumption of access by demonstrating "compelling
12 reasons." *Id.* at 1180.  Courts within the Ninth Circuit have concluded that this "compelling
13 reasons" standard applies to "motions to seal documents relating to class certification" and that the
14 same standard may apply to documents attached to a *Daubert* motion where it is able to
15 significantly affect the disposition of the issues in a case.  *See Adtrader, Inc. v. Google LLC*, No.
16 17-CV-07082-BLF, 2020 WL 6391210, at *2 (N.D. Cal. Mar. 24, 2020); *Ctr. for Auto Safety,* 809
17 F.3d at 1100.
18  Courts find compelling reasons sufficiently outweigh the public's interest in disclosure,
19 where, as here, records disclosing business information "might harm a litigant's competitive
20 standing" or "become a vehicle for improper purposes."  *In re Electronic Arts, Inc.*, 298 F. App'x
21 568, 569 (9th Cir. 2008) (quoting *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 598 (1978).

22  **A.     Commercially sensitive business information**
23  Google seeks to seal commercially sensitive business information in 19 of 37 exhibits
24 filed with Plaintiffs' Motion, 7 out of 23 exhibits to Google's Opposition, 1 out of 11 exhibits to
25 Plaintiffs' Reply, 6 out of 10 exhibits to Google's *Daubert* Motion and 7 out of 13 exhibits to
26 Plaintiffs' *Daubert* Opposition.  These materials, identified specifically in the declarations filed
27 concurrently herewith constitute: (1) product design, performance, and improvement deliberations
28

and presentations; (2) internal studies and projections; (3) non-public documents detailing the technical operation of Google's internal systems; and (4) employee personally identifiable information. As explained further below, these materials are categorically protectable and Google's requested redactions are narrowly tailored such that no less restrictive means will maintain the appropriate level of confidentiality.

1. **Internal studies and projections** (Exhibits in table below) Google seeks to seal internal studies and projections, including results of user studies and surveys, projected impacts of proposed product changes, user study procedures, long-term product plans and action items informed by targeted studies, sensitive revenue metrics and internal research documents with proprietary questions. *See, e.g.*, Declaration of David Monsees ("Monsees Decl.") ¶¶ 8, 11, and 17; Declaration of David Lam ("Lam Decl.") ¶¶ 7, 17. These documents contain competitively sensitive material that Google does not disclose in its regular course of business. If the excerpts listed in the table below were disclosed, competitors could use the information to improve their own products to compete in comparable markets without having had to invest the time and resources Google did to acquire this insight. *Id.* Courts find this type of information to constitute business information that could harm a litigant's competitive standing if disclosed and have ordered it sealed. *See, e.g.*, *Algarin v. Maybelline, LLC,* No. 12CV3000 AJB (DHB), 2014 WL 690410, at *3 (S.D. Cal. Feb. 21, 2014) (sealing a study that contained consumer research, sales data, and product development plans because public disclosure "could result in improper use by business competitors seeking to replicate. . . [the party's] business practices and circumvent the time and resources necessary in developing their own practices and strategies."); Brown v. Brown, No. CV 13-03318 SI, 2013 WL 12400041, at *1 (N.D. Cal. Dec. 30, 2013) (finding compelling reasons to seal information about "profits, losses, income, investments, and expenses" when disclosure would harm party's competitive standing); In re Electronic Arts, Inc., 298 F. App'x at 569.

| Exhibit No. | Portion(s) to Maintain Under Seal | Basis for Sealing |
|---|---|---|
| 1 (Motion) | Entirety | Spreadsheet contains proprietary and confidential business information about Google's user research studies and findings. Includes non-public file-paths and internal identifiers for studies. Monsees Decl. ¶ 5-6. |
| 2 (Motion) | Sections highlighted yellow in the unredacted document. | Presentation excerpt with competitively sensitive business information (a user study metrics and internal code names). Monsees Decl. ¶ 7 |
| 5 (Motion) | Sections highlighted yellow in the unredacted document. | Presentation excerpt with competitively sensitive business information (user study results). Monsees Decl. ¶ 8 |
| 15 (Motion)  6 (*Daubert* Opp.) | Sections highlighted yellow in the unredacted document. | Presentation with competitively sensitive business information including sensitive revenue metrics, product plans and action items informed by targeted studies that are confidential and not shared in Google's ordinary course of business. Also includes various internal code names and descriptions of internal projects that are still underway. Lam Decl. ¶ 7 |
| 42 (Motion) | Sections highlighted yellow in the unredacted document. | Presentation with competitively sensitive business and proprietary information (user study procedures and business strategy). Monsees Decl. ¶ 12 |
| 54 (Motion) | Sections highlighted yellow in the unredacted document. | Presentation with competitively sensitive business and proprietary information (user study metrics and analysis). Monsees Decl. ¶ 15 |
| 55 (Motion) | Entirety | Internal research document with proprietary and confidential research questions regarding a highly sensitive internal project. Monsees Decl. ¶ 16 |
| 65 (Motion) | Sections highlighted yellow in the unredacted document. | Presentation with competitively sensitive business information regarding the top apps that use Firebase that disclose internal strategic thinking not disclosed in the regular course of business and litigation. Lam Decl. ¶ 8 |
| 10 (*Daubert* Motion) | Sections highlighted yellow in the unredacted document. | Excerpts from Google's ROG responses containing highly confidential and competitively sensitive business information including statistics, P&L and revenue data, and analyses of that data that are not compiled or disclosed in Google's regular course of business. Lam Decl. ¶ 17 |
| 3 (Opp.) | Entirety | Internal document with competitively sensitive business information including confidential revenue metrics, strategic deliberations regarding product goals and changes and diagrams describing Google's backend internal data flow. Lam Decl. ¶ 11 |
| 21 (Opp.) | Sections highlighted yellow in the unredacted document. | Excerpts from Google's ROG responses containing competitively sensitive business information including statistics, P&L and revenue data, and analyses of that |

4
GOOGLE LLC'S STATEMENT IN SUPPORT OF MOTION TO SEAL PORTIONS OF
CLASS CERTIFICATION & DAUBERT BRIEFING (DKTS. 314 & 321)
Case No. 3:20-CV-04688-RS

|   |   | data that are not compiled or disclosed in Google's regular course of business. Lam Decl. 16 |

**2.  Product design, performance, and improvement deliberations and presentations** (Exhibits and brief cites in table below)

Google also seeks to seal exhibits that contain confidential, internal deliberations regarding product development, features, challenges, and business strategies. *See, e.g.*, Monsees Decl. ¶¶ 18-20. All of the information Google seeks to seal is competitively sensitive and not shared in Google's regular course of business and should remain under seal. Disclosing it could cause Google competitive harm. For example, internal deliberations regarding product integration goals and related challenges and metrics related to user traffic for specific products, like those contained in the exhibits listed in the table below, are exactly the kind of information that competitors could use to enhance efficiencies of their own products at Google's expense. Competitors could use the sensitive business data that Google has invested time and resources in acquiring over the years to mimic Google's infrastructure to process user data and gain efficiencies Google has acquired over years without having had to invest resources of their own. Monsees Decl. ¶ 19.

Courts regularly seal this type of information. *See, e.g., Kumandan v. Google LLC*, No. 19-CV-04286-BLF, 2023 WL 2189498, at *1 (N.D. Cal. Feb. 22, 2023) (sealing sensitive proprietary and commercial information about the operation of Google Assistant, business opportunities and risks, and details of Google's understanding of the profits or losses associated with Google Assistant); *Adtrader, Inc.*, 2020 WL 6391210, at *1 (finding compelling reasons to seal confidential business material, marketing strategies, and product development plans that could result in improper use by competitors); *see also Algarin*, 2014 WL 690410, at *3. As further explained in the table below, Google seeks to seal precisely the type of information that courts have previously sealed and has demonstrated compelling reasons for doing so here.

| Exhibit No. | Portion(s) to Maintain Under Seal | Basis for Sealing |
|---|---|---|
| 7 (Motion) | Sections highlighted yellow in the unredacted document. | Email thread with competitively sensitive business information regarding a non-public project pertaining to backend data logging processes and changes. Monsees Decl. ¶ 19 |

| | | |
|---|---|---|
| 17 (Motion) | Sections highlighted yellow in the unredacted document. | Competitively sensitive internal strategy discussions regarding product design.  Monsees Decl. ¶ 9 |
| 61 (Motion) | Sections highlighted yellow in the unredacted document. | Competitively sensitive internal strategy discussions regarding Google's consent structures, including non-public metrics, user research study data, and confidential internal project names.  Monsees Decl. ¶ 18 |
| 69 (Motion) | Sections highlighted yellow in the unredacted document. | Email thread with competitively sensitive business information regarding a non-public project pertaining to backend data logging processes and changes.  Monsees Decl. ¶ 19 |
| 9 (*Daubert* Opp.) | Sections highlighted yellow in the unredacted document. | Internal meeting notes document with competitively sensitive business information including non-public revenue sources and estimations, internal product goals and related metrics. Contains confidential technical details regarding how Google services work from the backend.  Monsees Decl. ¶ 11 |
| 71 (Reply) | Sections highlighted yellow in the unredacted document. | Competitively sensitive internal performance review that discloses internal deliberations and non-public details regarding Google's strategic responses to specific regulatory actions.  Monsees Decl. ¶ 20 |
| 5 (*Daubert* Opp.) | Sections highlighted yellow in the unredacted document. | Name of confidential and competitively sensitive internal revenue analysis performed by Google.  Lam Decl. ¶ 23 |
| 7 (*Daubert* Opp.) | Entirety | Internal document with highly confidential and proprietary information regarding highly sensitive features of Google's internal systems, including various types of Google's internal projects, identifiers and logs, and their proprietary functionalities.  Lam Decl. ¶ 21 |

3. **Non-public documents detailing the technical operation of Google's internal systems** (Exhibits and brief cites in table below)

Google seeks to seal portions of the Parties' expert reports and deposition transcripts discussing confidential and highly sensitive proprietary and commercial information about the operation of Google's products, including its internal data repositories and storage infrastructure. These materials, referenced in the table below, also contain technical details about Google's backend data flow, including information about the processes for data generation, bundling, consent checks, and storage decisions.  Furthermore, they contain competitively sensitive information regarding Google's understanding of its profits and losses and overall revenue

1  associated with its advertising products. Courts regularly seal this type of information. *See, e.g.,*
2  *Finjan, Inc. v. Proofpoint, Inc.,* No. 13-CV-05808-HSG, 2016 WL 7911651, at *2 (N.D. Cal. Apr.
3  6, 2016) (sealing technical information in expert reports, deposition testimony, and internal
4  company documents); *Kumandan*, 2023 WL 2189498, at *2 (sealing proprietary information
5  regarding the operation of Google Assistant); *Adtrader, Inc.*, 2020 WL 6391210, at *2 (sealing
6  information revealing capabilities of Google's systems).

7        Revealing the specific information contained in these exhibits presents a serious risk of
8  irreparable harm to Google. This information was acquired as a result of innumerable hours of
9  extensive internal research, analysis, and engineering. If proprietary information regarding GA
10 for Firebase's backend data flow and infrastructure architecture is disclosed, competitors could
11 infer how the GA for Firebase product functions, and how it was developed. Lam Decl. ¶ 10.
12 Competitors could mimic Google's approach to data processing, organization, and storage to
13 unfairly compete with Google's product offerings. *Id.*

14       The risk is particularly present here because the Parties' expert reports, briefing, and
15 exhibits compile in one place the backend technical details that describe the flow of data from app
16 developer customers to and within Google's storage repositories in a step-by-step manner,
17 including the code names for the repositories that receive and process user data. A competitor
18 could take these expert reports and understand the entire structure of Google's GA for Firebase
19 data processing system—something that Google has taken significant time to develop, refine, and
20 maintain. In addition to improper use of this information by competitors, if a malicious actor
21 wanted to improperly access Google's systems for theft or other improper purposes, these
22 documents would be a roadmap that would allow them to more readily evade detection and find
23 Google's proprietary documents, information, and code. It is, therefore, very important that this
24 information not be revealed outside of Google. *Id.* at ¶¶ 5, 29.

| Exhibit No. | Portion(s) to Maintain Under Seal | Basis for Sealing |
|---|---|---|
| 10 (Motion) | Sections highlighted yellow in the unredacted document. | Presentation discussing highly sensitive, confidential, and proprietary information regarding Google's internal infrastructure around data classification, logging, and protection. Lam Decl. ¶ 4 |
| 11 (Motion) | Sections highlighted yellow in the unredacted document. | Deposition excerpt with highly sensitive and confidential information about proprietary consent checking processes within Google's storage infrastructure. Monsees Decl. ¶ 10 |
| 43 (Motion) | Sections highlighted yellow in the unredacted document. | Google's ROG response with proprietary information concerning internal log data fields and naming conventions. Monsees Decl. ¶ 13 |
| 56 (Motion) | Sections highlighted yellow in the unredacted document. | Deposition excerpt with highly sensitive and confidential information about proprietary consent checking processes within Google's storage infrastructure. Monsees Decl. ¶ 10 |
| 57 (Motion) | Sections highlighted yellow in the unredacted document. | Email thread with highly sensitive internal logging language/code. Monsees Decl. ¶ 17 |
| 2 (Opp.) | Sections highlighted yellow in the unredacted document. | Google's ROG response with highly sensitive and confidential information about proprietary consent checking processes within Google's storage infrastructure. Lam Decl. ¶¶ 9-10 |
| 5 (Opp.) | Sections highlighted yellow in the unredacted document. | Three sentences with proprietary information concerning internal log data fields and naming conventions. Lam Decl. ¶ 12 |
| 6 (Opp.) 7 (Daubert Motion) | Sections highlighted yellow in the unredacted document. | Expert report with highly sensitive and confidential information about proprietary consent checking processes within Google's storage infrastructure. Lam Decl. ¶ 13 |
| 6-A (Opp.) 8 (Daubert Motion) | Sections highlighted yellow in the unredacted document. | Appendix to expert report with backend data regarding Google's data storage. Lam Decl. ¶ 14 |
| 9 (Opp.); 5 (Daubert Motion) | Sections highlighted yellow in the unredacted document. | Deposition transcript with highly sensitive and confidential information regarding sensitive features of Google's internal systems and operations, including various types of Google's internal projects, identifiers, data signals, and logs, and their proprietary functionalities. Lam Decl. ¶ 28 |
| 11 (Opp.); 1 (Daubert Motion); 1 | Sections highlighted yellow in the unredacted document. | Deposition transcript with competitively sensitive and confidential information regarding Google's internal revenue analyses and related non-public metrics. Lam Decl. ¶ 18 |

| | | |
|---|---|---|
| (Daubert Opp.) | | |
| 14 (Opp.) | Sections highlighted yellow in the unredacted document. | Google's ROG response with highly sensitive and confidential information about proprietary consent checking processes within Google's storage infrastructure. Lam Decl. ¶ 15 |
| 18 (Opp.) | Sections highlighted yellow in the unredacted document. | Internal confidential storage name. Lam Decl. ¶ 29 |
| 19 (Opp.) 3 (Daubert Motion) 3 Daubert Opp.) | Sections highlighted yellow in the unredacted document. | Expert report with competitively sensitive and confidential information regarding Google's internal revenue analyses and related non-public metrics. Lam Decl. ¶ 24 |
| 70 (Reply) | Sections highlighted yellow in the unredacted document. | Discussing sensitive and confidential internal data identifiers and details about the number and types of data logs within Google. Lam Decl. ¶ 12 |
| 72 (Reply) | Sections highlighted yellow in the unredacted document. | Deposition transcript with highly sensitive and confidential information regarding sensitive features of Google's internal systems and operations, including various types of Google's internal projects, identifiers, data signals, and logs, and their proprietary functionalities. Lam Decl. ¶ [] |
| Expert Report: Jonathan Hochman | Sections highlighted yellow in the unredacted document. | Expert report with highly sensitive and confidential information about proprietary consent checking processes within Google's storage infrastructure. Lam Decl. ¶¶ 26-27 |
| Expert Report: Michael Lasinski | Sections highlighted yellow in the unredacted document. | Expert report with competitively sensitive and confidential information regarding Google's internal revenue analyses and related non-public metrics. Lam Decl. ¶¶ 18-23 |

**B.    References to Internal Code Names**

Google seeks to seal internal database and project names within Exhibits 1, 2, 5, 7, 10, 11, 15, 17, 42, 43, 54, 55, 56, 57, 59, 61, 65, 68 and 69 to the Motion, Exhibits 2, 3, 5, 8, 13, 14, and 21 to the Opposition, Exhibit 71 to the Reply, Exhibits 1, 3, 5, 7, 8, and 10 to the *Daubert* Motion, and Exhibits 1, 5, and 9, and Appendices E, G and I to the *Daubert* Opposition.  Courts routinely seal this type of information because it would place companies at increased risk of cyber security threats if certain internal names became public. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, No. 11–CV–01846 LHK (PSG), 2012 WL 4120541, at *2 (N.D. Cal. Sept. 18, 2012) (sealing "Apple's internal code names" for its projects); *Bohannon v. Facebook, Inc.*, No. 12-cv-01894-BLF, 2019

WL 188671, at *7 (N.D. Cal. Jan. 14, 2019) (sealing internal task names, URLs, and other sensitive data regarding internal classification systems).

This Court has previously sealed the internal names in Exhibits 55 and 68 to the Motion, Exhibits 2 and 13 to the Opposition to the Motion, Exhibit 71 to the Reply in Support of the Motion and others similar to the ones Google now seeks to keep under seal. *See, e.g.*, Dkt. 223 (2/10/2022 Order Granting in Part Mot. to Seal); Dkt. 208 (1/20/2022 Discovery Order) (same); Dkt. 184, at ¶ 3 (12/1/2021 Discovery Order). Sealing the internal names Google seeks to seal here is consistent with those rulings.

### C.  Non-Public Email Addresses

Google seeks to redact the non-public employee email addresses contained within Exhibits 1, 2, 7, 15, 42, 54, 55, 57, 59, 61, 65, 68, 69 to the Motion, Exhibits 3, 8 to the Opposition to the Motion, Exhibit 71 to the Reply, Exhibit 8 to the *Daubert* Motion and the expert report of Jonathan Hochman. Courts routinely seal employee email addresses. *See, e.g.*, *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, No. 1:17-cv-00808-DAD-EPG, 2018 WL 4961606, at *2 (E.D. Cal. Oct. 12, 2018) (sealing employee email address under compelling reason standard); *Music Grp. Macao Com. Offshore Ltd. v. Foote*, No. 14–cv–03078–JSC, 2015 WL 3993147, at *8, 10 (N.D. Cal. June 30, 2015) (finding compelling reasons to seal employee names and roles of employees). Here, Google has a compelling interest in protecting its employees' email addresses because those employees' privacy would be placed at risk if their confidential email addresses were to be filed publicly. *See* Lam Decl. ¶ 30. Google does not publish employee email addresses. *Id.*

### III.  CONCLUSION

For the reasons set forth above, Google respectfully requests that the Court seal the limited information identified herein and in the accompanying [Proposed] Order.

| | |
|---|---|
| Dated: October 12, 2023 | **WILLKIE FARR & GALLAGHER LLP** |
| | By: <u>*/s/  Simona Agnolucci*</u> |
| | Benedict Y. Hur |
| | Simona Agnolucci |
| | Eduardo Santacana |
| | Noorjahan Rahman |
| | Argemira Flórez |
| | Harris Mateen |
| | |
| | *Attorneys for Defendant Google LLC* |