**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR SBN: 224018
  bhur@willkie.com
SIMONA AGNOLUCCI SBN: 246943
  sagnolucci@willkie.com
EDUARDO E. SANTACANA SBN: 281668
  esantacana@willkie.com
NOORJAHAN RAHMAN SBN: 330572
  nrahman@willkie.com
ARGEMIRA FLÓREZ SBN: 331153
  aflorez@willkie.com
HARRIS MATEEN SBN: 335593
  hmateen@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: 415 858-7400

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANIBAL RODRIGUEZ, et al. individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>    vs.<br><br>GOOGLE LLC,<br><br>                    Defendant. | Case No. 3:20-CV-04688-RS<br><br>**DECLARATION OF DAVID MONSEES IN SUPPORT OF GOOGLE LLC'S STATEMENT IN SUPPORT OF MOTION TO SEAL PORTIONS OF CLASS CERTIFICATION & *DAUBERT* BRIEFING (DKTS. 314 & 321)**<br><br>Judge:         Hon. Richard Seeborg<br>Courtroom:  3, 17th Floor<br>Action Filed: 07/14/2020<br>Trial Date:   Not Yet Set |

I, DAVID MONSEES, respectfully submit this declaration in regard to the above captioned matter. I make this declaration based on my personal knowledge of the facts stated herein.

1. I am employed at Google LLC ("Google") as a Senior Product Manager with supervisory authority concerning Web & App Activity ("WAA"). I joined Google in 2009 and have been a Product Manager since December 2009. Unless otherwise stated, the facts I set forth in this declaration are based on my personal knowledge or knowledge I obtained through my review of corporate records or other investigations. If called to testify as a witness, I could and would testify competently to such facts under oath.

2. In my role as a Product Manager at Google, I have managed various products across the advertising and WAA product areas and I am familiar with Google's practices regarding the treatment of sensitive business and technical information.

3. I submit this declaration in support of Google's Statement In Support of Omnibus Motion to Seal Portions of Class Certification & Daubert Briefing (Dkts. 314 & 321). I have reviewed unredacted versions of Plaintiffs' Motion for Class Certification ("Motion") (Dkt. 314-3), the Declaration of Mark Mao In Support Of Plaintiffs' Motion for Class Certification And Appointment of Class Representatives and Class Counsel (Dkt. 315-14), and 16 of the corresponding exhibits filed therewith which have been designated for sealing: Exhibits 1, 2, 5, 7, 11, 17, 42, 43, 54, 55, 56, 57, 59, 61, 68, and 69. I have also reviewed unredacted versions of Exhibit 13 to Google's Opposition to Plaintiffs' Motion for Class Certification ("Opposition") (Dkt. 323) and an exhibit Plaintiffs attached to their Class Certification Reply ("Reply") (Dkt. 333) –Exhibit 71– and one exhibit that Plaintiffs attached to their Opposition to Google's Motion to Exclude Opinion of Michael Lasinski ("Daubert Opposition") (Dkt. 331) –Exhibit 9. I have also reviewed a discrete portion of Google's Motion to Exclude Opinion of Michael Lasinski ("*Daubert* Motion") (Dkt. 330). These documents include confidential, proprietary, and competitively sensitive information and should remain under seal.

4.     Google seeks to seal narrowly tailored portions of the aforementioned Exhibits. Specifically, it seeks to seal only 2 out of the 19 exhibits that I reviewed in connection with Plaintiffs' Motion entirely and only select excerpts from the rest of the documents.

5.     <u>Commercially Sensitive Proprietary Business Information (all exhibits except for 59 and 68)</u>. **Exhibit 1** (Motion) is an eight-page spreadsheet containing detailed and confidential information about Google's user research studies and corresponding findings. It discloses internal identifiers for each study, including the internal database location for each. It also includes detailed commentary from participants and Google employees' corresponding assessments and recommendations on how to enhance its products to respond to specific user needs, including the internal prioritization of certain product features. This document lists nonpublic information about specific user studies that Google has run in various categories across different platforms.

6.     The entirety of this document is competitively sensitive. It contains proprietary and confidential business information that would allow competitors to gain insight into Google's strategies for enhancing specific products and its timeline for doing so. If this information were disclosed, competitors could use it to mimic Google's user studies or use the feedback Google received to improve their own products. This document also includes non-public file paths, project names, and employee emails. This is sensitive information that could cause irreparable harm to Google if disclosed. If an outsider wanted to improperly access Google's systems, and target particular products or survey participant demographic data or PII for theft or other improper purposes, having Google's confidential, internal names and file paths to the specific user studies would allow them to more readily find Google's proprietary documents, information, and code. It is, therefore, very important that these internal names not be revealed outside of Google.

7.     **Exhibit 2** (Motion) contains excerpts from a presentation regarding Google's general consent strategy for Google's products and services. Google seeks to seal only one metric on page -102 and internal code names and employee email addresses on pages -974 and pages -975-6 respectively. It seeks to seal this same information where it appears in Google's Daubert Motion at p. 24, fn. 13. None of this is public information. It is confidential and competitively sensitive. The metric reflects observations about users' consent experience and is informed by

non-public qualitative and quantitative user study research that Google has conducted since 2016. Google considers metrics like these to be competitively sensitive because they reflect confidential information that Google has gathered after years of user research. Competitors could use Google's internal metrics and observations, garnered after investing its time and resources into several studies, regarding how users respond to different control settings to improve their own settings to Google's detriment. This information should thus be shielded from unnecessary public disclosure. The internal code names and employee emails are sensitive and should also be sealed for the reasons mentioned in paragraph 6 above.

8. **Exhibit 5** (Motion) contains excerpts from a presentation regarding Google's User Device Control research, which Google designated Highly Confidential-Attorneys' Eyes Only when it shared the document with Plaintiffs. It contains analyses from user research study results over the years that continue to inform Google's designs of account-level device controls (*see, e.g.,* -762–763). Google does not seek to redact the isolated study results. It seeks to seal only the key takeaways from them which are competitively sensitive because they inform the development of Google's user device controls across various product settings to this day, including Location History. Google seeks to seal substantive portions of only 4 of 22 slides that Google believes are proprietary and would cause Google the most harm if disclosed. These slides contain information about how users perceive settings and Google's ideas on how to respond to these perceptions to cater to different user experience preferences (*see, e.g.,* -764, -767). Some of these ideas are still being developed and considered, and some may never be implemented. This is proprietary business information that should not be disclosed. Competitors could use Google's proposed setting structures and test frameworks and results from them to revise their own user device controls to address customer needs discovered by Google's research. Google has selected only those slides from this presentation that would cause Google competitive harm if disclosed.

9. **Exhibit 17** (Motion) is a letter sent from Google's counsel to Plaintiffs' counsel that contains quotes from internal documents regarding strategic design decisions made around the WAA controls. Similar to Google's internal deliberations regarding the development of device controls as described in paragraph 8 above, the information quoted in the two lines on page 3, and

3

portions of the four sentences on page 4, are confidential, competitively sensitive, and not disclosed in Google's regular course of business. Google's narrow redactions to this letter are the least restrictive means available to protect this information.

10. **Exhibit 11** (Motion) is an excerpt from my deposition in this litigation taken on September 15, 2022 that is quoted and characterized at p. 3, lines 6-8 and p. 14, lines 21-24, 26-28 of the Motion. The select portions of the discussion that are redacted in the Motion and the Exhibit (*i.e.*, 212:16-21, 213:8-9, 214:10-14, 18-21, 23-25; 215:1-5, 9-10, 15-24; 216:2-4; 217:3-6, 8-15), include information regarding the backend processes that Google employs when conducting sWAA setting consent checks, including when receiving app indexing data. **Exhibit 56** (Motion) consists of excerpts from a deposition transcript of another Google employee deposed in this litigation that contains similar information to that which I describe in my deposition at pages 112:21-113:1-2, 113:10-11; 114:8-11; 115:17-20; 116-1-8, 17-20. Both discussions are confidential and highly sensitive because they contain details about proprietary consent checking processes that are not public and that concern the flow of user data within Google's storage infrastructure. How certain user data travels through Google's infrastructure is not shared in the regular course of business, and for good reason. Disclosing the specific details around how Google processes user data can put Google and users at risk of irreparable harm. As discussed in paragraph 6 above, if malicious actors wanted to access Google's data, user data specifically, they could use this information as a roadmap for when and how it should do so. Google's redactions to these transcript excerpts are narrowly applied and there are no less restrictive means for redaction available.

11. **Exhibit 9** to Plaintiffs' *Daubert* Opposition is an internal meeting notes document that contains commercially sensitive information about Google's ads products, including about internal product goals (*see, e.g.*, -484), internal metrics related to user traffic for certain products (*see, e.g.*, -473) and related challenges for certain product integrations (*see, e.g.*, -472, -478). It also includes non-public details regarding Google's revenue sources and estimations (*see, e.g.*, -473, -482–3). This document contains confidential technical details regarding how Google's ad services work from the backend (*see, e.g.*, -474–477, -479, -450). It includes discussion of long-

1  term projects across Google's ads products that have not been publicly discussed (*see, e.g.*, -480–
2  481). For these reasons, the information in this document is competitively sensitive and could
3  harm Google's competitive standing if disclosed.

4        12.    **Exhibit 42** (Motion) is a presentation with non-public data regarding Google's
5  confidential methods for conducting a user study on retention controls comprehension and detailed
6  next steps resulting from the same. Google seeks to seal 2 out of 49 slides that contain
7  confidential information regarding Google's user study procedures (*see* -998), and concrete next
8  steps in light of the user study results (*see* -040). This information is competitively sensitive and
9  is not shared in Google's regular course of business. This is the type of information that
10 competitors can use to revise their designs in light of Google's research on user comprehension
11 and their experiences with certain controls. Google's redactions are the least restrictive means to
12 seal this information, which should be sealed for similar reasons as the user study information
13 discussed in Paragraphs 7 and 8 above.

14       13.    **Exhibit 43** (Motion) is a legal document drafted by counsel in consultation with a
15 Google employee that includes highly confidential, technical, and proprietary information
16 concerning Google's data logs. The document identifies by name 16 logs that may contain
17 information about whether particular data entries were made using data from a user who had
18 WAA or sWAA turned off at the time the entry was generated from the Google Analytics for
19 Firebase or AdMob SDKs. Information concerning the data fields and naming convention that
20 Google uses for its logs is proprietary information that Google has developed over many years
21 after devoting resources and employee time. It also contains highly sensitive information
22 quantifying the number of logs that contain user (s)WAA off data and regarding how Google was
23 able to compile this list of logs and conduct data queries within them.

24       14.   Google considers the names and data fields in its logs to be confidential and
25 proprietary. They reveal the technical underpinnings of Google's data storage
26 infrastructure. Furthermore, revealing this information presents a serious risk of irreparable harm
27 to Google, as discussed in paragraph 6 above, because an individual could target Google's
28 proprietary documents and information for improper uses if he or she knew Google's internal

names. Google's narrow redactions of the specific log names and information pertaining to these highly confidential logs are the least restrictive means to protecting this proprietary information.

15.  **Exhibit 54** (Motion) is a presentation regarding a 2020 launch of suggestion cards that prompted users to set up retention plans for Web & App Activity, Location History, and YouTube History. Though the cards' launch has already occurred, Google's analysis regarding the comparative success of each retention card in light of various factors is represented by non-public metrics and characterizations of those metrics in tables and graphs and short descriptive content. That includes metrics regarding desirable user interaction with regards to each data retention card and observations regarding completion rates (*see, e.g.,* -242, -244) and regarding the specific user base for each product (*see, e.g.,* -247, -252). This information is competitively sensitive in that it discloses Google's product design strategy and design change considerations resulting directly from user research. Google is only seeking to seal those non-public metrics and their characterizations, not general information about the retention cards, which were public facing.

16.  **Exhibit 55** (Motion) is an internal research document that contains proprietary research questions regarding a highly sensitive consent project that Google has not discussed publicly. The exhibit, as well as p. 12, lines 18-19, of the Motion, which quote and characterize it, are competitively sensitive. Research documents like this one outline Google's design hypotheses and specific research questions and experiment variations that are proprietary. Google does not disclose this information in its business dealings or in litigation and keeps it restricted to the specific teams whose product expertise would be necessary to conduct the full experiment. If disclosed, this information would cause Google competitive harm as competitors could use Google's questions, experiment variants, and hypotheses to conduct research based on Google's design proposals, which Google employees have invested time and resources in compiling. **Exhibit 13** (Opposition) is a report by one of Google's experts, Dr. Donna Hoffman, that includes a verbatim reference to this research document in her report at page 91, footnote 280. That reference should be sealed for the same reasons discussed above.

17. **Exhibit 57** (Motion) is an email thread that I was cc'd on pertaining to a WAA product launch for device history storage. Though most of it is not sensitive, the two lines Google seeks to redact contain internal logging language/code regarding how WAA-off data appears within Google's data storage systems. This information is highly sensitive and should not be disclosed. Malicious actors could use this code as a roadmap to gain access to sensitive user data. Disclosing this data could cause Google irreparable harm as discussed in paragraph 6 above.

18. **Exhibit 61** (Motion) is an internal email thread between various google employees, including a user experience researcher and an interaction designer. The thread consists of internal strategy deliberations regarding how to increase user clarity and comprehension around in-context consents vs. account-creation consents, as well as other related issues pertaining to the user experience with granular controls. It includes non-public metrics (*see, e.g.*, -084) about the rate of users' consenting to WAA, and insight from user research studies, including the name of confidential internal research project names (*see, e.g.*, -091). It also includes employee proposals (*see, e.g.*, -087) regarding how to enhance Google's permission structure. This information is confidential and competitively sensitive. If this information becomes public, Google's competitors may unfairly use the information to take on similar projects which have taken technical resources and time to design and analyze, and to compete with Google's products or business structures.

19. **Exhibits 69** (Motion) and **Exhibit 7** (Motion) are internal email threads with discussions concerning a non-public project pertaining to backend changes for how Google logs WAA-off data and Google employee PII. Exhibit 7 is quoted and characterized at p. 13, lines 24-26 of the Motion. Google only seeks to redact discrete lines in and characterizations of each exhibit pertaining to this project. Information regarding how Google logs WAA-off data in its proprietary systems is specific to Google and not discussed publicly in Google's regular course of business. It is highly sensitive and confidential for the reasons that have been discussed throughout this declaration about the highly sensitive and confidential nature of Google's data logging processes (*e.g.*, ¶ 13-4). Google's strategies for how to enhance efficiencies in logging and thereby enhance the user experience is also competitively sensitive, as competitors could

mimic Google's infrastructure to process user data and gain efficiencies Google has acquired over years.

20.  **Exhibit 71** to Plaintiffs' Reply is an internal performance review that discloses internal deliberations and non-public details regarding Google's strategic responses to specific regulatory actions. It also contains information about non-public projects (*see, e.g.*, -618, -624–6) and confidential details regarding specific changes proposed to improve users' experience, specifically with regards to core privacy experiences (*see, e.g.*, -619–621). This type of information is not disclosed in Google's regular course of business and is competitively sensitive. Information about Google's strategies for changing its settings and consents infrastructure to respond to the interests of various stakeholders is the type of information that competitors could use to improve their own products to compete in comparable markets. Google's redactions to this performance review are narrowly applied and there are no less restrictive means for redaction available.

21.  <u>Internal Code Names and Links (Exhibits: 1, 2, 9 (Opposition), 55, 57, 61, 68, and 71 (Reply))</u>. The aforementioned exhibits include reference to Google's internal code names and various internal data file links. Revealing Google's internal code names and internal links would present a risk of harm to Google. Specifically, a malicious actor interested in improperly accessing Google's systems could target particular proprietary data storage systems and information for improper uses if he or she knew the internal names Google seeks to seal in these documents. The links could be used for similarly improper purposes. Thus, it is very important that internal code names not be revealed outside of Google. Google has narrowly tailored the information to be sealed to allow the first or second letter in each name to be filed publicly, and no more limited sealing would appropriately protect Google's confidential and proprietary information.

22.  <u>Non-Public Employee Email Addresses (All exhibits except for: 11, 43, and 56)</u>. Google seeks to redact the non-public employee email addresses contained within the aforementioned exhibits, including Exhibits 59 and 68. This information should be redacted

because those employees' privacy would be placed at risk if their confidential email addresses were to be filed publicly.

1  I declare under penalty of perjury under the laws of the United States of America that the
2  foregoing is true and correct.
3  Executed October  9 , 2023, at     San Francisco    , California.

_____
DAVID MONSEES