# EXHIBIT 14

## PUBLIC REDACTED VERSION

**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
  bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
  sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
  esantacana@willkie.com
LORI C. ARAKAKI (SBN: 315119)
  larakaki@willkie.com
ARGEMIRA FLOREZ (SBN: 331153)
  aflorez@willkie.com

One Front Street, 34th Floor
San Francisco, CA  94111
Telephone:  (415) 858-7400
Facsimile:  (415) 858-7599

Attorneys for Defendant
GOOGLE LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO

| | |
|---|---|
| ANIBAL RODRIGUEZ AND JULIE ANNA MUNIZ, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE LLC, *et al.*,<br><br>Defendant. | Case No.  3:20-CV-04688<br><br>**DEFENDANT GOOGLE LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' INTERROGATORIES, SET SEVEN**<br><br>Judge:      Hon. Richard Seeborg<br>Courtroom:  3, 17th Floor<br>Action Filed: July 14, 2020 |

PROPOUNDING PARTY:    PLAINTIFFS ANIBAL RODRIGUEZ AND JULIEANNA MUNIZ

RESPONDING PARTY:     DEFENDANT GOOGLE LLC

SET NO.:              SEVEN

1  seek information beyond the scope of this lawsuit, which concerns app measurement data Google
2  receives from third-party mobile applications that have enabled Google Analytics for Firebase,
3  AdMob, or Firebase Cloud Messenger.

4  13.  Google objects to the definition of "Non-Google App" as vague, ambiguous, and
5  incomprehensible, including to the extent that it relies on the undefined phrases "operated and
6  owned" and "Google affiliate (e.g., Google Maps, YouTube)." Google further objects to the
7  definition of "Google App" as overbroad and partially irrelevant to the extent that it purports to
8  seek information beyond the scope of this lawsuit, which concerns app measurement data Google
9  receives from third-party mobile applications that have enabled Google Analytics for Firebase,
10 AdMob, or Firebase Cloud Messenger.

11 14.  Google objects to the definition of "User" as ambiguous, overbroad, and partially
12 irrelevant, including because it purports to include individuals who are not part of the applicable
13 class defined by Plaintiffs in Paragraph 231 of the Third Amended Complaint (ECF No. 131).

14 15.  Google objects to the definition of "WAA-Off Data" as vague, ambiguous, and
15 incomprehensible, including because of its use of the undefined terms and phrases "data generated
16 by a user's use," which fails to distinguish between individual users and their mobile devices, and
17 fails to define the term "generated"; "employ or embed any Google service . . . while Web & App
18 Activity (WAA) or Supplemental Web & App Activity (sWAA) was disabled," which employs
19 the undefined term "service" and therefore fails to distinguish between Google products and
20 services intended for end-users and those intended for app developers; "information generated by
21 or during a user's visit to an app," which fails to define "information," "generated," and "visit."
22 Google additionally objects to the extent this definition incorporates the vague, ambiguous, and
23 overbroad term "services" without limitation, and also purports to include applications that do not
24 employ GA for Firebase, AdMob, and/or Firebase Cloud Messenger.

25                    **RESPONSES TO INTERROGATORIES**

26 **INTERROGATORY NO. 18:**

27     If Google's Responses to Requests for Admission No. 23 and No. 24 are anything but
28 unqualified admissions, please explain how a User can (or at any time during the Class Period

1   could) prevent Google from receiving and/or saving WAA-Off Data.

2   **RESPONSE TO INTERROGATORY NO. 18:**

3       Google objects to this Interrogatory as vague and ambiguous as to several undefined terms
4   and phrases susceptible to multiple meanings.  For purposes of this response, Google construes
5   "Google" to mean Google LLC; "WAA" to mean the account-level setting called Web & App
6   Activity; "User" to mean an individual who is encompassed within the applicable class defined by
7   Plaintiffs in Paragraph 231 of the Third Amended Complaint (ECF No. 131); "Data" to mean and
8   refer to the types of data sent to Google via GA for Firebase as alleged in the Third Amended
9   Complaint, and Google excludes from this definition, among other things, diagnostic-type data
10  sent to Google for the purpose of diagnosing hardware or software issues, none of which is
11  implicated by Plaintiffs' allegations.  Google additionally objects to this Interrogatory as vague,
12  ambiguous, and confusing as to the use of the undefined terms "prevent," "receiving," and
13  "saving," all of which Google will construe as consistent with their ordinary usage and meaning.
14  Google further objects to this interrogatory to the extent it incorporates Request for Admission
15  Nos. 32 and 35 and the vague and ambiguous terms therein, and is therefore vague and
16  ambiguous.

17      Google further objects to this Interrogatory as overbroad, unduly burdensome, and abusive
18  to the extent it seeks information that is not relevant to any claim or defense in this Action,
19  including because it seeks information concerning any data that Google receives or collects,
20  without limitation as to whether such data is sent to Google by third-party app developers after
21  collection, if any, through GA for Firebase, Cloud Messaging, or AdMob—i.e., concerning
22  Plaintiffs' theory of wrongdoing in the Third Amended Complaint.  Judge Tse has already ruled
23  that "'[t]his is a case about a *particular* Google practice, not *any* Google privacy practice.'"  Order
24  on RFP Nos. 1–3, ECF No. 85 at 2:3-5 (emph. in original).  Accordingly, to the extent this
25  Request seeks information concerning unspecified processes and/or practices, it is overbroad and
26  unduly burdensome.

27      Google further objects to this Interrogatory as duplicative, including because Google has
28  already responded in extensive detail to an interrogatory concerning Google's "data collection

1  with its Firebase SDK" (Interrogatory No. 1), including by describing in detail the data Google

2  receives, and the collects," "what impact if any turning off (or previously pausing) Web & App

3  Activity has" on Google's receipt of the app-interaction data," and the steps app developers can

4  take to impact Google's processing of the data sent to Google.  Google has also responded in

5  extensive detail to an interrogatory concerning the "functionality of WAA" (Interrogatory No. 4),

6  including responding that "WAA has never controlled whether Google Analytics for Firebase

7  collects and sends user activity data from third party apps to Google servers," and "[a]t no point

8  has Google represented that WAA would control whether Google Analytics for Firebase collects

9  user activity data."  Google thus further objects to this Interrogatory as unduly burdensome,

10 overbroad, and disproportionate to the needs of this action, including because Google has never

11 represented that WAA would control whether app developers send data to Google and Google

12 does not collect and store any personally-identifiable app interaction data when WAA is off.

13        Google further objects to this Interrogatory to the extent that it seeks information protected

14 by the attorney-client privilege and/or the attorney work product doctrine.

15        Subject to and without waiving the foregoing objections, Google responds as follows:

16        App developers who use Google Analytics for Firebase (GA for Firebase) are required by

17 Google to disclose their use of GA for Firebase to their end users and obtain their consent, where

18 necessary.  Many such developers provide their end users with a way to opt out of analytics usage,

19 and/or to delete data the developer has collected from that user's device and sent to Google.  *See*

20 Ganem Rough Tr. at 139–41.  App developers choose whether and how to collect app

21 measurement data and then send it to Google by incorporating GA for Firebase into their apps and

22 configuring it appropriately.  Upon receipt of such data, before logging any of it, as detailed in

23 response to Interrogatory No. 1, Google undertakes several consent checks if the developer has

24 enabled Google Signals or Enhanced Firebase Audiences. ████████████████

25 ████████████████████████████████████████

26 ████████████████████████████████████████

27 ████████████████████████████████████████

28 ████████████████████████████████████████

1   ██████████████████████████████████████████████████████████████████████████
2   ████████████████████████████████████████████████████████████████
3   ██████████████████████████████████████████████████████████████████████████
4   ████████████████████████████████████████████████
5   If the data was generated while WAA was off, the ████████████████████ and
6   therefore not used for personalized advertising purposes. Google can also use pseudonymous app
7   measurement data for product improvements and fraud detection purposes, and other select
8   purposes related to legitimate business functions, if the app developer has provided consent via the
9   "data sharing with Google" button in their Analytics account. See
10  https://support.google.com/firebase/answer/6383877?hl=en#zippy=%2Cin-this-article. ████
11  ██████████████████████████████████████████████████████████████████████████
12  ██████████████████████████████████████████████████████████████████████████
13  ██████████████████████████████████████████████████████████████████████
14  ██████████████████████████████████████████████████████████████████████
15  ████████████████████████████████████████████████████████████████████
16  ████████████████████████
17  App developers can additionally configure GA for Firebase to disable ads personalization
18  for specific event types, specific user properties, or a given region. *See, e.g.*,
19  https://support.google.com/analytics/answer/9494752;
20  https://support.google.com/analytics/answer/9626162. If the app developer opts to disable ads
21  personalization, conversions are marked as not for use for ads personalization, although they may
22  be exported to a linked ads account.
23  App developers can also delete their Google analytics account, which deletes app
24  measurement data they have sent to Google pursuant to Google's wipeout policies (i.e., within a
25  certain period of time after the app developer opts to delete their analytics account). *See* Ganem
26  Rough Tr. at 111–12.
27
28