1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
725 S. Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
Ryan Sila (admitted pro hac vice)
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

ANIBAL RODRIGUEZ, SAL
CATALDO, JULIAN
SANTIAGO, and SUSAN LYNN
HARVEY, individually and on behalf of all
others similarly situated,

                    Plaintiffs,

        vs.

GOOGLE LLC,
                    Defendant.

Case No.:  3:20-cv-04688-RS

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(DKT. 315)**

The Honorable Richard Seeborg
Courtroom 3 – 17th Floor
Date: October 5, 2023
Time: 1:30 P.M.

## UNDER SEAL

1

## <u>TABLE OF CONTENTS</u>

2    I.      INTRODUCTION ........................................................................................................1

3    II.     ARGUMENT .............................................................................................................3

4            A.      Common questions predominate with respect to the CDAFA claim. ...................3

5            B.      Common questions predominate with respect to the two privacy tort

6                    claims. ........................................................................................................4

7            C.      Common questions predominate with respect to harm. ...........................................6

8            D.      Common questions predominate with respect to monetary relief. ..........................9

9            E.      Common questions predominate with respect to any consent defense. ................10

10                   1.      Express consent does not defeat predominance. .......................................10

11                   2.      Implied consent does not defeat predominance.........................................11

12           F.      Rule 23(b)(2) certification is also warranted..........................................................15

13   III.    CONCLUSION .........................................................................................................15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Avina v. Spurlock,*
   28 Cal. App. 3d 1086 (1972) ................................................................................................9

5

*B.K. ex rel. Tinsley v. Snyder,*
   922 F.3d 957 (9th Cir. 2019) .............................................................................................15

6

7

*Brown v. Google LLC,*
   2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ..................................................................12

8

*Brown v. Google LLC,*
   2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ............................................................*passim*

9

10

*Cabrera v. Google LLC,*
   2023 WL 5279463 (N.D. Cal. Aug. 15, 2023) ...................................................................11

11

*Campbell v. Facebook Inc.,*
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ............................................................................12, 13

12

13

*Condon v. Condon,*
   2008 WL 11338437 (C.D. Cal. Jun. 6, 2008) ......................................................................9

14

15

*Cousin v. Sharp Healthcare,*
   2023 WL 4484441 (S.D. Cal. Jul. 12, 2023) ........................................................................6

16

*Cox v. Louisiana,*
   379 U.S. 559 (1964) ..............................................................................................................3

17

18

*Davis v. Abercrombie,*
   2014 WL 4956454 (D. Haw. Sept. 30, 2014) ....................................................................10

19

20

*Folgelstrom v. Lamps Plus, Inc.,*
   195 Cal. App. 4th 986 (2011) ...............................................................................................6

21

*Hammerling v. Google LLC,*
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................................6

22

23

*Harris v. comScore, Inc.,*
   292 F.R.D. 579 (N.D. Ill. 2013) ..................................................................................2, 3, 12

24

25

*Hart v. TWC Prod. & Tech. LLC,*
   2023 WL 3568078 (N.D. Cal. Mar. 30, 2023) ..............................................................12, 13

26

*Hataishi v. First Am. Home Buyers Prot. Corp.,*
   223 Cal. App. 4th 1454 (2014) .........................................................................................5, 6

27

28

ii

*Heeger v. Facebook, Inc.*,
   509 F. Supp. 3d 1182 (N.D. Cal. 2020)..................................................................6

*Hernandez v. Hillsides, Inc.*,
   47 Cal.4th 272 (2009).............................................................................................4

*I.C. v. Zynga, Inc.*,
   600 F. Supp. 3d 1034 (N.D. Cal. 2022)..................................................................6

*In re Carrier IQ, Inc. Consumer Privacy Litig.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015)..............................................................3, 12

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020).........................................................................*passim*

*In re Google Inc. Gmail Litig.*,
   2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ............................................10, 12, 13

*In re Google Referrer Header Priv. Litig.*,
   465 F. Supp. 3d 999 (N.D. Cal. 2020)....................................................................7

*In re Google RTB Consumer Priv. Litig.*,
   606 F. Supp. 3d 935 (N.D. Cal. 2022)..................................................................12

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012)..................................................................6

*In re Xyrem Antitrust Litig.*,
   2023 WL 3440399 (N.D. Cal. May 12, 2023) (Seeborg, C.J.)...............................15

*In re Yahoo Mail Litig.*,
   308 F.R.D. 577 (N.D. Cal. 2015) .....................................................................8, 15

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017).................................................................................9

*Kight v. CashCall, Inc.*,
   231 Cal. App. 4th 112 (2014)...............................................................................5, 6

*Mass v. Regents of Univ. of Cal.*,
   2020 WL 13584234 (Cal. Super. May 5, 2020) ....................................................5

*Mullins v. Premier Nutrition Corp.*,
   2016 WL 1535057 (N.D. Cal. Apr. 15, 2016)........................................................10

*NEI Cont. & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
   2015 WL 1309938 (S.D. Cal. Mar. 24, 2015)........................................................6

*NovelPoster v. Javitch Canfield Grp.*,
   140 F. Supp. 3d 954 (N.D. Cal. 2014)....................................................................3

iii

*Opperman v. Path, Inc.*,
  2016 WL 3844326 (N.D. Cal. Jul. 15, 2016) ................................................*passim*

*Oracle USA, Inc. v. Rimini Street, Inc.*,
  191 F. Supp. 3d 1134 (D. Nev. 2016), *rev'd on other grounds*, 879 F.3d 948
  (9th Cir. 2018) ................................................................................................4

*Orshan v. Apple Inc.*,
  2023 WL 3568079 (N.D. Cal. Mar. 31, 2023) ................................................8

*Prouty v. Gores Tech. Grp.*,
  121 Cal. App. 4th 1225 (2004) ................................................................13

*Pulaski & Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) ................................................................9

*Reaves v. Ketoro, Inc.*,
  2020 WL 5488858 (C.D. Cal. Jul. 17, 2020) ................................................10

*Romero v. Securus Techs., Inc.*,
  331 F.R.D. 391 (S.D. Cal. Nov. 21, 2018) ................................................6

*Shulman v. Grp. W Prods., Inc.*,
  18 Cal.4th 200 (1998) ................................................................4

*Silva v. B&G Foods, Inc.*,
  2022 WL 4596615 (N.D. Cal. Aug. 26, 2022) ................................................8

*Smith v. Univ. of Wash., Law Sch.*,
  233 F.3d 1188 (9th Cir. 2000) ................................................................15

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  896 F.3d 923 (9th Cir. 2018) ................................................................13, 14

*United States v. Kurbo, Inc.*,
  No. 3:22-CV-946, Dkt. 15 (N.D. Cal. Mar. 3, 2022) ................................................15

*Uzuegbunam v. Preczewski*,
  141 S. Ct. 792 (2021) ................................................................9

*Williams v. Apple, Inc.*,
  338 F.R.D. 629 (N.D. Cal. 2021) ................................................................10

*Williams v. Facebook, Inc.*,
  498 F. Supp. 3d 1189 (N.D. Cal. 2019) (Seeborg, C.J.) ................................................3

*Zinser v. Accufix Res. Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ................................................................15

iv

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

Cal. Penal Code § 502 ..........................................................................................4, 9, 11

Cal. Penal Code § 632 ............................................................................................5, 7

Consumer Legal Remedies Act .................................................................................8

**Rules**

Fed. R. Civ. P. 23 ..........................................................................................*passim*

**Other Authorities**

Restatement (Second) of Torts § 892A (1979)............................................................12

Restatement (Third) of Restitution § 44 .....................................................................9

v

## I.    INTRODUCTION

Google does not contest that Plaintiffs meet the Rule 23(a) requirements and most of Rule 23(b)(3). Google instead focuses on predominance—arguing that Plaintiffs' claims are the sort that can *never* be certified. That ruling would be convenient for Google, but it is wrong. This case is ideal for class certification. It centers around an on/off button (the "(s)WAA" button) that Google offered account holders, which Google said "must be on" to "let Google save" users' activity on non-Google apps. Mot. Ex. 3.



Dkt. 289 (FAC), ¶ 90. The classes are limited to people who turned (s)WAA "off."

Off meant off, as recognized by Google's CEO Sundar Pichai. He told Congress that Google provides "clear toggles" for users to "decide whether that information is collected [or] stored." Mot. 2. *Plaintiffs' Motion explained why Mr. Pichai's testimony was objectively false, and Google does not argue otherwise*. This is not an individualized issue: Google's own studies prove users expect Google not to collect (s)WAA-off data. Even Google considers *all* (s)WAA-off data as "unconsented" and tags it accordingly. Still, throughout the class period and for all class members, Google collected, saved, and used (s)WAA-off data for Google's own financial benefit.

Unable to avoid the underlying common issues, Google resorts to arguments more suited for summary judgment, stitching together Privacy Policy provisions to defend its actions and downplaying its collection of (s)WAA-off app activity data as "basic record-keeping" and

1

"pseudonymous." Opp. 1, 3. *But Google's arguments and euphemisms apply class-wide*, if at all. In this glaring respect, Google's opposition *supports* Plaintiffs' motion.

Google also risks leading the Court astray by ignoring key legal authority. Plaintiffs repeatedly cited and applied the Ninth Circuit's leading decision on their claims, *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), but Google's opposition completely ignores it. Google does not even try to distinguish cases that certified claims like these under Rule 23(b)(3), such as *Opperman v. Path, Inc.*, 2016 WL 3844326 (N.D. Cal. Jul. 15, 2016) and *Harris v. comScore, Inc.*, 292 F.R.D. 579 (N.D. Ill. 2013). Google hardly mentions the CDAFA at all, focusing almost entirely on Plaintiffs' other claims. And Google ignores *every single case* Plaintiffs cited to support 23(b)(2) certification, including this Court's rejection of Google's primary argument that claims cannot be certified under both (b)(3) and (b)(2).

Rather than confront Plaintiffs' authorities, Google mischaracterizes Plaintiffs' claims and positions. From the beginning, Google has known and admitted that "there are no fraud claims in this case." Dkt. 94 (Feb. 5, 2021 Hrg.) at 37. Seeking to latch onto decisions denying class certification for fraud claims, Google now represents that this case *is* about "fraud." Opp. 1. Google also spins up a nonsense narrative of how Plaintiffs have some "new theory" for class certification. This case has always concerned Google's collection and use of (s)WAA-off data, as Google admits. Dkt. 1 ¶ 8; Dkt. 325 at 6. Through discovery, Plaintiffs learned precisely how Google enriches itself through data collection its lawyers now disingenuously label "basic record-keeping." Hochman Rep. ¶¶ 122, 270–82; § VII.F. Plaintiffs' expert calculated damages tied to how Google uses the data. That is how discovery and litigation are supposed to work. Plaintiffs properly seek certification based on class-wide evidence addressing these common questions.

The case for certification cannot be simpler—this case is about an on/off button uniformly offered to and turned off by class members. Google cites no case in which a binary button created individualized issues. "Off" should have an objective meaning in law, just as "no" is a universally accepted signal for a refusal. Google throws a Hail Mary on implied consent, but it cannot identify a single article, survey, or policy that would suggest individualized issues. Google's excuses for betraying its uniform representations apply class-wide, confirming that certification is appropriate.

2

## II.    ARGUMENT

### A.    Common questions predominate with respect to the CDAFA claim.

Google barely musters an argument against Plaintiffs' CDAFA claim. Google does not dispute that the first element—"access"—will be adjudicated on a class-wide basis, nor that "permission" is determined objectively, by reference to words and actions "conveyed from one person to another." Mot. 16, 18. That is important because the relevant act here is uniform: All Plaintiffs and class members had (s)WAA turned off. *See Harris*, 292 F.R.D. at 585 (authorization is a "common" question under the CFAA, the federal analog to the CDAFA); *cf. Cox v. Louisiana*, 379 U.S. 559, 570 & n.4 (1964) (evaluating "permission" by reference to what "was ever communicated," *not* "subjective[] intent"). Google also does not dispute that whether it "took" and "made use of" Plaintiff's (s)WAA-off data turns on common evidence and class-wide practices.

Unable to dispute that these elements are subject to common proof, Google stakes out a meritless position on statutory standing under the CDAFA, which is satisfied by any "damage or loss" no matter how small. *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 964–65 (N.D. Cal. 2014) ("any amount of damage or loss … is enough"). Plaintiffs' Motion identified three ways that this "damage or loss" will be adjudicated on a class-wide basis. Mot. 17. *First*, Plaintiffs' proof of Google's class-wide unjust enrichment satisfies this element. *Facebook Tracking*, 956 F.3d at 600–01 (plaintiffs' stake in unjust profits satisfies damages or loss under the CDAFA); Dkt. 314-7 ("Lasinski Rep.") § 7 (calculating unjust enrichment). *Second*, "there is a market for [class members'] data—one Google itself has created," and Google took class members' data without paying for it. *Brown v. Google LLC*, 2023 WL 5029899, at *19 (N.D. Cal. Aug. 7, 2023); Lasinski Rep. § 8 (opining on the market for this data). *Third*, by sending data to Google, Google's conduct drains battery life and causes class members' devices to run slower. *See In re Carrier IQ, Inc. Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1066–67 (N.D. Cal. 2015); *see also Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1200 (N.D. Cal. 2019) (Seeborg, C.J.); Mot. Ex. 13 at 138:19–23 (testimony of technical expert Jonathan Hochman); Mot. Ex. 64 at -10; Mot. Ex. 65 at -98; Dkt. 314-6 ("Schneier Rep.") ¶ 102; Ex. 70 at 224:18–225:7 (Google

3

1  representative explaining how transmitting data to Google's servers "use[s] … the end user's

2  device resources and bandwidth"). Google ignores all of this class-wide evidence.

3  Rather than confront Plaintiffs' arguments, Google rewrites the CDAFA, incorrectly

4  seeking to limit monetary relief to "expenditure[s] . . . to verify" whether computers were damaged.

5  Opp. 15. That argument is obviously wrong, because Google cites the wrong part of the statute.

6  Section (b)(11) defines "victim expenditures"—not "compensatory damages," as Google claims.

7  Rather than limit compensatory damages to victim expenditures, the statute makes clear that

8  compensatory damages "shall include" such victim expenditures. Cal. Penal Code § 502(e)(1). The

9  victim-expenditures provision does not limit the available relief; it *expands* it. *See Brown*, 2023

10  WL 5029899, at *19 (recognizing a right to restitution under the CDAFA); *Oracle USA, Inc. v.

11  Rimini Street, Inc.*, 191 F. Supp. 3d 1134, 1145-46 (D. Nev. 2016), *rev'd on other grounds*, 879

12  F.3d 948 (9th Cir. 2018). Google also ignores how the CDAFA separately provides for "injunctive

13  relief or other equitable relief." Cal. Penal Code § 502(e)(1); *Facebook Tracking*, 956 F.3d at 601

14  (recognizing a right to disgorgement of profits).

15  **B.    Common questions predominate with respect to the two privacy tort claims.**

16  These claims have two elements: (1) whether "there exists a reasonable expectation of

17  privacy" and (2) whether "the intrusion was highly offensive." *Facebook Tracking*, 956 at 601.

18  Both elements are subject to common proof, and Google concedes the standard is objective. Opp.

19  13-14 (citing "objectively reasonable expectation" standard). To determine if there was a

20  reasonable expectation of privacy, the factfinder should consider "the identity of the intruder,"

21  "the extent to which other persons had access to the subject place," and "the means by which the

22  intrusion occurred." *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 286–87 (2009). Those are

23  common issues, focusing on the nature of the intruder and the intrusion. The Court likewise stated

24  that the offensiveness inquiry is essentially a "policy determination," taking into account "the

25  degree and setting of the intrusion[] and the intruder's motives and objectives." *Id.* Both elements

26  focus on the defendant, and neither involves any analysis of the plaintiff's background or personal

27  beliefs. *See id.* at 288–300 (analyzing privacy tort claims without discussing the attributes of any

28  plaintiff); *Shulman v. Grp. W Prods., Inc.*, 18 Cal.4th 200, 230–242 (1998) (same).

4

1     Common questions predominate because, consistent with established California law, these

2  two elements will be decided based on common proof. The expectation of privacy will be decided

3  based on Google's class-wide, uniform representations, focusing on the (s)WAA on/off button.

4  Mot. 10–12. Google's intrusion is also subject to common proof regarding how Google collects

5  and uses (s)WAA off data. Mot. 13–14; *see also* Dkt. 331 ("Daubert Opp.") at 2–4; Dkt. 314-5

6  ("Hochman Rep.") § VII.F (describing (s)WAA-off ad targeting at ¶¶ 273–77). Google does not

7  dispute that (s)WAA is presented as a "privacy control." Mot. 10. Because the "private place" and

8  the "[defendant's] conduct [is] the same for all class members," Plaintiffs' claims "can be proven

9  on a common basis." *Opperman*, 2016 WL 3844326, at *11. Google neither contests these facts

10  nor distinguishes *Opperman*. Opp. 12–15.

11     Google's contention that privacy torts are simply too "fact-dependent" to be certified under

12  Rule 23(b)(3) is wrong, and not the law. *See Opperman*, 2016 WL 3844326, at *11. Google claims

13  this extreme conclusion is compelled by *Kight v. CashCall, Inc.*, 231 Cal. App. 4th 112, 130 (2014)

14  and *Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454, 1467–68 (2014), but

15  *neither case involved privacy tort claims at all*. The plaintiffs in those cases asserted claims under

16  Section 632 of the California Invasion of Privacy Act, which by statute requires "an analysis of

17  the totality of the factual circumstances," including "'the parties to the communication.'" *Kight*,

18  231 Cal. App. 4th at 131 (quoting Cal. Penal Code § 632(c)). The *Kight* court did *not* "analyze

19  [§ 632 claims] as analogous to a privacy tort," as Google contends (Opp. 14)—it conducted a

20  different analysis, required by statute. *Kight* and *Hataishi* do not even mention privacy torts, and

21  no court has extended their holding to common-law or constitutional privacy claims.

22     Even if the Court had not previously dismissed Plaintiffs' Section 632 claim, Dkt. 109 at

23  13, *Kight* and *Hataishi* would not apply because neither case presented an objective on/off button

24  uniformly turned to off. Google assured users that the (s)WAA button "must be on" to "let Google

25  save" their activity on non-Google apps. Class members had that control turned to off. *Mass v.*

26  *Regents of Univ. of Cal.*, 2020 WL 13584234, at *7 (Cal. Super. May 5, 2020) (distinguishing

27  *Hataishi*, which "concerned the understandings of the absent class members in the *absence* of

28  affirmative statements" (emphasis added)). Also, unlike Google, the defendants in *Kight* and

5

1   *Hataishi* actually *did* warn *some* class members that their phone calls were recorded. *Kight*, 231

2   Cal. App. 4th at 129 ("most inbound callers received an automated disclosure regarding call

3   monitoring"); *Hataishi*, 223 Cal. App. 4th at 1466 ("[e]xcept for certain limited circumstances, a

4   customer making an inbound call to the defendant was greeted with an automated Call Monitoring

5   Disclosure." (cleaned up)). Glaringly, Google identifies no such disclosures in this case; Google

6   instead relies for its defense on its own *uniform* written disclosures, taking three pages to

7   desperately explain how selective provisions nonsensically say that "off" means "on." Opp. 7-9.

8   *Kight* and *Hataishi* do not apply. *See NEI Cont. & Eng'g, Inc. v. Hanson Aggregates Pac. Sw.,*

9   *Inc.*, 2015 WL 1309938, at *4–7 (S.D. Cal. Mar. 24, 2015) (describing these separate lines of

10  cases); *Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 411 (S.D. Cal. Nov. 21, 2018) (certifying

11  class because the defendant's omission of recording warning was uniform to all class members).

12      Google's remaining cases are irrelevant to the question currently before the Court, *i.e.*,

13  whether Plaintiffs' claims can be adjudicated on a class-wide basis. In each case, the plaintiffs'

14  privacy tort claims were dismissed before the class certification stage.[1] Here, the Court denied

15  Google's motion to dismiss these claims. Dkt. 109 at 15–16. If anything, Google's cases reinforce

16  Plaintiffs' motion for class certification: Each court adjudicated the privacy claims without

17  discussing the plaintiffs' specific backgrounds. These cases also did not involve an on/off button.

18      **C.    Common questions predominate with respect to harm.**

19      Google's "harm" arguments likewise provide no basis to deny Plaintiffs' motion. Google

20  claims that class members suffered no harm because the data is not sensitive and because the data

21  is "anonymous," but these are also common issues, subject to class-wide proof. And these Google

22  assertions are in any case irrelevant. For the CDAFA claim, there is no such requirement to

23  demonstrate the data is sensitive or not anonymous; Plaintiffs need only prove "damage or loss"

24

25

26  [1] *See, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1046, 1049 (N.D. Cal. 2022); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063

27  (N.D. Cal. 2012); *Cousin v. Sharp Healthcare*, 2023 WL 4484441, at *6 (S.D. Cal. Jul. 12, 2023);

28  *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 993 (2011).

1    under the statute, and Plaintiffs have done so. *See supra* Section II.A. Google presents only its own

2    say-so, citing no authority requiring Plaintiffs to do more.

3        As for the privacy claims, Google ignores the leading Ninth Circuit case, where the court

4    held that an "invasion of the historically recognized right to privacy" amounts to injury in and of

5    itself. *Facebook Tracking*, 956 F.3d at 599, 606.[2] "[I]nformation need not be personally identifying

6    to be private." *In re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d 999, 1009–10 (N.D. Cal.

7    2020). While not required, Plaintiffs will use common evidence to prove the data is sensitive.

8    Plaintiffs' experts will explain how Google's so-called "record-keeping" of (s)WAA-off app

9    activity reveals political leanings, sexual orientation, reproductive decisions, spiritual beliefs,

10   medical information, and more. *See* Hochman Rep. ¶¶ 3, 187–88, 311; Schneier Rep. ¶¶ 89–99;

11   *see also* Ex. 71 at -23 (describing the "sensitive nature of the data being collected"); Daubert Opp.

12   22–23. What is more, Google tags the data as private via "bits" or "fields" that, in Google's own

13   words, "indicates WAA and sWAA status alongside ad interactions, e.g., views and clicks." Opp.

14   Ex. 21 at 16. Hochman Rep. ¶¶ 136, 206–07, 216, 235. Google not only learns what the user

15   expected to keep private from Google, but also admits this data was supposed to be private from

16   Google. Even if Google were now to about-face and argue that this data is *not* private, the issue is

17   still a common one.

18       While also not required, Plaintiffs will use common evidence to prove that (s)WAA-off

19   data is identifying. When (s)WAA is off, Google simply diminishes its reliance on one identifier

20   (GAIA) while continuing to use other identifiers, including proprietary Google identifiers. *See,*

21   *e.g.*, Hochman Rep. ¶¶ 100–11, 123–25, 210; Ex. 72 at 53:18–54:2 (there is a "false dichotomy"

22   between GAIA and non-GAIA data). Google puts great weight on the claim that it does not serve

23   "personalized" ads, but Google tellingly does not contest that it still "targets" ads using data (*e.g.*,

24   location, language, device, and other information) from the app the (s)WAA-off user is browsing.

25

26   ─────────────────────
     [2] Google incorrectly suggests the Court previously determined the data in this case is not sensitive.

27   Opp. 16. Instead, the Court determined that this data is not "confidential" under CIPA § 632
     because it may be recorded by app developers. *Id.* at 13. The Court then rejected Google's

28   arguments that the content of this information is not sensitive. *Id.* at 15–16.

1  *See* Hochman Rep. ¶¶ 273–77. Even Google's privacy employees acknowledge this kind of data

2  is "tied to a data subject" and therefore not "anonymous." *See* Ex. 73 at 106:16–107:1, 110:2-19.

3  Google's lawyers likewise admit that (s)WAA-off data is tied to the device that the (s)WAA-off

4  user carries in their pocket. Opp. 3. And Plaintiffs' experts will testify that this data is identifying,

5  including through an analysis of the data produced in this case. Hochman Rep. § VII.G, I. As one

6  of Google's engineers summarized, "I'm not any safer with [(s)WAA] off than on. Google will

7  still give up any information (such as my location) for any legal investigation against me because

8  it has the data available." Mot. Ex. 7 at -09–10.

9         Finally, each plaintiff testified about their harm, and Google's characterization of their

10 testimony as admitting to "no harm" is false.[3] Google makes much of the fact that they continue

11 to use Google products and services, but that is legally and factually irrelevant. It is a "heads I win,

12 tails you lose" position Google has taken in various cases. If the plaintiffs were to stop using

13 Google products, Google would argue they lack standing to seek injunctive relief. *In re Yahoo*

14 *Mail Litig.*, 308 F.R.D. 577, 589 (N.D. Cal. 2015) (rejecting arguments about plaintiffs' continued

15 use of the product because that "would put Plaintiffs in a catch-22 that would essentially preclude

16 injunctive relief altogether"). Google is liable for collecting data without permission, while class

17 members had (s)WAA turned off. This is unlike the misrepresentation cases Google cites, in which

18 plaintiffs must show reliance. *Orshan v. Apple Inc.*, 2023 WL 3568079, at *12 (N.D. Cal. Mar. 31,

19 2023) (discussing the Consumer Legal Remedies Act, which requires reliance); *Silva v. B&G*

20 *Foods, Inc.*, 2022 WL 4596615, at *2 (N.D. Cal. Aug. 26, 2022) (plaintiffs claimed they purchased

21

22 _____

[3] Ex. 74 (Harvey) at 237:21-238:22, 248:13-19 ("[i]t's very disturbing and offensive" that "my personal information has been collected. It's been saved. It's been used."); Ex. 75 (Rodriguez) at 82:24-84:1, 247:23-249:15 ("[t]he harm … is the fear of someone getting your information and who knows what they're using it for. … I should feel safe. But when you don't feel safe, isn't that harmful? It is."); Ex. 76 (Santiago) at 227:8–228:7, 291:6-9 ("a huge invasion of my privacy. Information that I thought was personal to me or I expected to be personal to me that I value, to be accessed by Google without my permission."); Ex. 77 (Cataldo) at 27:9-28:6, 76:5-77:12 ("the surreptitious taking of my information damages me. … [T]here's a value to private information intrinsic to the fact it's private. … [T]hat privacy is important. It's a core right."). Google also inappropriately focuses attention on Mr. Rodriguez's son, who is a minor and a non-party. Google offers no evidence of whether it had permission to save his data.

1  the product at issue in reliance on a misrepresentation). As Google told the Court, "[t]here are no

2  fraud claims in this case." Dkt. 94 (Feb. 5, 2021 Hrg.) at 37. Third, Plaintiffs' decision to use

3  Gmail or a Google phone is irrelevant to Google's collection of app activity data; as Plaintiffs'

4  expert will explain, Google's data vacuum is impossible to avoid and is unaffected by those

5  "choices." *See* Hochman Rep. ¶¶ 2, 59, 249–57, 355–56 (the at-issue SDKs are ubiquitous, and

6  data collection cannot be turned off). As the plaintiffs testified at their depositions, they have not

7  changed behavior to support this investigation. Exs. 74-77. These facts do not undermine harm.

8  **D.    Common questions predominate with respect to monetary relief.**

9  Google's arguments regarding damages are contrary to Ninth Circuit law. The Ninth

10  Circuit requires plaintiffs to show that "the whole class suffered damages traceable to the same

11  injurious course of conduct." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017). For

12  reasons already explained, Google's uniform course of conduct caused the injuries suffered by all

13  class members. Issues regarding "damages calculations alone cannot defeat class certification."

14  *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015). Even so, Plaintiffs

15  explained how *four* types of available relief can be calculated on a class-wide basis:

16  (1) disgorgement of profits, *see Facebook Tracking*, 956 F.3d at 599–601 ("unauthorized use of

17  their information," including under the CDAFA); Restatement (Third) of Restitution § 44, cmt. b

18  (interference with the "right of privacy"); (2) actual damages, including restitution, *see Brown*,

19  2023 WL 5029899, at *19 (holding that market-based measure is a form of compensable "damage

20  or loss" under the CDAFA); (3) punitive damages, Cal. Penal Code § 502(e)(4); *Condon v.

21  Condon*, 2008 WL 11338437, at *7 (C.D. Cal. Jun. 6, 2008) (privacy claims); and (4) nominal

22  damages, *see Opperman*, 2016 WL 3844326, at *15–16 (certifying class to seek nominal damages

23  for privacy violation); *Avina v. Spurlock*, 28 Cal. App. 3d 1086, 1088 (1972) (generally describing

24  when nominal damages are available); *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) (nominal

25  damages can redress past wrong). *See* Mot. 19–22. Google does not grapple with any of this, all

26  of which far exceeds Rule 23(b)(3)'s requirements.

27  Instead of addressing Plaintiffs' actual calculations, Google faults Plaintiffs for (in

28  Google's view) failing to offer a ***fifth*** method of calculating monetary relief, based on emotional

9

distress. Opp. 18-19. The law does not require plaintiffs to offer methodologies for every theoretical measure of relief. *See, e.g.*, *Mullins v. Premier Nutrition Corp.*, 2016 WL 1535057, at *6–7 (N.D. Cal. Apr. 15, 2016) (certifying class based on restitution model, which was just "one of the possible remedies"); *Davis v. Abercrombie*, 2014 WL 4956454, at *21–23 (D. Haw. Sept. 30, 2014) (certifying class for nominal but not compensatory damages). Google cites *Opperman*, but that case lends no support. Judge Tigar entertained a class-wide actual damages model for privacy torts but found that the expert's methodology was unreliable, based on flaws absent from Plaintiffs' models. *See* Daubert Opp. 24. Moreover, Judge Tigar *certified* a nominal damages class.

**E.    Common questions predominate with respect to any consent defense.**

**1.    Express consent does not defeat predominance.**

By definition, express consent is resolved on a class-wide basis. "[I]n determining whether Plaintiffs have expressly consented," the only relevant materials are "[t]he agreements between Google and its users." *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *19 (N.D. Cal. Mar. 18, 2014). Here, the applicable materials are the (s)WAA disclosures and Google's Privacy Policy, which are the same for all class members. *See* Opp. 6–9. Individualized inquiries are unnecessary. *See, e.g.*, *Reaves v. Ketoro, Inc.*, 2020 WL 5488858, at *10 (C.D. Cal. Jul. 17, 2020). Whether these materials expressly notify users of Google's collection of (s)WAA-off app activity data will be decided class-wide.

To manufacture individualized issues (which would not even predominate), Google invokes contract principles (Opp. 24), but these principles support Plaintiffs. Google claims it needs "extrinsic evidence" from each class member to prove express consent insofar as Plaintiffs' "reading of the WAA disclosures [] renders them ambiguous." Opp. 20. Set aside Google's conflicting position that these disclosures have an "*un*ambiguous meaning." *Id.* The fundamental problem is that standardized agreements are interpreted to "treat[] alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing." *Williams v. Apple, Inc.*, 338 F.R.D. 629, 638 (N.D. Cal. 2021). As Judge Davila explained to Google just last month, courts should not "inquire into a party's mindset or knowledge" in circumstances like these; courts should instead "seek[] to effectuate the reasonable expectations of the average

10

member of the public." *Cabrera v. Google LLC*, 2023 WL 5279463, at *18 (N.D. Cal. Aug. 15, 2023). That is a class-wide determination, which will depend on class-wide evidence. And that class-wide evidence does not come anywhere close to expressly disclosing (or obtaining consent for) Google's collection of (s)WAA-off data. Quite the opposite: When Google concisely says users can "[c]hoose the activities and info you allow Google to save," and that (s)WAA "must be on" "to let Google save" data about what they do on non-Google apps, that creates an objective expectation that Google won't collect and save (s)WAA-off app activity data. *See* Mot. 10–12.

Google places great weight on the term "Google Account," arguing that it somehow had consent to store (s)WAA-off data in some undefined location outside of the "Google Account." Opp. 20–21. Google presents zero evidence that a single person shared its view, and no wonder. This Court has already held that "the concept of a 'Google Account' is, at best, nebulous." Dkt. 109 at 8. Google *still* offers no definition of a Google Account; it simply points to instructions for how to create one. *See* Opp. Appx. A at 52; *see also* Ex. 78 at 294:19-296:12 (Google's expert on its disclosures admitting Google does not define the term). Testimony from Google's technical expert is common and supports Plaintiffs; he admitted that a Google Account comprises "your relationship with Google," including "all kinds of other information that Google keeps that is associated to your identity"—i.e., the identifying information at issue. Ex. 79 ("Black Tr.") at 139:9–14. Google's CEO likewise told Congress that users can decide "*whether* [activity] information is collected, stored"—not simply *where*. Schneier Rep. ¶ 254. Consistent with Mr. Pichai's (inaccurate) testimony, the evidence proves that on/off refers is supposed to control *whether* data is saved. *See* Mot. 12, 15 (citing studies). In any event, the parties' dispute over the import of the term "Google Account" is a common issue, resolved with class-wide evidence.

### 2. Implied consent does not defeat predominance.

Implied consent is not a defense to Plaintiffs' remaining claims. That concept is from the wiretap statutes, where implied consent turns on third-party "sources" that users were "exposed" to. Opp. 23. The CDAFA, by contrast, imposes liability when the defendant takes data "without permission." Cal. Penal Code § 502(c)(2). Permission requires more than exposure to third-party sources; permission requires words and/or actions conveyed from the purported permission-giver

11

1   to the purported permission-seeker. *In re Carrier IQ*, 78 F. Supp. 3d at; *see also* Mot. 18; Section

2   II.B, *supra*. Google neither disputes this proposition nor addresses Plaintiffs' authorities. Inquiring

3   into class members' state of mind—or any other fact not conveyed from class members to

4   Google—would undermine the California Legislature's specific choice to require *permission*

5   before taking data, rather than mere suspicion or knowledge. *See Harris*, 292 F.R.D. at 585

6   (certifying class to assert analogous federal claims). The same is true of Plaintiffs' privacy claims,

7   which also turn on objective standards. By definition, an objective standard is inconsistent with an

8   examination of individual users' states of mind. This is why Judge Tigar in *Opperman* rejected

9   Google's argument that individual inquiries are required. 2016 WL 3844326, at *11. ████████

10  ██████████████████████████████████████████████████████████████

11  ████████████████████████ Hochman Rep. ¶¶ 161, 166, 175. And even if implied consent

12  could be asserted as a defense to these claims in other cases (it cannot), it is unavailable here

13  because Google contractually promised not to reduce rights under the Privacy Policy "without

14  your *explicit* consent." *E.g.*, Mot. Ex. 22 at 16.

15          Even if permitted as a defense, this does not defeat predominance. Proving implied consent

16  requires Google to identify actual evidence that class members knew about and consented to the

17  "specific practice alleged in this case," i.e., Google's collection, saving, and use of *(s)WAA-off* app

18  activity data. *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014). "[C]onsent is

19  only effective if the person alleging harm consented '*to the particular conduct, or to substantially*

20  *the same conduct'* and if the alleged tortfeasor did not exceed the scope of that consent." *Brown*,

21  2023 WL 5029899, at *7 (citing Restatement (Second) of Torts § 892A (1979)). Google would

22  need to identify sources that "'explicitly notify' users of the practice at issue." *In re Google RTB*

23  *Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022). Google's cases agree.[4]

24

25

26  [4] *See Hart v. TWC Prod. & Tech. LLC*, 2023 WL 3568078, at *11 (N.D. Cal. Mar. 30, 2023)
    ("undisputed" that sources "explicitly disclosed the practices at issue"); *Brown v. Google LLC*,

27  2022 WL 17961497, at *18–19 (N.D. Cal. Dec. 12, 2022) ("several media and academic reports
    [] publicly disclosed the alleged conduct"); *In re Gmail*, 2014 WL 1102660, at *17 ("there is a

28  panoply of sources" disclosing the challenged practices).

12

Implied consent also presents no obstacle to certification because Google "present[s] no evidence" to support such a defense. *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931–32 (9th Cir. 2018) ("[W]e do not consider the consent defenses that [the defendant] might advance or for which it has presented no evidence."). Google identifies no sources that disclose Google's collection of (s)WAA-off app activity data. Unlike in *Brown*, Google did not conduct an expert survey to probe user knowledge. Unlike in *Hart*, *Brown*, and *Gmail*, Google does not even try to identify a *single* media source disclosing that Google collects the at-issue data, and Plaintiffs are aware of none. *Plaintiffs specifically asked Google in an interrogatory to identify any such media sources, and Google identified none.* Ex. 80 at 8. *Hart* also supports Plaintiffs because it recognized that "an inquiry into the reasonable expectation of privacy under the California Constitution largely entails an assessment of *objective* criteria that are susceptible to generalized, class-wide proof." *Hart*, 2023 WL 3568078, at * 9 n.6 (emphasis added).

Rather than identify surveys or media reports (like the defendants in the cases it cites), Google relies on app developers' privacy policies. Ex. TK at 10. The problem for Google is that *none* of these policies disclose the "specific practice alleged." *Id.*; *Campbell*, 77 F. Supp. 3d at 848. Google requires all developers to disclose their use of Google Analytics; *no policy* mentions (s)WAA or otherwise discloses that Google does not honor its users' privacy settings. That is not enough to "convincingly show that the party knew about and consented to" Google's collection of *(s)WAA-off* data, *In re Gmail*, 2014 WL 1102660, at *16, the "specific practice" in this case.

This Court previously rejected Google's reliance on the *same* app privacy policies, which Google attached to its initial motion to dismiss. Dkt. 325, at ¶ 4 (noting these are the same policies). Notwithstanding these same policies, this Court held that "Plaintiffs offer a cogent account of why they saw WAA as capable of turning off GA for Firebase's collection of their third-party app data." Dkt. 109 at 7–10; *see also Prouty v. Gores Tech. Grp.*, 121 Cal. App. 4th 1225, 1235 (2004) ("under well established principles of contract interpretation, when a general and a particular provision are inconsistent, the particular and specific provision is paramount to the general provision"). In any event, as with Google's other arguments, this issue will be resolved class-wide.

13

Google contends that "the 1.5 million [apps] were required to and did disclose their use of Google Analytics." Opp. 2. Whether that fact absolves Google is a class-wide issue.[5]

So Google tries to change the topic, arguing that users know they receive Google ads and that additional settings that impact ads. Opp. 21-22.[6] *Google cites **no evidence*** users know a Google ad when they see one. *See id.* (no citation whatsoever). Regardless, Google's argument completely misses the point: Google must prove class members consented to *Google's saving and use of (s)WAA-off data*, not Google advertising.[7] Google neither argues nor offers evidence that Google ads or any other settings disclose that Google saves and uses (s)WAA-off data. Google's defense is especially bizarre given Google continues to (incorrectly) insist that it "already serves ads without receiving sWAA-off data." Dkt. 330 at 15. Courts "do not consider the consent defenses … for which [the defendant] has presented no evidence." *True Health*, 896 F.3d at 932.

The existence of other settings also does not create individualized issues. Even class members who used these settings had (s)WAA turned off, and ==there is no control that can prevent Google from saving and using (s)WAA-off data==. The settings Google mentions ==redact *one identifier*; Google still collects and saves everything else==. Hochman Rep. ¶¶ 103-04, 274. ==Google uses the remaining data to serve ads and track and attribute conversions==, so there is no reason to exclude this subset of users. Hochman Rep. ¶¶ 274, 292-96. Finally, Google's argument about pre-2016 users whose WAA was "off" by default ignores the fact that at the start of the class period, these class members received a "consent bump" prompt through which Google urged them to turn (s)WAA on. Ex. 81 at 6 ("Google Accountholders as of June 2016 … were shown the Consent

---

[5] Google identifies other provisions in privacy policies, none of which are relevant. (s)WAA-off users have already opted out of analytics across all apps. If a developer offers the opportunity to opt out of analytics, that would not suggest that (s)WAA is ineffective. A general offer to opt out in one app in no way suggests that turning (s)WAA off is ineffective. The same is true of developers' general offer to delete data sent to Google. Developers cannot give users the power to opt out of Google's data collection. Hochman Rep. ¶¶ 258–67.

[6] Google's reliance on Mr. Cataldo's testimony makes no sense. Mr. Cataldo understood that turning (s)WAA off would prevent Google from collecting app activity data for any purpose. Mr. Cataldo did not testify that Google had his permission to collect app activity data to serve ads.

[7] Google's use of (s)WAA-off data to serve ads is relevant only to Mr. Lasinski's unjust enrichment Scenario Two model. Even if Google's argument is credited, it would not affect Plaintiffs' other theories and damages models.

14

1   Bump Agreement upon logging into their accounts."); Hochman Rep. ¶ 55; Schneier Rep. ¶ 377.

2   These class members refused, affirmatively denying Google permission to collect their data. Even

3   if they are somehow differently situated, the solution is subclassing, not denial of certification.

4       **F.      Rule 23(b)(2) certification is also warranted.**

5       A class can be certified both under Rule 23(b)(3) and under Rule 23(b)(2)" "[T]he

6   provisions are not mutually exclusive." *Smith v. Univ. of Wash., Law Sch.*, 233 F.3d 1188, 1196

7   (9th Cir. 2000). Google's cases state the uncontroversial principle that unless a class is certified

8   under Rule 23(b)(3), it can obtain monetary relief only if it is "incidental to [the] primary claim

9   for injunctive relief." *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001). These

10  authorities "limit[] only the relief plaintiffs can seek under a Rule 23(b)(2) class, not the relief they

11  can seek in their suit as a whole." *In re Xyrem Antitrust Litig.*, 2023 WL 3440399, at *12 (N.D.

12  Cal. May 12, 2023) (Seeborg, C.J.). Google ignored *Xyrem* and *all* of Plaintiffs' 23(b)(2) cases.

13      Google's remaining arguments are equally meritless. While Plaintiffs disagree that Google

14  has raised any "individualized defenses" (Opp. 25), it is of no moment. For Rule 23(b)(2), "*in

15  contrast to Rule 23(b)(3) classes, the focus is not on the claims of individual class members, but

16  rather whether [a defendant] has engaged in a 'common policy.'*" *In re Yahoo Mail*, 308 F.R.D.

17  at 599. Here, Google subjects all class members to a common policy: Google collects, saves, and

18  uses (s)WAA off data. *See, e.g.*, Hochman Rep. ¶¶ 87, 131, 268. Plaintiffs seek to enjoin that

19  common practice and to enjoin Google's ongoing use of (s)WAA-off data it currently stores,

20  including products or algorithms built with that data. Mot. 25. In other words: Plaintiffs seek to

21  make the button work. This is an appropriate remedy. *See, e.g.*, *United States v. Kurbo, Inc.*, No.

22  3:22-CV-946, Dkt. 15 at II.D (N.D. Cal. Mar. 3, 2022) (enjoining further collection of data and

23  requiring deletion of previously collected data, as well as algorithms developed in part using such

24  data). In any event, Google's arguments about the merits of these requests are premature. *See B.K.

25  ex rel. Tinsley v. Snyder*, 922 F.3d 957, 971–72 (9th Cir. 2019) (refusing to entertain such

26  arguments because "class certification is not a decision on the merits").

27  **III.    CONCLUSION**

28      The Court should certify the classes under both Federal Rules 23(b)(3) and 23(b)(2).

15

Dated: September 21, 2023        Respectfully submitted,

By: */s/ Mark C. Mao*

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (admitted *pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

James Lee (admitted *pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (admitted *pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Alison L. Anderson, CA Bar No. 275334
alanderson@bsfllp.com
M. Logan Wright, CA Bar No. 349004
mwright@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S. Figueroa Street, 31st Floor
Los Angeles, CA 90017
Telephone: (813) 482-4814

Bill Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com

16

Alexander P. Frawley
afrawley@susmangodfrey.com
Ryan Sila
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

17