# EXHIBIT 4

# MAO DECLARATION
# ISO PLAINTIFFS'
# MOTION FOR CLASS CERTIFICATION

# DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3
 4   ANIBAL RODRIGUEZ, JULIEANNA
 5   MUNIZ, ELIZA CAMBA, SAL CATALDO,
 6   EMIR GOENAGA, JULIAN SANTIAGO,
 7   HAROLD NYANJOM, KELLIE NYANJOM,
 8   AND SUSAN LYNN HARVEY,
 9   INDIVIDUALLY AND ON BEHALF OF ALL
10   OTHERS SIMILARLY SITUATED,
11          PLAINTIFFS,
12      vs.                              NO. 3:20-CV-04688
13   GOOGLE LLC,
14          DEFENDANT.
     _____/
15
16      ***HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY***
17
18         VIDEOTAPED DEPOSITION OF ERIC MIRAGLIA
19           *VIA REMOTE COUNSEL VIDEOCONFERENCE*
20              TUESDAY, OCTOBER 25, 2022
21                      VOLUME I
22
23   STENOGRAPHICALLY REPORTED BY:
24   MEGAN F. ALVAREZ, RPR, CSR No. 12470
25   JOB NO. 5545552; PAGES 1 - 243
```

Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1               UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3

4    ANIBAL RODRIGUEZ, JULIEANNA

5    MUNIZ, ELIZA CAMBA, SAL CATALDO,

6    EMIR GOENAGA, JULIAN SANTIAGO,

7    HAROLD NYANJOM, KELLIE NYANJOM,

8    AND SUSAN LYNN HARVEY,

9    INDIVIDUALLY AND ON BEHALF OF ALL

10   OTHERS SIMILARLY SITUATED,

11         PLAINTIFFS,

12      vs.                              NO. 3:20-CV-04688

13   GOOGLE LLC,

14         DEFENDANT.

15   _____/

16

17         Videotaped Videoconference Deposition of

18   ERIC MIRAGLIA, Volume I, taken on behalf of Plaintiffs,

19   VIA REMOTE COUNSEL.  Deponent testifying from Durango,

20   Colorado, beginning at 9:02 a.m. and ending at 5:19 p.m.

21   Mountain Standard Time, on Tuesday, October 25, 2022,

22   before Megan F. Alvarez, RPR, Certified Shorthand

23   Reporter No. 12470.

24

25
```

Page 2

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   APPEARANCES: (ALL PARTIES APPEARING VIA VIDEOCONFERENCE)
 2
 3   FOR PLAINTIFFS:
 4           BY:  ALEXANDER FRAWLEY, ESQ.
 5           SUSMAN GODFREY LLP
 6           1301 SIXTH AVENUE
 7           NEW YORK, NEW YORK 10019
 8           AFRAWLEY@SUSMANGODFREY.COM
 9   AND
10           BY:  MARK MAO, ESQ.
11           BOIES SCHILLER FLEXNER LLP
12           44 MONTGOMERY STREET
13           41ST FLOOR
14           SAN FRANCISCO, CALIFORNIA 94104
15           415.392.6800
16           MMAO@BSFLLP.COM
17
18
19
20
21
22
23
24
25
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   APPEARANCES: (CONTINUED)
 2
 3   FOR DEFENDANT GOOGLE:
 4           BY:  BENEDICT Y. HUR, ESQ.
 5                HARRIS MATEEN, ESQ.
 6           WILLKIE FARR & GALLAGHER LLP
 7           ONE FRONT STREET, 34TH FLOOR
 8           SAN FRANCISCO, CALIFORNIA  94111
 9           415.858.7407
10           BHUR@WILLKIE.COM
11           HMATEEN@WILLKIE.COM
12
13   ALSO PRESENT:
14           JOHN JANHUNEN, GOOGLE IN-HOUSE COUNSEL
15
16   THE VIDEO OPERATOR:
17           SEAN GRANT, VERITEXT
18
19
20
21
22
23
24
25
```

Page 4

| | | |
|---|---|---|
| 1 | products. | 11:07:43 |
| 2 | Setting that aside, are you aware of any | 11:07:44 |
| 3 | Google controller feature that would prevent Google | 11:07:46 |
| 4 | from logging any information by any means relating | 11:07:50 |
| 5 | to a user's app activity? | 11:07:53 |
| 6 | MR. HUR: Objection. Vague. Incomplete | 11:07:57 |
| 7 | hypothetical. Lacks foundation. Calls for | 11:07:57 |
| 8 | speculation. Definitionally outside scope. | 11:08:01 |
| 9 | THE WITNESS: Alex, could you repeat | 11:08:13 |
| 10 | question? That had a bunch of layers to it that I | 11:08:15 |
| 11 | thought -- | 11:08:15 |
| 12 | BY MR. FRAWLEY: | 11:08:16 |
| 13 | Q. Yeah, of course. Yes, of course. So let | 11:08:16 |
| 14 | me just explain why I'm asking this new question. | 11:08:21 |
| 15 | So you testified a moment ago that you're: | 11:08:24 |
| 16 | "Not familiar with" -- "enough with how Analytics | 11:08:28 |
| 17 | works for the Firebase product to give you good | 11:08:31 |
| 18 | answers about how settings control that data." | 11:08:35 |
| 19 | Do you recall that testimony? | 11:08:39 |
| 20 | A. I do. | 11:08:40 |
| 21 | Q. ==So I'm just trying to ask at a more high== | 11:08:42 |
| 22 | ==general level, not focusing only on Firebase or only== | 11:08:45 |
| 23 | ==on Analytics, but whether you're aware of any Google== | 11:08:49 |
| 24 | ==control that would just full stop Google from== | 11:08:53 |
| 25 | ==collecting any data about a user's app activity.== | 11:08:56 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | MR. HUR: Objection. Foundation. Calls | 11:09:00 |
| 2 | for speculation. Vague. And definitionally outside | 11:09:02 |
| 3 | the scope of what's relevant in this case. | 11:09:09 |
| 4 | THE WITNESS: I'm not aware of any setting | 11:09:19 |
| 5 | that -- that's shaped exactly the way you described | 11:09:21 |
| 6 | it. | 11:09:25 |
| 7 | BY MR. FRAWLEY: | 11:09:26 |
| 8 | Q. Do you think there should be such a | 11:09:27 |
| 9 | setting? | 11:09:29 |
| 10 | MR. HUR: Same objection. | 11:09:31 |
| 11 | THE WITNESS: I think what I would say and | 11:09:47 |
| 12 | the way I would approach this -- this whole domain | 11:09:49 |
| 13 | is there should be a regime of settings that are | 11:09:54 |
| 14 | intelligible to users that allow them to control the | 11:09:57 |
| 15 | way their data is collected and used and -- and give | 11:10:03 |
| 16 | them transparency over what's going on. We work | 11:10:11 |
| 17 | really hard to provide that. | 11:10:17 |
| 18 | BY MR. FRAWLEY: | 11:10:19 |
| 19 | Q. Can you look at page -- in the same | 11:10:22 |
| 20 | document, the page that ends in 528? | 11:10:27 |
| 21 | A. I'm there. | 11:10:40 |
| 22 | Q. Okay. Okay. Do you see that first | 11:10:43 |
| 23 | bullet? | 11:11:01 |
| 24 | A. I do. | 11:11:04 |
| 25 | Q. And do you see where it says: "An | 11:11:08 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | BY MR. FRAWLEY: | 12:08:32 |
| 2 | Q.  Did you have any involvement in the | 12:08:48 |
| 3 | project in the Android Privacy Advisor projects? | 12:08:50 |
| 4 | MR. HUR:  Objection.  Vague. | 12:08:55 |
| 5 | THE WITNESS:  I don't believe that I did. | 12:09:09 |
| 6 | In referencing the data of this thread, I apologize, | 12:09:10 |
| 7 | I don't think I did. | 12:09:15 |
| 8 | BY MR. FRAWLEY: | 12:09:18 |
| 9 | Q.  Okay.  I will introduce a new exhibit. | 12:09:29 |
| 10 | (Whereupon Exhibit 107 was marked for | 12:09:33 |
| 11 | identification.) | 12:09:33 |
| 12 | BY MR. FRAWLEY: | 12:10:00 |
| 13 | Q.  All right.  I just marked Exhibit 107. | 12:10:01 |
| 14 | Please let me know when you have Exhibit 107. | 12:10:03 |
| 15 | A.  I have it open.  I'll take a look at it. | 12:10:18 |
| 16 | (Witness reviewing document.) | 12:12:45 |
| 17 | THE WITNESS:  Okay.  Thank you for the | 12:13:02 |
| 18 | time. | 12:13:03 |
| 19 | BY MR. FRAWLEY: | 12:13:03 |
| 20 | Q.  Of course. | 12:13:04 |
| 21 | Do you see how the first e-mail is from | 12:13:05 |
| 22 | Giles Hogben to Dave Kleidermacher, and then there's | 12:13:08 |
| 23 | a couple people copied, including you? | 12:13:12 |
| 24 | A.  I do. | 12:13:15 |
| 25 | Q.  Do you know who is Giles Hogben? | 12:13:16 |

Page 125

```
1         A.   I do.                                          12:13:22

2         Q.   Who's that?                                    12:13:23

3         A.   I'm not positive what his role was in --       12:13:28

4    at the date of this e-mail.  Today, he, I believe,       12:13:31

5    leads the privacy and security team in Android.          12:13:33

6         Q.   And same question for Dave Kleidermacher.      12:13:38

7         A.   Dave Kleidermacher is an engineering VP in     12:13:48

8    Android.                                                 12:13:52

9         Q.   Can you look at the second e-mail in the       12:13:53

10   thread?  And it's an e-mail on Tuesday, November 27,     12:13:55

11   from Dave Kleidermacher.                                 12:13:58

12        A.   Yes.                                           12:14:00

13        Q.   And do you see the third sentence where he     12:14:02

14   writes:  "But I agree with Eric's sentiment during       12:14:07

15   the meeting that this would be a massive game            12:14:09

16   changer.  If a user could flip the switch at the         12:14:12

17   device or account level and have confidence in not       12:14:14

18   having activity tracked in any app, it would             12:14:17

19   completely change the way privacy-conscious users        12:14:20

20   and influencers view Google and Android."                12:14:24

21             Do you see that portion that I just read?      12:14:28

22        A.   I do.                                          12:14:31

23        Q.   Now, where Dave said "Eric's sentiment,"       12:14:36

24   do you know whether or not Eric is referring to you?     12:14:40

25        A.   I believe that it's referring to me in         12:14:45
```

Page 126

```
 1   this context, yes.                                        12:14:48
 2        Q.   And where he referenced a meeting, do you        12:14:49
 3   recall which meeting he's referencing?                    12:14:51
 4        A.   I don't specifically recall the meeting,        12:14:56
 5   no.                                                        12:14:57
 6        Q.   Do you recall generally having meetings          12:15:01
 7   with Dave around this point in time?                       12:15:03
 8        A.   I don't recall the specific meeting, and I      12:15:13
 9   don't recall a specific conversation with Dave about       12:15:18
10   incognito mode.                                            12:15:21
11        Q.   Now, do you see where he refers to your          12:15:35
12   sentiment about a massive game changer.                    12:15:37
13             Do you see that?                                 12:15:42
14        A.   I do.                                            12:15:42
15        Q.   And the sentiment is:  "If a user could          12:15:44
16   flip the switch at the device or account level and        12:15:48
17   have confidence in not having any activity tracked        12:15:50
18   in any app."                                               12:15:54
19             Do you see that?                                 12:15:54
20        A.   I do.                                            12:15:55
21        Q.   Do you know what the difference is between       12:15:56
22   a device level or account level?                           12:15:58
23             MR. HUR:  Objection.  Vague.                     12:16:03
24             THE WITNESS:  Alex, just to clarify,             12:16:16
25   you're referring to where Alex writes:  "If a user         12:16:17
```

Page 127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | could flip the switch at the device or account | 12:16:20 |
| 2 | level"?  You're referring to that sentence. | 12:16:23 |
| 3 | BY MR. FRAWLEY: | 12:16:24 |
| 4 | Q.   Yes.  My only thing that I'd clarify is | 12:16:24 |
| 5 | "Dave," not "Alex."  I think you said "Alex." | 12:16:27 |
| 6 | A.   Oh, gosh.  I apologize. | 12:16:31 |
| 7 | Q.   No problem. | 12:16:33 |
| 8 | A.   Yes, I understand the distinction between | 12:16:38 |
| 9 | a device setting and account setting. | 12:16:39 |
| 10 | Q.   Can you explain the distinction? | 12:16:43 |
| 11 | A.   At a high level, device level settings | 12:16:50 |
| 12 | control characteristics of a -- of a device and how | 12:16:53 |
| 13 | it operates.  Whereas an account level setting | 12:16:57 |
| 14 | controls things that are associated with a | 12:17:01 |
| 15 | particular signed-in user identity. | 12:17:07 |
| 16 | Q.   And did you -- and I'm sorry if I'm wrong. | 12:17:15 |
| 17 | Did you testify earlier that WAA is an | 12:17:17 |
| 18 | account level setting; is that right? | 12:17:20 |
| 19 | A.   That's correct.  WAA is an account level | 12:17:25 |
| 20 | setting. | 12:17:27 |
| 21 | Q.   Now, does Google offer any switch at the | 12:17:35 |
| 22 | device or account level where a user would have | 12:17:38 |
| 23 | confidence in not having activity tracked in any | 12:17:42 |
| 24 | app? | 12:17:45 |
| 25 | MR. HUR:  Objection.  Vague.  Foundation. | 12:17:46 |

Page 128

| | | |
|---|---|---|
| 1 | Speculation. | 12:17:49 |
| 2 | THE WITNESS: I'm not aware of any setting | 12:17:55 |
| 3 | that's scoped to what you just said. | 12:17:56 |
| 4 | BY MR. FRAWLEY: | 12:17:59 |
| 5 | Q. But you think there should be such a | 12:18:01 |
| 6 | setting; is that right? | 12:18:03 |
| 7 | MR. HUR: Objection. Vague. | 12:18:06 |
| 8 | THE WITNESS: One thing I would note is | 12:18:21 |
| 9 | that what we're seeing here isn't my language. It's | 12:18:23 |
| 10 | Dave's language describing something that -- that we | 12:18:27 |
| 11 | may have talked about at a meeting. I don't | 12:18:31 |
| 12 | remember making an assertion shaped in the -- in the | 12:18:36 |
| 13 | phraseology that he's using here. | 12:18:38 |
| 14 | BY MR. FRAWLEY: | 12:18:45 |
| 15 | Q. So fair to say that Dave, in this e-mail, | 12:18:46 |
| 16 | is misrepresenting something you said? | 12:18:48 |
| 17 | MR. HUR: Objection. Misstates prior | 12:18:56 |
| 18 | testimony. | 12:19:03 |
| 19 | THE WITNESS: I think the way I would say | 12:19:03 |
| 20 | it is that Dave is putting something into his own | 12:19:04 |
| 21 | words that ends up being something that I wouldn't | 12:19:08 |
| 22 | have -- where I wouldn't have used those words. | 12:19:10 |
| 23 | BY MR. FRAWLEY: | 12:19:12 |
| 24 | Q. Now, do you recall -- well, you see your | 12:19:14 |
| 25 | name is copied at the top, right? On the first | 12:19:16 |

```
 1                CERTIFICATE OF REPORTER
 2
 3           I, the undersigned, a Certified Shorthand
 4  Reporter of the State of California, do hereby
    certify:
 5           That the foregoing proceedings were taken
 6  before me at the time and place herein set forth;
 7  that any witnesses in the foregoing proceedings,
 8  prior to testifying, were administered an oath; that
 9  a verbatim record of the proceedings was made by me
10  using machine shorthand, which was thereafter
11  transcribed under my direction; and that the
12  foregoing is an accurate transcription thereof.
13           Further, that if the foregoing pertains to
14  the original transcript of a deposition in a federal
15  case, before completion of the proceedings, review
16  of the transcript [X] was [ ] was not requested.
17           I further certify that I am neither
18  financially interested in the action, nor a relative
19  or employee of any attorney of any party to this
20  action.
21           IN WITNESS WHEREOF, I have this date
22  subscribed my name this 8th day of November, 2022.
23
24           _____
25           MEGAN F. ALVAREZ, CSR No. 12470, RPR
```

Page 239