# EXHIBIT 49

# MAO DECLARATION ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# DOCUMENT SOUGHT TO BE SEALED

**WILLKIE FARR & GALLAGHER** LLP

One Front Street
San Francisco, CA 94111
Tel: 415 858 7400
Fax: 415 858 7599

January 27, 2021

**SENT BY E-MAIL**

Beko Reblitz-Richardson
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
E-mail: brichardson@bsfllp.com

Re:   *Anibal Rodriguez, et al., v. Google LLC*, Case No. 3:20-CV-04688
      **Google's Responses and Objections to Plaintiffs' Third Set of RFPs**

Counsel,

I write in response to your January 20 letter concerning Plaintiffs' third set of document requests. We appreciate your proposals for compromise on this set of document requests in light of the impending hearing on Google's motion to dismiss. Unfortunately, the compromises you have offered are unworkable. Our hope had been that Plaintiffs would agree to narrow their RFPs to a reasonable core set of documents as we wait for the scope of the case to become clarified by the Court's ruling. Indeed, we expect Plaintiffs may need to engage in significant amendment to the complaint, if any claims survive, and that will inform the scope of discovery greatly.

We decline your suggestion that Google simply agree to produce documents in response to the unobjectionable aspects of your first two sets of document requests in order to delay responding to the third set. This is not a quid pro quo; set three is simply inappropriate for any phase of this case, but especially for this one. And to the extent Plaintiffs' concern is delay, Plaintiffs chose to amend their complaint after Google filed its first motion to dismiss and then requested a delay in the motion hearing. We would be far beyond the motion to dismiss by now if Plaintiffs hadn't done so.

Further, while we are used to opposing counsel arguing that discovery must happen as fast as possible because deadlines are bearing down on the parties, I admit this is the first time I've been exhorted to speed along the discovery process before pleadings are even settled because there are "only" ***ten months*** remaining in the discovery period. That seems like more than enough time to perform discovery in a case like this one, where the central facts of significance are (1) what Google and Firebase app developers represented to users and (2) what the accused Google services did.

As you know, we are beginning rolling productions of the core documents that answer those two questions early next week. These productions, which will roll out over the course of a few weeks, will include the bulk of the documents relevant to this case: public disclosures, Google policies, and non-public engineering documents explaining how Google Analytics for Firebase works. Plaintiffs don't need 83 document requests to answer these questions or to obtain these documents; we're already producing them.

Nor is it costless for Google to respond to those 83 document requests, as you have implied. In order to respond to each one, Google must either stand on its objections (which we are currently doing) or engage in a lengthy investigation to determine the full scope of what exists at Google for each of the 83 topics. And, as we've discussed, Plaintiffs' counsel copy-pasted these requests from a set that was propounded in a separate case Plaintiffs' counsel has brought against Google dealing with completely separate issues—*Brown v. Google*—currently pending before Judge Koh. While Plaintiffs' counsel have claimed they made some edits after the copy-paste job, they didn't do it well enough. The bulk of Plaintiffs' document requests are irrelevant and dramatically overbroad, comprising little more than a fishing expedition. Indeed, it is hard to identify among set three which document requests Google could respond to without significant negotiation and meet-and-confer efforts, due to the overweening expansiveness of their wording. For example:

- RFP 21 seeks documents "concerning Google's Firebase SDK or Google Analytics for Firebase." There appears to be no attempt to tailor to the actual issues in this case. Obviously, Google cannot and will not produce all documents relating to these products.

- RFP 22 seeks "Google's disclosures and policies relating to the data Google collects from, about, or on consumers" without limitation, even though the final clause admits that what really matters for Plaintiffs' claims is the data Google collects when users have WAA turned off.

- RFP 23 seeks all of Google's "representations to and agreements with apps that use Google services" whether or not they have anything to do with the allegations in this case.

- RFP 29 seeks all documents concerning "users' understanding in connection with Firebase SDK, Google Analytics for Firebase, or Web & App Activity." Leaving aside that this is also overbroad, it also would require a significant investigation to determine if Google has any such documents.

- RFP 35 seeks all documents "relating to how Google's technologies and services work with the consumer data that Google collects," without any limitation at all.

- RFP 36 seeks all documents "relating to how Google tracks individual consumers," again without any limitation.

- RFP 39 seeks all documents "concerning the use of Firebase SDK by app developers."

- RFP 46 seeks documents "sufficient to identify all types of profiles created by Google during the Class Period," which is both incomprehensible and potentially massively overbroad.

- RFP 50 seeks all documents "relating to how Google attempted to comply or complied with the California Consumer Privacy Act (CCPA), Europe's General Data Privacy Regulation (GDPR), and any other similar legislation." This case is not about Google's compliance with these laws, and asking such a general question is inappropriate.

- RFP 51 seeks all documents "relating to how Google lobbied for or against bills and proposed laws in the United States similar to or based on the California Consumer Privacy Act or the California Privacy Rights Act." The brazen, inappropriate nature of this request should be self-evident. We cannot conceive of even the most tangential connection such documents may have to the claims and defenses in this case.

- RFP 64 seeks all documents "concerning the Android contractual terms and proceedings that led to the publication of the report referenced in paragraph 171 of the First Amended Complaint." That paragraph of the complaint discusses an investigation of competition in digital markets, and has nothing to do with the claims in this case.

- RFPs 71 through 80 concern very broad financial topics that are irrelevant to any of the remedies Plaintiffs could recover in this case. As we have discussed in the context of other document requests, Google's profits aren't relevant to any of Plaintiffs' claims.

- RFPs 82-84 seeks all documents "concerning Google's market power in search," "internet browsers," and "advertising services" since January 1, 2005. These document requests are so irrelevant to this case it is hard not to perceive them as intentional harassment.

- RFP 86 seeks documents "sufficient to show all data Google used to target advertisements to Plaintiffs," regardless of whether it has anything to do with WAA, Firebase, or Google Analytics.

- RFP 101 is undefinable and impermissibly compound; it seeks, "[t]o the extent Google's response to any request for admissions served by Plaintiffs in this action is anything other than an unqualified admission, documents concerning that matter at issue with each such request for admission."

- Finally, several RFPs seek detailed data productions concerning proposed class members. The pleadings haven't even been settled; it is far too early to initiate such wide-ranging discovery, which could be incredibly burdensome and may not relate to a live claim.

If Plaintiffs are able to cull their RFPs to a reasonable set that is appropriate at this stage of the case, we would be happy to explore such a compromise. But we must otherwise move for a protective order to defer these requests until the pleadings are settled.

In your letter, you complain that Google hasn't rewritten document requests like these (of which there are more in the first two sets) to make them non-objectionable. That's not how discovery works. The propounding party bears the burden to demonstrate the relevance of their discovery requests. If the request is objectionable, the receiving party has no obligation to find the kernel of acceptability in a mass of overbroad topics. Where we have been able to, we have nevertheless identified sets of documents we believe get at the topics you are asking about. But to make proposals in response to document requests like these would be to write document requests from scratch to propound on our own client. Nothing requires us to do that, and we won't do it. If Plaintiffs had narrowed their document requests to the ballpark of a reasonable scope of discovery in this case, however, the conversation might have been different.

Next, your letter claims that you need written responses to these document requests so you can determine which custodians you'd like to discover documents from in this case. That's backwards. We are producing non-custodial documents that will identify the people you will be most interested in. We are also having conversations every week about how custodial searches will proceed in this case, and I have found those conversations productive. From there, you can identify custodians. But Google's written responses to these document requests won't contribute to that process, as that is not the role they play in discovery. Neither would a production of all documents "concerning Google's market power in search," for example, which is completely untethered to any issue in this case. Your clients' complaint doesn't raise any antitrust claims, and it is their claims that define the scope of this case.

It is also misleading to cite Google's discovery responses in the *Brown* case as precedent. Google responded to a large number of document requests in good faith in that case, but it hasn't agreed to produce documents outside its scope. Google then received a copy-pasted set of document requests from your firm in this case. Those requests must be measured by their appropriateness in this case based on your clients' claims.

Please let us know your position on these issues. If there is no more room for compromise, we will move for a protective order.

Sincerely,

Eduardo E. Santacana