# EXHIBIT 63

# MAO DECLARATION
# ISO PLAINTIFFS'
# MOTION FOR CLASS CERTIFICATION

# DOCUMENT SOUGHT TO BE SEALED

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3
 4   ANIBAL RODRIGUEZ, JULIEANNA            )
     MUNIZ, ELIZA CAMBAY, SAL               ) Case No.:
 5   CATALDO, EMIR GOENAGA, JULIAN          ) 3:20-cv-04688
     SANTIAGO, HAROLD NYANJOM, KELLIE       )
 6   NYANJOM, and SUSAN LYNN HARVEY,        )
     individually and on behalf of all      )
 7   others similarly situated,             )
                                            )
 8               Plaintiffs,                )
         vs.                                )
 9                                          )
     GOOGLE LLC,                            )
10                                          )
                 Defendant.                 )
11   ---------------------------------------)
12
13
14      ***HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY***
15              REMOTE PROCEEDINGS OF THE
16     VIDEOTAPED DEPOSITION OF CHRISTOPHER RUEMMLER
17              FRIDAY, SEPTEMBER 9, 2022
18
19
20
21
22
23   REPORTED BY NANCY J. MARTIN
24   CSR. NO. 9042, RMR, RPR
25   PAGES 1-235
```

Page 1

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3
 4    ANIBAL RODRIGUEZ, JULIEANNA            )
      MUNIZ, ELIZA CAMBAY, SAL               ) Case No.:
 5    CATALDO, EMIR GOENAGA, JULIAN          ) 3:20-cv-04688
      SANTIAGO, HAROLD NYANJOM, KELLIE       )
 6    NYANJOM, and SUSAN LYNN HARVEY,        )
      individually and on behalf of all      )
 7    others similarly situated,             )
                                             )
 8                  Plaintiffs,              )
           vs.                               )
 9                                           )
      GOOGLE LLC,                            )
10                                           )
                    Defendant.               )
11    -----------------------------------)
12
13
14      ***HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY***
15
16
17                           - - -
18              Friday, September 9, 2022
19                           - - -
20
21        Remote Videotaped Deposition of CHRISTOPHER
22    RUEMMLER, beginning at 9:40 a.m., before Nancy J.
23    Martin, a Registered Merit Reporter, Certified
24    Shorthand Reporter.  All parties appeared remotely.
25
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    A P P E A R A N C E S :
 2
      ALEXANDER FRAWLEY, ESQ.
 3    RYAN SILA, ESQ.
      SUSMAN GODFREY LLP
 4    1301 Sixth Avenue
      New York, New York 10019
 5    afrawley@susmangodfrey.com
      Counsel for Plaintiffs
 6
            -AND-
 7
      MARK MAO, ESQ.
 8    BOIES SCHILLER FLEXNER LLP
      44 Montgomery Street
 9    41st Floor
      San Francisco, California 94104
10    (415) 293-6800
      mmao@bsfllp.com
11    Counsel for Plaintiff
12
13    EDUARDO E. SANTACANA, ESQ.
      WILLKIE FARR & GALLAGHER LLP
14    One Front Street
      34th Floor
15    San Francisco, California  94111
      ESantacana@willkie.com
16    Counsel for Defendant Google
17
18
      ALSO PRESENT:
19
      JOHN JANHUNEN, GOOGLE IN-HOUSE COUNSEL
20
      ANTHONY GALINO, LEGAL VIDEOGRAPHER
21
22
23
24
25

                                                    Page 3
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1                              I N D E X
2
       TESTIMONY OF CHRISTOPHER PHILIP RUEMML            PAGE
3
       BY MR. FRAWLEY                                    7
4
5                            E X H I B I T S
6      NUMBER                  DESCRIPTION               PAGE

7      Exhibit 1               LinkedIn profile          17
8      Exhibit 2               E-mail dated 2-21-19      32
9      Exhibit 3               E-mail dated 5-23-18      36
10     Exhibit 4               E-mail dated 2-22-19      46
11     Exhibit 5               Help page                 54
12     Exhibit 6               E-mail dated 7-25-19      59
13     Exhibit 7               E-mail dated 7-25-19      63
14     Exhibit 8               Activity Controls         95
15     Exhibit 9               E-mail dated 7-25-19      121
16     Exhibit 10              E-mail dated 8-20-19      126
17     Exhibit 11              Change WAA-off logging PRD   129
                               document
18
       Exhibit 12              E-mail dated 12-13-19    137
19
       Exhibit 13              E-mail dated 12-18-19    146
20
       Exhibit 14              Change WAA Master PRD    150
21
       Exhibit 15              E-mail dated 7-8-20      154
22
       Exhibit 16              E-mail dated 7-2-20      158
23
       Exhibit 17              E-mail dated 8-7-20      169
24
25

```
 1                       E X H I B I T S
 2    NUMBER              DESCRIPTION                   PAGE
 3    Exhibit 18          Web & App Activity -          176
                          1-27-21
 4
      Exhibit 19          Cloud Trust Weekly            184
 5                        Snippets
 6    Exhibit 20          Design Doc for Changing       196
                          WAA-off Logging document
 7
      Exhibit 21          E-mail dated 2-20-19          211
 8
      Exhibit 22          Design Doc: Assistant NLU     213
 9                        Logs
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                                       Page 5
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1          SUNNYVALE, CALIFORNIA, FRIDAY, SEPTEMBER 9, 2022;

2                            9:40 A.M.

3                             - - -

4               THE VIDEOGRAPHER:  Good morning, everyone.

5     We're going on the record at 9:40 a.m. Pacific

6     daylight time on Friday, September 9, 2022.

7               Please note that this deposition is being

8     conducted virtually.  Quality of recording depends on

9     the quality of camera and Internet connection of

10    participants.

11              What is seen from the witness and heard on

12    screen is what will be recorded.

13              Audio and video recording will continue to

14    take place unless all parties agree to go off the

15    record.

16              This is media unit 1 of the video-recorded

17    deposition of Chris Ruemmler, taken by counsel for

18    plaintiff in the matter of Anibal Rodriguez, et al.

19    vs. Google, LLC, filed in the United States District

20    Court, Northern District of California.

21              The case number is 3:20-cv-04688.

22              This deposition is being conducted remotely

23    using virtual technology.  My name is Anthony Galino

24    representing Veritext Legal Solutions, and I'm the

25    videographer.

1         The court reporter is Nancy Martin from the
2    firm Veritext Legal Solutions.
3         I'm not related to any party in this action,
4    nor am I financially interested in the outcome.
5         If there are any objections to proceeding,
6    please state them at the time of your appearance.
7         Counsel and all present will now state their
8    appearance and affiliations for the record, beginning
9    with the noticing attorney.
10            MR. FRAWLEY:  Good morning.  Alexander
11   Frawley from Susman Godfrey for the plaintiffs.  With
12   me are my colleagues Ryan Sila, also from Susman
13   Godfrey, and Mark Mao from Boies Schiller Flexner.
14            MR. SANTACANA:  Good morning.  Eduardo
15   Santacana of Willkie Farr & Gallagher for Google
16   and -- for the witness, Mr. Chris Ruemmler.  With me
17   today also from Google in-house is John Janhunen.
18
19            CHRISTOPHER PHILIP RUEMMLER,
20              having been sworn/affirmed,
21         was examined and testified as follows:
22
23                       EXAMINATION
24   BY MR. FRAWLEY:
25        Q.  Good morning, Mr. Ruemmler.

Page 7

```
 1        A.   Good morning.
 2        Q.   Can you please state your full name.
 3        A.   Christopher Philip Ruemmler.
 4        Q.   Have you ever testified before?
 5        A.   Never.
 6        Q.   So no depositions before today?
 7        A.   Nope.
 8        Q.   How about testimony in court?
 9        A.   Never.
10        Q.   Do you understand that you are under oath
11   today?
12        A.   Yes.
13        Q.   Is there any reason why you cannot testify
14   truthfully today?
15        A.   Not that I'm aware of.
16        Q.   Throughout the day, if any of my questions
17   are unclear, would you please let me know?
18        A.   Yes.
19        Q.   Where are you currently for this deposition?
20        A.   I'm located in Sunnyvale, California, in a
21   Google office building.
22        Q.   Is anyone in the room there with you?
23        A.   No.
24        Q.   Did you bring any documents with you?
25        A.   No.
```

Page 8

```
1    So they -- someone decided to give a few more
2    examples.
3         Q.   Do you see in your E-mail, Exhibit 7, where
4    you wrote, "So, when Web & App Activity is off, I'd
5    expect the opposite to happen."
6              Do you see that?
7         A.   Yes.
8         Q.   And then do you see where you wrote, "The
9    opposite of the above is:  When Web & App Activity is
10   off, Google does not save information like"?
11        A.   Yes, I see that.
12        Q.   What did you mean by "information like"?
13        A.   I can't tell what's there.  There's nothing
14   there.
15        Q.   Fair to say you're referring back up to those
16   bullets just above?
17        A.   No, because there's a "like:" and then
18   there's nothing below it.
19        Q.   So you think your E-mail is incomplete?
20        A.   I don't know.  Is there -- was it -- again,
21   it's from 2019.  I don't know exactly what I wrote.
22   But like just reading this E-mail now, I see a colon
23   and then I see nothing below it.  There's a dot with
24   nothing and then there's a square with nothing, and
25   then it goes on to some other thing.
```

```
1          Q.  So is it your habit to not complete E-mails
2    that you write while at Google?
3          A.  No, not generally.  I mean I don't know
4    what's going on here.  You know, it's 2019.  I don't
5    have -- you know.
6          Q.  Okay.  So then your testimony is that you
7    were not -- sorry.  Let me restart this question.
8              When you said "information like," you were
9    not referring to those bullets above?  And by "bullets
10   above," I mean searches and other things, your
11   location language, IP address, ads you click,
12   information on your device.
13         A.  Yeah, I don't know, because I would not
14   normally -- if I put a colon there, I'd put stuff
15   after it -- right? -- to explain what I'm doing like I
16   did above.
17         Q.  Well, above, you were just copying from the
18   document; right?  You didn't actually write that
19   yourself?
20         A.  Right.  But then down below there's nothing.
21   So I don't know what's going on in this E-mail.
22         Q.  Do you see where you wrote, "The opposite of
23   the above is"?
24         A.  Yeah.
25         Q.  What does "the above" refer to?
```

```
 1         A.   "The above" refers to the list above.
 2         Q.   So you're referencing back the list above.
 3    Fair?
 4         A.   Oh, I see what's going on.  I actually see
 5    what's going on now.  There's two colons; right?
 6         Q.   What do you mean?  I'm sorry.
 7         A.   There's two colons.  "The opposite of the
 8    above is:" And then I have, "So, when Web & App
 9    Activity is off, Google does not save information
10    like"; right?
11         Q.   Sorry.  I'm a little confused.
12         A.   So I wrote the one above and then I wrote,
13    "So, when Web & App Activity is off, I'd expect the
14    opposite to happen.  The opposite of the above is:"
15    and then I wrote a line.
16              So that's what I'm like -- apparently, you
17    know, if I'm reading my -- the way I write, that's
18    what I'm saying.  I try to write -- you know.  Sorry.
19    I'm an engineer.  I kind of write things in a way that
20    may not be natural to other people.
21              So I believe this is my misunderstanding with
22    the way WAA works.  So this was back before I had more
23    knowledge about the way WAA works.  And I thought at
24    that time if the opposite of on and off, if it was
25    off, well, we just didn't, you know, send any of this
```

Page 72

1      data to Google.  But that's not right.  It's really
2      you don't associate the data that's sent to Google
3      with a GAIA ID, which we call keyed by GAIA ID.
4            Q.  Just a moment ago you said something about
5      sending the data to Google.  What do you mean by "to
6      Google"?
7            A.  Well, if Google is storing data, then that
8      would be sending it to Google.
9            Q.  And a moment ago you said, "It's really you
10     don't associate the data that's sent to Google with a
11     GAIA ID."
12           Do you recall that?
13           A.  Where are you reading now?
14           Q.  We have a -- like a live transcript feed.  I
15     don't think you have that.  I'm not sure actually.
16           A.  No.
17           MR. SANTACANA:  Hold on.  Sorry, Alex.  You
18     should know it's not necessarily accurate.  It's just
19     the live feed of what the court reporter is typing.
20           MR. FRAWLEY:  Okay.  Well, I have faith in
21     the court reporter.
22     BY MR. FRAWLEY:
23           Q.  Do you recall a moment ago testifying that
24     when WAA -- again, I'm not trying to quote you, but do
25     you recall saying that, when WAA is off, that the data

Page 73

```
 1   is not -- that it's not associated with a GAIA ID?
 2           Do you recall talking about that?
 3       A.  Yes, I recall talking about GAIA-tied data.
 4       Q.  Okay.  What is GAIA-tied data?
 5       A.  GAIA-tied data is data that is linked
 6   directly to a GAIA ID which is then -- the user's
 7   account.  So on Gmail everything is pretty much -- is
 8   GAIA tied or GAIA linked because it's your E-mail;
 9   right?  So you need to -- we need to know the exact
10   user that the data is associated with.
11           And there's no anonymization or anything like
12   that.  It's your E-mail.  So everything is GAIA tied.
13   So GAIA is the internal identifier at Google that
14   identifies an account with an individual.
15       Q.  Does Google log any data that's not GAIA
16   tied?
17           MR. SANTACANA:  Objection.  Vague.
18   Ambiguous.  Lacks foundation.
19           THE WITNESS:  I work in Workspace and in
20   Gmail in particular, and as far as I know, everything
21   is GAIA tied in Gmail because it's personal data.
22   Other parts of the company, I don't know if they're
23   doing -- you know, if they need to have GAIA tied or
24   not.
25   BY MR. FRAWLEY:
```

Page 74

1   Q.  Got it.  Okay.
2   A.  -- or what I was commenting on; right?  So I
3   can't -- it's very hard to make any, you know,
4   statement because I don't know what's linked to what.
5   Q.  Do you see where you wrote, "An 'on/off'
6   toggle, it means the off state is the opposite of the
7   on state"?
8       I'm in Exhibit 11.
9   A.  In the comment?
10  Q.  Yeah, in the comment.  Yeah.
11  A.  Right.  This still seems like GAIA-tied
12  stuff; right?
13  Q.  Where did you say something about GAIA-tied
14  stuff in this comment?
15  A.  Well, it says later, "If the on state is we
16  log your activity, the off state we don't log your
17  activity."
18      "The proposal is to temporarily log activity,
19  so something needs to change here."
20      So it seems like it's all about GAIA-tied
21  data still.
22  Q.  What specifically within comment 51 -- sorry.
23  Where specifically within comment 51 did you say this
24  is all about GAIA-tied data?
25  A.  I'm just telling you that's what the

Page 134

```
 1    interpretation is here; right?  Because I say, "If the
 2    on state is we log your activity, the off state we
 3    don't log your activity.  But the proposal is to
 4    temporarily log activity, so something needs to change
 5    here."
 6              So logging the activity temporarily to your
 7    GAIA ID is what I would be concerned about.  If the
 8    user said "off" and then you log the GAIA ID still,
 9    that would be a problem.  So that's probably what I
10    thought was going on here, but I don't know -- I can't
11    recall actually what happened or what was the
12    resolution or anything else.  Again, I don't work in
13    this -- was this my only comment on the document?
14         Q.  That, I don't know.
15         A.  Okay.  Like I said, I don't recognize the
16    document.  It was three years ago, so that's not -- so
17    I read tons of documents.
18         Q.  Why did you say, "The off state is the
19    opposite of the on state"?
20         A.  Again, I think we were discussing before, I
21    had the recollection that, you know, off -- a light is
22    on, a light is off; right?  You know, that's the
23    opposite behavior.  And so I think I had a
24    misconception that when WAA was off, there was no
25    logging performed, which was not the right, you know,
```

```
 1      understanding.
 2           Q.   Do you see the comment just below comment 52?
 3           A.   Comment 53 then?
 4           Q.   No.  52.
 5           A.   Oh, comment 52.
 6           Q.   Yes.  Yes.
 7           A.   Okay.  So someone commented that David is
 8      working with legal to make the necessary edits.
 9           Q.   Yeah.  If you look at Exhibit 10, we can see
10      who commented that.  That was Divya Sharma.  You're
11      free to -- I might be mispronouncing that name.  I'm
12      sorry.  But you're free to verify that within
13      Exhibit 10.
14           A.   Okay.  So that corresponds to that comment.
15           Q.   So did you ever follow up with Divya Sharma
16      to ask about the edits?
17           A.   I don't know.  I don't remember.  I don't
18      even remember who Divya Sharma is.
19           Q.   Okay.  Let's look at -- sorry.  I'm thinking
20      about whether I want to stay on this document or move
21      on.
22                MR. FRAWLEY:  All right.  I am going to
23      introduce a new document.
24                (Deposition Exhibit 12 was marked for
25                identification.)
```

Page 136

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1                    C E R T I F I C A T E
 2          I do hereby certify that the aforesaid testimony
 3     was taken before me, pursuant to notice, at the time
 4     and place indicated; that said deponent was by me duly
 5     sworn to tell the truth, the whole truth, and nothing
 6     but the truth; that the testimony of said deponent was
 7     correctly recorded in machine shorthand by me and
 8     thereafter transcribed under my supervision with
 9     computer-aided transcription; that the deposition is a
10     true and correct record of the testimony given by the
11     witness; and that I am neither of counsel nor kin to
12     any party in said action, nor interested in the
13     outcome thereof.
14
15             [signature]
                    Nancy J. Martin, RMR, CSR
16
17     Dated:  September 15, 2022
18
19
20
21     (The foregoing certification of this transcript does
22     not apply to any reproduction of the same by any
23     means, unless under the direct control and/or
24     supervision of the certifying shorthand reporter.)
25
```

Page 231

Veritext Legal Solutions
866 299-5127