# EXHIBIT 72

# SECOND MAO DECLARATION
# PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# MATERIAL SOUGHT TO BE SEALED

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    ** C O N F I D E N T I A L **
 2    ** ATTORNEYS' EYES ONLY **
 3    UNITED STATES DISTRICT COURT
 4    NORTHERN DISTRICT OF CALIFORNIA
 5    SAN FRANCISCO DIVISION
 6    Case No. 3:20-CV-04688-RS
 7    ------------------------------------x
      ANIBAL RODRIGUEZ, et al. individually
 8    and on behalf of all others similarly
      situated,
 9
              Plaintiff,
10
11
          - against -
12
13
      GOOGLE LLC,
14
              Defendant.
15    ------------------------------------x
                  June 26, 2023
16                10:05 a.m.
17
18        Videotaped Deposition of JONATHAN
19    HOCHMAN, taken by Defendant, pursuant to
20    Notice, held at the offices of Willkie Farr
21    & Gallagher LLP, 787 Seventh Avenue, New
22    York, New York, before Todd DeSimone, a
23    Registered Professional Reporter and Notary
24    Public of the State of New York.
25
```

Page 1

1　than two Google accounts because I have a
2　few that are -- I have a startup that uses
3　G Suite.
4　　　　Q.　　Okay.
5　　　　A.　　So I don't know that I have an
6　exact count on how many different I have.
7　　　　Q.　　That's okay.  I don't need to
8　know about them all.
9　　　　A.　　Okay.
10　　　　Q.　　So at some point in this case
11　you had not yet reviewed any nonpublic
12　information, no deposition transcripts,
13　interrogatory responses, anything like
14　that, but you had read the complaint; is
15　that fair to say?
16　　　　A.　　Yes.
17　　　　Q.　　And at that point you saw that
18　the plaintiffs alleged that the WAA control
19　means a particular thing and that Google
20　does not live up to that description; is
21　that fair to say?
22　　　　A.　　Well, I understand that that's
23　an allegation, but I don't give too much
24　credit to allegations.  I don't really
25　credit them because it's just an

```
 1   allegation.
 2       Q.     Fair enough.  Neither do I.
 3              But, nevertheless, the WAA
 4   control has a description, right, that you
 5   reviewed?
 6       A.     Yes.
 7       Q.     Did you have any idea at that
 8   point what the WAA control should do
 9   vis-à-vis pseudonymous data?
10       A.     I hadn't thought about it, so
11   that's something -- these opinions were
12   formed upon careful study and thought and
13   consideration.
14       Q.     Well, you had thought about
15   pseudonymous data before, right?
16       A.     Yes, I have thought about
17   pseudonymous data.
18       Q.     And you know that Google has
19   data that is tied to a pseudonymous
20   identifier and Google has data that is tied
21   to a GAIA identifier, you knew that before
22   you joined the case?
23       A.     Okay, so I have to disagree
24   with how you've put the question together,
25   because GAIA is also a pseudonym and there
```

Page 53

```
 1   is no -- this idea of pseudonymous data and
 2   GAIA data, it's a false dichotomy.
 3         Q.     Okay.  Let's use the terms GAIA
 4   and non-GAIA for now.  We will come back to
 5   pseudonymous.
 6                So before you joined this case,
 7   you knew that Google had data tied to GAIA
 8   identifiers and you knew that Google had
 9   identifiers tied to non-GAIA identifiers;
10   is that fair to say?
11         A.     I'm not sure I thought about it
12   prior to this case.  I'm not sure that I
13   had given it consideration.
14         Q.     Well, you must have.  I mean,
15   at that point you were pretty deep into the
16   Brown case.
17         A.     Oh, well, I'm thinking -- we
18   are talking about different start points.
19   I'm talking about before I heard about
20   these cases, I hadn't thought about it.
21         Q.     So I will ask it again.  When
22   you joined this case, you already knew that
23   Google had data tied to GAIA identifiers
24   and data tied to non-GAIA identifiers, that
25   was a concept you already knew about,
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   right?
 2        A.    Okay, well, so, so the question
 3   is wrong, because I joined both cases at
 4   essentially the same time.  I was retained
 5   for both cases together.
 6        Q.    You were retained for both
 7   cases together?
 8        A.    I believe so.
 9        Q.    Okay.  When were you retained?
10        A.    I don't have -- I don't
11   remember exact date.
12        Q.    Is that in your report?
13        A.    I don't believe I have the date
14   in here, I might, but I don't have it
15   there.
16        Q.    Is that something you can
17   figure out during a break, the date of your
18   retention?
19        A.    Possibly.
20        Q.    Okay.  So before you joined
21   either case, even then you were aware that
22   there's something called AdID and there is
23   something called IDFA, right?
24        A.    Yes.
25        Q.    And you were -- you understood
```

Page 55