# EXHIBIT 12

# MAO DECLARATION
# OPPOSITION TO GOOGLE'S MOTION TO EXCLUDE LASINSKI

# DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1            UNITED STATES DISTRICT COURT
 2           NORTHERN DISTRICT OF CALIFORNIA
 3
 4    ANIBAL RODRIGUEZ, et al.,
 5              Plaintiffs,
 6    v.                                  Case No.
 7    GOOGLE LLC,                         3:20-cv-04688-RS
 8              Defendant.
 9
10         ***********************************
              HIGHLY CONFIDENTIAL -
11             ATTORNEYS' EYES ONLY
           ZOOM VIDEOTAPED DEPOSITION OF
12             DONNA L. HOFFMAN, Ph.D.
              Tuesday, July 11, 2023
13                10:15 a.m. PDT
           ***********************************
14
15
16    TAKEN BY:
              ALEXANDER FRAWLEY, ESQ.
17            ATTORNEY FOR PLAINTIFF
18
      REPORTED BY:
19
              BELLE VIVIENNE, RPR, CRR, NJ-CRR,
20            WA/CO/NM-CCR
              NATIONALLY CERTIFIED REALTIME
21            COURT REPORTER
              VERITEXT LEGAL SOLUTIONS
22            JOB NO. 5996122
              866.299.5127
23
24
25

                                              Page 1
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              A P P E A R A N C E S
 2
     FOR THE PLAINTIFFS:
 3
             ALEXANDER FRAWLEY
 4           SUSMAN GODFREY LLP
             1301 Avenue of the Americas
 5           32nd Floor
             New York, New York 10019
 6           Afrawley@susmangodfrey.com
 7           MARK MAO
             BOIES SCHILLER FLEXNER LLP
 8           44 Montgomery Street, 41st Floor
             San Francisco, California 94104
 9           Mmao@bsfllp.com
10   FOR THE DEFENDANT:
11           SIMONA AGNOLUCCI
             ARGEMIRA FLOREZ
12           WILLKIE FARR & GALLAGHER LLP
             One Front Street, 34th Floor
13           San Francisco, California 94111
             Sagnolucci@willkie.com
14           aflorez@willkie.com
15           JOHN JANHUNEN
             GOOGLE
16           1600 Amphitheatre Parkway
             Mountain View, California 94043
17           Jjanhunen@google.com
18   VIDEOGRAPHER:
             Jefree Anderson
19           Kristof Zetenyi
20
21
22
23
24
25
```

Page 2

| | | |
|---|---|---|
| 1 | A. Go ahead. Where were we? | 13:19:21 |
| 2 | Q. Yeah, I'll just re-ask my | 13:19:23 |
| 3 | question. | 13:19:25 |
| 4 | A. Thank you. | 13:19:26 |
| 5 | Q. Are you aware of any | 13:19:26 |
| 6 | specific examples where an internet | 13:19:28 |
| 7 | company paid users for data? | 13:19:30 |
| 8 | MS. AGNOLUCCI: Object to scope. | 13:19:33 |
| 9 | A. I'm sorry. Excuse me. | 13:19:37 |
| 10 | Something about your question is | 13:19:50 |
| 11 | triggering it. I just unplugged it. I'm | 13:19:52 |
| 12 | sorry. | 13:19:55 |
| 13 | The best way I can answer | 13:19:56 |
| 14 | that is that I've been studying online | 13:19:58 |
| 15 | consumer behavior, internet business | 13:20:03 |
| 16 | models and e-commerce since the mid '90s | 13:20:05 |
| 17 | and I am probably, you know, the -- I | 13:20:09 |
| 18 | know that has been hypothetically | 13:20:11 |
| 19 | proposed and it's possible it's been -- | 13:20:13 |
| 20 | it's actually happened, but off the top | 13:20:17 |
| 21 | of my head, I can't give you any | 13:20:19 |
| 22 | examples. | 13:20:21 |
| 23 | BY MR. FRAWLEY: | 13:20:21 |
| 24 | Q. Okay. You prepared an | 13:20:39 |
| 25 | expert report and served the expert | 13:20:46 |

Page 126

| | | |
|---|---|---|
| 1 | report in a case for Google against the | 13:20:48 |
| 2 | Arizona Attorney General; is that right? | 13:20:51 |
| 3 |     A.   Yes. | 13:20:54 |
| 4 |     Q.   Okay.  Did you consult that | 13:20:58 |
| 5 | report in the process of preparing your | 13:21:04 |
| 6 | report in this case? | 13:21:06 |
| 7 |     MS. AGNOLUCCI:  Object to form. | 13:21:07 |
| 8 |     A.   I -- yes. | 13:21:11 |
| 9 | BY MR. FRAWLEY: | 13:21:11 |
| 10 |     Q.   Please elaborate on how you | 13:21:15 |
| 11 | consulted that report in the process of | 13:21:17 |
| 12 | preparing your report for this case. | 13:21:18 |
| 13 |     A.   That report concerned dark | 13:21:20 |
| 14 | patterns and I consulted a few of the | 13:21:23 |
| 15 | paragraphs relating to dark patterns. | 13:21:26 |
| 16 |     Q.   And did you copy any of | 13:21:32 |
| 17 | those paragraphs from that report into | 13:21:34 |
| 18 | this report? | 13:21:36 |
| 19 |     A.   No. | 13:21:37 |
| 20 |     Q.   ==So would it surprise you if== | 13:21:44 |
| 21 | ==some of the material in your report for== | 13:21:47 |
| 22 | ==this case is identical or almost== | 13:21:48 |
| 23 | ==identical to the paragraphs from that== | 13:21:51 |
| 24 | ==opinion?== | 13:21:53 |
| 25 |     ==A.==   ==No.== | 13:21:54 |

Page 127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        Q.    Why wouldn't that surprise          13:21:55
 2   you?                                           13:21:57
 3        A.    Well, because I have                13:21:58
 4   opinions that I have formulated about          13:22:01
 5   dark patterns, for example, that they are      13:22:03
 6   a vague and nebulous construct.  So it         13:22:06
 7   wouldn't surprise me that might be in          13:22:09
 8   both reports because there's only one way      13:22:11
 9   to say that, and so it would not surprise      13:22:14
10   me that fragments or sentences here and        13:22:16
11   there of my own words have appeared in         13:22:20
12   same or similar structure in both              13:22:24
13   reports.  I -- I mostly consulted the          13:22:26
14   previous report for some of the                13:22:32
15   references to the dark pattern                 13:22:34
16   literature.                                    13:22:35
17        Q.    Fair to say then that some          13:22:36
18   opinions you offer in that case at least       13:22:45
19   overlap with opinions you're offering in       13:22:48
20   this case?                                     13:22:50
21            MS. AGNOLUCCI:  Object to form.       13:22:51
22        A.    Yes.                                13:22:52
23   BY MR. FRAWLEY:                                13:22:52
24        Q.    And is that why you                 13:23:02
25   consulted that report in the process of        13:23:03
```

Page 128

| | | |
|---|---|---|
| 1 | preparing this case's report? | 13:23:06 |
| 2 | A. No. | 13:23:08 |
| 3 | Q. Can you look at table 7 on | 13:23:18 |
| 4 | page 71 of your report in this case? | 13:23:24 |
| 5 | A. I'm there. | 13:23:34 |
| 6 | Q. Do you see the middle cell | 13:23:38 |
| 7 | in the table? | 13:23:40 |
| 8 | A. Yes. | 13:23:42 |
| 9 | Q. And do you see where you | 13:23:44 |
| 10 | wrote in the right column, middle cell, | 13:23:45 |
| 11 | middle row, "Mr. Schneier has not shown | 13:23:47 |
| 12 | why Google's settlement with the Arizona | 13:23:59 |
| 13 | Attorney General is relevant to this | 13:24:01 |
| 14 | case. The Arizona matter was specific to | 13:24:03 |
| 15 | Google's alleged location-tracking | 13:24:07 |
| 16 | practices, and is irrelevant to the | 13:24:09 |
| 17 | claims of this case"? | 13:24:10 |
| 18 | Do you see that? | 13:24:12 |
| 19 | A. I do. | 13:24:13 |
| 20 | Q. This Arizona case being | 13:24:15 |
| 21 | talked about in this cell is the case | 13:24:17 |
| 22 | where you offered an expert report, | 13:24:20 |
| 23 | correct? | 13:24:22 |
| 24 | A. Yes. | 13:24:23 |
| 25 | Q. And you admitted a moment | 13:24:29 |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1   ago that you consulted that report in the      13:24:30
 2   process of preparing your report in this       13:24:33
 3   case, right?                                   13:24:35
 4         A.    Yes.  As I testified, I went       13:24:37
 5   to look up the references that I used for      13:24:39
 6   the dark pattern literature, and then for      13:24:42
 7   this report, I did additional research on      13:24:46
 8   dark patterns.                                 13:24:50
 9         Q.    Did you use any of the             13:24:51
10   references from the Arizona -- from your       13:24:55
11   Arizona report in your report for this         13:24:57
12   case?                                          13:24:59
13         A.    Yes.                               13:24:59
14         Q.    How can it be proper for an        13:25:05
15   expert to borrow material from a prior         13:25:08
16   report in a different case?                    13:25:10
17         MS. AGNOLUCCI:  Object to form.          13:25:13
18         A.    I'm borrowing, to use your         13:25:16
19   term, academic literature, which is quite      13:25:19
20   common to cite the same papers in              13:25:23
21   subsequent work.  So I'm -- I don't -- I       13:25:27
22   don't see the problem here.                    13:25:33
23   BY MR. FRAWLEY:                                13:25:33
24         Q.    Can you help me understand         13:25:37
25   how you think it was proper to, again, my      13:25:38
```

```
 1   words, borrow that material, even though      13:25:41
 2   here in your report in this case on page      13:25:43
 3   71, you're saying that that matter is         13:25:45
 4   "irrelevant to the claims of this case"?      13:25:49
 5        A.   The material that I cited in        13:25:54
 6   that report as well as this report refers     13:25:57
 7   to the academic literature on dark            13:26:00
 8   patterns.  That is relevant -- that was       13:26:03
 9   relevant in some aspects to that case and     13:26:06
10   that is relevant in some, yet different       13:26:10
11   aspects, in this case.  In my mind, it's      13:26:13
12   entirely possible that the literature on      13:26:16
13   dark patterns could be relevant to dozens     13:26:19
14   of cases.  And -- and I would be              13:26:22
15   required, if I was doing my job, to cite      13:26:27
16   the same papers so that I could do a          13:26:29
17   thorough survey of the literature.            13:26:33
18        Q.   So having just talked about         13:26:35
19   this, do you still agree with your            13:26:41
20   statement on page 71 that the Arizona         13:26:43
21   matter is irrelevant to the claims of         13:26:46
22   this case?                                    13:26:48
23        A.   My statement, if you read my        13:26:50
24   entire statement -- again, I'm a rebuttal     13:26:52
25   witness, and my job was to rebut              13:26:56
```

Page 131

| | | |
|---|---|---|
| 1 | Mr. Schneier's claims regarding whether | 13:26:58 |
| 2 | Google's WAA and the sWAA disclosures | 13:27:03 |
| 3 | displayed dark patterns.  And I point out | 13:27:08 |
| 4 | in this cell that Mr. Schneier, and the | 13:27:12 |
| 5 | burden is on Mr. Schneier, not me, to | 13:27:16 |
| 6 | show why Google's settlement in that case | 13:27:19 |
| 7 | is relevant to this case. | 13:27:21 |
| 8 |       He has not done that and | 13:27:24 |
| 9 | that case was related to location | 13:27:26 |
| 10 | tracking and that has nothing to do with | 13:27:28 |
| 11 | this case. | 13:27:32 |
| 12 |    Q.   So your opinion is that | 13:27:36 |
| 13 | location tracking specifically has | 13:27:37 |
| 14 | nothing to do with this case? | 13:27:39 |
| 15 |      MS. AGNOLUCCI:  Object to form. | 13:27:41 |
| 16 |    A.   My opinion is that that case | 13:27:44 |
| 17 | was regarding a different matter.  It may | 13:27:47 |
| 18 | have had to do with dark patterns, but | 13:27:50 |
| 19 | how it had to do with dark patterns was | 13:27:52 |
| 20 | different than how this case has to do | 13:27:54 |
| 21 | with dark patterns, but the cases are not | 13:27:57 |
| 22 | the same case. | 13:28:01 |
| 23 |      And Mr. Schneier, whom I'm | 13:28:02 |
| 24 | rebutting, attempts to argue that, well, | 13:28:06 |
| 25 | Google was involved in this other matter | 13:28:10 |