# EXHIBIT 14

**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
  bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
  sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
  esantacana@willkie.com
LORI C. ARAKAKI (SBN: 315119)
  larakaki@willkie.com
ARGEMIRA FLOREZ (SBN: 331153)
  aflorez@willkie.com

One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400
Facsimile: (415) 858-7599

Attorneys for Defendant
GOOGLE LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO

| | |
|---|---|
| ANIBAL RODRIGUEZ AND JULIE ANNA MUNIZ, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE LLC, *et al.*,<br><br>Defendant. | Case No. 3:20-CV-04688<br><br>**DEFENDANT GOOGLE LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' INTERROGATORIES, SET SEVEN**<br><br>Judge:     Hon. Richard Seeborg<br>Courtroom: 3, 17th Floor<br>Action Filed: July 14, 2020 |

PROPOUNDING PARTY:   PLAINTIFFS ANIBAL RODRIGUEZ AND JULIEANNA MUNIZ

RESPONDING PARTY:    DEFENDANT GOOGLE LLC

SET NO.:             SEVEN

1  seek information beyond the scope of this lawsuit, which concerns app measurement data Google
2  receives from third-party mobile applications that have enabled Google Analytics for Firebase,
3  AdMob, or Firebase Cloud Messenger.
4     13.   Google objects to the definition of "Non-Google App" as vague, ambiguous, and
5  incomprehensible, including to the extent that it relies on the undefined phrases "operated and
6  owned" and "Google affiliate (e.g., Google Maps, YouTube)."  Google further objects to the
7  definition of "Google App" as overbroad and partially irrelevant to the extent that it purports to
8  seek information beyond the scope of this lawsuit, which concerns app measurement data Google
9  receives from third-party mobile applications that have enabled Google Analytics for Firebase,
10 AdMob, or Firebase Cloud Messenger.
11    14.   Google objects to the definition of "User" as ambiguous, overbroad, and partially
12 irrelevant, including because it purports to include individuals who are not part of the applicable
13 class defined by Plaintiffs in Paragraph 231 of the Third Amended Complaint (ECF No. 131).
14    15.   Google objects to the definition of "WAA-Off Data" as vague, ambiguous, and
15 incomprehensible, including because of its use of the undefined terms and phrases "data generated
16 by a user's use," which fails to distinguish between individual users and their mobile devices, and
17 fails to define the term "generated"; "employ or embed any Google service . . . while Web & App
18 Activity (WAA) or Supplemental Web & App Activity (sWAA) was disabled," which employs
19 the undefined term "service" and therefore fails to distinguish between Google products and
20 services intended for end-users and those intended for app developers; "information generated by
21 or during a user's visit to an app," which fails to define "information," "generated," and "visit."
22 Google additionally objects to the extent this definition incorporates the vague, ambiguous, and
23 overbroad term "services" without limitation, and also purports to include applications that do not
24 employ GA for Firebase, AdMob, and/or Firebase Cloud Messenger.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 18:**

If Google's Responses to Requests for Admission No. 23 and No. 24 are anything but unqualified admissions, please explain how a User can (or at any time during the Class Period

CONFIDENTIAL

could) prevent Google from receiving and/or saving WAA-Off Data.

**RESPONSE TO INTERROGATORY NO. 18:**

Google objects to this Interrogatory as vague and ambiguous as to several undefined terms and phrases susceptible to multiple meanings. For purposes of this response, Google construes "Google" to mean Google LLC; "WAA" to mean the account-level setting called Web & App Activity; "User" to mean an individual who is encompassed within the applicable class defined by Plaintiffs in Paragraph 231 of the Third Amended Complaint (ECF No. 131); "Data" to mean and refer to the types of data sent to Google via GA for Firebase as alleged in the Third Amended Complaint, and Google excludes from this definition, among other things, diagnostic-type data sent to Google for the purpose of diagnosing hardware or software issues, none of which is implicated by Plaintiffs' allegations. Google additionally objects to this Interrogatory as vague, ambiguous, and confusing as to the use of the undefined terms "prevent," "receiving," and "saving," all of which Google will construe as consistent with their ordinary usage and meaning. Google further objects to this interrogatory to the extent it incorporates Request for Admission Nos. 32 and 35 and the vague and ambiguous terms therein, and is therefore vague and ambiguous.

Google further objects to this Interrogatory as overbroad, unduly burdensome, and abusive to the extent it seeks information that is not relevant to any claim or defense in this Action, including because it seeks information concerning any data that Google receives or collects, without limitation as to whether such data is sent to Google by third-party app developers after collection, if any, through GA for Firebase, Cloud Messaging, or AdMob—i.e., concerning Plaintiffs' theory of wrongdoing in the Third Amended Complaint. Judge Tse has already ruled that "'[t]his is a case about a *particular* Google practice, not *any* Google privacy practice.'" Order on RFP Nos. 1–3, ECF No. 85 at 2:3-5 (emph. in original). Accordingly, to the extent this Request seeks information concerning unspecified processes and/or practices, it is overbroad and unduly burdensome.

Google further objects to this Interrogatory as duplicative, including because Google has already responded in extensive detail to an interrogatory concerning Google's "data collection

1   with its Firebase SDK" (Interrogatory No. 1), including by describing in detail the data Google

2   receives, and the collects," "what impact if any turning off (or previously pausing) Web & App

3   Activity has" on Google's receipt of the app-interaction data," and the steps app developers can

4   take to impact Google's processing of the data sent to Google.  Google has also responded in

5   extensive detail to an interrogatory concerning the "functionality of WAA" (Interrogatory No. 4),

6   including responding that "WAA has never controlled whether Google Analytics for Firebase

7   collects and sends user activity data from third party apps to Google servers," and "[a]t no point

8   has Google represented that WAA would control whether Google Analytics for Firebase collects

9   user activity data."  Google thus further objects to this Interrogatory as unduly burdensome,

10  overbroad, and disproportionate to the needs of this action, including because Google has never

11  represented that WAA would control whether app developers send data to Google and Google

12  does not collect and store any personally-identifiable app interaction data when WAA is off.

13           Google further objects to this Interrogatory to the extent that it seeks information protected

14  by the attorney-client privilege and/or the attorney work product doctrine.

15           Subject to and without waiving the foregoing objections, Google responds as follows:

16           App developers who use Google Analytics for Firebase (GA for Firebase) are required by

17  Google to disclose their use of GA for Firebase to their end users and obtain their consent, where

18  necessary.  Many such developers provide their end users with a way to opt out of analytics usage,

19  and/or to delete data the developer has collected from that user's device and sent to Google.  *See*

20  Ganem Rough Tr. at 139–41.  App developers choose whether and how to collect app

21  measurement data and then send it to Google by incorporating GA for Firebase into their apps and

22  configuring it appropriately.  Upon receipt of such data, before logging any of it, as detailed in

23  response to Interrogatory No. 1, Google undertakes several consent checks if the developer has

24  enabled Google Signals or Enhanced Firebase Audiences.  Google uses a DSID token sent with

25  the app measurement data to query the EventFE server at Google.  If the user has a number of

26  privacy controls enabled, including sWAA, and the app developer has Google Signals enabled,

27  then the EventFE server will return a GAIA ID for that user, and GAIA-tied app measurement

28  data will be written to an app measurement-gaia log.  If EventFE does not return a GAIA ID, the

1   app measurement data is stripped of certain pieces of information that could be used to personally

2   identify the user who was using the device, and the app measurement data is logged only in

3   "pseudonymous space" to the app measurement log.  Google acts as a service provider to store,

4   process, and analyze  the app measurement data for the developer.

5   　　　　　If the data was generated while WAA was off, the data is not written to UUAD and

6   therefore not used for personalized advertising purposes.  Google can also use pseudonymous app

7   measurement data for product improvements and fraud detection purposes, and other select

8   purposes related to legitimate business functions, if the app developer has provided consent via the

9   "data sharing with Google" button in their Analytics account. See

10  https://support.google.com/firebase/answer/6383877?hl=en#zippy=%2Cin-this-article. If on a

11  specific device, the user has enabled the LAT control on iOS or clicked "Don't Allow" on the App

12  Tracking Transparency prompt on iOS (v.14.5 and up), the pseudonymous app measurement data

13  will not contain an IDFA.  If the user has enabled the OOOAP control on Android, when app

14  developers send app measurement data to Google through GA for Firebase, Google uses the

15  OOOAP signal to ensure that the data associated with the user's deviceID is not used for

16  personalized advertising.

17  　　　　　 App developers can additionally configure GA for Firebase to disable ads personalization

18  for specific event types, specific user properties, or a given region. *See, e.g.*,

19  https://support.google.com/analytics/answer/9494752;

20  https://support.google.com/analytics/answer/9626162. If the app developer opts to disable ads

21  personalization, conversions are marked as not for use for ads personalization, although they may

22  be exported to a linked ads account.

23  　　　　　App developers can also delete their Google analytics account, which deletes app

24  measurement data they have sent to Google pursuant to Google's wipeout policies (i.e., within a

25  certain period of time after the app developer opts to delete their analytics account).  *See* Ganem

26  Rough Tr. at 111–12.

27

28