March 7, 2023

**Submitted via ECF**

Chief Judge Richard Seeborg
San Francisco Courthouse
Courtroom 3 - 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    Joint Letter Brief re: Notice Issues
               *Rodriguez v. Google LLC*, Case No. 3:20-cv-04688-RS (N.D. Cal.)

Dear Chief Judge Seeborg:

      Pursuant to the Court's March 1, 2024 Order on the parties' stipulation (Dkts. 368, 369), Plaintiffs and Google LLC ("Google") jointly submit this letter brief concerning two notice-related issues: (1) access to a table of potential class members who will receive direct email notice (i.e., the email addresses associated with Google accounts that had (s)WAA turned off or paused during the class period); and (2) whether direct email notice should include supervised and enterprise Google accounts. Counsel for the parties met and conferred about these issues many times, most recently by videoconference on March 5, 2024.

      The parties are hopeful that they can reach an agreement on the first issue, but those discussions are ongoing. The parties respectfully request that the Court grant one additional day to try to resolve this issue. The parties' positions on the second dispute are included below.

      Exhibit A is Google's proposed order. Plaintiffs do not offer a proposed order separate from the proposed order filed along with Plaintiffs' Motion to Direct Notice to Members of the Certified Classes.

**PLAINTIFFS' STATEMENT**

This was supposed to be a short letter brief to address "disputes relating to the *mechanics* of disseminating notice." Dkt. 368 (stipulation). Google strays far from that mandate,[1] instead seeking to relitigate the class definitions that were certified. Google wants to exclude from notice two categories of accountholders who are plainly within the definitions. This alarming position was neither raised in the Case Management Statement filed after class certification (Dkt. 363) nor during the ensuing conference. Rather, at the eleventh hour, Google seeks this drastic relief because it is worried that sending notice to these users would cause Google "harm in the marketplace." But that's not the standard for class notice. The only issue to decide is whether the notice program comports with due process. On that issue, the parties agree. Google's extraneous request to rewrite the class definitions should be denied.

I. **Individuals With Supervised and Enterprise Accounts Are Within the Class Definitions, and Must Be Noticed.**

Google seeks to exclude from the notice program two categories of Google accountholders: "supervised" accounts (created by parents for their children under 13) and "enterprise" accounts (created by businesses and other organizations for their employees and other members), even though those accounts also had WAA or sWAA turned off. These accountholders plainly fall within the class definition this Court certified:

> Class 1: **_All individuals_** who, during the period beginning July 1, 2016 and continuing through the present (the "Class Period"), (a) had their "Web & App Activity" and/or "supplemental Web & App Activity" setting turned off and (b) whose activity on a non-Google-branded mobile app was still transmitted to Google, from (c) a mobile device running the Android operating system, because of the Firebase Software Development Kit ("SDK") and/or Google Mobile Ads SDK.[2]

There are no exclusions for any category of Google accountholders. "All" means "all." This is the class definition that Plaintiffs sought in their moving papers. Dkt. 315 at 1. Google's class certification opposition never sought to exclude individuals associated with supervised or enterprise accounts. Dkt. 329. And this Court granted Plaintiffs' motion and certified the proposed Classes without modification, including the "all individuals" language at the start of the definition of both certified classes. Dkt. 352 at 23–24. While Google may not *want* these individuals notified about Plaintiffs' allegations regarding Google's data collection practices, there is no disputing that these individuals *are* in fact within the scope of the certified classes. They are entitled to notice.

II. **Google Knew All Along These Accountholders Were Part of the Classes.**

Google feigns surprise about the inclusion of these categories of users. But Plaintiffs never hid the ball. Here are two excerpts from their damages report, submitted with and detailed in our certification motion (and our proposed trial plan), which show that Plaintiffs' damages expert incorporated these accountholders into his analysis.

---

[1] Google's portion of the brief is also far over the 2.5-page limit per party.
[2] Class 2 is identical but swaps the Android operating system for a non-Android operating system. Dkt. 352 at 24.

1

**Figure 7**
**Data Regarding U.S. Google Accounts Active at Any Time Between July 27, 2016 and July 27, 2020**[106]

For US accounts active at any time between July 27th 2016 and July 27, 2020: US Consumer + Enterprise

**Figure 51**
**Estimated Class Members Through December 31, 2022**[274]

| | Ages 10-17 | Adults (18+) | Total |
|---|---|---|---|

Lasinski Report, Dkt. 314-7. Google filed a *Daubert* against this expert (which was denied) and Google never raised any argument about the inclusion of these two types of users. Plaintiffs' counsel even told Google's counsel these users were included. During a deposition, Google's lawyer specifically asked "are you trying to include . . . children and enterprise in that class?" Plaintiffs' counsel responded, "I don't know why they would be different. But we may have a disagreement on that." This exchange followed:

```
MR. SANTACANA:  I mean, if you want to try and
certify kids, I would be all for that.  Kids have
parents.  Workers have bosses.
MR. MAO:  Yeah, but off is off.
MR. SANTACANA:  If you say so, go for it.
MR. MAO:  Okay.
```

Black Tr. at 210. Perhaps Google dropped the ball by neglecting to raise any arguments about these users. More likely, Google decided those arguments were not so strong and prioritized others. Who could blame them? No one would want to oppose certification on the ground that your client should be allowed to collect children's data with impunity. Either way, there should be no dispute that Google was aware of these users' inclusion in the proposed classes and never challenged that. Until now. What changed? Google is embarrassed about notice emails going to children, parents, and users of its corporate-focused enterprise offering. *See infra* referencing "reputation[al]" harm.

### III. Google's Arguments Are Procedurally Improper and Substantively Weak.

Google's requested limitation on notice amounts to an improper attempt to revisit the Court's certification decision. As this Court has recognized, "a motion for decertification will generally only succeed where there has been some change in the law or facts that justifies reversing the initial certification decision." *Montera v. Premier Nutrition Corp.*, 621 F. Supp. 3d 1012, 1023 (N.D. Cal. 2022) (Seeborg, J.); *see also, e.g.*, *Maldonado v. Apple, Inc.*, 2021 WL 1947512, at *2 (N.D. Cal. May 14, 2021) ("The defendant must 'make some showing of changed circumstances or law.'") (quoting 3 WILLIAM B. RUBENSTEIN ET AL., NEWBERG ON CLASS ACTIONS § 7:34 (5th ed. 2013). **Nothing has changed**. There are no new facts, no new law. It is too late for a do-over. Google already "had an opportunity to object to the language in its opposition to the motion for class certification," and it is now too late to "propose an interpretation of a phrase in

2

the class definition." *Muniz v. RXO Last Mile, Inc.*, 2023 WL 3868391, at *3 (D. Mass. June 7, 2023) (rejecting request to modify class definitions at the notice stage).

Google's arguments also fail on the merits. Notice is administratively feasible because Google maintains records of these accountholders and their email addresses. And while irrelevant, the alleged harm from notice to Google's business is de minimis because Google admits there is already substantial (if not entire) overlap between enterprise accounts and consumer accounts. Moreover, Google has provided no actual basis to limit the classes. Supervised and enterprise accounts are similarly situated to other accounts. If WAA or sWAA are off for these accounts, Plaintiffs' position is that Google lacks permission to collect app activity data, just like for the other accounts. Indeed, this Court already considered a similar issue in briefing prior to class certification. Google objected to the inclusion of individuals in the class who had WAA off by default (a group that includes both enterprise and supervised accounts). Dkt. 329 (at 27–28). This Court rejected that argument in its order certifying class. *See Dkt*. 352 at 17.

Regardless, Google's only complaint appears to be that these enterprise accounts are defaulted to off. There is no dispute that this control is still turned off. There is no dispute that Google's written assurances on what sWAA-off means remains the same. Where Google regularly treats users that are defaulted to sWAA-on as "consenting" to data collection, pointing to such disclosures, Google should be equally bound to not collecting data when the same button is off. At worst, that sWAA-off is a default for this subclass of users is just another common issue, and the Court need not entertain Google's belated motion for reconsideration. Finally, to the extent Google persists in seeking to raise arguments about these two categories of accounts, Google can do so at summary judgment, later *this month*. There is no need for any additional briefing. In the meantime, notice should go forward for the certified classes.

## GOOGLE'S STATEMENT

**I.** Nobody— not Plaintiffs, not Google, not the Court — assumed that individuals who cannot enable or disable (s)WAA should be in the classes defined by Plaintiffs. Indeed, Plaintiffs' class certification motion and class definition of course assume that class members exercised the choice to disable (s)WAA and therefore allegedly had their privacy invaded when their pseudonymous data was used. During discovery, all relevant experts excluded Enterprise Dasher accounts ("Dasher") (a type of Google account for employees of Enterprise organizations) and Unicorn accounts (under 13 years of age) from their calculations of class size and classwide damages. At the time of class certification briefing, no party brought up Dasher or Unicorn accounts because Dashers do not control sWAA in their corporate Google accounts and Unicorns are not allowed to enable sWAA. Therefore, the Court was never invited to analyze the various unique aspects of these account types.

But, when it came time to assemble a class list, Plaintiffs demanded that Google provide class notice to all Dasher and Unicorn accounts with (s)WAA off, not just regular Google accounts. If it had been clear that Plaintiffs thought someone who could not control whether sWAA was enabled or not nevertheless has a claim against Google, such a frivolous argument could have been disposed of years ago. Google asks the Court to clarify the class definitions, or alternatively to permit Google to fully brief this issue for the Court's benefit before approving a potentially

3

confusing and inaccurate class notice program that includes individuals whom the Court was never asked to consider and whom the Court never meant to sweep into the certified classes.[3]

### A. Dasher and Unicorn Accounts Defined.

An Enterprise Dasher account is an account created and managed by an enterprise administrator on behalf of its users.[4] The employee is not necessarily involved in the account creation process. Nor does the user necessarily see Google's disclosures before using Google's services. The administrator can fix certain settings on the Dasher accounts to on or off, including sWAA, with no involvement by the end user.

Similarly, a Unicorn account describes an account managed by a parent for a child under the age of 13. *Id.* That child also may not see the disclosures before using Google's services unless intentionally sought out because the parent controls the child's account settings.[5]

### B. The Court should stay class notice until the class definition is clarified to avoid confusing potential class members.

"An adequate class definition specifies 'a distinct group of plaintiffs whose members [can] be identified with particularity.'" *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 593 (E.D. Cal. 2008), *adhered to*, 287 F.R.D. 615 (E.D. Cal. 2012) quoting *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). "One of the primary purpose[s] of the class definition is to make it 'administratively feasible' for the court to determine individual class membership." *Id.* quoting *Aiken v. Obledo*, 442 F.Supp. 628, 658 (E.D. Cal. 1977).

The class definitions here comprise individuals who . . . had their [WAA/sWAA] setting turned off." As phrased, the current class definitions are inadequate in that they fail to explicitly state that the Class Members are non-Unicorn and non-Enterprise account users. As things stand, it is not "administratively feasible" for Google to provide class notice to Dasher and Unicorn

---

[3] Google proposes the that Court clarify the two class definitions with the bracketed language:

Class 1: All ["non-Enterprise" and "non-Unicorn"] individuals who, during the period beginning July 1, 2016 and continuing through the present (the "Class Period"), (a) had their "Web & App Activity" and/or "supplemental Web & App Activity" setting turned off and (b) whose activity on a non-Google-branded mobile app was still transmitted to Google, from (c) a mobile device running the Android operating system, because of the Firebase Software Development Kit ("SDK") and/or Google Mobile Ads SDK.

Class 2: All ["non-Enterprise" and "non-Unicorn"] individuals who, during the Class Period (a) had their "Web & App Activity" and/or "supplemental Web & App Activity" setting turned off and (b) whose activity on a non-Google-branded mobile app was still transmitted to Google, from (c) a mobile device running a non-Android operating system, because of the Firebase SDK and/or Google Mobile Ads SDK.

[4] Dkt. 361-58 at 17 (March 22, 2023 Plaintiffs' Technical Report ("Hochman Rpt.")).
[5] *See* https://support.google.com/families/answer/7103262?sjid=9113562860366758773-NC#zippy=%2Cchoose-your-childs-google-activity-settings

accounts without confusing potential class members. That is because the vast majority of Dasher account holders would, under Plaintiffs' plan, receive an email *at their work email* addresses telling them that they are part of a class due to their *work email* settings. This would create confusion and potentially cause Google and its enterprise partners harm as a result, especially if those users' personal Google Account settings differ. *See Romero v. Securus Techs., Inc.*, 383 F. Supp. 3d 1069, 1076 (S.D. Cal. 2019) (granting stay where company raised that class notice might unnecessarily damage its reputation if class was eventually decertified and finding that "[a]side from the heightened emotion and awareness of the lawsuit that notice would bring, such notice could also cause potential class members to hire attorneys to assist them in making a decision whether or not to opt out of the class; whereas the Ninth Circuit ultimately might rule they should not be included in the class."). Further confusion may ensue because the vast majority of those people will also get personal emails at their personal accounts. Per Google's current records, that means millions of emails will be sent to Dasher accounts to capture the limited people in that population who have a work Google account, but no personal Google account.

Even more confusing, other portions of the millions of Dasher accounts will have sWAA turned off because the employer turned it off for them, or because they turned it off themselves, meanwhile, their personal account may have sWAA turned on, creating an individualized issue as to authorization and consent, their expectation of privacy, and harm arising out of their personal app activity on their personal devices.

### C. Unresolved class certification issues pertaining to the class of people who have a Google Dasher account but do not have a personal Google account exclude them from the currently defined class.

Dasher and Unicorn account users should not receive class notice because they do not belong in the certified classes. Indeed, had it been clear that they were part of the proposed class Google would have raised numerous arguments for why certification is inappropriate. There are a number of predominance issues that pertain to Dasher and Unicorn accounts that disqualify them from membership, which is why the parties litigated this case and the class certification motion without assuming they were part of the class as Plaintiffs defined it, since they likely did not see the relevant representations and did not personally turn off sWAA.

***First***, there are individualized issues concerning who saw the alleged representations and switched off the relevant button. For Dasher accounts, both the administrator and the user have control over the user's sWAA setting. If the administrator disables sWAA, the user cannot turn it on. If the administrator enables sWAA, it will only flip to on if the user also affirmatively enables it. Thus, unlike the users of regular Google accounts, for Dasher users, absent an individualized inquiry of every Dasher account user, neither Google nor a jury could know which specific Dasher user actually saw the sWAA button and chose to turn it off. Likewise, Unicorn (or supervised) accounts are a shared endeavor. Parents have control over account settings.

When the Court granted Plaintiffs' motion to certify two classes earlier this year, it adopted Plaintiffs' argument that common questions predominated because whether class members had a reasonable expectation of privacy turned on (a) common conduct—i.e., affirmatively switching off the WAA or sWAA buttons, and (b) inferring privacy choices from Google's common representations about those buttons. *See* "Order" at 9-10. This analysis necessarily excludes from

5

its ambit Dasher and Unicorn account users, who cannot be said to have engaged in common conduct or seen common representations.

**Second**, individual Dasher account users have no expectation of privacy in their work emails or email accounts, which belong to their employers. The intrusion upon seclusion and invasion of privacy claims ask whether "'(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive.'" Order at 8 citing *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 601 (9th Cir. 2020). By no standards could a Dasher account user have reasonably expected to have a personal privacy interest in an account managed by their employer. For example, the Court's framework for evaluating whether Class Members had a reasonable expectation of privacy looked at "whether the members, who shared common conduct, had an objective, reasonable expectation of privacy based on Google's representation about the sWAA button to all members under these claims." Order at 10. Google has no evidence that Dasher account users engaged in common conduct (e.g., turning sWAA off) because employers may do this for Dasher accounts automatically.[6]

**Third**, without a Google account, it would be unreasonable for an individual Dasher user to think there is any connection between (1) their sWAA setting on their *work* Google account and (2) what data Google saves that was sent from their personal, non-work mobile devices, which themselves *are not logged into a Google account*. This is a causal link that they would have to make in order to come under the purview of Plaintiffs' various claims, and it makes no sense. Likewise, individual children do not necessarily have a relevant expectation of privacy here where they often do not have their own devices but instead were using their parents' devices, who have their own Google accounts with their own settings. Teasing apart which child fits into which bucket is a necessarily individualized question.

**Finally**, Plaintiffs now attempt to minimize the nuances involved in determining the representations made to, consents granted by, and individual behavior of Dasher and Unicorn account users. But throughout the discovery process, Google sought clarification on Plaintiffs' position and explicitly stated its intention to exclude these account types from the class. Plaintiffs raised no objection. And in their technical reports, neither their technical expert nor their damages expert measured the class size or size of damages by including Dasher or Unicorn accounts. Indeed, Plaintiffs' technical expert expressly excluded them from his estimate of the class size, acknowledging that "[t]he numbers contained" in Google's productions of monthly sWAA-off figures "excluded Enterprise (Dasher) accounts, Google employee accounts (Googlers), Supervised accounts (e.g., child accounts) and deleted accounts," calculating a class size without including them, and never claiming that the class would be larger if Dasher and Unicorn accounts were included. (Dkt. 361-58 (Hochman Rpt.) ¶ 347-348).[7] And Plaintiffs' damages expert relied on surveys to estimate the class size, which necessarily did not include, at a minimum, Dasher accounts. Google's responding report made the same assumptions:

---

[6] See Declaration of Eduardo E. Santacana ISO Joint Brief ("Santacana Decl."), Exhibit 1 (September 15, 2022 Monsees Depo. Tr. at 190:11-191:13)

[7] Google submitted the unredacted version of this report under seal to this Court by email on October 13, 2023.

Dkt. 364-20 at ¶ 66 (May 31, 2023 Expert Report of John Black ):

> "I understand from Mr. Hochman's report that he limits his technical opinions in this case to U.S. Google account-holders who were neither "unicorns" (under 13 years of age) nor whose accounts were enterprise or government accounts ("dasher," etc.), i.e., Plaintiffs' claims and Mr. Hochman's opinions are limited to end users of mobile apps on Android or iOS with Google accounts who were not under thirteen years of age and whose accounts were set up by that user as a standard consumer account, which Mr. Hochman also refers to as "consumer accounts."

It was not until earlier this month that it became apparent that Plaintiffs nevertheless intended to send class notice to Dasher and Unicorn accounts, and to include them within the scope of the certified classes. In their portion, Plaintiffs argue this was always clear because two headings of two figures in their damages report put Google on notice of their intentions. But Figure 7 is simply repeating some data Google provided; two paragraphs earlier, that expert also lists out the non-Enterprise class numbers Google provided. And he never uses either number in his damages calculation; while he notes the size of the defined class with and without enterprise users, the difference does not enter the calculation of damages. Nor did Plaintiffs' counsel take Google's counsel up on the invitation to certify a sub-class of children; there is no mention of children anywhere in Plaintiffs' papers, and it should be obvious that children are differently situated from adults in this context.

More generally, Plaintiffs provide no answer to any of the substantive issues with these populations. Their answer, opportunistically, is that "all" means "all" and "off" means "off." But that is not what this Court held. None of the Court's analysis for why a class should be certified applies to these account types.

### D. Plaintiffs do not have any adequate class representatives for subclasses of Dasher and Unicorn accounts.

For class certification to be proper, all four conditions outlined in Federal Rule of Civil Procedure 23(a) must be met. That includes a requirement that "(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Here, Dasher and Unicorn account users are not typical of the class. There are four named plaintiffs in this case, none of whom have ever claimed to have a Dasher or Unicorn account, and none of whom would be an adequate representative for subclasses of Dasher and Unicorn accounts (and subclasses would be necessary to address the fundamental differences in these types of accounts).

Respectfully,

WILLKIE FARR & GALLAGHER, LLP        BOIES SCHILLER FLEXNER LLP

By: /s/ *Eduardo E. Santacana*      /s/ *Mark C. Mao*

| | |
|---|---|
| Eduardo E. Santacana (SBN: 281668) | Mark C. Mao (CA Bar No. 236165) |
| esantacana@willkie.com | mmao@bsfllp.com |
| Benedict Y. Hur (SBN: 224018) | Beko Reblitz-Richardson (CA Bar No. 238027) |
| bhur@willkie.com | |
| Simona Agnolucci (SBN: 246943) | BOIES SCHILLER FLEXNER LLP |
| sagnolucci@willkie.com | 44 Montgomery Street, 41st Floor |
| Lori Arakaki (SBN: 315119) | San Francisco, CA 94104 |
| larakaki@willkie.com | Telephone: (415) 293 6858 |
| One Front Street, 34th Floor | Facsimile (415) 999 9695 |
| San Francisco, CA 94111 | |
| Telephone: (415) 858-7400 | James W. Lee (*pro hac vice*) |
| Facsimile: (415) 858-7599 | jlee@bsfllp.com |
| *Attorneys for Defendant Google LLC* | Rossana Baeza (*pro hac vice*) |
| | rbaeza@bsfllp.com |
| | 100 SE 2nd Street, Suite 2800 |
| | Miami, FL 33130 |
| | Telephone: (305) 539-8400 |
| | Facsimile: (305) 539-1304 |
| | William Christopher Carmody (*pro hac vice*) |
| | bcarmody@susmangodfrey.com |

Shawn J. Rabin (*pro hac vice*)

srabin@susmangodfrey.com

Steven Shepard (*pro hac vice*)

sshepard@susmangodfrey.com

SUSMAN GODFREY L.L.P.

1301 Avenue of the Americas, 32nd Floor

New York, NY 10019

Telephone: (212) 336-8330


Amanda Bonn (CA Bar No. 270891)

abonn@susmangodfrey.com

SUSMAN GODFREY L.L.P.

1900 Avenue of the Stars, Suite 1400

Los Angeles, CA 90067

Telephone: (310) 789-3100


John A. Yanchunis (*pro hac vice*)

jyanchunis@forthepeople.com

Ryan J. McGee (*pro hac vice*)

rmcgee@forthepeople.com

MORGAN & MORGAN, P.A.

201 N Franklin Street, 7th Floor

Tampa, FL 33602

Telephone: (813) 223-5505

Facsimile: (813) 222-4736

9

*Attorneys for Plaintiffs*

## ATTESTATION

I, Mark Mao, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

| DATED: March 7, 2024 | By: | /s/ *Mark C. Mao* |
|---|---|---|
|  |  |  |