**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
  bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
  sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
  esantacana@willkie.com
ARGEMIRA FLÓREZ  (SBN: 331153)
  aflorez@willkie.com
HARRIS MATEEN (SBN: 335593)
  hmateen@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone:  (415) 858-7400

Attorneys for Defendant
GOOGLE LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, *et al.* individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE LLC, *et al.*,<br><br>Defendant. | Case No.  3:20-CV-04688 RS<br><br>**GOOGLE LLC'S MOTION FOR CLARIFICATION OF CLASS DEFINITION**<br><br>Judge:            Hon. Richard Seeborg<br>Courtroom:      3, 17th Floor<br>Action Filed:    July 14, 2020 |

## I.    INTRODUCTION

The Court certified two classes in January 2024, Dkt. 352, adopting the class definitions offered by Plaintiffs in their Motion for Class Certification, which itself keyed off the proposed class definitions in Plaintiffs' operative complaint.[1] This motion seeks an Order clarifying that two specific types of Google accounts, known as Dasher and Unicorn accounts, are not and should not be part of the class of "individuals" who "had their [(s)WAA] setting turned off" during the class period. Neither Dasher nor Unicorn accounts were contemplated by the parties' class certification briefing, nor the Court's analysis certifying the above-defined classes. Further, the logic of the Court's Order certifying the classes depended on two facts the Court found could be proven classwide: (1) the representations observed by the end user on the WAA toggle page describing what WAA would do, and (2) the affirmative choice by each class member to toggle the setting to "off." Neither of these two facts can be proved classwide for Dasher or Unicorn accounts. None of the Court's logic applies to these account types because the end users lack the control over the accounts that regular accountholders have, and many or most are likely never to have seen the WAA page or affirmatively interacted with it.

## II.    BACKGROUND

Dasher accounts are managed by enterprise administrators for the enterprise's end users, e.g., employees, while Unicorn accounts are meant for children under parental management. Monsees Dec. ¶¶ 5, 8. These accounts stand out because they don't offer users the standardized control over settings and activity controls available to regular Google account holders. The Dasher administrators or Unicorn parents decide whether to enable or disable the (s)WAA setting, and some may not even be linked to an email address. *Id.* ¶¶ 7, 9. Dasher and Unicorn end users do not encounter privacy settings like WAA and (s)WAA during the account creation flow; often, they are completely uninvolved in that process. *Id.*

During the course of the parties' discussions regarding which Google accounts should

---

[1] The classes, which differ only as to Android and non-Android users, are "All individuals who, during the period beginning July 1, 2016 and continuing through the present (the "Class Period"), (a) had their "Web & App Activity" and/or "supplemental Web & App Activity" setting turned off and (b) whose activity on a non-Google-branded mobile app was still transmitted to Google . . . because of the Firebase Software Development Kit ("SDK") and/or Google Mobile Ads SDK."

receive class notice, Plaintiffs asked Google to provide a list of all class members, and included in their request that Google produce a list of all Dasher and Unicorn account email addresses that otherwise fit the class definitions, so they could be served with the proposed class notice.

Google, however, argues these accounts don't fit the class definition since this lawsuit has, from the outset, focused on individuals with standard Google accounts who themselves saw Google's disclosures and affirmatively chose to turn off (s)WAA.

The parties raised this disagreement to the Court last week, Dkt. 371, and the Court ordered further briefing on the issue, Dkt. 372.

### III. ARGUMENT

#### A. Google's request is procedurally appropriate.

It is procedurally proper to seek clarification on class definitions. Courts routinely clarify ambiguities in class definitions. "[M]odification of the class definition falls squarely within the confines of Supreme Court precedent and Rule 23(c)(1)(C), which give courts broad discretion to alter or amend a class definition considering subsequent developments in a case." *Ms. L. v. U.S Immigration & Customs Enf't ("ICE")*, 330 F.R.D. 284, 292 (S.D. Cal. 2019) (citing *Armstrong v. Davis*, 275 F.3d 849, n.28 (9th Cir. 2001)); *see also Daniel F. v. Blue Shield of California*, No. C 09-2037 PJH, 2015 WL 3866212, at *3 (N.D. Cal. June 22, 2015) ("Rule 23(c)(1)(C) . . . is simply a provision authorizing the court to alter or amend an order relating to class certification at any time prior to judgment."); *Friend v. Hertz Corp.*, No. C-07-5222 MMC, 2014 WL 4415988, at *2 (N.D. Cal. Sept. 8, 2014) (same).

Contrary to Plaintiffs' assertions in last week's joint letter brief, Google's motion does not seek to improperly challenge the Court's decision on class certification; it is not a motion for decertification. Instead, it is Plaintiffs who have tried to expand their own case theory to include a broader group of users than those the Court's class certification order addressed. Google simply requests clarification to ensure that the definition of the class accurately reflects the Court's original reasoning and Order.

Seeking clarification now, just two months after the Court's class certification Order and amid efforts to develop a notice plan, is not only appropriate, but necessary, to avoid undue

confusion and harm. "An adequate class definition specifies 'a distinct group of plaintiffs whose members [can] be identified with particularity.'" *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 593 (E.D. Cal. 2008), *adhered to*, 287 F.R.D. 615 (E.D. Cal. 2012) (quoting *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). However, Plaintiffs' broad interpretation of the class definition makes it impossible to identify with particularity class members for a notice plan. Moreover, under their expansive definition, it would not be "administratively feasible for the court to determine individual class membership." *Id.* (quoting *Aiken v. Obledo*, 442 F.Supp. 628, 658 (E.D. Cal. 1977)).

Google had no reason to seek clarification on this particular issue during class certification briefing. At that stage, Plaintiffs' arguments focused on users who affirmatively opted out of (s)WAA, arguing this was a common indication of lack of consent or privacy preference. For instance, Plaintiffs contended that common issues dominated the claims of common law invasion of privacy and intrusion upon seclusion because all class members demonstrated a reasonable expectation of privacy through their "decision to turn off the setting." Class Cert. Mot., Dkt. 314-3 at 10. Similarly, in arguing predominance related to the CDAFA claim, Plaintiffs contended that Google was unauthorized to collect and use app activity because "Google also had an explicit notification that it lacked such permission by virtue of the affirmative choice to set (s)WAA to 'off.'" *Id.* at 16. These arguments surrounding Plaintiffs' interpretation of the class definitions could never apply to individuals who had *not* explicitly opted out of (s)WAA. After all, "class membership must fit the theory of liability" and a district court should thus "conform its interpretation of the class definition with the prevailing theory of liability." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138-39 (9th Cir. 2016)*, accord Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592, 618 (6th Cir. 2007) (modifying class definition to reflect plaintiff's theory of liability).

The Court's class certification Order largely embraced Plaintiffs' position and focused on the common action among class members of affirmatively opting out of (s)WAA. *See, e.g.*, Order, Dkt. 352, at 9 ("First, the relevant 'conduct' showing a lack of consent is the users' decisions affirmatively to switch off the WAA and sWAA buttons."); *id.* at 10 ("[P]utative class members here affirmatively sought out and clicked on Google's WAA and sWAA buttons, a common act

representing their privacy choices, based on Google's own ubiquitous representations."); *id.* at 11 ("Here, the relevant inquiries are primarily Google's uniform disclosures and users' uniform conduct."); *id.* at 13 ("The fact that Plaintiffs, as putative class members, affirmatively selected the WAA/sWAA-off buttons sheds light on their privacy choices as to Google's practices.").As such, Google's request for clarification on the class definition does not aim to change the class certified by the Court. Rather, it seeks to ensure the class definitions align properly with the foundation of the Court's class certification Order.[2]

### B.    Adding Dasher and Unicorn accounts undermines the Court's Rule 23 analysis.

In January, this court certified two classes, holding they met the four Rule 23(a) criteria—Numerosity, Commonality, Typicality, and Adequacy—as well as the Rule 23(b)(3) requirements of Predominance and Superiority. During its analysis, particularly as to Commonality, Typicality, and Predominance, the Court recognized that class members are linked by their conscious choice to enable or disable (s)WAA after reviewing Google's disclosures. Perplexingly, Plaintiffs now divorce themselves from this idea that was once a cornerstone of their case. Unwilling to forsake an additional segment of potential class recovery, Plaintiffs now make a last-ditch argument: simply having (s)WAA disabled on any Google account should qualify an individual for class membership, even if the user doesn't even know it's turned off, has never seen the (s)WAA page, and did not turn the setting off themselves. That view not only departs significantly from the Court's reasoning granting class certification, but it flies in the face of Rule 23's criteria.

### i.    Dasher and Unicorn accounts lack common questions of law or fact.

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Adding Dasher and Unicorn accounts to the class would disrupt the common

---

2 If the Court agrees with Plaintiffs' view that Google needs to "'make some showing of changed circumstances or law," then the circumstances have indeed changed here. Dkt. 371, at 3 (citing *Maldonado v. Apple, Inc.*, 2021 WL 1947512, at *2 (N.D. Cal. May 14, 2021)). The parties are attempting to finalize class notice, but Plaintiffs have expanded their liability theory to cover a broader range of class members. Given this change in circumstance, the issue demands the Court's attention.

questions of fact that underpinned the Court's certification Order, particularly that "class members here affirmatively sought out and clicked on Google's WAA and sWAA buttons, a common act representing their privacy choices, based on Google's own ubiquitous representations.." Order, Dkt. 352, at 10. Enterprise administrators manage Dasher accounts. Monsees Decl. ¶ 5. Administrators can control account settings and dictate the range of Google services available to an organization's users. *Id.* ¶ 6. This authority includes the power to set WAA and (s)WAA status without any input from the user. *Id.* ¶ 7. Dasher account-holders are typically not involved in the account creation process, or even aware that these decisions were made during the enterprise account setup process. *Id.* This universe markedly differs from the Court's analysis of regular Google Account "users' decisions" to "affirmatively to switch off the WAA and (s)WAA buttons." Dkt. 352, at 10. Thus, unlike the users of regular Google accounts, for Dasher users, absent an individualized inquiry of every Dasher account user, neither Google nor a jury could know which specific Dasher user actually saw the (s)WAA button and chose to turn it off. Similarly, with Unicorn accounts, parents, not the child associated with the account, hold the reins on privacy settings. Monsees Decl.¶ 9. Parents have the power to manage the account's activity controls, including (s)WAA, and they too can limit whether their children can adjust those settings. *Id.* Therefore, children with Unicorn accounts also lack the commonality of having "affirmatively" "switch[e]d off the WAA and sWAA buttons," especially since the child for whom the account is created usually has never encountered any of Google's privacy-related account settings. *Id.* ¶ 11.

### ii. Named Plaintiffs claims and defenses are not typical of Dasher or Unicorn accounts, making them inadequate representatives.

"Typicality is generally satisfied when 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 503 (E.D. Cal. 2014) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010)). The absence of any named Dasher or Unicorn plaintiffs means there's no adequate class representative available to pursue this case on behalf of users with Dasher and Unicorn accounts. Indeed, the claims and defenses presented by Mr. Rodriguez, Mr. Cataldo, Mr. Santiago, and Ms. Harvey would not be typical of claims or defenses associated with a class of Dasher or Unicorn accounts.

1    While the named Plaintiffs and (s)WAA-off users with standard Google accounts may share

2    a common set of facts, the same cannot be said for the named Plaintiffs in relation to users with

3    Dasher and Unicorn accounts. Each of these four named Plaintiffs alleges that after reading the

4    (s)WAA disclosures and interpreting them one way, they turned off (s)WAA, engaged with third-

5    party apps using Firebase and/or Google Mobile Apps SDKs, and later discovered that these SDKs

6    had received pseudonymous data associated with them. All four possess standard Google accounts,

7    with none claiming to have held a Dasher or Unicorn account. They simply haven't encountered the

8    unique privacy controls and account dynamics specific to Dasher or Unicorn account holders.

9    For instance, one key issue in the class certification briefing revolved around the fact that

10   "prior to [2016], sWAA was 'off by default' for accounts." Dkt. 352, at 17. Plaintiffs argued—and

11   the court agreed—that Google's 2016 "consent bump" prompt, urging users to enable sWAA,

12   essentially meant that "the users who did not turn sWAA on effectively refused data collection by

13   Google." *Id.* For Dasher and Unicorn accounts, there's no clear "consent bump" dividing line to

14   signal when (s)WAA was default-off versus default-on. This is because (s)WAA's state for these

15   accounts hinges on decisions made by an administrator or a parent, not by Google. Therefore,

16   without conducting individual inquiries, it's likely impossible to determine if Unicorn or Dasher

17   users, like the named plaintiffs or regular account holders, saw and understood the (s)WAA

18   description and actively sought out and disabled the (s)WAA button. Including Unicorn and Dasher

19   users in the class at this point would therefore undermine the typicality analysis of the Court's class

20   certification order. *See Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 508 (E.D. Cal. 2014)

21   (quoting *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 637 (N.D. Cal. 2010) ("The test of

22   typicality is whether other members have the same or similar injury, whether the action is based on

23   conduct which is not unique to the named plaintiffs, and whether other class members have been

24   injured by the same course of conduct."); *id.* at 641("Class adjudication is not possible where such

25   individualized determinations cannot be made through common proof.").

26   ### iii.    Common questions shared by standard accounts do not predominate.

27   Rule 23(b)(3) mandates that Plaintiffs must show classwide claims predominate over

28   individual ones. "Considering whether 'questions of law or fact common to class members

predominate' begins, of course, with the elements of the underlying cause of action." Order, Dkt. 352, at 7 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). The Court's class certification order identified a common set of facts—namely, that Google account holders actively chose to disable (s)WAA after viewing the (s)WAA disclosures—which outweighed any individualized inquiries. Dasher and Unicorn users don't share the same common set of facts as to *any* of Plaintiffs' underlying causes of action.

*First*, the privacy torts require common facts sufficient to demonstrate that class members shared a reasonable expectation of privacy. The Court's certification order determined that all class members made "decisions affirmatively to switch off the WAA and sWAA button," which "show[ed] a lack of consent." Order, Dkt. 352, at 9. This "shared, common conduct" created "an objective, reasonable expectation of privacy based on Google's representation about the sWAA button to all members under these claims." *Id.* at 10. But this conduct is neither "shared" nor "common" to Dasher or Unicorn Accounts. For these account types, the "decisions affirmatively to switch off the WAA and sWAA buttons" might not have been made by the users themselves, but instead by an enterprise administrator or a parent. It requires a separate individualized inquiry to ascertain whether any individual Dasher or Unicorn account holders even ***saw*** the (s)WAA notice, much less whether they made the "affirmative[]" choice to toggle (s)WAA off. After all, without exercising the choice to switch (s)WAA off, what other conduct could establish a reasonable expectation of privacy?

It is also highly unlikely that there is a similar reasonable expectation of privacy in work emails or other enterprise accounts. Many employees don't set privacy preferences for their work accounts themselves—those are instead handled at an organization-wide level. Additionally, it is common that workplaces have access to their employees' on-the-job computers, files, communications, web activity, and more. It is thus not reasonable for an employee using an enterprise Google Account to have the same expectation of privacy in their personal accounts.

*Second*, the privacy torts also require common facts sufficient to demonstrate that class-members experienced "highly offensive conduct." Here, the Court stated that "the relevant inquiries are primarily Google's uniform disclosures and users' uniform conduct." Order, Dkt. 352, at 9. But,

1   as described above, Dasher and Unicorn accounts did not necessarily see "uniform disclosures" and

2   did not necessarily engage in "uniform conduct." For these users, there is simply no sufficient

3   common conduct that predominates over individual inquiries for the "highly offensive" analysis.

4       *Third*, on the CDAFA claim, the Court held that Plaintiffs had pled a classwide harm that

5   predominated over individual inquiries. This was based on the fact that "Plaintiffs, as putative class

6   members, affirmatively selected the WAA/sWAA-off button[]," which "shed[] light on their privacy

7   choices as to Google's practices." Order, Dkt. 352 at 3. However, no such light has been shed on

8   the privacy choices of Dasher or Unicorn users. As noted above, there's a lack of uniformity in

9   whether these users ever encountered a (s)WAA disclosure, or whether they themselves

10  "affirmatively selected the WAA/sWAA-off button."

11      **C.    Denying this request will make notice unfeasible and confuse classmembers.**

12       "An adequate class definition" pinpoints "a distinct group of plaintiffs whose members

13  [can] be identified with particularity." *Campbell*, 253 F.R.D. at 593. This particularity is crucial:

14  without it; sending class notice is no longer "administratively feasible." *Id.* Denying Google's

15  request and folding Unicorn and Dasher accounts into the class would stretch its limits too far and

16  be unreasonably difficult to administer.

17      Starting with perhaps the most glaring administrative issue: not all Dasher and Unicorn

18  accounts have associated email addresses. Enterprise administrators can disable Gmail. Monsees

19  Decl. ¶ 6. Likewise, parents can set up Unicorn accounts for their children without creating an email

20  address and password. Monsees Decl. ¶ 10.

21      Further, including Dasher accounts in the class definition would create significant confusion.

22  For example, under Plaintiffs' proposal, many Dasher account holders would receive notices at their

23  work emails about being part of a lawsuit related to settings they might not have personally adjusted.

24  Some individuals might receive notices both at work and on their personal accounts. This approach

25  would result in millions of emails sent to notify a small group: those with a work Google account

26  who do not have a personal one, where it's unclear if they ever saw the relevant disclosures or turned

27  (s)WAA off themselves. Adding to the confusion, numerous Dasher accounts might have (s)WAA

28  disabled by their employers, while these individuals' personal accounts have (s)WAA enabled. This

discrepancy introduces complex, individualized questions about authorization, consent, privacy expectations, and potential harm related to personal app activity on personal devices. Similarly, including Unicorn accounts in the class also introduces confusion. Since the class comprises users who turned (s)WAA off, the focus shifts from Unicorn account holders to their parents. However, these parents must already have regular Google accounts to set up Unicorn accounts for their children. *See* Monsees Decl. ¶ 8.

While including Dasher and Unicorn users in the class definition would certainly lead to confusion and administrative issues, there is very little harm to the overall class from excluding them. This is because the parties agree most Dasher account holders also have personal Google accounts, through which they have encountered the (s)WAA disclosures and affirmatively chosen whether to enable or disable the setting. Similarly, Unicorn accounts, which are created by parents for their children, require the parents to have their own Google accounts. These parents, too, would have seen the (s)WAA disclosures in their Google accounts and have made a conscious decision to keep it on or off.

### D.    Dasher and Unicorn accounts were never meant to be part of the classes.

These complexities underscore that Dasher and Unicorn accounts were never intended to be included in the certified classes. Plaintiffs' arguments for class certification, and the Court's decision to grant it, centered on the collective action taken by account holders—deliberately turning (s)WAA off after encountering the (s)WAA disclosures. But (s)WAA-off Dasher and Unicorn account holders have not necessarily seen the same disclosures or made the same decisions. Bringing these accounts into the mix would require a more individualized view and conflict with the arguments underpinning the Court's certification order.

This lawsuit has stretched on for nearly four years, spanning multiple motions to dismiss, fact and discovery motions, and class certification, yet Plaintiffs never raised these distinct account types as part of their class, all while making purportedly classwide arguments in direct conflict with the nature of Dasher and Unicorn Accounts. Indeed, Google repeatedly sought clarity on Plaintiffs' position during discovery and stated its intention to exclude these account types from the class, and Plaintiffs did not object. Neither their technical expert nor their damages expert included Dasher or

Unicorn accounts in their calculations of class size or damages. Plaintiffs' technical expert Jonathan Hochman acknowledged that "[t]he numbers contained" in Google's productions of monthly (s)WAA-off figures "excluded Enterprise (Dasher) accounts, Google employee accounts (Googlers), Supervised accounts (e.g., child accounts) and deleted accounts," calculated the class size without including them, and never claimed the class should be larger to include Dasher and Unicorn accounts. Dkt. 361-58 (Hochman Rpt.) ¶ 347-348. And Plaintiffs' damages expert relied on surveys to estimate the class size, which necessarily did not include, at a minimum, Dasher accounts.

In rebutting Plaintiffs' technical expert, Google's technical expert John Black noted that "Plaintiffs' claims and Mr. Hochman's opinions are limited to end users of mobile apps" with a "standard consumer account." Mateen Decl., Ex. A, 209:8-14. Plaintiffs' submission last week misconstrued Mr. Black's deposition transcript, suggesting that Google acknowledged Dasher and Unicorn accounts as within the class's scope. In fact, the complete transcript paints a different picture. When Google's counsel asked if Plaintiffs were "trying to include children and enterprise in the class," Plaintiffs' counsel initially said "No." *Id.* 210:1-3. He then expressed uncertainty about the differences between these types of accounts and acknowledged there "may" be "a disagreement on that." *Id.* 210:17-19. Plaintiffs' counsel did not revisit whether he had investigated the differences between the Dasher and Unicorn accounts compared to standard ones, nor did Plaintiffs ever clarify if any disagreement remained following such an investigation. And although Google's counsel sarcastically remarked, "if you want to try and certify kids, I would be all for it," Plaintiffs never moved forward with any efforts to certify Dasher and Unicorn accounts. *Id.* 210:20-21. Only now, as they attempt to compile a class list, do Plaintiffs assert that Dasher and Unicorn accounts fall within the class definition. Just because Plaintiffs have moved beyond class certification does not free the class from Rule 23's requirements.

## IV.    CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court issue an order clarifying that "Dasher" and "Unicorn" account types are not encompassed within the class definition of the Court's January 3, 2024 class certification order.

1

2    Dated:  March 15, 2024                    Respectfully submitted,

3                                             WILLKIE FARR & GALLAGHER LLP

4

5                                             By:    */s/ Eduardo E. Santacana*
                                                     Benedict Y. Hur

6                                                    Simona Agnolucci
                                                     Eduardo E. Santacana

7                                                    Argemira Flórez
                                                     Harris Mateen

8

9                                                    *Attorneys for Defendant*

10                                                   *Google LLC*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28