**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
725 S. Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
Ryan Sila (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

***Attorneys for Plaintiffs***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

GOOGLE LLC,

Defendant.

Case No.: 3:20-cv-04688-RS

**PLAINTIFFS' RESPONSE TO GOOGLE'S MOTION FOR CLARIFICATION OF CLASS DEFINITION**

The Honorable Richard Seeborg
Courtroom 3 – 17th Floor

## TABLE OF CONTENTS

INTRODUCTION ........ 1

ARGUMENT ........ 2

- I. The Class Definitions Unambiguously Include Supervised and Enterprise Accounts ........ 2
- II. Including All Account Types Is Consistent with This Litigation and Common Sense ........ 3
- III. Google's Belated Class Certification Arguments Do Not Warrant Any Change ........ 5
  - A. Google's Arguments Concerning Typicality and Adequacy Are Meritless ........ 6
  - B. Google's Predominance Arguments Under CDAFA Are Meritless ........ 6
  - C. Google's Predominance Arguments Concerning Privacy Torts Are Meritless ........ 7
  - D. Class Treatment Is Superior ........ 8
- IV. There Are No Notification Issues Warranting Any Change to The Classes ........ 9
- V. Granting Google's Motion Would Lead to Inefficient, Prejudicial Outcomes ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

## Cases

*Am. Pipe & Const. Co. v. Utah*,
414 U.S. 538 (1974) .......... 10

*Ambrosio v. Cogent Commc'ns, Inc.*,
2016 WL 777775 (N.D. Cal. Feb. 29, 2016) .......... 6

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) .......... 9

*Brown v. Google LLC*,
2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) .......... 8

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .......... 3

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .......... 6

*Jones v. Shalala*,
64 F.3d 510 (9th Cir. 1995) .......... 3

*Montera v. Premier Nutrition Corp.*,
621 F. Supp. 3d 1012 (N.D. Cal. 2022) .......... 2

*Muniz v. RXO Last Mile, Inc.*,
2023 WL 3868391 (D. Mass. June 7, 2023) .......... 2

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
287 F.R.D. 590 (C.D. Cal. 2012) .......... 10

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) .......... 6

*Spano v. Boeing*,
Corp., 633 F.3d 574 (7th Cir. 2011) .......... 3

*Valdivia v. Schwarzenegger*,
2007 WL 3096168 (E.D. Cal. Oct. 22, 2007) .......... 2

## Statutes

Cal. Penal Code § 502(c)(2) .......... 7

Cal. Penal Code § 502(e)(1) .......... 7

**Rules**

Fed. R. Civ. P. 23(b)(2)(B)(ii) .......... 3

**Other Authorities**

Newberg on Class Actions § 7.40 (6th ed. 2023) .......... 10

**INTRODUCTION**

Since the beginning, Plaintiffs have alleged and sought to prove that Google acted contrary to its representations by collecting and saving (s)WAA-off data for all individuals who had (s)WAA off, regardless of the account type. That is why Plaintiffs sought certification for classes including "all individuals" who had (s)WAA turned off, without any account exclusions. Plaintiffs' approach has been well known to Google throughout discovery, and Google did not challenge this class definition while class certification was being briefed, argued, or decided.

Google now seeks to change and limit the Court's certification order to exclude individuals with "supervised" accounts (for minors set up by parents, also referred to as "Unicorn" accounts) and "enterprise" accounts (for users set up by employers, also referred to as "Dasher" accounts). Google's argument boils down to this: because (s)WAA may be turned off not only by end users but also parents (supervised accounts) and administrators (enterprise accounts), they cannot be part of the classes. This needlessly complicates things. "Off" should mean "off"—especially because Google uniformly treated "on" as granting permission, however obtained. Google likewise uniformly ignored the "off" selection for all account types, "supervised" or otherwise.

No change (or "clarification") is needed, and these accounts should remain within the certified classes. In Google's own words, this case turns on the answers to two "central questions": (1) "what Google represented to users" and (2) "the actual technical functioning of the accused technology," meaning the Firebase and GMA SDKs. Dkt. 315 at 9. The answers are the same for all account types, including supervised and enterprise accounts. For all accountholders, (1) Google represents that (s)WAA "must be on" for Google to save app activity data; but (2) notwithstanding that selection, Google collects, saves, and uses (s)WAA-off app activity data for its own benefit.

The proper scope of the class definitions is, of course, a decision for the Court. While Plaintiffs believe these issues were fairly set out in their class certification briefing, discovery responses, expert reports, and other relevant materials, Plaintiffs recognize these specific accountholders were not explicitly addressed in the prior order. Plaintiffs respectfully request an order confirming that its certification order always included (as Plaintiffs proposed) all individuals that had (s)WAA turned off regardless of account type.

## ARGUMENT

### I. The Class Definitions Unambiguously Include Supervised and Enterprise Accounts

Google presents its motion as a request for "clarification." Dkt. 375.[1] Here, Plaintiffs proposed, and the Court adopted, the following Class definitions:

> **All individuals** who, during the period beginning July 1, 2016 and continuing through the present (the "Class Period"), (a) **had their "Web & App Activity" and/or "supplemental Web & App Activity" setting turned off** and (b) whose activity on a non-Google-branded mobile app was still transmitted to Google, from (c) a mobile device running the Android operating system, because of the Firebase Software Development Kit ("SDK") and/or Google Mobile Ads SDK.

Dkt. 314-3 at 1 (emphasis added).[2] Unless explicitly excluded, "all individuals" means "all individuals." Plaintiffs proposed seven specific exclusions, including counsel and Google employees. *See* Dkt. 315-84 (Proposed Order) at 6–7. There was no exclusion or proposed limitation for account types. *Id.* Google did not raise any arguments regarding account types in its briefing or at oral argument, and the Court's order adopted these definitions. Dkt. 352.

While the Court of course retains authority to revisit prior orders and certification, the definition here is clear. *Valdivia v. Schwarzenegger*, 2007 WL 3096168, at *1 (E.D. Cal. Oct. 22, 2007) ("When interpreting the parameters of a class, a district court should be guided by the plain language of the class definition."). Plaintiffs are especially concerned that Google's motion to "clarify" the order would now exclude individuals who reasonably understood that this case included all account types. That is in part why Plaintiffs seek additional relief (below) if the Court is inclined to accept any of Google's arguments and now narrow the classes in any way. Google proposed to resolve this dispute by a stipulation. Mao Decl. ¶ 12. Plaintiffs declined, as they believe they have obligations to all Class Members, regardless of their account types. *Id.* ¶ 13.

---

[1] A motion for modification of the class definitions requires more. *Montera v. Premier Nutrition Corp.*, 621 F. Supp. 3d 1012, 1023 (N.D. Cal. 2022) (Seeborg, J.) (courts require "some change in the law or facts" before entertaining new class certification arguments); *see Muniz v. RXO Last Mile, Inc.*, 2023 WL 3868391, at *3 (D. Mass. June 7, 2023) (rejecting defendant's unnatural "interpretation" of a phrase in the class definition in part because the defendant "had an opportunity to object to the language in its opposition to the motion for class certification . . . and failed to do so"). Google's suggestion that Plaintiffs themselves changed the circumstances by hewing to the unambiguous text of the Class definitions—rebuts itself. Dkt. 375 at 4 n.2.

[2] This definition is for Class 1, which includes Android users. The definition for Class 2 is identical but instead includes users of a "non-Android operating system." Dkt. 314-3 at 1.

Plaintiffs welcome a ruling from the Court on this dispute, so the parties can then move forward with notice and summary judgment (where Google may raise any issues specific to any account types). An order from the Court is especially important given that members of the public rely on class definitions to determine whether they are in the certified classes and, if so, whether to opt out or intervene. *See* Fed. R. Civ. P. 23(b)(2)(B)(ii); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974) (explaining purposes of notice). Other courts rely on class definitions to determine the preclusive effect of any judgment. *See Jones v. Shalala*, 64 F.3d 510, 513–14 (9th Cir. 1995) (determining whether a class judgment resolved certain individuals' claims); *see also Spano v. Boeing Corp.*, 633 F.3d 574, 584 (7th Cir. 2011) (the class definition is a "vital step" that determines "the scope of the litigation and the ultimate *res judicata* effect of the final judgment"). Google's independent interpretation regarding who *should* be in the Classes should not prevail over the unambiguous definitions of who *is* in the Classes. Google's request should thus be denied.

**II. Including All Account Types Is Consistent with This Litigation and Common Sense**

The real focus of Google's motion seems to be whether these two account types *should* be included within the Classes. They should. It would not make sense to litigate these Class Members' claims in separate proceedings. Google offers (s)WAA settings to both supervised and enterprise accountholders. That is the toggle that Google employees refer to as a "consent" signal, meaning with permission. Ex. 1 (Supp. Resp. to Rog. 1) at 9. In all cases where the user has the (s)WAA-button on, whether by default or through an administrator or parent, Google has treated that "on" signal as permission for Google to collect data. That is why Plaintiffs brought this case: because "off" is supposed to mean "off," and Google is acting without permission and contrary to its representations by collecting, saving, and using this data when (s)WAA is turned off, regardless of the account type.

The core facts are the same across all of these account types. Google's representations about (s)WAA are public, consistent, and unaffected by account type. *See, e.g.*, Dkt. 315-17 (Class Cert. Ex. 3) (representing that (s)WAA "must be on" "[t]o let Google save" app activity, without regard to account type). And regardless of account type, Google collects, saves, and uses (s)WAA-off app activity data for its own benefit. *See, e.g.*, Ex. 1 (Supp. Resp. to Rog. 1) at 3–31 (describing

Google's practice of collecting and saving app activity data, without reference to account type); Ex. 2 (Supp. Resp. to Rog. 15) at 8–10 (describing Google's practice of "conversion tracking and ad targeting," again without reference to account type).

It is hard to credit Google's claimed confusion as to Plaintiffs' intention to certify classes that include these users. Plaintiffs in discovery sought information about all accountholders and types, including the two at issue here. *See, e.g.*, Ex. 3 (Interrog. 18) at 3, 5 (demanding an explanation of whether and how a "User," defined as "a human being residing in the [U.S.] with at least one Google account" can "prevent Google from receiving and/or saving WAA-Off Data"). Plaintiffs asked about supervised and enterprise accounts during depositions. *See, e.g.*, Ex. 4 (Ruemmler Tr.) at 171:24–172:6 (defining an "enterprise user"); *id.* at 173:21–22 ("I don't believe the admin can force WAA on users that want it off."); Ex. 5–6 (Fair Tr. & Ex.) at 172:8–173:19 (supervised account disclosures are identical but replace references to "your" data with references to "your child's" data). When Plaintiffs sought "the number of unique Google Accounts for which the user disabled [(s)WAA] at least once during the class period," Ex. 7 (RFP 256), Google produced statistics for "US Consumer **+ Enterprise**" accounts," Ex. 8 at 3–4 (emphasis added).

The course of discovery naturally affected Plaintiffs' experts' opinions and reports. Plaintiffs' damages expert, for example, selected certain inputs that relate to *all* users—including the Google-produced statistic about (s)WAA-off that included "[e]nterprise accounts." Dkt. 314-7 (Lasinski Rep.) ¶¶ 48, 155 & figs. 7, 48. Plaintiffs' damages expert also expressly included children under 13 (*i.e.*, supervised accountholders) in his calculations. *Id.* ¶¶ 155, 159 & figs.48–50 (estimating number of Class Members "Age[d] 10-17," number of devices they own, and total damages). Google never challenged any of these calculations on the basis that any account types should be excluded. *See generally* Dkt. 330 (*Daubert* Mot.).

Plaintiffs' technical expert, Jonathan Hochman, also discussed supervised and enterprise accounts. He stated his "understand[ing] that this case pertains to Google account holders in the United States" and described "several types of user accounts" for which someone can sign up, Dkt. 314-5 (Hochman Rep.) ¶¶ 37, 39, including "enterprise user accounts" and "child accounts." *Id.* ¶ 39. Inexplicably, Google's rebuttal expert John Black came to "understand from Mr. Hochman's

report that he limits his technical opinions" to exclude such accounts. Ex. 10 (Black Rep.) ¶ 66. Mr. Black's only citation is to the above-quoted paragraph, where Mr. Hochman *expressly discussed* supervised and enterprise accounts. *Id.* ¶ 66 n.76 (citing Hochman Rep. ¶ 39).[3] In any event, Mr. Black is a Google expert, and it makes no sense for Google to rely on their own expert to justify their belief about the scope of *Plaintiffs*' claims.

Google's counsel was also on notice. When Plaintiffs asked Mr. Black for the basis of this purported "understand[ing]" during his deposition, Google's counsel interrupted and asked Plaintiffs' counsel "if you disagree" that supervised and enterprise accounts are excluded. Plaintiffs' counsel responded, "I don't recall agreeing to that . . . I don't know why they would be different." Dkt. 375-2 (Black Tr.) at 209:8–210:19. At that moment, the two attorneys even previewed their respective positions on certification. *Id.* at 210:21–23 (Google: "Kids have parents. Workers have bosses." Plaintiffs: "Yeah, but off is off."). When Plaintiffs eventually sought to certify "all" individuals except those explicitly excluded, Google should have known they meant what they said. Yet Google said nothing until it was faced with noticing holders of these accounts.

## III. Google's Belated Class Certification Arguments Do Not Warrant Any Change

The core of Google's argument is that supervised and enterprise accounts are somehow distinct because other people can turn off WAA (parents for supervised accounts, and admins for enterprise accounts). But does it make any difference that a parent turned (s)WAA off instead of the child? Does that provide any basis to exclude children from this important privacy case? For enterprise accounts, Google has not offered any information about the number of accounts where (s)WAA was turned off by the admin instead of the end user, *see* Dkt. 375-1, but it beggars belief that such data would be inaccessible to Google given its technological abilities and preservation obligations. Plaintiffs agree with Google that turning off (s)WAA is a meaningful choice. *See* Google Mot. at 1. But supervised and enterprise accountholders should not be excluded just because, for some, a parent or admin may have turned (s)WAA off on their behalf. Collection

---

[3] Google's counsel cites paragraphs 347 and 348 of Mr. Hochman's report, in which he refers to a document *Google* created. *See* Google Mot. 10; Dkt. 314-5 (Hochman Rep.) ¶¶ 347–48. Mr. Hochman's reference to this document does not prove Mr. Hochman excluded these account types.

when (s)WAA is off is still "without permission." *See infra*. Any distinction between account types is overshadowed by the common, "central questions" in this case: "[W]hat Google represented to users and the actual technical functioning of the accused technology." Dkt. 361-19 at 4.[4]

**A. Google's Arguments Concerning Typicality and Adequacy Are Meritless**

"[T]he claims of the class representatives are typical . . . when each class member's claim arises from the same course of events, and each class member makes similar legal arguments . . ." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (marks omitted). Claims need only be "reasonably co-extensive" and "need not be substantially identical" to those of absent partners. *Id.*; *see also Ambrosio v. Cogent Commc'ns, Inc.*, 2016 WL 777775, at *4 (N.D. Cal. Feb. 29, 2016) (Seeborg, J.) (typicality and adequacy "do not pose a particularly high bar to class certification").

Here, the Named Plaintiffs satisfy that "permissive" standard, including with respect to supervised and enterprise accounts. *Rodriguez*, 591 F.3d at 1124. Google publicly represented that (s)WAA controls its collection of app activity data. Dkt. 315-17 (Class Cert. Ex. 3). All Class Members—including the Named Plaintiffs and supervised and enterprise accountholders—had (s)WAA off, but Google nonetheless collected, saved, and exploited their activity data. That is more than enough. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 n.9 (9th Cir. 2011) (finding typicality was satisfied notwithstanding "[u]nique defenses" because all challenged a single course of conduct). Even if the Court accepts Google's logic (it shouldn't), the Court can certify subclasses and grant leave to identify and add subclass representatives. There is no basis to otherwise carve out these accounts.

**B. Google's Predominance Arguments Under CDAFA Are Meritless**

The CDAFA requires Plaintiffs to prove that Google [1] "[k]nowingly accesse[d] and [2]

---

[4] In other litigation, Google has not sought to exclude these accounts. For example, in a case about Google's Location History setting, Google settled a class including (without regard to account type): "All natural persons residing in the United States who used one or more mobile devices and whose Location Information was stored by Google while 'Location History' was disabled . . ." *In re Google Location History Litig.*, No. 18-5062 (N.D. Cal.), Dkt. 327 at 6; *see also In re Google Referrer Header Litig.*, No. 10-4809 (N.D. Cal.), Dkt. 179 at 2 (preliminarily approving settlement class comprising "[a]ll persons in the United States" who had used Google Search). Plaintiffs are unaware of any case in which Google has sought to exclude these account types.

without permission [3] t[ook], copie[d], or ma[de] use of any data from a computer," and that [4] Plaintiffs suffered "damage or loss." Cal. Penal Code § 502(c)(2), (e)(1). Google's motion ignores elements 1 and 3, and its arguments for the remaining elements are wrong.

Google alludes to the "permission" element but does not meaningfully grapple with it. In fact, the word "permission" appears only one time in its brief, and it is a quote to *Plaintiffs'* prior briefing. Google Mot. at 3. As Plaintiffs explained at certification, "any 'permission' must be communicated to Google by words or conduct, after adequate disclosures describing Google's practices." Class Cert. Mot. at 6. All Class Members, with all account types, conveyed the same words and conduct to Google: (s)WAA was turned off. Regardless of who turned off (s)WAA, Google lacked "permission" to collect, save, and use app activity data. Cal. Penal Code § 502(c)(2). "Off" should mean "off." A parent's decision to turn "off" (s)WAA conveys that Google lacks permission to collect the child's data, just as it does for employers and employees. This is especially true given that Google treats (s)WAA "on" whenever it is set as "with permission." Google's counterargument has been that Plaintiffs are misinterpreting its (s)WAA disclosures, but that Google argument is of course common to the entire class.

Google asserts that issues of "harm" are individualized for supervised and enterprise accounts, *see* Google Mot. at 8, but "harm" is not an element under the CDAFA. *See* Cal. Penal Code § 502(e)(1). Under CDAFA, the plaintiff must show "damage or loss." *Id.* As the Court recognized, Plaintiffs will prove "damage or loss" using at least one of three methods, none of which differ by account types: (1) Google was unjustly enriched by its use of (s)WAA-off app activity data; (2) Google failed to pay all Class Members for their such data; and (3) Google's collection of such data drained device battery life and caused devices to run more slowly. *See* Cert. Order at 12 n.3, Class Cert. Mot. at 17. This will be established with common evidence.

**C. Google's Predominance Arguments Concerning Privacy Torts Are Meritless**

For invasion of privacy or intrusion upon seclusion, the plaintiff must prove that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." Cert. Order at 8. Common issues predominate here too, for all accounts, supervised, enterprise, or otherwise.

As the Court ruled before, "the question of whether a reasonable expectation of privacy

exists is an objective one." Cert. Order at 8. Plaintiffs will prove that Google's uniform, public representations about (s)WAA created an objectively reasonable expectation of privacy for all types of accounts—as Google's own employees recognized. *See* Class Cert. Mot. at 11–12. Google fails to explain why a user would be entitled to less privacy just because a parent or administrator turned (s)WAA off.[5] Even if employees have a diminished expectation of privacy *from their employer* in *emails*, as Google claims, this case concerns the reasonable expectation of privacy *from Google* in their *app activity*. *See Brown v. Google LLC*, 2023 WL 5029899, at *16 (N.D. Cal. Aug. 7, 2023) (rejecting Google's argument that users' knowledge that their activity might be visible to their "employer or school" destroyed their "expectation of privacy against Google").

The test for determining the offensiveness of the defendant's conduct is also "an objective one, capable of class-wide resolution." Cert. Order 11. It rests on the same evidence class-wide; not to mention, many of the documents that Plaintiffs submitted with their certification motion expressly discussed enterprise and supervised accounts. *E.g.*, Dkt. 361-9. Plaintiffs' class certification motion detailed the offensiveness of Google's conduct (Class Cert. Mot. at 13–15), and there is nothing unique about these account types that raises any obstacles for class treatment.

### D. Class Treatment Is Superior

While Google mentions superiority, it never engages with that issue. Here, it is clearly superior to have all of these account types included in the same class action, especially where Google has a well-maintained record of which Google Accounts had (s)WAA off and on, and exactly when. *See supra*, at fn. 5. The parties already conducted fact and expert discovery focused on these issues. That discovery reveals that the same disputed representations and practices impact all of these account types. It makes no sense to now carve out one or both of these account types,

---

[5] Perhaps even more importantly, Google slyly avoids discussing how employees can turn (s)WAA off after the employer's "account creation," even if the employer had (s)WAA turned on. *See* Monsees Decl., Dkt. 375-1 ¶ 7 (conspicuously limiting discussion to the time of "account creation"). And Google "maintains" a record of when all users turned (s)WAA on, which counsel confirmed during discovery. Dkt. 361-37 (Class Cert., Ex. 66) (Google admitting in response to an RFA (Plaintiff's RFA No. 36) that "since the start of the Class period, Google has maintained at least one dashboard, log, or table that reliably tracks WAA and sWAA 'on-and-off events for all Google Account IDs on an individual level."). At minimum, it appears even Google would agree that such an action by the employee makes data collection by Google "without permission."

and force those to be litigated in one or more other actions. The core of this case is common, and class treatment here is superior.

**IV.    There Are No Notification Issues Warranting Any Change to The Classes**

Google's claim that including these accounts will "cause significant confusion" with the notice program (Google Mot. at 8) is meritless. It is not confusing to receive notice of rights at the email address associated with each account giving rise to those rights. If anything, *excluding* supervised and enterprise accountholders may cause confusion.

After receiving notice (by publication or at their personal email), individuals who also have (s)WAA off on a supervised or enterprise account might believe this lawsuit is intended to vindicate all of their rights. If the Court denies Google's motion, then notice can proceed as proposed. The agreed-upon notice documents will adequately notify supervised and enterprise Class Members. The Class Administrator will send direct notice to email addresses associated with all (s)WAA-off accounts. Google did not disclose the number of supervised and enterprise accounts that lack associated email addresses, but it also does not matter. The Class Administrator will also undertake publication notice to reach Class Members who do not receive email notice for some reason. *See* Dkt. 370 at 2–5. In such situations, "notice by publication is sufficient to satisfy due process." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017).

**V.    Granting Google's Motion Would Lead to Inefficient, Prejudicial Outcomes**

Granting Google's motion would also not be in the interest of judicial efficiency.

First, granting Google's motion would likely lead to the inefficient result of having separate actions (whether as a class or individually) for supervised and/or enterprise accounts, even though many of those same people also would be included in this action based on their consumer accounts. This would inefficiently splinter this matter into several, related lawsuits, even where there is a substantial overlap in Google's conduct and the composition of the classes.[6]

---

[6] Again, Google does not dispute in its Motion that at least some of the (s)WAA-off enterprise accountholders turned the button off, even if their administrator turned it on. Since the (s)WAA-off population is always a significant portion of all Google Account users, a large number of (s)WAA-off enterprise users would presumably seek separate relief under Google's proposal.

Second, if the Court is inclined to exclude any accounts or individuals, as proposed by Google, then Plaintiffs would ask that the Court order that these individuals' claims have been tolled under *American Pipe*. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("the commencement of a class action suspends the applicable statute of limitations as to *all asserted members of the class* who would have been parties had the suit been permitted to continue as a class action") (emphasis added). Such an order is appropriate to ensure that Google's belated motion does not unfairly prejudice anyone or create a windfall for Google.

Third, even if the Court determines that some or all supervised and/or enterprise accounts should be excluded, those users should still be given direct notice. Rule 23(d)(1)(B)(i) authorizes courts to provide notice of a change in status to absent members. *See* Newberg on Class Actions § 7.40 (6th ed. 2023); *see, e.g.*, *Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 597 (C.D. Cal. 2012) (ordering notice to excluded members following a modification to a class certification order). Such notice would be warranted here.

Fourth, to the extent the Court is inclined to credit Google's predominance arguments, Plaintiffs seek permission to at least proceed on a Rule 23(b)(2) basis for any excluded individuals or accounts. This would enable the Court to grant any injunctive relief regardless of account type. As a practical matter, it seems any injunctive relief granted by the Court regarding Google's (s)WAA representations and practices would and should impact all accounts equally. While maintaining (b)(2) certification, the Court could also clarify that such certification tolls any damages claims, which would also promote efficiency and avoid undue prejudice.

**CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Court deny Google's Motion, confirming that supervised and enterprise accounts remain within the Class definitions. If the Court grants Google's Motion as to any individuals or accounts, Plaintiffs respectfully request modest relief: (1) order that the claims of anyone excluded from the classes have been tolled under *American Pipe*; (2) directing individual email notice to any excluded account holders to inform them of the change of their status; and (3) directing the parties to meet and confer regarding any additional discovery.

Dated: March 22, 2024

Respectfully submitted,

By: */s/ Mark Mao*

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (admitted *pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

James Lee (admitted *pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (admitted *pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Alison L. Anderson, CA Bar No. 275334
alanderson@bsfllp.com
M. Logan Wright, CA Bar No. 349004
mwright@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S. Figueroa Street, 31st Floor
Los Angeles, CA 90017
Telephone: (813) 482-4814

Bill Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley

afrawley@susmangodfrey.com
Ryan Sila
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*