# EXHIBIT 9

*Highly Confidential – Attorneys' Eyes Only*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all other similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | No. 3:20-cv-04688-RS |

**REBUTTAL EXPERT REPORT OF JOHN R. BLACK, PH.D.**

**May 31, 2023**

as the equivalent, but for sWAA toggled to off.[75] This is a confusing way to define these terms because it is not limited to the products at issue — the GA4F SDK, the GMA SDK (encompassing AdMob and AdManager), and Firebase Cloud Messaging. It is also not narrowed to include only data sent to Google along with sufficient information for Google to determine the user's identity for purposes of checking the user's privacy control settings. Mr. Hochman repeatedly concedes that Google cannot honor a privacy control for an account it can't identify. For this reason, where in his definition he mentions the user being "signed into a Google account," I will interpret that to be a shorthand for situations where Google can identify the user on Android or iOS sufficiently to determine the user's sWAA setting status. Finally, his definition implies that *all* data generated by virtue of the user's use of the app constitutes at-issue data, but it does not. The WAA control applies only to "web & app activity data," and so only app activity data should be included in the data subject to the use of a term like "WAA-off data."

65. With those caveats and narrowings, I will refer to the at-issue data as sWAA-off analytics, sWAA-off GMA, and sWAA-off FCM data, collectively: sWAA-off data. I will explain further below which data constitute, in my opinion, activity data, and which cannot, as a technical matter, be considered activity data. For the most part, once the technical details have been taken into account, it is fair to say Mr. Hochman and I generally agree on the scope of at-issue data.

66. I understand from Mr. Hochman's report that he limits his technical opinions in this case to U.S. Google account-holders who were neither "unicorns" (under 13 years of age) nor whose accounts were enterprise or government accounts ("dasher," etc.), *i.e.*, Plaintiffs' claims and Mr. Hochman's opinions are limited to end users of mobile apps on Android or iOS

---

[75] Hochman Report, ¶ 83.

with Google accounts who were not under thirteen years of age and whose accounts were set up by that user as a standard consumer account, which Mr. Hochman also refers to as "consumer accounts."[76]

### a. Google Analytics for Firebase

67. Mr. Hochman opines that "WAA and sWAA settings have no impact on the types of data collected by Google app analytics products."[77] As to GA4F and the analytics products incorporated into the GMA SDK, Mr. Hochman is partially correct. Throughout his report, Mr. Hochman mixes the concepts of collection, saving, and using. For example, in the next sentence, he discusses collection and saving in the same sentence. This conflation makes it difficult as a technical matter to opine accurately about Google's technology. In this report, I will carefully separate those concepts.

68. The types of app activity data sent to Google by apps that use GA4F and the GMA SDK are the same regardless of the user's account-level sWAA setting: they are the app activity data the app developer has requested Google collect for their analysis of their own apps and the way users use them. The infrastructure supporting the collection of data in GA4F and GMA SDK are the same.[78] As a result, in this report, whenever I refer to GA4F analytics functionality, that applies equally to the analytics functionality incorporated into the GMA SDK.

69. How the data sets are saved and used by Google differ depending on the user's sWAA setting. The app activity data sent to Google by GA4F is described in Google's interrogatory responses and in Mr. Hochman's report. It is also publicly documented by Google in its Firebase help center pages. At a high level, as Mr. Hochman describes, GA4F logs events

---

[76] *See e.g.*, Hochman Report, ¶ 39
[77] Hochman Report, ¶ 87.
[78] Google LLC's Fourth Supplemental Responses and Objections to Plaintiffs' Interrogatories Set One, Interrogatory No. 3, at 46.

reliably shows account holders' (s)WAA status. However, as I explained above, his method of identifying sWAA-off data and associating that with specific users is unreliable.

237. Mr. Hochman has no factual basis for his opinion that Google can delete any products, services, or algorithms that it built with (s)WAA-off data. Setting aside his vague and problematic definition of sWAA-off data, and what would be encompassed in Google's "purge," his ideas on how Google can purge its systems of (s)WAA-off data are disconnected from the reality of how Google works and what users expect from these settings. Furthermore, Hochman recommends that Google purge all data without regard to the status of other settings and consents by both end users and Firebase customers, that may affect how this data can be used. His recommendation assumes things about Google's infrastructure that are beyond the scope of this case and what Mr. Hochman and I were asked to opine on.

238. Mr. Hochman is attempting to recreate how the (s)WAA controls function, not match their function to their disclosures. If Google were to accept Hochman's practices, it would no longer do the work Google says they do.

_____
John Black
May 31, 2023