# EXHIBIT B

**ATTORNEYS' EYES ONLY**

**WILLKIE FARR & GALLAGHER** LLP

One Front Street
San Francisco, CA 94111
Tel: 415 858 7400
Fax: 415 858 7599

June 9, 2021

**VIA EMAIL (brichardson@bsfllp.com)**

Beko Reblitz-Richardson
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104

Re:   *Anibal Rodriguez, et al. v. Google LLC*, Case No. 3:20-CV-04688
      **Plaintiffs' Second and Third Set of Requests for Production of Documents**

Counsel,

I write in response to your April 22, 2021 letter and the parties meet-and-confer discussions concerning Plaintiffs' Second and Third Sets of Requests for Production of Documents. This letter memorializes the parties meet-and-confer discussions held on May 5, 7, and 10, and serves to distill Google's proposals to resolve the outstanding disputes.

As a preliminary matter, Google expects to substantially complete production of custodial documents Google has thus far agreed to produce within 30 days of this letter. Agreements to further custodial productions, including those offered in this letter, will be subject to separate timetables to be discussed and agreed upon by the parties once the parties reach agreement on these RFPs.

For the avoidance of doubt, as we discussed during our meet and confer, all of Google's offers to produce custodial documents contained herein apply only to the three already agreed-upon custodians, Messrs. Ma, Monsees, and Ganem.  You agreed that Plaintiffs would not use Google's agreement to produce documents in response to any of these RFPs as a means to seek documents from additional custodians other than Messrs. Ma, Monsees, and Ganem.  Further, Google does not waive the right to object to the scope of production of responsive documents for future custodians, if any, and the search terms to be used for those custodians.

**RFP No. 4.** For non-custodial documents, Google has already agreed to produce documents sufficient to show the purpose of WAA and Google's disclosure about WAA to the public, as well as documents sufficient to show the function of WAA. Google will also conduct a reasonably diligent search for non-custodial documents responsive to RFP 4 "from any internal wiki or dashboard focusing on WAA," as requested in your April 22 letter. We understand this agreement to resolve the parties' dispute on RFP 4 as related to non-custodial documents.

Page 2

As for custodial documents, Google has already agreed to produce all documents in the possession of Frances Ma and Steve Ganem concerning the purpose and function of WAA as it relates to Firebase. Because David Monsees is a product manager for WAA, documents in his possession relating to WAA would encompass a large proportion of his documents yet would yield comparatively little relevant evidence. Nonetheless, in the interest of compromise, Google has agreed to use narrowed search terms for Mr. Monsees' custodial documents. Among other terms, Google will use search terms that encompass the various permutations of WAA proposed by Plaintiffs, as well as other targeted terms that reflect Google's agreements to produce documents thus far and those proposed in this letter. That should resolve the parties' dispute on custodial documents. Google is open to discussing search terms in more detail on the parties' upcoming meet-and-confer call on June 11.

**RFP No. 5.** For non-custodial documents, Google has already agreed to produce documents sufficient to identify its public disclosures during the relevant time period (i) to users about WAA and (ii) identifying the types of activity Google saves to a User's Account when Web & App Activity is turned on versus turned off. Google will also conduct a reasonably diligent search for non-custodial documents responsive to RFP 5 "from any internal wiki or dashboard focusing on Web & App Activity" and "disclosures and statements to app developers regarding Web & App Activity," as requested in your April 22 letter. Google will not commit to searching all internal wikis or dashboards focusing on Firebase SDK for documents responsive to RFP 5.

Google is willing to produce custodial documents in Messrs. Ma's, Monsees', and Ganem's possession subject to appropriately tailored search terms.

**RFP No. 6.** This request seeks "[d]ocuments concerning any Google disclosures and statements regarding Google's receipt of data while users have Web & App Activity turned off." Google has already agreed to produce documents responsive to RFP 6 as related to the types of data Plaintiffs alleged Google is surreptitiously collecting in their operative complaint. The parties have been variously calling this "user-interaction data" and "app-usage data." Internally at Google, this is sometimes referred to by the GA for Firebase team as "measurement data" or "event data." However it is called, the target here is the automatically collected events and parameters outlined in paragraphs 38-58 of the First Amended Complaint, which are data types Google receives through GA for Firebase as publicly documented.

As we discussed during our latest meet and confer, Plaintiffs agreed to propose a list of other types of data they believe should be encompassed here. We have not received that list; please send it as soon as possible. As far as we can tell, no other type of data is encompassed by Plaintiffs' claims (such as the types outlined in my April 12 letter like crash reporting data or data collected and consented to by other controls, like YouTube History and Gmail activity). Barring more information from Plaintiffs, Google will contain its search for responsive documents to documents relating to the above-identified types of data Google receives through GA for Firebase.

**RFP No. 8.** Your letter asks whether Google will produce "[d]ocuments sufficient to show all the ways in which Google collects data while users have Web & App Activity turned off." This is overbroad and untethered to Plaintiffs' allegations, including because, as written, it can be read to include all data

Google collects or receives on any given day. Google has and will continue to search for and produce documents sufficient to show the ways in which Google receives data about users through GA for Firebase while users have WAA turned off. In light of the Court's Order on Google's Motion to Dismiss, Google stands on its remaining objections.

**RFP No. 9.** As we have discussed several times, it is impractical, unduly burdensome, and prohibitively costly for Google to produce "[d]ocuments sufficient to identify all data Google collects while users have Web & App Activity turned off," in addition to potentially impacting the agreements Google has with app developers and the potential for violating users' privacy. The complete set of raw data sent to Google via GA for Firebase is not necessary to litigate this case.

Nonetheless, we reiterate that Google is willing to produce documents sufficient to identify at least some of the data sent to Google via GA for Firebase from the named Plaintiffs' devices. To do so, Google needs app-instance IDs for the apps for which Plaintiffs want such data from Plaintiffs' specific devices. As I explained in my March 11, 2021 email, Google is not able to target a query for data collected from a specific individual who has WAA off without those app instance IDs because, contrary to Plaintiffs' claims, Google doesn't connect such data to a user's profile, and therefore cannot individually identify the user without the user's cooperation and consent.

During our May 5 discussion, you asked for additional information on how the Plaintiffs can identify app instance IDs, which we provided on May 7. We understand Plaintiffs will provide app-instance IDs soon. We haven't received any such app instance IDs as of today.

**RFP No. 10.** This request seeks "[d]ocuments sufficient to show all the ways in which Google uses data collected while users have Web & App Activity turned off."  As we discussed, this request flows from RFP Nos. 8-9 and will be informed by the documents Google produces in response to those requests. Google proposes deferring discussion on this request until Google has produced such documents and Plaintiffs have reviewed those documents. I also note that this request is facially overbroad, as confirmed by the Court's Order on Google's motion to dismiss, which dismissed aspects of Plaintiffs' claims untethered to GA for Firebase.

**RFP No. 11.** The parties are discussing this request under separate cover.

**RFP Nos. 12–13.** The parties agreed to defer discussion of these requests.

**RFP No. 14.** As we discussed, Google is willing to produce non-privileged board presentations and minutes related to Web & App Activity or GA for Firebase that are identified based on a reasonably diligent search. To the extent any documents are produced, the parties have agreed that Google will redact non-responsive material. For the avoidance of doubt, Google has searched for board presentations and minutes from meetings of its Board of Directors and Audit and Compliance Committee from 2010 to the present. To conduct its search, Google utilized the following search terms:  "Firebase," "My Account," "WAA," or  "Web & App Activity."

43580420.1ATTORNEYS' EYES ONLY

Page 4

**RFP No. 15.** Google is willing to produce custodial documents in Messrs. Ma, Monsees, and Ganem's possession subject to appropriately tailored search terms. You clarified that Plaintiffs do not seek documents concerning minor changes or bug fixes.

**RFP No. 16.** This request seeks "[d]ocuments concerning each change Google has made, is making, has considered, or is considering with respect to its privacy and data-collection disclosures and practices in connection with, separately, Firebase and Web & App Activity, and Google's reason(s) for each change." You clarified that Plaintiffs do not seek documents concerning minor changes Google has made to its data-collection practices, such as bug fixes. Google is willing to produce custodial documents in Messrs. Ma's, Monsees', and Ganem's possession subject to appropriately tailored search terms.

**RFP No. 17.** This request seeks "[d]ocuments discussing, analyzing, or evaluating any of the rights and claims asserted in this lawsuit." As my April 12 letter explained, Google conducted a reasonable search for and has not identified any non-privileged documents responsive to this request. You asked Google to propose an agreement for documents to be included on a privilege log. Google proposes the following: (1) documents generated after this action was filed that are withheld as attorney-client communications or attorney work product need <u>not</u> be logged; (2) documents generated prior to the filing of this action, but in direct connection with preparation for the litigation that are withheld as attorney-client communications or attorney work product need <u>not</u> be logged; (3) all other materials withheld on grounds of privilege should be logged.

**RFP No. 20.** This request seeks "[d]ocuments relating to Google's October 2014 acquisition of Firebase, including the acquisition agreement, diligence documents, Google's business case for the acquisition, and Google's anticipated and actual benefits from the acquisition." Plaintiffs have proposed that Google produce documents sufficient to show the "business case" for Google's "October 2014 acquisition of Firebase." Google stands by its response and the objections raised in my February 23 letter, especially in light of the Court's Order on Google's Motion to Dismiss.

**RFP No. 21.** Your March 5 letter discusses four categories of custodial documents. My April 12 letter addressed Google's position on categories (a) and (b). Google agreed to produce custodial documents, and your April 22 letter stated this resolves the parties' dispute except with respect to documents not related to GA for Firebase but related to Firebase SDK. In light of the Court's Order on Google's Motion to Dismiss, we believe that issue is resolved.

As for (c), Plaintiffs seek custodial documents on Google's "collection, use, and/or storage of data with respect to Google Analytics." Google believes that resolution of RFPs 8–10, on which the parties are working to come to an agreement, will resolve the dispute on this request. As explained above, Google is willing to produce documents sufficient to (i) show the ways in which Google receives data about users through GA for Firebase while users have WAA turned off; and (ii) identify certain data sent to Google via GA for Firebase from the named Plaintiffs' devices, provided Plaintiffs provide app-instance IDs.

Page 5

As for (d), Plaintiffs seek custodial documents on "My Activity or Web & App Activity, which would encompass all documents that reference or in any way concern both Google Analytics and also My Activity or Web & App Activity." Google agrees to produce custodial documents in Messrs. Ma's, Monsees', and Ganem's possession subject to appropriately tailored search terms to the extent they discuss *both* GA for Firebase *and* Web & App Activity.

**RFP No. 23.** Your April 22 letter requested that Google provide a date certain by which Google will complete production of responsive documents. Google agrees to complete production of responsive documents by the close of fact discovery which is currently set for November 12, 2021. As you know, Google is amenable to stipulating to a case schedule that would specify a date for completion of document production in advance of the fact discovery cut-off. Although Plaintiffs previously refused to propose such a schedule, Google reiterates its openness to such a negotiation.

**RFP No. 26.** Your April 22 letter indicated Plaintiffs are willing to drop this request, provided that Google confirms that it will produce documents responsive to RFP 26 in response to other requests. Google confirms.

**RFP No. 31.** This request seeks "[d]ocuments concerning Google's decision to not make data Google collected while users have Web & App Activity turned off viewable to users through their Google account." As my April 12 letter explained, no such decision was made. To the extent Google becomes aware of a decision to keep GA for Firebase data off of the WAA My Activity page when WAA is off, Google will produce documents responsive to this request subject to a reasonably diligent search.

**RFP Nos. 35–36.** This request seeks "[d]ocuments relating to how Google's technologies and services work with the consumer data that Google collects, including data Google collects while consumers have Web & App Activity turned off." As my April 12 letter explained, Google doesn't track individual consumers using GA for Firebase data while WAA is turned off. To the extent any custodial documents are responsive to these requests—we do not expect to find any—Google will produce such documents.

In response to RFP 35, Google is also willing to produce documents sufficient to show how Google's technologies and services use data Google receives through GA for Firebase.

In response to RFP 36, Google is willing to produce documents sufficient to show how Google uses consumers' data Google receives through GA for Firebase. We believe this agreement should resolve the parties' disputes on these requests.

**RFP No. 37.** This request seeks "[d]ocuments sufficient to identify all apps that during the Class Period have used Google's Firebase SDK, including the dates during which each app used Google's Firebase SDK." As our response to this request stated, Google has provided Plaintiffs an interrogatory response that identifies which of the over 400 apps listed in Plaintiffs' complaint have used GA for Firebase, subject to the caveats contained in that response. This information was compiled manually, requiring significant person-hours. Responding to this request to any greater degree will place significant and undue burden on Google not only because it seeks information on multitudes of

43580420.1 ATTORNEYS' EYES ONLY

Page 6

apps but also because it is overbroad in that it seeks information on apps that have used Firebase SDK writ large when only GA for Firebase is properly implicated by the complaint. And, as we have discussed, such information will do virtually nothing to advance this case.

**RFP No. 38.** This request seeks "[d]ocuments sufficient to identify all apps from which Google during the Class Period collected data while users had Web & App Activity turned off and the time periods during which Google collected that data from each such app." Beyond Google's proposed compromise on RFP 9, Google stands on its objections here.

**RFP No. 39.** Your April 22 letter requested that "for custodial documents, Google produce[] documents relating to (a) Google's efforts to increase app developers' use of Firebase SDK, (b) how use of Firebase SDK relates to use of Google Analytics to gain information about customers' use of the app, (c) how use of Firebase SDK relates to use of Google's "ad exchange" services such as AdMob, and (d) how use of Firebase SDK relates to use of Google's "Play Store" as a platform on which to distribute their app to consumers and to process payments in the app." Google will agree to produce custodial documents responsive to these subsections as long as the documents relate to GA for Firebase. As for non-custodial documents, Google maintains that the request is overbroad and irrelevant.

**RFP No. 42.** The parties agree that there is no dispute on this request to the extent they can reach agreement on RFP 21.

**RFP Nos. 46–47.** This document requests documents sufficient to identify "all types of profiles created by Google" (RFP 46) and all the "ways in which Google used profiles during the Class period" (RFP 47). As my April 12 letter explained, Google doesn't create profiles using GA for Firebase data while WAA is turned off. As we discussed during our meet-and-confer, Google will produce documents sufficient to show the flow of GA for Firebase data into and within Google.

**RFP No. 48.** Your April 12 letter proposed that "for custodial documents, Google produce[] documents concerning Google's linking of collected website and app activity to a particular profile during the Class Period as it relates to activity collected through Firebase SDK." As my April 12 letter explained, Google doesn't link individual consumers' app activity data Google receives via GA for Firebase to particular profiles while WAA is off. Nonetheless, Google will produce custodial documents concerning Google's linking of collected website and app activity to a particular profile during the Class Period as it relates to activity Google receives through GA for Firebase while WAA is turned off, if any are found.

**RFP No. 55.** Google has agreed to produce documents from agreed-upon custodians if related to GA for Firebase. Further, Google is willing to produce documents sufficient to show material changes Google made to its data collection practices through GA for Firebase since it acquired Firebase SDK in 2014.

**RFP No. 56.** The parties' dispute on this request amounts to a dispute over which privileged documents should be logged. Google believes that the resolution of the parties' dispute over what

should be logged as discussed above in response to RFP 17, will also resolve the dispute on this request.

**RFP No. 66.** Google will produce responsive custodial documents. Your April 22 letter proposes that for non-custodial documents, Google produce "studies and evaluations of how people understand and use the Web & App Activity control." Google will produce such documents provided they also relate to GA for Firebase.

**RFP No. 68.** The parties are discussing this dispute under separate cover.

**RFP Nos. 69–70.** These requests seek documents sufficient to identify the number of users for which, and number of times, Google received data while users had Web & App Activity turned off. As we discussed, Plaintiffs will first review the documents Google is planning to produce in response to other requests.

**RFP Nos. 72–74, 77–80, 85.** These requests relate to the valuation and monetization of user data.

- RFP 72 seeks "[d]ocuments pertaining to the value of user data during the Class Period, including:
    - a. Any Google estimates of the value of its user data either generally or to any products and/or services.
    - b. Any third party estimates of the value of Google's or any other entities' user data either generally or to any products and/or service.
    - c. Any estimate of the relationship, if any, between the value of incremental data on a given user and the amount of data already collected on that user (i.e., the diminishing marginal return on data), either generally or to any products and/or services.
- RFP 73 seeks "[d]ocuments pertaining to Google's purchase or sale of user data from any third party, including documents sufficient to determine the types of data transacted, the price paid/received for the data, and/or any other relevant terms of the transaction."
- RFP 74 seeks "[d]ocuments pertaining to Google's purchases or sales of entities (e.g., companies, divisions, business groups) in which user data constituted a material portion of the assets transacted, including documents sufficient to determine the portion of the price paid/received attributable to the user data and all relevant terms of the transaction."
- RFP 77 seeks "[d]ocuments, studies, reports, and articles that describe or pertain to the market for user data, including class member data."
- RFP 78 seeks "[d]ocuments sufficient to understand how Google determines compensation for tracking user's data related to but not limited to how Google determines compensation for participants in the 'Google Screenwise Trends' program."
- RFP 79 seeks "[d]ocuments concerning any valuation of user data, including data Google collected while users had Web & App Activity turned off."

- RFP 80 seeks "[d]ocuments concerning the prices charged by Google during the Class Period in connection with its advertising services, including higher prices Google charged using the data Google collected while users had Web & App Activity turned off."
- RFP 85 seeks "[d]ocuments concerning Google competitors or competing proposals that permit consumers to monetize their data, including Brave, Loginhood, Killi, BIGtoken, Andrew Yang's Data Dividend Project, and Nielsen Company."

These requests are vastly overbroad and untethered to the action based on the Court's Order on the Motion to Dismiss. In light of the Court's recent Order, Google will not produce responsive documents but is amenable to considering a proposal from Plaintiffs to narrow these requests to the appropriate scope after the pleadings are settled.

**RFP No. 76.** As a compromise, Google is willing to produce documents sufficient to show its business planning related to collection and/or use of class member data through GA for Firebase.

**RFP No. 81.** Google has agreed to produce documents sufficient to show Google anonymizes the data it receives through GA for Firebase. Google will also produce documents sufficient to show how it uses the anonymized data it receives through GA for Firebase.

**RFP No. 86.** This request seeks "[d]ocuments sufficient to show all data Google used to target advertisements to Plaintiffs." As we discussed, any documents responsive to this request are already in Plaintiffs' custody and control. Further, Google has agreed to provide documents sufficient to identify at least some data Google has received via GA for Firebase provided Plaintiffs give Google app-instance IDs. Google will also produce documents sufficient to show whether and to what extent ads are targeted to users using data sent to Google via GA for Firebase.

**RFP No. 88.** This request seeks "[d]ocuments sufficient to show all Google revenues tied to advertising to class members while they had Web & App Activity turned off." Google is still in the process of conducting its fact investigation into this request. It has yet to find any reason to belief such documents exist or that revenues are calculated this way.

**RFP No. 89.** This request seeks "[d]ocuments concerning any auto-delete functionality or controls concerning user data, including how such functionality impacts data Google collected while users had Web & App Activity turned off." Google is willing to produce custodial documents to the extent they relate to Google's auto-delete functionality for data sent to Google through GA for Firebase that would be affected by turning Web & App Activity on or off. Because Web & App Activity does not control what data app developers send to Google through GA for Firebase, we do not expect to find any responsive documents. And for that reason, we still do not understand what you are seeking here or how it is relevant to the claims at issue so cannot produce responsive documents.

**RFP No. 91.** This request seeks "[d]ocuments sufficient to identify all code-words or codenames used in connection with any of the alleged issues, including Web & App Activity and Firebase." As a compromise, Google agrees to provide such information informally through its

counsel by written letter. Google's custodial productions will be sufficient to establish any such codewords or codenames as well. And Google agrees to use these search terms when focusing on WAA (sWAA or W&AA* or (Web pre/2 App) or "Web History" or "WHSH) and the term "scion" when focusing on GA for Firebase.

**RFP No. 92.** As we discussed during the meet-and-confer, Google has repeatedly supplemented its interrogatory response related to this request (Interrogatory 5). Google believes that should resolve the parties' dispute on this request. But, in light of Judge Tse's recent Order, if after reviewing Google's upcoming custodial production, Plaintiffs identify other sets of documents that may be responsive, please let us know and we will investigate them.

**RFP Nos. 93–94.** Google is not aware of any non-privileged, non-custodial documents responsive to this request. To the extent it becomes aware of any, Google will produce such documents. The remaining dispute concerns logging of responsive documents, which is discussed further below.

**RFP No. 95.** As a compromise, Google agrees to produce non-custodial documents sufficient to show any aggregation of data in connection with users' activity logged by GA for Firebase while they had Web & App Activity turned off, as Plaintiffs requested in your April 22 letter. To be clear, we understand "aggregation of data" to refer to "re-joining" data, or "joining" data from two or more sources in order to personally identify an otherwise anonymous or pseudonymous user. We anticipate there are no responsive documents to this request.

**RFP No. 98.** This request seeks "[d]ocuments concerning the articles cited in the First Amended Complaint." Google will produce responsive custodial documents. Google will not produce non-custodial documents in response to this request. Searching for such documents will be unduly burdensome relative to the likelihood of identifying responsive, relevant, non-cumulative documents.

**RFP No. 107.** The parties agree they will each produce documents received in response to a subpoena related to discovery in this action. Documents received from third-parties that are responsive to RFPs to which Google has agreed to produce non-custodial documents will also be produced, and to the extent such documents are in the files of custodians they will be produced if they are otherwise responsive.

**RFP No. 59, 60–61 (non-custodial documents), 63–65, 82–84.** Google stands on its position as reflected in its objections and responses to Plaintiffs' documents requests and the parties' correspondence, including my April 12 letter.

**Scope of case (Firebase SDK vs. GA for Firebase):** To the extent not discussed above, the only outstanding dispute related to RFPs 22-25, 27-29, 31, 43, 57, 62, 66, 72, 81, 95, 104-106 concerns the proper scope of the case. The parties have extensively briefed Google's position that Plaintiffs' First Amended Complaint alleges facts having to do with GA for Firebase, but *not* the other products and tools comprising Firebase SDK. Judge Seeborg recently rejected Plaintiffs' allegation that Google used Firebase SDK to "surreptitiously collect[] . . . data using secret software scripts." (Dkt. 109). For that reason, Google considers this dispute resolved.

Page 10

      **Source Code Proposal.** Plaintiffs agreed to propose a compromise on RFPs 33-34, 40, 44, 52, 53, 60-62, all of which concern source code.

      **Plaintiffs to propose a compromise.** Plaintiffs also agreed to propose a compromise as to RFPs 49-51, 54, 67, 75, 96-97, 99-103.

      To the extent any RFPs are not addressed by this letter, it is our understanding that there is no outstanding dispute on those requests.

Sincerely,

*/s/ Eduardo E. Santacana*

Eduardo E. Santacana