1   **WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
2     bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
3     sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
4     esantacana@willkie.com
ARGEMIRA FLÓREZ  (SBN: 331153)
5     aflorez@willkie.com
HARRIS A. MATEEN (SBN: 335593)
6     hmateen@willkie.com
RODOLFO E. RIVERA AQUINO (SBN: 348512)
7     rriveraaquino@willkie.com
333 Bush Street, 34th Floor
8   San Francisco, CA 94104
Telephone:  (415) 858-7400
9

10

11  Attorneys for Defendant
GOOGLE LLC

12

13              **UNITED STATES DISTRICT COURT**

14              **NORTHERN DISTRICT OF CALIFORNIA**

15

16  ANIBAL RODRIGUEZ, *et al*. individually and on    Case No.  3:20-CV-04688 RS
behalf of all others similarly situated,

17                                                    **GOOGLE LLC'S STATEMENT IN**
                          Plaintiff,                 **SUPPORT OF OMNIBUS MOTION TO**
18                                                   **SEAL PORTIONS OF PLAINTIFFS'**
                                                     **OPPOSITION TO GOOGLE LLC'S**
19        v.                                         **MOTION FOR SUMMARY**
                                                     **JUDGMENT AND GOOGLE LLC'S**
20  GOOGLE LLC, *et al*.,                             **REPLY IN SUPPORT**

21                         Defendant.
                                                     **(CIVIL LOCAL RULE 79-5)**
22

23                                                   Judge:        Hon. Richard Seeborg
                                                     Courtroom:    3, 17th Floor
24                                                   Action Filed: July 14, 2020
                                                     Trial Date:   February 10, 2025
25

26

27

28

## I.    INTRODUCTION

Pursuant to the Court's May 8, 2024 Order for Omnibus Motion to Seal Summary Judgment Briefing (Dkt. 400), Defendant Google LLC submits this statement of reasons in support of sealing select portions of (1) exhibits to Plaintiffs' Opposition to Google's Motion for Summary Judgement ("Opposition") (Dkt. 398), and (2) exhibits to Google's Reply in Support of Motion for Summary Judgment ("Reply") (Dkt. 406).

Google has significantly narrowed its request to seal materials. It does not seek to seal any portion of the Opposition or Reply. Of the 77 exhibits submitted with the Opposition and the 8 submitted with the Reply, Google seeks to seal only 6 exhibits in full and specific excerpts from 16 others. Excerpted versions of some of the exhibits Google seeks to seal were previously filed by Plaintiffs, and the Court has already ruled on those. For these, Google aims to redact information per the Court's prior order and proposes additional redactions as necessary for the complete documents.[1]

The material Google seeks to seal meets the "compelling reasons" standard for dispositive motions. *See Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1098–1099 (9th Cir. 2016); *Ojmar United States, LLC v. Sec. People, Inc.*, 2016 WL 6091543 at *1 (N.D. Cal. Oct. 19, 2016). *First*, Google seeks to seal material containing "confidential information regarding [Google's] products, services, and business practices." *Ojmar*, 2016 WL 6091543 at *2. *Second*, Google seeks to seal "internal URLs" and "task names" for Google's internal systems. *Bohannon v. Facebook, Inc.*, 2019 WL 188671, at *7 (N.D. Cal. Jan. 14, 2019). *Third*, Google seeks to seal employee email addresses. *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, 2018 WL 4961606, at *2 (E.D. Cal. Oct. 12, 2018).

---

[1] The Opposition includes numerous exhibits that were previously filed in this matter and were subject to another of Court order to seal. These exhibits have now been filed publicly with Court-ordered redactions. *See, e.g.*, Exhibits 1, 2, 3, 4, 5, 40, 41, 43, 47, 50, 51, 58, 59, 60, 62, 64, 65, 69, 70, 71, 72, and 73. Pursuant to Civil Local Rule 79-5, a party need not file a motion to seal when a federal statute or prior court order in the same case expressly authorizes the party to file certain documents or portions of documents under seal. Accordingly, Google is submitting separately an appendix of these documents as previously sealed material and will not seek to refile them here.

1    Finally, within their Opposition, Plaintiffs have relied on some of the documents discussed

2    below for only a single quote, and Google does not seek to seal any material within the

3    Opposition. "[R]ecords attached to motions that are only 'tangentially related to the merits of a

4    case' are not subject to the strong presumption of access." *Ojmar*, 2016 WL 6091543 at *1

5    (quoting *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016)). The

6    "good cause" standard is therefore sufficient for these exhibits. *Id.*

7    Since Google does not seek to seal any portion of the Opposition or Reply and only seeks

8    to seal a minority of exhibits, granting its request will not affect the public's understanding of the

9    underlying dispute. Thus, Google respectfully requests that the Court grant its limited sealing

10    request as detailed in the [Proposed] Order.

11    **II.    LEGAL STANDARD**

12    Courts have long recognized a "general right to inspect and copy public records and

13    documents, including judicial records and documents." *Kamakana v. City & Cnty. of Honolulu*,

14    447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597

15    & n.7 (1978)). To overcome this presumption of access, parties seeking to seal judicial records

16    related to dispositive motions must demonstrate "compelling reasons." *Id.* at 1180. The

17    "compelling reasons" standard applies to "motions for summary judgment and related

18    attachments." *Id.* at 1179. "[R]ecords attached to motions that are only tangentially related to the

19    merits of a case are not subject to the strong presumption of access." *Ojmar*, 2016 WL 6091543 at

20    *1 (internal formatting omitted). For these records, Courts apply "the lower good cause standard

21    of Rule 26(c) of the Federal Rules of Civil Procedure." *Id.*

22    **III.    DISCUSSION**

23        **A.    Commercially sensitive business information**

24    There are compelling reasons to seal "sources of business information that might harm a

25    litigant's competitive standing" *In re Electronic Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008)

26    (quoting *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 598 (1978)). *See also Apple Inc. v.*

27    *Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011) (holding that preventing competitive harm can

28    be a compelling reason for sealing when the release of documents might "give competitors unfair

1    insight" into a company's operations). Each category described below reflects "confidential

2    information" on Google's "products, services, and business practices" that could harm its

3    competitive standing. *Ojmar US*, 2016 WL 6091543, at *2.

4                    **1.       Competitively Sensitive Internal Consumer Studies and Projections**

5            A litigant's competitive standing can be harmed through the disclosure of internal market

6    research and strategy, as competitors can use this information against them. *See Apple Inc. v.*

7    *Samsung Elecs. Co.*, 727 F.3d 1214, 1228 (Fed. Cir. 2013) (holding that the district court abused

8    its discretion in unsealing Apple's internal "market research reports" that "contain information

9    that Apple's competitors could not obtain anywhere else."). *See also Algarin v. Maybelline, LLC*,

10   2014 WL 690410, at *3 (S.D. Cal. Feb. 21, 2014) (sealing a study that contained consumer

11   research, sales data, and product development plans because public disclosure "could result in

12   improper use by business competitors seeking to replicate. . . [the party's] business practices and

13   circumvent the time and resources necessary in developing their own practices and strategies.").

14   The following documents reflect Google's internal research efforts, which it has expended

15   significant resources to conduct:

16   - In Exhibit 67, a slide deck detailing a user research study for the design interface of
17     Google Search Data Retention Controls, Google seeks to redact slides and
       information that provide granular specifics of its user design research. This includes
18     mock-ups of different user interface flows tested, detailed methodology, participant
       overviews, quotes, and statistics from participants within the UX study, as well as
19     specific takeaways and recommendations for design changes resulting from the
       study. Google is not seeking to seal slides containing general summaries or
20     overviews of the study that do not reference participant comments or detailed
       breakdowns, including the slides the Opposition relies on. Monsees Decl. ¶ 13.
21
22   - Google seeks to seal Exhibit 68 in its entirety. This exhibit is a single-page
       document featuring a dashboard that lists out the internal ID numbers for and
23     summaries of 69 different internal user studies. This document is a synthesis of
       Google's extensive user research efforts, which Google expended significant
24     resources to conduct. Monsees Decl. ¶ 14.

25           The redactions Google seeks for Exhibit 67 are minimal and do not include the sole slide

26   referenced in the Opposition. *See* Opp. at 13 (quoting excerpts from Ex. 67 at -82). As to Ex. 68,

27   the Opposition only relied on the single line that states "WAA settings are hard to understand,"

28   which Google does not seek to seal in the Opposition. *Id.* (quoting Ex. 68). The rest of Ex. 68

references a wide swath of user studies involving products and issues outside the scope of this case. *See Ojmar*, 2016 WL 6091543, at *1 (applying a lower standard for records "only tangentially related to the merits of a case."). The information Google seeks to seal in these exhibits represents the type of proprietary user research and detailed design insights that "competitors could not obtain anywhere else," and which courts routinely protect to prevent competitive harm. *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d at 1228. There is no more narrowly tailored approach that would adequately safeguard Google's competitive standing.

| Exhibit No. | Portion(s) to Maintain Under Seal | Basis for Sealing |
|---|---|---|
| Exhibit 67 | Pages ending in -161, -162 to -164, -167 to -169, -171 to -181, -191 to -196, -198 to -202, -204 to -208, -210 to -211, -213 to -216, -218, -220 to -221, -224 | Sensitive content revealing internal research objectives, methodologies, and participant demographics. Disclosure could allow competitors to leverage proprietary insights without incurring the same research costs. Monsees Decl. ¶ 13. |
| Exhibit 68 | Entirety | Contains high-level overview of numerous user studies. Disclosure could undermine competitive position by providing competitors insights into user preferences and behaviors. Monsees Decl. ¶ 14 |

## 2. Product design, performance, and improvement deliberations and presentations

Courts similarly find compelling reasons to seal documents containing forward-looking strategy and deliberations that inform product design changes or improvements. *See Adtrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2020 WL 6391210, at, 2020 WL 6391210, at *1 (finding compelling reasons to seal confidential business material, marketing strategies, and product development plans that could result in improper use by competitors). *See also Network Appliance, Inc. v. Sun Microsystems Inc.*, No. C-07-06053-EDL, 2010 WL 841274, at *2 (N.D. Cal. Mar. 10, 2010) (sealing documents containing "strategic planning information" to prevent competitors from gaining an unfair advantage), *see also Algarin v. Maybelline, LLC*, 2014 WL 690410, at *3. Google seeks to seal material in the following exhibits that contain product strategy-related information, which if disclosed, could be exploited by competitors.

- In Exhibit 33, along with internal codenames and employee email addresses, Google seeks to seal, specifically, details about strategic app privacy proposals, non-public discussions with third parties, internal decision matrices, confidential statistics, mock-ups of Android UX changes, competitor analyses, technical flow charts, and internal evaluations of advertising identifiers. Monsees Decl. ¶ 6.

- In Exhibit 34, Google seeks to redact a single line that contains sensitive information related to government requests, along with employee email addresses. *Id.* ¶ 7.

- Google seeks to seal Exhibit 49 in its entirety. The exhibit is an internal document analyzing the impact of Chrome browsing privacy changes on Google's advertising products. It contains sensitive internal modeling, statistics, and revenue projections across various ad platforms. *Id.* ¶ 10.

- Google seeks to seal  Exhibit 63 in its entirety. This "mini-brief" that is "specific to Google Search," was created for "brainstorming" and reflects product "ideas from various Google employees." Monsees Decl.¶ 12. Within the Opposition, Google is not seeking to seal the single sentence quoted from this exhibit. *See* Opp. at 12.

- In Exhibit 77, Google seeks specific redactions to protect highly sensitive and proprietary information. This includes internal statistics and charts on Firebase Dynamic Links, sensitive details on Firebase Remote Config and user activity data, an internal algorithm regarding Wi-Fi networks and battery life, customer details and forward-looking strategy on the Firebase console product, and an internal chart related to the Firebase Applied ML product. Monsees Decl. ¶ 15.

The redactions and sealing Google seeks on these documents are limited and necessary. For Exhibits 33 and 34, Google only seeks to redact information that reflects forward-looking strategy, competitive analysis, internal decision-making, and responses to confidential government requests. This information is not shared publicly and would not assist the public in understanding this lawsuit. Exhibits 49 and 63, which Google seeks to seal in their entirety, are not directly related to the products at issue in this case. Exhibit 49 is an internal revenue projection in response to changes made to the Google Chrome browser. Plaintiffs' expert Michael Lasinski relied on this document for part of his damages assessments, and Mr. Lasinski's report has already been filed publicly with minimal redcations. Google does not seek to redact any portion of the one-off citation to Exhibit 49 within the Opposition. *See* Opp. at 10. Likewise, Exhibit 63 pertains to Google Search. Google does not seek to redact the single sentence from Exhibit 63 quoted within the Opposition. *Id.* at 13.

Finally, Exhibit 77 is a lengthy slide deck detailing various Firebase services, many of which are irrelevant to this case. The Opposition references only one page from this exhibit, and

1    Google does not seek to redact that language. An excerpted version of this document, containing

2    slides -097 to -101, was previously filed publicly with court-ordered redactions. These pages

3    include the language cited in the Opposition, and Google only requests to maintain redactions in

4    line with the Court's previous decision. For the remaining pages, Google seeks to seal internal

5    proposals and forward-looking strategy about products not relevant to this case and not mentioned

6    in the Opposition or any other briefing.

7         Across these exhibits, Google seeks to seal only material that reflects forward-looking

8    strategy or projections in order to prevent potential harm from competitors who might seek to use

9    this information to undermine Google's strategies or inform their own product decisions. *See, e.g.,*

10   *Kumandan v. Google LLC*, No. 19-CV-04286-BLF, 2023 WL 2189498, at *1 (N.D. Cal. Feb. 22,

11   2023) (sealing sensitive proprietary information about Google Assistant operations and business

12   risks); *Adtrader, Inc.*, 2020 WL 6391210, at *1; *Algarin v. Maybelline, LLC*, No. 12CV3000 AJB

13   (DHB), 2014 WL 690410, at *3 (S.D. Cal. Feb. 21, 2014) (sealing consumer research and product

14   development plans to prevent competitor exploitation).

| Exhibit No. | Portion(s) to Maintain Under Seal | Basis for Sealing |
|---|---|---|
| Exhibit 33 | Pages ending in -316 to -318. 321, -322, -324, -328, -330, -331, -332, -363, -364, -133, -334, -335, -336, -339, -340, -341, -342, -345 through -350, -359 through -362 | Contains highly sensitive and proprietary information, including strategic analysis, competitive analysis, internal strategies, technical flow charts, and internal evaluations. Disclosure could reveal Google's viewpoints, strategies, and internal decisions, giving competitors insights that could undermine Google's competitive position. Monsees Decl. ¶ 6. |
| Exhibit 34 | Page ending -245 | Contains speculative risks and strategic considerations that could be misinterpreted if disclosed. Monsees Decl. ¶ 7. |
| Exhibit 49 | Entirety | Includes anticipated effects of privacy changes on Google's advertising products, internal statistics, and revenue impacts. Disclosure could reveal proprietary methodologies and strategic decisions. Monsees Decl. ¶ 10. |
| Exhibit 63 | Entirety | Contains sensitive and proprietary information reflecting Google's internal strategies and privacy design concepts. Disclosure could compromise Google's competitive position. Monsees Decl. ¶ 12. |

| Exhibit 77 | Pages ending in -078 to -088, -090 to -095, -097 to -101, -102 to -109, -110, -112, -120 | Contains sensitive information on product usage, strategic plans, technical configurations, and proprietary algorithms. Disclosure could provide competitors with valuable insights into Google's strategies and technologies. Monsees Decl. ¶ 15. |
|---|---|---|

3. **Non-public documents detailing the technical operation of Google's internal systems**

Finally, there are compelling reasons to seal technical information that could be exploited by both competitors seeking to better understand Google's internal systems or bad actors who seek to access Google's systems without authorization. *See, e.g.*, *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2016 WL 7911651, at *2 (N.D. Cal. Apr. 6, 2016) (sealing technical information in expert reports and internal documents); *Adtrader, Inc.*, 2020 WL 6391210, at *2 (sealing information revealing capabilities of Google's systems). Google seeks to seal information from the following exhibits, as they contain technical and proprietary details that, if disclosed, could lead to competitive harm or misuse by bad actors.

- Google seeks to seal Exhibit 44, a document titled "Collection Support for Apps Device ID Remarketing," in its entirety. This document details Google's technical infrastructure for app remarketing, including data flows between servers. Monsees Decl. ¶ 8.

- Google seeks to seal Exhibit 45 in its entirety. The exhibit consists of an internal email about a specific product launch, including "technical processes and internal code names," descriptions of "internal servers" and hyperlinks to internal Google sites. Monsees Decl. ¶ 9.

- Google seeks to seal Exhibit 56 in its entirety. This exhibit is a document titled "Firebase Data Collection on GAIA-ID," which provides an in-depth overview of technical workflows and methodologies for data collection and app event logging. Monsees Decl. ¶ 11.

- In Exhibit G to Google's Reply, an excerpt from Steve Ganem's deposition, Google only seeks to seal information at 260:5-9 describing the storage and retention of certain identifiers. Monsees Decl. ¶ 17.

Google's request to seal exhibits 44, 45, and 56 in their entirety is justified. These documents are internal technical documents detailing high-level data flow and technical processes for Google's products. *Id.* ¶¶ 8-9, 11. They describe how data flows through Google's systems, reference specific internal servers, and outline the internal processes for logging data across

different identifiers. *Id.* Public access to these documents is unnecessary for understanding this case. The Opposition cites single phrases from these exhibits only briefly. *See* Opp. at 7, 11. And Google does not seek to seal any portion of the Opposition. Further, to the extent these exhibits discuss relevant products, those technical details would already be described in the Google and Plaintiffs' expert reports, which have both been filed publicly with minimal redactions.

Google also requests limited redactions for Exhibit 76 and Exhibit G to the Reply. For Exhibit 77, along with the name of an internal system, Google seeks to redact descriptions related to the technical processes for data handling within Google's systems. Monsees Decl. ¶ 16. Similarly, in Exhibit G, Google seeks to redact specific technical details about the storage and retention of data associated with certain identifiers. *Id.* ¶ 17. These technical specifics are not necessary for the public to understand the products' functions or the underlying dispute in this case.

The information Google seeks to seal, if disclosed, could be exploited by competitors to gain unfair market advantages and by malicious actors seeking to compromise Google's systems or user data. *See Kumandan v. Google LLC*, No. 19-CV-04286-BLF, 2023 WL 2189498, at *2 (N.D. Cal. Feb. 22, 2023) (sealing proprietary information about Google Assistant operations). The nature of this information—including technical documents detailing data flows, server interactions, and internal methodologies—could serve as a roadmap for bad actors attempting to identify vulnerabilities or bypass security measures. *See Adtrader, Inc.*, 2020 WL 6391210, at *2 (sealing information revealing capabilities of Google's systems).

| Exhibit No. | Portion(s) to Maintain Under Seal | Basis for Sealing |
|---|---|---|
| Exhibit 44 | Entire document | Details Google's technical infrastructure and strategies for app remarketing. Disclosure could undermine competitive position and potentially compromise system security. Monsees Decl. ¶ 8. |
| Exhibit 45 | Entire document | Contains sensitive information about specific launches, including technical details and internal code names. Disclosure could reveal proprietary systems and methodologies. Monsees Decl. ¶ 9. |
| Exhibit 56 | Entire document | Provides in-depth overview of technical workflows and methodologies related to data collection and app |

| | | |
|---|---|---|
| | | event logging. Disclosure could reveal proprietary technologies and strategies. Monsees Decl. ¶ 11. |
| Exhibit 76 | 224:18-225:7, 227:12-13, 17-18. | Describes internal system names and technical processes for data handling. |
| Exhibit G to Google's Reply | 260:5-9; 261:1-3 | Describes storage and retention of certain identifiers within Google's systems. Disclosure could result in potential security vulnerabilities. Monsees Decl. ¶ 16. |

**B.    References to Internal Code Names and Links**

Google seeks to seal internal database and project names, and certain internal URLs, within Exhibits 1, 46, 66, 76, E (Reply), and F (Reply). Monsees Decl. ¶ 18. Courts routinely protect such information to mitigate cybersecurity risks that arise if internal names become public. For example, in *Apple Inc. v. Samsung Elecs. Co.*, No. 11–CV–01846 LHK (PSG), 2012 WL 4120541, at *2 (N.D. Cal. Sept. 18, 2012), the court sealed "Apple's internal code names" for its projects. Similarly, in *Bohannon v. Facebook, Inc.*, No. 12-cv-01894-BLF, 2019 WL 188671, at *7 (N.D. Cal. Jan. 14, 2019), the court sealed internal task names, URLs, and other sensitive data related to internal classification systems.

Here, Google has narrowly tailored its sealing request to disclose only the first or second letter of each name, ensuring minimal impact on the public record while protecting its confidential information. This Court has previously sealed similar internal names at Google's request. See, e.g., Dkts. 184, 223, 208, at ¶ 3. Granting Google's current request aligns with these prior rulings.

**C.    Non-Public Email Addresses**

Google seeks to seek employee email addresses contained in 33, 34, 46, 61, 62, 66, 77. Courts routinely seal employee email addresses. *See, e.g.*, *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, No. 1:17-cv-00808-DAD-EPG, 2018 WL 4961606, at *2 (E.D. Cal. Oct. 12, 2018) (sealing employee email address under compelling reason standard); *Music Grp. Macao Com. Offshore Ltd. v. Foote*, No. 14–cv–03078–JSC, 2015 WL 3993147, at *8, 10 (N.D. Cal. June 30, 2015) (finding compelling reasons to seal employee names and roles of employees).

1    Google has a compelling interest in protecting its employees' email addresses to safeguard their

2    privacy. *See* Monsees Decl. ¶ 18. Google does not publish employee email addresses, and this

3    Court has previously ordered such addresses to be sealed. Dkt. 283 at 2. Sealing the email

4    addresses in question is consistent with these decisions.

5    **IV.    CONCLUSION**

6         For the reasons set forth above, Google respectfully requests that the Court seal the limited

7    information identified herein and in the accompanying [Proposed] Order.

8

9    Dated:  June 28, 2024                                   Respectfully submitted,

10                                                          WILLKIE FARR & GALLAGHER LLP

11

12                                                          By:    */s/ Eduardo E. Santacana*
                                                                   Benedict Y. Hur
13                                                                 Simona Agnolucci
                                                                   Eduardo E. Santacana
14                                                                 Argemira Flórez
                                                                   Harris Mateen
15

16                                                          *Attorneys for Defendant*
                                                            *Google LLC*
17

18

19

20

21

22

23

24

25

26

27

28