**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
  bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
  sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
  esantacana@willkie.com
ARGEMIRA FLÓREZ  (SBN: 331153)
  aflorez@willkie.com
HARRIS A. MATEEN (SBN: 335593)
  hmateen@willkie.com
RODOLFO E. RIVERA AQUINO (SBN: 348512)
  rriveraaquino@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone:  (415) 858-7400

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANIBAL RODRIGUEZ, et al. individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>    vs.<br><br>GOOGLE LLC,<br><br>               Defendant. | Case No. 3:20-CV-04688-RS<br><br>**DECLARATION OF DAVID MONSEES ISO OMNIBUS MOTION TO SEAL PORTIONS OF PLAINTIFFS' OPPOSITION TO GOOGLE LLC'S MOTION FOR SUMMARY JUDGMENT AND GOOGLE LLC'S REPLY IN SUPPORT**<br><br>Judge:         Hon. Richard Seeborg<br>Courtroom:  3, 17th Floor<br>Action Filed: July 14, 2020<br>Trial Date:    February 10, 2025 |

I, DAVID MONSEES, respectfully submit this declaration in regard to the above captioned matter. I make this declaration based on my personal knowledge of the facts stated herein.

1. I am employed at Google LLC ("Google") as a Senior Product Manager with supervisory authority concerning Web & App Activity ("WAA"). I joined Google in 2009 and have been a Product Manager since December 2009. Unless otherwise stated, the facts I set forth in this declaration are based on my personal knowledge or knowledge I obtained through my review of corporate records or other investigations. If called to testify as a witness, I could and would testify competently to such facts under oath.

2. In my role as a Product Manager at Google, I have managed various products across the advertising and WAA product areas and I am familiar with Google's practices regarding the treatment of sensitive business and technical information.

3. I submit this declaration in support of Google's Statement in Support of Omnibus Motion to Seal Portions of Plaintiffs' Opposition to Google's Reply in Support of Motion for Summary Judgment.

4. I have reviewed unredacted versions of exhibits to Plaintiffs' Opposition to Google's Motion for Summary Judgment ("Opposition") (Dkt. 398), the Declaration of Mark Mao In Support Of Plaintiffs' Opposition to Google's Motion for Summary Judgment (Dkt. 398-1), and 15 out of the 77 corresponding exhibits filed therewith which have been designated for sealing: Exhibits 33, 34, 44, 45, 46, 49, 56, 61, 62, 63, 66, 67, 68, 76, 77. I have also reviewed Google's Reply In Support of Motion for Summary Judgment (Dkt. 406), the Declaration of Eduardo Santacana In Support of Google's Reply In Support of Motion for Summary Judgment (Dkt. 406-1), and unredacted versions of Exhibits E, F, and G. These documents include confidential, proprietary, and competitively sensitive information and should remain under seal.

5. Google seeks to seal narrowly tailored portions of the aforementioned Exhibits. Specifically, it seeks to seal only 6 out of the 77 exhibits filed with Plaintiffs' Opposition entirely and only select excerpts from the rest of the documents.

**Commercially Sensitive Proprietary Business Information**

6. Exhibit 33 is a slide deck on improving user privacy for apps. Google seeks to redact specific information within Exhibit 33 due to its highly sensitive and proprietary nature:

- **Portions of Slide -316:** An internal codename.
- **Portions of Slide -317:** Non-public email addresses.
- **Portions of Slide -318**: Reference to non-public discussions with a third-party.
- **Portions of Slide -321:** The decision matrix on the slide scoring various strategic proposals related to app privacy.
- **Portions of Slide -322:** Bulleted list of strategic "Key questions" Google sought to evaluate.
- **Slide -324:** Bulleted executive summary that contains strategic analysis and recommendations on app privacy strategy vis-a-vis competitors.
- **Portions of Slides -328, -330, -331, -332, -363, and -364:** Confidential statistics related to law enforcement requests.
- **Portions of Slide -333:** Hyperlink to an internal database and internal statistics for various user controls.
- **Slide -334:** Contains statistics in a chart reflecting internal analysis of user behavior that is competitively sensitive.
- **Portions of Slides -335 and -336:** Contains Google's internal strategic priorities as to which "problems" to "solve" and which it is "not solving" with its mobile ID product.
- **Portions of Slides -339 and -340:** Contains mock-ups of potential changes to certain Android UX flows, reflecting internal design efforts and priorities that could be exploited by a competitor.
- **Portions of Slide -341:** Includes a chart with an internal evaluation and comparison of certain advertising identifiers, including between Google and a competitor.
- **Portions of Slide -342:** Includes a chart with Google's contemplated status on various changes to the Android advertising identifiers.
- **Slides -345 through -350:** Contains competitor analysis that could be used by competitors to understand Google's strategy.
- **Slides -359 through -362:** Contains technical flow charts showing how certain data flows through Google's systems.

These limited redactions of Exhibit 33 are necessary to protect Google's competitive position and prevent competitors from gaining insights into its strategies and internal analyses, and attempting to replicate or undermine Google's internal efforts.

7. Exhibit 34 contains a confidential internal email discussing Google's handling of user data in relation to the Firebase IID and Analytics PWG Analysis. Google only seeks to redact employee email addresses, along with a single line in Exhibit 34. The specific line Google seeks to redact references potential scenarios related to data management and user privacy (-245). This information is sensitive because it involves speculative risks and strategic considerations that, if

disclosed, could be misinterpreted and potentially misused by bad actors, thereby impacting Google's competitive position.

8. Exhibit 44 is an internal Google document produced in discovery, titled "Collection Support for Apps Device ID Remarketing." Google seeks to redact Exhibit 44 in its entirety. This document contains highly sensitive and proprietary information detailing Google's technical infrastructure and strategies for app remarketing on mobile platforms. It includes charts illustrating data flows between servers and detailed technical information such as log names and backend engineering specifics. Disclosure of this information could significantly undermine Google's competitive position by providing competitors with insights into Google's proprietary systems and methodologies. Additionally, it could enable bad actors to exploit this technical data to attempt unauthorized access to Google systems, compromising the integrity and security of Google's operations.

9. Exhibit 45 is an internal email titled "Device ID Remarketing Lists for O&O via in-app pings." Google seeks to seal Exhibit 45 in its entirety. Google seeks to seal this exhibit due to its highly sensitive and proprietary nature. The email outlines technical processes and internal code names for a product launch. It describes the use of internal servers and includes hyperlinks to internal Google sites. Revealing this information could harm Google by exposing proprietary systems to competitors, and could aid bad actors in compromising Google's internal systems.

10. Exhibit 49 is an internal document detailing the impact of specific Chrome browsing privacy changes and opt-outs on Google's advertising products. Google seeks to seal Exhibit 49 in its entirety. The exhibit includes anticipated effects based on internal modeling for search ads, YouTube ads, and display ads, along with various internal statistics, percentages, and theoretical revenue impacts. The document discusses the potential effects on remarketing, conversion tracking, and traffic. It also contains numerous references to internal systems. This document is highly sensitive and proprietary, containing confidential technical information, strategic insights, and internal metrics. Disclosure could undermine Google's competitive position by revealing proprietary methodologies and strategic decisions, and could also enable bad actors to exploit Google's internal systems, compromising the integrity and security of Google's operations.

11. Exhibit 56 is an internal document titled "Firebase Data Collection on GAIA-ID." Google seeks to seal Exhibit 56 in its entirety. The exhibit provides an in-depth overview of the technical workflows, processes, and methodologies related to data collection, conversion tracking, and app event logging within Google's systems. The document contains detailed technical descriptions, including references to internal systems, proprietary tools, and databases. Disclosure of this highly sensitive information could undermine Google's competitive position by revealing proprietary technologies and strategies. Additionally, it could expose Google's systems to potential exploitation by bad actors, compromising the integrity and security of its operations.

12. Exhibit 63 is an internal document, referred to as a "mini-brief," that is centered on design ideas for Trust & Privacy features on Google Search. Google seeks to seal Exhibit 63 in its entirety. As the exhibit states, "the purpose of this doc is to focus and provide guide-rails for generative brainstorming." The document is specific to Google Search and includes ideas from various Google employees on potential design changes to many different elements of the Search product. The exhibit includes a list of deliverables, actions, and promises, as well as example ideas from various Google employees. Some of the ideas contemplated in this document have not been implemented, but one day, might be. Disclosure of this document would expose these ideas for the Search product to Google's competitors. This could potentially allow Google's competitors to access and implement these ideas and strategies made by Google employees in confidence.

13. Exhibit 67 is a slide deck titled "Data Retention Usability Study Findings." Google seeks to redact specific information within Exhibit 67 due to its sensitive and proprietary nature:

- **Portions of Slide -161**: A list of related studies conducted by Google with dates.
- **Portions of Slides -162 to -164**: Mock-ups of different settings flows tested in the user study, including for UI flows that may have been contemplated.
- **Portions of Slides -167 to -169**: Descriptions of the study's participants and the Google's underlying research methodology.
- **Portions of Slides -171 to -181**: Charts, quotes, and lines indicating participants' specific views toward Google's UI.
- **Portions of Slides -191 to -196, -198 to -202, -204 to -208, -210 to -211, -213 to -216**: Participant reactions to the various page mock-ups.

- **Portions of Slides -218**: Appendix listing prior user studies on search retention controls with summaries.
- **Portions of Slides -220 to -221**: Summary of UX research decisions and forward-looking strategy.
- **Portions of Slide -224**: Forward-looking strategy indicating "next steps" from the user studies.

Google invests considerable resources into conducting user studies to understand how users interact with its products. These studies inform Google's product design decisions. Disclosing the information from these studies described above could give competitors insight into the types of data Google evaluates within its user interface. Competitors could exploit this information to inform their own design decisions without the same investment in user research. Google seeks to seal only the specific details of the user studies, not the overviews or summaries. For example, Google does not seek to seal the slide ending in -165, which summarizes how participants understood the controls, nor the slide ending in -182, cited in the Opposition.

14. Exhibit 68 is a single-page PDF featuring a dashboard that lists out the internal ID numbers for and summaries of 69 different internal user studies. Google seeks to seal Exhibit 68 in its entirety. This document is highly sensitive and proprietary, as it provides a high-level overview of dozens of user studies conducted by Google. The summaries include user views on many aspects of Google products, such as privacy viewpoints, typography, illustrations, text comprehension, and user interaction patterns. Google expends significant resources to conduct these user studies. Disclosure of this information could significantly undermine Google's competitive position by allowing competitors to gain insights into user preferences and behaviors that Google has invested considerable resources to understand.

15. Exhibit 76 is an excerpt of the deposition transcript of Steve Ganem. Google seeks to redact specific content, at lines 224:18-225:7, due to its highly sensitive and proprietary nature related to internal data flow. Disclosure of this information would reveal Google's data processing methods, which could be exploited by competitors to develop their own systems. Additionally, this information could be used by bad actors to attempt to gain unauthorized access to Google's systems.

16. Exhibit 77 is a 52-page internal slide deck titled "Firebase Growth," previously partially sealed in this case. Google seeks to redact specific content due to its highly sensitive and proprietary nature. These targeted redactions include:

- **Pages ending in -078 through -088**: These slides cover Firebase Dynamic Links, containing internal statistics, charts on product usage, technical flow descriptions, strategic plans, and detailed information about FDL domains, integrations, domain settings, and data processing pipelines. The proprietary nature of this information could be exploited by competitors to undermine Google's competitive position and market strategy.

- **Pages ending in -090 through -095**: These slides focus on the Firebase Activate product area and include sensitive information on Firebase Remote Config, user activity data, data flow details, and descriptions of supported services. This proprietary information provides competitors with insights into Google's user engagement strategies and technical configurations, potentially allowing them to enhance their own products without incurring similar research and development costs.

- **Pages ending in -097 to -101**: I understand that the Court has previously adjudicated a sealing request for these slides, with a redacted version filed under seal at Dkt. 361-36. The only language within Exhibit 77 cited in the MSJ opposition is contained in the slide ending in -100. Google seeks to seal and redact these pages in accordance with the court's prior decision.

- **Pages ending in -102 through -109**: These slides contain charts and descriptions of an internal algorithm regarding Wi-Fi networks and battery life, as well as research on battery life and connectivity. This technical and research data is highly sensitive and proprietary, offering competitors valuable insights into Google's internal research and product development strategies.

- **Pages ending in -110 to -114**: Pertaining to the Firebase console product, Google seeks to redact customer details on slide -110 and forward-looking strategic language on slide -112. These details reveal proprietary information about Google's customer base and strategic plans, which competitors could use to undermine Google's market position

- **Pages ending in -119 through -122**: These slides pertain to the Firebase Applied ML product. Google seeks to redact an internal chart on slide -120.

17. Exhibit G to Google's Reply is an excerpt of the deposition transcript of Steve Ganem. Google only seeks to seal information at 260:5-9 that describes the manner in which certain identifiers are stored within Google's systems and the specifics of their retention periods. This information is sensitive business data that, if disclosed, could expose Google's systems to potential security vulnerabilities. Unauthorized access to these details by bad actors could compromise user data and the integrity of Google's operations, and pose risks to both the company and its users.

18. <u>Internal Code Names and Links (Exhibits: 66, 76 (Opposition), E, F (Reply))</u>. The aforementioned exhibits include references to internal code names and URLs for various internal sites. Revealing Google's internal code names and internal links would present a risk of harm to Google. Specifically, a malicious actor interested in improperly accessing Google's systems could target particular proprietary data storage systems and information for improper uses if he or she knew the internal names Google seeks to seal in these documents. The links could be used for similarly improper purposes. Thus, it is very important that internal code names not be revealed outside of Google. Google has narrowly tailored the information to be sealed to allow the first or second letter in each name to be filed publicly, and no more limited sealing would appropriately protect Google's confidential and proprietary information.

19. <u>Non-Public Employee Email Addresses (Exhibits 33, 34, 46, 61, 62, 66, 77 (Opposition))</u>. Google seeks to redact the non-public employee email addresses contained within the aforementioned exhibits. This information should be redacted because those employees' privacy would be placed at risk if their confidential email addresses were to be filed publicly.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed July 2, 2024, at San Francisco, California.

DAVID MONSEES