| | |
|---|---|
| **WILLKIE FARR & GALLAGHER LLP**<br>BENEDICT Y. HUR (SBN: 224018)<br>  bhur@willkie.com<br>SIMONA AGNOLUCCI (SBN: 246943)<br>  sagnolucci@willkie.com<br>EDUARDO E. SANTACANA (SBN: 281668)<br>  esantacana@willkie.com<br>ARGEMIRA FLOREZ (SBN: 331153)<br>  aflorez@willkie.com<br>HARRIS MATEEN (SBN: 335593)<br>  hmateen@willkie.com<br>333 Bush Street, 34th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 858-7400<br>Facsimile: (415) 858-7599<br><br>*Attorneys for Defendant*<br>GOOGLE LLC | **BOIES SCHILLER FLEXNER LLP**<br>Mark C. Mao (CA Bar No. 236165)<br>mmao@bsfllp.com<br>44 Montgomery Street, 41st Floor<br>San Francisco, CA 94104<br>Telephone: (415) 293 6858<br>Facsimile: (415) 999 9695<br>Beko Reblitz-Richardson (CA Bar No. 238027)<br>brichardson@bsfllp.com<br>44 Montgomery Street, 41st Floor<br>San Francisco, CA 94104<br>Tel: (415) 293 6858<br>Fax: (415) 999 9695<br><br>**SUSMAN GODFREY L.L.P.**<br>Bill Carmody (pro hac vice)<br>bcarmody@susmangodfrey.com<br>Shawn J. Rabin (pro hac vice)<br>srabin@susmangodfrey.com<br>One Manhattan West, 50th Floor<br>New York, NY 10001<br>Telephone: (212) 336-8330<br><br>**MORGAN & MORGAN**<br>John A. Yanchunis (pro hac vice)<br>jyanchunis@forthepeople.com<br>Ryan J. McGee (pro hac vice)<br>rmcgee@forthepeople.com<br>201 N. Franklin Street, 7th Floor<br>Tampa, FL 33602<br>Telephone: (813) 223-5505<br><br>*Attorneys for Plaintiffs* |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANIBAL RODRIGUEZ, et al. individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>    vs.<br><br>GOOGLE LLC,<br><br>                    Defendant. | Case No. 3:20-CV-04688-RS<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge: Hon. Richard Seeborg<br>Date: October 10, 2024<br>Time: 10:00 a.m.<br>Place: Courtroom 3 – 17th Floor (remotely via Zoom)<br>Judge: Hon. Richard Seeborg<br>Courtroom: 3, 17th Floor |

Pursuant to the Court's Further Case Management Scheduling Order of February 1, 2024 (Dkt. 367), and in advance of the Case Management Conference set by the Court for Thursday, October 10, 2024, at 10:00 a.m. (which has been scheduled to take place remotely via Zoom), Plaintiffs Anibal Rodriguez, Sal Cataldo, Julian Santiago, and Susan Lynn Harvey ("Plaintiffs") and Defendant Google LLC ("Google") hereby submit this Joint Case Management Statement. This includes a report on the parties' progress since the last Joint Case Management Statement filed on January 25, 2024. Dkt. 363.

### 1. JURISDICTION AND SERVICE

Google has been served and the Court has jurisdiction over this matter.

### 2. FACTS

The parties' prior Joint Case Management Conference Statements and class certification briefing include summaries of the principal factual issues in dispute.

### 3. LEGAL ISSUES

The parties raise certain issues below that include certain legal issues but have no separate legal issues to raise at this time.

### 4. MOTIONS

<u>Motions Decided Since the Last CMC Statement</u>:

Since the last Joint Case Management Statement was filed on January 25, 2024 (Dkt. 363), the Court has "clarified" the class definitions (Dkt. 384), granted the parties' Stipulated Tolling Agreement (Dtk. 393), and granted Plaintiffs' Motion to Direct Notice to the Certified Classes (Dkt. 405), which the Court then modified pursuant to the parties' stipulations (Dkts. 412, 413, 424, 425).

<u>Pending Motions</u>:

Google's motion for summary judgment is fully briefed (Dkts. 383, 398, 406) and the Court held a hearing on July 25, 2024. Plaintiffs subsequently submitted a Statement of Recent Decision. Dkt. 421. The parties agree that the Court's summary judgment order should not issue until after the approved notice program concludes and class members have the opportunity to opt out. Dkt. 363 at 10. The deadline for opt-outs in this case will be January 6, 2025.

Anticipated Motions:

**Plaintiffs' Statement**:

In advance of trial, Plaintiffs anticipate filing motions *in limine* and possibly one or more *Daubert* challenges. There may also be motion practice tied to certain issues identified below. Plaintiffs will work with Google to narrow any issues or disputes before filing any such motions.

**Google's Statement**:

Google anticipates filing motions *in limine* and potential *Daubert* challenges. Google will confer with Plaintiffs to assess the scope of the disputes before filing any such motions. Plaintiffs' other issues addressed in Section 8 were first raised by Plaintiffs in the form of this CMC statement. If and when Plaintiffs pursue the required meet-and-confer process, Google will engage in good faith. If Plaintiffs file motions, Google will respond to them.

## 5. AMENDMENT OF PLEADINGS

No further amendments anticipated.

## 6. EVIDENCE PRESERVATION

No changes since the last joint statement.

## 7. DISCLOSURES

**Plaintiffs' Statement**:

On September 16, 2024, Plaintiffs served their third amended Rule 26 disclosures. Those amended disclosures are attached as Exhibit 3 to this joint submission.

Below, Google states that it intends to file three motions seeking relief in connection with three aspects of Plaintiffs' amended disclosures. Plaintiffs respond briefly to each below. Plaintiffs will meet and confer with Google regarding any motions Google intends to bring and then respond accordingly.

*First*, Google states below that it intends to file a motion preventing former Google employee Blake Lemoine from testifying at trial. As detailed in the prior joint CMC statement (Dkt. 363 at 5-6), Mr. Lemoine first contacted Plaintiffs' counsel in fall 2023. Mr. Lemoine did that because of news articles regarding Google's unlawful collection processes, and he indicated that he had personal knowledge about how Google's artificial intelligence uses (s)WAA-off data. On

October 4, 2023, shortly after that outreach by Mr. Lemoine, Plaintiffs served their second amended Rule 26 disclosures, which included Mr. Lemoine. That was timely and appropriate. Mr. Lemoine was also identified in the *Brown* case, where Judge Gonzalez Rogers ordered Mr. Lemoine's deposition as a "potential whistleblower" whose testimony in many way "guts" Google's defenses. Dkt. 1080 at 83, *Brown v. Google*, No. 4:20-cv-03664-YGR (N.D. Cal.). Plaintiffs offered to make Mr. Lemoine available for a deposition in this case, and Google declined. Plaintiffs then submitted portions of Mr. Lemoine *Brown* deposition in support of their opposition to Google's summary judgment in this case (*see* Dkts. 398-36 and 415-1), without any objection by Google. Blocking Mr. Lemoine's testimony at trial in this case would be improper and prejudicial to Plaintiffs. Perhaps that is why, when Plaintiffs sent Google a draft of its portion of a joint letter-brief seeking production of Mr. Lemoine's documents, Google refused to respond or complete its own portion. Plaintiffs have never dropped the issue. Plaintiffs never filed the letter-brief because, without Google's portion, they could not comply with Judge Tse's requirement to file *joint* letter-briefs. Plaintiffs will nonetheless meet and confer with Google regarding any motion Google wishes to bring regarding Mr. Lemoine and respond accordingly.

**Second**, Google states below that it will also file a motion seeking to prevent Plaintiffs from calling Google CEO Sundar Pichai as a fact witness at trial. Plaintiffs made it clear during discovery that Mr. Pichai was a key fact witness in this case. Plaintiffs repeatedly highlighted evidence regarding Mr. Pichai's false statements to Congress about the data collection at issue in this case, including in expert reports, depositions, the Fourth Amended Complaint, the motion for class certification, and the opposition to Google's motion for summary judgment. *See* Ex. 3 at 7-8. Plaintiffs also questioned deponents in this case about Mr. Pichai's public statements regarding Google's privacy controls. *See, e.g.*, Oak Dep. Tr. at 297:24–280:10; Heft-Luthy Dep. Tr. at 96:9–16. That was more than sufficient. *See* Fed. R. Civ. P. 26, 1993 Adv. Comm. Notes. Mr. Pichai's testimony is relevant to numerous liability-related issues in this case, including the offensiveness of Google's conduct, Google's alleged consent defense, and punitive damages. Mr. Pichai works for Google, so Google can readily investigate his knowledge without any deposition. Plaintiffs intend to call Mr. Pichai as a fact witness. *See Mehmet v. PayPal, Inc.*, 2009 WL 921637 (N.D. Cal. April

3, 2009) (Seeborg, M.J.) (discussing distinction between fact and apex witnesses). There is no prejudice to Google. *See, e.g.*, *In re Jacoby Airplane Crash*, 2007 WL 559801, at **8–12 (D. N.J. Feb. 14, 2007) (permitting witnesses to testify given lack of surprise and prejudice). Plaintiffs will meet and confer with Google regarding any motion regarding Mr. Pichai and respond accordingly.

**Third**, Google states below that it will seek to exclude certain portions of the damages calculations set out in Plaintiffs' disclosures. Plaintiff's disclosures regarding how Plaintiffs intend to present these damages issues and calculations to the jury are timely and proper. Using the $3 per month payment by Google, Plaintiffs intend to present a damages calculation using data produced by Google regarding the number of (s)WAA-off accounts for each month during the class period. That is how Google and other market participants compensate users for mobile data, as detailed in Plaintiffs' expert reports, documentary evidence, and both parties' *Daubert* briefs. Plaintiffs have by no means conceded that such a methodology is "new," as Google claims below. Plaintiffs anticipate calculating the relevant number of months based in part on data that Google only recently produced, in August 2024. These damages calculations are straightforward and supported by evidence, including but not limited to expert testimony. Although Plaintiffs' disclosures explain how the jury can independently perform these calculations based on evidence in the record, Plaintiffs have not yet served their supplemental damages report. Google notes that these calculations could yield substantial damages, but that is the result of the breadth and duration of Google's unlawful conduct, not a new or reverse-engineered methodology. Once Plaintiffs do that, Plaintiffs will meet and confer with Google regarding any motion Google intends to file and then respond accordingly.[1]

Plaintiffs will, of course, meet and confer with Google regarding any contemplated motion and respond accordingly.

---

[1] Google relies on *Netfuel, Inc. v. Cisco Systems Inc.*, 2020 WL 4381768 (N.D. Cal. July 31, 2020), but that case is very different. In that patent case—a context in which damages calculations are unusually "complex[]," making it especially "important that parties timely supplement material changes to their theories of damages"—the plaintiff "added copious new facts" to the record and disclosed "material[ly] different" and discrete damages theories after the close of discovery. In this case, however, the actual damages theory is comparatively simple and has long been known to Google.

**Google's Statement**:

Plaintiffs have twice served "amended" Rule 26 initial disclosures after discovery closed in this case. Neither amendment was appropriate. Both were untimely and prejudicial. Google objects to them both.

Plaintiffs second "amended" Rule 26 disclosures disclosed a new witness, former Google employee Blake Lemoine, after discovery closed, without justification. Plaintiffs demanded that Google produce Lemoine's documents and then let Plaintiffs depose Lemoine, their own client: a perplexing request Google rejected. Plaintiffs never brought it up again.[2] Google objects to any effort by Plaintiffs to present witnesses at trial that were not timely disclosed. There are also independent reasons why Lemoine–a self-professed "whistleblower" who has no relevant knowledge of the specific data at issue here –should not be permitted to testify at trial in this case as well. Google intends to move to exclude him from trial at the appropriate time.

Plaintiffs' third "amended" Rule 26 disclosures added another witness: Google's CEO Sundar Pichai. Disclosing Google's CEO as a "witness" at this stage, long after discovery closed, is plainly inappropriate. Google objects seeks permission to move now to exclude him from trial. Mr. Pichai has no relevant knowledge, which is why Plaintiffs never moved the Court to order his testimony or production of his documents during the discovery period. Google seeks permission to file its motion now to resolve this issue so that Mr. Pichai can have adequate advance notice as to his schedule if he is compelled to testify at trial.

The third "amended" Rule 26 disclosures, served on the heels of an unsuccessful mediation, also disclose a new, four-and-a-half-page damages opinion that Plaintiffs never disclosed during expert discovery. The new damages opinion seeks to multiply Google's damages exposure on one of the two damages models proposed by Plaintiffs' expert by several multiples without any basis or justification for the late disclosure. At one point, Plaintiffs suggest Google's damages exposure from

---

[2] In February 2024, Plaintiffs served a draft letter brief on Google asking the Court for "an order (1) granting leave for Plaintiffs to exceed the current deposition limit to take Mr. Lemoine's deposition, and (2) requiring Google to review and produce documents from the custodial files of another individual with key knowledge—former Google employee Blake Lemoine." They subsequently dropped the issue entirely. No letter brief on this was ever filed.

this model should increase from the $486 million disclosed during expert discovery to over $15 billion, a 30x multiple, all based on logic and calculations never disclosed during discovery.

Expert discovery in this case closed *over a year ago*, on July 14, 2023, and Plaintiffs' eleventh hour introduction of a new expert opinion as a supplement to Plaintiffs' initial disclosures goes beyond the scope of what is envisioned by the Federal Rules. *See, e.g., Netfuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-CV-02352-EJD, 2020 WL 4381768, at *4, 7 (N.D. Cal. July 31, 2020) (granting defendant's motion to strike plaintiff's supplemental damages contentions produced seven months after the close of discovery; "[T]he fact that Plaintiff identified their theory of damages . . . does not give Plaintiff *carte blanche* authority to add copious new facts and discrete theories months after fact discovery closed.").

Plaintiffs do not deny that they have disclosed a new expert opinion inside of their initial disclosures—and they now apparently threaten to incorporate it into a "supplemental" expert report. But, in January 2024 Plaintiffs conceded, as was required by the rules, that their damages expert, Mr. Lasinski, would update his calculations to reflect the additional time period at issue but that "[h]is methodologies will remain the same." Ex. A (email dated Jan. 10, 2024). Plaintiffs' amended disclosures are contrary to that representation and the rules. For these reasons, Google objects to the untimely disclosed expert damages theory and will move to exclude it from trial at the appropriate time.

8.   **DISCOVERY**

**Plaintiffs' Statement**:

The parties are continuing to meet and confer regarding certain issues, which may at some point require additional briefing. For the Court's consideration, the parties include below some additional details regarding two current disputes. These disputes exist in part because fact and expert discovery closed before the class period ended. Google made certain representations about what data it would provide after class certification and through the close of the class period. The classes were certified on January 3, 2024 (Dkt. 352), the Court amended the class definitions on April 5, 2024 (Dkt. 384), and the class period ended last month, on September 23, 2024 (Dkt. 395 at 1; Dkt.

401; Dkt. 405). The parties are meeting and conferring regarding the scope of any additional information that Google will provide to Plaintiffs.

To prepare for trial and address the gap between the end of fact and expert discovery and the end of the class period—with additional class members during that period, ongoing misconduct by Google, and additional enrichment and damages—Plaintiffs recently followed up with Google with some requests for class member information. Plaintiffs had hoped to work through these issues with Google cooperatively, without burdening the Court, and it appears that the parties might make some additional progress on these issues through further meet and confer efforts. For the Court's consideration, the following describes two issues currently in dispute.

Issue #1: Google's refusal to supplement its October 2022 data productions through the remaining 23 months of the certified class period.

The first issue focuses on certain information Google previously provided in October 2022, which was used by the parties' respective damages experts. This information included, for example, the total number of active U.S. Google accounts with WAA or sWAA turned off (which was used in part to calculate the number of class members) and certain Google profit and loss information (which was used in part to calculate Google's unjust enrichment).

Plaintiffs' damages expert used the information Google produced in October 2022 to, among other things, calculate unjust enrichment and actual damages through the end of 2022.

Given that the class period continued after 2022, it was clear that Plaintiffs would at some point need to serve one or more supplemental reports (consistent with Rule 26) and that it would be appropriate for Plaintiffs to seek some additional productions from Google.

In January of this year, after the Court issued its class certification order (Dkt. 352), Plaintiffs notified Google that they would seek updated information for the period through the end of the Class Period (i.e., through September 23, 2024). Plaintiffs viewed those updates as consistent with Rule 26 and appropriate in part to update damages and other calculations through the end of the class period. Google agreed to refresh the information upon which the parties' damages experts relied, but to do so only once.

In August 2024, before the class period had concluded, Google produced certain portions of this information—covering only the time period through mid-2024. There were three issues with that production. *First*, it does not cover the complete Class Period. Plaintiffs have requested data through September 23, 2024. *Second*, this production was *different* from the October 2022 productions in ways that are important. The newly produced Google spreadsheets contain new details and kinds of information not previously provided to Plaintiffs during discovery, with different formatting and content as compared to what Google produced to Plaintiffs and their experts in 2022. Plaintiffs requested information to understand these differences in order to prepare supplemental expert reports and prepare for trial. It would be unfair to allow Google to use the one-sided updates for its own defense at trial, while denying Plaintiffs an opportunity to understand the new productions. *Third*, certain information is missing from Google's productions. For example, Google previously agreed to produce updated statistics regarding the percentage of conversions bid against Google Analytics for Firebase, which is an input to Mr. Lasinski's unjust enrichment methodologies. Google has not produced this information, without any explanation.

Plaintiffs have endeavored to address these issues with Google directly, and those efforts are ongoing. On September 16, 2024, Plaintiffs sent Google a letter asking to meet and confer about the August 2024 supplemental data productions. That letter is Exhibit 1. In the letter, Plaintiffs asked Google to produce complete and correct data upon the conclusion of the Class Period on September 23, 2024. And in an Appendix to the letter, Plaintiffs asked sixteen specific questions about the formatting and contents of the August 2024 data productions. *Id.* at 4-6. Plaintiffs' goal was to obtain basic information regarding those new productions, so that the parties could meet and confer regarding next steps. On September 17, 2024, Google's counsel sent an email refusing to produce a complete refresh of the data through the end of the Class Period and declining to address Plaintiffs' other requests because discovery "is closed." Google's response is attached as Exhibit 2 to this submission. Plaintiffs are seeking to meet and confer further on these issues.

One of Plaintiffs' concerns is that Google seeks to ambush Plaintiffs at trial. While Plaintiffs can proceed based on reasonable assumptions regarding the nature of this data, with their damages expert once again making certain extrapolations through the end of the Class Period, Plaintiffs are

concerned that Google will at trial seek to attack those assumptions or attack Plaintiffs and their experts based on the lack of a more complete data set (which Google refuses to produce) or additional information regarding these productions (which Google refuses to provide). Google cannot have it both ways. Google cannot refuse productions and then argue at trial that Plaintiffs did not obtain such evidence. If Google produces and supplements from data it unilaterally holds, the ability to supplement from such data should be available to Plaintiffs as well.

Issue #2: Google's refusal to produce a sample of class members' app activity data.

The second issue is similar to the first. Google has so far refused to produce any of the app activity data that Google collected from class members during the class period. While Plaintiffs can ask the jury to draw certain inferences using the information Google did produce, including for purposes of calculating damages through the end of the class period, Plaintiffs are concerned that Google will improperly seek to present argument and evidence at trial based on Google's own refusal to provide any of the requested class member app activity data.

Plaintiffs requested production of this information during fact discovery. For example, with one document request (RFP 109), Plaintiffs sought from Google "activity data collected by Google during the Class Period for a sample of 5,000 individuals." While there are nearly 91 million class members, Plaintiffs asked for data from a random sample of just 5,000 individuals.

One purpose of Plaintiffs' request for this sample was to illustrate to the jury the nature, breadth, and frequency of Google's collection of app activity data during the class period. A random sample would permit the jury to: (i) better understand what app activity data Google collected from class members, and the personal and sensitive nature of that data; and also (ii) to draw inferences about how frequently Google collected that data.

Google refused to produce any class-member sample during discovery, in part on the basis that no class had yet been certified. Google took the position that producing records tied to any of the putative absent class members was "premature" because the Court had not yet certified any class. *See, e.g.*, Ex. 4 (Google's R&Os to Plaintiffs' Third Set of RFPs) (Google objecting to request for production of documents regarding class members' (s)WAA activity because "a class has not yet been certified in this Action") ; Ex. 5 (email from counsel referencing these "legal concerns"

with producing a sample of data generated by class members). As a result, during fact discovery, Google only produced the app activity data that Google collected from the named plaintiffs' devices, without any app activity data from class members.

This issue is no longer "premature." The Court issued its class certification order on January 3, 2024 (Dkt. 352) and its clarification ruling on April 5, 2024 (Dkt. 384).

On September 16, 2024, once it was clear that the class period would end on September 23, 2024, Plaintiffs renewed their request to Google to produce an unfiltered data sample. *See* Ex. 1 at 1-2. Plaintiffs requested data from 5,000 devices of U.S.-based users (which is even narrower than the prior request, which was 5,000 individuals, not devices), and Plaintiffs offered to allow Google to make the randomized selection of which devices' data to produce. Plaintiffs also told Google that Plaintiffs are "open to another" sampling technique for this exercise. *Id.* Plaintiffs made this request in the same letter, already discussed in Issue #1, in which Plaintiffs asked questions about Google's August 2024 spreadsheets.

Google refused to produce the requested unfiltered sample of class members' app activity data. On September 17, 2024, Google's counsel refused Plaintiffs' request, stating that "discovery is closed." Ex. 2. As Google's own statements herein demonstrate, Plaintiffs are rightfully concerned that Google will seek to use its refusal to produce data offensively, in part to attack Plaintiffs' legal theories and damages calculations.

As one example, this data would be useful to show the jury that Google's conduct was "offensive"—which is one element of the privacy torts. In evaluating the offensiveness of Google's collection of data, it would help the jury to see examples of the specific data Google collected and saved.

As a second example, the requested data sample would be relevant to the jury's damages computation. Plaintiffs compute each class member's damages by multiplying (i) a reasonable dollar value for the right to collect data during one "device month" by (ii) the number of "device months," i.e., the number of months in which Google was able to collect (s)WAA-off app activity data from a class member's device. *See* Ex. 3, at 10 (Rule 26(a) disclosure). The requested data sample will show that Google's collection of this data was (on average) *frequent*, i.e., in any given month,

1   Google collected on average numerous collections of different pieces of app activity data. That
2   information will allow the jury to infer that, on average, there was at least some app activity
3   collected from class members' devices during each "device month." *Id.* at 11.

4         Producing the requested data sample could be done quickly, and there is plenty of time
5   between now and trial for Google and Plaintiffs to work cooperatively to accomplish this modest
6   sampling exercise. Alternatively, if Google is unwilling to produce the data, then Google should not
7   be able to use that refusal offensively at trial, for example by criticizing Plaintiffs or their experts
8   for making reasonable inferences about what that data is likely to show.

9         Plaintiffs hope to narrow the scope of this dispute through additional meet and confer efforts
10  with Google over the coming weeks.

11        **Google's Statement**:

12        Plaintiffs are staring a trial head-on, and they regret certain choices they made in discovery.
13  This Court need not entertain nor assuage their regrets. Google produced the relevant financial data
14  according to the originally agreed-upon terms. And, the Court and Judge Tse already decided that
15  Google need not produce the requested class-member sample data. Google did produce, however,
16  the class member and sample logs data during expert and fact discovery that the parties agreed on.

17        Plaintiffs' feigned surprise and concerns about being ambushed are a veiled attempt to
18  reopen discovery to obtain additional information they suddenly believe would be "useful" for them
19  to show the jury now that there is "plenty of time between now and trial." Google will respond to
20  any discovery motion Plaintiffs bring in the forum this Court deems appropriate. To the extent the
21  Court is interested in this dispute any further at this juncture (with no motion pending), Google
22  responds to Plaintiffs' mischaracterizations below.

23  **Issue #1: Google supplemented October 22 data productions per the Parties' agreed-upon**
24  **parameters.**

25        As Plaintiffs admit, on January 26, 2024, Google informed Plaintiffs that it would
26  supplement financial data and statistics only once. Ex. B (email dated Jan. 26, 2024). After
27  discussing the timing of this supplemental production and the dates of financials it would contain,
28  Google produced that supplemental data in August 2024, prior to the Parties' mediation to ensure

1   that each party could meaningfully participate in potential settlement negotiations. Plaintiffs
2   downloaded the data productions on August 12th and 20th, did not object to the productions, did
3   not tell Google to pause the productions, or ask any questions about the updated data until exactly
4   one month *after* the mediation—i.e., after using the supplemental data to inform their positions
5   during mediation and after revising their damages calculations and purported methodology as
6   reflected in their third amended Rule 26 disclosures.

7   Plaintiffs claim now that Google's production was prejudicial because it does not contain
8   "certain information" and did not cover the complete Class Period: it's missing, as Plaintiffs knew
9   it would, the period between when the data was pulled and Sept. 23, the date on which the class
10  notice period began. But Google's production covered the agreed-upon time period and requested
11  revenue data. Indeed, on May 31, 2024 Plaintiff requested that Google come to an upcoming meet-
12  and-confer prepared to discuss when it would be able to "update the damages inputs **through July**
13  **1, 2024** as previously agreed." Ex. C (email dated May 31, 2024). During the parties' June 6, 2024
14  meet-and-confer, Google communicated that it was preparing to produce the supplemental damages
15  inputs in the following months, and as early as mid-July, in light of the fact that the Class Period
16  end date was July 1, 2024. Plaintiffs did not object.

17  And even if Google had collected the requested data the day after September 23, 2024,
18  financial data from Google's third quarter would not have been complete and could not have been
19  produced. If Plaintiffs had asked, Google would have told them it has no objection to both parties'
20  experts making reasonable estimates to cover the miniscule hangover period of time that is missing.
21  And for select periods of time for which data only currently exists through 2023, Google is also
22  happy to supplement with updated data after the close of 2024 to cover the first half of 2024 for
23  those figures–a relatively small request that is far different and more reasonable than what Plaintiffs
24  actually asked for in their letter and email.

25  As for supposed formatting differences that Plaintiffs ominously claim "may" be important,
26  Google is a dynamic company. The way its financial systems track and spit out information are not
27  exactly the same now as they were the last time the parties underwent this exercise. To the extent
28  Plaintiffs have formatting questions for Google, Google will answer them; but the letter Google

refused to respond to as untimely was not a list of mere formatting questions; it was an unjustified attempt to reopen discovery well after the deadline.

Plaintiffs have the data they need for their experts to supplement their damages calculations. Google's experts will rely on that same data to supplement their calculations before and up until trial and have not represented otherwise.

Finally, to the extent Plaintiffs' third "amended" Rule 26 initial disclosure are a harbinger of "amended" expert *opinions,* as opposed to mere supplemented calculations, Google never agreed to such amendment, and doing so now is improper. Adding in some financial data from the post-2022 time period is no excuse to start redoing Plaintiffs' entire case.

**Issue #2:** Plaintiffs' request for sample class members' app activity data is untimely and unnecessary.

Plaintiffs' second issue is wholly unrelated to the first. It is a discovery issue that has previously been addressed by Judge Tse and that lacks relevance to the remaining issues to be resolved in this case. In short, 700 days after discovery closed in this case, Plaintiffs seek to reopen discovery and revisit their denied request that Google preserve and then produce a sample of class members' "app activity data." Judge Tse already found that "plaintiffs haven't explained why they can't conduct such a sampling using the data Google regularly saves, or using the named plaintiffs' data (which Google has offered to save and produce) as opposed to all of the proposed class members' data (which is what the plaintiffs seek)." (Dkt. 185 at 2).

Plaintiffs acknowledge Judge Tse's ruling on the issue and Google's well-founded objections to additional productions of class members' data. And, importantly, Plaintiffs admit that there are satisfactory alternatives to this data that could achieve the same purpose–i..e, "Plaintiffs can ask the jury to draw certain inferences using the information Google did produce." Plaintiffs cannot argue prejudice. They have not argued and cannot argue that they cannot make their intended arguments before the jury at trial without the data they belatedly request. Furthermore, the pseudonymous records that Google keeps in connection with the prospective class members cannot reasonably be considered "app activity data" and therefore, Plaintiffs' requests for sampling of that data is irrelevant.

Indeed, Google produced data the named plaintiffs verified was associated with their devices that was collected via Google Analytics as early as 2021, which totaled approx. 6 gigabytes of data. Those data productions were extensively analyzed by Plaintiffs' technical expert team.[3]

Plaintiffs' claims that "[p]roducing the requested data sample could be done quickly" and that "there is plenty of time between now and trial" for Google to produce this data is misleading and, frankly, alarming. Without demonstrating that Google has failed to meet its discovery obligations and without a compelling showing of need, Plaintiffs should not be given leave to request anything more. Regardless of how much time there is between now and trial, the discovery deadlines have long passed, and those deadlines are not meant simply to be shrugged off when litigants suddenly identify more material that might be "useful" to them.

Further, Plaintiffs did choose one of the alternatives Judge Tse suggested, and should not now be countenanced to regret that choice. Today they ask for absent class member data, but Plaintiffs instead chose a different sampling process: their technical experts created their own accounts on their own devices and used them for a period of time while Google recorded and then gave back to Plaintiffs the data that was sent via Google Analytics from those experts' devices. The technical experts analyzed the data at length, produced back to Google reports and extensive opinions about them, and Google questioned Plaintiffs' technical expert about the sample "app activity data" at deposition. Google never promised to permit even more sampling of data after class certification, and Google's objections to class-member ran far deeper than just that a class had not been certified; they also included privacy, technological, and logistical concerns. Ex. D (email dated Apr. 15, 2022). That is why *after* Google lodged those objections, Plaintiffs ended up choosing the sampling-by-expert route that they used.

---

[3] Plaintiffs gloss over what Google *has* produced, which Plaintiffs' technical expert opined on:
- Summary of the WAA and sWAA settings of Sal Cataldo, Susan Harvey and Anibal Rodriguez. *See* Hochman Report in Appendix A.
- Data from Plaintiffs' devices consists of Android app analytics data located using ADIDs extracted from the named Plaintiffs' devices (GOOG-RDGZ-00071766; GOOG-RDGZ-00071767). *See* Hochman Report Appendices B.1 and B.2.
- Data including WAA-off and sWAA-off events from each of the named Plaintiffs' devices and test devices. *See* Hochman Report Appendix K.

What's really going on here is that Plaintiffs' experts found nothing unusual: the supposedly offensive data collection amounted to anodyne bits and bytes collected to help app developers understand their own apps. The conspiratorial and apocalyptic predictions about Google unmasking users, violating private interests in sensitive apps, and all the rest: none of that came to pass, as Plaintiffs' technical expert was forced to admit at deposition. The Court can rest assured none of that was proven by this massive sampling project that involved well over 30,000 log entries because none of it was presented to the Court as a basis for denying summary judgment.

That is why now, post-summary judgment and after an unsuccessful mediation, Plaintiffs suddenly want another try at showing offensive data collection.

The Court should deny Plaintiffs' request to unilaterally reopen discovery to seek data that Plaintiffs have admitted they do not *need* but merely desire to augment their jury illustrations at trial. Plaintiffs should not be authorized to move to reopen discovery, nor to re-raise this dispute with Judge Tse.

**9.     CLASS CERTIFICATION**

The Court issued its class certification ruling on January 3, 2024 (Dkt. 352) and then its order modifying the class definitions on April 5, 2024 (Dkt. 384).

The parties have reviewed the Procedural Guidance for Class Action Settlements.

**10.    RELATED CASES**

None.

**11.    RELIEF**

The operative complaint (Dkt. 289) and amended Rule 26 disclosures detail Plaintiffs' requested relief, which includes without limitation all available monetary and injunctive relief.

**12.    SETTLEMENT AND ADR**

The parties engaged in mediation on August 17, 2024, which resulted in an impasse.

**13.    OTHER REFERENCES**

None.

**14.    NARROWING OF ISSUES**

The parties will discuss whether issues can be narrowed in ways that can expedite the presentation of evidence at trial.

**15.    SCHEDULING**

<u>**Plaintiffs' Statement**</u>:

The parties agree that the Court's summary judgment order should not issue until after the approved notice program concludes and class members have the opportunity to opt out. Dkt. 363 at 10. The notice program began on September 23, 2024, it will conclude on November 7, 2024, and class members will then have 60 days to exclude themselves from the classes, with a deadline of January 6, 2025. Plaintiffs will then provide a report of these exclusions to the Court no later than February 5, 2025.

At the summary judgment hearing, the Court informed the parties that it has a criminal trial set in February 2025, and that trial of the instant case will likely be rescheduled from its current February 10, 2025 date. Although Plaintiffs would be prepared to try this case in February 2025, Plaintiffs are mindful of the Court's schedule and other commitments. Plaintiffs respectfully request that the Court schedule trial as soon as practicable, at which point the parties can then submit a proposal in terms of the pretrial deadlines.

<u>**Google's Statement**</u>:

Google does not believe it is in the best interests of the Court, the jury, or the parties to prepare for a February 2025 trial when the Court's first possible day for issuing a summary judgment order is likely January 7. Google proposes that the Court schedule trial for no earlier than May 2025.

Because the trial date will move, and because the Court cannot issue a summary judgment Order until after the opt-out period closes, Google believes it is appropriate to move the *Daubert* deadline to 30 days after the Court issues its summary judgment Order.

### 16. TRIAL

**Plaintiffs' Statement**:

Plaintiffs seek to try their certified Rule 23(b)(3) damages claims to a jury, with the Court deciding the scope of injunctive relief for the Rule 23(b)(2) classes. As stated in Plaintiffs' proposed trial plan, submitted with their class certification motion, Plaintiffs estimate that trial can be completed in approximately 14 court days, with Plaintiffs and Google splitting the time equally.

**Google's Statement**:

Google believes 10 court days is sufficient for trial of this matter. Google does not oppose Plaintiffs' proposal with regards to the splitting of time between the parties. Google agrees any injunctive relief for the Rule 23(b)(2) classes is an issue for the Court.

### 17. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

The parties filed these disclosures. Dkt. 18, 32.

### 18. PROFESSIONAL CONDUCT

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Date: October 3, 2024

By: /s/ Benedict Y. Hur

*I, Benedict Y. Hur, attest that all signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

WILLKIE FARR & GALLAGHER LLP
BENEDICT Y. HUR (SBN: 224018)
bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
esantacana@willkie.com
ARGEMIRA FLÓREZ (SBN: 331153)
aflorez@willkie.com
HARRIS MATEEN (SBN: 335593)
hmateen@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

*Attorneys for Defendant GOOGLE LLC*

| | | |
|---|---|---|
| Date: October 3, 2024 | By: | /s/ Mark C. Mao |

David Boies (admitted pro hac vice)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile (415) 293-6899

James Lee (admitted pro hac vice)
jlee@bsfllp.com
Rossana Baeza (admitted pro hac vice)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Alison L. Anderson, CA Bar No. 275334
alanderson@bsfllp.com
M. Logan Wright, CA Bar No. 349004
mwright@bsfllp.com
BOIES SCHILLER FLEXNER LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (213) 629-9040

Bill Carmody (pro hac vice)
bcarmody@susmangodfrey.com
Shawn J. Rabin (pro hac vice)
srabin@susmangodfrey.com
Steven Shepard (pro hac vice)
sshepard@susmangodfrey.com
Alexander P. Frawley (pro hac vice)
afrawley@susmangodfrey.com
Ryan Sila (pro hac vice)
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

John A. Yanchunis (pro hac vice)
jyanchunis@forthepeople.com
Ryan J. McGee (pro hac vice)
rmcgee@forthepeople.com
Ra O. Amen (admitted pro hac vice)
ramen@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

*Attorneys for Plaintiffs*

## **FILER'S ATTESTATION**

Pursuant to Civil Local Rule 5.1, I attest that all signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

DATED: October 3, 2024          WILLKIE, FARR & GALLAGHER LLP


                                /s/ *Benedict Y. Hur*
                                Benedict Y. Hur