**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
alanderson@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
Ryan Sila (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br>          Defendant. | Case No.: 3:20-cv-04688-RS<br><br>**PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION TO STRIKE DAMAGES SUPPLEMENT (DKT. 442)**<br><br>The Honorable Richard Seeborg<br>Courtroom 3 – 17th Floor<br>Date: February 13, 2025<br>Time: 1:30 P.M. |

i

1

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 2

      A.    Plaintiffs Disclosed the Monthly Damages Method ................................. 2

      B.    Google Objected to Production of Class Member Data for a Monthly Calculation Before Class Certification ................................................... 4

      C.    In September 2024, Shortly After the Parties' Mediation, Plaintiffs Served the Amended Rule 26 Disclosures ................................................ 5

      D.    In October 2024, Google Represents that Additional Data Production Is Unnecessary Because the Jury Can Draw "Inferences" Regarding Those Damages ................................................................................................. 7

      E.    In January 2025, Plaintiffs Serve Mr. Lasinski's Supplemental Report ................. 8

III.  LEGAL STANDARD ...................................................................................... 10

IV.   ARGUMENT .................................................................................................. 10

      A.    The Challenged Supplemental Rule 26 Disclosure Properly Provides Illustrations Invited by Google ............................................................... 10

      B.    Mr. Lasinski's Supplemental Report Also Permissibly Seeks to Present the Jury with Illustrative Arithmetic ........................................................ 12

      C.    Google's Motion Should Also Be Denied Because Plaintiffs' Rule 26 Disclosures and Supplemental Report Are Substantially Justified ..................... 14

V.    CONCLUSION ............................................................................................... 18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Academy of Motion Pictures Arts & Scis. v. GoDaddy.com, Inc.*,
2013 WL 12122803 (C.D. Cal. June 21, 2013) ....................................................................... 16

*Atlas Flooring, LLC v. Porcelanite S.A.*,
425 F. App'x 629 (9th Cir. 2011) ................................................................................... 12, 15

*Benefit Cosmetics LLC v. e.l.f. Cosmetics, Inc.*,
2024 WL 3558848 (N.D. Cal. July 25, 2024) (Seeborg, J.) ........................................... 14, 16

*Bonzani v. Shinseki*,
2014 WL 66529 (E.D. Cal. Jan. 8, 2014) ............................................................................... 17

*California v. Ross*,
2019 WL 1975437 (N.D. Cal. Jan. 4, 2019) .......................................................................... 17

*City of Pomona v. SQM N. Am. Corp.*,
2023 WL 3143688 (9th Cir. Apr. 28, 2023) .......................................................................... 13

*Creswell v. HCAL Corp.*,
2007 WL 628036 (S.D. Cal. Feb. 12, 2007) .......................................................................... 15

*Drayton v. Eastlink Prods., Inc.*,
2018 WL 5264131 (C.D. Cal. Oct. 15, 2018) ........................................................................ 14

*Eisen v. Day*,
2024 WL 1244482 (N.D. Cal. Mar. 21, 2024) ....................................................................... 11

*F.D.S. Marine, LLC v. Brix Maritime Co.*,
211 F.R.D. 396 (D. Or. 2001) ................................................................................................ 17

*Finato v. Fink*,
803 F. App'x 84 (9th Cir. 2020) ............................................................................................ 15

*Fredette v. Allied Van Lines, Inc.*,
66 F.3d 369 (1st Cir. 1995) .................................................................................................... 13

*Hawks Hill Ranch, LLC v. Yarak*,
2024 WL 1421265 (N.D. Cal. Apr. 2, 2024) ......................................................................... 11

*In re Williams-Sonoma, Inc.*,
947 F.3d 535 (9th Cir. 2020) ................................................................................................... 5

ii

*Kennis v. Metro. W. Asset Mgmt., LLC,*
  2018 WL 9440483 (C.D. Cal. Nov. 29, 2018) ........................................................................ 11

*KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC,*
  729 F. Supp. 3d 84 (D. Mass. 2024) ............................................................................... 13, 15

*Liberty Mut. Fire Ins. Co. v. Bosa Dev. Cal. II, Inc.,*
  2019 WL 3554938 (S.D. Cal. Aug. 5, 2019) ........................................................................ 15

*Luke v. Fam. Care & Urgent Med. Clinics,*
  323 F. App'x 496 (9th Cir. 2009) ......................................................................................... 11

*Maharaj v. Cal. Bank & Tr.,*
  288 F.R.D. 458 (E.D. Cal. 2013) .......................................................................................... 14

*Mandrigues v. World Savings, Inc.,*
  2008 WL 11388759 (N.D. Cal. June 20, 2008) (Seeborg, J.) ................................................ 5

*Mass Probiotics v. Aseptic Tech., LLC,*
  2017 WL 10621233 (C.D. Cal. Dec. 21, 2017) .................................................................... 11

*Multifamily Grp., LLC v. Assurance Risk Mgrs., Inc.,*
  2009 WL 10692948 (E.D. Cal. June 25, 2009) .................................................................... 17

*Power Integrations, Inc. v. ON Semiconductor Corp.,*
  396 F. Supp. 3d 851 (N.D. Cal. 2019) .................................................................................. 11

*Ramirez v. Zimmerman,*
  2020 WL 905603 (S.D. Cal. Feb. 25, 2020) ......................................................................... 10

*Reyes v. City of Glendale,*
  2009 WL 2579614 (C.D. Cal. Aug. 19, 2009) ...................................................................... 14

*S.F. Baykeeper v. W. Bay Sanitary Dist.,*
  791 F. Supp. 2d 719 (N.D. Cal. 2011) .................................................................................. 14

*Spin Master, Ltd. v. Zobmondo Entm't, LLC,*
  2011 WL 13127349 (C.D. Cal. Sept. 15, 2011) ................................................................... 15

*Thissel v. Murphy,*
  2017 WL 2462316 (N.D. Cal. June 7, 2017) ........................................................................ 14

*Vogt v. State Farm Life Ins. Co.,*
  963 F.3d 753 (8th Cir. 2020) ................................................................................................ 13

*Wechsler v. Macke Int'l Trade, Inc.,*
  221 F.R.D. 619 (C.D. Cal. 2004) .......................................................................................... 14

iii

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) .......................................................................................... 10

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................ *passim*

Fed. R. Civ. P. 37 ................................................................................................................ 10

iv

# I.    INTRODUCTION

Google moves for sanctions striking a portion of Plaintiffs' amended Rule 26 disclosures. The challenged disclosure concerns Plaintiffs' calculation of compensatory damages. The calculation is $3 for each month Google collected data for a device that had "Web and App Activity (WAA)" set to off to preclude such collection. Google relies on the deposition testimony of Plaintiffs' expert Michael Lasinski who at the time, without the data required to determine the actual months of collection, had calculated damages using one month per device as a "conservative floor" (Dkt. 364-17 at 70:13-17) to now argue that Mr. Lasinski should be precluded at trial from making any other calculations.

Although in form a motion to strike a Rule 26 disclosure, Google's motion is in effect an attempt to limit the expert testimony of Mr. Lasinski. Despite Google's rhetoric, Google concedes in its motion (Mot. at 11), as it did in the October 3, 2024 Joint Case Management Statement (Dkt. 427 at 13), that Plaintiffs can ask the jury to infer from the evidence available to it the actual number of months per device that should be used in Plaintiffs' $3 per month calculation. Google's October 2024 concession (repeated in its motion) was not gratuitous or inadvertent. Google had initially promised to provide evidence of the actual months Google collected data from devices set to prevent Google's data collection when and if a class was certified. When Google reneged on this promise, it justified its refusal to produce such evidence by agreeing that Plaintiffs could ask a jury to find the number of such months based on evidence that had already been produced.

Google objects that permitting Mr. Lasinski to testify concerning the damages that would result from a jury finding that Google collected data from devices that were "off" during more than one month would involve a "New Opinion." That is nonsense. The only "opinion" is that a reasonable, and conservative, damages amount is $3 per month per device. That opinion is clearly stated in Mr. Lasinski's initial report. Mr. Lasinski's supplemental report merely includes arithmetic calculations of what that opinion would yield depending on alternative jury findings. Google's motion was filed before Google had received Mr. Lasinski's supplemental report. Perhaps Google believed that he would opine on the actual number of months. But he explicitly

1

did not. As a result, there is no "New Opinion," just the opportunity to have him provide accurate and helpful arithmetic to the jury.

As discussed in detail below, Mr. Lasinski (and Plaintiffs) repeatedly made clear that the one-month illustrative calculation was a "floor" not a ceiling, and that the calculation would be supplemented if (as Google had represented and Plaintiffs expected) actual data was made available. If that data had been made available, there would have been no dispute that supplemental calculations would have been appropriate. Instead, Google conceded that the jury could find the actual months of violation from evidence that Google had produced. There is no reason to prevent the jury from receiving the arithmetic calculation of what those findings mean based on Mr. Lasinski's consistent $3 per month, per device opinion. There is no "New Opinion." Even if there had been, despite conclusory rhetoric, Google fails entirely to show any actual prejudice—nor could it. There could be no actual prejudice from the jury receiving accurate arithmetic calculations of the result of findings it is conceded the jury is entitled to make.

## II.      BACKGROUND

### A.      Plaintiffs Disclosed the Monthly Damages Method

On October 7, 2020, shortly after the complaint was filed, Plaintiffs served their initial Rule 26(a)(1) disclosures. Mao Ex. 1. Plaintiffs disclosed that they would seek "compensatory damages," in addition to "restitution, and disgorgement." *Id.* at 3. Plaintiffs also disclosed that the computation of damages would require "expert analysis." *Id.* Then on October 31, 2022, Plaintiffs served their first amended Rule 26(a)(1) disclosures, which again disclosed their intent to seek, among other relief, compensatory damages, as well as the need for expert analysis. Mao Ex. 2 at 7-8. Google raised no concerns or objections to either set of disclosures. Mao Decl. ¶ 3.

In February 2023, consistent with the Court's scheduling order (Dkt. 301), Plaintiffs served Mr. Lasinski's expert report on damages. Dkt. 364-23 ("Lasinski Rep."). Mr. Lasinski assessed comparable market transactions and concluded that the "most probative indicator … is derived from the *monthly* compensation structure for participants in Google's Ipsos Screenwise Panel." *Id.* ¶ 151 (emphasis added). He stated that compensatory damages should be computed at the value of $3 per month per device:

2

> [I]t is my opinion that the baseline payment to Screenwise Panel participants of **$3 per month** for using a Screenwise meter app on a single mobile device … represents a conservative indicator of the **monthly payment** necessary for an individual to knowingly surrender the choice to keep app activity private and allow Google to track app activity data, regardless of that individual's WAA or sWAA settings [i.e., actual damages].

*Id.* (emphasis added); *see also id.* at ¶ 131. Mr. Lasinski's report disclosed compensatory damages of $3 per month for each month in which Google collected app activity data from a class member's device. *Id.* For ease of reference, Plaintiffs refer to a single month in which WAA/sWAA-Off Data is collected from a single device as a "device-month."

At the time of his initial report, Mr. Lasinski did not have information that could be used to calculate the total number of device-months in which Google collected data from class members. Google had produced information about the number of accounts that had the (s)WAA setting turned off during each month, but it had not yet produced records of the monthly number of (s)WAA-off accounts or devices from which Google *collected app activity data*. Lasinski Dep. at 70:18–71:9; *see also id.* at 57:10–58:7. Mr. Lasinski accordingly disclosed his "understand[ing] that additional information relevant to the determination of damages may become available subsequent to the issuance of [his] report." Lasinski Rep. ¶ 16. He also stated that his "opinions and conclusions" were "subject to change" based on that "additional discovery." *Id.*

Lacking data regarding the *total* number of device-months during which Google collected WAA/sWAA-Off Data, Mr. Lasinski offered his opinion that compensatory damages should be based on device-months and computed a "*conservative[] measure[]*" of damages under his methodology. *Id.* ¶ 161 (emphasis added). Mr. Lasinski applied the monthly $3 payment to each class member's device on just a *one-time* basis, on the safe assumption that Google collected WAA/sWAA-Off Data from each device during *at least* one month. Lasinski Dep. at 61:17–62:14; *see* Dkt. 331 (*Daubert* Opp.) at 19–20 (explaining this in detail). This calculation yielded approximately $486 million in compensatory damages through December 2022. Lasinski Rep. ¶ 161 & fig. 50.

In June 2023, Google's counsel deposed Mr. Lasinski and asked him to confirm that this calculation was a "conservative floor" for those compensatory damages. Lasinski Dep. at 70:13–

17. Mr. Lasinski answered: "That is correct." *Id.* The fact that this was a conservative floor was also clear in other filings. *See also*, *e.g.*, Dkt. 314-3 ("Class Cert. Mot.") at 22 ("Mr. Lasinski calculated that Google would have had to pay *at least* $486 million to persuade class members to give up their data and their peace of mind" (emphasis added)); Dkt. 314-4 ("Trial Plan") at 5 (same).

On October 3, 2023, Plaintiffs served their second amended Rule 26 disclosures, which expressly referenced Mr. Lasinski's expert report and analysis. Mao Ex. 3 at 9. Once again, Google raised no concerns or objections. Mao Decl. ¶ 4.

**B.    Google Objected to Production of Class Member Data for a Monthly Calculation Before Class Certification**

During discovery, Plaintiffs sought data from Google that could be used by Mr. Lasinski as an input for purposes of calculating compensatory damages on a monthly basis. At the outset of this litigation, Plaintiffs asked Google to preserve absent class member data so that it could be queried or otherwise used by the appropriate people (e.g., experts, claims administrators) at the appropriate time. *See* Mao Ex. 4 at 4. Plaintiffs explained to Google that this data could be used to calculate damages, for example by "quantify[ing] the number of illegal interceptions" or the time periods during which those interceptions occurred. Dkt. 167 at 1.

Google's refusal to preserve this data led to a ruling by Magistrate Judge Tse suggesting a "sampling" approach instead of full preservation. Dkt. 185. In that ruling, Judge Tse acknowledged the relevance of (s)WAA-off app activity data to issues like damages. *Id.* at 2 (experts might be able to use this data "to quantify the number of illegal interceptions"). Judge Tse did not order full preservation in part because Google said that doing so would be too costly, because, "[e]ach day, Google's app measurement logs record on average "135 billion entries from Firebase-powered apps" saved by Google as "over 27 petabytes" of data. *Id.* at 1–2. In lieu of full-scale preservation, Judge Tse suggested "some form of statistical sampling" of "the data Google regularly saves." *Id.*

In keeping with Magistrate Judge Tse's ruling, Plaintiffs requested a data sample from Google. Less than a month after the Court denied Google's motion to dismiss, Plaintiffs asked Google to produce "activity data collected by Google during the Class Period for a sample of 5,000

4

individuals with Google accounts based in the United States." Mao Ex. 5 at 8 (RFP No. 109). As Judge Tse anticipated, Plaintiffs could have used this data to answer damages-related questions, including in terms of estimating the number of months during which Google collected app activity.

Google objected to production of any data sample or other information pertaining to putative class members as premature, as the Court had not yet certified any class. Mao Ex. 6 at 6–7 (objecting to requests relating to members of a purported class as "premature"); *see also, e.g.*, Mao Ex. 7 (objecting to eight other requests, including a request to "identify, by month during the Class Period, the number of users for which Google collected data while users had [WAA] turned off," as "premature because a class has not been certified in this Action"); Mao Ex. 8 (referring to Google's "practical, logistical, and legal concerns" with Plaintiffs' request for a sample of putative class member data). This information could compromise the privacy of absent class members, whom Plaintiffs and their counsel had not yet been appointed to represent. In a case *about* privacy, that was a concern Plaintiffs took seriously.[1] Google informed Plaintiffs that it would produce a data sample if and when a class were certified. Mao Decl. ¶¶ 5–7; Lee Decl. ¶¶ 3–5.

## C. In September 2024, Shortly After the Parties' Mediation, Plaintiffs Served the Amended Rule 26 Disclosures

The parties mediated for the first time in August 2024. Mao Decl. ¶ 8. Plaintiffs will not discuss the substance of those discussions. But we can say this: After the mediation, Plaintiffs for the first time believed there may be a dispute regarding the jury's ability to award compensatory damages above the conservative floor initially calculated by Mr. Lasinski.

On September 16, 2024, out of an abundance of caution, Plaintiffs served their third amended Rule 26 disclosures. Mao Ex. 9. Plaintiffs didn't believe they were *required* to do so, since the amended disclosures did not add new "categories" of damages or methods of "computation." Plaintiffs served the amended disclosures only to ensure that if Google *did* intend to raise any dispute, it would do so well in advance of trial.

---

[1] The Ninth Circuit had recently circumscribed pre-class certification discovery regarding absent class members. *See In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539–40 (9th Cir. 2020); *accord Mandrigues v. World Savings, Inc.*, 2008 WL 11388759 (N.D. Cal. June 20, 2008) (Seeborg, J.).

The amended disclosures contain the same categories of damages and methods of computation that Google has known about ever since it received Mr. Lasinski's initial report in February 2023. The category of damages is the same: "actual damages" in the form of "the monetary value of the data that Google obtained from the class in violation of law." *Id.* at 10. The method of computation is the same: "a reasonable dollar value for the right to collect data during one 'device month,'" such as Google's $3 payment in the Screenwise program, multiplied by "the total number of 'device months' in which Google was able to collect (s)WAA-off app activity data from class members." *Id.* at 10–11. The conservative floor is the same: One device-month per class member device, based on the "extremely conservative" assumption that "there are at least as many device-months as there are class member devices." *Id.* at 11. And the maximum compensatory damages are the same: The greatest number of device-months during which Google collected WAA/sWAA-Off Data is, quite logically, the total number of device-months during which the (s)WAA setting was turned off.

The amended disclosures explain how the jury may draw inferences from other evidence already produced in this case to perform the $3-per-device-per-month computation. For example, the jury can infer that Google collected WAA/sWAA-Off Data from every class member's device during every month in which the class member had (s)WAA off. *Id.* at 12. The jury could reach this conclusion based on previously disclosed expert analysis by Plaintiffs' technical expert Jonathan Hochman. He explained that Google's SDKs are so prevalent that the likelihood that Google collected app activity data from a given mobile device in a given month is "extremely high," exceeding 99.9%. *Id.*; Dkt. 314-5 ("Hochman Rep.") at ¶¶ 1–2, 59, 355–56. The amended disclosures noted that sample data could also be useful, and that Plaintiffs had "renewed their demand for this sampling" and explained that the sample would "show[] the frequency with which Google collected app activity data from a random selection of users' devices," and further stated that Plaintiffs would amend the disclosure yet again, to include a final computation, "[o]nce the results of this sampling had been produced." Mao Ex. 9 at 12; *see also* Mao Ex. 10 at 1–2 (renewing demand and explaining that "[t]his request is relevant to … quantifying actual damages").

6

After Plaintiffs served the amended Rule 26(a)(1)(A)(iii) disclosure, Google reneged on its promise to produce the data sample. As explained below, Google later justified its about-face by stating that Plaintiffs' amended Rule 26(a)(1)(A)(iii) disclosure set forth a "satisfactory alternative[]": "Plaintiffs can ask the jury to draw certain inferences using the information Google did produce." Dkt. 427 at 13. The "certain inferences" Google referred to were the same inferences explained in the amended Rule 26(a)(1)(A)(iii) disclosure. *See id.*; Mot. at 11 (citing Santacana Ex. 1 at 14–15, the relevant part of the amended disclosures, as an adequate alternative).

**D.     In October 2024, Google Represents that Additional Data Production Is Unnecessary Because the Jury Can Draw "Inferences" Regarding Those Damages**

On October 3, 2024, the parties filed their Joint Case Management Statement. Dkt. 427. In that statement, Google informed the Court that it wanted to file a motion challenging the amended Rule 26 damages disclosures as including a "new expert opinion." *Id.* at 6. Anticipating Mr. Lasinski's supplemental report, Google sought leave to file a motion to exclude that "untimely disclosed expert damages theory." *Id.* Plaintiffs' noted in their portion of the statement that these disclosures were not "new" and that they would be willing to meet and confer with Google and respond to any motion at the appropriate time. *Id.* at 4.

That same statement included a discussion regarding the parties' dispute regarding Google's production of any sample of class member data, which Plaintiffs sought for purposes of presenting a monthly damages calculation. *See id.* at 9–11, 13–15. Plaintiffs detailed the back-and-forth between the parties and explained how "the requested data sample would be relevant to the jury's damages computation" and a "device month" calculation. *Id.* at 11. As stated in that submission, "if Google is unwilling to produce the data, then Google should not be able to use that refusal offensively at trial, for example by criticizing Plaintiffs or their experts for making reasonable inferences about what that data is likely to show." *Id.* at 11.

In response, Google assured Plaintiffs and the Court that the jury in this case could draw inferences from data that had been produced. Taking the position that there was no need to produce any class member data sample, Google stated:

> Plaintiffs admit that there are satisfactory alternatives to this data that could achieve the same purpose-i.e., 'Plaintiffs **can ask the <u>jury</u> to draw certain <u>inferences</u> using the information Google did produce.**' Plaintiffs cannot argue prejudice. They have not argued and cannot argue that they cannot make their intended arguments before the jury at trial **without the data** they belatedly request."

*Id.* at 13 (emphasis added). Google thus expressly agreed that the jury could award damages based on findings inferring the actual device-months from record evidence. This stipulation, which is repeated in Google's motion, disposes of any suggestion that the calculation of such damages at trial can be precluded. The only question is to what extent, if any, Mr. Lasinski can testify about those calculations.

### E.    In January 2025, Plaintiffs Serve Mr. Lasinski's Supplemental Report

On January 3, 2025, Plaintiffs served Mr. Lasinski's supplemental report. *See* Mao Ex. 11 ("Lasinski Supp. Rep.")[2] This supplemental expert report, like Plaintiffs' other' amended Rule 26 disclosures, includes no new damages categories or methodologies.

Mr. Lasinski's supplemental report includes the same "category" of compensatory damages as his initial report: compensatory damages in the form of "the value of th[e] WAA/sWAA Off Data (collected by Google from Class Members during the Class Period)." Lasinski Supp. Rep. ¶ 11; *compare* Lasinski Rep. ¶ 131 (same). This is, in other words, "the monthly payment necessary for an individual to knowingly surrender the choice to keep their app activity private and allow Google to track all app activity data, regardless of that individual's WAA or sWAA settings." Lasinski Supp. Rep. ¶ 12; *compare* Lasinski Rep. ¶ 131 (same).

Mr. Lasinski's supplemental report includes the same "monthly payment" opinion regarding the method of "computation" of compensatory damages as his initial report:

---

[2] Mr. Lasinski did not complete his supplemental report earlier because he was waiting on financial data for the remainder of the class period. After Plaintiffs learned that this data would likely not be produced until after this opposition brief is due, however, Mr. Lasinski completed a supplemental report using certain projected figures. Google produced financial data on January 9, 2025, but it appears to differ in certain respects from the data upon which Mr. Lasinski had relied. Plaintiffs have asked Google to answer related questions. When those issues are resolved, Mr. Lasinski will promptly serve an updated supplemental report that replaces certain of his projections with actual results.

8

1
2
3
4

> [I]t is my opinion that the baseline payment to Screenwise Panel participants of ***$3 per month*** for using a Screenwise meter app on a single mobile device represents a conservative indicator of the ***monthly payment*** necessary for an individual to knowingly surrender the choice to keep their app activity private and allow Google to knowingly track all app activity data, regardless of that individual's WAA or sWAA settings.

5    Lasinski Supp. Rep. ¶ 12 (emphasis added); *compare* Lasinski Rep. ¶ 131 (same).

6         Mr. Lasinski's supplemental report also includes the same computation of a conservative

7    floor for compensatory damages, based on the assumption that Google collected data from each

8    (s)WAA-off device during one single month, now covering the full class period for the certified

9    class. Lasinski Supp. Rep. ¶ 13 & fig. 2 (calculating compensatory damages based on a one-time

10   monthly payment per device, for full class period); *compare* Lasinski Rep. ¶ 161 & fig. 50 (same).

11        Mr. Lasinski still does ***not*** offer an opinion regarding the total number of device-months to

12   which the $3 payment should be applied. Lasinski Supp. Rep. ¶ 17. Mr. Lasinski was unable to

13   develop an expert opinion in that regard because Google had not produced a sample of absent class

14   member data. *Id.* at ¶¶ 16–17; *compare* Lasinski Dep. 47:14–58:7, 61:17–62:14, 70:13–17 (same);

15   Dkt. 331 at 19–20 (same). Consistent with Google's representation to this Court regarding how

16   the jury can of course draw inferences from the evidence (Dkt. 427 at 13), Mr. Lasinski noted his

17   understanding that "the jury may be permitted to determine or infer that number [of device-

18   months] based on information in the record." Lasinski Supp. Rep. ¶ 17.

19        Instead of offering any opinion regarding a higher amount of compensatory damages, Mr.

20   Lasinski's supplemental report includes three ***illustrative*** calculations, demonstrating how the jury

21   can apply his already-disclosed method of calculating compensatory damages based on a fixed

22   payment per month if the ***jury*** decides to infer, based on other evidence presented at trial, that the

23   total number of device-months in which Google collected data is greater than Mr. Lasinski's

24   conservative assumption of just one month per device. Lasinski Supp. Rep. ¶¶ 17–21. These

25   illustrative calculations ***do not add new opinions***. Mr. Lasinski makes clear that he "do[es] not

26   offer an opinion on the specific number of user- or device-months to which a $3 monthly payment

27   can be applied." *Id.* ¶ 17; *see also id.* ¶ 21. In essence, Mr. Lasinski is going to act as a "human

28   calculator," providing the jury with examples of how to use his method to compute total

9

compensatory damages based on the necessary input (the total number of device months) that the jury can infer from other evidence.

Mr. Lasinski previously disclosed that he might later provide demonstratives to help "explain or illustrate concepts" regarding how compensatory damages are calculated. Lasinski Rep. ¶ 16. As already noted, Google concedes that the jury is permitted to infer the total number of device-months based on other evidence presented at trial. *See* Mot. 11 (citing Santacana Ex. 1 at 14–15 as describing an acceptable "alternative"); Dkt. 427 at 13 (same); *supra* § II.C–D. The illustrative calculations in Mr. Lasinski's supplemental report simply describe for the jury how to apply his methodology to inferences the jury may make based on other evidence (besides Mr. Lasinski's testimony) which will be presented at trial—including Mr. Hochman's expert opinions regarding the frequency with which Google's SDKs collect app activity data. Hochman Rep. ¶¶ 1–2, 59, 355–56.

## III.    LEGAL STANDARD

As the party seeking sanctions under Rule 37, Google bears the burden of proving that Plaintiffs violated the disclosure requirements of Rule 26. *Ramirez v. Zimmerman*, 2020 WL 905603, at *3 (S.D. Cal. Feb. 25, 2020). If Google proves that Plaintiffs violated Rule 26, then the burden shifts to Plaintiffs to show that the violation was substantially justified or harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

## IV.    ARGUMENT

### A.    The Challenged Supplemental Rule 26 Disclosure Properly Provides Illustrations Invited by Google

Contrary to Google's baseless allegations, Plaintiffs' monthly compensation methodology has not changed. Google demonstrated a clear understanding of Plaintiffs' methodology during the Court's summary judgment hearing, months *before* the amended disclosure was served. Mao Ex. 12 at 55–58 (Google's counsel arguing that plaintiffs "can get their $3 per month right now").

Perhaps more importantly, the jury is entitled to award damages consistent with this months-based method, and Google concedes as much. Google has now ***twice*** agreed—once in the October 2024 case management statement and once in ***this motion***—that, instead of relying on a

10

data sample, Plaintiffs could and should seek to prove the total number of device-months by asking the jury to make inferences from other evidence in the record. *See* Mot. at 11 (citing the portion of Plaintiffs' Third Amended Rule 26(a) disclosures describing the other record evidence and conclusions that the jury may draw as a viable "alternative[]"); Dkt. 427 at 13 (asserting that "ask[ing] the jury to draw certain inferences using the information Google did produce" is a "satisfactory alternative"). Mr. Lasinski's supplemental report is consistent with Google's invitation for inferences, because it merely provides illustrations. *See* Lasinski Supp. Rep. ¶¶ 15–21; Mao Ex. 9 at 11–12 ("The jury may alternatively determine [the percentage of the (s)WAA-off device-months in which Google collected data] by relying on other data showing the frequency with which class members used non-Google apps running [the at-issue Google tracking software]").

And Google has stated no basis for exclusion in law. *See e.g.*, *Hawks Hill Ranch, LLC v. Yarak*, 2024 WL 1421265, at *2 (N.D. Cal. Apr. 2, 2024) (denying motion to exclude expert supplement that "d[id] not alter his prior opinions nor … add new ones"). Google relies on inapposite cases where, unlike here, the supplemental disclosures incorporated wholly new theories or categories of damages. *See Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009) ("These new declarations included a new theory of causation."); *Eisen v. Day*, 2024 WL 1244482, at *3 (N.D. Cal. Mar. 21, 2024) ("[N]either the category [of damages] nor any computation of it was disclosed"); *Mass Probiotics v. Aseptic Tech., LLC*, 2017 WL 10621233, at *4 (C.D. Cal. Dec. 21, 2017) ("Plaintiff claimed five entirely new categories of damages"); *Power Integrations, Inc. v. ON Semiconductor Corp.*, 396 F. Supp. 3d 851, 884 (N.D. Cal. 2019) ("The dispositive inquiry is whether the allegedly undisclosed theory is in fact a new theory."); *Kennis v. Metro. W. Asset Mgmt., LLC*, 2018 WL 9440483, at *5 (C.D. Cal. Nov. 29, 2018) (supplemental disclosure included new expert opinion regarding four additional funds).[3]

---

[3] In *Kennis*, 2018 WL 9440483, the court warned that the new opinions would be allowed if the defendant "criticized [the plaintiff's expert's] failure to analyze th[ose] additional four Subadvised Funds." *Id.* at *6 n.3. Google and its experts already criticized Mr. Lasinski for his conservative opinion because of its one-time payment without calculating monthly payments. *See* Dkt. 330 ("*Daubert* Mot.") at 17–19; Dkt. 341-7 ("Knittel Rep.") ¶¶ 130–32. So even if *Kennis* applied, Google opened the door to the testimony it seeks to exclude.

11

**B.    Mr. Lasinski's Supplemental Report Also Permissibly Seeks to Present the Jury with Illustrative Arithmetic**

Rather than show any difference in *method* computing damages (there is none), Google's motion relies entirely on the *initial, computation* contained in Mr. Lasinski's initial February 2023 report as a basis to now challenge his supplemental report. This badly misreads of Mr. Lasinski's report. Mr. Lasinski never opined that Plaintiffs' compensatory damages based on $3 per device per month was limited to $486 million of compensatory damages through the end of 2022. The calculation Google cites is Mr. Lasinski's *initial computation of a "conservative floor"* of damages based on his inability at that time to determine the actual number of months Google collected app activity data from (s)WAA-off devices. Lasinski Supp. Rep. ¶ 12; Lasinski Dep. 47:14–58:7, 61:17–62:14, 70:13–17. Mr. Lasinski provided a calculation applying the monthly payment on a "one-time basis" per device, on the safe but highly conservative assumption that Google collected app activity data from each device in just *one* month, making clear that if and when additional data was available he would make additional calculations. Lasinski Rep. ¶¶ 16, 151; Lasinski Dep. 62:6–14; *see also e.g.*, Class Cert. Mot. at 22 (Mr. Lasinski opined that compensatory damages were "at least" this amount); Trial Plan at 5 (same).

Google's misdirection belies its real intention, which is to remake Mr. Lasinski's conservative floor calculations into a ceiling, despite Google's agreement that the jury is entitled to make inferences regarding the actual number of months to which class members may be entitled compensation. Because it was the party that created the problem by withholding evidence, Google knew that calculating compensatory damages above that floor required an additional input: the *total* number of device-months in which Google collected app activity data. Mr. Lasinski explained that he couldn't "know [that input] for sure" given Google's refusal to preserve and produce the required data. Lasinski Dep. 70:18–71:9; *id.* at 57:25–58:7, 61:17–62:2. That is why he offered— in addition to his opinions regarding the appropriateness of a monthly $3 payment—a "conservative floor" based on an assumption that Google collected WAA/sWAA-Off Data from each device during just one month. Lasinski Rep. ¶¶ 131, 151; Lasinski Supp. Rep. ¶¶ 15–17.

Mr. Lasinski's initial calculation was always understood to be a floor, such that the jury could award more. *Atlas Flooring, LLC v. Porcelanite S.A.*, 425 F. App'x 629, 633 (9th Cir. 2011)

(affirming jury verdict that exceeded damages expert's calculation because "the record contained other evidence providing a reasonable basis" for the award); *see also Fredette v. Allied Van Lines, Inc.*, 66 F.3d 369, 373 (1st Cir. 1995) ("[T]he jury can depart upward, as well as downward, from the opinion of the expert."); *KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, 729 F. Supp. 3d 84, 100 (D. Mass. 2024) ("[J]uries are not mechanically bound by [experts'] estimates. … [T]he jury is 'free to select the highest figures for which there is adequate evidentiary support.'"). *Cf. City of Pomona v. SQM N. Am. Corp.*, 2023 WL 3143688, at *3 (9th Cir. Apr. 28, 2023) ("A jury may award damages [even] beyond those explicitly requested by the prevailing party so long as the award is supported by the evidence.").

The illustrative computations included in Mr. Lasinski's supplemental report (¶¶ 15–21) are all based on the same method. One of these computations illustrates the *maximum* damages under Mr. Lasinski's method and based on the data produced by Google (including data produced just last fall), which the jury could award if it infers from other evidence that Google collected app activity data from all class members' devices in every month during which they had (s)WAA off. *See* Mao Ex. 9 at 11; Lasinski Supp. Rep. ¶¶ 17–19. There is certainly a basis in the record for a jury to reach that conclusion. Hochman Rep. ¶¶ 355–56 (opining that for each (s)WAA-off user, the probability that Google collected data during a given month is "extremely high," exceeding 99.9%). The other illustrative computations show how the jury could apply Mr. Lasinski's method to calculate compensatory damages in amounts somewhere between Mr. Lasinski's conservative floor and the maximum amount. Mao Ex. 9 at 12 (the jury may estimate the number of months, and therefore compensatory damages, based on evidence in the record regarding the frequency with which Google collects app activity data); *see also* Lasinski Supp. Rep. ¶¶ 20–21 ("I also present illustrative calculations demonstrating how the jury could calculate damages by applying the $3 monthly payment to any other number of sWAA-Off [months] that it may find appropriate based on the evidence presented at trial").

Plaintiffs are entitled to use such illustrations because they rely on the same methodologies and theories used since the onset of the case. *See, e.g., Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 771–72 (8th Cir. 2020) (holding allegedly late-disclosed damages models were "admissible

13

as summaries of voluminous data" because, as here, they "used the same methodology" and differed only in their "'assumptions and conclusions' that are based upon evidence in the record"); *Wechsler v. Macke Int'l Trade, Inc.*, 221 F.R.D. 619, 623 (C.D. Cal. 2004) (denying motion to strike supplemental damages report's reasonable royalty calculation because the "initial expert report … placed defendants on notice that [the expert] intended to testify regarding a computation of damages based on a reasonable royalty"); *Reyes v. City of Glendale*, 2009 WL 2579614, at *5 (C.D. Cal. Aug. 19, 2009) (denying motion to exclude computation of damages because discovery revealed the formula for damages (lost wages) and the inputs (hourly rate and lost hours)). *Cf. Thissel v. Murphy*, 2017 WL 2462316, at *2 (N.D. Cal. June 7, 2017) (denying motion to strike allegedly late-disclosed "information [that] was disclosed during the discovery process"). Google's preemptive request to strike Mr. Lasinski's supplemental report (which Google hadn't yet seen, when it filed its motion) should be denied.

### C.    Google's Motion Should Also Be Denied Because Plaintiffs' Rule 26 Disclosures and Supplemental Report Are Substantially Justified

At a minimum, Plaintiffs' Rule 26 disclosures and supplemental report are substantially justified, harmless, or both. The factors that guide this inquiry include: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Benefit Cosmetics LLC v. e.l.f. Cosmetics, Inc.*, 2024 WL 3558848, at *6 (N.D. Cal. July 25, 2024) (Seeborg, J.). Courts also consider (5) the "importance of the evidence." *S.F. Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 733 (N.D. Cal. 2011).

*(1) No surprise or prejudice.* Plaintiffs' disclosures are neither surprising nor prejudicial—for all the reasons already stated. This is especially true given that any month-based damages are all based on Google's own monthly payments through its Screenwise program. *See Drayton v. Eastlink Prods., Inc.*, 2018 WL 5264131, at *4 (C.D. Cal. Oct. 15, 2018) ("Courts have not held plaintiffs' damages disclosures to particularly stringent standards when a defendant possesses information allowing it to calculate damages."); *Maharaj v. Cal. Bank & Tr.*, 288 F.R.D. 458, 463 (E.D. Cal. 2013) (holding failure to disclose analysis of economic damages harmless because "the

14

information on which these damages are calculated is already in Defendant's possession");
*Creswell v. HCAL Corp.*, 2007 WL 628036, at *2 (S.D. Cal. Feb. 12, 2007) (holding that failure to provide computation of lost employee benefits was harmless because "Defendant has the records of the benefits it paid to Plaintiff"). Google's own counsel confirmed with Mr. Lasinski that this was a "floor." *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 2011 WL 13127349, at *8–9 (C.D. Cal. Sept. 15, 2011) (denying motion to exclude late damages opinion because "Defendants [could not] colorably maintain that they were completely unaware that Plaintiffs would seek some amount of damages based on Defendants' profits"). Google could not have reasonably construed Mr. Lasinski's *initial* computation of damages, based on a conservative assumption of device-months that he made in the absence of data (which Google withheld), as somehow constituting a binding admission by Plaintiffs that the classes wouldn't apply that method to the *actual* number of device-months once the data to do so became available or otherwise provide illustrative calculations for the jury consistent with Google's later representations. *See, e.g.*, *Atlas Flooring*, 425 F. App'x at 633; *KPM Analytics*, 729 F. Supp. 3d at 100.

Nor is the amended Rule 26 disclosure prejudicial. This is not "a situation where [Google] had developed and pursued a specific strategy through motions or in trial preparations that has been undercut by an untimely disclosure." *Liberty Mut. Fire Ins. Co. v. Bosa Dev. Cal. II, Inc.*, 2019 WL 3554938, at *6 (S.D. Cal. Aug. 5, 2019) (denying motion to strike supplemental expert report).[4] Although Google makes the broad and conclusory assertion that it made strategic choices in reliance on its supposed misunderstanding of Plaintiffs' method of computing compensatory damages, it provides no specifics. What would Google have done differently? Google's motion contains no further details. *Finato v. Fink*, 803 F. App'x 84, 88 (9th Cir. 2020) (failure to disclose was harmless because opposing party "failed to show how not having this information prior to trial

---

[4] Google also asserts that it has used Mr. Lasinski's conservative damages estimate to prepare for settlement discussions, presumably as a mistaken barometer of Google's total exposure. *See* Mot. at 2. That is not an especially compelling reliance interest, particularly because settlement discussions are in their early stages (there has been only one, unsuccessful, mediation), and there are more than seven months before trial to continue talking and mediating.

1  harmed his case"). But it is clear that the amended Rule 26 disclosure does not implicate Google's

2  discovery strategy or the defenses it asserted on summary judgment.

3       ***(2) Ability to cure any prejudice and (3) no likelihood of disrupting the trial.*** Even if there

4  were any prejudice (there isn't), it could easily be addressed and cured in the seven months left

5  before trial. Google's motion is the first Plaintiffs have heard of Google's desire to take more

6  discovery, and even Google's motion does not specify what discovery Google seeks. And it is hard

7  to understand what discovery could be relevant. The challenged calculations consist entirely of

8  illustrations of the arithmetic applying the $3 per device per month method (which is not in dispute)

9  to the actual number of months found by a jury (which Google has conceded a jury may do).

10       Regardless, any discovery would be limited, and the parties can easily complete whatever

11  reasonable discovery Google may seek. Plaintiffs have already offered Mr. Lasinski for an

12  additional deposition and agreed that Google's damages expert may serve a responsive report. Mao

13  Ex. 13. If Google's expert wishes to do so, he can of course prepare a rebuttal report regarding

14  these illustrative calculations. And Google can question Mr. Lasinski regarding those calculations.

15  This can be done quickly and efficiently. It can certainly be completed before the next deadline,

16  which is months away, without disrupting the pretrial schedule.[5]

17       ***(4) No bad faith.*** Plaintiffs did not act in bad faith and Google does not contend that they

18  did. This is not a case in which Plaintiffs waited until the eve of trial to spring a surprise on the

19  defendant. Plaintiffs served the amended Rule 26 disclosure in September 2024, promptly after it

20  became apparent to Plaintiffs as a result of the mediation that there might be a dispute. Mao Ex. 9.

21  That was nearly a year before trial. Dkt. 438; *see Academy of Motion Pictures Arts & Scis. v.*

22  *GoDaddy.com, Inc.*, 2013 WL 12122803, at *5 (C.D. Cal. June 21, 2013) (denying motion to strike

23  late-disclosed witness because the next available trial date was nearly a year away). In October

24  2024, the Court permitted Google to file its motion right away. Dkt. 434 at 7 (the Court: "[i]f you

25

26  [5] There is no merit to Google's suggestion that denying the motion would unleash supplementation
27  "*ad infinitum*" or a parade of other horribles. Mot. at 10. Plaintiffs have served just a limited
    damages supplement. *See Benefit Cosmetics*, 2024 WL 3558848, at *9 (Seeborg, J.) (declining to
28  strike late-disclosed expert report even though the moving party asserted that permitting "further
    expert discovery and depositions … would make depositions 'endless'").

think a motion to strike is warranted in the ordinary course, go ahead and file it"). Google's two-month delay in filing its motion to strike should not be held against Plaintiffs. *California v. Ross*, 2019 WL 1975437, at *2 (N.D. Cal. Jan. 4, 2019) (denying motion to exclude late-disclosed witness because the moving party failed to avail itself of available time for further discovery).[6] In any event, trial is still "not scheduled to commence for over seven months." *Multifamily Grp., LLC v. Assurance Risk Mgrs., Inc.*, 2009 WL 10692948, at *2–3 (E.D. Cal. June 25, 2009); *F.D.S. Marine, LLC v. Brix Maritime Co.*, 211 F.R.D. 396, 400 (D. Or. 2001) (holding late disclosure of expert witness harmless because there were "more than two months before trial").

   ***(5) Plaintiffs, not Google, are the ones threatened with prejudice.*** Google's motion seeks to have this Court effectively transform Mr. Lasinski's initial computation of a compensatory damages *floor* into a *ceiling* on the classes' damages claims. If achieved, that would result in significant harm not being compensated. While the difference between $3 and $300 may not matter to Google, it matters to Plaintiffs and many of these class members. This also supports the denial of Google's motion. *See, e.g.*, *Bonzani v. Shinseki*, 2014 WL 66529, at *5 (E.D. Cal. Jan. 8, 2014) (declining to exclude late-disclosed damages model because that would exclude the bulk of plaintiff's damages).

   If Google's true aim is to prevent the jury from awarding compensatory damages beyond Mr. Lasinski's conservative floor by impeding the jury from awarding damages based on the actual device-months of data collection, consider what Google has done: (1) it refused to produce class member data that would have allowed Mr. Lasinski to determine with precision the device-months in which Google collected app activity data from class members, (2) it reneged on its promise to provide sampling data after class certification, which Mr. Lasinski could have used to determine device-months, (3) it avoided a motion to compel production of a data sample by representing to

---

[6] Google cannot attribute its delay to the fact that Mr. Lasinski's supplemental report was served on January 3, 2025. Mr. Lasinski's report would have been finalized much earlier, but Plaintiffs were waiting on Google's production of supplemental financial data. After Plaintiffs learned that Google might not be able to produce that until after this opposition brief was due, Mr. Lasinski immediately finalized his report. *See* Mao Ex. 14; Lasinski Supp. Rep. In any event, Google was capable of moving to strike before the report was finalized, and indeed it did.

Plaintiffs and this Court that the jury could make inferences about device-months based on the evidence, making production unnecessary.

Google in its motion says that the jury is entitled to award damages based on the actual number of device months the jury infers from the record evidence. That must be so. And if it is so, accurately illustrating the arithmetic applying Plaintiffs' $3 per device per month damages method cannot prejudice anyone. The jury should be permitted at trial to estimate the full scope of Google's improper data collection during the class period, based on the evidence, and award damages accordingly without artificial impediments.

## V.    CONCLUSION

Plaintiffs respectfully ask the Court to deny Google's motion to strike.

Dated: January 16, 2025                          Respectfully submitted,


By: /s/ Mark C. Mao

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (admitted *pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

James Lee (admitted *pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (admitted *pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400

18

Facsimile: (305) 539-1307

Alison L. Anderson, CA Bar No. 275334
alanderson@bsfllp.com
M. Logan Wright, CA Bar No. 349004
mwright@bsfllp.com
BOIES SCHILLER FLEXNER LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (813) 482-4814

Bill Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley
afrawley@susmangodfrey.com
Ryan Sila
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*