# EXHIBIT 2 (REDACTED)

# MAO DECLARATION OPPOSITION TO MOTION TO STRIKE

CONFIDENTIAL

| | |
|---|---|
| **BOIES SCHILLER FLEXNER LLP** <br> David Boies (admitted pro hac vice) <br> 333 Main Street <br> Armonk, NY 10504 <br> Tel: (914) 749-8200 <br> dboies@bsfllp.com <br><br> Mark C. Mao, CA Bar No. 236165 <br> Beko Reblitz-Richardson, CA Bar No. 238027 <br> Erika Nyborg-Burch, CA Bar No. 342125 <br> 44 Montgomery St., 41st Floor <br> San Francisco, CA 94104 <br> Tel.: (415) 293-6800 <br> mmao@bsfllp.com <br> brichardson@bsfllp.com <br> enyborg-burch@bsfllp.com <br><br> James Lee (admitted pro hac vice) <br> Rossana Baeza (admitted pro hac vice) <br> 100 SE 2nd St., 28th Floor <br> Miami, FL 33131 <br> Tel.: (305) 539-8400 <br> jlee@bsfllp.com <br> rbaeza@bsfllp.com <br><br> Alison L. Anderson, CA Bar No. 275334 <br> 725 S Figueroa St., 31st Floor <br> Los Angeles, CA 90017 <br> Tel.: (213) 995-5720 <br> alanderson@bsfllp.com | **SUSMAN GODFREY L.L.P.** <br> Bill Carmody (admitted pro hac vice) <br> Shawn J. Rabin (admitted pro hac vice) <br> Steven M. Shepard (admitted pro hac vice) <br> Alexander Frawley (admitted pro hac vice) <br> 1301 Avenue of the Americas, 32nd Floor <br> New York, NY 10019 <br> Tel.: (212) 336-8330 <br> bcarmody@susmangodfrey.com <br> srabin@susmangodfrey.com <br> sshepard@susmangodfrey.com <br> afrawley@susmangodfrey.com <br><br> Amanda K. Bonn, CA Bar No. 270891 <br> 1900 Avenue of the Stars, Suite 1400 <br> Los Angeles, CA 90067 <br> Tel.: (310) 789-3100 <br> abonn@susmangodfrey.com <br><br> **MORGAN & MORGAN** <br> John A. Yanchunis (admitted pro hac vice) <br> Ryan J. McGee (admitted pro hac vice) <br> 201 N. Franklin Street, 7th Floor <br> Tampa, FL 33602 <br> Tel.: (813) 223-5505 <br> jyanchunis@forthepeople.com <br> rmcgee@forthepeople.com <br><br> Michael F. Ram, CA Bar No. 104805 <br> 711 Van Ness Ave, Suite 500 <br> San Francisco, CA 94102 <br> Tel: (415) 358-6913 <br> mram@forthepeople.com |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY individually and on behalf of all other similarly situated, <br><br> Plaintiffs, <br> v. <br><br> GOOGLE LLC, <br> Defendant. | CASE NO.: 3:20-cv-04688-RS <br><br> **PLAINTIFFS' AMENDED RULE 26 DISCLOSURES** |

CONFIDENTIAL

Plaintiffs amend their initial disclosures per Federal Rule of Civil Procedure 26(a)(1).

## I. NAMES AND ADDRESSES OF INDIVIDUALS LIKELY TO POSSESS DISCOVERABLE INFORMATION

The following individuals and/or entities may possess discoverable information that Plaintiffs may use to support their claims. Documents and information identifying additional witnesses are in the possession and control of Defendant Google LLC ("Google") and non-parties to this litigation. Plaintiffs reserve the right to supplement or amend these lists as discovery proceeds.

### A. Plaintiffs

Plaintiff Anibal Rodriguez has knowledge about his use of mobile apps and Google Search and his effort to turn off Google's "Web & App Activity" tracking. Plaintiff Rodriguez may only be contacted through counsel, but pursuant to the Stipulated Protective Order, ECF No. 70, provides his CONFIDENTIAL contact information as follows:



Plaintiff Julian Santiago has knowledge about his use of mobile apps and Google Search and his effort to turn off Google's "Web & App Activity" tracking. Plaintiff Santiago may only be contacted through counsel, but pursuant to the Stipulated Protective Order, ECF No. 70, provides his CONFIDENTIAL contact information as follows:



Plaintiff Susan Lynn Harvey has knowledge about her use of mobile apps and Google Search and her effort to turn off Google's "Web & App Activity" tracking. Plaintiff Harvey may only be contacted through counsel, but pursuant to the Stipulated Protective Order, ECF No. 70, provides her CONFIDENTIAL contact information as follows:



PLAINTIFFS' AMENDED RULE 26 DISCLOSURES                          CASE NO. 3:20-CV-04688

CONFIDENTIAL

Plaintiff Sal Cataldo has knowledge about his use of mobile apps and Google Search and his effort to turn off Google's "Web & App Activity" tracking. Plaintiff Cataldo may only be contacted through counsel, but pursuant to the Stipulated Protective Order, ECF No. 70, provides his CONFIDENTIAL contact information as follows:

**B.     Current or Former Employees of Google and Non-Parties**

Current or former Google employees with knowledge of its privacy disclosures, Firebase SDK, use of data intercepted/collected by Google when users have turned off "Web & App Activity" tracking, financial information and revenues attributable to the use of any user data by Google, and any knowledge of the following categories of documents:

- Google's disclosures and policies relating to the data it collects directly and indirectly on consumers, particularly with regard to data collected on consumers who have turned off "Web & App Activity" tracking.
- Google's logs relating to the data it collects directly and indirectly on consumers, particularly with regard to data collected on consumers who have turned off "Web & App Activity" tracking.
- Google's internal documents relating to consumers' control over how their data is collected, used, shared, and disposed.
- Google's internal documents relating to transparency about how consumers' data is collected, used, shared, and disposed.
- Google's written representations to and agreements with websites, web publishers, web applications, and mobile app publishers that use Google services, including but not limited to what data Google collects and how Google complies with laws and regulations regarding the collection of data.
- Google's technical documents relating to how its technologies and services work with consumer data that it collects directly and indirectly, particularly with regard to data collected while consumers have turned off "Web & App Activity" tracking.
- Google's documents concerning its acquisition of Firebase and technical documents relating to Firebase SDK.
- Google's technical documents relating to how to track individual consumers, their devices, and their locations.

2

CONFIDENTIAL

- Google's responses and document productions to regulators, including without limitation the U.S. Federal Trade Commission (FTC) and Department of Justice (DoJ), the Arizona Attorney General, the California Attorney General, European data protection authorities, and the Australian Competition & Consumer Commission (ACCC), relating to Google's disclosures and data collection practices between at least 2011 and the present.

- Google's assurances, at any time, to not merge first- and third-party data and services.

- Google's compliance and audit documents relating to its efforts and/or failures to comply with the Google-FTC Consent Decree of 2011, relating to Google's Buzz Social Network.

- Google's external and internal documents relating to how Google attempted to comply and/or complied with the California Consumer Privacy Act (CCPA), Europe's General Data Privacy Regulation (GDPR), and similar legislation.

- Google's external and internal documents relating to how Google lobbied for or against bills and proposed laws in the United States similar to or based on the California Consumer Privacy Act (CCPA).

- Google's external and internal documents relating to any new privacy features Google has released or is releasing with regard to opting out of web and app activity tracking, and Google Analytics.

- Google's sales documents relating to its profits from Google Analytics (and legacy products that was eventually merged into Google Analytics) that may relate to how Google profited from the allegations at issue in the Complaint.

- Google's sales documents relating to its profits from Google Ad Manager (and legacy products that was eventually merged into Google Ad Manager) that may relate to how Google profited from the allegations at issue in the Complaint.

- Google's documents showing how Google improved its Google products and services (including but not limited to Search, Google Analytics, and Google Ad Manager) based on data Google obtained relating to the allegations at issue in the Complaint.

- All ways in which Google has benefited from the unlawful conduct alleged in this lawsuit, including without limitation advertising revenues.

Additionally, Plaintiffs have identified, through investigation and review of discovery, that the following current and former Google employees may have knowledge or information relevant to this case, including:

David Monsees: Mr. Monsees is a Product Manager at Google, and Plaintiffs reasonably expect him to testify to his familiarity with the Web & App Activity controls, including WAA, sWAA, sWAAdl, and their functionality (including the datatypes controlled thereby); the disclosures that Google provides to consumers concerning Web & App Activity controls; how Google logs and tracks activity when these controls are enabled and disabled (including the

3

associated identifiers); uniform user confusion related to Web & App Activity controls; and how Google uses this data (both when enabled and disabled).

Edward Weng: Mr. Weng was a Product Manager at Google, and Plaintiffs reasonably expect him to testify to his familiarity with the Web & App Activity controls, including WAA, sWAA, sWAAdl, and their functionality (including the datatypes controlled thereby); the disclosures that Google provides to consumers concerning Web & App Activity controls; how Google logs and tracks activity when these controls are enabled and disabled (including the associated identifiers); uniform user confusion related to Web & App Activity controls; and how Google uses this data (both when enabled and disabled).

Chris Ruemmler: Mr. Ruemmler is a Senior Staff Software Engineer at Google, and Plaintiffs reasonably expect him to testify to his familiarity with the Web & App Activity controls, including WAA and sWAA, and their functionality (including the datatypes controlled thereby); the disclosures that Google provides to consumers concerning Web & App Activity controls; how Google logs and tracks activity when these controls are enabled and disabled (including the associated identifiers); uniform user confusion related to Web & App Activity controls; and how Google uses this data (both when enabled and disabled).

Greg Fair: Greg Fair was a Product Manager at Google, and Plaintiffs reasonably expect him to testify to his familiarity with the Web & App Activity controls, including WAA and sWAA, and their functionality (including the datatypes controlled thereby); the disclosures that Google provides to consumers concerning Web & App Activity controls and how Google has studied consumers' uniform confusion related to Web & App Activity controls; Google's efforts to study the financial impacts of Web & App Activity controls on Google's revenue and profits; and how Google logs and tracks Web & App Activity data, including by use of dashboards.

Eric Miraglia: Mr. Miraglia is a Senior Director of Product Management at Google, and Plaintiffs reasonably expect him to testify to his familiarity with the Web & App Activity controls, including WAA and sWAA, and their functionality (including the datatypes controlled thereby); the disclosures that Google provides to consumers concerning Web & App Activity controls; how Google deployed promises it did not intend to keep with its Narnia program to manufacture consent

4

PLAINTIFFS' AMENDED RULE 26 DISCLOSURES                          CASE NO. 3:20-CV-04688

for its unauthorized collection practices of WAA-off data; how Google logs and tracks Web & App Activity data, including by use of dashboards; and user confusion related to Web & App Activity controls.

Steve Ganem: Mr. Ganem is a Group Product Manager at Google, and Plaintiffs reasonably expect him to testify to his familiarity with the Web & App Activity controls, including WAA and sWAA and their functionality (including the datatypes controlled thereby); the disclosures that Google provides to consumers concerning Web & App Activity controls; how Google uses Web & App Activity data, including for ad targeting and personalization; the ways in which Google logs and tracks Web & App Activity data, including when those controls are enabled and disabled; how captured Web & App Activity data is stored and how long that data is retained; and how captured Web & App Activity data may be joined to specific devices and Google accounts and used to identify users.

Plaintiffs have also identified additional current and former Google employees (but Google has not yet presented them for deposition) who may have knowledge or information relevant to this case, including: Dan Stone, Rahul Oak, and Belinda Langner. Plaintiffs will supplement their disclosures as those depositions proceed.

Plaintiffs have also identified additional current and former Google employees (but who Google refuses to present for deposition) who may have knowledge or information relevant to this case, including:

Sam Heft-Luthy: Mr. Heft-Luthy was a Product Manager in Google's Privacy & Data Protection Office. He was involved in creating a Google "Privacy Hub" to explain "what data Google collects from a given product, how it's used, and what mechanisms of controls users have over their data" including with WAA. GOOG-RDGZ-00014410. His work involved "research meta-analysis" and "a series of stakeholder interviews . . . with people working on privacy across Google." *Calhoun v. Google*, No. 20-cv-05146-YGR, ECF No. 871-3 (order with findings) ¶¶ 128, 140. Google asserts a consent defense, and internal Google documents relating to the "Pri\*\*\*Na\*\*\*e" project state that Google's consent approach was "out-of-step with user expectations and regulations" in a manner that "makes it difficult for people to understand how we

5

CONFIDENTIAL

use their data." *Id.* ¶ 141. Interview notes further acknowledge that Google had "gaps in how our system works and what we promise to people" such that "[u]sers don't know what is happening." *Id.* ¶ 142. Testimony by Mr. Heft-Luthy concerning these projects and admissions is clearly relevant to Plaintiffs' claims and Google's defenses.

Arne de Booij: Mr. de Booij is a Google User Experience Research Manager tasked with designing and overseeing studies of user preferences and views, including WAA. Through a limited 3.5 hours deposition of Mr. de Booij, Plaintiffs seek to develop testimony regarding these studies of users' understanding of WAA disclosures. Plaintiffs deposed Mr. de Booij's former manager Greg Fair, but Mr. Fair could not provide the more detailed testimony that Plaintiffs anticipate from Mr. de Booij. Fair Rough Tr. 144:14-149:25 (declining to provide testimony). Plaintiffs also deposed the Founder of Google's Privacy and Data Protection Office, Eric Miraglia, who described Mr. de Booij as "the researcher who founded the Pinecone program" which oversaw one study that sought to determine why "users don't understand what WAA means." Miraglia Rough Tr. 174:7-175:21. Mr. Miraglia also explained that "I'm sure there have been many studies over the years that touched on" "what users would expect to happen when WAA is off," but he could not recall "specific studies." *Id.* 196:12-19. This case focuses on Google's WAA controls, and Plaintiffs should hear from the employee responsible for studying users' perceptions of WAA

Xinyu Ye: Plaintiffs seek the testimony of Ye, a Software Engineer in Google's Privacy Working Group, to shed light on what data Google collects when WAA is off, where Google saves that WAA-off data, and how Google uses that WAA-off data. Ye has documents showing what percent of data is used by various Google products such as AdMob, GOOG-RDGZ-00180644, as well as documents demonstrating how Google uses Google Analytics and AdWords to convert data using "client ID." GOOG-RDGZ-00179824. Ye also has documents on how Google stores and uses data collected from users who switched off WAA as well as documents regarding "joinability risks" with respect to "link[ing] app events collected by GA4F to GAIA ID even if end users turn off WAA." GOOG-RDGZ-00033244; GOOG-RDGZ-00181801 ("ID joinability has been one of the biggest challenges in Google Analytics since introduction of Gaia IDs in GA"); GOOG-RDGZ-00184488 ("Firebase: IID which can map to GAIA to join to app instance id").

PLAINTIFFS' AMENDED RULE 26 DISCLOSURES                              CASE NO. 3:20-CV-04688

CONFIDENTIAL

JK Kearns: Mr. Kearns is a Group Product Manager who vocalized discomfort with the fact that Google continued to collect and save data even when the WAA/sWAA button had been toggled to "off." *See, e.g.*, GOOG-RDGZ-00043966 (Mr. Kearns wrote: "To me, it feels like a fairly significant bug that a user can choose to turn off WAA but then *we still collect and use the data* (even locally)") (emphasis added); GOOG-RDGZ-00090741 (Mr. Kearns noting that the disclosures "feel[] *misleading* as it's currently written") (emphasis added); GOOG-RDGZ-00039094 (Mr. Kearns stating that "teams *should not use user data at all if WAA is off*") (emphasis added). These admissions go to the heart of this case.

Non-parties who make use of data intercepted/collected by Google, including when users have turned off "Web & App Activity" tracking.

## II.   DESCRIPTION OF ALL RELEVANT DOCUMENTS IN PLAINTIFFS' POSSESSION

Plaintiffs are not yet able to identify additional documents they may use to support their claims because most of the relevant documents and information regarding this action are in the possession, custody, and control of Google or non-parties, and Google has designated much of those documents under the Protective Order and insisted that Plaintiffs themselves may not review those documents. However, Plaintiffs possess documents from their Google Takeout data, which is in the possession, custody, and control of Google (and accessible to Plaintiffs via https://takeout.google.com/settings/takeout) relating to their use of mobile apps, advertisements displayed to them, and documents relating to their request for damages. Plaintiffs also possess emails from Google related to "Privacy Checkup" and/or consent bumps under Google's Narnia program that encouraged people who turned WAA and/or sWAA off to turn those functions back on. In addition, Plaintiffs may use certain publicly available documents, such as Google's representations and press releases, marketing materials, and industry reports.

## III.   DAMAGES

Plaintiffs seek compensatory damages, punitive and exemplary damages, restitution, and disgorgement, pre-judgment interest, post-judgment interest, reasonable attorneys' fees, expert witness fees and other costs, and any other further relief as the Court deems just and proper,

including equitable, declarative and, injunctive relief as permitted by law. Because any computation of damages and other relief in this case depends on documents and evidence to be produced by Google, as well as expert analysis, computing damages at this stage is premature because Google has unreasonably withheld those documents during discovery and has only just begun producing them pursuant to court order. Therefore, Plaintiffs have not yet computed the relief claimed in this action, Plaintiffs will supplement as appropriate in the course of discovery. For each cause of action alleged, Plaintiffs seek: (1) non-restitutionary disgorgement of all of Google's profits that were derived, in whole or in part, from Google's interception and subsequent use of Plaintiffs' communications; and/or (2) nominal damages.

## IV.   INSURANCE AGREEMENT

Not applicable to Plaintiffs.

Dated: October 31, 2022.                    Respectfully submitted,

By: */s/ Mark C. Mao*

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (admitted *pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

James Lee (admitted *pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (admitted *pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400

CONFIDENTIAL

Facsimile: (305) 539-1307

Alison L. Anderson, CA Bar No. 275334
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com

Bill Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

9

PLAINTIFFS' AMENDED RULE 26 DISCLOSURES          CASE NO. 3:20-CV-04688