# EXHIBIT 4

# MAO DECLARATION

# OPPOSITION TO MOTION TO STRIKE



December 3, 2020

**VIA EMAIL**

WILLKIE FARR & GALLAGHER LLP

Benedict Y. Hur
(bhur@willkie.com)
Simona Agnolucci
(sagnolucci@willkie.com)
Jayvan E. Mitchell
(jmitchell@willkie.com)
Amanda Maya
(amaya@willkie.com)
One Front Street, 34th Floor
San Francisco, CA 94111

**Re: *Anibal Rodriguez, et al., v. Google LLC*, Case No. 3:20-CV-04688 Google's Responses and Objections to Plaintiffs' First and Second Sets of Requests for Production of Documents**

Counsel:

I write concerning Google's Responses and Objections to Plaintiffs' First & Second Sets of Requests for Production of Documents (Nos. 1–20).

This letter concerns our meet and confer on December 2, during which we discussed some of the issues raised in my November 18 letter. Simona Agnolucci and others participated in the meet and confer on behalf of Google.

Some follow up points from our meet and confer:

1. *Request Nos. 1 and 2*: We asked whether there are any documents responsive to these requests, and Ms. Agnolucci said she did not know. Based on the meet and confer, we understand that the parties are at an impasse on these requests. If that is incorrect, please let us know.

2. *Request No. 3*: There are documents responsive to this request, some of which are quoted in the FAC, but we understand that the parties are at an impasse and that Google is refusing to produce documents in response to this request. Ms. Agnolucci stated during the meet and confer that she is counsel for Google in





the Arizona action and represented that this *Rodriguez* case has "absolutely no connection" to the Arizona action and that the documents from the Arizona action are irrelevant. We disagree for the reasons explained in the FAC and my November 18 letter. We asked whether Google would produce unredacted versions of the documents cited in the FAC, for consideration with any briefing on this request, and Ms. Agnolucci stated that Google will not do that.

3. *Request Nos. 4–10*: As explained in our November 18 letter, we disagree with Google's objections and stated limitations with respect to these requests. We asked you to respond in writing regarding those issues. In the meantime, we will review Google's productions in response to these requests while reserving all rights in connection with these requests.

4. *Request No. 11*: Ms. Agnolucci represented that we are at an impasse on this request, representing that production of these documents are "clearly precluded." We disagree. The decision in *In re Williams-Sonoma, Inc.*, 947 F.3d 535 (9th Cir. 2020) does not support Google's position. In that case, the plaintiff sought discovery for reasons that were not relevant within the meaning of Rule 26(b)(1)—specifically, for the sole purpose of "enabl[ing] . . . counsel to find a lead plaintiff to pursue a class action . . . under California law." *Id.* at 537. Unlike *Williams-Sonoma*, Plaintiffs here are not "using discovery to find a client to be the named plaintiff." *Id.* at 540. Rather, Plaintiffs seek discovery for the purpose of substantiating their allegations. This purpose for discovery is appropriate at the pre-certification stage. The Supreme Court confirmed this in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978), a case that *Williams-Sonoma* relied on. In *Oppenheimer*, the Court "d[id] not hold that class members' names and addresses never can be obtained under the discovery rules," *id.* at 354 n.20, as this information could be discoverable, for example, "to illuminate issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, common questions, and adequacy of representation," *id.* at 351 n.13.[1] That is precisely what Plaintiffs seek to do here. To the extent Google has any burden concerns, Plaintiffs are willing to consider first proceeding with production for a representative group. *See Currie-White v. Blockbuster, Inc.*, No. C 09-2593

---

[1] As in *Williams-Sonoma*, the Court in *Oppenheimer* found that the purpose for the requested discovery made the request irrelevant: "The critical point is that the information is *sought to facilitate the sending of notice* rather than to define or clarify issues in the case." *Oppenheimer*, 437 U.S. at 350 (emphasis added).





MMC (MEJ), 2010 WL 1526314, at *3 (N.D. Cal. Apr. 15, 2010); *Martinet v. Spherion Atlantic Enterprises, Inc.*, 2008 U.S. Dist. LEXIS 48113, at *6-7, 2008 WL 2557490 (S.D. Cal. 2008).

5. *Request Nos. 12–13*: Ms. Agnolucci represented that Google may be willing to provide the names of Google employees up to but not above a managerial level, and that Google will provide no information about C-suite employees. Plaintiffs do not agree to that limitation. Ms. Agnolucci also said that Google does not have any org charts but that she also does not know what software or tool Google may employ to maintain information about Google employees. Ms. Agnolucci did not identify any documents or information Google has, can, or will produce in response to these requests, which were served on October 16. Please follow up and let us know what Google is willing to produce in response to these requests. As discussed, we are seeking these documents in part so that the parties can have a meaningful discussion regarding custodians.

6. *Request No. 14*: In connection with this request (which seeks a discrete set of documents "discussing Firebase, My Account, or Web & App Activity"), Ms. Agnolucci represented that it may be "reasonable to make a [document] request that relates to Firebase" but added "I don't know how WAA [Web & App Activity] is relevant to this case" and "the functionality of WAA is not at issue." The FAC details the relevance of Web & App Activity, found within My Account. *E.g.*, FAC ¶¶ 1-6, 59-78. The requested documents – discussing Firebase, My Account, or Web & App Activity – should be produced. We understand that the parties are at an impasse on this request. If that is incorrect, please let us know.

7. *Request Nos. 15-16*: Google did not agree to produce any documents responsive to these requests, with Ms. Agnolucci stating that it is her "strong opinion" that Web & App Activity is "not relevant." Ms. Agnolucci attempted to distinguish between Web & App Activity being "on" (which she reiterated was irrelevant to the claims in this action) and "off" (where she represented that Google should not have any relevant documents, because Web & App Activity being turned off has no impact on Google's collection of user data using Google Analytics for Firebase). We disagree. Relevance and Google's production obligations should not be based on whether a Google employee references Web & App Activity being on or off. Please confirm that the parties are at an impasse with respect to these two requests.

8. *Request No. 17*: Ms. Agnolucci stated that Google will consider this request further and get back to us.





9. *Request No. 18*: To produce documents responsive to this request, Ms. Agnolucci asked us to first provide Google Account ID numbers and/or Google email addresses for each of the Plaintiffs. We will follow up regarding your request for that information.

10. *Request No. 19*: We agreed to discuss this request further in the context of our meet and confer on the ESI Order. Ms. Agnolucci agreed to follow up to determine what impact if any Google's auto-deletion policy (subject to Mr. Pichai's announcement, as noted in my November 18 letter) has on data collected by Google while users have Web & App Activity turned off, to ensure that Google is not destroying such data. Please let us know if Google's auto-deletion policy is resulting in the destruction of data collected by Google while users have Web & App Activity turned off.

11. *Request No. 20*: You requested additional information regarding the relevance of these documents, concerning Google's acquisition of Firebase. We pointed you to the explanation in my November 18 letter and the allegations in our FAC. When you asked us to identify a specific claim for which the documents were relevant, we pointed you to (without limitation) the UCL claim. Ms. Agnolucci's colleague noted that disgorgement is not available under the UCL and requested additional information regarding the relevance of the requested documents. We were unable to provide additional information given our limited time for the meet and confer, but we can provide the following additional information (without limitation): Plaintiffs seek disgorgement to remedy violations of the Comprehensive Computer Data Access and Fraud Act (CDAFA) (Count III) and intrusion upon seclusion (Count V). The requested documents relating to Google's acquisition of Firebase, including how Google sought to profit from the acquisition, are also relevant to our allegations that Google has been unjustly enriched (Counts I–VI). Please let us know if the parties are at an impasse regarding this request.

12. *Objections*: Please respond in writing to the issues raised in my November 18 letter regarding Google's objections.

13. *Rolling production*: Ms. Agnolucci agreed that Google will begin producing documents on a rolling basis once the Court enters the protective order and subject to the "constraints of Google's bureaucracy." Google's counsel sent us revisions to the proposed protective order on December 2, and we will work with you to try to finalize that filing quickly. Ms. Agnolucci was unwilling to





confirm during the meet and confer that Google has begun collecting documents for review and production while the parties finalize the protective order.

Sincerely,

Beko Reblitz-Richardson