**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN 224018)
  bhur@willkie.com
SIMONA AGNOLUCCI (SBN 246943)
  sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN 281668)
  esantacana@willkie.com
ARGEMIRA FLÓREZ (SBN 331153)
  aflorez@willkie.com
HARRIS MATEEN (SBN 335593)
  hmateen@willkie.com
NAIARA TOKER (SBN 346145)
  ntoker@willkie.com
ISABELLA MCKINLEY CORBO (SBN 346226)
  icorbo@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

Attorneys for Defendant
GOOGLE LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, *al*. individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No.  3:20-CV-04688 RS<br><br>**GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFFS' UNTIMELY DAMAGES OPINION**<br><br>*[FILED CONCURRENTLY WITH SANTACANA DECLARATION]*<br><br>Date:          February 13, 2025<br>Time:          1:30 p.m.<br>Ctrm:          3 - 17th Floor<br>Judge:        Hon. Richard Seeborg<br><br>Action filed:    July 14, 2020<br>Trial Date:     August 18, 2025 |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................... 2

    I.    The late disclosure of the "New Opinion" was not authorized by Rule 26. ................. 2

          A.    During discovery, Plaintiffs repeatedly disavowed a "per-month" calculation. ........................................................................................................ 2

          B.    Plaintiffs' explanation about missing data doesn't add up. ............................. 7

          C.    Plaintiffs' "jury inference" explanation is an ex post justification. ............... 10

    II.    Plaintiffs have not carried their burden to show their delay in disclosing the New Opinion was justified or harmless. ................................................................... 12

CONCLUSION ............................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andrews v. Plains All Am. Pipeline, L.P.*,
   2019 WL 6647928 (C.D. Cal. Nov. 22, 2019) ................................................................. 7

*Benefit Cosmetics LLC v. e.l.f. Cosmetics, Inc.*,
   2024 WL 3558848 (N.D. Cal. July 25, 2024) ............................................................... 14

*Kennis v. Metro. W. Asset Mgmt., LLC*,
   2018 WL 9440483 (C.D. Cal. Nov. 29, 2018) ............................................................... 2

*Mass Probiotics, Inc. v. Aseptic Tech., LLC*,
   2017 WL 10621233 (C.D. Cal. Dec. 21, 2017) ........................................................ 2, 13

*Ollier v. Sweetwater Union High Sch. Dist.*,
   768 F.3d 843 (9th Cir. 2014) ....................................................................................... 14

*Oracle Corp. v. SAP AG*,
   765 F.3d 1081 (9th Cir. 2014) ..................................................................................... 11

*Plumley v. Mockett*,
   836 F. Supp. 2d 1053 (C.D. Cal. 2010) .................................................................. 2, 13

*Vogt v. State Farm Life Ins. Co.*,
   963 F.3d 753 (8th Cir. 2020) ....................................................................................... 12

*Wechsler v. Macke Int'l Trade, Inc.*,
   221 F.R.D. 619 (C.D. Cal. 2004) ................................................................................. 12

*Wong v. Regents of Univ. of Calif.*,
   410 F.3d 1052 (9th Cir. 2005) ................................................................................. 2, 14

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   25 F.3 1101 (9th Cir 2001) .......................................................................................... 13

**Other Authorities**

Fed. R. Civ. P. 26 ............................................................................................................... *passim*

Fed. R. Civ. P. 37 ............................................................................................................... *passim*

**INTRODUCTION**

Plaintiffs do not dispute that a Rule 26 supplement that changes a category of damages they seek or the method for calculating them is subject to exclusion. And while they argue there is no prejudice here, their prejudice defense is the same as their defense of their Rule 26 supplement: they claim that their late disclosure is akin to correcting errors or updating numbers.

The vast written record of this case does not support Plaintiffs' argument. Their damages expert's original report expressly distinguished his actual damages methodology from a per-month method, and pats itself on the back for the conservatism of the opinion; two of Google's experts criticized that report for failing to take a per-month calculation into account; Google's counsel cross-examined Plaintiffs' expert for hours about his failure to take into account how long each class member was exposed to the challenged conduct; Google moved to exclude that damages opinion under *Daubert* in part because if failed to take that factor into account; Plaintiffs defended their decision not to take that factor into account in opposing the *Daubert* motion; all parties acknowledged the lack of such a factor when briefing class certification and summary judgment, and the Court rendered class certification, *Daubert*, and summary judgment opinions that described and evaluated the original damages model and Google's criticisms of it.

Rather than defend what they've done, Plaintiffs point the finger, arguing that the reason they could not disclose their opinion sooner is because Google refused to produce data *that it still hasn't produced* and that Plaintiffs never moved to compel. The obvious question is, if they still don't have that data, why were they able to disclose now what they should have disclosed during discovery? Plaintiffs have no answer for this. Their discovery grievances are a distraction.

As for the prejudice to Google, it is vast, and ample cases recognize that having to relitigate a case when every step in the litigation is already complete is *per se* prejudicial. Absent Court intervention here, the message to litigants will be loud and clear: put the words "conservative" and "at least" in your damages reports, wait until everything but trial is done, and then multiply damages by a factor of 60 or more to pressure a settlement. The prejudice here is not just to Google, it is to the Court and its ability to manage its cases effectively. The Court should strike Plaintiffs' late-disclosed

damages model, strike it from Michael Lasinski's supplemental expert report (¶¶ 15-21), and bar Plaintiffs from referring to it at trial pursuant to Rules 26 and 37.

## ARGUMENT

### I. The late disclosure of the "New Opinion" was not authorized by Rule 26.

"[A] supplemental expert report that states additional opinions or seeks to strengthen or deepen opinions expressed in the original expert report is beyond the scope of proper supplementation and subject to exclusion[.]" *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1063-64 (C.D. Cal. 2010). As the Ninth Circuit put it in a case about the late disclosure of expert witnesses, "[p]arties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence." *Wong v. Regents of Univ. of Calif.*, 410 F.3d 1052 (9th Cir. 2005). Courts thus routinely exclude "supplementations" that go beyond merely correct inaccuracies and updating numbers. *See, e.g.*, *Mass Probiotics, Inc. v. Aseptic Tech., LLC*, 2017 WL 10621233, at *4-5 (C.D. Cal. Dec. 21, 2017) (striking late damage disclosure jumping from $350,000 to $12 million); *Kennis v. Metro. W. Asset Mgmt., LLC*, 2018 WL 9440483, at *5-6 (C.D. Cal. Nov. 29, 2018) (striking new calculations that belatedly applied methodology to previously available evidence the expert had originally chosen to exclude).

Plaintiffs do not dispute that if the New Opinion disclosed in their Third Amended Initial Disclosures went beyond merely correcting errors or updating numbers, then it would be subject to exclusion. Instead, they argue that they did not go beyond the authority of Rule 26(e) because "Plaintiffs' monthly compensation methodology has not changed." Opp. at 10. The record simply does not bear this out, and each of Plaintiffs' excuses for failing to disclose their New Opinion during discovery is less credible than the last.

### A. During discovery, Plaintiffs repeatedly disavowed a "per-month" calculation.

Plaintiffs' initial disclosures before they were last amended simply referred to Lasinski's 2023 expert report for the basis of actual damages. *See* Santacana Decl. Ex. 1 (Am. Disclosures), ECF 442-1 at 12. That original report made clear that Plaintiffs made an intentional choice to put forward a flat-fee damages model. By contrast, nowhere in the vast record of this years-long litigation is there a single sentence disclosing an additional intention to later multiply what had been presented

unequivocally as a flat-fee damages figure by a number of months (either "user-months" or "device-months"). Indeed, at every opportunity, Plaintiffs and their expert tied themselves to the flat-fee mast, even in the face of hours of cross-examination and throughout the briefing and argument on Google's *Daubert* motion against Lasinski, which criticized his actual damages opinion for *failing* to account for the fact that some class members would have been exposed to the challenged conduct for more months than others.

Lasinski's original opinion was crystal clear; there were only two variables in his calculation of actual damages: (a) the fixed compensation amount of $3 multiplied by (b) the number of devices from which sWAA-off data was allegedly collected during the class period.

Plaintiffs' opposition claims that there was a third variable *implied* in Lasinski's actual damages calculation: the number of months collected per device, a variable that was *implicitly* set to "1 per device" at the time of Lasinski's original report. Nothing in his original report supports this. The analysis in question was a single paragraph long (paragraph 151), and Lasinski never indicated any desire or intention to increase the $3 per device calculation any further; he did not mention, for example, that in the future he intended to supplement to add a new, third variable to his calculation by which he would multiply the actual damages figure. Nor did he disclose that such a third variable was implicit in his calculation (but that it was set to "1"). ECF 364-23 (Lasinski Rpt.) at ¶ 151.[1]

In their brief, Plaintiffs claim that because Lasinski was "[l]acking data regarding the *total* number of device-months . . . Mr. Lasinski offered his opinion that **compensatory damages should be based on device-months** and computed a 'conservative measure' of damages under his methodology." Opp. at 3:18-21 (second emphasis added). The paragraph they cite to support this claim, paragraph 161 of Lasinski's original report, says the exact opposite:

---

[1] This Reply is accompanied by Appendix A, which provides complete, unedited excerpts of every instance in which Mr. Lasinski's report and testimony reference the $3-per-device one-time payment model. It also includes excerpts from Plaintiffs' pleadings referencing that same model.

> 161. While the Screenwise compensation structure applies this $3 payment per device per month, it is my opinion that actual damages through December 2022 can be conservatively measured by applying this $3 payment on a one-time basis to the number of Class Member Devices, where a single Class Member Device represents a mobile device (smartphone or tablet) used with WAA/sWAA off at least once during the Class Period through December 2022. My calculations in this regard are detailed in the Schedule 10.1 and summarized in the figure below:
>
> **Figure 50**
> **Actual Damages: July 2016 to December 2022**[269]
>
> | | Total |
> |---|---|
> | Class Member Devices | 162,015,424 |
> | Selected Payment per Class Member Device | $3.00 |
> | Actual Damages | $486,046,273 |

ECF 364-23 at 58. Here, as in paragraph 151, Mr. Lasinski expressly *distinguished* the monthly structure of the Screenwise program from his own flat-fee damages model.[2]

Lasinski's analysis never explained why he made this distinction. In their briefing, Plaintiffs repeatedly argue that Lasinski was just trying to identify the "conservative floor" of damages, but intended to leave open that damages could be higher, too, based on later-discovered information about the number of sWAA-off months in the class. But under lengthy cross-examination, Lasinski disavowed that view and stuck to his guns: the opinion he sought to offer in this case was that actual damages should be calculated with a flat fee per device, *not* that it should be multiplied by months:

> **Q.** You have said that it's conservative many times already today, and you have called it a floor multiple times. So I'm just trying to understand. Was your task to calculate the floor, or was your task to calculate the actual damages to the actual class members?
> **A.** My task was to calculate the actual damages to the actual class members. I believe I've done that in a conservative manner.
> ECF 364-17 (Lasinski Tr.), 55:11-20.

>   \*   \*   \*
> **Q.** You're aware that Google has records of when devices—when users had WAA on and WAA off?
> **A.** Yes.
> **Q.** And for how long?
> **A.** Yes.
> **Q.** So you could, for example, calculate number of sWAA-off months for each user, right?
> **A.** I did do that, yes.

---

[2] A misleading block quote in Plaintiffs' brief presents the portion of paragraph 151 where Mr. Lasinski explains that Google pays Screenwise participants $3 *per month*, but leaves out the next sentence (starting with "While the Screenwise compensation structure applies this $3 payment per device per month") where he explains that he departs from that structure. Opp. at 3:1-4.

| | |
|---|---|
| **Q.** You did do that. So why didn't you pay them per sWAA-off month in your actual damages opinion?<br>**A.** I mean, ultimately, I thought it was more appropriate and—and conservative to do it—to do a one-time calculation based on the information that I had available to me.<br>Lasinski Tr. 61:2-16. | **A.** I—again, I don't think that you could calculate with certainty which member, based on the data available to me, would hit it once or a thousand times. I think to incentivize someone to give up their information, whether it's once or a thousand times, you would have to pay them. And so...<br>**Q.** A nonzero amount? |
| \*     \*     \* | **A.** You—you would have to pay them. And in my opinion, a fair price—a fair value for that is $3.<br>Lasinski Tr., 63:1-25. |
| **Q.** Okay. So is it fair to say, then, that your actual damages opinion is that each device should be compensated $3 once because it is extremely unlikely—excuse me—it is extremely likely that they were exposed to the allegedly wrongful conduct at least once?<br>**A.** Yes.<br>**Q.** What if they were exposed to the allegedly wrongful conduct a thousand times? How could their actual damages only be $3, but who is exposed once also has damage of $3?<br>**MR. LEE:** Asked and answered. Go ahead and answer it again. | \*     \*     \*<br>**Q.** You said earlier that a participant in Ipsos [Screenwise] would get more money for data than a class member in this case. You are setting a conservative floor of $3 one time, not $3 every month, right?<br>**A.** That is how the calculation works. That is correct.<br>Lasinski Tr., 70:11-17. |

\*     \*     \*

Then, in briefing, Plaintiffs defended the flat-fee model to the hilt. Google filed a *Daubert* motion calling Lasinski's choice to stick to this flat-fee model "inexplicable" because it failed to account for many factors, such as the fact that some users would have been exposed to the challenged conduct more than others. Google Mot. to Strike Lasinski, ECF 330, at 18:19. Google also pointed out in describing Lasinski's model that it was a copy-paste job from the *Brown* litigation, but that "[t]he sole difference is that here Lasinski inexplicably proposed a one-time $3 payment per class member's device, whereas there he proposed $3 per "unique monthly private browsing instance," *i.e.*, he multiplied by number of months. *Id.* at 17:19-21. A redlined figure in Google's *Daubert* motion showing the difference between Lasinski's disclosure in *Brown* and his disclosure in this case demonstrates that Lasinski knew exactly how to disclose an intention to multiply by months (even absent the precise total number of months), but in this case, he chose not to. *Id.* at 18, Fig. 1.

Thus, if Plaintiffs intended to multiply the actual damages figure by months, they would have said so in defense of Google's attack that Lasinski's failure to do just that demonstrated his opinion was outcome-determinative. But instead, their opposition brief on that motion explained that "Mr.

1  Lasinski applied a conservative, single $3-per-device payment, **rather than a monthly payment**."
2  Opp. to Google's Mot. to Exclude Lasinski, ECF 361-4 at 5:15, 5:24. And in response to Google's
3  attack that Lasinski ignored variation in the class by applying a flat fee rather than taking into account
4  the individualized severity of the challenged conduct, *e.g.*, because some users would be exposed to
5  more of it than others, Plaintiffs wryly responded:

> What Google is really saying, with a straight face, is that Mr. Lasinski's actual damage opinions should be stricken because the actual damages he prescribes are not high enough. If Google honestly believes a $3 payment is inadequate, that problem is easily solved: Plaintiffs welcome a stipulation that Mr. Lasinski's estimated payment should apply on a per-month basis over the class period, based on class members' (s)WAA settings.

*Id.* at 20:16-20. In other words, Plaintiffs knew even then that increasing their damages model to multiply on a per-month basis was off the table (absent Google's stipulation, which of course they never received). They were locked in, and they knew it.[3]

Indeed, in touting the offensive nature of the challenged conduct by quantifying actual damages, at summary judgment in May 2024, Plaintiffs brandished the $486 million figure. ECF 450-1 at 21. If Plaintiffs sincerely believed in May 2024, before the parties' mediation, that damages could soar to $30 billion, they would surely have disclosed it then, too. Instead, they remained steadfast in their one-time-payment theory, which yielded an "offensive" measure of actual damage just one-sixtieth the size they now put forward.

Now compare this consistent record of disavowing any multiplication of the $3 per device opinion to the disclosure Plaintiffs' Third Amended Initial Disclosures. There, Plaintiffs present a brand new damages calculation that multiplies $3 by "device-months." This term does not even appear in Lasinski's expert report, but is described in the Amended Disclosures as having a definition "similar[]" to the "user-months" concept that Lasinski does discuss in a separate section of his original

---

[3] Plaintiffs' class certification motion likewise described actual damages by distinguishing the monthly structure from what Lasinski put forward: "Although Google pays participants $3 per month, Mr. Lasinski calculated actual damages in a more conservative way, applying this $3 payment on a one-time basis, for each mobile device used with (s)WAA off during the Class Period." Pl's Mot. for Class Cert., ECF 361-1 at 22:5-7.

report. ECF 442-1 at 12-16. Also compare this consistent written record to Lasinski's supplemental expert report, served after this Motion was filed. In it, Lasinski updates his original actual damages calculations and, for the first time, opines that a jury could further multiply those calculations by a number of months to reach damages figures as high as $30 billion. *See* Mao Decl., Ex. 11 (Lasinski Suppl. Rpt.), ECF 453-12 at 5-6.

These comparisons can only yield the inescapable conclusion that the newly disclosed opinions are, in fact, new methods of calculating damages not authorized by Rule 26(e). Indeed, they are not just new methods of calculating damages, they incorporate a variable missing from his original method; whereas before, Lasinski estimated that each class member suffered equal actual damages, regardless of the severity of the data collection or for how long the collection lasted, now Plaintiffs' new damages model expressly takes into account that some devices were exposed to the challenged conduct for longer than others.

Plaintiffs' new, ballooned damages model is a far cry from permitted supplementation such as "correct[ing] an arithmetic error" or to "conform" an already-disclosed measure to "a new class definition." *Andrews v. Plains All Am. Pipeline, L.P.*, 2019 WL 6647928, at *4 (C.D. Cal. Nov. 22, 2019). Indeed, under cross examination, Lasinski was asked if his "conservative" estimate of damages could later go "a lot higher" and he answered simply "[n]ot that I'm aware of, no." Lasinski Tr., at 56:9. In the end, Lasinski's supplemental report takes what was a $486 million actual damages figure and opines the maximum actual damages is in excess of $30 billion, over 60 times higher.

### B. Plaintiffs' explanation about missing data doesn't add up.

As they have done before, Plaintiffs lay their lack of diligence at Google's feet, complaining that some discovery malfeasance is the true cause of their violation of the rules. The last time Plaintiffs complained about a supposed "about face" Google made concerning document production, justifying expanding the scope of discovery, this Court rejected their grievances because "the proper recourse for compliance with discovery obligations is to file discovery motions or otherwise take prompt actions regarding the specific delinquencies complained of, rather than requesting an extension on the eve of the end of the discovery period." ECF 281 at 2:15-18. The same logic applies here. Plaintiffs' opposition is replete with complaints about unproduced data that were never raised during discovery,

1  and re-arguments of a document preservation dispute they lost before Judge Tse. None of those
2  complaints belongs before this Court, and the time to file discovery motions has long passed.

3        Equally important, however, is that Plaintiffs' claims are not credible: the supposed missing
4  data did not disable Plaintiffs from disclosing their augmented damages theory earlier. All they needed
5  to say during the discovery period was: "$3 should be multiplied not just by the number of devices,
6  but by the number of months, too." Indeed, they found the words easy enough when, a year after
7  discovery closed, they served their amended disclosures describing just that (albeit across four-and-a-
8  half pages instead of one sentence). Lasinski found it easy enough, too, when he disclosed it using
9  words (not numbers) in *Brown*, while expressly choosing not to do so here. *See* Google's Mot. to
10 Exclude Lasinski, ECF 330, at 18, Fig. 1.

11       And, regardless, the claim that there is missing data is a red herring. Lasinski had available to
12 him all of the data Plaintiffs now claim was missing, and indeed relied on it for other purposes, but
13 intentionally chose not to incorporate it into his actual damages opinion. Indeed, Lasinski **did** calculate
14 the number of user-months during the discovery period for the period 2016 through 2022; the only
15 additional data Google produced that forms an input into the user-month calculation was the same data
16 Lasinski relied upon in his original report, but for calendar years 2023 and 2024, *i.e.*, updated numbers.
17 Santacana Reply Decl. ¶ 5. Using the 2016 through 2022 data, in a section of his original report
18 devoted to analyzing how an eventual damages award of $486 million could be *apportioned* among
19 class members, Lasinski explained that he used the data from Google to "estimate the number of
20 sWAA-Off User Months during the period July 2016 through December 2022, where a single sWAA-
21 Off User Month represents a month in which an individual used a smartphone or tablet with sWAA
22 off in the U.S" Lasinski Rpt., ECF 364-23 at ¶ 170. He then opined that any damages award "could
23 then be distributed to Class members in the claims administration process as a function of the number
24 of sWAA-Off User Months deemed attributable to each Class member." *Id.* at Para. 174.

25       This is the same definition of "user-months" that Plaintiffs disclosed in their belated Third
26 Amended Initial Disclosures, and is the same definition they *now* say should be multiplied by $3, but
27 that they never attempted to multiply during discovery. ECF 441-1 at 15. In fact, in the disclosure
28 Google now seeks to strike, the total number of user-months "through 2022" is the exact same number

1  Lasinski calculated in his *original report*. But, as noted above, when asked during his deposition why he didn't take the user-month number he calculated and multiply by $3, Lasinski responded: "I mean, ultimately, I thought it was more appropriate and—and conservative to do it—to do a one-time calculation based on the information that I had available to me." Lasinski Tr., at 61:13-16.

The second category of data Plaintiffs complain they were promised and never received is a sample of 5,000 class members' raw data collected by Google Analytics. But to date, Plaintiffs **still** have not received such a sample because Google refused to provide one and they never moved to compel one (Plaintiffs instead relied on data associated with the named Plaintiffs and with dummy expert accounts that their expert created to study how Google Analytics works). There is no conceivable basis for Plaintiffs to complain that this missing data is the reason they did not disclose their new damages model during discovery, since even today, having finally disclosed it, they still do not have that data.

Google must note, however, the highly unusual circumstance of two officers of the Court (one of whom has *pro hac vice* status) claiming under penalty of perjury that a material discovery promise was made to them orally sometime "[i]n the late Spring or early Summer of 2022" (a months-long period of time) while providing no further details: no date on which it was made, who else was on the call, what else was discussed, whether it was ever written down, whether they have any contemporaneous notes, and no explanation of why they did not pursue such a material promise in discovery, having purportedly secured it from the undersigned counsel. *See* Mao Decl. ¶¶ 4-6; Lee Decl. ¶¶ 3-5. To be clear, the undersigned denies any such promise, and no member of Google's team has any notes or correspondence suggesting any such promise was made by any other member of Google's team, either. Santacana Reply Decl. ¶ 4.

Plaintiffs' complaints about missing data are fundamentally contradictory. Plaintiffs claim, on the one hand, that they could not disclose their intentions earlier because data Google hadn't produced prevented them from calculating a precise figure. But they concede that *Google has never produced sample class member data*—yet Plaintiffs went ahead and disclosed, and Lasinski calculated, these augmented damages figures anyway. Plaintiffs also claim that implicit at all times was (in their view) the obvious option that the jury could infer a number of months and multiply $3 by that number. If it

were truly so obvious–and if a lay jury could do it after a two-week trial–Plaintiffs could have disclosed their theory during the years-long discovery period, but they chose not to.

Lastly, Plaintiffs claim that Lasinski could not calculate the precise number of user-months in which users were actually harmed. Yet they simultaneously claim that 99.9% of all class members were exposed to the challenged conduct in any given month—and Lasinski had already calculated the total number of user-months (i.e., the 100% figure). Indeed, this is the figure they now rely on for their updated damages model. It strains credulity to believe that Plaintiffs and Lasinski left a $30 billion calculation on the table for this long because they might be off by 0.01%—only to now, when nothing has changed, suddenly feel comfortable with the same error rate.

Simply put, Plaintiffs did not wait to disclose this theory because they were missing data. Sophisticated counsel (as Plaintiffs' counsel surely are) who know they have a contention to make but lack the discovery they need to flesh it out (1) disclose the contention, and (2) seek the discovery to flesh it out, all during the discovery period. Here, Plaintiffs did neither.

### C. Plaintiffs' "jury inference" explanation is an ex post justification.

Plaintiffs argue that their new damages theory is simply "illustrative" of "inferences" the jury can make on its own at trial from "other evidence already produced in this case," including "previously disclosed expert analysis by Plaintiffs' technical expert Jonathan Hochman," who "explained that Google's SDKs are so prevalent that the likelihood that Google collected app activity data from a given mobile device in a given month is 'extremely high,' exceeding 99.9%." Opp. at 6. As discussed above, if it were that easy, it's a mystery why Plaintiffs and Lasinski both failed to draw the same inference, even when repeatedly invited to do so. A simple sentence or two to that effect would have saved us all this trouble.

In any case, this argument is a disguised play to have their cake and eat it too. Per Plaintiffs, even if the Court strikes Lasinski's supplemental opinion, it should nevertheless bless Plaintiffs' apparent desire to ask the jury to multiply their damages request by a speculative number through attorney argument. The Court should not take the bait. Google's Notice of Motion asks that "Plaintiffs' New Opinion should be stricken, barred from being incorporated into Michael Lasinski's forthcoming supplemental report, and excluded from trial pursuant to Rules 26 and 37." Not. of Mot. at i. *Any*

1  attempt to press a brand new damages theory, including by improperly inviting the jury to depart from
2  Plaintiffs' damages opinions into speculative territory for damages should be precluded. *See, e.g.,*
3  *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1091 (9th Cir. 2014) (affirming rejection of $1.3 billion jury
4  verdict where plaintiff failed to present "sufficient non-speculative evidence" of damages).

5        Plaintiffs repeatedly claim that Google somehow "agreed" or "invited" that the jury make
6  "inferences" in order to award damages on a per-month basis. Google has done no such thing. Plaintiffs
7  cite two documents for support and neither evidences such an agreement. The first document is the
8  Joint Case Management Statement at ECF 427, where Google addressed a dispute about whether
9  Google should be ordered to produce a sample of class member data. ECF 427 at 13:12. Google noted
10 that it had already produced sample app activity data, and that a "satisfactory alternative" to producing
11 more sample data was, as Plaintiffs had put it, that "Plaintiffs can ask the jury to draw certain
12 inferences using the information Google did produce." *Id.* at 13:22-23. Plaintiffs argued that sample
13 data could be used to show how offensive data collection was; Google responded that "What's really
14 going on here is that Plaintiffs' experts found nothing unusual: the supposedly offensive data
15 collection amounted to anodyne bits and bytes collected to help app developers understand their own
16 apps . . . ." and "[t]hat is why now, post-summary judgment and after an unsuccessful mediation,
17 Plaintiffs suddenly want another try at showing offensive data collection." *Id.* at 14-15. Google's
18 statement could not have been an endorsement of the opinion it now seeks to exclude; in the same
19 statement Google was clear that "to the extent Plaintiffs' third 'amended' Rule 26 initial disclosure
20 are a harbinger of 'amended' expert opinions, as opposed to mere supplemented calculations, Google
21 never agreed to such amendment, and doing so now is improper."

22       The second supposed invitation for a jury to make a per-month inference is, quixotically, a
23 statement in *this Motion* seeking to exclude any per-month calculation, where Google said "Plaintiffs'
24 own disclosures admit that there are alternatives for the jury to reach the actual   damages figure
25 without the addition of the New Opinion proposed in their third 'amended' Rule 26 disclosures." Mot.
26 at 11:18-20. This statement in turn refers to the amended disclosures. Google's intent was simply to
27 convey that excluding this new opinion would not stop the jury from hearing Plaintiffs' original
28 damages arguments. To the extent Google misunderstood what Plaintiffs meant in their disclosures by

a jury inference, it apologizes; obviously it did not intend to bless the jury going on the very speculative frolic and detour with its damages analysis that this Motion seeks to exclude.[4]

As for Plaintiffs' caselaw that appellate courts will sustain jury damages awards that are supported by the evidence, Opp. at 12-13, even if the jury departs from Lasinski's opinion in a manner that can be sustained by the Court in post-trial motions, that is neither here nor there; the issue here is whether *Plaintiffs* can press to the jury a damages theory they failed to disclose.

*     *     *

The opposition brief tries mightily to situate the per-month calculation within previously disclosed damages theories, but it fails. Under Rule 26, without a disclosed antecedent to the per-month theory, it is subject to exclusion, and not only is there no antecedent, but Plaintiffs' counsel and Lasinski repeatedly, expressly, and forcefully disavowed a per-month calculation.

Plaintiffs' cases on supplementation cannot save them. In *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753 (8th Cir. 2020), the supplemental exhibits in that case were permissible "summaries of voluminous data" using the *same* formula already disclosed. 963 F.3d at 771–72 (quotation omitted). And in *Wechsler v. Macke Int'l Trade, Inc.*, 221 F.R.D. 619 (C.D. Cal. 2004), a belated "reasonable royalty" calculation was allowed because the expert had *always* disclosed that exact royalty measure and simply updated numerical inputs after additional information was produced. *Id.* at 622–23. Lasinski does that here, too, and Google does not take issue with it; that is what the parties agreed he could do. It is the new methodology Plaintiffs present that must be excluded from trial.

**II.    Plaintiffs have not carried their burden to show their delay in disclosing the New Opinion was justified or harmless.**

Because Plaintiffs' new theory is a belated overhaul of their disclosed model, and not just an "illustration," they cannot meet their burden under Rule 37(c)(1) to show "harmlessness" or

---

[4] Plaintiffs also refer to the summary judgment hearing for support because Google's counsel said that Plaintiffs haven't suffered harm because they "can sign up right now for Google Screenwise program and they can get their $3 per month right now. The value of their data has not diminished one iota. Google has not stood in their way of selling their data." Mao Decl. Ex. 12, ECF 453-13 at 55. That is an accurate statement of how Screenwise works; it was obviously not intended to bless an amendment to Plaintiffs' then-disclosed damages theories.

"substantial justification." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106–07 (9th Cir. 2001). Attempting to switch from a one-time $3-per-device to a per-month approach dwarfs the prejudice in other cases that excluded late damages calculations models, both in quantity and in quality. *See, e.g.*, *Mass Probiotics v. Aseptic Tech., LLC*, 2017 WL 10621233, (C.D. Cal. Dec. 21, 2017) ($350,000 claim rose to $12 million).

Plaintiffs shrug off the elements of Rule 37, forgetting that "[i]mplicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly*, 259 F.3d at 1106. This is an easy case on prejudice; a year after discovery closed, after a class has been certified and summary judgment is over, as the parties enter the final stretch of pretrial preparations, and just after a mediation fails, Plaintiffs multiply their damages demand by 60 using a new methodology. If this were permissible, scheduling orders would be rendered meaningless, and sandbagging would be *de rigeur*. As many courts have held, "a supplemental expert report that states additional opinions or seeks to strengthen or deepen opinions expressed in the original expert report is beyond the scope of proper supplementation and subject to exclusion under Rule 37(c)." *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010) (cleaned up).

Plaintiffs' late disclosure prejudices Google because Google litigated this entire case under a false pretense. The opposition brief shrugs this off, as though it's a matter of a couple depositions and one new expert report. Even that, as Plaintiffs well know, is expensive, and no offer to pay for it all has been forthcoming. And even if they did pay for it, Plaintiffs ignore that the actual damages opinion was the subject of the first Lasinksi deposition; it was addressed extensively by two different Google experts (Knittel and Ghose), both of whom were also deposed; it was the subject of class certification briefing and argument before this Court and a *Daubert* motion and argument before this Court, resulting in this Court opining on it in a written Order that went ahead and certified the class and overruled the *Daubert* objections; it was the subject of summary judgment briefing and argument resulting in a denial of summary judgment; and it informed settlement posture in the parties' only mediation, timed to take advantage of years of litigation experience to attempt to resolve this case.

Plaintiffs complain that Google does not detail all that it would have done differently but for Plaintiffs' untimely disclosure, but the reality is that the counter-factual is dizzying. And the prejudice

1  does not only affect Google; this Court opined on a stale damages opinion and certified a class after
2  conducting the required review of the class damages model. And it then opined on the actual damages
3  opinion again at summary judgment. Plaintiffs' late disclosure upends pieces of each of those
4  decisions. It is not just Google that would have to redo time-consuming and expensive work. Plaintiffs
5  ask that this Court forgive the late disclosure of a new variable that qualitatively and quantitatively
6  changes a damages model to a very significant degree after every step of the litigation is complete but
7  for trial. That would inevitably have significant implications for every subsequent case before this
8  Court.

9  The surprise to Google is indeed, enormous, as set out in detail above. The *Daubert* briefing
10 alone should make that plain; Google expressly criticized Lasinski for *failing* to do what he now seeks
11 to do—taking the extent of the challenged collection over time into account. The same criticisms were
12 leveled by two different Google experts, and Lasinski was cross-examined extensively on it.

13 That trial is seven months away is of no moment; Plaintiffs' amendments would do violence
14 to the case schedule. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir.
15 2014) (affirming exclusion of witnesses "identified 15 months after the discovery cutoff and only ten
16 months before trial" because it thwarted the opposing party's ability to tailor expert discovery and trial
17 strategy); *Wong*, 410 F.3d at 1062 (9th Cir. 2005) ("Disruption to the schedule of the court and other
18 parties in that manner is not harmless."). Indeed, this Court has excluded sur-rebuttal opinions even
19 when they were first raised *during the expert deposition* before discovery had even closed, when there
20 was plenty of opportunity to cure the prejudice. *Benefit Cosmetics LLC v. e.l.f. Cosmetics, Inc.*, 2024
21 WL 3558848, at *6 (N.D. Cal. July 25, 2024). And the one category the Court did not strike entirely,
22 it found a lack of evidence of prejudice (which is shown amply here) and still ordered cost-shifting for
23 additional discovery as a remedy.

24 Finally, Plaintiffs raise the question of "bad faith" in their opposition, arguing there is none
25 here. Google will leave that question to the Court. It reminds the Court on that subject, though, that
26 Plaintiffs could have disclosed their per-month theory at any time during the over four years of this
27 litigation. They waited until immediately after a mediation failed to result in a settlement. In fact, they
28 *concede* that the timing of their new disclosure was the result of that mediation because "Plaintiffs for

the first time believed there may be a dispute regarding the jury's ability to award compensatory damages above the conservative floor initially calculated by Mr. Lasinski." Opp. at 5:17-19. The record above speaks for itself: it is impossible that Plaintiffs did not know Google's position. Indeed, that is exactly why Plaintiffs, in opposing the Lasinski *Daubert*, tongue firmly in cheek, offered to Google that it *stipulate* Lasinski could multiply his $3-per-device figure by the number of months, knowing Google would not do so and would oppose any such belated shift in opinion. Opp. to Google's Mot. to Exclude Lasinski, ECF 361-4 at 20:16-20. That was a year ago, long before the parties' mediation. What changed at the mediation is not that Plaintiffs learned Google's position. But now, thanks to Plaintiffs' belated disclosure, they have managed to force the Court into a position where it must decide whether this is a half-billion dollar case or a thirty billion dollar one.

## CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court strike Plaintiffs' late-disclosed damages model, strike it from Michael Lasinski's supplemental expert report (paragraphs 15-21), and bar Plaintiffs from referring to it at trial pursuant to Rules 26 and 37.

Dated: January 30, 2025

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

By: */s/ Eduardo E. Santacana*
Benedict Y. Hur
Simona Agnolucci
Eduardo E. Santacana
Argemira Flórez
Harris Mateen
Naiara Toker
Isabella McKinley Corbo

*Attorneys for Defendant*
GOOGLE LLC