1

2

3

4

5

6

7                                    UNITED STATES DISTRICT COURT

8                                 NORTHERN DISTRICT OF CALIFORNIA

9

10    ANIBAL RODRIGUEZ, et al.,
                                                    Case No.  20-cv-04688-RS
              Plaintiffs,

11

12        v.                                        **ORDER GRANTING MOTION TO
                                                    STRIKE**
13    GOOGLE LLC,

              Defendant.

14

15                                         **I. INTRODUCTION**

16           Defendant Google LLC moves to strike a tardy supplemental expert opinion filed by

17    Plaintiffs, a class of Google services users who aver that the company violated their privacy.

18    Plaintiffs respond that the opinion merely provides illustrative arithmetic.  For the reasons

19    explained below, the motion to strike is granted.  That said, Plaintiffs will not be foreclosed from

20    urging the jury to draw inferences based on other evidence admitted at trial so as to award

21    damages in excess of their expert's conservative floor.

22                                         **II. BACKGROUND**

23        **A.  Initial Expert Report**

24           Two years ago, Plaintiffs' expert Michael J. Lasinski served an expert report that offered

25    two models for measuring the appropriate monetary relief if Google is found liable in this case.

26    At issue here is Lasinski's actual damages model.  In the initial report, Lasinski described the

27    Ipsos Screenwise Panel, a consumer research program conducted for Google.  Through

28    Screenwise, participants received a baseline payment of $3 per month in return for permitting

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Google potentially to collect and record all interactions on a given device.  Lasinski Report, Dkt.

2    No. 314-7 ("Lasinski Report"), ¶ 138.  Based on this program, Lasinski stated:

3
      In my opinion, the most probative indicator of the harm to [Plaintiffs]. . . is derived
4     from the monthly compensation structure for participants in the Ipsos Screenwise
      Panel.  More specifically, it is my opinion that the baseline payment to Screenwise
5     Panel participants of $3 per month for using a Screenwise meter app on a single
      mobile device represents a conservative indicator of the monthly payment necessary
6     for an individual to knowingly surrender the choice to keep their app activity
      private and allow Google to track all app activity data, regardless of that
7     individual's WAA or sWAA settings.

8    *Id.* ¶ 160.  Lasinski went on to explain that:

9
      While the Screenwise compensation structure applies this $3 payment per device
10    per month, it is my opinion that actual damages through December 2022 can be
      conservatively measured by applying this $3 payment on a one-time basis to the
11    number of Class Member Devices . . . used with WAA/sWAA off at least once
      during the class period through December 2022.
12

13   *Id.* ¶ 161.

14        By multiplying the estimated number of class members by the average number of devices

15   per member, Lasinski calculated at least 162 million devices that might warrant a one-time $3

16   payment, resulting in actual damages of at least $486 million.  *Id.*  In a deposition, Google's

17   counsel questioned Lasinski as to why he proposed a one-time payment despite opining that

18   Screenwise's monthly payment structure was the most probative indicator of harm.  Lasinski

19   explained that, even if he knew the number of months in which a class member had switched off

20   sWAA data collection, that wouldn't necessarily tell him how many months for which there were

21   actual damages because he wouldn't know "if they hit a third-party site . . . with a Google tracker

22   on it."  Appendix A to Reply Br. at 4.  Notably, in a separate section of his initial report, Lasinski

23   estimated the number of months during which users had turned off sWAA data collection but did

24   not incorporate that estimate into his actual damages calculations; instead, he suggested that the

25   months estimate may provide a means of apportioning actual damages among the class members.

26   Lasinski Report ¶ 171–72.

27

28                                                             ORDER GRANTING MOTION TO STRIKE
                                                               CASE NO. 20-cv-04688-RS

United States District Court
Northern District of California

### B. Supplemental Expert Report

More than a year after the close of expert discovery, Plaintiffs served amended disclosures that provided additional explanations about Lasinski's damages opinion. *See* Mao Decl., Ex. 9, Dkt. No. 453-10. Whereas previous disclosures merely cited to Lasinski's report, the new one explained that actual damages could be calculated by multiplying the number of class members or class member devices by $3, and then multiplying that figure by the number of months in which the jury determines that Google wrongfully collected data. Under this method, the minimum number of months is one, resulting in Lasinski's initial, conservative estimate of $486 million. *Id.* at 11. The maximum, however, could include the entire class period—which means actual damages might range up to $16 billion. *Id.* at 11–12.

Four months later, Lasinski served a supplemental report to explain, while not "offer[ing] an opinion on the specific number of [months] to which a $3 monthly payment can be applied, [he] understand[s] that the jury may be permitted to determine or infer that number based on information in the record." Supplemental Report, Dkt. No. 454-5 ¶ 17. He therefore presented illustrative calculations should the jury decide to apply his opinion about the $3 monthly payment to more than a single month (*i.e.*, in excess of his conservative $486 million estimate). Under one scenario, each user could receive a $3 payment per month tracked, whereas in the other, each user could receive a $3 payment per month tracked per device. These calculations resulted in an upper bound estimate of damages ranging from $16.9 billion to $30 billion. *Id.* ¶ 18.

### III. LEGAL STANDARD

### A. Rule 26(a)

Parties must exchange a computation of each category of damages claimed in their initial disclosures. Fed. R. Civ. P. 26(a)(1)(A)(iii). A party must supplement or correct a Rule 26(a) disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

ORDER GRANTING MOTION TO STRIKE
CASE NO. 20-cv-04688-RS

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.  Rule 37

A party who fails to provide information as required by Rule 26(a) or (e) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Pursuant to that rule, a party aggrieved by an untimely supplementation may move to strike the tardy report or for other sanctions.  *See Turner v. Thyssenkrupp Materials NA, Inc.*, No. 818-cv-00822-CJC-KESx, 2020 WL 7123312, at \*3 (C.D. Cal. Nov. 5, 2020), *order clarified*, 2020 WL 7863859 (C.D. Cal. Nov. 12, 2020).

## IV. DISCUSSION

At oral argument, Plaintiffs' counsel conceded that the amended disclosure and supplemental report are not necessary for a jury to award damages exceeding the conservative floor set by Lasinski's initial report.  *See also* Opp. Br., Dkt. No. 453, at 5 ("Plaintiffs didn't believe they were *required* to [serve amended disclosures], since the amended disclosures did not add new 'categories' of damages or methods of 'computation.'")  Plaintiffs instead sought to amend their disclosures only after a failed settlement conference, hoping "to ensure that if Google *did* intend to raise any dispute, it would do so well in advance of trial."  *Id.*  In other words, no new information or data appears to justify the filing of this supplemental opinion; Lasinski could have easily provided the same illustrative calculations (*i.e.*, multiplying \$3 by number of users or devices by number of months) in his initial report.  That he did not do so the first time does not mean it was incomplete or incorrect.  Indeed, Google's counsel repeatedly questioned Lasinski during a deposition about his decision to compute only a conservative floor, rather than the month-by-month measure of damages that he now provides.  Plaintiffs can hardly contend that they did not know the monthly computation was missing from the initial report such that a supplement is warranted.  For whatever reason, it appears to have been a strategic choice.

Because the amended disclosure is unwarranted under Rule 26(a), it and the corresponding supplemental report must be stricken unless the tardiness is substantially justified or harmless.  *See* Fed. R. Civ. P. 37(c)(1).  The factors guiding this inquiry include "(1) prejudice or surprise to the

ORDER GRANTING MOTION TO STRIKE
CASE NO. 20-cv-04688-RS

1    party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3)

2    the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely

3    disclosing the evidence." *Benefit Cosmetics LLC v. e.l.f. Cosmetics,, Inc.*, No. 23-cv-861-RS,

4    2024 WL 3558848, at *6 (N.D. Cal. July 25, 2024).  Courts also consider (5) the "importance of

5    the evidence." *S.F. Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 733 (N.D. Cal.

6    2011).

7        1.  Prejudice or Surprise

8        Google asserts that Plaintiffs' late disclosure is prejudicial because it threatens to disrupt

9    the trial schedule and would require reopening discovery.  The Ninth Circuit has recognized that,

10   if a plaintiff is "permitted to disregard the deadline for identifying expert witnesses, the rest of the

11   schedule laid out by the court months in advance, and understood by the parties, would have to

12   have been altered as well." *Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1062 (9th Cir.

13   2005).  "Disruption to the schedule of the court and other parties in that manner is not harmless."

14   *Id.*  The specter of reopening discovery also "supports a finding that the failure to disclose was not

15   harmless." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008), *as*

16   *amended* (Sept. 16, 2008).

17       To be sure, it is a stretch to find Google surprised by the notion that Plaintiffs believe

18   actual damages in this case could be computed on a monthly basis.  Lasinski's initial report clearly

19   states his opinion that "the baseline payment to Screenwise Panel participants of $3 per month . . .

20   represents a conservative indicator of the monthly payment necessary for an individual to

21   knowingly surrender the choice to keep app activity private." Lasinski Report ¶ 160.  Google's

22   own *Daubert* motion even highlighted the fact that Lasinski's actual damages calculation ignored

23   the very month-by-month measure that he said was warranted.  Plainly, Google understood that

24   actual damages in this case might be measured monthly.

25       Nevertheless, the standard asks for prejudice *or* surprise.  Although it is far from shocking

26   that Lasinski might testify a monthly measure of damages is appropriate, that fact does not

27   mitigate the prejudice caused by the late disclosure of his so-called "illustrative calculations."

28

United States District Court
Northern District of California

1    This factor therefore weighs in favor of granting the motion to strike.

2        2.    Ability to Cure

3        Plaintiffs argue that Google could easily complete any necessary discovery such that the

4    above-described prejudice is curable—even going so far as to offer Lasinski for an additional

5    deposition and agreeing that Google's damages expert may serve a responsive report.  Google

6    does not offer a compelling rejoinder and instead resorts to reiterating its arguments about

7    prejudice.  On balance, this factor weighs in favor of denying the motion to strike.

8        3.    Likelihood of Disrupting Trial

9        As explained above, permitting this late-filed disclosure could well require changing the

10   trial schedule.  Google would need to depose Lasinski and have experts prepare responsive

11   reports; Plaintiffs, in turn, may need to depose Google's experts.  *Daubert* motions might follow.

12   Although the parties could conceivably conduct all of the above within the six months remaining

13   before jury selection, it is just as likely that permitting the report will require delaying the start of

14   trial.  Considering the challenges parties raised when trying to select a trial date in the first place,

15   the risk of disruption supports granting the motion to strike.

16       4.    Bad Faith or Willfulness

17       Google highlights that Plaintiffs could have provided month-by-month calculations at any

18   point during the discovery period yet waited until after a failed settlement conference to do so—a

19   fact which Plaintiffs concede.  Plaintiffs, for their part, bemoan the degree to which Google has

20   refused to produce certain materials relevant to determining the number of months in which actual

21   damages might have occurred.

22       Regardless of whether either party's conduct could fairly be described as bad faith, it is

23   clear enough that Plaintiffs willfully refrained from calculating damages on a monthly basis until

24   well past the close of expert discovery.  No new information warranted the supplemental report;

25   the same equation Lasinski provides therein could have appeared in his initial report, based on the

26   estimated number of user-months he suggested as a means of apportioning damages.  This factor

27   therefore strongly favors granting the motion to strike.

28

ORDER GRANTING MOTION TO STRIKE
CASE NO. 20-cv-04688-RS

United States District Court
Northern District of California

United States District Court
Northern District of California

5.   Importance of the Evidence

The supplemental disclosure is important.  Without it, Lasinski is limited to opining that a monthly measure of damages is appropriate and that, at the very least, actual damages can be measured via a one-time $3 payment per user or per device.  With the supplemental report, however, Lasinski would be able to testify that actual damages could range up to $30 billion.  This is a significant difference in the ears of a juror.

That said, the illustrative calculations Lasinski seeks to provide are not so important as to outweigh the other factors that weigh in favor of granting Google's motion to strike—as explained above, jurors may rely on Lasinski's initial report to reach their own conclusions as to whether actual damages exceed his initial, conservative floor.  They could endorse his opinion about a monthly measure being appropriate and reject his one-time payment theory; in that case, they might rely on other evidence in the case to estimate the number of months in which damages occurred and then multiply the estimated months number by $3 per user or per device.  *See* October 3, 2024, Jt. Case Management St., Dkt. No. 427 at 13 (Google acknowledging that "Plaintiffs can ask the jury to draw certain inferences using the information Google did produce.").

**V. CONCLUSION**

Google's motion to strike the new actual damages calculations in Plaintiffs' amended disclosure and Lasinski's supplemental expert report at ¶¶ 15–21 is granted.

**IT IS SO ORDERED**.

Dated: February 21, 2025

RICHARD SEEBORG
Chief United States District Judge

ORDER GRANTING MOTION TO STRIKE
CASE NO. 20-cv-04688-RS

7