**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
alanderson@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
Ryan Sila (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,

                    Plaintiffs,

    vs.

GOOGLE LLC,
                    Defendant.

Case No.:  3:20-cv-04688-RS

**MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF GOOGLE'S EXPERTS DONNA HOFFMAN, JOHN BLACK, AND CHRISTOPHER KNITTEL**

The Honorable Richard Seeborg
Courtroom 3 – 17th Floor
Date: May 15, 2025
Time: 1:30 p.m.

## <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ................................................................................................2

II.  BACKGROUND ................................................................................................5

    A.  Google Expert Dr. Donna Hoffman ................................................................5

    B.  Google Expert Dr. John Black ................................................................6

    C.  Google Expert Dr. Christopher Knittel ................................................................7

III.  LEGAL STANDARD ................................................................................................8

IV.  ARGUMENT ................................................................................................9

    A.  Portions of Hoffman's opinions and testimony should be excluded. ....................9

        1.  Hoffman offers impermissible opinions about motive, intent, and state of mind. ................................................................................................9

        2.  Hoffman's opinions impermissibly intrude upon the Court's role to instruct the jury. ................................................................................................11

        3.  Hoffman impermissibly offers technical opinions without any technical expertise or analysis. ................................................................13

    B.  Portions of Dr. Black's opinions and testimony should be excluded. .................17

        1.  Dr. Black impermissibly opines that Google defines "Google Account," which is outside of his expertise as a software engineer and runs contrary to this Court's prior ruling. ...........................17

        2.  Dr. Black improperly offers opinions on "interception," which is irrelevant and beyond the scope of rebuttal. .........................................18

    C.  Portions of Dr. Knittel's opinions should be excluded. ......................................19

        1.  Dr. Knittel's opinion that users might have given permission had Google asked—and that Google might have made the same profits—is impermissible because it is irrelevant and speculative. ................................................................................................19

        2.  Dr. Knittel's opinion that Google might have somehow monetized (S)WAA-off advertising without (s)WAA-off data is impermissibly speculative. ................................................................21

V.  CONCLUSION ................................................................................................22

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addison v. La. Reg'l Landfill Co.*,
    2024 WL 3757551 (E.D. La. Aug. 12, 2024) ........................................................18

*Allied Erecting & Dismantling Co. v. United States Steel Corp.*,
    2023 WL 5322213 (6th Cir. Aug. 18, 2023)..........................................................17

*Apple, Inc. v. Samsung Elecs. Co.*,
    2012 WL 2571332 (N.D. Cal. June 30, 2012) ........................................... 3, 11, 19

*Betances v. Fischer*,
    2021 WL 1534159 (S.D.N.Y. Feb. 23, 2021) ........................................................17

*Bona Fide Conglomerate, Inc. v. SourceAmerca*,
    2019 WL 1369007 (S.D. Cal. Mar. 26, 2019) .......................................................13

*Brown v. Google, LLC*,
    2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ...............................................11, 20

*Calhoun v. Google LLC*,
    113 F.4th 1141 (9th Cir. 2024)..........................................................................3, 12

*California ex rel. Brown v. Safeway*,
    615 F.3d 1171 (9th Cir. 2010)....................................................... 9, 11, 20, 22

*Cooper v. Brown*,
    510 F.3d 870 (9th Cir. 2007)................................................................................20

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ........................................................................................1, 8

*Eason v. Anoka-Hennepin E. Metro Narcotics & Violent Crimes Task Force*,
    2002 WL 1739666 (D. Minn. July 22, 2002) .......................................................18

*Giovacchini v. Cincinnati Ins. Co.*,
    2024 WL 5077099 (N.D. Cal. Dec. 10, 2024) ......................................................18

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
    340 F. Supp. 3d 934 (N.D. Cal. 2018)..................................................................19

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse & Warehouse Union*,
    2022 WL 16924139 (D. Or. Nov. 14 2022)..............................................4, 19, 20

*In re Ford Tailgate Litig.*,
    2015 WL 7571772 (N.D. Cal. Nov. 25, 2015) (Seeborg, J.) ...........................3, 13

ii

*In re Roundup Prods. Liab. Litig.*,
   734 F. Supp. 3d 930 (N.D. Cal. 2024)..................................................................8

*In re Twitter, Inc. Sec. Litig.*,
   2020 WL 9073168 (N.D. Cal. Apr. 20, 2020) ...............................................2, 9

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
   2024 WL 4023562 (N.D. Cal. Aug. 26, 2024) (Seeborg, C.J.)........................9, 13

*Johnson v. Wyeth LLC*,
   2012 WL 1204081 (D. Ariz. Apr. 11, 2012) .....................................................10

*Little Oil Co., Inc. v. Atl. Richfield Co.*,
   852 F.2d 441 (9th Cir. 1988)...............................................................................9

*Lorenzo Vargas v. City of Los Angeles*,
   2019 WL 7496786 (C.D. Cal. June 18, 2019) ..................................................13

*Meister v. Mensinger*,
   230 Cal. App. 4th 381 (2014) ...........................................................................20

*Microsoft Corp. v. Motorola, Inc.*,
   2013 WL 4008822 (W.D. Wash. Aug. 5, 2013) ..........................................12, 13

*Miranda v. U.S. Sec. Assocs., Inc.*,
   2019 WL 2929966 (N.D. Cal. July 8, 2019) ......................................................9

*Mullins v. Premier Nutrition Corp.*,
   178 F. Supp. 3d 867 (N.D. Cal. 2016) (Seeborg, J.) ......................................3, 14

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
   523 F.3d 1051 (9th Cir. 2008)............................................................... 11, 12, 13

*Neo4j, Inc. v. PureThink, LLC*,
   2023 WL 7093805 (N.D. Cal. Oct. 25, 2023)....................................................17

*Oracle Am., Inc. v. Google Inc.*,
   2016 WL 1743154 (N.D. Cal. May 2, 2016) ..................................................9, 19

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
   2018 WL 6511146 (N.D. Cal. Dec. 11, 2018) ............................................2, 9, 10

*Parenti v. Cnty. of Monterey*,
   2017 WL 1709349 (N.D. Cal. May 3, 2017) .....................................................10

*Peck v. Cnty. of Orange*,
   2023 WL 11195794 (C.D. Cal. May 22, 2023) ..................................................13

*Plumley v. Mockett*,
   836 F. Supp. 2d 1053 (C.D. Cal. 2010) ............................................................18

iii

*Rodriguez v. Google LLC*,
    2024 WL 38302 (N.D. Cal. Jan. 3, 2024) (Seeborg, C.J.) ......................................................9

*Rogers v. Raymark Indus., Inc.*,
    922 F.2d 1426 (9th Cir. 1991) ..............................................................................................13

*Schinagel v. City of Albuquerque*,
    2009 WL 10696215 (D.N.M. Feb. 10, 2009) .......................................................................12

*Sheldon v. Metro-Goldwyn Pics.*,
    106 F.2d 45 (2d Cir. 1939) (Hand, J.) ..................................................................................20

*Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*,
    927 F. Supp. 2d 1069 (D. Or. 2013) .......................................................................................9

*Snyder v. Bank of Am., N.A.*,
    2020 WL 6462400 (N.D. Cal. Nov. 3, 2020) ........................................................................19

*Sport Dimension, Inc. v. Coleman Co.*,
    820 F.3d 1316 (Fed. Cir. 2016)................................................................................................5

*United States v. City of New York*,
    847 F. Supp. 2d 395 (E.D.NY. 2012) ....................................................................................18

*United States v. Diaz*,
    876 F.3d 1194 (9th Cir. 2017)...........................................................................................2, 11

*Uzyel v. Kadisha*,
    188 Cal. App. 4th 866 (2010) ................................................................................................19

**Rules**

Fed. R. Civ. P. 26(a)(2)(D)(ii) ......................................................................................................9

Fed. R. Evid. 702 ...................................................................................................................*passim*

**Other Authorities**

BAJI 7.20.......................................................................................................................................12

CACI 115........................................................................................................................................13

CACI 1800......................................................................................................................................12

Restatement (Third) of Restitution § 41 cmt. f.............................................................................19

Wright & Miller, Fed. Prac. & Proc. Evid. § 6265.2 (2d ed.) .....................................................12

iv

PLEASE TAKE NOTICE that, on May 15 at 1:30 p.m., or as soon thereafter as may be heard, Plaintiffs will move the Court, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), for an order excluding the following opinions and testimony of Google's experts Donna L. Hoffman, John R. Black, and Christopher R. Knittel.

Plaintiffs seek to exclude Dr. Hoffman's opinions that:

1. Concern motive, intent, and state of mind, *see* Ex. 1 ("Hoffman Rep.") at ¶¶ 26, 32, 63, 116, 132, 153 tbl. 8, 167; Ex. 2 ("Hoffman Supp. Rep.") at ¶¶ 10, 20, 44;

2. Concern the concept of a "representative user" and whether class representatives' testimony can be "generalized" across the class, which intrudes on the Court's role and jury instructions, *see* Hoffman Rep. ¶¶ 43, 122 tbl. 4, 139 tbl. 6; and

3. Involve technical issues for which Hoffman admittedly lacks expertise or analysis, including those that concern the technical accuracy of Google's public statements, *see* Hoffman Rep. ¶¶ 72, 108, 139 tbl. 6, 173; Hoffman Supp. Rep. ¶¶ 33–35, 47 n.123.

Plaintiffs seek to exclude Dr. Black's opinions that:

1. The term "Google Account" is "defined by Google in its own policies and terms" and that Google's "privacy policy defines 'Google Account,'" *see* Ex. 3 ("Black Rep.") at ¶ 112; and

2. Google does not "intercept" (s)WAA-off data, *see* Black Rep. ¶¶ 50–54.

Plaintiffs seek to exclude Dr. Knittel's opinions that:

1. Unjust enrichment must account for the hypothetical possibility that adequate disclosure of Google's collection and use of (s)WAA-off data would not affect class members' activity on mobile apps, Ex. 4 ("Knittel Rep."), at ¶¶ 70–78; and

2. Unjust enrichment must account for the supposed possibility that Google might paradoxically generate advertising revenues from (s)WAA-off users even in a "but-for world in which Google does not provide any advertising related services for sWAA-off users' devices," Knittel Rep. ¶¶ 79–85.

This Motion is based upon this Notice of Motion, Memorandum of Points and Authorities, the Declaration of Alexander Frawley and accompanying exhibits, argument of counsel, other materials in the record, and such other matters as the Court may consider. Plaintiffs respectfully ask the Court to bar Google's experts from offering this improper expert testimony.

## ISSUE PRESENTED & RELIEF REQUESTED

Whether Plaintiffs' request to bar this inadmissible testimony from trial should be granted?

## I.    INTRODUCTION

This is a narrow motion, with Plaintiffs seeking to exclude three aspects of the expert opinions and testimony offered by Google's marketing expert Dr. Donna Hoffman, two opinions offered by Google's technical expert Dr. John Black, and two opinions offered by Google's damages expert Dr. Christopher R. Knittel. While these experts' opinions—and those of Google's other expert—are shot through with additional problems, Plaintiffs will address them through cross-examination. The issues addressed here, however, are unfit even to be presented to the jury.

**Dr. Hoffman**: *First*, Plaintiffs seek to exclude opinions and testimony by Dr. Hoffman regarding motive, intent, and state of mind. "The determination of motive, intent, and state of mind is for the jury alone." *In re Twitter, Inc. Sec. Litig.*, 2020 WL 9073168, at *3 (N.D. Cal. Apr. 20, 2020). Courts "routinely exclude" expert testimony on these subjects as "impermissible" because the jury "is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2018 WL 6511146, at *3 (N.D. Cal. Dec. 11, 2018). Here, in violation of these clear rules, Dr. Hoffman's report repeatedly offers opinions about, for example, what Google was "trying" to do (Hoffman Rep.[1] ¶ 153 tbl. 8), what Google is "motivated by" (*id. ¶* 32), Google's "clear intent" (*id.* ¶ 132), what Google "intended" (*id.* ¶ 116), and what Google "strives" for (*id.* ¶ 167). During her deposition, Dr. Hoffman confirmed that she intends to offer impermissible opinions about what "motivated" Google's data collection. Ex. 5 ("Hoffman Tr.") at 62:24-63:7. Such opinions and testimony are improper and should be excluded.

*Second*, Plaintiffs seek to exclude opinions and testimony by Dr. Hoffman that intrude upon the province of the Court and its instructions to the jury. Experts may not "attempt to instruct the jury on the law," *United States v. Diaz*, 876 F.3d 1194, 1199 (9th Cir. 2017), as such testimony

---

[1] Dr. Hoffman's initial report ("Hoffman Rep.") is attached as Exhibit 1 to the concurrently filed Declaration of Alexander Frawley. Her supplemental report ("Hoffman Supp. Rep.") is attached as Exhibit 2 to the Declaration. Dr. Black's report ("Black Rep.") is attached as Exhibit 3 to the Frawley Declaration. Unless otherwise indicated, all references to "Ex." refer to the exhibits attached to the Frawley Declaration.

1  "usurps the role of the Court," *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 2571332, at *9 (N.D.

2  Cal. June 30, 2012). Here, Google seeks to have Dr. Hoffman tell the jury that "there is no such

3  thing as a 'representative' user with respect to privacy" (Hoffman Rep. ¶ 43) and also that the class

4  representatives' interpretation of Google's (s)WAA disclosures "cannot be generalized across all

5  of Google's users" (*id.* ¶ 122 tbl. 4). Such opinions would intrude upon the Court's role to instruct

6  the jury, where the jury will for example decide consent based on a "reasonable user's"

7  interpretation of the disclosures. Dkt. 445 (Order Denying Google's Motion for Summary

8  Judgment) at 9 (citing *Calhoun v. Google*, LLC, 113 F.4th 1141, 1151 (9th Cir. 2024), which

9  "confirmed that whether the plaintiffs consented turned on the terms of various disclosures and

10  'whether a reasonable user reading them would think that he or she was consenting to the data

11  collection, which collection Google has not disputed'"). Dr. Hoffman's opinion that "there is no

12  such thing" as a "representative user" and that the class representatives' testimony "cannot" be

13  generalized across the class would invariably confuse the jury as they apply *Calhoun*'s "reasonable

14  user" standard and determine liability and damages based on the evidence.

15      ***Third***, Plaintiffs seek to exclude opinions and testimony by Dr. Hoffman that address

16  technical issues for which she admittedly has no expertise. Despite conceding at deposition that

17  she is "not a technical expert," and admitting that she has no idea what happens "under the hood"

18  at Google and where data "is passed and so on" (Hoffman Tr. at 47:23-48:1), Google seeks to have

19  Dr. Hoffman testify that Google's (s)WAA disclosures are technically "accurate" because they

20  "explain what WAA does." Hoffman Rep. ¶ 173. She also seeks to testify that the Congressional

21  testimony by Google CEO Sundar Pichai about how (s)WAA impacts Google's data collection

22  was "accurate." *Id.* ¶ 139 tbl. 6. Such opinions by Dr. Hoffman "are inadmissible" because they

23  "pertain[] to subject matters outside of h[er] expertise." *In re Ford Tailgate Litig.*, 2015 WL

24  7571772, at *7 (N.D. Cal. Nov. 25, 2015) (Seeborg, J.); *see also Mullins v. Premier Nutrition

25  Corp.*, 178 F. Supp. 3d 867, 904 (N.D. Cal. 2016) (Seeborg, J.). Dr. Hoffman can of course opine

26  on the format and detail of Google's disclosures (including her opinions regarding "progressive"

27  disclosures and dark patterns), but she is not qualified to opine on their technical accuracy.

28

3

**Dr. Black**: *First*, Plaintiffs seek to prevent Google from having Dr. Black testify that "Google Account" is "defined by Google in its own policies and terms" including its "privacy policy." Black Rep. ¶ 112. Google previously presented the Court with its policies and terms, and the Court ruled (correctly) that none of those documents "defines 'Google Account.'" Dkt. 109 at 4. That's true. While Dr. Black is of course free to reference those Google policies and terms, and what they actually say, Dr. Black should not be permitted to falsely opine to the jury (contrary to the Court's ruling) that "Google Account" is "defined by Google."

*Second*, Plaintiffs seek to prevent Google from having Dr. Black testify or offer opinions about whether Google "intercepts" (s)WAA-off communications. Black Rep. ¶¶ 50, 54. Google disclosed Black solely as a rebuttal expert, offering opinions only in response to Plaintiffs' technical expert Jonathan Hochman. *Id.* ¶ 12. Mr. Hochman never mentions or opines on "interceptions." That is because the Court dismissed the claims for which "interception" may be a relevant concept, including the Electronic Communications Privacy Act and California Invasion of Privacy Act claims. Dkt. 109 at 12; Dkt. 209 at 4. There is no basis for Dr. Black as a rebuttal expert to offer new opinions about "interceptions" by referencing Plaintiffs' complaint. This is beyond the scope of proper rebuttal, and it would be confusing and misleading for Dr. Black to testify about claims that will not be presented at trial.

**Dr. Knittel**: *First*, Plaintiffs seek to prevent Dr. Knittel from offering irrelevant and speculative testimony about the hypothetical profits Google might have earned had it sought and obtained class members' permission to collect (s)WAA-off app activity data. Knittel Rep. ¶¶ 70–78. Dr. Knittel intends to urge the jury to consider the possibility that if Google had adequately disclosed its unlawful data collection, class members' behavior might not have changed much, and Google might have still made some of the money it actually earned using (s)WAA-off data. *Id.* This testimony would be irrelevant because it involves an improper but-for world in which Google ***still engaged in the wrongful conduct*** (collection, saving, and use of (s)WAA-off data) and in which Google nonsensically imagines that, this time, class members arguably *consented* to it. *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse & Warehouse Union*, 2022 WL 16924139, at *8–9 (D. Or. Nov. 14 2022) (a proper but-for world "holds all other factors except one—the alleged

1  conduct—the same"). Dr. Knittel's testimony is also impermissibly speculative. Although Google

2  bears the burden of "quantifying recouped profits" in a purported but-for world, Dkt. 352 at 22,

3  Dr. Knittel offers no evidence of how users would react to disclosure of Google's intrusion, let

4  alone the resulting impact on Google's bottom line.

5      ***Second***, Plaintiffs seek to exclude Dr. Knittel's equally speculative opinion that had

6  Google kept its promise not to collect, save, and use (s)WAA-off data, it might have generated

7  advertising revenues from (s)WAA-off users some other way. Knittel Rep. ¶¶ 79–85. Although

8  Google relies on app activity (specifically, ad requests) to serve advertisements, Dr. Knittel plans

9  to tell the jury that there is some unidentified advertising "revenue that Google would have

10  generated in the but-for worlds where Google does not engage in the wrongful conduct." Knittel

11  Rep. ¶ 79. At his deposition, Knittel admitted that he has no idea how, or even whether, this is

12  possible. Ex. 6 ("Knittel Tr.") at 185:25–186:4 ("I, as an economist, haven't — or could not think

13  of [a] way."). He explained that he simply put his faith in Google's "very smart people," who he

14  "imagine[s] … would think, or could potentially think of a way to monetize that space in some

15  way." *Id.* at 186:1–186:4. That is not the stuff of an admissible expert opinion. *See Sport*

16  *Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1323 (Fed. Cir. 2016) (excluding expert opinion

17  based on his "imagination," not expertise).

18  **II.    BACKGROUND**

19      **A.    Google Expert Dr. Donna Hoffman**

20      Google's counsel retained Dr. Hoffman as a rebuttal expert, solely to respond to the

21  opinions and testimony offered by Plaintiffs' expert Professor Bruce Schneier. Hoffman Rep. ¶ 16.

22  Professor Schneier is a lecturer and fellow at the Harvard Kennedy School, and he is a renowned

23  security technologist who researches, writes, and speaks about privacy, security, and other topics.

24  *See* Dkt. 314-6 ("Schneier Rep.") at § III. As summarized in his February 20, 2023 opening report,

25  and in his January 6, 2025 supplemental report,[2] Professor Schneier will in part offer opinions

26  about the risks posed by Google's collection and storage of app activity data, including "risks from

27  joinability of disparate Google data sets." Schneier Rep. § IV.3, 4, 8. He will also offer opinions

28

---

[2] Schneier's supplemental report ("Schneier Supp.") is attached as Exhibit 7.

1    regarding Google's (s)WAA disclosures, including how these disclosures exemplify "dark

2    patterns" based on various definitions of dark patterns. Schneier Rep. § IV.11; Schneier Supp.

3    Rep. § IV. Professor Schneier bases these opinions on his years of experience and research

4    regarding data privacy issues, which includes a recently published book discussing dark patterns.

5    Schneier Rep. ¶¶ 8-23.

6        Dr. Hoffman's assignment was to rebut "portions" of Professor Schneier's opinions.

7    Hoffman Rep. ¶ 16. Google served her rebuttal report on May 31, 2023, which addressed Professor

8    Schneier's opening report, and Google served her supplemental report on March 24, 2025, which

9    addressed Professor Schneier's supplemental report. Dr. Hoffman's reports address Professor

10   Schneier's opinions "as they relate to Google's disclosures, practices, and user interface (UI)

11   design" and, "specifically," Professor's Schneier's opinion that the (s)WAA disclosures

12   "exemplify dark patterns." *Id.* Dr. Hoffman "took the definitions Mr. Schneier provided of 'dark

13   patterns' and then [she] came to the conclusion that Google's disclosures are not dark patterns

14   under those definitions." Hoffman Tr. at 302:1–7. Dr. Hoffman opines that Google "employs key

15   UI [user interface] design principles" such as "progressive disclosure" and that Google's

16   disclosures do not reflect any "dark practices" under the definitions presented by Professor

17   Schneier. Hoffman Rep. ¶¶ 21, 53–54. In addition, Dr. Hoffman's reports include assertions

18   beyond the scope of permissible expert testimony, as well as opinions she is not qualified to offer,

19   which Plaintiffs now seek to exclude.

20       **B.    Google Expert Dr. John Black**

21       On March 22, 2023, Plaintiffs served the expert report of their technical expert, Jonathan

22   Hochman. *See* Dkt. 314-5. Mr. Hochman offered several opinions, including that Google collects,

23   saves, and uses (s)WAA-off app activity data, that Google does not allow either users or developers

24   to stop it, that (s)WAA-off data is linked to users, and that Google profits from (s)WAA-off data.

25   *See generally id.*

26       Google retained Dr. John Black to rebut Hochman's opinions. Black Rep. ¶ 12. His report,

27   however, contained two particularly strange opinions. Specifically, Black opined that Google does

28   not "intercept" (s)WAA-off data—a word that does not appear in Hochman's report, and is not

6

1   even relevant to the certified claims. Black Rep. ¶¶ 50–54. He also opines that the term "Google

2   Account" is "defined by Google in its own policies and terms," including its "privacy policy,"

3   despite a court order to the contrary. Black Rep. ¶ 112.

**C.      Google Expert Dr. Christopher Knittel**

5       Plaintiffs' damages expert, Michael J. Lasinski, opined on two forms of damages relating

6   to Google's collection, saving, and use of class members' (s)WAA-off app activity data:

7   compensatory damages (or restitution) and unjust enrichment. Dkt. 364-23 ("Lasinski Rep.").

8   Google retained Dr. Christopher R. Knittel to rebut these opinions. Knittel Rep. ¶ 6. This motion

9   concerns only his criticisms with respect to unjust enrichment.

10      Mr. Lasinski opined on Google's unjust enrichment from using (s)WAA-off app activity

11  data for advertising purposes. Lasinski Rep. ¶¶ 71–76. He calculated Google's ill-gotten gains

12  under two alternative scenarios, which relate to two sets of advertising purposes and associated

13  profits. In his Scenario One, Lasinski calculated profits Google earned by using (s)WAA-off app

14  activity data to track and attribute conversions. Lasinski Rep. ¶¶ 77–79. In layman's terms, this

15  means using app activity data to determine whether an advertisement Google served to a class

16  member caused that class member to do something valuable to the advertiser, like download an

17  app or make a purchase. *See* Dkt. 314-5 ("Hochman Rep.") at ¶ 280; Dkt. 331-3 at 3; *see generally*

18  Dkt. 331 at 3–4. Many advertisers pay Google based on the number of Google-served ads that

19  cause these so-called "conversions." Dkt. 331-3 at 3. Lasinski calculated profits Google made

20  using (s)WAA-off data to track user behavior and ultimately charge advertisers accordingly.

21      In his Scenario Two, Lasinski added in the profits that Google makes by using (s)WAA-

22  off app activity data to serve advertisements in the first place. As Plaintiffs' technical expert,

23  Jonathan Hochman, explained—and Google does not dispute—Google only serves ads when it

24  collects and then uses a type of data called an "ad request," which includes information about the

25  user's activity on mobile apps. Hochman Rep. ¶¶ 122, 130, 270–72; Black Rep. ¶ 94 (arguing only

26  that Google should be allowed to collect ad requests notwithstanding users' (s)WAA settings).

27  Lasinski therefore calculated Google's profits from serving ads to (s)WAA-off users. Lasinski

28  Rep. ¶¶ 113–29.

7

1    Knittel criticizes Lasinski's analysis on various grounds, all of which are baseless. This

2    motion concerns two of Knittel's most irrelevant and speculative opinions.

3    First, Knittel argues that in deciding unjust enrichment, the jury should consider the profits

4    Google would have made in a but-for world in which Google *still collected, saved, and used*

5    *(s)WAA-off app activity data*, but was honest with its users about what it was doing. Knittel Rep.

6    at ¶¶ 70–78. Knittel also speculates that in this improper but-for world, "the impact … on consumer

7    demand and Google revenue and profit [would] be minimal" because class members' behavior

8    would not change. Knittel Rep. ¶ 73. Knittel offers no evidence—from a survey, research study,

9    or anything else—reflecting how class members would respond to disclosure. *See id.*

10    Knittel also criticizes Lasinski's Scenario Two unjust enrichment opinion by speculating

11    that if Google had not relied on (s)WAA-off app activity data, Google might have created an

12    alternative method to serve and monetize ads, generating advertising profits. *See* Knittel Rep. ¶ 79

13    (criticizing Lasinski for purportedly "fail[ing] to consider the revenue that Google would have

14    generated in the but-for-world[] where Google does not engage in the alleged wrongful conduct,"

15    which in Scenario Two is using (s)WAA-off data to "provide … advertising related services for

16    sWAA off users' devices"). But Knittel admits that he "could not think of [a] way" for Google to

17    serve and monetize ads without (s)WAA-off data. Knittel Tr. at 185:18–186:1. The basis for

18    Knittel's opinion, in his own words, is that "Google is full of very smart people, and I would

19    imagine that they would think, or could potentially think of a way to monetize that space in some

20    way." *Id.*; *see also id.* at 218:6–11. Knittel provides no information about how Google could have

21    done so, or if it did, how much revenue Google could have hypothetically recouped. Knittel

22    Rep. ¶¶ 79–85 (claiming there are other ways to *track conversions*, not *serve ads* in the first place).

23    **III.    LEGAL STANDARD**

24    As the proponent of these experts' testimony, Google must prove by a preponderance of

25    the evidence that their opinions "both rest[] on a reliable foundation and [are] relevant to the task

26    at hand." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993); *In re Roundup Prods. Liab.*

27    *Litig.*, 734 F. Supp. 3d 930, 934 (N.D. Cal. 2024); Fed. R. Evid. 702 & 2023 adv. comm. note. That

28    means that the purported expert must "be qualified by 'knowledge, skill, experience, training, or

8

1  education.'" *Rodriguez v. Google LLC*, 2024 WL 38302, at *2 (N.D. Cal. Jan. 3, 2024) (Seeborg,

2  C.J.) (quoting Fed. R. Evid. 702). The expert's testimony must also have "a 'basis in the knowledge

3  and experience of the relevant discipline.'" *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2024

4  WL 4023562, at *1 (N.D. Cal. Aug. 26, 2024) (Seeborg, C.J.) (quoting *Daubert*, 509 U.S. at 591).

5  The testimony is admissible only if "the expert's scientific, technical, or other specialized

6  knowledge will help the trier of fact to understand or to determine a fact in issue." Fed. R. Evid.

7  702(a); *Little Oil Co., Inc. v. Atl. Richfield Co.*, 852 F.2d 441, 446 (9th Cir. 1988) (requiring expert

8  testimony to offer "appreciable help" to the jury). Experts may not offer opinions based on

9  insufficient or unreliable data, or provide testimony that is otherwise speculative. *See California*

10 *ex rel. Brown v. Safeway*, 615 F.3d 1171, 1181 n.4 (9th Cir. 2010) ("An expert's opinions that are

11 without factual basis and are based on speculation or conjecture are inadmissible at trial.").

12 Rebuttal testimony must be offered "solely to contradict or rebut evidence of the same subject

13 matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii).

14 **IV.    ARGUMENT**

15         **A.    Portions of Hoffman's opinions and testimony should be excluded.**

16               **1.    Hoffman offers impermissible opinions about motive, intent, and state of mind.**

17         "The determination of motive, intent, and state of mind is for the jury alone." *In re Twitter,*

18 *Inc. Sec. Litig.*, 2020 WL 9073168, at *3 (N.D. Cal. Apr. 20, 2020). Courts "routinely exclude"

19 expert testimony on these subjects as "impermissible" because the jury "is sufficiently capable of

20 drawing its own inferences regarding intent, motive, or state of mind from the evidence, and

21 permitting expert testimony on this subject would be merely substituting the expert's judgment for

22 the jury's." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2018 WL 6511146, at *3 (N.D. Cal.

23 Dec. 11, 2018 (citing *Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 927 F.

24 Supp. 2d 1069, 1077 (D. Or. 2013)); *see also Miranda v. U.S. Sec. Assocs., Inc.*, 2019 WL

25 2929966, at *1 (N.D. Cal. July 8, 2019) (same, and collecting cases).

26         In *Oracle*, for example, the court excluded an expert's "opinions about the motives and

27 intent of particular actors," holding that experts "may not opine about why any person in this case

28

1    took or did not take a particular action or made or did not make a particular decision." 2018 WL

2    6511146, at *3. Similarly, in *Parenti v. Cnty. of Monterey*, the court excluded expert testimony

3    that the defendant "did not attempt to harm" the plaintiff. 2017 WL 1709349, at *2 (N.D. Cal. May

4    3, 2017). And in *Johnson v. Wyeth LLC*, the court excluded opinions about "the defendants'

5    corporate intent, motive, and knowledge." 2012 WL 1204081, at *3 (D. Ariz. Apr. 11, 2012).

6         Exclusion is warranted here because Dr. Hoffman throughout her reports included

7    assertions about Google's "corporate intent, motive, and knowledge." *Id.* As some examples:

8    - "Google was ***not trying to deceive*** or manipulate its users." Hoffman Rep. ¶ 153 tbl. 8.

9
10   - Google's "user data collection ***is motivated by*** the desire to improve the user's experience." *Id.* ¶ 32.

11   - There is "***clear intent on Google's part*** to provide users with choices when adjusting privacy settings." *Id.* ¶ 132.

12
13   - The (s)WAA disclosures "are ***not intended*** to, communicate that WAA, whether on or off, controls third-party apps' use of ads-related analytics." *Id.* ¶ 116.

14   - "Google also constantly ***strives*** for improvement, responds to user feedback, and ***seeks to*** create the best possible user experience across all its diverse user segments." *Id.* ¶ 26.

15

16   - "Google ***recognizes*** that good UI is evolutionary, and constantly ***strives*** to improve the user experience through improved UI design and privacy disclosures." *Id.* ¶ 66.

17
18   - "Google ***designs*** its UI and privacy disclosures with the heterogeneous needs of the user ***top of mind***." *Id.* ¶ 53.

19   - "Google ***strives*** to make its interface easy to use and transparent to its highly diverse and heterogeneous user base." *Id.* ¶ 167.

20   - "Google has a customer-centric approach that is ***committed*** to addressing users' privacy concerns and improving the user experience." Hoffman Supp. Rep. ¶ 20.

21
22        Dr. Hoffman did not confine these improper opinions to *Google's* state of mind; she also

23   opined on users' and *app developers'* state of mind:

24   - "[A]pp developers ***understand*** that Google collects user activity through Google Analytics." *Id.* ¶ 44.

25   - "[O]nline users ***consciously engage*** in a privacy tradeoff in exchange for the benefits of personalized services." *Id*. ¶ 10.

26
     Dr. Hoffman stood by these impermissible opinions at her deposition:

27       Q. Are you offering an opinion here about Google's intent?

28       A. Google's intent in what respect?

10

1    Q. Google's intent with respect to user data collection.

2    A. I am offering the opinion that Google's data collection is **motivated by** the **desire** to satisfy user experience.

3  Hoffman Tr. at 62:24-63:7 (emphasis added). Dr. Hoffman elaborated: "I think Google's data

4  collection processes are **motivated by** a desire to improve, enhance, and sustain positive user

5  experiences." *Id.* at 63:12-20 (emphasis added); *see also id.* at 62:8-11 ("I'm arguing that rather

6  than being motivated to surveil people, **Google is motivated to** satisfy user experience needs."

7  (emphasis added)).

8    These opinions are analogous to opinions that Google itself sought to exclude (and

9  successfully did exclude) in another class action concerning Google's privacy practices. In *Brown*

10  *v. Google*, which addressed Google's collection and use of "private browsing" data, Google argued

11  that any "opinions as to [Google's] state of mind are improper." Dkt. 664 at 19, Case No. 4:20-cv-

12  3664 (N.D. Cal.). The *Brown* court agreed with Google and excluded expert testimony that

13  purportedly concerned "Google's intent or state of mind," including opinions about what "Google

14  is motivated" to do. *Brown v. Google, LLC*, 2022 WL 17961497, at *12 (N.D. Cal. Dec. 12, 2022).

15  Yet here, it is *Google's* expert who seeks to opine about what "Google is motivated to do", as

16  confirmed by her own deposition testimony. Hoffman Tr. at 62:24-63:7. Dr. Hoffman's opinions

17  cannot be reconciled with Google's arguments in the *Brown* case, nor with the case law addressed

18  above. Exclusion is warranted.

19        **2.    Hoffman's opinions impermissibly intrude upon the Court's role to instruct the jury.**

20    "[I]nstructing the jury as to the applicable law is the distinct and exclusive province of the

21  court." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008).

22  Experts may not "attempt to instruct the jury on the law," *United States v. Diaz*, 876 F.3d 1194,

23  1199 (9th Cir. 2017), as such testimony "usurps the role of the Court," *Apple, Inc. v. Samsung*

24  *Elecs. Co.*, 2012 WL 2571332, at *9 (N.D. Cal. June 30, 2012).

25    In violation of these established limits, Google plans to have Dr. Hoffman tell the jury that

26  "there is no such thing as a 'representative' user with respect to privacy," Hoffman Rep. ¶ 43, and

27  that Named Plaintiffs' interpretation of Google's (s)WAA disclosures "cannot be generalized

28

11

1  across all of Google's users," *id.* ¶ 122 tbl. 4. These opinions (if permitted) would intrude upon

2  the Court's role to instruct the jury about what they can and cannot do when assessing the evidence.

3      The concept of a representative user and its relevance to the claims will be addressed by

4  the jury instructions. For the privacy tort claims, both CACI and BAJI incorporate the "reasonable

5  person" standard into the proposed instructions. CACI 1800; BAJI 7.20. Google's consent

6  argument also turns on a "reasonable person" standard; in fact, the Ninth Circuit recently held that

7  consent turns on how a "reasonable user" interprets "the disclosures at issue." *Calhoun v. Google*,

8  LLC, 113 F.4th 1141, 1151 (9th Cir. 2024). This Court relied on that holding in part to deny

9  Google's motion for summary judgment in this case. *See* Dkt. 445 at 9 ("The Ninth Circuit

10  confirmed that whether the plaintiffs consented turned on the terms of various disclosures and

11  'whether a reasonable user reading them would think that he or she was consenting to the data

12  collection, which collection Google has not disputed.'" (citing *Calhoun*, 113 F. 4th at 1148)). That

13  "reasonable user" standard will be incorporated into the jury instructions for this case. Yet Dr.

14  Hoffman plans to tell the jury that "there is no such thing" as a "representative user"—an opinion

15  that will invariably confuse the jury as they apply *Calhoun*'s "reasonable user" standard.

16      Courts "often exclude" testimony like these assertions by Dr. Hoffman, which "merely

17  function like jury instructions and, thus, infringe upon the trial judge's role." Wright & Miller,

18  Fed. Prac. & Proc. Evid. § 6265.2 (2d ed.); *see also Microsoft Corp. v. Motorola, Inc.*, 2013 WL

19  4008822, at *15 (W.D. Wash. Aug. 5, 2013) ("courts generally exclude expert testimony that

20  attempts to define the applicable legal standard or the law governing the case. By implication,

21  courts also exclude any testimony regarding a legal standard that will appear in the court's

22  instructions to the jury."). To permit expert testimony about "areas of the law covered by the

23  Court's jury instructions" would "raise a substantial danger" of "confusion of the issues, or

24  misleading the jury." *Schinagel v. City of Albuquerque*, 2009 WL 10696215, at *7 (D.N.M. Feb.

25  10, 2009). For these reasons, in *Nationwide*, the Ninth Circuit affirmed the exclusion of expert

26  testimony that amounted to "instructing the jury on legal issues." 523 F.3d at 1059. Similarly, in

27  *Motorola, Inc.*, 2013 WL 4008822, at *15, the court excluded opinions that "implicate the law,"

28  reasoning that "the jury instructions in this case are yet to come, and how the court decides to

1  frame those instructions is solely within its discretion." *Id.*; *see also Peck v. Cnty. of Orange*, 2023

2  WL 11195794, at *11 (C.D. Cal. May 22, 2023) (excluding proposed testimony where the expert

3  was "providing legal instructions" for the jury); *Lorenzo Vargas v. City of Los Angeles*, 2019 WL

4  7496786, at *1 (C.D. Cal. June 18, 2019) (excluding proposed testimony as "unnecessary" and

5  "not helpful to the jury" because "the Court can state the relevant standard of care in jury

6  instructions"), *aff'd sub nom. Vargas v. City of Los Angeles*, 2021 WL 2012592 (9th Cir. May 20,

7  2021); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2019 WL 1369007, at *3 (S.D. Cal. Mar.

8  26, 2019) (experts may not "invade the province of the court to instruct the jury as to the law").

9      Similarly, Dr. Hoffman's opinion that Named Plaintiffs' testimony "cannot be generalized"

10  to the class would also intrude upon (and conflict with) the jury instructions for this case. Hoffman

11  Rep. ¶ 122 tbl. 4. The jury instructions should include information about class actions, such as

12  CACI 115, which provides: "You may assume that the evidence at this trial *applies to all class*

13  *members*." *Id.* (emphasis added). Dr. Hoffman apparently plans to say the opposite—i.e., that

14  Named Plaintiffs' testimony "cannot be generalized" across the class. The Court already ruled that

15  "Named plaintiffs' individual claims are also typical of those of the proposed class members."

16  Dkt. 352 at 6. Accordingly, "not only" do her opinions "invade[] the province of the trial judge,"

17  but they also "constitute[] erroneous statements of law." *Nationwide*, 523 F.3d at 1058. Her

18  opinions are therefore "not only superfluous," but also "mischievous." *Id.*

19      ### 3.    Hoffman impermissibly offers technical opinions without any technical expertise or analysis.

20      A "person qualified to give an opinion on one subject is not necessarily qualified to opine

21  on others." *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1431 (9th Cir. 1991). In fact, "even the

22  most qualified expert cannot offer any opinion on any subject." *In re Ford Tailgate Litig.*, 2015

23  WL 7571772, at *6 (N.D. Cal. Nov. 25, 2015) (Seeborg, J.). Experts must limit their testimony to

24  subjects for which they are "qualified by 'knowledge, skill, experience, training, or education.'"

25  *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2024 WL 4023562, at *1 (N.D. Cal. Aug. 26, 2024)

26  (Seeborg, C.J.) (quoting Fed. R. Evid. 702)). Where an expert "has not limited his opinions to

27

28

13

1    those subjects," the testimony should be excluded. *Mullins v. Premier Nutrition Corp.*, 178 F.

2    Supp. 3d 867, 900-01 (N.D. Cal. 2016) (Seeborg, J.).

3         Here, in a few places in her report, Dr. Hoffman strays beyond her marketing expertise by

4    offering technical opinions about the data Google collects and how toggling (s)WAA impacts this

5    data. Specifically, Dr. Hoffman asserts that Google's (s)WAA disclosures are "accurate[]" because

6    these disclosures "explain what WAA does," which is to "save certain activity in a user's account."

7    Hoffman Rep. ¶ 173; *see also, e.g.*, *id.* ¶ 108 (describing the disclosures as "clear and

8    unambiguous" because "the "WAA and sWAA settings were designed exclusively to manage the

9    saving of activity in a user's Google Account"); *id.* ¶ 72 ("Google makes it clear that when WAA

10   is switched off, 'new activity won't be saved to your account.'"); *see also* Hoffman Supp. ¶ 33

11   ("While the WAA setting is turned on, a user's Google activity data is saved to their Google

12   Account when the user engages with a Google product, such as Google Maps."); *id.* ¶ 34 ("users

13   are exposed to additional disclosures which clearly communicate that all settings within the page

14   apply only to controlling data saved in their Google Account."); *id.* ¶ 35 ("The current WAA Help

15   Page, like the one I examined in 2023, clearly describes the purpose and benefits associated with

16   the WAA toggle.").

17        Put differently, Dr. Hoffman asserts that Google's (s)WAA disclosures are accurate based

18   on assertions she makes about how Google's technology works and the technical details regarding

19   where and how Google saves data. Similarly, Dr. Hoffman analyzes Congressional testimony from

20   Google's CEO Sundar Pichai that addressed Google's data-collection practices, and she asserts

21   that Mr. Pichai's testimony was "accurate." Hoffman Rep. ¶ 139 tbl. 6.

22        While Dr. Hoffman (like Professor Schneier) may offer opinions regarding Google's

23   disclosures (including Dr. Hoffman's opinions about "progressive disclosures"), the complication

24   for Dr. Hoffman is that she disclaimed the technical expertise necessary to connect the dots and

25   opine that the disclosures and Mr. Pichai's testimony are technically "accurate."

26        At her deposition, Dr. Hoffman described herself as "behavioral scientist"—"***not*** a

27   technical expert," and she conceded that she isn't qualified to describe what happens "under the

28   hood" and where data "is passed and so on." Hoffman Tr. 47:23-48:1, 308:2-3. Having disclaimed

1   any technical expertise or analysis, she should not be permitted to testify that Google's technical

2   processes line up with Google's disclosures, making those disclosures "accurate." Those technical

3   opinions should be reserved for experts with technical expertise.

4          As further support for exclusion, Dr. Hoffman could not even explain what it means for

5   data to be stored by Google "in a user's account," despite asserting in her report that Google

6   "accurate[ly]" describes this aspect of (s)WAA.

7          Q. And what does it mean for data to be saved in your accounts?

8          A. I have conceptually argued, my understanding is conceptual, so
           your activity is saved in your Google account, *whatever that means*

9          *technically*.

10         Q. What do you mean by "whatever that means technically," like
           what clarification or qualification are you trying to describe? I'm

11         confused.

12         A. Well, the databases, the structure of the databases, what kind of
           databases, where they're located, how they're linked or relationed,

13         and, you know, many things that are outside the scope of my report.

14  *Id.* at 103:1–22 (emphasis added). Dr. Hoffman cannot reliably testify that Google's disclosures

15  "accurately" describe (s)WAA (nor that Mr. Pichai's Congressional testimony was "accurate")

16  after conceding that the accuracy of the disclosures turns on technical issues and "many things that

17  are outside the scope of [her] report." *Id.*

18         Nor could Dr. Hoffman explain the "conceptual" meaning of storing data in a Google

19  Account, despite claiming that her opinion was only intended to be "conceptual":

20         Q. Conceptually, is there a difference between the Google Account
           a user sets up and the Google account where her data is stored?

21         A. I couldn't answer a question like that without a much more
           thorough understanding of the accounts and the data, and *that's not*

22         *something I considered in this report.*

23  Hoffman Tr. at 289:25–290:9 (emphasis added).

24         Ultimately, Dr. Hoffman conceded that she is not qualified to opine on the accuracy of

25  Google's (s)WAA disclosures, thereby directly contradicting her report:

26

27

28

                                           15

1    Q. So you don't have any opinion on the accuracy of Google's WAA
     and sWAA disclosures?

2    A. My report does not concern the technical specifications of
3    Google's disclosures or how different aspects of Google work under
     the hood.

4    Hoffman Tr. at 35:1–9 (emphasis added).

5    Having disclaimed any expertise or knowledge about "the technical specifications of

6    Google's disclosures," Dr. Hoffman should not be allowed to tell the jury that Google's disclosures

7    and Mr. Pichai's statements are "accurate."

8    The same lack of technical expertise warrants exclusion of Dr. Hoffman's assertion that

9    Mr. Pichai's Congressional testimony was "accurate." Hoffman Rep. ¶ 139 tbl. 6; *see also*

10   Hoffman Supp. Rep. ¶ 47 n.123 (opining that "the statement by Mr. Pichai was accurate"). Mr.

11   Pichai testified to Congress in December 2018 that "We give clear toggles, by category, where

12   they [i.e., users] can decide ***whether*** that information is collected [and] stored." Schneier Rep. ¶

13   254 (Dkt. 314-6) (emphasis added). Plaintiffs cited this testimony in their opposition to Google's

14   motion for summary judgment, explaining how Mr. Pichai's testimony was inaccurate. Dkt. 397-

15   1 at 13. Google apparently plans to have Dr. Hoffman defend Mr. Pichai's Congressional

16   testimony as somehow accurate, despite her admitted lack of any technical analysis or expertise.

17   When pressed to explain the basis for her opinion that Mr. Pichai's testimony was

18   "accurate," Dr. Hoffman actually disclaimed the opinion:

19   Q. I want to focus on the part [of Mr. Pichai's testimony] that says,
     "We give clear toggles, by category, where they can decide whether
20   that information is collected, stored." I'll stop there. Do you have
     any opinion about whether Google gives users clear toggles by
21   category where they can decide whether that information is
22   collected and stored?

23   A. ***That is outside the scope of my report. I did not consider that.***

24   Hoffman Tr. at 203:8–21 (emphasis added). Relatedly, Dr. Hoffman conceded that she has no idea

25   whether turning "off" (s)WAA prevents Google from collecting app activity data:

26   Q. So you're not prepared to testify about whether the WAA and sWAA controls
     will stop Google from collecting all app activity; is that fair?

27   A. That is not the subject matter of my report and that is something I would have
     to research and then get back to you.

28

16

1   *Id.* at 43:9–17. Given Dr. Hoffman's admitted lack of any technical expertise and her inability to

2   answer a simple question about whether turning (s)WAA off actually stops Google from collecting

3   all app activity (it does not), she should not be permitted to present any opinion to the jury

4   regarding the accuracy of Mr. Pichai's Congressional testimony. Dr. Hoffman is not the right

5   person to offer any opinions about Mr. Pichai statements. Mr. Pichai himself can appear at trial to

6   defend his own (mis)statements.

      **B.**     **Portions of Dr. Black's opinions and testimony should be excluded.**

         **1.**     **Dr. Black impermissibly opines that Google defines "Google Account," which is outside of his expertise as a software engineer and runs contrary to this Court's prior ruling.**

10       The Court should exclude Dr. Black's opinion that Google in fact defines "Google

11  Account."  Black Rep. ¶ 112. Dr. Black asserts that Mr. Hochman "redefines" the term "Google

12  Account" and that "Google Account" is actually "***defined*** by Google in its own policies and terms"

13  and that Google's "current privacy policy ***defines*** "Google Account" in a "key terms" section …."

14  *Id.* (emphasis added).[3]

15       Dr. Black's opinion is inadmissible because it conflicts with the Court's order denying

16  Google's motion to dismiss, which correctly recognized that Google's documents do ***not*** define

17  "Google Account." Dkt. 109 at 4 ("Neither the WAA Materials nor the Privacy and Terms hub

18  defines 'Google Account.'"). The Court's ruling was correct. Indeed, Google's own marketing

19  expert, Dr. Hoffman, admitted during her deposition that Google does not define "Google

20  Account" in its policies and terms:

21          Q. Do you know where Google, if at all, defines the term "Google Account"?

         A. I cannot point you to a particular page.

22  Hoffman Tr. at 272:19–25; *see also id.* at 274:11–279:17.

23

24       Google should not be permitted to elicit expert testimony that is false and contrary to the

25  Court's prior ruling. "Courts have discretion to apply the law-of-the-case doctrine to evidentiary

26  rulings." *Neo4j, Inc. v. PureThink, LLC*, 2023 WL 7093805, at *6 (N.D. Cal. Oct. 25, 2023)

27  (quoting *Allied Erecting & Dismantling Co. v. United States Steel Corp.*, 2023 WL 5322213, at

---

28  [3] Quoting "Privacy and Terms," Google, available at https://policies.google.com/privacy/key-terms?hl=en-US#toc-terms-account.

*5 (6th Cir. Aug. 18, 2023)). Allowing an expert to offer an opinion that contradicts a prior court order would not "help the trier of fact to understand evidence or determine a fact [that remains] in issue." Fed. R. Evid. 702(a); *see also Betances v. Fischer*, 2021 WL 1534159, at *4 (S.D.N.Y. Feb. 23, 2021) (excluding expert testimony that contradicted a prior court order because "expert opinions that are inconsistent with the law of the case will be of no help to the jury"). Courts routinely exclude expert opinions which contradict prior court orders pursuant to the law-of-the-case doctrine. *See, e.g.*, *Addison v. La. Reg'l Landfill Co.*, 2024 WL 3757551, at *6–7 (E.D. La. Aug. 12, 2024) (excluding expert opinions, and testimony regarding those opinions, which conflicted with a prior court order under the law-of-the-case doctrine); *United States v. City of New York*, 847 F. Supp. 2d 395, 412–15 (E.D.N.Y. 2012) (same); *Eason v. Anoka-Hennepin E. Metro Narcotics & Violent Crimes Task Force*, 2002 WL 1739666, at *3 (D. Minn. July 22, 2002) ("The Court agrees that [defendant's expert] may not testify as to a legal conclusion that contradicts the law of the case as established by the Court.").

### 2. Dr. Black improperly offers opinions on "interception," which is irrelevant and beyond the scope of rebuttal.

Dr. Black dedicates one subsection of his report to opine that "Google does not intercept sWAA-off communications." Black Rep. § IV(A)(1). This is strange, as Mr. Hochman—the expert whom Dr. Black purports to rebut—did not even mention "interceptions." *See generally* Hochman Rep. (no references to "interceptions"). And it is doubly strange because an "interception" is not a required element of any surviving claim. Dr. Black cites not to Mr. Hochman's report, but to allegations in Plaintiffs' complaint tied to claims the Court dismissed. Black Rep. ¶¶ 50–54; *see* Dkt. 109 at 11 (dismissing claim for violation of the Federal Wiretap Act); Dkt. 127 at 7 (dismissing claim for violation of the California Invasion of Privacy Act). An "interception" is not a required element of the surviving claims, for invasion of privacy, intrusion upon seclusion, and violation of the Comprehensive Computer Data Access and Fraud Act. *See* Dkt. 445 at 9, 13.

The Court should exclude Dr. Black's opinion because it exceeds the permissible scope of rebuttal and bears on a topic that is not relevant to the claims that will be presented at trial. Courts routinely strike "rebuttal" opinions that address topics not included in the expert opinions to which

18

they respond. *See, e.g.*, *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1066 (C.D. Cal. 2010) (excluding rebuttal opinions that "are not reasonably prompted by [the other expert's] report nor responsive to it"); *Giovacchini v. Cincinnati Ins. Co.*, 2024 WL 5077099, at *1 (N.D. Cal. Dec. 10, 2024) ("[T]he rebuttal opinions … are outside the scope of the [opposing] expert opinions. They thus are not appropriate rebuttal opinions."); *Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 996 (N.D. Cal. 2018) (same). And it is axiomatic that expert opinions pertaining to claims not actually at issue will not "help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a); *Snyder v. Bank of Am., N.A.*, 2020 WL 6462400, at *2 (N.D. Cal. Nov. 3, 2020) (excluding expert testimony because it was "not relevant to the only remaining claims in this case"); *Apple, Inc.*, 2012 WL 2571332, at *4 (same). Expert testimony must relate to the claims that will be tried.

### C. Portions of Dr. Knittel's opinions should be excluded.

#### 1. Dr. Knittel's opinion that users might have given permission had Google asked—and that Google might have made the same profits—is impermissible because it is irrelevant and speculative.

The Court should foreclose Dr. Knittel from testifying at trial that Google was not unjustly enriched—or that its enrichment was less than Lasinski opines—because users might have given Google permission to collect app activity data had Google asked. In his report, Dr. Knittel opines that unjust enrichment should be determined by comparison to Google's profits in a "but-for" world in which in which Google actually disclosed that it collects, saves, and uses (s)WAA-off app activity data. Knittel Rep. ¶ 70. He also asserts that class members would likely have behaved similarly in that but-for world, meaning that the "impact" on Google's revenue "would likely … be minimal." *Id.* at ¶ 73. The Court should exclude these opinions because they are irrelevant and speculative.

Dr. Knittel's opinion is irrelevant because it concerns an improper but-for world. For purposes of damages calculations, "[t]he but-for world differs from what actually happened only with respect to the harmful act." *ICTSI Oregon*, 2022 WL 16924139, at *8–9; Federal Judicial Center, Reference Manual on Scientific Evidence 432 (3d ed. 2011) (to identify the but-for world,

1  "[re]place [the defendant's] unlawful actions" with "proper actions").[4] "[T]hat is, the but-for world

2  holds all other factors except one—the alleged conduct—the same in order to measure what profits

3  would have been but for the alleged conduct." *ICTSI Oregon*, 2022 WL 16924139, at *8–9. Knittel,

4  by contrast, plans to ask the jury to consider Google's likely profits in a but-for world in which

5  ***Google still collected, saved, and used (s)WAA-off data***. Knittel Rep. ¶ 70. There is no legal basis

6  for Knittel to argue that Google can keep its unlawfully earned profits simply because Google

7  claims it might have earned those profits had it obtained class members' permission. A thief cannot

8  escape liability by arguing that had he asked, maybe his victim would have been willing to give

9  away the stolen goods.

10        Dr. Knittel's opinion is also inadmissible because he invites the jury to speculate about

11  how class members' activity—and Google's resulting profits—might have changed had Google

12  disclosed its illegal data collection practices. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007)

13  (requiring "expert testimony [to] relate to scientific, technical or other specialized knowledge,

14  which does not include unsubstantiated speculation and subjective beliefs."); *California ex rel.*

15  *Brown*, 615 F.3d at 1181 n.4. The bulk of the relevant section in Knittel's report says that *Lasinski*

16  could have measured the impact of disclosure, for example by using a survey. Knittel Rep. ¶¶ 71–

17  78. But *Google*, not Plaintiffs, bears the burden of proving deductions from Google's unlawfully

18  earned profits. Dkt. 352 at 22 (rejecting this exact criticism in part because "Google bears the

19  burden of quantifying recouped profits" in an adequate-disclosure scenario); *see also Brown v.*

20  *Google, LLC*, 2022 WL 17961497, at *6 (N.D. Cal. Dec. 12, 2022); *Meister v. Mensinger*, 230

21  Cal. App. 4th 381, 399 (2014) ("[T]he plaintiff may present evidence of the total or gross amount

22  of the benefit," and the defendant must "present evidence of … deductions to show the actual or

23  net benefit the defendant received"); *see also Sheldon v. Metro-Goldwyn Pics.*, 106, F.2d 45, 48

24  (2d Cir. 1939) (Hand, J.) (wrongdoer "carries the burden of disentangling the contributions of the

25  several factors which he has confused").

26

27  ---

[4] To be clear, unjust enrichment is not limited by but-for causation. Dkt. 331 at 10–12 (citing *Uzyel*

28  *v. Kadisha*, 188 Cal. App. 4th 866, 894 (2010); Restatement (Third) of Restitution § 41 cmt. f; and *Oracle Am., Inc. v. Google Inc.*, 2016 WL 1743154, at *4 (N.D. Cal. May 2, 2016)).

1    As the proponent of this deduction, *Dr. Knittel* should have carried out the inquiry he

2    criticizes Lasinski for omitting. But Knittel did not craft adequate disclosures; he did not study the

3    impact they would have had on absent class members; and he certainly did not prove what (if any)

4    deduction might be appropriate when calculating Google's net profit. The only purported basis for

5    Knittel's opinion that a deduction is appropriate is the named Plaintiffs' testimony that they have

6    not changed their mobile app activity during the litigation. Knittel Rep. ¶ 73. As the Court agreed

7    in its class certification order, however, the named Plaintiffs kept their activity consistent to

8    investigate their claims and preserve standing to pursue injunctive relief. Dkt. 352 at 12–13; *see,*

9    *e.g.*, Ex. 8 at 248:13–19. Moreover, the named Plaintiffs' testimony offers no guidance for the

10   *amount* of any appropriate deduction. Knittel's opinion must be excluded because the jury could

11   not act on it without resorting to impermissible speculation.

12         **2.    Dr. Knittel's opinion that Google might have somehow monetized**
              **(S)WAA-off advertising without (s)WAA-off data is impermissibly**
13            **speculative.**

14         For similar reasons, the Court should exclude Dr. Knittel's opinion that had Google kept

15   its promise not to collect, save, and use (s)WAA-off data, it might have generated advertising

16   revenues from (s)WAA-off users some other way. In his Scenario Two, Mr. Lasinski calculated

17   Google's unjust enrichment from using (s)WAA-off data for all advertising purposes, from serving

18   an add to tracking and attributing conversions. Lasinski Rep. ¶ 113. In his report, Dr. Knittel claims

19   that Google "would have generated" some unstated portion of these advertising revenues even if

20   it had not used (s)WAA-off data to "provide … advertising services for sWAA off users' devices."

21   Knittel Rep. ¶ 79. This opinion is inadmissible because it is based entirely on speculation.

22         In his report, Dr. Knittel only discusses methods that, he says, might have allowed Google

23   to do some form of conversion tracking without collecting some types of (s)WAA-off data. *See*

24   Knittel Rep. ¶¶ 80–85. His report does not offer even a kernel of an idea of how Google might

25   ***serve and monetize*** ads without using (s)WAA-off data. *See id.* For Mr. Lasinski's Scenario Two

26   unjust enrichment calculations, *that* is a critical issue. Lasinski Rep. ¶ 113.[5]

---

27   [5] If Google had not used (s)WAA-off data to *serve* advertisements, it also could not have collected
28   revenue for conversions attributed to Google's ads. There would be no (s)WAA-off ads to which

1   At his deposition, Dr. Knittel confirmed, "It's my opinion that I could imagine Google

2   thinking of a way to … monetize that space in some way." Knittel Tr. 185:18–24. He then

3   volunteered that this is just a product of his imagination:

4   **I, as an economist, could not think of [a] way** [to monetize
    (s)WAA-off ad space], **but Google is full of very smart people**, and

5   I would imagine that they would think, or could potentially think of
    a way to monetize that space in some way.

6
7   Knittel Tr. 185:25–186:4 (emphasis added); *id.* at 218:6–11 (testifying again about "smart Google

    engineers"). Needless to say, Dr. Knittel's personal views about the intelligence of Google's

8   employees does not give him license to speculate about whether Google could recoup some of the

9   money it made using (s)WAA-off data. *See California ex rel. Brown*, 615 F.3d at 1181 n.4.

10  Expert testimony must have a factual foundation. Dr. Knittel's does not. In light of

11  Dr. Knittel's utter failure to provide reasons that his proposed deduction is appropriate—let alone

12  what the amount of this deduction should be—his opinion must be excluded.

13  **V.     CONCLUSION**

14  For the foregoing reasons, the Court should exclude the inadmissible expert testimony

15  described in this Motion.

16  Dated: April 3, 2025                                    Respectfully submitted,

17
18                                                          By:  */s/ Mark Mao*

19                                                          Mark C. Mao (CA Bar No. 236165)
                                                            mmao@bsfllp.com
20                                                          Beko Reblitz-Richardson (CA Bar No. 238027)
                                                            brichardson@bsfllp.com
21                                                          BOIES SCHILLER FLEXNER LLP
                                                            44 Montgomery Street, 41st Floor
22                                                          San Francisco, CA 94104
                                                            Telephone: (415) 293 6858
23                                                          Facsimile (415) 999 9695

24
                                                            David Boies (admitted *pro hac vice*)
25                                                          dboies@bsfllp.com
                                                            BOIES SCHILLER FLEXNER LLP
26                                                          333 Main Street

27  ───────────────────

28  conversions could be attributed. Lasinski's unjust enrichment calculations for Scenario Two
    accordingly are inclusive of his calculations for Scenario One. *See* Lasinski Rep. ¶ 113.

22

1    Armonk, NY 10504
     Telephone: (914) 749-8200

2
     James Lee (admitted *pro hac vice*)
3    jlee@bsfllp.com
     Rossana Baeza (admitted *pro hac vice*)
4    rbaeza@bsfllp.com
     BOIES SCHILLER FLEXNER LLP
5    100 SE 2nd Street, Suite 2800
     Miami, FL 33131
6    Telephone: (305) 539-8400
     Facsimile: (305) 539-1307
7

8    Alison L. Anderson, CA Bar No. 275334
     alanderson@bsfllp.com
9    M. Logan Wright, CA Bar No. 349004
     mwright@bsfllp.com
10   BOIES SCHILLER FLEXNER LLP
11   2029 Century Park East, Suite 1520
     Los Angeles, CA 90067
12   Telephone: (813) 482-4814

13   Bill Carmody (*pro hac vice*)
     bcarmody@susmangodfrey.com
14   Shawn J. Rabin (*pro hac vice*)
     srabin@susmangodfrey.com
15   Steven Shepard (*pro hac vice*)
     sshepard@susmangodfrey.com
16   Alexander P. Frawley
     afrawley@susmangodfrey.com
17   Ryan Sila
     rsila@susmangodfrey.com
18   SUSMAN GODFREY L.L.P.
19   One Manhattan West, 50th Floor
     New York, NY  10001
20   Telephone: (212) 336-8330
21
     Amanda Bonn (CA Bar No. 270891)
22   abonn@susmangodfrey.com
     SUSMAN GODFREY L.L.P.
23   1900 Avenue of the Stars, Suite 1400
     Los Angeles, CA 90067
24   Telephone: (310) 789-3100
25
     John A. Yanchunis (*pro hac vice*)
26   jyanchunis@forthepeople.com
     Ryan J. McGee (*pro hac vice*)
27   rmcgee@forthepeople.com
     Michael F. Ram (CA Bar No. 238027)
28

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

mram@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

24