**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
  bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
  sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
  esantacana@willkie.com
ARGEMIRA FLÓREZ (SBN: 331153)
  aflorez@willkie.com
HARRIS MATEEN (SBN: 335593)
  hmateen@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

Attorneys for Defendant
GOOGLE LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANIBAL RODRIGUEZ, *et al*. individually and on behalf of all others similarly situated,<br><br>                                Plaintiff,<br><br>    vs.<br><br>GOOGLE LLC, *et al*.,<br><br>                                Defendant. | Case No. 3:20-CV-04688 RS<br><br>**GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE SUNDAR PICHAI FROM TESTIFYING AT TRIAL [DKT 471]**<br><br>Date:        May 9, 2025<br>Time:       2:00 p.m.<br>Ctrm:       A - 15th Floor<br>Judge:      Magistrate Judge Alex G. Tse<br><br>Action filed: July 14, 2020<br>Trial Date:   August 18, 2025 |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. MR. PICHAI IS NOT A PERCIPIENT WITNESS ...............................................................2

   1. Mr. Pichai had some involvement with WAA's impact *on Chrome*, not GA for Firebase. .....2

   2. Mr. Pichai's involvement with "the development and launch of Firebase" is irrelevant...........3

   3. Mr. Pichai's involvement with Google's response to a "public controversy" about the WAA Setting relates to location, not GA for Firebase........................................................................4

   4. Mr. Pichai's involvement in "updating WAA" is limited to the retention period of WAA-on data.............................................................................................................................................4

   5. Mr. Pichai's statements about privacy in general are irrelevant to this case..............................5

   6. Google's employees made clear Mr. Pichai has no involvement in this case. ..........................6

III. MR. PICHAI'S TESTIMONY DOES NOT MEET THE RULE 403 BALANCING TEST ....6

IV. MR. PICHAI'S TESTIMONY SHOULD BE PRECLUDED UNDER THE APEX DOCTRINE ...............................................................................................................................9

V. CONCLUSION.........................................................................................................................11

i

GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION
TO EXCLUDE PLAINTIFFS' SUNDAR PICHAI FROM TESTIFYING AT TRIAL [DKT 471]
Case No. 3:20-CV-04688 RS

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Apple Iphone Antitrust Litig.*,
   No. 11-CV-06714-YGR (TSH), 2021 WL 485709 (N.D. Cal. Jan. 26, 2021) ...................7, 11

*City of Huntington, v. AmerisourceBergen Drug Corp.*,
   No. CV 3:17-01362, 2020 WL 3520314 (S.D.W. Va. June 29, 2020) ..........................7, 8, 11

*Finisar Corp. v. Nistica, Inc.*,
   No. 13-CV-03345-BLF(JSC), 2015 WL 3988132 (N.D. Cal. June 30, 2015) ........................10

*First Nat. Mortg. Co. v. Fed. Realty Inv. Tr.*,
   No. C03-02013 RMW (RS), 2007 WL 4170548 (N.D. Cal. Nov. 19, 2007) .....................9, 10

*Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*,
   No. C 03-5340 JF (RS), 2006 WL 2578277 (N.D. Cal. Sept. 6, 2006) .....................................9

*In re Google Location Hist. Litig.*,
   No. 5:18-CV-05062-EJD, 2024 WL 1975462 (N.D. Cal. May 3, 2024) ..................................4

*Haggarty v. Wells Fargo Bank, N.A.*,
   No. 10-2416 CRB JSC, 2012 WL 3939320 (N.D. Cal. Aug. 24, 2012) ...................................8

*In re Lincoln Nat'l COI Litig.*,
   No. 16-CV-6605-GJP, 2019 WL 7581176 (E.D. Pa. Dec. 5, 2019) .......................................10

*Opperman v. Path, Inc.*,
   No. 13-CV-00453-JST, 2015 WL 5852962 (N.D. Cal. Oct. 8, 2015) ....................................10

*Reddy v. Nuance Commc'ns, Inc.*,
   No. 5:11-CV-05632-PSG, 2015 WL 4648008 (N.D. Cal. Aug. 5, 2015) .................................5

*Snubco Pressure Control Ltd. v. Lee*,
   No. 6:20-CV-00589, 2023 WL 11950400 (E.D. Tex. Oct. 6, 2023) ......................................10

*In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   No. 2:13-MD-02436, 2014 WL 3035791 (E.D. Pa. July 1, 2014) .........................................10

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
   No. 23-MD-03084-CRB (LJC), 2025 WL 896412 (N.D. Cal. Mar. 24, 2025) ....................7, 8

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
   No. 20-MD-02966-RS, 2024 WL 4023562 (N.D. Cal. Aug. 26, 2024) ...................................8

ii
GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION
TO EXCLUDE PLAINTIFFS' SUNDAR PICHAI FROM TESTIFYING AT TRIAL [DKT 471]
Case No. 3:20-CV-04688 RS

**Other Authorities**

Fed. R. Evid. 402 .................................................................................................................7

Fed. R. Evid. 403 ..............................................................................................................6, 7

iii

GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION
TO EXCLUDE PLAINTIFFS' SUNDAR PICHAI FROM TESTIFYING AT TRIAL [DKT 471]
Case No. 3:20-CV-04688 RS

## I. INTRODUCTION

Sundar Pichai has nothing to do with this case. While Plaintiffs claim that Mr. Pichai is "central to the facts and products at issue in this litigation," (Opp. at 1) their actions belie that assertion. Plaintiffs do not and cannot explain why they never bothered to ask for Mr. Pichai's custodial files, never bothered to depose him, and didn't mention him in their initial disclosures until two years after the close of discovery. Indeed, *none* of the forty-four exhibits attached to their opposition have to do with the subject matter of this case—whether and how the sWAA[1] toggle controls Google Analytics for Firebase ("GA for Firebase"). The exhibits, to the extent they mention Mr. Pichai's involvement at all, relate to:

- Statements Mr. Pichai made about privacy in general (not the products at issue in this case);
- The business decision to acquire Firebase in 2014 and grow it as a comprehensive platform for mobile app developers (which is not at issue in this case);
- The connection between WAA and location settings (which is not at issue in this case);
- The default data retention period *when WAA is on* (this case is about data collection when sWAA is off); and
- Other settings unrelated to the collection of data by GA for Firebase.

This case is not about WAA generally, which controls the collection of data across a number of Google products such as Maps, Search, and Play.[2] *See* Dkt. 291 (holding that "WAA-off data is relevant [only] to the extent Google received it through Firebase or AdMob."); Dkt. 281 (holding Plaintiffs' claims concern the receipt of data through Firebase, not Search). Nor is it about Firebase generally, which offers developers a comprehensive set of tools to develop, run, and manage their apps. Nor is it about general privacy across all Google products and services. It is about the alleged collection by GA for Firebase of Plaintiffs' personalized information when sWAA is "off." Plaintiffs provide zero evidence of Mr. Pichai's involvement in this issue, because there is none. None of the exhibits Plaintiffs rely on even suggest Mr. Pichai was involved in GA for Firebase, its functionality, or in any discussion of its interplay with sWAA. Nor can Plaintiffs, after taking

---

[1] The supplemental Web & App Activity setting, or sWAA, is a subsetting of WAA and provides users with the option to allow Google to save "Chrome history and activity from sites, apps, and devices that use Google services" to the user's Google Account. When a user disables WAA, sWAA is also disabled. sWAA, however, can be disabled even when WAA is enabled. The certified class consists of users who disabled sWAA at some point during the class period.
[2] https://myactivity.google.com/activitycontrols/webandapp

fourteen depositions in this matter, point to a single person's testimony that Mr. Pichai was involved in these issues. Instead, they seek to use Mr. Pichai's testimony to suggest—by his very presence at trial—that the alleged conduct was blessed by Google's CEO: "Mr. Pichai should be made to tell the jury whether he knew that Google was breaking his promises" and that "he should face the jury in this case." Opp. at 4, 20. The Court should grant Google's Motion to exclude Mr. Pichai from testifying at trial.

## II.   MR. PICHAI IS NOT A PERCIPIENT WITNESS

Rather than provide a cogent explanation for why they believe Mr. Pichai is a percipient witness in *this* case, Plaintiffs instead attach every document and deposition transcript they can find that refers in any way to Mr. Pichai, regardless of the subject matter. They then make six broad claims about Mr. Pichai's knowledge, all of which are either completely irrelevant to this lawsuit, unsupported by the documents they rely on, or both. Google addresses each of Plaintiffs' cited exhibits in Appendix A to make clear they do not remotely show Mr. Pichai is a "percipient witness."

### 1. Mr. Pichai had some involvement with WAA's impact *on Chrome*, not GA for Firebase.

Plaintiffs make much of a single exhibit suggesting Mr. Pichai asked to change the name of WAA from "Web History" to "Web Activity" (Pl. Ex. 3)—a decision that is not at issue in this litigation. This document was about WAA's collection of data on the *web,* not on data collected on apps by GA for Firebase, which is the subject of this lawsuit. As Plaintiffs acknowledge, WAA's predecessors "Search History" and "Web History" "were Google's 'generalized mechanism for controlling cross-product sharing of activity data across Google services' *on the web*." Opp. at 4 (citing Pl. Ex. 4). Plaintiffs further acknowledge that Mr. Pichai's involvement in this process was due to his role with Google Chrome before he became CEO. *Id*. (citing Pl. Ex. 5). As Google witness David Monsees, Product Manager for WAA, testified, it makes sense for Mr. Pichai to have been involved in discussions about sWAA when he was in charge of Chrome *because that setting "also impacts Chrome."* Pl. Ex. 5 at 62:10–63:2 (emphasis added). "Obviously … it's quite outside of Google Analytics for Firebase." *Id.*

The exhibits Plaintiffs rely on do not establish that Mr. Pichai had *any* direct involvement with the matters at issue in this litigation. Exhibit 1 refers to a project called "▮▮▮▮▮." Plaintiffs do not even attempt to explain what "▮▮▮▮▮" is or how it relates to this case. Indeed, Plaintiffs did not ask any of the fourteen Google witnesses they deposed a single question about "▮▮▮▮▮." Exhibit 2 refers to Mr. Pichai's review of new setting language for Footprints, a storage system for WAA-on data that is similarly irrelevant to this case. *See* Santacana Decl. Ex. A (Dep. Transcript of David Monesees ("Monsees Tr.")), at 116:3–9 ("When sWAA is disabled, … data and scope is not written by Footprints."). And Exhibit 3 mentions Mr. Pichai's approval of the text in User Data Controls (UDC)—which refers to Account settings broadly, of which Web Activity was just one setting. None of these have anything to do with whether the sWAA toggle controls data that Google Analytics for Firebase can receive.

**2. Mr. Pichai's involvement with "the development and launch of Firebase" is irrelevant.**

Plaintiffs next claim that Mr. Pichai has relevant testimony because he was involved in the 2014 acquisition and launch of Firebase. Opp. at 5 (citing Pl. Exs. 7–12). So what. This case is not about Firebase generally, a comprehensive app development platform comprised of several sub-products. *See* Pl. Ex. 7. Francis Ma, who is a product manager for Firebase SDK, testified he had general discussions with Mr. Pichai about acquiring Firebase to offer developers a comprehensive set of tools, but said he and Mr. Pichai did not discuss WAA or its impact on GA for Firebase's functionality. Santacana Decl. Ex. B (Dep. Transcript of Francis Ma ("Ma Tr.")), at 49:24–50:7. The acquisition-related exhibits cited by Plaintiffs do not even discuss GA for Firebase, which is a single sub-product of Firebase that was not launched until later, in 2016.[3] Mr. Pichai's high-level participation in a business decision about the Firebase acquisition is irrelevant to this case.

---

[3] https://developers.googleblog.com/en/google-io-2016-develop-grow-earn/#:~:text=Android%20Wear%202.0:%20A%20developer,sign%20in%20experience%20for%20users

### 3. Mr. Pichai's involvement with Google's response to a "public controversy" about the WAA Setting relates to location, not GA for Firebase.

Plaintiffs spill much ink—and flood the court with fourteen exhibits—about a "public controversy" relating to a Google location setting called "Location History" that has nothing to do with GA for Firebase or this case. Opp. at 6; Pl. Exs. 13–22, 34–37. The logging of location in WAA was the subject of a 2018 AP story that spawned years of litigation across the country, including a class action that has since settled and settlements with forty-nine states and the District of Columbia. *See In re Google Location Hist. Litig.*, No. 5:18-CV-05062-EJD, 2024 WL 1975462, at *1 (N.D. Cal. May 3, 2024). All but one of the documents cited by plaintiffs for this point (Pl. Ex. 21) come from cloned productions from those cases. None of them have to do with GA for Firebase. Moreover, many of these exhibits make no mention of Mr. Pichai, and none of them support Plaintiffs' statement that Mr. Pichai "directly led near daily discussions and meetings to reduce any potential blowback on WAA." Opp. at 13.[4] These documents did not even provide a basis to seek Mr. Pichai's testimony in the "location history" matters to which they relate; they certainly cannot provide a basis for obtaining his testimony in this case, which has nothing to do with "location history."

### 4. Mr. Pichai's involvement in "updating WAA" is limited to the retention period of WAA-on data.

Plaintiffs claim that Mr. Pichai's involvement in a new "retention controls" setting that controls how long data is stored *when WAA is on* makes him a relevant witness. Opp. at 8 (citing Pl. Exs. 27–32); *see also* Pl. Ex. 27 at -702 (retention controls control how long Google keeps WAA-on data). But this case is only about sWAA-off data and Plaintiffs acknowledge that this change in "retention controls" does not affect sWAA-off data. *Id*. Moreover, to the extent Plaintiffs suggest that Mr. Pichai is a relevant witness because he never "fixed" the sWAA toggle (Opp. at 8), that is

---

[4] Exhibit 19, which Plaintiffs claim support their statement that Mr. Pichai convened many meetings about the AP story and received full briefings on the WAA setting (Opp. at 6) does not even relate to Mr. Pichai's involvement with the Location History setting. Mr. Pichai's name is mentioned only once, with relation to "Auto" and "Volvo," apparently related to the automobile industry. Pl. Ex. 19 at -084.

the very argument the court rejected in *Reddy v. Nuance Commc'ns, Inc.,* No. 5:11-CV-05632-PSG, 2015 WL 4648008, at *4 (N.D. Cal. Aug. 5, 2015) (rejecting plaintiff's theory that CEO should testify because he had the authority to undo the illegal activities complained of but chose not to do so and therefore ratified those actions, as such a theory would require trial testimony by any corporate executive in any case); *see also* Opp. at 14 (attempting to distinguish *Reddy* on the basis that "the plaintiff advanced a theory that a CEO's inaction ratified the company's illegal conduct."). Any involvement of Mr. Pichai in discussing how long WAA-on data is kept is completely irrelevant to a case about GA for Firebase's alleged use of sWAA-off data.

Plaintiffs' reliance on Exhibits 31 and 32 is equally misplaced. These emails, which Mr. Pichai was not even copied on, discuss changes Google made to *other* products[5] to "support the Sundar privacy moment," a public-facing statement Mr. Pichai made about updates to Google's privacy settings. As Greg Fair, who *was* involved in the development of WAA, testified, "[b]y the time something gets to [Mr. Pichai], it's really just a quick check-in to make sure everything looks okay." Pl. Ex. 42, 214:22–215:12. This is typical of a CEO. The mere mention of a "Sundar review" where Mr. Pichai is kept generally apprised of any number of developments (*see id.*) does not support the conclusion that Mr. Pichai has personal knowledge of the matters being discussed in a document he has not seen.

### 5. Mr. Pichai's statements about privacy in general are irrelevant to this case.

Mr. Pichai's mostly public statements about Google's general privacy practices do not make him a relevant witness in every case against Google related to privacy. *See* Mot. at 5–6. Plaintiffs fail to identify any connection between these statements and the functioning of GA for Firebase (let alone while sWAA is turned off).[6] Mr. Pichai testified to Congress about Google's general privacy

---

[5] The changes presented in Exhibits 31 and 32 are to Voice & Audio Activity, Device Information, and YouTube.

[6] *See* Pl. Exs. 33 at -882–3 (in an interview with Mr. Monsees in which he is asked about his own "role and responsibilities for privacy," he states he "own[s] transparency control and consent for Google" and "build[s] the tools to do that," and comments that Mr. Pichai "proudly likes 2 [Activity Controls] settings," which Plaintiffs recognize includes many more settings than WAA, Opp. at 8), 38 (messaging for Mr. Pichai's Keynote regarding the retention control change, *see supra* II.4), 39 (op-ed authored by Mr. Pichai about Google's general privacy practices), 40 (blog post by Mr. Pichai about Google's general privacy practices. Contrary to Plaintiffs' claim that Mr. Pichai uses "WAA as an example" (Opp. at 9), the comments Mr. Pichai makes about WAA in

5

GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION
TO EXCLUDE SUNDAR PICHAI FROM TESTIFYING AT TRIAL [DKT 471]
Case No. 3:20-CV-04688 RS

practices and Google's storing of location-related data in WAA—the same subject of the AP article and string of lawsuits discussed *supra*, II.3. Opp. at 6. The only testimony Plaintiffs cite that even refers to apps (Opp. at 7:15–18) is about preloaded apps on an Android phone, not GA for Firebase. Pl. Ex. 23 at 173:1–174:3.

### 6. Google's employees made clear Mr. Pichai has no involvement in this case.

Plaintiffs know Mr. Pichai has no involvement in this case, which is why they did not ask any of the fourteen current and former Google employees they deposed that question. When Plaintiffs tried to manufacture Mr. Pichai's involvement by asking about *other* products, Google's employees made it clear that Mr. Pichai had no involvement with any of the facts, products, or settings at issue here.

- Contrary to Plaintiffs' contention that Mr. Monsees could not recall the details of Mr. Pichai's involvement with sWAA (Opp. at 9), Mr. Monsees made clear that Mr. Pichai's involvement would have been limited to that setting's impact on Chrome, which is "obviously … quite outside of Google Analytics for Firebase." Pl. Ex. 5, 62:10–63:2.

- Mr. Ma testified he had discussions with Mr. Pichai about acquiring Firebase but that he and Mr. Pichai did not discuss WAA or its impact on Firebase's functionality. *See supra* II.2.

- Eric Miraglia was responsible for decisions about Google's privacy issues and controls during the relevant time frame at issue in this case. He testified he is "not familiar with the interaction between WAA and Firebase," so any interactions he would have had with Mr. Pichai are completely unrelated to this case. Santacana Decl. Ex. C (Dep. Transcript of Eric Miraglia ("Miraglia Tr.")), at 54:12–13. His testimony that "Mr. Pichai reviewed and commented on related privacy initiatives" (Opp. at 10) relates to an unaccused project, Narnia 2.0, which addressed privacy-related issues generally. *Id*. at 57:20–58:16.

- Mr. Fair's testimony regarding his interactions with Mr. Pichai relate to the retention controls when WAA is on; those controls are not at issue here. Pl. Ex. 42; *see also supra* II.4.

### III. MR. PICHAI'S TESTIMONY DOES NOT MEET THE RULE 403 BALANCING TEST

Plaintiffs have utterly failed to prove that Mr. Pichai "was directly involved with those 'specific issues in this case,'" Opp. at 13, and his testimony must be excluded under Rule 403. Mot.

---

this blog post relate to the retention control change. *See supra* II.4), 41 (Mr. Pichai's written remarks to Congress about Google's general privacy practices), 44 (discussing WAA features relating to Maps, the Android Google Search App, and the autodelete (retention control) function).

at 5–7. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Courts may exclude relevant evidence if its probative value is substantially outweighed by a danger of "unfair prejudice, ... misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The authorities Plaintiffs rely on are inapposite. The *In re Apple Iphone Antitrust Litigation* concerned three antitrust actions. Those cases challenged "an important aspect of Apple's business model"—namely, the closed, integrated App Store and its policies and commission structure. *In re Apple Iphone Antitrust Litig.*, No. 11-CV-06714-YGR (TSH), 2021 WL 485709, at *3 (N.D. Cal. Jan. 26, 2021). The court held that "[t]here is really no one like Apple's CEO who can testify about how Apple views competition in these various markets that are core to its business model" and that "[t]he CEO's understanding of these subjects is almost by definition unique and non-repetitive." *Id.* Furthermore, Apple's CEO had "testified before Congress *on issues relevant to these cases." Id.* (emphasis added). It is true that the court also allowed the depositions of apex witnesses who were *not* the CEO, but only where Plaintiffs provided evidence that those witnesses played an important role in creating the products at issue and making key decisions concerning the conduct complained of. *Id.* at 5. The court based its decision on those witnesses' "lesser degree of apex-ness." *Id.* at 4–5. This is not a case about Google's business model or competitive behavior. It is about very specific product functionality and none of the documents Plaintiffs cite have anything to do with that functionality or Mr. Pichai's knowledge of it.

Nor is the level of "aggregated litigation," to the extent that is a relevant factor, sufficient to warrant Mr. Pichai's testimony, particularly in light of the issues in this case. *In re Uber Techs. Inc.* and *City of Huntington* were both MDLs of paramount importance. The *In re Uber* MDL consisted of plaintiffs who alleged they were sexually assaulted by drivers hired through Uber's platform, which the court found concerned "important aspects of [Uber's] business model that are plainly the result of high-level executive decisions." *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 23-MD-03084-CRB (LJC), 2025 WL 896412, at *2 (N.D. Cal. Mar. 24, 2025). Importantly, the court found apex depositions appropriate because those witnesses' "personal, subjective intent may be relevant," and because Plaintiffs "gathered sufficient discovery through other means to

demonstrate that the proposed deponents have relevant and superior knowledge." *Id.* at *3. Plaintiffs here do not complain about Google's business model or allege that Mr. Pichai's subjective intent is relevant to this trial. The *City of Huntington* MDL concerned "tragic" and "potentially momentous" litigation related to the defendant's potential contributions to the opioid epidemic. *City of Huntington, v. AmerisourceBergen Drug Corp.*, No. CV 3:17-01362, 2020 WL 3520314, at *1, 4 (S.D.W. Va. June 29, 2020); *see also id.* at *4 ("The 'importance of the issues at stake' in this case are paramount and unparalleled."). Plaintiffs proposed to take the deposition at issue "just once for use in approximately 10,000 cases," which obviated the concern that high-level executives will be exposed to repetitive, abusive, and harassing depositions. *Id.* at *3 (citations omitted). Unlike in *City of Huntington,* Plaintiffs have not proffered any evidence that the issues Mr. Pichai testified about before Congress are "the very same factual issues pending before the Court" and that "[h]is testimony will directly address many of the cornerstone factual issues the Court must decide as the trier of fact." *Id.* at *4. To the contrary, Plaintiffs concede that it was the storing of location-related data in WAA that led to Mr. Pichai's testimony before Congress. Opp. at 6.

Furthermore, Plaintiffs have not identified any information they hope to elicit from Mr. Pichai that could not be provided by the thirteen witnesses Plaintiffs *did* depose and intend to call at trial. *See* Mot. at 7. The *In re Xyrem* case is inapplicable. That case involved testimony from *experts* who would "leverage their differing backgrounds and perspectives so as to render their testimony independently useful." *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-MD-02966-RS, 2024 WL 4023562, at *15 (N.D. Cal. Aug. 26, 2024).

*Hahharty v. Wells Fargo Bank, N.A.* does not assist Plaintiffs either. There, it was undisputed that the witness had "broad responsibilities" regarding the facts at issue in the case. *Haggarty v. Wells Fargo Bank, N.A.*, No. 10-2416 CRB JSC, 2012 WL 3939320, at *2 (N.D. Cal. Aug. 24, 2012). The court found that the deposition was warranted because those lower-level employees did not definitely answer the plaintiffs' questions *regarding the facts at issue in the case. Id.* In contrast, here, the Google employees Plaintiffs deposed are the most knowledgeable about the facts at issue (Mot. at 7) and answered all of Plaintiffs' questions relevant to this case. None of them testified that Mr. Pichai had knowledge about the relevant issues, or that they lacked knowledge about the

relevant products or settings.

None of Plaintiffs' characterizations of the value of Mr. Pichai's testimony are borne out by their actions in this case. *First,* Plaintiffs claim that "[s]ince filing this lawsuit in 2020, … conduct and statements by Mr. Pichai … were … central to the facts and products at issue in this litigation." Opp. at 1. Yet Plaintiffs admit they did not seek Mr. Pichai's custodial files or deposition (Opp. at 18), and do not dispute that they did not include Mr. Pichai in their initial disclosures until almost two years after the close of fact discovery. Mot. at 3. *Second,* Plaintiffs' opposition makes plain that their intention in having Mr. Pichai testify is to inflame the jury and cause unfair prejudice to Google. Plaintiffs claim that "Mr. Pichai should be made to tell the jury whether he knew that Google was breaking his promises" and that "he should face the jury in this case." Opp. at 4, 20. Indeed, Plaintiffs want Mr. Pichai's testimony *because* of its prejudicial value. *Third*, Plaintiffs support their opposition exclusively with evidence regarding issues completely unrelated to this litigation. Such insistence on irrelevant documents provides further support that a jury will be confused about the applicability of Mr. Pichai's testimony to this case. Indeed, confusing the issues appears to be Plaintiffs' entire strategy for obtaining Mr. Pichai's presence at trial—and for achieving perceived settlement leverage as the trial date looms ahead.

At bottom, Plaintiffs have failed to identify Mr. Pichai's personal knowledge of the facts involved in Plaintiffs' case. Any probative value of Mr. Pichai's testimony is substantially outweighed by the dangers of unfair prejudice, confusing and misleading the jury, needlessly presenting cumulative evidence, and wasting the jury's time. Mot. at 5–7.

### IV.  MR. PICHAI'S TESTIMONY SHOULD BE PRECLUDED UNDER THE APEX DOCTRINE

The lack of evidence that Mr. Pichai is a percipient witness also undermines Plaintiffs' argument that the apex doctrine is inapplicable. All of their cited authorities depend on such evidence, which Plaintiffs cannot provide. In *Google Inc. v. American Blind & Wallpaper,* the court ordered an apex deposition because one of Google's 30(b)(6) witnesses testified that the policy change at issue came from a concern voiced by the would-be deponent. *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C 03-5340 JF (RS), 2006 WL 2578277, at *3 (N.D. Cal. Sept. 6, 2006).

Plaintiffs do not point to any such evidence in this case, because there is none. And in *Opperman v. Path*, the court found that the witness "personally participated in the decision to take corrective action, … oversaw the implementation of that action, … [and] may have been involved in the original decision" at issue. *Opperman v. Path, Inc.,* No. 13-CV-00453-JST, 2015 WL 5852962, at *2 (N.D. Cal. Oct. 8, 2015) (citations omitted); *see also First Nat. Mortg. Co. v. Fed. Realty Inv. Tr.*, No. C03-02013 RMW (RS), 2007 WL 4170548, at *2 (N.D. Cal. Nov. 19, 2007) ("depositions of lower-level employees suggest that [witness] may have at least some relevant personal knowledge"); *Finisar Corp. v. Nistica, Inc.*, No. 13-CV-03345-BLF(JSC), 2015 WL 3988132, at *3 (N.D. Cal. June 30, 2015) ("this is not a case in which a high-level executive has little or no knowledge of the issues in the case."); *Snubco Pressure Control Ltd. v. Lee*, No. 6:20-CV-00589, 2023 WL 11950400, at *2 (E.D. Tex. Oct. 6, 2023) (third-party witness acknowledged he had "high–level approval of the deal" at issue); *In re Lincoln Nat'l COI Litig.,* No. 16-CV-6605-GJP, 2019 WL 7581176, at *2 (E.D. Pa. Dec. 5, 2019) (distinguishing circumstances from cases where depositions were not permitted because they could "only be *remotely* relevant to the issues of the case") (emphasis in original); *In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 2:13-MD-02436, 2014 WL 3035791, at *3–4 (E.D. Pa. July 1, 2014) (documents submitted by plaintiffs "show very clearly that [the witness] was actively involved in decision making regarding the marketing and product development of" the products at issue, which the court ruled relevant to plaintiffs' claims).

Plaintiffs' contention that Google has not presented evidence that Mr. Pichai's testimony is sought for harassing purposes ignores the very nature of the apex doctrine, which is intended to limit the potential for high-level executives to be exposed to repetitive, abusive, and harassing testimony.[7] *See* Mot. at 5, 7; *see also Opperman*, 2015 WL 5852962, at *1 ("One rationale behind the apex rule is that highly placed corporate executives who have 'greater duties and time constraints than other witnesses should be protected from the constant distraction of testifying in lawsuits'")

---

[7] Contrary to Plaintiffs' argument, there is no requirement for Google to "present[] evidence that Mr. Pichai's testimony is sought for harassing purposes" (Opp. at 15 (cleaned up)). *See also* Opp. at 12 (providing apex doctrine standard).

(citing 6-26 Moore's Federal Practice—Civil § 26.105); *In re Apple Iphone Antitrust Litig.*, 2021 WL 485709, at *4 (citing *Celerity, Inc. v. Ultra Clean Holdings, Inc.,* 2007 WL 205067, *3 (N.D. Cal. Jan. 25, 2007) ("Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates tremendous potential for abuse or harassment."); *City of Huntington,* 2020 WL 3520314, at *3 ("The rationale behind the apex doctrine is that, without the required showing, high-level executives will be exposed to repetitive, abusive, and harassing depositions") (citations omitted).

Plaintiffs also fail to explain why they did not seek Mr. Pichai's custodial files and deposition, merely claiming this decision shows they "do not intend to harass Mr. Pichai." Opp. at 18. That courtesy was not afforded to the fourteen witnesses Plaintiffs deposed. It is equally likely Plaintiffs thought to call Mr. Pichai at trial only after mediation failed, or that they chose not to seek Mr. Pichai's custodial files or deposition because they knew if they deposed him, they would have learned Mr. Pichai has no knowledge of Plaintiff's case, losing the tactical advantage they seek by having Mr. Pichai testify at trial. *See* Mot. at 6–7. The most plausible inference from Plaintiffs' choice not to seek Mr. Pichai's deposition and their failure to include Mr. Pichai in their initial disclosures until almost two years after the close of fact discovery is that Plaintiffs seek his testimony because he is the highest-level executive at Google, not because he has any special knowledge or involvement in the matters in dispute. The apex doctrine is designed to address exactly this case.

V. **CONCLUSION**

Plaintiffs' entire opposition is premised on Mr. Pichai having *relevant* information regarding the specific issues in this case. Yet for all the lip-service they pay to claiming Mr. Pichai possesses such relevant, personal knowledge, Plaintiffs do not point to a single piece of evidence that suggests Mr. Pichai has *any* knowledge of the alleged collection of data from third-party apps, let alone when sWAA is off. Google respectfully requests that the Court grant this motion and order that Mr. Pichai be excluded from testifying at trial.

| | | |
|---|---|---|
| Dated: April 24, 2025 | | Respectfully submitted, |
| | | WILLKIE FARR & GALLAGHER LLP |
| | By: | /s/ Simona A. Agnolucci |
| | | Benedict Y. Hur<br>Simona Agnolucci<br>Eduardo E. Santacana<br>Argemira Flórez<br>Harris Mateen |
| | | *Attorneys for Defendant*<br>*GOOGLE LLC* |

12

GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION
TO EXCLUDE SUNDAR PICHAI FROM TESTIFYING AT TRIAL [DKT 471]
Case No. 3:20-CV-04688 RS

FILER'S ATTESTATION

Pursuant to Civil Local Rule 5.1, I attest that all signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

By: */s/ Simona A. Agnolucci*