1  LAW OFFICES OF LINGEL H. WINTERS
   A Professional Corporation
2  Lingel H. Winters, Esq. (SBN 37759)
   2900 Shasta Rd.
3  Berkeley, California 94708
   Email: sawmill2@aol.com
4
   Attorneys for Plaintiff
5  And All Others Similarly Situated

6

7
                    UNITED STATES DISTRICT COURT
8
                    NORTHERN DISTRICT OF CALIFORNIA
9
                    SAN FRANCISCO DIVISION
10

11 | ANIBAL RODRIGUEZ, et al.,               | Case No: 1:20-cv-04688-RS
12 |         Plaintiff,                       | **ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED**
13 |     vs.                                  |
14 | GOOGLE LLC, et al.,                      | Judge:       Honorable Richard Seeborg
15 |         Defendants.                      | Courtroom:   3 - 17th Floor"
16 | James Attridge in behalf of himself and all others similarly situated | Case No: 3:25-CV-2775-NW
17 |         Plaintiffs,                      | **CLASS ACTION**
18 |     vs.                                  | **JURY TRIAL DEMANDED**
19 | GOOGLE LLC, ALPHABET, INC.,              |
20 |         Defendants.                      |

21

22   The *Attridge* Plaintiff and putative class of All End Users of Google's general search services

23 bring this ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE

24 RELATED pursuant to Local Rule 3-12.

25   1.   Newly filed *Attridge v. Google LLC,* Case no**.** 3:25-cv-02775-NW and *Rodriguez et*

26 *al. v. Google LLC,* Case no. 1:20-cv-04688-RS, both pending in the Northern District of California,

27 meet the definition of "Related Cases" in Local Rule 3-12(a) in that they (1) "concern substantially

28 the same parties, property, transactions or events," i.e. Google's interception and collection of

valuable data from Google users that Google resells to advertisers and others for billions of dollars, enabling the targeting of users with advertisements; and (2) "It appears likely that there will be an unduly burdensome duplication of labor, and expense or conflicting results if the cases are conducted before different Judges."

Local Rule 3-12(b) calls for the filing of this Administrative Motion To Consider Whether Cases Should Be Related in the lowest-numbered case, which is *Rodriguez v. Google LLC*.

2.  **Substantially The Same Transactions: Both *Rodriguez* and *Attridge* Are Class Actions By Users Of Google Search That Allege That Google Has Used Its Monopoly Power To Violate The Rights Of Users By Extracting And Collecting Users' Valuable Data From Their Google Searches And Reselling It To Advertisers For Billions Of Dollars**

Both the *Rodriguez* and *Attridge* cases are class actions brought against Google LLC by Google users that allege that Google uses its monopoly power to violate the rights of users by extracting and collecting users' valuable data that Google resells to its advertisers for billions.

The *Rodriguez* Fourth Amended Complaint ("FAC") (Dkt No. 289) alleges that: "**Google Acted Without Consent To Intercept And Collect User Data to Maintain And Extend Its Monopolies**," (*Rodriguez* ¶184) and alleges: "**Google's ongoing efforts to unlawfully maintain and extend its monopoly power in search** and other markets (*Rodriguez* ¶184)...**Over 90%** of the U.S. population uses Google to conduct web searches…(*Rodriguez* ¶185)…**Google's dominance** is tied to and based in part on Google's massive advertising business. (*Rodriguez* ¶186)…By embedding its tracking code through Google Analytics, Google has been able to intercept, track, collect, take, compile, and use a staggering amount of consumer data, far more than any company in the world (*Rodriguez* ¶188)…One way Google sought to **maintain and extend its dominance** was with its acquisition of the Android operating system (OS); its subsequent development of Android; and its push to cause mobile device manufacturers to adopt Android on their devices. (*Rodriguez* ¶196)…Google used its **monopoly power** to require phone manufacturers and app developers to incorporate Google's various products that reinforce Google search (*Rodriguez* ¶198)…enabling synchronization across Apple's iOS, Android and web devices." (Emphasis supplied).

The *Attridge* action likewise alleges that Google extracted End-users' data and re-sold it to advertisers, pursuant to Google's monopoly in violation of Sections 1 & 2 of the Sherman Act by

making agreements with its distributors, Apple and the Android parties, that are exclusive and have anticompetitive effects. The plausibility of *Attridge's* allegations is supported by the findings of Judge Mehta that Google has monopoly power in the general search services and general search text ads markets and that Google's distribution agreements are exclusive and anticompetitive in violation of Section 2 of the Sherman Act, in his 286-page Memorandum and Opinion ("MO") in *United States v. Google (2020),* Case No. 20-cv-3010 (APM) Dkt. No. 1033 at pp. 3-4 in the U.S. District Court for the District of Columbia,[1] after a nine-week trial. Thus, Both *Rodriguez* and *Attridge* allege the same evidence in support of the allegations that Google used its monopoly power to violate the rights of users of Google search when it extracted users' valuable data from their Google searches and resold it to advertisers for billions of dollars. *Rodriguez* at ¶¶ 1-17; *Attridge* at ¶¶1, 8, 32-35 etc.

3.  **Substantially The Same Parties**

Both *Rodriguez* and *Attridge* are brought against Google in behalf of classes of users of Google general search services. *Rodriguez* is brought in behalf of two classes of users of Google search services 'who turned off Web & App Activity and whose mobile app activity was still transmitted to Google,' who intercepted and collected the users' data. *Rodriguez* ¶249. *Attridge* alleges a class of: "All End-Users, including consumers and business End Users in the United States, who used Google's general search services for their own end use since January 1, 2015 to and including the filing of this Complaint ("the Class Period")." (*Attridge* at ¶7.) Thus, both *Rodriguez* and *Attridge* assert claims in behalf of classes of users of Google general search services.

4.  **Both *Rodriguez* And *Attridge* Allege Google's Code For Extracting Users' Data**

The *Rodriguez* Fourth Amended Complaint ("FAC"), Dkt. No. 289, alleges that Google employs a Google Tracking and Advertising Code to intercept and collect user's data and create users' profiles that enable the targeting of advertisements to users. (¶¶ 137-161). "Google's targeted

---

[1] The *Attridge* complaint also alleges Google's violations of the California Unfair Competition Law ("UCL") and Unjust Enrichment.

3
ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED

advertisements are more effective and therefore Google can charge advertisers more for these services." (*Rodriguez* ¶142-144).

The *Attridge* action adopts the allegations in *Brown v. Google, LLC,* 4:20-cv-3664-YGR Dkt. No. 969 at pp.2-3, that Google requires website developers to embed its code onto their websites which interact with users' browsers to access the web as follows:

> "**Data Collection…** At the same time, *the user's browser reads Google's code, which is embedded on the website.* (*Id.*) *Google's code instructs the user's browser to send a second and concurrent transmission directly to Google.* (*Id.*) *This second transmission tells Google exactly what a user's browser communicated to the website.* (*Id.*)…By selling user's information, Google prevents users from monetizing their own data." (*Attridge*, ¶45.)

Thus, both cases allege that users' data is collected by Google through Google's code that interacts with users' browsers through which queries are entered to Google's general search engine.

5.  **Both *Rodriguez* and *Attridge* Contain The Same Allegations That Users' Data Is Highly Valuable That Supports Standing**

*Rodriguez* alleges "The information Google has collected and saved from users…is highly valuable to Google, to other technology and advertising companies, and to users" (*Rodriguez* ¶162) and alleges the data is valuable to class members (*Rodriguez* ¶¶165-166); valuable to Google with a quantifiable value (*Rodriguez* ¶¶167-173); valuable to other internet firms (*Rodriguez* ¶¶174-178), and there is value in class members keeping their data private. (*Rodriguez* ¶¶179-183). *Attridge* makes these same allegations with the same supporting authorities. (*Attridge* ¶¶183-234).

6.  **Both *Rodriguez* and *Attridge* Allege Standing On Harms Actionable At Common Law**

In *Rodriguez,* 20-cv-04688-RS, Dkt. No. 445 at 12:23-13:19, this court denied Google's motion for summary judgment with respect to Article III harm, stating: "In *TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021), the Supreme Court held that, for purposes of Article III standing, "only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427 (Emphasis in original). The Court also noted that "[c]entral to assessing concreteness is whether the asserted harm has a close relationship to a harm traditionally recognized as providing a basis for lawsuits in American courts

*Id.* at 417 (internal quotations omitted); *Facebook Tracking*, 956 F.3d at 598 ("[V]iolations of the right to privacy have long been actionable at common law.").

Just as *Rodriguez's* privacy claims have long been actionable at common law. *Attridge's* antitrust claims are modeled on common law claims that trace their origins to the English common law that pre-date the Sherman Act. The British *Case of the Monopolies*, 77 Eng. Rep. 1260 (1602), cited by the U.S. Supreme Court[2] established the principle that monopolies are against the common law and improper and void. Thus, both *Rodriguez* and *Attridge* allege harms that have long been actionable at common law that support standing.

Moreover, because users "retained a stake in the profits" garnered from Google's sale of their data, plaintiffs in both cases claim disgorgement, since "as between the two [parties], it is unjust for [Google] to retain it. *In re Facebook, Inc. Internet Tracking Litigation*, No. 17-17486 at pp.15-16, 956 F.3d 589 (9th Cir. 2020)."

**CONCLUSION**

The *Attridge* and *Rodriguez* cases contain "substantially the same parties, data, property, search and advertising transactions and events." With this amount of overlap between the two cases, "[i]t appears likely there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges," as stated in Local Rule 3-12. The *Attridge* Plaintiff respectfully requests that the Court enter an Order that the *Attridge* and *Rodriguez* cases are Related Cases pursuant to Local Rule 3-12.

Dated: April 28, 2025      By:      /s/ Lingel H. Winters
                                    Lingel H. Winters, Esq. (State Bar No. 37759)
                                    **Attorneys for Plaintiff**

---

[2] In *Sears Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 229 (1969), the Court stated: "Patents are not given as favors, as was the case of monopolies given by the Tudor monarchs, *see The Case of Monopolies (Darcy v. Allein),* 11 Co.Rep. 84b, 77 Eng.Rep. 1260 (K.B.1602), but are meant to encourage invention by rewarding the inventor with the right, limited to a term of years fixed by the patent, to exclude others from the use of his invention."