**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
  bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
  sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
  esantacana@willkie.com
ARGEMIRA FLÓREZ  (SBN: 331153)
  aflorez@willkie.com
HARRIS MATEEN (SBN: 335593)
  hmateen@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone:  (415) 858-7400

Attorneys for Defendant
GOOGLE LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, *et al.* individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>     vs.<br><br>GOOGLE LLC, *et al.*,<br><br>                              Defendant. | Case No.  3:20-CV-04688 RS<br><br>**GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PLAINTIFFS' EXPERT OPINION OF BRUCE SCHNEIER [DKT. 474]**<br><br>Date:         May 15, 2025<br>Time:        1:30 p.m.<br>Ctrm:        3 - 17th Floor<br>Judge:       Hon. Richard Seeborg<br><br>Action filed:   July 14, 2020<br>Trial Date:     August 18, 2025 |

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ...............................................................................................................1

II.  ARGUMENT ....................................................................................................................2

     A.   Mr. Schneier's data and privacy opinions sow prejudice, not clarity. .........................2

          1.   Mr. Schneier's opinions are not proper "teaching testimony." ......................2

          2.   Mr. Schneier's prejudicial opinions should be excluded. ...............................5

     B.   Mr. Schneier's impermissible opinions about Google's intent and motivations
         should be excluded. ......................................................................................................7

     C.   Mr. Schneier does opine on consumer expectations, and is unqualified to do so ........9

     D.   Mr. Schneier's "Dark Patterns" opinions should be excluded. ..................................10

          1.   Mr. Schneier's opinions are not based on a reliable methodology. ...............11

          2.   Mr. Schneier's "dark patterns" opinions do rely on intent. ..........................13

          3.   Mr. Schneier is not qualified to opine on dark patterns. ...............................15

III. CONCLUSION ................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Dairy Mktg. Servs., LLC*,
   2013 WL 6909953 (D. Vt. Dec. 31, 2013) ..................................................................7

*In re Bard IVC Filters Prods. Liab. Litig.*,
   2017 WL 6523833 (D. Ariz. Dec. 21, 2017) ...............................................................3

*Borges v. City of Eureka*
   (N.D. Cal. Jan. 25, 2017) ...........................................................................................12

*Brooks v. Thomson Reuters Corp.*,
   2023 WL 5667884 (N.D. Cal. Aug. 9, 2023) ..............................................................3

*Brown v. Google, LLC*,
   2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ............................................5, 7, 9, 10

*Caldwell v. City of San Francisco*,
   2021 WL 949373 (N.D. Cal. Mar. 12, 2021) ...............................................................9

*City of Pomona v. SQM N. Am. Corp.*,
   750 F.3d 1036 (9th Cir. 2014) ...................................................................................13

*Copart, Inc. v. Sparta Consulting, Inc.*,
   277 F. Supp. 3d 1127 (E.D. Cal. 2017) ......................................................................15

*Daubert v. Merrell Dow Pharms., Inc.*,
   43 F.3d 1311 ...............................................................................................................11

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) .............................................................................................. *passim*

*Dukes v. Wal-Mart, Inc.*,
   222 F.R.D. 189 (N.D. Cal. 2004) ...............................................................................14

*Emblaze Ltd. v. Apple Inc.*,
   52 F. Supp. 3d 949 (N.D. Cal. 2014) ...........................................................................4

*Fox v. Pittsburg State Univ.*,
   2016 WL 4919463 (D. Kan. Sept. 15, 2016) ...............................................................4

*In re Google RTB Consumer Priv. Litig.*,
   2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) ...............................................................3

*Hangarter v. Provident Life & Acc. Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) .................................................................................12, 14

*Hernandez v. Hillsides, Inc.*,
   47 Cal. 4th 272 (2009) .................................................................................................6

*Linde v. Arab Bank, PLC*,
    922 F. Supp. 2d 316 (E.D.N.Y. 2013) ...................................................................12

*In re Lithium Ion Batteries Antitrust Litig.*,
    2017 WL 1391491 (N.D. Cal. Apr. 12, 2017) .........................................................14

*Martinez v. Cnty. of Alameda*,
    2024 WL 871408 (N.D. Cal. Feb. 29, 2024) .......................................................4, 9

*Microsoft Corp. v. Motorola, Inc.*,
    2013 WL 4008822 (W.D. Wash. Aug. 5, 2013) .......................................................4

*U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*,
    608 F.3d 871 (D.C. Cir. 2010) ................................................................................6

*Miller v. Holzmann*,
    563 F. Supp. 2d 54 (D.D.C. 2008) ..........................................................................3

*Montera v. Premier Nutrition Corp.*,
    2022 WL 1225031 (N.D. Cal. Apr. 26, 2022) .......................................................12

*Noyes v. Kelly Servs., Inc.*,
    2008 WL 782846 (E.D. Cal. Mar. 21, 2008) ...........................................................3

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    2022 WL 15044626 (E.D.N.Y. Oct. 26, 2022).........................................................8

*Ralston v. Mortg. Invs. Grp., Inc.*,
    2011 WL 6002640 (N.D. Cal. Nov. 30, 2011) .........................................................8

*Rolls-Royce Corp. v. Heros, Inc.*,
    2010 WL 184313 (N.D. Tex. Jan. 14, 2010) ...........................................................4

*Sali v. Corona Reg'l Med. Ctr.*,
    909 F.3d 996 (9th Cir. 2018) ................................................................................14

*Scott v. Ross*,
    140 F.3d 1275 (9th Cir. 1998) ................................................................................3

*Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*,
    854 F.3d 765 (5th Cir. 2017) ................................................................................11

*Sec. & Exch. Comm'n v. Ripple Labs, Inc.*,
    2023 WL 5670711 (S.D.N.Y. Mar. 6, 2023) ...........................................................7

*SEC v. Daifoitis*,
    2012 WL 2051193 (N.D. Cal. June 7, 2012) .........................................................14

*Senne v. Kansas City Royals Baseball Corp.*,
    591 F. Supp. 3d 453 (N.D. Cal. 2022) ....................................................................4

GOOGLE LLC'S REPLY ISO ITS MOTION TO EXCLUDE
PLAINTIFFS' EXPERT OPINION OF BRUCE SCHNEIER [DKT 474]
Case No. 3:20-CV-04688 RS

*Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*,
    927 F. Supp. 2d 1069 (D. Or. 2013) ................................................................................7, 12

*Sitts v. Dairy Farmers of Am., Inc.*
    2020 WL 3467993 (D. Vt. June 24, 2020) ..............................................................................8

*Smilovits v. First Solar, Inc.*,
    2019 WL 7282026 (D. Ariz. Dec. 27, 2019) ........................................................................15

*Snyder v. Bank of Am., N.A.*,
    2020 WL 6462400 (N.D. Cal. Nov. 3, 2020) ....................................................................7, 12

*Sonneveldt v. Mazda Motor of Am., Inc.*,
    2024 WL 5242611 (9th Cir. Dec. 30, 2024) ........................................................................12

*Trujillo v. City of Ontario*,
    428 F. Supp. 2d 1094 (C.D. Cal. 2006) ..................................................................................6

*In re Twitter, Inc. Sec. Litig.*,
    2020 WL 9073168 (N.D. Cal. Apr. 20, 2020) ..................................................................12, 14

*U.S.A v. Jackson*,
    2016 WL 6998557 (C.D. Cal. Nov. 28, 2016) ........................................................................3

*United States v. Blackstone*,
    56 F.3d 1143 (9th Cir. 1995) ..................................................................................................5

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000) ..............................................................................................11

*United States v. Maxwell*,
    2021 WL 5283951 (S.D.N.Y. Nov. 11, 2021) ......................................................................11

*United States v. Valencia-Lopez*,
    971 F.3d 891 (9th Cir. 2020) ................................................................................................13

*United States v. Vallejo*,
    237 F.3d 1008 (9th Cir.) ..........................................................................................................4

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
    2024 WL 4023562 (N.D. Cal. Aug. 26, 2024) ........................................................................8

**Statutes**

Cal. Penal Code § 502(a) ................................................................................................................15

**Other Authorities**

Fed. R. Evid. 402 ..............................................................................................................................4

Fed. R. Evid. 403 .........................................................................................................................5, 6

Fed. R. Evid. 702 ................................................................................................... *passim*

1    **I.      INTRODUCTION**

2         Bruce Schneier is widely recognized for writing and lecturing on his passionately-held

3    policy views about what he calls "surveillance capitalism." That doesn't make his proffered

4    opinions more admissible, it makes them more suspect. This is a complex federal jury trial. The last

5    thing this case needs is a megaphone through which partisans (even decorated ones) can press their

6    causes. This trial should not be a referendum on the Internet, data, tracking, or Google. But

7    Plaintiffs, through Schneier, would make it all those things and worse.

8         Mr. Schneier's testimony about data privacy is, as Plaintiffs themselves admit, "general," or

9    perhaps more accurately, "generic." Indeed, the "fit" of his report to the facts is so high-level that

10   the bulk of Schneier's report could be lifted from this case and dropped into *any* of the *thousands*

11   of data privacy cases currently pending across the country with no edits.

12        That alone does not mean the opinions must be excluded; after all, an expert could teach a

13   jury about fingerprints or ballistics in the same way, trial after trial. But it does raise the bar for

14   admission, since the proffered testimony is *so* generic that it threatens to veer into the wholly

15   irrelevant and prejudicial. In fact, here, it does just that. Plaintiffs' opposition reveals how they think

16   they will win this trial: by inflaming passions unrelated to any fact in this case. The opposition

17   speaks of abortion, domestic abuse, government subpoenas, surveillance states, and data breaches;

18   and that's the sanitized version of Schneier's opinion that Plaintiffs put forth to the Court. Yet this

19   case has nothing to do with any of those topics. There are no data breaches, no abortion data, no

20   abuse, no government overreach at issue here. Mr. Schneier didn't even review Google's data in

21   this case and does not purport even to know what, specifically, the data at issue contain.

22        Plaintiffs argue that Mr. Schneier can nevertheless instruct the jury on a parade of horribles

23   that have to do with privacy violations "generally," but no case law supports allowing experts to

24   step through such a wide entryway. The Court's role is to gatekeep such testimony, lest it run amok.

25        Plaintiffs also double down on Mr. Schneier's clearly impermissible opinions about

26   Google's intent, arguing that he merely seeks to testify about Google's "incentives"—like, as he

27   puts it, Google's "incentive" to be "more concerned with managing user impressions than actually

28   respecting user privacy" and its "incentive" to, as he alleges, "overpromise and underdeliver on

1

privacy," and the conflict in "incentives" between "Google's desire for data and its users' desire for privacy." Dkt. 474 ("Mot.") at 14-15. Plaintiffs' argument doesn't pass the straight-face test. Schneier's "incentive" opinion is lipstick on an "intent" pig. And it is doubly problematic, as Schneier isn't an economist and so cannot provide testimony about Google's "business incentives."

The same is true of Schneier's attempts to circumvent longstanding prohibitions on experts instructing juries that a defendant has acted deceitfully. Per Plaintiffs, Schneier can instead testify about what he determines is a "dark pattern," a term its own creator no longer uses (exchanged for "deceptive," which puts the lie to the whole idea that this is not an intent opinion), using no yardstick but his own personal judgment. The jury doesn't need Mr. Schneier to tell them what is and isn't deceptive. It is their job to make that determination. When stripped of his *ipse dixit*, Schneier's dark patterns opinion is empty.

Finally, Mr. Schneier cannot testify about consumers' expectations of privacy because he isn't qualified to do so, and his attempt to do so regardless is nothing more than another attempt to tell the jury what a reasonable person expects, which is exclusively their province.

## II.    ARGUMENT

### A.    Mr. Schneier's data and privacy opinions sow prejudice, not clarity.

Plaintiffs' attempts to validate Mr. Schneier's incendiary opinions about unrelated data and privacy topics as merely "background and context" should be denied. Dkt. 486 ("Opp.") at 6. This testimony—which includes statements such as that "[it] would be incredibly dangerous to live in a world without privacy where, for example, everything a citizen said and did could be stored and brought forward as evidence against them in the future"—is clearly intended to play on jurors' fears and elicit prejudice against Google. Dkt. 474-2 (Expert Report of Bruce Schneier (Feb. 20, 2023)) ("2023 Report") ¶ 36. This is not the proper purview of expert evidence.

#### 1.    Mr. Schneier's opinions are not proper "teaching testimony."

Plaintiffs' categorization of Mr. Schneier's inflammatory "data and privacy" opinions as "teaching testimony" is baseless and should be soundly rejected. Opp. at 5. While expert testimony can be used to "educate the factfinder on general principles," that is nonetheless reserved for testimony that "address[es] a subject matter on which the factfinder can be assisted by an expert"

2

GOOGLE LLC'S REPLY ISO ITS MOTION TO EXCLUDE
PLAINTIFFS' EXPERT OPINION OF BRUCE SCHNEIER [DKT 474]
Case No. 3:20-CV-04688 RS

1   and "fit[s] the facts of the case." Fed. R. Evid. 702 Comm. Note to 2000 Am. (internal quotations

2   omitted). Mr. Schneier's testimony does neither. *Scott v. Ross*, on which Plaintiffs principally rely,

3   is inapplicable because it deals with a situation where the expert "provided the jury with useful

4   information," which is an inaccurate way to describe what Mr. Schneier attempts to do here. 140

5   F.3d 1275, 1286 (9th Cir. 1998).

6          ***First***, none of Mr. Schneier's generalized data and privacy opinions concern ideas, methods,

7   or reasoning so opaque that a lay jury would not be able to meaningfully assess their reliability or

8   probative value. Rule 702 may allow background testimony where necessary to help the fact finder

9   understand complex topics and concepts such as the "principles of thermodynamics, or

10  bloodclotting, or on how financial markets respond to corporate reports." Fed. R. Evid. 702 Comm.

11  Note to 2000 Am.[1] But that is not what Mr. Schneier does here. If it is true that, as Mr. Schneier

12  claims, "there is a strong physiological basis for privacy," that "mammals in particular don't respond

13  well to surveillance," and that "[h]umans consider surveillance a physical threat" akin to being

14  "stalked by predators," then this is not something that is properly the subject of expert testimony.

15  2023 Report ¶ 31. Jurors, after all, are also mammals who should be able to come to that conclusion

16  on their own.[2]

17         Plaintiffs argue that Mr. Schneier's opinions should be admitted because they can help the

18  jury determine "whether class members have an objectively reasonable and legally protected

19

20  _____

21  [1] Plaintiffs' cited cases all involve expert testimony about complex or hyper-specific ideas or
    principles that are not analogous to what Mr. Schneier opines on here. *See Noyes v. Kelly Servs.,
    Inc.*, 2008 WL 782846, at *3 (E.D. Cal. Mar. 21, 2008) (testimony on "controversial organizations

22  and cults," and specifically one particular cult); *Miller v. Holzmann*, 563 F. Supp. 2d 54, 94 (D.D.C.
    2008), *aff'd in part, vacated in part, remanded sub nom. U.S. ex rel. Miller v. Bill Harbert Int'l

23  Const., Inc.*, 608 F.3d 871 (D.C. Cir. 2010) (testimony on the economics of auctions for bidding
    on government contracts); *U.S.A v. Jackson*, 2016 WL 6998557, at *4 (C.D. Cal. Nov. 28, 2016),

24  *aff'd sub nom. United States v. Jackson*, 757 F. App'x 547 (9th Cir. 2018) (testimony on the "causes
    and symptoms associated with TBI and PTSD"); *In re Bard IVC Filters Prods. Liab. Litig.*, 2017

25  WL 6523833, at *4 (D. Ariz. Dec. 21, 2017) (testimony on "FDA practices and the 510(k)
    process").

26  [2] While the courts in *In re Google RTB Consumer Privacy Litig.* and *Brooks v. Thomson Reuters
    Corp.* allowed certain expert testimony about privacy norms and social consequences, those rulings

27  do not mean that similar testimony is always admissible, or that Prof. Schneier's testimony here
    satisfies *Daubert* (it does not). *See* Opp. at 7 (citing *In re Google RTB Consumer Priv. Litig.*, 2024

28  WL 2242690, at *5 (N.D. Cal. Apr. 4, 2024); *Brooks v. Thomson Reuters Corp.*, 2023 WL 5667884,
    at *5 (N.D. Cal. Aug. 9, 2023)).

expectation of privacy" based on "'social norms' and 'customs and practices'" and "a policy determination." Opp. at 7. But it is not proper for *any* expert to testify about "whether class members have [a] … legally protected expectation of privacy." *Martinez v. Cnty. of Alameda*, 2024 WL 871408, at \*3 (N.D. Cal. Feb. 29, 2024) (excluding expert testimony that "amounts to a legal conclusion"). The jury does not need the assistance of expert testimony to determine "whether class members have an objectively reasonable … expectation of privacy" or whether class members have given consent—these are conclusions that laypeople can draw based on their own lived experiences. *See United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir.), *opinion amended on denial of reh'g*, 246 F.3d 1150 (9th Cir. 2001) ("To be admissible, expert testimony must [] address an issue beyond the common knowledge of the average layman"); *Microsoft Corp. v. Motorola, Inc.*, 2013 WL 4008822, at \*9 (W.D. Wash. Aug. 5, 2013) (same); *Fox v. Pittsburg State Univ.*, 2016 WL 4919463, at \*2 (D. Kan. Sept. 15, 2016) ("Generalized testimony" assists the trier of fact when "it is not within common knowledge.").

Next, Plaintiffs claim that Mr. Schneier's "testimony about major data leaks" is admissible because it "provide[s] important context for understanding Google's representations and expectations of users," but the opinions overwhelmingly involve companies other than Google, and none of those data leaks involve the data at issue. Opp. at 8. Courts exclude opinions where the "only probative value is to suggest facts about [parties] based on general observations about other companies in the parties' respective industries" because they "have no value for teaching the trier of fact; rather, they are used to establish guilt (or safety) by association." *Rolls-Royce Corp. v. Heros, Inc.*, 2010 WL 184313, at \*13 (N.D. Tex. Jan. 14, 2010).

**Second**, Plaintiffs make no credible showing that Mr. Schneier's Opinions 1–6 fit the facts of this litigation, instead simply stating that "relevancy is a low bar." Opp. at 6 (citation omitted). But the fit requirement "is more stringent than the relevancy requirement of Rule 402 of the Federal Rules of Evidence." *Senne v. Kansas City Royals Baseball Corp.*, 591 F. Supp. 3d 453, 479 (N.D. Cal. 2022). Mr. Schneier's "high-level opinions are of limited use to the fact-finder in resolving any question of fact at issue in this case," and should be excluded. *Emblaze Ltd. v. Apple Inc.*, 52 F. Supp. 3d 949, 960–61 (N.D. Cal. 2014).

1     And while Judge Gonzalez Rogers rejected similar arguments in *Brown*, that was a different

2     case with different facts and different expert reports, as well as different Google products, different

3     disclosures, and different data. Any argument that Mr. Schneier's testimony "fit[s]" the facts of

4     *Rodriguez* simply because Judge Gonzalez Rogers determined that similar opinions "fit" the facts

5     of *Brown* should fail without a detailed comparison of the facts that have supposedly been fit, and

6     Plaintiffs have made no such comparison. *Brown v. Google, LLC*, 2022 WL 17961497, at *10 (N.D.

7     Cal. Dec. 12, 2022).

8                    **2.     Mr. Schneier's prejudicial opinions should be excluded.**

9            "Evidence is prejudicial if it 'appeals to the jury's sympathies, arouses its sense of horror,

10    provokes its instincts to punish, or triggers other mainsprings of human action.'" *United States v.*

11    *Blackstone*, 56 F.3d 1143, 1146 (9th Cir. 1995) (quotations omitted). Plaintiffs' Opposition lays

12    bare their intention to do just that during this trial. There is no colorable argument that Mr.

13    Schneier's inflammatory statements are designed to do anything but "appeal[] to the jury's

14    sympathies, arouse[] its sense of horror, [and] provoke[] its instincts to punish." *Id*. What other basis

15    could there be for his so-called "teaching opinions" such as that technology is being "used to control

16    what one sees, what one can do, and, ultimately, what one can say"? 2023 Report ¶ 51. Or that "if

17    you have gathered enough data about a person, you can find sufficient evidence to make them appear

18    guilty of something, even if they are in fact innocent of wrongdoing." *Id*. ¶ 36.

19           Plaintiffs largely avoid the plainly prejudicial and irrelevant topics Mr. Schneier apparently

20    intends to throw at the jury: topics as far-flung as Joseph Stalin's secret police, J. Edgar Hoover,

21    workplace surveillance, and location data from abortion clinics, testimony about which *does*

22    "substantially outweigh[]" any "probative value" that these opinions may have. Fed. R. Evid. 403;

23    *see also* 2023 Report ¶¶ 36, 38, 41; Dkt. 474-4 (Supplemental Expert Report of Bruce Schneier (Jan.

24    6, 2025)) ("2025 Report") ¶¶ 15–18.

25           Mr. Schneier's objectionable testimony is clearly aimed at eliciting an emotional reaction

26    from the jury, and it is not enough that Mr. Schneier's musings on data breaches and the hypothetical

27    risk of data joinability may be, in the barest sense, "relevant." Opp. at 12. Even if this information

28    *were* relevant, "certain circumstances call for the exclusion of evidence which is of unquestioned

5

GOOGLE LLC'S REPLY ISO ITS MOTION TO EXCLUDE
PLAINTIFFS' EXPERT OPINION OF BRUCE SCHNEIER [DKT 474]
Case No. 3:20-CV-04688 RS

1    relevance," including the circumstances here, which "entail risks which range all the way from

2    inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely

3    wasting time, at the other extreme." Fed. R. Evid. 403 Comm. Note to 1972 Am.

4        Regarding Mr. Schneier's opinions about GDPR, the OECD Privacy Framework, and the

5    ACM Code of Ethics and Professional Conduct, that testimony risks confusing the jury by

6    suggesting that these non-binding frameworks legally define what is reasonable or lawful under

7    U.S. privacy law, which they do not. This is true even if, as Plaintiffs claim, juries "may" look to

8    non-binding authorities for guidance. Opp. at 10. Mr. Schneier's report does not simply lay out what

9    these frameworks say (a suspect attempt at legal expert opinion on its own). His report and the

10   opposition make clear that Plaintiffs apparently intend to solicit "expert" opinion about whether

11   Google lives up to those frameworks, which is doubly prejudicial, as well as threatens to spark mini-

12   trials about whether Google is violating laws not before the court.

13       Plaintiffs' cited cases are distinguishable. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272,

14   287 (2009) (guidance may come from "common law" and "statutory enactment," not foreign laws,

15   international guidelines, or industry groups); *Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094, 1106

16   (C.D. Cal. 2006), *aff'd sub nom. Bernhard v. City of Ontario*, 270 F. App'x 518 (9th Cir. 2008)

17   (relevant laws were state video surveillance laws, in same jurisdiction as the privacy claim itself).

18       The remaining authorities that Plaintiffs cite fail to support their arguments and, if anything,

19   lend credence to Google's. For example, in *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, the

20   expert in question was permitted to use terms like "cartel members" and "colluders" in a *qui tam*

21   action brought under the False Claims Act, alleging that "the defendants, other contractors, and a

22   variety of related corporate entities and individuals were all members of a conspiracy to rig the

23   bidding on contracts in Egypt." 608 F.3d 871, 875 (D.C. Cir. 2010). Using common terms such as

24   "cartel members" and "collusion" to describe the actions and behavior of defendants in a conspiracy

25   case is a far cry from attempting to shoehorn in examples about government surveillance in a case

26   concerning entirely unrelated issues, under the guise of "background information."

27

28

GOOGLE LLC'S REPLY ISO ITS MOTION TO EXCLUDE
PLAINTIFFS' EXPERT OPINION OF BRUCE SCHNEIER [DKT 474]
Case No. 3:20-CV-04688 RS

1

2

**B.    Mr. Schneier's impermissible opinions about Google's intent and motivations should be excluded.**

3

4

5

6

7

8

9

Plaintiffs do not dispute that Mr. Schneier may not testify about Google's "intent" or "motivations," but instead attempt to argue that he does not address either because he uses the word "incentive" sometimes instead of the word "intent." Opp. at 12. Mr. Schneier's expert report, like that semantic argument, speaks for itself. It is also doubly problematic, as Mr. Schneier is in no way qualified to testify about "business incentives" and never purported to be an economic expert. Nor, as Plaintiffs argue, can an expert testify about intent so long as they use documents produced in the case to do it, and the court in *Brown* did not so hold. *Brown*, 2022 WL 17961497, at *12–13.

10

11

12

13

14

15

16

The case law is clear: expert opinions regarding a party's "intent, motive, or state of mind" are impermissible and are routinely excluded, as allowing this type of testimony would usurp the role of the jury. *Snyder v. Bank of Am., N.A.*, 2020 WL 6462400, at *2 (N.D. Cal. Nov. 3, 2020); *see also Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013) (collecting cases). Mr. Schneier was partially excluded in *Brown* for attempting to do just that, but Plaintiffs claim that because Mr. Schneier has switched up his "wording" to opinions about "incentives" rather than "intent," he no longer runs afoul of that ruling. Opp. at 14.

17

18

19

20

21

22

23

24

25

26

27

First, to the extent that Mr. Schneier is purporting to opine on any economic incentives that may be driving Google, as Plaintiffs seemingly claim, he is not qualified to do so. *See* Fed. R. Evid. 702 (requiring that an expert be "qualified … by knowledge, skill, experience, training, or education."). Mr. Schneier is a self-described "security technologist," 2023 Report ¶ 9, and has "spent [his] entire career focused on issues relating to digital privacy," *id*. ¶ 22. He is not a trained economist, is not retained as an economic expert, does not have the requisite expertise to offer these opinions, and never held himself out as offering economic opinions in this case in particular (or, to Google's knowledge, any other case). Plaintiffs' cases are therefore distinguishable, as they involved economic expert testimony. *See Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, 2023 WL 5670711, at *9 (S.D.N.Y. Mar. 6, 2023); *Allen v. Dairy Mktg. Servs., LLC*, 2013 WL 6909953, at *11 (D. Vt. Dec. 31, 2013).

28

GOOGLE LLC'S REPLY ISO ITS MOTION TO EXCLUDE
PLAINTIFFS' EXPERT OPINION OF BRUCE SCHNEIER [DKT 474]
Case No. 3:20-CV-04688 RS

Regardless, Plaintiffs' own authority illustrates why their incentives/intent distinction is illusory. Far from Mr. Schneier's opinions being allowable "testimony discussing 'ordinary practices and usages' in a particular industry," as Plaintiffs claim, they are instead "inferences about the intent or motive of parties," which squarely "lie outside the bounds of expert testimony." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2022 WL 15044626, at *16 (E.D.N.Y. Oct. 26, 2022). Mr. Schneier does not discuss "ordinary practices" in any "particular industry," but instead speaks directly about Google's motivations. *Id.*

Plaintiffs cite *Sitts v. Dairy Farmers of Am., Inc.* (which is out-of-circuit and not binding on this Court) for the proposition that "experts 'may not ascribe a particular motivation to [the defendant].'" 2020 WL 3467993, at *7 (D. Vt. June 24, 2020). Yet that is precisely what Schneier did when he "opined" that Google "is more concerned with managing user impressions than actually respecting user privacy." 2023 Report ¶ 3. The court in *Sitts* also found that the expert in question could not offer opinions that "impermissibly address credibility" of the Defendants by "connot[ing] [] deceit," *Sitts*, 2020 WL 3467993, at *8, which Mr. Schneier also does by suggesting that Google is somehow motivated to market its "privacy controls" and "settings" in a particular fashion "notwithstanding any misconceptions or misunderstanding[s] by users," 2023 Report ¶ 262; *see also*, *id.* ¶ 61 ("Google … has strong incentives to overstate the effectiveness of the promise[] privacy control mechanisms of its numerous services," which implies deceit); *id.* ¶ 178 ("Google's business model … creates a strong incentive to overpromise and underdeliver on privacy," which implies deceit).

Plaintiffs' reliance on *In re Xyrem* is also misplaced. There, this Court permitted an expert to narrowly testify about a company's hypothetical but-for business incentives, not to speculate on real-world conduct or to accuse a Defendant of behaving deceitfully due to its purported motivations. *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2024 WL 4023562, at *4 (N.D. Cal. Aug. 26, 2024) (Seeborg, C.J.). And *Ralston* is inapplicable, too, as it addresses the incentives generally affecting mortgage brokers writ large, not speculative assessments of a single defendant's motives, as Schneier ventures to make regarding Google. *See Ralston v. Mortg. Invs. Grp., Inc.*, 2011 WL 6002640, at *2 (N.D. Cal. Nov. 30, 2011).

Finally, Plaintiffs argue that Mr. Schneier's opinions about Google's intent and motive should be admitted because they are "relevant." Opp. at 14. But experts may not testify as to legal conclusions, even relevant ones, nor to ultimate facts. Shockingly, Plaintiffs actually *admit* that Mr. Schneier's intent "opinions go to the ultimate issues" in this case, meaning they in fact warrant exclusion. *Caldwell v. City of San Francisco*, 2021 WL 949373, at *5 (N.D. Cal. Mar. 12, 2021) (excluding expert testimony that goes "to the ultimate issues regarding causation"); *see also Martinez*, 2024 WL 871408, at *3 (excluding expert testimony that "amounts to a legal conclusion"); *see also* Opp. at 14.

### C. Mr. Schneier does opine on consumer expectations, and is unqualified to do so.

Despite Plaintiffs' attempts to disavow Mr. Schneier's opinions about consumer expectations, the record shows that he does in fact impermissibly opine about "how a reasonable consumer would understand" Google's privacy disclosures. *Brown*, 2022 WL 17961497, at *11; *see also* Opp. at 16. That Mr. Schneier claimed otherwise in his deposition does not change the fact that his statements attempt to reintroduce the same content that was excluded in *Brown*, 2022 WL 17961497, at *12.

Plaintiffs claim that Mr. Schneier is not opining on consumer expectations, but rather "how experts in the field approach disclosures." Opp. at 16. That is not true. In support of that proposition, Plaintiffs cite paragraph 236 of Mr. Schneier's 2023 Report, in which he expressly opines on what "users without a technical education **cannot be expected** to recognize" when it comes to Google's disclosures. 2023 Report ¶ 236. Putting aside the fact that this example is about Google disclosures that are not at all involved in this case, that statement is not merely an "industry-focused opinion[]," but clearly a judgment on what specific Google users can or **cannot be expected** to recognize— which goes directly to the heart of user expectations. Opp. at 16.

Next, Plaintiffs argue that certain of Mr. Schneier's statements merely "provide background and context about issues in digital privacy," or are only about "broad social trends at the core of [Mr. Schneier's] professional work," *id.* at 17. That is disingenuous. Plaintiffs' examples are either inapplicable or support Google's argument that Mr. Schneier opines on topics that were previously

9

1    excluded. Judge Gonzalez Rogers' opinion noted that Mr. Schneier "does not have specialized

2    expertise in opining about the purported understandings and expectations of consumers

3    specifically." *Brown*, 2022 WL 17961497, at \*11. Regardless of how Schneier's opinions applied

4    to the disclosures in that case, Mr. Schneier's opinions here *do* specifically concern how users

5    interpret the specific WAA and sWAA controls that are at issue in this litigation. For example,

6    paragraph 89 of Mr. Schneier's 2023 Report opines that "users who have turned their WAA or

7    sWAA controls off have **specifically signaled an expectation** that their app activity data and the

8    associated content not to be [sic] collected and saved by Google." Mot. at 19; 2023 Report ¶ 89

9    (emphasis added). That does not merely provide "background and context." Opp. at 17. Paragraph

10   68 of Mr. Schneier's report specifically discusses "the expectations of users who turned off their

11   WAA or sWAA settings"—the very class of users whose interests Plaintiffs represent. 2023 Report

12   ¶ 68. Mr. Schneier's opinions about "People's Privacy Intuition" all lead to a conclusion about how

13   users understand "a privacy control like WAA or sWAA." *Id*. ¶¶ 142–147. And Google's other

14   examples in its motion are also about Mr. Schneier's attempts to opine about "the purported

15   understandings and expectations of consumers specifically." *Brown*, 2022 WL 17961497, at \*11.

16   For example, when Mr. Schneier says "dark patterns" can "cause the user to download something

17   other than what they were expecting," that is a judgment on the expectations of specific users. 2023

18   Report ¶ 163. Even a statement that "users seek refuge in the promise and expectation of 'privacy

19   control,'" *Id*. ¶ 83," is not a "general[]" opinion about "relevant privacy issues," but rather a

20   judgment on the expectation of specific users as it relates to their digital privacy. *Brown*, 2022 WL

21   17961497, at \*11.

22        **D.    Mr. Schneier's "Dark Patterns" opinions should be excluded.**

23        Plaintiffs claim that "the gist of Google's argument" about dark patterns is that they are "too

24   dubious [] *ever* to be the subject of expert testimony." Opp. at 18. Not true. The lack of discernible

25   methodology in Mr. Schneier's analysis, and his own admission that, as far as he understands, dark

26   patterns cannot be measured, mean that Mr. Schneier's opinions should be excluded.

27        Plaintiffs rely heavily on an Arizona state court opinion about dark patterns, but this

28   misapplies and overstates both the judicial acceptance of dark patterns and the applicability of that

10

1    order to this case. Opp. at 18 ((citing Dkt. 486-2, *State of Ariz. v. Google LLC*, CV 2020-006219

2    (Sup. Ct. Az. Maricopa Cty. Sept. 8, 2022)). The non-binding decision in *Arizona* is from a case

3    involving different record evidence, concerning a different area of Google's business, and is about

4    an entirely different expert report written by a different expert employing a different methodology,

5    interpreted by a judge who was not applying the federal *Daubert* standard. Google's Motion is about

6    Mr. Schneier's reports, and the methodology (or lack of one) that he employs, and only that. Because

7    Mr. Schneier's dark patterns opinions are not based on reliable methodology, because they are

8    grounded in impermissible judgments about Google's intent, and because Mr. Schneier is

9    unqualified to provide them, they should be excluded.

10        It is telling, though, that this is the only decision that Plaintiffs can identify accepting a so-

11    called "dark patterns" expert opinion, underlining both the novelty of this type of opinion and its

12    lack of acceptance, and notably, the only academic "literature" they rely on is authored by Schneier

13    himself.

14            **1.    Mr. Schneier's opinions are not based on a reliable methodology.**

15        Despite Plaintiffs' efforts to legitimize Mr. Schneier's dark patterns opinions, Schneier

16    himself admitted that he could not identify whether there could "*possibly* be a test" to determine if

17    something is a dark pattern. Mot. at 16 (citing Dkt. 474-3 (Deposition Transcript of Bruce Schneier

18    (July 10, 2023) "Schneier Dep.") 127:23–128:2). And even if there is *some* scholarship addressing

19    dark patterns (the bulk of which appears to be part of a book authored by Schneier himself, and one

20    throw-away tweet by Google's expert presented without context), Mr. Schneier's opinions **in his**

21    **reports** are not grounded in any testable methodology as required by *Daubert v. Merrell Dow*

22    *Pharms., Inc.*, 509 U.S. 579, 593 (1993); *see also Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d

23    1311 at 1318 ("the test under *Daubert* is not the correctness of the expert's conclusions but the

24    soundness of his methodology.").[3]

25

26    _____
      [3] This is true regardless of whether Google's expert, Dr. Donna Hoffman, acknowledges the
27    concept of dark patterns. Opp. at 22. And the cases that Plaintiffs cite permit expert testimony
      applying distinguishable methodologies. *See Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*,
      854 F.3d 765, 775 (5th Cir. 2017) (out-of-circuit; quantitative actuarial analysis); *United States v.*
28    *Maxwell*,, 2021 WL 5283951, at *2 (S.D.N.Y. Nov. 11, 2021) (out-of-circuit; trauma psychology
      applied by a clinical psychologist); *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000)

                                              11

1    Mr. Schneier said himself that when he teaches this topic to his students, the lesson is to

2 "recognize [dark patterns] when they see them." Opp. at 16 (quoting Schneier Dep. at 136:18–

3 137:5). This is classic *ipse dixit* testimony, and should be excluded. *See Sonneveldt v. Mazda Motor*

4 *of Am., Inc.*, 2024 WL 5242611, at *2 (9th Cir. Dec. 30, 2024) ("Regardless of one's qualifications,

5 an expert must still base his opinions on sufficient facts and data and a reliable methodology.").

6 Meanwhile, Plaintiffs claim that Mr. Schneier's "conclusions can be tested." Opp. at 25. But that

7 ignores Mr. Schneier's clear deposition testimony that a "dark pattern" is "not something you

8 measure." Mot. at 16 (quoting Schneier Dep. 127:23–128:1).

9    Plaintiffs' two other arguments also fail. The fact that some sections of the California Civil

10 Code mention "dark patterns" does not make Mr. Schneier's testimony admissible. Opp. at 23. And

11 just because some Google engineers may use the term "dark pattern" colloquially does not transform

12 it into an admissible expert method. *Id*. Courts require more than references to industry buzzwords.[4]

13 And the law makes "fraud" and "deceit" unlawful, too; that doesn't mean an expert can instruct a

14 jury that a particular defendant engaged in fraud or deceit. That is, ultimately, the point here. To the

15 extent "dark pattern" has any definition, it is inherently dependent on a finding of intentional deceit,

16 which is exclusively for the jury to find. A "battle of the experts" over whether Google's disclosures

17 are deceitful will amount to nothing more than two more people arguing over what they, if they

18 were jurors, would find, and it is *not* the proverbial battle envisioned by *Daubert* and Rule 702.

19

20

---

21 (testimony based on expert's practical experience with gangs); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (insurance expert testifying about claims adjustment);
22 *Siring*, 927 F. Supp. 2d 1069, 1074 ("faculty member and member of personnel committees" testifying about his employer's "evaluation and review policies"); *In re Twitter, Inc. Sec. Litig.*,
23 2020 WL 9073168, at *2 (N.D. Cal. Apr. 20, 2020) ("professor of investment portfolio management" testifying about strength of investment).
24 [4] Plaintiffs also argue that paragraphs 389–98 of Mr. Schneier's 2023 Report should be admitted, because they "synthesiz[e] information from … Google's internal documents." Opp. at 19 n.5. But
25 these paragraphs are offered in support of Mr. Schneier's conclusion that "Google employees agree with me," 2023 Report ¶ 389, which in any event is an impermissible "state of mind" opinion. *See,*
26 *e.g.*, *Snyder*, 2020 WL 6462400, at *2. The cases Plaintiffs cite are distinguishable because they do not deal with testimony about individuals' state of mind. *See Borges v. City of Eureka*, at *3
27 (N.D. Cal. Jan. 25, 2017) (not discussing state of mind testimony); *Montera v. Premier Nutrition Corp.*, 2022 WL 1225031, at *5 (N.D. Cal. Apr. 26, 2022) (Seeborg, C.J.), *aff'd in part*, 111 F.4th
28 1018 (9th Cir. 2024) (same); *Linde v. Arab Bank, PLC*, 922 F. Supp. 2d 316, 332 (E.D.N.Y. 2013) (same, and out-of-circuit).

True, Mr. Schneier purports to apply three "taxonomies" of dark patterns. Mot. at 17. But he does not discuss how other scholars apply those taxonomies to analogous facts, nor does he offer any sort of measurable criteria for doing so. He never discusses whether those taxonomies are widely accepted. His "method" is nothing more than subjective analogy. Calling something a "taxonomy" does not render it scientific, reliable, or testable. And, to be sure, the "taxonomies" pressed by Scheneier are nothing like a classification system that can be applied reliably to new facts.

The reliability test may be "flexible," and the trial court may have discretion. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). But the court's gatekeeping function still requires that it police expert testimony for reliability. It may be "harder to apply [*Daubert* and *Kumho Tire*] when the expert testimony is 'experience-based' rather than 'science-based[,]'" but "reliability becomes more, not less, important when the "experience-based" expert opinion is perhaps not subject to routine testing, error rate, or peer review type analysis, like science-based expert testimony." *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020) ("any such difficulty cannot simply lead to a 'that goes to weight, not admissibility' default."). Indeed, the Rules Committee has made clear that it "rejects the premise that an expert's testimony should be treated more permissively simply because it is outside the realm of science. An opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as an opinion from an expert who purports to be a scientist." Fed. R. Evid. 702 Comm. Note to 2000 Am.

### 2.    Mr. Schneier's "dark patterns" opinions do rely on intent.

Plaintiffs claim that Mr. Schneier "refused to concede that his dark patterns opinions require him to opine on Google's intent," Opp. at 22, but he also testified that "dark patterns are **intended** to manipulate users," which is the same language that he uses in his 2023 Report. *See* Mot. at 12; Schneier Dep. 89:7–17; 2023 Report ¶ 161 (emphasis added). If "dark patterns" are, as Mr. Schneier claims, "subversive user-design tricks" that are "intended" to induce certain responses in users, then intent is a necessary condition of what constitutes a dark pattern. 2023 Report ¶ 161. Forming and presenting an opinion about whether something constitutes a "dark pattern" as Mr. Schneier has chosen to define it requires a judgment about the "intent" of the entity that created the purported dark pattern in the first place.

Plaintiffs' authorities are either inapplicable, or help Google. Contrary to Plaintiffs' claims, *In re Twitter* supports Google's position. There, the court excluded expert testimony about "whether any trading activity *in this case* is consistent or inconsistent with scienter." *In re Twitter, Inc. Sec. Litig.*, 2020 WL 9073168, at *6 (emphasis in original). The expert was not permitted to discuss "any trading activity *in this case*," which is analogous to what Mr. Schenier does here by specifically opining that Google's at-issue settings and disclosures constitute dark patterns. The expert testimony in *Hangarter*, which Plaintiffs cite, about how "Defendants failed to comport with industry standards," was not found to "improperly embrace the [ultimate] issue of bad faith" because the expert "never testified that he had reached a legal conclusion" to that effect. *Hangarter*, 373 F.3d 998, 1016 ; *see also* Opp. at 21. But this is very different from stating that a "dark pattern" is "intended to manipulate users," and then opining that various at-issue Google' settings and disclosures "exemplify dark patterns." *See* 2023 Report ¶¶ 311–331 (Opinion 11.1: "Google's WAA Help Page Exemplifies Dark Patterns"); ¶¶ 332–339 (Opinion 11.2: "Disclosures Accompanying the WAA and sWAA Toggles, including the 'Activity Controls" Page, Exemplify Dark Patterns'); ¶¶ 340–363 (Opinion 11.3: "Google Statements about Privacy and User Control Exemplify Dark Patterns"); ¶¶ 364–369 (Opinion 11.4: "Google's WAA Controls for Location Privacy Exemplify Dark Patterns"); ¶¶ 370–382 (Opinion 11.5: "Google's WAA/sWAA 'Consent Bump' Prompt Exemplifies Dark Patterns"); ¶¶ 383–388 (Opinion 11.6: "Google's Disclosures to App Developers Exemplify Dark Patterns"). Doing so is tantamount to saying "Google intended for these settings and disclosures to manipulate and deceive users." And that is not the proper subject of expert testimony.[5] Mr. Schneier *cannot*, as Plaintiffs claim, "refrain[] from opining that Google

---

[5] Other cases Plaintiffs cite are inapplicable. In *SEC v. Daifoitis*, an expert was permitted to offer testimony "[r]elevant to assisting the jury in its determination of whether defendant, who is alleged to have made various misstatements and misleading omissions, did so with the requisite scienter." 2012 WL 2051193, at *3 (N.D. Cal. June 7, 2012). But that expert did not ascribe scienter to the defendants, as Mr. Schneier attempts to do here. *In re Lithium Ion Batteries Antitrust Litig.*, explicitly distinguished between permissible testimony about "features … indicative of collusion" and impermissible testimony about "intent or motive." 2017 WL 1391491, at *9 (N.D. Cal. Apr. 12, 2017). Again, Mr. Schneier's testimony here goes to intent. Additionally, that opinion was issued at the class certification stage, which applies a lower *Daubert* bar than when courts are screening evidence for admissibility at trial. *See Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 191 (N.D. Cal. 2004) ("a lower *Daubert* standard should be employed at this [class certification] stage of the proceedings." (internal citations omitted); *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996,

14

1    intentionally designed the disclosures with dark patterns in mind," because intent is a necessary

2    condition of a dark pattern for the reasons explained. Opp. at 21. So this argument also fails.[6]

3                    **3.    Mr. Schneier is not qualified to opine on dark patterns.**

4            Mr. Schneier may have written about dark patterns and taught about them in courses. Opp.

5    at 20. He may have reviewed certain related scholarship, and may have even "addresse[d]" dark

6    patterns in his own written work. *Id.* But at their core, Mr. Schneier's opinions about dark patterns

7    are lay opinions. He has no qualifications in user interface design. His opinions are his own *ipse*

8    *dixit* about "policy" issues he sees in the world. He may be recognized for writing persuasively

9    about such issues, but that doesn't make him an expert in the eyes of Rule 702. Here, he is the latter,

10   and his policy agenda does not belong at this trial.

11   **III.    CONCLUSION**

12           For the foregoing reasons, this Court should grant Google's Motion to Exclude the 2023 and

13   2025 Reports of Bruce Schneier.

---

1006 (9th Cir. 2018) ("an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage."). *Smilovits*, an out-of-district case, is inapplicable because it involved expert testimony assisting the jury in identifying potentially suspicious trading behavior using objective, neutral criteria ("hallmarks" of 10b5-1 trading plans)—not urging the jury to make subjective, emotionally charged judgments based on "taxonomies" with conflicting definitions. Mot. at 18. *Smilovits v. First Solar, Inc.*, 2019 WL 7282026, at *2 (D. Ariz. Dec. 27, 2019).
[6] Years into this case, Plaintiffs quixotically claim that intent is not an element of their CDAFA claim. Opp. at 21 (citing Cal. Penal Code § 502). CDAFA is a criminal statute, and even in civil claims for violation of it, intent is a required element. *Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1161 (E.D. Cal. 2017) ("liability under California's Data Access Fraud Statute, Cal. Penal Code § 502(a), requires the person to act 'knowingly' and 'without permission' in committing computer-related crimes.") (citations omitted).

Dated: May 1, 2025                    Respectfully submitted,

                                      WILLKIE FARR & GALLAGHER LLP

                                      By:    */s/ Eduardo E. Santacana*

                                             Benedict Y. Hur
                                             Simona Agnolucci
                                             Eduardo E. Santacana
                                             Argemira Flórez
                                             Harris Mateen

                                             *Attorneys for Defendant*
                                             *GOOGLE LLC*

GOOGLE LLC'S REPLY ISO ITS MOTION TO EXCLUDE
PLAINTIFFS' EXPERT OPINION OF BRUCE SCHNEIER [DKT 474]
Case No. 3:20-CV-04688 RS