1

**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
alanderson@bsfllp.com
mwright@bsfllp.com

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander  (admitted pro hac vice)
Ryan Sila (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

GOOGLE LLC,
Defendant.

Case No.:  3:20-cv-04688-RS

**PLAINTIFFS' REPLY ISO MOTION TO EXCLUDE CERTAIN OPINIONS OF GOOGLE'S EXPERTS DONNA HOFFMAN, JOHN BLACK, AND CHRISTOPHER KNITTEL (DKT. 473)**

The Honorable Richard Seeborg
Courtroom 3 – 17th Floor
Date: May 15, 2025
Time: 1:30 p.m.

1

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...................................................................................................... 1

II.    ARGUMENT ............................................................................................................ 2

    A.    Portions of Dr. Hoffman's opinions and testimony should be excluded.................. 2

        1.    Google concedes that Dr. Hoffman offers impermissible opinions about motive, intent, and state of mind........................ 2

        2.    Dr. Hoffman's opinions impermissibly intrude upon the Court's role to instruct the jury. ........................................................... 3

        3.    Dr. Hoffman impermissibly offers technical opinions without any technical expertise or analysis. .................................. 5

    B.    Portions of Dr. Black's opinions and testimony should be excluded..................... 8

        1.    The Court should exclude Dr. Black's opinions and testimony that "Google Account" is defined in Google's disclosures. ........................ 8

        2.    Dr. Black improperly offers opinions on "interception," which are irrelevant and beyond the scope of rebuttal........................... 9

    C.    Portions of Dr. Knittel's opinions and testimony should be excluded. ................. 11

        1.    Dr. Knittel's opinion that users might have given permission had Google asked is impermissible because it is irrelevant and speculative. ........................................................... 11

        2.    Dr. Knittel's opinion that Google might have monetized (s)WAA-off advertising without (s)WAA-off data is impermissibly speculative. ....................................... 13

III.   CONCLUSION ....................................................................................................... 15

REPLY ISO MOTION TO EXCLUDE IN PART GOOGLE'S EXPERTS
CASE NO. 3:20-CV-04688-RS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Auto Ins. Co. v. Hawaii Nut & Bolt, Inc.*,
2017 WL 5892255 (D. Haw. Sept. 27, 2017)...................................................................9

*Apple, Inc. v. Samsung Elecs.*,
2012 WL 2571332 (N.D. Cal. June 30, 2012).................................................................3

*Calhoun v. Google*,
113 F.4th 1141 (9th Cir. 2024)..........................................................................................4

*Cedar Park Assembly of God of Kirkland, Washington v. Kreidler*,
130 F.4th 757 (9th Cir. 2025)............................................................................................9

*Clear-View Techs., Inc. v. Rasnick*,
2015 WL 3509384 (N.D. Cal. June 3, 2015)...................................................................10

*Courthouse News Servs. v. Planet*,
947 F.3d 581 (9th Cir. 2020).............................................................................................8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)...........................................................................................12

*Huawei Techs., Co., v. Samsung Elecs. Co., Ltd.*,
340 F. Supp. 3d 934 (N.D. Cal. 2018)............................................................................10

*Hunyh v. Harasz*,
2016 WL 2757219 (N.D. Cal. May 12, 2016)..................................................................9

*Hydrick v. Hunter*,
500 F.3d 978 (9th Cir. 2007).............................................................................................9

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
2022 WL 16924139 (D. Or. Nov. 14, 2022)..............................................................11, 12

*Jeffries v. Wood*,
114 F.3d 1484 (9th Cir. 1997)...........................................................................................8

*Meister v. Mensinger*,
230 Cal. App. 4th 381 (2014).....................................................................................11, 13

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008)...........................................................................................4

*Oracle Am., v. Google Inc.*,
2016 WL 1743154 (N.D. Cal. May 2, 2016)...................................................................11

ii

*Plantronics, Inc. v. Am. Home Assurance Co.*,
    2014 WL 2452577 (N.D. Cal. May 30, 2014)..................................................................9

*Ries v. Arizona Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) (Seeborg, J.) ..........................................................13

*Smilovits v. First Solar, Inc.*,
    2019 WL 6875492 (D. Ariz. Dec. 17, 2019)...........................................................1, 4

*Surgical Instrument Serv. Co., Inc. v. Intuitive Surgical, Inc.*,
    2024 WL 1975456 (N.D. Cal. Mar. 31, 2024) ............................................................7

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.*,
    2018 WL 5013580 (N.D. Cal. Oct. 16, 2018) ............................................................4

*University of Texas v. Camensich*,
    451 U.S. 390 (1981) ...................................................................................................9

*Vu v. McNeill-PPC, Inc.*,
    2010 WL 2179882 (C.D. Cal. May 7, 2010)...........................................................10

**Statutes**

Cal. Penal Code § 502(c)(2) ...........................................................................................3

**Rules**

Fed. R. Civ. P. 26 ..........................................................................................................10

**Other Authorities**

BAJI 7.20........................................................................................................................4

CACI 115........................................................................................................................5

CACI 1800......................................................................................................................4

Fed. Prac. & Proc. Evid. § 6265.2 .................................................................................4

iii

## I.    INTRODUCTION

Plaintiffs' Motion to exclude is extremely narrow, implicating just 39 paragraphs across four[1] different expert reports, which together comprise 634 paragraphs (excluding appendices). Nothing about Plaintiffs' Motion could "dismantle core components of Google's defense." Opp'n at 1. The Court should exclude limited aspects of Google's three experts' opinions.

**Dr. Hoffman**: Three aspects of her opinions should be excluded. *First*, Google concedes that she opines on intent and that these opinions are improper. *Id*. at 3. *Second*, the Court should exclude two statements that will conflict with the jury instructions—that "there is no such thing as a 'representative' user with respect to privacy," and that Named Plaintiffs' interpretation of Google's (s)WAA disclosures "cannot be generalized across all of Google's users." Exclusion is particularly warranted in light of Google's admission that "Dr. Hoffman can use different language to avoid confusion" while still making her principal points. *Id*. at 8. *Third*, the Court should exclude opinions that address technical issues for which she admittedly has no expertise, such as the "accuracy" of Google's (s)WAA disclosures. On this point, Google's Opposition tellingly focuses almost entirely on opinions that Plaintiffs are not even seeking to exclude. *See Id*. at 9 (addressing her "user-friendly design" opinions). Google's misplaced focus is a tacit concession that Dr. Hoffman is not qualified to assess the technical accuracy of Google's disclosures.

**Dr. Black**: Two aspects of his opinions should be excluded. *First*, the Court should exclude his opinion that Google's disclosures define the term "Google Account" because that opinion conflicts with the law of the case. *Second*, the Court should exclude his opinion that Google did not "intercept" (s)WAA-off data because that opinion plainly exceeds the scope of proper rebuttal. Google's only responses to these arguments rest on a fundamental misunderstanding of the law.

**Dr. Knittel**: Two aspects of his opinions should be excluded. *First*, Dr. Knittel should be precluded from opining on the hypothetical profits Google might have earned had it obtained class members' permission to collect (s)WAA-off app activity data because these opinions rely on an

---

[1] Dr. Hoffman submitted two reports, while Drs. Black and Knittel each submitted one report. Dr. Hoffman's initial report and supplemental report were attached to Plaintiffs' Motion as Exhibits 1 and 2 (Dkts. 470-1 and 470-2, respectively). Dr. Black's report and Dr. Knittel's report were attached to Plaintiffs' Motion as Exhibits 3 and 4 (Dkts. 470-3 and 470-4, respectively).

irrelevant but-for world in which Google still collects the data. *Second*, the Court should exclude as speculative Dr. Knittel's opinion that Google might have generated advertising revenues from (s)WAA-off users even if Google kept its promise not to collect (s)WAA-off data because Dr. Knittel did not even try to quantify the amount Google could have recouped. On both of these issues, Google primarily argues that Dr. Knittel is just a "rebuttal" expert whose job is to poke holes—not do "Plaintiffs' work for them." *Id*. at 18. But that cop-out does not apply to these expert opinions, for which Google (and Dr. Knittel) bore the burden to quantify any deductions from the gross unjust enrichment that Plaintiffs' expert calculated. *See id*. at 17 (Google ultimately conceding that it "bears the burden for deductions from gross unjust enrichment").

## II.    ARGUMENT

### A.    Portions of Dr. Hoffman's opinions and testimony should be excluded.

#### 1.    Google concedes that Dr. Hoffman offers impermissible opinions about motive, intent, and state of mind.

Google's Opposition concedes that Dr. Hoffman offered impermissible opinions about motive, intent, and state of mind. Opp'n at 4. Unable to dispute the substance of Plaintiffs' arguments, Google claims that Dr. Hoffman only offered these opinions because her "assignment in this case was to rebut Mr. Schneier's opinions," and Prof. Schneier, in Google's view, opined on intent as well. *Id.* Google is wrong about Prof. Schneier's opinions, which concerned Google's business incentives, not its state of mind. *See* Dkt. 486 at 12–14 (Plaintiffs' opposition to Google's motion to exclude Prof. Schneier). In any event, the parties agree that no expert may opine on the "motives, intent, or state of mind of anyone or any corporate entity at this trial." Opp'n at 4.

Dr. Hoffman's opinions on these issues should be stricken. Plaintiffs' Motion listed these opinions and provided citations to the paragraphs in her reports where these opinions appear. Mot. at 1, 10–11. Google does not contest any paragraph on Plaintiffs' list. Google instead claims that some of these paragraphs "*also* contain factual matter about which Dr. Hoffman is certainly permitted to testify," including deposition testimony from Google employees. Opp'n at 4–5 (citing Hoffman Rep. tbl. 8) (emphasis added). Google argues that experts may "point[] the jury" to relevant deposition testimony and other evidence (like internal Google documents), provided

1  experts "stop[] short" of opining on intent. Opp'n at 4–5. The parties agree on these points as well.

2  Experts may rely on deposition testimony and internal Google documents. Moreover, to the extent

3  the Court strikes any portion of any expert's report, the Court should only strike the particular

4  sentences that are inadmissible—not entire paragraphs or sections.[2]

5  **2.    Dr. Hoffman's opinions impermissibly intrude upon the Court's role to instruct the jury.**

6  This portion of the Motion is very narrow. Plaintiffs seek to strike just two statements in

7  Dr. Hoffman's reports: (1) that "there is no such thing as a 'representative' user with respect to

8  privacy," and (2) that Named Plaintiffs' interpretation of Google's (s)WAA disclosures "cannot

9  be generalized across all of Google's users." Hoffman Rep. ¶¶ 43, 122 tbl. 4, 139 tbl. 6. Plaintiffs

10  seek to exclude these statements because they "usurp[] the role of the Court" to "instruct the jury."

11  *Apple, Inc. v. Samsung Elecs.*, 2012 WL 2571332, at *9 (N.D. Cal. June 30, 2012).

12  Tellingly, Google's opposition focuses mostly on statements from Dr. Hoffman's reports

13  that Plaintiffs are *not* seeking to exclude. Google argues that Dr. Hoffman is responding to Prof.

14  Schneier's opinions about privacy, and Google urges that Dr. Hoffman should be permitted to

15  rebut that testimony by describing how "users are highly heterogeneous with varying needs and

16  preferences." Opp'n at 6 (citing Hoffman Rep. ¶¶ 37, 41). No problem. Plaintiffs are not seeking

17  to exclude paragraphs 37 or 41 from Dr. Hoffman's report. The statements in those paragraphs

18  only underscore why the Court should grant this narrow motion. Dr. Hoffman can make her

19  rebuttal points without intruding upon the Court's role to instruct the jury.

20  Google's other arguments likewise miss the mark. Plaintiffs are not objecting to the

21  challenged statements on reliability grounds, nor quibbling with Dr. Hoffman's qualifications. *See*

22  *Id.* at 7. Nor does it matter whether the challenged statements may be related to something that

23  Plaintiffs' expert plans to say. *Id.* A "rebuttal" expert is still an expert, bound by the rules. What

24  matters is whether the challenged statements conflict with the court's jury instructions.

25

26

27  _____

[2] While irrelevant to this Motion, Plaintiffs must correct Google's misstatement that "intent" is an
28  "ultimate" issue of fact for "each of the remaining claims." Opp'n at 4. For example, there is no
"intent" element for the CDAFA claim. Cal. Penal Code § 502(c)(2).

1    ***"There is no such thing as a representative user with respect to privacy."*** This opinion

2    should be struck because it conflicts with the jury instructions, which will tell the jury to determine

3    how a reasonable user would have understood Google's disclosures. Mot. at 12 (citing CACI 1800;

4    BAJI 7.20). On this key question, Google offers very little argument. Google does not dispute

5    Plaintiffs' principal legal argument—which is that the Court should exclude testimony that

6    "merely function[s] like jury instructions and, thus, infringe[s] upon the trial judge's role." Wright

7    & Miller, Fed. Prac. & Proc. Evid. § 6265.2 (2d ed.); Mot. at 12–13. Indeed, Google ***ignores***

8    Plaintiffs' reliance on Wright & Miller. Google also ***ignores*** six other cases that Plaintiffs cited to

9    make the same point, including *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, which affirmed

10   the exclusion of testimony that amounted to "instructing the jury on legal issues." 523 F.3d 1051,

11   1058–59 (9th Cir. 2008); Mot. at 12.

12       The two cases that Google cites actually support Plaintiffs because these cases

13   acknowledge that experts should avoid "specialized" terms that "have meaning in law." *United*

14   *Energy Trading, LLC v. Pac. Gas & Elec. Co.,* 2018 WL 5013580, at *3 (N.D. Cal. Oct. 16, 2018);

15   *see also Smilovits v. First Solar, Inc.*, 2019 WL 6875492, at *5 (D. Ariz. Dec. 17, 2019) (experts

16   should not use "terms" that "have a specialized meaning in law"). Here, the terms "representative

17   user" and "reasonable user" have specialized meaning and will be used in the jury instructions.

18   This is confirmed by the Ninth Circuit's recent decision in *Calhoun v. Google*, which held that

19   consent turns on how a "reasonable user" interprets "the disclosures at issue." 113 F.4th 1141,

20   1151 (9th Cir. 2024). The Motion cited *Calhoun* on page 12; Google ignores that case too.

21       Google does not engage with the substance of Plaintiffs' Motion until the last page of the

22   relevant section of its brief (page 8). On this page, Google finally tries to explain why Dr.

23   Hoffman's opinions will not conflict with the jury instructions. According to Google, Dr.

24   Hoffman's statement is not an "assessment of what a 'reasonable person' should mean with respect

25   to privacy." Opp'n at 8. This argument is as confusing as it is weak. If a juror hears and credits

26   Hoffman's testimony that there is "no such thing as a 'representative' user with respect to privacy,"

27   then that juror will be unable to follow the Court's instruction to determine how a reasonable

28   person would interpret Google's disclosures. The contradiction is clear and stark.

Google admits, on page 8, that Dr. Hoffman can "use different language to avoid confusion, without changing or withholding her opinion." That's what she should do. Plaintiffs are not seeking to exclude the statements from Dr. Hoffman's reports that Google highlighted in its opposition brief, including that "users are highly heterogeneous with varying needs and preferences" and that "both the context and individual preferences affect the level of a perceived privacy threat by users." Opp'n at 6. Plaintiffs agree with Google that Dr. Hoffman can offer these rebuttal points. She must do so, however, without intruding upon the Court's role to instruct the jury by opining that there is no such thing as a representative user with respect to privacy.

*Hoffman's opinion that Plaintiffs' interpretations of Google's disclosures "cannot be generalized across all of Google's users."* As for Hoffman's second challenged opinion, that Named Plaintiffs' testimony "cannot be generalized" to the class, Google claims that Plaintiffs' argument is "premature" because the parties have not yet negotiated the jury instructions for this case. Opp'n at 8. But Google does not address Plaintiffs' reliance on CACI 115, which is a model instruction for class actions that provides: "You may assume that the evidence at this trial applies to all class members." Dr. Hoffman's statement conflicts with this model instruction, which tells juries to assume the opposite of what Dr. Hoffman plans to say.

Google argues that Plaintiffs misunderstand Dr. Hoffman's opinion. According to Google, all she means is that Named Plaintiffs' testimony cannot be attributed to users who are *not* members of the class—e.g., users who always had (s)WAA turned "on." Opp'n at 8. This spin on her testimony raises more questions than it answers. For example: how does that opinion help the jury decide a fact in dispute? The jury will not be asked to decide anything about users who had (s)WAA turned "on." Once again, "to avoid confusion" (Opp'n at 8), the better approach is for this Court to require Dr. Hoffman to make her rebuttal points without using language that will conflict with the jury instructions.

### 3.    Dr. Hoffman impermissibly offers technical opinions without any technical expertise or analysis.

In a few places in her reports, Dr. Hoffman strays beyond her marketing expertise by offering technical opinions about the data Google collects and how toggling (s)WAA impacts

5

1    Google's data collection. For example, Dr. Hoffman asserts that Google's (s)WAA disclosures are

2    "accurate[]" because these disclosures "explain what WAA does," which is to "save certain

3    activity in a user's account." Hoffman Rep. ¶ 173. Similarly, Dr. Hoffman analyzes Congressional

4    testimony from Google's CEO Sundar Pichai that addressed Google's data-collection practices,

5    and she asserts that Mr. Pichai's testimony was "accurate." *Id*. ¶ 139 tbl. 6; *see also* Mot. at 1, 14

6    (identifying eight paragraphs in Dr. Hoffman's reports that contain such testimony). Dr. Hoffman

7    is not qualified to offer these opinions, including because she conceded that she is a "behavioral

8    scientist"—"not a technical expert," and isn't qualified to describe what happens "under the hood"

9    and where data "is passed and so on." Dkt. 470-5 at 47:23–48:1, 308:2–3.

10    Once again, Google's opposition focuses on portions of her testimony that Plaintiffs are

11    not seeking to exclude. Google claims that Dr. Hoffman is simply "rebutting Mr. Schneier's

12    report" and his opinions about "dark patterns." Opp'n at 9. But Plaintiffs' Motion does not address

13    her dark patterns opinions. In fact, Plaintiffs relied on Dr. Hoffman's dark patterns opinions in

14    their opposition to Google's motion to exclude Prof. Schneier. *See* Dkt. 486 at 24. Schneier's and

15    Hoffman's dueling dark patterns opinions present a classic battle of the experts. Nor are Plaintiffs

16    seeking to exclude Dr. Hoffman's opinions about "user-friendly" design and "progressive

17    disclosures." Opp'n at 9–10. Plaintiffs agree that Dr. Hoffman may opine on those topics. But

18    "user-friendly" does not mean "accurate." Disclosures can be user-friendly but inaccurate, or they

19    can be accurate but not user-friendly. Dr. Hoffman is only qualified to opine on user-friendliness.

20    Google next claims that Dr. Hoffman's opinions are permissible because they implicate

21    "the types of information users expect to receive" in the "context" of "the user's Google Account

22    Settings." *Id*. at 10. This argument (once again) conflates two different concepts—accuracy, on

23    the one hand, and what "users expect," on the other hand. Moreover, this argument contradicts Dr.

24    Hoffman's deposition testimony, where she disclaimed any opinion about how users understand

25    Google's (s)WAA disclosures. Dkt. 470-5 at 305:3–7, 308:10–13.

26    Unable to meaningfully defend Dr. Hoffman's statements about the "accuracy" of

27    Google's disclosures, Google retreats to defending her statements about why the disclosures are

28    "clear." Opp'n at 10. Google claims these statements are permissible insofar as they reflect her

1    view that "Google's disclosures followed hallmarks of good [user interface] design." *Id*. at 10. But

2    that is not what she said in her reports. Rather, Dr. Hoffman included assertions about "the purpose

3    and benefits" of the (s)WAA toggle, the "design[]" of the (s)WAA toggle, and whether data is

4    "saved to your account" when (s)WAA is off.[3] These assertions are technical issues that she is not

5    qualified to address.

6           Nor should Dr. Hoffman be allowed to opine on the accuracy of CEO Sundar Pichai's

7    Congressional testimony about the (s)WAA toggle. Tacitly conceding that Dr. Hoffman is

8    unqualified to offer this opinion, Google's Opposition tries to rewrite both Mr. Pichai's testimony

9    and Dr. Hoffman's analysis of that testimony. According to Google, Dr. Hoffman's opinions "do

10   not address technical issues about user privacy controls, she merely states that [such controls]

11   exist." Opp'n at 11. But Dr. Hoffman (and Mr. Pichai) did not merely state that privacy controls

12   "exist." Rather, Mr. Pichai purported to tell Congress what these controls *do*, testifying: "We give

13   clear toggles, by category, where they [i.e., users] can decide ***whether that information is collected***

14   [and] stored." Schneier Rep. (Dkt. 314-6) ¶ 254 (emphasis added). Dr. Hoffman then opined that

15   Mr. Pichai's testimony was "accurate"—meaning that Google does in fact give users controls to

16   decide "whether [] information is collected." Hoffman Rep. ¶ 139 tbl. 6; *see also* Hoffman Supp.

17   Rep. ¶ 47 n.123. Here again, that is a technical issue on which she is not qualified to opine.

18          Finally, Google's reliance on *Surgical Instrument Serv. Co., Inc. v. Intuitive Surgical, Inc.*,

19   2024 WL 1975456, at *2 (N.D. Cal. Mar. 31, 2024) is misplaced. Opp'n at 11. Google relies on

20   this case to argue that "application of extensive experience is a 'method' that can reliably support

21   expert testimony." *Id.* Plaintiffs agree. The problem is that Dr. Hoffman has no experience

22   assessing complex data systems. *See* Dkt. 470-5 at 47:23–48:1, 308:2–3; Hoffman Rep. Appendix

23   A. Her "decades of experience in online consumer behavior" (Opp'n at 11) does not qualify her to

24   assess the technical accuracy of Google's (s)WAA representations.

25   ───────────────

26   [3] *See* Hoffman Rep. ¶ 108 (the disclosures are "clear and unambiguous" because "the "WAA and sWAA settings were designed exclusively to manage the saving of activity in a user's Google Account"); *id.* ¶ 72 ("Google makes it clear that when WAA is switched off, 'new activity won't

27   be saved to your account.'"); Hoffman Supp. ¶ 34 (the disclosures "clearly communicate that all settings within the page apply only to controlling data saved in their Google Account."); *id.* ¶ 35

28   (the disclosures "clearly describe[] the purpose and benefits associated with the WAA toggle.").

**B.    Portions of Dr. Black's opinions and testimony should be excluded.**

**1.    The Court should exclude Dr. Black's opinions and testimony that "Google Account" is defined in Google's disclosures.**

Dr. Black proffers opinions in his report that directly contradict this Court's prior order. Dr. Black opines that Google's "current privacy policy defines 'Google Account,'" and from that disclosure he concludes that Plaintiffs' expert Jonathan Hochman "redefines the term 'Google Account' to be broader than the term as defined by Google."[4] Black Rep. ¶ 112 & n.137. The Court examined these exact same disclosures and found that "[n]either the WAA Materials nor the Privacy and Terms hub defines 'Google Account.'" Dkt. 109 at 4, 8–9. Dr. Black should not be permitted to confuse the jury by re-opening an issue that this Court already decided.

"Under the law of the case doctrine, a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case." *Courthouse News Servs. v. Planet*, 947 F.3d 581, 591 (9th Cir. 2020). "The prior decision should be followed unless: (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced [subsequently]." *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997), *overruled on other grounds*, *Gonzalez v. Arizona*, 677 F.3d 383, 390 & n.4 (9th Cir. 2012).

This Court has already decided this issue, which makes it the law of the case. At the pleading stage, the Court found that Google did not define the term "Google Account" in these disclosures and denied Google's motion to dismiss in part on that basis. *See* Dkt. 109 at 4, 8–9. Discovery further confirmed the Court's finding. During her deposition, Google's marketing expert Dr. Hoffman could not point to any Google disclosure that defined a "Google Account." *See* Dkt. 470-5 at 272:19–25 ("I cannot point you to a particular page" of Google's disclosures which "defines the term 'Google Account'"). Google does not argue that the Court's decision was clearly erroneous nor point to any new controlling authority or countervailing evidence that would merit reconsideration. Indeed, the same evidence that underpinned this issue at the pleading stage underpins it now: Google's own disclosures do not define "Google Account."

---

[4] Dr. Black's opinions here go far beyond simply "identifying and quoting existing text", and Plaintiffs' argument has nothing to do with whether Google's disclosures are "sufficiently prominent or clear" (they are not). Opp'n at 12.

1    Google contends that issues decided at the dismissal stage may not constitute law of the

2    case because such rulings are made under a "plaintiff-favoring standard" and likely "on an

3    incomplete record."[5] Opp'n at 12. This is not the law. "If no factual issues have changed between

4    the initial decision and the instant motion, 'the law of the case is still applicable.'" *Hunyh v.*

5    *Harasz*, 2016 WL 2757219, at *21 (N.D. Cal. May 12, 2016) (quoting *Bollinger v. Oregon*, 172

6    Fed. App'x 770, 771 (9th Cir. 2006)). Here, there is no such change. The disclosures analyzed in

7    the Court's dismissal order are the exact same disclosures that Dr. Black discusses in his report.

8    Courts routinely apply the law of the case to such rulings made at the dismissal stage. *See, e.g.*,

9    *Am. Auto Ins. Co. v. Hawaii Nut & Bolt, Inc.*, 2017 WL 5892255, at *6 (D. Haw. Sept. 27, 2017)

10   (applying law of the case to contract interpretation issue resolved at dismissal, and rejecting

11   argument that "the law of the case should not be applied to the prior Order because it addressed a

12   motion to dismiss"); *see also Plantronics, Inc. v. Am. Home Assurance Co.,* 2014 WL 2452577, at

13   *3 & n.22 (N.D. Cal. May 30, 2014) (that an issue "was addressed during a motion to dismiss does

14   not preclude application of the law of the case").

15                    **2.    Dr. Black improperly offers opinions on "interception," which are**
                             **irrelevant and beyond the scope of rebuttal.**
16

17          Dr. Black's opinion that Google does not "intercept" (s)WAA-off communications is

18   irrelevant. *See* Black Rep. § IV(A)(1). Google does not identify any claim or defense to be

     presented at trial that requires the jury to determine whether communications were "intercepted."

19
            Dr. Black's "no interception" opinion should also be excluded because it is far outside the
20
     scope of the Hochman Report, Dkt. 314-5. Rebuttal testimony must "solely contradict or rebut
21
     evidence on the same subject matter by another [expert]." Fed. R. Civ. P. 26(a)(2)(D)(ii). "The test
22

23   _____

24   [5] The cases Google cites for this proposition are either substantively or procedurally inapplicable.
     *See* Opp'n at 11–12. In *Hydrick v. Hunter*, the court declined to apply the law of the case doctrine
25   to a "one-line" motion to dismiss order because the Ninth Circuit could not determine that "the
     district court decided any issue by implication." 500 F.3d 978, 986 (9th Cir. 2007). In *Cedar Park*
26   *Assembly of God of Kirkland, Washington v. Kreidler*, the court found that a ruling on standing at
     dismissal does not bind a court at summary judgment because "[o]ver the lifetime of a case, the
27   task of establishing constitutional standing evolves."130 F.4th 757, 763 (9th Cir. 2025). *University*
     *of Texas v. Camensich* does not discuss the law of the case doctrine at all, and the portion Google
28   cites stands only for the unremarkable position that factual findings and legal conclusions in
     granting a preliminary injunction are not binding at trial. 451 U.S. 390, 395 (1981).

1   of whether an expert's opinion constitutes rebuttal or a new opinion … is … whether a rebuttal

2   attempts to put forward new theories outside the scope of the report it claims to rebut." *Huawei*

3   *Techs., Co., v. Samsung Elecs. Co., Ltd.*, 340 F. Supp. 3d 934, 995 (N.D. Cal. 2018). Here,

4   Plaintiffs' expert Jonathan Hochman did not opine on whether Google "intercepts" (s)WAA-off

5   data. Google chose not to present an affirmative expert report on this issue and having failed to do

6   so Google may not shoehorn this opinion into a rebuttal report, thereby depriving Plaintiffs of an

7   opportunity to provide their own expert testimony in response. *See Vu v. McNeill-PPC, Inc*., 2010

8   WL 2179882, at *2 (C.D. Cal. May 7, 2010) (excluding out-of-scope rebuttal expert opinions:

9   "This is a hornbook example of sandbagging, a litigation tactic this Court will not tolerate").

10      Google argues that the "subject matter here is the technical mechanism of data collection,"

11   and that Dr. Black's opinions about whether Google intercepted (s)WAA-off communications fits

12   snuggly within that topic. Opp'n at 15. But the test for what constitutes a proper rebuttal opinion

13   isn't whether the rebuttal happens to fall within the same "subject matter" of the case. Google cites

14   no cases saying this is the test. *Id*. at 14–16. Rule 26 provides that a rebuttal report must be "on

15   the same subject matter" of the ***expert report*** it purports to rebut, not the same "subject matter" of

16   the ***complaint***. Fed. R. Civ. P. 26(a)(2)(D)(ii). Under that test, an expert opinion exceeds the scope

17   of proper rebuttal if the expert "attempts to put forward ***new theories*** outside the scope of the report

18   it claims to rebut." *Huawei*, 340 F. Supp. 3d at 995. "Rebuttal testimony cannot be used to advance

19   new arguments or new evidence" and this section of the Black Report does both. *Id*. at 995; *see*

20   *also* Black Rep. ¶¶ 50–54. "If the phrase 'same subject matter' is read broadly to encompass any

21   possible topic that relates to the subject matter at issue, it will blur the distinction between

22   'affirmative expert' and 'rebuttal expert.' More importantly, such broad reading of Rule

23   26(a)(2)(C)(ii) will render the scope of the subject matter limitless and will lead to unjust results.

24   . . . " *Vu*, 2010 WL 2179882, at *2. "[P]ermitting Defendants to backdoor such expert testimony

25   under the guise of 'rebuttal' testimony would render Rule 26's limits generally meaningless, and

26   permit Defendants to engage in substantial gamesmanship—something Rule 26 was designed to

27   combat, not foster." *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 3509384, at *4 (N.D. Cal. June

28   3, 2015) (excluding rebuttal opinions that were outside the scope of the initial report but were

10

1    expected to contradict the other party's case-in-chief based on the complaint's allegations).

2        **C.      Portions of Dr. Knittel's opinions and testimony should be excluded.**

3            **1.      Dr. Knittel's opinion that users might have given permission had
                        Google asked is impermissible because it is irrelevant and speculative.**

4        Dr. Knittel should be precluded from opining on the hypothetical profits Google might

5    have earned had it sought and obtained class members' permission to collect (s)WAA-off app

6    activity data. Knittel Rep. ¶¶ 70–78. These opinions should be excluded for two reasons: (1) they

7    rely on an irrelevant but-for world in which Google still collects (s)WAA-off app activity, and

8    (2) these opinions invite the jury to speculate about how class members' behavior—and Google's

9    resulting profits—might have changed had Google disclosed its illegal data collection practices.

10       The appropriate but-for world to evaluate disgorgement is one where Google keeps its

11   promise and does not collect data from (s)WAA-off users. There is no legal basis for Dr. Knittel

12   to argue that Google can retain its unlawfully earned profits simply because Google might have

13   earned those profits had it obtained class members' permission to collect the data. A thief cannot

14   escape liability by arguing that, if he had just asked nicely, his victim might have willingly given

15   away the stolen goods. The Motion relied on this analogy (at 20), and Google ignores it.

16       The law also supports Plaintiffs. "[A] finding that the defendant would have realized the

17   profit in any event does not compel the conclusion that the defendant, under the circumstances,

18   has not been unjustly enriched." Restatement (Third) of Restitution § 51 cmt. f. If wrongdoers

19   could evade disgorgement by inventing another way they could have earned the profits, defendants

20   "would rarely be discouraged" from violating the law, and "the purpose of the disgorgement

21   remedy would be eviscerated." *Oracle Am., v. Google Inc.*, 2016 WL 1743154, at *4 (N.D. Cal.

22   May 2, 2016) (excluding opinion regarding profits that defendant might have earned if it had acted

23   lawfully); *see also Meister v. Mensinger*, 230 Cal. App. 4th 381, 399 (2014) (one purpose of

24   disgorgement is to "deter[] the perpetrator from committing the same unlawful actions").

25       Google's efforts to distinguish *ICTSI* fall flat. *See ICTSI Oregon, Inc. v. Int'l Longshore &*

26   *Warehouse Union*, 2022 WL 16924139, at *8 (D. Or. Nov. 14, 2022); Opp'n at 18. *ICTSI* teaches

27   that "the but-for world differs from what actually happened only with respect to the harmful act"—

28

                                              11

1   here, Google's unauthorized collection and use of Plaintiffs' data. 2022 WL 16924139, at *8.

2   Google says *ICTSI* is inapposite because it addressed compensatory damages, but so what? The

3   *ICTSI* court still had to identify the "but-for-world" in which "there had been no unlawful []

4   activity," and the court defined that world as "the same" as the real world except for "the alleged

5   conduct." *Id*. at **2–3. In this case, the "alleged conduct" is Google's collection and use of

6   (s)WAA-off app activity data. Dr. Knittel, by contrast, plans to ask the jury to consider Google's

7   profits in a but-for world where Google still collects and uses the data. That is impermissible.

8       Google relies on *In re Facebook, Inc. Internet Tracking Litigation*, but that case supports

9   Plaintiffs. 956 F.3d 589, 601 (9th Cir. 2020); Opp'n at 16. The plaintiffs in that case alleged that

10  Facebook collected their browsing data without permission, and the Ninth Circuit held that "[t]his

11  unauthorized use of their information for profit would entitle Plaintiffs to profits unjustly earned,"

12  including profits from Facebook's practice of "selling [plaintiffs' data] to advertisers for a profit."

13  *Id.* The wrong in this case is also the "unauthorized use of [Plaintiffs'] information," and Plaintiffs

14  are likewise entitled to "profits unjustly earned" from Google's monetization of their (s)WAA-off

15  data, regardless of whether Google could have secured Plaintiffs permission. *Id.*

16      In any event, even if Google were correct that "the appropriate counterfactual" for unjust

17  enrichment is "a world where Google adequately" discloses its data collection practices, Dr.

18  Knittel's opinions should be excluded as speculative. Opp'n at 17. Google's position is that experts

19  should "measure what would happen with users' behavior if Google provided adequate

20  disclosure." *Id*. Yet Dr. Knittel did not even attempt that measurement.

21      That failure is fatal because, as Google concedes, Google "bears the burden for deductions

22  from gross unjust enrichment." *Id*. Once Plaintiffs' expert quantified the profits that Google earned

23  from exploiting (s)WAA-off data, the burden shifted to Google to substantiate any deductions—

24  including deductions to account for Google's argument that some (s)WAA-off users would not

25  have changed their behavior had Google properly disclosed its practices.

26      To undo the knot that it tied for itself, Google grasps for its favorite crutch—that Dr. Knittel

27  is just a "rebuttal" expert whose job was to poke holes, not do "Plaintiffs' work for them." Opp'n

28  at 18. But that crutch cannot save Google from stumbling on this issue because Google bears the

12

1  burden to quantify any deductions (as Google concedes). So instead of "point[ing] out various

2  ways" in which Plaintiffs' expert could have chipped away at his own damages model (Opp'n at

3  18), Dr. Knittel should have done that math himself.

4     Google contends that it has carried its burden because Dr. Knittel identified "record

5  evidence" that supposedly supports his opinion. *Id*. at 19. That contention fails, first and foremost,

6  because Dr. Knittel doesn't even try to explain how this "record evidence" can be used to *quantify*

7  any deduction. Moreover, the "record evidence" Google identifies does not support *any* deduction.

8  The "opt-in rates" for (s)WAA cannot help Dr. Knittel because this case is about users who opted

9  out of (s)WAA—i.e., by keeping (s)WAA "off." *Id*. Dr. Knittel's reliance on Named Plaintiffs'

10 testimony is similarly misguided. *See id.* (relying on Named Plaintiffs' testimony to argue that

11 "learning of the alleged misconduct did not cause them to change their behavior"). As the Court

12 found in its certification order, the Named Plaintiffs continued using apps to investigate their

13 claims and preserve standing to pursue injunctive relief. Dkt. 352 at 12–13. The Motion cited this

14 portion of the class certification order, and yet Google's opposition ignores it.

15    Finally, *Ries v. Arizona Beverages USA LLC* is inapposite. 287 F.R.D. 523 (N.D. Cal.

16 2012) (Seeborg, J.). The portion of *Ries* which Google cites addressed the plaintiffs' request for

17 restitution of money they paid to the defendant, not disgorgement of the defendant's profits. Opp'n

18 at 19. The *Ries* plaintiffs "failed to meet [their] burden" to account for "the difference between the

19 value of an AriZona Iced Tea billed as all-natural and the value of a comparable beverage not

20 marketed or sold at a premium due to such claims." 287 F.R.D. at 532. By contrast, for

21 disgorgement, the defendant bears the burden to quantify appropriate deductions. *See Meister*, 230

22 Cal. App. 4th at 399 (noting that, for disgorgement, the "residual risk of uncertainty in calculating

23 net profit is assigned to the wrongdoer"). Google's reliance on *Ries* conflates the restitutionary

24 damages at issue in that case with the disgorgement remedy at issue here.

25    **2.    Dr. Knittel's opinion that Google might have monetized (s)WAA-off advertising without (s)WAA-off data is impermissibly speculative.**

26    The Court should also exclude as speculative Dr. Knittel's opinion that Google might have

27 generated advertising revenues from (s)WAA-off users even if Google kept its promise not to

28

13

1    collect (s)WAA-off data. Knittel Rep. ¶¶ 79–85. By way of background, Plaintiffs' damages expert

2    calculated Google's unjust enrichment from using (s)WAA-off data for all advertising purposes,

3    including to serve an ad (i.e., displaying the ad to a user) as well as tracking conversions (e.g.,

4    connecting an advertisement with a subsequent action by the user, like a purchase). Lasinski Rep.

5    ¶ 113 (Dkt. 364-23). As part of his job to identify potential reductions, Dr. Knittel argues that

6    Google "would have generated" some unstated portion of the at-issue revenues even if Google had

7    not collected the at-issue data, and he posits some alternative ways in which Google might have

8    done so. *Id.* ¶ 79. But the alternatives that he identifies relate only to the conversion tracking piece

9    of the pie. He does not even try to explain how Google could have earned money from *serving*

10   advertisements to (s)WAA-off users without first collecting data from those (s)WAA-off users.

11       Nor does Google's Opposition offer any alternative mechanism. Instead, Google states that

12   "it is necessary to exchange data with a device to serve an ad to it," Opp'n at 20, meaning that,

13   after years of litigation, Google still cannot identify any way to serve and monetize an ad to a

14   (s)WAA-off user without first collecting data that from that user. Backed into a corner, Google

15   resorts to belittling Plaintiffs' theory of liability as "facially absurd' and "too-cute-by-half." *Id.*

16   But that spin does not relieve Dr. Knittel of his burden to quantity deductions from Plaintiffs'

17   damages model—a burden which Google acknowledges. *See id.* at 17.

18       Google also struggles to address Dr. Knittel's deposition testimony that, at the end of the

19   day, all he can do is "***imagine Google thinking of a way"*** to serve and monetize an ad without

20   first needing to collect data from the user to whom the ad is being served. Dkt. 470-6 at 185:18–

21   24. Google claims that Plaintiffs are cherry-picking this testimony and ignoring the "robust

22   economic reasoning[,] concrete market evidence[,] [and] available technological avenues" that Dr.

23   Knittel relied upon. Opp'n at 21–22. But the only examples of "concrete" evidence or "robust"

24   reasoning that Google cites are irrelevant because these examples relate to conversion tracking

25   revenues, not revenues from serving ads. For example, Google on page 21 of its opposition

26   provides a list of "several concrete market realities" that (purportedly) show how "alternative

27   monetization was likely." But each item on the list relates to conversion tracking, not ad revenue.

28   *See id.* at 21 (listing evidence relating to "conversion" and "measurement" and omitting any

14

1    evidence relating to merely serving ads). Whether Google could generate conversion tracking

2    revenues for (s)WAA-off users without first collecting their data is a different question from

3    whether Google could serve ads to (s)WAA-off users without first collecting their data.

4          Google's reliance on its technical expert (John Black) is misplaced for the same reason. *Id*.

5    at 22. While Dr. Black did try to identify alternative ways for Google to generate revenue, his

6    alternatives also addressed conversion tracking revenues, not revenues attributable to serving ads.

7    *See* Black Rep. ¶ 208 (discussing "alternative" ways to "measure conversions"). Google's

8    Opposition misrepresents his report. *See* Opp'n at 21 (claiming, incorrectly, that Dr. Black offers

9    alternative options for Google to "continue to serve ads *and* measure conversions" (emphasis

10   added)). Even the paragraphs from Dr. Black's report which Google cites prove that Dr. Black is

11   exclusively focused on conversion-tracking alternatives. *See id.* at 22 (citing portions of Dr.

12   Black's report that address "non-Google *conversion* measurement solutions," "measur[ing]

13   *conversions* through modeling," and the "impacts of Apple's SKAdNetwork," which Dr. Black

14   describes as "one alternative to the method of *conversion* measurement" (emphases added)); *see*

15   *also* Black Rep. ¶ 208.

16         As a last resort, Google argues that since Dr. Knittel is a "rebuttal" expert, he was not

17   obligated to "offer a measurement" of how much money Google could have earned without

18   collecting user data. Opp'n at 21. This argument makes no sense given Google's prior (and correct)

19   concession that "the defendant bears the burden for deductions from gross unjust enrichment." *Id*.

20   at 17. Here, Plaintiffs' expert quantified the money that Google made from serving ads to (s)WAA-

21   off users, and it was Google's job to quantify what portion (if any) of that ad-related revenue

22   Google could have obtained without collecting users' data. Because Dr. Knittel did not even try to

23   do that work, the Court should preclude him from inviting the jury to speculate about some

24   unquantified deduction.

25   **III.    CONCLUSION**

26         The Court should exclude the inadmissible expert testimony described in the Motion.

27   Dated: May 1, 2025                                    Respectfully submitted,

28                                                        By:  */s/ Mark Mao*

15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (admitted *pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

James Lee (admitted *pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (admitted *pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Alison L. Anderson, CA Bar No. 275334
alanderson@bsfllp.com
M. Logan Wright, CA Bar No. 349004
mwright@bsfllp.com
BOIES SCHILLER FLEXNER LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (813) 482-4814

Bill Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley
afrawley@susmangodfrey.com
Ryan Sila
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

New York, NY  10001
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

REPLY ISO MOTION TO EXCLUDE IN PART GOOGLE'S EXPERTS
CASE NO. 3:20-CV-04688-RS