UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>GOOGLE LLC,<br><br>  Defendant. | Case No. 20-cv-04688-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PARTIES' DAUBERT MOTIONS** |

## I. INTRODUCTION

In this class action litigation over data privacy, Plaintiffs and Defendant Google LLC move under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) to exclude various aspects of expert testimony each side has put forth ahead of trial. For the reasons explained below, the motions are granted in part and denied in part.

## II. BACKGROUND

The facts of this case have been discussed at length in prior orders in this litigation. *See, e.g.*, *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2025 WL 50425, at *1 (N.D. Cal. Jan. 7, 2025). In short, Plaintiffs are a group of mobile device users who had certain privacy-related settings switched off in their Google accounts. In the operative complaint, they aver that Google contravened its user-facing privacy representations regarding its Web App and Activity ("WAA") and supplemental Web App and Activity ("(s)WAA") settings. Active claims include invasion of privacy under the California Constitution, common law intrusion upon seclusion, and violation of the Comprehensive Computer Data Access and Fraud Act ("CDAFA").

Presently at issue are the parties' competing *Daubert* motions. Google seeks to strike most of the expert testimony presented by Plaintiff's expert Bruce Schneier. Plaintiffs seek to strike portions of Google's experts Donna Hoffman, John Black, and Christopher Knittel.

**A. Bruce Schneier**

Plaintiffs' expert Bruce Schneier is an international security technologist with a master's degree in computer science, a bachelor's degree in physics, and a current job title of Chief of Security Architecture at Inrupt, Inc. He has authored approximately 12 books on topics like cryptography, computer security, general security technology, trust, surveillance, and privacy, as well as over 100 academic publications on many of those same topics. Schneier currently lectures at the Harvard Kennedy School on cybersecurity policy.

In his expert report, Schneier presents opinions on 11 topics. Topic 1 concerns his opinions on general principles of privacy: its meaning, its importance to humanity and political liberty and relationships, and the challenges that arise when "businesses disregard privacy." Topic 2 involves his opinions on data privacy amidst the rise of the internet and what he describes as "widespread corporate surveillance." Topic 3 concerns user data: what it is, how it is generated by internet activity, and what companies can and do use it to accomplish. Topic 4 specifically examines the value of user data. Topic 5 describes laws that restrict how companies can collect online data and Schneier's views on the privacy risks that data collection poses. Topic 6 presents Schneier's opinion that the general public's intuitions about privacy do not suit the internet, as well as views about "dark patterns" that the industry can use to nudge users to make particular choices.

In addition to the aforementioned topics, which Schneier groups under a general heading of "Data and Privacy Topics," Schneier presents opinions on "Google-Specific Topics," including his opinions on its "surveillance-dependent business model" (Topic 7), the "user risks caused by Google's data collection" (Topic 8), and "user control over Google tracking and collecting" (Topic 9). He then opines on WAA and User Control (Topic 10) and what he perceives to be "Google's Use of Dark Patterns" (Topic 11). In a supplemental report filed after the granting of class

certification, Schneier updated various of these opinions.

### B. Donna Hoffman

Google's expert Donna Hoffman is a marketing professor at The George Washington University School of Business who co-founded and co-directs the Center for the Connected Consumer. Her research focuses on online consumer experiences and digital commerce strategy, and she has authored 87 papers, including many published in leading academic journals. Hoffman has a Ph.D. in quantitative psychology with a minor in marketing, a master's degree in quantitative psychology, and a bachelor's degree in psychology. Google engaged Hoffman to respond to Schneier 's report, specifically his claims that Google's practices and products exemplify "dark patterns."

### C. John Black

Google's expert John Black is a computer science professor at the University of Colorado, Boulder. He has a Ph.D., master's degree, and bachelor's degree in computer science and has taught more than 60 classes in computer science. Google retained Black to review the expert report of Jonathan Hochman, who opines on technology for Plaintiffs' case-in-chief.

### D. Christopher Knittel

Google's expert Christopher Knittel is a professor of energy economics at the Massachusetts Institute of Technology. He has a Ph.D., master's degree, and bachelor's degree in economics. His research focuses on how consumers, businesses, and policy makers interact in the marketplace, a subject known as "industrial organization". Google hired Knittel to review the report of Plaintiffs' damages expert Michael Lasinski.

## III. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence requires that a witness proffered as an expert by a party be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Even if a witness is qualified as an expert in a particular field, any scientific, technical, or specialized testimony is admissible only if it (a) "will help the trier of fact to understand the evidence or to determine a fact in issue," (b) "is based upon sufficient facts or data," (c) "is the

product of reliable principles and methods," and (d) "the expert has reliably applied the principles and methods to the facts of the case." *Id.*

Irrelevant or unreliable testimony is prohibited under Rule 702. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Expert opinions are relevant if the knowledge underlying them has a "valid connection to the pertinent inquiry." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (internal quotation marks and alteration omitted). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 590. Expert opinion testimony is reliable if such knowledge has a "basis in the knowledge and experience of [the relevant] discipline." *Id.* at 592. Under *Daubert*, courts should consider the following factors when evaluating whether an expert's proposed testimony is reliable: (1) "whether a theory or technique ... can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication[,]" (3) the known or potential error rate of the particular scientific theory or technique, and (4) the degree to which the scientific technique or theory is accepted in a relevant scientific community. *Id.* at 593–94. This list is not exhaustive, however, and the standard is flexible. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999). The *Daubert* inquiry "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Id.* at 141.

The court's task is not to "decid[e] whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013). Courts may not exclude testimony simply because it is impeachable. *Id.* at 969. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The focus of the inquiry is thus on the principles and methodology employed, not the conclusions reached by the expert. *See id.* at 595. Ultimately, the purpose of the assessment is to exclude speculative or unreliable testimony to ensure accurate, unbiased decision-making by the trier of fact.

# IV. DISCUSSION

**A. Schneier**

Defendant targets Schneier's report on several particularized fronts, succeeding in some areas and failing to persuade in others.

*1. Contextual Opinions on Data and Privacy*

Google first contends that Schneier's opinions about data and privacy trends are so general and abstract that it would be more prejudicial than probative to permit them in the case. Yet, as another court noted in similar litigation involving this same expert and Defendant, Schneier's largely general opinions about data and privacy "provide background and context information about what privacy is, the importance of privacy, the different types of data, pervasive data collection and tracking of users as a function of the Internet, and the impact and negative consequences of the misuse of one's data." *Brown v. Google, LLC*, No. 20-cv-3664-YGR, 2022 WL 17961497, at *10 (N.D. Cal. Dec. 12, 2022). "Such background information is permitted under Rule 702 and Daubert." *Id.* For the same reasons, Google's motion to exclude these aspects of Schneier's testimony is denied.

*2. Opinions About Intent*

No expert may testify as to Google's intent in this case; that is for a jury to decide. *See id.* at *12 (excluding certain of Schneier's opinions about Google's intent (citing *United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015)); *see also Snyder v. Bank of Am., N.A.*, No. 15-cv-4228-KAW, 2020 WL 6462400, at *2 (N.D. Cal. Nov. 3, 2020) (excluding expert opinion regarding "intent, motive, or state of mind"). According to Google, Schneier runs afoul of this well-recognized rule in several aspects of his report: some relating to his dark pattern opinions, described *infra*, and some regarding Google's "overall" intent. *See, e.g.*, Schneier Rep., Dkt. No. 474-4 at ¶¶ 2, 3, 61, 178, 262, 178–208, 249–267, 400.

On close inspection, several of this latter batch of challenged opinions impermissibly opine on Google's intent or state of mind. At paragraph 3 of his report, Schneier states his belief that Google "is more concerned with managing user impressions than actually respecting user

privacy." He later claims "Google's privacy efforts are primarily directed at building user trust in Google rather than delivering real protection." *Id.* ¶¶ 263. These opinions cross the line and are excluded.

The other challenged opinions, however, rest on well-explained conclusions that Schneier drew based on the discovery and Google's documents in the case. "The Court finds that he has the necessary skill and expertise to provide general opinions about Google's services so long as those opinions are tied to documents and/or discovery relevant to this case." *Brown*, 2022 WL 17961497, at *13.

*3. Dark Pattern Opinions*

Google presents two objections to Schneier's dark pattern opinions, the first of which overlaps with its broader complaints regarding his opining about its intent. Because "dark patterns" are, by definition, deceitful, Google says Schneier shouldn't be allowed to testify that he thinks its disclosures exhibited them—they frame him as essentially saying, "yes, Google tried to trick the users." Plaintiffs respond that Schneier is just identifying the symptoms of problematic behavior and connecting them to the facts of the case while leaving it to the jury to draw any ultimate conclusion about Google's intent—not unlike other experts in cases involving corporate wrongdoing. *See In re Twitter, Inc. Sec. Litig.*, No. 16-cv-5314-JST, 2020 WL 9073168, at *6 (N.D. Cal. Apr. 20, 2020) (forbidding opinion on "Why Twitter executives did or did not sell Twitter stock" but permitting testimony about "Behavior that may be indicative of informed trading."). In this regard, Plaintiffs have the better argument. Schneier may testify about dark patterns and how disclosures might indicate them; Google may rebut that testimony with its own expert opinions. A jury will then weigh the competing testimony. That said, to the extent Schneier intends to opine that "Google Uses Dark Patterns to Manipulate User Behavior to Its Own Benefit," *see* Schneier Rep., ¶ 398–99, such testimony is excluded from trial—it crosses the line from leaving an inference for the jury to draw into drawing that inference.

Google's other complaint about Schneier's dark patterns-related opinions is that they rest on allegedly unsound methodology. This argument is unpersuasive. Google's own expert has

used the term in public discourse, and Google's own employees used the term in their internal messaging. California law itself refers to "dark patterns". *See, e.g.*, Cal. Civ. Code § 1798.140(h) (providing that an "Agreement obtained through use of dark patterns does not constitute consent"). Three taxonomies of dark patterns are cited in Schneier's report, from reputable sources that include the FTC and the European Union. Schneier Rep. § 11. Moreover, Google's own expert engages in analysis of dark patterns in her rebuttal, as discussed and permitted *infra*. This case will be a battle of the experts, and dark patterns are but one theater of war.

*4. Consumer Expectation Opinions*

Google also objects to Schneier's opinions about consumer expectations given that he is not expert in that subject, observing that the *Brown* court so found. For the same reasons explained in that order, Schneier's opinions in this case likewise stray beyond his expertise in several respects. In Paragraph 236 of his report, for example, he expressly opines on what "users without a technical education can[] be expected to recognize" about Google's disclosures. He also opines that "users who have turned their WAA or (s)WAA controls off have specifically signaled an expectation that their app activity data and the associated content not to be [sic] collected and saved by Google." Schneier Rep., ¶ 89. *See also* ¶ 68 ("Now more than ever, people rightfully seek to use the Internet without being tracked"); ¶ 142–47 (opinions headlined "People's Privacy Intuition Is Not Suited for the Internet"); ¶ 83 ("Growing awareness of the amount of data produced by users and collected by companies such as Google explains why users seek refuge in the promise and expectation of 'privacy control'"). These opinions about "the purported understandings and expectations of consumers specifically," *Brown*, 2022 WL 17961497, at *11, are beyond Schneier's expertise in privacy policy. Moreover, Plaintiffs have not established a methodology (let alone a reliable one) that enabled Schneier to arrive at such opinions. Plaintiffs respond that Schneier disclaims any opinions about consumer expectations in his deposition and assure the court that he will not offer opinions about how class members understand or expect the (s)WAA settings to function. Notwithstanding his assurances, the above-cited testimony about consumer expectations is excluded from trial.

**B. Hoffman**

*1. Opinions about Intent*

Plaintiffs argue that Hoffman offers impermissible opinions on intent, just as Google argued with respect to Schneier as discussed *supra*. Google agrees that neither party should be permitted to put on expert testimony about the motives, intent, or state of mind of anyone at trial.

Several opinions in Hoffman's reports cross the line that Schneier's report crossed, into the territory of impermissible opinion on a necessary element of the claims. Excluded testimony will include her claim that "Google was not trying to deceive or manipulate its users," Hoffman Rep., Dkt. No. 473-2 ¶ 153 tbl. 8; that Google's "user data collection is motivated by the desire to improve the user's experience," *id.* ¶ 32; that there is "clear intent on Google's part to provide users with choices when adjusting privacy settings," *id.* ¶ 132; and that (s)WAA disclosures "are not intended to communicate that WAA, whether on or off, controls third-party apps' use of ads-related analytics," *id.* ¶ 116.

The other so-called intent opinions, however, hardly get at the particular intent question that the jury will consider (*i.e.*, whether Google's alleged misconduct was knowing and intentional). *See, e.g.*, ¶ 66 ("Google also constantly strives for improvement . . . and seeks to create the best possible user experience across all its diverse user segments.") Plaintiffs' motion is therefore granted in part and denied in part.

*2. Opinions On the Law*

"[I]nstructing the jury as to the applicable law is the distinct and exclusive province of the court." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008). Plaintiffs contend that Hoffman impermissibly opines on the law when she claims that "there is no such thing as a 'representative' user with respect to privacy," Hoffman Rep. ¶ 43, and when she opines that Plaintiffs' interpretation of Google's (s)WAA disclosures "cannot be generalized across all of Google's users." *Id.* ¶ 122 tbl. 4. To be sure, one of the questions the jury may be instructed to consider is how a reasonable user would interpret the disclosures at issue. Yet, here, Hoffman's testimony is a rebuttal to Schneier's testimony: whereas he contends that "lack of

transparency makes it hard for people to make complex privacy decisions," Hoffman Rep. ¶ 40 (discussing Schneier Rep., ¶¶ 143–46), Hoffman opines that Schneier's opinion "ignores that users are highly heterogeneous with varying needs and preferences" and that "both the context and individual preferences affect the level of a perceived privacy threat by users." Hoffman Rep., ¶¶ 37, 41. As this context demonstrates, Hoffman is not instructing the jury on the meaning of a "reasonable person." That said, out of an abundance of caution and given the overlap between the two concepts, Defendant shall refrain from using the phrase "representative user" in the context of Hoffman's testimony; at its own suggestion, Defendant is ordered to use phrases more akin to "users have varying views about privacy".

The same theme governs as to Plaintiffs' other gripe in this vein, re: Hoffman's opinion that Named Plaintiffs' testimony "cannot be generalized" to the class. The motion is denied inasmuch as Hoffman is responding to Schneier's own testimony. Google, however, must refrain from putting on testimony that conflicts with any jury instruction about class-wide questions.

*3. Technical Opinions*

Plaintiffs' final contention as to Hoffman's opinions is that she allegedly strays from her marketing expertise, opining that certain disclosures are "accurate" or that they "explain what WAA does." Hoffman Rep. ¶ 173; *see also id.* ¶¶ 108 (describing them as "clear and unambiguous" because they "were designed exclusively to manage the saving of activity in a user's Google Account"), Hoffman Supp. ¶ 34 ("users are exposed to additional disclosures which clearly communicate that all settings within the page apply only to controlling data saved in their Google Account."); *id.* ¶ 35 ("The Current WAA Help Page, like the one I examined in 2023, clearly describes the purpose and benefits associated with the WAA toggle.") Plaintiffs also object to her opinion that Google's CEO Sundar Pichai accurately testified to Congress about Google's data collection practices. Hoffman Rep. ¶ 139 tbl. 6.

As to this aspect of her testimony, Plaintiff's motion is denied. Hoffman is not expert on technology or science; she is rebutting Schneier's testimony with her own consumer marketing expertise. If her testimony strays from her expertise, objections will be heard in due course.

### C. Black

#### 1. Opinion on Google Account Definition

A prior order in this case observed that the meaning of the definition of "Google Account" is sufficiently disputed to go to the jury. *Rodriguez*, 2025 WL 50425, at *4. Opining for Google, Black asserts that Google's privacy & terms "key terms" section defines "Google Account," sourcing the assertion to existing text. *See* Black Rep., Dkt. No. 473-4 at ¶ 112.

Plaintiffs complain that this opinion contravenes a prior order, when (drawing all reasonable inferences in their favor) the Court determined that "Google Account" was not sufficiently defined to dismiss the case at the pleadings stage. As Google rightly responds, invocation of the "law-of-the-case" doctrine in this context is misplaced. The issue of how "Google Account" is defined is one for the jury, as the Court held in the summary judgment order that *followed* the motion to dismiss order that Plaintiffs now rely upon. A motion to dismiss ruling comes in the preliminary stages of a case and is therefore "not binding at trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Cedar Park Assembly of God of Kirkland, Wash. v. Kreidler*, 130 F.4th 757, 763 (9th Cir. 2025). That one of Google's other experts could not identify the location of the "Google Account" definition during her deposition—a fact also Plaintiffs highlight—does not move the needle; such information goes to cross-examination and the weight of the evidence.

#### 2. Use of "Interception" Term

Plaintiffs also urge the exclusion of a subsection of Black's report concerning whether Google intercepts sWAA-off communications. Black Rep. ¶¶ 50–54. According to them, this section is not actually rebutting anything in their expert's report, referencing instead portions of the complaint about claims the court has dismissed. Because an "interception" is not a required element of the surviving claims, Plaintiffs argue that the opinion will not help the trier of fact to understand the evidence or determine a fact in issue.

The motion is denied. Black's testimony refutes the central theory of Plaintiff's surviving claims (*i.e.*, CDAFA, common law intrusion upon seclusion, and invasion of privacy), which

involve allegations of Google's scheme to "track and intercept" communications without authorization. *See, e.g.*, Fourth Am. Compl., Dkt. No. 289, at ¶¶ 277, 286, 293. That the statutory claims which require proof of an interception have been dismissed does not make the concept itself irrelevant or prejudicial.

### D. Knittel

#### 1. Opinion re: But-For World

Plaintiffs first attack Knittel's opinions about unjust enrichment, in which his "but-for" world free of the alleged conduct is not that different because class members would have behaved similarly even with adequate disclosure about what the (s)WAA-off switch does. In their view, the but-for world is not one where Google adequately explains what the switch does but rather one where Google does not collect, save, and use (s)WAA-off data in the first place. Google counters that Knittel is merely critiquing that version of the but-for world, as it is presented by Plaintiffs' expert, in ways the court has already permitted over Google's own motion to exclude. *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2024 WL 38302, at *11 (N.D. Cal. Jan. 3, 2024).

Defendants are correct: Knittel is a rebuttal expert whose purpose is to poke holes in Lasinski's testimony—not to put forth an affirmative case as to how much the jury should mitigate damages under a particular theory. It follows that he may opine on any flaws in Lasinski's models so long as he does not argue that, within said model, any particular deduction should be made. That said, and as Google concedes, Defendant bears the burden for deductions from gross unjust enrichment, Opp. Br. at 17. Knittel's report provides no measurement for what would have happened with users' behavior if Google provided adequate disclosures, so it may not be used to argue for a particular damages amount.

#### 2. Opinion re: (s)WAA-Off Advertising

Plaintiffs other complaint about Knittel's opinion is when he suggests that Google might have generated advertising revenues from (S)WAA-off users even if Google kept its promise not to collect (s)WAA-off data. At deposition, he testified that all he can do is "imagine Google thinking of a way" to serve and monetize an ad without first needing to collect data from the user

to whom the ad is served. Dkt. No. 470-6, 285:28-24. This opinion is unduly speculative to go to the jury without any means of measurement—in this instance, measurement of alternative ad service. If Knittel were to argue that Plaintiffs' damages model should be reduced for some reason, he would have needed to provide some means of measuring that deduction. His failure to do so means his opinion in this respect is excluded.

## V. CONCLUSION

For the reasons explained above, Google's motion to exclude certain aspects of Schneier's testimony is granted with respect to ¶¶ 3, 68, 83, 89, 142–47, 236, 263, and 398–99 of his report. The motion is denied in all other respects. Plaintiffs' motion to exclude is granted only with respect to ¶¶ 32, 116, 132, and 153 tbl. 8 of Hoffman's report and with respect to the two challenged opinions by Knittel as explained *supra*. Their motion is otherwise denied.

**IT IS SO ORDERED**.

Dated: June 2, 2025

_____
RICHARD SEEBORG
Chief United States District Judge