**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN: 224018)
　bhur@willkie.com
SIMONA AGNOLUCCI (SBN: 246943)
　sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN: 281668)
　esantacana@willkie.com
ARGEMIRA FLÓREZ (SBN: 331153)
　aflorez@willkie.com
HARRIS MATEEN (SBN: 335593)
　hmateen@willkie.com
ISABELLA MCKINLEY CORBO (SBN: 346226)
　icorbo@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, et al. individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>GOOGLE LLC, *et al.*,<br><br>　　　　　　　Defendant. | Case No. 3:20-CV-04688 RS<br><br>**DEFENDANT GOOGLE LLC'S RESPONSE TO PLAINTIFFS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE EXCLUDING SUNDAR PICHAI FROM TESTIFYING AT TRIAL [507]**<br><br>Time:　　　　　10:00 a.m.<br>Pretrial Conf:　July 23, 2025<br>Courtroom:　　3, 17th Floor, SF<br>Judge:　　　　Hon. Richard Seeborg<br><br>Action filed:　　July 14, 2020<br>Trial:　　　　　August 18, 2025 |

## I. INTRODUCTION

Plaintiffs cannot meet their burden of showing that Judge Tse's order, which considered and rejected the same evidence they regurgitate here, was clearly erroneous or contrary to law. Judge Tse correctly found that Mr. Pichai is *not* a percipient witness and was *not* intimately involved with the Google settings and products at issue, but rather was "removed from the daily subjects of this litigation." ECF No. 498 ("Order") at 2. *Compare with* ECF No. 507 ("Pl. Mot.") at 1. Acknowledging for the first time that this case is about sWAA-off data, not about WAA generally, Plaintiffs now claim that "Mr. Pichai personally directed and supervised purported improvements to the (s)WAA setting." Pl. Mot. at 1; *Compare with* ECF No. 479 ("Pl. Opp.") at 4, 6–9 (consistently claiming Mr. Pichai was involved with *WAA*). Yet **not one** of the "hundreds of pages Plaintiffs dump on the Court's doorstep" has anything to do with Mr. Pichai and sWAA. Order at 2. Plaintiffs know, and have always known, that Mr. Pichai is not relevant to the claims here, which is why they never sought to make him a custodian and never deposed him. Their sudden need for his trial testimony is nothing more than a transparent attempt to achieve perceived settlement leverage on the eve of trial. This Court should therefore deny their Motion.

## II. BACKGROUND

Sundar Pichai has nothing to do with the subject matter of this case—whether and how the sWAA toggle controls Google Analytics for Firebase. *See* ECF No. 291 (holding that "WAA-off data is relevant [only] to the extent Google received it through Firebase or AdMob."); ECF No. 281 (holding Plaintiffs' claims concern the receipt of data through Firebase, not Search). Contrary to Plaintiffs' claim that Mr. Pichai "is a percipient witness who was intimately involved with the Google settings and products at the core of this class action," (Pl. Mot. at 1) Judge Tse correctly held Plaintiffs' actions concede Mr. Pichai lacks relevant testimony. Order at 2. Plaintiffs never bothered to ask for Mr. Pichai's custodial files,[1] never bothered to depose him, and did not mention

---

[1] Plaintiffs claim the Order "incorrectly states that Plaintiffs did not seek Mr. Pichai's documents" because they "piece[d] together Mr. Pichai's role" after their request for his documents was denied. Pl. Mot. at 3 n.1. Plaintiffs misstate the record. The Court denied Plaintiffs' initial request for Mr. Pichai's custodial files (along with their request for custodial files from nine additional custodians) *without prejudice,* ordering Plaintiffs to "evaluate Google's [initial] production … and then meet and confer with Google regarding any further custodians Plaintiffs believe are

1  him in their initial disclosures until two years after the close of discovery. *See id*. Indeed, Mr. Pichai
2  is the only Google employee Plaintiffs intend to call at trial that Plaintiffs have not even attempted
3  to depose. And none of the documents Plaintiffs refer to, all of which were before Judge Tse, relate
4  to sWAA, let alone show Mr. Pichai is a "percipient witness." In its reply, Google explained why
5  these claims about Mr. Pichai's knowledge are either completely irrelevant to this lawsuit,
6  unsupported by the documents they rely on, or both. *See* ECF No. 487 ("Google's Reply") at 2–6.

*First,* far from Mr. Pichai being "in charge of product and engineering for 'Web History,'" the single exhibit Plaintiffs rely on suggests Mr. Pichai asked to change the name of WAA from "Web History" to "Web Activity" (ECF No. 479-4)—a decision that is not at issue in this litigation. This document was about WAA's collection of data on the *web*, not data collected on apps by GA for Firebase. As Plaintiffs acknowledged, WAA's predecessors "Search History" and "Web History" "were Google's 'generalized mechanism for controlling cross-product sharing of activity data across Google services' *on the web*." Pl. Opp. at 4 (citing ECF no, 479-5). And as Google witness David Monsees, Product Manager for WAA, testified, it makes sense for Mr. Pichai to have been involved in discussions about sWAA when he was in charge of Chrome *because that setting "also impacts Chrome."* ECF No. 479-6 at 62:10–63:2 (emphasis added). "Obviously … it's quite outside of Google Analytics for Firebase." *Id*.

*Second,* Plaintiffs continue to rely on exhibits related to the 2014 business decision to acquire Firebase. ECF No. 479-9–13. But this case is not about Firebase generally, a comprehensive app development platform comprised of several subproducts. *See* ECF. No. 479-8. These exhibits do not even discuss GA for Firebase, which is a single sub-product of Firebase that was not launched until later, in 2016.

*Third,* Plaintiffs still do not identify any connection between Mr. Pichai's Congressional testimony—about Google's general privacy practices and storing of location-related data in WAA—and the functioning of GA for Firebase (let alone while sWAA is off). To the contrary, Plaintiffs

---

justified." ECF No. 106 at 2; ECF No. 105 at 1, 3–4. Following Google's initial production, Plaintiffs sought to compel custodial documents from nine of the ten individuals on their original list, "***all but Sundar Pichai***." ECF No. 155 at 1 (emphasis added). *See* ECF No. 471 ("Google's Mot.") at 2.

concede Mr. Pichai's testimony was related to the logging of location in WAA, not GA for Firebase. Pl. Mot. at 1; Pl. Opp. at 6. The testimony Plaintiffs cite is about preloaded apps on an Android phone, not GA for Firebase. ECF No. 479-24 at 173:1–174:3.

*Fourth,* any involvement of Mr. Pichai in discussing how long WAA-on data is kept is completely irrelevant to a case about GA for Firebase's alleged use of sWAA-off data. Contrary to Plaintiffs' contention that Mr. Pichai "direct[ed] changes to (s)WAA data" (Pl. Mot. at 1, citing ECF Nos. 479-28, 479-35, 479-36), these exhibits about location data say *nothing* about sWAA.

*Fifth,* Plaintiffs did not ask any of the fourteen current and former Google employees they deposed whether Mr. Pichai has any involvement in this case—because they know he does not. When Plaintiffs tried to manufacture Mr. Pichai's involvement by asking about *other* products, Google's employees made it clear that Mr. Pichai had no involvement with any of the facts, products, or settings at issue here. *See* Google's Reply at 6.

### III.  LEGAL STANDARD

"A district court will not modify or set aside a magistrate judge's order unless it is 'found to be clearly erroneous or contrary to law.'" *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007) (citing Fed. R. Civ. P. 72(a)). Under this "highly deferential" standard, "the district judge may not simply substitute his or her judgment for that of the magistrate judge." *Finjan, Inc. v. Cisco Sys. Inc.*, 17-cv-00072-BLF, 2019 WL 4674338, at *1 (N.D. Cal. July 17, 2019) (citation omitted). "A finding of fact may be set aside as clearly erroneous only if the court has 'a definite and firm conviction that a mistake has been committed.'" *Amy v. Curtis*, 19-cv-02184-PJH, 2021 WL 1904668, at *1 (N.D. Cal. Mar. 8, 2021) (citation omitted).

### IV.  ARGUMENT

**A. Judge Tse correctly found that Mr. Pichai has no unique first-hand knowledge.**

Judge Tse considered Plaintiffs' reasons for seeking Mr. Pichai's testimony and "the hundreds of pages Plaintiffs dump on the Court's doorstep," and found that Plaintiffs failed to demonstrate Mr. Pichai possesses "unique first-hand, non-repetitive knowledge" as required by the apex doctrine. Order at 2 (citing *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D.

Cal. 2012); *Yphantides v. Cnty. of San Diego*, No. 21-CV-1575-GPC(BLM), 2023 WL 7555301, at *4 (S.D. Cal. Nov. 14, 2023) ("the apex doctrine has been applied to preclude testimony at trial.")).

Plaintiffs have not shown any "mistake" requiring reversal. *See e.g. Epic Games, Inc. v. Apple Inc.,* No. 4:20-CV-05640-YGR, 2024 WL 5318836, at *1 (N.D. Cal. Dec. 31, 2024) (citations omitted) (noting "standard of review is extremely deferential"). Instead, Plaintiffs rehash the same authorities cited in their opposition and ask this Court to disagree with Judge Tse's conclusion that Mr. Pichai "appears 'removed from the daily subjects of the litigation'... such that his trial testimony would be improper." Order at 2–3, citing *Affinity Labs of Texas v. Apple, Inc*., No. C09-4436-CW (JL), 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011).

Judge Tse correctly distinguished Plaintiffs' authorities. As Google outlined in its reply, the *In re Apple Iphone Antitrust Litigation* concerned antitrust actions which challenged "an important aspect of Apple's business model"—the closed, integrated App Store and its policies and commission structure. *In re Apple Iphone Antitrust Litig.*, No. 11-CV-06714-YGR (TSH), 2021 WL 485709, at *3 (N.D. Cal. Jan. 26, 2021). The court held that "[t]here is really no one like Apple's CEO who can testify about how Apple views competition in these various markets that are core to its business model" and that "[t]he CEO's understanding of these subjects is almost by definition unique and non-repetitive." *Id*. In *Google Inc. v. American Blind & Wallpaper*, the court ordered an apex deposition because one of Google's 30(b)(6) witnesses testified that the policy change at issue came from a concern voiced by the would-be deponent. *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C 03-5340 JF (RS), 2006 WL 2578277, at *3 (N.D. Cal. Sept. 6, 2006); *see also First Nat. Mortg. Co. v. Fed. Realty Inv. Tr*., No. C03-02013 RMW (RS), 2007 WL 4170548, at *2 (N.D. Cal. Nov. 19, 2007) ("depositions of lower-level employees suggest that [witness] may have at least some relevant personal knowledge"); *In re Uber Techs., Inc., Passenger Sexual Assault Litig*., No. 23-MD-03084-CRB (LJC), 2025 WL 896412, at *2–3 (N.D. Cal. Mar. 24, 2025) (apex depositions appropriate because those witnesses' "personal, subjective intent may be relevant" to the litigation and Plaintiffs "gathered sufficient discovery through other means to demonstrate that the proposed deponents have relevant and superior knowledge."); *Wonderland Nurserygoods Co. v. Baby Trend, Inc*., No. 514-cv-1153-JWH(SPX), 2022 WL 1601402, *2 (C.D. Cal. Jan. 7, 2022)

(allowing deposition where emails "make clear" CEO was actively involved in decisions surrounding the accused products).

Nor do the documents cited by Plaintiffs support their view. This is not a case about Google's business model or competitive behavior. It is about very specific product functionality that is not at issue in **any** of the documents Plaintiffs cite. *See* Google's Reply at 7, 9–10; *see also* ECF No. 487-5. The so-called "instructions on the changes made to WAA" relate to a setting that controls how long data is stored *when WAA is on*, which Plaintiffs acknowledge does not affect sWAA-off data. *See* Google's Reply at 4–5; Pl. Opp. at 8; Pl. Ex. 27 at -702 (retention controls control how long Google keeps WAA-on data). Any involvement of Mr. Pichai in discussing how long WAA-on data is kept is completely irrelevant to a case about GA for Firebase's alleged use of sWAA-off data. Judge Tse correctly rejected Plaintiffs' evidence as unpersuasive.

**B.  Judge Tse correctly found that Plaintiffs' failure to seek Mr. Pichai's custodial files and deposition supports the finding that Mr. Pichai lacks relevant testimony.**

Judge Tse also properly considered and rejected Plaintiffs' shifting (but still unconvincing) justification for not seeking Mr. Pichai's deposition and custodial files. *Compare* Pl. Mot. at 3 (calling their failure a "strategic choice") *with* Pl. Opp. at 18 (claiming the decision not to seek Mr. Pichai's custodial files and deposition shows Plaintiffs "do not intend to harass Mr. Pichai."). Judge Tse correctly found that Plaintiffs conceded Mr. Pichai lacks relevant testimony not only because they failed to seek his deposition, but also because they failed to even seek his custodial files or include him in their initial disclosures until almost *two years after the close of fact discovery*. Order at 2 (discussing Plaintiffs' decision to pass on *discovery*). Judge Tse committed no error of law in relying on Plaintiffs' course of conduct. The most plausible inference from Plaintiffs' choices is that they seek Mr. Pichai's testimony because he is the highest-level executive at Google and they want settlement leverage, not because they chose to spare him from harassment despite his alleged personal knowledge of the issues presented here.

Plaintiffs' single, out-of-circuit authority authorizing trial testimony of a *non-apex* witness does not move the needle, let alone render Judge Tse's order contrary to law. Contrary to Plaintiffs' characterization of *U.S. Bank Nat'l Ass'n v. PHL Variable Life Ins. Co*., the Southern District of

New York denied two distinct motions in limine: one motion to exclude the CEO's testimony pursuant to the apex doctrine because the party seeking the testimony demonstrated he had relevant, unique testimony, and another motion to exclude the testimony of a former salesperson—not an apex witness—who was not deposed. 112 F. Supp. 3d 122, 149–50, 155 (S.D.N.Y. 2015). In contrast, in its moving papers, Google cited several authorities that considered the failure to seek a deposition as a relevant consideration in denying the testimony of an apex witness for the first time at trial. *See, e.g., Reddy v. Nuance Commc'ns, Inc.*, No. 5:11-CV-05632-PSG, 2015 WL 4648008, at *4 & n.38 (N.D. Cal. Aug. 5, 2015) (granting motion to preclude CEO as a trial witness, noting the witness's lack of apparent knowledge regarding the case as well as absence of any effort to depose the witness); *Pinn, Inc. v. Apple Inc.*, No. SA19-CV-01805-DOC-JDE, 2021 WL 4775969, at *3–4 (C.D. Cal. Sept. 10, 2021) (granting Apple's motion where plaintiff failed to show Senior Vice President had "unique first-hand knowledge" and failed to seek his deposition). Plaintiffs have not cited a single case in which a court was reversed for taking such a relevant fact into account. Judge Tse did not err in excluding Mr. Pichai's testimony for the first time at trial.

**C. Judge Tse correctly declined to weigh the "purported burden against other important interests."**

Judge Tse properly stated and applied the apex doctrine standard, which does not require a court to consider "countervailing considerations." *See* Order at 2. Plaintiffs again recycle the same inapposite authorities they relied on in their opposition to Google's motion, and do not cite to any authority in which a court was reversed because it did not consider factors that are irrelevant to the apex doctrine. Pl. Mot. at 5. As outlined in Google's reply, the "stakes of the litigation," to the extent that is a relevant factor, is not sufficient to warrant Mr. Pichai's testimony in this case. Google's Reply at 7–8. *In re Uber Techs. Inc.* and *City of Huntington* were both MDLs of paramount importance. The *In re Uber* MDL involved plaintiffs who alleged they were sexually assaulted by drivers hired through Uber's platform, which the court found concerned "important aspects of [Uber's] business model that are plainly the result of high-level executive decisions." *In re Uber Techs.*, 2025 WL 896412, at *2. The *City of Huntington* MDL concerned "tragic" and "potentially momentous" litigation related to the defendant's potential contributions to the opioid epidemic. *City*

*of Huntington, v. AmerisourceBergen Drug Corp.*, No. CV 3:17-01362, 2020 WL 3520314, at *1, 4 (S.D.W. Va. June 29, 2020) ("The 'importance of the issues at stake' in this case are paramount and unparalleled."). Unlike in *City of Huntington*, Plaintiffs did not proffer any evidence that the issues Mr. Pichai testified about before Congress are "the very same factual issues pending before the Court" and that "[h]is testimony will directly address many of the cornerstone factual issues the Court must decide as the trier of fact." *Id*. at *4. To the contrary, Plaintiffs concede that it was the storing of location-related data when WAA is on that led to Mr. Pichai's testimony before Congress. Pl. Opp. at 6. Judge Tse did not err in rejecting this argument.

### D. Plaintiffs improperly request new relief in their motion for reconsideration

The purpose of a motion for reconsideration is to address any part of an order that is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). Plaintiffs' motion improperly requests *new* relief from this Court in the form of evidentiary trial rulings and rulings on the scope of testimony about Mr. Pichai. Pl. Mot., section III.D. Plaintiffs should be prohibited from seeking this new relief because it could have been presented in their opposition to Google's motion. If Plaintiffs choose to seek such relief through a motion in limine, Google will address their arguments then. In any event, Plaintiffs' requested relief is improper because the exclusion of Mr. Pichai does not alter the requirement that evidence be relevant and its admissibility not be impeded by other rules, such as hearsay. Additionally, comments on Mr. Pichai's absence would be improper and unfairly prejudicial to Google, wrongly suggesting to the jury that his absence is indicative of wrongdoing or an attempt to withhold evidence, not a valid Court order recognizing his testimony is not necessary.

### V. CONCLUSION

Because Plaintiffs have failed to overcome the "highly deferential" standard to prove Judge Tse committed "clear error" or was "contrary to law," Google respectfully requests that the Court deny Plaintiffs' motion for relief from Judge Tse's order excluding Mr. Pichai from trial.

Dated: June 12, 2025

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

By: */s/ Simona Agnolucci*
    Benedict Y. Hur
    Simona Agnolucci
    Eduardo Santacana
    Argemira Flórez
    Harris Mateen
    Isabella McKinley Corbo

*Attorneys for Defendant Google LLC*