**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
alanderson@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
Ryan Sila (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br>        Defendant. | Case No.: 3:20-cv-04688-RS<br><br>**PLAINTIFFS' OMNIBUS MOTIONS *IN LIMINE***<br><br>The Honorable Richard Seeborg<br>Courtroom 3 – 17th Floor<br>Pretrial Conference: July 30, 2025, 9:30 a.m.<br>Trial Date: August 18, 2025 |

1

**<u>TABLE OF CONTENTS</u>**

2

ISSUE PRESENTED & RELIEF REQUESTED ................................................................... 1

3

INTRODUCTION .............................................................................................................. 2

4

LEGAL STANDARD ........................................................................................................ 2

5

ARGUMENT ..................................................................................................................... 2

6

      I.      MIL No. 1: Counsel's Compensation .......................................................... 2

7

      II.     MIL No. 2: Characterizing Litigation as Lawyer-Driven ........................... 3

8

      III.    MIL No. 3: Size, Profitability, and Work of Counsel ................................ 5

9

      IV.   MIL No. 4: Plaintiffs Who Voluntarily Dismissed Their Claims ............... 6

10

      V.     MIL No. 5: Plaintiffs' Complaint & Procedural History ............................ 8

11

      VI.   MIL No. 6: Characterizations of the CDAFA, Including as an "Anti-Hacking Statute" ...................................................................................... 9

12

13

      VII.  MIL No. 7: Permission Based On Google's Agreements with App Developers ................................................................................................ 11

14

      VIII. MIL No. 8: Plaintiffs' Continued Use of Apps Containing Google SDKs ....................................................................................................... 12

15

16

CONCLUSION ................................................................................................................ 15

17

18

19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

3    <u>Cases</u>

4    *Allstate Ins. Co. v. Nassiri,*
            2013 WL 2394116 (D. Nev. May 30, 2013) ...................................................................4

5

6    *Almendarez v. BNSF Ry.,*
            2014 WL 1338090 (W.D. Wash. Apr. 2, 2014) ...........................................................11

7

8    *Berry v. Wis. Cen. Ltd.,*
            2022 WL 3576203 (W.D. Wis. Aug. 19, 2022) ...........................................................11

9
10   *Bolton v. Tesoro Petroleum Corp.,*
            871 F.2d 1266 (5th Cir. 1989) .......................................................................................7

11   *Boyer v. City of Simi Valley,*
            2024 WL 993316 (N.D. Cal. Feb. 13, 2024) ..................................................................8

12

13   *Brewer v. BNSF Ry. Co.,*
            2016 WL 11709319 (D. Mon. Apr. 22, 2016) ..............................................................11

14   *Brooks v. Cook,*
            938 F.2d 1048 (9th Cir. 1991) .......................................................................................3

15

16   *Brown v. Kavanaugh,*
            2013 WL 1819796 (E.D. Cal. Apr. 30, 2013) ................................................................6

17

18   *Bryant v. OptumRX Pharmacy, Inc.,*
            2017 WL 5714721 (C.D. Cal. May 10, 2017) ................................................................8

19   *Bryce v. Trace, Inc.,*
            2008 WL 906142 (W.D. Okla. Mar. 31, 2008) ..............................................................6

20

21   *Cambridge Elecs. Corp. v. MGA Elecs., Inc.,*
            227 F.R.D. 313 (C.D. Cal. 2004) ...................................................................................7

22   *Corcoran v. CVS Pharmacy, Inc.,*
            2021 WL 633809 (N.D. Cal. Feb. 18, 2021) ..................................................................4

23

24   *Curry v. Revolution Labs., LLC,*
            2023 WL 5509337 (N.D. Ill. Aug. 25, 2023) .................................................................9

25

26   *DataTreasury Corp. v. Wells Fargo & Co.,*
            2010 WL 11538713 (E.D. Tex. Feb. 26, 2010) ..............................................................6

27   *Dial Corp. v. News Corp.,*
            2016 WL 690868 (S.D.N.Y. Feb. 17, 2016) ..................................................................7

28

ii

*Esparza v. Kohl's, Inc.*,
    723 F. Supp. 3d 934 (S.D. Cal. 2024) ...................................................................10

*Grace v. Apple, Inc.*,
    2020 WL 227404 (N.D. Cal. Jan. 15, 2020).............................................................3

*Graham v. Bennett*,
    2007 WL 781763 (C.D. Ill. Mar. 12, 2007) .............................................................7

*Greenley v. Kochava*, Inc.,
    684 F. Supp. 3d 1024 (S.D. Cal. 2023) ..................................................................10

*Hart v. RCI Hosp. Holdings, Inc.*,
    90 F. Supp. 3d 250 (S.D.N.Y. 2015) .......................................................................5

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015)....................................................................10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    2016 WL 6246736 (N.D. Cal. Oct. 26, 2016) ........................................................10

*In re Yahoo Mail*,
    308 F.R.D. 577 (N.D. Cal. 2015) .....................................................................14, 15

*Irving v. Dish Network LLC*,
    2013 WL 12317058 (N.D. Ga. July 22, 2013) .........................................................4

*Kinsel v. BMW of N. Am. LLC*,
    2023 WL 11899597 (D. Ariz. June 21, 2023) ..........................................................5

*Leaf v. Cottey*,
    2005 WL 8167491 (S.D. Ind. Sept. 22, 2005).........................................................6

*Ledford v. Lamartz*,
    462 F. Supp. 3d 905 (N.D. Ind. 2020) .....................................................................8

*M.H. v. Cnty. of Alameda*,
    2015 WL 894758 (N.D. Cal. Jan. 2, 2015)..............................................................7

*Montera v. Premier Nutrition Corp.*,
    2022 WL 1465044 (N.D. Cal. May 9, 2022)............................................................4

*Munns v. CSX Transp., Inc.*,
    2009 WL 805133 (N.D. Ohio Mar. 27, 2009).........................................................11

*Oyarzo v. Tuolumne Fire Dist.*,
    2013 WL 5718882 (E.D. Cal. Oct. 18, 2013)........................................................8, 9

*Palantir Tech., Inc. v. Abramowitz*,
    689 F. Supp. 3d 981 (N.D. Cal. 2022).....................................................................4

iii

*Phoenix Techs. Ltd. v. VMWare, Inc.*,
    2017 WL 2001981 (N.D. Cal. May 11, 2017)................................................................8

*Pierce v. Cnty. of Orange*,
    526 F.3d 1190 (9th Cir. 2008) ....................................................................................7

*Ragan v. Norfolk S. Ry. Co.*,
    2023 WL 104734 (E.D. Tenn. Jan. 4, 2023) ..............................................................11

*Ries v. Ariz. Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) ..............................................................................14

*Ruzhinskaya v. HealthPort Techs., LLC*,
    2016 WL 7388371 (S.D.N.Y. Dec. 20, 2016)..............................................................3

*Shepard v. Quillen*,
    2013 WL 978201 (E.D. Cal. Mar. 12, 2013)................................................................6

*Shoraka v. Bank of Am., N.A.*,
    2024 WL 3468756 (C.D. Cal. Jan. 18, 2024)..............................................................3

*Spin Master, Ltd. v. Zobmondo Ent., LLC*,
    2012 WL 8134014 (C.D. Cal. July 6, 2012) ..............................................................9

*Stegall v. Berryhill*,
    2018 WL 2332460 (N.D. Ill. May 23, 2018)..............................................................9

*Stillman v. Norfolk & W. R. Co.*,
    811 F.2d 834 (4th Cir. 1987) ....................................................................................11

*Stollings v. Ryobi Techs.,., Inc.*,
    725 F.3d 753 (7th Cir. 2013) ......................................................................................4

*Tallman v. Freedman Anselmo Lindberg*,
    2013 WL 2631754 (C.D. Ill. June 12, 2013)..............................................................4

*Tinius v. Carroll Cnty. Sheriff Dept.*,
    2004 WL 3103962 (N.D. Iowa Dec. 22, 2004)..........................................................7

*United States v. Eubanks*,
    591 F.2d 513 (9th Cir. 1979)......................................................................................7

*United States v. Haischer*,
    780 F.3d 1277 (9th Cir. 2015) ....................................................................................2

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000) ..................................................................................12

*United States v. Lynch*,
    903 F.3d 1061 (9th Cir. 2018) ..................................................................................11

iv

*United States v. Nosal*,
    844 F.3d 1024 (9th Cir. 2016) ...................................................................................12

*United States v. Thompson*,
    2022 WL 834026 (W.D. Wash. Mar. 21, 2022) ..........................................................12

*Weidenhamer v. Expedia, Inc.*,
    2015 WL 1292978 (W.D. Wash. Mar. 23, 2015) ........................................................14

*Whittier v. Seattle Tunnel Partners*,
    2022 WL 1624694 (W.D. Wash. May 23, 2022) ..........................................................5

**<u>Other Authorities</u>**

Cal. Penal Code § 502 ...................................................................................................10

**<u>Rules</u>**

Fed. R. Civ. P. 23(a)(4) ...................................................................................................7

Fed. R. Evid. 401 ............................................................................................................3

Fed. R. Evid. 402 ............................................................................................................2

Fed. R. Evid. 403 ............................................................................................................4

v

**PLEASE TAKE NOTICE** that, on July 30, 2025 at 9:30 a.m., or as soon thereafter as may be heard, Plaintiffs will move the Court, pursuant to the Federal Rules of Evidence, for an order excluding the following from any trial in this matter:

1. Evidence and argument concerning counsel's compensation, including the manner or amount of any such compensation;

2. Argument that this litigation is lawyer driven;

3. Evidence and argument concerning the size, profitability, or type of work done by counsel;

4. Evidence and argument concerning former plaintiffs who voluntarily dismissed their claims;

5. Evidence and argument concerning Plaintiffs' complaint and the procedural history of this case;

6. Argument characterizing the purpose of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), including but not limited to argument that it is an "anti-hacking" statute;

7. Evidence that app developers consented to sharing data with Google, or alternatively argument that app developers' agreements with Google can establish consent or permission for purposes of Plaintiffs' claims; and

8. Evidence that Plaintiffs continued using Google services and apps that use Google services after filing this lawsuit, or alternatively argument that such is relevant to the elements of harm, consent, and permission.

This Motion is based upon this Notice of Motion and Memorandum, the Declaration of Mark C. Mao, argument of counsel, other materials in the record, and such other matters as the Court may consider.

## ISSUE PRESENTED & RELIEF REQUESTED

Whether Plaintiffs' request to exclude certain arguments and evidence from trial should be granted?

1

1

**INTRODUCTION**

2       Plaintiffs respectfully move the Court for orders foreclosing Google from offering discrete

3 types of irrelevant and prejudicial evidence and argument in the presence of the jury. Plaintiffs'

4 motions *in limine* address evidence and argument relating to a few discrete topics: the lawyers and

5 law firms in this case (MIL Nos. 1–3); changes in the parties and allegations, if any, since the

6 outset of this litigation (MIL Nos. 4–5); and mischaracterizations of the law as articulated by the

7 Court (MIL Nos. 6–8). Neither those broad categories nor the specific evidence and argument

8 addressed in Plaintiffs' motions *in limine* are relevant to the jury's determination of whether

9 Google's conduct violated the law as the Court explains it, and each risks inflaming the jury and

10 confusing the issues. Plaintiffs therefore respectfully request that the Court grant Plaintiffs'

11 motions *in limine* and exclude the described evidence and argument from trial.

12

**LEGAL STANDARD**

13       Evidence is admissible at trial only if it is relevant. Fed. R. Evid. 402. Evidence is relevant

14 if "(a) it has any tendency to make a fact more or less probable than it would be without the

15 evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Even

16 relevant evidence, however, is inadmissible "if its probative value is substantially outweighed by

17 a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting

18 time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice is an

19 undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an

20 emotional one." *United States v. Haischer*, 780 F.3d 1277, 1281 (9th Cir. 2015).

21

**ARGUMENT**

22 **I.**     **MIL No. 1: Counsel's Compensation**

23       The Court should exclude from trial evidence or arguments pertaining to counsel's

24 compensation, including but not limited to the fact that it may be a percentage of the damages

25 awarded. A defendant is not permitted to prejudice the jury against a plaintiff's case by raising or

26 even alluding to contingency fees that are customary in class cases. Attorneys' fees are not

27 probative of liability in this or any other case; nothing but prejudice could result from arguing or

28 alluding to them. Rules 401, 402, and 403 prohibit discussing fees in the jury's presence.

1   The Ninth Circuit made this clear when it held that "[t]he award of attorneys' fees is a
2   matter of law for the judge, not the jury … The jury's role is to determine liability and the amount
3   of damages. These determinations are distinct from the awarding of fees. By informing the jury of
4   the plaintiff's right to seek attorneys' fees … the court invited the jury to factor in a subsequent
5   step—the court's calculation of the ultimate judgment—that had no relevance to the jury's
6   determination of liability and damages." *Brooks v. Cook*, 938 F.2d 1048, 1051 (9th Cir. 1991).

7   Since the Ninth Circuit's decision in *Brooks*, many other courts have applied its holding to
8   exclude the kind of argument and evidence at issue here. *See Shoraka v. Bank of Am., N.A.*, 2024
9   WL 3468756, at *1 (C.D. Cal. Jan. 18, 2024) ("[t]he Court finds the issue of attorneys' fees
10  irrelevant under Fed. R. Evid. 401."); *Grace v. Apple, Inc.*, 2020 WL 227404, at *5 (N.D. Cal. Jan.
11  15, 2020) ("[t]he Court agrees with Plaintiffs that the introduction of evidence, argument, or
12  testimony about the motivations of Plaintiffs' counsel would be irrelevant to the merits of the
13  instant action and would therefore not be admissible."); *Ruzhinskaya v. HealthPort Techs., LLC*,
14  2016 WL 7388371, at *7 (S.D.N.Y. Dec. 20, 2016) (excluding "insinuations or attacks directed at
15  class-action lawyers" because "regardless of whether the inspiration for this lawsuit was
16  [Plaintiff's] or an attorney's, [Plaintiff] is entitled to have her claims … resolved on the merits, not
17  based on attitudes the jury may have—or counsel may intentionally stoke—as to class actions, or
18  the business model, role, or ethics of class-action counsel"). Under black-letter law, Google should
19  be precluded from introducing evidence or arguments regarding counsel's compensation.

## II.    MIL No. 2: Characterizing Litigation as Lawyer-Driven

21  Throughout this litigation, Google has inappropriately attacked this litigation as lawyer
22  driven. *See*, *e.g.*, Dkt. 381 (Google's motion for summary judgment, suggesting this case was
23  "manufactured around a creative, lawyerly, unreasonable reading of the (s)WAA description" and
24  other disclosures). While the Court is adept at divorcing this posturing from the merits of a motion,
25  juries may be more susceptible at trial, and therefore courts routinely exclude it.

26  Not only is a characterization that the litigation is "lawyer-driven" irrelevant, but it would
27  be highly prejudicial, stands to create confusion, and should be excluded pursuant to Rule 403.
28  Google cannot argue or insinuate views that are not based upon evidence and if Google were to

3

1   try to admit evidence to support such an argument this would open the door to Plaintiffs' counsel

2   providing evidence about their law firms and lawyers, creating a complete sideshow and mini-trial

3   within a trial resulting in unfair prejudice, "confus[ion of] the issues," and "undue delay." Fed. R.

4   Evid. 403.

5          Indeed, this request is so reasonable that defendants regularly agree to it—including before

6   this Court. *See Montera v. Premier Nutrition Corp.*, 2022 WL 1465044, at *1 (N.D. Cal. May 9,

7   2022) (Seeborg, C.J.) (following plaintiff's motion *in limine,* defendant stipulated "to not put on

8   evidence or argument . . . that this case is lawyer-driven litigation"). After meeting and conferring,

9   Google still refused to agree to this proposed limitation and insists instead on reserving Google's

10  ability to make this argument to the jury. *See* Mao Decl. ¶ 3. Such argument is clearly inflammatory

11  and seeks to distract the jury from the merits of this hard-fought litigation. A jury should decide

12  the merits without *ad hominem* attacks on counsel or digressions about counsel's role in the

13  litigation.

14         When this issue has been litigated, courts have concluded that the plaintiff's motivation for

15  initiating litigation is irrelevant where, as here, it is not part of the claims or defenses. *See, e.g.*,

16  *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 761 (7th Cir. 2013) (stating that "argument aimed at

17  a party's counsel is improper and risks depriving the party of a fair trial" and remanding for new

18  trial); *Palantir Tech., Inc. v. Abramowitz*, 689 F. Supp. 3d 981, 988 (N.D. Cal. 2022) (finding that

19  "[m]otive to sue is irrelevant to any issue in this case"); *Corcoran v. CVS Pharmacy, Inc.*, 2021

20  WL 633809, at *2 (N.D. Cal. Feb. 18, 2021) (recognizing that "[c]lass actions are frequently driven

21  by lawyers" and excluding any suggestion that the case is "an invention for litigation"); *Allstate

22  Ins. Co. v. Nassiri*, 2013 WL 2394116, at *5 (D. Nev. May 30, 2013) (granting motion *in limine*

23  about motivations of litigation); *Irving v. Dish Network LLC*, 2013 WL 12317058, at *3 (N.D. Ga.

24  July 22, 2013) (holding that evidence not related to conduct or liability is unfairly prejudicial);

25  *Tallman v. Freedman Anselmo Lindberg*, 2013 WL 2631754, at *3 (C.D. Ill. June 12, 2013)

26  ("Plaintiff's motive in bringing the lawsuit is not relevant on the issue of whether Defendant

27  violated [the law and] several district courts in other jurisdictions have so found") (citation

28  modified).

4

1    There is no legitimate reason for Google to introduce this commentary at trial, and the

2    Court should preclude Google at this stage from doing so under Rules 402 and 403.

3    **III.    MIL No. 3: Size, Profitability, and Work of Counsel**

4    Similarly, information regarding the law firms in this case has no bearing on the merits of

5    Plaintiffs' claims. Yet, after meeting and conferring on this issue, Google refused to stipulate to

6    not presenting arguments about Class Counsel. *See* Mao Decl. ¶ 4. While Google's attempts to

7    characterize Class Counsel to the jury may take a different form than the derogatory "lawyer-

8    driven" messaging, any attempts to characterize Class Counsel are equally improper.

9    Whether the parties' law firms are large or small, profitable or not, litigate on behalf of

10    plaintiffs or defendants, have other litigation against Google, etc. is not relevant to the merits of

11    this case; they do not have any tendency to prove the merits of Plaintiffs' claims or Google's

12    defenses under Rule 401. The court in *Escobar v. Airbus Helicopters SAS* addressed this issue,

13    where the defendant filed a motion *in limine* to preclude counsel from commenting on the defense

14    firm representing Airbus in a wrongful death case. 2016 WL 5897554, at *1 (D. Haw. Oct. 7,

15    2016). The *Escobar* court found that "[t]he size of the law firms representing Defendant, as well

16    as their reputations, their hourly fees, or any similar statements are irrelevant to the case." *Id.*

17    (citing Fed. R. Evid. 401); *see also Kinsel v. BMW of N. Am. LLC*, 2023 WL 11899597, at *10–11

18    (D. Ariz. June 21, 2023) (excluding references to law firm's "representation of BMW NA or other

19    manufacturers" in other matters); *Whittier v. Seattle Tunnel Partners*, 2022 WL 1624694, at *1

20    (W.D. Wash. May 23, 2022) (granting motion to exclude evidence of "other cases filed by

21    plaintiff's counsel, and counsel's win-loss record, other verdict and damage awards, and opinions

22    regarding the merits of plaintiff's claims"). The same is true here. The size, profitability, and work

23    of Class Counsel are not relevant.

24    The danger of unfair prejudice from focusing attention on the lawyers is also substantial.

25    This balancing test was applied in *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 273

26    (S.D.N.Y. 2015). There, the trial court opined that "[t]he jury's attitudes about class actions

27    generally, or employment class actions specifically, or the business model, role, or ethics of class-

28    action counsel, have no bearing on" the issues being litigated at trial and "commentary on this

5

1   issue can serve only to confuse, inflame, and introduce unfair prejudice." *Id.*; *see also*

2   *DataTreasury Corp. v. Wells Fargo & Co.*, 2010 WL 11538713, at *23 (E.D. Tex. Feb. 26, 2010)

3   (excluding "direct or indirect comment on the law firm or lawyers representing any party,

4   including, without limitation, references to the size of the law firm … other matters handled by the

5   law firm, or other clients or types of clients represented by the law firm or lawyers representing

6   any party"). The Court should reach the same conclusion here. This evidence is inadmissible under

7   Rules 402 and 403.

8   **IV.    MIL No. 4: Plaintiffs Who Voluntarily Dismissed Their Claims**

9          Google should not be permitted to offer evidence and argument pertaining to former

10  plaintiffs who voluntarily dismissed their claims, and who are therefore not class representatives

11  at this trial. Five plaintiffs dismissed their claims without prejudice without being deposed. Four

12  dismissed their claims before Google even filed its answer. *See* Dkts. 221, 222, 228, and 229. The

13  fifth dismissed his claims by stipulation with Google. Dkt. 249. Additionally, one plaintiff who

14  was deposed (Mr. Cataldo) has also agreed to dismiss his claims and his notice of dismissal is

15  forthcoming. *See* Mao Decl. ¶ 5. Class counsel informed Google of his intent prior to this filing.

16  *Id.* Their early involvement in this case and subsequent decisions to dismiss their claims is not

17  probative of whether Google violated the law. Any evidence or argument regarding their

18  involvement in this case not only invites irrelevant speculation but also carries a severe risk of

19  confusing the issues and misleading the jury; and statements made by dismissed plaintiffs are

20  inadmissible hearsay. For those reasons, it is "common practice" to "shield such matters from the

21  jury." *Bryce v. Trace, Inc.*, 2008 WL 906142, at *3 (W.D. Okla. Mar. 31, 2008); *see also, e.g.*,

22  *Shepard v. Quillen*, 2013 WL 978201, at *4 (E.D. Cal. Mar. 12, 2013) (excluding "testi[mony]

23  regarding dismissed parties or dismissed claims").

24         The five dismissed plaintiffs' involvement in this case is not relevant to whether Google

25  violated the law. *See, e.g.*, *Brown v. Kavanaugh*, 2013 WL 1819796, at *2 (E.D. Cal. Apr. 30,

26  2013) ("[m]atters pled and dismissed in this case are not relevant to Plaintiff's remaining claims.");

27  *Leaf v. Cottey*, 2005 WL 8167491, at *3 (S.D. Ind. Sept. 22, 2005) ("[e]vidence relating to any of

28  the dismissed parties or to the fact of their dismissal is irrelevant."); *Tinius v. Carroll Cnty. Sheriff*

6

1    *Dept.*, 2004 WL 3103962, at *2 (N.D. Iowa Dec. 22, 2004) ("[t]he court concludes that such

2    evidence [concerning dismissed parties] is irrelevant to the issues involved in this case"). The

3    reasons for a party's voluntary dismissal are privileged, and the possible explanations are many,

4    so their withdrawal from the litigation has no probative value. *See Bolton v. Tesoro Petroleum*

5    *Corp.*, 871 F.2d 1266, 1277 (5th Cir. 1989) ("[v]oluntary dismissal of a suit can occur for a variety

6    of reasons. The relevance of the [dismissed claims] was, thus, marginal."). During meet and

7    confers on this topic, Google's counsel could not explain the relevance of any evidence concerning

8    any of these former plaintiffs. Nor has Google's counsel explained why testimony and evidence

9    from the Plaintiffs who will testify at trial are insufficient for whatever purpose Google might have

10   in mind, such that the dismissed plaintiffs' evidence would not be cumulative.

11         Even if statements made by the former plaintiffs had some relevance, they would remain

12   inadmissible hearsay. They are not admissible as party admissions because these individuals are

13   no longer parties, and all but one dismissed their claims long before the Court could evaluate

14   whether they adequately represented the classes. *United States v. Eubanks*, 591 F.2d 513, 519 (9th

15   Cir. 1979) ("[a]dmissions by individual defendants could not be considered as evidence against

16   the other defendants."); *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 335 (C.D.

17   Cal. 2004) ("a party's statement is admissible as non-hearsay only if it is offered against *that* party"

18   (quotations omitted)); *cf. Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1202 (9th Cir. 2008) ("[f]or

19   an absent member of a … class to be treated as a party—and, hence, as a party representative of

20   the class as a whole—for Rule 801 purposes there must be some mechanism to ensure that he or

21   she will represent the interests of the class." (citing Fed. R. Civ. P. 23(a)(4))).

22         Regardless, any relevance of evidence regarding the dismissed plaintiffs would be

23   substantially outweighed by its obvious prejudicial effect. Courts around the country exclude

24   similar evidence on this basis. *See*, *e.g.*, *M.H. v. Cnty. of Alameda*, 2015 WL 894758, at *14–15

25   (N.D. Cal. Jan. 2, 2015) (excluding references to former plaintiff in the presence of the jury); *Dial*

26   *Corp. v. News Corp.*, 2016 WL 690868, at *2 (S.D.N.Y. Feb. 17, 2016) ("Courts in this Circuit

27   have repeatedly issued in limine orders precluding" "reference to claims that Plaintiffs voluntarily

28   dismissed"); *Graham v. Bennett*, 2007 WL 781763, at *3 (C.D. Ill. Mar. 12, 2007) (excluding

1   evidence regarding dismissed parties). Evidence and argument about plaintiffs that are no longer

2   in the case would impermissibly lead the jury to speculate about why these former plaintiffs are

3   not at trial. Leaving their absence unexplained would prejudice Plaintiffs by creating the

4   misimpression that they simply did not care enough to show up. And explaining that they

5   voluntarily dismissed their claims would prejudice Plaintiffs by improperly suggesting that they

6   had lost faith in their claims. To dispel these inferences—or any others that Google may draw from

7   the former plaintiffs' involvement, discovery responses, and dismissals—the former plaintiffs may

8   have to appear at trial and testify. That would further confuse the jury and spur wasteful "mini

9   trials" on issues that are of no importance to the merits of the case. *See Ledford v. Lamartz*, 462 F.

10  Supp. 3d 905, 909–10 (N.D. Ind. 2020) (excluding evidence of dismissed claims because of

11  "delay[] and inefficiency").

12          Pursuant to Rules 402, 403, and 802, the Court should exclude any exhibits or documents

13  related to the former plaintiffs—including, at minimum, exhibits G114–16, G118–19, G123–25,

14  G127–28, G132–35, G137, G153–54—and all other testimony, evidence, argument, or reference

15  to former plaintiffs, their involvement in this litigation, or their dismissal.  *See* Mao Decl. ¶ 6

16  **V.      MIL No. 5: Plaintiffs' Complaint & Procedural History**

17          This trial will focus on the claims and defenses allowed by the Court, and Google should

18  not be allowed to present evidence or argument tied to Plaintiffs' prior complaints or the motion

19  to dismiss rulings, where the Court narrowed the set of claims and issues to be tried.

20          Courts routinely exclude evidence about the case's procedural history because it has little

21  if any probative value at trial. *See*, *e.g.*, *Boyer v. City of Simi Valley*, 2024 WL 993316, at *3 (N.D.

22  Cal. Feb. 13, 2024) (excluding procedural history evidence because it "is not relevant to the claim

23  at issue"); *Phoenix Techs. Ltd. v. VMWare, Inc.*, 2017 WL 2001981, at *5 (N.D. Cal. May 11,

24  2017) (excluding complaint because its "relevance [was] low"); *Bryant v. OptumRX Pharmacy,

25  Inc.*, 2017 WL 5714721, at *4 (C.D. Cal. May 10, 2017) (excluding evidence of procedural history

26  because "[n]othing about [it] is relevant to Plaintiff's claims"); *Oyarzo v. Tuolumne Fire Dist.*,

27  2013 WL 5718882, at *9 (E.D. Cal. Oct. 18, 2013) (excluding evidence about claims that discovery

28  did not support because it was "irrelevant"). The legal elements of the causes of action, not the

8

1    allegations of the complaint, are the yardstick against which the evidence at trial must be measured.

2    The Plaintiffs' allegations at earlier stages of the case are irrelevant and inadmissible under Rule

3    402.

4         Even if Plaintiffs' earlier allegations had any probative value, it would be dwarfed by the

5    dangers that Rule 403 guards against. *See Spin Master, Ltd. v. Zobmondo Ent., LLC*, 2012 WL

6    8134014, at *5 (C.D. Cal. July 6, 2012) (evidence about dismissed claim was properly excluded

7    because "any probative value … was substantially outweighed by unfair prejudice, confusion, and

8    waste of time under Rule 403"). This evidence would confuse the issues and mislead the jury

9    because it would wrongly suggest that plaintiffs must prove their earlier allegations, not just their

10   legal claims. It would waste time because "the procedural history … would have to be explained"

11   and debated. *Id.*; *Curry v. Revolution Labs., LLC*, 2023 WL 5509337, at *15 (N.D. Ill. Aug. 25,

12   2023) (excluding such evidence because "[i]t would have caused a significant diversion from the

13   issues of the case"). And it would be prejudicial because the mere suggestion that Plaintiffs failed

14   to prove *other* allegations may cause jurors to doubt whether Plaintiffs can establish the allegations

15   presented at trial, regardless of what the evidence shows. *See, e.g.*, *Oyarzo*, 2013 WL 5718882, at

16   *9 ("the admission of such evidence is highly prejudicial"); *Stegall v. Berryhill*, 2018 WL

17   2332460, at *4 (N.D. Ill. May 23, 2018) (granting motion *in limine* because of "risk that any efforts

18   by Defendant to call attention to those withdrawn legal theories at trial could prejudice Plaintiff").

19        The Court should therefore exclude the complaints, motions and other docket entries, and

20   all testimony and argument about what Plaintiffs alleged before trial.

21   **VI.    MIL No. 6: Characterizations of the CDAFA, Including as an "Anti-Hacking Statute"**

22        The Court should preclude Google from characterizing the CDAFA at trial as an "anti-

23   hacking" statute or otherwise presenting argument or evidence regarding the legislative history,

24   Google's view of the purpose of the statute, or any other characterization of what the statute was

25   meant to do or not do. The purpose and intent of a statute is a question of law that is for the Court

26   to decide, and the Court has already rejected Google's mischaracterizations of the CDAFA.

27        Time and again, Google has distorted the CDAFA with misleading shorthand. In its

28   opposition to class certification, in the summary judgment hearing, and elsewhere, Google has

9

1    characterized the CDAFA as an "anti-hacking statute." Dkt. 329 (Class Cert. Opp.) at 1; Dkt. 419

2    (Jul. 29, 2024 Hrg. Tr.) at 28:5. That description is not only false; it is also irrelevant to the jury's

3    task, which is to apply the law as the Court instructs. If Google were to repeat this tactic at trial, it

4    would mislead the jury, confuse the issues, and prejudice Plaintiffs by inviting the jury to render a

5    verdict on an inaccurate basis. The Court will instruct the jury regarding the CDAFA. Argument

6    and evidence by Google seeking to characterize the CDAFA and its purpose should be excluded

7    under Rules 402 and 403 for at least two reasons.

8           ***First***, the CDAFA is not just an "anti-hacking" statute. The statute does not even use the

9    term "anti-hacking." *See generally* Cal. Penal Code § 502. And it prohibits much more than the

10   kind of shadowy underground activity that the term "hacking" naturally calls to mind. *See*, *e.g.*,

11   Cal. Penal Code § 502(c)(2) (making it unlawful to "[k]nowingly access[] and without permission

12   take[] … any data from a computer"). Here, the Court rejected Google's atextual assertion that

13   conduct cannot not violate the CDAFA unless it "circumvents technical or code-based barriers in

14   place to restrict or bar a user's access." Dkt. 109 at 14. This conclusion flows naturally from the

15   text of the statute. Even if a defendant did not technologically hack or break into the plaintiff's

16   computer, the defendant might not have had permission to take the plaintiff's data. *Id.*; *Greenley*

17   *v. Kochava*, Inc., 684 F. Supp. 3d 1024, 1049 (S.D. Cal. 2023) ("the phrase 'without permission'

18   is not limited to conduct that circumvents a device barrier or 'hacks' a computer system."); *Esparza*

19   *v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 944–45 (S.D. Cal. 2024) (same); *In re Carrier IQ, Inc.*, 78 F.

20   Supp. 3d 1051, 1098–1101 (N.D. Cal. 2015) (rejecting notion that CDAFA prohibits only access

21   that circumvents a technical or code-based barrier). If Google nonetheless characterizes the

22   CDAFA as an anti-hacking statute, the jury may expect Plaintiffs to satisfy an element that does

23   not exist. That would confuse the issues, mislead the jury, and severely prejudice Plaintiffs. *See In*

24   *re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 6246736, at *11 (N.D. Cal. Oct. 26, 2016)

25   ("[w]hether there was unfair prejudice depends on whether there was an 'undue tendency to

26   suggest decision on an improper basis'").

27          ***Second***, a party's gloss on the purpose of the statute at issue is irrelevant to the trial. The

28   jury's job is to apply the law as stated in the Court's instructions. *See*, *e.g.*, *United States v. Lynch*,

10

1  903 F.3d 1061, 1079 (9th Cir. 2018) ("[i]t is clear that … juror[s] [have a] sworn duty to follow

2  the law as instructed by the court."). It is not their job to decide what the law should be to effectuate

3  the purposes of the statute. Evidence and argument regarding the purpose of the CDAFA blurs the

4  line between the role of the Court and the role of the jury. Accordingly, there is judicial consensus

5  that "[s]o long as the jury was properly instructed on the applicable law, [there is] no reason why

6  it would be either necessary or appropriate for the jury to hear an argument about [the legislature's]

7  intent in enacting the law." *Stillman v. Norfolk & W. R. Co.*, 811 F.2d 834, 838 (4th Cir. 1987);

8  *see also Brewer v. BNSF Ry. Co.*, 2016 WL 11709319, at *2 (D. Mont. Apr. 22, 2016) (same);

9  *Almendarez v. BNSF Ry.*, 2014 WL 1338090, at *2 (W.D. Wash. Apr. 2, 2014) (same); *Ragan v.*

10  *Norfolk S. Ry. Co.*, 2023 WL 104734, at *5 (E.D. Tenn. Jan. 4, 2023) (same); *Berry v. Wis. Cen.*

11  *Ltd.*, 2022 WL 3576203, at *3 (W.D. Wis. Aug. 19, 2022) (same); *Munns v. CSX Transp., Inc.*,

12  2009 WL 805133, at *5 (N.D. Ohio Mar. 27, 2009) (same).

13  **VII.    MIL No. 7: Permission Based On Google's Agreements with App Developers**

14  The Court should exclude any argument or evidence that Google secured the requisite

15  permission or consent based on agreements Google entered into with third-party app developers

16  which did not disclose Google's data collection practices regarding the (s)WAA toggle or other

17  relevant Google settings.  These agreements between Google and third parties do not even mention

18  WAA and sWAA, making them entirely irrelevant.  And Google has neither produced nor

19  identified any third-party terms or privacy policies that discuss how WAA and sWAA do not affect

20  Google's data collection.

21  At summary judgment, Google argued "the most correct lens to view this claim through is

22  one that focuses on Google's *permission vis-à-vis the app developers, not the end users*." Dkt. 381

23  at 25 (emphasis added). According to Google, Plaintiffs lose the case even if they did not consent

24  because Google separately obtained consent from the app developers. *See id.* ("Google never

25  exceeded the scope of its permission to use the data gathered by app developers and sent to Google

26  via GA for Firebase.").

27  Google's argument (and any related evidence) should be excluded as contrary to Ninth

28  Circuit law, which "makes clear that 'authorization' is something that only the owner of the

11

1  computer or similar authority can provide." *United States v. Thompson*, 2022 WL 834026, at *3
2  (W.D. Wash. Mar. 21, 2022). Where "authorization to access a computer has been affirmatively
3  revoked"—e.g., by turning "off" (s)WAA—Google "cannot sidestep the statute by going through
4  the back door and accessing the computer through a third party." *United States v. Nosal*, 844 F.3d
5  1024, 1028 (9th Cir. 2016). Here, Google seeks to do precisely what *Nosal* proscribes—using "a
6  third party"—i.e., app developers—to "sidestep" Google's obligation to secure permission from
7  users.

8     At summary judgment, this Court rejected Google's argument as "in tension with relevant
9  Ninth Circuit precedent." Dkt. 445 at 16 (citing *Nosal*, 844 F.3d at 1028). This Court also observed
10  that "no court has endorsed the position that when one technology company acts as a vendor for
11  another, consent for the purposes of CDAFA analysis is coextensive with the party that obtained
12  it." *Id.* ("Google presents no relevant authority to show that under CDAFA, permission given by
13  third parties to use (s)WAA-off data satisfies the statute's permission requirement"). Accordingly,
14  "***whether a third party granted permission is irrelevant***. Instead, what matters is whether Google
15  knew or should have known that ***Plaintiffs*** revoked permission to use their data." *Id.* (emphasis
16  added).

17     Thus, evidence and argument based on these third-party agreements should also not be
18  allowed as it will introduce jury confusion and create a mini-trial on issues that this Court has
19  already ruled are irrelevant under Ninth Circuit law. Further, Google has never produced or
20  identified any documents in the course of discovery, showing that developers knew that WAA and
21  sWAA-controls do not work. Indeed, Google has been unable to point to any third-party terms or
22  privacy policies that disclose that Google continues collecting Plaintiffs' browsing data even when
23  WAA and sWAA are set to off.

24     In addition to precluding attorney argument on this issue, the Court should also preclude
25  Google from introducing exhibits that it will use to support the argument.

26  **VIII.   MIL No. 8: Plaintiffs' Continued Use of Apps Containing Google SDKs**

27     This Court should preclude evidence and argument concerning any ongoing use by
28  Plaintiffs of apps that contain the at-issue Google SDKs. Google apparently plans to tell the jury

12

1    that Plaintiffs should lose the case because the class representatives still use these apps even after

2    uncovering "the truth" about Google's misconduct and filing this lawsuit. *See*, *e.g.*, Dkt. 329 at 17

3    (Google arguing that "each one of the named Plaintiffs fatally undermined the claim" by

4    "testif[ying] they had not changed their behavior [on their] phones after learning 'the truth' about

5    sWAA," and arguing that Google has "strong defenses at trial on this basis").

6        Such argument and testimony should be excluded for at least three reasons.

7        **First**, Plaintiffs' ongoing use of apps is irrelevant. In granting class certification, this Court

8    correctly held that "Plaintiffs' continued use of Google's products and services does not equate to

9    consent." Dkt. 352 at 13. "[T]he relevant 'conduct' showing a lack of consent is the users'

10   decisions affirmatively to switch off the WAA and sWAA buttons." *Id.* at 9. "It is not, as Google

11   tries to argue, the fact that users continued using apps with Google's SDKs," including because it

12   is "unreasonable for Google to expect, as it does, that users must also stop using the many apps on

13   their phone, after selecting sWAA to be off, to show a lack of consent." *Id.*

14       **Second**, any theoretical relevance is extinguished by the simple fact that it is impossible to

15   avoid the at-issue Google SDKs. As Plaintiffs' technical expert will testify, Firebase is installed in

16   at least 97% of the top one thousand apps on Android and 54% of the top one thousand apps on

17   iOS—to say nothing of the GMA SDK, a separate tracking tool at issue in this case. Dkt. 314-5 at

18   ¶¶ 355–56. If a user accesses just five non-Google apps, the probability of their data being collected

19   by Google is at least 97%. *Id.* In this Court's own words, "the ubiquitous nature of phones, coupled

20   with the sheer number of apps with Google SDKs would render Plaintiffs' use of their phones

21   impossible." Dkt. 352 at 13. Short of ditching their phones altogether, Plaintiffs cannot avoid

22   interacting with apps that contain Google SDKs, and "the growing reliance on phones increasingly

23   make them necessities, not luxuries." *Id.* Given these circumstances, Plaintiffs' ongoing use of

24   apps that contain the at-issue Google SDKs is irrelevant to Google's consent and harm arguments

25   because Plaintiffs have no choice but to continue using their phones and exposing themselves to

26   Google's illegal data-collection practices.

27       **Third**, Google's argument puts "Plaintiffs in a Catch-22 that would essentially preclude

28   injunctive relief altogether." *In re Yahoo Mail*, 308 F.R.D. 577, 589 (N.D. Cal. 2015). *Yahoo Mail*

1    is on point. In a case about Yahoo's interception of email messages sent by non-Yahoo subscribers

2    to Yahoo subscribers, Yahoo "challenge[d] Plaintiffs' standing to seek injunctive or declaratory

3    relief under Rule 23(b)(2)." *Id.* at 587. Yahoo claimed that "Plaintiffs have continued to send

4    emails to Yahoo subscribers even after Plaintiffs learned that Yahoo allegedly scans, stores, and

5    uses those emails," and argued that plaintiffs' "knowledge of Yahoo's practices 'precludes [them]

6    from showing a likelihood of being injured in the future by those practices.'" *Id.*

7        The court squarely rejected this argument, reasoning it "would have the functional effect

8    of eliminating injunctive relief altogether":

9            Yahoo would require Plaintiffs to allege both (1) that Plaintiffs, in
             order to avoid "consenting" to Yahoo's conduct, stopped emailing
10           Yahoo subscribers after discovering Yahoo's alleged wrongful
             conduct, and (2) that Plaintiffs continued to email Yahoo subscribers
11           so that Plaintiffs allege a real and immediate threat of future injury,
             i.e., that Yahoo would intercept Plaintiffs' communications in the
12           future.

13   *Id.* at 589. The court "decline[d] to impose [that] impossible burden on Plaintiffs." *Id.*

14       The same principle carried the day in *Weidenhamer v. Expedia, Inc.*, a false advertising

15   class action relating to a website's pop-up message. 2015 WL 1292978 (W.D. Wash. Mar. 23,

16   2015). The defendant argued that "[plaintiff] now knows about the deceptive pop-up window, so

17   there is no plausible allegation that he will be fooled if he encounters it in the future," thereby

18   depriving him of standing to pursue injunctive relief. *Id.* at *5. As in *Yahoo*, the court rejected

19   defendant's "Catch-22 defense, which would make federal courts powerless to enjoin [unlawful

20   conduct]." *Id.* "The notion that only a clueless consumer can establish Article III standing to

21   redress [unlawful conduct] is unsupportable." *Id.*; *see also Ries v. Ariz. Beverages USA LLC*, 287

22   F.R.D. 523, 533 (N.D. Cal. 2012) ("the fact that [plaintiffs] discovered the supposed deception

23   some years ago does not render the advertising any more truthful").

24       This Court applied the same principles at class certification to reject Google's argument

25   that Plaintiffs "undermined" their claims by admitting they continue to use apps. Dkt. 352 at 12–

26   13. Relying on *Yahoo Mail*, 308 F.R.D. at 577, this Court also "declined to place such an

27   impossible burden on Plaintiffs seeking injunctive relief," reasoning that if Plaintiffs stopped using

28   the apps, "this would permit Google to argue that Plaintiffs lack standing to aver the instant

14

1   claims." *Id.* at 13. While this Court saw through Google's argument at class certification, the jury

2   will not be familiar with the law, much less the law on standing, and they should not be led astray

3   by undue reliance on a fact with significant implications for standing—a concept far beyond the

4   jury's scope. At a minimum, any probative value of Plaintiffs' ongoing use of these apps is

5   substantially outweighed by the dangers of unfair prejudice, confusing the issues, and misleading

6   the jury, where Plaintiffs would be penalized for behavior consistent with maintaining their

7   standing.

8                                    **CONCLUSION**

9          For the foregoing reasons, the Court should exclude the inadmissible evidence and

10  argument described in this Motion.

11  Dated: June 24, 2025                    Respectfully submitted,

12                                          By: */s/  Mark C. Mao*

13                                          Mark C. Mao (CA Bar No. 236165)
                                            mmao@bsfllp.com
14                                          Beko Reblitz-Richardson (CA Bar No. 238027)
                                            brichardson@bsfllp.com
15                                          BOIES SCHILLER FLEXNER LLP
16                                          44 Montgomery Street, 41st Floor
                                            San Francisco, CA 94104
17                                          Telephone: (415) 293 6858
                                            Facsimile (415) 999 9695
18
19                                          David Boies (*pro hac vice*)
                                            dboies@bsfllp.com
20                                          BOIES SCHILLER FLEXNER LLP
                                            333 Main Street
21                                          Armonk, NY 10504
                                            Telephone: (914) 749-8200
22
23                                          James Lee (*pro hac vice*)
                                            jlee@bsfllp.com
24                                          Rossana Baeza (*pro hac vice*)
                                            rbaeza@bsfllp.com
25                                          BOIES SCHILLER FLEXNER LLP
26                                          100 SE 2nd Street, Suite 2800
                                            Miami, FL 33131
27                                          Telephone: (305) 539-8400
                                            Facsimile: (305) 539-1307
28

                                            15

Alison L. Anderson (CA Bar No. 275334)
alanderson@bsfllp.com
M. Logan Wright (CA Bar No. 349004)
mwright@bsfllp.com
BOIES SCHILLER FLEXNER LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (213) 995-5720

Bill Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
Ryan Sila (*pro hac vice*)
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

16