1    COOLEY LLP
     BENEDICT Y. HUR (224018)
2    (bhur@cooley.com)
     SIMONA AGNOLUCCI (246943)
3    (sagnolucci@cooley.com)
     EDUARDO E. SANTACANA (281668)
4    (esantacana@cooley.com)
     ARGEMIRA FLÓREZ (331153)
5    (aflorez@cooley.com)
     HARRIS MATEEN (335593)
6    (hmateen@cooley.com)
     ISABELLA MCKINLEY CORBO (346226)
7    (icorbo@cooley.com)
     3 Embarcadero Center, 20th Floor
8    San Francisco, California  94111-4004
     Telephone:    +1 415 693 2000
9    Facsimile:    +1 415 693 2222

10   Attorneys for Defendant
     Google LLC

11

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14

15   ANIBAL RODRIGUEZ, et al. individually and    Case No. 3:20-CV-04688-RS
     on behalf of all others similarly situated,
16                                                 **DEFENDANT GOOGLE LLC'S MOTION IN
                      Plaintiff,                   LIMINE NO. 12 TO EXCLUDE EVIDENCE
17                                                 AND ARGUMENTS RELATING TO
            v.                                     ALPHABET INC.'S AND GOOGLE'S TOTAL
18                                                 REVENUE**
     GOOGLE LLC,
19                                                 Date:      July 30, 2025
                      Defendant.                   Time:      09:30 A.M.
20                                                 Court:     Courtroom 3, 17th Floor, SF
                                                   Judge:     Hon. Richard Seeborg
21
                                                   Date Action Filed: July 14, 2025
22                                                 Trial Date: August 18, 2025

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 30, 2025, at 09:30 A.M., before the Honorable Richard Seeborg of the United States District Court for the Northern District of California in Courtroom 3 of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Google LLC ("Google") will move the Court to exclude Plaintiffs' proposed Exhibit 429 (PX-429), Alphabet Inc.'s 10-K 2024, and evidence and arguments relating to Alphabet Inc.'s and Google's total revenue.

This Motion is based on this Notice of Motion, accompanying Memorandum of Points and Authorities, the Omnibus Declaration of Eduardo E. Santacana in Support of Google LLC's Motions in Limine Nos. 1-12 ("Santacana Decl.") filed concurrently therewith and exhibits attached thereto, and all other evidence in the record.

## ISSUE PRESENTED

Whether Plaintiffs' proposed Exhibit 429 (PX-429), Alphabet Inc.'s 10-K 2024, and evidence and arguments relating to Alphabet Inc.'s and Google's total revenue should be excluded pursuant to Rules 401, 402, 403 of the Federal Rules of Evidence.

Dated: June 24, 2025                                    COOLEY LLP


By: _/s/ Eduardo E. Santacana_
        Benedict Y. Hur
        Simona Agnolucci
        Eduardo Santacana
        Argemira Flórez
        Harris Mateen
        Isabella McKinley Corbo


Attorneys for Defendant
Google LLC

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.    **INTRODUCTION**

Google LLC ("Google") respectfully moves in limine to preclude Plaintiffs from introducing Plaintiffs' proposed Exhibit 429, Alphabet Inc.'s 10-K 2024, and evidence or argument of Alphabet Inc.'s ("Alphabet") and Google's total revenue for three reasons. *See* Omnibus Declaration of Eduardo E. Santacana in Support of Google LLC's Motions in Limine Nos. 1-12 ("Santacana Decl."), Ex. K.

***First***, Plaintiffs seek relief in the form of disgorgement, actual damages, and punitive damages. ECF No. 289 (Plaintiffs' Fourth Amended Complaint). None of the damages models that Plaintiffs have offered to support their request for relief require introducing Alphabet, Google's parent company's, total revenue to the jury. Most importantly, Alphabet is not a defendant in this case, Google is. In fact, Plaintiffs voluntarily dismissed allegations in this matter against Alphabet in 2020. *See* ECF No. 54 (Order granting stipulation dismissing all claims against Alphabet Inc.). Introducing Alphabet's total revenue would be confusing and misleading to a jury who might attribute Alphabet's total revenue to its subsidiary, Google. Furthermore, presenting this significant figure to the jury risks stirring up bias against Google that would tempt the jury to award damages based on passion and prejudice against big technology companies rather than the alleged harm Plaintiffs claim to have suffered in this case. This is precisely the type of information that warrants exclusion under Federal Rule of Evidence 403. Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury . . . .").

***Second***, to the extent this Court permits Plaintiffs to submit Google's total revenue figure solely for purposes of proving their case for punitive damages, the trial must be bifurcated to avoid unduly prejudicing Google. Any relevance of Google's total revenue figure is substantially outweighed by a danger of unfair prejudice if shown to the jury while they are assessing liability and compensatory damages. Fed. R. Evid. 403. That is because presenting large revenue figures to a jury while they are deliberating over liability issues might cause jurors to make decisions based on Google's wealth rather than facts related to alleged liability. As such, Google requests

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEF. MIL NO. 12 TO EXCLUDE EVIDENCE
AND ARGUMENTS RELATING TO ALPHABET
INC.'S AND GOOGLE'S TOTAL REVENUE
3:20-CV-04688-RS

1   contemporaneously with this Motion that this Court bifurcate the trial into two phases: First,

2   addressing liability for and the amount of compensatory damages.  Second, addressing any

3   potential discussion of liability for and the amount of punitive damages.

4       ***Third***, introducing evidence of Google's and/or Alphabet's total revenue through

5   Alphabet's 10-K 2024 would mislead and confuse jurors as to what revenue inputs and products

6   they should be considering when assessing what, if any, damages award to grant.  Alphabet Inc. is

7   a collection of businesses and Google offers other products and services than those at issue in this

8   case.  Jurors may be confused as to what products and revenue discussed in Alphabet's 10-K pertain

9   to the specific harm Plaintiffs allege in this case.

10      Google hereby moves in limine to exclude, under Federal Rules of Evidence 401, 402, and

11  403, any evidence or arguments of Alphabet's and Google's total revenue as well as Alphabet's

12  10-K 2024.

13  **II.    BACKGROUND**

14          **A.    Alphabet Inc.'s and Google's financial reporting.**

15      Google is a subsidiary of Alphabet Inc. ECF No. 364-23 (Expert Report of Michael J.

16  Lasinski) ¶ 18.  They are distinct entities.  Presumably, Plaintiffs have understood this distinction

17  since 2020 when they voluntarily dismissed allegations in this matter against Alphabet. *See* ECF

18  No. 54.  In its 2024 10-K, Alphabet reports financials for Google and non-Google businesses.  It

19  groups the latter under the category of "Other Bets."  Declaration of Eduardo E. Santacana in

20  Support of Google LLC's Motions in Limine Nos. 1-12 ("Santacana Decl.") Ex. K (PX-429,

21  Alphabet Inc.'s 10-K 2024) at 30.  "Revenues from Other Bets are generated primarily from the

22  sale of healthcare-related services, and internet services." *Id.* at 33.

23      "From a financial reporting perspective, Google is comprised of two segments: Google

24  Cloud and Google Services. The Google Cloud segment generates revenue from fees received for

25  the Google Cloud Platform, which provides customers with scalable infrastructure, and from fees

26  received for Google Workspace cloud-based collaboration tools for enterprises. The Google

27  Services segment covers core products and platforms including those which Google categorizes as

28  Ads, Android, Chrome, Gmail, Search, and YouTube."  ECF No. 364-23 ¶ 18 (referencing

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEF. MIL NO. 12 TO EXCLUDE EVIDENCE
AND ARGUMENTS RELATING TO ALPHABET
INC.'S AND GOOGLE'S TOTAL REVENUE
3:20-CV-04688-RS

Alphabet's Dec. 2022 10-K).  Google generates advertising revenues from advertisers paying for the placement of ads.

During expert discovery, Google produced detailed financials and metrics requested by Plaintiffs' damages expert pertaining to revenue from Google's Ad technology products at issue in this case.  These included documents with information about income and business costs that the Parties' experts relied upon, referenced, and cited in their expert reports and that are currently listed as exhibits in the Parties' joint exhibit list, such as:

- **Exhibit G0075-76:** App Promo Revenue for the years 2019–2021 (GOOG-RDGZ-00185743-4)
- **Exhibit G0095/PX0428:** AdMob Profits & Loss Data for the years 2022–2023 (GOOG-RDGZ-02111188)
- **Exhibit G0096/PX0421:** App Promo Revenue for the years 2022–2023 (GOOG-RDGZ-02111189)
- **Exhibit G0099:** App Promo Revenue for the years 2023–2024 (GOOG-RDGZ-02111193)
- **Exhibit G0073/PX0419:** App Promo Income Statement for the years 2017–2021 (GOOG-RDGZ-00184247)
- **Exhibit G0081, G0082/PX0424, PX0425:** App Promo Profits & Loss Data for the years 2018–2021 (GOOG-RDGZ-00187665-6)

*See generally* ECF No. 364-23 (Expert Report of Michael J. Lasinski) (referencing some of these documents).  The income statements reflect gross and net revenue, and related costs, for the relevant Google products and services at issue in this case throughout the relevant time period.

### B.    Plaintiffs' damages requests.

Plaintiffs seek relief in the form of disgorgement, actual damages, and punitive damages. ECF No. 289 (Plaintiffs' Fourth Amended Complaint).  Plaintiffs' damages expert, Michael Lasinski calculates disgorgement by relying on financial data produced by Google.  Plaintiffs' (incorrect) theory is that Google was unjustly enriched by using (s)WAA-off data for its "attribution" or "conversion tracking" services, even though both services are offered to advertisers free of charge to help them understand the effectiveness of their ad campaign.  To quantify Plaintiffs' disgorgement request, Mr. Lasinski calculates the U.S. revenue from products Google offers app developers free of charge—AdMob, App Promo, and Ad Manager.[1]  *See* ECF No. 364-

---

[1] Though Google offers versions of these products at a cost, the paid products are not at issue in this case.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEF. MIL NO. 12 TO EXCLUDE EVIDENCE
AND ARGUMENTS RELATING TO ALPHABET
INC.'S AND GOOGLE'S TOTAL REVENUE
3:20-CV-04688-RS

1    23 (Expert Report of Michael J. Lasinski) at 1.  These products are just a subset of many products

2    offered by Google, which is just one of Alphabet's businesses.  Based on Mr. Lasinski's

3    calculations, Plaintiffs demand that Google be forced to disgorge between $1.5 billion and $1.725

4    billion.

5    Plaintiffs' actual damages theory is equally confounding.  Plaintiffs seek over $523 million

6    based on a theory that every class member is entitled to a $3 payment for each of their devices.  Mr.

7    Lasinski took the $3-per-device figure from Google's Ipsos Screenwise Panel, a consumer research

8    program that compensates participants for collection of their data.  To reach his final calculation,

9    he multiplies this $3 figure by his estimated number of class member devices.  His calculations do

10   not rely on Alphabet's total revenue to reach this number.

11   Plaintiffs also seek punitive damages.  There is no damages model for this category but, per

12   the Ninth Circuit's Model Jury Instructions, jurors assessing these damages will be asked to

13   consider the reprehensibility of the conduct that harmed the Plaintiffs, and the relationship of any

14   award of punitive damages to any actual harm inflicted on the Plaintiffs. *See* Ninth Circuit Model

15   Jury Instructions 5.5.

16   **III.    ARGUMENT**

17   **A.    Alphabet's total revenue is irrelevant to the fact issues in dispute.**

18   Plaintiffs allege that Google earns revenue from the collection of (s)WAA-off data from

19   U.S. account holders who turned sWAA-off during the relevant time period and used a third-party

20   app that had integrated GA for Firebase or the Google Mobile Ads SDK.  *See generally* ECF No.

21   364-23 (Expert Report of Michael J. Lasinski).  But Alphabet's total revenue does not reflect that

22   distinct metric and is not limited to revenue Google received from U.S. account holders.  Alphabet

23   consists of a collection of businesses unrelated to Plaintiffs' claims.  Admitting Alphabet's total

24   revenue at this late stage in the case would result in opening the door to discussion of irrelevant

25   products and their associated revenue, which do not fit Plaintiffs' theory of damages. *See, e.g.*,

26   Santacana Decl. Ex. K (PX-429, Alphabet Inc.'s 10-K 2024) at 64 (listing revenue for "Google

27   subscriptions, platforms, and devices").  The door should remain closed.  Irrelevant evidence is not

28   admissible.  Fed. R. Evid. 402.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEF. MIL NO. 12 TO EXCLUDE EVIDENCE
AND ARGUMENTS RELATING TO ALPHABET
INC.'S AND GOOGLE'S TOTAL REVENUE
3:20-CV-04688-RS

1    Plaintiffs have disclosed during meet and confers and through their proposed exhibit list

2  their intention to introduce Alphabet Inc.'s 2024 10-K, and Alphabet's total revenue figures as part

3  of their request for damages.  Santacana Decl. ⁋ 6.  There is no utility to allowing Plaintiffs to

4  submit Alphabet's total revenue.  Throughout this litigation, the parties have stipulated to total

5  revenue numbers for *specific* Google products and Google has produced specific information

6  related to costs and projections related to those products.  This is the information that Plaintiffs and

7  their damages expert used to form opinions and damages models, and this is the information that

8  should anchor Plaintiffs' arguments and presentation of evidence at trial.  *See, e.g.*, ECF No. 481

9  (Joint Stipulation on Google's Supplemental Financial Productions); ECF No. 364-23 (Expert

10  Report of Michael J. Lasinski).

11    **B.    Unless the trial is bifurcated, Google's total revenue must be excluded because**
12    **its relevance is outweighed by substantial prejudice to Google.**

13    It is no secret that evidence of a party's wealth might bias a jury against that party when

14  awarding damages.  *See, e.g.*, *Guardian Life Ins. Co. of Am. v. Andraos*, No. CV 07-05732 SJO

15  (FMOx), 2009 WL 10674144, at *3 (C.D. Cal. Sept. 10, 2009) (granting motion to exclude "David

16  versus Goliath" evidence and finding that "any slight probative value that evidence of [a party's]

17  wealth and size may have to th[e] action is outweighed by the danger that such evidence might

18  unfairly prejudice the jury into finding for [the opposing party] based in part on [the party's] status

19  as a large, wealthy corporation.") (citing cases); *Zoll v. Ruder Finn, Inc.*, No. 01 CIV. 1339 (CSH),

20  2004 WL 527056, at *5 (S.D.N.Y. Mar. 16, 2004) ("Evidence of wealth alone invites the jury to

21  award Plaintiff sums based on the depth of [Defendants'] pockets, rather than on the value

22  contributed to Defendants' businesses by the use of the [at-issue images] or actual losses suffered

23  by Plaintiff.  Without sufficient evidence linking [Defendants'] alleged success to Defendants'

24  alleged wrongs, descriptions of what is in [Defendants'] wallet do not pass muster under Rule

25  403"); *Nanometrics, Inc. v. Optical Sols., Inc.*, No. 18-CV-00417-BLF, 2023 WL 7169549, at *4

26  (N.D. Cal. Oct. 30, 2023) (granting motion in limine to exclude references to plaintiff's size, public

27  company status and revenue because relevance of the difference in the parties' sizes was

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEF. MIL NO. 12 TO EXCLUDE EVIDENCE
AND ARGUMENTS RELATING TO ALPHABET
INC.'S AND GOOGLE'S TOTAL REVENUE
3:20-CV-04688-RS

1    substantially outweighed by the risk of unfair prejudice created by a potential David v. Goliath

2    argument).

3    　　　To avoid the risk of undue prejudice against Google, this Court should bifurcate trial into

4    two phases: (1) addressing evidence of liability and compensatory damages; (2) addressing any

5    potential discussion of liability for and the amount of punitive damages. That way, any evidence

6    put forth on punitive damages, such as Google's wealth or financial condition, would not

7    improperly taint the jury's view as it determines liability and compensatory damages.

8    "[B]ifurcation will not only improve efficiencies in the litigation process, but it will also help

9    prevent juror confusion at trial by allowing the jury to decide issues that are as narrowly tailored as

10    possible." *Gable v. Land Rover N. Am., Inc.*, No. SACV 07-0376 AG (RNBx), 2011 WL 3563097,

11    at *7 (C.D. Cal. July 25, 2011) (granting motion to bifurcate trial into a liability phase and a

12    damages phase). As further explained in Google LLC's Motion to Bifurcate Trial Re: Punitive

13    Damages filed concurrently herewith, bifurcating trial this way would avoid prejudice to Google

14    and would not prejudice Plaintiffs.

15    　　　Even if the Court were to bifurcate the trial into two phases, only Google's total revenue

16    would be relevant, not Alphabet's. "It is a general principle of corporate law deeply ingrained in

17    our economic and legal systems that a parent corporation . . . is not liable for the acts of its

18    subsidiaries." *United Techs. Corp. v. Am. Home Assur. Co.*, 118 F. Supp. 2d 174, 180–81 (D. Conn.

19    2000) (quoting *United States v. Bestfoods*, 524 U.S. 51, 60 (1998)) (declining to adopt plaintiff's

20    formula of one percent of parent company's net worth as a measure of exemplary damages because

21    parent company was not party to lawsuit).

22    　　　To be sustained on appeal, the party seeking punitive damages need only ensure that the

23    trial record "contains meaningful evidence of the defendant's financial condition . . . ." *Mighty*

24    *Enters., Inc. v. She Hong Indus. Co.*, 745 F. App'x 706, 709 (9th Cir. 2018) (citation omitted).

25    There is sufficient evidence on the record of Google's revenue without the admission of Alphabet's

26    total revenue. To date, the Parties and their experts have relied upon financial data produced by

27    Google pertaining to a limited subset of products in order to calculate and opine on Google's alleged

28    unjust enrichment. This financial data offers evidence of costs in addition to gross and net revenues

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEF. MIL NO. 12 TO EXCLUDE EVIDENCE
AND ARGUMENTS RELATING TO ALPHABET
INC.'S AND GOOGLE'S TOTAL REVENUE
3:20-CV-04688-RS

from those specific products. Courts have found this type of information satisfactory for assessing a defendant's wealth, financial condition, or ability to pay the punitive damage. *See, e.g.*, *Mighty Enters., Inc.*, 745 F. App'x at 709 ("Although California courts do not have a rigid requirement for the method of proof, '[n]ormally, evidence of liabilities should accompany evidence of assets.'" (alteration in original) (citation omitted)).

Furthermore, there are touchpoints other than a defendant's wealth for determining the appropriateness of a punitive damages award. To determine whether a punitive damage award is excessive under California law, courts also consider "the reprehensibility of the defendants' conduct, and the relation between the compensatory damages awarded and the harm suffered . . . ." *See Lee v. Lee*, No. LA CV19-8814-JAK (PVCx), 2023 WL 6787826, at *5 (C.D. Cal. Aug. 24, 2023), *reconsideration denied*, 2023 WL 11909757 (C.D. Cal. Oct. 19, 2023). "Although there is no fixed ratio, punitive damages must be proportional to recoverable compensatory damages. The question is whether the difference between the two figures is so wide that the punitive damages have been divorced from the societal goals of retribution and deterrence. [I]n general, even an act of considerable reprehensibility will not be seen to justify a proportionally high amount of punitive damages if the actual harm suffered thereby is small." *Lee*, 2023 WL 6787826, at *6 (alteration in original) (citations omitted). Plaintiffs were not harmed by Google's alleged misconduct in this case. However, should the jury decide to award any punitive damages, the jury and this Court would find that the record is replete with information pertaining to Google's financial condition and ability to pay the award. *See supra* II.A. It can weigh that alongside the alleged reprehensibility of Google's conduct and the relation between that and the compensatory damages awarded.

### C. Evidence of Google's and Alphabet's total revenue would mislead and confuse the jury.

To the extent this Court finds that Alphabet's and Google's total revenue is relevant to the outstanding fact disputes in this case, this Court has the discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury . . . ." Fed. R. Evid. 403. This Court should exclude Alphabet's 10-K and Alphabet's and Google's total revenue on those grounds. Any relevance of the total

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    revenue figures and financial information in the 10-K is outweighed by the danger of misleading

2    the jury into thinking that these revenue figures equate to amounts that should be disgorged.

3        Plaintiffs should not be permitted to introduce these revenue figures through Alphabet's

4    10-K because doing so would risk confusing the jury as to which products generate the profits that

5    Plaintiffs claim unjustly enriched Google.  For example, while Alphabet Inc.'s 2024 10-K, which

6    is about 100 pages long, does contain reference to products at issue in this case, descriptions of

7    relevant product revenue are not always under those specific product categories or intuitive titles,

8    and they are spread across several pages.  *See, e.g.*, Santacana Decl. Ex. K (PX-429, Alphabet Inc.'s

9    10-K 2024) at 32, 36, and 57 (referring to Ad Manager and AdMob as part of Google Network).

10    And while this way of describing products makes sense in the context within which this document

11    was created—*i.e.*, for compliance with U.S. securities laws—this makes admission of a document

12    like a 10-K unhelpful to jurors in a trial.  In this case, relevant excerpts pertaining to advertising

13    revenue at issue in this case are thrown in the mix with voluminous amounts of irrelevant financial

14    information pertaining to businesses, products, and services that are not at issue in this case, like

15    "Other Bets" which generate revenue primarily from the sale of healthcare-related services, and

16    internet services.  *See, e.g.*, Santacana Decl. Ex. K (PX-429, Alphabet Inc.'s 10-K 2024) at 7-8

17    (explaining how Alphabet makes money), at 35 (Executive Overview of consolidated financial

18    results in millions), at 37 (Revenues by geography), at 52 (Consolidated Balance Sheets), at 64

19    (listing revenue for "Other Bets," "Google subscriptions, platforms, and devices").  Alphabet Inc.'s

20    2024 10-K also contains other irrelevant information that would be prejudicial if admitted, such as

21    discussions of pending investigations into, and lawsuits against, Google which are unrelated to the

22    alleged conduct in this case.  *Id.* at 10-25 (discussing Risk Factors).

23        This is precisely the type of prejudicial information that Rule 403 was meant to exclude.

24    Introducing Alphabet Inc.'s 2024 10-K and Alphabet's and Google's total revenue numbers into

25    evidence would risk prejudicing Google by potentially causing jurors to award a higher damages

26    number based on confusion about what, if any, revenue streams are relevant to the damages

27    analysis.  Furthermore, seeing revenue numbers outside of their proper context may stir up bias

28

Cooley LLP
Attorneys at Law
San Francisco

10

Def. MIL No. 12 to Exclude Evidence
and Arguments Relating to Alphabet
Inc.'s and Google's Total Revenue
3:20-CV-04688-RS

1    against Google that would tempt the jury to view Google as a Goliath and award damages based

2    on passion and prejudice rather than the alleged harm Plaintiffs allegedly suffered in this case.

3    **IV.    CONCLUSION**

4        Google does not seek to exclude the obvious.  Google is a prominent technology company

5    whose products are ubiquitous. Plaintiffs' reference to these generalities is not at issue in this

6    Motion.  Google's request is discrete.  What Google seeks to exclude is argument and evidence at

7    trial about products and revenues that are unrelated to the underlying claims, such as those provided

8    in Plaintiffs' proposed exhibit, PX-429, Alphabet Inc.'s 10-K 2024.

9        For the foregoing reasons, the Court should exclude PX-429, and any evidence or argument

10    regarding Alphabet's revenue.  To the extent the Court finds that Google's total revenue is relevant

11    to Plaintiffs' punitive damages analysis, Google requests that the Court bifurcate the trial into two

12    phases and only permit evidence of Google's total revenue in the second phase.

13

14    Dated: June 24, 2025                                COOLEY LLP

15

16                                            By: */s/ Eduardo E. Santacana*
                                                Benedict Y. Hur
17                                              Simona Agnolucci
                                                Eduardo Santacana
18                                              Argemira Flórez
                                                Harris Mateen
19                                              Isabella McKinley Corbo

20

21                                              *Attorneys for Defendant*
                                                *Google LLC*

22

23

24

25

26

27

28

DEF. MIL NO. 12 TO EXCLUDE EVIDENCE
AND ARGUMENTS RELATING TO ALPHABET
INC.'S AND GOOGLE'S TOTAL REVENUE
3:20-CV-04688-RS

1 | COOLEY LLP
BENEDICT Y. HUR (224018)
2 | (bhur@cooley.com)
SIMONA AGNOLUCCI (246943)
3 | (sagnolucci@cooley.com)
EDUARDO E. SANTACANA (281668)
4 | (esantacana@cooley.com)
ARGEMIRA FLÓREZ (331153)
5 | (aflorez@cooley.com)
HARRIS MATEEN (335593)
6 | (hmateen@cooley.com)
ISABELLA MCKINLEY CORBO (346226)
7 | (icorbo@cooley.com)
3 Embarcadero Center, 20th Floor
8 | San Francisco, California  94111-4004
Telephone:    +1 415 693 2000
9 | Facsimile:    +1 415 693 2222

10 | Attorneys for Defendant
Google LLC

11

12 | UNITED STATES DISTRICT COURT

13 | NORTHERN DISTRICT OF CALIFORNIA

14

15 | ANIBAL RODRIGUEZ, et al. individually and
on behalf of all others similarly situated,

Case No. 3:20-CV-04688-RS

16 |
Plaintiff,

**[PROPOSED] ORDER GRANTING
DEFENDANT GOOGLE LLC'S MOTION IN
17 | LIMINE NO. 12 TO EXCLUDE EVIDENCE
AND ARGUMENTS RELATING TO
18 | ALPHABET INC.'S AND GOOGLE'S TOTAL
REVENUE**

v.

GOOGLE LLC,

19 |
Defendant.

20 | Date:      July 30, 2025
Time:      09:30 A.M.
Court:     Courtroom 3, 17th Floor, SF
21 | Judge:     Hon. Richard Seeborg

22 | Date Action Filed: July 14, 2025
Trial Date: August 18, 2025

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[PROPOSED] ORDER GRANTING DEF. MIL
NO. 12 TO EXCLUDE EVIDENCE AND
ARGUMENTS RELATING TO ALPHABET INC.'S
AND GOOGLE'S TOTAL REVENUE
3:20-CV-04688-RS

1

**[PROPOSED] ORDER**

2      Before the Court is Defendant Google LLC's ("Google") Motion in Limine No. 12 to

3  preclude Plaintiffs from introducing Plaintiffs' proposed Exhibit 429 (PX-429), Alphabet Inc.'s 10-

4  K 2024, and evidence or argument of Alphabet Inc.'s ("Alphabet") and Google's total revenue.

5      Having considered the Notice of Motion and Motion in Limine, the incorporated

6  Memorandum of Points and Authorities, the Omnibus Declaration of Eduardo E. Santacana in

7  Support of Google LLC's Motions in Limine Nos. 1-12 filed concurrently therewith, and the

8  exhibits attached thereto, along with other materials in the record, argument of counsel, and such

9  other matters as the Court may consider, the Court GRANTS Google's Motion.

10      Accordingly, IT IS HEREBY ORDERED THAT:

11      Plaintiffs' proposed Exhibit PX-429, Alphabet Inc.'s 10-K 2024, and testimony and

12  argument relating to Alphabet Inc.'s and Google's total revenue will be excluded from trial in the

13  above-captioned matter.  To the extent the Court finds that Google's total revenue is relevant to

14  Plaintiffs' punitive damages analysis, Google requests that the Court bifurcate the trial into two

15  phases and only permit evidence of Google's total revenue in the second phase.

16

17      **IT IS SO ORDERED.**

18

19

20  DATED: _____        _____

21                                  Honorable Richard Seeborg
                                    United States District Judge

22

23

24  320604473

25

26

27

28

2

[Proposed] Order Granting Def. MIL
No. 12 to Exclude Evidence and
Arguments Relating to Alphabet Inc.'s
and Google's Total Revenue
3:20-CV-04688-RS