**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
mmao@bsfllp.com
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted *pro hac vice*)
bcarmody@susmangodfrey.com
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted *pro hac vice*)
jyanchunis@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505

*Counsel for Plaintiffs; additional counsel listed in signature blocks below*

**COOLEY LLP**
BENEDICT Y. HUR (SBN: 224018)
bhur@cooley.com
SIMONA AGNOLUCCI (SBN: 246943)
sagnolucci@cooley.com
EDUARDO E. SANTACANA (SBN: 281668)
esantacana@cooley.com
ARGEMIRA FLOREZ (SBN: 331153)
aflorez@cooley.com
HARRIS MATEEN (SBN 335593)
hmateen@cooley.com
3 Embarcadero Center, 20th Floor San Francisco, California 94111-4004
Telephone: (415) 693-2000

*Counsel for Defendant Google LLC*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:20-cv-04688-RS<br><br>**JOINT PRETRIAL STATEMENT**<br><br>Judge: Hon. Richard Seeborg<br>Courtroom: 3, 17th Floor |

CASE NO. 3:20-cv-04688-RS
JOINT PRETRIAL STATEMENT

Pursuant to the Court's January 9, 2025 Case Management Scheduling Order (Dkt. 446), the Court's Guidelines for Final Pretrial Conferences in Civil Jury Cases, and in advance of the Final Pretrial Conference set for July 30, 2025, Plaintiffs and Defendant Google LLC jointly submit this Pretrial Conference Statement.

1. **Substance of the Action**

Plaintiffs are four individuals appointed as class representatives asserting claims against Google. The class period is July 1, 2016 through September 23, 2024. On behalf of the certified classes, Plaintiffs assert three claims against Google: (1) violation of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"); (2) invasion of privacy; and (3) intrusion upon seclusion. Google denies these claims and asserts the following affirmative defenses: (1) Statute of Limitations and (2) Consent. Plaintiffs deny those defenses. The operative pleadings are Plaintiffs' Fourth Amended Complaint (Dkt. 289) and Google's Answer (Dkt. 305).

2. **Relief Prayed**

Plaintiffs' Statement

The Court certified classes under Rule 23(b)(2) and 23(b)(3), and Plaintiffs seek monetary relief and injunctive relief on behalf of the members of those certified classes.

**Monetary Relief:** As monetary relief, Plaintiffs seek damages based on Google's unjust enrichment, compensatory damages, and punitive damages, plus interest, attorneys' fees, and costs and expenses. Plaintiffs also seek nominal damages for harms Plaintiffs have raised, including but not limited to harm to Class Members' devices and bandwidth.

The compensatory damages sought by Plaintiffs, as calculated by Plaintiffs' expert for the class period, are at least $523 million, broken down as at least $266.7 million for Class 1 (Android) and at least $256.3 million for Class 2 (Non-Android). These calculations are based on the conservative application by Plaintiffs' expert of a single $3 payment per class member device,

without accounting for the fact that many class members had (s)WAA turned off and data collected during multiple months within the class period (which was about 98 months). Through the Screenwise program, Google paid $3 per month, not just per device. This means that the calculation of these damages by Plaintiffs' expert is a conservative baseline for compensatory damages.

Consistent with the Court's order on Google's motion to strike (Dkt. 462), Plaintiffs intend to ask the jury to draw inferences based on other evidence admitted at trial so as to award damages in excess of their expert's conservative floor. Jurors may rely on Mr. Lasinski's testimony (as reflected in his initial report) to reach their own conclusions as to whether these damages should exceed his initial, conservative floor and endorse his opinion about a monthly measure being appropriate. Google produced information regarding the monthly number of (s)WAA-off accounts, and jurors may rely on that information and other evidence to estimate the number of months in which damages occurred and then multiply the estimated months by $3 per user or per device. The specific amount of these damages should be decided by the jury based on the evidence presented at trial.

Google's unjust enrichment, as calculated by Plaintiffs' expert for the class period, is at least $1.5 billion (Scenario 1) or $1.725 billion (Scenario 2). For Scenario 2, this is broken down as at least $1.07 billion for Class 1 (Android) and at least $656 million for Class 2 (Non-Android). As detailed by Plaintiffs' expert, these Google unjust enrichment calculations are based on financial information from Google limited to three Google revenue streams (App Promo, AdMob, and Ad Manager). Google was enriched in other ways by saving and using this app activity data, including for example Google's development and improvement of its AI products and services. The unjust enrichment calculations provided by Plaintiffs' expert are therefore a conservative baseline regarding Google's unjust enrichment.

Google has indicated below that it intends to file a Motion *in Limine* on the position that the Court, rather than the jury, is to decide unjust enrichment. Plaintiffs strongly disagree and will respond in opposition to Google's motion.

Any calculation regarding punitive damages and nominal damages should be left to the jury, based on the evidence to be presented at trial, and any calculation regarding interest, attorneys' fees, and costs and expenses should be left to the Court.

**Injunctive Relief:** As stated in their class certification motion, Plaintiffs intend to seek injunctive relief tied to Google's ongoing collection, storage, and use of (s)WAA-off app activity data. Consistent with the Rule 23(b)(2) classes and the relief sought for those classes that this Court certified, Plaintiffs will seek an order: (1) precluding Google from further collecting, storing, and using consumers' (s)WAA-off app activity data; (2) requiring Google to delete already collected (s)WAA-off app activity data; (3) requiring Google to delete any products, services, or algorithms built in whole or in part with that unlawfully collected (s)WAA-off app activity data; and (4) appointing an independent third-party to verify that the injunctive relief has been (and continues to be) implemented.

In addition to stopping Google from continuing to collect data without permission, there is also precedent to require Google to destroy algorithms, models, and services created using ill-gotten data. *See Brown v. Google LLC*, 2022 WL 17961497, **19–20 (N.D. Cal. Dec. 12, 2022) (certifying Rule 23(b)(2) injunctive classes relating to data collection and use); *Doe v. Mindgeek USA Inc.*, 702 F. Supp.3d 937, 953 (N.D. Cal. 2023) (certifying Rule 23(b)(2) injunctive class that enjoined defendant from use of data absent certain prerequisites); *United States v. Kurbo Inc., et al.*, 22-cv-00946-TSH (N.D. Cal. Mar. 3, 2022) (requiring deletion of models and algorithms built with improperly obtained data); *see also In the Matter of Everalbum, Inc., et al.*, FTC Dkt. No. C-4743 (May 6, 2021) (requiring deletion of facial recognition algorithms that were developed using photos

and videos of customers without their consent). It is also routine in data privacy cases of this sort to appoint a third-party monitor to ensure that a defendant makes injunctive changes. *See Adkins v. Facebook, Inc.*, 2021 WL 1817047, at *6 (N.D. Cal. May 6, 2021) (finally approving settlement that required independent monitor, following district court's certification of contested Rule 23(b)(2) class requiring appointment of an independent monitor reporting to the Court and class counsel for five year period); *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *10 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022) (approving "annual third-party assessments to ensure compliance with [a new cyber security] framework every year for four years"). As part of the Court's consideration of any appropriate injunctive relief, after trial, Plaintiffs may seek to have Google produce non-privileged documents discussing such changes. *See, e.g.*, *United States v. Google LLC*, 23-cv-0108 (LMB/JFA) Dkt. 1450 (E.D.Va. May 30, 2025) (as part of assessment of injunctive relief, ordering Google to produce certain internal reports and analyses prepared by non-lawyers at Google).

<u>Google's Statement</u>

Plaintiffs are not entitled to the speculative and unsupported monetary or injunctive relief they seek. Plaintiffs' case is built on a mischaracterization of Google's technology and disclosures, and their damages models are fundamentally disconnected from the facts of this case and any purported harm. Plaintiffs have failed to demonstrate any actual, class-wide harm that would justify the billions of dollars they request.

**Monetary Relief:** Plaintiffs advance three theories for monetary relief: (1) disgorgement of Google's alleged "unjust enrichment," (2) compensatory "actual" damages, and (3) punitive damages. But these models are built on layers of flawed assumptions and incorrect data, designed to produce an enormous and unwarranted damages figure that bears no resemblance to reality.

*First*, Plaintiffs are not entitled to disgorgement of Google's profits because Google was not unjustly enriched. As explained more fully in Google's accompanying Motion in Limine No. 2, Plaintiffs' demand that Google be forced to disgorge between $1.5 billion and $1.725 billion should not be presented to the jury at all.

And even if the jury were to consider this issue, Plaintiffs' theory that Google profited from sWAA-off data is based on a false premise. Plaintiffs' theory is that Google was unjustly enriched by using (s)WAA-off data for its "attribution" or "conversion tracking" service. This is incorrect. As the evidence at trial will show, Google's revenue comes from advertisers paying for the placement of ads. The attribution service at issue, Google Analytics for Firebase ("GA4F"), is a free, after-the-fact measurement tool that helps an advertiser understand the effectiveness of their ad campaign.

*Second*, Plaintiffs have suffered no "actual damages." Plaintiffs seek over $523 million in so-called "actual damages," based on a theory that every class member is entitled to a $3 payment for each of their devices. They will not be able to prove this theory because (1) Plaintiffs have shown no concrete, class-wide harm, and (2) their $3 valuation has no economic basis and is derived from a completely incomparable program.

Plaintiffs will be unable to convince a jury that they were actually harmed because:

- **The Named Plaintiffs' Behavior Was Unchanged:** None of the named Plaintiffs changed their behavior, and instead, continued using the same apps and services after learning of the conduct they now claim harmed them.

- **The Alleged Harm Is Trivial:** Plaintiffs cannot show that the class suffered any concrete harm. This is particularly true for claims of emotional distress. As the Court noted in its order denying summary judgment, emotional harms are typically individualized, and "Plaintiffs have offered no models or explanations for how these harms apply across the classes." (Dkt. 445). The Court further observed that Plaintiffs' counsel even conceded that if emotional harm were the only theory, "only nominal damages would be available to the class." *Id.* The other alleged harms, such as depletion of battery life and bandwidth, are similarly trivial. These de minimis effects cannot justify a $523 million award. If the jury finds liability but no actual harm, the only appropriate award is $1.

Additionally, Google will demonstrate that the $3 valuation is based on a false equivalency. The $3-per-device figure is taken from Google's Ipsos Screenwise Panel, a consumer research program. Dr. Knittel will explain that this comparison is economically baseless. The Screenwise payment compensated participants for virtually all of their data. Plaintiffs cannot equate this comprehensive, data-sharing program with the collection of pseudonymous, event-based data at issue in this case. One is a payment for total device access; the other is a record that a non-identifiable device clicked on an ad.

Finally, Google will demonstrate to jurors that Plaintiffs' damages theory punishes companies for attempting to provide privacy-protective controls. They sued Google precisely because it offered a control—sWAA—that Plaintiffs allege was imperfect. Other analytics companies that offer no such controls remain unscathed. Awarding damages here would send a message that it is better to do nothing for user privacy than to offer a control that may be subject to misinterpretation.

In the Court's February 21, 2025 order, the Court found that without Mr. Lasinski's stricken opinion, Plaintiffs' expert, Mr. Lasinski, is "limited to opining that a monthly measure of damages is appropriate and that, at the very least, actual damages can be measured via a one-time $3 payment per user or device." Dkt. 462. The Court explicitly prohibited Mr. Lasinski from testifying that damages could "range up to $30 billion." *Id.*

While the Court noted that jurors may "reach their own conclusions as to whether actual damages exceed his initial, conservative floor," it did not grant Plaintiffs license to introduce a specific, prohibited damages calculation to the jury under the guise of "drawing inferences." The Court should ensure that while jurors are free to make their own determinations based on the admitted evidence, Plaintiffs are not permitted to make that inference for them by suggesting a

specific number their own expert was forbidden from presenting, thereby undermining the Court's Order.

**Third**, punitive damages are entirely unwarranted because Plaintiffs cannot meet the high standard for "malice, oppression, or fraud." The evidence shows that Google acted in good faith. Jurors will learn how Google created the sWAA control and erected significant technical barriers to separate pseudonymous data from personally-linked data. Jurors will see internal communications that demonstrate a culture aimed at *improving* user privacy and clarity, which is the very opposite of the malice required for a punitive award.

**Injunctive Relief:** Plaintiffs' demands for injunctive relief are sweeping, punitive, and technically unfeasible. They are based on a fundamental misunderstanding of Google's systems and ignore the robust, privacy-protective safeguards already in place. These demands are a transparent attempt to improperly interfere with Google's business and degrade services for millions of consumers. Google will address them in more detail if it becomes necessary.

### 3.  Undisputed Facts

The Parties are continuing to meet and confer regarding the possibility of additional factual stipulations and have so far agreed to the following:

1. The relevant time period for all claims is from July 1, 2016 through September 23, 2024.

2. The two certified classes for purposes of the claim for violation of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA") are:

   a. Class 1 or the "Android Class": All individuals who, during the period beginning July 1, 2016 and continuing through September 23, 2024, (a) had their "Web & App Activity" and/or "supplemental Web & App Activity" setting turned off and (b) whose activity on a non-Google-branded mobile app was still transmitted to Google, from (c) a mobile device running the Android operating system, because of the Firebase Software Development Kit ("SDK") and/or Google Mobile Ads SDK.

    b.  Class 2 or "non-Android Class": All individuals who, during the period beginning July 1, 2016 and continuing through September 23, 2024, (a) had their "Web & App Activity" and/or "supplemental Web & App Activity" setting turned off and (b) whose activity on a non-Google-branded mobile app was still transmitted to Google, from (c) a mobile device running a non-Android operating system, because of the Firebase SDK and/or Google Mobile Ads SDK.

3. The two certified classes for purposes of the claims for invasion of privacy and intrusion upon seclusion are the same, except they exclude individuals who had only "enterprise" accounts (for organizations) and "supervised" accounts (for children under the age of 13).

4. Plaintiffs Anibal Rodriguez, Julian Santiago, and Susan Lynn Harvey have been appointed by the Court as representatives of the classes.

5. Google throughout the relevant time period offered the Firebase SDK and Google Mobile Ads SDK for use by app developers.

6. Plaintiffs owned their mobile devices throughout the relevant time period.

7. Throughout the relevant time period, Google maintained a page titled "Activity controls" that includes the "Web & App Activity" ("WAA") and "supplemental Web & App Activity" ("sWAA") settings.

## 4. **Disputed Factual Issues**

1. Whether Plaintiffs had a reasonable expectation of privacy that Google would not collect their activity on non-Google apps while (s)WAA was off.

2. Whether Google's collection of the WAA-off or sWAA-off data at issue is highly offensive.

3. Whether Google had Plaintiffs' permission to collect activity on non-Google apps while (s)WAA was off.

## 5. **Agreed Statement**

Aside from the stipulated as undisputed facts above in Section 3 and the stipulations below in Section 6 the Parties do not believe all or part of the action may be presented upon an agreed statement of facts.

**6.  Stipulations**

1. Venue is proper in this Court.

2. This Court has personal jurisdiction over the Parties.

3. All bates-stamped documents produced by the Parties as of June 10, 2025 shall be deemed to be true and correct copies of documents maintained in the producing Party's files as of the date that Party collected the document(s) under Federal Rule of Evidence 901, unless an opposing Party raises a good faith objection to authenticity as to any document or based on evidence adduced at trial. All other objections to trial exhibits are preserved.

4. Except for expert witnesses, Named Plaintiffs, and Google's Party representative, witnesses will be excluded from the courtroom during trial until they are excused.

**7.  Witnesses to be Called**

Exhibit C includes a list of all witnesses likely to be called at trial, other than solely for impeachment or rebuttal, together with a brief statement following each name describing the substance of the testimony to be given.

**8.  Exhibits, Schedules and Summaries**

Exhibit A includes Plaintiffs' list of all documents and other items to be offered as exhibits at the trial, other than solely for impeachment or rebuttal, with a brief statement following each, describing its substance or purpose and the identity of the sponsoring witness. Exhibit B contains Google's list of the same. The Parties are continuing to meet and confer regarding outstanding objections to exhibits currently listed in Exhibits A and B and hope to resolve them before the Court's July 11, 2025 deadline to lodge the final set of exhibits, summaries, charts, and diagrams to be used at trial. *See* Dkt. 446 (Case Management Scheduling Order) at 2.

9. **Disputed Legal Issues**

Any disputed legal issues are reflected in the jury instructions, where the Parties have some disagreements regarding how to instruct the jury on the law with these claims and defenses, and the accompanying motions in limine.

10. **Pending Motions or Matters**

Plaintiffs' Motion for Relief from Non-dispositive Pretrial Order of Magistrate Judge Tse (Dkt. 507) concerning Plaintiffs' ability to call Google's CEO Sundar Pichai at trial is pending pursuant to the Court's June 5, 2025 Order. Dkt. 512. Google filed its response on June 12, 2025. Dkt. 514. That dispute is fully briefed. The only other pending motions are the motions *in limine*.

Plaintiff Sal Cataldo no longer wishes to proceed with his claims as a class representative and seeks to dismiss his claims without prejudice. This decision is privileged and ultimately not relevant to the merits of this litigation. *Bolton v. Tesero Petroleum Corp.*, 871 F.2d 1266, 1277 (5th Cir. 1989). Pursuant to Rule 41, because Google has both answered and moved for summary judgment, Mr. Cataldo's claims may only be dismissed pursuant to agreement of the Parties or Court order. The Parties will meet and confer on this issue and will advise the Court of their intended course of action.

11. **Bifurcation, Separate Trial of Issues**

Google believes that bifurcation is appropriate here and has filed a Motion to Bifurcate Trial Re: Punitive Damages concurrently with this Joint Pretrial Statement. Plaintiffs will oppose and file their response to Google's motion once filed.

-10-                                    CASE NO. 3:20-cv-04688-RS
                                        JOINT PRETRIAL STATEMENT

**12.    Estimated Trial Time**

The Court stated that the Parties would each have 20 hours for trial, for a combined total of 40 hours.[1] With trial starting on Monday, August 18, 2025, the Parties estimate that they should be prepared to submit the case to the jury by Friday, August 29, 2025.

**13.    Miscellaneous**

None at this time.

**14.    Binding Effect of the Joint Pretrial Statement**

Pursuant to Chief Judge Seeborg's standing order: The foregoing admissions having been made by the Parties, and the Parties having specified the foregoing issues of fact and law remaining to be litigated, this order shall supplement the pleadings and govern the course of trial of this cause, unless modified to prevent manifest injustice. *See* Guidelines for Final Pretrial Conference in Civil Jury Cases Before Chief District Judge Richard Seeborg, at 3.

---

[1] While the Parties agree that 20 hours should be sufficient for each Party, each reserves the right to raise the issue of timing with the Court if the other party takes unreasonable positions on its objections to the admission of exhibits (which are being exchanged by the Parties after the filing of this statement).

# SIGNATURE BLOCKS

Dated: June 24, 2025

**BOIES SCHILLER FLEXNER LLP**

By:   */s/ Mark C. Mao*

David Boies (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
alanderson@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander P. Frawley (admitted *pro hac vice*)
Ryan Sila (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com

Dated: June 24, 2025

**COOLEY LLP**

By:   */s/ Benedict Y. Hur*

BENEDICT Y. HUR (SBN: 224018)
bhur@cooley.com
SIMONA AGNOLUCCI (SBN: 246943)
sagnolucci@cooley.com
EDUARDO E. SANTACANA (SBN: 281668)
esantacana@cooley.com
ARGEMIRA FLOREZ (SBN: 331153)
aflorez@cooley.com
HARRIS MATEEN (SBN 335593)
hmateen@cooley.com
3 Embarcadero Center, 20th Floor San Francisco, California 94111-4004
Telephone: (415) 693-2000

*Counsel for Defendant Google LLC*

|   |   |
|---|---|
| 1 | sshepard@susmangodfrey.com |
| 2 | afrawley@susmangodfrey.com |
|   | rsila@susmangodfrey.com |

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

*Counsel for Plaintiffs*

**ATTESTATION**

I, Mark Mao, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: June 24, 2025                              By: */s/ Mark Mao*