**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
alanderson@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
Ryan Sila (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br>Defendant. | Case No.: 3:20-cv-04688-RS<br><br>**PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION *IN LIMINE* 11 (DKT. 529)**<br><br>The Honorable Richard Seeborg<br>Courtroom 3 – 17th Floor<br>Date: July 30, 2025<br>Time: 9:30 a.m. |

## I. INTRODUCTION

This motion reveals Google's misunderstanding about why it's on trial. Google plans to tell the jury that it did nothing wrong because it only collected data about some apps, and only apps which are not "sensitive." Mot. at 3. That framing ignores reality. Plaintiffs are holding Google accountable for offering users a fake "privacy control," falsely stating that Google would not collect their data so long as (s)WAA was turned "off." There is no reason to artificially limit the record to some subset of apps that Google believes is helpful to its defense. The jury should be told the truth—that Google collects granular app activity data regardless of whether (s)WAA is "on" or "off", and about users' interactions with all kinds of apps.

While Google does not expressly define the term "sensitive," Google appears focused on data that could reveal a person's "political leanings, sexual orientation, reproductive decisions, spiritual beliefs, [and] medical information." Mot. at 5. The truth is that Google did and does collect such data, from all (s)WAA-off users. Discovery has proven the at-issue SDKs are embedded within medical apps such as myCigna, dating apps such as Tinder, religious apps such as YouVersion Bible App, financial apps such as E*Trade, and social media apps such as Facebook. *See, e.g.*, Schneier Supp'l Rep. (Dkt. 474-4) ¶¶ 12-13. Discovery has also proven that Google's SDKs "automatically" collect specific data about users' interactions with these apps and every other app that contain the SDKs. Hochman Rep. (Dkt. 314-5) ¶¶ 90-91.

This evidence is relevant, including in part for weighing the offensiveness of Google's conduct. *See, e.g.*, *Brown v. Google*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) (denying summary judgment on privacy tort claims, relying on evidence that "the data collected here is vast and sensitive" and includes information about "sexual orientation, political or religious views, or upcoming big purchases"). In fact, Google plans to argue that Plaintiffs should lose the case because none of the at-issue data is "sensitive, confidential, or even meaningful to users." Dkt. 329 at 16.

Google's focus on individualized issues is also misplaced. *See* Mot. at 4. This Court did not grant class certification based on some mistaken belief that every class member used the exact same apps. Different people use different apps. But regardless of the apps any class member used,

whether Google had permission to collect her data turns on "Google's representation about the sWAA button," which is common "to all members" of the class and "capable of resolution class-wide." Dkt. 352 at 10.

Google's concern about any "undue emphasis on certain apps" is also misplaced. Mot. at 5. Plaintiffs will not mislead the jury by suggesting the entire case is about one app or a particular kind of app. But it would be equally misleading to tell the jury this case has nothing to do with health apps or financial apps, or that Google's SDKs are limited to some subset of apps. The jury should be informed that Google's SDKs are embedded within 97% of the most popular apps, spanning all categories. Dkt. 314-5 (Hochman Rep.) ¶¶ 355–56. The jury can weigh the import of that evidence for Plaintiffs' claims and decide the case on a complete record.

## II.    ARGUMENT

### A.    Plaintiffs' Evidence about the Scope of Google's Data Collection Is Not Speculative.

Google contends that arguments about "sensitive" data should be excluded as "speculative" since, in Google's view, Plaintiffs lack "any factual basis" to argue that Google collected "sensitive" data from (s)WAA-off users. Mot. at 5; *see also* Mot. 3 ("[T]here is no evidence that GA for Firebase collected sensitive information").

This argument is procedurally improper. "A motion *in limine* is not a proper vehicle for a party to ask the Court to weigh the sufficiency of the evidence to support a particular claim or defense, because that is the function of a motion for summary judgment." *Int'l Metaphysical Ministry, Inc. v. Wisdom of Heart Church*, 2022 WL 19691043, at *5 (N.D. Cal. Dec. 19, 2022). Motions *in limine* are "used to obtain pretrial rulings on the admissibility of evidence"—"not to determine the sufficiency of the evidence." *San Francisco Baykeeper v. City of Sunnyvale*, 2025 WL 1616643, at *2 (N.D. Cal. June 6, 2025). At this point, "the sufficiency of [] evidence" is a "question for trial." *Fiteq Inc v. Venture Corp.*, 2016 WL 1701794, at *1 (N.D. Cal. Apr. 28, 2016).

In any event, there is ample evidence from which a jury could find that Google collected the kind of information that Google deems "sensitive." Relying on discovery produced by Google as well as public information, Plaintiffs' expert Bruce Schneier cataloged the types of apps that

contain the at-issue Google SDKs. *See* Schneier Supp'l Rep. (Dkt. 474-4) ¶¶ 12-13. These apps include ***medical apps*** such as myCigna, GoodRX, and Cardiogram; ***dating apps*** such as Grindr, Tinder, and AdultFriendFinder, ***reglious apps*** such as the YouVersion Bible App and Islam360, ***financial and banking apps*** such as E*Trade, Zelle, Venmo, and Bank of America, ***news apps*** such as NPR and The New York Times, ***job search apps*** such as Indeed and Glassdoor, ***social media apps*** such as Facebook, Instagram, and TikTok, and ***female reproductive health apps*** such as Lady Cycle and Period Tracker. *Id.*; *see also* Schneier Rep. (Dkt. 314-6) ¶¶ 106-09; Mao Ex. 3 (Interrogatory response where Google provided a non-exhaustive list of apps that contain the Firebase SDK). Plaintiffs will not ask jury to "speculate" about the relevant apps (Mot. at 5); Plaintiffs will provide evidence showing which apps contain the SDKs.

Given the ubiquity of Google's tracking code, it should come as no surprise that Google is collecting information about users' interactions with all kinds of apps. The Firebase SDK is embedded within at least ***97% of the top one thousand apps*** on Android and 54% of the top one thousand apps on iOS—to say nothing of the GMA SDK, a separate Google tracking tool at issue in this case. Dkt. 314-5 (Hochman Rep.) ¶¶ 355–56; *see also* Dkt. 352 (Class Certification Order) at 13 (acknowledging the "sheer number of apps with Google SDKs," and explaining why "[t]he growing reliance on phones increasingly make them necessities, not luxuries, with significant privacy implications for users").

Plaintiffs' technical expert Jonathan Hochman will describe how Google throughout the class period uniformly collected the same granular app activity data when people used apps containing the Firebase and GMA SDKs, including when (s)WAA is turned "off." For example, Dr. Hochman will explain how Google designed the Firebase SDK so that Google "collects information about a core set of events, ***automatically***"—such as when a user installs the app, the start of a user's session on the app, the title of the page the user is viewing within the app, and when the user makes in-app purchases. Hochman Rep. (Dkt. 314-5) ¶¶ 90-91. Dr. Hochman will also describe why this data *is* identifying—particularly because Google saves the data alongside identifiers that "uniquely identify a user's device and all associated non-Google app data, including WAA-off and sWAA-off data." *Id.* ¶ 311; *see also id.* ¶¶ 301-35. Even Google employees admit

that (s)WAA-off data is identifying. As one engineer aptly summarized, Google has "the ability to link app events collected by GA4F to GAIA ID even if end users turn off WAA," including for purposes of responding to a "subpoena." Mao Ex. 4. Google does not grapple with any of this evidence, much less explain why any portion of this evidence should be excluded.

The only specific evidence Google's motion identifies is a small portion of Professor Schneier's report, which describes how (s)WAA-off data may reflect abortion history. Mot. at 6; Schneier Rep. ¶ 105. The Court already addressed this portion of Professor Schneier's report with its *Daubert* order, denying Google's motion to exclude testimony about the risks of Google's data-collection practices. *See* Dkt. 511 at 5 (denying Google's motion to exclude Professor Schneier's "opinions about data and privacy trends," reasoning that these opinions "'provide background and context information about what privacy is, the importance of privacy, the different types of data, pervasive data collection and tracking of users as a function of the Internet, and the impact and negative consequences of the misuse of one's data'" (quoting *Brown v. Google, LLC*, 2022 WL 17961497, at *10 (N.D. Cal. Dec. 12, 2022))). Google offers no reason to relitigate that decision.

Nor is there any basis to confine the apps mentioned at trial to the apps identified in Plaintiffs' Complaint. *See* Mot. at 2. Google nowhere provides the public with a complete list of apps that contain the SDKs. Google provided some (but not all) of that information in discovery, *see, e.g.*, Mao Ex. 3, and Plaintiffs' experts identified additional apps in their reports, *see, e.g.*, Schneier Supp'l Rep. (Dkt. 474-4) ¶¶ 12-13. There is no reason to pretend as if this discovery never took place. There can be no dispute that Google collects (s)WAA-off app activity data from users' interactions with the types of apps that Google is complaining about, and Google provides no basis to exclude that evidence from the jury.

The cases Google cites about unfair prejudice are far afield. *See* Mot. at 5-6. *United States v. Hitt* is a criminal decision that addressed a photograph "show[ing] a dozen nasty-looking weapons" inside the defendant's residence, "which the jury must have assumed belong to [the defendant]," when in fact the weapons belonged to his roommate. 981 F.2d 422, 424 (9th Cir. 1992). The photograph was therefore "not only highly prejudicial and at most marginally probative—it was also misleading." *Id.* Here, there is nothing "misleading" about telling the jury

which apps contain the at-issue Google SDKs, particularly when Google provided this information during discovery and there is no dispute about its accuracy. *Old Chief v. United States* is another criminal decision, which addressed prior conviction evidence that could "lure a juror into a sequence of bad character reasoning." 519 U.S. 172, 180 (1997). Any concern about "bad character reasoning" does not make sense here, and Google tellingly does not even raise that concern. *Mendoza v. Cates* is yet another criminal decision—this time addressing a habeas petition for alleged prosecutorial misconduct, which the court denied. 2024 WL 5213097, at *7 (N.D. Cal. Dec. 23, 2024). Finally, unlike the trade secret disclosures that were excluded in *Palantir Technologies Inc. v. Abramowitz*, 639 F. Supp. 3d 981, 987 (N.D. Cal. 2022), the challenged evidence here will not "require extensive explanation" nor "confuse the jury." The lawyers and the witnesses can identify the types of apps which contain the at-issue Google SDKs, as well as examples of these apps.

Ultimately, Google's motion conflates "unfair prejudice" with "prejudice." While the jury may be disturbed to learn that Google collects and saves app activity data about users' interactions with all types of third-party apps, that reality provides no basis for exclusion. "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Shuler v. City of Los Angeles*, 849 F. App'x 671, 673 (9th Cir. 2021) (quoting *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000)). "[E]ven where evidence is highly prejudicial, it is not necessarily unfairly prejudicial." *United States v. Thornhill*, 940 F.3d 1114, 1123 (9th Cir. 2019). There is nothing unfair or misleading about informing the jury about which apps are relevant to the case. If anything, it would be misleading to suggest that Google's data-collection is confined to some smaller subset of apps.

**B.   Plaintiffs' Evidence about the Scope of Google's Data Collection Is Relevant.**

Google's other argument is that "evidence of sensitive apps" is "irrelevant to this case." Mot. at 3. This assertion also misses the mark. Evidence about the type and scope of apps is relevant for at least three reasons.

*First*, this evidence is relevant to assessing whether Google's conduct is highly offensive, which is an element of the privacy tort claims. *See In re Facebook, Inc. Internet Tracking Litig.*,

956 F.3d 589, 606 (9th Cir. 2020) ("Actionable invasions of privacy also must be 'highly offensive' to a reasonable person, and sufficiently serious and unwarranted so as to constitute an egregious breach of the social norms."). For example, in *Brown v. Google*, the court denied summary judgment on the privacy torts claims based in part on evidence that "the data collected here is vast and sensitive," particularly since "browsing data may reveal [class members'] sexual orientation, political or religious views, or upcoming big purchases." 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023). The scope of Google's (s)WAA-off data collection is likewise "vast"; as noted above, Google's Firebase SDK is embedded within at least **97% of the top one thousand apps** on Android—which means Google has built an inescapable tracking web. *See supra* Section II.A. Plaintiffs can also prove that Google collects (s)WAA-off data about users' interactions with all kinds of apps, including the apps that Google deems "sensitive." *See id.* The jury should consider this evidence when weighing the offensiveness of Google's conduct.

*Second*, this evidence is relevant to rebutting arguments that Google intends to raise. In opposing class certification, Google argued that Plaintiffs must prove the data is "sensitive, confidential, or even meaningful to users" to establish offensiveness and harm. Dkt. 329 at 16. Plaintiffs disagree with Google's interpretation of the law,[1] but the Court need not resolve that dispute to rule on this motion. At a minimum, if Google is going to make arguments about whether the data is sensitive, Plaintiffs should be permitted to refute those arguments with evidence they uncovered during discovery.

*Third*, this evidence is relevant to assessing whether Google obtained Plaintiffs' permission or consent to collect and use their (s)WAA-off data. Consent is legally effective only if it is "voluntary." *Hill v. NCAA*, 7 Cal. 4th 1, 26 (1994). In *Hill*, the California Supreme Court taught that consent may be considered "involuntary" if the "consequence" of refusal is exclusion from "a government benefit or an economic necessity that society has decreed must be open to all." *Id.* at

---

[1] For example, for the CDAFA claim, there is no requirement to demonstrate the data is sensitive; Plaintiffs need only prove "damage or loss." Cal. Penal Code § 502(c)(2). As for the privacy claims, "invasion of the historically recognized right to privacy" amounts to injury in and of itself, regardless of the nature of the data collected. *Facebook Tracking*, 956 F.3d at 599, 606; *see also* Dkt. 445 (MSJ Order) at 9-10 ("[I]nformation need not be personally identifying to be private.") (quoting *In re Google Referrer Header*, 465 F. Supp. 3d 999, 1009–10 (N.D. Cal. 2020))).

42; *see also Hansen v. Cal. Dept. of Corrections*, 920 F. Supp. 1480, 1505 (N.D. Cal. 1996) (holding consent invalid as a matter of law on this basis). As this Court explained, given the "sheer number of apps with Google SDKs," the only way to avoid the challenged data-collection would be to stop using mobile phones altogether, which is impractical because our "growing reliance on phones increasingly make them necessities, not luxuries." Dkt. 352 at 13. Plaintiffs are entitled to rely on the ubiquity of Google's SDKs to rebut Google's consent argument, and that ubiquity includes (but is not limited to) many apps that Google describes as "sensitive."

Google raises just one argument against relevance, claiming that evidence about "sensitive" apps would raise individualized issues and risk decertification. Specifically, Google claims that Plaintiffs had to "strip away" potential "attack[s]" to "get a damages class certified," including a "claim" that "particular apps sent particular data that is particularly sensitive." Mot. at 4. This argument misunderstands Plaintiffs' case. Plaintiffs are not focused on whether Google collects "particular data" about users' interactions with "particular" apps. Instead, as summarized above, this case is about the data that Google uniformly (and "automatically") collected and continues to collect through the at-issue SDKs, which Google has collected regardless of whether the class member is interacting with a "sensitive" app. *See supra* Section I.A. To be sure, different people use different apps. But as this Court held when it granted class certification, the case turns on common proof because "the relevant question is whether the members, who shared common conduct, had an objective, reasonable expectation of privacy based on Google's representation about the sWAA button." Dkt. 352 at 10. Indeed, even Google cannot dispute that it expressly presented and labeled (s)WAA as a "privacy control" to all class members, in Google's Privacy Policy and user settings. That Google now wants to argue about whether the affected information is in fact "sensitive" in Google's eyes is beside the point. Google labeled and offered the "privacy control", and class members all have it set to "off"; Google has no basis to dispute that all of the information is in fact "private" under its own terms and settings.

Google's case law is inapposite. *See* Mot. at 4. Only one case addressed a motion *in limine*, *Barnes v. District of Columbia*, which was a § 1983 case. *See* 924 F. Supp. 2d 74 (D.D.C. 2013). The *Barnes* court excluded evidence of strip searches, dismissing the relevance as "weak" since

the plaintiffs were actually challenging over-detention practices and strip searches were at most a side effect of over-detention. Setting aside Google's curious decision to compare strip searches with Google's data-collection practices, Google's reliance on *Barnes* is misplaced. Here, Plaintiffs are challenging Google's collection of (s)WAA-off data related to any app that contains the at-issue SDKs. Google's two other cases are even further afield, both procedurally and factually.[2]

Finally, Google's concern about "undue emphasis on certain apps" should be put to bed. Mot. at 5. As this Court previously explained, this concern is "somewhat self-policing" because if Plaintiffs misconstrue the scope of the case, Google will "have an opportunity to really go after that witness in cross and say 'Come on.'" May 15, 2025 *Daubert* Hearing Tr. at 5:11-17. If necessary, the Court can also police the issue during trial. This option is why "motions *in limine* should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial." *Altair Instruments, Inc. v. Telebrands Corp.*, 2021 WL 5238787, at *1 (C.D. Cal. Feb. 18, 2021). In any event, Plaintiffs will not mislead the jury by suggesting the entire case is about medical or financial data. But it would be equally misleading to tell the jury the case has nothing to do with such data and that Google's SDKs are limited in scope to some undefined subset of apps. The jury should be told the truth, including that Google's SDKs are embedded on the substantial majority of popular apps, spanning all categories.

### III.    CONCLUSION

For these reasons, the Court should deny Google's motion *in limine* 11.

---

[2] *Marlo v. United Parcel Services Inc.* addressed a decertification order following reversal of a defendant's summary judgment win. 639 F.3d 942 (9th Cir. 2011). On remand, the district court decertified the class in light "methodological" and "design" concerns in a survey the plaintiff had relied on to support class certification. *Id.* Google's Motion here does not raise such concerns. And in *Brown v. Google*, the court declined to certify a damages class after crediting Google's argument that "several media and academic reports [] publicly disclosed the alleged conduct." 2022 WL 17961497, at *18-19 (N.D. Cal. Dec. 12, 2022). Here, on the other hand, the reasonableness of users' privacy expectation turns on "Google's representation about the sWAA button," which is common "to all members" of the class and therefore "capable of resolution class-wide." Dkt. 352 (certification order) at 10. Moreover, in this case, Google has never even attempted to proffer the type of third-party evidence that Google relied on in *Brown*, such as "media and academic reports", thus conceding there is no such evidence with respect to Google's collection of (s)WAA-off data.

Dated: July 10, 2025

Respectfully submitted,

By: */s/ Mark Mao*

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (admitted *pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

James Lee (admitted *pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (admitted *pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Alison L. Anderson, CA Bar No. 275334
alanderson@bsfllp.com
M. Logan Wright, CA Bar No. 349004
mwright@bsfllp.com
BOIES SCHILLER FLEXNER LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (813) 482-4814

Bill Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com

Alexander P. Frawley
afrawley@susmangodfrey.com
Ryan Sila
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*