# EXHIBIT A

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                     SAN FRANCISCO
 4                        --oOo--
 5    ANIBAL RODRIGUEZ, et al.,
      individually and on behalf of
 6    all other similarly situated,
 7                 Plaintiffs,
 8    vs.                            Case No.
                                     3:20-CV-04688
 9    GOOGLE LLC, et al.,
10                 Defendants.
      _____/
11
12
13
14
15       VIDEO-RECORDED DEPOSITION OF SAL CATALDO
16                   VERITEXT VIRTUAL
17              THURSDAY, FEBRUARY 17, 2022
18
19
20
21
22    Reported by:
23    Anrae Wimberley, CSR No. 7778
24    Job No.  5057262
25
                                              Page 1
```

| | | |
|---|---|---|
| 1 | Florez and Lori Arakaki, also of Willkie Farr & | 09:06:36 |
| 2 | Gallagher, as well as in-house counsel at Google | |
| 3 | John Janhunen. | |
| 4 |     MR. LEE:  Morning. | |
| 5 |         James Lee, Boies Schiller Flexner, I'm | 09:06:45 |
| 6 | here with the plaintiffs. | |
| 7 |         I have with me Ryan McGee.  And my | |
| 8 | colleague Mark Mao will be coming in and out. | |
| 9 |     THE VIDEOGRAPHER:  Thank you. | |
| 10 |         Will the court reporter please swear in | 09:06:57 |
| 11 | the witness. | |
| 12 |             SAL CATALDO, | |
| 13 |   sworn in remotely as a witness by the Certified | |
| 14 |     Shorthand Reporter, testified as follows: | |
| 15 |             EXAMINATION | 09:06:59 |
| 16 | BY MR. SANTACANA: | |
| 17 |     Q.   Good morning, sir. | |
| 18 |         Would you mind stating your name for the | |
| 19 | record. | |
| 20 |     A.   Of course.  Sal Cataldo. | 09:07:25 |
| 21 |     Q.   Mr. Cataldo, my name is Eduardo Santacana. | |
| 22 | I'm an attorney for Google in this matter.  I'll be | |
| 23 | taking your deposition today. | |
| 24 |         Have you been deposed before? | |
| 25 |     A.   I have. | 09:07:38 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | I was given control of my privacy. | 11:02:27 |
| 2 | As a privacy-minded person, I was told, | |
| 3 | Hey, we care about your privacy.  We protect your | |
| 4 | information.  We put you in control.  That's in big | |
| 5 | font and Google's promise, and then you broke that | 11:02:39 |
| 6 | promise and you invaded the privacy, so there's the | |
| 7 | hurt of a broken promise, right? | |
| 8 | I can't put into words what that looks | |
| 9 | like, but I know it's wrong and I know it disserves | |
| 10 | some sort of punishment or retribution for that. | 11:02:57 |
| 11 | So other than what I've quantified there, | |
| 12 | there's a lot there that I can't sit here and | |
| 13 | quantify and put the dollars and cents. | |
| 14 | Unfortunately, the -- | |
| 15 | (Reporter seeks clarification.) | 11:03:07 |
| 16 | THE WITNESS:  So, you know, as far as remedies | |
| 17 | go, I know everything does kind of have to be | |
| 18 | distilled into dollars and cents because as far as I | |
| 19 | know, a lot of this stuff can't be undone.  Although | |
| 20 | to the extent that it can be undone, I would | 11:03:24 |
| 21 | certainly love that, too. | |
| 22 | If you still have my information, I want | |
| 23 | that gone.  I want to make -- you know, measures | |
| 24 | taken to ensure that Google doesn't continue to do | |
| 25 | this and some macro-level stuff there, but I can't | 11:03:33 |

Page 83

| | | |
|---|---|---|
| 1 | into the process, right? | 01:40:58 |
| 2 | So on a football game, to me, there's a | |
| 3 | contract of I'm going to watch TV, and the TV has a | |
| 4 | contract to sell advertisement the way that they see | |
| 5 | fit.  And I also feel like I have the ability to get | 01:41:14 |
| 6 | up and walk away from the TV or whatever it is to | |
| 7 | remove from the advertising. | |
| 8 | So there is -- it's not a violation of | |
| 9 | privacy because I think there's a different | |
| 10 | expectation of privacy when watching cable | 01:41:28 |
| 11 | television. | |
| 12 | Q.   Than when you're browsing the Internet? | |
| 13 | A.   Correct. | |
| 14 | Q.   Why? | |
| 15 | A.   Because you gave me -- or Google gave me | 01:41:38 |
| 16 | an expectation of privacy in their policy that says | |
| 17 | You can control what we receive.  So you told me I | |
| 18 | have the right to control it. | |
| 19 | Q.   So if the WAA button didn't exist and you | |
| 20 | had never read those representations, then are you | 01:41:53 |
| 21 | saying that it wouldn't have been offensive to you | |
| 22 | or it wouldn't have bothered you to see targeted | |
| 23 | advertising? | |
| 24 | MR. LEE:  Objection; it calls for speculation, | |
| 25 | incomplete hypothetical. | 01:42:11 |

```
 1            Go ahead.                                         01:42:13

 2            THE WITNESS:  If we're going to play the

 3       what-if game, it would depend on the collection

 4       methods, what were we told, what was the expectation

 5       that was set.                                          01:42:24

 6            So I think in that manner, you know,

 7       whether it's a WAA button or not, I think it's

 8       what -- you know -- you know, there would be some

 9       equivalent version of how are you getting my data,

10       and are you telling me that you're getting my data     01:42:40

11       and what -- do I know if I go to look to see how is

12       my data being used, what can I find with regards to

13       that.

14   BY MR. SANTACANA:

15       Q.   Well, let's talk about the football game,         01:42:52

16   right.  You're television provider gets your data

17   because you pay them for the television access,

18   right?

19            So they know where you live.  They know

20   what you're watching.  They put different ads on           01:43:07

21   different channels at different times depending on

22   what the program is.  All of that is stuff you've

23   experienced throughout your life; right?

24       A.   I mean, to the extent -- when you say,

25   this is what I've experienced throughout my life,          01:43:26
```

1   like, yes, I understand that a television provider                01:43:28

2   may say, Here's a location for whoever is opening

3   and accessing this cable box.

4          I don't know what data the cablevision

5   company or -- cablevision is easier -- or whether                 01:43:45

6   the cable provider is providing to the various

7   television companies, things like that, I don't know

8   what their boxes have access to.

9       Q.   Sure.

10         And I guess you don't need to know.  I'm                   01:43:56

11  not trying to get into that level of detail.

12         Let me just ask it this way, isn't part of

13  the reason that it doesn't offend you when you see a

14  mattress store ad from down the street during a

15  football game that the mattress store doesn't                     01:44:12

16  actually know it's you who is watching, they're like

17  I want people who live here watching this game to

18  see my ad.  They don't actually know it's Sal;

19  right?

20      MR. LEE:  Objection to form.                                  01:44:26

21         Go ahead.

22      THE WITNESS:  To use your phrase, yeah, part of

23  the reason, because they're saying, for instance, I

24  want all of Long Island to see it, or all of Suffolk

25  County.                                                           01:44:51

Page 161

```
 1              They're not saying -- I think the              01:44:51

 2    difference here is to have an advertiser directed

 3    towards Sal or some disembodiment of Sal, they're

 4    not saying -- right, like, for instance, we go to

 5    the New York Times app, if you have an advertiser        01:45:08

 6    that says, Hey, I want everyone who reads the New

 7    York Times to see this advertisement, I think that

 8    it's reasonable that if I open the New York Times,

 9    there might be an advertisement there that someone

10    has said, Hey, I want everyone on the New York Times     01:45:21

11    app to see this, all New York Times readers

12    generally.

13              To then start taking -- to go further with

14    it and to package and distill it in a way that maybe

15    isn't me but somehow captures the essence of me to       01:45:37

16    then hyper target that, I think it then becomes a

17    matter of just consent.  And I think if someone is

18    not okay with it, and I think if there's a choice to

19    opt out of that, right, that we can opt out.

20              Just like with cablevision, I could not        01:45:54

21    have cablevision if I don't like the level of

22    advertising there.  Or now with DVR, you can skip

23    through the advertisement, things like that.

24              So I think it's less offensive in a way

25    because it feels a lot broader than the specific         01:46:07
```

Page 162

| | | |
|---|---|---|
| 1 | with Internet, No. 1. | 01:46:15 |
| 2 | No. 2, I also think there's a difference | |
| 3 | between me turning onto a particular channel at a | |
| 4 | particular time to a particular cable provider than | |
| 5 | with -- again, going back to what we said before the | 01:46:27 |
| 6 | break, my expectation, if I log onto Google.com | |
| 7 | versus WAA, which then says we can take information | |
| 8 | from any of these apps because the Firebase is so | |
| 9 | pervasive throughout all of these apps that almost | |
| 10 | anything that I'm doing, Google is there, right? | 01:46:45 |
| 11 | That's I think the ubiquity of Google in | |
| 12 | these all various different activities.  I wouldn't | |
| 13 | expect my cable provider or my football game to give | |
| 14 | me ads based upon my web browsing activity, or based | |
| 15 | on whatever other electronics I owned in my house, | 01:47:04 |
| 16 | that if I had a refrigerator, that my refrigerator | |
| 17 | was saying, Hey, this guy owns a Samsung | |
| 18 | refrigerator and it goes through the electricity to | |
| 19 | the cable box, which then tells Comcast, or whoever, | |
| 20 | what brand refrigerator I have, right? | 01:47:15 |
| 21 | I think there's a certain level to what | |
| 22 | are you collecting and what is that cable company | |
| 23 | collecting it from. | |
| 24 | So if Google is collecting from all these | |
| 25 | other companies that I'm sharing my information to, | 01:47:28 |

Page 163

| | | |
|---|---|---|
| 1 | that's where I think there's a very big distinction | 01:47:28 |
| 2 | between the advertisers on TV. | |
| 3 | BY MR. SANTACANA: | |
| 4 |     Q.  Okay.  I think I understand your -- the | |
| 5 | distinction that you're drawing. | 01:47:39 |
| 6 |         Once again, back to the privacy policy. | |
| 7 |     A.  Yep. | |
| 8 |     Q.  Go to the last page of this PDF. | |
| 9 |         So at the top, it will say, "Page 32 of | |
| 10 | 32." | 01:48:09 |
| 11 |     A.  Yep, I'm there. | |
| 12 |     Q.  Do you see the heading "your activity on | |
| 13 | other sites and apps"? | |
| 14 |     A.  Um-hum. | |
| 15 |     Q.  Have you reviewed this paragraph before? | 01:48:22 |
| 16 |     A.  Yes. | |
| 17 |     Q.  Did you review it before turning WAA off? | |
| 18 |     A.  I can't recall the specific paragraph | |
| 19 | because this is from 2020, and I turned WAA off | |
| 20 | before 2020, so I don't know if this was the same | 01:48:42 |
| 21 | paragraph in a previous version. | |
| 22 |     Q.  Got it.  Okay.  Understood. | |
| 23 |         Take a moment and review it now. | |
| 24 |     A.  Sure. | |
| 25 |         (Witness reviews document.) | 01:48:58 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | So like I said, each time I know it was | 02:58:24 |
| 2 | certainly the official version.  I don't even know | |
| 3 | how often they update it, but -- so to recollect | |
| 4 | each one, I don't know how I accessed each one, but | |
| 5 | I certainly would always make sure that it's the | 02:58:35 |
| 6 | correct, you know, whatever it is, legitimate Google | |
| 7 | site, official page and whatnot. | |
| 8 | Q.   Okay.  Thanks. | |
| 9 | You mentioned earlier today that you | |
| 10 | weren't necessarily offended by receiving a | 02:58:45 |
| 11 | personalized ad. | |
| 12 | Do you remember that? | |
| 13 | A.   Sure. | |
| 14 | Q.   Do you think that Google collecting and | |
| 15 | saving your app activity without your consent is | 02:58:56 |
| 16 | offensive? | |
| 17 | A.   Yeah, that aspect, yeah. | |
| 18 | Q.   You were asked some questions today from | |
| 19 | Google's lawyer where he compared Google to a local | |
| 20 | mattress store that pays to have an ad displayed on | 02:59:11 |
| 21 | television. | |
| 22 | Do you remember that? | |
| 23 | A.   I do. | |
| 24 | Q.   Is Google a mattress store? | |
| 25 | MR. SANTACANA:  Objection; lacks foundation. | 02:59:22 |

Page 210

```
 1              I, the undersigned, a Certified Shorthand
 2    Reporter of the State of California, do hereby
 3    certify:
 4              That the foregoing proceedings were taken
 5    before me at the time and place herein set forth;
 6    that any witnesses in the foregoing proceedings,
 7    prior to testifying, were administered an oath; that
 8    a record of the proceedings was made by me using
 9    machine shorthand which was thereafter transcribed
10    under my direction; that the foregoing transcript is
11    a true record of the testimony given.
12              Further, that if the foregoing pertains to
13    the original transcript of a deposition in a Federal
14    Case, before completion of the proceedings, review
15    of the transcript ( ) was (X) was not requested.
16              I further certify that I am neither
17    financially interested in the action nor a relative
18    or employee of any attorney of any party to this
19    action.
20              IN WITNESS WHEREOF, I have this date
21    subscribed my name.
22    Dated:  February 28, 2022
23
24
                                    _____
25                                  ANRAE WIMBERLEY, CSR No. 7778
```

Page 213