**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
alanderson@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
Ryan Sila (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No.: 3:20-cv-04688-RS<br><br>**PLAINTIFFS' OPPOSITION TO GOOGLE LLC'S MOTION *IN LIMINE* 1 TO EXCLUDE TESTIMONY OF BLAKE LEMOINE**<br><br>The Honorable Richard Seeborg<br>Courtroom 3 – 17th Floor<br>Date: July 30, 2025<br>Time: 9:30 a.m. |

# I. INTRODUCTION

Blake Lemoine is a former senior Google employee who contacted Plaintiffs' counsel for the first time in August 2023, indicating that he had information regarding the ways Google's AI misuses data collected by Google even when users were in Incognito Mode or had (s)WAA turned off. These were bombshell allegations. In October 2023, after an investigation confirmed the veracity of Mr. Lemoine's claims, Plaintiffs promptly provided amended disclosures to Google in both *Brown v. Google* ("*Brown*") ***and this case***, informing Google that Mr. Lemoine was someone with relevant information for both of these actions. In *Brown*, Judge Gonzalez Rogers ordered the parties to proceed with a deposition of Mr. Lemoine, rejecting Google's motion to prevent that deposition (Google recycles those same arguments here). On December 21, 2023, Mr. Lemoine was deposed in the *Brown* matter. At his deposition, he testified not only that Google collects and uses (s)WAA-off data to train Google's AI products, the experiments he performed confirmed that Google's AI reidentified users that had (s)WAA turned off. This testimony directly contravenes key positions Google has taken throughout this litigation.

While there can be no doubt that Google understood the implications of Mr. Lemoine's testimony for this case, rather than rebut his testimony with documents or examine him at a deposition in this case, Google instead chose to bury its head in the sand. Google refused to turn over relevant documents regarding Mr. Lemoine, and took the position that discovery was closed (even though the import of Mr. Lemoine's knowledge about the case was known to Google and hidden from Plaintiffs during discovery). Plaintiffs then repeatedly invited Google to depose Mr. Lemoine in this case and Google refused. Now, Google seeks to prevent the jury from hearing that sworn testimony at trial, by taking the remarkable position that Google did not have a chance to depose him in this case. Essentially, Google complains of purported prejudice that was engineered by Google itself.

The Court should deny Google's motion for at least four reasons. ***First***, Plaintiffs' disclosure of Mr. Lemoine was made just after he contacted Plaintiffs' counsel and in any case substantially justified. ***Second***, Mr. Lemoine's *Brown* testimony is highly relevant as proof of Google's using (s)WAA-off data for purposes other than what Google describes as just "receipt

keeping." ***Third***, Mr. Lemoine's testimony is admissible under Rule 804(b)(1). ***Fourth*,** there is no Rule 403 basis for exclusion, at least in terms of the relevant testimony regarding Google's use of (s)WAA off data.

## II.    ARGUMENT

### A.    Plaintiffs Properly Disclosed Mr. Lemoine As Timely As Practicable

Plaintiffs disclosed Mr. Lemoine as soon as they knew he had relevant information. Mr. Lemoine first contacted Plaintiffs' counsel in August 2023, after he read news articles about Google's privacy violations being litigated in a number of class actions. *See* Omnibus Declaration of Mark Mao ("Mao Decl."), ¶ 3. Plaintiffs disclosed Mr. Lemoine in this case on October 4, 2023—as soon as his relevant knowledge about this case was investigated and became evident. Dkt. 363 at 4; *see also* Mot. at 4; *see also* Mao Decl., ¶ 4. Notably, this disclosure was made ***before*** Google's counsel in *Brown* deposed Mr. Lemoine in December 2023 Google. Mot. at 4.

In any event, parties are permitted to use late-disclosed witnesses to supply evidence where the late disclosure is "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). To determine whether the disclosure is justified or harmless, courts consider: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." *Martel v. Hearst Commc'ns, Inc.*, 468 F. Supp. 3d 1212, 1219 (N.D. Cal. 2020). All five factors demonstrate that Google's Motion should be denied and Mr. Lemoine's testimony should be permitted at trial.

*First*, Mr. Lemoine's testimony is no surprise to Google. Mr. Lemoine worked at Google from February 2015 to July 2022, when Google fired him for blowing the whistle on myriad privacy violations including Google's misuse of (s)WAA-off data. *See Brick Masons Pension Trust v. Indus. Fence & Supply, Inc.*, 839 F.2d 1333, 1340 (9th Cir. 1988) (affirming district court's decision to admit new witnesses not mentioned in pretrial order, finding no prejudice in part because witnesses were employees of defendant and defendant therefore should have known they would have relevant knowledge). Google then deposed him in *Brown*, another privacy class action that concerned Google's violations of users' privacy expectations, and Mr. Lemoine specifically

testified about Google AI's misuse of (s)WAA-off data for the purpose of reidentifying users. Mot. at 4. Plaintiffs also disclosed Mr. Lemoine as a witness in this case ***nearly two years ago*** and Google made no effort to depose him. Plaintiffs cited Mr. Lemoine's testimony in its summary judgement briefs in this case, and Google neither objected nor claimed surprise. The notion that Google is now somehow surprised to hear the jury will be hearing testimony from Mr. Lemoine is nonsensical.

Conspicuously absent from Google's motion is any justification or explanation for Google's failure to disclose Mr. Lemoine as a relevant witness. Although Google produced some documents mentioning Mr. Lemoine in this case (some of which were duplicates), what is more telling is what Google did not produce. Google did not produce the June 4, 2022 email that Mr. Lemoine sent to Senator Mike Lee's office attaching a "summary of the findings" of a study he performed about how "'signed out' experiences could bleed over into [users'] 'signed in' experiences." Mao Decl., Exhibit 1, ¶ 15. Nor did Google produce the June 5, 2022 email that Mr. Lemoine sent to Google CEO Sundar Pichai and Alphabet's Chief Legal Officer Kent Walker "advising them of the e-mail [Lemoine] had sent to Senator Mike Lee's office." Mao Decl., Exhibit 1, ¶ 16. Google never disclosed Mr. Lemoine as a potential document custodian. Google's assertion that Plaintiffs somehow "abandoned" Mr. Lemoine (Mot. at 4) is simply not true—it is Google who refused to engage in Magistrate Judge Tse's process of submitting a joint letter for the purposes of document discovery and a deposition of Mr. Lemoine.[1] Following Google's refusal to return any portion of the joint letter, Plaintiffs reasonably instead relied on Mr. Lemoine's sworn testimony, including at summary judgment without objection from Google.

***Second***, Google was given ample opportunity to cure any alleged late disclosure. Throughout its Motion, Google emphasizes how it "rightly refused" Plaintiffs' "offer to produce Mr. Lemoine for a deposition" soon after he was disclosed. Mot. at 4. Any prejudice resulting from Google's failure to depose or otherwise take discovery on Mr. Lemoine, including the "cascading

---

[1] *See* Civil Standing Order for Magistrate Judge Alex G. Tse, *available at* https://cand.uscourts.gov/wp-content/uploads/judges/Tse-AGT/AGT-Civil-Standing-Order_11-15-2024.pdf

1  effect" of having to rethink trial strategy (Mot. at 6–7), is of **Google's own doing**. *See Quinn v.*
2  *Fresno Cnty. Sheriff*, 2012 WL 3069934, at *2 (E.D. Cal. July 27, 2012) (permitting plaintiff to
3  add late-disclosed witness if witness was made available for deposition before trial). Not only does
4  Google have all of Mr. Lemoine's custodial files from his years of work at Google, which it refused
5  to produce, he was also made available for deposition more than a year and a half before trial in
6  this case. Google's failure to identify Mr. Lemoine as a document custodian and strategic decision
7  not to take his deposition cannot now serve as a basis to prevent Plaintiffs from presenting his
8  sworn testimony to this jury.

9  *Third*, Mr. Lemoine's testimony will in no way disrupt the trial. Plaintiffs only intend to
10 play a small number of clips from that deposition, to prove that Google has misused (s)WAA-off
11 data in various ways that will contradict the testimony of Google's experts and fact witnesses. That
12 testimony is relevant, not disruptive. The only way this could in any way become disruptive is if
13 Google—not Plaintiffs—seeks to introduce irrelevant and inflammatory information about Mr.
14 Lemoine. Mr. Lemoine's tweets, religious views, and other topics that Google harps on as
15 "distracting" (Mot. at 7) have no bearing on Google's liability in this case. Google's threat to
16 disrupt trial if Google does not get its way is not a basis to prevent Plaintiffs from presenting
17 relevant admissions by a former senior Google employee.

18 *Fourth*, Mr. Lemoine's testimony is clearly important. Google has repeatedly asserted that
19 it only uses (s)WAA-off data for "record keeping" purposes. Mr. Lemoine's testimony explodes
20 that assertion. This jury should be permitted to assess that testimony and make findings based on
21 the evidence, not just the assertions of Google's lawyers.

22 **B.    Mr. Lemoine's Testimony Is Highly Relevant**

23 Google's suggestion that Mr. Lemoine's testimony is irrelevant is not credible. Mr.
24 Lemoine testified that Google uses the data at issue in this lawsuit in connection with its AI
25 products. Lemoine Dep., 205:25–206:6, 206:21–207:10 (confirming that "WAA-off data get[s]
26 used by Google's AI"). Google's AI also uses (s)WAA-off data to reidentify users. *Id.* at 218:2–
27 5, 219:8–12, 205:25–206:6, 206:21–207:10. The documents and testimony from that testimony
28 also demonstrate that Mr. Lemoine raised his concerns regarding Google's privacy violations with

Google's top executives. This was also detailed in a publicly-filed declaration by Mr. Lemoine. *See Brown*, Dkt. 1042-1, No. 4:20-cv-03664-YGR (N.D. Cal.); Mao Decl., Exhibit 1. Google's attacks on Mr. Lemoine's character and personal life (during the *Brown* deposition and repeated in Google's Motion here) do not somehow make these admissions irrelevant or inadmissible.

### C.    Google Has Similar Motives Here As It Did In *Brown*

Google next argues that even though Google is the one that elected not to depose Mr. Lemoine in this case (at its own peril), Plaintiffs may not rely on Mr. Lemoine's testimony in *Brown* because Google's motive for cross examining Mr. Lemoine in *Brown* is dissimilar to Google's motive in this case. This is nonsense. As an initial matter, similar motive to develop testimony does not mean it must be identical. *U.S. v. Duenas*, 691 F.3d 1070, 1087 (9th Cir. 2012) (citing *U.S. v. Salerno*, 505 U.S. 317 (1992)). And Google's similar motive across both cases is self-proving. At Mr. Lemoine's deposition in *Brown*, Google did not attack Mr. Lemoine's testimony regarding Google's AI's misuse of data as somehow inaccurate. Instead, Google made it personal, trying to smear and discredit Mr. Lemoine. That has not changed in this case. At every turn, Google has chosen not to challenge Mr. Lemoine's testimony either by way of producing documents that contravene his testimony or by noticing his deposition and subjecting him to further examination. Indeed, in this very Motion, Google offers nothing to rebut Mr. Lemoine's substantive testimony about what Google does with (s)WAA-off data, and instead repeats the familiar trope of attacking his credibility and character.

Google then suggests its counsel never had a reason or opportunity at the *Brown* deposition to re-examine Mr. Lemoine after Plaintiffs' counsel's examination. This is also untrue. Even after Plaintiffs' counsel asked Mr. Lemoine about Google's privacy practices, including those with (s)WAA-off data, Google conducted a near 20-minute follow up with Mr. Lemoine. Lemoine Dep. at 212:13–227:6. Google asked Mr. Lemoine about his review of Google's privacy policies (*id.* at 163:1-12, 173:20-174:17, 207:4-10, and 212:13–213:6), confirmed that Mr. Lemoine had "a very good understanding of Google's AI systems and what they can do" (*id.* at 214:18–22), confirmed that Google's AI systems "can reidentify users of private browsers" and join private and non-private data, just like it can with (s)WAA-off data (*id.* at 218:2–5, 219:8–12, 205:25–206:6,

1  206:21–207:10), asked who he worked with at Google to design and test experiments with
2  Google's AI joining information from non-personalized logs (like where (s)WAA-off data is
3  stored) and personalized logs (*i.e.*, where GAIA data is stored) (*id.* at 220:8–223:2), and confirmed
4  that Google's AI was trained on "a population" of data to "draw[] any conclusions whatsoever
5  from any idiosyncratic data." *Id.* at 225:1–13. There is nothing further that Google's counsel in
6  this case would have asked Mr. Lemoine, which is confirmed by the fact that Google's counsel
7  repeatedly declined Plaintiffs' invitation to depose him again in this case.

8       *Murray v. Toyota Motor Distributors, Inc.*, is instructive. There, a former employee
9  testified that his company had a policy to enforce exclusive dealing clauses in violation of certain
10 antitrust laws. 664 F.2d 1377, 1379 (9th Cir. 1982), *certiorari denied* 102 S. Ct. 2905, 457 U.S.
11 1106. In a subsequent case, brought against *a different defendant*, that testimony was "properly
12 admitted under Fed. R. Evid. 804(b)(1)" because that defendant "had a 'similar motive' in that
13 [subsequent] case and this [case] to cross-examine [the employee] as to the existence of the policy"
14 even though his responsibilities were not the same. 664 F.2d at 1379.

15      Google's reliance on *U.S. v. Duenas* is unavailing. That was a criminal trial where a police
16 officer was questioned at a suppression hearing. 691 F.3d at 1075. After the hearing, but before
17 trial, that officer passed away. *Id.* at 1078. After the trial court admitted the evidence under Rule
18 801(b)(1), the Ninth Circuit analyzed whether the defendant had a "similar motive" to develop
19 testimony for trial as was developed at the suppression hearing. *Id.* The Ninth Circuit found that

20     Because Ray's motive at the suppression hearing was solely to demonstrate that his
    statements were involuntary and obtained in violation of *Miranda*, and thus
21     inadmissible, his motive for cross-examining Officer Smith at trial, to challenge the
    substance of the statements as opposed to the circumstances in which they were
22     given, was substantially dissimilar.

23 *Id.* at 1087. The Ninth Circuit explained that "[t]he issue at trial was whether the evidence proved
24 [the defendant's] guilt beyond a reasonable doubt, not the circumstances of his confession." *Id.* at
25 1090. Unlike in *Duenas*, here Google had similar (if not identical) motives to develop Mr.
26 Lemoine's testimony on Google's privacy violations as well as his credibility on those subjects.
27 Finally, Google's reliance on *Hub v. Sun Valley Co.*, 682 F.3d 776 (9th Cir. 1982), is wholly
28 misplaced because it relies on an older version of Federal Rule of Civil Procedure 32(a).

### D. Rule 403 Does Not Merit Any Exclusion

Google's final salvo falls flat. As demonstrated above, Mr. Lemoine's testimony is a far cry from "zero" relevance and instead includes highly relevant admissions by an experienced Google employee about Google's use of data at issue in this litigation and his reported concerns to top-level executives. *See supra* § II.B; Lemoine Dep. at 37:12–38:10, 40:13–42:18, 48:20–51:25, 57:25–59:3, 59:15–61:18. Google's suggestion that Plaintiffs have "exaggerated [Mr. Lemoine's] relevance" because the productions from Google were lackluster (Mot. at 11–12) actually proves one of Mr. Lemoine's points that is relevant to this litigation: that Google actively limits written documentation about privacy violations. Mao Decl., Exhibit 1, ¶ 14.

Further, Google has not presented any evidence to refute Mr. Lemoine's testimony about Google's use of users' (s)WAA-off data; the only evidence Google seeks to introduce is irrelevant, inadmissible, and inflammatory evidence about Mr. Lemoine's character, which is entirely improper. *See*, *e.g.*, *Henderson v. Peterson*, 2011 WL 2838169, **6–7 (N.D. Cal. July 15, 2011) (excluding extrinsic evidence under Rules 404 and 608 that was not probative of witness's veracity or character for truthfulness or untruthfulness).

There is nothing prejudicial to Google about Mr. Lemoine's deposition testimony. Mr. Lemoine's testimony was provided under oath, against Google, in another privacy case, with Google's lawyers present and armed with dozens of documents. The only confusion that could result would be from Google eliciting what it deems confusing: that Mr. Lemoine was deposed in another case. Mot. at 12. That fact need not be mentioned at trial. And while Google seems to be confused about Plaintiffs' counsel's straightforward and accurate representation that Plaintiffs' counsel "took a deposition of a former software engineer, Blake Lemoine, and he testified about how [Google] used WAA-off data for their AI" (Mot. at 12, quoting summary judgment hearing transcript), that is irrelevant. Plaintiffs are amenable to discussions with the Court and Google about how Mr. Lemoine's testimony would be presented to the jury.

Plaintiffs agree with Google's second argument—that introduction of testimony about Mr. Lemoine's private, personal life might cause juror confusion—but for different reasons to reach a different result. Google's insistence to litigate Mr. Lemoine's private, personal life instead of the

1  merits of his testimony about Google's privacy violations does run afoul of Rule 403 (and Rules
2  401, 404, and 608). However, any such "chaos" (Mot. at 13) would be Google's doing if Google
3  seeks to present that irrelevant testimony at trial. Even if Google were to use its 20 hours of trial
4  time to elicit any of this testimony, Google would be faced with the inescapable fact that Google
5  hired and kept Mr. Lemoine employed in a senior role (Lemoine Dep. at 158:4–15) working on
6  Google's AI, as well as other areas like compliance with GDPR at "every level of the chain . . . all
7  the way up to Kent [Walker] and Sundar [Pichai] discussing policy [on privacy]." Lemoine Dep.
8  at 165:17–166:14.

9  Google's reliance on *Tennison v. Circus Circus Enterprises, Inc.*, is misplaced. Mot. at 11.
10 There, the trial court in a sexual harassment lawsuit determined that testimony about prior
11 inappropriate conduct and complaints about that conduct was relevant. 244 F.3d 684, 690 (9th Cir.
12 2001). But under the Rule 403 balancing test, the Ninth Circuit agreed with the trial court's
13 assessment that because "much of [that] testimony was disputed by Defendants" and "would create
14 a significant danger that the jury would base its assessment of liability on remote events involving
15 other employees, instead of recent events concerning Plaintiffs." *Id.*

16 Mr. Lemoine answered all of Google's questions that sought to impugn his character
17 honestly and without hesitation. And he was not terminated because of those matters; as Google
18 admits in its Motion, Mr. Lemoine was terminated "for sharing confidential information" outside
19 of Google. Mot. at 12 (citing Lemoine Dep., 117:8–12, 149:20–21, 188:10–19). Accordingly,
20 Google has failed to "cite any authority holding that the impeachment of [Mr. Lemoine] through
21 the presentation of extrinsic evidence is proper," *Henderson*, 2011 WL 2838169, at *6, and it is
22 Google—not Plaintiffs—who should be precluded from offering the irrelevant, improper, and
23 inadmissible evidence that Google repeatedly harps on and prevent the "mini trial" that it fears.

24 **III.    CONCLUSION**

25 For the foregoing reasons, the Court should deny Google's Motion *in Limine* 1 and permit
26 Plaintiffs to introduce portions of Blake Lemoine's deposition testimony at trial.

27 Dated: July 10, 2025                              Respectfully submitted,

28                                                  By: */s/  Mark C. Mao*

| | |
|---|---|
| 1 | Mark C. Mao (CA Bar No. 236165) |
| 2 | mmao@bsfllp.com |
|   | Beko Reblitz-Richardson (CA Bar No. 238027) |
| 3 | brichardson@bsfllp.com |
|   | BOIES SCHILLER FLEXNER LLP |
| 4 | 44 Montgomery Street, 41st Floor |
|   | San Francisco, CA 94104 |
| 5 | Telephone: (415) 293 6858 |
|   | Facsimile (415) 999 9695 |

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (admitted *pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

James Lee (admitted *pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (admitted *pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Alison L. Anderson, CA Bar No. 275334
alanderson@bsfllp.com
M. Logan Wright, CA Bar No. 349004
mwright@bsfllp.com
BOIES SCHILLER FLEXNER LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (813) 482-4814

Bill Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley
afrawley@susmangodfrey.com
Ryan Sila
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor

9

PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION *IN LIMINE* 1
CASE NO. 3:20-CV-04688-RS

New York, NY 10001
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*