**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
mmao@bsfllp.com
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted *pro hac vice*)
bcarmody@susmangodfrey.com
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted *pro hac vice*)
jyanchunis@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505

*Counsel for Plaintiffs; additional counsel
listed in signature blocks below*

**COOLEY LLP**
BENEDICT Y. HUR (SBN: 224018)
bhur@cooley.com
SIMONA AGNOLUCCI (SBN: 246943)
sagnolucci@cooley.com
EDUARDO E. SANTACANA (SBN: 281668)
esantacana@cooley.com
ARGEMIRA FLOREZ (SBN: 331153)
aflorez@cooley.com
HARRIS MATEEN (SBN 335593)
hmateen@cooley.com
ISABELLA MCKINLEY CORBO (SBN 346226)
icorbo@cooley.com
3 Embarcadero Ctr., 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000

*Counsel for Defendant Google LLC*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>          v.<br><br>GOOGLE LLC,<br><br>        Defendant. | Case No. 3:20-cv-04688-RS<br><br>**PROPOSED JOINT JURY INSTRUCTIONS**<br><br>Judge: Hon. Richard Seeborg<br>Courtroom: 3, 17th Floor |

Pursuant to the Court's Order, Plaintiffs and Defendant Google LLC submit the following proposed jury instructions.

For disputed instructions, the Parties used the following color-coding: black signifies agreed upon text, blue signifies Plaintiffs' proposal, and red signifies Google's proposal. The Parties have included brief explanations and authorities to support their respective positions.

For the disputed instructions, the Parties also attach to this submission redlines comparing their respective proposals against the relevant model instructions. Exhibit A contains redlines comparing Plaintiffs' proposals to the relevant model instructions, and Exhibit B contains redlines comparing Google's proposals to the relevant model instructions.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

**I.    PRELIMINARY INSTRUCTIONS (READ AT THE BEGINNING OF TRIAL)** ........................ 1

(JOINT) JURY INSTRUCTION NO. 1 ................................................................ 1

(DISPUTED) JURY INSTRUCTION NO. 2 ........................................................ 2

(JOINT) JURY INSTRUCTION NO. 3 ................................................................ 5

(JOINT) JURY INSTRUCTION NO. 4 ................................................................ 7

(JOINT) JURY INSTRUCTION NO. 5 ................................................................ 8

(JOINT) JURY INSTRUCTION NO. 6 ................................................................ 9

(JOINT) JURY INSTRUCTION NO. 7 .............................................................. 10

(JOINT) JURY INSTRUCTION NO. 8 .............................................................. 11

(JOINT) JURY INSTRUCTION NO. 9 .............................................................. 12

(JOINT) JURY INSTRUCTION NO. 10 ............................................................ 13

(JOINT) JURY INSTRUCTION NO. 11 ............................................................ 15

(JOINT) JURY INSTRUCTION NO. 12 ............................................................ 17

(JOINT) JURY INSTRUCTION NO. 13 ............................................................ 18

(JOINT) JURY INSTRUCTION NO. 14 ............................................................ 19

(JOINT) JURY INSTRUCTION NO. 15 ............................................................ 20

(JOINT) JURY INSTRUCTION NO. 16 ............................................................ 21

(DISPUTED) JURY INSTRUCTION NO. 17 .................................................... 22

**II.    INSTRUCTIONS DURING TRIAL (READ DURING TRIAL)** .................................... 26

(JOINT) JURY INSTRUCTION NO. 18 ............................................................ 26

(JOINT) JURY INSTRUCTION NO. 19 ............................................................ 27

(DISPUTED) JURY INSTRUCTION NO. 20 .................................................... 28

(JOINT) JURY INSTRUCTION NO. 21 ............................................................ 33

(JOINT) JURY INSTRUCTION NO. 22 ............................................................ 34

(JOINT) JURY INSTRUCTION NO. 23 ............................................................ 35

(JOINT) JURY INSTRUCTION NO. 24 ............................................................ 36

(JOINT) JURY INSTRUCTION NO. 25 ............................................................ 37

(JOINT) JURY INSTRUCTION NO. 26 ............................................................ 38

**III.    FINAL INSTRUCTIONS (READ AT THE END OF TRIAL)** ................................... 39

(JOINT) JURY INSTRUCTION NO. 27 ............................................................ 39

(JOINT) JURY INSTRUCTION NO. 28 ............................................................ 40

(JOINT) JURY INSTRUCTION NO. 29 ............................................................ 41

(JOINT) JURY INSTRUCTION NO. 30 ............................................................ 42

(JOINT) JURY INSTRUCTION NO. 31 ............................................................ 43

(DISPUTED) JURY INSTRUCTION NO. 32 .................................................... 44

(DISPUTED) JURY INSTRUCTION NO. 33 .................................................... 50

(DISPUTED) JURY INSTRUCTION NO. 34 ................................................................ 52
(DISPUTED) JURY INSTRUCTION NO. 35 ................................................................ 60
(DISPUTED) JURY INSTRUCTION NO. 36 ................................................................ 65
(DISPUTED) JURY INSTRUCTION NO. 37 ................................................................ 70
(JOINT) JURY INSTRUCTION NO. 38 ....................................................................... 74
(JOINT) JURY INSTRUCTION NO. 39 ....................................................................... 75
(DISPUTED) JURY INSTRUCTION NO. 40 ................................................................ 76
(DISPUTED) JURY INSTRUCTION NO. 41 ................................................................ 79
(DISPUTED) JURY INSTRUCTION NO. 42 ................................................................ 81
(DISPUTED) JURY INSTRUCTION NO. 43 ................................................................ 89
(DISPUTED) JURY INSTRUCTION NO. 44 ................................................................ 92
(DISPUTED) JURY INSTRUCTION NO. 45 ................................................................ 94
(DISPUTED) JURY INSTRUCTION NO. 46 .............................................................. 102
(DISPUTED) JURY INSTRUCTION NO. 47 .............................................................. 109
(JOINT) JURY INSTRUCTION NO. 48 ..................................................................... 115
(JOINT) JURY INSTRUCTION NO. 49 ..................................................................... 116
(JOINT) JURY INSTRUCTION NO. 50 ..................................................................... 118
(JOINT) JURY INSTRUCTION NO. 51 ..................................................................... 119
(JOINT) JURY INSTRUCTION NO. 52 ..................................................................... 120

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**I.    PRELIMINARY INSTRUCTIONS (READ AT THE BEGINNING OF TRIAL)**

**(JOINT) JURY INSTRUCTION NO. 1**

<u>Duty of Jury</u>

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law. It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so. At the end of the trial, I will give you final instructions. It is the final instructions that will govern your duties. Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.3 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 2**

<u>Claims and Defenses</u>

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

This is a class action, in which three people called Plaintiffs are asserting claims against Google on behalf of groups of other people, which are called "classes." Plaintiffs claim that Google violated the law by collecting, saving, and/or using information about their activities on mobile apps [without their permission or consent]. These claims concern Google's conduct between July 1, 2016 and September 23, 2024.

Plaintiffs assert three claims against Google. First, Plaintiffs claim that Google's conduct violated the California Comprehensive Computer Data Access and Fraud Act, which is abbreviated "CDAFA." Second, Plaintiffs claim that Google is liable for invasion of privacy. And third, Plaintiffs claim that Google is liable for intrusion upon seclusion.

Google denies Plaintiffs' claims and also asserts certain affirmative defenses that, if you find to be applicable, would make Google not liable in whole or in part. These affirmative defenses include Google's assertions that Plaintiffs consented to Google's conduct at issue, and that some portion of each of Plaintiffs' three claims are barred by the applicable statutes of limitations.

Plaintiffs have the burden to prove the requirements of their claims, and Google has the burden to prove the requirements of its affirmative defenses. I will explain the requirements of these claims and defenses.


[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.5 (2017)]


**Plaintiffs' Statement**

- Plaintiffs rejected Google's proposal to add "without their permission or consent" to the summary of the claims for three reasons. First, it is inaccurate. As explained below, the concept of "consent" applies to some claims, and the concept of "permission" applies to

others. Both do not apply to any claim. Second, it is unnecessary. The summary is intended to describe the conduct at issue, not identify the elements of each claim and defense in the case. By Google's logic, the summary of the claim should include every element and every affirmative defense. Third, and relatedly, this summary is duplicative, as it is repeated in the summary of Google's affirmative defenses.

**Google's Statement**

The parties disagree on how to describe Plaintiffs' allegations. Permission or consent is integral to all of Plaintiffs' claims and has been a core aspect of their argument for years. The jury instructions should accurately reflect Plaintiffs' allegations against Google. *See, e.g.*, Dkt. 289 (Fourth Amended Complaint) at ¶ 1 ("Google [collected data] without notice or consent"); ¶ 3 (same); ¶ 48 (same); ¶ 97 ("Plaintiffs and Class members could not possibly have consented to Google's [alleged conduct]"); ¶ 99 (same); ¶ 110 ("The notion that users and apps consented to this practice is absurd"); ¶ 129 ("Google[] [intended] to engage in widespread data collection without consent."); ¶ 184 (Google invaded "users' privacy without consent"); ¶ 207 (Google did not obtain "proper consent"); ¶ 222 ("Google intended to [obtain data] without obtaining consent."); ¶ 223 ("Google shared this data without obtaining consent."); ¶ 231 ("Google intercepted and collection [sic] data without disclosure of consent while WAA or sWAA was turned off."); ¶ 235 (Mr. Rodriguez was "tracked by Google without his knowledge or consent."); ¶ 242 (same, for Mr. Santiago); ¶ 247 (same, for Ms. Harvey); ¶ 248 ("None of the Plaintiffs consented" to Google's alleged conduct); ¶ 262 (Google violated Cal. Penal Code § 502(c)(2) by knowingly accessing and without permission taking, copying, saving, analyzing, and using Plaintiffs' and Class members' data."); ¶ 263 ("Google's actions often exceeded Plaintiffs' and Class members' permission many times over…"); ¶ 264 ("Google … acquired [Plaintiffs' and Class members'] sensitive and valuable personal information without permission…"); ¶ 288 ("Google … track[ed] users on their mobile apps without their consent.").

Accepting Plaintiffs' version of the description of their own claims mischaracterizes their claim to suggest that *all* collection is unlawful, which is a particularly misleading thing for the Court

to be forced to read to the jury as the second instruction jurors hear at the start of trial. Plaintiffs provide no reason why they cannot accurately describe their own claims.

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

1

## (JOINT) JURY INSTRUCTION NO. 3

2

### "Class Action" Defined

3      This case is a class action.  A class action is a lawsuit that has been brought by one or more

4 plaintiffs on behalf of a larger group of people who have similar legal claims.  All of these people

5 together are called a "class."  The three Plaintiffs—Anibal Rodriguez, Julian Santiago, and Susan

6 Lynn Harvey—bring this action as class representatives.

7      In a class action, the claims of many individuals can be resolved at the same time instead of

8 requiring each member to sue separately. Because of the large number of members in the two classes

9 in this case, not everyone in the class will testify. You may assume that the evidence at this trial

10 applies to all class members.  All members of the classes will be bound by the result of this trial.

11      There are two classes in this case.

12      The first class is called "Class 1" or the "Android Class." It consists of all individuals who,

13 at any time July 1, 2016 through September 23, 2024, (a) had their "Web & App Activity" and/or

14 "supplemental Web & App Activity" setting turned off; and (b) while using a smartphone or tablet

15 running the Android operating system; (c) used a non-Google-branded app that included the

16 Firebase Software Development Kit and/or Google Mobile Ads Software Development Kit, causing

17 information about the individual's app activity to be transmitted to Google.

18      The second class is called "Class 2" or the "non-Android Class."  It is the same as Class 1,

19 except that it includes individuals who used a smartphone or tablet that were not running the Android

20 operating system, such as Apple iPhones and iPads.

21      For purposes of the Plaintiffs' first claim, for violation of the California Comprehensive

22 Computer Data Access and Fraud Act, the classes include all types of Google accounts, including

23 not only ordinary consumer accounts, but also accounts for organizations like businesses and

24 schools, called "enterprise" accounts, and accounts for children under the age of 13, which are called

25 "supervised" accounts.  For purposes of Plaintiffs' second and third claims, for invasion of privacy

26 and intrusion upon seclusion, the classes include neither enterprise accounts for businesses and

27 schools nor supervised accounts for children.

28

[Authorities: Judicial Council of California Civil Jury Instructions Number (CACI) No. 115]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 4**

<u>Burden of Proof– Preponderance of the Evidence</u>

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.6 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**PROPOSED JOINT JURY INSTRUCTIONS**

**(JOINT) JURY INSTRUCTION NO. 5**

<u>What is Evidence</u>

The evidence you are to consider in deciding what the facts are consists of:

        (1)     the sworn testimony of any witness;

        (2)     the exhibits that are admitted into evidence;

        (3)     any facts to which the lawyers have agreed; and

        (4)     any facts that I have instructed you to accept as proved.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.9 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

## (JOINT) JURY INSTRUCTION NO. 6

### What Is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)    Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)    Testimony that was excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4)    Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.10 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**PROPOSED JOINT JURY INSTRUCTIONS**

**(JOINT) JURY INSTRUCTION NO. 7**

<u>Evidence for Limited Purpose</u>

Some evidence may be admitted only for a limited purpose. When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.11 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 8**

<u>Direct and Circumstantial Evidence</u>

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.12 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**PROPOSED JOINT JURY INSTRUCTIONS**

**(JOINT) JURY INSTRUCTION NO. 9**

<u>Ruling on Objection</u>

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.13 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 10**

<u>Credibility of Witnesses</u>

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case, if any;

(5)    the witness's bias or prejudice, if any;

(6)    whether other evidence contradicted the witness's testimony;

(7)    the reasonableness of the witness's testimony in light of all the evidence; and

(8)    any other factors that bear on believability.

Sometimes a witness may have said something that is not consistent with something else he or she said. Sometimes different witnesses gave different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.14 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED:_____

## (JOINT) JURY INSTRUCTION NO. 11

### Conduct of the Jury

I will now say a few words about your conduct as jurors.

First, keep an open mind, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, the platform "X" formerly known as Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court took an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may

be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately, by sending a note through the clerk or /bailiff signed by any one or more of you.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.15 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED:_____

**(JOINT) JURY INSTRUCTION NO. 12**

<u>Publicity During Trial</u>

If there is any news media account or commentary about the case or anything to do with it, you must ignore it.  You must not read, watch, or listen to any news media account or commentary about the case or anything to do with it.  The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies.  If any juror is exposed to any outside information, please notify me immediately.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.16 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED:_____

**(JOINT) JURY INSTRUCTION NO. 13**

<u>No Transcript Available to Jury</u>

I urge you to pay close attention to the trial testimony as it is given.  During deliberations you will not have a transcript of the trial testimony.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.17 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED:_____

**(JOINT) JURY INSTRUCTION NO. 14**

<u>Taking Notes</u>

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the jury room. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.18 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED:_____

**(JOINT) JURY INSTRUCTION NO. 15**

<u>Outline of Trial</u>

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiffs will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiffs may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.21 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED:_____

**(JOINT) JURY INSTRUCTION NO. 16**

<u>Bench Conferences and Recesses</u>

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.20 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED:_____

**(DISPUTED) JURY INSTRUCTION NO. 17**

<u>Questions to Witnesses by Jurors</u>

**Plaintiffs' Proposal:**

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses. If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

**Google's Proposal**

When the attorneys have finished examining a witness, you may propose a question to the witness to help clarify the testimony. A question may not be used to express any opinion about the testimony or argue with a witness. If you propose a question, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question using the form that has been put into your binders. Do not sign the question.

There are some proposed questions that I will not permit, or will rephrase from the wording submitted. This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case. If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons. Do not give undue weight to questions you or other jurors propose. You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence. After your questions, if any, the attorneys may ask additional questions.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so. It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.19 (2017)]

**Plaintiffs' Statement:**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- While Plaintiffs defer to the Court's general practice on this issue, Plaintiffs respectfully submit that there is no reason to allow jurors to question witnesses. "[T]he practice is inherently dangerous and should be discouraged" for numerous reasons. *People v. McAlister*, 167 Cal. App. 3d 633, 645 (Ct. App. 1985).

- *First,* questioning by jurors carries inherent risks of confusion and disruption. As noted in Google's proposed instruction, juror questions could express incorrect or inappropriate thoughts about the testimony or result in arguments, which would waste time, confuse or mislead other jurors, and derail the strictly-timed proceedings.

- *Second*, this questioning could lead to prejudice from objections. As Google also notes in its proposed instruction, it will often be the case that a lawyer has not asked a question because it is legally objectionable. However, with non-legally trained jurors, "[t]he danger of irrelevant and improper questions is high, and were counsel to object, the potential for prejudice is apparent." *People v. Cummings*, 4 Cal. 4th 1233, 1305, (1993), as modified on denial of reh'g, (June 23, 1993). This concern persists even if the Court is asking questions on the jurors' behalf since jurors may draw improper inferences against the objecting party and infer that they are trying to hide requested information from the jury. The cases on which Google relies do not state that jury questioning is de facto permitted, only that no prejudice arose that warranted reversal there. *See United States v. Huebner*, 48 F.3d 376, 382 (9th Cir. 1994); *see also Hernandez v. Jacquez*, 2010 WL 373794, at *8 (C.D. Cal. Feb. 2, 2010) ("it is not reversible error for a trial court to permit jurors to submit questions for witnesses so long as … no prejudice resulted from any question asked").

- *Third,* jurors are selected to serve as impartial evaluators of evidence, not as advocates or participants in the trial process. When jurors are permitted to ask questions, however, they become active participants in the trial process, which could undermine their objectivity and disrupt counsels' planned presentation of the case. *See People v. McAlister*, 167 Cal. App. 3d 633, 645 (Ct. App. 1985) ("The involvement of the juror in the process of interrogation

1     may lessen his or her objectivity and cause a premature judgment on some issue in the

2     case.").

- This process Google proposes is plainly not worth the risks. Nevertheless, if jurors are allowed to submit questions, the Court should provide opposing counsel with the opportunity to ask follow up questions of the witness in order to address objections or correct any misstatements. *See People v. McAlister*, 167 Cal. App. 3d 633, 644 (Ct. App. 1985) ("[T]he risk of prejudice is too great to require counsel to be put to the choice of offending a juror by an objection or of letting improper or prejudicial testimony go in without the right to later review."); *see also State v. Graves,* 907 P.2d 963, 967 (Mont. 1995) ("[I]f a judge, in his or her discretion, decides to allow this practice, certain minimum safeguards must be implemented. These safeguards include [that]…counsel should be allowed to ask follow-up questions.").

**Google's Statement:**

Whether to permit jurors to propose questions to witnesses is within the discretion of the trial court. *See, e.g.*, *United States v. Lynch*, 903 F.3d 1061, 1082 (9th Cir. 2018) (finding that the trial court "has the authority to permit limited jury questioning of a witness") (internal citations omitted). Google will defer to the Court's general practice on this instruction, but would like to leave open the possibility that jurors may ask clarifying questions of witnesses throughout trial. If the Court is agreeable to this procedure, Google would suggest the above instruction, which is based on the Ninth Circuit's Manual of Model Jury Instructions, number 1.19. *See* Chief Judge Seeborg's Guidelines for Final Pretrial Conferences in Civil Jury Cases at 5 (Section D.4.c) ("As to substantive case specific instructions, the parties shall meet and confer and submit jointly an agreed set of instructions, using the Model Jury Instructions of the Ninth Circuit where appropriate."). The specific procedure for clarifying questions by jurors described herein is derived from an instruction utilized by Judge Donato in another recent case involving Google. *See In re Google Play Store Antitrust Litigation*, No. 3:21-md-02981-JD Dkt. 733 at 18.

The concerns Plaintiffs raise are unfounded. Courts agree that jurors may propose clarifying questions as long as the process is neutral and no prejudice results from the questions being asked. *See, e.g.*, *United States v. Huebner*, 48 F.3d 376, 382 (9th Cir. 1994) (finding that it is not reversible error for a trial court to permit jurors to submit questions for witnesses so long as the procedure for doing so was neutral and no prejudice resulted from any question); *Hernandez v. Jacquez*, 2010 WL 373794, at *8 (C.D. Cal. Feb. 2, 2010) (same). Google's proposed instruction contemplates that Judge Seeborg will be the one to actually ask the jurors' questions—rather than jurors speaking directly to witnesses themselves, which will help police the proceedings. Plaintiffs obliquely suggest that juror questions could result in "arguments," but fail to adequately explain why this would be. Because Judge Seeborg will be evaluating each question and will be able to either rephrase or refuse to ask any question that is proposed, Plaintiffs' concerns regarding prejudice from "legally objectionable" queries are unwarranted. And attorney objections carry no greater risk of prejudice when made in response to a juror's question than when made in response to a question posed by opposing counsel. Google does not dispute that counsel should be allowed to ask follow-up questions, should that procedure be agreeable to the Court. Google proposes to enter this instruction, but as stated will defer to the Court's general practice.

DATE SUBMITTED: July 11, 2025

DATE REVISED:_____

## II.    INSTRUCTIONS DURING TRIAL (Read During Trial)

## (JOINT) JURY INSTRUCTION NO. 18

Cautionary Instructions

**At the End of Each Day of the Case:**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom.  This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case.  This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers.  You also must not communicate with anyone, in any way, about this case.  And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

**At the Beginning of Each Day of the Case:**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here.  So you must not learn any additional information about the case from sources outside the courtroom.  To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

If you think that you might have done so, please let me know now by raising your hand. [*Wait for a show of hands*].  I see no raised hands; however, if you would prefer to talk to the court privately in response to this question, please notify a member of the court's staff at the next break. Thank you for your careful adherence to my instructions.


[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.0 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED:_____

**(JOINT) JURY INSTRUCTION NO. 19**

<u>Stipulations of Fact</u>

The parties have agreed to certain facts. I may read some to you during the course of the trial, counsel may read some to you during the course of the trial, or others may be placed in evidence as an exhibit. You must treat these facts as having been proved.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.2 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 20**

*Assumed Facts*

**Google's Proposal**

For purposes of this case, you should assume that the following facts are true:

- All mobile applications running Google Analytics followed the procedure outlined in the Google Analytics Terms of Service. This procedure requires all such applications to disclose the use of Google Analytics and how it collects and processes data, and requires such applications to inform users about any collection and obtain their consent.

**Plaintiffs' Proposal:** None.

**Google's Statement**

Plaintiffs' statement on this instruction underlines why it is needed in some form, though Google is open to various ways of expressing the fundamental concept to the jury that it should not consider individualized privacy policies from third party apps in its verdict. Google has also filed its motion in limine 10 that addresses related issues.

This class was certified over Google's objection that there were individualized issues concerning whether apps actually obtained the consent they were required to obtain pursuant to Google's Firebase Terms of Use. The Court reasoned in its Order granting class certification that, "[t]o the extent Google had a policy that required third party apps to disclose *Google's* policies to users, that evidence may be applied across the class. Dkt. 352 (Class Cert. Order) at 17–18 ("Google is correct that a factfinder may have to analyze an app's specific disclosures to evaluate consent but that individual inquiry, if applicable, does not overwhelm predominating questions as to Google's privacy disclosures."). This proposed instruction does the work the Court anticipated – to apply the presumption that Google's policies required disclosure across the class.

Plaintiffs should not be permitted, having secured certification over Google's objection, to in any way undermine the Court's reasoning and Order, thereby creating individualized issues. And the jury should be prevented from undermining it as well.

1        Thus, Google seeks to include this assumed fact in the jury instructions to provide necessary

2 context for the jury when evaluating the claims in this case. The proposed instruction accurately

3 reflects: (1) the contractual framework governing the use of Google Analytics by mobile

4 applications, including obligations to disclose data practices and obtain user consent (*see, e.g.*, Trial

5 Ex. G0185 (GOOG-RDGZ-02111351 at -355) (Google Analytics Terms of Service operative as of

6 May 15, 2023)), and (2) this Court's earlier ruling that this case is not about the variety in disclosures

7 made by third parties, but rather that the "relevant question concerns *Google's* disclosures" (*see*

8 Dkt. 352 (Class Cert. Order) at 17). As explained further in Google's motion in limine 10, evidence

9 and argument regarding the compliance—or lack thereof—of third-party applications with Google's

10 disclosures would result in individualized inquiries which would unduly prejudice Google. *See* Dkt.

11 528 at 5–6 (Google's MIL 10) ("Google [] has litigated this case as a class action for 538 days and

12 tailored its defense strategy to defend against fact disputes over its own disclosures to users."); *see*

13 *also* Fed. R. Evid. 403.

14        Instructing the jury in this way will ensure that jurors do not improperly consider

15 individualized issues in evaluating "the adequacy of each of the third-party app disclosures Plaintiffs

16 used throughout the relevant time period," nor attribute the actions—or inactions—of third-party

17 app developers to Google. *See* Dkt. 528 at 6. If the jury were to rest a verdict of, for example, no

18 consent, based on an inference that certain apps failed to obtain consent for Google Analytics, that

19 would undermine the class device entirely, and prejudice Google, which anticipated it would need

20 to mount individualized defenses, app-by-app, when it opposed class certification.

21        On the other hand, failure to include this instruction would run the risk of confusing the jury,

22 who will separately be instructed to "assume that the evidence at this trial applies to all class

23 members" (an instruction that Plaintiffs agree to). *See supra* at 5 (Jury Instruction No. 3: "Class

24 Action" Defined). The Court should instruct the jury to assume this fact.

25        Plaintiffs' arguments are baseless and should be rejected. *First*, the agreed upon language in

26 Instruction No. 19, *supra*, contemplates that assumed facts may be read "during the course of trial."

27 Plaintiffs' second argument misstates their opposition to Google's motion in limine 10.

28

**PROPOSED JOINT JURY INSTRUCTIONS**

*Second,* Plaintiffs' opposition *disagreed* that discussions of third party apps at trial should be limited to arguments concerning those apps' compliance with Google's disclosures, so it is disingenuous to now say that this opposition renders Google's proposal moot. *See* Dkt. 541 at 3 (identifying this aspect of Google's MIL 10 as a point of contention and arguing that Google's MIL 10 should be denied on this basis). And contrary to Plaintiffs' characterizations, this assumed fact is not an "argument[] about whether particular apps comply with the Google Analytics Terms of Service." Including it would foreclose the possibility of any sideshows at trial regarding the "compliance or lack thereof of third-party applications with Google's disclosures." Dkt. 528 at 3.

*Third*, just because Google did not proffer a class-wide expert or other evidence to demonstrate third party app compliance with its disclosures does not mean that Google "admits it cannot prove" this. Google admits no such thing.

*Fourth*, Plaintiffs offer an alternative stipulation that "non-Google apps' privacy policies referred to the apps' general use of analytics services," but this is not an adequate substitute for Google's proposal. The Court should enter Google's proposal as written. There is no evidence in the record suggesting that these third party apps failed to comply with Google's disclosures. And there is no reason to recharacterize the contractual requirement in a way that benefits Plaintiffs.

*Finally*, if Plaintiffs indeed agree with Google that individualized inquiries are inappropriate, then they should agree to admit this fact, which would foreclose any such concerns. *See* Dkt. 541 at 1 ("Plaintiffs agree with Google (and the Court) that the focus at trial should be on Google's disclosures, not disclosures by third-parties."). This assumed fact does not harm Plaintiffs' case. Plaintiffs do not dispute that apps disclosed Google Analytics. Instead, Plaintiffs argue that the disclosure required by Google wasn't good enough because it didn't specify that Google Analytics would receive data even if sWAA was turned to off. Nothing in this instruction forecloses that argument.

**Plaintiffs' Statement**

- There is no reason to insert any "assumed fact" into these jury instructions, particularly for a "fact" like this one which is slanted in Google's favor and very much disputed. There are at least five specific problems with Google's proposal.

- *First*, any stipulated facts do not belong in the jury instructions. Instead, as contemplated by the agreed portion of Instruction No. 19, *supra*, any stipulated facts should be read to the jury during trial or placed into evidence.

- *Second*, even if stipulated facts belonged in these instructions (which they do not), this proposed fact is inappropriate because the parties have agreed not to make arguments about whether particular apps comply with the Google Analytics Terms of Service. *Compare* Dkt. 528 (Google's Motion *In Limine* 10) at 3 (Google contending the parties should not raise any arguments about "the compliance or lack thereof of third-party applications with Google's disclosures"), *with* Dkt. 541 (Plaintiffs' Opp'n to Google's Motion *In Limine* 10) at 1 (Plaintiffs' agreeing with Google on this point). Yet here, Google seeks to tell the jury that "all mobile applications" do in fact "follow[] the procedure outlined in the Google Analytics Terms of Service"—thereby reneging on the parties' agreement.

- *Third*, Google has no evidentiary support for its proposed fact. To the contrary, Google has conceded that it did not "proffer[] a class-wide expert or other evidence to demonstrate compliance or lack thereof with any disclosures that may have been provided by third-party applications to class members concerning Google's Terms of Service." Dkt. 528 at 5. Google's proposal purports to establish a fact that Google admits it cannot prove.

- *Fourth*, the proposed fact goes far beyond stating a simple fact—e.g., that Google has a policy called the Google Analytics Terms of Service. Instead, the proposal would have the Court tell the jury that "all mobile applications" "followed" the Terms of Service and in doing so "obtain [users'] consent" to the at-issue practices. Consent is of course a disputed issue in the case, and Google is improperly asking the Court to place its thumb on the scale in Google's favor. If any similar instruction is given—and it should not be—the instruction

should be limited to facts, *e.g.*, that non-Google apps' privacy policies referred to the apps' general use of analytics services without ever mentioning "sWAA," much less informing users that Google would not honor its own "privacy controls."

- *Fifth*, Google wrongly claims that Plaintiffs are seeking to "undermin[e]" the Court's certification order. At class certification, the Court ruled that "[t]o the extent Google had a policy that required third party apps to disclose *Google's* policies to users, that evidence may be applied across the class." Dkt. 352 at 17-18. Plaintiffs of course agree. Google's policy for app developers is classwide evidence, and Google can and will make arguments about that policy and its import for Plaintiffs' claims. But there is no reason to allow Google to place its spin on that policy in the instructions.

- Finally, Google's concern about litigating "the adequacy of each of the third-party app disclosures" is misplaced. Plaintiffs have not even included any third-party app privacy policies on their exhibit list.

DATE SUBMITTED: July 11, 2025

DATE REVISED:_____

**PROPOSED JOINT JURY INSTRUCTIONS**

**(JOINT) JURY INSTRUCTION NO. 21**

<u>Deposition in Lieu of Live Testimony</u>

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.4 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 22**

<u>Transcript of Recording</u>

You have watched a recording that has been received in evidence. Each of you was given a transcript of the recording to help you identify speakers and as a guide to help you listen to the recording. However, bear in mind that the recording is the evidence, not the transcript. If you heard something different from what appeared in the transcript, what you heard is controlling. Now that the recording has been played, the transcript will be taken from you.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.5 (2017)]

**<u>Google's Statement:</u>**

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 23**

<u>Use of Interrogatories</u>

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.11 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

## (JOINT) JURY INSTRUCTION NO. 24

### Use of Requests for Admission

Evidence was presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.12 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 25**

<u>Expert Opinion Testimony</u>

You are about to hear testimony from [*name*] who will testify about [*his/her*] opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.13 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 26**

<u>Charts and Summaries Not Received in Evidence</u>

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.14 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

### III.    FINAL INSTRUCTIONS (READ AT THE END OF TRIAL)

### (JOINT) JURY INSTRUCTION NO. 27

<u>Duty of Jury</u>

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.] [A copy of these instructions will be sent to the jury room for you to consult during your deliberations.]

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.4 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 28**

<u>Claims</u>

I will now explain the substantive law applicable to the claims brought in this action.  On behalf of the classes, Plaintiffs assert three claims against Google:

1.    Violation of the Comprehensive Computer Data Access and Fraud Act ("CDAFA");

2.    Invasion of privacy; and

3.    Intrusion upon seclusion.

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

## (JOINT) JURY INSTRUCTION NO. 29

### FIRST CLAIM: VIOLATION OF THE CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT ("CDAFA"), CAL. PENAL CODE § 502

Plaintiffs claim that Google violated the Comprehensive Computer Data and Access Fraud Act, sometimes referred to as "CDAFA." To establish this claim, Plaintiffs must prove all of the following:

1. Plaintiffs are owners or lessees of mobile devices or data.

2. Google knowingly accessed Plaintiffs' mobile devices or data;

3. Google took, copied, or made use of data from those Plaintiffs' mobile devices without Plaintiffs' permission;

4. Plaintiffs suffered damage or loss; and

5. Google's conduct was a substantial factor in causing Plaintiffs' damage or loss.

Some of the terms used in these elements have specific meanings. I will now explain them to you.

[Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 1812; Cal. Penal Code § 502]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 30**

<u>Mobile Devices</u>

Mobile devices include cell phones and tablets.

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

1

**(JOINT) JURY INSTRUCTION NO. 31**

2

<u>Access</u>

3    The term "access" means to gain entry to, instruct, cause input to, cause output from, cause

4    data processing with, or communicate with the logical, arithmetical, or memory function resources

5    of a mobile device, computer, computer system, or computer network. A person can access a mobile

6    device, computer, computer system, or computer network in different ways.  For example, access

7    can be accomplished by sitting down at a computer and using the mouse and keyboard, or by using

8    a wireless network or some other method or tool to gain remote entry.

9

10

11   [Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 1813]

12

13   DATE SUBMITTED: July 11, 2025

14   DATE REVISED: _____

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**(DISPUTED) JURY INSTRUCTION NO. 32**

<u>Damage or Loss</u>

**Plaintiffs' Proposal:**

For the fourth element, you must consider whether Plaintiffs had "damage or loss." The following are the specific items of damage or loss claimed by Plaintiffs:

1. The value of data taken from Plaintiffs;

2. Google's profits from data taken from Plaintiffs;

3. Loss of the right to control Plaintiffs' data;

4. Loss of privacy over Plaintiffs' data;

5. Depletion of Plaintiffs' mobile devices' battery life and/or bandwidth; and

6. Injury to Plaintiffs' peace of mind.

If you determine that Plaintiffs have proven any of these forms of damage or loss, you must find that Plaintiffs have satisfied the fourth element of this claim.

**Google's Proposal:**

For the fourth element, you must consider whether the Plaintiffs had "damage" or "loss." You may find that damage or loss occurred if Google's conduct caused harm to the Plaintiffs' mobile devices or data. "Damage or loss" can also include:

1. Impairment to the integrity or availability of data from a computer, computer system, or computer network; or

2. Any expenditure reasonably and necessarily incurred to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access.

Loss of the right to control one's data, the loss of privacy over that data, or depletion of resources such as battery life or bandwidth as a direct result of Google's conduct, may support an award of nominal damages, but these alone do not constitute "damage or loss" under CDAFA sufficient to support more than an award of nominal damages.

**Plaintiffs' Statement:**

- The parties agree that an instruction with respect to "damage or loss" is appropriate. However, the parties dispute both the form and substance for this instruction.

- With respect to form, Plaintiffs' proposal is adapted from similar CACI model instructions, which provide concise lists of the items of damages claimed by the plaintiffs. *See, e.g.*, CACI 1821 (damages for use of name or likeness); CACI 3900 (general tort damages). This is the simplest way to present the different types of damage or loss alleged. It will aid jury comprehension more than paragraphs of text, which is the form that Google proposes.

- With respect to substance, the parties have four disputes: (1) Whether the jury should be separately instructed on "damage" and "loss"; (2) Whether the jury should be instructed that Google's profits from Plaintiffs' data may constitute "damage or loss"; (3) Whether the jury should be instructed that "loss" may include expenditures incurred to verify that mobile devices or data were not altered, damaged, or deleted; and (4) Whether the jury should be instructed that certain forms of damage or loss do not constitute "damage or loss" under the CDAFA sufficient to support more than minimal recovery.

- *First*, the jury should not be separately instructed on "damage" and "loss." The statute does not separately define those terms. Plaintiffs are aware of no other authority that defines them separately, either. Instead, this Court and others have identified what satisfies the single "damage or loss" element. *See, e.g.*, Dkt. 445 at 19 ("Courts recognize depletion of battery and computing resources as acceptable forms of damage or loss for the purposes of a CDAFA claim"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) (denying Google's motion for summary judgment on the "damage or loss" element). Furthermore, undertaking the effort to sort types of "damage or loss" into separate "damage" or "loss" categories would serve no purpose because either one would be sufficient to satisfy the CDAFA's fourth element. Separately defining those terms would only complicate the instruction and, ultimately, the jury's comprehension and deliberations.

- *Second*, the jury should be instructed that, consistent with the Court's prior orders, Google's profits from the misappropriated data may constitute "damage or loss." The Court reached

this conclusion in its orders on both class certification and summary judgment, recognizing both times that it is well supported under Ninth Circuit law. *See* Dkt. 445 (summary judgment order) at 18 ("[A] reasonable juror could find the Plaintiffs suffered damage or loss because Google profited from the misappropriation of their data."); Dkt. 352 (class certification order) at 12 (recognizing that damage or loss can be satisfied by evidence that "the defendant profited from this valuable data"); *see also In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (holding that "Plaintiffs sufficiently alleged a state law interest whose violation constitutes an injury sufficient to establish standing to bring their claims for CDAFA violations" because they alleged that the defendant engaged in "unauthorized use of their information for profit"). Google's proposal is an improper attempt to litigate this issue for the third time.

- *Third*, the jury should not be instructed on victim expenditures, *i.e.*, expenditures incurred to verify that mobile devices and/or data were not damaged, altered, or deleted. Plaintiffs do not allege that they suffered this form of damage or loss, so instructing the jury on it is both unnecessary and misleading.

- *Fourth*, this instruction should not single out certain types of damage or loss that Google claims "do not constitute 'damage or loss' under the CDAFA sufficient to support more than minimal recovery." The Court should reject this instruction for three reasons:

  o This is a false statement of the law: the CDAFA does not provide that these sorts of injuries cannot give rise to more than nominal damages. *See, e.g.*, Cal. Penal Code § 502 (not limiting any type of damage or loss to nominal damages); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1066–67 (N.D. Cal. 2015) (holding that an "effect on the resources of Plaintiffs' devices" may constitute damage or loss).

  o Google's proposal also erroneously states that the "loss of the right to control one's data" cannot give rise to more than nominal damages. The jury may interpret this to foreclose damages based on Plaintiffs' compensatory damages model, which values Plaintiffs' data and the right to choose whether it is shared with Google.

    o  Google's proposal improperly mixes liability instructions (which instruct the jury on how to decide whether or not elements and claims are established) with damages instructions (which instruct the jury on how to decide the approprfiate amount of monetary relief). Including references to "nominal damages" in the liability instructions would be confusing to jurors, who will have not yet been instructed on that concept or even on damages in general. If Google is concerned that the jury could award substantial damages for injuries that have not been quantified, that should be—and is—addressed in the appropriate location, *i.e.*, the damages instructions. *See* Instruction Nos. 44–46.

    o  The words Google proposes using in their proposed instruction may mislead the jury. For example, Google proposes instructing the jury that certain forms of damages or loss "do not constitute 'damage or loss' under CDAFA." This is untrue. While the rest of the sentence—"sufficient to support more than minimal recovery"—may clear things up for lawyers, lay jurors may be left confused about whether the identified injuries are "damage or loss" under the law. The reference to "minimal recovery" may also be confusing because it does not appear in the proposed or model instructions on nominal damages.

**<u>Google's Statement</u>:**

It is undisputed that a plaintiff must show "damage or loss" within the meaning of CDAFA. *See* Cal. Pen. Code § 502(e)(1) ("The owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief.").

The CACI models that Plaintiffs cite are not CDAFA instructions at all, and are thus inapposite. Indeed, they come from completely different claims and should not be transplanted into this context, because CDAFA itself is specific about damage or loss.

1      Google's proposal clarifies the specific types of "damage" or "loss" that may give rise to

2  CDAFA liability in two ways: **(1)** by tracking the language for what constitutes compensatory

3  damages under the statute—i.e., the type of loss a plaintiff must have suffered in order to recover

4  under CDAFA. *See* Cal. Penal Code § 502(e)(1) ("Compensatory damages shall include any

5  expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer

6  system, computer network, computer program, or data was or was not altered, damaged, or deleted

7  by the access."). And **(2)** by drawing the description of what can encompass damage under CDAFA

8  directly from the text of the statute itself. *See, e.g.*, Cal. Penal Code § 502 (c)(2) (prohibiting the

9  acts of one who "[k]nowingly accesses and without permission takes, copies, or makes use of any

10  data from a computer, computer system, or computer network").

11      Google also proposes to add language clarifying the types of recovery that might be possible

12  under CDAFA. *See* Dkt. 445 at 19 ("Plaintiffs concede that only nominal damages would be

13  available to them under [a] theory of liability" based on "depletion of battery and bandwidth"); *see*

14  *also Cottle v. Plaid Inc.,* 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) ("loss of the right to control

15  their own data, the loss of the value of their data, and the loss of the right to protection of the data …

16  is [not] "damage or loss" within the meaning of the CDAFA."). These are correct statements of the

17  law, and consistent with both Plaintiffs' previous representations and the Court's. *See* Dkt. 445 at

18  17 ("Plaintiffs are unable to show that they are entitled to more than nominal damages associated

19  with their deprivation of privacy. They offer no concrete models or theories that this harm

20  constitutes more than simply an emotional injury."). It is appropriate to include these clarifications

21  in this instruction, rather than simply including them in subsequent instructions, because failure to

22  do so would be misleading for the jury by suggesting that certain types of recovery are available

23  when they are in fact not. Plaintiffs also confusingly suggest that § 502 of the Penal Code specifies

24  that available relief is "not limit[ed] … to nominal damages," but nominal damages are never

25  mentioned in the statute. *See* Cal. Penal Code § 502.

26      Finally, Plaintiffs' proposed instruction includes reference to "Google's profits," which

27  refers to the concept of "unjust enrichment" as a specific measure of damages. Google has a pending

28  motion in limine regarding the impropriety of introducing disgorgement theories to the jury, and

does not agree that any instruction regarding unjust enrichment should be given to the jury. Dkt. 520.

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 33**

<u>Substantial Factor</u>

For the fifth element, a substantial factor in causing damage or loss is a factor that a reasonable person would consider to have contributed to the damage or loss. It must be more than a remote or trivial factor. It does not have to be the only cause of the damage or loss.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

[Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 430 (2025 edition)]

**Plaintiffs' Statement:**

- Plaintiffs' proposal (the first paragraph, in black) follows the law for instructions under CACI 430. Google's proposed addition (the last sentence in red) is an optional instruction under CACI 430 and Google has not justified its inclusion here. Google has neither pursued nor provided any foundation for how Plaintiffs' harms would have occurred without Google's conduct in this case. Google instead proposes purely speculative hypotheticals that are not tied to any evidence in this case. Thus, instructing the jury on a matter that has not been sufficiently presented to the jury would only serve to confuse the jury or lead them to inappropriately speculate.

**Google's Statement:**

Google proposes retaining the final line in this instruction, which is included in CACI 430. Far from this addition leading to jury confusion or improper speculation, Google would be prejudiced without this clarification due to the risk that a jury might improperly hold Google liable for harm that could have occurred anyway. For example, user data collection could happen regardless of the events alleged by Plaintiffs, or Plaintiffs' data could still have been collected through another means. Various apps also send data through various analytics providers. Insofar as the harm alleged is the loss of control of data, the jury could choose to find that such loss of control

happened regardless. Finally, the harm of battery depletion alleged by Plaintiffs is plainly a harm that could occur regardless of Google's conduct.

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**PROPOSED JOINT JURY INSTRUCTIONS**

**(DISPUTED) JURY INSTRUCTION NO. 34**

**SECOND CLAIM: INVASION OF PRIVACY**

<u>Introduction</u>

**Plaintiffs' Proposal:**

Plaintiffs' second claim is a claim for invasion of privacy.  To establish this claim, Plaintiffs must prove all of the following elements:

1.    That Plaintiffs had a reasonable expectation of privacy;

2.    Google's invasion would be highly offensive to a reasonable person;

3.    That Plaintiffs sustained injury, damage, loss, or harm; and

4.    That Google's conduct was a substantial factor in causing Plaintiffs' injury, damage, loss, or harm.

Some of these terms have specific meanings that I have already explained.  I explained that the term "substantial factor" has the meaning described in Instruction 33.  The terms "reasonable expectation of privacy" and "highly offensive" are new terms that I will now define for you.

**Google's Proposal:**

Plaintiffs' second claim is a claim for invasion of privacy under the California Constitution. To establish this claim, Plaintiffs must prove all of the following elements:

1.    Plaintiffs had an objectively reasonable expectation of privacy;

2.    If Google obtained the data at issue, that conduct was so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms that is highly offensive;

3.    Plaintiffs sustained harm; and

4.    Google's conduct was a substantial factor in causing Plaintiffs' harm.

Some of these terms have specific meanings that I have already explained.  I explained that the term "substantial factor" has the meaning described in Instruction 33.  The terms "objectively reasonable expectation of privacy" and "egregious breach of social norms" are new terms that I will now define for you.

1

2 [Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 1800 (2025 edition)]

3

4 **Plaintiffs' Statement**:

5 - Plaintiffs' proposal (in blue) largely tracks the pattern instruction, CACI 1800. Plaintiffs'

6     proposal deviates in two respects, both of which are well justified.

7 - *First*, both Plaintiffs' and Google's proposal omits CACI 1800's second element, which

8     requires plaintiffs to prove that the defendant "intentionally intruded" on their privacy

9     because this is an invasion of privacy claim and not an intrusion upon seclusion claim.

10

11 - *Second*, Plaintiffs propose the articulation of injury used in the Book of Approved Jury

12     Instructions ("BAJI") 7.20 ("injury, damage, loss, or harm"), rather than the articulation in

13     CACI 1800 ("harm"). The Ninth Circuit has made clear that invasion of privacy

14     encompasses a wide range of injuries, including "a right to disgorgement of profits resulting

15     from unjust enrichment" from Plaintiffs' "valuable data." *In re Facebook, Inc. Internet*

16     *Tracking Litig.*, 956 F.3d 589, 599–600 (9th Cir. 2020). By using a more inclusive list of

17     harm-related words, the BAJI instruction better conveys the broad scope of cognizable harms

18     that are at issue in this case, which might not align perfectly with a juror's everyday use of

19     the word "harm." Google's proposal is unduly narrow for this case.[1]

20 - Google's proposal (in red) is flawed in three additional respects.

21

22 - *First*, Google improperly instructs the jury to determine whether its conduct constitutes an

23     "egregious breach of social norms." Both CACI 1800 and BAJI 7.20 suggest instructing the

24     jury to determine whether the defendant's conduct is highly offensive, not an "egregious

25 _____

26 [1] Courts routinely rely on the BAJI instruction on privacy torts and other claims. *See, e.g.*, *Thomas*

27 *v. Restaurant*, 2015 WL 9583029, at *4 (E.D. Cal. Dec. 31, 2015); *Peatrowsky v. Persolve*, 2014
WL 1215061, at *8 n.62 (D. Nev. Mar. 24, 2014) (privacy torts); *Rowland v. JPMorgan Chase*

28 *Bank*, N.A., 2014 WL 992005, at *11 (N.D. Cal. Mar. 12, 2014).

breach of social norms." This makes sense: A jury is more likely to comprehend what it means to be "highly offensive" than what it means to be an "egregious breach" of unelaborated "social norms." In any event, the Ninth Circuit, the California Supreme Court, and this Court have made clear that Plaintiffs' proposal states the correct standard. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009); *Hill v. NCAA*, 7 Cal. 4th 1, 25 (1994). To be sure, Google's proposed language does appear in judicial opinions. But binding authority provides that the ultimate touchstone is whether the defendant's conduct is "highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (stating that "the intrusion is 'so serious … as to constitute an egregious breach of social norms' such that the breach is 'highly offensive'").

- *Second*, Plaintiffs object to any instruction that describes the conduct at issue as Google merely "obtain[ing] the data at issue." Google is not a passive recipient of (s)WAA-off data: Google wrote and distributed the code that creates and sends Google's servers a copy of Plaintiffs' data even when WAA and sWAA are off. *See, e.g.*, *Brown v. Google*, 685 F. Supp. 3d 909, 939 (N.D. Cal. 2023) (distinguishing Google's conduct from the "reactive data collection" Google invokes here (quotations omitted)). At a minimum, Google's proposed instruction improperly slants the articulation of the facts in Google's favor. Plaintiffs' proposed instruction is free of that type of biased language.

- *Third* and finally, Google asks that the Court "exercise its discretion and refuse to try this claim to the jury." The Court does not have discretion to dismiss Plaintiffs' claim on the basis of disputed jury instructions. Google not surprisingly cites no authority to support that request. The *Turner* case involved a request to *amend a complaint* on the eve of trial to add three additional claims, which the court denied. *Turner v. United States*, 2019 WL 935978, at *1 (N.D. Cal. Feb. 26, 2019). By contrast, the claim at issue here has survived three motions to dismiss, has been certified under Rule 23(b)(3), and has survived Google's motion for summary judgment. Google's other case (*Martinez*) is also far afield. *Martinez*

-54-

*v. Optimus Props.*, 2018 WL 6039875, at *1 (C.D. Cal. June 6, 2018). It was a summary judgment decision addressing whether courts may "separate[e] state and federal claims for trial," which does not apply because (A) there are no federal claims in this case to be separated, and (B) this case is long past summary judgment. Google's next and last chance to prevail on this claim is at trial; it's request for a shortcut should be denied.

Relatedly, Google is wrong to claim that "the Invasion of Privacy claim only permits injunctive relief, and therefore need not be tried by a jury." Google's is legally erroneous, and the Court should not entertain it. Other courts have ruled that invasion of privacy is a claim for which a plaintiff may obtain damages, and which may be presented to jurors for those damages. *See Barajas v. City of Rohnert Park*, 2019 WL 13020803, at *7 (N.D. Cal. Jan. 16, 2019) (jury trial on invasion of privacy); *see also Brown v. Google*, 20-cv-3664, Dkt. 1057, at 165–87 (N.D. Cal.) (proposed jury instructions for Invasion of Privacy claim); *see also infra* Plaintiffs' Statement for Instruction 46 (citing cases). Furthermore, given the "strong federal policy favoring jury trial of fact issues," "federal courts should err on the side of jury trials when in doubt." 9 Fed. Prac. & Proc. Civ. § 2302.1 (4th ed.); *Synopsys, Inc. v. Real Intent, Inc.*, 2024 WL 4557334, at *3 (N.D. Cal. Oct. 22, 2024); *see also S.E.C. v. Jensen*, 853 F.3d 1100, 1106 (9th Cir. 2016) (where "a legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact"); *see also Iguacu, Inc. v. Cabrera*, 2012 WL 12920184, at *1 (N.D. Cal. Apr. 2, 2012) (Seeborg, J.) (when equitable and non-equitable issues overlap, they should be submitted to the jury). In none of the cases Google cites below did a court find that Invasion of Privacy did not confer a right to a jury trial or decline to submit an Invasion of Privacy claim to a jury because the jury was also considering a similar Intrusion Upon Seclusion claim.

- In response to Google's argument that it has been "pleading for weeks", Google refuses to agree that both claims can proceed with one set of instructions, insists on presenting different instructions, and yet, simultaneously, demands that in order to streamline things  Plaintiffs

1    choose to dismiss one of its claims in advance of trial.  As Plaintiffs have explained (for

2    weeks), Plaintiffs are not inclined to do so.

3

4    **Google's Statement:**

5        The Court should evaluate this instruction in light of the intrusion upon seclusion

6    instructions below because doing so will make clear that Plaintiffs are proposing virtually identical

7    instructions for two different claims. Plaintiffs' approach would hopelessly confuse the jury;

8    frankly, even counsel cannot understand why Plaintiffs seek to do so here. In effect, if Plaintiffs'

9    disputed instructions are adopted by the Court on their constitutional and tort claims, the Court

10   would read to the jury two virtually identical sets of instructions for two separate claims, and then

11   ask them virtually identical questions on a verdict form. The confusion this will engender is

12   unacceptable. Google has no interest in slanting this instruction toward itself; its interest is in

13   preventing the jury from throwing up its hands in frustration at Plaintiffs' inexplicable choice to

14   assert two very similar claims, and then describe them in instructions as virtually identical.

15       Google's proposed instruction tracks the required elements for an Invasion of Privacy claim

16   under the California Constitution. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)

17   (finding that to state a claim for constitutional invasion of privacy, "the plaintiff's expectations of

18   privacy must be reasonable. … [and] the plaintiff must show that the intrusion is so serious in nature,

19   scope, and actual or potential impact as to constitute an egregious breach of the social norms."

20   (internal citations omitted)); *see also M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *6 (N.D.

21   Cal. Sept. 16, 2024) (the "egregious breach of the social norms" must be one "that is highly

22   offensive") (cleaned up, citations omitted).

23       Plaintiffs' proposal is based on CACI 1800, "Intrusion Into Private Affairs" and BAJI 7.20,

24   "Right of Privacy—Intrusion Into Private Affairs," but neither of these model instructions are

25   directed to a constitutional Invasion of Privacy claim. They are more appropriate for Plaintiffs'

26   privacy tort claim rather than their claim under the California Constitution.

27       As Plaintiffs themselves point out, CACI 1800 includes elements (such as that plaintiffs

28   must prove an "intentional intrusion") that *are* present in an Intrusion Upon Seclusion claim, but

1  *not* an element for a constitutional Invasion of Privacy claim. The constitutional Invasion of Privacy

2  claim has similar elements to Intrusion Upon Seclusion, but is nonetheless distinct.

3      Using the same pattern jury instruction for both claims—and in the process eliminating

4  required elements of the constitutional claim—risks confusing the jury by obscuring the differences

5  between these causes of action. Although the claims share overlapping concepts—such as the

6  existence of a privacy interest and offensiveness of the intrusion—they arise from separate legal

7  doctrines and impose distinct requirements. Collapsing the instructions into one may lead jurors to

8  believe that a finding on one claim necessarily determines the outcome of the other, undermining

9  their ability to properly evaluate each claim on its own legal terms.

10      Plaintiffs' arguments should be rejected. Whether a defendants' conduct constitutes an

11  "egregious breach of social norms" is an essential element of a constitutional Invasion of Privacy

12  claim. *Hernandez*, 47 Cal. 4th 272 at 287 (a "plaintiff must show that the intrusion is so serious in

13  nature, scope, and actual or potential impact as to constitute an egregious breach of the social

14  norms.") (citations omitted). The fact that neither CACI 1800 nor BAJI 7.20 contain this element is

15  yet further evidence that these model instructions are not appropriate for this claim. And Google's

16  characterization of the conduct at issue is not biased but rather provides a generalized description

17  that captures the scope of Plaintiffs' allegations.

18      The Court should enter Google's instruction, which accurately describes the elements that a

19  jury must decide in determining an Invasion of Privacy claim under the California Constitution. If

20  *that* is confusing to the jury in Plaintiffs' view, then they should drop this claim, which adds nothing

21  to their case whatsoever. But what Plaintiffs cannot do is recast the elements of a claim entirely.

22      In the alternative, the Court should exercise its discretion and refuse to try this claim to the

23  jury because "[a]llowing [Plaintiffs] to present [two] essentially identical claims with different

24  names risks jury confusion." *Turner v. United States*, No. 17-cv-02265-WHO, 2019 WL 935978,

25  at *1 (N.D. Cal. Feb. 26, 2019); *see also id.* at *3 ("[R]equiring the jury to wade through separate

26  instructions on liability for four claims[] . . . would be legally and practically pointless" as

27  "[r]epetition of claims against defendants might have a prejudicial effect; a verdict on all four claims

28  . . . would not increase [plaintiff's] damages recovery (and . . . might well result in an inconsistent

1    verdict and mistrial)[;] . . . and would waste time."); *Martinez v. Optimus Props., LLC*, No. 17-cv-

2    03581-SVW, 2018 WL 6039875, at *21 (C.D. Cal. June 6, 2018) (bifurcating case and staying

3    certain claims after summary judgment due to "substantial likelihood of jury confusion in view of

4    the subtle differences in the theories of liability[,]" including where state law claims involved "an

5    element that is irrelevant to Plaintiffs' [federal] claims").

6        The Court may so exercise its discretion here because, as recognized by this District, the

7    Invasion of Privacy claim only permits injunctive relief, and therefore need not be tried by a jury.

8    *See Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) (plaintiffs

9    "can seek to enjoin [defendants] but cannot seek damages" under "Article 1, Section 1 of the

10   California Constitution"); *Blanco v. Cnty. of Kings*, 142 F. Supp. 3d 986, 1001 (E.D. Cal. 2015)

11   ("[T]the Court finds that the California Constitutional right to privacy contained in article I, section

12   I does not give rise to a cause of action for money damages."); *Martinez v. County of Alameda*, No.

13   20-cv-06570-TSH, 2025 WL 240767, at *2 (N.D. Cal. Jan. 17, 2025) ("The Seventh Amendment

14   to the United States Constitution preserves the right to a jury trial for legal claims but not for

15   equitable claims, such as a claim for injunctive relief.") (citing U.S. Const. amend. VII; *Danjaq LLC

16   v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001)); Fed. R. Civ. P. 39(a)(2) (noting that "the court,

17   on motion or on its own, [may] find[] that on some or all of those issues there is no federal right to

18   a jury trial").

19       Google notes here that it has been pleading with Plaintiffs for weeks to bring some rationality

20   to this issue. So far, Plaintiffs' only response is that they want to try two identical claims to the jury

21   "to keep their options open," and have otherwise refused to provide any reason of any kind why it

22   serves the judicial process to do so. The Court should resolve it now.

23

24

25

26   DATE SUBMITTED: July 11, 2025

27   DATE REVISED: _____

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2    **(DISPUTED) JURY INSTRUCTION NO. 35**

3    <u>Objectively</u> <u>Reasonable Expectation of Privacy</u>

4    **Plaintiffs' Proposal**:

5    For the first element, in deciding whether Plaintiffs had a reasonable expectation of privacy,

6    you should consider, among other factors, the following:

7        a.   The identity of the defendant, Google;

8        b.   The extent to which other persons had access to the data at issue;

9        c.   The means by which the intrusion occurred.

10   **Google's Proposal**:

11   For the second element, in deciding whether Plaintiffs had an objectively reasonable

12   expectation of privacy in the data at issue, you should consider, among other factors, the following:

13       a.   The customs, practices, and physical settings surrounding Google's conduct;

14       b.   The extent to which other persons had access to the data at issue;

15       c.   Whether each Plaintiff was provided an opportunity to be notified in advance and

16            consent to Google obtaining the data at issue;

17       d.   Whether the data at issue was individually identifiable to particular Plaintiffs; and

18       e.   The means by which the intrusion, if any, occurred.

19

20   [Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 1800 (2025 edition)]

21

22   **Plaintiffs' Statement:**

23   • Plaintiffs' proposal (in blue) tracks the pattern instruction, included within CACI 1800,

24     word-for-word.

25   • Google's proposal (in red) is entirely bespoke, with no basis in CACI or any other pattern

26     instruction of which Plaintiffs are aware. It appears that Google simply cherry-picked its

27     favorite statements from various cases and imported them into a jury instruction. This is

28     improper, particularly where there are several pattern instructions available.

-60-                CASE NO. 3:20-cv-04688-RS

**PROPOSED JOINT JURY INSTRUCTIONS**

- Not only is Google's approach to this instruction improper—its proposed instruction is also legally erroneous. *First*, the Court has squarely rejected the proposition that the data taken should be "individually identifiable to particular Plaintiffs" to support an Invasion of Privacy claim. *See* Dkt. 445, at 10 ("'information need not be personally identifying to be private'" (quoting *In re Google Referrer Header Privacy Litig.*, 465 F. Supp. 3d 999, 1009–10 (N.D. Cal. 2020)). Other courts are in accord. *See Brown*, 685 F. Supp. 3d at 924 (holding it "enough" that "Plaintiffs have set forth specific facts demonstrating that the reason Google has access to their anonymous, aggregated data is through collection and storage of information from users' private browsing history without consent"), *id*. at 33 n.39 ("Google also repeats the argument that, because the data collected here was anonymized, plaintiffs had no reasonable expectation of privacy. … [T]he Court rejects this argument."); *see also In re Google Referrer Header Privacy Litig.*, 465 F. Supp. 3d at 1009–10. This purported factor is not present in any model instruction Google cites, nor does Google point to a single instance in which any court included similar language in such instructions made for this claim on similar facts. *Second*, it is not true that the mere "opportunity to be notified in advance and consent" undermines a plaintiff's reasonable expectation of privacy. *See Hart v. TWC Prod. And Tech. LLC*, 526 F. Supp. 3d 592, 600–01 (N.D. Cal. 2021) ("the mere existence of a privacy policy is not dispositive"). Google reaches that conclusion only by removing judicial reasoning from its context.

- Likewise, Google's insistence that the term "objectively" be included in this instruction rings hollow. That term does not appear in the model jury instructions at all and for good reason— it would raise more questions than it would answer, and the Ninth Circuit has made clear that what is important is whether "there exists a reasonable expectation of privacy." *In re Facebook, Inc. Internet Tracking Litig.*, 856 F.3d 589, 601 (9th Cir. 2020) (clarifying the test for Invasion of Privacy and Intrusion Upon Seclusion); *see also* CACI 1800. There is no need to deviate from the model instructions to include it here.

- If the Court chooses not to give the CACI instruction and instead to craft narrower instructions fitted to the facts of this case, then Google's proposed factors should be rejected, and others should be offered in their place. The jury should be instructed to consider the most important factor: Google's own promises and disclosures to Plaintiffs and class members. *See* Dkt. 445, at 8–9 ("[f]rom the perspective of a reasonable user, it is unclear Plaintiffs were consenting to the data collection at issue"); *Brown v. Google*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) (finding a triable issue because "there was a dispute about whether Google has collected this data surreptitiously"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020) (focusing significant attention on the defendant's disclosures). The jury should also be instructed to consider other factors upon which the Ninth Circuit has placed importance in cases like these, such as "whether [Google] gained 'unwanted access' to data by electronic or other covert means," whether Google's data collection was "surreptitious and unseen," "[t]he nature of the allegedly collected data," and the amount of data captured. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020); *Brown v. Google*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023). These tailor-made instructions should also make clear that the jury may consider whether Google (or others) are able to connect this data to specific users, rather than whether Google "associated with Plaintiffs' identity" (whatever that means). *See* Dkt. 445, at 10. Google's proposal conspicuously omits these factors, which the Ninth Circuit and this Court have already determined to be important in this case and those like it.

**<u>Google's Statement</u>:**

Google's proposal here is necessary to explain the second element of Plaintiffs' Invasion of Privacy claim. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009). Plaintiffs fail to identify a model instruction that specifically deals with an Invasion of Privacy claim. Google's proposal tracks CACI 1800 where possible, but crucially includes some additions that are tailored to Plaintiffs' claim under the California Constitution.

The parties' dispute centers around two main issues: (1) the inclusion of the word "objectively"; and (2) certain of the factors that the jury should consider in determining whether the Plaintiffs had an objectively reasonable expectation of privacy. Google's proposals on both fronts are both clearer and more accurate, and should be given to the jury.

**First,** Plaintiffs seek to omit the requirement that the Plaintiffs' expectation of privacy "must be objectively reasonable," despite the fact that the California Supreme Court has found that a plaintiff must meet this standard when claiming a violation of the state constitutional privacy right. *Sheehan v. San Francisco 49ers, Ltd.*, 45 Cal. 4th 992, 1000 (2009) (For a violation of the state constitutional right to privacy, "[a] plaintiff's expectation of privacy in a specific context must be objectively reasonable under the circumstances, especially in light of the competing social interests involved."). This distinction is important for a jury to consider when evaluating whether Plaintiffs' expectations of privacy here were reasonable under the law. Because Plaintiffs are likely to testify about their personal beliefs and subjective privacy expectations, there is a significant risk that the jury may mistakenly apply a subjective standard in evaluating the invasion of privacy claim. To prevent this confusion, the jury should be clearly instructed to apply the objective standard as Google proposes here.

**Second,** the Parties agree on Google's proposed factors (b) and (e). As for Google's remaining factors, each has been used by courts to determine Invasion of Privacy claims. Regarding factors (a) and (c), the California Supreme Court has found that a plaintiff must demonstrate both in order to establish an objectively reasonable expectation of privacy. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) ("This element rests on an examination of customs, practices, and physical settings surrounding particular activities … as well as the opportunity to be notified in advance and consent to the intrusion.") (citations omitted). And regarding factor (d), the Ninth Circuit has held that Plaintiffs could not establish an invasion of privacy claim where they failed to allege that the data collected was "individually identifiable to particular [plaintiffs]." *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017).

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 36**

Highly Offensive / Egregious Breach of Social Norms

**Plaintiffs' Proposal:**

In deciding whether an intrusion is highly offensive to a reasonable person, you should consider, among other factors, the following:

    a.    The extent of the intrusion;

    b.    Google's motives and goals; and

    c.    The setting in which the intrusion occurred.

**Google's Proposal**

In deciding whether Google's conduct is an egregious breach of social norms that is highly offensive, you should consider, among other factors, the following:

    a.    The extent and gravity of the intrusion, if any, for each Plaintiff;

    b.    Google's motives and goals;

    c.    The setting in which the intrusion occurred;

    d.    Whether Google linked any data to a person's identity. Obtaining data that is not linked to a person's identity may not be an egregious breach of social norms; and

    e.    Whether Google obtaining any data at issue is routine commercial behavior. Routine commercial behavior may not be an egregious breach of social norms.

[Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 1800 (2025 edition)]

**Plaintiffs' Statement:**

- Plaintiffs' proposal tracks the CACI 1800 instructions word-for-word. Google argues that CACI "fails to fully capture the appropriate analysis" and its proposed instruction, by contrast, has no basis in any pattern instruction. As with the expectation-of-privacy element, Google cobbles together a bespoke instruction out of its favorite statements from various cases. As previously explained, this is an inappropriate basis for a jury instruction. Google's proposed instruction is also legally erroneous for at least three reasons.

- **First**, Google would present the third and fourth of its purported factors as outcome-determinative. Google argues that it "does not suggest that either is outcome determinative," while simultaneously including language stating outright that "[o]btaining data that is not linked to a person's identity" and "[r]outine commercial behavior" cannot be highly offensive. This is incorrect. California law clearly requires a textured analysis of all of the elements; no one element can bar relief. *See* Dkt. 445, at 10 (requiring a "holistic consideration of factors" (quotations omitted)) *Brown v. Google*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) (same); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) (same); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) ("California tort law provides no bright line on 'offensiveness'; each case must be taken on its own facts." (quoting *Shulman v. Grp. W. Prods., Inc.*, 18 Cal.4th 200, 236 (1998))); BAJI § 7.20 (instructing jury to "consider all of the evidence").

- **Second**, and relatedly, Google assertion that "[o]btaining data that is not linked to a person's identity is not an egregious breach of social norms" is inaccurate and has no legal basis. This Court already found that Plaintiffs may have a reasonable expectation of privacy over their data even if it is not "'personally identifying" and found that Google taking their data may be highly offensive here. *See* Dkt. 445, at 10, 12 (quoting *In re Google Referrer Header Privacy Litig.*, 465 F. Supp. 3d 999, 1009–10 (N.D. Cal. 2020)). In *Brown*, Judge Gonzalez Rogers similarly held that a reasonable jury could find that Google's conduct was highly offensive, notwithstanding Google's arguments that the data was "anonymized." *See Brown v. Google*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) ("Google's argument that privacy harms are never concrete where only anonymized data is collected does not persuade"). Furthermore, as said above, Plaintiffs object to Google's mischaracterization of the challenged conduct as Google just "obtaining" data. Plaintiffs' claims focus on how Google collected and saved app activity data using specific Google SDKs, and then used that data for Google's enrichment, not just some process where Google passively "obtained" data. *See Brown v. Google*, 685 F. Supp. 3d 909, 939 (N.D. Cal. 2023) (distinguishing Google's conduct from the "reactive data collection" Google invokes here (quotations omitted)).

*Third*, Google's instruction on "routine commercial behavior" is improper attorney argument that does not belong in a jury instruction. In *Brown v. Google*, Judge Gonzalez Rogers rejected Google's request to include this exact instruction. *See* Nov. 29, 2023 Transcript in *Brown v. Google*, No. 20-cv-03664 (N.D. Cal.) (Dkt. 1080) at 188:3-11 ("With respect to routine commercial behavior, this is all argument. You can say -- you can argue, hey, this is routine commercial behavior. How can that be egregious? That's argument. I'm not going to tell them that as a matter of law. . . . That's what argument is. It's not -- it's not a proper basis for an instruction."). In any event, Google violating its own disclosures—by capturing, saving, and using data when (s)WAA—is off is not routine commercial behavior. *See, e.g.*, *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1072 (N.D. Cal. 2021); *see also In re Google Inc., 2013 WL 5423918*, at *8 (N.D. Cal. Sept. 26, 2013). This proposed instruction as currently written risks creating the misunderstanding that Google's behavior cannot be highly offensive simply because Google uses the data it told Plaintiffs it would not take to make money.

- If the Court chooses not to adopt Plaintiffs' proposal and instead to craft narrower instructions fitted to the facts of this case, then Google's proposed factors should be rejected, and others should be offered in their place. The Court should instruct the jury to consider whether Google's employees recognized that its collection, saving, and use of (s)WAA-off data was a "problematic privacy issue," and yet did nothing to address these concerns. *In re Facebook Tracking*, 956 F.3d at 606 (finding it significant that "the company's own officials recognized these practices as a problematic privacy issue"); Dkt. 445 at 12 (noting that "Google's conduct is at least arguably offensive because it collects (s)WAA-off data despite concerns raised by its employees and with the knowledge that its disclosures are ambiguous and deficient"). Google's proposal conspicuously omits these factors, which the Ninth Circuit and this Court have already determined to be important in this case and those like it.

- For reasons previously explained, *see* Disputed Instruction No. 34, Plaintiffs also object to characterizing this element as an "egregious breach of social norms," rather than the "highly offensive" conduct standard contained in all pattern instructions and Plaintiffs' proposal. *See*

*also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (Invasion of Privacy requires that "the intrusion was highly offensive").**Google's Statement:**

Google's proposed instruction on what constitutes an "egregious breach of social norms" is necessary to explain the third element of an Invasion of Privacy claim. Since this inquiry is related to whether a defendant's conduct is "highly offensive," as with the prior instruction, Google's proposal tracks CACI 1800 where possible, but includes some additions that are tailored to Plaintiffs' claim under the California Constitution. Where the CACI instruction fails to fully capture the appropriate analysis, it is more appropriate to turn to case law for guidance. The sub-parts elucidated in Google's proposed instruction correctly instruct the jury on factors that it may consider in determining whether Plaintiffs have proven that Google's alleged conduct was an "egregious breach of social norms," each of which have been used by courts in determining Invasion of Privacy claims.

The parties agree on factors (a), (b), and (c), but Google will nonetheless briefly recite the reasons for their inclusion. ***For factor (a)***, the "extent and gravity of the invasion is an indispensable consideration in assessing [whether] an alleged invasion of privacy" constitutes "an egregious breach of the social norms." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37 (1994). A jury should consider this factor in determining whether any breach was egregious. ***For factor (b)***, Google's "motives and goals" are important context for the jury to evaluate in determining the degree of seriousness of Google's conduct. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 889 (C.D. Cal. 2024) (this analysis requires "a holistic consideration of factors such as … the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive); *Cherkin v. PowerSchool Holdings, Inc.*, 2025 WL 844378, at *2 (N.D. Cal. Mar. 17, 2025) (it is "appropriate to examine … any justification and other relevant interests."); *see also Heeger v. Facebook, Inc.*, 2019 WL 7282477, at *3 (N.D. Cal. Dec. 27, 2019) (this is a "context-specific [] inquiry"). The same is true of ***factor (c)***, the "setting in which the intrusion occurred." *See, e.g., Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) ("Relevant factors include the degree and setting of the intrusion, and the intruder's motives and objectives.").

Google's proposed factors (d) and (e) are both factors on which courts have previously relied when assessing Invasion of Privacy claims. Google does not suggest that either is outcome determinative and agrees with Plaintiffs that the jury's determination of this element must be holistic and contextual—the instruction asks the jury to consider all four of Google's proposed factors, and does not suggest that some should be elevated over others. However, Google's language provides helpful context for the jury in their deliberations. **For factor (d)**, for example, in *I.C. v. Zynga, Inc*., the court dismissed the invasion of privacy claim where plaintiffs' "anonymity is preserved." 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022). The jury may consider this factor when determining whether Google's alleged conduct constituted an "egregious breach of social norms." **And finally, for factor (e),** courts have repeatedly held that conduct that is "routine commercial behavior" is not an egregious breach of social norms for purposes of an Invasion of Privacy claim. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) ("Courts in this district have held that data collection and disclosure to third parties that is "routine commercial behavior" is not a "highly offensive" intrusion of privacy.") (collecting cases); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992, 125 Cal. Rptr. 3d 260, 265 (2011), *as modified* (June 7, 2011) ("This conduct is not an egregious breach of social norms, but routine commercial behavior."). The Court should enter Google's proposed instructions.

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 37**

**THIRD CLAIM: INTRUSION UPON SECLUSION**

<u>Introduction</u>

Plaintiffs' third claim is an intrusion upon seclusion claim.  To establish this claim, Plaintiffs must prove all of the following elements:

1.   That Plaintiffs had a reasonable expectation of privacy that Google would not [obtain the data at issue] [save their app activity data when they had (s)WAA turned off];

2.   That Google intentionally intruded upon the Plaintiffs'  reasonable expectation of privacy by obtaining the data at issue;

3.   That Google's intrusion would be highly offensive to a reasonable person;

4.   That Plaintiffs [sustained injury, damage, loss, or harm] [were harmed]; and

5.   That Google's conduct was a substantial factor in causing Plaintiffs' [injury, damage, loss, or harm] [harm].

Some of these terms have specific meanings, which I have already defined for you.  I explained that the term "reasonable expectation of privacy" has the meaning described in Instruction 35.  I explained that the term "substantial factor" has the meaning described in Instruction 33. The term "highly offensive" [is a new term that I will now define for you] [has the meaning described to you in Instruction 34].


[Authority: Book of Approved Jury Instructions ("BAJI") 7.20]


**<u>Plaintiffs' Statement:</u>**

- Plaintiffs do not presuppose any conduct or implicitly endorse any narrative by seeking to including the term "save" in the first element of this instruction.  Plaintiffs' operative complaint (Dkt. 289) repeatedly uses the term "save," beginning with the very first sentence ("This case is about Google's surreptitious interception, collection, saving, and use of consumers' highly personal browsing histories on their mobile devices, whenever consumers use certain software applications ("apps") that have incorporated Google code").  The

conduct complained of is clear, but nothing about the instruction implies that Google violated the law, but instead informs the jury of what Plaintiffs must prove. And contrary to Google's contention, Plaintiffs do not "seek to omit the requirement that 'the expectation of privacy must be objectively reasonable.'" CACI 1800 repeatedly refers to "a reasonable expectation of privacy," not an "objectively reasonable expectation of privacy." Consequently, Plaintiffs are not seeking to *omit* the word "objectively;" rather, Google is seeking to *add* it. Google notes in its Statement that "The California jury instructions approved by the Judicial Council are the official instructions for use in the state of California," but offers no compelling justification why it is necessary to modify "reasonable expectation of privacy" with the word "objectively." CACI 1800's Sources and Authority cite *Garrabrants v. Erhart* (2023) 98 Cal.App.5th 486, 500, which states, "Whether an expectation of privacy is reasonable in any given circumstance is a context-specific inquiry, and '[t]he protection afforded to the plaintiff's interest in his [or her] privacy must be relative to the customs of the time and place, to the occupation of the plaintiff[,] and to the habits of his [or her] neighbors and fellow citizens.'" This statement makes clear it is not necessary to further modify "a reasonable expectation of privacy" with "objectively" because it already is an objective standard.

- By contrast, while Plaintiffs agree that use of CACI instructions is "strongly encouraged," they offer a compelling justification for altering CACI 1800 slightly to match the facts and circumstances of this case. Plaintiffs' proposal tracks the Book of Approved Jury Instructions 7.20, which differs from CACI 1800 in just a few respects:

- *First*, BAJI 7.20 requires plaintiffs to prove an intrusion on "the solitude or seclusion, private affairs or concerns of the plaintiff," whereas CACI 1800 requires plaintiffs to prove an intrusion on a reasonable expectation of privacy. As is apparent, CACI 1800 is better tailored for invasion-of-privacy claims, whereas BAJI 7.20 is better-tailored for intrusion-upon-seclusion claims.

- *Second*, Plaintiffs propose instructing the jury to consider whether Google's intrusion is "of a kind that would be highly offensive," whereas CACI would instruct the jury to consider

only the "manner" in which the intrusion occurred. California law clearly demonstrates that

the amount and sensitivity of the information revealed is relevant to this element, in addition

to the mode by which the intrusion occurred. *See, e.g.*, *In re Facebook, Inc. Internet Tracking*

*Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) (instructing courts to consider, among other factors,

"the likelihood of serious harm to the victim" and "the degree … of the intrusion").

- *Third*, BAJI 7.20 likewise provides a list of the harms.

**Google's Statement:**

Google's proposal assiduously follows the appropriate model jury instruction, CACI 1800.

The Parties' dispute centers around (1) the description of the circumstances in which Plaintiffs must

demonstrate a reasonable expectation of privacy and (2) the description of the harm that Plaintiffs

must prove. The Court should follow Google's proposals on all counts.

**First,** Plaintiffs' proposal is inappropriate because it presupposes that Google "saves" a

specific category of data and leaves out the context of *where* it is saved, which is a hotly disputed

factual issue that the jury must resolve (i.e., whether the WAA control only applies to data saved

"to your account" or more generally, as Plaintiffs allege). Google describes the conduct at the center

of plaintiffs' claims without assuming the truth of disputed facts. This language helps ensure that

the jury evaluates whether there was a reasonable expectation of privacy based on the evidence

presented, rather than on an instruction that implicitly endorses one party's narrative.

**Third,** Google would urge the Court to follow its proposal for element four, which reflects

the CACI 1800 language, rather than Plaintiffs' proposal that relies on BAJI. When available, use

of CACI instructions is "strongly encouraged." Cal. R. Ct. 2.1050(f); *see also id.* at 2.1050(a) ("The

California jury instructions approved by the Judicial Council are the official instructions for use in

the state of California."). Plaintiffs claim that there is some inconsistency between Google stating

that CACI is the preferred model while simultaneously suggesting clarifications based on case law.

This is not true. Adding clarifications to the CACI instructions based on what courts have decided

is different from asking the Court to adopt a different set of model instructions entirely.

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

1

**(JOINT) JURY INSTRUCTION NO. 38**

2

<u>Highly Offensive</u>

3    For the third element, in deciding whether an intrusion is highly offensive to a reasonable

4 person, you should consider, among other factors, the following:

5        a.    The extent of the intrusion;

6        b.    Google's motives and goals; and

7        c.    The setting in which the intrusion occurred.

8

9 [Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 1800 (2025 edition)]

10

11

DATE SUBMITTED: July 11, 2025

12

DATE REVISED: _____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**(JOINT) JURY INSTRUCTION NO. 39**

<u>Affirmative Defenses – Introduction</u>

Google asserts certain affirmative defenses. Google has the burden to prove these defenses by a preponderance of the evidence. Plaintiffs deny these defenses.

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 40**

Affirmative Defenses – Statute of Limitations

Applies to all Claims

For each claim, Google asserts a statute of limitations defense. [Google contends that portions of the Plaintiffs' claims were not filed within the time set by law.] [Google contends that Plaintiffs' damages, if any, should be limited to the time periods after certain dates, which I will describe in a moment.] To succeed on this defense [with respect to the portions of Plaintiffs' claims that Google contends were not filed within the time set by law], Google must prove that [at least some of each of the] Plaintiffs' claimed [damages, loss or] harm occurred before the following dates for each claim.

- Claim 1 – CDAFA: July 14, 2017

- Claim 2 – Invasion of Privacy: July 14, 2018

- Claim 3 – Intrusion Upon Seclusion: July 14, 2018

If Google proves that a portion of the Plaintiffs' claimed damages, loss, or harm occurred before the above dates for each claim, [Plaintiffs may still recover damages relating to that earlier damages, loss, and harm if Plaintiffs prove that before that date] [the plaintiffs' lawsuit was still filed on time if the plaintiffs prove that before that date]:

- Plaintiffs did not discover, and did not know the facts that would have caused a reasonable person to suspect, that they had suffered harm that was caused by someone's wrongful conduct; or

- Plaintiffs did not discover, and a reasonable and diligent investigation would not have disclosed, that the conduct at issue contributed to Plaintiffs' harm.

[Google's statute of limitations defense only applies with respect to any monetary relief for damages, loss, or harm that occurred before those dates.  For all damages, loss, or harm that occurred after those dates, Google has no statute of limitations defense, and you may not limit any monetary relief for those periods based on this affirmative defense.]

1    [Authority: Judicial Council of California Civil Jury Instructions (CACI) Nos. 454 & 455 (2025

2    edition)]

3

4    **Plaintiffs' Statement:**

5    • On this instruction, the parties have one fundamental disputes: Whether the jury should be

6    instructed that the statute of limitations cannot immunize Google from liability for conduct

7    that occurred *within the limitations period*.

8    • The jury should be instructed that the statute of limitations defense can only limit Google's

9    liability, not absolve it altogether. That is a legally correct statement of law, and excluding

10   such an instruction may mislead the jury to believe they should render a verdict entirely in

11   Google's favor if they find that some harm arose before the limitations period.

12   • The parties agree that the statute of limitations cannot immunize Google from liability for

13   conduct that occurred within the limitations period (*i.e.*, after July 14, 2017 for Claim 1; after

14   July 14, 2018 for Claims 2 and 3). The California Supreme Court "ha[s] long settled that

15   separate, recurring invasions of the same right can each trigger their own statute of

16   limitations." *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 838 (Cal. 2013). Accordingly,

17   the Ninth Circuit and courts in this Circuit have held that when some of the alleged invasions

18   of privacy or statutory violations occurred within the limitations period, the statute of

19   limitations cannot provide a complete defense. *See, e.g.*, *Bliss v. CoreCivic, Inc.*, 978 F.3d

20   1144, 1148 (9th Cir. 2020) (holding that "each interception is a discrete violation" with its

21   own statute of limitations); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 625 (N.D. Cal.

22   2021) (rejecting Google's argument that the date "the challenged conduct first occurred"

23   was relevant to the statute of limitations "each violation triggers a separate statute of

24   limitations, and Plaintiffs allege that violations took place … shortly before Plaintiffs'

25   complaint was file"); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069–70 (N.D. Cal.

26   2021) (same). The statute of limitations defense could only foreclose liability for conduct

27   *before* the limitations period (*i.e.*, before July 14, 2017 or July 14, 2018).

28

- Despite that agreement, Google proposes an instruction that would lead the jury to the opposite conclusion. According to Google's proposal, Google's statute of limitations defense absolves it of liability as long as "at least some" of Plaintiffs' harm occurred prior to the relevant dates. Google also proposes instructing the jury that the lawsuit was not "filed on time" if "a portion of" Plaintiffs' damages occurred before those dates. Hearing this instruction, the jury would likely understand that the lawsuit and claims *as a* whole are not timely, and are therefore barred, as long as some injury occurred prior to the limitations period. That is an incorrect understanding of the law and is plainly prejudicial to Plaintiffs. Google identifies no respect in which Plaintiffs' proposed instruction is inconsistent with law or prejudicial to Google.

**Google's Statement:**

Plaintiffs' proposed instructions fundamentally misrepresent Google's statute of limitations defense. Plaintiffs' proposed language significantly departs from CACI 454 by implying that the statute of limitations only restricts the time frame for recoverable damages, rather than eliminating entirely those claims—or parts of claims—that are time-barred. In contrast, Google's instructions accurately reflect that Google bears no liability for conduct occurring outside the limitations period, while acknowledging that any portion of the claims accruing within the limitations period may proceed. *See, e.g.*, *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021) ("the Ninth Circuit and California Supreme Court have held that separate, recurring invasions of the same right each trigger their own separate statute of limitations."). Tellingly, Plaintiffs have cited no authority to support their erroneous interpretation.

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 41**

Statute of Limitations Tolling – Fraudulent Concealment

Applies to All Claims

Even if you find that some of Plaintiffs' damages occurred prior to the dates I just described, you must reject Google's statute of limitations defense if you find that Google fraudulently concealed the existence of Plaintiffs' claims. Plaintiffs bear the burden of proving fraudulent concealment by a preponderance of the evidence. [There are three requirements:] [Plaintiffs must show that, before the corresponding dates listed in the instruction above:]

1.    Google took affirmative acts to [mislead Plaintiffs][prevent Plaintiffs from discovering that they had suffered harm that was caused by Google's conduct];

2.    [Plaintiffs did not have actual or constructive knowledge of the facts giving rise to their claims] [As a result of Google's affirmative acts, Plaintiffs did not discover, and a reasonable and diligent investigation would not have disclosed, that they had suffered harm that was caused by Google's conduct]; and

3.    Plaintiffs acted diligently in trying to uncover the facts giving rise to their claims.

**Plaintiffs' Statement:**

- Google's attempt to analogize the fraudulent concealment rule with the delayed discovery rule is improper. Plaintiffs' proposal tracks case law from this District outlining the specific elements that a plaintiff must prove for fraudulent concealment after a defendant has established evidence supporting a statute of limitations defense. *See Aurora Astro Prods. LLC v. Celestron Acquisition, LLC*, 691 F. Supp. 3d 1132, 1151 (N.D. Cal. 2023); *see also Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1070–71 (N.D. Cal. 2021) (citing *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015)). The jury should be instructed on this well-established law, not an instruction (delayed discovery rule) that is not before the jury.

**Google's Statement:**

1    Plaintiffs' proposal ignores the fact that "the fraudulent concealment rule" is a "close cousin"

2  of the "delayed discovery rule," and eschews CACI 455 (Statute of Limitations – Delayed

3  Discovery) in favor of a bespoke instruction. *Moya v. Ford Motor Co.*, 152 F.3d 927 (9th Cir. 1998)

4  (citing *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994)); *see also Hawthorne v.*

5  *Umpqua Bank*, No. 11-CV-06700-JST, 2014 WL 295499, at *4 (N.D. Cal. Jan. 26, 2014) (same).

6    Google's proposal acknowledges the relationship between fraudulent concealment and

7  delayed discovery, by modifying CACI 455 (Statute of Limitations – Delayed Discovery) to clarify

8  that this instruction must focus on Google's conduct (i.e., Google's "affirmative acts") rather than

9  solely on the Plaintiffs' knowledge or diligence. *See Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d

10  1055, 1062 (9th Cir. 2012) ("fraudulent concealment focuses on the actions of the defendant").

11  Because there is an applicable CACI model, which Google's proposal follows, the Court should

12  enter Google's proposed instruction.

13

14  DATE SUBMITTED: July 11, 2025

15  DATE REVISED: _____

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 3:20-cv-04688-RS
**PROPOSED JOINT JURY INSTRUCTIONS**

**(DISPUTED) JURY INSTRUCTION NO. 42**

<u>Affirmative Defense – Consent</u>

<u>Applies to Claim 2 (Invasion of Privacy) and Claim 3 (Intrusion Upon Seclusion)</u>

**Plaintiffs' Proposal:**

Google is not responsible for Plaintiffs' harm, if any, if Google proves that Plaintiffs consented, by words or conduct, to the specific conduct at issue. Any consent must be knowing, actual, and voluntary. For consent to be knowing, Google must prove that Plaintiffs were explicitly notified of the specific practice being challenged, which is Google's collection, saving, and use of Plaintiffs' (s)WAA-off app activity. For consent to be actual, Google must prove that it did not exceed the scope of any consent Google did obtain. For consent to be voluntary, Google must prove that Plaintiffs had a practical and effective opportunity to decline consent.

Consent should be evaluated from the perspective of a reasonable user reading Google's disclosures.  Any ambiguities in Google's disclosures should be construed against Google, as the party that drafted the disclosure.

**Google's Proposal**

Google is not responsible for the plaintiffs' harm, if any, if Google proves that the plaintiffs consented, by words or conduct, to the conduct at issue.  Consent can be express or implied, but any consent must be actual. Consent should be evaluated from the perspective of a reasonable user.


**Plaintiffs' Statement:**

- Because the parties have multiple disputes about this instruction, Plaintiffs address each dispute separately.

   1. <u>Users must be "explicitly notified" of the "specific practice" being challenged</u>

- Plaintiffs' proposal tracks the leading Ninth Circuit case on consent for data privacy cases, a case Google somehow ***ignores***. *See Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024). *Calhoun* addressed claims that included an intrusion upon seclusion claim based on Google's alleged improper collection and use of data, and the Ninth Circuit outlined the

requirements for Google to prove consent, which include that: (A) "any consent must be actual", meaning "the disclosures must *explicitly notify* users of the conduct at issue."; and (B) "consent is only effective if the person alleging harm consented to the *particular conduct*, or to substantially the same conduct and if the alleged tortfeasor did not exceed the scope of that consent.." While Google's proposal includes the requirement of "actual" consent, it leaves the jury to guess at what that means. Plaintiffs' proposal, by contrast, appropriately instructs the jury that it requires explicit notification of the conduct at issue. Google's proposal entirely omits the second requirement under black-letter law, which is that the consent must be to the particular conduct at issue.

- Plaintiffs' proposal also tracks this Court's formulation of the consent defense at summary judgment and class certification. *See* Dkt. 445 (MSJ Order) at 16 ("consent is only effective if the person alleging harm consented to the particular conduct, or to substantially the same conduct and if the alleged tortfeasor did not exceed the scope of that consent"); Dkt. 352 (class certification order) at 16 (the relevant inquiry as "whether class members consented to the collection of sWAA-off data," not Google's practices more generally).

- Plaintiffs' proposal likewise tracks other decisions from courts within this District that have articulated the consent standard for data privacy cases. *See, e.g.*, *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023) (for consent to be effective, "the disclosures must explicitly notify users of the practice at issue"); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) ("in order for consent to be actual, the disclosures must explicitly notify users of the practice at issue").

2.  Consent is evaluated based on a "reasonable user" standard

- Once again, Plaintiffs' proposal follows the Ninth Circuit's *Calhoun* decision. *See Calhoun* 113 F.4th at 1147 (consent is evaluated from the perspective of a "how a reasonable user would understand Google's [disclosures]"). Google mostly agrees to this aspect of the instruction, but omits the portion about a reasonable user "reading *Google's* disclosures,"

which likewise tracks this Court's articulation of the consent defense. At summary judgment, this Court summarized and applied the *Calhoun* holding, explaining: "The Ninth Circuit confirmed that 'whether the plaintiffs consented turned on the terms of various disclosures and ***whether a reasonable user reading them*** would think that he or she was consenting to the data collection.'" Dkt. 445 at 9 (quoting *Calhoun*, 113 F.4th at 1148) (emphasis added).

3.   Consent must be "voluntary"

- Plaintiffs correctly propose instructing the jury that any consent must be voluntary. This instruction tracks blackletter law. In *Hill v. NCAA*, 7 Cal. 4th 1, 26 (1994), the California Supreme Court taught that consent is ineffective if "involuntary," including for example where the "consequence" of refusal is exclusion from "a government benefit or an economic necessity that society has decreed must be open to all." *Id.* at 42; *see also Hansen v. Cal. Dept. of Corrections*, 920 F. Supp. 1480, 1505 (N.D. Cal. 1996) (holding consent invalid as a matter of law on this basis). Plaintiffs' proposal incorporates this voluntariness requirement, which Google's proposal omits.

- Plaintiffs' proposal similarly tracks this Court's prior orders, which are consistent with *Hill*'s teachings. At class certification, this Court rejected Google's argument that "Plaintiffs' continued use of Google's products and services" demonstrated consent, reasoning that "the ubiquitous nature of phones, coupled with the sheer number of apps with Google SDKs would render Plaintiffs' use of their phones impossible," particularly given that our "growing reliance on phones increasingly makes them necessities, not luxuries." Dkt. 352 at 13; *see also* Dkt. 445 (MSJ Order) at 15 ("Google has not explained how it received 'consent' by (s)WAA-off users to collect the data if there was no meaningful way for users to provide that consent."). This Court thus acknowledged that a jury could find Plaintiffs did not consent if the jury concludes that Google made it impossible for Plaintiffs to avoid having their data collected by Google. Plaintiffs' proposal reasonably incorporates that standard into the instruction.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Plaintiffs' proposal also tracks CACI 3025 (consent to search), which explains that any consent must be "voluntarily" given.

    4.  This instruction should not apply to the CDAFA claim

- To succeed on their CDAFA claim, Plaintiffs will need to prove that Google acted "without permission." *See supra* Instruction 29; Cal. Penal Code § 502(c)(2). The CDAFA does not include or provide for any subsequent consent defense for a claim that already requires a determination regarding whether the defendant acted without permission. If the jury is nonetheless told that Google's "consent" defense also applies to the CDAFA claim, that risks jury confusion in terms of deciding both the "without permission" and consent.

- It makes no sense to invite the jury to re-decide permission, particularly because both permission and consent turn on Google's disclosures, as acknowledged by this Court. *See* Dkt. 352 (class certification order) at 17 (noting that, for consent, "the relevant question concerns Google's disclosures about the sWAA button"); Dkt. 445 (MSJ Order) at 15 (noting that, for permission, the jury will focus on Google's "description of (s)WAA"). Indeed, this Court previously observed that "the parties interchangeably refer to [the permission] element of the CDAFA as 'permission' and 'consent.'" Dkt. 445 (MSJ Order) at 14 n.3. Yet now Google wants to bifurcate these issues, seeking a second bite at the apple. Google's proposal thus invites error and appellate risk: how could a jury find that Google did not secure permission and yet that Plaintiffs consented?

    5.  Ambiguities are construed against the drafter of the disclosures

- The Court and the parties agree this case "concerns *Google's* disclosures about the sWAA button." Dkt. 528 (Google's Motion *In Limine* 10) at 3 (quoting Dkt. 352 (class certification order) at 17 (emphasis in class certification order)). Google is the party that drafted these disclosures. The jury should therefore be given what is a standard instruction for interpreting form disclosures like these, drafted exclusively by one of the parties. *See* CACI 320. As

explained by the Ninth Circuit in *Calhoun*, "the disclosures are read together and in the light most favorable to Plaintiffs." *Calhoun*, 113 F.4th at 1150.

6.  Google's proposal is deficient for other reasons

- In addition to the flaws summarized above, Google's proposal is deficient for four additional reasons.

- *First*, Google's reliance on CACI 1721 is misplaced.  That instruction addresses consent to a defamatory statement. Rather than borrow instructions from that claim, this Court should apply the Ninth Circuit's formulation of the consent defense for data privacy cases, as this Court did at summary judgment. *See* Dkt. 445 at 9 (relying on and applying *Calhoun* to decide consent).

- *Second*, Google does not actually "track" the CACI 1721 instruction. For example, nothing in that instruction says anything about "implied" consent. Instead, Google borrowed portions of CACI 1721 and then added to it by pulling from data privacy cases that Google apparently likes. *See infra* (citing *Brown v. Google* for the "implied consent" language). Google thus concedes that this instruction should be crafted based on data privacy decisions, not a defamation pattern instruction. And of course, the proper north star is the Ninth Circuit's recent *Calhoun* decision.

- *Third*, the cases Google cites do not hold that a consent defense applies "the same" way to data privacy claims, as compared to defamation claims. The *Jacob* case does not even use the word "consent"; it addressed the litigation privilege. *Jacob B. v. Cnty. of Shasta*, 40 Cal. 4th 948, 961 (2007). And the *Kelly* case merely notes that consent can be a defense to both types of claims. Indeed, that decision was an appeal of a demurrer (it had nothing to do with jury instructions) and it was decided in 1986 (long before courts began grappling cases about Internet data). *Kelly v. William Morrow & Co.*, 186 Cal. App. 3d 1625, 1628 (1986).

- *Fourth*, Plaintiffs disagree with Google that consent can be implied for these claims. Setting aside that disagreement, there is still no reason to provide that instruction, which is at best redundant to Plaintiffs' (and Google's) proposal to tell the jury that consent can be given by words or conduct. This latter formulation better tracks the Court's summary judgment order, which explained how the "focus" of the inquiry should be on "the perspective of the defendant at the time they used the data." Dkt. 445 at 15.

**Google's Statement:**

Google's proposal tracks the model language for CACI 1721 to accurately describe the consent defense. The use of CACI 1721—an affirmative consent defense included in the CACI model for defamation—is appropriate here because the same doctrine of consent applies to defamation and invasion of privacy. The CACI instruction is based on the common law doctrine of consent as an absolute privilege, as codified at the Restatement (Second) of Torts § 583. *See* CACI 1721, Sources & Authority. The same "rules on absolute privileges to publish defamatory matter stated in §§ 583 to 592A apply to the publication of any matter that is an invasion of privacy." Restatement (Second) of Torts § 652F; *see also Kelly v. William Morrow & Co.*, 186 Cal. App. 3d 1625, 1628 (1986) (evaluating as a single issue under whether waiver constituted consent to "publication of matters claimed by [plaintiff] to be defamatory, libelous and an invasion of his privacy" under Restatement (Second) of Torts § 583); *Jacob B. v. County of Shasta*, 40 Cal. 4th 948, 961 (2007) (holding that common law tort doctrine of absolute privilege against liability for publications in judicial proceedings, as codified in California Civil Code, also applied to constitutional invasion of privacy claim where privilege had "existed for well over a century" and parties had not cited "anything in the . . . history of the 1972 initiative that added the constitutional right to privacy that suggested any intent to limit the scope of this preexisting privilege or to create a right of privacy that would prevail over the privilege"). The Court should therefore grant Google's proposal, which assiduously follows the model, rather than Plaintiffs' bespoke instruction, which is long-winded and confusing.

1    Google's proposal would additionally instruct the jury that actual consent may be either

2    express or implied, a proposition supported by multiple courts throughout this District, including

3    this one. *See, e.g.*, *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023) (with respect

4    to intrusion upon seclusion, and invasion of privacy under the California Constitution, "As this

5    Court has previously noted, consent 'can be explicit or implied'") (quoting *In re Google RTB*

6    *Consumer Privacy Litig.*, 606 F.Supp.3d 935, 949 (N.D. Cal. 2022)); *Frasco v. Flo Health, Inc.*,

7    2025 WL 1433825, at *7 (N.D. Cal. May 19, 2025) ("Consent may be express or implied").

8    Plaintiffs' proposal is deficient in at least four other respects. *First*, it is convoluted and

9    overly complicated, and would likely confuse a jury rather than help it understand what standard to

10   apply. *Second*, it would erroneously suggest to the jury that the text of Google's disclosures, in a

11   vacuum, is the only piece of information it should consider when evaluating consent. This is not

12   true. The consent analysis is more nuanced than that. For example, a jury must consider factors

13   including whether a user had an objectively reasonable expectation of privacy as well as the fact

14   that  third party applications obtained consent from users to the apps' use of Google Analytics.

15   Plaintiffs' instruction would collapse all of this context and prejudice Google. *Third*, Plaintiffs

16   falsely claim that *Calhoun* stands for the unequivocal proposition that online privacy disclosures in

17   a case such as this one must be construed in the light most favorable to plaintiffs, but this misstates

18   the law. In *Calhoun*, the Ninth Circuit was reviewing the district court's grant of summary judgment

19   in favor of Google. And "[f]or purposes of summary judgment," a court "must consider the evidence

20   in the light most favorable to [] the non-moving party," i.e., the light most favorable to plaintiffs.

21   *Isbell v. City of San Diego*, 258 F.3d 1108, 1112 (9th Cir. 2001). The *Calhoun* court made no

22   indication that a court analyzing online disclosures is required to construe ambiguities against the

23   drafter of the disclosure, and Google is aware of no such authority. This is not the standard that a

24   jury should use in evaluating the at-issue disclosures, and it would be error to instruct the jury as

25   such. *And finally*, Plaintiffs' reliance on CACI 3025 is misplaced. That instruction is intended to be

26   read to jurors evaluating whether consent has been given to a reasonable search under the Fourth

27   Amendment, which is not applicable here. Plaintiffs do not offer any explanation for why CACI

28   3025 is appropriate in this context.

1

2  DATE SUBMITTED: July 11, 2025

3
   DATE REVISED: _____
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **(DISPUTED) JURY INSTRUCTION NO. 43**

2    Interpreting Ambiguities in Agreements, Policies, and Disclosures

3    **Plaintiffs' Proposal:**

4        Ambiguities in any written agreement, policy, or disclosure should be construed against

5    the party that wrote the agreement, policy, or disclosure.

6

7    **Google's Proposal:**  None.

8

9    [Authority: Judicial Council of California Civil Jury Instructions (CACI) Nos. 320 (2025 edition);

10   Cal. Civil Code § 1654]

11

12   **Plaintiffs' Statement:**

13   - Plaintiffs' proposed instruction reflects the fact that Google is relying on its terms of

14     service and privacy policy agreements to prove its affirmative defense.  Thus, in

15     interpreting such documents any ambiguity should be read against the drafter, i.e. Google.

16

17   - Under California law, if an unresolved ambiguity in a contract remains, "the language of a

18     contract should be interpreted most strongly against the party who caused the uncertainty

19     to exist." Cal. Civ. Code § 1654. This is especially the case when the ambiguities appear in

20     a standardized contract, drafted and selected by the defendant, which occupies the superior

21     bargaining position. *See Rodman v. Safeway, Inc.*, 2014 WL 988992, at *8 (N.D. Cal. Mar.

22     10, 2014), *aff'd*, 694 F. App'x 612 (9th Cir. 2017) (quoting *Steven v. Fidelity & Casualty

23     Co.*, 58 Cal.2d 862, 871 (Cal. 1962)); *see also Victoria v. Superior Ct.*, 710 P.2d 833, 835

24     (Cal. 1985) (stating that "ambiguities in standard form contracts are to be construed against

25     the drafter.").

26   - In determining the issue of consent, all of the defendant's relevant disclosures must be

27     "read together and in the light most favorable to Plaintiffs." *Calhoun v. Google, LLC*, 113

28     F.4th 1141, 1150 (9th Cir. 2024). The defendant's terms or policy "must have only one

plausible interpretation for a finding of consent." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 794 (N.D. Cal. 2022) (quoting *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021)); *see also In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 794 (N.D. Cal. 2019). Where "the contract language at issue is reasonably susceptible to more than one interpretation, with one of those interpretations suggesting consent and another belying it, the Court cannot decide the consent issue in [the defendant's] favor." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 823 (N.D. Cal. 2020) (quoting *Facebook Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d at 789).

**Google's Statement:**

Plaintiffs tried and failed to add a contract claim to this case, but now they ask for an instruction that is reserved by CACI exclusively for contract claims. This Court knows well that the consent analysis on privacy claims and the "without permission" analysis under CDAFA is far more complicated and nuanced than simple rules of contract interpretation. This instruction would undermine that, and unduly focus the jury's task in finding consent or lack thereof on a single contract interpretation rule devoid of all other context.

Because there is no contract claim at issue in this case, this instruction should not be included. Plaintiffs added the words "disclosures" and "agreement" despite the fact that neither appears in the cited model, CACI 320. And none of the cases Plaintiffs cite grapple with whether this instruction is properly read to a jury in a case without a breach of contract claim and that involves online disclosures. As discussed in Google's argument regarding the previous instruction, No. 42, *Calhoun* does not unequivocally stand for the proposition that online privacy disclosures in a case such as this one must be construed in the light most favorable to plaintiffs. There, the Ninth Circuit reviewed the district court's grant of summary judgment in favor of Google. "For purposes of summary judgment," a court "must consider the evidence in the light most favorable to [] the non-moving party," i.e., the light most favorable to plaintiffs. *Isbell v. City of San Diego*, 258 F.3d 1108, 1112 (9th Cir. 2001). The *Calhoun* court made no indication that a court analyzing online disclosures—let alone a jury—is required to construe ambiguities against the drafter of the

1  disclosure in all circumstances, and Google is aware of no such authority. This is not the standard
2  that a jury should use in evaluating the at-issue disclosures, and it would be error to instruct jurors
3  as such.

4         Furthermore, this proposed instruction as written does not make sense in context, as it
5  assumes that previous instructions have already been given on the "meaning of words of any
6  disclosures, contract, or agreement." Here, no such instructions have been proposed by either party.

7         The Court should decline to enter this instruction. The other instructions suffice to instruct
8  the jury on how to find consent or lack thereof. Nothing here requires adding this instruction.

9

10  DATE SUBMITTED: July 11, 2025
11  DATE REVISED: _____

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**(DISPUTED) JURY INSTRUCTION NO. 44**

<u>Damages Introduction</u>

**Plaintiffs' Proposal:**

If you decide that Plaintiffs have proven at least one of their claims against Google, you also must decide how much money will reasonably and fairly compensate the Plaintiffs for any injury you find Google caused. This compensation is called "damages."  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

**Google's Proposal:**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered. If you find for Plaintiffs on one or more of their claims against Google, you also must determine the Plaintiffs' damages. Damages means the amount of money that will reasonably and fairly compensate the class members for any injury you find Google caused.  The Plaintiffs have the burden of proving damages by a preponderance of the evidence.

**Plaintiffs' Statement:**

- Plaintiffs' proposal follows the model instruction that applies to Plaintiffs' state-law claims, CACI 3900. Google's proposal uses the Ninth Circuit's model instruction, even though federal law does not apply to the calculation of damages in this case.

**Google's Statement:**

Plaintiffs' assertion that Google is attempting to add "duplicative and favorable language" is unfounded. In keeping with Judge Seeborg's requirement that the parties should use "Model Jury Instructions of the Ninth Circuit where appropriate," Google's proposal assiduously follows the Ninth Circuit's Manual of Model Jury Instructions, Number 5.1 (Damages – Proof), and does not

include language taken from CACI 3900. *See* Chief Judge Seeborg's Guidelines for Final Pretrial Conferences in Civil Jury Cases at 5 (Section D.4.c).  Google respectfully requests that the Court follow the Ninth Circuit's guidance on this instruction.

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

## (DISPUTED) JURY INSTRUCTION NO. 45

<u>Damages</u>

Plaintiffs [must prove] [have the burden of proving] the amount of damages by a preponderance of the evidence.  Plaintiffs do not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  [However, you must not speculate or guess in awarding damages.] [It is for you to determine what damages, if any, have been proven. Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.]

[The following are the specific items of damages claimed by Plaintiffs:]

1. [The specific item of damages Plaintiffs claim is] The [economic] value of the data [at issue] [taken from Plaintiffs].

2. Google's profits from data taken from Plaintiffs;

3. Loss of Plaintiffs' right to control their data;

4. Loss of privacy over Plaintiffs' data;

5. Depletion of Plaintiffs' mobile devices' battery life and/or bandwidth; and

6. Injury to Plaintiff's peace of mind.

In addition, Plaintiffs [seek a measure of recovery that] may [allow them to] recover any profits that Google received from the use of [the] data [at issue] that have not already been taken into account with regard to the above damages.

[To recover under this theory, Plaintiffs must prove each of the following:

1. By obtaining the data at issue, Google received a benefit that it otherwise would not have achieved;

2. That the benefit was obtained at Plaintiffs' expense; and

3. That it would be unjust for Google to retain that benefit without compensating Plaintiffs.]

To establish the amount of these profits you must:

4. Determine the gross, or total, revenue that Google received from the use;

5. Determine the expenses that Google had in obtaining the gross revenue; and

CASE NO. 3:20-cv-04688-RS

**PROPOSED JOINT JURY INSTRUCTIONS**

6.  Deduct Google's expenses from the gross revenue.

[In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for Plaintiffs' actual loss.]

Plaintiffs must prove the amount of gross revenue, and Google must prove the amount of expenses.

[Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 1821 (2025 edition)]

**Plaintiffs' Statement:**

- Plaintiffs' proposal is based on CACI 1821, which instructs the jury on how to award damages for related privacy claims that similarly allow for an award of unjust enrichment. Plaintiffs' proposal differs from Google's proposal in two important respects.

- *First*, Plaintiffs' proposal includes all alleged forms of damages. Google's proposal, by contrast, improperly excludes three alleged forms of damages: injury to the right to control one's data, injury to privacy, and depletion of device resources. Although Google has not explained why it has excluded these forms of injury, Plaintiffs surmise that their exclusion relates to Google's view that Plaintiffs' damages models do not quantify those forms of injury. Assuming for the sake of argument that is true, there are several reasons that still would not justify excluding these forms of injury from the instruction:

    o The model instructions do not state that injuries that are not quantified should be omitted. *See, e.g.*, CACI 1821.

    o Excluding these forms of injury may confuse the jury because they are included in the "damage or loss" instruction.

    o Even if those forms of injury are not quantified, they may still form the basis for a damages award, such as nominal damages.

    o Given the substance of this and other instructions, there is little danger that the jury will award more than nominal damages based on an injury that is not quantified. This instruction states that "Plaintiffs must prove the amount of damages by a

preponderance of the evidence" and that the jury "must not speculate or guess." And the separate nominal damages instruction explains what the jury should do if it cannot formulate a damages award supported by the evidence.

- *Second*, Google's proposed instruction on the prerequisites to an award of disgorgement of profits is improper. As the Ninth Circuit, this Court, and others have held, disgorgement of profits is an available remedy for Plaintiffs' claims. *See* Dkt. 352 at 21; *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020); *Greenley v. Kochava, Inc.*, 2023 WL 4833466, at *4, 11–12 (S.D. Cal. Jul. 27, 2023) (holding that plaintiffs asserting claims for invasion of privacy may seek disgorgement of profits); Restatement (Third) of Torts: Restitution § 44 cmt. b ("Profitable interference with other protected interests, such as the claimant's right of privacy, gives rise to a claim [for unjust enrichment]"). Google's efforts to impose additional requirements to obtain this remedy are meritless. These requirements have no basis in the caselaw.

  - Consistent with California law, this Court has already rejected Google's argument that disgorgement of profits is limited to benefits that Google would not have achieved but for its wrongful conduct. *See* Dkt. 352 at 22 ("[Plaintiffs' damages expert]  was not required to examine whether Google could have profited otherwise before reaching a conclusion that Google was not unjustly enriched."); *Uzyel v. Kadisha*, 188 Cal. App. 4th 866, 894 (2010) ("The presence or absence of but-for causation is not necessarily determinative of unjust enrichment."); Restatement (Third) of Restitution and Unjust Enrichment: Restitution § 51 cmt.f ("[A] finding that the defendant would have realized the profit in any event does not compel the conclusion that the defendant, under the circumstances, has not been unjustly enriched.").

  - Google's proposal to instruct the jury that the benefit must have been "obtained at Plaintiffs' expense" is false. As this Court has held, Plaintiffs need not prove a "corresponding loss" in order to prove a right to disgorgement of Google's profits. Dkt. 352 at 11. Google confuses the issue by relying on instructions and authorities

relating to *unjust enrichment as a cause of action*, which does *not* require that the defendant engaged in wrongdoing.[2] In those circumstances, additional safeguards are required in order to ensure that the proceeds are apportioned to the party that deserves them. Actions in which disgorgement is sought *as a remedy* for wrongdoing are treated differently. *See, e.g.*, *Meister v. Mensinger*, 230 Cal. App. 4th 381, 398–99 (2014) ("The public policy of this state does not permit one to take advantage of his own wrong regardless of whether the other party suffers actual damage."); Restatement (Third) of Restitution and Unjust Enrichment § 44 cmt.a (distinguishing restitution claims without "separately identifiable misconduct on the part of the defendant" from claims for restitution arising from wrongdoing). This distinction— and the different instructions appropriate in cases like this one—are apparent in the very model instruction upon which Google relies, CACI 4410. That instruction relates to unjust enrichment for misappropriation of trade secrets. It does not instruct the jury to decide whether the defendant's unjust enrichment was "at the plaintiff's expense." And on top of that, Google's proposal would not help the jury to determine what amounts to an "expense" for purposes of this instruction. The jury may be left unaware that, for example, an interference with Plaintiffs' rights is itself sufficient, as we have explained.

- o *Third*, Google's instruction erroneously asks the jury to determine whether "it would be unjust for Google to retain" its profits. This is another product of Google's

---

[2] Google argues below that unjust enrichment is not a cause of action under California law. But Google's cited authorities address causes of action for unjust enrichment. *See Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1071 (N.D. Cal. 2009) (explaining that the Ninth Circuit reversed "dismissal of [the plaintiff's] unjust enrichment claim, holding that under California law the unjust enrichment claim constituted a separate cause of action"); Restatement (Third) of Restitution § 44 cmt. a (explaining that the sections addressing benefits acquired by wrongdoing addressed in this section are distinct from "case[s] in which the sole predicate of the restitution claim is unjust enrichment—without separately identifiable misconduct on the part of the defendant," which are "classified elsewhere in this Restatement."). Whether these courts correctly determined that unjust enrichment is an independent cause of action is not important. The fact is that these cases did not involve requests for unjust enrichment only as a remedy for tortious conduct.

CASE NO. 3:20-cv-04688-RS

**PROPOSED JOINT JURY INSTRUCTIONS**

confusion regarding the two different types of unjust enrichment: (a) unjust enrichment as an independent claim; and (b) unjust enrichment as a remedy for wrongdoing. If the jury finds liability, the wrongdoing itself establishes that it would be unjust for Google to retain its profits. The California Court of Appeal has made very clear that under California public policy, wrongdoers may not retain the benefits from their violations of the law. *Meister*, 230 Cal. App. 4th at 398–99 ("The public policy of this state does not permit one to take advantage of his own wrong regardless of whether the other party suffers actual damage."). This is also reflected in CACI 4410, upon which Google purports to rely. California's model instruction does not impose a requirement to determine whether it is "unjust" for a trade-secret misappropriator to retain its profits. That is because it is unjust for a wrongdoer to retain the profits from their wrongdoing. *See, e.g., id.*; Restatement (Third) of Restitution and Unjust Enrichment § 51 cmt. e (explaining that "[t]he object of the disgorgement remedy" is "to eliminate the possibility of profit from conscious wrongdoing").

- *Third*, Plaintiffs' proposal correctly includes an instruction on the calculation of disgorgement of profits, which is consistent with CACI 1821. The Parties have separately briefed the question of whether the jury should determine the amount of profits to be disgorged.

- *Fourth*, Plaintiffs' proposal correctly relies on model instructions relating to California law, which governs Plaintiffs' claims. Google, by contrast, relies on Ninth Circuit model instructions relating to federal law.

**Google's Statement:**

The Parties' disputes over this instruction boil down to three categories: (1) whether to use language from the Ninth Circuit Model or from CACI; (2) how to describe the measures of damages, including whether to include the depletion of class members' "battery life and/or bandwidth" as a specific measure of damages; and (3) whether to include instructions about Plaintiffs' unjust

1  enrichment theory and how to characterize the elements that Plaintiffs must prove to recover under

2  an unjust enrichment theory. The Court should adhere to Google's proposals.

3      ***First,*** Google proposes that the Court adopt language from the Ninth Circuit's Model

4  number 5.1 to instruct the jury on its role in awarding damages. *See* Manual of Model Civil Jury

5  Instructions for The District Courts of the Ninth Circuit, number 5.1 (Damages – Proof). This would

6  be in keeping with Judge Seeborg's requirement that the parties should use the "Model Jury

7  Instructions of the Ninth Circuit where appropriate. *See* Chief Judge Seeborg's Guidelines for Final

8  Pretrial Conferences in Civil Jury Cases at 5 (Section D.4.c). While Plaintiffs' proposal, modeled

9  on CACI 3900, cautions the jury against speculation, Google's proposal goes further by affirming

10 that the jury must base any damages award on evidence and determine what, if any, damages have

11 been proven. As this instruction concerning how the jury should handle deliberation on damages

12 comes directly from the Ninth Circuit's model instructions, Google's proposal aligns with

13 established federal practice and provides clear, specific guidance.

14     ***Second,*** only nominal damages are available to Plaintiffs as a result of any depletion of

15 battery and/or bandwidth of their mobile devices. *See* Dkt. 445 at 19 ("Plaintiffs concede that only

16 nominal damages would be available to them under [a] theory of liability" based on "depletion of

17 battery and bandwidth"). The same is true of any loss of "right to control," "loss of privacy," and

18 "injury to Plaintiffs' peace of mind." *See id*. at 17 ("Plaintiffs are unable to show that they are

19 entitled to more than nominal damages resulting from the emotional harms associated with their

20 deprivation of privacy. They offer no concrete models or theories that this harm constitutes more

21 than simply an emotional injury."); *see also id*. at 13 ("Plaintiffs' counsel admitted that if emotional

22 harm was Plaintiffs' sole theory of harm, only nominal damages would be available to the class.").

23 It is more appropriate to instruct the jury separately on nominal damages, as the Parties propose

24 doing in Jury Instruction No. 47 (Nominal Damages) (though the Parties disagree about the contents

25 of that instruction, *see infra*). Conflating nominal damages with general damages is prejudicial to

26 Google as it runs the risk of confusing and misleading the jury regarding the types of available

27 relief.

28

**Third**, in light of Google's pending motion in limine 2 regarding the impropriety of introducing disgorgement theories to the jury, it is Google's position that none of the language in the second paragraph or below (starting with "In addition") should be included in these instructions. Dkt. 520 (Google's Motion in Limine 2).

At a minimum, Plaintiffs should be required to identify the specific claims for which they seek disgorgement. Their authority for the proposition that they may seek disgorgement on all claims comprises two cases discussing Article III standing, neither of which held that disgorgement is available for each and every one of the claims asserted here. *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020); *Greenley v. Kochava, Inc.*, 2023 WL 4833466, at *4, 11–12 (S.D. Cal. Jul. 27, 2023). This is critical because, as Google pointed out in its Motion in Limine, statutes like CDAFA do not permit recovery of legal measures of disgorgement that would be triable to a jury. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 218 (2002) (where statute permitted "equitable relief," restitutionary relief that was legal in nature was unavailable). Should the jury return a mixed verdict, it is prejudicial to offer an undifferentiated instruction that suggests that legal disgorgement is available for all claims. In light of Plaintiffs' position above, that they are entitled to legal disgorgement on each of their claims, it is plain that Plaintiffs' instruction invites error.

However, should Google's motion be unsuccessful, Google proposes the language in <span style="color:red">red</span> in that paragraph, to instruct the jury that Plaintiffs must prove certain elements in order to recover under an unjust enrichment theory. Google's proposed language is based on CACI 4410, as well as other authority articulating the elements that a plaintiff must prove to recover disgorged profits. *See, e.g., Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1073 (N.D. Cal. 2009), *aff'd*, 633 F.3d 1067 (Fed. Cir. 2010) ("Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another."); *see also* Restatement (First) of Restitution § 1, comment (c) ("Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, **it is unjust for him to retain it.**") (emphasis added). Google's language accurately and clearly instructs the jury on Plaintiffs' burden under this theory of recovery.

Plaintiffs' argument that Google mistakenly conflates unjust enrichment as a "cause of action" with unjust enrichment as a "remedy" is puzzling, given that California law is clear that there is no such thing as a cause of action for unjust enrichment. *Garon v. eBay, Inc.*, 2011 WL 6329089, at *10 (N.D. Cal. Nov. 30, 2011). As *Gardon* noted, "unjust enrichment" refers to an effect: the failure to make restitution under circumstances where it is equitable to do so." *Id.* Without engaging in argument about whether "equitable" concerns are appropriate for a jury, Google notes that its proposed instruction does not purport to require a "corresponding loss" on the part of Plaintiffs, as they claim, but instead seeks to capture the required circumstances supporting such an award.  Specifically, the relevant consideration is whether Google must make "restitution"—returning something owing to the Plaintiffs—as may be warranted by equitable considerations. Similarly opaque is Plaintiffs' argument that it's unnecessary for the jury to find that Google might unjustly retain a benefit, given their exclusive reliance on cases holding that parties should not be permitted to gain from their "wrongdoing." *Meister*, 230 Cal. App. 4th at 398–99 ("The public policy of this state does not permit one to take advantage of his own wrong regardless of whether the other party suffers actual damage."). What Google may obtain absent any wrongdoing is not at issues here. Google's proposed instruction instead focuses rightly on what it gained absent what it may have lawfully acquired from Plaintiffs.

It is apparent that Plaintiffs seek to ask the jury simply whether Google made any profit, and that *any* wrongdoing is sufficient to support disgorgement *(see supra.* "If the jury finds liability, the wrongdoing itself establishes that it would be unjust for Google to retain its profits."). Such a question is unsupported by any authority, unduly prejudicial, and underscores why the law commits this issue to the sound jurisdiction of the Court in inequity.

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 46**

Punitive Damages

[Punitive damages are available only under the following claims: CDAFA and Intrusion Upon Seclusion.] If you decide that Google is liable with respect to any one of Plaintiffs' claims, you must decide whether Google's conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that caused the harm, damage, and/or loss and to discourage similar conduct in the future. You are not required to award any punitive damages. At this time, you must decide whether Plaintiffs have proved by clear and convincing evidence that Google engaged in that conduct with malice, oppression, or fraud. The amount of punitive damages, if any, will be decided later.

You may award punitive damages only if Plaintiffs have proved by clear and convincing evidence that Google engaged in that conduct with malice, oppression, or fraud.

"Malice" means that Google acted with intent to cause injury or that Google's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person or entity acts with knowing disregard when they are aware of the probable dangerous consequences of the person's conduct and deliberately fail to avoid those consequences.

"Oppression" means that Google's conduct was despicable and subjected class members to cruel and unjust hardship in knowing disregard of their rights.

"Fraud" means that Google intentionally misrepresented or concealed a material fact and did so in intending to harm class members.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. [If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party.] If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

    (a)     How reprehensible was Google's conduct? In deciding how reprehensible Google's conduct was, you may consider, among other factors:

        (i)      Whether the conduct caused physical harm;

        (ii)     Whether Google disregarded the health or safety of others;

        (iii)    Whether class members were financially weak or vulnerable and Google knew they were financially weak or vulnerable and took advantage of them;

        (iv)    Whether Google's conduct involved a pattern or practice; and

        (v)     Whether Google acted with trickery or deceit.

(b)     Is there a reasonable relationship between the amount of punitive damages and class members' harm, damage, or loss, or between the amount of punitive damages and potential harm, damage, or loss to class members that Google knew was likely to occur because of their conduct?

(c)     In view of Google's financial condition, what amount is necessary to punish Google and discourage future wrongful conduct?  You may not increase the punitive award above an amount that is otherwise appropriate merely because Google has substantial financial resources.  Any award you impose may not exceed Google's ability to pay.

[Punitive damages may not be used to punish Google for the impact of its alleged misconduct on persons other than class members.]

[Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 3940 (2025 edition)]

**Plaintiffs' Statement:**

- Plaintiffs' proposed instruction tracks the pattern instruction on punitive damages. *See* CACI 3940. The Parties have three disputes with respect to this instruction: (1) Whether issues of punitive damages should be deferred to a separate phase of trial; (2) Whether punitive damages are available for Plaintiffs' claim for invasion of privacy; and (3) Whether language should be added to the model, instructing jurors that they "must use reason in setting the amount" of punitive damages and that the amount "should not reflect bias, prejudice, or sympathy toward any party."

- *First*, this instruction should be given at the close of the first and only phase of trial. Plaintiffs' opposition to Google's motion to bifurcate trial explains why bifurcation is unwarranted here. The Parties need not repeat their positions here.

- *Second*, punitive damages are available for Plaintiffs' claim for invasion of privacy. California law provides that "[i]n an action for the breach of an obligation not arising from contract … the plaintiff, in addition to actual damages, may recover damages for the sake of example and by way of punishing the defendant." Cal. Civ. Code § 3924(a). In other words, punitive damages are generally available except in contract cases. Accordingly, courts have recognized that punitive damages may be an available remedy for invasions of privacy. *See, e.g.*, *Jackson v. First Nat'l Bank of Omaha*, 2022 WL 423440, at *9 (C.D. Cal. Jan. 18 2022) ("California courts and district courts in the Ninth Circuit have recognized punitive damages may be appropriate for common law invasion of privacy claims."); *Hieu Pham v. Bast*, 2018 WL 4003387, at *2 n.3, *9–10 (N.D. Cal. Aug. 22, 2018) (denying motion to strike punitive damages based in part on claim for invasion of privacy); *Spinks v. Equity Res. Briarwood Apartments*, 171 Cal. App. 4th 1004, 1055 (2009) ("[P]unitive damages may be available for the tort[] of … invasion of privacy."). In *Porten v. University of San Francisco*, the California Court of Appeal suggested that money damages are available for invasion of privacy claims. 64 Cal. App. 3d 825, 832–33 (1976) (reversing dismissal of invasion of privacy claim for money damages). In a more recent case, a federal district court agreed that a claim for money damages may lie under the California Constitution and rejected defendants' arguments based on a contrary assertion. *Stuart v. County of Riverside*, 2024 WL 3086634, at *5 (C.D. Cal. June 14, 2024).[3]  Arguing otherwise, Google relies on an inapplicable line of cases regarding the availability of monetary relief for certain claims *when asserted against a government actor. See Hart v. TWC Prod. & Tech. LLC*, 526 F.

---

[3] The Court should reject Google's creative interpretations of *Porten*. Google's argument conflicts with the view of the California Supreme Court, which characterized that case as "suggest[ing] that money damages are available in an action based upon a violation of that clause" of the California Constitution. *Katzberg v. Regents Univ. of Cal.*, 29 Cal. 4th 300, 313, 316 nn. 13, 16 (2002).

Supp. 3d 592, 602 (N.D. Cal. 2021) (distinguishing such cases). The analysis is plainly different when the defendant is a private entity. This is apparent from *Clausing v. San Francisco Unified Sch. Dist.*, which is the **sole authority** upon which Google's cases rely. 221 Cal. App. 3d 1224 (1998). The California Court of Appeal held that damages were not available in that case because the plaintiff's theory depended on a non-existent alleged "*mandatory duty* on public entities to protect a citizen's right to privacy." *Id.* at 1238. Moreover, the California Supreme Court has cast significant doubt on the validity of the *Clausing* line of cases, all but instructing other courts to disregard them. *See Katzberg v. Regents Univ. of Cal.*, 29 Cal. 4th 300, 313, 316 nn. 13, 16 (2002) (criticizing *Clausing* for "overlook[ing]" *Porten*, in which "the court suggested that money damages are available in an action based upon a violation of that same clause"); *Hernandez v. Hillsides*, 47 Cal. 4th 272, 285 (stating after *Clausing* that "it is an open question whether the state constitutional privacy provision … can also provide direct and sole support for a damages claim."); *see also Hart*, 526 F. Supp. 3d at 602. The bottom line is that Google has identified no case holding that damages are unavailable in actions against private parties, or in actions not based upon a non-existent duty to rescue the plaintiffs' rights.

- *Third*, the Court should not add to this instruction the below language, which Google requests:

  > If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party.

- This language does not appear in California's model instruction. Although it derives from the Ninth Circuit's model instruction on punitive damages, federal law does not apply here. Plaintiffs' claims arise under California law. The amount of punitive damages is a matter of state substantive law. *Browning-Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278–79 (1989) ("[I]n any … lawsuit where state law provides the basis of decision, the propriety of an award of punitive damages for the conduct in question, and the factors the jury may consider in determining their amount, are questions of state law."). Accordingly, the most

1    prudent course is to give a punitive damages instruction designed to fit state law—and not

2    adding elements from an instruction designed to fit federal law, which may differ.

3    **<u>Google's Statement:</u>**

4        As a threshold matter, this instruction should only be included should Google's motion to

5    bifurcate the trial for purposes of punitive damages be unsuccessful. If the Court grants Google's

6    motion to bifurcate the trial, then the jury should not be instructed on punitive damages at all (and

7    punitive damages should not appear on the verdict form). Should Google's motion be unsuccessful,

8    and this instruction goes before the jury in the first phase of trial, then Google suggests only minor

9    changes to Plaintiffs' proposals.

10        ***First***, Google's instruction clarifies that punitive damages are only available for Plaintiffs'

11    claims under CDAFA and Intrusion Upon Seclusion, but not Invasion of Privacy under the

12    California Constitution. *See Blanco v. Cnty. of Kings*, 142 F. Supp. 3d 986, 1001 (E.D. Cal. 2015)

13    ("the Court finds that the California Constitutional right to privacy contained in article I, section I

14    does not give rise to a cause of action for money damages"); *Doe v. Regents of Univ. of California*,

15    672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) (plaintiffs "can seek to enjoin [defendants] but cannot

16    seek damages" under "Article 1, Section 1 of the California Constitution"). Plaintiffs do not cite any

17    authorities suggesting otherwise. Two of the three cases that Plaintiffs cite do not even contain a

18    claim for invasion of privacy under the California Constitution. *See Jackson v. First Nat'l Bank of*

19    *Omaha*, 2022 WL 423440, at *9 (C.D. Cal. Jan. 18 2022) (no invasion of privacy claim under the

20    California Constitution); *Spinks v. Equity Res. Briarwood Apartments*, 171 Cal. App. 4th 1004, 1055

21    (2009) (same). And the third does not explicitly recognize that any money damages are available

22    for this claim. The complaint in question in *Hieu Pham* contained twenty-six causes of action, and

23    the order Plaintiffs cite does not come close to suggesting that punitive damages are available for

24    the constitutional privacy claim. *See Hieu Pham v. Bast,* 2018 WL 4003387, at *2 n.3, *9–10 (N.D.

25    Cal. Aug. 22, 2018); *see also Hieu Pham v. Bast*, No. 3:17-cv-04194-WHO, Dkt. 26 (June 18, 2018)

26    (Third Amended Complaint containing twenty-six causes of action).

27        Monetary damages are unavailable for the constitutional privacy claim. It is Plaintiffs'

28    burden to show that damages are recoverable for their claims, and they are unable to cite a single

1    case definitively holding so with respect to this claim. *Faria v. M/V Louise V*, 945 F.2d 1142, 1143

2    (9th Cir. 1991) (it is "one of the most basic propositions of law [] that the plaintiff bears the burden

3    of proving his case, including the amount of damages").

4         *Porten* does not hold that money damages are available for an action under Article I, section

5    1. *Porten v. Univ. of San Francisco*, 64 Cal. App. 3d 825, 832 (Ct. App. 1976) (deciding demurrer

6    on other grounds). And Google can find no case that has awarded any type of monetary damages

7    for an invasion of privacy under the California Constitution, whether against a government actor or

8    a private entity. *See, e.g.*, *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 602 (N.D. Cal.

9    2021) (tabling the question). Plaintiffs overstate the limitations of *Clausing* in characterizing *Blanco*

10   and *Doe* as its progeny. *Hart* does not actually hold that *Clausing*'s rule barring monetary recovery

11   for a constitutional privacy violation is confined to actions against government actors. 526 F. Supp.

12   3d at 602. And *Clausing* is far from being abandoned; the Eastern District of California affirmed

13   *Clausing* in 2015, finding *Porten* unpersuasive as contrary authority. *See Blanco*, 142 F. Supp. 3d

14   986 at 1001 (*Porten* did not contain "any analysis of the viability of the prayer for relief but only

15   briefly discussed how the facts in the respective complaints could amount to a prima facie violation

16   of article I, section I.").

17        *Katzberg*, which Plaintiffs cite, also does not hold that monetary damages are unavailable

18   only when a claim is asserted against a government actor. *Katzberg v. Regents Univ. of Cal.*, 29 Cal.

19   4th 300 (2002). Indeed, *Katzberg* walked through no less than six cases in which California courts

20   declined to award damages for a constitutional violation. *Id.* at 314-17. And even were this Court to

21   follow the framework set out in *Katzberg*, as Plaintiffs seem to suggest but fall short of arguing,

22   damages would not be available here.  This framework asks courts to first consider whether the

23   "language and history" of the constitutional provision at issue expresses an intent to authorize or

24   withhold a damages remedy. *Id.* at 317. One court in this District, looking at the intent of Article I,

25   section 1, held that it does not provide for a damages action. *Bates v. Arata*, 2008 WL 820578, at

26   *4 (N.D. Cal. Mar. 26, 2008) ("This [privacy] provision does not establish the means by which these

27   inalienable rights may be enjoyed, defended, or otherwise given the force of law."). Google has

28   further found no legislative intent to create an avenue for recovering damages via Article I, section

1. The inquiry should stop here. However, were the Court to proceed to the second step, which undertakes a *Bivens*-like "constitutional tort" analysis, it should also find that implying a right to damages here is unwarranted. The *Katzberg* court in rejecting monetary recovery for a constitutional privacy claim found highly persuasive the fact that the plaintiffs had adequate remedies under tort law (there, defamation). *Katzberg*, 29 Cal. 4th at 326-327. Here, with intrusion upon seclusion mirroring this constitutional claim—as Google briefs more fully in its argument regarding Instruction No. 34—there is no reason for this Court to imply a right to recover damages. It would be duplicative and an unnecessary extension of judicial power.

**Second**, Google proposes adding language from the Ninth Circuit's Manual of Model Jury Instructions, Number 5.5 (Punitive Damages), which clarifies for the jury that it "must use reason in setting the amount" of punitive damages, and that any award "should not reflect bias, prejudice, or sympathy toward any party." As stated in Judge Seeborg's standing order, the parties should use "Model Jury Instructions of the Ninth Circuit where appropriate." *See* Chief Judge Seeborg's Guidelines for Final Pretrial Conferences in Civil Jury Cases at 5 (Section D.4.c). This language ensures that any punitive damages awarded are grounded in reason and fairness, rather than emotion or personal bias, which aligns with the fundamental principles of due process. Including this instruction helps guide the jury to focus on the proper legal purpose of punitive damages— deterrence and punishment—while avoiding arbitrary or excessive awards. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416–417 (2003) ("The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor. … To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property.").

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

## (DISPUTED) JURY INSTRUCTION NO. 47

### Nominal Damages

**Plaintiffs' Proposal:**

The law that applies to this case authorizes an award of nominal damages.  If you find for the plaintiff but you find that the plaintiff has failed to prove damages as defined in these instructions, you must award nominal damages for each injury. Nominal damages are awarded per class member. This means that the total amount of nominal damages will equal the amount of nominal damages you award multiplied by the amount of people per class. The estimated class sizes are 54,923,146 for Class 1, the Android Class, and 59,565,930 for Class 2, the Non-Android Class.

**Google's Proposal:**

If you decide that Google is liable under Plaintiffs' CDAFA and/or Intrusion Upon Seclusion claim, but also that Plaintiffs were not harmed by Google's intrusion, you may still award Plaintiffs nominal damages. There is no lower limit to nominal damages, though they may not exceed $1. The estimated class sizes are 54,923,146 individuals for Class 1, the Android Class, and 59.565,930 individuals for Class 2, the Non-Android Class.

Nominal damages are not available for Plaintiffs' claim for Invasion of Privacy under the California Constitution.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 5.6 (2017)]

**Plaintiffs' Statement:**

- The first two sentences of Plaintiffs' proposal track the Ninth Circuit's Model Jury Instruction 5.6, and there is no basis to depart from the substance of that instruction.  The following two sentences of Plaintiffs' proposal clarify to the jury that nominal damages are available on a per-class-member basis.  *See Cummings v. Connell*, 402 F.3d 936 (9th Cir. 2005) (affirming nominal damages award to each class member).  While Google suggests

there is no "recent" decision on a per-class-member award, Google provides no case law to supports this logic or that would contradict *Cummings*.

- Plaintiffs' proposal appropriately instructs the jury that nominal damages are awarded per class member, rather than as a single nominal sum to class as a whole. In *Cummings*, the Ninth Circuit reversed a judgment in which the district court awarded $1 per named plaintiff, even though the class included 37,000 people. The Ninth Circuit held that "when nominal damages are awarded in a civil rights class action, every member of the class whose constitutional rights were violated is entitled to nominal damages." 402 F.3d 936, 944 (9th Cir. 2005). Although the Ninth Circuit referred to "civil rights actions," its reasoning is unrelated to the nature of the claims asserted. Indeed, the Ninth Circuit explained that "damages for violations of constitutional rights are determined according to principles derived from the common law of torts." *Id.* at 942. The Ninth Circuit also drew on foundational principles of class litigation: "It is axiomatic that Rule 23 cannot 'abridge, enlarge or modify any substantive right' of any party to the litigation. ... Consequently, the mere fact that a case is proceeding as a class action does not allow the district court to vindicate the rights of the individually named plaintiffs differently as compared to the absent class plaintiffs." *Id.* In other words, because class members could have each been awarded nominal damages had they filed independent lawsuits, they must also be entitled to individual nominal damages awards here.

- The parties also diverge on the issue of the permissible range or limitation of nominal damages. While the Ninth Circuit's Model Jury Instruction 5.6 includes the statement that "Nominal damages may not exceed one dollar," Plaintiffs respectfully request that the Court not include that limitation. Courts across the country have permitted juries to award nominal damages exceeding $1. *See, e.g.*, *Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019, 1033 (jury award of $10 in nominal damages for § 1983 violations); *see also SIS, LLC v. Stoneridge Software, Inc.*, 2023 WL 164067 (11th Cir. Jan. 12, 2023) (affirming nominal damages award of $85,000 in breach of contract case); *Western Insulation, LP v. Moore*, 316 Fed.Appx. 291, 294 (4th Cir. 2009) (affirming nominal damages award of $100 in breach of

contract case). Google cannot claim any prejudice here, where the Court may (but need not) evaluate the amount of nominal damages awards through post-verdict motions practice.

- The CDAFA expressly provides for compensatory relief. Cal. Penal Code § 502(e)(1). That includes nominal damages. Cal. Civ. Code § 3360 (nominal damages section of statutory title on compensatory relief).[4] Google has identified no authority suggesting that nominal damages are somehow excluded from the CDAFA's ambit.

- Nominal damages are also available for invasion of privacy and intrusion upon seclusion. *Uzuegbunam*, 141 S. Ct. at 799. Again, nominal damages are a type of recoverable damages. Cal. Civ. Code § 3360 (title on compensatory relief).[5] Google has identified no authority suggesting that nominal damages are somehow excluded from the CDAFA's ambit.

- Nominal damages are also available for invasion of privacy and intrusion upon seclusion. Google agrees that compensatory damages are available for intrusion upon seclusion. *See* Disputed Instruction No. 9-2, 9-5. Nominal damages are also available for invasion of privacy. *Uzuegbunam*, 141 S. Ct. at 799. Again, nominal damages are a type of recoverable damages. Cal. Civ. Code § 3360.

- Google's argument that monetary relief is not available for an invasion of privacy claim has been addressed in the briefing for Instructions 45 and 46 above, which describe how monetary relief under invasion of privacy is analyzed differently for government entities (Google's line of cases) rather than private entities (Plaintiffs' line of cases).

---

[4] For well over 100 years, California courts have rejected any assertion that Cal. Civ. Code § 3360 is specific to contract claims. *See, e.g.*, *Empire Gravel min. Co. v. Bonanza Gravel Min. Co.*, 67 Cal. 406 (1885) ("For every trespass upon real property the law presumes nominal damages."); *Crane v. Heine*, 35 Cal. App. 466, 467 (1917) (nominal damages available for impersonation).

[5] For well over 100 years, California courts have rejected Google's assertion below that Cal. Civ. Code § 3360 is specific to contract claims. *See, e.g.*, *Empire Gravel min. Co. v. Bonanza Gravel Min. Co.*, 67 Cal. 406 (1885) ("For every trespass upon real property the law presumes nominal damages."); *Crane v. Heine*, 35 Cal. App. 466, 467 (1917) (nominal damages available for impersonation). There is no support for Google's position.

1    • [Authority: Ninth Circuit Model Jury Instruction 5.6]

2

3    **Google's Statement:**

4    The Parties' dispute here boils down to two main issues: (1) which claims nominal damages

5    are available for and when they must be awarded; and (2) the amount of nominal damages that may

6    be awarded and to whom.

7    **First,** Google's proposal correctly states that nominal damages—a type of "money

8    damages"—are not available for Plaintiffs' Invasion of Privacy claim. *See Blanco v. Cnty. of Kings*,

9    142 F. Supp. 3d 986, 1001 (E.D. Cal. 2015) ("the Court finds that the California Constitutional right

10   to privacy contained in article I, section I does not give rise to a cause of action for money

11   damages"); *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023)

12   (plaintiffs "can seek to enjoin [defendants] but cannot seek damages" under "Article 1, Section 1 of

13   the California Constitution"). Plaintiffs cite no authority to the contrary. While Plaintiffs rely on

14   *Uzuegbunam v. Preczewski*, 592 U.S. 279, 289 (2021), to argue that nominal damages are available

15   for both their Invasion of Privacy and Intrusion Upon Seclusion claims, Google does not dispute

16   that nominal damages may be awarded for the latter. However, nominal damages remain unavailable

17   for Invasion of Privacy for the reasons previously stated in Google's arguments on Instructions 34

18   and 46. Google has been unable to find a single case authorizing an award of nominal damages for

19   an Invasion of Privacy claim under the California Constitution. Moreover, the Ninth Circuit has

20   made clear that *Uzuegbunam* "did [not] hold that nominal damages are now available as an inherent

21   remedy for all legal injuries." *Perry v. Gottlieb*, No. 21-55513, 2022 WL 779627, at *1 (9th Cir.

22   Mar. 14, 2022).

23   Further, Plaintiffs' proposal would erroneously instruct the jury that it "must" award nominal

24   damages" if it finds liability but also finds that Plaintiffs failed to prove actual damages. This is

25   inaccurate. *See Mfg. Automation & Software Sys., Inc. v. Hughes*, 833 F. App'x 147, 148 (9th Cir.

26   2021) (holding district court permissibly deemed defendant prevailing party on CDAFA claim

27   where jury found for plaintiff on liability but awarded no damages of any sort, including nominal

28   damages); *Monster Energy C. v. Integrated Supply Network, LLC*, 821 F. App'x 730, 734 (9th Cir.

1    2020) (holding district court erred in awarding $1 in nominal damages for California common law

2    tort of unfair competition where jury found defendant was liable but awarded no damages. including

3    nominal damages, for tortious act).

4       **Second,** Google's proposal correctly instructs the jury that nominal damages may be no

5    greater than, but can be less than, $1. *See Audio Fid., Inc. v. High Fid. Recordings, Inc.*, 283 F.2d

6    551, 558 (9th Cir. 1960) ("the award of at least nominal damages, such as one dollar or one cent.");

7    *Vallavista Corp. v. Vera Bradley Designs, Inc.*, No. C 10-00120 JW, 2011 WL 7462065, at *3 (N.D.

8    Cal. Apr. 20, 2011) ("an 'award of nominal damages, such as one dollar or one cent,' may be

9    appropriate in cases where a plaintiff fails to prove actual damages."); *Bayer v. Neiman Marcus*

10    *Grp., Inc.*, 861 F.3d 853, 872 (9th Cir. 2017) ("nominal damages [] are … by nature minimal in

11    amount"). Plaintiffs cite no case suggesting that a nominal damage award over $1 is permissible in

12    the Ninth Circuit, and the explicit limitation in the Ninth Circuit's Model Jury Instruction 5.6 would

13    suggest that such an award is improper. *See* Ninth Circuit Manual of Model Civil Jury Instructions

14    No. 5.6 (Nominal Damages) ("Nominal damages may not exceed one dollar.").

15       In addition, Plaintiffs do not provide a sufficient basis to instruct the jury that nominal

16    damages are to be awarded per class member.  In the sole decision they cite for this proposition,

17    *Cummings v. Connell*, the Ninth Circuit expressly states in the first sentence that it "holds today that

18    when nominal damages are awarded in a *civil rights class action*, every member of the class whose

19    constitutional rights were violated is entitled to nominal damages."  402 F.3d 936, 940 (9th Cir.

20    2005) (emphasis added).  This reasoning accords with the settled principle that, where a plaintiff

21    proves a violation of their rights under the federal constitution in a claim brought under § 1983—as

22    was the case in *Cummings*—"nominal damages must be awarded … as a matter of law," as a

23    "symbolic vindication." *Schneider v. Cnty. of San Diego*, 285 F.3d 784, 794 (9th Cir. 2002) (cleaned

24    up, citation omitted) (collecting cases). The same logic does not apply to commercial class action

25    claims. Although courts have followed the per-member model in other civil rights cases, Plaintiffs

26    do not identify a commercial class action suit where a court has permitted nominal damages per

27    class member in the 20 years since *Cummings* was issued, and counsel for Google are unable to find

28    one.

Regardless, it is also appropriate to instruct the jury that awards of nominal damages have no lower limit, though cannot exceed $1, given the size of the class in this case. Nominal damages are not intended to generate large money judgments. One cent per class member adds to approximately $1 million in nominal damages. A dollar per class member adds to approximately $100 million, an obviously unreasonable sum for "nominal" damages.

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 48**

<u>Duty to Deliberate</u>

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 3.1 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

CASE NO. 3:20-cv-04688-RS
**PROPOSED JOINT JURY INSTRUCTIONS**

**(JOINT) JURY INSTRUCTION NO. 49**

<u>Consideration of Evidence – Conduct of the Jury</u>

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way, and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website, or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the

trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 3.2 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

1

**(JOINT) JURY INSTRUCTION NO. 50**

2

<u>Burden of Proof – Preponderance of the Evidence</u>

3      When a party has the burden of proving any claim or affirmative defense by a preponderance

4  of the evidence, it means you must be persuaded by the evidence that the claim or affirmative

5  defense is more probably true than not true.

6      You should base your decision on all of the evidence, regardless of which party presented it.

7

8

9  [Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit,

10  Number 1.6 (2017)]

11

12  DATE SUBMITTED: July 11, 2025

13  DATE REVISED: _____

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**(JOINT) JURY INSTRUCTION NO. 51**

<u>Communication with Court</u>

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time.   You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 3.3 (2017)]

DATE SUBMITTED: July 11, 2025

DATE REVISED: _____

1

**(JOINT) JURY INSTRUCTION NO. 52**

2

<u>Return of Verdict</u>

3       A verdict form has been prepared for you.  After you have reached unanimous agreement on

4  a verdict, your presiding juror should complete the verdict form according to your deliberations,

5  sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.

6

7

8  [Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit,

9  Number 3.5 (2017)]

10

11 DATE SUBMITTED: July 11, 2025

12 DATE REVISED: _____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**SIGNATURE BLOCKS**

2

Dated:    July 14, 2025                          Dated:    July 14, 2025

3

**BOIES SCHILLER FLEXNER LLP**              **COOLEY LLP**

4

By:    /s/ Mark C. Mao                          By:    /s/ Eduardo E. Santacana

5

David Boies (admitted pro hac vice)          BENEDICT Y. HUR (SBN:  224018)

6

333 Main Street                              bhur@cooley.com
Armonk, NY 10504                             SIMONA AGNOLUCCI (SBN:  246943)

7

Tel.: (914) 749-8200                         sagnolucci@cooley.com
dboies@bsfllp.com                            EDUARDO E. SANTACANA (SBN:  281668)

8

                                             esantacana@cooley.com
Mark C. Mao, CA Bar No. 236165               ARGEMIRA FLOREZ (SBN: 331153)

9

Beko Reblitz-Richardson, CA Bar No.          aflorez@cooley.com
238027                                       HARRIS MATEEN (SBN 335593)

10

44 Montgomery St., 41st Floor                hmateen@cooley.com
San Francisco, CA 94104                      ISABELLA MCKINLEY CORBO (SBN 346226)

11

Tel.: (415) 293-6800                         icorbo@cooley.com
mmao@bsfllp.com                              3 Embarcadero Ctr., 20th Floor

12

brichardson@bsfllp.com                       San Francisco, CA 94111
                                             Telephone: (415) 693-2000

13

James Lee (admitted pro hac vice)

14

Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor

15

Miami, FL 33131                              *Counsel for Defendant Google*
Tel.: (305) 539-8400                         *LLC*

16

jlee@bsfllp.com
rbaeza@bsfllp.com

17

Alison L. Anderson, CA Bar No. 275334

18

Samantha Parrish, CA Bar No. 318681
M. Logan Wright, CA Bar No. 349004

19

2029 Century Park East, Suite 1520
Los Angeles, CA 90067

20

Tel.: (213) 995-5720
alanderson@bsfllp.com

21

sparrish@bsfllp.com

22

mwright@bsfllp.com

23

**SUSMAN GODFREY L.L.P.**

24

Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)

25

Steven M. Shepard (admitted pro hac vice)
Alexander P. Frawley (admitted pro hac

26

vice)
Ryan Sila (admitted pro hac vice)

27

One Manhattan West, 50th Floor

28

New York, NY 10001

Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com


*Counsel for Plaintiffs; additional counsel
listed in signature blocks below*

CASE NO. 3:20-cv-04688-RS
**PROPOSED JOINT JURY INSTRUCTIONS**

1

**ATTESTATION**

2       I, Mark Mao, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the

3    filing of this document has been obtained from each signatory hereto.

4

5

    DATED:  July 14, 2025                                    By:   */s/ Mark C. Mao*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28