COOLEY LLP
MICHAEL A. ATTANASIO (151529)
(mattanasio@cooley.com)
BENEDICT Y. HUR (224018)
(bhur@cooley.com)
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
EDUARDO E. SANTACANA (281668)
(esantacana@cooley.com)
ARGEMIRA FLÓREZ (331153)
(aflorez@cooley.com)
NAIARA TOKER (346145)
(ntoker@cooley.com)
HARRIS MATEEN (335593)
(hmateen@cooley.com)
THILINI CHANDRASEKERA (333672)
(tchandrasekera@cooley.com)
ISABELLA MCKINLEY CORBO (346226)
(icorbo@cooley.com)
CHELSEA HU (357212)
(chu@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA  94111-4004
Telephone:     (415) 693-2000
Facsimile:      (415) 693-2222

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANIBAL RODRIGUEZ, et al. individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:20-CV-04688-RS<br><br>**GOOGLE'S RESPONSE TO PLAINTIFFS' NOTICE OF FILING REGARDING GOOGLE ADVERTISING REVENUES (DKT. 582)**<br><br>Dept:     3, 17th Fl.<br>Judge:    Hon. Richard Seeborg<br><br>Date Action Filed: July 14, 2020<br>Trial Date: August 18, 2025 |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S RESPONSE TO PLS.' NOT. OF
FILING RE GOOGLE ADVERTISING REVENUES
3:20-CV-04688-RS

Google submits this response to "Plaintiffs' Notice of Filing Regarding Google Advertising Revenues," (Dkt. 582), which delineates the "list of exhibits Plaintiffs intend to offer that show Google's advertising-related revenue during the class period," and "replacement demonstratives" comparing Mr. Lasinski's disgorgement calculations to "Google's U.S. advertising revenues during the class period."

## I.    PX 418-PX 428

Google does not object to Plaintiffs' submission of PX 418–PX 428. These exhibits contain Google's financial data for the specific advertising product lines involved in this case (App Promo, AdMob, and Ad Manager) during the relevant period. Google does not oppose the jury seeing these statements, because they are the financial statements from which Mr. Lasinski derives his disgorgement figures.

## II.    PX 429

In contrast, Google objects to PX 429. This exhibit is Alphabet's 2024 Form 10-K—an SEC filing that reports Google's entire financial picture, including total revenues beyond the scope of this case. Plaintiffs purportedly seek to admit this because Mr. Lasinski cited Google's 10-K statements for 2016–2024 as "materials considered," in his expert reports. But any references to the 10-K in his reports are cursory and peripheral.

In his original report dated February 20, 2023, Mr. Lasinski cites the 10-K at page 7, paragraph 19, claiming advertising revenues (including Search and YouTube, neither of which are at issue) account for 79% of Google's total revenues. This comparison is irrelevant and unfairly prejudicial. Mr. Lasinski's original report also cites the 10-K at page 8, paragraphs 21–22, to support the banal propositions that Google earns revenue from ads on third-party websites and mobile apps and that it generates revenue by placing "the right ads at the right time." Finally, Mr. Lasinski's original report cites the 10-K, at page 30, paragraph 84, to define the term "traffic acquisition costs." In the same citation, Mr. Lasinski also cites the testimony of Google's 12(b)(6) witness, Belinda Langner.

As for his supplemental report dated April 25, 2025, Mr. Lasinski relied on Google's 10-K exclusively for Schedule SS 9.1, titled "U.S. Share of Total Alphabet Revenue." Schedule SS 9.1

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

GOOGLE'S RESPONSE TO PLS.' NOT. OF
FILING RE GOOGLE ADVERTISING REVENUES
3:20-CV-04688-RS

is cited only once, at page 4 note 13, to state: "my unjust enrichment calculations equate to less than approximately 0.1% of Google's total revenues during the same period." Introducing Google's total revenue figures is unfairly prejudicial for reasons discussed at the July 30 pretrial conference and under established authority. *See, e.g.*, *Guardian Life Ins. Co. of Am. v. Andraos*, 2009 WL 10674144, at *3 (C.D. Cal. Sept. 10, 2009) ("The Court finds that any slight probative value that evidence of Guardian's wealth and size may have to this action is outweighed by the danger that such evidence might unfairly prejudice the jury into finding for Andraos and ACM based in part on Guardian's status as a large, wealthy corporation.") (citing cases); *S.E.C. v. Goldstone*, 2016 WL 3654273, at *12 ("Courts have long held that a general reference to a party's financial condition is typically not admissible evidence.") (citations omitted); *see also Txo Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443 (1993) ("We agree . . . that the emphasis on the wealth of the wrongdoer increased the risk that the award may have been influenced by prejudice against large corporations[.]").

Indeed, PX 429 was not necessary for Mr. Lasinski to calculate unjust enrichment at all. He calculated that figure using data about advertising revenue from the verticals reflected in PX 418–428. The only purpose of the 10-K was to supply aggregate numbers that Mr. Lasinski then used to illustrate what fraction of Google's overall advertising business the disputed revenues represent (*i.e.*, the "0.3%" figure on Plaintiffs' revised demonstrative slide).

This kind of use does not satisfy Federal Rule of Evidence 401's basic relevance standard, let alone overcome Rule 403. Whether $1.7 billion is 0.3% of Google's total advertising revenue or 30% or 300% has no bearing on any fact the jury must decide—it neither proves nor disproves liability, damages, or any defense. At most, Plaintiffs might say it provides "context." But context is not an element of a claim, and not all context is helpful or permissible.

Moreover, allowing PX 429 even in redacted form would introduce collateral details that could distract or sidetrack the jury. Alphabet's Form 10-K is a lengthy document containing a wealth of information about Google's businesses, finances, risks, and operations. Even if Plaintiffs only highlight the revenue figures, the jury could be exposed to other portions of the 10-K (through questioning or if jurors review the exhibit) that have nothing to do with this case. This creates a

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

GOOGLE'S RESPONSE TO PLS.' NOT. OF
FILING RE GOOGLE ADVERTISING REVENUES
3:20-CV-04688-RS

real danger of confusion and undue consumption of time on issues far afield from the claims at trial. *See, e.g.*, *999 v. C.I.T. Corp.*, 776 F.2d 866, 872 (9th Cir. 1985) (noting that "evidence of the defendant's net worth" is "distracting and prejudicial" to the jury without prima facie case for punitive damages, and that improper introduction of evidence requires appellate court to "reverse the verdict for a new determination of compensatory damages untainted by the net worth evidence") (citations omitted).

In short, the probative value of PX 429 is negligible. Whatever slight relevance Google's overall advertising revenue might have as "background" is substantially outweighed by the risks of unfair prejudice, confusing the issues, and misleading the jury. Rule 403 tilts strongly against admission in these circumstances.

### III.   REVISED DEMONSTRATIVES

Google also objects to Plaintiffs' "Replacement Slides" at ECF 582, pgs. 4–6. With these, Plaintiffs replaced slides that previously juxtaposed unjust enrichment against "Alphabet's revenues" with ones comparing unjust enrichment to "Google's U.S. Advertising Revenues." But this tweak does not cure the problem.

The vast majority of those revenues come from products and services not at issue in this lawsuit. Plaintiffs' claims, and their unjust enrichment theory, relate only to advertising in the context of third-party mobile apps, specifically through App Campaigns (App Promo), Google Ad Manager, and AdMob. That is a subset of Google's overall advertising business. Including revenue streams from unrelated advertising channels would mislead the jury about the economic context of the case. It would suggest, without basis, that Google's liability should be evaluated in light of business segments that had nothing to do with the alleged wrongdoing,

The prejudice from this "total advertising" comparison is essentially the same in character as the "total revenue" comparison. The number remains high, ensuring the unjust enrichment figure looks minuscule by comparison. Whether the denominator is all of Alphabet or just all Google advertising, the comparison still invites the jury to weigh any damages against an unrelated bucket of revenue. That invitation is improper. Even limiting the universe to "advertising" does not eliminate the unfair prejudice, because the jury could still be misled into thinking that any damages

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

GOOGLE'S RESPONSE TO PLS.' NOT. OF
FILING RE GOOGLE ADVERTISING REVENUES
3:20-CV-04688-RS

award should be measured against Google's total ad earnings rather than the harm caused in the specific market at issue. *See Guardian Life Ins. Co. of Am.*, 2009 WL 10674144, at *3; *S.E.C. v. Goldstone*, 2016 WL 3654273, at *12; *Shenon v. N.Y. Life Ins. Co.*, 2020 WL 1317722, at * (C.D. Cal. Mar. 16, 2020) (noting that "presumption" that "evidence of a defendant's wealth can induce factfinders to abandon their objectivity and return a verdict based on passion and prejudice") (citation omitted).

If Plaintiffs believe some comparison is necessary for context, the only proper frame of reference would be the revenues from the specific app-related advertising verticals that are in question: App Campaigns (App Promo), Ad Manager, and AdMob. Those are the segments from which Plaintiffs claim Google unjustly profited. A demonstrative, for instance, could compare the unjust enrichment figure to Google's revenues in those three product categories—and only those categories—over the same period. Such a comparison would at least be grounded in the facts of the case and far less likely to inflame the jury. But Plaintiffs' current demonstratives go much further, sweeping in expansive unrelated revenue figures that dwarf the relevant market. That overreach renders them inadmissible.

## IV.    CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court exclude PX 429 (Alphabet's 2024 Form 10-K) in its entirety from evidence. Google further requests that the Court preclude Plaintiffs from presenting any demonstrative or argument that compares the claimed damages or unjust enrichment to Google's overall revenues—whether total corporate revenue or total advertising revenue—as such comparisons would be unfairly prejudicial under Rule 403.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

GOOGLE'S RESPONSE TO PLS.' NOT. OF
FILING RE GOOGLE ADVERTISING REVENUES
3:20-CV-04688-RS

| | |
|---|---|
| Dated: August 1, 2025 | Respectfully submitted, |
| | COOLEY LLP |
| | By: */s/ Eduardo E. Santacana* |
| | Michael A. Attanasio |
| | Benedict Y. Hur |
| | Simona Agnolucci |
| | Eduardo E. Santacana |
| | Argemira Flórez |
| | Harris Mateen |
| | Isabella McKinley Corbo |
| | Naiara Toker |
| | Thilini Chandrasekera |
| | Chelsea Hu |
| | |
| | *Attorneys for Defendant Google LLC* |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

GOOGLE'S RESPONSE TO PLS.' NOT. OF
FILING RE GOOGLE ADVERTISING REVENUES
3:20-CV-04688-RS