UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANIBAL RODRIGUEZ, et al.,

    Plaintiffs,

v.

GOOGLE LLC,

    Defendant.

Case No. 20-cv-04688-RS

**ORDER GRANTING IN PART, DENYING IN PART PARTIES'** *MOTIONS IN LIMINE*

## I. INTRODUCTION

Trial soon begins in this massive data privacy class action. Damages could range from hundreds of millions to billions of dollars. As to be expected in such a high-stakes case, both parties have filed numerous motions *in limine*, seeking guidance on various evidentiary issues. The motions are granted in part and denied in part, as explained further *infra*.

## II. MOTION TO BIFURCATE

Defendant moves to bifurcate trial such that discussion of Google's liability for, and the amount of, any punitive damages is heard only if the jury first finds liability and awards compensatory damages. In its view, "exposing the jury to Google's revenue figures when they are deliberating over liability issues might bias the jury against Google." Mot. at 4. Plaintiffs oppose bifurcation, highlighting that it would depart from the norm and contending that evidence related to punitive damages is intertwined with evidence related to liability issues such as the offensiveness of the alleged intrusions and whether Google acted with the requisite intent.

"The normal procedure is to try compensatory and punitive damage claims together with

appropriate instructions to make clear to the jury the difference in the clear and convincing evidence required for the award of punitive damages." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004). Whether to take a different tack is a discretionary decision informed by considerations of "convenience, to avoid prejudice, or to expedite and economize[.]" Fed. R. Civ. P. 42(b).

This case is complex, and the jury already will be weighing several damages questions if it finds liability. The compensatory damages amount is hotly disputed, given Plaintiffs' expert's "conservative" estimate of roughly $500 million, the many critiques Defendant has with the variables that result in that total, and Plaintiffs' apparent plans to seek some figure higher than their expert's floor. The jury will also be invited to provide an advisory verdict on the question of disgorgement as a remedy for the allegedly unlawful use of Plaintiffs' data; as explained further *infra*, evidence relevant to that question is more limited in scope than the evidence relevant to the punitive damages question, given that the former concerns the money Defendant earned from the alleged conduct, whereas the latter concerns Defendant's ability to pay punitive damages if the jury deigns to award them. On top of all that, the jury may also be weighing nominal damages for various hard-to-measure harms, such as lost peace of mind, depleted battery power, and the violation of privacy.

Considering the extent of damages inquiries already presented to the jury, the inconvenience raised by burdening them with yet more calculations, and the prejudice risked by introducing evidence of Google's total worth, Defendant's request to bifurcate is granted with respect to the amount of punitive damages, if any, to be awarded. Other courts have followed a similar route. *Lopez v. San Saba Vineyards, Inc.*, No. 22-cv-02652-VKD, 2023 WL 4410507, at *3 (N.D. Cal. July 7, 2023) ("If, in the first phase of trial, the jury finds in favor of [Plaintiffs] on liability issues and finds that [they are] entitled to punitive damages, trial will immediately proceed to a second phase in which the same jury will consider the amount of punitive damages to award."). As a result, evidence of Google's total worth will be excluded from the initial phase of trial. That said, the initial phase *will* feature evidence as to whether punitive damages may be

warranted, as well as the more limited scope evidence (needed for the disgorgement inquiry) of Google's profits from the conduct at issue. Plaintiffs' opposition focuses largely on their interest in introducing certain evidence; they do not present compelling reasons why the jury needs to decide the amount of punitive damages at the same time it decides everything else. Their specific evidentiary concerns are better addressed in particular motions *in limine* discussed *infra*.

### III. PLAINTIFFS' MOTIONS IN LIMINE

#### 1. Exclude Evidence and Argument About Counsel Compensation

Plaintiffs' first motion *in limine* seeks to exclude evidence or argument pertaining to counsel compensation, including the possibility that counsel receives a cut of the damages. Google presents no opposition. Such evidence and arguments are therefore excluded.

#### 2. Exclude Argument that Litigation Is Lawyer-Driven

Perhaps related to their first, Plaintiffs' second motion *in limine* requests that Google be barred from characterizing the litigation as lawyer-driven. Google agrees not to use that phrase but otherwise opposes the motion as overbroad; its concerns are better addressed with respect to Plaintiffs' third motion *in limine*.

#### 3. Exclude Evidence and Argument about Size, Profitability, or Type of Work by Counsel

Plaintiffs next move to preclude Google from presenting arguments about the size, profitability, and work of their counsel's firms. Google does not oppose the motion, but objects inasmuch as Plaintiffs seek to block it from discussing the circumstances that led to the initiation of this litigation, including how Plaintiffs learned about the alleged harms and launched the case.

The intricacies of how this litigation evolved are not important to the jury; what matters is the evidence relevant to disputed, material issues of fact. Such evidence, however, may include Plaintiffs' experiences, including about their discovery of the harm they necessarily allege. *See, e.g.*, *Montera v. Premier Nutrition Corp.*, No. 16-cv-6980-RS, 2022 WL 1465044, at *1 (N.D. Cal. May 9, 2022) (where defendant agreed "to not put in evidence or argument . . . that this case is ''lawyer-driven' litigation," defendant was not barred from asking plaintiff "how she became

involved in this case and whether she had been dissatisfied with the [at-issue] product before learning of the case in an attorney advertisement"). Given the limited relevance of firm finances, Google would do well to steer clear of examining Plaintiffs' counsel's role in the case or its general business model, size, or profitability. Any further objections may be raised in due course.

### 4. Exclude Evidence and Argument About Former Plaintiffs Who Voluntarily Dismissed Their Claims

Plaintiffs move *in limine* to preclude Google from offering evidence or argument "pertaining to former plaintiffs who voluntarily dismissed their claims." Five plaintiffs withdrew their claims over three years ago, but the sixth, Sal Cataldo, moved for dismissal only one month before trial—after having already been deposed.[1] Plaintiffs say individual decisions by former or withdrawing members are irrelevant to class-wide claims. Even if their testimony is relevant, Plaintiffs argue, it is inadmissible hearsay and far more prejudicial than probative. Defendant focuses its opposition on Cataldo, stating that it does not seek to offer evidence pertaining to any former Plaintiffs who withdrew their claims before being deposed.

Whether evidence and argument about Cataldo is admissible in this case will be determined in the order addressing his pending motion to dismiss. As for the other plaintiffs who voluntarily dismissed claims, in light of Google's non-opposition to their exclusion, the motion is granted.

### 5. Exclude Evidence and Argument About Plaintiffs' Complaint and Case's Procedural History

Plaintiffs' fifth motion *in limine* seeks to preclude Google from introducing the prior complaints, motions, other docket entries, and "all testimony and argument about what Plaintiffs alleged before trial." Mot. at 15. Plaintiffs contend that their earlier claims, defenses, and any associated failures are irrelevant to the instant dispute and, at any rate, too prejudicial.

Defendant rebuts this argument by explaining the extent to which numerous courts have

---

[1] Cataldo's motion to dismiss his claims is presently pending. To expedite its resolution, Defendant shall file a responsive brief by August 8, and the matter will be taken under consideration at that time.

held that prior averments in a complaint are admissible as statements once seriously made by an authorized agent. *Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996) (internal citation omitted). Defendants may use prior pleadings "as both non-binding evidentiary admissions and as impeachment" because counterarguments or explanations go to weight, not admissibility. *Hassebrock v. Air & Liquid Sys. Corp.*, No. 14-cv-1835-RSM, 2016 WL 4496917, at *6 (W.D. Wash. 2016); *see also Schuh v. Oil Well Supply Co.*, 50 Cal. App. 588, 590 (1920) ("[W]here a party is a witness, pleadings that have been superseded . . . are available as admissions, and for use on cross-examination for purposes of impeachment.").

To be sure, focusing on the evolution of Plaintiffs' case is hardly a good use of public court resources, and Google is expected not to raise prior asserted legal claims—only factual allegations relevant to and probative of the disputes at issue.

### 6. Exclude Argument Characterizing the CDAFA's Purpose as Anti-Hacking

Plaintiffs' sixth motion *in limine* urges the court to rule that Google must not characterize the CDAFA as an "anti-hacking" statute, either through argument or evidence about the legislative history, its supposed purpose, or any other characterizations. Google has framed the statute as anti-hacking throughout this litigation, and Plaintiffs contend such framing is irrelevant and misleading. The statute does not use the term anti-hacking and prohibits more than just hacking by its plain language and as shown by precedent. Google replies that plenty of courts have recognized the statute's anti-hacking aspects. *See, e.g.*, *In re Zoom Video Commc'ns. Privacy Litig.*, 525 F. Supp. 3d 1017, 1043 (N.D. Cal. 2021) ("CDAFA is an anti-hacking statute[.]").

Defendant must focus on the elements of the claims and affirmative defenses, not the genesis of the statute. Characterizing the law as "anti-hacking" is precluded.

### 7. Exclude Evidence that App Developers Consented to Sharing Data with Google or the Argument that Developer-Google Agreements Could Establish Consent or Permission for Plaintiffs' Claims

Plaintiffs next move *in limine* to exclude any argument or evidence that Google secured the requisite permission or consent based on agreements that it made with third-party apps. Google previously argued, unsuccessfully, that "the most correct lens to view this claim through is one

ORDER RE: MOTIONS *IN LIMINE*
CASE NO. 20-cv-04688-RS

5

that focuses on Google's permission vis-à-vis the app developers, not the end users." Dkt. No. 381 at 25; *see also id.* ("Google never exceeded the scope of its permission to use the data gathered by app developers and sent to Google via GA for Firebase."). According to Plaintiffs, such argument lacks support and is in tension with related precedents about third-party authorization to use someone else's data. As the summary judgment order observed, "whether a third party granted permission is irrelevant. Instead, what matters is whether Google knew or should have known that Plaintiffs revoked permission to use their data." *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1108 (N.D. Cal. 2025) ("Summary Judgment Order").

Google opposes the motion, even as it recognizes that it may not argue the permission it got from app developers is sufficient under CDAFA; the court rejected that argument, as noted above. Google maintains, however, that it should be able to argue the following chain of consent: One of its policies notified users that (1) Google Analytics exists, (2) Google's business partners use it, and (3) through that program, Google can collect information about a third-party app user's app activity. Other Google policies—regarding their agreements with business partners like app developers—required developers using GA4F to disclose as much to users. As a result, in Defendant's logic, it would be objectively unreasonable to think that toggling (s)WAA to the off position in a Google Account would override the third-party app disclosure about the app's business with Google Analytics.[2]

Defendant may introduce evidence that it required app developers to reveal their use of Google Analytics in attempting to rebut the argument that it acted in a highly offensive manner but not as part of the chain of consent. It has conceded that no third-party app disclosure to users discussed WAA or (s)WAA, so such disclosures necessarily do not speak to whether Plaintiffs

---

[2] This motion overlaps with Google tenth motion *in limine*, which seeks to exclude evidence and arguments about third-party app compliance with Google's GA4F terms of service; it also touches on Google's proposed jury instruction that would have the jury assume all third-party apps complied with the GA4F terms of service by disclosing their use of the product to Plaintiffs.

consented to WAA-off or (s)WAA-off collection by agreeing to them. Relatedly, Plaintiffs may not argue that Google failed to obtain the necessary consent by pointing to the dearth of evidence about third-party app compliance with Google's policies. The consent question in this case revolves around the relationship between Google and Plaintiffs, not the apps and Plaintiffs nor Google and the apps. Were Google's disclosures to *Plaintiffs* unclear such that it was objectively reasonable for Plaintiffs to expect that turning WAA or (s)WAA off would stop Google from collecting their data through third-party apps that used Google Analytics and/or GA4F? The jury will decide.

### 8. Exclude Evidence that Plaintiffs' Continued Using Google Products and Services After Filing the Suit, or Alternatively, The Argument that Such Use is Relevant to Elements of Harm, Consent, and Permission

Plaintiffs' final motion *in limine* seeks to preclude evidence and argument regarding the extent (if any) to which Plaintiffs continue to use apps that contain the at-issue SDKs. Google argues such evidence goes to the degree of harm and the seriousness of the alleged intrusions; Plaintiffs stated in depositions that they made no meaningful changes in their behavior after learning of the alleged privacy violations. Continued use may also go to their credibility.

Evidence of Plaintiffs' continued use does not mean they consent, but it is relevant to other issues, such as the degree of offensiveness, and therefore amounts to admissible deposition testimony. Standard cross-examination will inform whatever weight this testimony warrants.

## IV. DEFENDANT'S MOTIONS IN LIMINE

### 1. Exclude Testimony of Blake Lemoine

In its first motion *in limine*, Google argues that Plaintiffs must not be permitted to call former Google employee Blake Lemoine as a witness. Lemoine is a former senior Google employee who worked on artificial intelligence products and was later placed on leave when he tried to hire a lawyer for a chatbot that he believed to be sentient. After he blogged about the prospect of being fired for his AI "ethics" work and leaked information to major news outlets, Google terminated him in July 2022.

Plaintiffs apparently intend to present to the jury portions of Lemoine's deposition

testimony from a different case.  In the instant matter, discovery closed in October 2022, but Lemoine contacted Plaintiffs' counsel in August 2023 about a separate lawsuit they are litigating against Google concerning its Chrome web browser's "Incognito" mode.  Counsel subsequently took him on as a client and deposed him in that matter, *Brown v. Google, LLC*, Case No.: 4:20-cv-3664-YGR (N.D. Cal 2021), which concerns allegations against Defendant distinct from those at issue in the instant case.  During deposition redirect, Plaintiffs' counsel elicited testimony from Lemoine about WAA-off data, then said, "back to the topic at hand" and returned the line of questioning to topics more relevant to that dispute.  One month later, counsel sought to reopen discovery in this case for Lemoine's documents, a request which Google refused.  In February 2024, Plaintiffs served a joint letter brief about compelling Lemoine's deposition but then abandoned the effort and never brought it up again.  It was only in the past several weeks that Plaintiffs revealed an intent to present Lemoine's deposition testimony from the *Brown* case during the upcoming trial.

      According to Google, this is an ambush.  It urges the testimony's exclusion on several grounds.  First, Defendant contends that his testimony came so belatedly that it is excluded under Rule 37(c)(1).  "A party cannot ignore discovery deadlines for a year, make a single improper and abandoned attempt to cure and then, due to its own lack of diligence, seek to read testimony they manufactured in another lawsuit into trial here."  Mot. at 4.  Second, Google argues his testimony is irrelevant as it concerns different products and users than those presently at issue.  Third, Defendant contends the testimony is inadmissible hearsay and that the relevant rule of evidence permitting its introduction is not satisfied here, where Google lacked the requisite "similar motive" to develop the testimony.  Finally, Defendant says that, on balance, the risk of unfair prejudice dwarfs any conceivable probative value of Lemoine's testimony.

      Plaintiffs respond that their late disclosure was substantially justified or harmless such that the witness's evidence is admissible under Rule 37(c)(1).  They had no choice but to disclose him late, they say, since he reached out after discovery closed.  His testimony is relevant because it concerns a profitable use of the data and the revelation that he disclosed his concerns to Google's top brass.  Moreover, Rule 804(b)(1) is satisfied because Plaintiffs believe that Google had a

similar motive to cross-examine Lemoine in *Brown* as they would have had here. Finally, Plaintiffs reject the idea that the testimony could prejudice Google, or at any rate, that the prejudice would outweigh the probative value of his insights.

This motion is granted: Lemoine's deposition transcript from another case, about completely distinct technologies, is inadmissible hearsay that fails to qualify for the former testimony exception under Rule 804(b)(1). Counsel in *Brown*, a distinct group from the one litigating the case here, plainly did not have a similar motive to develop his testimony. That case was about browsing in Incognito mode, not (s)WAA-off data tracking through third-party apps. Moreover, the fact that Plaintiffs did not more deliberately seek his deposition in this case—i.e., belatedly starting but then dropping a bid to compel it—hardly suggests that his testimony is particularly probative.

### 2. Exclude Plaintiffs' Introduction of Evidence and Arguments re: Disgorgement

Google's second motion *in limine* aims to preclude Plaintiffs from arguing to the jury that Google should be disgorged of the profits that resulted from the allegedly unjust enrichment it achieved via use of (s)WAA-off data. Disgorgement is an equitable remedy in the context of this case, Google contends, because the claims concern particular property (personal data) and the proceeds flowing therefrom. Where such remedy determinations are equitable, they remain "within the sound discretion of the trial court and, therefore, outside the province of the jury." *GSI Tech., Inc. v. United Memories, Inc.*, 721 F. App'x 591, 594 (9th Cir. 2017); *see also SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993) (finding that disgorgement of profits is an equitable issue to which no right to jury attaches).

Plaintiffs respond that evidence and argument about disgorgement reduce to ones about Google's unjust enrichment, which is relevant to whether its underlying conduct was highly offensive, an element of the privacy tort claims, and also whether Google caused damage or loss in violation of CDAFA. They highlight cases and prior orders in the instant litigation recognizing how proof that a defendant profited from a plaintiff's data can satisfy the damage or loss element of CDAFA and privacy tort claims. *See* Summary Judgment Order at 1110 ("Plaintiffs have a

stake in the value of their data" and "a reasonable juror could find that Plaintiffs suffered damage or loss because Google profited from the misappropriation of their data."). Moreover, Plaintiffs argue, the jury in this case *can* decide the disgorgement question because it is a legal remedy.

Whether a remedy like disgorgement "is legal or equitable depends on the basis for [the plaintiff's] claim and the nature of the underlying remedies sought." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (internal quotation marks and citation omitted). In that case, the Supreme Court confronted a federal statute that authorizes civil actions "to enjoin" any act violating the terms of an ERISA plan or "to obtain other appropriate equitable relief." *Id.* at 209 (citing 29 U.S.C. § 1132(a)(3)). Because the petitioners there sought "to impose personal liability on respondents for a contractual obligation to pay money," the Court concluded that the requested restitution was legal in nature and thus not available as an equitable remedy contemplated by the statute.

Here, by contrast, Plaintiffs contend that "money or property identified as belonging in good conscience to [themselves] could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213. The *Great-West* Court suggested such cases are the prototypical example of equitable, not legal relief—"for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214.

Given the Supreme Court's guidance on restitution, the disgorgement Plaintiffs seek appears to be an equitable, not a legal, remedy. They intend to argue that particular funds Google has—i.e., those it generates through use of their data in programs like App Promo, Admob, and Ad Manager—are traceable to the particular data that Defendant allegedly collected and used without Plaintiffs' permission or consent. This relief is quite different from that which the *Great-West* court deemed legal, where the funds petitioners sought were not in respondents' possession, and the nature of the claim was that "petitioners are contractually entitled to some funds for benefits that they conferred." *Id.* at 715. Moreover, the only statutory claim in this case permits "compensatory damages and injunctive relief or other equitable relief," *see* Cal. Penal Code §502(e)(1), suggesting that the *only* way disgorgement could be granted on that claim would be as

1    equitable relief. California law generally allows "disgorgement of profits resulting from unjust

2    enrichment," and courts have characterized such claims as necessarily equitable in nature. *See In

3    re Ford Tailgate Litig.*, No. 11-cv-2953-RS, 2014 WL 3899545, at *3 (N.D. Cal. Aug. 8, 2014);

4    *City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 478 (2022) (describing unjust

5    enrichment as an equitable doctrine). At bottom, "Plaintiffs here are not seeking 'some funds,' but

6    rather the funds" Google allegedly acquired on the basis of their personal data. *See Sivolella v.

7    AXA Equitable Funds Mgmt.*, LLC, No. 11-cv-4194-PGS, 2013 WL 4096239, at *5 (D.N.J. July 3,

8    2013) (finding disgorgement equitable in nature) (internal citation to *Great-West* omitted).

9          Because it appears that disgorgement is, in this case, an equitable remedy, the ultimate

10   determination as to any amount awarded rests with the court. That said, Plaintiffs present

11   compelling arguments to suggest California law contemplates disgorgement from privacy

12   violations as a jury issue. *See* CACI No. 1821 (damages for unauthorized use of name or

13   likeness), Cal. Civ. Code § 3344(a). Rule 39(c)(1) provides courts the discretionary authority to

14   seek an advisory jury, and here, there appears some prospect that the disgorgement requested

15   could ultimately be deemed legal in nature. Were that the case, and no advisory jury verdict were

16   obtained as a backstop, the decision to treat disgorgement as an equitable consideration raises the

17   possibility of a necessary re-trial given the Seventh Amendment's provision for the right to a jury.

18   "The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as

     provided by a federal statute—is preserved to the parties inviolate." Fed. R. Civ. P. 38(a).

19   Moreover, Plaintiffs highlight that unjustly profiting from Plaintiffs' data can amount to damage

20   or loss under the CDAFA, *see In re Facebook, Inc. Internet Tracking Lit.*, 956 F.3d 589, 599–601

21   (9th Cir. 2020), which suggests that evidence pertinent to the disgorgement inquiry overlaps with

22   elements that Plaintiffs must prove.

23         Thus, although the decision whether to award any disgorgement remedies is equitable in

24   this particular matter, the jury will be invited to consider the remedy in an advisory capacity, as

25   other courts have done in similar contexts. *See, e.g.*, *Cisco Sys. Inc. v. Arista Networks, Inc.*, No.

26   14-cv-05344-BLF, 2016 WL 11752975, at *7, n.2 (N.D. Cal. Nov. 16, 2016). Google argues that

27   to do so risks undue prejudice based on the concern that Plaintiff will anchor the jury by

28

ORDER RE: MOTIONS *IN LIMINE*
CASE NO. 20-cv-04688-RS

presenting the disgorgement award theory ($1.5 billion to $2.5 billion) and then offering a "more reasonable" lower actual damages figure (in the realm of $500 million). This argument is unpersuasive considering that Plaintiffs apparently seek far more than the actual damages figure their expert provided as a conservative floor. Moreover, and as discussed further with respect to Google's twelfth motion *in limine*, the evidence admissible to prove disgorgement will not include Alphabet's financials and is instead limited to those for which Googles raises no objection.

### 3. Exclude Introduction of or Reference to Evidence about Leaks or Misuse of Unrelated Data or Other Litigation and Investigations into Google Privacy Practices

In their third motion *in limine*, Google combines two discrete requests. The first is denied, as explained in the prior order addressing its *Daubert* motion as to Plaintiffs' expert Bruce Schneier. At the time, Google claimed prejudice would result if Schneier testified about data leaks or misuse of data. Because this evidence will come as contextual and background information, however, the prior order followed in the footsteps of the *Brown* court and denied Google's bid to preclude such testimony at trial. In this motion, as Plaintiffs appropriately highlight, Google essentially reprises its concerns about Schneier's testimony, which fare no better at this juncture.

Google's other contention is that evidence of and from other matters against Google, spread across 12 exhibits from Plaintiffs' list, ought to be excluded. Plaintiffs respond that 10 of them do not actually reference other litigation or investigations; they are internal documents, just like many of the others Plaintiffs aim to admit at trial. Those documents are addressed in the order on Defendant's seventh motion *in limine*, *infra*.

The other two documents identified in this motion are barred. Press releases by the states of Arizona and Texas refer to lawsuits filed against Google over its alleged tracking of location data even when users turned off location history. Because those suits necessarily concerned a different privacy control, they are not particularly probative and only scarcely relevant. Moreover, they contain precise dollar amounts for settlements, which could unduly prejudice the jury.

### 4. Preclude Introduction and Discussion of Any Studies or Surveys on Non-U.S. Consumers About Their Understanding of Certain Google Privacy Controls

Google next moves *in limine* to preclude Plaintiffs from revealing to the jury some of its own research into non-U.S. consumers and their understanding of Google privacy controls and the related disclosures. It appears that Schneier planned to reference these studies when testifying about consumer expectation, prior to being precluded from testifying about the topic beyond his expertise. Google says the studies are not relevant to this case because they concern non-U.S. consumers who were specifically selected for high privacy consciousness. Moreover, even if the studies are relevant, Google maintains that the risk of unfair prejudice and confusing the issues substantially outweighs their probative value.

The motion is denied. Google's internal findings about what European consumers understand about WAA and (s)WAA toggles, and the fact that it sent those findings to the person in charge of the (s)WAA product in the United States, amount to evidence that is obviously relevant and highly probative in this case—which concerns Google's use of (s)WAA-off U.S. user data. The evidence could inform the jury's determination as to whether Plaintiffs' expectation of privacy was reasonable or whether Google obtained the necessary consent or permission, not to mention whether Google's conduct was knowing or could be considered highly offensive. Moreover, any doubts raised by their non-U.S. based nature may be explored via cross-examination; the jury may yet assign these studies little to no value as it sees fit. At any rate, the risk of prejudice here is not particularly high—Google identifies no special difference between Europeans and Americans that would skew the results—and the probative value of this evidence is not substantially outweighed by whatever dangers do exist. That Schneier may not opine on consumer expectations because he is not an expert in that field does not mean that Google's own internal studies about consumer understandings are out of bounds, so long as they are introduced in accord with the Federal Rules.

**5. Exclude Documents and Arguments About Google CEO's Statements About General Privacy Practices, The Collection of Data on the Web, Google's "Location History" Setting, Settings that Control Data Storage While WAA Is On, and Other Products Unrelated to Google Analytics for Firebase**

Google's fifth motion *in limine* is a grab-bag seeking to block over 30 exhibits that it

ORDER RE: MOTIONS *IN LIMINE*
CASE NO. 20-cv-04688-RS

13

claims fall into five categories. Plaintiffs respond by lumping them into four groups that better suit their own framing of the case. Because neither categorization system quite fits the evidence, the motion is granted in part and denied without prejudice in part as follows.

The motion is granted as to a swath of exhibits that concern Google's collection of users location history data, which is not relevant to the (s)WAA-off conduct here in a material way. These excluded exhibits comprise PX 195, PX 198–202, PX 204, PX 207, PX 208, PX 210, PX 215, PX 221, PX 226, and PX 233. Also excluded are PX 263 and PX 269, which concern distinct technology like Voice & Audio Activity and YouTube. The motion is also granted with respect to most of PX 153, as it is overly long and far afield, concerning collection of data through the web, not apps. That said, to the extent any evidence therein speaks directly to whether Google learned that its WAA and (s)WAA disclosures suggested something to its users that was untrue, it may be admissible. The same holds true for PX 152.

The motion is denied as to exhibits consisting of statements Google's CEO made about its general privacy practices; such evidence is relevant and not sufficiently prejudicial to exclude under Rule 403. *See* PX 6, PX 28, PX 132, PX 134, PX 217, PX 249 and 250. The motion is also denied with respect to evidence concerning settings that control data storage when WAA is turned on; such evidence may yet be admissible, given that WAA can be turned on and (s)WAA can still be turned off. *See* PX 133, PX 154, PX 236, PX 243, PX 244, PX273, and PX 277.

### 6. Preclude Plaintiffs from Calling Chris Palmer and Kent Walker for Impeachment Testimony

Google next moves *in limine* to preclude Plaintiffs from calling Chris Palmer or Kent Walker to testify at trial. Palmer is an engineer who worked on the Google Chrome web browser's "Incognito Mode," which formed the basis of the *Brown* litigation that Plaintiffs' counsel litigated alongside the instant action. Walker is Google's Chief Legal Officer, who directed in 2008 that Google's internal chat history should be turned off by default—a directive that resulted in sanctions against Google for failure to preserve certain messages. *See In re Google Play Store Antitrust Lit.,* No. 3:21-md-2981-JD (N.D. Cal.) at Dkt. No. 469. Plaintiffs did

not include either witness in their pretrial disclosures, so under Rule 25(a)(3)(A), neither Palmer nor Walker is eligible to testify unless they testify "solely for impeachment."  Google asserts that any evidence Palmer and Walker could provide would either be irrelevant to this case or, paradoxically, would have "independent relevancy to the merits of the case" such that "the evidence is not solely for impeachment" and thus inadmissible given Plaintiffs' failure timely to disclose.  *See Clear-View Techs., Inc. v. Rasnick*, No. 13-cv-2744-BLF, 2015 WL 3509384, at *7 (N.D. Cal. 2015) (cleaned up).

Plaintiffs respond that both witnesses could provide testimony responsive to an argument Google's expert Donna Hoffman espoused in her report: the notion that Google has a "culture of constant improvement and evolution."  *See* Dkt. 473-2 ¶ 19.  Likening the situation to opening the door, Plaintiffs say they reserve the right to call Walker or Palmer and respond to any attempts by Google to assert a character of encouraging employees to voice privacy concerns.  As a middle ground, Plaintiffs represent that they will not use Walker or Palmer if Google refrains from arguing that its general culture is committed to addressing user privacy concerns.

The motion is granted.[3]  Plaintiffs seek to use these witnesses, not to impeach Hoffman, but "as a guise to present substantive evidence to the jury that would be otherwise inadmissible." *Diaz v. Pima Cnty.*, 34 F. App'x 309, 311 (9th Cir. 2002) (quoting *United States v. Gilbert*, 57 F.3d 709, 711 (9th Cir. 1995) (per curiam)).  In particular, it appears they want to assert the second element of their intrusion upon seclusion claim—that Google acted intentionally—by introducing otherwise inadmissible evidence about Google's general privacy-related conduct, stretching back well beyond the class period and enveloping far more products and conduct than the (s)WAA switch, GA4F, GMA, and SDKs at issue here.  Having failed to disclose either witness as required by the Federal Rules, Plaintiffs cannot now, at the eleventh hour, smuggle them in as so-called impeachment witnesses.  Indeed, Plaintiffs repeatedly claim they have the right to use the

---

[3] Defendant's motion to quash the subpoena seeking Walker's testimony, as well as the related motion to expedite the hearing on that motion, are effectively granted given that this order precludes his testimony.  To be clear, he will not testify at this trial.

witnesses for impeachment "or to otherwise respond," *e.g.*, Opp. Br. at 2, seeming to acknowledge that this testimony is not necessarily confinable to impeachment alone, as it would need to be for admission into evidence.

### 7. Preclude Mention of Google's Incognito Mode

In this follow-on motion to the one just described, Google seeks to exclude eleven exhibits on Plaintiffs' proposed list for trial. Broadly speaking, Google characterizes these exhibits as "re-litigating the *Brown v. Google* incognito case in this courtroom." Mot. at 3. Ten of the exhibits were produced in discovery of that case, not this one, and they all pertain to Incognito Mode, not data tracking of (s)WAA-off Google users. Plaintiffs respond that the exhibits speak to Google's intent, motive, and absence of mistake, urging the court to deny the motion or at least defer ruling to see if these issues actually manifest at trial.

With respect to the ten exhibits Plaintiffs lifted from the docket of a distinct case, the motion is granted. If they speak to Google's intent or motives, they do so in the context of Incognito Mode, not (s)WAA or any of the other issues in this case.

As to the only exhibit at issue in this motion that Google *did* produce in this case, the motion is denied. PX-31 is relevant to Google's knowledge of its users' understanding about its data collection practices; it directly references the Pinecone studies, discussed *supra* with respect to Google's fourth motion *in limine*. Those studies, and what they say about what Google knew during the relevant time period, are admissible.

### 8. Exclude Discovery Meet-and-Confer Communications from Being Entered as Evidence

In its eighth motion *in limine*, Google moves to exclude meet-and-confer communications between the parties' counsel during discovery. Plaintiffs represent that the parties are negotiating on this motion *in limine* and request deferring any ruling. Good cause appearing, the motion is deferred until at least August 8. The parties are encouraged to resolve this dispute by stipulation.

### 9. Exclude Evidence and Arguments Relating to Plaintiffs' Emotional Distress

In its ninth and perhaps most ambiguous motion *in limine*, Google requests the court

"preclude Plaintiffs from introducing any evidence and argument regarding Plaintiffs' alleged emotional distress damages." Mot. at 3.  Without identifying any particular testimony or exhibits, Google complains that Plaintiffs are not pursuing a class-wide emotional distress damages model and never proffered a damages expert in that regard; as a result, introducing evidence of individualized harms would potentially mislead the jury and could prejudice Google, which would need to cross-examine on those issues based on a limited record and with scant advance notice.

The motion is denied without prejudice.  Its request to preclude "any evidence and argument" about a key component of the case is overbroad.  The operative complaint refers repeatedly to alleged emotional distress, and evidence of any distress would support Plaintiffs' burden on several elements of the claims, including but not limited to whether they were harmed and whether Google's actions are highly offensive.  Plaintiffs also seek nominal emotional distress damages.  Of course, trial will focus on common proof addressing common questions, and over-emphasis on the individual distress of any particular plaintiff would not be permitted.  However, to preclude "any" evidence of this sort would hamstring Plaintiffs' ability to present their case.

### 10. Exclude Evidence and Arguments Relating to Third-Party App Compliance with Google Analytics 4 Firebase's Terms of Service

Google moves to preclude any evidence and argument regarding third-party applications' compliance (or lack thereof) with Google's disclosures.  Google highlights the class certification order in this case, which states "sWAA disclosures and Google's Privacy Policy are the only relevant materials for analysis, and are the same for all class members." *Rodriguez*, 2024 WL 38302, at *8 (N.D. Cal. 2024) (internal quotation marks and citation omitted).

As Defendant has explained previously, Google required app developers who use its GA4F SDK to disclose that it stores and processes the apps' analysis of their users' activities.  *See, e.g.*, Dkt. No. 383-2 (MSJ App'x. A-2, Sample of Historic GA4F Terms of Service) at 40.  Defendant appears to fear that Plaintiffs will contend to the jury that third-party app disclosures to users about this practice were inadequate, something not squarely at issue in this case.

Plaintiffs respond that they are not going to make the policies a cornerstone of their case,

highlighting the fact that they have not included any app-specific privacy policies on their exhibit list. "No party should compare one app's privacy policy with another app's privacy policy and make arguments about the differences . . . because the parties agree that there are no app-specific privacy policies that relate to Google's privacy controls." Opp. Br. at 2. That said, Plaintiffs reserve the right to highlight the extent to which Google never required third-party apps to "explicitly notify" users about the "particular conduct" at issue—in this instance, Google's collection and use of (s)WAA-off data. *See Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) ("For consent to be actual, the disclosures must 'explicitly notify' users of the conduct at issue." (citation omitted)); *see also* Summary Judgment Order at 1107 (holding that "consent is only effective if directed to the particular conduct, or to substantially the same conduct").

As discussed with respect to Plaintiffs' seventh motion *in limine*, this case is about the relationship between Google and Plaintiffs. Third-party app disclosures to Plaintiffs, and Google's disclosures to third-party apps, do not speak to whether Plaintiffs' privacy expectations with respect to (s)WAA-off data collection are reasonable, nor the scope of their consent. Thus, evidence that Google did or did not ensure third-party app compliance with its own requirement to get user consent for its GA4F data collection is relevant only inasmuch as Plaintiffs seek to rebut Google's argument that it did not act in a highly offensive manner.

**11. Exclude Evidence and Arguments Relating to Sensitive Apps and Data**

Google next asks the court to prohibit Plaintiffs from introducing evidence or argument about third-party apps that are not listed in the operative complaint or about "sensitive apps (such as healthcare, health insurance, and finance apps) that are not representative of the third-party apps used by all class members." Mot. at 3. It appears to fear, based on portions of Schneier's expert report (discussing, *inter alia*, abortion rights), that Plaintiffs will discuss "apps they never even used" or "plac[e] undue emphasis on certain apps because they wish to inflame the jury." Mot. at 5. "If Plaintiffs spend the whole trial using apps like the New York Times app and the Nike app as examples, so be it. If they make a healthcare app a central feature of their case, they will have deviated from the logic of the Court's certification Order, and from basic fairness." *Id.* Crucial to

the claimed unfairness is its view that the discovery in this case failed to provide any evidence "that *any* sensitive data was collected," such as those involving location data at abortion clinics.

Plaintiffs maintain that discovery revealed the extent to which Google's SDKs are imbedded in many of the most popular medical, religious, financial, and social media third-party apps. Their expert determined that, through GA4F, Google automatically collects information about in-app purchases, when apps are installed, the start of each app activity session, and users' engagement with the app. In Plaintiffs' view, such interactions *could* reveal a person's political leanings, sexual orientation, reproductive decisions, spiritual beliefs, and medical information.

The motion is denied without prejudice. Plaintiffs should be cognizant of the need not to make this case about a particular app. The relevant question is whether class members who shared common conduct had an objective, reasonable expectation of privacy in their third-party app data based on Google's representations to them about the (s)WAA switch. Evidence about any one app, and how sensitive the data in that app would be, is definitionally not classwide. The common conduct is that the class members had (s)WAA switched off and that Google nevertheless collected data via its SDKs embedded in third-party apps. It would be inappropriate (and wasteful) to detour trial into the brambles about any one plaintiff's third-party app activity. This is especially true if Plaintiffs aim to focus on an app they have no direct evidence anyone in the class used. That said, Plaintiffs may offer limited examples of the type of data that Google's SDKs collect in striving to prove they had an objectively reasonable privacy expectation or that the activity was highly offensive and/or harmful.

**12. Exclude Evidence and Arguments Relating to Defendant's Total Revenue**

Google finally moves *in limine* to preclude the introduction of PX-429, which is its parent company Alphabet Inc.'s 10-K 2024, and to preclude evidence or argument about Alphabet and Google's total revenues.

First, Google contends none of Plaintiffs' models for disgorgement, actual damages, or punitive damages require evidence of Alphabet's total revenue, so it is irrelevant to the fact issues in dispute. Introducing evidence of its parent company's assets might unduly prejudice the jury

against Google based on hostility toward big technology companies, especially since Plaintiffs voluntarily dismissed allegations against Alphabet in 2020. Plaintiffs sidestep these arguments in their opposition brief, focusing instead on Google's revenues and only arguing in the introductory paragraph that, because they have arguments about Google's revenues, "the total revenue that Alphabet regularly generates" is an important touchstone for "the jury to understand how the damages Plaintiffs seek are reasonable." Opp. Br. at 1.

Google's motion is granted as to PX-429. Plaintiffs provide no compelling response to the well-reasoned arguments Google makes about not including the Alphabet 10-K. The relevant universe of disgorgement evidence is limited to PX 418 through PX 428, which contain Google's financial data for the specific advertising product lines involved in this case (i.e., App Promo, AdMob, and Ad Manager). Google also objects to Plaintiffs' demonstrative exhibits, which show the requested disgorgement figures as a small sliver of Google's overall U.S. ad revenue. Google is correct that the appropriate comparison juxtaposes the alleged unjust enrichment against Google's total U.S. ad revenue through App Promo, AdMob, and Ad Manager. Including other U.S. advertising revenue generated, such as through Youtube or Google's myriad other ventures, is unfairly prejudicial because it misidentifies the relevant comparison. In other words, because this case is limited to allegations about (s)WAA-off data collection and use, demonstratives inaptly referencing data collected through other channels are subject to exclusion.

## V. CONCLUSION

Taking into account the rulings in this order, the parties are ordered to provide updated jury instructions and jury verdict forms by Monday, August 11.

**IT IS SO ORDERED**.

Dated: August 6, 2025

RICHARD SEEBORG
Chief United States District Judge