# EXHIBIT A

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3
 4   ANIBAL RODRIGUEZ, et al.,
 5        Plaintiffs,
 6             vs.            Case No. 3:20-cv-04688-RS
 7   GOOGLE LLC,
 8        Defendant.
     _____
 9
10
11
12            ***ATTORNEYS' EYES ONLY***
13       VIDEO DEPOSITION OF MICHAEL J. LASINSKI
14              San Francisco, California
15              Thursday, June 29, 2023
16                     Volume 1
17
18
19
20
     STENOGRAPHICALLY REPORTED BY:
21   REBECCA L. ROMANO, RPR, CSR, CCR
     California CSR No. 12546
22   Nevada CCR No. 827
     Oregon CSR No. 20-0466
23   Washington CCR No. 3491
24   JOB NO. 5971107
25   PAGES 1 - 297
```

Page 1

```
 1   floor for actual damages.  And so that -- that           11:23:19

 2   would be a floor for actual damages, a floor for

 3   what that calculation would looks like.

 4        Q.   Have you tried to calculate actual --

 5   actual damages in the case, or just tried to             11:23:35

 6   calculate the floor of actual damages?

 7            MR. LEE:  Objection to form.

 8            THE DEPONENT:  I -- I think it's an

 9   appropriate calculation for actual damages.  I

10   think it could be higher.  But it's conservative.        11:23:53

11        Q.   (By Mr. Santacana)  You have said that

12   it's conservative many times already today, and you

13   have called it a floor multiple times.  So I'm just

14   trying to understand.

15            Was your task to calculate the floor, or        11:24:06

16   was your task to calculate the actual damages to

17   the actual class members?

18        A.   My task was to calculate the actual

19   damages to the actual class members.  I believe

20   I've done that in a conservative manner.                 11:24:19

21        Q.   What does that mean?  Did you get it

22   right or not?

23        A.   I do -- I do have it right, yes.

24        Q.   Then why do you say it's conservative?

25        A.   Because it's -- because at the end of the     11:24:33
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
1    day, it -- there's a potential for it to be higher.    11:24:37

2            But I believe -- but I believe, based on

3    the information that I have available to me,

4    that -- that it is the best estimate of what would

5    be appropriate in this case.                            11:24:48

6         Q.   All right.   Is there a potential that

7    it's a lot higher?

8            MR. LEE:   Objection.   Form.

9            THE DEPONENT:   Not that I'm aware of, no.

10        Q.   (By Mr. Santacana)  You're not concerned     11:24:59

11   that your actual damages opinion is grossly

12   undercompensating the class?

13        A.   I am not.

14        Q.   Why not?

15        A.   Because I think, based on the information    11:25:13

16   available to me, that this is an appropriate

17   conservative estimate.

18        Q.   I know that's what you think.  That's

19   your conclusion.

20            I want to know why that's your                11:25:20

21   conclusion.

22        A.   I -- I think I just answered.

23        Q.   No, you didn't.

24        A.   Okay.  Well, I think I did.

25        Q.   Why do you think it's appropriate?           11:25:28
```

ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | second. | 11:30:29 |
| 2 | You're aware that Google has records of | |
| 3 | when devices -- when users had WAA on and WAA off? | |
| 4 | A. Yes. | |
| 5 | Q. And for how long? | 11:30:38 |
| 6 | A. Yes. | |
| 7 | Q. So you could, for example, calculate | |
| 8 | number of sWAA-off months for each user, right? | |
| 9 | A. I did do that, yes. | |
| 10 | Q. You did do that. | 11:30:49 |
| 11 | So why didn't you pay them per sWAA-off | |
| 12 | month in your actual damages opinion? | |
| 13 | A. I mean, ultimately, I thought it was more | |
| 14 | appropriate and -- and conservative to do it -- to | |
| 15 | do a one-time calculation based on the information | 11:31:02 |
| 16 | that I had available to me. | |
| 17 | Q. Why was it more appropriate to do a | |
| 18 | one-time calculation? | |
| 19 | MR. LEE: Asked and answered. | |
| 20 | THE DEPONENT: Yeah. | 11:31:16 |
| 21 | MR. LEE: Go ahead and answer it again if | |
| 22 | you want. | |
| 23 | THE DEPONENT: Again, even if I -- even | |
| 24 | if I had sWAA-off months, that wouldn't necessarily | |
| 25 | tell me whether or not, technically -- technically, | 11:31:28 |

| | | |
|---|---|---|
| 1 | if they hit a third-party site with Google track -- | 11:31:37 |
| 2 | with a Google tracker on it. | |
| 3 |     And so in this case, to be, as I've said | |
| 4 | in the past, appropriate and conservative, I did | |
| 5 | it -- I calculated a one-time payment per device. | 11:31:52 |
| 6 |     Q.  (By Mr. Santacana)  And why would you pay | |
| 7 | a sWAA-off device if they never hit a third-party | |
| 8 | tracker site at all? | |
| 9 |     A.  I think it's unlikely that a | |
| 10 | third-party -- that -- it's unlikely that a third | 11:32:16 |
| 11 | party -- that a sWAA-off device would not hit a | |
| 12 | third-party tracker.  It's -- it's very likely that | |
| 13 | it would based on usage as well as the amount of | |
| 14 | trackers that are out there. | |
| 15 |     Q.  You would agree that different people | 11:32:36 |
| 16 | would hit third-party trackers different amounts | |
| 17 | depending on their usage patterns? | |
| 18 |     A.  That may be -- that may be accurate. | |
| 19 |     Q.  It may be accurate? | |
| 20 |     You think it's possible that every member | 11:32:58 |
| 21 | of the class has hit the exact same number of | |
| 22 | third-party trackers? | |
| 23 |     A.  No. | |
| 24 |     Q.  Okay.  So it is accurate? | |
| 25 |     A.  It is -- that is accurate. | 11:33:05 |

| | | |
|---|---|---|
| 1 | Google is going to use it for? | 06:46:09 |
| 2 | A. To some -- to some extent, yes, that | |
| 3 | makes sense. | |
| 4 | Q. Okay. So did you describe in your report | |
| 5 | or come to any reasoning about what impact Google's | 06:46:16 |
| 6 | use of the data would have on the price, this $3 | |
| 7 | price? | |
| 8 | MR. LEE: Asked and answered. | |
| 9 | THE DEPONENT: I mean, again, I know how | |
| 10 | they're -- I know how they're using the data. I | 06:46:33 |
| 11 | have, obviously, the information that was provided | |
| 12 | to me. | |
| 13 | So yes, I -- I looked at that. I looked | |
| 14 | at that, and I compared it to the Ipsos study. | |
| 15 | Q. (By Mr. Santacana) Right. | 06:46:47 |
| 16 | A. And then I determined that a $3 price was | |
| 17 | appropriate per device -- | |
| 18 | Q. The Ipsos study -- | |
| 19 | A. -- in this case. | |
| 20 | Q. I'm sorry. Go ahead. | 06:46:53 |
| 21 | A. For this case. | |
| 22 | Q. ==The Ipsos study terms allow Google to use== | |
| 23 | ==the participants' data for personalized== | |
| 24 | ==advertising, right?== | |
| 25 | A. ==That is correct.== | ==06:47:08== |

Page 252

| | | |
|---|---|---|
| 1 | Q. And those terms allow Google to join the | 06:47:08 |
| 2 | data with other data Google has about that person, | |
| 3 | right? | |
| 4 | A. That is correct. Yes. | |
| 5 | Q. Okay. The terms of the transaction that | 06:47:16 |
| 6 | you're hypothesizing in paragraph 130, 131 and 132 | |
| 7 | would not permit that, right? | |
| 8 | A. Well, that -- that is my assumption, yes. | |
| 9 | No, it would not. They do not -- they do not get | |
| 10 | personalized ads right now, so I would not expect | 06:47:49 |
| 11 | that they would expect that they would all of a | |
| 12 | sudden start receiving personalized ads. That's | |
| 13 | correct. | |
| 14 | Q. So did you adjust the Ipsos price | |
| 15 | downward to reflect that greater restriction on the | 06:47:59 |
| 16 | use of the data? | |
| 17 | A. No, one wouldn't -- I would not need to | |
| 18 | do that, no. | |
| 19 | Q. Why not? | |
| 20 | A. Because here, again, in the Ipsos -- we | 06:48:05 |
| 21 | talked about this earlier. | |
| 22 | In Ipsos study, we are talking about | |
| 23 | willing participants versus unwilling participants. | |
| 24 | So the WAA-off/sWAA-off users are | |
| 25 | unwilling participants in this. | 06:48:21 |

| | | |
|---|---|---|
| 1 | "conservative" mean in that sentence? | 06:56:45 |
| 2 | A.   It means that it could be -- it could, in | |
| 3 | fact, be higher.  But I think that this is an | |
| 4 | appropriate price to incentivize based on what I | |
| 5 | said -- based on what I said before, to incentivize | 06:56:55 |
| 6 | those users to part with their data. | |
| 7 | Q.   Would $4 be an appropriate price? | |
| 8 | MR. LEE:  Objection to form. | |
| 9 | THE DEPONENT:  I -- I did not do an | |
| 10 | analysis of $4, so I don't know the answer to that. | 06:57:06 |
| 11 | Q.   (By Mr. Santacana)  What do you mean you | |
| 12 | did not do -- you did an analysis and came up with | |
| 13 | a number.  So presumably, you considered all | |
| 14 | numbers that exist, and you arrived at one of them | |
| 15 | and said, "This is the answer." | 06:57:16 |
| 16 | So I'm just saying, why did you rule out | |
| 17 | $4? | |
| 18 | A.   Ultimately, I've got a market transaction | |
| 19 | here that shows $3. | |
| 20 | Q.   Per month, which you deviated from? | 06:57:25 |
| 21 | A.   Correct. | |
| 22 | Q.   So why didn't you say $4? | |
| 23 | A.   Because -- | |
| 24 | MR. LEE:  Asked and answered. | |
| 25 | Go ahead. | 06:57:37 |

| | | |
|---|---|---|
| 1 | THE DEPONENT: Because based on the | 06:57:37 |
| 2 | totality of the information available to me, as we | |
| 3 | talked about earlier in the deposition, I think | |
| 4 | that -- I think that $3 is an appropriate amount. | |
| 5 | A one-time payment of $3 is an appropriate amount. | 06:57:48 |
| 6 | Q. (By Mr. Santacana) So you would agree | |
| 7 | with me that $4 is too much? | |
| 8 | MR. LEE: Mischaracterizes testimony. | |
| 9 | THE DEPONENT: Again, I think $3 is | |
| 10 | conservative. Could be it higher than $3? Yes. | 06:58:03 |
| 11 | It could be -- | |
| 12 | Q. (By Mr. Santacana) Could be it lower? | |
| 13 | MR. LEE: Hold on. Let him finish. | |
| 14 | THE DEPONENT: Could it be higher than | |
| 15 | $3? Yes. No, I do think it could be lower than | 06:58:09 |
| 16 | $3. | |
| 17 | Q. (By Mr. Santacana) So $3 is the lowest | |
| 18 | number that you could come up with? | |
| 19 | A. $3 per device. I don't think that I | |
| 20 | would come up with a number lower than that. I | 06:58:19 |
| 21 | did -- I would not come up with a number lower than | |
| 22 | that. | |
| 23 | Q. Are there members of the class who you | |
| 24 | would expect would demand more than $3 if they had | |
| 25 | the opportunity to engage in this negotiation? | 06:58:34 |

Page 261

```
 1        I, Rebecca L. Romano, a Stenographic Certified
 2   Shorthand Reporter of the State of California, do
 3   hereby certify:
 4        That the foregoing proceedings were taken
 5   before me at the time and place herein set forth;
 6   that any witnesses in the foregoing proceedings,
 7   prior to testifying, were administered an oath;
 8   that a record of the proceedings was made by me
 9   using machine shorthand which was thereafter
10   transcribed under my direction; that the foregoing
11   transcript is true record of the testimony given.
12        Further, that if the foregoing pertains to the
13   original transcript of a deposition in a Federal
14   Case, before completion of the proceedings, review
15   of the transcript [ ] was [X] was not requested.
16        I further certify I am neither financially
17   interested in the action nor a relative or employee
18   of any attorney or any party to this action.
19        IN WITNESS WHEREOF, I have this date
20   subscribed my name.
21   Dated:  July 5, 2023
22
23
24                    _____
                      Rebecca L. Romano, RPR,
25                    CSR. No 12546
```

Page 294