**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
mmao@bsfllp.com
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted *pro hac vice*)
bcarmody@susmangodfrey.com
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted *pro hac vice*)
jyanchunis@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505

*Counsel for Plaintiffs; additional counsel
listed in signature blocks below*

**COOLEY LLP**
BENEDICT Y. HUR (SBN: 224018)
bhur@cooley.com
SIMONA AGNOLUCCI (SBN: 246943)
sagnolucci@cooley.com
EDUARDO E. SANTACANA (SBN: 281668)
esantacana@cooley.com
ARGEMIRA FLOREZ (SBN: 331153)
aflorez@cooley.com
HARRIS MATEEN (SBN 335593)
hmateen@cooley.com
ISABELLA MCKINLEY CORBO (SBN 346226)
icorbo@cooley.com
3 Embarcadero Ctr., 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000

*Counsel for Defendant Google LLC*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

ANIBAL RODRIGUEZ, SAL
CATALDO, JULIAN
SANTIAGO, and SUSAN LYNN
HARVEY, individually and on behalf of all
others similarly situated,

   Plaintiffs,

   v.

GOOGLE LLC,

   Defendant.

Case No. 3:20-cv-04688-RS

**PROPOSED JOINT JURY INSTRUCTIONS**

Judge: Hon. Richard Seeborg
Trial Date: August 19, 2025
Courtroom: 3, 17th Floor

Pursuant to the Court's Order, Plaintiffs and Defendant Google LLC submit the following proposed jury instructions.

For disputed instructions, the Parties used the following color-coding: black signifies agreed upon text, blue signifies Plaintiffs' proposal, and red signifies Google's proposal. The Parties have included brief explanations and authorities to support their respective positions.

**TABLE OF CONTENTS**

**I.    PRELIMINARY INSTRUCTIONS (R**EAD AT THE BEGINNING OF TRIAL**) ........................ 1**
(JOINT) JURY INSTRUCTION NO. 1 ................................................................. 1
(JOINT) JURY INSTRUCTION NO. 2 ................................................................. 2
(JOINT) JURY INSTRUCTION NO. 3 ................................................................. 3
(JOINT) JURY INSTRUCTION NO. 4 ................................................................. 5
(JOINT) JURY INSTRUCTION NO. 5 ................................................................. 6
(JOINT) JURY INSTRUCTION NO. 6 ................................................................. 7
(JOINT) JURY INSTRUCTION NO. 7 ................................................................. 8
(JOINT) JURY INSTRUCTION NO. 8 ................................................................. 9
(JOINT) JURY INSTRUCTION NO. 9 ................................................................. 10
(JOINT) JURY INSTRUCTION NO. 10 ............................................................... 11
(JOINT) JURY INSTRUCTION NO. 11 ............................................................... 13
(JOINT) JURY INSTRUCTION NO. 12 ............................................................... 15
(JOINT) JURY INSTRUCTION NO. 13 ............................................................... 16
(JOINT) JURY INSTRUCTION NO. 14 ............................................................... 17
(JOINT) JURY INSTRUCTION NO. 15 ............................................................... 18
(JOINT) JURY INSTRUCTION NO. 16 ............................................................... 19
(JOINT) JURY INSTRUCTION NO. 17 ............................................................... 20
(JOINT) JURY INSTRUCTION NO. 18 ............................................................... 21
**II.    INSTRUCTIONS DURING TRIAL (R**EAD DURING TRIAL**)........................................ 22**
(JOINT) JURY INSTRUCTION NO. 19 ............................................................... 22
(JOINT) JURY INSTRUCTION NO. 20 ............................................................... 23
(DISPUTED) JURY INSTRUCTION NO. 21 ......................................................... 24
(JOINT) JURY INSTRUCTION NO. 22 ............................................................... 28
(JOINT) JURY INSTRUCTION NO. 23 ............................................................... 29
(JOINT) JURY INSTRUCTION NO. 24 ............................................................... 30
(JOINT) JURY INSTRUCTION NO. 25 ............................................................... 31
(JOINT) JURY INSTRUCTION NO. 26 ............................................................... 32
(JOINT) JURY INSTRUCTION NO. 27 ............................................................... 33
**III.    FINAL INSTRUCTIONS (R**EAD AT THE END OF TRIAL**) ............................................ 34**
(JOINT) JURY INSTRUCTION NO. 28 ............................................................... 34
(JOINT) JURY INSTRUCTION NO. 29 ............................................................... 35
(JOINT) JURY INSTRUCTION NO. 30 ............................................................... 36
(JOINT) JURY INSTRUCTION NO. 31 ............................................................... 37
(JOINT) JURY INSTRUCTION NO. 32 ............................................................... 38
(DISPUTED) JURY INSTRUCTION NO. 33 ......................................................... 39
(DISPUTED) JURY INSTRUCTION NO. 34 ......................................................... 44
(DISPUTED) JURY INSTRUCTION NO. 35 ......................................................... 46

(DISPUTED) JURY INSTRUCTION NO. 36 .................................................................... 54
(DISPUTED) JURY INSTRUCTION NO. 37 .................................................................... 59
(DISPUTED) JURY INSTRUCTION NO. 38 .................................................................... 65
(DISPUTED) JURY INSTRUCTION NO. 39 .................................................................... 69
(JOINT) JURY INSTRUCTION NO. 40 .......................................................................... 71
(DISPUTED) JURY INSTRUCTION NO. 41 .................................................................... 72
(DISPUTED) JURY INSTRUCTION NO. 42 .................................................................... 75
(DISPUTED) JURY INSTRUCTION NO. 43 .................................................................... 77
(DISPUTED) JURY INSTRUCTION NO. 44 .................................................................... 84
(DISPUTED) JURY INSTRUCTION NO. 45 .................................................................... 86
(DISPUTED) JURY INSTRUCTION NO. 46 .................................................................... 89
(DISPUTED) JURY INSTRUCTION NO. 47 .................................................................... 91
(DISPUTED) JURY INSTRUCTION NO. 48 .................................................................. 102
(DISPUTED) JURY INSTRUCTION NO. 49 .................................................................. 108
(JOINT) JURY INSTRUCTION NO. 50 ........................................................................ 115
(JOINT) JURY INSTRUCTION NO. 51 ........................................................................ 116
(JOINT) JURY INSTRUCTION NO. 52 ........................................................................ 118
(JOINT) JURY INSTRUCTION NO. 53 ........................................................................ 119
(JOINT) JURY INSTRUCTION NO. 54 ........................................................................ 120
(DISPUTED) JURY INSTRUCTION NO. 55 .................................................................. 121

**PROPOSED JOINT JURY INSTRUCTIONS**

## I.    PRELIMINARY INSTRUCTIONS (READ AT THE BEGINNING OF TRIAL)

### (JOINT) JURY INSTRUCTION NO. 1

Duty of Jury

Members of the jury: You are now the jury in this case.  It is my duty to instruct you on the law.  It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.  At the end of the trial, I will give you final instructions.  It is the final instructions that will govern your duties.  Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.3 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 2**

<u>Claims and Defenses</u>

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

This is a class action, in which three people called Plaintiffs are asserting claims against Google on behalf of groups of other people, which are called "classes." Plaintiffs claim that Google violated the law by collecting, saving, and/or using information about their activities on mobile apps without their permission. These claims concern Google's conduct between July 1, 2016 and September 23, 2024.

Plaintiffs assert three claims against Google. First, Plaintiffs claim that Google's conduct violated the California Comprehensive Computer Data Access and Fraud Act, which is abbreviated "CDAFA." Second, Plaintiffs claim that Google is liable for invasion of privacy. And third, Plaintiffs claim that Google is liable for intrusion upon seclusion.

Google denies Plaintiffs' claims and also asserts certain affirmative defenses that, if you find to be applicable, would make Google not liable in whole or in part. These affirmative defenses include Google's assertions that Plaintiffs consented to Google's conduct at issue, and that some portion of each of Plaintiffs' three claims are barred by the applicable statutes of limitations.

Plaintiffs have the burden to prove the requirements of their claims, and Google has the burden to prove the requirements of its affirmative defenses. I will explain the requirements of these claims and defenses.


[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.5 (2017)]


DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

CASE NO. 3:20-cv-04688-RS
**PROPOSED JOINT JURY INSTRUCTIONS**

**(JOINT) JURY INSTRUCTION NO. 3**

<u>"Class Action" Defined</u>

This case is a class action.  A class action is a lawsuit that has been brought by one or more plaintiffs on behalf of a larger group of people who have similar legal claims.  All of these people together are called a "class."  The three Plaintiffs—Anibal Rodriguez, Julian Santiago, and Susan Lynn Harvey—bring this action as class representatives.

In a class action, the claims of many individuals can be resolved at the same time instead of requiring each member to sue separately. Because of the large number of members in the two classes in this case, not everyone in the class will testify. You may assume that the evidence at this trial applies to all class members.  All members of the classes will be bound by the result of this trial.

There are two classes in this case.

The first class is called "Class 1" or the "Android Class." It consists of all individuals who, at any time July 1, 2016 through September 23, 2024, (a) had their "Web & App Activity" and/or "supplemental Web & App Activity" setting turned off; and (b) while using a smartphone or tablet running the Android operating system; (c) used a non-Google-branded app that included the Firebase Software Development Kit and/or Google Mobile Ads Software Development Kit, causing information about the individual's app activity to be transmitted to Google.

The second class is called "Class 2" or the "non-Android Class."  It is the same as Class 1, except that it includes individuals who used a smartphone or tablet that were not running the Android operating system, such as Apple iPhones and iPads.

For purposes of the Plaintiffs' first claim, for violation of the California Comprehensive Computer Data Access and Fraud Act, the classes include all types of Google accounts, including not only ordinary consumer accounts, but also accounts for organizations like businesses and schools, called "enterprise" accounts, and accounts for children under the age of 13, which are called "supervised" accounts.  For purposes of Plaintiffs' second and third claims, for invasion of privacy and intrusion upon seclusion, the classes include neither enterprise accounts for businesses and schools nor supervised accounts for children.

1    [Authorities: Judicial Council of California Civil Jury Instructions Number (CACI) No. 115]

2

3

4    DATE SUBMITTED: August 11, 2025

5    DATE REVISED: _____

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**(JOINT) JURY INSTRUCTION NO. 4**

<u>Burden of Proof– Preponderance of the Evidence</u>

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.6 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 5**

<u>What is Evidence</u>

The evidence you are to consider in deciding what the facts are consists of:

        (1)     the sworn testimony of any witness;

        (2)     the exhibits that are admitted into evidence;

        (3)     any facts to which the lawyers have agreed; and

        (4)     any facts that I have instructed you to accept as proved.


[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.9 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

## (JOINT) JURY INSTRUCTION NO. 6

### What Is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that was excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.10 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

CASE NO. 3:20-cv-04688-RS
**PROPOSED JOINT JURY INSTRUCTIONS**

**(JOINT) JURY INSTRUCTION NO. 7**

<u>Evidence for Limited Purpose</u>

Some evidence may be admitted only for a limited purpose. When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.11 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 8**

<u>Direct and Circumstantial Evidence</u>

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.12 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 9**

<u>Ruling on Objection</u>

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.13 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 10**

<u>Credibility of Witnesses</u>

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case, if any;

(5)    the witness's bias or prejudice, if any;

(6)    whether other evidence contradicted the witness's testimony;

(7)    the reasonableness of the witness's testimony in light of all the evidence; and

(8)    any other factors that bear on believability.

Sometimes a witness may have said something that is not consistent with something else he or she said. Sometimes different witnesses gave different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.14 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED:_____

**(JOINT) JURY INSTRUCTION NO. 11**

<u>Conduct of the Jury</u>

I will now say a few words about your conduct as jurors.

First, keep an open mind, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, the platform "X" formerly known as Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court took an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may

be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately, by sending a note through the clerk or /bailiff signed by any one or more of you.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.15 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED:_____

**(JOINT) JURY INSTRUCTION NO. 12**

<u>Publicity During Trial</u>

If there is any news media account or commentary about the case or anything to do with it, you must ignore it.  You must not read, watch, or listen to any news media account or commentary about the case or anything to do with it.  The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies.  If any juror is exposed to any outside information, please notify me immediately.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.16 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED:_____

1

**(JOINT) JURY INSTRUCTION NO. 13**

2

<u>No Transcript Available to Jury</u>

3
    I urge you to pay close attention to the trial testimony as it is given.  During deliberations

4
you will not have a transcript of the trial testimony.

5

6

7

8
[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit,

9
Number 1.17 (2017)]

10

11
DATE SUBMITTED: August 11, 2025

12
DATE REVISED:_____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**(JOINT) JURY INSTRUCTION NO. 14**

2

<u>Taking Notes</u>

3    If you wish, you may take notes to help you remember the evidence. If you do take notes,

4  please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking

5  distract you. When you leave, your notes should be left in the jury room. No one will read your

6  notes.

7        Whether or not you take notes, you should rely on your own memory of the evidence. Notes

8  are only to assist your memory. You should not be overly influenced by your notes or those of other

9  jurors.

10

11

12  [Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit,

13  Number 1.18 (2017)]

14

15  DATE SUBMITTED: August 11, 2025

16  DATE REVISED:_____

17

18

19

20

21

22

23

24

25

26

27

28

**(JOINT) JURY INSTRUCTION NO. 15**

<u>Outline of Trial</u>

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiffs will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiffs may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.21 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED:_____

**(JOINT) JURY INSTRUCTION NO. 16**

<u>Bench Conferences and Recesses</u>

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.20 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED:_____

**PROPOSED JOINT JURY INSTRUCTIONS**

# (JOINT) JURY INSTRUCTION NO. 17

## Questions to Witnesses by Jurors

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses. If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.19 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED:_____

**(JOINT) JURY INSTRUCTION NO. 18**

<u>Corporations – Fair Treatment</u>

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Numbers 4.1 and 4.2 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED:_____

## II.    INSTRUCTIONS DURING TRIAL (READ DURING TRIAL)

## (JOINT) JURY INSTRUCTION NO. 19

Cautionary Instructions

**At the End of Each Day of the Case:**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

**At the Beginning of Each Day of the Case:**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So you must not learn any additional information about the case from sources outside the courtroom. To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

If you think that you might have done so, please let me know now by raising your hand. [*Wait for a show of hands*]. I see no raised hands; however, if you would prefer to talk to the court privately in response to this question, please notify a member of the court's staff at the next break. Thank you for your careful adherence to my instructions.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.0 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED:_____

**(JOINT) JURY INSTRUCTION NO. 20**

<u>Stipulations of Fact</u>

The parties have agreed to certain facts. I may read some to you during the course of the trial, counsel may read some to you during the course of the trial, or others may be placed in evidence as an exhibit. You must treat these facts as having been proved.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.2 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**PROPOSED JOINT JURY INSTRUCTIONS**

**(DISPUTED) JURY INSTRUCTION NO. 21**

<span style="color:red">Assumed Facts</span>

**Google's Proposal**

<span style="color:red">For purposes of this case, you should assume that the following facts are true:</span>

- <span style="color:red">All mobile applications running Google Analytics were required to disclose the use of Google Analytics and how it collects and processes data.</span>

**Plaintiffs' Proposal**:  None.

**Google's Statement**

Plaintiffs' statement on this instruction underlines why it is needed in some form, though Google is open to various ways of expressing the fundamental concept to the jury that it should not consider individualized privacy policies from third party apps in its verdict. Google has updated its proposal pursuant to the Court's ruling on Google's motion in limine 10, which permits "evidence that [Google] required app developers to reveal their use of Google Analytics," so long as Google does not suggest that this constitutes user consent. *See* Dkt. 587 at 6; *see also* July 30 Hearing Tr. At 77:2-11 ("Mr. Hur: … I think we can say, Your Honor, that we required [apps to disclose their use of Google Analytics]. The Court: Yes."). This class was certified over Google's objection that there were individualized issues concerning whether apps actually obtained the consent they were required to obtain pursuant to Google's Firebase Terms of Use. The Court reasoned in its Order granting class certification that, "[t]o the extent Google had a policy that required third party apps to disclose *Google's* policies to users, that evidence may be applied across the class." Dkt. 352 (Class Cert. Order) at 17–18. This proposed instruction does the work the Court anticipated – to apply the presumption that Google's policies required disclosure across the class.

Plaintiffs should not be permitted, having secured certification over Google's objection, to in any way undermine the Court's reasoning and Order, thereby creating individualized issues. And the jury should be prevented from undermining it as well.

1    Thus, Google seeks to include this assumed fact in the jury instructions to provide necessary

2    context for the jury when evaluating the claims in this case. The proposed instruction accurately

3    reflects: (1) the contractual framework governing the use of Google Analytics by mobile

4    applications, including obligations to disclose data practices (*see, e.g.*, Trial Ex. G0185 (GOOG-

5    RDGZ-02111351 at -355) (Google Analytics Terms of Service operative as of May 15, 2023)), and

6    (2) this Court's earlier ruling that this case is not about the variety in disclosures made by third

7    parties, but rather that the "relevant question concerns *Google's* disclosures" (*see* Dkt. 352 (Class

8    Cert. Order) at 17). As explained further in Google's motion in limine 10, evidence and argument

9    regarding the compliance—or lack thereof—of third-party applications with Google's disclosures

10   would result in individualized inquiries which would unduly prejudice Google. *See* Dkt. 528 at 5–6

11   (Google's MIL 10) ("Google [] has litigated this case as a class action for 538 days and tailored its

12   defense strategy to defend against fact disputes over its own disclosures to users."); *see also* Fed. R.

13   Evid. 403.

14   Instructing the jury in this way will ensure that jurors do not improperly consider

15   individualized issues in evaluating "the adequacy of each of the third-party app disclosures Plaintiffs

16   used throughout the relevant time period," nor attribute the actions—or inactions—of third-party

17   app developers to Google. *See* Dkt. 528 at 6.

18   On the other hand, failure to include this instruction would run the risk of confusing the jury,

19   who will separately be instructed to "assume that the evidence at this trial applies to all class

20   members" (an instruction that Plaintiffs agree to). *See supra* at 5 (Jury Instruction No. 3: "Class

21   Action" Defined). The Court should instruct the jury to assume this fact.

22   Plaintiffs' arguments are baseless and should be rejected. ***First,*** the agreed upon language in

23   Instruction No. 19, *supra*, contemplates that assumed facts may be read "during the course of trial."

24   Plaintiffs' second argument misstates their opposition to Google's motion in limine 10.

25   ***Second,*** contrary to Plaintiffs' characterizations, this assumed fact is not an "argument[]

26   about whether particular apps comply with the Google Analytics Terms of Service." Including it

27   would foreclose the possibility of any sideshows at trial regarding the "compliance or lack thereof

28   of third-party applications with Google's disclosures." Dkt. 528 at 3.

1    **Third**, just because Google did not proffer a class-wide expert or other evidence to

2    demonstrate third party app compliance with its disclosures does not mean that Google "admits it

3    cannot prove" this. Google admits no such thing. Indeed, the Court's ruling on Google's motion in

4    limine 10 specifically precludes Plaintiffs from arguing that "Google failed to obtain the necessary

5    consent" based on the "dearth" of relevant evidence. *See* Dkt. 587 at 7.

6    **Fourth**, Plaintiffs offer an alternative stipulation that "non-Google apps' privacy policies

7    referred to the apps' general use of analytics services," but this is not an adequate substitute for

8    Google's proposal. The Court should enter Google's proposal as written  There is no evidence in

9    the record suggesting that these third party apps failed to comply with Google's disclosures. And

10   there is no reason to recharacterize the contractual requirement in a way that benefits Plaintiffs.

11   **Finally**, if Plaintiffs indeed agree with Google that individualized inquiries are

12   inappropriate, then they should agree to admit this fact, which would foreclose any such concerns.

13   *See* Dkt. 541 at 1 ("Plaintiffs agree with Google (and the Court) that the focus at trial should be on

14   Google's disclosures, not disclosures by third-parties."). This assumed fact does not harm Plaintiffs'

15   case.  Plaintiffs do not dispute that apps disclosed Google Analytics.  Instead, Plaintiffs argue that

16   the disclosure required by Google wasn't good enough because it didn't specify that Google

17   Analytics would receive data even if sWAA was turned off.  Nothing in this instruction forecloses

18   that argument.

19

20   **Plaintiffs' Statement**

21   - There is no reason to insert any "assumed fact" into these jury instructions, particularly for

22     a "fact" like this one which is slanted in Google's favor and very much disputed. Any

23     stipulated facts do not belong in the jury instructions. Instead, as contemplated by the agreed

24     portion of Instruction No. 19, *supra*, any stipulated facts should be read to the jury during

25     trial or placed into evidence.  To read one "assumed fact" presented by Google puts the Court

26     in a position of putting its thumb on the scale.  If the Court is inclined to include assumed

27     facts in this instruction, Plaintiffs would seek to add facts that then benefit their positions to

28     balance the scales.

DATE SUBMITTED: August 11, 2025

DATE REVISED:_____

**(JOINT) JURY INSTRUCTION NO. 22**

Deposition in Lieu of Live Testimony

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.4 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 23**

<u>Transcript of Recording</u>

You have watched a recording that has been received in evidence. Each of you was given a transcript of the recording to help you identify speakers and as a guide to help you listen to the recording. However, bear in mind that the recording is the evidence, not the transcript. If you heard something different from what appeared in the transcript, what you heard is controlling. Now that the recording has been played, the transcript will be taken from you.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.5 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 24**

<u>Use of Interrogatories</u>

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.11 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 25**

<u>Use of Requests for Admission</u>

Evidence was presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.12 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 26**

<u>Expert Opinion Testimony</u>

You are about to hear testimony from [*name*] who will testify about [*his/her*] opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.13 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 27**

<u>Charts and Summaries Not Received in Evidence</u>

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 2.14 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

1

III.    **FINAL INSTRUCTIONS (READ AT THE END OF TRIAL)**

2

3

**(JOINT) JURY INSTRUCTION NO. 28**

4

<u>Duty of Jury</u>

Members of the Jury: Now that you have heard all of the evidence and the arguments of the

5

attorneys, it is my duty to instruct you on the law that applies to this case.

6

7

[Each of you has received a copy of these instructions that you may take with you to the jury

8

room to consult during your deliberations.] [A copy of these instructions will be sent to the jury

room for you to consult during your deliberations.]

9

10

It is your duty to find the facts from all the evidence in the case.  To those facts you will

11

apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with

it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or

12

sympathy.  That means that you must decide the case solely on the evidence before you.  You will

13

recall that you took an oath to do so.

14

15

Please do not read into these instructions or anything that I may say or do or have said or

16

done that I have an opinion regarding the evidence or what your verdict should be.

17

18

19

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit,

20

Number 1.4 (2017)]

21

22

DATE SUBMITTED: August 11, 2025

23

DATE REVISED: _____

24

25

26

27

28

CASE NO. 3:20-cv-04688-RS
**PROPOSED JOINT JURY INSTRUCTIONS**

**(JOINT) JURY INSTRUCTION NO. 29**

<u>Claims</u>

I will now explain the substantive law applicable to the claims brought in this action.  On behalf of the classes, Plaintiffs assert three claims against Google:

1.      Violation of the Comprehensive Computer Data Access and Fraud Act ("CDAFA");

2.      Invasion of privacy; and

3.      Intrusion upon seclusion.

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**(JOINT) JURY INSTRUCTION NO. 30**

**FIRST CLAIM: VIOLATION OF THE CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT ("CDAFA"), CAL. PENAL CODE § 502**

Plaintiffs claim that Google violated the Comprehensive Computer Data and Access Fraud Act, sometimes referred to as "CDAFA."  To establish this claim, Plaintiffs must prove all of the following:

1.  Plaintiffs are owners or lessees of mobile devices or data;

2.  Google knowingly accessed Plaintiffs' mobile devices or data;

3.  Google took, copied, or made use of data from those Plaintiffs' mobile devices without Plaintiffs' permission;

4.  Plaintiffs suffered damage or loss; and

5.  Google's conduct was a substantial factor in causing Plaintiffs' damage or loss.

Some of the terms used in these elements have specific meanings. I will now explain them to you.

[Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 1812; Cal. Penal Code § 502]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

CASE NO. 3:20-cv-04688-RS
**PROPOSED JOINT JURY INSTRUCTIONS**

**(JOINT) JURY INSTRUCTION NO. 31**

<u>Mobile Devices</u>

Mobile devices include cell phones and tablets.

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

## (JOINT) JURY INSTRUCTION NO. 32

### Access

The term "access" means to gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with the logical, arithmetical, or memory function resources of a mobile device, computer, computer system, or computer network. A person can access a mobile device, computer, computer system, or computer network in different ways.  For example, access can be accomplished by sitting down at a computer and using the mouse and keyboard, or by using a wireless network or some other method or tool to gain remote entry.

[Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 1813]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

1    **(DISPUTED) JURY INSTRUCTION NO. 33**

2    <u>Damage or Loss</u>

3    **Plaintiffs' Proposal:**

4    For the fourth element, you must consider whether Plaintiffs had "damage or loss."  The

5    following are the specific items of damage or loss claimed by Plaintiffs:

6    1.   The value of data taken from Plaintiffs;

7    2.   Google's profits from data taken from Plaintiffs;

8    3.   Loss of the right to control Plaintiffs' data;

9    4.   Loss of privacy over Plaintiffs' data;

10   5.   Depletion of Plaintiffs' mobile devices' battery life and/or bandwidth; and

11   6.   Injury to Plaintiffs' peace of mind.

12   If you determine that Plaintiffs have proven any one of these forms of damage or loss, you

13   must find that Plaintiffs have satisfied the fourth element of this claim.

14

15   **Google's Proposal:**

16   None, or, in the alternative:

17   For the fourth element, you must consider whether the Plaintiffs had "damage or loss." You

18   may find that damage or loss occurred if Google's conduct caused harm to the Plaintiffs' mobile

19   devices or data. "Damage or loss" can also include impairment to the integrity or availability of data

20   from a computer, computer system, or computer network.

21   Loss privacy over one's data, or depletion of resources such as battery life or bandwidth as

22   a direct result of Google's conduct, alone, do not constitute "damage or loss" under CDAFA

23   sufficient to support more than an award of nominal damages.

24   **Plaintiffs' Statement:**

25   • The jury is in need of an instruction in order to understand what is meant by damage or loss

26   under the CDAFA.

27   • With respect to form, Plaintiffs' proposal is adapted from similar CACI model instructions,

28   which provide concise lists of the items of damages claimed by the plaintiffs. *See, e.g.*, CACI

1821 (damages for use of name or likeness); CACI 3900 (general tort damages). This is the simplest way to present the different types of damage or loss alleged. It will aid jury comprehension more than paragraphs of text, which is the form that Google proposes.

- With respect to the substance of the proposed instructions, the parties have two disputes: (1) Whether the jury should be instructed that Google's profits from Plaintiffs' data may constitute "damage or loss"; and (2) Whether the jury should be instructed that certain forms of damage or loss do not constitute "damage or loss" under the CDAFA sufficient to support more than minimal recovery.

- *First*, the jury should be instructed that, consistent with the Court's prior orders, Google's profits from the misappropriated data may constitute "damage or loss." The Court's recent motions *in limine* Order acknowledged that Plaintiffs have "highlight[ed] cases and prior orders in the instant litigation recognizing how proof that a defendant profited from a plaintiff's data can satisfy the damage or loss element of CDAFA and privacy tort claims." Dkt. 587 at 9; *see also id.* at 11 ("Plaintiffs highlight that unjustly profiting from Plaintiffs' data can amount to damage or loss under the CDAFA." (citing *In re Facebook, Inc. Internet Tracking Lit.*, 956 F.3d 589, 599–601 (9th Cir. 2020)). This Court also reached that conclusion in its orders on both class certification and summary judgment, recognizing both times that it is well supported under Ninth Circuit law. *See* Dkt. 445 (summary judgment order) at 18 ("[A] reasonable juror could find the Plaintiffs suffered damage or loss because Google profited from the misappropriation of their data."); Dkt. 352 (class certification order) at 12 (recognizing that damage or loss can be satisfied by evidence that "the defendant profited from this valuable data"); *see also In re Facebook Internet Tracking Litig.*, 956 F.3d at 601 (holding that "Plaintiffs sufficiently alleged a state law interest whose violation constitutes an injury sufficient to establish standing to bring their claims for CDAFA violations" because they alleged that the defendant engaged in "unauthorized use of their information for profit"). Google's proposal is an improper attempt to litigate this issue for the fourth time.

- *Second*, this instruction should not single out certain types of damage or loss that Google claims "do not constitute 'damage or loss' under the CDAFA sufficient to support more than minimal recovery." The Court should reject this instruction for three reasons:

  o This is a false statement of the law: the CDAFA does not provide that these sorts of injuries cannot give rise to more than nominal damages. *See, e.g.*, Cal. Penal Code § 502 (not limiting any type of damage or loss to nominal damages); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1066–67 (N.D. Cal. 2015) (holding that an "effect on the resources of Plaintiffs' devices" may constitute damage or loss).

  o Google's proposal also erroneously states that the "loss of the right to control one's data" cannot give rise to more than nominal damages. The jury may interpret this to foreclose damages based on Plaintiffs' compensatory damages model, which values Plaintiffs' data and the right to choose whether it is shared with Google.

  o Google's proposal improperly mixes liability instructions (which instruct the jury on how to decide whether or not elements and claims are established) with damages instructions (which instruct the jury on how to decide the appropriate amount of monetary relief). Including references to "nominal damages" in the liability instructions would be confusing to jurors, who will have not yet been instructed on that concept or even on damages in general. If Google is concerned that the jury could award substantial damages for injuries that have not been quantified, that should be—and is—addressed in the appropriate location, *i.e.*, the damages instructions. *See* Instruction Nos. 44–46.

  o The words Google proposes using in their proposed instruction may mislead the jury. For example, Google proposes instructing the jury that certain forms of damages or loss "do not constitute 'damage or loss' under CDAFA." This is untrue. While the rest of the sentence—"sufficient to support more than minimal recovery"—may clear things up for lawyers, lay jurors may be left confused about whether the identified injuries are "damage or loss" under the law. The reference to "minimal recovery"

1    may also be confusing because it does not appear in the proposed or model

2    instructions on nominal damages.

3

4    **Google's Statement**:

5        It is undisputed that a plaintiff must show "damage or loss" within the meaning of CDAFA.

6    *See* Cal. Pen. Code § 502(e)(1) ("The owner or lessee of the computer, computer system, computer

7    network, computer program, or data who suffers damage or loss by reason of a violation of any of

8    the provisions of subdivision (c) may bring a civil action against the violator for compensatory

9    damages and injunctive relief or other equitable relief.").

10       The CACI models that Plaintiffs cite are not CDAFA instructions at all, and are thus

11   inapposite. Indeed, they come from completely different claims and should not be transplanted into

12   this context Given the significant dispute between the parties on this instruction, Google proposes

13   to not offer the jury a specific definition here, and rather let the jury decide whether Plaintiffs have

14   suffered damage or loss based on their own understandings of the term, the evidence introduced,

15   and the arguments that attorneys for both parties will make. .

16       Plaintiffs' proposed instruction would confuse the jury by conflating its decision on CDAFA

17   liability with its determination of the amount or type of recovery, which are two separate inquiries.

18   Mixing damages issues into the CDAFA liability instruction risks blurring the jury's role and should

19   be avoided. For example, Plaintiffs' proposal includes reference to "Google's profits," which refers

20   to the concept of "unjust enrichment" as a specific measure of damages.   Instructing the jury that

21   one of the "specific items of damage or loss claimed by Plaintiffs" is "Google's profits from data

22   taken from Plaintiffs," as Plaintiffs propose,  would create a significant risk that the jury will conflate

23   profit that Google made as establishing whether "damage or loss" occurred in the first place, rather

24   than first deciding that the elements of CDAFA are met before assessing damages.  This would be

25   contrary to the law   and should not be allowed.

26       If, however, the Court decides to instruct the jury on the definition of this element, then it

27   should enter Google's proposed instruction. Google's proposal clarifies the specific types of

28   "damage or loss" that may give rise to CDAFA liability by drawing the description of what can

encompass damage under CDAFA directly from the text of the statute itself. *See, e.g.*, Cal. Penal Code § 502 (c)(2) (prohibiting the acts of one who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network").

Google also proposes to add language clarifying the types of recovery that might be possible under CDAFA. *See* Dkt. 445 at 19 ("Plaintiffs concede that only nominal damages would be available to them under [a] theory of liability" based on "depletion of battery and bandwidth"). These are correct statements of the law, and consistent with both Plaintiffs' previous representations and the Court's. *See* Dkt. 445 at 17 ("Plaintiffs are unable to show that they are entitled to more than nominal damages associated with their deprivation of privacy. They offer no concrete models or theories that this harm constitutes more than simply an emotional injury."). It is appropriate to include these clarifications in this instruction, rather than simply including them in subsequent instructions, because failure to do so would be misleading for the jury by suggesting that certain types of recovery are available when they are in fact not. Plaintiffs also confusingly suggest that § 502 of the Penal Code specifies that available relief is "not limit[ed] … to nominal damages," but nominal damages are never mentioned in the statute. *See* Cal. Penal Code § 502.

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

CASE NO. 3:20-cv-04688-RS

**PROPOSED JOINT JURY INSTRUCTIONS**

**(DISPUTED) JURY INSTRUCTION NO. 34**

<u>Substantial Factor</u>

For the fifth element, a substantial factor in causing damage or loss is a factor that a reasonable person would consider to have contributed to the damage or loss. It must be more than a remote or trivial factor. It does not have to be the only cause of the damage or loss.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

[Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 430 (2025 edition)]

**<u>Plaintiffs' Statement</u>:**

- Plaintiffs' proposal (the first paragraph, in black) follows the law for instructions under CACI 430. Google's proposed addition (the last sentence in red) is an optional instruction under CACI 430 and Google has not justified its inclusion here. Google has neither pursued nor provided any foundation for how Plaintiffs' harms would have occurred without Google's conduct in this case. Google instead proposes purely speculative hypotheticals that are not tied to any evidence in this case. Thus, instructing the jury on a matter that has not been sufficiently presented to the jury would only serve to confuse the jury or lead them to inappropriately speculate.

**<u>Google's Statement</u>:**

Google proposes retaining the final line in this instruction, which is included in CACI 430. Far from this addition leading to jury confusion or improper speculation, Google would be prejudiced without this clarification due to the risk that a jury might improperly hold Google liable for harm that could have occurred anyway. For example, user data collection could happen regardless of the events alleged by Plaintiffs, or Plaintiffs' data could still have been collected through another means. Various apps also send data through various analytics providers. Insofar as the harm alleged is the loss of control of data, the jury could choose to find that such loss of control

happened regardless. Finally, the harm of battery depletion alleged by Plaintiffs is plainly a harm that could occur regardless of Google's conduct.

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 35**

**SECOND CLAIM: INVASION OF PRIVACY**

<u>Introduction</u>

**Plaintiffs' Proposal:**

Plaintiffs' second claim is a claim for invasion of privacy. To establish this claim, Plaintiffs must prove all of the following elements:

1.     That Plaintiffs had a reasonable expectation of privacy;

2.     Google's invasion would be highly offensive to a reasonable person;

3.     That Plaintiffs sustained injury, damage, loss, or harm; and

4.     That Google's conduct was a substantial factor in causing Plaintiffs' injury, damage, loss, or harm.

Some of these terms have specific meanings that I have already explained. I explained that the term "substantial factor" has the meaning described in Instruction 33. The terms "reasonable expectation of privacy" and "highly offensive" are new terms that I will now define for you.

**Google's Proposal:**

Plaintiffs' second claim is a claim for invasion of privacy under the California Constitution. To establish this claim, Plaintiffs must prove all of the following elements:

1.     Plaintiffs had an objectively reasonable expectation of privacy;

2.     If Google obtained the data at issue, that conduct was so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms that is highly offensive;

3.     Plaintiffs sustained harm; and

4.     Google's conduct was a substantial factor in causing Plaintiffs' harm.

Some of these terms have specific meanings that I have already explained. I explained that the term "substantial factor" has the meaning described in Instruction 33. The term[s] "objectively

**PROPOSED JOINT JURY INSTRUCTIONS**

1  reasonable expectation of privacy" and ["egregious breach of social norms"] are new terms that I
2  will now define for you.

3

4  [Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 1800 (2025 edition)]

5

6  **Plaintiffs' Statement:**

7  - Plaintiffs' proposal (in blue) largely tracks the pattern instruction, CACI 1800. Plaintiffs'
8    proposal deviates in two respects, both of which are well justified.

9  - *First*, both Plaintiffs' and Google's proposal omits CACI 1800's second element, which
10    requires plaintiffs to prove that the defendant "intentionally intruded" on their privacy
11    because this is an invasion of privacy claim and not an intrusion upon seclusion claim.

12

13  - *Second*, Plaintiffs propose the articulation of injury used in the Book of Approved Jury
14    Instructions ("BAJI") 7.20 ("injury, damage, loss, or harm"), rather than the articulation in
15    CACI 1800 ("harm"). The Ninth Circuit has made clear that invasion of privacy
16    encompasses a wide range of injuries, including "a right to disgorgement of profits resulting
17    from unjust enrichment" from Plaintiffs' "valuable data." *In re Facebook, Inc. Internet
18    Tracking Litig.*, 956 F.3d 589, 599–600 (9th Cir. 2020). By using a more inclusive list of
19    harm-related words, the BAJI instruction better conveys the broad scope of cognizable harms
20    that are at issue in this case, which might not align perfectly with a juror's everyday use of
21    the word "harm." Google's proposal is unduly narrow for this case.[1]

22  - Google's proposal (in red) is flawed in three additional respects.

23

24

25  ———————————————

26  [1] Courts routinely rely on the BAJI instruction on privacy torts and other claims. *See, e.g.*, *Thomas
27  v. Restaurant*, 2015 WL 9583029, at *4 (E.D. Cal. Dec. 31, 2015); *Peatrowsky v. Persolve*, 2014
    WL 1215061, at *8 n.62 (D. Nev. Mar. 24, 2014) (privacy torts); *Rowland v. JPMorgan Chase
28  Bank*, N.A., 2014 WL 992005, at *11 (N.D. Cal. Mar. 12, 2014).

- *First*, Google improperly instructs the jury to determine whether its conduct constitutes an "egregious breach of social norms." Both CACI 1800 and BAJI 7.20 suggest instructing the jury to determine whether the defendant's conduct is highly offensive, not an "egregious breach of social norms." This makes sense: A jury is more likely to comprehend what it means to be "highly offensive" than what it means to be an "egregious breach" of unelaborated "social norms." In any event, the Ninth Circuit, the California Supreme Court, and this Court have made clear that Plaintiffs' proposal states the correct standard. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009); *Hill v. NCAA*, 7 Cal. 4th 1, 25 (1994). To be sure, Google's proposed language does appear in judicial opinions. But binding authority provides that the ultimate touchstone is whether the defendant's conduct is "highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (stating that "the intrusion is 'so serious … as to constitute an egregious breach of social norms' such that the breach is 'highly offensive'").

- *Second*, Plaintiffs object to any instruction that describes the conduct at issue as Google merely "obtain[ing] the data at issue." Google is not a passive recipient of (s)WAA-off data: Google wrote and distributed the code that creates and sends Google's servers a copy of Plaintiffs' data even when WAA and sWAA are off. *See, e.g.*, *Brown v. Google*, 685 F. Supp. 3d 909, 939 (N.D. Cal. 2023) (distinguishing Google's conduct from the "reactive data collection" Google invokes here (quotations omitted)). At a minimum, Google's proposed instruction improperly slants the articulation of the facts in Google's favor. Plaintiffs' proposed instruction is free of that type of biased language.

- *Third* and finally, Google asks that the Court "exercise its discretion and refuse to try this claim to the jury." The Court does not have discretion to dismiss Plaintiffs' claim on the basis of disputed jury instructions. Google not surprisingly cites no authority to support that request. The *Turner* case involved a request to *amend a complaint* on the eve of trial to add three additional claims, which the court denied. *Turner v. United States*, 2019 WL 935978,

at *1 (N.D. Cal. Feb. 26, 2019). By contrast, the claim at issue here has survived three motions to dismiss, has been certified under Rule 23(b)(3), and has survived Google's motion for summary judgment. Google's other case (*Martinez*) is also far afield. *Martinez v. Optimus Props.*, 2018 WL 6039875, at *1 (C.D. Cal. June 6, 2018). It was a summary judgment decision addressing whether courts may "separate[e] state and federal claims for trial," which does not apply because (A) there are no federal claims in this case to be separated, and (B) this case is long past summary judgment. Google's next and last chance to prevail on this claim is at trial; it's request for a shortcut should be denied.

Relatedly, Google is wrong to claim that "the Invasion of Privacy claim only permits injunctive relief, and therefore need not be tried by a jury." Google's is legally erroneous, and the Court should not entertain it. Other courts have ruled that invasion of privacy is a claim for which a plaintiff may obtain damages, and which may be presented to jurors for those damages. *See Barajas v. City of Rohnert Park*, 2019 WL 13020803, at *7 (N.D. Cal. Jan. 16, 2019) (jury trial on invasion of privacy); *see also Brown v. Google*, 20-cv-3664, Dkt. 1057, at 165–87 (N.D. Cal.) (proposed jury instructions for Invasion of Privacy claim); *see also infra* Plaintiffs' Statement for Instruction 46 (citing cases). Furthermore, given the "strong federal policy favoring jury trial of fact issues," "federal courts should err on the side of jury trials when in doubt." 9 Fed. Prac. & Proc. Civ. § 2302.1 (4th ed.); *Synopsys, Inc. v. Real Intent, Inc.*, 2024 WL 4557334, at *3 (N.D. Cal. Oct. 22, 2024); *see also S.E.C. v. Jensen*, 853 F.3d 1100, 1106 (9th Cir. 2016) (where "a legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact"); *see also Iguacu, Inc. v. Cabrera*, 2012 WL 12920184, at *1 (N.D. Cal. Apr. 2, 2012) (Seeborg, J.) (when equitable and non-equitable issues overlap, they should be submitted to the jury). In none of the cases Google cites below did a court find that Invasion of Privacy did not confer a right to a jury trial or decline to submit an Invasion of Privacy claim to a jury because the jury was also considering a similar Intrusion Upon Seclusion claim.

1

- In response to Google's argument that it has been "pleading for weeks", Google refuses to

2 agree that both claims can proceed with one set of instructions, insists on presenting different

3 instructions, and yet, simultaneously, demands that in order to streamline things  Plaintiffs

4 choose to dismiss one of its claims in advance of trial.  As Plaintiffs have explained (for

5 weeks), Plaintiffs are not inclined to do so.

6

7 **Google's Statement:**

8         The Court should evaluate this instruction in light of the intrusion upon seclusion

9 instructions below because doing so will make clear that Plaintiffs are proposing virtually identical

10 instructions for two different claims. Plaintiffs' approach would hopelessly confuse the jury;

11 frankly, even counsel cannot understand why Plaintiffs seek to do so here. In effect, if Plaintiffs'

12 disputed instructions are adopted by the Court on their constitutional and tort claims, the Court

13 would read to the jury two virtually identical sets of instructions for two separate claims, and then

14 ask them virtually identical questions on a verdict form. The confusion this will engender is

15 unacceptable. Google has no interest in slanting this instruction toward itself; its interest is in

16 preventing the jury from throwing up its hands in frustration at Plaintiffs' inexplicable choice to

17 assert two very similar claims, and then describe them in instructions as virtually identical.

18         Google's proposed instruction tracks the required elements for an Invasion of Privacy claim

19 under the California Constitution. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)

20 (finding that to state a claim for constitutional invasion of privacy, "the plaintiff's expectations of

21 privacy must be reasonable. … [and] the plaintiff must show that the intrusion is so serious in nature,

22 scope, and actual or potential impact as to constitute an egregious breach of the social norms."

23 (internal citations omitted)); *see also M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *6 (N.D.

24 Cal. Sept. 16, 2024) (the "egregious breach of the social norms" must be one "that is highly

25 offensive") (cleaned up, citations omitted).

26         Plaintiffs' proposal is based on CACI 1800, "Intrusion Into Private Affairs" and BAJI 7.20,

27 "Right of Privacy—Intrusion Into Private Affairs," but neither of these model instructions are

28

1  directed to a constitutional Invasion of Privacy claim. They are more appropriate for Plaintiffs'

2  privacy tort claim rather than their claim under the California Constitution.

3      As Plaintiffs themselves point out, CACI 1800 includes elements (such as that plaintiffs

4  must prove an "intentional intrusion") that *are* present in an Intrusion Upon Seclusion claim, but

5  *not* an element for a constitutional Invasion of Privacy claim. The constitutional Invasion of Privacy

6  claim has similar elements to Intrusion Upon Seclusion, but is nonetheless distinct.

7      Using the same pattern jury instruction for both claims—and in the process eliminating

8  required elements of the constitutional claim—risks confusing the jury by obscuring the differences

9  between these causes of action. Although the claims share overlapping concepts—such as the

10  existence of a privacy interest and offensiveness of the intrusion—they arise from separate legal

11  doctrines and impose distinct requirements. Collapsing the instructions into one may lead jurors to

12  believe that a finding on one claim necessarily determines the outcome of the other, undermining

13  their ability to properly evaluate each claim on its own legal terms.

14      Plaintiffs' arguments should be rejected. Whether a defendants' conduct constitutes an

15  "egregious breach of social norms" is an essential element of a constitutional Invasion of Privacy

16  claim. *Hernandez*, 47 Cal. 4th 272 at 287 (a "plaintiff must show that the intrusion is so serious in

17  nature, scope, and actual or potential impact as to constitute an egregious breach of the social

18  norms.") (citations omitted). The fact that neither CACI 1800 nor BAJI 7.20 contain this element is

19  yet further evidence that these model instructions are not appropriate for this claim. And Google's

20  characterization of the conduct at issue is not biased but rather provides a generalized description

21  that captures the scope of Plaintiffs' allegations.

22      The Court should enter Google's instruction, which accurately describes the elements that a

23  jury must decide in determining an Invasion of Privacy claim under the California Constitution.  If

24  *that* is confusing to the jury in Plaintiffs' view, then they should drop this claim, which adds nothing

25  to their case whatsoever. But what Plaintiffs cannot do is recast the elements of a claim entirely.

26      In the alternative, the Court should exercise its discretion and refuse to try this claim to the

27  jury because "[a]llowing [Plaintiffs] to present [two] essentially identical claims with different

28  names risks jury confusion." *Turner v. United States*, No. 17-cv-02265-WHO, 2019 WL 935978,

at *1 (N.D. Cal. Feb. 26, 2019); *see also id.* at *3 ("[R]equiring the jury to wade through separate instructions on liability for four claims[] . . . would be legally and practically pointless" as "[r]epetition of claims against defendants might have a prejudicial effect; a verdict on all four claims . . . would not increase [plaintiff's] damages recovery (and . . . might well result in an inconsistent verdict and mistrial)[;] . . . and would waste time."); *Martinez v. Optimus Props., LLC*, No. 17-cv-03581-SVW, 2018 WL 6039875, at *21 (C.D. Cal. June 6, 2018) (bifurcating case and staying certain claims after summary judgment due to "substantial likelihood of jury confusion in view of the subtle differences in the theories of liability[,]" including where state law claims involved "an element that is irrelevant to Plaintiffs' [federal] claims").

The Court may so exercise its discretion here because, as recognized by this District, the Invasion of Privacy claim only permits injunctive relief, and therefore need not be tried by a jury. *See Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) (plaintiffs "can seek to enjoin [defendants] but cannot seek damages" under "Article 1, Section 1 of the California Constitution"); *Blanco v. Cnty. of Kings*, 142 F. Supp. 3d 986, 1001 (E.D. Cal. 2015) ("[T]the Court finds that the California Constitutional right to privacy contained in article I, section I does not give rise to a cause of action for money damages."); *Martinez v. County of Alameda*, No. 20-cv-06570-TSH, 2025 WL 240767, at *2 (N.D. Cal. Jan. 17, 2025) ("The Seventh Amendment to the United States Constitution preserves the right to a jury trial for legal claims but not for equitable claims, such as a claim for injunctive relief.") (citing U.S. Const. amend. VII; *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001)); Fed. R. Civ. P. 39(a)(2) (noting that "the court, on motion or on its own, [may] find[] that on some or all of those issues there is no federal right to a jury trial").

Google notes here that it has been pleading with Plaintiffs for weeks to bring some rationality to this issue. So far, Plaintiffs' only response is that they want to try two identical claims to the jury "to keep their options open," and have otherwise refused to provide any reason of any kind why it serves the judicial process to do so. The Court should resolve it now.

Finally, Google would only propose to add the final line, regarding the "egregious breach" definition, should the Court choose to instruct the jury on a definition for that term. As described below, Google's position is that such a definition is unnecessary.

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

## (DISPUTED) JURY INSTRUCTION NO. 36

### Objectively Reasonable Expectation of Privacy

**Plaintiffs' Proposal:**

For the first element, in deciding whether Plaintiffs had a reasonable expectation of privacy, you should consider, among other factors, the following:

a. The identity of the defendant, Google;

b. The extent to which other persons had access to the data at issue;

c. The means by which the intrusion occurred.

**Google's Proposal:**

For the second element, in deciding whether Plaintiffs had an objectively reasonable expectation of privacy in the data at issue, you should consider, among other factors, the following:

a. The customs, practices, and physical settings surrounding Google's conduct;

b. The extent to which other persons had access to the data at issue;

c. Whether each Plaintiff was provided an opportunity to be notified in advance and consent to Google obtaining the data at issue;

d. Whether the data at issue was individually identifiable to particular Plaintiffs; and

e. The means by which the intrusion, if any, occurred.

[Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 1800 (2025 edition)]

**Plaintiffs' Statement:**

- Plaintiffs' proposal (in blue) tracks the pattern instruction, included within CACI 1800, word-for-word.

- Google's proposal (in red) is entirely bespoke, with no basis in CACI or any other pattern instruction of which Plaintiffs are aware. It appears that Google simply cherry-picked its favorite statements from various cases and imported them into a jury instruction. This is improper, particularly where there are several pattern instructions available.

- Not only is Google's approach to this instruction improper—its proposed instruction is also legally erroneous. *First*, the Court has squarely rejected the proposition that the data taken should be "individually identifiable to particular Plaintiffs" to support an Invasion of Privacy claim. *See* Dkt. 445, at 10 ("'information need not be personally identifying to be private'" (quoting *In re Google Referrer Header Privacy Litig.*, 465 F. Supp. 3d 999, 1009–10 (N.D. Cal. 2020)). Other courts are in accord. *See Brown*, 685 F. Supp. 3d at 924 (holding it "enough" that "Plaintiffs have set forth specific facts demonstrating that the reason Google has access to their anonymous, aggregated data is through collection and storage of information from users' private browsing history without consent"), *id*. at 33 n.39 ("Google also repeats the argument that, because the data collected here was anonymized, plaintiffs had no reasonable expectation of privacy. … [T]he Court rejects this argument."); *see also In re Google Referrer Header Privacy Litig.*, 465 F. Supp. 3d at 1009–10. This purported factor is not present in any model instruction Google cites, nor does Google point to a single instance in which any court included similar language in such instructions made for this claim on similar facts. *Second*, it is not true that the mere "opportunity to be notified in advance and consent" undermines a plaintiff's reasonable expectation of privacy. *See Hart v. TWC Prod. And Tech. LLC*, 526 F. Supp. 3d 592, 600–01 (N.D. Cal. 2021) ("the mere existence of a privacy policy is not dispositive"). Google reaches that conclusion only by removing judicial reasoning from its context.

- Likewise, Google's insistence that the term "objectively" be included in this instruction rings hollow. That term does not appear in the model jury instructions at all and for good reason— it would raise more questions than it would answer, and the Ninth Circuit has made clear that what is important is whether "there exists a reasonable expectation of privacy." *In re Facebook, Inc. Internet Tracking Litig.*, 856 F.3d 589, 601 (9th Cir. 2020) (clarifying the test for Invasion of Privacy and Intrusion Upon Seclusion); *see also* CACI 1800. There is no need to deviate from the model instructions to include it here.

1      • If the Court chooses not to give the CACI instruction and instead to craft narrower

2         instructions fitted to the facts of this case, then Google's proposed factors should be rejected,

3         and others should be offered in their place. The jury should be instructed to consider the

4         most important factor: Google's own promises and disclosures to Plaintiffs and class

5         members. *See* Dkt. 445, at 8–9 ("[f]rom the perspective of a reasonable user, it is unclear

6         Plaintiffs were consenting to the data collection at issue"); *Brown v. Google*, 685 F. Supp.

7         3d 909, 941 (N.D. Cal. 2023) (finding a triable issue because "there was a dispute about

8         whether Google has collected this data surreptitiously"); *In re Facebook, Inc. Internet*

9         *Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020) (focusing significant attention on the

10        defendant's disclosures). The jury should also be instructed to consider other factors upon

11        which the Ninth Circuit has placed importance in cases like these, such as "whether [Google]

12        gained 'unwanted access' to data by electronic or other covert means," whether Google's

13        data collection was "surreptitious and unseen," "[t]he nature of the allegedly collected data,"

14        and the amount of data captured. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589,

15        603 (9th Cir. 2020); *Brown v. Google*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023). These

16        tailor-made instructions should also make clear that the jury may consider whether Google

17        (or others) are able to connect this data to specific users, rather than whether Google

18        "associated with Plaintiffs' identity" (whatever that means). *See* Dkt. 445, at 10. Google's

19        proposal conspicuously omits these factors, which the Ninth Circuit and this Court have

20        already determined to be important in this case and those like it.

21

22    **Google's Statement:**

23        Google's proposal here is necessary to explain the second element of Plaintiffs' Invasion of

24    Privacy claim. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009). Plaintiffs fail to identify

25    a model instruction that specifically deals with an Invasion of Privacy claim. Google's proposal

26    tracks CACI 1800 where possible, but crucially includes some additions that are tailored to

27    Plaintiffs' claim under the California Constitution.

28

The parties' dispute centers around two main issues: (1) the inclusion of the word "objectively"; and (2) certain of the factors that the jury should consider in determining whether the Plaintiffs had an objectively reasonable expectation of privacy. Google's proposals on both fronts are both clearer and more accurate, and should be given to the jury.

**First,** Plaintiffs seek to omit the requirement that the Plaintiffs' expectation of privacy "must be objectively reasonable," despite the fact that the California Supreme Court has found that a plaintiff must meet this standard when claiming a violation of the state constitutional privacy right. *Sheehan v. San Francisco 49ers, Ltd.*, 45 Cal. 4th 992, 1000 (2009) (For a violation of the state constitutional right to privacy, "[a] plaintiff's expectation of privacy in a specific context must be objectively reasonable under the circumstances, especially in light of the competing social interests involved."). This distinction is important for a jury to consider when evaluating whether Plaintiffs' expectations of privacy here were reasonable under the law. Because Plaintiffs are likely to testify about their personal beliefs and subjective privacy expectations, there is a significant risk that the jury may mistakenly apply a subjective standard in evaluating the invasion of privacy claim. To prevent this confusion, the jury should be clearly instructed to apply the objective standard as Google proposes here.

**Second,** the Parties agree on Google's proposed factors (b) and (e). As for Google's remaining factors, each has been used by courts to determine Invasion of Privacy claims. Regarding factors (a) and (c), the California Supreme Court has found that a plaintiff must demonstrate both in order to establish an objectively reasonable expectation of privacy. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) ("This element rests on an examination of customs, practices, and physical settings surrounding particular activities … as well as the opportunity to be notified in advance and consent to the intrusion.") (citations omitted). And regarding factor (d), the Ninth Circuit has held that Plaintiffs could not establish an invasion of privacy claim where they failed to allege that the data collected was "individually identifiable to particular [plaintiffs]." *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017).

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 37**

Highly Offensive / Egregious Breach of Social Norms

**Plaintiffs' Proposal:**

In deciding whether an intrusion is highly offensive to a reasonable person, you should consider, among other factors, the following:

    a.    The extent of the intrusion;

    b.    Google's motives and goals; and

    c.    The setting in which the intrusion occurred.

**Google's Proposal**

None, or, in the alternative:

In deciding whether Google's conduct is an egregious breach of social norms that is highly offensive, you should consider, among other factors, the following:

    a.    The extent and gravity of the intrusion, if any, for each Plaintiff;

    b.    Google's motives and goals;

    c.    The setting in which the intrusion occurred;

    d.    Whether Google linked any data to a person's identity. Obtaining data that is not linked to a person's identity may not be an egregious breach of social norms; and

    e.    Whether Google obtaining any data at issue is routine commercial behavior. Routine commercial behavior may not be an egregious breach of social norms.

[Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 1800 (2025 edition)]

**Plaintiffs' Statement:**

- An Instruction on the "highly offensive" should be given in this case. It is a standard CACI instruction that is included in the set of instructions for privacy claims.

- Plaintiffs' proposal tracks the CACI 1800 instructions word-for-word. Google argues that CACI "fails to fully capture the appropriate analysis" and its proposed instruction, by contrast, has no basis in any pattern instruction. As with the expectation-of-privacy element,

Google cobbles together a bespoke instruction out of its favorite statements from various cases. As previously explained, this is an inappropriate basis for a jury instruction. Google's proposed instruction is also legally erroneous for at least three reasons.

- **First**, Google would present the third and fourth of its purported factors as outcome-determinative. Google argues that it "does not suggest that either is outcome determinative," while simultaneously including language stating outright that "[o]btaining data that is not linked to a person's identity" and "[r]outine commercial behavior" cannot be highly offensive. This is incorrect. California law clearly requires a textured analysis of all of the elements; no one element can bar relief. *See* Dkt. 445, at 10 (requiring a "holistic consideration of factors" (quotations omitted)) *Brown v. Google*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) (same); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) (same); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) ("California tort law provides no bright line on 'offensiveness'; each case must be taken on its own facts." (quoting *Shulman v. Grp. W. Prods., Inc.*, 18 Cal.4th 200, 236 (1998))); BAJI § 7.20 (instructing jury to "consider all of the evidence").

- **Second**, and relatedly, Google assertion that "[o]btaining data that is not linked to a person's identity is not an egregious breach of social norms" is inaccurate and has no legal basis. This Court already found that Plaintiffs may have a reasonable expectation of privacy over their data even if it is not "'personally identifying" and found that Google taking their data may be highly offensive here. *See* Dkt. 445, at 10, 12 (quoting *In re Google Referrer Header Privacy Litig.*, 465 F. Supp. 3d 999, 1009–10 (N.D. Cal. 2020)). In *Brown*, Judge Gonzalez Rogers similarly held that a reasonable jury could find that Google's conduct was highly offensive, notwithstanding Google's arguments that the data was "anonymized." *See Brown v. Google*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) ("Google's argument that privacy harms are never concrete where only anonymized data is collected does not persuade"). Furthermore, as said above, Plaintiffs object to Google's mischaracterization of the challenged conduct as Google just "obtaining" data. Plaintiffs' claims focus on how Google collected and saved app activity data using specific Google SDKs, and then used that data

for Google's enrichment, not just some process where Google passively "obtained" data. *See Brown v. Google*, 685 F. Supp. 3d 909, 939 (N.D. Cal. 2023) (distinguishing Google's conduct from the "reactive data collection" Google invokes here (quotations omitted)). **Third**, Google's instruction on "routine commercial behavior" is improper attorney argument that does not belong in a jury instruction. In *Brown v. Google*, Judge Gonzalez Rogers rejected Google's request to include this exact instruction. *See* Nov. 29, 2023 Transcript in *Brown v. Google*, No. 20-cv-03664 (N.D. Cal.) (Dkt. 1080) at 188:3-11 ("With respect to routine commercial behavior, this is all argument. You can say -- you can argue, hey, this is routine commercial behavior. How can that be egregious? That's argument. I'm not going to tell them that as a matter of law. . . . That's what argument is. It's not -- it's not a proper basis for an instruction."). In any event, Google violating its own disclosures—by capturing, saving, and using data when (s)WAA—is off is not routine commercial behavior. *See, e.g.*, *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1072 (N.D. Cal. 2021); *see also In re Google Inc., 2013 WL 5423918*, at *8 (N.D. Cal. Sept. 26, 2013). This proposed instruction as currently written risks creating the misunderstanding that Google's behavior cannot be highly offensive simply because Google uses the data it told Plaintiffs it would not take to make money.

- If the Court chooses not to adopt Plaintiffs' proposal and instead to craft narrower instructions fitted to the facts of this case, then Google's proposed factors should be rejected, and others should be offered in their place. The Court should instruct the jury to consider whether Google's employees recognized that its collection, saving, and use of (s)WAA-off data was a "problematic privacy issue," and yet did nothing to address these concerns. *In re Facebook Tracking*, 956 F.3d at 606 (finding it significant that "the company's own officials recognized these practices as a problematic privacy issue"); Dkt. 445 at 12 (noting that "Google's conduct is at least arguably offensive because it collects (s)WAA-off data despite concerns raised by its employees and with the knowledge that its disclosures are ambiguous and deficient"). Google's proposal conspicuously omits these factors, which the Ninth Circuit and this Court have already determined to be important in this case and those like it.

1 • For reasons previously explained, *see* Disputed Instruction No. 34, Plaintiffs also object to

2 characterizing this element as an "egregious breach of social norms," rather than the "highly

3 offensive" conduct standard contained in all pattern instructions and Plaintiffs' proposal. *See*

4 *also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020)

5 (Invasion of Privacy requires that "the intrusion was highly offensive").

6 **Google's Statement:**

7 For Invasion of Privacy under the California Constitution, there is no model instruction for

8 what constitutes an "egregious breach of social norms that is highly offensive." Instead, Plaintiffs

9 use CACI 1800, which defines the term "highly offensive" as used in their Intrusion Upon Seclusion

10 claim. In essence, Plaintiffs propose to define different elements in identical fashion, creating far

11 more confusion than offering no definition for this element at all. Accordingly, in an attempt to

12 streamline matters for both the Court and jury, Google proposes eliminating this definition entirely.

13 Google's proposed Instruction No. 34, which instructs the jury that it must consider whether, "[if]

14 Google obtained the data at issue, that conduct was so serious in nature, scope, and actual or potential

15 impact as to constitute an egregious breach of the social norms that is highly offensive," is

16 sufficiently detailed for jurors to understand their charge. This description is plain enough to allow

17 the jury to determine whether Plaintiffs have satisfied this element. The jurors can make their

18 determination based upon the evidence introduced, attorney argument, and the language in

19 Instruction No. 34, without being needlessly bogged down in additional instructions.

20 If, however, the Court elects to provide a definition on this element, then it should enter

21 Google's alternative instruction. Google's alternative instruction on what constitutes an "egregious

22 breach of social norms" accurately explains the third element of an Invasion of Privacy claim. Since

23 this inquiry is related to whether a defendant's conduct is "highly offensive," as with the prior

24 instruction, Google's proposal tracks CACI 1800 where possible, but includes some additions that

25 are tailored to Plaintiffs' claim under the California Constitution. Where the CACI instruction fails

26 to fully capture the analysis, it is more appropriate to turn to case law for guidance. The sub-parts

27 elucidated in Google's alternative instruction correctly instruct the jury on factors that it may

28 consider in determining whether Plaintiffs have proven that Google's alleged conduct was an

"egregious breach of social norms," each of which have been used by courts in determining Invasion of Privacy claims.

The parties would agree on factors (a), (b), and (c), but Google will nonetheless briefly recite the reasons for their inclusion. *For factor (a)*, the "extent and gravity of the invasion is an indispensable consideration in assessing [whether] an alleged invasion of privacy" constitutes "an egregious breach of the social norms." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37 (1994). A jury should consider this factor in determining whether any breach was egregious. *For factor (b)*, Google's "motives and goals" are important context for the jury to evaluate in determining the degree of seriousness of Google's conduct. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 889 (C.D. Cal. 2024) (this analysis requires "a holistic consideration of factors such as … the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive); *Cherkin v. PowerSchool Holdings, Inc.*, 2025 WL 844378, at *2 (N.D. Cal. Mar. 17, 2025) (it is "appropriate to examine … any justification and other relevant interests."); *see also Heeger v. Facebook, Inc.*, 2019 WL 7282477, at *3 (N.D. Cal. Dec. 27, 2019) (this is a "context-specific [] inquiry"). The same is true of *factor (c),* the "setting in which the intrusion occurred." *See, e.g., Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) ("Relevant factors include the degree and setting of the intrusion, and the intruder's motives and objectives.").

Google's alternative factors (d) and (e) are both factors on which courts have previously relied when assessing Invasion of Privacy claims. Google does not suggest that either is outcome determinative and agrees with Plaintiffs that the jury's determination of this element must be holistic and contextual—the instruction asks the jury to consider all four of Google's proposed factors, and does not imply that some should be elevated over others. However, Google's language provides helpful context for the jury in their deliberations. *For factor (d)*, for example, in *I.C. v. Zynga, Inc.*, the court dismissed the invasion of privacy claim where plaintiffs' "anonymity is preserved." 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022). The jury may consider this factor when determining whether Google's alleged conduct constituted an "egregious breach of social norms." *And finally, for factor (e)*, courts have repeatedly held that conduct that is "routine commercial behavior" is not an egregious breach of social norms for purposes of an Invasion of Privacy claim. *Hammerling v.*

*Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) ("Courts in this district have held that data collection and disclosure to third parties that is "routine commercial behavior" is not a "highly offensive" intrusion of privacy.") (collecting cases); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992, 125 Cal. Rptr. 3d 260, 265 (2011), *as modified* (June 7, 2011) ("This conduct is not an egregious breach of social norms, but routine commercial behavior."). The Court should eliminate this instruction entirely, but, if the Court determines that an instruction is preferable here, should enter Google's alternative instruction.

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 38**

**THIRD CLAIM: INTRUSION UPON SECLUSION**

<u>Introduction</u>

Plaintiffs' third claim is an intrusion upon seclusion claim.  To establish this claim, Plaintiffs must prove all of the following elements:

1.    That Plaintiffs had a reasonable expectation of privacy that Google would not [obtain the data at issue] [collect or save the data at issue];

2.    That Google intentionally intruded upon the Plaintiffs' reasonable expectation of privacy by obtaining the data at issue;

3.    That Google's intrusion would be highly offensive to a reasonable person;

4.    That Plaintiffs [sustained injury, damage, loss, or harm] [were harmed]; and

5.    That Google's conduct was a substantial factor in causing Plaintiffs' [injury, damage, loss, or harm] [harm].

Some of these terms have specific meanings, which I have already defined for you. I explained that the term "reasonable expectation of privacy" has the meaning described in Instruction 35.  I explained that the term "substantial factor" has the meaning described in Instruction 33. The term "highly offensive" [is a new term that I will now define for you] [has the meaning described to you in Instruction 34].

[Authority: Book of Approved Jury Instructions ("BAJI") 7.20]

**Plaintiffs' Statement:**

- Plaintiffs do not presuppose any conduct or implicitly endorse any narrative by seeking to including the term "save" in the first element of this instruction.  Plaintiffs' operative complaint (Dkt. 289) repeatedly uses the term "save," beginning with the very first sentence ("This case is about Google's surreptitious interception, collection, saving, and use of consumers' highly personal browsing histories on their mobile devices, whenever consumers use certain software applications ("apps") that have incorporated Google code").  The

conduct complained of is clear, but nothing about the instruction implies that Google violated the law, but instead informs the jury of what Plaintiffs must prove. And contrary to Google's contention, Plaintiffs do not "seek to omit the requirement that 'the expectation of privacy must be objectively reasonable.'" CACI 1800 repeatedly refers to "a reasonable expectation of privacy," not an "objectively reasonable expectation of privacy." Consequently, Plaintiffs are not seeking to *omit* the word "objectively;" rather, Google is seeking to *add* it. Google notes in its Statement that "The California jury instructions approved by the Judicial Council are the official instructions for use in the state of California," but offers no compelling justification why it is necessary to modify "reasonable expectation of privacy" with the word "objectively." CACI 1800's Sources and Authority cite *Garrabrants v. Erhart* (2023) 98 Cal.App.5th 486, 500, which states, "Whether an expectation of privacy is reasonable in any given circumstance is a context-specific inquiry, and '[t]he protection afforded to the plaintiff's interest in his [or her] privacy must be relative to the customs of the time and place, to the occupation of the plaintiff[,] and to the habits of his [or her] neighbors and fellow citizens.'" This statement makes clear it is not necessary to further modify "a reasonable expectation of privacy" with "objectively" because it already is an objective standard.

- By contrast, while Plaintiffs agree that use of CACI instructions is "strongly encouraged," they offer a compelling justification for altering CACI 1800 slightly to match the facts and circumstances of this case. Plaintiffs' proposal tracks the Book of Approved Jury Instructions 7.20, which differs from CACI 1800 in just a few respects:

- *First*, BAJI 7.20 requires plaintiffs to prove an intrusion on "the solitude or seclusion, private affairs or concerns of the plaintiff," whereas CACI 1800 requires plaintiffs to prove an intrusion on a reasonable expectation of privacy. As is apparent, CACI 1800 is better tailored for invasion-of-privacy claims, whereas BAJI 7.20 is better-tailored for intrusion-upon-seclusion claims.

- *Second*, Plaintiffs propose instructing the jury to consider whether Google's intrusion is "of a kind that would be highly offensive," whereas CACI would instruct the jury to consider

only the "manner" in which the intrusion occurred. California law clearly demonstrates that the amount and sensitivity of the information revealed is relevant to this element, in addition to the mode by which the intrusion occurred. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) (instructing courts to consider, among other factors, "the likelihood of serious harm to the victim" and "the degree … of the intrusion").

- *Third*, BAJI 7.20 likewise provides a list of the harms.

**Google's Statement:**

Google's proposal assiduously follows the appropriate model jury instruction, CACI 1800. The Parties' dispute centers around (1) the description of the circumstances in which Plaintiffs must demonstrate a reasonable expectation of privacy and (2) the description of the harm that Plaintiffs must prove. The Court should follow Google's proposals on all counts.

***First,*** Plaintiffs' proposal is inappropriate because it presupposes that Google "saves" a specific category of data and leaves out the context of *where* it is saved, which is a hotly disputed factual issue that the jury must resolve (i.e., whether the WAA control only applies to data saved "to your account" or more generally, as Plaintiffs allege). Google describes the conduct at the center of plaintiffs' claims without assuming the truth of disputed facts. This language helps ensure that the jury evaluates whether there was a reasonable expectation of privacy based on the evidence presented, rather than on an instruction that implicitly endorses one party's narrative.

***Second,*** Google would urge the Court to follow its proposal for element four, which reflects the CACI 1800 language, rather than Plaintiffs' proposal that relies on BAJI. When available, use of CACI instructions is "strongly encouraged." Cal. R. Ct. 2.1050(f); *see also id*. at 2.1050(a) ("The California jury instructions approved by the Judicial Council are the official instructions for use in the state of California."). Plaintiffs claim that there is some inconsistency between Google stating that CACI is the preferred model while simultaneously suggesting clarifications based on case law. This is not true. Adding clarifications to the CACI instructions based on what courts have decided is different from asking the Court to adopt a different set of model instructions entirely.

1    Additionally, Google would only propose to add the final line, regarding the "highly

2  offensive" definition, should the Court choose to instruct the jury on a definition for that term. As

3  described below, Google's position is that such a definition is unnecessary.

4

5  DATE SUBMITTED: August 11, 2025

6  DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 39**

Highly Offensive

**Plaintiffs' Proposal:**

For the third element, in deciding whether an intrusion is highly offensive to a reasonable person, you should consider, among other factors, the following:

     a.    The extent of the intrusion;

     b.    Google's motives and goals; and

     c.    The setting in which the intrusion occurred.

**Google's Proposal:**

None.

[Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 1800 (2025 edition)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**Plaintiffs' Statement:**

- An Instruction on the "highly offensive" should be given in this case. It is a standard CACI instruction that is included in the set of instructions for privacy claims.

- Plaintiffs' proposal tracks the CACI 1800 instructions word-for-word.

**Google's Statement:**

As with Instruction No. 36 ("Egregious Breach of Social Norms"), Google proposes eliminating the "Highly Offensive" definition entirely in hopes of streamlining matters for both the Court and the jury. The Parties agree that Instruction No. 37 should instruct jurors that, in deciding Google's liability under Claim 3 (Intrusion Upon Seclusion), they must consider whether "Google's

intrusion would be highly offensive to a reasonable person." The jury, standing in the shoes of the "reasonable person," is well-equipped to decide whether the conduct at issue is "highly offensive" based on common sense, and without this instruction. *See, e.g.*, *Schulz v. Pennsylvania R.R. Co.*, 350 U.S. 523, 526 (1956) ("The very essence of [the jury's] function is to select from among conflicting inferences and conclusions that which it considers most reasonable."). Google's goal is to adopt a practical approach that avoids unnecessary complexity. Striking this instruction would further that goal.

**(JOINT) JURY INSTRUCTION NO. 40**

<u>Affirmative Defenses – Introduction</u>

Google asserts certain affirmative defenses. Google has the burden to prove these defenses by a preponderance of the evidence. Plaintiffs deny these defenses.

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 41**

Affirmative Defenses – Statute of Limitations

Applies to all Claims

For each claim, Google asserts a statute of limitations defense. [Google contends that portions of the Plaintiffs' claims were not filed within the time set by law.] [Google contends that Plaintiffs' damages, if any, should be limited to the time periods after certain dates, which I will describe in a moment.] To succeed on this defense [with respect to the portions of Plaintiffs' claims that Google contends were not filed within the time set by law], Google must prove that [at least some of each of the] Plaintiffs' claimed [damages, loss or] harm occurred before July 14, 2017.

If Google proves that a portion of the Plaintiffs' claimed damages, loss, or harm occurred before July 14, 2017, [Plaintiffs may still recover damages relating to that earlier damages, loss, and harm if Plaintiffs prove that before that date] [the plaintiffs' lawsuit was still filed on time if the plaintiffs prove that before that date]:

●    Plaintiffs did not discover, and did not know the facts that would have caused a reasonable person to suspect, that they had suffered harm that was caused by someone's wrongful conduct; or

●    Plaintiffs did not discover, and a reasonable and diligent investigation would not have disclosed, that the conduct at issue contributed to Plaintiffs' harm.

[Google's statute of limitations defense only applies with respect to any monetary relief for damages, loss, or harm that occurred before those dates.  For all damages, loss, or harm that occurred after those dates, Google has no statute of limitations defense, and you may not limit any monetary relief for those periods based on this affirmative defense.]

[Authority: Judicial Council of California Civil Jury Instructions (CACI) Nos. 454 & 455 (2025 edition)]

**Plaintiffs' Statement:**

- On this instruction, the parties have one fundamental disputes: Whether the jury should be instructed that the statute of limitations cannot immunize Google from liability for conduct that occurred *within the limitations period*.

- The jury should be instructed that the statute of limitations defense can only limit Google's liability, not absolve it altogether. That is a legally correct statement of law, and excluding such an instruction may mislead the jury to believe they should render a verdict entirely in Google's favor if they find that some harm arose before the limitations period.

- The parties agree that the statute of limitations cannot immunize Google from liability for conduct that occurred within the limitations period (*i.e.*, after July 14, 2017). The California Supreme Court "ha[s] long settled that separate, recurring invasions of the same right can each trigger their own statute of limitations." *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 838 (Cal. 2013). Accordingly, the Ninth Circuit and courts in this Circuit have held that when some of the alleged invasions of privacy or statutory violations occurred within the limitations period, the statute of limitations cannot provide a complete defense. *See, e.g.*, *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1148 (9th Cir. 2020) (holding that "each interception is a discrete violation" with its own statute of limitations); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 625 (N.D. Cal. 2021) (rejecting Google's argument that the date "the challenged conduct first occurred" was relevant to the statute of limitations "each violation triggers a separate statute of limitations, and Plaintiffs allege that violations took place … shortly before Plaintiffs' complaint was file"); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069–70 (N.D. Cal. 2021) (same). The statute of limitations defense could only foreclose liability for conduct *before* the limitations period (*i.e.*, before July 14, 2017).

- Despite that agreement, Google proposes an instruction that would lead the jury to the opposite conclusion. According to Google's proposal, Google's statute of limitations defense absolves it of liability as long as "at least some" of Plaintiffs' harm occurred prior to the relevant dates. Google also proposes instructing the jury that the lawsuit was not "filed on time" if "a portion of" Plaintiffs' damages occurred before those dates. Hearing this

instruction, the jury would likely understand that the lawsuit and claims *as a* whole are not timely, and are therefore barred, as long as some injury occurred prior to the limitations period. That is an incorrect understanding of the law and is plainly prejudicial to Plaintiffs. Google identifies no respect in which Plaintiffs' proposed instruction is inconsistent with law or prejudicial to Google.

**Google's Statement:**

Plaintiffs' proposed instructions fundamentally misrepresent Google's statute of limitations defense. Plaintiffs' proposed language significantly departs from CACI 454 by implying that the statute of limitations only restricts the time frame for recoverable damages, rather than eliminating entirely those claims—or parts of claims—that are time-barred. In contrast, Google's instructions accurately reflect that Google bears no liability for conduct occurring outside the limitations period, while acknowledging that any portion of the claims accruing within the limitations period may proceed. *See, e.g.*, *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021) ("the Ninth Circuit and California Supreme Court have held that separate, recurring invasions of the same right each trigger their own separate statute of limitations."). Tellingly, Plaintiffs have cited no authority to support their erroneous interpretation.

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 42**

Statute of Limitations Tolling – Fraudulent Concealment

Applies to All Claims

Even if you find that some of Plaintiffs' damages occurred prior to the dates I just described, you must reject Google's statute of limitations defense if you find that Google fraudulently concealed the existence of Plaintiffs' claims. Plaintiffs bear the burden of proving fraudulent concealment by a preponderance of the evidence. [There are three requirements:] [Plaintiffs must show that, before the corresponding dates listed in the instruction above:]

1.    Google took affirmative acts to [mislead Plaintiffs] [prevent Plaintiffs from discovering that they had suffered harm that was caused by Google's conduct];

2.    [Plaintiffs did not have actual or constructive knowledge of the facts giving rise to their claims] [As a result of Google's affirmative acts, Plaintiffs did not discover, and a reasonable and diligent investigation would not have disclosed, that they had suffered harm that was caused by Google's conduct]; and

3.    Plaintiffs acted diligently in trying to uncover the facts giving rise to their claims.

**Plaintiffs' Statement:**

- Google's attempt to analogize the fraudulent concealment rule with the delayed discovery rule is improper. Plaintiffs' proposal tracks case law from this District outlining the specific elements that a plaintiff must prove for fraudulent concealment after a defendant has established evidence supporting a statute of limitations defense. *See Aurora Astro Prods. LLC v. Celestron Acquisition, LLC*, 691 F. Supp. 3d 1132, 1151 (N.D. Cal. 2023); *see also Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1070–71 (N.D. Cal. 2021) (citing *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015)). The jury should be instructed on this well-established law, not an instruction (delayed discovery rule) that is not before the jury.

1   **Google's Statement:**

2       Plaintiffs' proposal ignores the fact that "the fraudulent concealment rule" is a "close cousin"

3   of the "delayed discovery rule," and eschews CACI 455 (Statute of Limitations – Delayed

4   Discovery) in favor of a bespoke instruction. *Moya v. Ford Motor Co.*, 152 F.3d 927 (9th Cir. 1998)

5   (citing *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994)); *see also Hawthorne v.*

6   *Umpqua Bank*, No. 11-CV-06700-JST, 2014 WL 295499, at *4 (N.D. Cal. Jan. 26, 2014) (same).

7       Google's proposal acknowledges the relationship between fraudulent concealment and

8   delayed discovery, by modifying CACI 455 (Statute of Limitations – Delayed Discovery) to clarify

9   that this instruction must focus on Google's conduct (i.e., Google's "affirmative acts") rather than

10  solely on the Plaintiffs' knowledge or diligence. *See Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d

11  1055, 1062 (9th Cir. 2012) ("fraudulent concealment focuses on the actions of the defendant").

12  Because there is an applicable CACI model, which Google's proposal follows, the Court should

13  enter Google's proposed instruction.

14

15  DATE SUBMITTED: August 11, 2025

16
    DATE REVISED: _____

17

18

19

20

21

22

23

24

25

26

27

28

## (DISPUTED) JURY INSTRUCTION NO. 43

<u>Affirmative Defense – Consent</u>

<u>Applies to Claim 2 (Invasion of Privacy) and Claim 3 (Intrusion Upon Seclusion)</u>

**Plaintiffs' Proposal:**

Google is not responsible for Plaintiffs' harm, if any, if Google proves that Plaintiffs consented, by words or conduct, to the specific conduct at issue. Any consent must be knowing, actual, and voluntary. For consent to be knowing, Google must prove that Plaintiffs were explicitly notified of the specific practice being challenged. For consent to be actual, Google must prove that it did not exceed the scope of any consent Google did obtain. For consent to be voluntary, Google must prove that Plaintiffs had a practical and effective opportunity to decline consent.

Consent should be evaluated from the perspective of a reasonable user reading Google's disclosures to users. Any ambiguities in Google's disclosures should be construed against Google, as the party that drafted the disclosure.

**Google's Proposal**

Google is not responsible for the plaintiffs' harm, if any, if Google proves that the plaintiffs consented, by words or conduct, to the conduct at issue. Consent can be express or implied, but any consent must be actual. Consent should be evaluated from the perspective of a reasonable user.

**Plaintiffs' Statement:**

- Because the parties have multiple disputes about this instruction, Plaintiffs address each dispute separately.

    1. <u>Users must be "explicitly notified" of the "specific practice" being challenged</u>

- Plaintiffs' proposal tracks the leading Ninth Circuit case on consent for data privacy cases, a case Google somehow ***ignores***. *See Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024). *Calhoun* addressed claims that included an intrusion upon seclusion claim based on Google's alleged improper collection and use of data, and the Ninth Circuit outlined the requirements for Google to prove consent, which include that: (A) "any consent must be

actual", meaning "the disclosures must **explicitly notify** users of the conduct at issue."; and (B) "consent is only effective if the person alleging harm consented to the **particular conduct**, or to substantially the same conduct and if the alleged tortfeasor did not exceed the scope of that consent.." While Google's proposal includes the requirement of "actual" consent, it leaves the jury to guess at what that means. Plaintiffs' proposal, by contrast, appropriately instructs the jury that it requires explicit notification of the conduct at issue. Google's proposal entirely omits the second requirement under black-letter law, which is that the consent must be to the particular conduct at issue.

- Plaintiffs' proposal also tracks this Court's formulation of the consent defense at summary judgment and class certification. *See* Dkt. 445 (MSJ Order) at 16 ("consent is only effective if the person alleging harm consented to the particular conduct, or to substantially the same conduct and if the alleged tortfeasor did not exceed the scope of that consent"); Dkt. 352 (class certification order) at 16 (the relevant inquiry as "whether class members consented to the collection of sWAA-off data," not Google's practices more generally).

- Plaintiffs' proposal likewise tracks other decisions from courts within this District that have articulated the consent standard for data privacy cases. *See, e.g.*, *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023) (for consent to be effective, "the disclosures must explicitly notify users of the practice at issue"); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) ("in order for consent to be actual, the disclosures must explicitly notify users of the practice at issue").

2.  Consent is evaluated based on how a "reasonable user" interprets Google's disclosures

- As this Court explained in its recent *motions in limine* order, the "consent question in this case resolves around" "Google's disclosures to Plaintiffs" and whether "it was objectively reasonable for Plaintiffs to expect that turning WAA or (s)WAA off would stop Google from collecting their data." Dkt. 587 at 6-7. Plaintiffs' proposal also follows the Ninth Circuit's *Calhoun* decision. *See Calhoun* 113 F.4th at 1147 (consent is evaluated from the perspective

of a "how a reasonable user would understand Google's [disclosures]"). Google mostly agrees to this aspect of the instruction, but omits the portion about a reasonable user "reading *Google's* disclosures," which likewise tracks this Court's articulation of the consent defense. At summary judgment, this Court summarized and applied the *Calhoun* holding, explaining: "The Ninth Circuit confirmed that 'whether the plaintiffs consented turned on the terms of various disclosures and ***whether a reasonable user reading them*** would think that he or she was consenting to the data collection.'" Dkt. 445 at 9 (quoting *Calhoun*, 113 F.4th at 1148) (emphasis added).

### 3.   Consent must be "voluntary"

- Plaintiffs correctly propose instructing the jury that any consent must be voluntary. This instruction tracks blackletter law. In *Hill v. NCAA*, 7 Cal. 4th 1, 26 (1994), the California Supreme Court taught that consent is ineffective if "involuntary," including for example where the "consequence" of refusal is exclusion from "a government benefit or an economic necessity that society has decreed must be open to all." *Id.* at 42; *see also Hansen v. Cal. Dept. of Corrections*, 920 F. Supp. 1480, 1505 (N.D. Cal. 1996) (holding consent invalid as a matter of law on this basis). Plaintiffs' proposal incorporates this voluntariness requirement, which Google's proposal omits.

- Plaintiffs' proposal similarly tracks this Court's prior orders, which are consistent with *Hill*'s teachings. At class certification, this Court rejected Google's argument that "Plaintiffs' continued use of Google's products and services" demonstrated consent, reasoning that "the ubiquitous nature of phones, coupled with the sheer number of apps with Google SDKs would render Plaintiffs' use of their phones impossible," particularly given that our "growing reliance on phones increasingly makes them necessities, not luxuries." Dkt. 352 at 13; *see also* Dkt. 445 (MSJ Order) at 15 ("Google has not explained how it received 'consent' by (s)WAA-off users to collect the data if there was no meaningful way for users to provide that consent."). This Court thus acknowledged that a jury could find Plaintiffs did not consent if the jury concludes that Google made it impossible for Plaintiffs to avoid

having their data collected by Google. Plaintiffs' proposal reasonably incorporates that standard into the instruction.

- Plaintiffs' proposal also tracks CACI 3025 (consent to search), which explains that any consent must be "voluntarily" given.

4. <u>Ambiguities are construed against the drafter of the disclosures</u>

- The Court and the parties agree this case "concerns *Google's* disclosures about the sWAA button." Dkt. 528 (Google's Motion *In Limine* 10) at 3 (quoting Dkt. 352 (class certification order) at 17 (emphasis in class certification order)). Google is the party that drafted these disclosures. The jury should therefore be given what is a standard instruction for interpreting form disclosures like these, drafted exclusively by one of the parties. *See* CACI 320. As explained by the Ninth Circuit in *Calhoun*, "the disclosures are read together and in the light most favorable to Plaintiffs." *Calhoun*, 113 F.4th at 1150.

5. <u>Google's proposal is deficient for other reasons</u>

- In addition to the flaws summarized above, Google's proposal is deficient for four additional reasons.

- *First*, Google's reliance on CACI 1721 is misplaced. That instruction addresses consent to a defamatory statement. Rather than borrow instructions from that claim, this Court should apply the Ninth Circuit's formulation of the consent defense for data privacy cases, as this Court did at summary judgment. *See* Dkt. 445 at 9 (relying on and applying *Calhoun* to decide consent).

- *Second*, Google does not actually "track" the CACI 1721 instruction. For example, nothing in that instruction says anything about "implied" consent. Instead, Google borrowed portions of CACI 1721 and then added to it by pulling from data privacy cases that Google apparently likes. *See infra* (citing *Brown v. Google* for the "implied consent" language). Google thus

concedes that this instruction should be crafted based on data privacy decisions, not a defamation pattern instruction. And of course, the proper north star is the Ninth Circuit's recent *Calhoun* decision.

- *Third*, the cases Google cites do not hold that a consent defense applies "the same" way to data privacy claims, as compared to defamation claims. The *Jacob* case does not even use the word "consent"; it addressed the litigation privilege. *Jacob B. v. Cnty. of Shasta*, 40 Cal. 4th 948, 961 (2007). And the *Kelly* case merely notes that consent can be a defense to both types of claims. Indeed, that decision was an appeal of a demurrer (it had nothing to do with jury instructions) and it was decided in 1986 (long before courts began grappling cases about Internet data). *Kelly v. William Morrow & Co.*, 186 Cal. App. 3d 1625, 1628 (1986).

- *Fourth*, Plaintiffs disagree with Google that consent can be implied for these claims. Setting aside that disagreement, there is still no reason to provide that instruction, which is at best redundant to Plaintiffs' (and Google's) proposal to tell the jury that consent can be given by words or conduct. This latter formulation better tracks the Court's summary judgment order, which explained how the "focus" of the inquiry should be on "the perspective of the defendant at the time they used the data." Dkt. 445 at 15.

**Google's Statement:**

Google's proposal tracks the model language for CACI 1721 to accurately describe the consent defense. The use of CACI 1721—an affirmative consent defense included in the CACI model for defamation—is appropriate here because the same doctrine of consent applies to defamation and invasion of privacy. The CACI instruction is based on the common law doctrine of consent as an absolute privilege, as codified at the Restatement (Second) of Torts § 583. *See* CACI 1721, Sources & Authority. The same "rules on absolute privileges to publish defamatory matter stated in §§ 583 to 592A apply to the publication of any matter that is an invasion of privacy." Restatement (Second) of Torts § 652F; *see also Kelly v. William Morrow & Co.*, 186 Cal. App. 3d 1625, 1628 (1986) (evaluating as a single issue under whether waiver constituted consent to

1  "publication of matters claimed by [plaintiff] to be defamatory, libelous and an invasion of his

2  privacy" under Restatement (Second) of Torts § 583); *Jacob B. v. County of Shasta*, 40 Cal. 4th 948,

3  961 (2007) (holding that common law tort doctrine of absolute privilege against liability for

4  publications in judicial proceedings, as codified in California Civil Code, also applied to

5  constitutional invasion of privacy claim where privilege had "existed for well over a century" and

6  parties had not cited "anything in the . . . history of the 1972 initiative that added the constitutional

7  right to privacy that suggested any intent to limit the scope of this preexisting privilege or to create

8  a right of privacy that would prevail over the privilege"). The Court should therefore grant Google's

9  proposal, which assiduously follows the model, rather than Plaintiffs' bespoke instruction, which is

10  long-winded and confusing.

11      Google's proposal would additionally instruct the jury that actual consent may be either

12  express or implied, a proposition supported by multiple courts throughout this District, including

13  this one. *See, e.g.*, *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023) (with respect

14  to intrusion upon seclusion, and invasion of privacy under the California Constitution, "As this

15  Court has previously noted, consent 'can be explicit or implied'") (quoting *In re Google RTB*

16  *Consumer Privacy Litig.*, 606 F.Supp.3d 935, 949 (N.D. Cal. 2022)); *Frasco v. Flo Health, Inc.*,

17  2025 WL 1433825, at *7 (N.D. Cal. May 19, 2025) ("Consent may be express or implied").

18      Plaintiffs' proposal is deficient in at least four other respects. **First,** it is convoluted and

19  overly complicated, and would likely confuse a jury rather than help it understand what standard to

20  apply. **Second,** it would erroneously suggest to the jury that the text of Google's disclosures, in a

21  vacuum, is the only piece of information it should consider when evaluating consent. This is not

22  true. The consent analysis is more nuanced than that. For example, a jury must also consider whether

23  a user had an objectively reasonable expectation of privacy, an analysis that encompasses matters

24  including the nature of the data at issue as well as societal expectations about privacy on the internet.

25  Plaintiffs' instruction would collapse all of this context and prejudice Google. Contrary to Plaintiffs'

26  suggestion, the Court's recent order on the parties' motions in limine did not unequivocally hold

27  that Google's disclosures are the only relevant piece of evidence regarding consent. Rather, the

28  Court found that "[t]he consent question in this case revolves around the relationship between

Google and Plaintiffs," of which disclosures are merely one component. Dkt. 587 at 7. **Third,** Plaintiffs falsely claim that *Calhoun* stands for the unequivocal proposition that online privacy disclosures in a case such as this one must be construed in the light most favorable to plaintiffs, but this misstates the law. In *Calhoun*, the Ninth Circuit was reviewing the district court's grant of summary judgment in favor of Google. And "[f]or purposes of summary judgment," a court "must consider the evidence in the light most favorable to [] the non-moving party," i.e., the light most favorable to plaintiffs. *Isbell v. City of San Diego*, 258 F.3d 1108, 1112 (9th Cir. 2001). The *Calhoun* court made no indication that a court analyzing online disclosures is required to construe ambiguities against the drafter of the disclosure, and Google is aware of no such authority. This is not the standard that a jury should use in evaluating the at-issue disclosures, and it would be error to instruct the jury as such. **And finally,** Plaintiffs' reliance on CACI 3025 is misplaced. That instruction is intended to be read to jurors evaluating whether consent has been given to a reasonable search under the Fourth Amendment, which is not applicable here. Plaintiffs do not offer any explanation for why CACI 3025 is appropriate in this context.

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

CASE NO. 3:20-cv-04688-RS
**PROPOSED JOINT JURY INSTRUCTIONS**

## (DISPUTED) JURY INSTRUCTION NO. 44

<u>Evidence for Limited Purpose</u>

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

The evidence you heard about Plaintiffs' continued use of apps [may be considered only for the limited purpose of deciding whether Google's conduct was "highly offensive," which is an element of Plaintiffs' invasion of privacy and intrusion upon seclusion claims. You may not consider this evidence when deciding] [may not be considered when deciding] whether Google had permission or consent [to collect Plaintiffs' data].

Similarly, [you may not consider] the evidence you heard about Google's agreement with app developers [may be considered only for the limited purpose of deciding whether Google's conduct was "highly offensive." You may not consider this evidence] when deciding whether Google had permission or consent [to collect Plaintiffs' data].

**<u>Plaintiffs' Statement:</u>**

- Plaintiffs' proposal tracks the Ninth Circuit's Manual of Model Civil Jury Instructions 1.11.

- Plaintiffs' proposal tracks this Court's motions *in limine* order, which set clear boundaries on the purposes for which this evidence can be offered. *See* Dkt. 587 at 7 ("Evidence of Plaintiffs' continued use does not mean they consent, but it is relevant to other issues, such as the degree of offensiveness, and therefore amounts to admissible deposition testimony."); *id.* at 6 ("Defendant may introduce evidence that it required app developers to reveal their use of Google Analytics in attempting to rebut the argument that it acted in a highly offensive manner but not as part of the chain of consent.").

**<u>Google's Statement:</u>**

This instruction is not necessary and Plaintiffs' proposal misrepresents the Court's order regarding the parties' motions in limine. The Court did not say that evidence about Plaintiffs' continued use of apps could "only" be considered for the purpose of "deciding whether Google's

1  conduct was highly offensive." The Court said that this evidence "does not mean [Plaintiffs]

2  consent, but it is relevant to *other issues*, *such as the degree of offensiveness*." Dkt. 587 at 7

3  (emphasis added). It is plain that the Court intended the "highly offensive" factor to be just one

4  element to which this inquiry is relevant, but not the only one. Continued use of apps is also relevant

5  to at least whether Plaintiffs suffered damage, loss, or harm, which the jury must consider in

6  analyzing all three claims, as well as whether Plaintiffs had a reasonable expectation of privacy,

7  which is an element of both the Invasion of Privacy and Intrusion Upon Seclusion claims. The same

8  is true of evidence that Google required developers to reveal their use of Google Analytics. The

9  Court did not limit this evidence "only for the limited purpose of deciding whether Google's conduct

10  was highly offensive." This is relevant to at least whether Plaintiffs suffered damage, loss, or harm,

11  as well as to Google's intent.

12      Google will agree to an instruction that this evidence is not intended to be used to determine

13  whether Plaintiffs consented to Google's collection of the data at issue, but not to any instruction

14  beyond that scope.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED JOINT JURY INSTRUCTIONS**

## (DISPUTED) JURY INSTRUCTION NO. 45

Interpreting Ambiguities in Agreements, Policies, and Disclosures

**Plaintiffs' Proposal:**

Ambiguities in any written agreement, policy, or disclosure should be construed against the party that wrote the agreement, policy, or disclosure.

**Google's Proposal:**  None.

[Authority: Judicial Council of California Civil Jury Instructions (CACI) Nos. 320 (2025 edition); Cal. Civil Code § 1654]

**Plaintiffs' Statement:**

- Plaintiffs' proposed instruction reflects the fact that Google is relying on  Google's disclosures (where only Google controlled the drafting) to prove Google's affirmative defense. As this Court recently acknowledged in its motions *in limine* order, "the consent question in this case revolves around the relationship between Google and Plaintiffs . . . . Were Google's disclosures to Plaintiffs unclear such that it was objectively reasonable for Plaintiffs to expect that turning WAA or (s)WAA off would stop Google from collecting their data through third-party apps that used Google Analytics and/or GA4F?" Dkt. 587 at 7. Because the focus of the inquiry will be on documents drafted by Google, when the jury is interpreting these documents, any ambiguity should be read against the drafter, i.e. Google.

- Under California law, if an unresolved ambiguity in a contract remains, "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Cal. Civ. Code § 1654. This is especially the case when the ambiguities appear in a standardized contract, drafted and selected by the defendant, which occupies the superior bargaining position. *See Rodman v. Safeway, Inc.*, 2014 WL 988992, at *8 (N.D. Cal. Mar.

1   10, 2014), *aff'd*, 694 F. App'x 612 (9th Cir. 2017) (quoting *Steven v. Fidelity & Casualty*

2   *Co.*, 58 Cal.2d 862, 871 (Cal. 1962)); *see also Victoria v. Superior Ct.*, 710 P.2d 833, 835

3   (Cal. 1985) (stating that "ambiguities in standard form contracts are to be construed against

4   the drafter.").

5   • In determining the issue of consent, all of the defendant's relevant disclosures must be

6   "read together and in the light most favorable to Plaintiffs." *Calhoun v. Google, LLC*, 113

7   F.4th 1141, 1150 (9th Cir. 2024). The defendant's terms or policy "must have only one

8   plausible interpretation for a finding of consent." *In re Meta Pixel Healthcare Litig.*, 647 F.

9   Supp. 3d 778, 794 (N.D. Cal. 2022) (quoting *Calhoun v. Google LLC*, 526 F. Supp. 3d

10  605, 620 (N.D. Cal. 2021)); *see also In re Facebook, Inc., Consumer Priv. User Profile*

11  *Litig.*, 402 F. Supp. 3d 767, 794 (N.D. Cal. 2019). Where "the contract language at issue is

12  reasonably susceptible to more than one interpretation, with one of those interpretations

13  suggesting consent and another belying it, the Court cannot decide the consent issue in [the

14  defendant's] favor." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 823 (N.D.

15  Cal. 2020) (quoting *Facebook Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d at

16  789).

17

18  **Google's Statement:**

19      Plaintiffs tried and failed to add a contract claim to this case, but now they ask for an

20  instruction that is reserved by CACI exclusively for contract claims. This Court knows well that the

21  consent analysis on privacy claims and the "without permission" analysis under CDAFA is far more

22  complicated and nuanced than simple rules of contract interpretation. *See, e.g.*, Google's Statement

23  in support of Instruction No. 42 (Affirmative Defense – Consent). This instruction would undermine

24  that, and unduly focus the jury's task in finding consent or lack thereof on a single contract

25  interpretation rule devoid of all other context.

26      Because there is no contract claim at issue in this case, this instruction should not be

27  included. Plaintiffs added the words "disclosures" and "agreement" despite the fact that neither

28  appears in the cited model, CACI 320. And none of the cases Plaintiffs cite grapple with whether

1  this instruction is properly read to a jury in a case without a breach of contract claim and that

2  involves online disclosures. As discussed in Google's argument regarding the previous instruction,

3  No. 42, *Calhoun* does not unequivocally stand for the proposition that online privacy disclosures in

4  a case such as this one must be construed in the light most favorable to plaintiffs. There, the Ninth

5  Circuit reviewed the district court's grant of summary judgment in favor of Google. "For purposes

6  of summary judgment," a court "must consider the evidence in the light most favorable to [] the

7  non-moving party," i.e., the light most favorable to plaintiffs. *Isbell v. City of San Diego*, 258 F.3d

8  1108, 1112 (9th Cir. 2001). The *Calhoun* court made no indication that a court analyzing online

9  disclosures—let alone a jury—is required to construe ambiguities against the drafter of the

10 disclosure in all circumstances, and Google is aware of no such authority. This is not the standard

11 that a jury should use in evaluating the at-issue disclosures, and it would be error to instruct jurors

12 as such.

13      The Court should decline to enter this instruction. The other instructions suffice to instruct

14 the jury on how to find consent or lack thereof. Nothing here requires adding this instruction.

15

16 DATE SUBMITTED: August 11, 2025

17 DATE REVISED: _____

18

19

20

21

22

23

24

25

26

27

28

**(DISPUTED) JURY INSTRUCTION NO. 46**

<u>Damages Introduction</u>

**Plaintiffs' Proposal:**

If you decide that Plaintiffs have proven at least one of their claims against Google, you also must decide how much money will reasonably and fairly compensate the class members for any injury you find Google caused. This compensation is called "damages."  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

**Google's Proposal:**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered. If you find for Plaintiffs on one or more of their claims against Google, you also must determine the Plaintiffs' damages. Damages means the amount of money that will reasonably and fairly compensate the Plaintiffs for any injury you find Google caused.  The Plaintiffs have the burden of proving damages by a preponderance of the evidence.

**Plaintiffs' Statement:**

- Plaintiffs' proposal follows the model instruction that applies to Plaintiffs' state-law claims, CACI 3900. Google's proposal uses the Ninth Circuit's model instruction, even though federal law does not apply to the calculation of damages in this case.

**Google's Statement:**

In keeping with Judge Seeborg's requirement that the parties should use "Model Jury Instructions of the Ninth Circuit where appropriate," Google's proposal assiduously follows the Ninth Circuit's Manual of Model Jury Instructions, Number 5.1 (Damages – Proof). *See* Chief Judge

1  Seeborg's Guidelines for Final Pretrial Conferences in Civil Jury Cases at 5 (Section D.4.c).  Google

2  respectfully requests that the Court follow the Ninth Circuit's guidance on this instruction.

3

4

5

   DATE SUBMITTED: August 11, 2025

6

   DATE REVISED: _____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# (DISPUTED) JURY INSTRUCTION NO. 47

## Damages

Plaintiffs [must prove] [have the burden of proving] the amount of damages by a preponderance of the evidence. Plaintiffs do not have to prove the exact amount of damages that will provide reasonable compensation for the harm. [However, you must not speculate or guess in awarding damages.] [It is for you to determine what damages, if any, have been proven. Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.]

[The following are the specific items of damages claimed by Plaintiffs:]

1. [The specific item of damages Plaintiffs claim is] The [economic] value of the data [at issue] [taken from the class members].

2. Google's profits from data taken from class members;

3. Loss of Plaintiffs' right to control their data;

4. Loss of privacy over Plaintiffs' data;

5. Depletion of Plaintiffs' mobile devices' battery life and/or bandwidth; and

6. Injury to Plaintiff's peace of mind.

One category of damages is referred to as [compensatory] [actual] damages[.] [, which the parties' experts have also referred to in this case as actual damages.] In calculating [compensatory] [actual] damages, you should consider the evidence and any reasonable inferences you may draw from the evidence. This amount should be calculated separately from any unjust enrichment[.] [, and you should not reduce this amount based on any award of unjust enrichments.]

The second category of damages is referred to as unjust enrichment, which the parties' experts have also referred to in this case as disgorgement. In calculating this amount, Plaintiffs may seek to recover any profits that Google received from its use of the data at issue. This amount should be calculated separately from any compensatory damages, and you should not reduce this amount based on any award of compensatory damages. The Court will ultimately decide whether to award unjust enrichment and the amount of such award, if any. However, you are asked to assess this in an advisory capacity.]

[If you find that Plaintiffs have not demonstrated an economic loss, but that they have demonstrated harms including lost peace of mind, depleted battery power, and a violation of their privacy, then you may award nominal damages only.

In addition, Plaintiffs seek a measure of recovery that may allow them to recover any profits that Google received from the use of the data at issue that have not already been taken into account with regard to the above damages.

[To recover under this theory, Plaintiffs must prove each of the following:

1. By obtaining the data at issue, Google received a benefit that it otherwise would not have achieved;

2. That the benefit was obtained at Plaintiffs' expense; and

3. That it would be unjust for Google to retain that benefit without compensating Plaintiffs.]

To establish the amount of these profits you must:

4. Determine the gross, or total, revenue that Google received from the use;

5. Determine the expenses that Google had in obtaining the gross revenue; and

6. Deduct Google's expenses from the gross revenue.

[In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for Plaintiffs' loss of the economic value of the data at issue.]

Plaintiffs must prove the amount of gross revenue, and Google must prove the amount of expenses.

[Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 1821 (2025 edition)]

**Plaintiffs' Statement:**

- Plaintiffs' proposal is based on CACI 1821, which instructs the jury on how to award damages for related privacy claims that similarly allow for an award of unjust enrichment. Plaintiffs' proposal differs from Google's proposal in two important respects.

- *First*, Plaintiffs' proposal includes all alleged forms of damages. Google's proposal, by contrast, improperly excludes three alleged forms of damages: injury to the right to control one's data, injury to privacy, and depletion of device resources. Although Google has not explained why it has excluded these forms of injury, Plaintiffs surmise that their exclusion relates to Google's view that Plaintiffs' damages models do not quantify those forms of injury. Assuming for the sake of argument that is true, there are several reasons that still would not justify excluding these forms of injury from the instruction:

  o The model instructions do not state that injuries that are not quantified should be omitted. *See, e.g.*, CACI 1821.

  o Excluding these forms of injury may confuse the jury because they are included in the "damage or loss" instruction.

  o Even if those forms of injury are not quantified, they may still form the basis for a damages award, such as nominal damages. As the Court explained in its motions *in limine* order, "the jury may also be weighing nominal damages for various hard-to-measure harms, such as lost peace of mind, depleted battery power, and the violation of privacy." Dkt. 587 at 2.

  o Given the substance of this and other instructions, there is little danger that the jury will award more than nominal damages based on an injury that is not quantified. This instruction states that "Plaintiffs must prove the amount of damages by a preponderance of the evidence" and that the jury "must not speculate or guess." And the separate nominal damages instruction explains what the jury should do if it cannot formulate a damages award supported by the evidence.

- *Second*, Google's proposed instruction on the prerequisites to an award of disgorgement of profits is improper. As the Ninth Circuit, this Court, and others have held, disgorgement of profits is an available remedy for Plaintiffs' claims. *See* Dkt. 352 at 21; *In re Facebook*

*Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020); *Greenley v. Kochava, Inc.*, 2023 WL 4833466, at *4, 11–12 (S.D. Cal. Jul. 27, 2023) (holding that plaintiffs asserting claims for invasion of privacy may seek disgorgement of profits); Restatement (Third) of Torts: Restitution § 44 cmt. b ("Profitable interference with other protected interests, such as the claimant's right of privacy, gives rise to a claim [for unjust enrichment]"). The Court's motions *in limine* order makes clear that Plaintiffs are entitled to pursue disgorgement and that the jury will issue an advisory ruling on the amount. Dkt. 587 at 2. Google's efforts to impose additional requirements to obtain this remedy are meritless. These requirements have no basis in the caselaw.

- o Consistent with California law, this Court has already rejected Google's argument that disgorgement of profits is limited to benefits that Google would not have achieved but for its wrongful conduct. *See* Dkt. 352 at 22 ("[Plaintiffs' damages expert] was not required to examine whether Google could have profited otherwise before reaching a conclusion that Google was not unjustly enriched."); *Uzyel v. Kadisha*, 188 Cal. App. 4th 866, 894 (2010) ("The presence or absence of but-for causation is not necessarily determinative of unjust enrichment."); Restatement (Third) of Restitution and Unjust Enrichment: Restitution § 51 cmt.f ("[A] finding that the defendant would have realized the profit in any event does not compel the conclusion that the defendant, under the circumstances, has not been unjustly enriched.").

- o Google's proposal to instruct the jury that the benefit must have been "obtained at Plaintiffs' expense" is false. As this Court has held, Plaintiffs need not prove a "corresponding loss" in order to prove a right to disgorgement of Google's profits. Dkt. 352 at 11. Google confuses the issue by relying on instructions and authorities relating to *unjust enrichment as a cause of action*, which does *not* require that the

defendant engaged in wrongdoing.[2] In those circumstances, additional safeguards are required in order to ensure that the proceeds are apportioned to the party that deserves them. Actions in which disgorgement is sought *as a remedy* for wrongdoing are treated differently. *See, e.g.*, *Meister v. Mensinger*, 230 Cal. App. 4th 381, 398–99 (2014) ("The public policy of this state does not permit one to take advantage of his own wrong regardless of whether the other party suffers actual damage."); Restatement (Third) of Restitution and Unjust Enrichment § 44 cmt.a (distinguishing restitution claims without "separately identifiable misconduct on the part of the defendant" from claims for restitution arising from wrongdoing). This distinction— and the different instructions appropriate in cases like this one—are apparent in the very model instruction upon which Google relies, CACI 4410. That instruction relates to unjust enrichment for misappropriation of trade secrets. It does not instruct the jury to decide whether the defendant's unjust enrichment was "at the plaintiff's expense." And on top of that, Google's proposal would not help the jury to determine what amounts to an "expense" for purposes of this instruction. The jury may be left unaware that, for example, an interference with Plaintiffs' rights is itself sufficient, as we have explained.

    o  *Third*, Google's instruction erroneously asks the jury to determine whether "it would be unjust for Google to retain" its profits. This is another product of Google's confusion regarding the two different types of unjust enrichment: (a) unjust

---

[2] Google argues below that unjust enrichment is not a cause of action under California law. But Google's cited authorities address causes of action for unjust enrichment. *See Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1071 (N.D. Cal. 2009) (explaining that the Ninth Circuit reversed "dismissal of [the plaintiff's] unjust enrichment claim, holding that under California law the unjust enrichment claim constituted a separate cause of action"); Restatement (Third) of Restitution § 44 cmt. a (explaining that the sections addressing benefits acquired by wrongdoing addressed in this section are distinct from "case[s] in which the sole predicate of the restitution claim is unjust enrichment—without separately identifiable misconduct on the part of the defendant," which are "classified elsewhere in this Restatement."). Whether these courts correctly determined that unjust enrichment is an independent cause of action is not important. The fact is that these cases did not involve requests for unjust enrichment only as a remedy for tortious conduct.

enrichment as an independent claim; and (b) unjust enrichment as a remedy for wrongdoing. If the jury finds liability, the wrongdoing itself establishes that it would be unjust for Google to retain its profits. The California Court of Appeal has made very clear that under California public policy, wrongdoers may not retain the benefits from their violations of the law. *Meister*, 230 Cal. App. 4th at 398–99 ("The public policy of this state does not permit one to take advantage of his own wrong regardless of whether the other party suffers actual damage."). This is also reflected in CACI 4410, upon which Google purports to rely. California's model instruction does not impose a requirement to determine whether it is "unjust" for a trade-secret misappropriator to retain its profits. That is because it is unjust for a wrongdoer to retain the profits from their wrongdoing. *See, e.g.*, *id.*; Restatement (Third) of Restitution and Unjust Enrichment § 51 cmt. e (explaining that "[t]he object of the disgorgement remedy" is "to eliminate the possibility of profit from conscious wrongdoing").

- *Third*, Plaintiffs' proposal correctly includes an instruction on the calculation of disgorgement of profits, which is consistent with CACI 1821. The Parties have separately briefed the question of whether the jury should determine the amount of profits to be disgorged.

- *Fourth*, Plaintiffs' proposal correctly relies on model instructions relating to California law, which governs Plaintiffs' claims. Google, by contrast, relies on Ninth Circuit model instructions relating to federal law.

**Google's Statement:**

The Parties' disputes over this instruction boil down to four categories: (1) whether to use language from the Ninth Circuit Model or from CACI; (2) how to describe the measures of damages, including whether to include the depletion of class members' "battery life and/or bandwidth" as a specific measure of damages; (3) how to characterize the elements that Plaintiffs must prove to recover under an unjust enrichment theory, and (4) whether to instruct the jury that its disgorgement opinion is advisory only. The Court should adhere to Google's proposals.

**First**, Google proposes that the Court adopt language from the Ninth Circuit's Model number 5.1 to instruct the jury on its role in awarding damages. *See* Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, number 5.1 (Damages – Proof). This would be in keeping with Judge Seeborg's requirement that the parties should use the "Model Jury Instructions of the Ninth Circuit where appropriate. *See* Chief Judge Seeborg's Guidelines for Final Pretrial Conferences in Civil Jury Cases at 5 (Section D.4.c). While Plaintiffs' proposal, modeled on CACI 3900, cautions the jury against speculation, Google's proposal goes further by affirming that the jury must base any damages award on evidence and determine what, if any, damages have been proven. As this instruction concerning how the jury should handle deliberation on damages comes directly from the Ninth Circuit's model instructions, Google's proposal aligns with established federal practice and provides clear, specific guidance.

**Second**, in light of the Court's ruling that the jury will consider disgorgement remedies in an advisory capacity only, Dkt. 587 at 11, the jury certainly should not be instructed that Plaintiffs are claiming "Google's profits from data taken from Plaintiffs" as a "specific item[] of damages." Doing so would run the grave risk of suggesting to jurors that they should consider Google's profits in awarding damages, thus allowing Plaintiffs to smuggle in an unjust enrichment jury award. Furthermore, only nominal damages are available to Plaintiffs as a result of any depletion of battery and/or bandwidth of their mobile devices. *See* Dkt. 445 at 19 ("Plaintiffs concede that only nominal damages would be available to them under [a] theory of liability" based on "depletion of battery and bandwidth"). The same is true of any loss of "right to control," "loss of privacy," and "injury to Plaintiffs' peace of mind." *See id*. at 17 ("Plaintiffs are unable to show that they are entitled to more than nominal damages resulting from the emotional harms associated with their deprivation of privacy. They offer no concrete models or theories that this harm constitutes more than simply an emotional injury."); *see also id*. at 13 ("Plaintiffs' counsel admitted that if emotional harm was Plaintiffs' sole theory of harm, only nominal damages would be available to the class."). The Court reiterated this position in its recent motions in limine Order. *See* Dkt. 587 at 2 ("the jury may also be weighing nominal damages for various hard-to-measure harms, such as lost peace of mind, depleted battery power, and the violation of privacy."). To this end, Google has included a paragraph

1   that would instruct jurors on what to consider when determining whether nominal damages are

2   appropriate. Nominal damages are discussed in more detail in a later instruction. Plaintiffs' proposal

3   lacks this delineation and thus runs the risk of confusing and misleading the jury regarding the types

4   of available relief, which would prejudice Google by conflating nominal damages with general

5   damages. Additionally, the jury should not be instructed that Plaintiffs must prove the harm suffered

6   by the "class members," as Plaintiffs would propose. The correct inquiry is whether the class

7   representatives—the named Plaintiffs in this case—can demonstrate harm that would be *typical* of

8   the class. *See, e.g.*, Fed. R. Civ. P. 23(a)(3) ("the claims or defenses of the representative parties

9   [must be] typical of the claims or defenses of the class"). To suggest otherwise would be to defeat

10  the purpose of the class mechanism. Plaintiffs cannot redirect their burden to show harm to absent

11  class members who will not appear at trial; if they cannot prove harm themselves, then their claims

12  must necessarily fail. Google's proposal is also proper as it would use the single term "actual

13  damages" rather than both "compensatory" and "actual" damages, which will help clarify this issue

14  for the jury.

15       ***Third***, Google's proposal would accurately instruct the jury

16  that Plaintiffs must prove certain elements in order to recover under an unjust enrichment

17  theory. Google's proposed language is based on CACI 4410, as well as other authority articulating

18  the elements that a plaintiff must prove to recover disgorged profits. *See, e.g., Shum v. Intel Corp.*,

19  630 F. Supp. 2d 1063, 1073 (N.D. Cal. 2009), *aff'd*, 633 F.3d 1067 (Fed. Cir. 2010) ("Under

20  California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) the unjust

21  retention of the benefit at the expense of another."); *see also* Restatement (First) of Restitution § 1,

22  comment (c) ("Even where a person has received a benefit from another, he is liable to pay therefor

23  only if the circumstances of its receipt or retention are such that, as between the two persons, **it is

24  unjust for him to retain it.**") (emphasis added). Google's language accurately and clearly instructs

25  the jury on Plaintiffs' burden under this theory of recovery. Contrary to Plaintiffs' argument,

26  Google's proposed instruction that "the benefit was obtained at Plaintiffs' expense" is not the same

27  as a "corresponding loss." Google agrees that Plaintiffs need not demonstrate a corresponding loss.

28  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) ("California law

-98-                                    CASE NO. 3:20-cv-04688-RS

recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss."). But the requirement that a defendant's gain be obtained "at the plaintiffs expense" does not mean that the plaintiff must have suffered a "corresponding loss" or "actual damage." In other words, California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable. *See, e.g., id.*at 600 ("California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable."). Rather, it is enough that the defendant's gain was derived from the plaintiff's property, rights, or other legally protected interests. *See id.* (collecting cases).

Plaintiffs' argument that Google mistakenly conflates unjust enrichment as a "cause of action" with unjust enrichment as a "remedy" is puzzling, given that California law is clear that there is no such thing as a cause of action for unjust enrichment. *Garon v. eBay, Inc.*, 2011 WL 6329089, at *10 (N.D. Cal. Nov. 30, 2011). As *Gardon* noted, "unjust enrichment" refers to an effect: the failure to make restitution under circumstances where it is equitable to do so." *Id.* Without engaging in argument about whether "equitable" concerns are appropriate for a jury, Google notes that its proposed instruction does not purport to require a "corresponding loss" on the part of Plaintiffs, as they claim, but instead seeks to capture the required circumstances supporting such an award; that is, whether Google was unjustly enriched at Plaintiffs' expense. *See, e.g., U.S. v. Dae Rim Fishery Co., Ltd.*, 794 F.2d 1392, 1393 (9th Cir. 1986) ("[R]estitution . . . avoid[s] the unjust enrichment of one party at another party's expense.") (citation omitted); *Naimi v. Starbucks Corp.*, 2018 WL 11255596, at *11 (C.D. Cal. Feb. 28, 2018) (""A successful claim for unjust enrichment exists where a party is enriched at the claiming party's expense and it is against equity and good conscience to permit the enriched party to retain what is sought to be recovered.") (citation omitted); *MicroTechnologies, LLC v. Autonomy, Inc.*, 2017 WL 1848470, at *22 (N.D. Cal. May 8, 2017) (dismissing parties' unjust enrichment claims on summary judgment because parties had not shown

both lack of legal remedy and "that one party is entitled to recover for the other's unjust enrichment at its expense"); *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1662 (1992) (explaining unjust enrichment claim by noting that under law of restitution, an "individual is required to make restitution if he or she is unjustly enriched at the expense of another . . . . [and a] person is enriched if the person receives a benefit at another's expense") (citations omitted). The relevant consideration is whether Google must make "restitution"—returning something owing to the Plaintiffs—as may be warranted by equitable considerations.   Similarly opaque is Plaintiffs' argument that it's unnecessary for the jury to find that Google might unjustly retain a benefit, given their exclusive reliance on cases holding that parties should not be permitted to gain from their "wrongdoing." *Meister*, 230 Cal. App. 4th at 398–99 ("The public policy of this state does not permit one to take advantage of his own wrong regardless of whether the other party suffers actual damage."). What Google may obtain absent any wrongdoing is not at issue here. Google's proposed instruction instead focuses rightly on what it gained absent what it may have lawfully acquired from Plaintiffs.

It is apparent that Plaintiffs seek to ask the jury simply whether Google made any profit, and that *any* wrongdoing is sufficient to support disgorgement *(see supra.* "If the jury finds liability, the wrongdoing itself establishes that it would be unjust for Google to retain its profits."). Such a question is unsupported by any authority, unduly prejudicial, and underscores why the law commits this issue to the sound jurisdiction of the Court in equity, which the Court recognized in its order on Google's motion in limine 2. *See* Dkt. 587 at 11-12.

**Finally,** Google's proposal would not specify to the jury that its verdict is advisory in nature. Google is aware of no authority requiring a jury to be informed of its advisory role. To the contrary, other courts in this district have taken the opposite approach, and specifically not instructed the jury that its verdict is advisory-only. *See, e.g.*, *Guardant Health, Inc. v. Natera, Inc.*, No. 3:21-cv-04062-EMC, Dkt. 950 (Order on Post-Trial Motions) at 2 (stating that jury's disgorgement award is "an advisory verdict"); *id.* at Dkt. 814 (Second Revised Final Jury Instructions) at 44 and 46 (advising the jury regarding the disgorgement remedy, with no mention of advisory role); *id.*, Dkt. 847 (Jury Verdict) at 2 (no mention of advisory role on verdict form); *see also TVIIM, LLC v. McAfee, Inc.*, No. 4:13-cv-04545-HSG, Dkt. 275 (referring to "the jury's advisory verdict"); *id.*, Dkt. 267 (Jury

Instructions, with no mention of advisory role); *id.*, Dkt. 274 (Jury Verdict, with no mention of advisory role). This makes sense, in light of the gravity of the jury's role. Instructing the jury that its opinion on disgorgement is not binding would run the risk that jurors would not take their deliberations or analysis as seriously as they would otherwise. The Court should follow the path of its sister courts as described above.

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 48**

<u>Nominal Damages</u>

**Plaintiffs' Proposal:**

The law that applies to this case authorizes an award of nominal damages.  If you find for the class members but you find that the class members have failed to prove damages as defined in these instructions, you must award nominal damages for each injury. Nominal damages are awarded per class member. This means that the total amount of nominal damages will equal the amount of nominal damages you award multiplied by the amount of people per class. The estimated class sizes are 54,923,146 members for Class 1, the Android Class, and 59,565,930 members for Class 2, the Non-Android Class.

**Google's Proposal:**

If you decide that Google is liable under Plaintiffs' CDAFA and/or Intrusion Upon Seclusion claim, but also that Plaintiffs were not harmed by Google's intrusion, you may still award Plaintiffs nominal damages, even if you do not award any other damages. If you found that Google was not liable, you may not award nominal damages. There is no lower limit to nominal damages, though they may not exceed $1. The estimated class sizes are 54,923,146 individuals for Class 1, the Android Class, and 59.565,930 individuals for Class 2, the Non-Android Class.

Nominal damages are not available for Plaintiffs' claim for Invasion of Privacy under the California Constitution.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 5.6 (2017)]

**Plaintiffs' Statement:**

- The first two sentences of Plaintiffs' proposal track the Ninth Circuit's Model Jury Instruction 5.6, and there is no basis to depart from the substance of that instruction.  The following two sentences of Plaintiffs' proposal clarify to the jury that nominal damages are

available on a per-class-member basis.  *See Cummings v. Connell*, 402 F.3d 936 (9th Cir. 2005) (affirming nominal damages award to each class member).  While Google suggests there is no "recent" decision on a per-class-member award, Google provides no case law to supports this logic or that would contradict *Cummings*.

- Plaintiffs' proposal appropriately instructs the jury that nominal damages are awarded per class member, rather than as a single nominal sum to class as a whole. In *Cummings*, the Ninth Circuit reversed a judgment in which the district court awarded $1 per named plaintiff, even though the class included 37,000 people. The Ninth Circuit held that "when nominal damages are awarded in a civil rights class action, every member of the class whose constitutional rights were violated is entitled to nominal damages." 402 F.3d 936, 944 (9th Cir. 2005). Although the Ninth Circuit referred to "civil rights actions," its reasoning is unrelated to the nature of the claims asserted. Indeed, the Ninth Circuit explained that "damages for violations of constitutional rights are determined according to principles derived from the common law of torts." *Id.* at 942. The Ninth Circuit also drew on foundational principles of class litigation: "It is axiomatic that Rule 23 cannot 'abridge, enlarge or modify any substantive right' of any party to the litigation. … Consequently, the mere fact that a case is proceeding as a class action does not allow the district court to vindicate the rights of the individually named plaintiffs differently as compared to the absent class plaintiffs." *Id.* In other words, because class members could have each been awarded nominal damages had they filed independent lawsuits, they must also be entitled to individual nominal damages awards here.

- The parties also diverge on the issue of the permissible range or limitation of nominal damages.  While the Ninth Circuit's Model Jury Instruction 5.6 includes the statement that "Nominal damages may not exceed one dollar," Plaintiffs respectfully request that the Court not include that limitation.  Courts across the country have permitted juries to award nominal damages exceeding $1.  *See, e.g.*, *Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019, 1033 (jury award of $10 in nominal damages for § 1983 violations); *see also SIS, LLC v. Stoneridge Software, Inc.*, 2023 WL 164067 (11th Cir. Jan. 12, 2023) (affirming nominal

damages award of $85,000 in breach of contract case); *Western Insulation, LP v. Moore*, 316 Fed.Appx. 291, 294 (4th Cir. 2009) (affirming nominal damages award of $100 in breach of contract case).  Google cannot claim any prejudice here, where the Court may (but need not) evaluate the amount of nominal damages awards through post-verdict motions practice.

- The CDAFA expressly provides for compensatory relief. Cal. Penal Code § 502(e)(1). That includes nominal damages. Cal. Civ. Code § 3360 (nominal damages section of statutory title on compensatory relief).[3] Google has identified no authority suggesting that nominal damages are somehow excluded from the CDAFA's ambit.

- Nominal damages are also available for invasion of privacy and intrusion upon seclusion. *Uzuegbunam*, 141 S. Ct. at 799. Again, nominal damages are a type of recoverable damages. Cal. Civ. Code § 3360 (title on compensatory relief).[4] Google has identified no authority suggesting that nominal damages are somehow excluded from the CDAFA's ambit.

- Nominal damages are also available for invasion of privacy and intrusion upon seclusion. Google agrees that compensatory damages are available for intrusion upon seclusion. *See* Disputed Instruction No. 9-2, 9-5. Nominal damages are also available for invasion of privacy. *Uzuegbunam*, 141 S. Ct. at 799. Again, nominal damages are a type of recoverable damages. Cal. Civ. Code § 3360.

- Google's argument that monetary relief is not available for an invasion of privacy claim has been addressed in the briefing for Instructions 45 and 46 above, which describe how

---

[3] For well over 100 years, California courts have rejected any assertion that Cal. Civ. Code § 3360 is specific to contract claims. *See, e.g.*, *Empire Gravel min. Co. v. Bonanza Gravel Min. Co.*, 67 Cal. 406 (1885) ("For every trespass upon real property the law presumes nominal damages."); *Crane v. Heine*, 35 Cal. App. 466, 467 (1917) (nominal damages available for impersonation).

[4] For well over 100 years, California courts have rejected Google's assertion below that Cal. Civ. Code § 3360 is specific to contract claims. *See, e.g.*, *Empire Gravel min. Co. v. Bonanza Gravel Min. Co.*, 67 Cal. 406 (1885) ("For every trespass upon real property the law presumes nominal damages."); *Crane v. Heine*, 35 Cal. App. 466, 467 (1917) (nominal damages available for impersonation). There is no support for Google's position.

monetary relief under invasion of privacy is analyzed differently for government entities (Google's line of cases) rather than private entities (Plaintiffs' line of cases).

- [Authority: Ninth Circuit Model Jury Instruction 5.6]

**Google's Statement:**

The Parties' dispute here boils down to two main issues: (1) which claims nominal damages are available for and when they must be awarded; and (2) the amount of nominal damages that may be awarded and to whom.

***First,*** Google's proposal correctly states that nominal damages—a type of "money damages"—are not available for Plaintiffs' Invasion of Privacy claim. *See Blanco v. Cnty. of Kings*, 142 F. Supp. 3d 986, 1001 (E.D. Cal. 2015) ("the Court finds that the California Constitutional right to privacy contained in article I, section I does not give rise to a cause of action for money damages"); *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) (plaintiffs "can seek to enjoin [defendants] but cannot seek damages" under "Article 1, Section 1 of the California Constitution"). Plaintiffs cite no authority to the contrary. While Plaintiffs rely on *Uzuegbunam v. Preczewski*, 592 U.S. 279, 289 (2021), to argue that nominal damages are available for both their Invasion of Privacy and Intrusion Upon Seclusion claims, Google does not dispute that nominal damages may be awarded for the latter. However, nominal damages remain unavailable for Invasion of Privacy for the reasons previously stated in Google's arguments on Instructions 34 and 46. Google has been unable to find a single case authorizing an award of nominal damages for an Invasion of Privacy claim under the California Constitution. Moreover, the Ninth Circuit has made clear that *Uzuegbunam* "did [not] hold that nominal damages are now available as an inherent remedy for all legal injuries." *Perry v. Gottlieb*, No. 21-55513, 2022 WL 779627, at *1 (9th Cir. Mar. 14, 2022).

Further, Plaintiffs' proposal would erroneously instruct the jury that it "must" award nominal damages" if it finds liability but also finds that Plaintiffs failed to prove actual damages. This is inaccurate. *See Mfg. Automation & Software Sys., Inc. v. Hughes*, 833 F. App'x 147, 148 (9th Cir.

2021) (holding district court permissibly deemed defendant prevailing party on CDAFA claim where jury found for plaintiff on liability but awarded no damages of any sort, including nominal damages); *Monster Energy C. v. Integrated Supply Network, LLC*, 821 F. App'x 730, 734 (9th Cir. 2020) (holding district court erred in awarding $1 in nominal damages for California common law tort of unfair competition where jury found defendant was liable but awarded no damages. including nominal damages, for tortious act).

**Second,** Google's proposal correctly instructs the jury that nominal damages may be no greater than, but can be less than, $1. *See Audio Fid., Inc. v. High Fid. Recordings, Inc.*, 283 F.2d 551, 558 (9th Cir. 1960) ("the award of at least nominal damages, such as one dollar or one cent."); *Vallavista Corp. v. Vera Bradley Designs, Inc.*, No. C 10-00120 JW, 2011 WL 7462065, at *3 (N.D. Cal. Apr. 20, 2011) ("an 'award of nominal damages, such as one dollar or one cent,' may be appropriate in cases where a plaintiff fails to prove actual damages."); *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 872 (9th Cir. 2017) ("nominal damages [] are … by nature minimal in amount"). Plaintiffs cite no case suggesting that a nominal damage award over $1 is permissible in the Ninth Circuit, and the explicit limitation in the Ninth Circuit's Model Jury Instruction 5.6 would suggest that such an award is improper. *See* Ninth Circuit Manual of Model Civil Jury Instructions No. 5.6 (Nominal Damages) ("Nominal damages may not exceed one dollar.").

In addition, Plaintiffs do not provide a sufficient basis to instruct the jury that nominal damages are to be awarded per class member.  In the sole decision they cite for this proposition, *Cummings v. Connell*, the Ninth Circuit expressly states in the first sentence that it "holds today that when nominal damages are awarded in a *civil rights class action*, every member of the class whose constitutional rights were violated is entitled to nominal damages."  402 F.3d 936, 940 (9th Cir. 2005) (emphasis added).  This reasoning accords with the settled principle that, where a plaintiff proves a violation of their rights under the federal constitution in a claim brought under § 1983—as was the case in *Cummings*—"nominal damages must be awarded … as a matter of law," as a "symbolic vindication." *Schneider v. Cnty. of San Diego*, 285 F.3d 784, 794 (9th Cir. 2002) (cleaned up, citation omitted) (collecting cases). The same logic does not apply to commercial class action claims. Although courts have followed the per-member model in other civil rights cases, Plaintiffs

do not identify a commercial class action suit where a court has permitted nominal damages per class member in the 20 years since *Cummings* was issued, and counsel for Google are unable to find one.

Regardless, it is also appropriate to instruct the jury that awards of nominal damages have no lower limit, though cannot exceed $1, given the size of the class in this case. Nominal damages are not intended to generate large money judgments. One cent per class member adds to approximately $1 million in nominal damages. A dollar per class member adds to approximately $100 million, an obviously unreasonable sum for "nominal" damages.

Finally, as discussed with respect to several other instructions herein, the jury should not be instructed that they must "find for class members." They must find for *Plaintiffs*, who are standing in as representatives of the class. *See, e.g.*, Fed. R. Civ. P. 23(a)(3) ("the  claims or defenses of the representative parties [must be] typical of the claims or defenses of the class"). To suggest otherwise would be to defeat the purpose of the class mechanism.


DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

**(DISPUTED) JURY INSTRUCTION NO. 49**

Punitive Damages

[Punitive damages are available only under the following claims: CDAFA and Intrusion Upon Seclusion.] If you decide that Google is liable with respect to [the class members'] [Plaintiffs'] claims, you must decide whether Google's conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that caused the harm, damage, and/or loss and to discourage similar conduct in the future. The amount of punitive damages, if any, will be decided later.

At this time, you must decide whether Plaintiffs have proved by clear and convincing evidence that Google engaged in the conduct at issue with [malice, oppression, or] fraud. [The amount of punitive damages, if any, will be decided later.]

"Malice" means that Google acted with intent to cause injury or that Google's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person or entity acts with knowing disregard when they are aware of the probable dangerous consequences of the person's conduct and deliberately fail to avoid those consequences.

"Oppression" means that Google's conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in knowing disregard of their rights.]

"Fraud" means that Google intentionally misrepresented or concealed a material fact and did so in intending to harm [the class members'] [Plaintiffs'] . "Fraud" includes disclosing some facts but intentionally failing to disclose other facts, making the disclosure deceptive.

[The amount of punitive damages, if any, will be decided later.]

[Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 3941 (2025 edition)]

CASE NO. 3:20-cv-04688-RS
**PROPOSED JOINT JURY INSTRUCTIONS**

**Plaintiffs' Statement:**

- Plaintiffs' proposed instruction mostly tracks the pattern instruction on punitive damages. *See* CACI 3941. Plaintiffs are omitting "malice," "oppression," and "despicable conduct" from the instruction because Plaintiffs are not seeking punitive damages on those grounds. Plaintiffs have also used the language from CACI 1901 to clarify that concealment, omissions, or half-truths include a scenario where

- California law provides that "[i]n an action for the breach of an obligation not arising from contract … the plaintiff, in addition to actual damages, may recover damages for the sake of example and by way of punishing the defendant." Cal. Civ. Code § 3924(a). In other words, punitive damages are generally available except in contract cases. Accordingly, courts have recognized that punitive damages may be an available remedy for invasions of privacy. *See, e.g.*, *Jackson v. First Nat'l Bank of Omaha*, 2022 WL 423440, at *9 (C.D. Cal. Jan. 18 2022) ("California courts and district courts in the Ninth Circuit have recognized punitive damages may be appropriate for common law invasion of privacy claims."); *Hieu Pham v. Bast*, 2018 WL 4003387, at *2 n.3, *9–10 (N.D. Cal. Aug. 22, 2018) (denying motion to strike punitive damages based in part on claim for invasion of privacy); *Spinks v. Equity Res. Briarwood Apartments*, 171 Cal. App. 4th 1004, 1055 (2009) ("[P]unitive damages may be available for the tort[] of … invasion of privacy."). In *Porten v. University of San Francisco*, the California Court of Appeal suggested that money damages are available for invasion of privacy claims. 64 Cal. App. 3d 825, 832–33 (1976) (reversing dismissal of invasion of privacy claim for money damages). In a more recent case, a federal district court agreed that a claim for money damages may lie under the California Constitution and rejected defendants' arguments based on a contrary assertion. *Stuart v. County of Riverside*, 2024 WL 3086634, at *5 (C.D. Cal. June 14, 2024).[5]  Arguing otherwise, Google relies on an

---

[5] The Court should reject Google's creative interpretations of *Porten*. Google's argument conflicts with the view of the California Supreme Court, which characterized that case as "suggest[ing] that money damages are available in an action based upon a violation of that clause" of the California Constitution. *Katzberg v. Regents Univ. of Cal.*, 29 Cal. 4th 300, 313, 316 nn. 13, 16 (2002).

inapplicable line of cases regarding the availability of monetary relief for certain claims *when asserted against a government actor*. *See Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 602 (N.D. Cal. 2021) (distinguishing such cases). The analysis is plainly different when the defendant is a private entity. This is apparent from *Clausing v. San Francisco Unified Sch. Dist.*, which is the **sole authority** upon which Google's cases rely. 221 Cal. App. 3d 1224 (1998). The California Court of Appeal held that damages were not available in that case because the plaintiff's theory depended on a non-existent alleged "*mandatory duty* on public entities to protect a citizen's right to privacy." *Id.* at 1238. Moreover, the California Supreme Court has cast significant doubt on the validity of the *Clausing* line of cases, all but instructing other courts to disregard them. *See Katzberg v. Regents Univ. of Cal.*, 29 Cal. 4th 300, 313, 316 nn. 13, 16 (2002) (criticizing *Clausing* for "overlook[ing]" *Porten*, in which "the court suggested that money damages are available in an action based upon a violation of that same clause"); *Hernandez v. Hillsides*, 47 Cal. 4th 272, 285 (stating after *Clausing* that "it is an open question whether the state constitutional privacy provision … can also provide direct and sole support for a damages claim."); *see also Hart*, 526 F. Supp. 3d at 602. The bottom line is that Google has identified no case holding that damages are unavailable in actions against private parties, or in actions not based upon a non-existent duty to rescue the plaintiffs' rights.

- Plaintiffs disagree with Google's addition of "There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages." This language is not included in the CACI instruction for the first phase in a bifurcated trial (CACI 3941). Instead, this language is pulled from CACI 3942 which is the instruction used below for the second phase of a bifurcated trial. This language from CACI 3942 is relevant to the determination of the *amount* of punitive damages, which is not relevant here. Google should not be able to pick random sentences from additional jury instructions in order to emphasize issues that may appear more favorable to the defense, especially when that language is not relevant to this phase of the trial.

**<u>Google's Statement:</u>**

The Parties' instruction accurately reflects the Court's ruling on Google's Motion to Bifurcate, which granted Google's request "with respect to the amount of punitive damages, if any, to be awarded." Dkt. 587 at 2. This instruction advises the jury of its role to determine in the first phase whether Plaintiffs are entitled to punitive damages, but not to set any amount.

The parties diverge in three material respects.

***First,*** Google opposes Plaintiffs' revisions to CACI 3941. Google's proposal assiduously tracks CACI 3941, consistent with Google's position that CACI 3941 should be offered in its entirety and should include the definitions of "malice" and "oppression" in addition to "fraud," as Plaintiffs initially proposed. *See* Dkt. 560 at 102. Google would additionally add the definition of "despicable conduct," so as to follow the CACI model verbatim. It is misleading to remove language from the model instruction that is intended to convey the severity of conduct necessary to prove punitive damages. Moreover, Plaintiffs attempt to add a sentence describing "fraud" that is not contained in CACI 3941 and is also incomplete and misleading. While Plaintiffs purport to rely on CACI 1901 to suggest that concealment can constitute fraud, they cherry-pick and offer only one of the six enumerated factors CACI 1901 states are required to prove concealment. Further, they do not cite any authority to suggest that CACI 1901 has any relation to the statutorily defined term "fraud" in the punitive damages statute, which defines fraud to include an intent to harm the plaintiff. *See* Cal. Civ. Code § 3294 (emphasis added). Plaintiffs' additions are unnecessary and duplicative, and should be rejected.

***Second,*** Google's proposal is proper, as it clarifies that punitive damages are only available for Plaintiffs' claims under CDAFA and Intrusion Upon Seclusion, but not Invasion of Privacy under the California Constitution. *See Blanco v. Cnty. of Kings*, 142 F. Supp. 3d 986, 1001 (E.D. Cal. 2015) ("the Court finds that the California Constitutional right to privacy contained in article I, section I does not give rise to a cause of action for money damages"); *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) (plaintiffs "can seek to enjoin [defendants] but cannot seek damages" under "Article 1, Section 1 of the California Constitution"). Plaintiffs do

not cite any authorities suggesting otherwise. Two of the three cases that Plaintiffs cite do not even contain a claim for invasion of privacy under the California Constitution. *See Jackson v. First Nat'l Bank of Omaha*, 2022 WL 423440, at *9 (C.D. Cal. Jan. 18 2022) (no invasion of privacy claim under the California Constitution); *Spinks v. Equity Res. Briarwood Apartments*, 171 Cal. App. 4th 1004, 1055 (2009) (same). And the third does not explicitly recognize that any money damages are available for this claim. The complaint in question in *Hieu Pham* contained twenty-six causes of action, and the order Plaintiffs cite does not come close to suggesting that punitive damages are available for the constitutional privacy claim. *See Hieu Pham v. Bast,* 2018 WL 4003387, at *2 n.3, *9–10 (N.D. Cal. Aug. 22, 2018); *see also Hieu Pham v. Bast*, No. 3:17-cv-04194-WHO, Dkt. 26 (June 18, 2018) (Third Amended Complaint containing twenty-six causes of action).

Monetary damages are unavailable for the constitutional privacy claim. It is Plaintiffs' burden to show that damages are recoverable for their claims, and they are unable to cite a single case holding so with respect to this claim. *Faria v. M/V Louise V*, 945 F.2d 1142, 1143 (9th Cir. 1991) (it is "one of the most basic propositions of law [] that the plaintiff bears the burden of proving his case, including the amount of damages").

*Porten* does not hold that money damages are available for an action under Article I, section 1. *Porten v. Univ. of San Francisco*, 64 Cal. App. 3d 825, 832 (Ct. App. 1976) (deciding demurrer on other grounds). And Google can find no case that has awarded any type of monetary damages for an invasion of privacy under the California Constitution, whether against a government actor or a private entity. *See, e.g.*, *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 602 (N.D. Cal. 2021) (tabling the question). Plaintiffs overstate the limitations of *Clausing* in characterizing *Blanco* and *Doe* as its progeny. *Hart* does not actually hold that *Clausing*'s rule barring monetary recovery for a constitutional privacy violation is confined to actions against government actors. 526 F. Supp. 3d at 602. And *Clausing* is far from being abandoned; the Eastern District of California affirmed *Clausing* in 2015, finding *Porten* unpersuasive as contrary authority. *See Blanco*, 142 F. Supp. 3d 986 at 1001 (*Porten* did not contain "any analysis of the viability of the prayer for relief but only briefly discussed how the facts in the respective complaints could amount to a prima facie violation of article I, section I.").

1    *Katzberg*, which Plaintiffs cite, also does not hold that monetary damages are unavailable

2    only when a claim is asserted against a government actor. *Katzberg v. Regents Univ. of Cal.*, 29 Cal.

3    4th 300 (2002). Indeed, *Katzberg* walked through no less than six cases in which California courts

4    declined to award damages for a constitutional violation. *Id.* at 314-17. And even were this Court to

5    follow the framework set out in *Katzberg*, as Plaintiffs seem to suggest but fall short of arguing,

6    damages would not be available here.  This framework asks courts to first consider whether the

7    "language and history" of the constitutional provision at issue expresses an intent to authorize or

8    withhold a damages remedy. *Id.* at 317. One court in this District, looking at the intent of Article I,

9    section 1, held that it does not provide for a damages action. *Bates v. Arata*, 2008 WL 820578, at

10   *4 (N.D. Cal. Mar. 26, 2008) ("This [privacy] provision does not establish the means by which these

11   inalienable rights may be enjoyed, defended, or otherwise given the force of law."). Google has

12   further found no legislative intent to create an avenue for recovering damages via Article I, section

13   1. The inquiry should stop here. However, were the Court to proceed to the second step, which

14   undertakes a *Bivens*-like "constitutional tort" analysis, it should also find that implying a right to

15   damages here is unwarranted. The *Katzberg* court in rejecting monetary recovery for a constitutional

16   privacy claim found highly persuasive the fact that the plaintiffs had adequate remedies under tort

17   law (there, defamation). *Katzberg*, 29 Cal. 4th at 326-327. Here, with intrusion upon seclusion

18   mirroring this constitutional claim—as Google briefs more fully in its argument regarding

19   Instruction No. 34—there is no reason for this Court to imply a right to recover damages. It would

20   be duplicative and an unnecessary extension of judicial power.

21       **Third**, as explained in the Damages and Nominal Damages instructions, above, it is

22   inappropriate to instruct the jury that it must decide Google's liability with respect to "the class

23   members' claims." The correct inquiry is whether Google is liable to the Plaintiffs. *See, e.g.*, Fed.

24   R. Civ. P. 23(a)(3) ("the  claims or defenses of the representative parties [must be]  typical of the

25   claims or defenses of the class"). To suggest otherwise would be to defeat the purpose of the class

26   mechanism. Again, Plaintiffs cannot redirect their burden to show harm to absent class members

27   who will not appear at trial; if they cannot prove harm themselves, then their claims must necessarily

28   fail.

1

2

DATE SUBMITTED: August 11, 2025

3

DATE REVISED: _____

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**(JOINT) JURY INSTRUCTION NO. 50**

<u>Duty to Deliberate</u>

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 3.1 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

1

**(JOINT) JURY INSTRUCTION NO. 51**

2

<u>Consideration of Evidence – Conduct of the Jury</u>

3    Because you must base your verdict only on the evidence received in the case and on these

4    instructions, I remind you that you must not be exposed to any other information about the case or

5    to the issues it involves.  Except for discussing the case with your fellow jurors during your

6    deliberations:

7    Do not communicate with anyone in any way, and do not let anyone else communicate with

8    you in any way about the merits of the case or anything to do with it.  This includes discussing the

9    case in person, in writing, by phone, tablet, computer, or any other means, via email, via text

10    messaging, or any internet chat room, blog, website, or application, including but not limited to

11    Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social

12    media.  This applies to communicating with your family members, your employer, the media or

13    press, and the people involved in the trial.  If you are asked or approached in any way about your

14    jury service or anything about this case, you must respond that you have been ordered not to discuss

15    the matter and to report the contact to the court.

16    Do not read, watch, or listen to any news or media accounts or commentary about the case

17    or anything to do with it; do not do any research, such as consulting dictionaries, searching the

18    Internet, or using other reference materials; and do not make any investigation or in any other way

19    try to learn about the case on your own.  Do not visit or view any place discussed in this case, and

20    do not use Internet programs or other devices to search for or view any place discussed during the

21    trial.  Also, do not do any research about this case, the law, or the people involved—including the

22    parties, the witnesses, or the lawyers—until you have been excused as jurors.  If you happen to read

23    or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

24    These rules protect each party's right to have this case decided only on evidence that has

25    been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy

26    of their testimony is tested through the trial process.  If you do any research or investigation outside

27    the courtroom, or gain any information through improper communications, then your verdict may

28    be influenced by inaccurate, incomplete, or misleading information that has not been tested by the

trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 3.2 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

# (JOINT) JURY INSTRUCTION NO. 52

## Burden of Proof – Preponderance of the Evidence

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 1.6 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

CASE NO. 3:20-cv-04688-RS
**PROPOSED JOINT JURY INSTRUCTIONS**

**(JOINT) JURY INSTRUCTION NO. 53**

<u>Communication with Court</u>

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time.   You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 3.3 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

CASE NO. 3:20-cv-04688-RS
**PROPOSED JOINT JURY INSTRUCTIONS**

**(JOINT) JURY INSTRUCTION NO. 54**

<u>Return of Verdict</u>

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.

[Authority: Manual of Model Civil Jury Instructions for The District Courts of the Ninth Circuit, Number 3.5 (2017)]

DATE SUBMITTED: August 11, 2025

DATE REVISED: _____

# IV.    <u>BIFURCATED INSTRUCTIONS</u>

## (DISPUTED) JURY INSTRUCTION NO. 55

### Punitive Damages (Amount)

You must now decide the amount, if any, that you should award [the class members'] [Plaintiffs'] in punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed [the class members'] [Plaintiffs'] and to discourage similar conduct in the future. There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. [If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party.] If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a) How reprehensible was Google's conduct? In deciding how reprehensible Google's conduct was, you may consider, among other factors:

      1. Whether the conduct caused physical harm;

      2. Whether Google disregarded the health or safety of others;

      3. Whether Plaintiffs were financially weak or vulnerable and Google knew Plaintiffs were financially weak or vulnerable and took advantage of them.

      4. Whether Google's conduct involved a pattern or practice; and

      5. Whether Google acted with trickery or deceit.

(b) Is there a reasonable relationship between the amount of punitive damages and Plaintiffs' harm [or between the amount of punitive damages and potential harm to Plaintiffs that Google knew was likely to occur because of its conduct]?

(c) In view of Google's financial condition, what amount is necessary to punish Google and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because Google has substantial financial resources.

Punitive damages may not be used to punish Google for the impact of its alleged misconduct on persons other than Plaintiffs.

[Authority: Judicial Council of California Civil Jury Instructions (CACI) No. 3942 (2025 edition)]

**Plaintiffs' Statement:**

- Plaintiffs seek to stick to the language of the CACI instruction (No. 3942).

- Google attempts to add additional language from the Ninth Circuit's Model Instruction 5.5, "If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party." Once again, we should not include specific sentences from the Ninth Circuit Model Jury Instructions that overemphasize points for one party. If the Court is inclined to include to do so, Plaintiffs should be permitted to pick sentences to include that support Plaintiffs' positions to balance the scales.

**Google's Statement:**

Google proposes adding language from the Ninth Circuit's Manual of Model Jury Instructions, Number 5.5 (Punitive Damages), which clarifies for the jury that it "must use reason in setting the amount" of punitive damages, and that any award "should not reflect bias, prejudice, or sympathy toward any party." As stated in Judge Seeborg's standing order, the parties should use "Model Jury Instructions of the Ninth Circuit where appropriate." *See* Chief Judge Seeborg's Guidelines for Final Pretrial Conferences in Civil Jury Cases at 5 (Section D.4.c). This language ensures that any punitive damages awarded are grounded in reason and fairness, rather than emotion or personal bias, which aligns with the fundamental principles of due process. Including this instruction helps guide the jury to focus on the proper legal purpose of punitive damages—

1   deterrence and punishment—while avoiding arbitrary or excessive awards. *See State Farm Mut.*

2   *Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416–417 (2003) ("The Due Process Clause of the

3   Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a

4   tortfeasor. … To the extent an award is grossly excessive, it furthers no legitimate purpose and

5   constitutes an arbitrary deprivation of property."). Additionally, Google's proposal would include

6   an optional line from CACI 3942, on which both parties rely in this instruction and the previous

7   one, to instruct the jury that punitive damages "may not be used to punish Google for the impact of

8   its alleged misconduct on persons other than class members." This instruction ensures that any

9   punitive damages awards are appropriately scoped, and that the jury will consider only the conduct

10   at issue in setting any such award, rather than unrelated matters.

11       Again, Google opposes the term "class members" in Plaintiffs' proposal for the reasons

12   stated in support of previous instructions. It is inappropriate to suggest to the jury that Plaintiffs'

13   burden revolves around absent class members who will not appear at trial; if they cannot prove harm

14   themselves, then their claims must necessarily fail and they are not entitled to recovery.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 3:20-cv-04688-RS
**PROPOSED JOINT JURY INSTRUCTIONS**

1

**SIGNATURE BLOCKS**

2

Dated:    August 11, 2025                          Dated:    August 11, 2025

3

**BOIES SCHILLER FLEXNER LLP**            **COOLEY LLP**

4

By:    /s/ Mark C. Mao                              By:    /s/ Eduardo E. Santacana

5
David Boies (admitted pro hac vice)          BENEDICT Y. HUR (SBN:  224018)

6
333 Main Street                                        bhur@cooley.com
Armonk, NY 10504                                   SIMONA AGNOLUCCI (SBN:  246943)

7
Tel.: (914) 749-8200                                sagnolucci@cooley.com
dboies@bsfllp.com                                  EDUARDO E. SANTACANA (SBN:  281668)

8
                                                         esantacana@cooley.com
Mark C. Mao, CA Bar No. 236165             ARGEMIRA FLOREZ (SBN: 331153)

9
Beko Reblitz-Richardson, CA Bar No.           aflorez@cooley.com
238027                                                 HARRIS MATEEN (SBN 335593)

10
44 Montgomery St., 41st Floor                   hmateen@cooley.com

11
San Francisco, CA 94104                          ISABELLA MCKINLEY CORBO (SBN 346226)
Tel.: (415) 293-6800                                icorbo@cooley.com

12
mmao@bsfllp.com                                  3 Embarcadero Ctr., 20th Floor
brichardson@bsfllp.com                          San Francisco, CA 94111

13
                                                         Telephone: (415) 693-2000
James Lee (admitted pro hac vice)

14
Rossana Baeza (admitted pro hac vice)

15
100 SE 2nd St., 28th Floor
Miami, FL 33131                                     *Counsel for Defendant Google*

16
Tel.: (305) 539-8400                                *LLC*
jlee@bsfllp.com

17
rbaeza@bsfllp.com

18
Alison L. Anderson, CA Bar No. 275334
Samantha Parrish, CA Bar No. 318681

19
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520

20
Los Angeles, CA 90067
Tel.: (213) 995-5720

21
alanderson@bsfllp.com
sparrish@bsfllp.com

22
mwright@bsfllp.com

23

**SUSMAN GODFREY L.L.P.**

24
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)

25
Steven M. Shepard (admitted pro hac vice)
Alexander P. Frawley (admitted pro hac

26
vice)
Ryan Sila (admitted pro hac vice)

27
One Manhattan West, 50th Floor

28
New York, NY 10001

CASE NO. 3:20-cv-04688-RS
**PROPOSED JOINT JURY INSTRUCTIONS**

1   Tel.: (212) 336-8330
    bcarmody@susmangodfrey.com
2   srabin@susmangodfrey.com
    sshepard@susmangodfrey.com
3   afrawley@susmangodfrey.com
    rsila@susmangodfrey.com
4
5   Amanda K. Bonn, CA Bar No. 270891
    1900 Avenue of the Stars, Suite 1400
6   Los Angeles, CA 90067
    Tel.: (310) 789-3100
7   abonn@susmangodfrey.com

8   **MORGAN & MORGAN**
    John A. Yanchunis (admitted pro hac vice)
9   Ryan J. McGee (admitted pro hac vice)
    Michael F. Ram, CA Bar No. 104805
10  201 N. Franklin Street, 7th Floor
    Tampa, FL 33602
11  Tel.: (813) 223-5505
12  jyanchunis@forthepeople.com
    rmcgee@forthepeople.com
13  mram@forthepeople.com

14

15  *Counsel for Plaintiffs; additional counsel
    listed in signature blocks below*

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ATTESTATION**

2       I, Mark Mao, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the

3    filing of this document has been obtained from each signatory hereto.

4

5

    DATED:  August 11, 2025                         By:  */s/ Mark C. Mao*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28