**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao (CA Bar No. 236165)
Beko Reblitz-Richardson (CA Bar No. 238027)
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
Rossana Baeza (admitted *pro hac vice*)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson (CA Bar No. 275334)
Samantha Parrish (CA Bar No. 318681)
M. Logan Wright (CA Bar No. 349004)
725 S. Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 629-9040
alanderson@bsfllp.com

*Attorneys for Plaintiffs*

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander Frawley (admitted *pro hac vice*)
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 358-6913
mram@forthepeople.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No.: 3:20-cv-4688-RS<br><br>**PLAINTIFFS' STATEMENT IN OPPOSITION TO GOOGLE'S MOTION *IN LIMINE* NO. 15 TO EXCLUDE EVIDENCE OF ALTERNATIVE UNJUST ENRICHMENT CALCULATIONS**<br><br>Judge: Hon. Richard Seeborg<br>Trial Date: August 18, 2025 |

**I.      Introduction**

Lasinski's unjust enrichment opinions are not new. Lasinski's supplemental report updates his opinions with new numbers relating to Google's net revenues during the later years of the class period. His method of computing unjust enrichment is unchanged.

The only "new" issue is that Google represented that its accounting systems changed after Lasinski served his initial report. Google claimed that one input for Lasinski's unjust enrichment calculations—Google's United States Net Revenues from its "App Promo" service—was no longer available from Google's accounting system in the later years of the class period. That input is calculated by taking Google's United States gross revenues from the "App Promo" service and deducting Google's marginal costs, called "Traffic Acquisition Costs." Google did produce its U.S. gross revenues, but it did not produce its U.S. Traffic Acquisition Costs for the later years of the class period. Those U.S. Traffic Acquisition costs—and therefore U.S. Net Revenues—can be estimated one of two ways:

- Based on the ratio of Google's *global* Traffic Acquisition Costs as a percentage of global "App Promo" gross revenues in those later years; or

- Based on carrying forward of the ratio of Google's Traffic Acquisition Costs to *U.S.* "App Promo" gross revenues in *earlier* years, for which Google represented it had produced U.S. data.

Given the change in Google's accounting systems, and the new data from Google, Lasinski appropriately estimated costs using both of these two options. The first method yields a conservative measure of total unjust enrichment of $2.37 billion or $2.54 billion including Dashers and Unicorns ($2.13 or $2.29 billion excluding Dashers and Unicorns). The second yields total unjust enrichment of $1.50 billion or $1.73 billion. Lasinski's supplemental report contains schedules showing the results of both methods. This is not consigned to a "footnote." The calculations are disclosed in full-page schedules.

There is no surprise to Google, much less unfair surprise. As this Court noted on Monday morning, Google can "cover" these topics "on cross-examination." Aug. 18 Tr. at 20:18-19.

1

## II. The Unjust Enrichment Methodology

Lasinski's unjust enrichment methodology is unchanged from his initial report served in February 2022. First, he identified Google services that use the at-issue data from class members who had WAA/sWAA turned off. One of these Google services is "App Promo," which is a Google advertising service that "allows app developers to promote their apps." Dkt. No. 364-23 (Initial Lasinski Report) ¶¶ 32-33.

Lasinski began with the "Net Revenues" Google earned from App Promo in the United States. *Id.* ¶ 85. "Net Revenues" are Google's gross revenues from this service, *less* Google's "traffic acquisition costs" (TACs). TACs are payments from Google to publishers (e.g., app owners) for "ads displayed on their apps and websites" and payments from Google to "browser providers and other distribution partners." *Id.* For App Promo revenue and costs, Lasinski only had available to him the figures for the calendar years 2017 through 2021 (which Google represented were U.S. figures), so that is what he analyzed. *Id.* ¶ 86.

Lasinski then used apportionment factors to determine the portion of Google's United States App Promo Net Revenues that were derived from the at-issue data from class members—that is, from "signed-in, WAA/sWAA-Off users." *Id.* ¶¶ 88-94.

None of this methodology has changed in Lasinski's supplemental report, which is "based on the same methodology detailed in [his] Initial Report." Dkt. No. 613-2 (Lasinski Supplemental Report) ¶ 6. Instead, Lasinski's supplemental report merely updates his calculations to incorporate "information" about the more recent years of the class period "that was unavailable at the time of [his] Initial Report." *Id.* That new information includes the numbers of class members in these later years, *id.* ¶ 8, and Google's United States Net Revenues from App Promo in those later years. *Id.* & n.6.

## III. Two Different Sources for App Promo "Net Revenues"

The difficulty arises in determining what Google's United States App Promo "Net Revenues" actually *were* during the later years of the class period. "Net Revenues," as discussed above, are total revenues attributable to class members minus Google's traffic acquisition costs

1  (TACs) in the United States. As discussed above, Lasinski's "Net Revenues" numbers for earlier years were taken from Google's own income statements through the end of 2021, which Google represented were U.S. figures. But Google then claimed to have "changed its accounting systems" in later years, as the parties noted in their Joint Stipulation filed on April 18, 2025. Dkt. 481, at 2. For these later years, it is necessary to *estimate* Google's TACs in the United States.

Google complains that no "such opinion for calculating operating costs had been disclosed by Mr. Lasinski previously," Motion at 3, but that complaint is easily answered. "Previously" there was no need for Lasinski to estimate Google's TACs as a percentage of gross revenues in the United States, since Google's accounting systems provided figures for the earlier years that Google represented were U.S. figures. That was not so for the later years after what Google claimed to be an "accounting change."

There are two different ways to estimate Google's App Promo TACs in the United States during these later years: by isolating such U.S. TACs from Google's *global* TACs during these later years; or by extrapolating from the *ratio* of TACs to gross revenues in earlier years for which Google produced income statements that it represented pertained to the United States. Lasinski's supplemental report presents two sets of schedules, each based on a separate way of performing this estimate.

A.   **Method One: Google's Data Regarding Global Revenues and TACs**

Google produced a document (GOOG-RDGZ-02111189) containing App Promo revenue and TAC figures for later years of the class period.  Google stipulated, in the Joint Stipulation filed in April 2025, that this document is "authentic and admissible into evidence at trial." Dkt. 481, ¶ 4. This document contains: Google's *global* revenue from App Promo, *id.* ¶ 5; Google's *global* TACs for App Promo, *id.* ¶ 6; and Google's *United States* revenue from App Promo, *id.* ¶ 4. But the spreadsheet does not contain Google's TACs for App Promo for *United States* users. That is because, according to Google, "Google's 2022-2024 accounting structure does not track, report, or otherwise maintain country-specific records of Google's traffic acquisition costs [TACs] for App Promo ads." *Id.* ¶ 14.

3

For those years, Lasinski therefore estimated the TACs for United States users as follows: First, he determined the ratio of *global* TACs to *global* App Promo revenues. Dkt. 613-2 (Supplemental Report) at 5 n.9. These are about 25.6% in 2022 and 23.5% in 2023. Lasinski assumed that the same ratio applied in the United States: he multiplied the *United States* App Promo revenues by these global ratios to estimate Net Revenues in the United States. *Id.* This work was not set forth merely "in a footnote," as Google contends. Mot. at 5. Lasinski also performed this method in Schedules SS2.1-II through SS7.1-II and then presented the results in a full-page Schedule SS1.1-II. *Id.* at 10.

If this estimate is used, then the conservative estimate of unjust enrichment (for the entire class period, across all services) is either $2.37 billion or $2.54 billion. *Id.*

### B. Method Two: Google's Made-for-Litigation "Statement"

Google prefers an alternative way of estimating TACs for United States users in later years. Specifically, Google prefers to carry forward the *earlier* ratio of App Promo gross revenues to TACs, contained in Google's 2021 income statement from before what it represented to be a change in accounting systems. "For purposes of this litigation, Google states that Google's traffic acquisition costs as a percentage of Google's corresponding App Promo revenues did not materially change after 2021 and through the end of the class period." Dkt. 481 ¶ 15.

That 2021 ratio is much higher: according to Google's income statements from that year, the TACs Google reported were *67.9%* of its United States App Promo revenue. Dkt. No. 364-23 (Initial Lasinski Report) Schedule 2.2. That is a significantly higher ratio than the 25.6% and 23.5% ratios for *global* TACs compared to *global* revenues in the later years.

Lasinski also prepared an estimate of unjust enrichment damages by taking the 2021 ratio and applying it to the later years of the class period. Because higher TACs mean lower Net Revenues, this method results in lower unjust enrichment damages: about $1.50 billion or $1.73 billion. Dkt. 613-2 (Supplemental Report) ¶ 7, fig. 1.

### IV. Conclusion

Lasinski has consistently used the same methodology for estimating Google's unjust enrichment. The only thing that changed is Google's representation about a change to its *accounting systems*, which Google contends stopped tracking United States TACs after 2021. That change required Lasinski to find a way to estimate United States TACs to then calculate United States Net Revenues for App Promo in the later years of the class period. That estimation was not performed in Lasinski's earlier report because the change in Google's accounting systems, according to Google, occurred after that report was written. Lasinski disclosed in his supplemental report two ways of estimating the United States TACs for the later years: one based on Google's reported *global* revenues and TACs; and the other based on Google's "statement" that this ratio remained about the same over time.

Dated: August 20, 2025                                Respectfully submitted,

By:   /s/ *Mark C. Mao*
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile (415) 293-6899

David Boies (*pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

James Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com

5

BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Alison L. Anderson (CA Bar No. 275334)
alanderson@bsfllp.com
Samantha Parrish (CA Bar No. 318681)
sparrish@bsfllp.com
M. Logan Wright (CA Bar No. 349004)
mwright@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S. Figueroa St., 31st Floor
Los Angeles, CA 90017
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Bill Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602

PLAINTIFFS' OPPOSITION TO GOOGLE'S                    CASE NO. 3:20-CV-4688-RS
MOTION *IN LIMINE* 15

Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO GOOGLE'S
MOTION *IN LIMINE* 15                                CASE NO. 3:20-CV-4688-RS