**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted *pro hac vice*)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted *pro hac vice*)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com

*Counsel for Plaintiffs; additional counsel listed in signature blocks below*

**COOLEY LLP**
BENEDICT Y. HUR (SBN: 224018)
bhur@cooley.com
SIMONA AGNOLUCCI (SBN: 246943)
sagnolucci@cooley.com
EDUARDO E. SANTACANA (SBN: 281668)
esantacana@cooley.com
ARGEMIRA FLOREZ (SBN: 331153)
aflorez@cooley.com
HARRIS MATEEN (SBN 335593)
hmateen@cooley.com
ISABELLA MCKINLEY CORBO (SBN 346226)
icorbo@cooley.com
3 Embarcadero Ctr., 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000

*Counsel for Defendant Google LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:20-cv-04688-RS<br><br>**JOINT REPORT RE EVIDENTIARY DISPUTES FOR TRIAL DATE AUGUST 25, 2025**<br><br>Judge: Hon. Richard Seeborg<br>Trial Date: August 18, 2025<br>Courtroom: 3, 17th Floor |

Pursuant to the Parties' process stipulation (Dkt. 608, ¶6), the Parties submit their joint report on objections to exhibits, demonstratives, deposition designations, objections and counter-designations that are anticipated to be moved into evidence at trial (with witnesses whom the moving party controls or employed) on **Monday, August 25, 2025**.

I.  **At Issue Exhibit/Demonstratives**

**Witness Exhibits: Michael Lasinski**

| Exhibit | Google's Objection(s) |
|---|---|
| PX-138 | FRE 601/703 (Foundation) |
| **Plaintiffs' Position** | **Google's Position** |
| Mr. Lasinski relied on this document in forming his opinions in this matter. Plaintiffs intend to display this document or portions thereof as a demonstrative to illustrate Mr. Lasinski's analysis, to which Google agrees. Plaintiffs do not intend to introduce this document into evidence. | This document has not yet been admitted into evidence and Plaintiffs have not provided a foundation for its admittance. Google does not object to this document being used as a demonstrative to be displayed to the jury. |

| Exhibit | Google's Objection(s) |
|---|---|
| PX-140 | FRE 601/703 (Foundation) |
| **Plaintiffs' Position** | **Google's Position** |
| Mr. Lasinski relied on this document in forming his opinions in this matter. Plaintiffs intend to display this document or portions thereof (including page 10) as a demonstrative to illustrate Mr. Lasinski's analysis under Rule 703. Plaintiffs do not intend to introduce this document into evidence. | This document has not yet been admitted into evidence and Plaintiffs have not provided a foundation for its admittance, and there is no witness who appears able to testify to it. If Plaintiffs seek to include only specific slides as demonstratives (e.g., PX-140.0010), Google may be amenable to an agreement. |

| Exhibit | Google's Objection(s) |
|---|---|
| PX-142 | FRE 403 (Jury confusion) |
| **Plaintiffs' Position** | **Google's Position** |
| To the extent Plaintiffs seek to use this document during Mr. Lasinski's examination, Plaintiffs agree to have the facts read rather than admitted into evidence. Plaintiffs reserve all rights with respect to examinations of other witnesses. | Google objects to admitting the joint pretrial statement as a document to be sent back to the jury. Google understands Plaintiffs seek to admit the undisputed facts section. Should Plaintiffs seek to have those facts read out, rather than admit PX 142 (Dkt. No. 534) as evidence, Google may be amenable to this. |

| Exhibit | Google's Objection(s) |
|---|---|
| PX-322 | FRE 601/703 (Foundation) |
| **Plaintiffs' Position** | **Google's Position** |
| Mr. Lasinski relied on this document in forming his opinions in this matter. Plaintiffs intend to display this document or portions thereof (including page 8) as a demonstrative to illustrate Mr. Lasinski's analysis under Rule 703. Plaintiffs do not intend to introduce this document into evidence. | This document has not yet been admitted into evidence and Plaintiffs have not provided a foundation for its admittance, and there is no witness who appears able to testify to it. If Plaintiffs seek to include only specific slides as demonstratives (e.g., PX-322.0008), Google may be amenable to an agreement. |

| Exhibit | Google's Objection(s) |
|---|---|
| PX-393 | FRE 106 (Incomplete); FRE 403 (Jury confusion) |
| **Plaintiffs' Position** | **Google's Position** |
| Mr. Lasinski relied on this document in forming his opinions in this matter. Plaintiffs intend to display this document or portions thereof (including page 8) as a demonstrative to illustrate Mr. Lasinski's analysis under Rule 703. Plaintiffs do not understand Google's objection with respect to completeness of the document, as this was pulled directly from Google's Screenwise website. | The "sign in" header on each page of this document cuts off relevant information from the privacy policy. Google suggests that Plaintiffs use admitted document G0581 instead, as it is the same document. |

| Exhibit | Google's Objection(s) |
|---|---|
| PX-417 | FRE 601/703 (Foundation); FRE 401/402 (Relevance) |
| **Plaintiffs' Position** | **Google's Position** |
| Mr. Lasinski relied on this document in forming his opinions in this matter. Plaintiffs intend to display this document or portions thereof (including page 8) as a demonstrative to illustrate Mr. Lasinski's analysis under Rule 703. Plaintiffs do not intend to introduce this document into evidence | This document has not yet been admitted into evidence and Plaintiffs have not provided a foundation for its admittance, and there is no witness who appears able to testify to it. |

| Exhibit | Google's Objection(s) |
|---|---|
| PX-477 | FRE 601/703 (Foundation); FRE 401/402 (Relevance) |
| **Plaintiffs' Position** | **Google's Position** |
| PX-477 is a proper Rule 1006 exhibit. It summarizes voluminous evidence regarding (s)WAA-off status on a monthly basis throughout the class period, which is reflected in PX-403, PX-404, and PX-405, which are documents Google produced, and which are already in evidence. That Mr. Lasinski's report also includes a schedule reproducing the data from PX-403, PX-404, and PX-405 does not detract from the fact that PX-477 summarizes voluminous material that is admissible — and in fact has been admitted. | This document may not be properly admitted into evidence as it is a summary of one or more schedules of Mr. Lasinski's reports. The underlying schedule(s) should be disclosed as a demonstrative. |

| Exhibit | Google's Objection(s) |
|---|---|
| PX-478 | FRE 601/703 (Foundation); FRE 401/402 (Relevance) |
| **Plaintiffs' Position** | **Google's Position** |
| Withdrawn | This document may not be properly admitted into evidence as it is a summary of one or more schedules of Mr. Lasinski's reports. The underlying schedule(s) should be disclosed as a demonstrative. |

| Exhibit | Google's Objection(s) |
|---|---|
| PX-479 | FRE 601/703 (Foundation); FRE 401/402 (Relevance) |
| **Plaintiffs' Position** | **Google's Position** |
| Withdrawn | This document may not be properly admitted into evidence as it is a summary of one or more schedules of Mr. Lasinski's reports. The underlying schedule(s) should be disclosed as a demonstrative. |

**Demonstratives: Michael Lasinski**

| Demonstrative | Google's Objection(s) |
|---|---|
| Slide 6, 23, 42 (Summary of opinions) | Violates court orders (Dkt. Nos. 614, 462) |
| **Plaintiffs' Position** | **Google's Position** |
| These slides do not violate any court orders. They reflect Mr. Lasinski's actual opinion, which—as this Court has recognized time and again—is that the formula for damages is $3 per device per month. *E.g.*, Dkt. 462 at 7 (describing Lasinski's "opinion about a monthly measure being appropriate"); Mr. Lasinski offered a calculation that conservatively applies only one monthly payment per device. As permitted by the Court's orders, that is what he will testify to. Dkt. 614 at 1-2 (denying Google's motion to exclude "essential component" of "Lasinski's 'conservative' opinion," namely that Lasinski's calculations are "based on a single month of data collection per device"). Mr. Lasinski's slides follow this Court's guidance to the letter. Google's objection is an improper effort to relitigate this issue for the third (or perhaps fourth?) time. | The Court has held that "Lasinski may not suggest that 'actual damages could range up to' any figure higher than that which his conservative opinion supports.'" (Dkt. No. 614, at 2, quoting Dkt. No. 462, at 7.) These demonstratives show Mr. Lasinski's opinion that actual damages are $523 million, but then include a red box stating that these numbers are for a "single month of data collection per device" – thereby improperly "suggest[ing] that actual damages could range up to" higher figures. (Dkt. No. 614, at 2 (internal quotation marks omitted).) |

| Demonstrative | Google's Objection(s) |
|---|---|
| Slide 16 (Class Member Compensatory Damages) | Violates court orders (Dkt. Nos. 614, 462) |
| **Plaintiffs' Position** | **Google's Position** |
| Same response as above. | The Court has held that "Lasinski may not suggest that 'actual damages could range up to' any figure higher than that which his conservative opinion supports.'" (Dkt. No. 614, at 2, quoting Dkt. No. 462, at 7.) This demonstrative states that the $523 million number for actual damages is a "conservative baseline calculation" that "assum[es] that, for each device, Google collected data during just 1 month out of 98 months in the class period" – thereby improperly "suggest[ing] that actual damages could range up to" higher figures. (Dkt. No. 614, at 2 (internal quotation marks omitted).) |

| Demonstrative | Google's Objection(s) |
|---|---|
| Slide 24 (Lasinski U.S. App Promo Revenue Calculation) | FRE 403 (Unfairly prejudicial); Violates court order (Dkt. No. 633) |
| **Plaintiffs' Position** | **Google's Position** |
| The slide in question is perfectly permissible. Google's damages expert, Dr. Knittel, served a report in June 2025 to which he added an opinion that App Promo revenues from 2017-2019 were global, not U.S.-specific. Mr. Lasinski should be permitted to address that opinion and why it is incorrect. It is prejudicial to foreclose Mr. Lasinski from alerting the jury to the areas of dispute and addressing them head-on. Plaintiffs do not understand Google's citation to Dkt. 633, which is entirely irrelevant. The slide in question concerns Mr. Lasinski's conclusion that these revenues are U.S.-specific—a conclusion he has maintained since his initial report. *See* Lasinski Rep. ¶ 33 n.68. This is a distinct issue from the alternative calculations addressed by Dkt. 633. | It is inappropriate for Mr. Lasinski to testify as to an opinion about "Google's interpretation of its produced App Promo revenue." Mr. Lasinski should merely explain the source for his own opinions on revenue without discussing his understanding of Google's interpretation of its own documents (while remaining within the bounds of his reports and the Court's orders as to when he must disclose that his numbers are based on his own assumptions). *See* Dkt. 633 ("Plaintiffs must amend their demonstratives, evidence, and argument to reflect Lasinski's actual conclusion in his report, which was a range from $1.498 billion to $1.726 billion"). |

| Demonstrative | Google's Objection(s) |
|---|---|
| Slide 25 (Lasinski U.S. App Promo Cost Calculation) | Violates court order (Dkt. No. 633) |
| **Plaintiffs' Position** | **Google's Position** |
| The slide in question complies with the court's order. This slide does not include a conclusion regarding Google's unjust enrichment. It is a chart that accurately reflects the App Promo revenues and costs that Google produced for each year. there is nothing to label an "alternative calculation." To the extent this slide is discussed in the context of Mr. Lasinski's alternative calculations, those calculations will be described as alternatives based on his assumptions, consistent with the Court's order. This slide is also relevant for other purposes, including to illustrate that Mr. Lasinski's actual conclusions for the early years of the class period are conservative, separate and apart from any alternative calculation. | This slide addresses Mr. Lasinski's alternative calculation of unjust enrichment based on global traffic acquisition costs. On August 22, 2025, the Court ordered that "Plaintiffs must amend their demonstratives, evidence, and argument to reflect Lasinski's actual conclusion in his report, which was a range from $1.498 billion to $1.726 billion. Any reference to his footnote and disputed supplemental schedules must identify them as merely alternative calculations that rest on his own assumptions about costs for the latter years of the class period." (Dkt. No. 633, at 1.) This slide improperly reflects the alternative calculation without showing Mr. Lasinski's "actual conclusion" on unjust enrichment; does not identify this calculation as "alternative" or "rest[ing] on his own assumptions about costs." |

| Demonstrative | Google's Objection(s) |
|---|---|
| Slides 43 | Violates court order (Dkt. No. 587); FRE 106 (Incomplete); FRE 403 (Unfairly prejudicial; misleading) |
| **Plaintiffs' Position** | **Google's Position** |
| The slide in question is non-controversial. It does not include or describe anything concerning Alphabet's revenues. It includes a generic quote from Alphabet's 10-K noting that its business—99.5% of which is Google, including the advertising business referenced in the quote—involves "serving the right ads and the right time." It also includes a quote from a Google webpage explaining what conversion-tracking is. These quotes are included in Mr. Lasinski's report, are part of the basis for his opinions, and are not prejudicial. To the extent Google's dispute is a factual one, based on its contention it does not make money from its ability to track conversions, its claim is | The Court fully granted Google's motion in limine to exclude evidence and argument about Alphabet or Google's total revenue. (Dkt. 587, at 19-20.) This slide quotes from Alphabet's Form 10-K to make statements about company-wide revenue ("serving ads to the right people at the right time"), and also misrepresents that the cited Google support page (https://support.google.com/google-ads/answer/1722022?hl=en) says that Google *generates revenue* by "tracking conversions." |

| | |
|---|---|
| belied by the record and is better addressed through trial. | |

| Demonstrative | Google's Objection(s) |
|---|---|
| Slide 51 | Violates court order (Dkt. No. 633) |
| **Plaintiffs' Position** | **Google's Position** |
| The slide in question plainly complies with the Court's order. The Court required reference to his calculations to identify them as "alternative calculations" that "rest on his own assumptions about costs for the latter years of the class period." Dkt. 633. The slide in question does precisely that. It is titled "Google's Profits from Conduct at Issue – Alternative Using Assumptions Based on Updated App Promo TAC [traffic acquisition costs]." The Court's order does not prohibit Mr. Lasinski from presenting the "alternative calculation" itself. Google's objection to the presentation of that figure is an improper effort to relitigate this damages issue. | This slide addresses Mr. Lasinski's alternative calculation of unjust enrichment based on global traffic acquisition costs. On August 22, 2025, the Court ordered that "Plaintiffs must amend their demonstratives, evidence, and argument to reflect Lasinski's actual conclusion in his report, which was a range from $1.498 billion to $1.726 billion. Any reference to his footnote and disputed supplemental schedules must identify them as merely alternative calculations that rest on his own assumptions about costs for the latter years of the class period." (Dkt. No. 633, at 1.) This slide improperly gives the jury a damages figure of over $2.3 billion and should be excluded. |

| Demonstrative | Google's Objection(s) |
|---|---|
| Alphabet Form 10-K | Violates court order (Dkt. No. 587); FRE 106 (Incomplete); FRE 403 (Unfairly prejudicial; misleading) |
| **Plaintiffs' Position** | **Google's Position** |
| Withdrawn | The Court fully granted Google's motion in limine to exclude evidence and argument about Alphabet or Google's total revenue, including based on Alphabet's 10-K 2024. (Dkt. 587, at 19-20.) Plaintiffs state that they may introduce parts of the 10-K, which violates the order. |

| Demonstrative | Google's Objection(s) |
|---|---|
| Dkt. 481 (Joint stipulation) | FRE 401/042 (Relevance); FRE 403 (Unfair prejudice, misleading); Violates court order (Dkt. No. 633) |
| **Plaintiffs' Position** | **Google's Position** |
| Plaintiffs do not understand Google's objection. The purpose of this stipulation was to provide documents that both parties' experts may rely on in calculating damages, and that is precisely what both parties' experts did. Plaintiffs intend to present this document as reflecting the basis for Mr. Lasinski's opinions—exactly as the parties intended. Google's sudden change to want to bury its own stipulation is perplexing. The Court's order, Dkt. 633, does not bar testimony regarding alternative calculations or their basis. It requires only that such testimony identify the calculations as "alternative[s] … that rest on [Mr. Lasinski's] own assumptions." There is nothing about this document that would require violating that order. And there is also nothing about this document that reflects an intent to do so. This appears to be yet another objection intended to relitigate an issue Google has lost—and bar relevant and important evidence of Google's unjust enrichment. | Plaintiffs have not provided the potential use for this stipulation, and Google therefore objects to its use to the extent that use would violate the Court's order regarding Mr. Lasinski's ability to testify as to his alternative damages calculations or his assumptions leading thereto. |

**Witness Exhibits: JK Kearns**

| Exhibit | Google's Objection(s) |
|---|---|
| PX-5 | Relevance – FRE 401/402; Misleading the Jury/Confusing the Issues – FRE 403 |
| **Plaintiffs' Position** | **Google's Position** |
| PX-5 is an email thread between JK Kearns, Henry Wong and several other Google employees. Mr. Kearns testified at his deposition about the document and identified the individuals on the email as Google employees. In PX-5, Mr. Wong states: "[w]e do not want to show on-device history for users who have turned off WAA. IMO these users have given us a clear signal that they do not want Google to know what they are searching for. Technically we don't (it's on device) but I'm willing to bet that less than 1% of users will understand that; IMO it just feels like we are tracking them even though they told us not to."<br><br>Their comments reflect internal disagreement and confusion about the clarity and meaningfulness of the WAA privacy controls Google offers to its users. Such evidence is relevant and probative of whether a layperson, such as the Plaintiffs or any of the class members, had a reasonable expectation of privacy when turning the WAA of sWAA toggle off. Any purported prejudice is outweighed by the probative value of Google's own admissions, across various teams and employees, expressing the same confusion asserted by Plaintiffs in this case. | This document is an email between three individuals who will not testify in this trial. Because they will not be called to contextualize the content of their statements, this document should be excluded. *See Salemo v. United States,* 187 F. Supp. 3d 402, 410 (S.D.N.Y. 2016) (aff'd, 499 Fed. Appx. 110, 115 (2nd Cir. 2012)) (excluding emails without witness testimony to "explain their context").<br><br>Mr. Kearns's deposition testimony does not provide any foundation or context for this document, beyond the fact that the three individuals who wrote these emails – Henry Wong, Christina Collada, and Chris Jordan – are all Product Managers for Google Search, which is a completely separate Google product that isn't at issue in this case. Indeed, Mr. Wong's email suggests that this discussion occurs in the context of Search. This document simply is not relevant to this case, has no probative value, and would serve only to mislead the jury and confuse the issues. It should be excluded. |

| Exhibit | Google's Objection(s) |
|---|---|
| PX-10 | Relevance – FRE 401/402; Misleading the Jury/Confusing the Issues – FRE 403 |
| **Plaintiffs' Position** | **Google's Position** |
| PX-10 is an email thread between JK Kearns and Ela Beres, with David Monsees, Phiroze Parakh, Frank Worsley, and Luke Swartz CC'd, with the subject line "WAA check for user models." Mr. Kearns testified at his deposition about the document and identified the individuals on the email as Google employees. Ela Beres writes to the group and asks to "re-visit the question of where we enforce the WAA check in the case of user models." Ms. Beres suggests that "teams that use the data should check WAA, but this is error prone (there are several teams that . . . don't check WAA)." In response to this inquiry, Mr. Kearns responds by stating, "I think teams should not use user data at all if WAA is off, regardless if there is user data that was collected when WAA was on. It's a much cleaner story and what I would think most users expect." Ms. Beres responds "Yes – that's definitely the user story<br><br>Their comments reflect internal recognition about the lack of transparency surrounding the WAA privacy controls Google offers to its users. Such evidence is relevant and probative of whether a layperson, such as the Plaintiffs or any of the class members, had a reasonable expectation of privacy when turning the WAA of sWAA toggle off. Any purported prejudice is outweighed by the probative value of Google's own admissions, across various teams and employees, expressing the same confusion asserted by Plaintiffs in this case. | This document is irrelevant and misleading since the statements herein were made only in the context of Google Search. During his deposition, Mr. Kearns testified that his "statements here were strictly in the context of search." Kearns Tr. 77:3-5.<br><br>As Mr. Kearns also testifies in his deposition, he and Ms. Beres are both Product Managers for Google Search. This is an entirely separate product that isn't at issue here. In this email, Ms. Beres and Mr. Kearns are clearly discussing a matter related to search history data as indicated by Ms. Beres' email on 11/13/2018 at 4:31 PM, which discusses WAA in the context of Google search ("turning off WAA does not delete search history"). Because Google Search is not a product at issue in this case, this document does not have probative value and should be excluded. |

| Exhibit | Google's Objection(s) |
|---|---|
| PX-13 | Relevance – FRE 401/402; Misleading the Jury/Confusing the Issues – FRE 403 |
| **Plaintiffs' Position** | **Google's Position** |
| PX-13 is a series of emails between JK Kearns, David Monsees and several Google employees discussing the WAA button. Mr. Kearns testified at his deposition about the document and identified the individuals on the email as Google employees.  In these emails, Google employees across various Google teams discuss "user confusion" as to what WAA does and does not do. Their comments reflect internal disagreement and confusion about the clarity and meaningfulness of the choices Google offers to its users, including the WAA privacy controls.  JK Kearns, a Google product engineer, states: "To me, it feels like a fairly significant bug that a user can choose to turn WAA off but then we still collect and use their data (even locally)." Google's own trained engineers expressed confusion regarding the WAA-off and WAA-on functionalities. Such evidence is relevant and probative of whether a layperson, such as the Plaintiffs or any of the class members, would reasonably expect to protect their privacy by turning the WAA toggle off. Any purported prejudice is outweighed by the probative value of Google's own admissions, across various teams and employees, expressing the same confusion asserted by Plaintiffs in this case. | Mr. Kearns testified during his deposition that his comment in this thread was made in the context of a specific bug affecting a user's search history. *See* Kearns Tr. 87:13-87:16. Because Google Search is not a product at issue in this case, and given Mr. Kearns's explicit statement that his comments in this email are cabined to a particular feature of Google search, this document is of minimal probative value, and should be excluded so as not to confuse the jury and waste time.<br><br>This email thread is between 13 individuals, 11 of whom are not witnesses in this trial. Those 11 people will not be called to contextualize the content of their statements. *See Salemo v. United States,* 187 F. Supp. 3d 402, 410 (S.D.N.Y. 2016) (aff'd, 499 Fed. Appx. 110, 115 (2nd Cir. 2012)) (excluding emails without witness testimony to "explain their context"). Of the two participants who *are* on Plaintiffs' witness list, David Monsees and JK Kearns, Plaintiffs did not question Mr. Monsees about this document and Mr. Kearns's deposition testimony explicitly states that this document is relevant only to Google Search. Furthermore, JK Kearns testified during his deposition that five of these individuals – Henry Wong, Christina Collada, Ela Beres, Mona Vajolahi, and Chris Jordan – are all Product Managers for Google Search (contrary to Plaintiffs' representations, Mr. Kearns was not asked about the remaining 7 individuals during his deposition and thus did not identify them as Google employees). Plaintiffs have no foundation to say that these employees work "across various Google teams," other than the Search employees and Mr. Monsees from the Footprints team. Mr. Kearns is also a Product Manager on the Search team. Again, Search is a completely separate Google product that isn't relevant here. This document is irrelevant and prejudicial, and should be excluded. |

## II. At Issue Deposition Designations

**JK Kearns; 2/17/2023**

| Pg:Line– Pg:Line | Google's Objection(s) | Google's Counter(s) | Plaintiffs' Objection(s) to Counter(s) |
|---|---|---|---|
| 87:17–87:23 | N/A | 87:6–16; 87:24–89:14 | 87:24–89:14 — Improper counter-designation |

| **Plaintiffs' Position** | **Google's Position** |
|---|---|
| Plaintiffs intend to designate the deposition testimony of JK Kearns to lay the foundation for the admission of Exhibits PX-5, PX-10 and PX-13. These three exhibits were introduced and discussed by Mr. Kearns at his deposition, and he further testified regarding the identities of the individuals included in the email threads.<br><br>Plaintiffs have already agreed to several "blanket" designations—not tied to any of Plaintiffs' specific designations—which were requested by Google to provide context to Mr. Kearns' testimony. The Parties have largely reached agreement on the designations and counter-designations for Mr. Kearns except for one set of Google's counter-designations relating to PX-13. *See* Tr. 87:24-89:14. Google contends that nearly two-pages of additional testimony is necessary to explain PX-13. However, Google's proposed counter-designations go far beyond the document presented to Mr. Kearns and are untethered to Plaintiffs' designations. Google's inclusion of 87:24-89:14 is unwarranted given the limited purpose that Plaintiffs seek to admit Mr. Kearn's testimony (i.e., document foundation). | Plaintiffs may designate testimony to lay foundation for this document, but for purposes of completeness, Google should be permitted to counter designate portions that explain the document. *See* Fed. R. Evid. 106. Contrary to Plaintiffs' assertions, the portions of Mr. Kearns's deposition that Google seeks to counter-designate still discuss the document labeled PX 13. *See* Kearns Tr. 87:24-89:14. The question posed in lines 87:24-88:03 specifically quotes language from Mr. Kearns's comment in PX 13, and the subsequent discussion about relevant use cases is not simply collateral. Rather, it provides the necessary context for understanding the meaning and purpose of his comment in PX 13, which he is asked about in the portions of his testimony designated by Plaintiffs. Google's counter designations are necessary to provide this context and should be played for the jury. |

| | | |
|---|---|---|
|1| Dated: August 24, 2025 | Dated: August 24, 2025 |
|2| **BOIES SCHILLER FLEXNER LLP** | **COOLEY LLP** |
|3| | |
|4| By:  /s/ Mark C. Mao | By:  /s/ Benedict Y. Hur |
| | David Boies (admitted *pro hac vice*) | BENEDICT Y. HUR (SBN: 224018) |
|5| 333 Main Street | bhur@cooley.com |
| | Armonk, NY 10504 | SIMONA AGNOLUCCI (SBN: 246943) |
|6| Tel.: (914) 749-8200 | sagnolucci@cooley.com |
| | dboies@bsfllp.com | EDUARDO E. SANTACANA (SBN: 281668) |
|7| | esantacana@cooley.com |
| | Mark C. Mao, CA Bar No. 236165 | ARGEMIRA FLOREZ (SBN: 331153) |
|8| Beko Reblitz-Richardson, CA Bar No. 238027 | aflorez@cooley.com |
| | 44 Montgomery St., 41st Floor | HARRIS MATEEN (SBN 335593) |
|9| San Francisco, CA 94104 | hmateen@cooley.com |
| | Tel.: (415) 293-6800 | ISABELLA MCKINLEY CORBO (SBN 346226) |
|10| mmao@bsfllp.com | icorbo@cooley.com |
| | brichardson@bsfllp.com | 3 Embarcadero Ctr., 20th Floor |
|11| | San Francisco, CA 94111 |
| | James Lee (admitted *pro hac vice*) | Telephone: (415) 693-2000 |
|12| 100 SE 2nd St., 28th Floor | |
| | Miami, FL 33131 | *Counsel for Defendant Google LLC* |
|13| Tel.: (305) 539-8400 | |
| | jlee@bsfllp.com | |
|14| | |
| | Alison L. Anderson, CA Bar No. 275334 | |
|15| Samantha Parrish, CA Bar No. 318681 | |
| | M. Logan Wright, CA Bar No. 349004 | |
|16| 2029 Century Park East, Suite 1520 | |
| | Los Angeles, CA 90067 | |
|17| Tel.: (213) 995-5720 | |
| | alanderson@bsfllp.com | |
|18| sparrish@bsfllp.com | |
| | mwright@bsfllp.com | |
|19| | |
|20| | |
| | **SUSMAN GODFREY L.L.P.** | |
|21| Bill Carmody (admitted *pro hac vice*) | |
| | Shawn J. Rabin (admitted *pro hac vice*) | |
|22| Steven M. Shepard (admitted *pro hac vice*) | |
| | Alexander P. Frawley (admitted *pro hac vice*) | |
|23| Ryan Sila (admitted *pro hac vice*) | |
| | One Manhattan West, 50th Floor | |
|24| New York, NY 10001 | |
| | Tel.: (212) 336-8330 | |
|25| bcarmody@susmangodfrey.com | |
| | srabin@susmangodfrey.com | |
|26| sshepard@susmangodfrey.com | |
| | afrawley@susmangodfrey.com | |
|27| rsila@susmangodfrey.com | |
|28| | |

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

*Counsel for Plaintiffs*

**ATTESTATION**

1  I, Mark C. Mao, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: August 24, 2025                              By: */s/ Mark C. Mao*