| | |
|---|---|
| **BOIES SCHILLER FLEXNER LLP**<br>David Boies (admitted *pro hac vice*)<br>333 Main Street<br>Armonk, NY 10504<br>Tel.: (914) 749-8200<br>dboies@bsfllp.com<br><br>Mark C. Mao, CA Bar No. 236165<br>Beko Reblitz-Richardson, CA Bar No. 238027<br>44 Montgomery St., 41st Floor<br>San Francisco, CA 94104<br>Tel.: (415) 293-6800<br>mmao@bsfllp.com<br>brichardson@bsfllp.com<br><br>James Lee (admitted *pro hac vice*)<br>100 SE 2nd St., 28th Floor<br>Miami, FL 33131<br>Tel.: (305) 539-8400<br>jlee@bsfllp.com<br><br>Alison L. Anderson, CA Bar No. 275334<br>Samantha Parris, CA Bar No. 318681<br>M. Logan Wright, CA Bar No. 349004<br>2029 Century Park East, Suite 1520<br>Los Angeles, CA 90067<br>Tel.: (213) 995-5720<br>alanderson@bsfllp.com<br>sparrish@bsfllp.com<br>mwright@bsfllp.com<br><br>*Counsel for Plaintiffs* | **SUSMAN GODFREY L.L.P.**<br>Bill Carmody (admitted *pro hac vice*)<br>Shawn J. Rabin (admitted *pro hac vice*)<br>Steven M. Shepard (admitted *pro hac vice*)<br>Alexander P. Frawley (admitted *pro hac vice*)<br>Ryan Sila (admitted *pro hac vice*)<br>One Manhattan West, 50th Floor<br>New York, NY 10001<br>Tel.: (212) 336-8330<br>bcarmody@susmangodfrey.com<br>srabin@susmangodfrey.com<br>sshepard@susmangodfrey.com<br>afrawley@susmangodfrey.com<br>rsila@susmangodfrey.com<br><br>Amanda K. Bonn, CA Bar No. 270891<br>1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067<br>Tel.: (310) 789-3100<br>abonn@susmangodfrey.com<br><br>**MORGAN & MORGAN**<br>John A. Yanchunis (admitted *pro hac vice*)<br>Ryan J. McGee (admitted *pro hac vice*)<br>Michael F. Ram, CA Bar No. 104805<br>201 N. Franklin Street, 7th Floor<br>Tampa, FL 33602<br>Tel.: (813) 223-5505<br>jyanchunis@forthepeople.com<br>rmcgee@forthepeople.com<br>mram@forthepeople.com |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 3:20-cv-04688-RS<br><br>**PLAINTIFFS' NOTICE OF BASIS FOR CALLING REBUTTAL WITNESSES**<br><br>Judge: Hon. Richard Seeborg<br>Trial Date: August 18, 2025<br>Courtroom: 3, 17th Floor |

## PLAINTIFFS' NOTICE OF BASIS FOR CALLING REBUTTAL WITNESSES

Google has repeatedly used fact witnesses to address issues to which Plaintiffs' experts Michael Lasinski and Jonathan Hochman are the only witnesses available to Plaintiffs to respond. As fact witnesses, they did not disclose opinions in advance, and Plaintiffs' experts obviously could not have addressed what those fact witnesses said during Plaintiffs' case-in-chief. Further, Google's expert, Professor Donna Hoffman, testified far outside of the scope of her report, which requires rebuttal testimony; which testimony, again, Plaintiffs' experts could not have addressed before now.

This is not a situation where dueling experts debate back and forth. This is a situation where Defendant has exclusive access to factual information except for what has been obtained by Plaintiffs' experts. This is a situation where Defendant has asserted facts in its case in chief and Plaintiffs seek to rebut those facts by the only witnesses available to them to do so. Plaintiffs' rebuttal will be limited to responding to what Google's fact witnesses and Professor Hoffman testified. It will be limited in scope and duration.

District courts are "vested with 'broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial.'" *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996), as amended (Jan. 15, 1997) (citation omitted). This includes the admission of rebuttal evidence. *Anderson v. Anderson*, 840 F. App'x 92, 96 (9th Cir. 2020). "[T]he function of rebuttal evidence is to explain, repel, counteract or disprove evidence of the adverse party." *Id.* (citing *United States v. Gold*, 743 F.2d 800, 818 (11th Cir. 1984); *United States v. Finis P. Ernest, Inc.*, 509 F.2d 1256, 1263 (7th Cir. 1975), *cert. denied*, 423 U.S. 893 (1975)). The determination of what constitutes proper rebuttal evidence lies within the sound discretion of the court, however, "[t]he district court's discretion to exclude proffered rebuttal testimony is not unlimited." *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 345 (6th Cir. 2002) (finding district court improperly excluded rebuttal testimony that was offered to refute theory offered in the defense's case-in-chief).

"The proper scope and function of rebuttal is thus refutation, which involves evidence which denies, explains, qualifies, disproves, repels, or otherwise sheds light on evidence offered by the defense." *R.V. by & Through Venancio v. Walmart, Inc.*, 2024 WL 3526873, at *2 (C.D. Cal.

July 22, 2024) (quoting *United States v. Webb*, 115 F.3d 711, 719 n. 5 (9th Cir. 1997) *abrogated on other grounds by United States v. Espinoza-Valdez*, 889 F.3d 654 (9th Cir. 2018); Black's Law Dictionary 1295 (8th ed.) (defining "rebut" as "to refute, oppose, or counteract (something) by evidence, argument, or contrary proof")).

Plaintiffs seek to call Mr. Lasinski and Dr. Hochman to testify to refute testimony proffered by Google through its witnesses. This is a proper use of rebuttal testimony that should be permitted here. *See Messick v. Patrol Helicopters, Inc.*, 2008 WL 11348014, at *3 (D. Mont. Dec. 11, 2008) (allowing rebuttal testimony to refute the opinions of two defense witnesses, particularly where the rebuttal testimony was "limited in scope" to the issues raised by those witnesses "and was relatively brief"), aff'd, 360 F. App'x 786 (9th Cir. 2009). The opinions and assertions sought to be rebutted go right to the heart of the disputed issue of Plaintiffs' damages in this case.

Here, Plaintiff should be permitted to recall Mr. Lasinski and Dr. Hochman "to explain, repel, counteract or disprove evidence" presented by Google's witnesses during its case-in-chief. *See, e.g., Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1346 (9th Cir. 1987) (evidence about the plaintiff's attempts to mitigate the effects of his employment after termination, evidence relevant to the disputed issue of plaintiff's damages); *United States v. Kallin*, 172 F.3d 877, 890 (9th Cir. 1999); *R.V. by & Through Venancio*, 2024 WL 3526873, at *2.

### **Belinda Langner Testified at Length Regarding Mr. Lasinski's Issues**

A significant portion of Ms. Langner's testimony—who did not disclose rebuttal opinions in advance as she was called by Google as a fact witness and not an expert—was focused on Google's profits and losses, Google's conversions process, and generally about his estimate of Google's profits from sWAA-off data. For example:

- Ms. Langner testified about Mr. Lasinski's opinion on Google's 2022 and 2023 revenue. *See* Trial 1321:24-1326:3. Ms. Langner's testimony on the topic began with Google's counsel asking about a specific demonstrative and opinion provided by Mr. Lasinski. *See id.* ("Q. Ms. Langner, yesterday the jury was shown a demonstrative from the plaintiffs' damages expert, Mr. Lasinski, and I want to show it to you. Q: Could you put up Slide 15 from the Lasinski presentation? Q: Ms. Langner, you'll notice that this slide reflects a very

1  big jump in revenue in 2022 and 2023. Does that make sense to you? A. No, this does not
2  make sense to me. Q. Why not?"). If this testimony had come from a Google witness
3  consistent with the witness's disclosure, Mr. Lasinski could have responded in Plaintiffs'
4  case in chief. But it did not, and he could not.

- Ms. Langner testified at length about how she believes Mr. Lasinski's demonstrative slide regarding Google's conversion tracking is inaccurate. *See* Trial 1288:3-1290:8. Indeed, Google's counsel pulled up Mr. Lasinski's demonstrative when he began this line of questioning during Ms. Langner's direct examination. *See id.* ("Q. Yesterday one of the plaintiffs' experts showed the following demonstrative. MR. HUR: Can you put up Mr. Lasinski's Demonstrative Number 5. Q. And Mr. Lasinski told the jury that this is how he understood Google's advertising business to work. Is this how Google's app advertising business works?").

- Ms. Langner also testified on the issue of whether or not Google's provided spreadsheets reflected U.S. versus global costs or if the P&L spreadsheets produced by Google are based upon multiple Ad products or not, testimony clearly intended to rebut Mr. Lasinski. *See* Trial 1323:1-1326:3. Google's counsel was eliciting this testimony in direct response to one of Mr. Lasinski's slides. *See id.* (Q. Ms. Langner, are there any other errors that you notice on this slide, other than the two dark green bars on the right? A. So other than the two dark green bars, I'll also point out that, to the best of my recollection, if these numbers are pulled from the P&L that we shared earlier, those P&L numbers are global numbers. So you'll see in that table it's marked as 'U.S. Revenue.' Our P&Ls are produced at the global level and not at a country level, so those revenue numbers, that green -- that light green box should also be marked as global revenue.").

- Ms. Langner also responded directly to Mr. Lasinski's determination on percentage of ad revenue attributable to Google Analytics for Firebase. *See* Trial 1312:10-1314:22. In doing so, Google's counsel, once again, directly referenced Mr. Lasinski in eliciting this testimony. *See id.* ("Q. Now, plaintiffs' damages expert yesterday told the jury that if Google says 55 percent of ad revenue is attributable to Google Analytics for Firebase, that

means that 55 percent of all the ad revenue is because of Google Analytics for Firebase ability to measure conversions. Do you agree with that? A. No, I don't. Q. Why not?").

### Belinda Langner Also Testified About Dr. Hochman's Issues

Ms. Langner also testified at length about the technical aspects of how Google's conversions work on a technical level. *See e.g.*, Trial 1292:2-1293:21 ("Q. Okay. So we're talking about technically how conversion measurement occurs. How does Google, or any conversion measurement company, know that the device that clicked burger ad in Step 1 is the same device that later downloaded the app?").

### Steve Ganem Testified Concerning Dr. Hochman's Issues

Steve Ganem, "CEO" of Google Analytics and Google's corporate representative at trial, testified at length in response to testimony from multiple witnesses in this trial, but especially in regard to Dr. Hochman's testimony. Mr. Ganem also served as a fact witness in this trial, thus none of his opinions that he testified about at trial were disclosed in advance for Dr. Hochman to rebut when testifying in the Plaintiffs' case in chief.

Mr. Ganem specifically referenced testimony of Dr. Hochman and testified at length about Dr. Hochman's testimony as it related to how Google Analytics works, the way Google stores sWAA-off data, the amount of sWAA-off data Google collects. For example:

- Mr. Ganem testified at length in an attempt to rebut Dr. Hochman's testimony regarding what Google's counsel called "the heart of this case" about the amount of data that Google collects. *See* Trial 1130:4-1134:15. Once again, Google's counsel specifically raises the expert opinion that Mr. Ganem is attempting to rebut as the introduction to this testimony. *See id.* ("Q. Now, Mr. Ganem, we have a lot to cover today, but I want to jump right to ***the heart of this case*** so that the jury has the benefit of hearing your thoughts. You've been sitting here throughout the trial. We've discussed that. Did you hear Dr. Hochman's testimony regarding a 30-story building of data? A. I did. Q. Did you have any understanding as to what he was trying to convey with his 30-story building analogy. A. My understanding is that he was trying to convey that there was device profiles that had mountains of sWAA-off data associated with them in Google Analytics. Q. Does Google

    Analytics maintain profiles of user data organized by device or by user? A. No. That's not how Google Analytics stores its data") (emphasis added); ("Q. Using Dr. Hochman's analogy of the 30-story building, can you explain how the data is organized?").

- Mr. Ganem also testified at length in an attempt to rebut Dr. Hochman's testimony about personalized data being sent to Google from App Developers. *See e.g.* Trial 1141:3-1142:18. And, once again, Google's counsel themselves made it quite clear to the jury that this is what Mr. Ganem was doing. *See id.* ("Q. Is this a problem -- this data sneaking in, I think Dr. Hochman called it toxic data, is this problem something that you worry about in your job?").

- Mr. Ganem also testified that Google Analytics does not maintain profiles of user data organized by device or user in an attempt to rebut Dr. Hochman's conclusions to the contrary. *See e.g.* Trial 1130:16-17 ("Q. Does Google Analytics maintain profiles of user data organized by device or by user? A. No. That's not how Google Analytics stores its data."). Dr. Hochman can rebut this testimony.

- Mr. Ganem additionally testified that Google doesn't intermingle data. Trial 1131:12-14 ("Q. Does the data in each apartment from each different app, can the data intermingle? A. Not in Google Analytics, no."). Dr. Hochman can rebut this testimony.

- Mr. Ganem also testified that there are "not data breaches associated with Google," Trial 1145:8-9, despite evidence Dr. Hochman can testify to that data breaches at Google are quite common. Similarly, Mr. Ganem testified that he was unaware of any Google employees violating Google's fingerprinting policy, which Dr. Hochman can rebut. *See* Trial 1182:13-15 ("Q. Have you ever known anyone at Google, on your team, on your product, to violate either one of these policies? A. No.").

**Professor Hoffman Went Well Beyond the Bounds of her Report**

Professor Hoffman specifically stated on the stand that she went beyond the scope of her report. Plaintiffs' experts obviously could not have responded to that testimony earlier. For example, concerning a key question in this trial, Professor Hoffman testified about the extent of Google's collection of sWAA data when WAA or sWAA, are off, something concededly outside

the scope of her report. On direct examination with Google's counsel, Professor Hoffman testified, "And, actually, I think it's important to note that Google – Google's design is offering two links here. So one is basically saying, 'Well, if you don't like this, go back to your account, account.google.com, and then you can toggle whatever you want to toggle and learn more about that.' **But it also tells you: We're going to keep continue collecting data even if you turn this off.** And if you want to know why that's happening, then you need to go to privacy -- privacy and terms, which is linked at policies.google.com. And as I said, some people will click it; some people will not click it." Trial 1381:10-24 (emphasis added).

On cross-examination, Plaintiffs confirmed that this opinion was not included in Professor Hoffman's report. *See* Trial 1401:9-25 ("Q. Isn't it also true, ma'am, that at the time of your deposition, you did not have any opinion on whether Google's WAA and sWAA disclosures were accurate? A. Do you mind playing that so I can see what I said? MS. BONN: Let's please play page 35, lines 1 through 9, of the deposition. (Pause in proceedings.) MS. BONN: Okay. If we can -- excuse me. Let's zoom into the top half of the page, at lines 1 through 9. [As read]: 'QUESTION: So you don't have any opinion on the accuracy of Google's WAA and sWAA disclosures? ANSWER: My report does not concern the technical specifications of Google's disclosures or how different aspects of Google work under the hood. That was not the focus of my rebuttal.'").

Further examples of Professor Hoffman testifying outside of the scope of her original report include:

- Professor Hoffman's testimony about sWAA-off data being saved outside of the Google Account was outside the scope of her report. *See e.g.*, Trial 1400:8-17 ("Q. Is it yes or no, ma'am? Is it true that at the time of your deposition, based on your review of Google's privacy policy, you did not know whether Google ever saved data somewhere else, outside of what they called a Google Account? A. So my answer was that I didn't know technically, because I believe, in the clip you played, I knew that data was saved; it just wasn't saved to the account. I believe that I understood the question to be technically what happens to it. I'm not a technical expert, and that was my response."); *see also*, Hoffman Dep. 269:13-19, which was then played for the jury ("Q. So from reviewing the privacy policy, do you know

whether Google ever saves data outside of a Google Account? MS. AGNOLUCCI: Object to form. A. My rebuttal opinion was not concerned with that question.").

- Professor Hoffman's opinion about Google's disclosures being clear that Google still collects sWAA-off data when WAA or sWAA are off was outside the scope of her report. *See, e.g.*, Trial 1398:24-1399:6 ("Q. Having spent time reviewing Google's disclosures, writing a more-than-80-page report, responding to the opinions of others, and appearing in your deposition, at the time of your deposition, you yourself were not sure whether when WAA or sWAA are turned off, Google would still collect data, sWAA-off data, but save it outside the Google Account; isn't that true? A. So that was a couple of years ago. I don't recall exactly what I said. Could we review my deposition?..."); *see also* Hoffman Dep. 82:1-12, which was then played for the jury ("Q. So you said a moment ago that when you turn it off and -- well, when you turn WAA off, everything that happens after you turn WAA off will not be saved to your account. And my question is, will that data be saved somewhere else aside from your account? MS. AGNOLUCCI: Object to form. A. That's not something I can answer because my rebuttal did not concern that matter.").

- Professor Hoffman's testimony about sWAA-off data being logged without tying it to a particular Google Account. *See, e.g.*, Trial 1400:22-1401:4 ("Q. Ma'am, isn't it also true that at the time of your deposition, you had no opinion about what it means for Google to log data without tying it to someone's Google Account? A. Well, that sounds like a technical question, and I'm not a technical expert. And so I provided answers in my deposition that -- my assignment was not concerned with technically where the data is saved, and so I answered I did not review that and I didn't know."); *see also* Hoffman Dep. 200:18-201:6, which was then played for the jury ("Q. So you have no opinion about what it means for Google to log data without tying it to your account; is that fair? A. That -- that was not a part of my rebuttal opinion. Q. So you don't know one way or the other whether Google, in fact, ever A. I have it. Q. Okay. You reviewed Exhibit 10 in the course of writing your report, right? A. Yes.").

# CONCLUSION

The Court may, of course, sustain objections to particular questions. The Court may also limit the duration of any rebuttal. However, we respectfully submit, the Court should not preclude any rebuttal by the only witnesses available to Plaintiffs to rebut the testimony of Google's witnesses.

Dated: August 28, 2025                    Respectfully Submitted,

By: /s/ Mark C. Mao
**BOIES SCHILLER FLEXNER LLP**
Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

David Boies (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

James Lee (admitted *pro hac vice*)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
Samantha Parrish, CA Bar No. 318681
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
alanderson@bsfllp.com
sparrish@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander P. Frawley (admitted *pro hac vice*)

| | |
|---|---|
| 1 | Ryan Sila (admitted *pro hac vice*) |
| 2 | One Manhattan West, 50th Floor<br>New York, NY 10001 |
| 3 | Tel.: (212) 336-8330 |
| 4 | bcarmody@susmangodfrey.com<br>srabin@susmangodfrey.com |
| 5 | sshepard@susmangodfrey.com<br>afrawley@susmangodfrey.com |
| 6 | rsila@susmangodfrey.com |
| 7 | Amanda K. Bonn, CA Bar No. 270891<br>1900 Avenue of the Stars, Suite 1400 |
| 8 | Los Angeles, CA 90067<br>Tel.: (310) 789-3100 |
| 9 | abonn@susmangodfrey.com |
| 10 | **MORGAN & MORGAN** |
| 11 | John A. Yanchunis (admitted *pro hac vice*)<br>Ryan J. McGee (admitted *pro hac vice*) |
| 12 | Michael F. Ram, CA Bar No. 104805<br>201 N. Franklin Street, 7th Floor |
| 13 | Tampa, FL 33602<br>Tel.: (813) 223-5505 |
| 14 | jyanchunis@forthepeople.com<br>rmcgee@forthepeople.com |
| 15 | mram@forthepeople.com |
| 16 | *Counsel for Plaintiffs* |