COOLEY LLP
MICHAEL A. ATTANASIO (151529)
(mattanasio@cooley.com)
BENEDICT Y. HUR (224018)
(bhur@cooley.com)
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
EDUARDO E. SANTACANA (281668)
(esantacana@cooley.com)
JONATHAN PATCHEN (237346)
(jpatchen@cooley.com)
ARGEMIRA FLOREZ (331153)
(aflorez@cooley.com)
NAIARA TOKER (346145)
(ntoker@cooley.com)
HARRIS MATEEN (335593)
(hmateen@cooley.com)
THILINI CHANDRASEKERA (333672)
(tchandrasekera@cooley.com)
ISABELLA MCKINLEY CORBO (346226)
(icorbo@cooley.com)
CHELSEA HU (357212)
(chu@cooley.com)
MICHAEL MORIZONO (359395)
(mmorizono@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA  94111-4004
Telephone:	(415) 693-2000
Facsimile:	(415) 693-2222

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANIBAL RODRIGUEZ, et al. individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:20-CV-04688-RS<br><br>**GOOGLE LLC'S MOTION *IN LIMINE* NO. 19 TO PRECLUDE USE OF IRRELEVANT AND PREJUDICIAL EVIDENCE IN CLOSING ARGUMENTS**<br><br>Dept:	3, 17th Fl.<br>Judge:	Hon. Richard Seeborg<br><br>Date Action Filed: July 14, 2020<br>Trial Date: August 18, 2025 |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MIL NO. 19 TO PRECLUDE
IRRELEVANT, PREJUDICIAL CLOSING ARGS.
3:20-CV-04688-RS

Google LLC ("Google") submits this motion in limine to preclude Plaintiffs from presenting evidence during their closing argument about (1) data breaches and leaks; (2) government subpoenas and/or surveillance as to abortion or other private actions; and (3) artificial intelligence. These topics are highly inflammatory. More importantly, there has been *zero* evidence about them at trial except testimony from multiple witnesses confirming that this case has nothing to do with data breaches or data leaks and that Google would have to re-design its systems to respond to a subpoena targeted at an individual's sWAA-off data. And even Plaintiffs' own expert admits there is no evidence connecting sWAA-off data to the training of large language models or generative AI. Any argument on these topics during closing would be inappropriate and erroneous and would merely invite the jury to make improper inferences unsupported by the record. These arguments should therefore be barred.

I.   **INTRODUCTION**

Over the course of this trial, Plaintiffs have questioned witnesses about a variety of topics—including hypothetical data leaks and breaches, the potential use of subpoenas to track private data about abortions, and artificial intelligence training—that have absolutely no relation to the Plaintiffs' complaint. The testimony has unequivocally proven that none of these issues—which are inflammatory and controversial by design—are remotely relevant here. Because it is an "unremarkable proposition that counsel in a civil trial may not rely on evidence outside the record during closing argument," there is zero reason that Plaintiffs should be permitted to reference these topics during closing. *Draper v. Rosario,* 836 F.3d 1072, 1084 (9th Cir. 2016).

As the Court has stated, the "central dispute" of this case is whether Google unlawfully retrieved and used data from class members to measure ad conversions on mobile devices and thereby increased its advertising profits. *See* Dkt. No. 445 (Order Denying Google's Mot. Summ. J.) at 5. The data at issue is de-identified and kept separate from any individual's name or other identifying information. Plaintiffs have not elicited a shred of evidence that the conduct at issue here is related to data breaches, government surveillance of private actions (e.g., of individuals' visits to abortion clinic locations), or the artificial intelligence boom. Indeed, Bruce Schneier, Plaintiffs' "privacy" expert who attempted to offer opinions regarding data breaches, government

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

GOOGLE'S MIL NO. 19 TO PRECLUDE
IRRELEVANT, PREJUDICIAL CLOSING ARGS.
3:20-CV-04688-RS

1  subpoenas, surveillance, abortion data, and artificial intelligence did not even testify in this trial,
2  because Plaintiffs chose not to call him to the stand. Instead, the jury has heard testimony from
3  multiple witnesses about how this case is *not about these issues at all*, and the Court has sustained
4  multiple objections from Google's counsel seeking to halt these lines of questioning. *See, e.g.*,
5  Declaration of Simona A. Agnolucci ("Agnolucci Decl.), Ex. D (Aug. 27, 2025 Trial Tr. (Vol. 7))
6  1243:2-6 (sustaining Mr. Santacana's objections to questions regarding subpoena compliance
7  posed by Plaintiffs' counsel to Mr. Ganem); *see also id.*, Ex. E (Aug. 29, 2025 Trial Tr. (Vol. 9))
8  1758:3-5 ("The Court: … you're not going to start introducing a whole line of inquiry about AI and
9  what AI might be able to do someday. That, you're not going to do.").

10  The jury will shortly be deciding the questions actually before it, which relate to Google's
11  alleged collection of de-identified app activity data, including whether Plaintiffs had a reasonable
12  expectation of privacy based on Google's disclosures and whether Google's conduct was highly
13  offensive. *See* Dkt. No. 587 ("Order Regarding MILs") at 7. The jury's deliberations must be
14  untainted by argument about inflammatory, hypothetical scenarios that have zero support in the
15  evidence at trial.

16  **II.  BACKGROUND**

17  The Court has twice indicated that Plaintiffs should not engage in unsubstantiated
18  fearmongering.  First, in its order on the parties' initial set of motions in limine, the Court denied
19  without prejudice Google's motion to exclude evidence or argument about "sensitive" healthcare
20  apps not listed in the operative complaint and not representative of third-party apps used by all class
21  members. *See* Order Regarding MILs at 18–19.  The Court acknowledged Google's concern that
22  Plaintiffs would "plac[e] undue emphasis on certain apps because they wish to inflame the jury."
23  *Id.* at 18.  Although the Court denied the motion without prejudice, it noted that any "detour into
24  the brambles about any one plaintiff's third party app activity" would be "inappropriate (and
25  wasteful)," particularly if Plaintiffs "have no direct evidence anyone in the class" used an app
26  providing "sensitive" data. *Id.* at 19.

27  Even closer to trial, the Court granted Google's motion in limine to exclude all testimony,
28  evidence, and argument regarding an alleged data breach in June 2025, holding that the data breach

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

GOOGLE'S MIL NO. 19 TO PRECLUDE
IRRELEVANT, PREJUDICIAL CLOSING ARGS.
3:20-CV-04688-RS

1  was "not likely to be probative of any consequential fact in this case, which concerns whether
2  Google invaded the privacy of users who triggered certain data privacy measures related to
3  Google's relationships with third party apps." Dkt. No. 614 ("Order Granting Data Breach MIL"),
4  at 3. The Court reasoned that the fact that an unrelated Salesforce database at Google was hacked
5  "does not, standing alone, provide such insight into the material questions of this case (i.e., what
6  did the users consent to, how reasonable is the asserted expectation of privacy, was the invasion
7  highly offensive, etc.) that it warrants discussion." *Id.*

8  Over the course of this trial, Plaintiffs have questioned witnesses about hypothetical data
9  breaches, the potential use of subpoenas to track private data about abortions, and artificial
10 intelligencethe course of this trial, Plaintiffs have questioned witnesses about hypothetical data
11 breaches, the potential use of subpoenas to track private data about abortions, and artificial
12 intelligence. Yet at every turn, the testimony—even from Plaintiffs' witnesses—has confirmed
13 that this case **does not concern these issues at all**, and that there is **no evidence** that any leak or
14 breach has ever occurred with the data at issue here, **no evidence** that de-identified app activity data
15 has ever been re-identified to respond to any government subpoena or that Google's systems would
16 even allow such re-identification, and **no evidence** that Google has ever used sWAA-off data to
17 build AI models. *See, e.g.*, Agnolucci Decl., Ex. A (Aug. 20, 2025 Trial Tr. (Vol. 3)) 546:6–11
18 (named plaintiff Julian Santiago agreeing it was "correct" that this case has "nothing to do" with
19 "a data leak or a data breach"); *id.*, Ex. B (Aug. 21, 2025 Trial Tr. (Vol. 4)) 711:17–24 (Plaintiffs'
20 technical expert Dr. Hochman disclaiming any assertion that a "single bit or byte of the data that
21 was sent to Google during the class period for these hundred-million users leaked out of Google");
22 *id.*, Ex. D (Aug. 27, 2025 Trial Tr. (Vol. 7)) 1244:18-21 (Mr. Ganem testifying that Google has
23 never "change[d] the way Google's code works in response to a subpoena"); *id.*, Ex. B (Aug. 21
24 Trial Tr. (Vol. 4)) 720:17-22 (Plaintiffs' technical expert Dr. Hochman testifying that he is "not
25 asserting that [Google Analytics for Firebase] data has been given to Gemini.").

26 **III.   LEGAL STANDARD**

27 During closing argument, counsel is only "permitted to make inferences and advance
28 'plausible arguments in light of the record.'" *Draper*, 836 F.3d 1072 at 1083–84 (citing *Settlegoode*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

GOOGLE'S MIL NO. 19 TO PRECLUDE
IRRELEVANT, PREJUDICIAL CLOSING ARGS.
3:20-CV-04688-RS

*v. Portland Pub. Sch.*, 371 F.3d 503, 518 (9th Cir. 2004)) (internal alteration omitted). "By contrast, inferences *unsupported* by the evidence are improper." *Id.* at 1084 (citation omitted); *see also, e.g.*, *United States v. Horton*, 2024 WL 4216444, at *2 n.2 (N.D. Cal. Sept. 16, 2024) (rejecting challenge to jury verdict based on court's preclusion of argument regarding tax returns because tax returns were "never admitted into evidence and, as such, were properly excluded from closing argument").

## IV.  ARGUMENT

### A.  Any Closing Argument Regarding Data Breaches Would Be Unsupported By The Evidence.

There is no evidence in the case suggesting a tie between Google's alleged conduct of measuring conversions on data it receives from third party applications using Google Analytics for Firebase when Plaintiffs toggle off their supplemental Web & App Activity setting in their Google Accounts and any data breach.

The Court prevented Plaintiffs' experts from testifying about a June 2025 data breach related to Salesforce that did not involve any individual user data or relate to Google Analytics or the Web & App Activity setting. *See* Order Granting Data Breach MIL at 3.

Likewise, all witnesses questioned about data breaches have testified that there is no breach related to the facts of this case. Mr. Santiago agreed that this case has "nothing to do" with a "data leak or a data breach," Agnolucci Decl., Ex. A (Aug. 20, 2025 Trial Tr. (Vol. 3)) 546:6–11, and Mr. Ganem testified that "[t]here's not data breaches associated with Google" in the ad measurement space, *see id.*, Ex. C (Aug. 26, 2025 Trial Tr. (Vol. 6)) 1145:4–14. Plaintiffs' technical expert Dr. Hochman stated that even though he was "not here to testify that there was a data breach of the data in question in this case" there is "no system that's perfectly secure." *Id.*, Ex. B (Aug. 21, 2025 Trial Tr. (Vol. 4)) 711:11–24. Still, he testified that he "know[s] of no incident where sWAA-off data collected by Google has been leaked," (*id*. 749:13-16), has not asserted "that any user in this class had their identity stolen as a result of the activity data in question," (*id*. 712:19-22), has not "seen any evidence in this case that any criminal has in some way hacked or … defrauded somebody in connection with the data … that is at issue in this case," (*id*. 712:23-713:2),

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

GOOGLE'S MIL NO. 19 TO PRECLUDE
IRRELEVANT, PREJUDICIAL CLOSING ARGS.
3:20-CV-04688-RS

and was not offering any evidence that "anybody inside of Google violated [Google's] policies … and reidentified a user who had sWAA off," (*id*. 713:3-7). Google's technical expert, Dr. Black, also testified that he had seen no evidence "that any of the pseudonymous data in question was misused by anyone or otherwise leaked." *Id*., Ex. E (Aug. 29, 2025 Trial Tr. (Vol. 9)) 1725:18-22. Dr. Black further clarified that any of Dr. Hochman's opinions regarding the "joinability" or reidentification of data are "theoretical" as Dr. Hochman "admits that no actual reidentification has ever occurred, according to the evidence." *Id*. at 1725:23-1726:7. Additionally, there is no documentary or other evidence admitted in the case indicating any data breach or leak is actually at issue.

Given the state of the evidence on data breaches—*i.e.*, zero—any attempt by Plaintiffs to associate this case with data breach issues in closing argument would go "well beyond the limits of legitimate advocacy" available when "simply discuss[ing] the facts and legal theories applicable to this case," and fall into the realm of unrelated "inflammatory" comments. *See Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1150 (9th Cir. 2001). In *Bird*, the improper closing focused on an "emotionally-charged appeal to Indian collective memory, encouraging the jury to consider historical racial oppression allegedly perpetrated by the white race against Indians." *Id*. at 1151. Although the question of racial bias is not at play in this case, data breaches are a known and frightening experience to many people and invoking the specter of them in this unrelated case would be an improper and inflammatory "emotionally charged appeal." *Id*. Plaintiffs should therefore be precluded from making arguments during closing that reference the general risk posed by data breaches where there is no evidence supporting an inference that the facts at issue in this case implicate a data breach. *See Draper*, 83 F.3d at 1083–84; *see also, e.g.*, *Cepero v. Bonkavich*, 2022 WL 445035, at *2 (D. Nev. Feb. 14, 2022) (granting motion in limine in Section 1983 excessive force case to exclude testimony and preclude closing argument regarding the "general dangers" of police work, but permitting discussion of specific "relevant risks").

**B.   Any Closing Argument Regarding Government Subpoenas and Surveillance, Including Regarding Abortion Data, Would Be Unsupported By The Evidence.**

Likewise, there is zero evidence of the data at issue being reidentified in order to respond

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

GOOGLE'S MIL NO. 19 TO PRECLUDE
IRRELEVANT, PREJUDICIAL CLOSING ARGS.
3:20-CV-04688-RS

to any subpoena, or being used in any sense for government surveillance. In fact, Mr. Ganem testified that "Google would have to change the way its systems are designed in order to do" that. Agnolucci Decl., Ex. D (Aug. 27, 2025 Trial Tr. (Vol. 7)) 1242:16-21.

Nor is there any evidence of de-identified app activity data having anything to do with abortion or other sensitive health issues, or of subpoenas from state or federal governments requesting such information. The sole short parlay regarding abortion took place between Plaintiffs' counsel and Mr. Ganem; after the Court sustained an objection to a question about "the degree to which a subpoena requires certain conduct," counsel asked whether Mr. Ganem could imagine subpoena compliance being a legitimate concern of users, and asked for agreement with the statement that "if you were a woman in a state that prohibits abortions, you wouldn't want your information subject to a possible subpoena." Agnolucci Decl., Ex. D (Aug. 27, 2025 Trial Tr. (Vol. 7)) 1243:15–1244:8. Again, Google's systems are not designed in such a way that would even allow the at-issue data to be reidentified in response to any subpoena, and Mr. Ganem testified that Google has never "changed the way the system that separates the data works in order to rejoin the data at the behest of a government," so this is a completely hypothetical risk unsupported by reality. *Id*. at 1244:22-25.

Nevertheless, it appears that Plaintiffs may attempt to insert an "emotionally charged appeal" about the status of abortion rights and fears about the government's use or co-opting of technology into this case about digital advertising and the Web & App Activity setting in users' Google Accounts. If so, there is no evidence in the record to support such an argument, and it would be highly improper for Plaintiffs to elicit an inference from the jury that a verdict against Plaintiffs here would implicate these separate, important societal issues. *See Draper*, 83 F.3d at 1083–84; *Bird*, 255 F.3d at 1150. Plaintiffs should not be permitted to taint the issues in this case with these outside concerns.

**C.   Any Closing Argument Regarding Artificial Intelligence Would Be Unsupported By The Evidence.**

There is likewise zero evidence in the record regarding the de-identified app activity data at issue being used to train large language models, including Google's Gemini—let alone to re-

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

GOOGLE'S MIL NO. 19 TO PRECLUDE
IRRELEVANT, PREJUDICIAL CLOSING ARGS.
3:20-CV-04688-RS

identify any de-identified data—and Plaintiffs should be precluded from presenting any such argument or mentioning AI during their closing.

Plaintiffs' technical expert Dr. Hochman made it very clear that he was not offering any opinions that the de-identified data at issue has ever been given to Gemini. Agnolucci Decl., Ex. B (Aug. 21, 2025 Trial Tr. (Vol. 4)) 720:17-22 ("Dr. Hochman: … we're talking about Google Analytics for Firebase, you know, the data that's being taken from the Firebase SDK and from Google Mobile Ads SDK. So regarding that data, I'm not asserting that that data has been given to Gemini.").

Gemini briefly came up during Plaintiffs' cross-examination of the very last witness, Google's technical expert Dr. Black. Yet in response to an objection from Google regarding the relevance, prejudicial effect, and propriety of any lines of questioning regarding AI, given the dearth of record evidence on the subject, counsel simply stated "I think I can move on." Agnolucci Decl., Ex. E (Aug. 29, 2025 Trial Tr. (Vol. 9)) 1759:22–1760:25. *See also id*. at 1758:3-5 ("The Court: … you're not going to start introducing a whole line of inquiry about AI and what AI might be able to do someday. That, you're not going to do."). Plaintiffs should not be permitted to stoke juror fears about this emerging technology when there is no evidence in the record to support any inference that AI is remotely relevant. *Draper*, 836 F.3d 1072 at 1084.

V. **CONCLUSION**

For the foregoing reasons, Google respectfully requests that the Court issue an order precluding Plaintiffs from presenting evidence or argument to the jury regarding the risks of (1) data breaches; (2) government subpoenas and surveillance, including of abortion-related data (or similar concerns); and (3) artificial intelligence in closing argument

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

GOOGLE'S MIL NO. 19 TO PRECLUDE
IRRELEVANT, PREJUDICIAL CLOSING ARGS.
3:20-CV-04688-RS

Dated: September 1, 2025

Respectfully submitted,

COOLEY LLP


By: */s/ Simona Agnolucci*
    Michael A. Attanasio
    Benedict Y. Hur
    Simona Agnolucci
    Eduardo E. Santacana
    Jonathan Patchen
    Argemira Flórez
    Harris Mateen
    Isabella McKinley Corbo
    Naiara Toker
    Thilini Chandrasekera
    Chelsea Hu
    Michael Morizono

*Attorneys for Defendant
Google LLC*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

GOOGLE'S MIL NO. 19 TO PRECLUDE
IRRELEVANT, PREJUDICIAL CLOSING ARGS.
3:20-CV-04688-RS