# TRIAL TRANSCRIPT
# AUGUST 29, 2025

**Volume 9**

**Pages 1615 - 1830**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Richard Seeborg, Judge

```
ANIBAL RODRIGUEZ, et al.,        )
individually and on behalf of    )
all others similarly situated,   )
                                 )
            Plaintiffs,          )
                                 )
   VS.                           )  NO. 3:20-CV-04688 RS
                                 )
GOOGLE LLC,                      )
                                 )
            Defendant.           )
_____)
```

San Francisco, California
Friday, August 29, 2025

**TRANSCRIPT OF JURY TRIAL PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:

        BOIES SCHILLER FLEXNER LLP
        333 Main Street
        Armonk, New York 10504
  **BY:  DAVID BOIES, ATTORNEY AT LAW**
        **ALEXANDER M. BOIES, ATTORNEY AT LAW**
        **M. LOGAN WRIGHT, ATTORNEY AT LAW**

        BOIES SCHILLER FLEXNER LLP
        2029 Century Park East, Suite 1520n
        Los Angeles, California 90067
  **BY:  ALISON L. ANDERSON, ATTORNEY AT LAW**
        **SAMANTHA D. PARRISH, ATTORNEY AT LAW**

REPORTED BY:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Official United States Reporter

```
 1   the base class and then there's the CDAFA add-on.  And so
 2   I think it makes sense, if we're going to talk about it, it
 3   would be somewhere in 13.
 4           THE COURT:  Yeah, I think it would be 13 rather than
 5   the privacy and seclusion instructions.
 6           MR. DAVID BOIES:  I'm comfortable with that,
 7   Your Honor.
 8           THE COURT:  Okay.  All right.
 9      Okay.  So going back to 11, are we done with the
10   discussion of 11?
11           MR. DAVID BOIES:  I am.
12           MR. PATCHEN:  We are, yes.
13           THE COURT:  Okay.  So 12 is just the generic, "Here
14   are the claims."
15      What's the next one, Mr. Patchen, that you have?
16           MR. PATCHEN:  13, Your Honor.
17           THE COURT:  Okay.  I'm there.
18           MR. PATCHEN:  So our -- we have at least two
19   objections.  I know of two.  The first one is, we think that
20   it's inappropriate to have "mobile devices or," that language,
21   in one and two; and the reason for that is that the claim that
22   the plaintiffs have brought here is a 502(c)(2) claim,
23   knowingly access and, without permission, access data.  And
24   502(e) says that the owner or lessor of the data can bring the
25   claim.
```

1     As drafted -- and it allows the standing question of
2  502(e), the ownership, to be answered with the mobile devices
3  instead of asking whether the plaintiffs own the data, and
4  it -- that disjunct between the two causes the problem of where
5  the entire claim here is -- right? -- we own the data, it has a
6  value, we should get the value of the data back -- that we had
7  our data taken, the data was valuable, we should get paid
8  actual damages for the data.
9         **THE COURT:** I'm recalling correctly at some point I
10 thought it was -- Google wasn't disputing that it was the
11 plaintiffs' data.
12        **MR. PATCHEN:** No. The dispute -- there's no dispute
13 that they are the owners of the mobile devices. That's where
14 there's no dispute.
15        **THE COURT:** But there is a dispute about whether or
16 not they're the owners of the data?
17        **MR. PATCHEN:** Correct.
18     And if you can -- if you don't have to own the data to
19 bring a claim for the recovery of the value of the data, that
20 just writes 502(e) completely out. There's other claims,
21 502(c)(7), which is about knowingly accessing a device, which
22 maybe ownership of the device is a relevant question, but it's
23 not the relevant ownership question for a 502(c)(2) claim.
24        **THE COURT:** Is the only way to violate the statute if
25 you own the data?

1   of evidence, but I think they can make that.  It's a fair
2   inference.
3           **THE COURT:**  Right.  Okay.
4       Okay.  It's an interesting question, very interesting.
5   I'm going to have to think -- that's one of the ones I'm going
6   to have to think about.
7           **MR. PATCHEN:**  Obviously, Your Honor, if you accept our
8   position here, that's why we put in the proposed ownership
9   language, is because that's how we had been conceiving of the
10  case.  It's not in, but that's why we had done that.  So just
11  companioning those two together.
12          **THE COURT:**  All right.  What's the next?
13          **MR. PATCHEN:**  Well, there's one other one in terms of
14  CDAFA.  I apologize, Your Honor.
15          **THE COURT:**  Okay.
16          **MR. PATCHEN:**  Ms. Agnolucci has it.
17          **MS. AGNOLUCCI:**  Your Honor, this relates to an
18  additional jury instruction that we had submitted, that
19  Your Honor didn't adopt, about without permission.
20          **THE COURT:**  Yes.
21          **MS. AGNOLUCCI:**  This was in the packet that we
22  submitted yesterday.  So rather than doing it as --
23          **THE COURT:**  Is this the knowingly business?
24          **MS. AGNOLUCCI:**  Yes.
25          **THE COURT:**  Right.  I'm not -- I'm not going to add

1  "knowingly" to the "without permission."  Element 3 for -- I
2  forget which element.  Yeah.  I don't think it -- knowingly
3  goes into 2 and it's there, I don't think you have to --
4  I think -- I don't think it's knowing -- knowingly without
5  plaintiffs' permission.  I don't think it applies.
6           **MS. AGNOLUCCI:**  Your Honor, in that joint submission,
7  the plaintiffs themselves agreed that we could, at a minimum,
8  say "should have known," as Your Honor did on page 15 of your
9  MSJ order.
10          **THE COURT:**  One thing I'll give you some advice on.
11  Don't tell me that, "In a summary judgment order you did this
12  or you did that."  That was then; this is now.  It doesn't --
13          **MS. AGNOLUCCI:**  Understood.
14          **THE COURT:**  -- bind me, and I wouldn't waste time on
15  invoking it because it was important in the moment.  We got
16  past summary judgment.  I know you didn't think we should, but
17  we did, but I'm not bound by anything that was said in that
18  order, so...
19          **MS. AGNOLUCCI:**  Understood, Your Honor.  And we
20  would --
21          **THE COURT:**  But you said they agreed to it?
22          **MS. AGNOLUCCI:**  Yes, Your Honor.
23          **THE COURT:**  That's a different proposition.
24          **MS. AGNOLUCCI:**  It's Document 650, page 13.
25       So the parties were debating this additional instruction.

1:30 and this is just going to be very difficult for me," and all this sort of stuff.

So I said, "I really need you to be available through -- past 1:30 on Tuesday," because I don't want to chop your closings into two days.

But we'll just have to see. I'm going to encourage -- and I also told her -- she had something about her employer. I said, "Have your employer call me," which sometimes works.

But, so just, we may have to go back to 8:30 to 1:30 for deliberation. We'll see what happens. Okay?

**MS. AGNOLUCCI:** Understood.

And, Your Honor, we did have two other things on the verdict form, if we may.

**THE COURT:** Yes.

**MS. AGNOLUCCI:** One is a point of clarification.

So Your Honor, at the beginning, came out with commentary about what I think was then Question 7. So that we understand, it's Your Honor's intent to direct the jury to consider nominal damages only if they have said no to compensatory but not if they have said no to disgorgement.

**THE COURT:** Correct.

**MS. AGNOLUCCI:** Understood.

And then for the next line item where we provide the estimated class sizes, we would like to do something similar to what we're proposing in the jury instructions, and it's in the

1  packet that I handed up to Your Honor.
2      We'd like to give the total estimated number of class
3  members as well.  And if Your Honor thinks that's confusing, we
4  can add a sentence that says that there's overlap.  But what we
5  don't want to do is invite a double award of nominal damages
6  because there is a delta of about 16 million, which, of course,
7  is significant to us.
8          **THE COURT:** And I know you think it's confusing to
9  have the --
10         **MR. DAVID BOIES:** I think putting both numbers in is
11 confusing.  I think that if they were to put in just the class
12 size on nominal damages, we could allocate it -- assuming we
13 win, obviously -- but we could allocate it, as part of the
14 allocation scheme, in proportion to the individuals in Class 1
15 and 2.
16     So I think one possibility would be to not do the verdict
17 form by class here; do it by the combination number, and just
18 with the expectation that when it came to allocating that
19 amount between the people in the two classes, it would be
20 allocated based on this ratio.
21         **MS. AGNOLUCCI:** There's been evidence at this trial
22 about differences between and among Android and iOS users, so
23 we would like to give the jury the option to choose.
24         **THE COURT:** Okay.  I'll leave it broken down, and then
25 I will consider your request with the objection -- Mr. Boies'

1  objection, I shouldn't, if I've broken it down, add a total
2  number.  I'll think about that and decide.
3         **MS. AGNOLUCCI:**  It also could be solved by doing what
4  Your Honor suggests and then doing the math on the back end the
5  other way; in other words, accounting for the double-counting
6  if they were to insert the total number of Android and total
7  number of iOS.
8         **THE COURT:**  The jury?  Who would be inserting the
9  number?
10         **MS. AGNOLUCCI:**  If the jury completed this form with
11  59 and 54 --
12         **THE COURT:**  Yes.
13         **MS. AGNOLUCCI:**  -- for example, and we could --
14  actually, never mind.  That wouldn't work.
15         **THE COURT:**  Okay.
16     Okay.  When you get the set from me, if you want --
17  I think there's been a fairly extensive record of what you've
18  proposed, and now we've had the conference and you've given me
19  your positions, but I don't foreclose.
20     Once you get the final set, if you want to file a -- to
21  preserve your objections, you want to -- because in the back
22  and forth, sometimes it gets a little unclear if you've agreed
23  or not agreed to things.  If you want to file something, that's
24  fine.
25     But I'm not going to have a further -- in other words, I'm

1  going to send you the thing on Monday afternoon and we're done.
2  **MS. AGNOLUCCI:** Understood.
3  **THE COURT:** And then you can use that.
4  Not to cause the left side, from where I'm sitting, panic,
5  but if the jury were to come back and answer not only with the
6  award of damages, as would trigger it, and then a "yes" to the
7  availability of punitive damages, we would then have to go into
8  the phase. And we have an instruction that would then tell
9  them what they needed to do.
10  But what kind of presentation would you contemplate if we
11  have to -- if we end up being there?
12  **MS. AGNOLUCCI:** We haven't gone that far, Your Honor.
13  **MR. DAVID BOIES:** I think it would be relatively
14  brief.
15  **THE COURT:** I would think a summary proceeding of some
16  kind.
17  **MR. DAVID BOIES:** And I think the main thing that we
18  would do is the amount of their assets, profits, that sort of
19  thing; and then the pattern and practice that you're excluded
20  on the liability phase, but which is relevant to the punitive
21  phase.
22  **THE COURT:** Well, if there's a punitive phase, at that
23  point, because I've built in the question at the first phase, I
24  would really -- the punitive phase would be the amount.
25  **MR. DAVID BOIES:** Just the amount.