**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
Samantha Parris, CA Bar No. 318681
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
alanderson@bsfllp.com
sparrish@bsfllp.com
mwright@bsfllp.com

*Counsel for Plaintiffs*

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander P. Frawley (admitted *pro hac vice*)
Ryan Sila (admitted *pro hac vice*)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,

        Plaintiffs,

v.

GOOGLE LLC,

        Defendant.

Case No. 3:20-cv-04688-RS

**PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

Judge: Hon. Richard Seeborg
Trial Date: August 18, 2025
Courtroom: 3, 17th Floor

# INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 50(a), Plaintiffs respectfully move for judgment as a matter of law on each of their three claims and on Defendant's affirmative defense of consent. Plaintiffs seek judgment as a matter of law only on issues of liability, not damages.

Rule 50(a) permits a party to move for judgment as a matter of law after the opposing party has been fully heard and prior to the submission of the case to the jury. A party may move for judgment as a matter of law in part on specific issues and on the other party's defenses. Fed. R. Civ. P. 50(a). "In deciding a motion under Rule 50(a), the court does not weigh evidence and all reasonable inferences are drawn in favor of the nonmoving party." *Volterra Semiconductor Corp. v. Primarion, Inc.*, 799 F. Supp. 2d 1092, 1098 (N.D. Cal. 2011) (citing *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554 (1990)). The motion should be granted "when the evidence permits only one reasonable conclusion as to the verdict." *Id.* (quoting *McGonigle v. Combs*, 968 F.2d 810, 816 (9th Cir. 1992)).

# ARGUMENT

## I.    PLAINTIFFS ARE ENTITLED TO JUDGMENT ON THEIR CDAFA CLAIM

Plaintiffs' first claim is for Google's violation of the Comprehensive Computer Data and Access Fraud Act, Cal. Pen. Code § 502 *et seq.*, ("CDAFA"). Plaintiffs have proven all elements of this claim and established Google's liability.

### A.    Plaintiffs are owners of their mobile devices and data.

As the Court noted, Google already stipulated that Plaintiffs owned their mobile devices. In addition, Google Product Manager David Monsees admitted that Google considers the data on users' phones to be owned by them—"if it comes from users, we tend to think of it as user data, though it's not personal information." Trial Tr. 370:25–371:8.

That testimony was consistent with representations by Google in its own Privacy Policy: "[w]e use different technologies to process your information for these purposes. . . . We'll ask for your *consent before using your information* for a purpose that isn't covered in this Privacy Policy." PX-72 at 7 (emphasis added). Likewise, Google required customers using "Google services" to state to users: "[h]ow you can control the information collected by Google on these sites and apps. . . . If you are signed in to your Google Account, and depending on your Account settings, My Activity *allows you to review and*

**PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

*control* data that's created when you use Google services, *including the information we collect from the sites and apps you have visited*. You can browse by date and by topic, and delete part or all of your activity." G-0561 (emphasis added).

Critically, the data is collected directly from the user's device when it is transmitted to Google. The "CEO" of Google Analytics, Steve Ganem, confirmed this at trial:

> Q. "Well, first of all, when the information comes to you, the sWAA-off data comes to you, it comes directly from a device to Google; correct?"
> A. "That's correct." Trial Tr. 1278:5–8.

**B.    Google knowingly accessed Plaintiffs' mobile devices or data.**

"[D]uring the entire class period, Google was taking this data from people's devices when they were using non-Google apps, they were saving and using that data, they were copying the data, and that this was continuous throughout the time period." Trial Tr. 583:15–19 (Dr. Jonathan Hochman).  Google Product Manager Mr. Monsees confirmed that Google Analytics software (embedded in the code of users' third-party apps) sends Google data directly from those users' devices.  Trial Tr. 263:22–264:10; 319:24–320:3 ("Q: We know as of that date, as of July 25th of 2019, he spoke the truth.  Right then and there -- forget about future proposals.  Right then and there, we do know Google was collecting user's WAA-off data; fair?  A: Correct.").  Sam Heft-Luthy, formerly the product manager for Google's Privacy Policy, said it was "common understanding" of the work Google was doing that Google collected data from users' devices even when WAA/sWAA was turned off.  Trial Tr. 1060:10–15, 22–25.

**C.    Google took, copied, or made use of data from those Plaintiffs' mobile devices without Plaintiffs' permission.**

Google's witnesses admitted that its conduct lacked permission.  Mr. Monsees testified that Google understands that "permission" is synonymous with "consent":

> Q. "And we can also agree that 'consent' is synonymous with 'permission'; correct?"
> A: "Yeah, I think we could agree with that." Trial Tr. 284:18–20.

Mr. Ganem agreed and also testified that permission can only be given after clear disclosures:

> Q. "Now, what I'm asking is: Is it your position that Google needs to have clear user consent to collect any data from their activity? Yes or no?"
> A. "Yes."
> Q. "Okay. And in order for users to give consent, would you agree they have to have notice as to what you're proposing to collect?"

A. "Yes."  Trial Tr. 1235:21–1236:3.

Under cross-examination, Mr. Monsees conceded that Google was not disclosing what it was doing with sWAA-off data:

> Q. "We know as of that date, as of July 25th of 2019, he spoke the truth. Right then and there -- forget about future proposals. Right then and there, we do know Google was collecting user's WAA-off data, fair?"
> A. "Correct."
> Q. "And Google wasn't then disclosing that to the users, that 'I'm using your WAA-off data' and for what purpose; fair?"
> A. "Fair."  Trial Tr. 319:24–320:6.

Further, both Messrs. Monsees and Ganem admitted that Google presented its users with no choice as to whether sWAA-off data would be collected:

> Q. "Does Google provide any controls that you are aware of in this activity controls page that give users the ability and power to prevent Google from collecting non-personally identifiable information?"
> A. "No."  Trial Tr. 469:8–12 (Monsees).

> Q. "Okay. Now, is there a privacy setting that a Google user can use to stop Google from collecting the sWAA-off data that Google currently collects? That's a yes or no question, sir."
> A. "With Google Analytics specifically, no."  Trial Tr. 1191:21–24 (Ganem).

Where Google admits to neither having provided clear disclosures, nor providing users with a choice, Plaintiffs have proved that the data at issue was taken "without permission."

**D.    Plaintiffs suffered damage and loss.**

Mr. Monsees acknowledged that the data has substantial value to Google:

> Q. "I mean, the truth is, users' WAA-off data has value; correct?"
> A. "Yes, it's essential to providing the ad services Mr. Ruemmler describes here."  Trial Tr. at 300:11–14.

Plaintiffs' damages expert Michael Lasinski determined that Google was unjustly enriched by the undisclosed collection and use of class members' sWAA-off data and that Plaintiffs and class members are also entitled to compensatory damages in the form of monthly payments for their data.  Trial Tr. 878:18–879:18; 921:25–923:4.

Moreover, it is undisputed that taking Plaintiffs' data resulted in battery degradation and bandwidth usage, entitling Plaintiffs to at least nominal damages.  Trial Tr. 638:13–639:15; 648:20–22; 725:21–726:3; 726:13–19 (Hochman).

**E.    Google's conduct was a substantial factor in causing Plaintiffs' damage and loss.**

Google has not contended that there was any other cause of Plaintiffs' damages or loss, nor could it.  Google's taking, copying, and using Plaintiffs' sWAA-off data without their knowledge or permission was not merely a substantial factor in causing their damages and loss, but the only cause that there is evidence to support.

**II.    PLAINTIFFS ARE ENTITLED TO JUDGMENT ON THEIR INVASION OF PRIVACY CLAIM**

The evidence also proves liability for each element of Plaintiffs' invasion of privacy claim.

**A.    Plaintiffs had a reasonable expectation of privacy.**

Users can demonstrate a reasonable expectation of privacy based on both the nature of the data collection and Google's representations to users.  *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602–03 (9th Cir. 2020).  Here, Plaintiffs proved an objectively reasonable expectation of privacy with sWAA turned off because Google provided all of the disclosures and controls at issue to impress an objectively reasonable but (as now known) false expectation of privacy with regards to sWAA-off data.

Google's Privacy Policies and other documents conclusively show that Google intentionally provided users with a reasonable expectation of privacy.  Google's internal documents and admissions confirm this.  The evidence also establishes that class members accordingly believed Google and the expectations it created.  An internal Google study showed that all the participants in that study "expected turning [the] WAA toggle off to stop saving their activity."  PX-2 at 9.

**B.    Google's conduct was highly offensive as a matter of law.**

As early as 2016, Google employees were having internal conversations about how Google's language about sWAA was "intentionally vague."  PX-4 at 2.  Yet, Google never substantively changed its disclosures or data collection practices during the class period.

One email from a software engineer noted:

"Before Consent Bump, some of the data for a user was collected within their Google Account and some of it was collected outside of their Google Account.

In English, ***we're intentionally vague because the technical details are complex and it could sound alarming to users*** (for something that we feel shouldn't sound alarming)." PX-4 at 2 (emphasis added).

A workstream by the PrivacyNative team stated:

"It's difficult for people to fully/meaningfully give permission.

Not only are the implications of WAA extremely broad and varied, but people use Google in such diverse ways — ***much of the language intended to be comprehensive feels vague and hard-to-parse for non-engineers/lawyers*** and our examples are not universally resonant. PX-18 at 2 (emphasis added).

In fact, knowing it was difficult for users to understand what Google was collecting and saving, members of the Privacy Advisor review even advocated to introduce ambiguity into Google's language:

**Rajni Posner**
"what data Google saves and uses across Google services.

I might suggest moving into passive tense here so doesn't feel as dramatic that Google is saving it.

Consider rephrasing:
'what data is saved and used across Google services'"

. . .

**David Warren**
"I like Rajni's suggestion. It's true that we try to use active voice as a rule, but I like her construction in this case because of the slight ***ambiguity it introduces***." PX-213 at 2 (emphasis added).

Plaintiffs also introduced PX-3, an email between Mr. Monsees and Chris Ruemmler, a senior staff engineer at Google. In the email, Mr. Ruemmler expressed his concerns that Google was not "properly reflect[ing] how Google handles the user's 'Web and App Activity' when the WAA bit is disabled and enabled." PX-3 at 2. Mr. Ruemmler stated, "Today, we don't accurately describe what happens when WAA is off." *Id.* He explained, "it appears we have a real problem here with accurately describing what happens when WAA is disabled. We should fix the current wording to reflect reality and if we make the change to temp GAIA logging, then we need to be very clear about what data is collected with WAA off."

**PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

*Id.* at 3. He stated that the wording of the activity controls "is ***very deceptive***." *Id.* at 1 (emphasis added). To wit:

> "[Y]our Google Account" means your data, not Google's. If I choose not to store data in my account, then Google should not have access to the data either as the data should not be in the account. What you are stating is WAA (or any of the other controls) ***does not actually control what is stored by Google***, but simply what the user has access to. This is really bad. If we are storing data that the user does not have access to, we need to be clear about that fact. In this case, the ***user has a false sense of security*** that their data is not being stored at Google, when in fact it is. Have we performed any studies to see what customers think is happening with their data when they disable these controls? It would be good to do a study and know if what is written is being properly interpreted by our users. I have a fear it most likely is not. ***I for one didn't realize Google actually stored all of my activity even if those controls were off and I work at Google!***" *Id.* (emphasis added).

Numerous other employees expressed concern that users were being misled:

- "They (users) don't understand what is going on, and nobody is talking to them about it." – Breonna Rodriguez. PX-6 at 54.

- "There is no way users will truly understand what is happening." – Yooki Park. *Id.* at 41.

- ***"At Google we still seem to believe in that fantasy that users agreed to this."*** – Othar Hansson. *Id.* at 49 (emphasis added).

As proven at trial, these examples demonstrate that Google engaged in an outrageous breach of societal norms regarding data privacy by withholding material information from users, intentionally misleading them, attempting to confuse them, and taking, copying, and using their data without their consent.

### C. Plaintiffs suffered damages, loss, and harm.

As set forth in Sections I.D. and I.E., Plaintiffs suffered damages, loss, and harm as a result of Google's conduct in collecting and using their data without their consent.

## III. PLAINTIFFS ARE ENTITLED TO JUDGMENT ON THEIR INTRUSION UPON SECLUSION CLAIM

Intrusion upon seclusion requires the same elements as Plaintiffs' invasion of privacy claim, with the additional requirement that Plaintiffs prove that Google intentionally intruded upon their objectively reasonable expectation of privacy through its conduct. The massive trove of communications adduced at trial—including numerous communications and discussions as party-admissions (*see, e.g.*, Section II.B.)

1    —proves that Google intentionally intruded upon Plaintiffs' solitude by collecting and using their sWAA-

2    off data, and there is no inference (reasonable or otherwise) that can be drawn to the contrary.

3

4    **IV.    PLAINTIFFS ARE ENTITLED TO JUDGMENT ON GOOGLE'S AFFIRMATIVE DEFENSE OF CONSENT**

5

6        A party may also move for judgment as a matter of law on the other party's defenses.  Fed. R. Civ.

7    P. 50(a).  Here, Google only has one affirmative defense—consent.  Plaintiffs are also entitled to judgment

8    on that defense based on the undisputed evidence.

9        As discussed above, both Mr. Monsees and Mr. Ganem admitted that Google did not give Plaintiffs

10   any actual ability to prevent the collection of sWAA-off data.  *See* Trial Tr. 469:8–12 (Monsees); Trial

11   Tr. 1191:21–24 (Ganem).  For consent to be "voluntary," it must also be actual.  *See Hill v. NCAA*, 7 Cal.

12   4th 1, 26 (1994); *see also Hansen v. Cal. Dept. of Corrections*, 920 F. Supp. 1480, 1504–05 (N.D. Cal.

13   1996) (holding consent invalid as a matter of law on this basis).  Any other holding would be contrary to

14   the basic principle that consent requires a choice.

15       Further, the Ninth Circuit outlined the requirements for Google to prove consent, which include

16   that: (A) "any consent must be actual," meaning "the disclosures must '***explicitly notify***' users of the

17   conduct at issue"; and (B) "[c]onsent is only effective if the person alleging harm consented 'to the

18   ***particular conduct***, or to substantially the same conduct' and if the alleged tortfeasor did not exceed the

19   scope of that consent."  *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) (citation omitted)

20   (emphasis added).

21       Here, even Google's corporate representative admitted that explicit notification of the particular

22   conduct was never made:

23       Q. "And is there any place in here or, in fact, in this entire policy where Google says, 'We
         do this even if you have sWAA off'?"
24       A. "No, it doesn't say that in that section."
         Q. "It would have been really easy to say that; correct?"
25       . . .
         Q. "You could have said right here, 'may, even with sWAA off'; correct?"
26       A. "We could have."  Trial Tr. 1199:11–24.

27       As such, Plaintiffs are entitled to a directed verdict on Google's affirmative defense of consent.

28

-8-                                    CASE NO. 3:20-cv-04688-RS
**PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

**CONCLUSION**

For these reasons, the Court should grant judgment to Plaintiffs on all three claims in addition to Defendant's only affirmative defense of consent.

Dated: September 1, 2025

Respectfully Submitted,

By: */s/ Mark C. Mao*
**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
Samantha Parrish, CA Bar No. 318681
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
alanderson@bsfllp.com
sparrish@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander P. Frawley (admitted *pro hac vice*)
Ryan Sila (admitted *pro hac vice*)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com

**PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

*Counsel for Plaintiffs*