1   COOLEY LLP
    MICHAEL A. ATTANASIO (151529)
2   (mattanasio@cooley.com)
    BENEDICT Y. HUR (224018)
3   (bhur@cooley.com)
    SIMONA AGNOLUCCI (246943)
4   (sagnolucci@cooley.com)
    EDUARDO E. SANTACANA (281668)
5   (esantacana@cooley.com)
    JONATHAN PATCHEN (237346)
6   (jpatchen@cooley.com)
    ARGEMIRA FLÓREZ (331153)
7   (aflorez@cooley.com)
    NAIARA TOKER (346145)
8   (ntoker@cooley.com)
    HARRIS MATEEN (335593)
9   (hmateen@cooley.com)
    THILINI CHANDRASEKERA (333672)
10  (tchandrasekera@cooley.com)
    ISABELLA MCKINLEY CORBO (346226)
11  (icorbo@cooley.com)
    CHELSEA HU (357212)
12  (chu@cooley.com)
    MICHAEL B. MORIZONO (359395)
13  (mmorizono@cooley.com)
    3 Embarcadero Center, 20th Floor
14  San Francisco, CA  94111-4004
    Telephone:     (415) 693-2000
15  Facsimile:     (415) 693-2222

16  Attorneys for Defendant
    GOOGLE LLC
17

18              UNITED STATES DISTRICT COURT

19            NORTHERN DISTRICT OF CALIFORNIA

20              SAN FRANCISCO DIVISION

21

22  ANIBAL RODRIGUEZ, et al. individually and     Case No. 3:20-CV-04688-RS
    on behalf of all others similarly situated,
23                                                 **GOOGLE LLC'S MEMORANDUM IN
                    Plaintiff,                     SUPPORT OF MOTION FOR JUDGMENT AS
24                                                 A MATTER OF LAW (FRCP 50(A))**
            v.
25                                                 Dept:      3, 17th Fl.
    GOOGLE LLC,                                    Judge:     Hon. Richard Seeborg
26
                    Defendant.                     Date Action Filed: July 14, 2020
27                                                 Trial Date: August 18, 2025

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   LEGAL STANDARD ......................................................................................... 1

III.  ARGUMENT ...................................................................................................... 1

    A.    The Court Should Grant JMOL On Plaintiffs' CDAFA Claim ............................. 1

        1.    Plaintiffs Fail To Prove The Class Are The "Owners" Of Data ................. 2

        2.    Plaintiffs Fail To Demonstrate "Without Permission" ............................... 5

        3.    Plaintiffs Failed To Show CDAFA Loss Or Damage ................................ 8

            a.    Plaintiffs' Disgorgement And Value Of Data Theories Are Superseded By CUTSA ................................................................... 8

            b.    Plaintiffs Lack Class-Wide Proof Of "Battery" And "Bandwidth" Harm ................................................................... 11

        4.    Google Meets The Scope Of Employment Exception ............................ 12

        5.    Plaintiffs Have No Damages ............................................................... 13

    B.    Plaintiffs' Privacy Claims Fail As A Matter of Law ...................................... 13

        1.    There Is No Class-Wide Privacy Interest In (s)WAA Data ..................... 14

        2.    Plaintiffs Have Failed To Establish A Reasonable Expectation Of Privacy Over (s)WAA Data On A Class-wide Basis ............................... 15

            a.    No Class-Wide Expectation Of Privacy ....................................... 15

            b.    Any Expectation of Privacy Was Unreasonable .......................... 18

         3.    Plaintiffs Have Not Established That Data Collection Or Transfer Is Highly Offensive To All Class Members .................................................. 20

        4.    Any "Intrusion" Was Not Intentional ................................................... 23

        5.    Plaintiffs Claimed Damages Are Legally Invalid ................................... 23

    C.    Plaintiffs Have Not Established The Requisite Elements For Punitive Damages ............................................................................................... 24

    D.    Affirmative Consent Precludes Liability On All Claims .................................. 25

IV.   CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A.L.*,
38 Cal. App. 5th 15 (2019)..................................................................................................... 6

*Agular v. Atl. Richfield Co.*,
25 Cal.4th 826 (2001) ............................................................................................................ 5

*Alert Enter., Inc. v. Rana*,
No. 22-cv-06646-JSC, 2023 WL 2541353 (N.D. Cal. Mar. 16, 2023)................................... 10

*Artec Grp., Inc. v. Klimov*,
No. 15-cv-3449-EMC, 2016 WL 8223346 (N.D. Cal. Dec. 22, 2016)..................................... 9

*Barker v. Insight Global, LLC*,
No. 16-cv-07186-BLF, 2017 WL 10504692 (N.D. Cal. Nov. 21, 2017).............................. 10

*Blanco v. Cnty. of Kings*,
142 F. Supp. 3d 986 (E.D. Cal. 2015) ................................................................................. 24

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017)............................................................................................... 1

*In re Capital One Fin. Corp.*,
No. 1:25-cv-023, 2025 WL 1570973 (E.D. Va. June 2, 2025) ........................................ 5, 18

*Chrisman v. City of Los Angeles*,
155 Cal. App. 4th 29 (2007)................................................................................................ 13

*Christian v. Betak*,
No. 24-CV-01867-TSH, 2025 WL 786056 (N.D. Cal. Mar. 11, 2025)............................ 2, 11

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*,
No. 18-cv-07591-CRB, 2021 WL 842574 (N.D. Cal. Mar. 5, 2021) .................................. 21

*Gotlin ex rel. Cnty. of Richmond v. Lederman*,
483 F. App'x 583 (2d Cir. 2012)........................................................................................... 4

*Digital Envoy, Inc. v. Google, Inc.*,
370 F. Supp. 2d 1025 (N.D. Cal. 2005) (Seeborg, J.) .......................................................... 24

*Doctor's Best, Inc. v. Nature's Way Prods., LLC*,
143 F.4th 1101 (9th Cir. 2025)............................................................................................. 4

*Doe v. Regents of Univ. of Cal.*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ................................................................................. 24

*Erhart v. BofI Holding, Inc.*,
612 F. Supp. 3d 1062 (S.D. Cal. 2020) ........................................................................... 9, 11

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- ii -

**GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Facebook Internet Tracking Litig.*,
    140 F. Supp. 3d 922 (N.D. Cal. 2015) ................................................................. 16

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ............................................................................... 16

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) ......................................................................... 5, 6, 7

*Garrabrants v. Erhart*,
    98 Cal. App. 5th 486 (2023) ......................................................................... 2, 3, 5, 16

*Glam & Glits Nail Design, Inc. v. #NotPolish, Inc.*,
    No. 21-cv-0052-GPC-DEB, 2021 WL 2317410 (S.D. Cal. June 7, 2021) ............... 23

*Hammerling v. Google, LLC*,
    No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ........................................ 7

*Hart v. TWC Prod. & Tech. LLC*,
    No. 20-cv-03842-JST, 2023 WL 3568078 (N.D. Cal. Mar. 30, 2023) ............... 17, 20

*Heller v. Cepia, L.L.C.*,
    No. C 11-01146 JSW, 2012 WL 13572 (N.D. Cal. Jan. 4, 2012) ..................... 10, 24

*Henry Schein, Inc. v. Cook*,
    No. 16-cv-03166-JST, 2017 WL 783617 (N.D. Cal. Mar. 1, 2017) ....................... 10

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009) ......................................................................................... 16

*Hill v. Nat'l Collegiate Athletic Assn.*,
    7 Cal.4th 1 (1994) ................................................................................. 14, 15, 16, 22

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ........................................................................................... 9

*Language Line Servs., Inc. v. Language Servs. Assoc., Inc.*,
    944 F. Supp. 2d 775 (N.D. Cal. 2013) (Seeborg, J.) ................................................. 9

*Leocal v. Ashcroft*,
    543 U.S. 1 (2004) ................................................................................................. 13

*London v. New Albertson's, Inc.*,
    No. 08-CV-1173 H(CAB), 2008 WL 4492642 (S.D. Cal. Sept. 30, 2008) ............... 21

*M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*,
    No. 12-cv-1424 CAB, 2013 WL 12072526 (S.D. Cal. June 26, 2013) ................... 10

*McMorris v. Alioto*,
    567 F.2d 897 (9th Cir. 1978) (Kennedy, J.) ........................................................... 22

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iii -

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos., Inc.*,
306 F.3d 806 (9th Cir. 2002) ............................................................................... 15, 16

*Mendez v. Piper*,
No. H041122, 2017 WL 1350770 (Cal. Ct. App. Apr. 12, 2017) ................................ 5

*Mirkin v. Wasserman*,
5 Cal.4th 1082 (1993) .................................................................................................... 8

*Movement Mortg., LLC v. Scrima*,
No. 2:23-cv-02904-DJC-CSK, 2024 WL 3011202 (E.D. Cal. June 11, 2024) ........... 10

*NetApp, Inc. v. Nimble Storage, Inc.*,
41 F. Supp. 3d 816 (N.D. Cal. 2014) .......................................................................... 10

*New Show Studios LLC v. Needle*,
No. 2:14-cv-01250-CAS(MRWx), 2014 WL 2988271 (C.D. Cal. June 30,
2014) ............................................................................................................................ 23

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
54 F.3d 1424 (9th Cir. 1995) ......................................................................................... 7

*Olean Wholesale Groc. Coop. v. Bumble Bee Foods*,
31 F.4th 651 (9th Cir. 2022) (en banc) ....................................................................... 17

*Opperman v. Path*,
No.13-cv-00453-JST, 2016 WL 3844326 (N.D. Cal. July 15, 2016) .................... 15, 16

*People v. Hawkins*,
98 Cal. App. 4th 1428 (2002) ........................................................................................ 5

*People v. Sifuentes*,
83 Cal. App. 5th 217 (2022) ........................................................................................... 6

*People v. Tillotson*,
157 Cal.App.4th 517 (2007) ........................................................................................... 5

*PQ Labs, Inc. v. Yang Qi*,
No. 12-0450 CW, 2014 WL 334453 (N.D. Cal. Jan. 29, 2014) (Wilken, J.) ............... 12

*Regents of the Univ. of Cal. v. Aisen*,
No. 15-cv-1766-BEN (BLM), 2016 WL 4096078 (S.D. Cal. Apr. 22, 2016) ............... 12

*Sanders v. ABC*,
20 Cal. 4th 907 (1999) ................................................................................................. 19

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ....................................................................................................... 1

*Sheehan v. San Francisco 49ers, Ltd.*,
45 Cal.4th 992 (2009) ...................................................................................... 15, 19, 20

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iv -

GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Shulman v. Grp. W. Prods., Inc.*,
  18 Cal. 4th 200 (1998) ............................................................................................ 15, 16, 23

*Silvaco Data Sys. v. Intel Corp.*,
  184 Cal. App. 4th 210 (2010).......................................................................................... 9, 11

*Smith v. Global Staffing*,
  621 F. App'x 899 (10th Cir. 2015) ...................................................................................... 4

*Snap! Mobile, Inc. v. Croghan*,
  No. 18-CV-04686-LHK, 2019 WL 884177 (N.D. Cal. Feb. 22, 2019)................................... 5

*Stuart v. County of Riverside*,
  No. 5:22-cv-00701-SPG, 2024 WL 3455263 (C.D. Cal. Apr. 22, 2024) ............................ 3, 5

*SunPower Corp. v. SolarCity Corp.*,
  No. 12-CV-00694-LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) .......................... 9, 23

*Teran v. Super. Ct. of Los Angeles*,
  112 Cal. App. 5th 371 (2025)............................................................................................ 10

*Top Agent Network, Inc. v. Zillow, Inc.*,
  No. 14-cv-04769-RS, 2015 WL 10435931 (N.D. Cal. Aug. 6, 2015) (Seeborg,
  J.)................................................................................................................................... 9, 11

*Total Recall Techs. v. Luckey*,
  No. C 15-2281 WHA, 2016 WL 199796 (N.D. Cal. Jan. 16, 2016)..................................... 10

*TrustLabs, Inc. v. An*,
  No. 21-cv-02606-CRB, 2024 WL 4778039 (N.D. Cal. Nov. 13, 2024) (Breyer,
  J.)..................................................................................................................................... 12

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016).......................................................................................................... 1, 11

*U.S. v. Santos*,
  553 U.S. 507 (2008).......................................................................................................... 13

*UCAR Tech. (USA), Inc. v. Li*,
  No. 5:17-cv-01704-EJD, 2018 WL 2555429 (N.D. Cal. June 4, 2018) ................................ 9

*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2015)............................................................................................ 2, 11

*United States v. Nosal*,
  844 F.3d 1024 (9th Cir. 2016)............................................................................................ 5

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)........................................................................................................... 1, 18

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
                                        - v -
GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Williams v. DDR Media,*
  LLC, No. 22-cv-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ............................ 21

**Statutes**

28 U.S.C. § 2072(b) ......................................................................................................... 1

Cal. Civ. Code
  § 3294(a) ............................................................................................................ 24
  § 3294(c)(1) ....................................................................................................... 24
  § 3294(c)(2) ....................................................................................................... 24
  § 3294(c)(3) ....................................................................................................... 24

Cal. Penal Code
  § 502(c) .............................................................................................................. 12
  § 502(c)(1) ..................................................................................................... 6, 10
  § 502(c)(2) .................................................................................................... *passim*
  § 502(c)(5) ........................................................................................................... 2
  § 502(e) ...................................................................................................... 2, 8, 10
  § 502(e)(1) .......................................................................................................... 11
  § 502(h)(1) ..................................................................................................... 12, 13

Cal. Uniform Trade Secret Act ............................................................................... *passim*

Rules Enabling Act ...................................................................................................... 1

**Other Authorities**

Cal. Const. Art. 1, § 1 ...................................................................................... 13, 17, 24

Fed. R. Civ. P.
  23 ......................................................................................................................... 1
  50 ....................................................................................................................... 13
  50(a) ...................................................................................................... 1, 18, 23

Restatement (2d) of Torts § 652B ............................................................................ 16

## I.    INTRODUCTION

Google has moved for Judgment as a Matter of Law under Rule 50(a).  Google hereby submits this memorandum of points and authorities in support of that Motion.  Trial Tr. Aug. 28 (Sidebar) at 1523:24-1524:17.

## II.    LEGAL STANDARD

After a party has been fully heard at trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for them on an issue or claim, the Court may grant a motion for judgment as a matter of law ("JMOL").  Fed. R. Civ. P. 50(a).

This rule applies in a class action.  A class action does not–indeed, cannot–reduce or eliminate Plaintiffs' burden of proving that *all* class members satisfy each element of the claims. As the Supreme Court has repeatedly held, a class-action may not be used to change the standards of proof and impose liability that a defendant would not face in an individual action, because "the Rules Enabling Act [28 U.S.C. § 2072(b)] forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 458 (2016); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 408 (2010) (plurality op.) ("[a] class action ... leaves the parties' legal rights and duties intact and the rules of decision unchanged").  "[I]f the case proceeds past the certification stage, the plaintiff *class* must carry the burden of proving *every element* of its claims to prevail on the merits."  *Briseno v. ConAgra Foods*, *Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017) (emphasis added); *Dukes*, 564 U.S. at 351 n.6.  To avoid JMOL, Plaintiffs must have introduced legally sufficient *class-wide* evidence of each element.  Plaintiffs have fallen short.

## III.    ARGUMENT

### A.    The Court Should Grant JMOL On Plaintiffs' CDAFA Claim

Plaintiffs' CDAFA claim is asserted solely under Cal. Penal Code § 502(c)(2).  Dkt. 289 ¶ 262.  It is based on Google's alleged taking, copying or making use of the (s)WAA-off data.  Trial Tr. Aug. 19 (Plaintiffs' Opening) at 207:20-24, 212:13-21; Trial Tr. Aug. 21 (Hochman) at 596:13-15, 599:13-16, 602:4-7, 658:7-11; Trial Tr. Aug. 25 (Rodriguez) at 837:17-22; Trial Tr. Aug. 20 (Santiago) at 479:21-23.  Plaintiffs fail to establish their CDAFA claim.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS

### 1. Plaintiffs Fail To Prove The Class Are The "Owners" Of Data

Plaintiffs' Section 502(c)(2) claim requires that each class member be the "owner or lessee" of the (s)WAA-off data. Cal. Penal Code § 502(e); *Garrabrants v. Erhart*, 98 Cal. App. 5th 486, 508 (2023) (jury instruction erroneous because it "failed to require the jury to decide whether [plaintiff] owned the at-issue data"). Plaintiffs cannot satisfy the "ownership" requirement by owning their mobile devices. "A plain reading of [Section 502(c)(2)] demonstrates that its focus is on unauthorized taking or use of information." *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015). Section 502(e) gives standing only to "the owner or lessee of *the* … data." Plaintiffs' ownership of mobile devices is irrelevant. *Christian v. Betak,* No. 24-CV-01867-TSH, 2025 WL 786056, at *6 (N.D. Cal. Mar. 11, 2025), is directly on point. In *Betak*, the plaintiff brought a claim under Section 502(c)(5), which prohibits disruption or denial of computer services. Plaintiff claimed he had standing under Section 502(e) because he was the owner of data stored on the computer service that was disrupted. The court rejected this argument, explaining "[a]s Plaintiff's CDAFA claim concerns disruption or denial of computer services, rather than data, his alleged ownership of files stored on the [cloud server] does not give him standing to bring" the Section 502(c)(5) claim. *Id*. The inverse is equally true: Plaintiffs' claim that the class owned mobile devices "do[es] not give Plaintiff[s] standing to bring a claim under a section of the CDAFA that does not concern damage to [mobile devices]." *Id*.

CDAFA does not define "owner," but caselaw shows that Plaintiffs have introduced insufficient evidence of ownership. In *Garrabrants*, the California Court of Appeal reversed a jury verdict for violation of Section 502(c)(2) for instructional error on the "owner" question. In that case, the defendant took electronic documents containing the plaintiff's private financial information from BofI Federal Bank. In reversing the Section 502(c)(2) verdict, the Court of Appeal explained "ownership has particular meaning in the law." *Garrabrants*, 98 Cal. App. 5th at 508. It is "the right of one or more persons to possess and use a thing to the exclusion of others;" an owner is "someone who has the right to possess, use and convey something." *Id*. Conversely, ownership was not shown because the data was "*concerning*" the plaintiff or because the plaintiff "had *some form* of interest–for example, a privacy interest" in the data. *Id*. at 508-09; *see also*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS

*Stuart v. County of Riverside*, No. 5:22-cv-00701-SPG (MARx), 2024 WL 3455263, at *19 (C.D. Cal. Apr. 22, 2024) ("Here, in contrast, although the data pertains to Plaintiffs, there is no evidence that Plaintiffs 'own' (much less 'lease') that data.  The State of California manages the CWS/CMS system, and an internal division with DPSS determines access permissions for DPSS employees.").  In short, the plaintiff had not proven that he–rather than his bank–owned the taken data.

Plaintiffs similarly offer *no* evidence of class-wide ownership.  Nor could they possibly have done so because the question of ownership is a detailed, bespoke, and individual "question of fact" involving the relationship between each class member and each third-party app used by each class member, including facts such as who "possessed the data," whether the third-party app "had the right to use the data," and whether Google obtained the data in question from the third-party app or from the class member "directly."  *See Garrabrants*, 98 Cal. App. 5th at 508, 510.  Here, "the trial record [is] devoid of evidence showing [each class member's] continued ability to use, possess, or otherwise control this data in [each of class member's third-party apps] possession." *Id*. at 510.  *Garrabrants* identifies what such evidence would consist of: "***customer terms of service*** … evidencing a continued ownership interest in the records."  *Id*. at 510 (emphasis added).  Plaintiffs' trial evidence is that there are "2.3 million apps," Firebase is used in "97 percent of the top thousand" Android Apps and "54 percent of the top thousand iOS apps."  Trial Tr. Aug. 21 (Hochman) at 586:4-10.  By Plaintiffs' own math, the question of CDAFA ownership across the class called for examination of the "customer terms of service" of at least 1,500 third-party apps.  Plaintiffs introduced none of them.  There is *no evidence* that any class member retained any continued ability to use, possess, or control how the third-party apps used the data.

Even at the individual, non-class level, Plaintiff Santiago's only testimony of "ownership" was as to his devices, Trial Tr. Aug. 20 (Santiago) at 482:17-483:2, and his fantasy football team, *id*. at 521:22-522:8—not any third-party app data (much less app-by-app).  Plaintiff Rodriguez was led by his counsel to speculatively claim ownership of third-party app data writ large.  Trial Tr. Aug. 25 (Rodriguez) at 815:8-15 (**Q**: Who owns the phone in your pocket? **A**: I do. **Q**: Who owns the apps on your phone? **A**: I do. **Q**: What about the data? … **A**: I do.).  No reasonable jury credits such conclusory testimony, including his immediately prior assertion of *owning the apps*

3

1   *themselves*.  *Doctor's Best, Inc. v. Nature's Way Prods., LLC*, 143 F.4th 1101, 1111 (9th Cir. 2025)

2   (genuine dispute of fact cannot be created by a witness's "mere speculation"); *Smith v. Global*

3   *Staffing*, 621 F. App'x 899, 904 n.8 (10th Cir. 2015); *Gotlin ex rel. Cnty. of Richmond v. Lederman*,

4   483 F. App'x 583, 587 (2d Cir. 2012).  Importantly, Rodriguez did not testify that he had any ability

5   to "use, possess, or otherwise control" the data he provided to any of his apps.

6       The evidence rebuts ownership.  Plaintiffs admitted they installed the apps, agreed to each

7   app's terms and privacy policy, and voluntarily provided app usage data to each app.  Trial Tr. Aug.

8   20 (Santiago) at 518:23-519:23; Trial Tr. Aug. 21 (Rodriguez) at 757:15-19; Trial Tr. Aug. 25

9   (Rodriguez) at 841:14-842:21.  Indeed, Plaintiff Rodriguez agreed he "had a deal with Target"

10  where Target "collect[s]" and "uses" his data.  Trial Tr. Aug. 21 (Rodriguez) at 839:1-17.  Google

11  obtained the (s)WAA-off data from the third-party apps via the app's integration of the Firebase

12  SDK and it was the third-party apps—not Google nor class members—who decided "what types

13  of information to send to Google."  *See* Trial Tr. Aug. 21 (Hochman) at 584:25-585:4; 686:15-

14  687:9; 723:17-724:13; 725:3-7.[1]  App developers—not Plaintiffs—chose how long the data was

15  stored.  Trial Tr. Aug. 26 (Ganem) at 1141:3-16.  Google's terms of service and upload use policy

16  confirm the app developer owned, and had rights to upload, the data.  Trial Tr. Aug. 26 (Ganem) at

17  1157:6-11; Trial Tr. Aug 27 (Ganem) at 1259:24-1260:14; G933.  The evidence is uniform that

18  Google does not "take" data from Plaintiffs; it operates to receive data Plaintiffs provide within the

19  app.  Trial Tr. Aug. 29 (Black) at 1700:12-1701:7; Trial Tr. Aug. 25 (Rodriguez) at 842:23-24;

20  Trial Tr. Aug. 20 (Monsees) at 463:8-11.  All of this amply defeats any possible inference of

21  ownership from the fact the apps were located on the phone.  All of the data collection and

22  transmission occurs inside the app and the evidence is uniform that class members had no ability

23  to control, possess, use or convey the data.  Trial Tr. Aug. 21 (Hochman) at 724:2-9 (**A**: I would

24  just say that the app developer designs their app and it works. You know, they design it. **Q**: The

25  app developer designs the app, not Google; right? **A**: Google designs the SDK. **Q**: Google designs

26

27  ───────────────
    [1] Worse, both classes include "enterprise accounts" and "supervised accounts" for the CDAFA
28  claim. *See* PX-067 at 19-20. Plaintiffs offer no evidence that class members of these accounts—
    versus the enterprise or the minor's parent or guardian—have any ownership claim, much less a
    privacy interest.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS

the SDK. It's up to the app developer to put it in the app; right? **A**: Yep, and then Google gets the data from the SDK); Trial Tr. Aug. 19 (Monsees) at 264:7-10 ("It really depends on what the third-party developer is choosing to send, but yes, that data would go from the Uber app to Google Analytics."); 306:5-9; Trial Tr. Aug. 29 (Black) at 1699:1-7.

At core, while Plaintiffs may have asserted a privacy interest in the (s)WAA-off data, "a privacy interest" is not "an *ownership* interest," and Plaintiffs have not provided any evidence that each class member—rather than the third-party apps—*own* the data. *See Garrabrants*, 98 Cal. App. 5th at 508-09; *Stuart*, 2024 WL 3455263, at *19; *In re Capital One Fin. Corp.*, No. 1:25-cv-023 (AJT/WBP), 2025 WL 1570973, at *14 (E.D. Va. June 2, 2025) ("But where a plaintiff's personal data (*e.g.*, financial information, health data) is collected or generated by a third-party, and stored by a third-party, the plaintiff may retain 'some form of interest – for example, a privacy interest,' but cannot necessarily claim an ownership interest in that data under CDAFA.").

### 2.     Plaintiffs Fail To Demonstrate "Without Permission"

Plaintiffs must show that Google's collection of (s)WAA-off data was "without permission." Cal. Penal Code § 502(c)(2). Unlike the role of consent in other contexts, "without permission" is an element of Plaintiffs' cause of action and Plaintiffs bear the burden of proof. *See Agular v. Atl. Richfield Co.*, 25 Cal.4th 826, 850 (2001); *People v. Tillotson*, 157 Cal.App.4th 517, 538 (2007); *Mendez v. Piper*, No. H041122, 2017 WL 1350770, at *14 (Cal. Ct. App. Apr. 12, 2017); *Snap! Mobile, Inc. v. Croghan*, No. 18-CV-04686-LHK, 2019 WL 884177, at *11 (N.D. Cal. Feb. 22, 2019).

Whether Google acted "without permission" is determined from Google's perspective— Google must have acted "knowingly . . . without permission." Section 502(c)(2); *see Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016); *People v. Hawkins*, 98 Cal. App. 4th 1428, 1438-39 (2002) ("Knowingly" applies to all elements of Section 502(c)(2), not just access). And the burden is on the Plaintiffs to demonstrate that Google "unequivocally knew" that (s)WAA-off revoked permission to save class members' Google Analytics data. *See Power Ventures*, 844 F.3d at 1067; *see also United States v. Nosal*, 844 F.3d 1024, 1028 (9th Cir. 2016) (Under the CFAA, "[u]nequivocal revocation of computer access closes both the front door and the

1  back door.").[2]  In *Power Ventures*, the defendant accessed Facebook's computers via its individual

2  users' Facebook profiles.  *Power Ventures*, 844 F.3d at 1067.  Those users "arguably gave Power

3  permission to use Facebook's computers" and "Power reasonably could have thought that consent

4  from *Facebook users* to share the promotion was permission for Power to access *Facebook's*

5  computers."  *Id*.  Facebook thereafter "expressly rescinded that permission" via a cease-and-desist

6  letter.  *Id*.  Based on that "express revocation" "[t]he record shows unequivocally that Power knew

7  that it no longer had authorization."  *Id*. at 1067-68.  Facebook "clearly notified Power of the

8  revocation of access, and Power intentionally and admittedly refused to comply."  *Id*. at 1069.

9  Critically, in applying CDAFA, the court held that while Power "had implied authorization" via

10  user permission, "it did not, at first, violate" CDAFA.  *Id*.  Only after Power "knew that it no longer

11  had permission" was it liable.  The Ninth Circuit thus directed the district court to "calculate

12  damages only for the period after Power received the cease and desist letter."  *Id*. at 1070.

13      Here, Plaintiffs have provided no evidence supporting that Google knowingly acted without

14  permission.  David Monsees—the person who makes the decision at Google as to what (s)WAA

15  applies to and how Google understands (s)WAA—testified that Google understood (s)WAA-off to

16  revoke permission to save data to the user's Google Account; that he did not understand (and in 12

17  years never heard) anyone other than Plaintiffs claim (s)WAA-off revoked permission to store

18  Google Analytics data; that he did not (and does not) understand the (s)WAA-off language to

19  suggest that it revokes permission to store Google Analytics data; and that understanding (s)WAA-

20  off to revoke permission as to storing Google Analytics data "wouldn't make any sense" because

21  Google "couldn't provide app and site developers the features of Google Analytics."  *E.g.*, Trial Tr.

22  Aug. 19 (Monsees) at 257:25-258:1, 300:17-24, 306:17-18; Trial Tr. Aug. 20 (Monsees) at 366:7-

23  17, 368:19-369:13, 410:2-411:14; PX-003; Trial Tr. Aug. 26 (Ganem) at 1155:14-1156:1.

24  _____

25  [2] Google notes that the Court applied a "knew or *should have known*" standard on Google at
    summary judgment.  *See* Dkt. 445 at 15 (emphasis added); *see also* Dkt. 587 at 6.  The Court erred
26  in doing so.  "Knowingly," in Penal Code provisions like section 502(c)(1), requires proof of the
    defendant's "subjective awareness" or "subjective appreciation" of the required fact whereas
27  "should have known"—"criminal negligence"—is an objective standard.  *People v. Sifuentes*, 83
    Cal. App. 5th 217, 230 (2022); *In re A.L.*, 38 Cal. App. 5th 15, 22 (2019).  Knowingly "is a higher
28  criminal standard than criminal negligence."  *Sifuentes*, 83 Cal. App. at 230.  Regardless of what
    Google "should have known," it has liability under CDAFA only if Plaintiffs prove it had an
    unequivocal "subjective appreciation" that (s)WAA-off revoked permission.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS

In addition, the undisputed evidence is that Google had reason to understand that the class members had given permission. The Ninth Circuit has confirmed that "[r]ead in the context of the [Privacy] Policy as a whole, the phrase 'apps that use [Google's] services' *unambiguously discloses* Google's collection of user activity data in third-party apps." *Hammerling v. Google, LLC*, No. 22-17024, 2024 WL 937247, at *2 (9th Cir. Mar. 5, 2024); *id*. at *3 ("the [Privacy] Policy here expressly disclosed Google's intention to track their activity on third-party apps."); *see also* PX-062; PX-123. It is similarly undisputed that Google's agreement with each third-party app required the app to disclose Google's data collection to, and obtain consent from, all class members.[3] Trial Tr. Aug. 19 (Monsees) at 262:16-18; *see also* G933; Trial Tr. Aug. 26 (Ganem) at 1148:18-1150:17, 1157:6-11; Trial Tr. Aug. 27 (Ganem) at 1259:24-1260:14. *See Power Ventures*, 844 F.3d at 1069 ("implied authorization" from third-parties can preclude CDAFA liability).[4]

Plaintiffs' evidence falls far short of Google's unequivocal subjective knowledge. Unlike Power, who only "arguably" had permission, Google understood it *expressly* had permission from multiple-sources, including the "unambiguous" Privacy Policy and Google's policy of requiring third-party app disclosure and consent. Unlike Power, where the CEO and other executive admitted to knowing of Facebook's revocation, the relevant Google employees here (David Monsees and Steve Ganem) explained—uncontradicted and under oath—that they did not and would not have understood (s)WAA-off as revoking permission. *See* Trial Tr. Aug. 20 (Monsees) at 391:11-18, 416:9-12, 429:2-6; Trial Tr. Aug. 26 (Ganem) at 1155:14-1156:1; *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424 (9th Cir. 1995) (corporate intent requires relevant director or officer intent). And Plaintiffs' eliciting that the (s)WAA-off toggle does not mention explicitly mention "Google Analytics" cuts *against* them. Plaintiffs' alleged understanding—which sharply differs from Mr. Monses' and Mr. Ganem's understanding—indicates that (at best) the (s)WAA-off disclosure was

---

[3] While Google maintains its objection that this Court was incorrect in precluding Google from using third-party app disclosures to establish "the chain of consent", Dkt. 587 at 6, the third-party app disclosures show Google's subjective understanding of the permissions it had to collect the at-issue data and whether (s)WAA-off revoked that permission.

[4] Moreover, starting in 2021 with the introduction of iOS 14.5, members of the iOS Class were presented with a pop-up notification when using apps, confirming if the user wanted to "Ask app not to track." Enabling this setting would prevent Google from knowing whether the iOS user was also a Google user, resulting in Google saving the data in de-identified form. Trial Tr. Aug. 29 (Black) at 1706:17-1707:10; Trial Tr. Aug. 28 (Knittel) at 1563:23-1564:8, 1579:21-23.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS

ambiguous.  Ambiguous language is not unequivocal revocation.  JMOL on CDAFA follows.

### 3.    Plaintiffs Failed To Show CDAFA Loss Or Damage

Plaintiffs' CDAFA claim requires that each class member have suffered "damage or loss by reason of" the alleged violation of Section 502(c)(2).  Cal. Penal Code § 502(e).  Plaintiffs offered five theories of damage or loss at summary judgment, only three of which the Court found sufficient to survive summary judgment.  Dkt. 445 at 17-19.  Plaintiffs now offer six different theories—the three accepted by the Court at summary judgement and three that repackage the two theories rejected by the Court.  Dkt. 595 at 43.  Plaintiffs fail on all six.

All of Plaintiffs' "loss or damage" claims fail because there is no class-wide proof that all class members understood (s)WAA-off to revoke permission.  *Cf. Mirkin v. Wasserman*, 5 Cal.4th 1082, 1088-1092 (1993) (explaining that a plaintiff must prove *actual reliance* to "establish a complete causal relationship" between the alleged misrepresentation and harm).  Indeed, it appears that Plaintiffs now complain only about the "puzzle piece" theory—which Google does not do.  Trial Tr. Aug. 25 (Rodriguez) at 843:12-21.  Moreover, the Court should reject out-of-hand Plaintiffs' three repackaged loss theories.  At summary judgment, the Court rejected "denial of benefit of the bargain" as a harm theory.  Dkt. 445 at 19-20.  Undeterred, Plaintiffs repackage that theory as "loss of the right to control Plaintiffs' data."  Dkt. 595 at 43 (Item 3).  Plaintiffs' naming the alleged contract right rather than relying on general "benefit of the bargain" does not call for a different result.  The same is true for Plaintiffs' "Loss of Privacy" theory—which was rejected when called a "Deprivation of Privacy."  *Compare* Dkt. 445 at 17 *with* Dkt 595 at 43 (Item 4).  And "Injury to Plaintiffs' peace of mind" is nothing more than a recycled effort to claim injury from "emotional harms" —for which Plaintiffs have no "concrete models or theories."  Dkt. 445 at 17.  And, finally, Plaintiffs' remaining theories—disgorgement, value of data, and battery/bandwidth harm—are, as explained below, fatally deficient.

### a.    Plaintiffs' Disgorgement And Value Of Data Theories Are Superseded By CUTSA

Plaintiffs are clear that their disgorgement and value of data theories are based on the economic value of the class members' (s)WAA-off data either to the class members (value of data

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS

1  taken) or to Google (disgorgement). No doubt that Plaintiffs pursued these theories because, unlike

2  emotional distress and other typical privacy damages, these economic damage models had a

3  prospect of surviving class certification. But that choice leads to CUTSA supersession.

4      California's Uniform Trade Secret Act ("CUTSA") provides an exclusive remedy for

5  conduct falling within its terms. *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236

6  (2010), *disapproved on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 337 (2011).

7  CUTSA supersession applies beyond mere repackaged trade secret claims, it extends to all claims

8  "based on the taking of information that, though not a trade secret, was nonetheless of value to the

9  claimant." *Id*. at 239 n.22 ("a prime purpose of the law was to sweep away the adopting states'

10  bewildering web of rules and rationales and replace it with a uniform set of principles for

11  determining when one is—and is not—liable for acquiring, disclosing, or using 'information ... of

12  value.'"). As Judge Koh explained in *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK,

13  2012 WL 6160472, at *5 (N.D. Cal. Dec. 11, 2012), "if the basis of the alleged property right is in

14  essence that the information ... is 'not ... generally known to the public,' then the claim is

15  sufficiently close to a trade secret claim that it should be superseded notwithstanding the fact that

16  the information fails to meet the definition of a trade secret." (citing Cal. Civ. Code § 3426.1(d)(1)).

17  In short, a claim that seeks to "impose liability [] for 'acquiring, disclosing, or using' confidential

18  information of purported value" is superseded by CUTSA. *Erhart v. BofI Holding, Inc.*, 612 F.

19  Supp. 3d 1062, 1118 (S.D. Cal. 2020).

20      Many courts in this district—including this Court—have adopted *Silvaco*'s broad

21  understanding. *See Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-cv-04769-RS, 2015 WL

22  10435931, at *4-*5 (N.D. Cal. Aug. 6, 2015) (Seeborg, J.); *Language Line Servs., Inc. v. Language

23  Servs. Assoc., Inc.*, 944 F. Supp. 2d 775, 781 (N.D. Cal. 2013) (Seeborg, J.); *UCAR Tech. (USA),

24  Inc. v. Li*, No. 5:17-cv-01704-EJD, 2018 WL 2555429, at *4 (N.D. Cal. June 4, 2018)

25  ("[M]isappropriation of unspecified, intangible, non-trade secret 'computer data,' 'proprietary

26  information and work product'" was superseded); *Artec Grp., Inc. v. Klimov*, No. 15-cv-3449-

27  EMC, 2016 WL 8223346, at *7 (N.D. Cal. Dec. 22, 2016) ("The majority of district courts that

28  have considered *Silvaco* have held that CUTSA supersedes claims based on the misappropriation

of information that does not satisfy the definition of trade secret under CUTSA."); *Total Recall Techs. v. Luckey*, No. C 15-2281 WHA, 2016 WL 199796, at *8 (N.D. Cal. Jan. 16, 2016); *Heller v. Cepia, L.L.C.*, No. C 11-01146 JSW, 2012 WL 13572, at *7 (N.D. Cal. Jan. 4, 2012) (claims based on "the wrongful taking and use of confidential . . . information," whether or not trade secrets, "are superseded").

There is no doubt that Plaintiffs' CDAFA damage theories are covered by CUTSA supersession. By definition, the data must be non-public. *See Teran v. Super. Ct. of Los Angeles*, 112 Cal. App. 5th 371, 383 (2025) (interpreting Section 502(c)(2) as not applicable to public information). And Plaintiffs are claiming loss as "[t]he value of data taken from Plaintiffs" and "Google's profits from data taken from Plaintiffs." Dkt. 595 at 43; *id*. at 94; Plaintiffs' Opening Slides at 7, 24, 25; Trial Tr. Aug. 25 (Lasinski) at 878:3-13; 878:20-879:13. Unsurprisingly, courts routinely find CUTSA supersession of such CDAFA claims. *See Henry Schein, Inc. v. Cook*, No. 16-cv-03166-JST, 2017 WL 783617, at *5 (N.D. Cal. Mar. 1, 2017); *Alert Enter., Inc. v. Rana*, No. 22-cv-06646-JSC, 2023 WL 2541353, at *6 (N.D. Cal. Mar. 16, 2023); *Movement Mortg., LLC v. Scrima*, No. 2:23-cv-02904-DJC-CSK, 2024 WL 3011202, at *5 (E.D. Cal. June 11, 2024); *M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*, No. 12-cv-1424 CAB (BLM), 2013 WL 12072526, at *3 (S.D. Cal. June 26, 2013). Indeed, the supposed "confidentiality" of Plaintiffs' data is at the heart of their case, and their central theory that Google takes "private," Trial Tr. Aug. 20 (Santiago) at 555:1-21, "data from millions of people that obviously has value, and Google profited from that data," *id*. at 499:11-18. This is precisely the kind of claim CUTSA was intended to supersede.

Plaintiffs' decision not to bring a CUTSA claim does not avoid supersession. *See NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 840 (N.D. Cal. 2014) (finding "meritless" the argument that supersession applies only if a CUTSA claim is actually pleaded); *Barker v. Insight Global, LLC*, No. 16-cv-07186-BLF, 2017 WL 10504692, at *4 (N.D. Cal. Nov. 21, 2017) ("[T]here is no reason why preemption turns on and off depending on whether a trade secret claim is actually pled.").

Notably, CUTSA does not uniformly supersede Section 502(c)(2) damage claims. It only does so when the damage or loss claimed under Section 502(e) is based on the economic value of

10

the data. *E.g., Erhart*, 612 F. Supp. 3d at 1116-1120, 1127-28. But Plaintiffs would not be able to claim such other damages on a class-wide basis. Plaintiffs are "[c]aught between Scylla and Charybdis" and its value-of-data, class-wide damage models "fail[] to navigate trade secret's law narrow straits." *Top Agent Network*, 2015 WL 10435931, at *5 (Seeborg, J.).

> **b.    Plaintiffs Lack Class-Wide Proof Of "Battery" And "Bandwidth" Harm**

Plaintiffs' final "loss or damage" theory–harm to "battery" and "bandwidth"—fails for three separate reasons: a lack of class-wide proof, standing, and a lack of causation.

On class-wide proof, Plaintiffs' evidence of this harm is a dashed-off opinion from Dr. Hochman and conclusory class representative testimony. Trial Tr. Aug. 21 (Hochman) at 721:17-22; 725:17; 725:22-726:3; Trial Tr. Aug. 20 (Santiago) at 497:22-498:1; Trial Tr. Aug. 25 (Rodriguez) at 818:20-23. All that this evidence demonstrates is that harm to battery or bandwidth *is possible*, not that it occurred to any specific class member, much less to *all* class members. If an individual class member sued Google under CDAFA claiming loss of battery or bandwidth, she would not be able to establish her claim at trial with Dr. Hochman's opinion and Plaintiffs' testimony. And what is true of any given class member is true for the class; Plaintiffs' evidence could not be used to show harm to battery or bandwidth for each member. *See Tyson Foods*, 577 U.S. at 456. That is especially the case when each class member could be asked about–and Google could cross-examine regarding–patterns of device and app usage, observed battery degradation, increased mobile data bills, and the like. That there is potential loss in general does not prove loss in specific. An example proves the point: "mobile devices" include iPads and Android Tablets. Many of those devices are not cellular-equipped–they are WiFi only. A WiFi-only tablet suffers no bandwidth loss. Plaintiffs have no class-wide evidence that each and every class member suffered any "battery" or "bandwidth" harm.

On standing, Plaintiffs bring the wrong CDAFA claim to seek to recover harm to battery or bandwidth. Plaintiffs have brought a *data* claim—Section 502(c)(2)—and thus should be limited to data-related harms. *Christensen*, 828 F.3d at 789; *Betak*, 2025 WL 786056, at *6. To hold otherwise reads the "by reason of" language out of Section 502(e)(1). If Plaintiffs wanted to pursue

1   battery or bandwidth claims, they could have brought claims under other sections of CDAFA.

2       On causation, there is a mismatch between what causes the alleged harm and the CDAFA

3   violation.  The alleged harm occurs to the device and bandwidth.  But even reading the (s)WAA-

4   off disclosure as Plaintiffs' do—the key word is "save"—and so the revocation of permission is

5   limited to Google *storing* and subsequently *using* the data.  *See* PX-084.  If Google deleted

6   (s)WAA-off data immediately upon receipt post-transit, Plaintiffs would have no Section 502(c)(2)

7   claim based on unchecking (s)WAA–Google "saved" nothing.  But the (entirely speculative)

8   battery and bandwidth harm is unchanged.  Plaintiffs have thus failed to show that battery and

9   bandwidth loss or damage occurred "by reason of" Google allegedly failing to honor (s)WAA-off.

10  ### 4.    Google Meets The Scope Of Employment Exception

11      CDAFA exempts any acts from violating Section 502(c) if they are "committed by a person

12  within the scope of lawful employment." *Id*. § 502(h)(1).[5]  The undisputed evidence is that

13  Google—at all times—acted on behalf of, and within the scope its relationship, with the third-

14  party apps.  Trial Tr. Aug. 19 (Plaintiffs' Opening) at 207:16-19; Trial Tr. Aug. 21 (Hochman) at

15  584:23-585:21, 686:8-688:4; Trial Tr. Aug. 19 (Monsees) at 263:10-19.  Plaintiffs' claim flounders

16  on Section 502(h)(1).[6]

17      Plainly, the purpose of CDAFA's "scope of lawful employment" exception is to preclude

18  *criminal* liability for those who actually operationalize permitted access.  Hence "lawful"

19  employment.  But a person should not gain or lose critical statutory protection depending on

20  whether the person is a W-2 employee, a member of limited liability companies, a partner or an

21  associate of a law firm, an independent contractor or a vendor.  The statute's own definition of what

22  constitutes acting within the "scope of employment"—*i.e.*, that it covers the "acts which are

---

24  [5] It is unclear whether Plaintiffs or Google have the burden of proof here.  Section 502(c) begins
25  "[e]xcept as provided in subdivision (h)...".  Two district courts have suggested it falls on the
      plaintiff.  *See PQ Labs, Inc. v. Yang Qi*, No. 12-0450 CW, 2014 WL 334453, at *10-11 (N.D. Cal.
      Jan. 29, 2014) (Wilken, J.); *Regents of the Univ. of Cal. v. Aisen*, No. 15-cv-1766-BEN (BLM),
26  2016 WL 4096078, at *7 (S.D. Cal. Apr. 22, 2016).  One suggests it falls on the defendant.
      *TrustLabs, Inc. v. An*, No. 21-cv-02606-CRB, 2024 WL 4778039, at *4 (N.D. Cal. Nov. 13, 2024)
27  (Breyer, J.).
      [6] Plaintiffs necessarily claim that Google is a "person" for purposes of CDAFA, given that Section
28  502(c) only applies to "any person" who commits one of the enumerated acts.  Google is thus a
      "person" for Section 502(h)(1).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS

1  reasonably necessary to the performance of their work assignment"—confirms that "scope of *lawful*

2  employment" is about permitted versus unpermitted work, not whether the person performing the

3  "work assignment" is classified as an employee or contractor.  *See* Cal. Penal Code § 502(h)(1).

4  Case law confirms that "scope of employment" is to be read broadly.  *Chrisman v. City of Los*

5  *Angeles*, 155 Cal. App. 4th 29, 36 (2007) ("respondents define 'scope of employment' too

6  narrowly").  And to the extent that the Court has any residual doubt that Section 502(h)(1) can

7  apply to Google in the context of providing Google Analytics, the rule of lenity compels resolving

8  that ambiguity in favor of Google.  *See U.S. v. Santos*, 553 U.S. 507, 513-14 (2008).[7]

9  Here, Google's "work assignment" was to provide Google Analytics to apps.  It did so by

10  providing the GA4F SDK for incorporation into third-party apps and then receiving, storing, and

11  processing the data—selected by the app developer—which the app had sent to Google as designed

12  by the app developer.  In other words, Google was "performing acts which are reasonably necessary

13  to the performance of [its] work assignment" of providing Google Analytics.  There is no liability

14  under Section 502(c)(2).

15  **5.    Plaintiffs Have No Damages**

16  For the same reason that Plaintiffs have not shown damage or loss, they also fail to prove

17  any entitlement to compensatory damages or equitable relief.  Plaintiffs' compensatory damage and

18  disgorgement theories are preempted by CUTSA as explained.  And Plaintiffs' battery-and-

19  bandwidth theory fails class-wide.

20  **B.    Plaintiffs' Privacy Claims Fail As A Matter Of Law**

21  Plaintiffs bring two privacy claims against Google: invasion of privacy under the California

22  Constitution and intrusion upon seclusion. As this Court has recognized, while the claims are

23  distinct, they consist of substantially similar elements.  "The inquiry under either is whether (1)

24  there exists a reasonable expectation of privacy, and (2) whether the intrusion was highly

25  offensive." Dkt. 445 at 9 (cleaned up).  While Google follows this convention here for convenience,

26  to avoid any possibility of waiver under Rule 50, Google hereby expressly applies its arguments

27

28  _____
[7] Because statutes must be interpreted consistently, the rule of lenity applies evenly to statutes that provide both criminal and civil liability. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS

1    below to both claims.

2            **1.      There Is No Class-Wide Privacy Interest In (s)WAA Data**

3            Plaintiffs have failed to offer sufficient evidence that class members have any privacy

4    interest over (s)WAA data. There are only two classes of legally protectable privacy interests: 1)

5    "interests in precluding the dissemination or misuse of sensitive and confidential information," and

6    2) "interests in making intimate personal decisions or conducting personal activities without

7    observation, intrusion, or interference." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 35

8    (1994). Plaintiffs' only claim is over the former category. Privacy interests should not be defined

9    by the *type* of information, rather what matters is the *content* of the information.  *See Yahoo Mail*,

10   7 F. Supp. 3d at 1040-41 (finding that there is no privacy interest in emails categorically, but rather

11   the particular content of an email). The test is whether the information is "sensitive" or

12   "confidential." *Id*. at 1041.

13           Because the analysis is based on the *content* of the information, individualized issues

14   predominate the analysis.  Plaintiffs had to establish what data was collected for each class member,

15   across each third-party app, and that each was sufficiently "sensitive" or "confidential" to establish

16   a privacy interest.  *See Yahoo Mail*, 7 F. Supp. 3d at 1040-41.  Because each app controls what data

17   is collected, the range of what data is collected—and thus what privacy interest exists (if any)—is

18   varied.   Mr. Rodriguez confirmed this fact.   Trial Tr. Aug. 25 (Rodriguez) at 857:21-858:4.

19   Plaintiffs have not shown that there is even an absolute minimum set of data that Google Analytics

20   *must* collect—a fact that might have established class-wide proof.  Even the existence of defaults

21   is just that—a default.  Plaintiffs have utterly failed to establish that every class member had a

22   privacy interest in the unique and varied stream of data requested by each app owner.

23           Moreover, the evidence presented at trial has made clear that (s)WAA-off data is non-

24   personal, pseudonymous, and stored in segregated, secured, and encrypted locations.  It is not

25   associated with a user's Google Account and is not associated with any individual user's identity.

26   *See* Trial Tr. Aug. 19 (Monsees) at 300:21-24 (explaining that (s)WAA-off data is saved "not

27   against their Web & App Activity, not against their Google Account.  We save it as de-identified

28   information"); Trial Tr. Aug. 21 (Hochman) at 685:16-686:3; Trial Tr. Aug 26 (Ganem) at 1138:8-

Cooley LLP
Attorneys at Law
San Francisco

14

Google's Motion For Judgment As A
Matter Of Law
3:20-CV-04688-RS

1    12, 1161:19-1162:4, 1179:22-1180:8; Trial Tr. Aug. 28 (Ruemmler) at 1513:24-1514:3; Trial Tr.

2    Aug. 29 (Black) at 1705:17-22. It is *never* used to "put the puzzle together." Trial Tr. Aug. 26

3    (Ganem) at 1130:16-1132:9, 1134:5-1135:15, 1137:2:15; Trial Tr. Aug. 29 (Black) at 1722:1-24.

4    Plaintiffs cannot show how de-identified data, attributable to no one, is "sensitive" or "confidential"

5    to them such that there is a privacy interest. *See Yahoo Mail*, 7 F. Supp. 3d at 1040-41.

6        At best, Plaintiffs seek to shortcut the typical examination about whether there is even a

7    possible privacy interest by claiming that (s)WAA-off creates a class-wide privacy interest. But as

8    explained below, Google's disclosures unambiguously preclude Plaintiffs' misreading of the

9    (s)WAA toggle. This court should hold that there is no privacy interest here.

### 2.    Plaintiffs Have Failed To Establish A Reasonable Expectation Of Privacy Over (s)WAA Data On A Class-wide Basis

12        Plaintiffs have failed to offer sufficient class-wide evidence that they have a reasonable

13    expectation of privacy over (s)WAA data, defeating their privacy claims. Having a "reasonable

14    expectation of privacy" is distinct from a "privacy interest." *See Yahoo Mail*, 7 F. Supp. 3d at 1038.

15    To establish a reasonable expectation of privacy, a plaintiff must show: 1) an actual, subjective

16    expectation of privacy, and 2) that the expectation was objectively reasonable. *Med. Lab'y Mgmt.*

17    *Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 812 (9th Cir. 2002); *Hill*, 7 Cal. 4th at 35.

18    "Customs, practices, and physical settings" inform the analysis, and an expectation of privacy must

19    be "objectively reasonable under the circumstances, especially in light of the competing social

20    interests involved." *Sheehan v. San Francisco 49ers, Ltd.*, 45 Cal.4th 992, 1000 (2009).

### a.    No Class-Wide Expectation Of Privacy

22        Plaintiffs offer no class-wide evidence of an expectation of privacy. Doubtless they will

23    assert that California law does not require Plaintiffs to prove subjective expectation. *See* Dkt. 333

24    at 18 (citing *Opperman v. Path*, No.13-cv-00453-JST, 2016 WL 3844326, at *11 (N.D. Cal. July

25    15, 2016)); Dkt. 352 at 8-9 (accepting Plaintiffs' argument). But Plaintiffs are simply wrong.

26        Start with the case cited in *Opperman* that supposedly dispenses with the subjective

27    expectation requirement: *Shulman v. Grp. W. Prods., Inc.*, 18 Cal. 4th 200, 232 (1998). *Shulman*

28    did not dispense with the plaintiff needing to have a subjective expectation of privacy; it *confirmed*

1   this requirement.  In reversing the Court of Appeal, the California Supreme Court in *Shulman*

2   identified *two separate* triable issues of fact on the reasonable expectation of privacy prong:

3   "Whether [Plaintiff] *expected* her conversations with Nurse Carnahan or the other rescuers to

4   remain private **and** whether *any such expectation* was reasonable."  *Shulman*, 18 Cal. 4th at 233-

5   34 (emphasis added).  Both the *expectation* and the reasonableness of *any such expectation* are

6   elements; the former subjective, the latter objective.  Expectations of privacy are not free-floating.

7   A plaintiff must *have* such an expectation.  *See Hernandez v. Hillsides, Inc.,* 47 Cal. 4th 272, 286

8   (2009) (the first element must be an intrusion "as to which the plaintiff ***has*** a reasonable expectation

9   of privacy.") (citing *Shulman*; emphasis added).

10      This Court is bound to conclude that Plaintiffs here must prove an expectation of privacy.

11  California follows the Restatement (2d) of Torts § 652B.  *Hernandez*, 47 Cal. 4th at 286 (describing

12  *Shulman* as "approving and following" Restatement (2d) of Torts § 652B).  And the Ninth Circuit

13  has held that under Section 652B "[t]o prevail on the first prong, the plaintiff must show (a) an

14  actual, subjective expectation of seclusion or solitude in the place, conversation, or matter, and (b)

15  that the expectation was objectively reasonable."  *See Med. Lab'y Mgmt. Consultants*, 306 F.3d at

16  812-13 (interpreting the requirements from Section 652(B)); *see also In re Facebook Internet

17  Tracking Litig.*, 140 F. Supp. 3d 922, 933 n.5 (N.D. Cal. 2015) (same, applying California law).

18      It is true that courts do not often need to articulate the requirement of a subjective

19  expectation of privacy because, obviously, the plaintiff in a given case is asserting a privacy claim.

20  But the various formulations by California courts make this requirement clear.  *See Hill*, 7 Cal. 4th

21  at 36 ("The second essential element of a state constitutional cause of action for invasion of privacy

22  is a reasonable expectation of privacy *on plaintiff's part*.") (emphasis added); *Hernandez,* 47 Cal.

23  4th at 286 ("the expectation of privacy must be 'objectively reasonable.'"); *Garrabrants*, 98 Cal.

24  App. 5th at 500 ("Whether an expectation of privacy is reasonable in any given circumstance is a

25  context specific inquiry"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th

26  Cir. 2020)  ("Plaintiffs must show that … they maintain a reasonable expectation of privacy")

27  (emphasis added).  Even the district judge who decided *Opperman* later explained, in denying class

28  certification in a different case, "[t]he Court agrees with [defendant] that the resolution of Plaintiffs'

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS

claim under the California Constitution turns on individualized factual questions of *whether each user actually maintained* their reasonable expectation of privacy." *Hart v. TWC Prod. & Tech. LLC*, No. 20-cv-03842-JST, 2023 WL 3568078, at *9 (N.D. Cal. Mar. 30, 2023) (emphasis added).[8]

It is equally clear that Plaintiffs have failed to provide evidence establishing a subjective expectation of privacy on a class-wide basis. The only class-wide proof of anything is that all class members had (s)WAA-off. But (s)WAA-off alone cannot establish a class-wide subjective expectation of privacy. Legally, that would make the class an improper "fail safe" class. *Olean Wholesale Groc. Coop. v. Bumble Bee Foods*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (en banc). And factually, it would eviscerate Google's due process right to test whether class members actually expected (s)WAA-off to stop collection of Google Analytics data.

Thus, the critical fact question is not whether class members had (s)WAA-off; all of them did. It is what privacy expectation, if any, did the class members have in turning (s)WAA off as to Google Analytics data from third-party apps. It is obvious that class members could have many different expectations, not least of which is the expectation that (s)WAA does *exactly what Google says it does*: prevents Google Analytics data from third-party apps from being saved to the user's Google Account. *See* Trial Tr. Aug. 19 (Monsees) at 300:21-24; 307:8-14; 312:1-3; Trial Tr. Aug. 20 (Monsees) at 391:5-22 (explaining that PX2 showed survey participants correctly understood WAA-off). Plaintiffs took this class case to trial, and thus assumed the burden of proving the "individualized factual inquiry" as to "whether individual users understood that their affirmative" act to turn (s)WAA off embodied an expectation that Google would not collect and save Google Analytics data from that user's third-party apps. *Hart*, 2023 WL 3568078, at *10. It is not enough for Plaintiffs to point to ambiguities and cherry-picked language to argue that class members *could* have understood (s)WAA as Plaintiffs' claim. Rather, Plaintiffs must prove that *each* and *every* class member—all 98 million of them—shared the same understanding of (s)WAA-off.

But at trial, Plaintiffs have offered no class-wide evidence. They have the personal, subjective expectations of their two class representatives, both from Florida. That's it. No survey.

---

[8] In addition, there would be insurmountable Article III standing issues if Plaintiffs could bring a class claim and not have to prove that the class members *actually had an expectation of privacy*.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS

1    Trial Tr. Aug. 27 (Hoffman) at 1410:8-1411:15.  No statistical evidence.  No expert testimony.

2    Trial Tr. Aug. 21 (Hochman) at 730:8-15.   Indeed, obviously cognizant of this utter lack of proof,

3    Plaintiffs tried repeatedly to get Dr. Hochman to expand his "technical baseline" opinion into a

4    broader opinion of consumer belief.  This Court quite properly sustained Google's repeated

5    objection.  Even so, Dr. Hochman admitted that he did not initially understand (s)WAA-off to reach

6    Google Analytics data.  Trial Tr. Aug. 21 (Hochman) at 685:16-686:3.  In fact, the only evidence

7    of any widely-shared understanding of (s)WAA-off came from David Monsees and Steve Ganem,

8    who both testified that apart from this lawsuit, they had never heard of anyone expecting that

9    turning (s)WAA-off would prevent Google's collection of de-identified Google Analytics data.

10   Trial Tr. Aug. 20 (Monsees) at 368:19-369:3; Trial Tr. Aug. 26 (Ganem) at 1200:21-1201:2.

11        At bottom, even crediting for Rule 50(a) purposes the Class Representatives' testimony of

12   *their* subjective expectations of privacy, the failure of class-wide proof is monumental.  *See Dukes*,

13   564 U.S. at 353-58 (holding that 120 affidavits were "too weak to raise any inference" of a

14   discriminatory practice for certification purposes where they represented only 1/12,500 of the

15   putative class and related to only 235 of Wal-Mart's 3,400 stores).  Here, Plaintiffs provided

16   testimony *at trial* from only *one* class member for each the Android and iPhone classes—classes

17   which together have nearly 98 million users.

18                    **b.        Any Expectation Of Privacy Was Unreasonable**

19        Plaintiffs' sole pitch for a class-wide reasonable expectation of privacy is that they

20   understood the (s)WAA-off disclosure to mean that Google would stop collecting *any and all* data

21   from third-party apps for (s)WAA-off users and that alone makes their expectation reasonable.  This

22   fails both for plaintiffs.  And there is no reasonable expectation of privacy for the class.

23        At a minimum, Plaintiffs' expectation can be reasonable only if their reading of the

24   (s)WAA-off disclosure is reasonable.  It is not.  The Activity Control page—read as a whole—

25   contradicts Plaintiffs' reading of the snippet of (s)WAA-off disclosure.  So does Google's Privacy

26   Policy, the WAA Help Center page, and the (s)WAA-revocation text.  *See* PX-084; PX-062; PX-

27   067; PX-072; PX-123; PX-116; G0607.   The disclosures from each app contradict Plaintiffs'

28   reading.  To avoid these conclusions, Dr. Hochman engaged in the mental gymnastics of making

Cooley LLP
Attorneys at Law
San Francisco

18

Google's Motion For Judgment As A
Matter Of Law
3:20-cv-04688-RS

1    up his own definition of "Google Account" so as to create a Plaintiff-friendly "technical baseline."

2    Trial Tr. Aug. 21 (Hochman) at 673:6-675:8.  And Plaintiff Rodriguez disagreed with the meaning

3    of the word "and."  Trial Tr. Aug. 25 (Rodriguez) at 829:6-8.  Any expectation of privacy based on

4    *redefining* Google's own defined terms or quibbling over the word "and" is unreasonable.

5         Google contends that its disclosures unambiguously confirm that (s)WAA-off means only

6    that Google will not save (s)WAA-off data to the user's account.  But, at the very best for Plaintiffs,

7    there was ambiguity.  Ambiguity, however, necessarily *defeats* an objectively reasonable

8    expectation.  There is no "broadly based and widely accepted community norm" that an ambiguous

9    disclosure can create a reasonable privacy interest.

10        Indeed, what common evidence there is rejects any objectively reasonable expectation.

11   Plaintiffs' expectation is not reasonable because it would destroy Google Analytics—a service

12   relied on by millions of apps.  Trial Tr. Aug. 26 (Ganem) at 1176:17-1177:5; Trial Tr. Aug. 20

13   (Monsees) at 429:7-12, 410:8-13.  Moreover, Plaintiffs' complaint about the ubiquity of phones,

14   apps, and data collection cuts against Plaintiffs.  Trial Tr. Aug. 20 (Santiago) at 524:4-9 ("How do

15   we know the other [] app[s] [don't] have a Google SDK as well? It's everything. It's everywhere.");

16   *see Sheehan*, 45 Cal.4th at 1000.  The "broadly based and widely accepted community norm" is the

17   exchange of user data for cheap apps.  Whether society ought to make that trade off, Plaintiffs' own

18   testimony establishes that this is the norm.  Indeed, the only bit of "survey" evidence provided by

19   Plaintiffs' came from Plaintiff Santiago: he brought up ESPN's use of Google's SDK on its fantasy

20   football site and requested his league—presumably his friends—to move sites; he "was overruled"

21   by the other eleven members of his league.  Trial Tr. Aug. 20 (Santiago) at 522:21-523:5.

22        Moreover, the "competing social interests" further favor Google.  Google's products ensure

23   "personalized experiences," and Google Analytics allows app developers to improve their apps. *Id*.

24   (Monsees) at 375:8-10, 404:16-21; Trial Tr. Aug. 26 (Ganem) at 1129:13-21. As explained above,

25   the data at issue is non-personalized, de-identified browsing data.  The data is not selected by

26   Google, but by app developers.  While the nature of data is such that Plaintiffs have no expectation

27   of privacy in it all (*see supra*), those same facts sharply reduce the reasonableness of Plaintiffs'

28   expectation of privacy. *Sanders v. ABC*, 20 Cal. 4th 907, 915 (1999) (explaining that there are

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS

1    "degrees and nuances to societal recognition of our expectations of privacy").

2        Next, look to what class-wide evidence is missing: Plaintiffs' have no common evidence of

3    "customs of time and place," or of relevant community social norms, or any other evidence that

4    would confirm that their claimed expectation is reasonable.  Again, where is the consumer survey?

5    Where is the statistical evidence?  There is, and could be, none.  *See Hart*, 2023 WL 3568078, at

6    *9.  Plaintiffs themselves have confirmed that the reasonable expectation of privacy varies based

7    on the individual class member characteristics.  Plaintiff Santiago admits that he shares data with

8    Google in order to get a personalized experience.  Trial Tr. Aug. 20 (Santiago) at 505:3-5.  And

9    Plaintiff Rodriguez has no problem letting his children's (s)WAA-off data be captured because they

10   just have video game apps.  Trial Tr. Aug. 25 (Rodriguez) at 857:21-858:4.

11       Nor is there class-wide evidence that all class members conducted themselves as if there

12   were an expectation of privacy.  *Hart*, 2023 WL 3568078, at *10. In fact, when Plaintiff Rodriguez

13   testified that he would not use any app that sent his data to third-party analytics companies, he was

14   immediately contradicted by his consent to his Target app sending analytics data to Google, Crazy

15   Egg and Adobe.  Trial Tr. Aug. 25 (Rodriguez) at 812:24-813:24, 843:12-19, 856:3-11.  Incredibly,

16   he then contradicted the entire class claim, testifying that "I don't think it was a big deal" with

17   Target sharing his analytic data with Google Analytics.  *Id*. at 843:12-21.  He  testified that "what

18   the problem here is, it's more Google gathering all the data from all my apps to kind of paint a

19   picture of who I am."  *Id*.  This admission compels JMOL.[9] Plaintiffs did not conduct themselves

20   in a manner consistent with the claimed expectation of privacy.  *Sheehan*, 45 Cal. 4th at 1000.

21   Doubtless millions of other class members have done the same.

22       At bottom, Plaintiffs have failed to demonstrate that the class members–all 98 million of

23   them–all have an objectively reasonable expectation of privacy.

24       **3.    Plaintiffs Have Not Established That Data Collection Or Transfer Is
                  Highly Offensive To All Class Members**

25       Plaintiffs cannot show, nor have they, that Google's (s)WAA-off data collection is "highly

26

---

27   [9] JMOL is warranted not just as to Plaintiffs privacy expectation against Google (s)WAA-off data
     collection, but also as to the supposed offensiveness of that conduct (it's "not a big deal") and
28   Plaintiffs' CDAFA claim.  The *undisputed evidence* is that Google does not do that to which
     Rodriguez actually objects, defeating both "without permission" and "intentional intrusion."

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS

offensive." Conduct is "highly offensive," if it is "an egregious breach of social norms" or an "intrusion [] in a manner highly offensive to a reasonable person." *See also Williams v. DDR Media*, LLC, No. 22-cv-03789-SI, 2023 WL 5352896 at *5-6 (N.D. Cal. Aug. 18, 2023); *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, No. 18-cv-07591-CRB, 2021 WL 842574, at *2 (N.D. Cal. Mar. 5, 2021) (holding no privacy concerns in de-identified information in discovery dispute); *London v. New Albertson's, Inc.*, No. 08-CV-1173 H(CAB), 2008 WL 4492642, at *8 (S.D. Cal. Sept. 30, 2008) (same).

First, Plaintiffs have failed to establish on a class-wide basis that Google's conduct is highly offensive. Of course, Plaintiffs do not claim that the collection or transfer of any and all data is an "egregious breach of social norms." Rather, it must be that the type of data collected and the manner in which it occurred was highly offensive. Again, the manner in which each third-party app collects data differs, and the type of data that each third-party app collects and transfers via GA4F is different. Moreover, the (s)WAA-off data is de-identified, encrypted, and protected by technical means and written policies to prevent the re-linking of Analytics data. Trial Tr. Aug. 26 (Ganem) at 1132:15-24, 1178:7-22. De-identification of data is the industry norm, recommended by government agencies. Trial Tr. Aug. 21 (Hochman) at 714:4-8. Google's collection of these data comes nowhere near a "highly offensive" privacy invasion.

Plaintiffs essentially acknowledge as much. Dr. Hochman offers half-hearted theoretical possibilities and evidence of app developer (not Google) policy violations. Trial Tr. Aug 21 (Hochman) at 700:13-704:4. Again, Plaintiffs have no survey or statistical evidence showing the level of offense, if any, that class members have toward Google's conduct. Rather, Plaintiffs' theory for class-wide offensiveness boils down to the argument that Google broke the promise it made in the (s)WAA-off disclosures and continued to save the de-identified data. But that is circular: how many class members *actually understood* Google to have made the promise that two class members say it did? There is no evidence that the number is anything more than two out of 98 million. No matter how offended Mr. Santiago and Mr. Rogriguez may be (and by their conduct, not much in fact), absent proof of class-wide understanding, expectation, and offense at Google's conduct, Plaintiffs fall far short.

Cooley LLP
Attorneys at Law
San Francisco

21

Google's Motion For Judgment As A
Matter Of Law
3:20-cv-04688-RS

Second, the Named Plaintiffs themselves have failed to establish sufficient individualized evidence of offensiveness. Plaintiff Santiago, despite claiming that Google's conduct meets the standard as "an egregious breach of social norms," continues to use apps that use GA4F, including ESPN, Twitter, MapMyRide, Target, and Duolingo. Trial Tr. Aug. 20 (Santiago) at 526:16-21, 547:19-548:1. He failed to mention this supposed "psychologically distressing" realization to any of his friends or coworkers. *Id.* at 516:16-18, 529:11-20. Aside from offering conclusory testimony that Google's conduct was "highly offensive" or "creepy and weird," Plaintiffs failed to provide any concrete evidence that they suffered a legal harm. *Id.* at 496:16-18; Trial Tr. Aug. 21 (Rodriguez) at 758:17-25.[10] Plaintiff Santiago's response when hearing that other apps collect data from Youtube: "That's great." Trial Tr. Aug. 20 (Santiago) at 507:3-7. He was never diagnosed with a medical condition or prescribed medication. *Id.* at 517:21-518:11. Plaintiffs' expert Jonathan Hochman admitted that his *own business website* used Google Analytics, and he did not think that doing so harmed the visitors of his website. Trial Tr. Aug. 21 (Hochman) at 696:11-25. And, again, Mr. Rodriguez voluntarily permits his children to suffer this supposedly "egregious breach of social norms" and has permitted his apps to send his data to other, more invasive and less well-known analytics providers like Crazy Egg and Adobe. Both Plaintiffs had the Facebook App, even though Facebook actually put together the "puzzle pieces" of Plaintiffs' life.

Finally, as to Google's supposedly hidden motivation and intent, the evidence falls short. Plaintiffs' repeatedly take Mr. Reummler's and Mr. Heft-Lufty's words out of context—neither was talking about (s)WAA-off, de-identified, Google Analytics data. Trial Tr. Aug. 19 (Monsees) at 318:10-319:14, 328:12-19; Trial Tr. Aug. 26 (Heft-Luthy) at 1079:11-1081:8, 1093:2-1095:2. Plaintiffs' reliance on a small Google user research study—8 individuals—in fact reflects that users properly understood WAA. Trial Tr. Aug. 20 (Monsees) at 391:5-22. Mr. Monsees unequivocally

---

[10] Although Plaintiff Santiago argued that analytics is unavoidable because all companies and sites use them now, Trial Tr. Aug. 20 (Santiago) at 524:4-9, expert Jonathan Hochman was able to avoid analytics tools after refraining from using several apps, Trial Tr. Aug. 21 (Hochman) at 697:9-13. But again, the unavoidability of the apps only shows that routine data collection of app behavior– all that Google does here–is widely accepted. And both the California Supreme Court and the Ninth Circuit have held that that ubiquity and necessity does not save a privacy claim. *Hill*, 7 Cal.4th at 43 (that drug testing is necessary to participate in NCAA athletics does not render consent involuntary); *McMorris v. Alioto*, 567 F.2d 897, 901 (9th Cir. 1978) (Kennedy, J.).

Cooley LLP
Attorneys at Law
San Francisco

22

GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS

1    stated that he did not think that revising the Activity Controls page would improve users'

2    understanding of WAA/(s)WAA settings and that neither he nor Google ever intended to confuse

3    or deceive users. Trial Tr. Aug. 20 (Monsees) at 417:1-6, 429:2-6.  Mr. Ganem agreed.  Trial Tr.

4    Aug. 26 (Ganem) at 1155:14-21.  Rule 50(a) gives the Plaintiff a *reasonable* jury; no reasonable

5    jury could believe that the mischaracterized flotsam Plaintiffs introduced establishes highly

6    offensive conduct.

### 4.    Any "Intrusion" Was Not Intentional

8        For both their privacy claims, Plaintiffs must prove that Google acted with the intent to

9    invade or intrude on their privacy. The evidence does not support that conclusion.  The evidence

10   demonstrates that Google understood it had permission to collect the (s)WAA-off data.  That it did

11   not intend to mislead or deceive users; in fact, Google employees take great pains to ensure that

12   their disclosures clearly communicate to users how Google's technology works. Trial Tr. Aug. 19

13   (Monsees) at 292:15. And that nobody at Google understood Plaintiffs' (s)WAA-disclosure

14   reading.  The evidence is uniform: any privacy intrusion was inadvertent, not intention.

### 5.    Plaintiffs Claimed Damages Are Legally Invalid

16       Plaintiffs' claimed damages are the same as the economic loss/damage claim under

17   CDAFA: the loss of the actual value of class-members data and/or the amount of Google's unjust

18   enrichment.  This damage claim similarly fails as a matter of law.

19       With respect to Plaintiffs' intrusion upon seclusion claim, the "reasonable expectation of

20   seclusion" element necessarily requires that any such information that Plaintiffs claim a privacy

21   interest in be generally not known to the public.  *See Shulman v. Group W Prods., Inc.*, 18 Cal.4th

22   200, 231-32 (1998).  But same too for trade secret claims.  *SunPower*, 2012 WL 6160472, at *5.

23   Just as with Plaintiffs' CDAFA claim, the intrusion upon seclusion claims run headlong into

24   CUTSA supersession.  The Court should find plaintiffs' actual damage and disgorgement theories

25   superseded for the intrusion upon seclusion claim.  *See New Show Studios LLC v. Needle*, No. 2:14-

26   cv-01250-CAS(MRWx), 2014 WL 2988271, at *5, *9–11 (C.D. Cal. June 30, 2014) (CUTSA

27   superseded claims where defendants "accessed" and "public[ly] disclosed private facts"); *Glam &*

28   *Glits Nail Design, Inc. v. #NotPolish, Inc*., No. 21-cv-0052-GPC-DEB, 2021 WL 2317410, at *5,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

**GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS**

1    *9–11 (S.D. Cal. June 7, 2021) (CUTSA superseded claims arising from customers' "non-public

2    personal cellphone numbers," purchasing history, pricing, and preferences); *Heller*, 2012 WL

3    13572, at *7 (unjust enrichment); *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035

4    (N.D. Cal. 2005) (Seeborg, J.) (unjust enrichment).

5         As to Plaintiffs' constitutional claim, there is no right to damages.  *Doe v. Regents of Univ.*

6    *of Cal.*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) (plaintiffs "can seek to enjoin [defendants] but

7    cannot seek damages" under "Article 1, Section 1 of the California Constitution"); *Blanco v. Cnty.*

8    *of Kings*, 142 F. Supp. 3d 986, 1001 (E.D. Cal. 2015) ("[T]the Court finds that the California

9    Constitutional right to privacy contained in article I, section I does not give rise to a cause of action

10   for money damages.").  But even if the California Supreme Court were to recognize some form of

11   recoverable damages, Google submits that it would take the Legislature's guidance on CUTSA

12   supersession into account when deciding what types of monetary remedies are available.  It seems

13   doubtful that the California Supreme Court would disregard the Legislature and choose to introduce

14   disuniformity by recognizing a "value of data" monetary remedy for violations of Article I, Section

15   1.  As such this Court should conclude that the constitutional claim does not provide remedy based

16   on the "value of data" theories proffered by Plaintiffs.

17        **C.    Plaintiffs Have Not Established The Requisite Elements For Punitive Damages**

18        To obtain punitive damages, Plaintiffs must prove by "clear and convincing evidence" that

19   Google is "guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  Acting with "malice"

20   requires that Google "intended" to injure Plaintiffs or engaged in "despicable conduct . . . with a

21   willful and conscious disregard" for others. *Id*. § 3294(c)(1). Acting with "oppression" means

22   "despicable conduct" subjecting Plaintiffs to "cruel and unjust hardship in conscious disregard" of

23   their rights. *Id*. § 3294(c)(2). And "fraud" means an "intentional misrepresentation, deceit, or

24   concealment . . . with the intention . . . of thereby depriving a person of property or legal rights or

25   otherwise causing injury." *Id*. § 3294(c)(3).

26        Yet Plaintiffs fail to offer evidence sufficient to establish any of these standards. As argued

27   above, Plaintiffs failed to establish, *inter alia*, 1) that Google acted with the intent to invade or

28   intrude on Plaintiffs' privacy, *supra* III(B)(4); 2) that Plaintiffs suffered any harm, injury, or a

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS

1   deprivation of legal rights, *supra* III(B)(5); or 3) that Google's conduct was "highly offensive,"

2   *supra* III(B)(3). They thus cannot meet the even higher standard to establish an entitlement to

3   punitive damages.

4       **D.    Affirmative Consent Precludes Liability On All Claims**

5       Consent is an absolute defense to Plaintiffs' claims and Plaintiffs have failed to produce

6   evidence sufficient for a reasonable juror to find that Plaintiffs did not affirmatively consent to

7   Google's conduct.

8       As explained above, Google's disclosures—the (s)WAA-off toggle, the Activity Control

9   Page, the Help Center article, the Privacy Policy, and the (s)WAA-revocation "are you sure" pop-

10  up—read as a whole clearly explain Google's collection of third-party app data and that (s)WAA-

11  off operates only to prevent Google from saving such third-party app data to the user's Google

12  Account.    Plaintiffs resist with cherry-picked language, bespoke redefinitions of "Google

13  Accounts" and disputes over the word "and."    None of these reasonably disproves consent.[11]

14  Because of the steps Google took to ensure end users were aware of its third-party app data

15  collection and the scope of what (s)WAA-off controls, no reasonable juror could find that Plaintiffs

16  did not consent.

17  **IV.    CONCLUSION**

18      For the reasons stated above, Google respectfully requests that the Court grant it judgment

19  as a matter of law as to all of Plaintiffs' remaining claims.

20

21

22

23

24

25

26

---

27  [11] Google understands this Court's ruling that Google may not argue that third-party app disclosures separately or jointly with Google's disclosures provided consent.  Google respectfully objects to
    that ruling.  To preserve the issue, Google proffers here that the terms of the third-party app
28  disclosures and consent from class members to those third party-app terms separately and/or
    combined with Google's disclosures establishes consent.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO                                                25

**GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS**

1    Dated: September 1, 2025                    Respectfully submitted,

2                                                COOLEY LLP

3

4                                                By: /s/ Jonathan Patchen

5                                                    Michael A. Attanasio
                                                     Benedict Y. Hur
6                                                    Simona Agnolucci
                                                     Eduardo E. Santacana
7                                                    Jonathan Patchen
                                                     Argemira Flórez
8                                                    Naiara Toker
                                                     Harris Mateen
9                                                    Thilini Chandrasekera
                                                     Isabella McKinley Corbo
10                                                   Chelsea Hu
                                                     Michael B. Morizono
11
                                                 *Attorneys for Defendant*
12                                               *Google LLC*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26

GOOGLE'S MOTION FOR JUDGMENT AS A
MATTER OF LAW
3:20-CV-04688-RS