**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
Alexander Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com
aboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
alanderson@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
Ryan Sila (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

ANIBAL RODRIGUEZ, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No.: 3:20-cv-04688-RS

**PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION TO DECERTIFY OR MODIFY THE CLASS (DKT. 698)**

Judge: Hon. Richard Seeborg
Trial Date: August 18, 2025

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARD ........................................................................................ 2

III.  ARGUMENT ..................................................................................................... 2

  A.  The Jury's Verdict Establishes that Plaintiffs' Classwide Evidence was "Capable" of
      Proving that Google Invaded Every Class Member's Privacy ........................................... 2

  B.  The Rule 23(b)(3) Classes Were Properly Certified ........................................................ 6

    1.  Rule 23(a)(2)'s Commonality Requirement Remains Satisfied .................................. 6

    2.  Rule 23(b)(3)'s Predominance Requirement Remains Satisfied ................................ 9

      a)  Reasonable Expectation of Privacy ........................................................ 9

      b)  Highly Offensive Conduct ................................................................. 11

    3.  Google's Other Arguments Are Without Merit .......................................................... 13

      a)  Plaintiffs Did Not Change Their Theory of "Offensiveness" ............................... 13

      b)  Google's Conduct Was "Highly Offensive" Regardless of Whether Google Did in
          Fact Use any Class Member's (s)WAA-Off Data to Identify Him or Her ............... 15

      c)  Proving "Offensiveness" Does Not Require Individualized Proof that Each Class
          Member's (s)WAA-Off Data Contained Any Particular Identifying Information ... 16

      d)  App Privacy Policies Do Not Raise Individualized Issues ..................................... 17

      e)  Common Issues Predominate for the iOS Class ................................................... 19

  C.  There Is No Basis to Decertify the Rule 23(b)(2) Classes ............................................. 21

  D.  There Is No Basis to Vacate the Jury's Verdict ........................................................... 22

IV.   CONCLUSION ................................................................................................ 23

Plaintiffs' Opposition to Google's Motion to Decertify or Modify the Class
3:20-cv-04688-RS

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Frasco v. Flo Health, Inc.*,
  2025 WL 2680068 (N.D. Cal. Sept. 17, 2025)................................................18, 21

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022).............................................................13

*Holley v. Gilead Scis., Inc.*,
  379 F. Supp. 3d 809 (N.D. Cal. 2019)................................................................9

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020)...............................................................6, 10, 12

*In re Google Referrer Header Priv. Litig.*,
  465 F. Supp. 3d 999 (N.D. Cal. 2020)...........................................................3, 17

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012).............................................................13

*M.H. v. Cnty. of Alameda*,
  2015 WL 894758 (N.D. Cal. Jan. 2, 2015)..........................................................12

*Mazzei v. Money Store*,
  829 F.3d 260 (2d Cir. 2016) .............................................................................5

*McCoy v. Alphabet, Inc.*,
  2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .......................................................13

*Murray v. Financial Visions, Inc.*,
  2008 WL 4850328 (D. Ariz. Nov. 7, 2008) ......................................................16

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) (en banc)......................................................2, 3, 6

*Opperman v. Path, Inc.*,
  205 F. Supp. 3d 1064 (N.D. Cal. 2016).........................................................10, 13

*Ortiz v. Los Angeles Police Relief Ass'n*,
  98 Cal. App. 4th 1288 (2002)..........................................................................10

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) .........................................................................22

*Peterson v. Aaaron's, Inc.*,
  2017 WL 364094 (N.D. Ga. Jan. 25, 2017) ..................................................15, 16

*Ruiz Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) .................................................................6

*Small v. Allianz Life Ins. Co. of N. Am.*,
  122 F.4th 1182 (9th Cir. 2024) ...............................................................22

*Tyson Foods v. Bouaphakeo*,
  577 U.S. 442 (2016) .........................................................................2, 4, 5

*Utne v. Home Depot U.S.A., Inc.*,
  2022 WL 1443338 (N.D. Cal. May 6, 2022)............................................1

*Wakefield v. ViSalus, Inc.*,
  2019 WL 3945243 (D. Or. Aug. 21, 2019),
  *aff'd* 51 F.4th 1109 (9th Cir. 2022) ....................................................4, 5

*Wallace v. City of San Diego*,
  479 F.3d 616 (9th Cir. 2007)……………………………………………...4

**Rules**

Fed. R. Civ. P. 23(a)(2) ............................................................................ 6

Fed. R. Civ. P. 23(b)(2) ...................................................................... 21, 22

Fed. R. Civ. P. 23(b)(3) ................................................................. 2, 3, 6, 9

Fed. R. Civ. P. 50(b)........................................................................... 2, 4, 5

Fed. R. Civ. P. 59 ..................................................................................... 5

# I.    INTRODUCTION

This case has always been about Google's uniform conduct and disclosures for an "on/off" button.  As Google put it in a pretrial discovery letter: "the central questions in the case are [1] what Google represented to users and [2] the actual technical functioning of the accused technology." Dkt. 361-19 at 3.  Plaintiffs agree.  This Court certified the classes because of the predominance of these and other common questions, the superiority of addressing these claims on a classwide basis, and the appropriateness of addressing injunctive relief classwide.

As this Court has previously held, "a motion for decertification will generally only succeed where there has been some change in the law or facts that justifies reversing the initial certification decision." *Utne v. Home Depot U.S.A., Inc.*, 2022 WL 1443338, at *5 (N.D. Cal. May 6, 2022) (Seeborg, C.J.).  Neither is present here.  This Court issued two prior certification rulings.  Dkt. 352, 384.  Since those rulings, there has been no change in the law or the facts that would warrant decertification.  After certification, Google sought summary judgment—on a classwide basis, based on common proof—and the parties then tried these claims based on common proof.

Plaintiffs presented the jury with classwide evidence that Plaintiffs had summarized for this Court in their pre-trial class certification motion, and in opposition to Google's motion for summary judgment.  Classwide evidence proved that, throughout the class period,  (1) Google represented to *all* class members that they needed to have (s)WAA "on" for Google to collect and save their third-party app activity and (2) Google nonetheless designed and used the accused technology (its SDKs) to collect and save third-party app activity from *all* class members' devices while class members had (s)WAA "off."  Based on that classwide evidence, the jury found as fact that Google invaded the privacy rights of *all* class members.

Google now seeks to undo the jury's verdict by arguing that there were "*no* common issues" at trial and "*no* common questions that can be resolved by class-wide proof."  Mot. at 4, 11 (emphases added).  In advancing this astonishing claim, Google repeats arguments that this Court already rejected prior to trial.  Now that the jury has returned its verdict, Google's

arguments are even weaker because of the deference owed to the jury's factual finding that Google harmed all class members and invaded their privacy rights. This Court should again reject these arguments and deny Google's decertification motion.

## II.    LEGAL STANDARD

Rule 23(b)(3) asks whether "common" questions, "*capable* of class-wide resolution," "predominate" over individual inquiries. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667–68 (9th Cir. 2022) (en banc) (emphasis added). The question under Rule 23(b)(3) is not whether the classwide evidence gives a sufficiently persuasive common answer; the question is only whether the classwide evidence is "capable" of giving a common answer. *Id.* Disputes over the "persuasiveness" of classwide evidence are "for the jury," not for the district court in deciding certification. *Id.* at 678.

This jury's factual finding—that Google harmed *all* class members and invaded their privacy rights—is entitled to deference. In *Tyson Foods v. Bouaphakeo*, the Supreme Court held that when asked to decertify a class after a trial, courts should apply the Rule 50(b)/summary judgment standard and treat the jury's factual findings as binding unless "no reasonable juror" could have made them. 577 U.S. 442, 459 (2016) (affirming denial of post-trial decertification motion); *see Olean*, 31 F.4th at 667 n.11 (clarifying that *Tyson Foods* applies to all class actions and is not limited to "wage and hour" cases).

## III.    ARGUMENT

### A.    The Jury's Verdict Establishes that Plaintiffs' Classwide Evidence was "Capable" of Proving that Google Invaded Every Class Member's Privacy

Google's motion does not even try to grapple with the jury's factual findings, which are now binding. This jury heard ample classwide evidence and in reliance on that classwide evidence this jury answered common questions for the entire classes. On its verdict form, the jury found as fact that "Plaintiffs" (a term defined to mean *all class members*[1]) had

---

[1] In its jury instructions, this Court defined the term "Plaintiffs" to mean "[a]ll of these people" in the "class." Dkt. 666 at 13 (Instruction No. 12). The Court then defined the two "classes" for the jury, using the same definitions that this Court had previously certified. *See id.*

"prove[d] . . . all the elements of" their "invasion of privacy" and "intrusion upon seclusion" claims. Dkt. 670 (verdict form). Those "elements" included: that all class members ("Plaintiffs") had an objectively reasonable expectation of privacy; that Google "intentionally intruded upon" all class members' "objectively reasonable expectation of privacy by its conduct"; that Google's conduct was highly offensive; that all class members "sustained injury, damage, loss, or harm"; and that Google's "conduct was a substantial factor in causing" that classwide "harm." Dkt. 666 at 19 (Instruction No. 18) (elements of "invasion of privacy"); *id.* at 21 (Instruction No. 20) (elements of "intrusion upon seclusion").

Google's motion is, in essence, an attempt to persuade this Court that the classwide evidence the jury heard was not actually sufficient to support the jury's classwide verdict. For example, much of Google's motion repeats its theme (which Google emphasized throughout the trial and at closing argument) that the evidence at trial did not prove that Google collected certain indisputably identifying information (name, email address, and phone number) from every class member. But "information need not be personally identifying to be private." *In re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d 999, 1009–10 (N.D. Cal. 2020); Dkt. 445 (Order Denying MSJ) at 10 (quoting same). And Google's motion ignores all of the classwide evidence demonstrating the kinds of data that Google actually *did* collect from every class member. *See infra*, at n.3 & accompanying text (summarizing this evidence). Google is arguing (implicitly) that all this classwide evidence, including Google's uniform disclosures and the app activity data Google did collect uniformly using the SDKs, was not sufficiently persuasive to find Google liable. The *persuasiveness* of classwide evidence, however, is a question for the jury. *Olean*, 31 F.4th at 678 (whether the classwide evidence is "persuasive" is a jury question).

The threshold for class certification under Rule 23(b)(3) is whether classwide evidence is "capable" of resolution on a classwide basis, including for example proving that all class members were harmed by the defendant's conduct. *Olean*, 31 F.4th at 684. Here, the jury's verdict establishes conclusively that the classwide evidence in this case was more than "capable" of doing exactly that.

1    The Supreme Court's decision in *Tyson Foods* affirming the denial of a post-trial

2  decertification motion demonstrates the importance of deference to factfinding by juries.  577

3  U.S. at 453–54.  The jury found that Tyson violated the Fair Labor Standards Act by failing to

4  pay the class members (Tyson's employees) for the time it took to put on protective gear at the

5  start of their shifts and then to take that gear off when their shifts were done.  *Id.*  Tyson did not

6  keep records of the time that class members actually spent "donning" and "doffing" their gear.

7  *Id.*  Without records available, the plaintiffs in *Tyson* proved the amount of time using the

8  testimony of an expert, who studied a representative sample of videos of 744 class members

9  donning and doffing their gear.  *Id.* at 450.  The "central dispute" at trial was whether the jury

10  was permitted to infer that the expert's 744 observations were representative, that is, that whether

11  "each employee donned and doffed for the same average time observed in [the expert's] sample."

12  *Id.* at 454.  After the jury's verdict, the defendant re-raised all the same factual disputes, over the

13  representativeness of the expert's sample, in its post-trial decertification motion.  *Id.*

14    The Supreme Court affirmed the district court's denial of the post-trial decertification

15  motion because it was *for the jury* to decide whether the expert's sample was sufficiently

16  probative.  Invoking the standard that applies at summary judgment (or, post-trial, under Rule

17  50(b)), the Supreme Court held that "[t]he District Court could have denied class certification on

18  this ground"—i.e., the non-representative nature of the expert's sample—"only if it concluded

19  that no reasonable juror could have believed that the employees spent roughly equal time donning

20  and doffing." *Id.* at 459.  In this case, Google has not even tried to demonstrate that no reasonable

21  jury could have relied on the classwide evidence, presented at this trial, to find Google liable for

22  violating all class members' privacy rights.  *See Wallace v. City of San Diego*, 479 F.3d 616, 624,

23  630 (9th Cir. 2007) (reversing district court's JMOL under Rule 50(b) because the evidentiary

24  record at trial "does not compel a conclusion contrary to that of the jury").

25    Another decision denying a post-trial motion to decertify is *Wakefield v. ViSalus, Inc.*,

26  2019 WL 3945243 (D. Or. Aug. 21, 2019) (Simon, J.).  In *Wakefield*, the jury found the defendant

27  liable for sending 1.8 million telemarketing phone calls to the class members in violation of the

Plaintiffs' Opposition to Google's Motion to Decertify or Modify the Class
3:20-cv-04688-RS

Telephone Consumer Protection Act.  The defendant's post-trial decertification motion identified numerous individualized issues that, according to the defendant, should have been relevant to the jury's liability verdict.  Like Google's motion here, the defendant's motion in *Wakefield* "involved factual questions both relevant to the (de)certification motion and an element of the class's merits claim." *Id.*  Judge Simon reiterated that

> "when a district court considers decertification (or modification) of a class after a jury verdict, the district court must defer to any factual findings the jury necessarily made unless those findings were 'seriously erroneous,' a 'miscarriage of justice,' or 'egregious,'" thus applying the same standard used in a motion for a new trial [under Rule 59] based on the weight of the evidence.

*Id.* (quoting *Mazzei v. Money Store*, 829 F.3d 260, 269 (2d Cir. 2016)).  Applying that Rule 59 standard, Judge Simon denied the post-trial motion to decertify by deferring to the jury's factual findings and to the classwide "reasonable inferences" that the jury was permitted to make based on the evidence presented at trial.  *Id.* at *6–*7 (deferring to the jury's "reasonable inference" that common evidence proved that defendant had called class members' home or cell phones, rather than their business phones); *id.* at *7 (deferring to jury's reasonable "inference" that the sample of phone messages played at trial was "representative").  The Ninth Circuit affirmed in an opinion that did not discuss the deference owed to the jury's factfinding.  51 F.4th 1109 (9th Cir. 2022).

The *Tyson Foods* decision holds that a jury's factual findings are binding, for purposes of a post-trial decertification motion, unless the defendant demonstrates that "no reasonable juror" could have made those findings (the Rule 50(b)/summary judgment standard).  *Wakefield* and the Second Circuit's decision in *Mazzei* hold that a jury's factual findings are now binding unless the Rule 59 "new trial" standard is met.  This Court should follow *Tyson Foods*, which is binding Supreme Court precedent that the Second Circuit overlooked when deciding *Mazzei* just three months later.  But regardless of which standard applies, Google has not met it.

1    In short: the jury's verdict establishes beyond question that the classwide evidence in this

2    case was at the very least "capable" of proving each of the elements of the privacy torts. *Olean*,

3    31 F.4th at 684.

4    **B.    The Rule 23(b)(3) Classes Were Properly Certified**

5    The jury's verdict, and the classwide evidence admitted at trial, together confirm the

6    appropriateness of the Court's Rule 23(b)(3) certification. As the Court ruled before, the two

7    privacy claims entail similar elements, asking whether "(1) there exists a reasonable expectation

8    of privacy, and (2) the intrusion was highly offensive." Dkt. 352 (Class Certification Order) at

9    8 (quoting *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 601 (9th Cir. 2020)).

10   These two questions were readily subject to classwide proof in part because (1) the "question of

11   whether a reasonable expectation of privacy exists is an objective one" (*id.*), and (2) the "central

12   inquiry" on offensiveness is "whether a *reasonable person* would find the intrusion by Google

13   highly offensive" (*id.* at 10 (emphasis in original)). Even with its third bite at the apple, Google

14   neither identifies any legal change that could support decertification nor points to any change in

15   facts that warrants decertification. Ample common evidence at trial supports the jury's verdict

16   on each element of Plaintiffs' privacy claims.

**1.    Rule 23(a)(2)'s Commonality Requirement Remains Satisfied**

18   Google's Rule 23(a)(2) commonality argument is not credible. Google concedes that

19   Plaintiffs "need only identify *one* common question" to meet the Rule 23(a)(2) commonality

20   requirement. Mot. at 3 (emphasis added); *see Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d

21   1125, 1133 (9th Cir. 2016) (alterations adopted) ("[E]ven a single common question will do.").

22   Yet Google now asserts that there are "no common issues." Mot. at 4, 11. Taking Google's

23   argument to its logical end, if an "on/off" privacy switch that was set to "off" for every class

24   member is incapable of class treatment for want of commonality, Google posits a world where

25   privacy class actions are incapable of classwide adjudication. That cannot be right. And here

26   the jury found just the opposite in its now-binding verdict, in which the jury found Google liable

27   *classwide* for each element of the privacy torts. Even if there were a basis for this Court to

second-guess the jury's finding of classwide liability (and Google supplies none), this Court should not do so because the record at trial demonstrated that there are many common questions.

This case has always been replete with common questions. As Google put it, in a discovery letter sent to Plaintiffs: "the central questions in the case are [1] what Google represented to users and [2] the actual technical functioning of the accused technology." Dkt. 361-19 (Exhibit 17 to Plaintiffs' class certification motion) at 3. After certification, Google moved for summary judgment based on common proof, asking the Court to resolve those common questions in Google's favor. Dkt. 383. At trial, Google also presented the jury with common proof and sought a classwide verdict in Google's favor.

The Court's prior certification order recognized many common questions that Plaintiffs proposed for classwide resolution. For example, the Court highlighted how Google made a "common representation to users" about what happens when (s)WAA is off. Dkt. 352 at 10; *see also* Dkt. 384 (order clarifying class definitions) at 5 (noting that "Google's representations" are "common to the class"). As another example, the Court ruled that whether class members "had an objective, reasonable expectation of privacy based on Google's representations about the sWAA button" is "a question capable of resolution class-wide." Dkt. 352 at 10. These are just some of many examples, in a trial which turned on Google's classwide refusal to honor its own "on/off" privacy switch.

The classwide proof at trial was more than sufficient to enable the jury to answer these common questions for all class members throughout the class period. For example, the parties (both Plaintiffs and Google) presented the jury with uniform disclosures that applied to all class members throughout the class period; those disclosures did not change based on a setting, location, or any other individualized issue. Indeed, Plaintiffs and Google even ***stipulated*** to an agreed-to set of ***uniform*** Google disclosures that were admitted into evidence. Tr. 1840:7–1841:17.[2] These uniform disclosures promised users they could "control what we collect" and

---

[2] All references to "Tr." are to the trial transcript. The portions of the trial transcript referenced in this brief are attached as Exhibit 1 to the concurrently filed Declaration of Mark Mao.

1    invited users to exercise that control by using Google's "privacy controls" including (s)WAA.

2    PX-62 (Privacy Policy) at 1, 8.  Google likewise told users that "Web & App Activity must be

3    on" for Google to "save information like" "your activity on [] apps that use Google services."

4    PX-113 (WAA Help Page).  That common proof enabled the jury to answer a common question:

5    did class members have an objectively reasonable expectation of privacy in their app activity

6    data when (s)WAA was turned off?

7            In addition to the common, classwide disclosures, Plaintiffs also presented the jury with

8    internal Google documents and testimony by fact and expert witnesses that demonstrated

9    Plaintiffs' objectively reasonable expectation of privacy.  Plaintiffs introduced a Google-

10   commissioned survey about (s)WAA in which "[a]ll participants expected turning off toggle to

11   stop their activity from being saved."  PX-2 at 20.  Plaintiffs also introduced Google employees'

12   descriptions of how a reasonable user would understand what it means to save data outside of a

13   person's "Google Account."  *See, e.g.*, PX-3 at 1 ("What you are stating is WAA (or any of the

14   other controls) does not actually control what is stored by Google, but simply what the user has

15   access to.  This is really bad…. In this case, the user has a false sense of security that their data

16   is not being stored at Google, when in fact it is.").

17           Relevant to the offensiveness of Google's conduct, common evidence proved that Google

18   intentionally hid its misconduct from users.  *See, e.g.*, PX-4 at 2 ("In English, we're intentionally

19   vague because the technical details are complex and it could sound alarming to users (for

20   something that we feel shouldn't sound alarming)"); PX-42 at 1 (conceding that Google's "goal"

21   is "giving users a *sense* of the system as working to their benefit" but "without actually improving

22   any of the underlying condition"); Tr. 1066:11–14 (Heft-Luthy) ("Q: Well, isn't it the case, sir,

23   that at this time Google was trying to convince its users that they had control over the data that

24   Google collected and used?  A: I would say that would be fair.").  Plaintiffs offered many exhibits

25   in which Google employees uniformly criticized Google's disclosures and its collection of

26   (s)WAA-off data.  *See, e.g.*, PX-3 at 2 ("We need to change the description to indicate that even

27   with the control off, Google retains this data and uses it for X purposes").

1    And Google's "uniform conduct" (Dkt. 352 at 11) includes its failure to provide any

2    option for users to avoid having their app activity data collected by Google. The Founder of

3    Google's Privacy and Data Protection Office, Eric Miraglia, could not identify "any switch at the

4    device or account level where a user would have confidence in not having activity tracked in any

5    app." Ex. 2 (PX-388, deposition designation clip report) at 128:21–129:03. Relatedly, users

6    have no option to delete their (s)WAA-off data—another fact confirmed by testimony from

7    Google's employees. Tr. 311:22–312:5, 313:16–17 (Monsees); Tr. 1214:3–8, 1253:17–25

8    (Ganem). These are just some of the many common questions that the jury answered based on

9    classwide evidence.

10    **2.    Rule 23(b)(3)'s Predominance Requirement Remains Satisfied**

11    Google's predominance argument also fails. For these privacy claims, common questions

12    predominated, both at class certification and at trial. This Court should reject Google's after-trial

13    effort to recast this case as one where individual issues somehow predominate and classwide

14    treatment is no longer a superior method to resolving these claims.

15    **a)    Reasonable Expectation of Privacy**

16    Google barely addresses this element, relying instead on a footnote to "preserve" the

17    "prior arguments" Google raised at class certification. Mot. at 4 n.1. But Google cannot preserve

18    anything in a footnote. "'Arguments raised only in footnotes . . . are generally deemed waived'

19    and need not be considered." *Holley v. Gilead Scis., Inc.*, 379 F. Supp. 3d 809, 834 (N.D. Cal.

20    2019) (quoting *Estate of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014)). Having

21    failed to make these arguments in its opening brief, Google cannot do so for the first time in its

22    reply brief. *See id.* These "prior arguments" have therefore been waived.

23    In any event, Google's arguments that the "reasonable expectation of privacy" element

24    requires individualized inquiry also fail on the merits—for all the reasons Plaintiffs gave in their

25    pre-trial briefing in support of class certification. *See* Dkt. 333 (Plaintiffs' class certification

26    reply) at 4. As this Court recognized before, this is an *objective* standard that does not require

27    *individualized* consideration of each class members' feelings about privacy. Dkt. 352 at 8;

1   *accord Ortiz v. Los Angeles Police Relief Ass'n*, 98 Cal. App. 4th 1288, 1305–06 (2002) ("A

2   reasonable expectation of privacy is an objective entitlement founded on broadly based and

3   widely accepted community norms . . . ." (internal quotation marks and citation omitted)).

4        Nothing has changed that warrants decertification.  The Court's jury instructions were

5   consistent with and confirm this objective standard.  To determine whether class members had

6   "an objectively reasonable expectation of privacy," the jury was  instructed to "consider, among

7   other factors . . . the customs, practices, and physical or digital settings surrounding Google's

8   conduct," "the extent to which other persons had access to the data at issue" and "the means by

9   which the intrusion, if any, occurred."  Dkt. 666 at 19–20 (Instructions Nos. 18 & 19).  Google

10   does not seriously think otherwise—in fact, Google *agreed* to this objective standard when it

11   proposed a version of this instruction that was substantially similar to the instruction this Court

12   gave.  *See* Dkt. 595 at 58 (Google's Proposed Instruction No. 36).

13        The jury's verdict on this element is especially worthy of deference, since reasonable

14   expectations of privacy are based on, among other considerations, "community norms of

15   privacy."  *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1079 (N.D. Cal. 2016) (internal

16   quotation marks and citation omitted).  Those community norms are comprised of "customs and

17   habits [that] are very much in flux" as technology rapidly evolves.  *Id.*  The jury's "function" is

18   to "reflect[]" and then apply "the community's standards as they relate to the privacy of

19   information" in this technological era.  *Id.* at 1080.  "A judge should be cautious before

20   substituting his or her judgment for that of the community."  *Id.*

21        Ample classwide evidence at trial supported the jury's finding that class members had an

22   objectively reasonable expectation of privacy in their (s)WAA-off data.  At issue is a binary

23   "on/off" switch.  And Google through its "privacy disclosures" "set an expectation that"

24   (s)WAA-off user data "would not be collected, but then collected it anyway."  *Facebook*

25   *Tracking*, 956 F. 3d at 602.  Google's own researcher predicted that users would "believe that

26   turning off WAA will result in no data being collected from their activity."  PX-9 at 6.  The

27   concerns raised by Google's employees bolster the reasonableness of class members' expectation

1  of privacy. *See, e.g.*, PX-3, PX-6. This core dispute regarding the existence of a reasonable

2  expectation of privacy was decided by the jury based on common proof.

### b)    Highly Offensive Conduct

4  Consistent with the Court's certification ruling, the classwide evidence at trial also

5  confirmed that the question of whether Google's conduct was highly offensive was "capable of

6  resolution class-wide" where the "relevant inquiries" were "primarily Google's uniform

7  disclosures and users' uniform conduct." Dkt. 352 at 11. The Court instructed the jury that

8  highly offensive conduct means "a shocking or outrageous breach of social norms regarding

9  online data." Dkt. 666 at 19, 21 (Instructions Nos. 18, 20). As this Court ruled before, the

10  offensiveness inquiry is an objective one that asks whether a "reasonable person" would find the

11  conduct highly offensive. Dkt. 352 at 10; *see also* Dkt. 445 at 10 (denying summary judgment

12  based on the same objective standard).

13  At trial, the jury answered this common question with classwide evidence proving that

14  Google's conduct was highly offensive. Google made uniform representations that users were

15  in control of their data. Classwide evidence proved that class members' (s)WAA settings were

16  all set to "off." And classwide evidence also demonstrated the kinds of data that Google's SDKs

17  transmitted to Google by default for every single app in which those SDKs were found: the

18  device's location, certain personal identifiers, and other "default" data, including the particular

19  screen within apps that users chose to view.[3] The jury also saw internal Google documents

20  proving that Google persisted in collecting and exploiting this valuable data notwithstanding

21  employee concerns that users were being misled. *See, e.g.*, PX-3 at 2 ("The WAA and other

22  controls imply we don't log the data, but obviously we do. We need to change the description to

23  indicate that even with the control off, Google retains this data and uses it for X purposes."); Tr.

24  1463:13–1464:13 (Ruemmler agreeing that Google makes money "when users turn off their

25  WAA button" while discussing PX-3); PX-6 at 49 ("Often the way for these teams to make

26

27  [3] *See* Tr. 596:6–599:4, 600:6–601:6, 687:3–17; 704:6–17, 734:24–735:4, 738:25–739:4 (Hochman); Tr. 1206:13–20; 1207:17–22 (Ganem); Tr. 1699:1–23, 1733:20–25 (Black).

Plaintiffs' Opposition to Google's Motion to Decertify or Modify the Class
3:20-cv-04688-RS

money is to use data in some dubious way").  Google provided no way for any class member to opt out of Google's inescapable tracking web, which spans "97 percent" of the "top" Android apps and "54 percent" of the "top" iOS apps.  PX-388 (deposition designation clip report) at 128:21–129:03 (Miraglia); Tr. 586:4–10 (Hochman).  Nor did Google provide any option for class members to delete the data Google had already collected.  Tr. 311:22–312:5 (Monsees); Tr. 1214:3–8, 1253:17–25 (Ganem).

Here again, the jury's classwide finding of offensiveness is especially worthy of deference.  That is because "[t]he American jury has historically served the function of the community's conscience.  If the jury in a tort case believes that the defendant's conduct does not meet the community's standards of reasonableness, then its verdict is a way of articulating those standards."  *M.H. v. Cnty. of Alameda*, 2015 WL 894758, at *14 (N.D. Cal. Jan. 2, 2015).

Google cites several cases for the proposition that "[t]he type of data that is collected is *a* factor" that courts or the jury should consider in assessing offensiveness.  Mot. at 5 (emphasis added).  Plaintiffs agree with the uncontroversial proposition that the type of data at issue is *a* factor.  The classwide evidence proved at trial that Google collected from all class members, among other default data, certain identifiers that Google's own Privacy Policy deemed "personal information."  *Supra*, at n.3 & accompanying text; *infra*, § III.B.3.a.

But Google appears to go much further than the cases would support and to argue that the specific data collected from each class member is the *only* thing that matters in assessing the offensiveness of Google's conduct. *See* Mot. at 5–9.  That assertion is contradicted by binding circuit precedent.  *See Facebook Tracking*, 956 F.3d at 606.  Indeed, Google's own proposed alternative jury instruction would have directed the jury to consider many other factors, besides the specific types of data collected, when assessing the offensiveness of Google's conduct.  Dkt. 595 at 63 (Google's Proposed Instruction No. 37).  And the instructions that this Court actually gave to the jury did not require the jury to make any specific findings about the types of information collected.  Dkt. 666 at 19, 21 (Instructions Nos. 18, 20).

Google does not cite any case holding that the offensiveness of data collection requires individualized inquiry into the specific types of data collected nor into any other individual issue. Instead, Google relies on decisions that Google previously cited (including in its prior class certification opposition) in which district courts found, as a matter of law, that plaintiffs' allegations did not rise to the level of highly offensive conduct. *See* Mot. at 5 (citing *McCoy v. Alphabet, Inc.*, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012)); Dkt. 329 at 13–14 (Google certification opposition citing *Hammerling* and *iPhone Application*); Dkt. 381 at 20 (Google summary judgment motion citing *McCoy*). Those decisions are not new legal developments, and they do not warrant decertification. Two of those decisions are distinguishable on their facts,[4] and the third gave no explanation for its conclusion.[5] None of those decisions indicated that the "offensiveness" question required individualized inquiry into the type of data collected or into any other issue.

### 3.    Google's Other Arguments Are Without Merit

#### a)    Plaintiffs Did Not Change Their Theory of "Offensiveness"

Google contends that "Plaintiffs offered a new theory of offensiveness at trial," which Google terms the "puzzle piece" theory. Mot. at 5. Nothing about this theory was new or otherwise provides any basis for decertification.

Google misconstrues the purpose for which Plaintiffs used Mr. Rodriguez's testimony. Mr. Rodriguez in his direct testimony used the phrase "puzzle piece" to describe why he believes

---

[4] As this Court pointed out, *Hammerling* did not involve affirmative promises not the collect certain data, while Google's disclosures in this case affirmatively "describe data that Google will *not* save when (s)WAA is off." Dkt. 445 (Order Denying MSJ) at 10. In *McCoy*, the court dismissed the privacy claim because the plaintiff alleged nothing more than that the defendant's collection of the "frequency and duration of use of certain apps" was highly offensive. 2021 WL 405816, at *8. That case, like *Hammerling*, also did not involve affirmative misrepresentations by the defendant. *Id.* at *7.

[5] As another court in this district observed, the offensiveness analysis in *iPhone Application* was "without explanation," and that opinion "did not explain how" its conclusion "was consistent with California's community privacy norms." *Opperman*, 205 F. Supp. 3d at 1078.

(s)WAA-off data taken by Google qualifies as "personal information" according to Google's own definition of that term in its Privacy Policy. Tr. 811:3–812:22. Google argued in its opening statement that it should not be found liable because (s)WAA-off data is not "personal." Tr. 236:15–19 (Google's Opening: "This case is about non-personal data, data that isn't tied to any user's identity. It is de-identified data."). Mr. Rodriguez responded to Google's argument by explaining:

> Q. Based on your involvement in this case, your work on this case, what are the types of data that Google collects when WAA or sWAA is turned off?
>
> A. So it's -- to me, the way I look at it is it's like pieces of a puzzle, in a sense. So one piece, they have my device ID. Another piece would be the apps I downloaded, which ones I opened. Another one would be gender. Another one would be age. There's a lot of other ones as well that kind of just, when you put it all together, it becomes -- it is me.
> . . .
> Q. Do you believe that information is personal?
>
> A. Very personal.

Tr. 811:9–812:22. Mr. Rodriguez was referring to the exact same information that Google's own Privacy Policy defines as "personal information." In general, the Privacy Policy defines "personal information" as any data that "*can be reasonably linked*" to the user "by Google." PX-67 at 22 (emphasis added). The Privacy Policy also gives specific examples of "personal information" which match Mr. Rodriguez's testimony exactly: "unique identifiers tied to the browser, application, *or device* you're using." *Id.* at 16 (emphasis added). This definition of "personal information," in Google's Privacy Policy, also featured in other witnesses' examinations. *See, e.g.*, Tr. 1521:22–1522:3 (crossing Mr. Ruemmler with this definition); Tr. 553:7–554:3 (Plaintiff Santiago discussing this definition).

Mr. Rodriguez's testimony at trial was consistent with what Plaintiffs have argued throughout this litigation: (s)WAA-off data is "personal information," as defined in Google's

1  Privacy Policy, because it *can* be linked to users' Google Account information. *Compare, e.g.*,

2  Dkt. 381 (Google's MSJ) at 2 (arguing that (s)WAA-off data is "non-personal information"),

3  *with* Dkt. 397-1 (Plaintiffs' Opp'n to Google's MSJ) at 3–4, 17 (relying on the Privacy Policy

4  and California law to argue that (s)WAA-off data is "personal" because it "can be reasonably

5  linked" to a user's Google Account). This Court's order denying Google's summary judgment

6  motion agreed with Plaintiffs' position and found that "a reasonable juror could view the

7  (s)WAA-off data" as "comprising a user's personal information." Dkt. 445 at 8 (citing Cal. Civ.

8  Code § 1798.140). Plaintiffs made the same argument to the jury, relying on the same classwide

9  evidence.

10            **b)     Google's Conduct Was "Highly Offensive" Regardless of
                     Whether Google Did in Fact Use any Class Member's
11                   (s)WAA-Off Data to Identify Him or Her**

12        The fact that (s)WAA-off data *could* be used to identify the user is relevant to

13  "offensiveness" because it proves that Google's collection of this data violated Google's Privacy

14  Policy, by collecting "personal information" according to its own definitions.

15        Plaintiffs proved (through classwide evidence) that Google was *capable* of linking class

16  members' (s)WAA-off data to class members' identities. Dr. Hochman testified: "The [(s)WAA-

17  off] data, by its nature, by being rich data, full of identifiers and full of details about the person,

18  lends itself to reidentification, and preventing reidentification is a very hard problem. And as a

19  result, my opinion is that nothing stops Google from reidentifying it." Tr. 738:25–739:4; *see*

20  *also* Tr. 600:6–601:6 (Dr. Hochman describing how Google by default collects unique device

21  identifiers tied to the "phone [] in your pocket" as well as app instance identifiers, which are "a

22  serial number that identifies your copy of the app"); Tr. 1699:1–23 (Google's technical expert

23  Dr. Black admitting that Google collects same).

24        Google cites no authority holding that, for purposes of assessing the "offensiveness" of

25  Google's conduct, a factfinder must determine whether Google did in fact use each class

26  member's data to actually identify them. Instead, Google relies on out-of-district decisions that

27  applied non-California law to very different facts. In *Peterson v. Aaaron's, Inc.*, the putative

class's claims required individualized inquiry into "the particular circumstances of each class member" such as whether the individual class member used a personal or work computer and whether a certain spyware function was activated on the member's computer. 2017 WL 364094, at *8–10 (N.D. Ga. Jan. 25, 2017). And in *Murray v. Financial Visions, Inc.*, the putative class's claims required individualized inquiries into the contents of each class member's emails. 2008 WL 4850328, at *5 (D. Ariz. Nov. 7, 2008).

No such individual inquiries were required to find Google's conduct highly offensive in this case. Here, the jury was presented with classwide evidence of Google's uniform representations and uniform conduct, which amply proved offensiveness on a classwide basis regardless of whether Google actually linked any class member's app activity data to that class member's Google Account identifier. All class members had their (s)WAA toggle set to off, and none of Google's cases address how such a binary setting can be capable of individualized issues. Plaintiffs' proof properly focused on the common evidence, which was more than sufficient to prove that Google's conduct was highly offensive.

**c)**     **Proving "Offensiveness" Does Not Require Individualized Proof that Each Class Member's (s)WAA-Off Data Contained Any Particular Identifying Information**

Relatedly, Google argues on page 9 of its motion that the classes must be decertified because Plaintiffs did not present evidence at trial that every single class member's (s)WAA-off data contained the specific kinds of identifying information Mr. Rodriguez discovered in his own (s)WAA-off data that Google produced in this case, namely: his name, email, and phone number. Google now says that the inclusion of that data in Google's logs was "inadvertent" because "this is not how the collection of (s)WAA-off data is designed to work." *Id.* In its closing argument at trial, Google made the same statistical arguments that it now rehashes on pages 9 and 10 of its motion. *See* Tr. 1929:2–9. Google misses the point.

The point of this evidence—that Mr. Rodriguez's data contained his name, phone number, and email address—is to prove uniform *failures* by Google that are common across all class members. Google *uniformly* did not take steps to prevent such identifying data from being

16

Plaintiffs' Opposition to Google's Motion to Decertify or Modify the Class
3:20-cv-04688-RS

1   collected in the first place, and Google *uniformly* did not take steps to prevent such data from

2   being saved in its logs.  *See* Tr. 688:5–11, 702:11–21 (Dr. Hochman describing how Google does

3   not employ any "safeguard" to prevent the collection of names, phone numbers, and email

4   addresses in (s)WAA-off data).  Google's Head of Analytics admitted on the stand that Google's

5   collection of Mr. Rodriguez's name, phone number, and email address "bothers me" and "is a

6   violation of our policy" that "shouldn't be happening."  Tr. 1142:1–14 (Ganem).  Therefore, it

7   does not matter whether this kind of identifying information (name, email, phone number) is

8   "rare" in (s)WAA-off data, as Google insists on page 9 of its motion.  The point is that Google's

9   failure to take adequate steps to prevent the collection and saving by Google of names, phone

10  numbers, and email addresses is a classwide failure that supports the jury's finding that Google's

11  conduct was highly offensive.

12      As discussed above, the Court's instruction did not require the jury to find that the classes'

13  (s)WAA-off data contained any particular types of information.  Dkt. 666 at 19, 21 (Instructions

14  Nos. 18, 20).  Google did not challenge that instruction, which is in any event fully in line with

15  California law.  *See In re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d at 1009–10

16  ("[I]nformation need not be personally identifying to be private.").

17          **d)      App Privacy Policies Do Not Raise Individualized Issues**

18      Google next recycles another argument this Court rejected at the class certification

19  stage—that the existence of different app privacy policies creates individualized issues.  Mot. at

20  7.  According to Google, the offensiveness inquiry "requires individualized proof as to the

21  disclosures from each third-party app that used GA4F during the class period to identify what

22  their disclosures represented to users and then mapping those disclosures to each class member."

23  *Id.* at 8.  Google said almost the same thing in its class certification opposition, when it claimed

24  that "the classes received disparate, relevant disclosures from millions of apps" and that "the fact-

25  finder will have to evaluate which of the various sources of disclosure each individual saw."  Dkt.

26  323 at 9, 23.  This Court correctly rejected that argument, reasoning that "the relevant question

27  concerns *Google*'s disclosures about the sWAA button, not third-party disclosures to users.  To

Plaintiffs' Opposition to Google's Motion to Decertify or Modify the Class
3:20-cv-04688-RS

1  the extent Google had a policy that required third party apps to disclose *Google's* policies to

2  users, that evidence may be applied across the class." Dkt. 352 at 17.

3        The jury rejected this argument, too.  At trial, Google argued, over and over again, that

4  "[e]very single app that uses Google Analytics is required to tell every single one of their users

5  about Google Analytics and how it collects and uses data." Tr. 1941:13–15 (closing argument);

6  *see also, e.g.*, Tr. 233:11–16 (opening).  The jury was not persuaded, and Google offers no reason

7  to set aside the jury's classwide liability finding.

8        Google's effort to relitigate this issue falls particularly flat because, as this Court

9  acknowledged, Google "conceded that no third-party app disclosure to users discussed WAA or

10  (s)WAA." Dkt. 587 (*MIL* Order) at 6–7.  So there simply *are no* app privacy policies that

11  informed users that Google collects their data even when (s)WAA is off.  Because none of these

12  third-party app privacy policies discussed WAA or (s)WAA, there was no reason for the jury to

13  consider them.  Google's argument on this point is especially meritless given that Google

14  successfully moved *in limine* to limit Plaintiffs' reliance on "evidence and argument regarding

15  the compliance or lack thereof of third-party applications with Google's disclosures." Dkt. 528

16  at 3; *see* Dkt. 587 (*MIL* Order) at 17–18.  And in fact, neither party entered into evidence any

17  individual app privacy policy.

18        This Court should reject Google's "post-trial musings" about hypothetical differences

19  among third-party app policies, which boil down to "rank speculation that is completely

20  untethered to the evidence admitted at trial." *Frasco v. Flo Health, Inc.*, 2025 WL 2680068, at

21  *11 (N.D. Cal. Sept. 17, 2025) (denying post-trial motion to decertify class in a privacy case).

22  Google's failure to cite "any relevant evidence adduced at trial" further "underscores that the

23  decertification request is in reality an improper motion for reconsideration under another name."

24  *Id.*

25        Nor does it matter whether a class member "was okay with Target having analytics data"

26  or whether someone "allow[s] other SDKs to collect the same data." Mot. at 8.  That argument

27  misconstrues Plaintiffs' claims.  Plaintiffs have not sued Target, nor some "other SDK" provider

like Meta. *Id.* This case is about "on" and "off" toggles that *Google* presented to Google account holders, and about what Google (and its own CEO) told users about how those toggles controlled "whether" Google collected their data. Ex. 3 (PX-45, clip report for Sundar Pichai Congressional testimony) at 24:19–25:02. In this Court's words, "the consent question in this case" turns on whether it was "objectively reasonable for Plaintiffs to expect that turning WAA or (s)WAA off would stop Google from collecting their data through third-party apps." Dkt. 587 (*MIL* Order) at 7. Put another way, "[t]he consent question in this case revolves around the relationship between Google and Plaintiffs, not the apps and Plaintiffs nor Google and the apps." *Id.* And if Google is merely rearguing that third-party collection of class members' data diminishes the class members' reasonable privacy expectation or somehow renders Google's conduct less offensive, the jury soundly rejected those arguments by finding that the class members in fact had a reasonable privacy expectation in their (s)WAA-off data and that Google's conduct was in fact highly offensive.

### e)    Common Issues Predominate for the iOS Class

Google's final argument is that individualized issues predominate for the iOS class because of Apple's App Tracking Transparency Program ("ATT"). Mot. at 10. This feature causes a popup screen to appear on the user's phone which contains the prompt: "Ask app not to track." Tr. 1295:18–1296:4 (Langner); *see* Dkt. 473-4 ¶ 103 (image of prompt pasted into Dr. Black's expert report). If the user clicked "yes" then the Apple iOS system supposedly prevented the phone from *transmitting Apple's* unique device identifier (called an IDFA) to the app or to Google. Tr. 1295:25–1296:4 (Langner). Google continued to collect all other (s)WAA-off data besides that *one* identifier. *See id.* (Google employee Belinda Langner describing how ATT merely impacts Google's access to the IDFA device identifier); *see also id.* at 1728:15–25; 1730:15–21; 1731:2–19 (Dr. Black confirming that Google would use "something else" to perform "conversion tracking"). Apple's ATT popup screen did not say anything about "(s)WAA" or "Google," let alone inform users that Google collects data from users regardless of their (s)WAA status and regardless of how they respond to the prompt.

1    Google's argument about Apple's ATT was raised and rejected in the pre-trial

2    certification order.  Dkt. 352 at 16 (rejecting this argument as "not enough to defeat a finding of

3    predominance").  In this Court's words, "this issue still warrants class treatment because device-

4    level settings presumably apply uniformly across all iOS devices or all Android devices."  *Id*. at

5    17.  Nothing in the evidence at trial provides any reason to reconsider this determination.

6        Just as the Court had predicted, the parties relied at trial on classwide evidence to show

7    the classwide impact of Apple's ATT initiative.  The ATT program (and its prompt to users)

8    were uniform across the class.  The jury appropriately found that Apple users who clicked "no"

9    to the prompt ("Ask app not to track") are still in the class.  Disclosures shown to users on third-

10   party apps were not at issue in this case.  *Supra*, § III.B.3.d (explaining why third-party app

11   privacy policies were not relevant).  The relevant point is that all class members had their *Google*

12   setting ((s)WAA) set to "off."

13       Classwide evidence also showed the effect of Apple users clicking "yes" to the ATT

14   prompt (i.e., asking the "app not to track").  Clicking "yes" caused every class member's device

15   to transmit (slightly) less information to Google and to the app—specifically, these users'

16   (s)WAA-off data no longer contained Apple's IDFA device identifier.  But for purposes of this

17   motion, that does not create an individualized issue either.  Google continued to collect all of

18   these users' *other* app activity data and to make use of it to monetize advertisements through

19   "conversion modeling."[6]  Plaintiffs' damages expert was therefore able to include these Apple

20   users in his damages calculations.  *See* Tr. 943:17–944:14, 987:11–22 (Plaintiffs' damages expert

21

22   _____

23   [6] Mr. Ganem agreed that Google uses "conversion modeling" for "conversion event[s] that . . .
     can't [be] tie[d] directly to a device ID [by] us[ing] other things that [Google] know[s] about that
24   device . . . to infer that it is the same" device that saw a relevant ad.  Tr. 1212:9–17.  Ms. Langner
     also conceded that Google uses "a variety of modeling techniques to try to tie those two
25   devices"—*i.e.*, the device that saw the ad and the device that bought the product—"even though
     [Google] do[esn't] have a specific identification."  Tr. 1341:6–16; *see also* Tr. 1730:15–19,
26   1731:2–19 (similar testimony from Google's technical expert Dr. Black, including an admission
     that Google "can use conversion modeling" for (s)WAA-off users who click "yes" to the ATT
27   prompt).

1  Mike Lasinski testifying that Google continues collecting (s)WAA-off data even from users who

2  click "yes" to the ATT prompt and that Google still tracks conversions for these users).

3      Google next contends on pages 9 and 10 of its motion that class members' individual

4  answers to the ATT prompts are necessary to evaluate Google's consent defense. Not so. The

5  ATT popup is not a Google disclosure and does not say anything about what *Google* collects or

6  does not collect. The jury was correctly instructed to decide the consent defense from "the

7  perspective of an objectively reasonable user reading *Google's* disclosures." Dkt. 666 at 22

8  (Instruction No. 21) (emphasis added); PX-3 at 1. The class members' individual answers to the

9  ATT prompts on their phones are not relevant to the jury's determination of whether those class

10 members consented to *Google* collecting their (s)WAA-off data.

11     Furthermore, even if those answers were relevant, Google could have made that argument

12 at trial but chose not to. Even now, Google only offers speculation that the answers to the ATT

13 prompt "may" affect a jury's evaluation of whether these class members consented to Google's

14 collection of their (s)WAA data. Mot. at 10; *see also id.* ("it may be the case that . . ."); *id.* at 11

15 ("users may have understood . . ."). Such "[s]peculation about events or issues for which a

16 defendant has not offered evidence [at trial] will not do." *Flo Health*, 2025 WL 2680068, at *8

17 (citation omitted).

18 **C.    There Is No Basis to Decertify the Rule 23(b)(2) Classes**

19     Google presents no separate argument regarding certification of the injunctive classes

20 under Rule 23(b)(2). Google's only Rule 23(b)(2) argument is a meritless assertion that there

21 are "no common issues" and that trial somehow "confirmed there are no common questions that

22 can be resolved by class-wide proof." Mot. at 4. As explained above, this is incorrect. Google

23 has not addressed the other requirements for Rule 23(b)(2) certification, which means Google

24 has waived any challenge to those requirements. Google identifies no change in either the law

25 or facts that would warrant decertification of the Rule 23(b)(2) classes.

26     The evidence at trial confirmed the appropriateness and importance of the Court's Rule

27 23(b)(2) certification. Rule 23(b)(2) "ordinarily will be satisfied when plaintiffs have described

1    the general contours of an injunction that would provide relief to the whole class." *Parsons v.*

2    *Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014).  This Court already held that Plaintiffs did just

3    that: at class certification, Plaintiffs "convincingly identified the 'general contours' of the class-

4    wide injunctive relief they seek."  Dkt. 352 at 19.  Based on the common proof presented at trial,

5    and consistent with the jury's liability findings, Plaintiffs now seek the same relief they identified

6    at class certification.  Dkt. 700 (Plaintiffs' motion for permanent injunction) at 9.[7]

7        Google's lone case supports Plaintiffs' position: *Small v. Allianz Life Ins. Co. of N. Am.*,

8    122 F.4th 1182, 1201 (9th Cir. 2024).  According to the Ninth Circuit, when class members seek

9    "uniform" relief from "practices that are generally applicable to the class as a whole," Rule

10   23(b)(2) certification is "unquestionably" appropriate.  *Id.* (internal quotation marks and citation

11   omitted).  Here, Plaintiffs for all class members seek uniform relief from Google's generally

12   applicable practice of collecting, saving, and exploiting class members' (s)WAA-off app activity

13   without consent.  This is precisely where Rule 23(b)(2) is most applicable.

14       Injunctive relief for all class members is especially important in this case.  Google's own

15   employees recognize that they "are not taking [their] responsibility as a steward of user data

16   seriously" (PX-6 at 63) and that they "really resist the idea that anyone can tell us what to do"

17   (PX-6 at 50).  Indeed, Google continues to engage in its highly offensive conduct.  Dkt. 700

18   (Plaintiffs' motion for permanent injunction) at 10–11.

19   **D.    There Is No Basis to Vacate the Jury's Verdict**

20       Finally, because decertification is unwarranted, the Court should reject Google's request

21   to vacate the jury's verdict.  Mot. at 11.  Further, there is no reason to vacate the jury's verdict as

22   to the two named plaintiffs.  Google complains that the class trial enabled Plaintiffs to admit

23

24

25   ───────────────

26   [7] The proposed injunction has four parts: (1) enjoin Google from collecting and saving (s)WAA-
     off data; (2) require Google to delete the (s)WAA-off data it has collected; (3) require Google to
     destroy the algorithms, models, and services created or modified using (s)WAA-off data; and

27   (4) appoint an independent third-party to monitor and ensure Google's compliance.

1  evidence of "marginal relevance" to the individual class representatives, but Google nowhere

2  identifies the specific evidence it is referencing.  *Id.*

3  **IV.    CONCLUSION**

4      Google had its chance at trial, and in substance made the arguments to the jury that

5  Google advances here.  The jury found these arguments unpersuasive, and issued a verdict for

6  Plaintiffs, finding that Google harmed all of the class members and invaded their privacy.  Google

7  has proffered nothing to show why the jury's findings should be disregarded and overturned,

8  especially by way of an improper decertification motion.  Google's motion should be denied.

9  Dated: November 19, 2025

By *<u>/s Mark Mao</u>*
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com

Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (*pro hac vice*)
dboies@bsfllp.com
Alexander Boies (*pro hac vice*)
aboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

James W. Lee (*pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (*pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

Alison Anderson (CA Bar No. 275334)
aanderson@bsfllp.com
M. Logan Wright, CA Bar No. 349004
mwright@bsfllp.com

Plaintiffs' Opposition to Google's Motion to Decertify or Modify the Class
3:20-cv-04688-RS

BOIES SCHILLER FLEXNER LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (213) 995-5720
Facsimile: (213) 629-9022

Amanda Bonn (CA Bar No. 270891)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

Bill Christopher Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
Ryan Sila (*pro hac vice*)
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY  10001
Telephone: (212) 336-8330

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Kenya J. Reddy (*pro hac vice*)
kreddy@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram, CA Bar No. 104805
mram@forthepeople.com
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913

*Attorneys for Plaintiffs*

24
Plaintiffs' Opposition to Google's Motion to Decertify or Modify the Class
3:20-cv-04688-RS