| | |
|---|---|
| 1 | COOLEY LLP |
| | MICHAEL A. ATTANASIO (151529) |
| 2 | (mattanasio@cooley.com) |
| | BENEDICT Y. HUR (224018) |
| 3 | (bhur@cooley.com) |
| | SIMONA AGNOLUCCI (246943) |
| 4 | (sagnolucci@cooley.com) |
| | EDUARDO E. SANTACANA (281668) |
| 5 | (esantacana@cooley.com) |
| | JONATHAN PATCHEN (237346) |
| 6 | (jpatchen@cooley.com) |
| | ARGEMIRA FLOREZ (331153) |
| 7 | (aflorez@cooley.com) |
| | NAIARA TOKER (346145) |
| 8 | (ntoker@cooley.com) |
| | HARRIS MATEEN (335593) |
| 9 | (hmateen@cooley.com) |
| | THILINI CHANDRASEKERA (333672) |
| 10 | (tchandrasekera@cooley.com) |
| | ISABELLA MCKINLEY CORBO (346226) |
| 11 | (icorbo@cooley.com) |
| | CHELSEA HU (357212) |
| 12 | (chu@cooley.com) |
| | MICHAEL B. MORIZONO (359395) |
| 13 | (mmorizono@cooley.com) |
| | 3 Embarcadero Center, 20th Floor |
| 14 | San Francisco, CA 94111-4004 |
| | Telephone: (415) 693-2000 |
| 15 | Facsimile: (415) 693-2222 |
| 16 | Attorneys for Defendant |
| | GOOGLE LLC |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANIBAL RODRIGUEZ, et al. individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:20-CV-04688-RS<br><br>**REPLY IN SUPPORT OF GOOGLE LLC'S MOTION TO DECERTIFY OR MODIFY THE CLASS**<br><br>Dept: 3, 17th Fl.<br>Judge: Hon. Richard Seeborg<br><br>Date Action Filed: July 14, 2020<br>Trial Date: August 18, 2025 |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY ISO GOOGLE'S MOTION TO
DECERTIFY OR MODIFY THE CLASS
3:20-CV-04688-RS

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 2

    A. The Jury's Verdict Has No Bearing On The Legal Question Of Class Decertification. ............................................................................................................ 2

    B. Rule 23(a)(2)'s Commonality Requirement Is Not Satisfied, Defeating Both Plaintiffs' Damages And Injunctive Relief Classes. ..................................................... 4

    C. Rule 23(b)(3)'s Predominance Requirement Is Not Satisfied With Respect To The "Highly Offensive" Element. ........................................................................... 6

    D. Further Nuances Defeat Commonality And Predominance. .................................... 8

        1. The Inclusion Of Personally-Identifiable Information Is Not Common To The Class. ......................................................................................... 8

        2. Third-Party Terms Of Service And Other SDKs Are Relevant To The Offensiveness Analysis. ................................................................................... 9

        3. Individualized Issues Further Impact The iOS Class. ............................... 10

    E. Plaintiffs' Other Arguments Are Without Merit. .................................................... 11

        1. Plaintiffs' Argument That They Did Not Change Their Theory Of Offensiveness At Trial Is Unpersuasive. .......................................................... 11

        2. Re-Identification Of (s)WAA-Off Users Cannot Be Used As A Basis For Offensiveness Merely Because Google "Could" Re-Identify (s)WAA-Off Data. ................................................................................ 12

    F. Vacatur Is Warranted. .............................................................................................. 13

III. CONCLUSION .................................................................................................................. 13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

REPLY ISO GOOGLE'S MOTION TO
DECERTIFY OR MODIFY THE CLASS
3:20-CV-04688-RS

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bahamas Surgery Center LLC v. Kimberly-Clark Corp.*,
  820 Fed. App'x 563 (9th Cir. 2020) .................................................................................. 3, 13

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) ................................................................................................... 3

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ........................................................................................... 2, 4, 5

*Frasco v. Flo Health, Inc.*,
  No. 21-cv-00757-JD, 2025 WL 2680068 (N.D. Cal. Sep. 17, 2025) ................................. 3, 10

*Garrabrants v. Erhart*,
  98 Cal. App. 5th 486 (2023) .................................................................................................... 6

*General Telephone Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982) ................................................................................................................ 4

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) ............................................................................. 7, 10

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) .................................................................................. 7

*Mazzei v. Money Store*,
  829 F.3d 260 (2d Cir. 2016) .................................................................................................... 3

*McCoy v. Alphabet, Inc.*,
  No. 20-cv-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ....................................... 7

*Peterson v. Aaron's, Inc.*,
  No. 1:14-CV-1919-TWT, 2017 WL 364094 (N.D. Ga. Jan. 25, 2017) ................................... 6

*Popa v. Microsoft Corp.*,
  153 F.4th 784 (9th Cir. 2025) .................................................................................................. 7

*Shulman v. Grp. W. Prods., Inc.*,
  18 Cal. 4th 200 (1998) ............................................................................................................ 8

*Spitzfaden v. Dow Corning Corp.*,
  833 So.2d 512 (La. Ct. App. 2002) ....................................................................................... 13

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ................................................................................................................ 2

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

REPLY ISO GOOGLE'S MOTION TO
DECERTIFY OR MODIFY THE CLASS
3:20-CV-04688-RS

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*U.S. Parole Comm'n v. Geraghty,*
   445 U.S. 388 (1980) .................................................................................................................. 3

*In re Vizio, Inc. Consumer Privacy Litig.,*
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..................................................................................... 7

*Wakefield v. ViSalus, Inc.,*
   No. 3:15-cv-1857-SI, 2019 WL 3945243 (D. Or. Aug. 21, 2019) ............................................ 3

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) .................................................................................................................. 4

*In re Yahoo Mail Litig.,*
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................................................................................... 12

**Other Authorities**

Fed. R. Civ. P.
   23 ....................................................................................................................................... 2, 3, 4
   23(a)(2) ............................................................................................................................ 1, 4, 5, 6
   23(b)(2) ....................................................................................................................................... 5
   23(b)(3) ............................................................................................................................... 1, 4, 6
   23(c)(1)(A) ................................................................................................................................. 2
   23(c)(1)(C) ................................................................................................................................. 3
   50 ................................................................................................................................................ 2
   50(b) ........................................................................................................................................... 3
   59 ............................................................................................................................................ 2, 3

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

**REPLY ISO GOOGLE'S MOTION TO
DECERTIFY OR MODIFY THE CLASS
3:20-CV-04688-RS**

## I. INTRODUCTION

Plaintiffs' Opposition fails to address the core point of Google's motion: that the trial evidence varied from—and directly rebutted—Plaintiffs' theory for class certification of the privacy claims. Plaintiffs obtained class certification, including as to the "highly offensive" element, by convincing this Court that offensiveness would be proven class-wide based on "Google's uniform disclosures and users' uniform conduct." Dkt. 352 at 11. But Plaintiffs' trial evidence established that this uniform evidence was *insufficient* to establish the highly offensive element class-wide. Rather, the stark admission was that—at least in some contexts—Google's collection of analytics data from (s)WAA-off users was "not a big deal." And what converted Google's data collection from (s)WAA-off users from "not a big deal" to highly offensive conduct was a series of individual inquiries: the nature of particular apps, how many apps a user had, the nature of the data collected from those apps, and whether Google could "put the puzzle pieces together" to reveal (s)WAA-off users' identities. In other words, despite contrary pre-trial assertions that led to initial class certification, at trial Plaintiffs did not and could not prove offensiveness based solely on Google's disclosures and class members' (s)WAA-off status.

For good reason, Plaintiffs ask this Court to focus on Google's uniform conduct and disclosures. But this Court cannot ignore that Plaintiffs present one theory of offensiveness to the Court for class certification, and another to the jury for the merits. And Plaintiffs' sleight-of-hand reveals why class treatment is improper: individualized facts about the nature of certain apps and the nature of the data they collect are highly relevant, if not dispositive, to the offensiveness inquiry. This defeats commonality under Rule 23(a)(2) and predominance under Rule 23(b)(3).

The Court should thus decertify the classes and vacate the jury verdict. ***First***, the jury verdict is not entitled to deference. Class certification is a legal question for the Court to decide, and treating the jury verdict as binding would necessarily permit the jury to decide both class certification and the merits. ***Second***, as discussed above, trial only confirmed that the individualized circumstances of each class member—*e.g.*, what apps they used, the type of data those apps collected, those apps' terms of service, and the use of other SDKs—are critical to the analysis. This defeats both commonality and predominance. ***Third***, the issue of personally

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

REPLY ISO GOOGLE'S MOTION TO
DECERTIFY OR MODIFY THE CLASS
3:20-CV-04688-RS

identifiable information ("PII") appearing in (s)WAA-off data sets was a rare occurrence that Google implemented safeguards to prevent. Any evidence presented by Plaintiff Rodriguez regarding his PII appearing in (s)WAA-off data sets therefore cannot be extrapolated across the class. *Finally*, the iOS class has permutations based on the rollout of iOS 14.5 partway through the class period, further undermining the suitability of class treatment.

## II.   ARGUMENT

### A.   The Jury's Verdict Has No Bearing On The Legal Question Of Class Decertification.

As a preliminary matter, the jury's verdict can have no bearing on the procedural question of class decertification. Class certification is a legal question appropriate only for the judge, and any deference to the jury verdict would obfuscate this role. As such, the "rigorous analysis" of Rule 23 must be observed, *see Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011), rather than some blend of the Rule 23, Rule 50, and Rule 59 standards that has no basis in Ninth Circuit precedent.

Plaintiffs attempt to defeat Google's motion outright by offering the following circular argument: this case was heard by a jury because the Court was provisionally satisfied with class certification, the jury verdict must be followed, and because of the jury verdict the class should remain certified. *See* Opp. at 5-6. Yet the issue of class certification is a question appropriate for the Court, not a jury. Fed R. Civ. P. 23(c)(1)(A) ("[T]he **court** must determine by order whether to certify the action as a class action." (emphasis added)). Plaintiffs' argument improperly converts class certification into a fact issue for jury determination.

Plaintiffs' cited authority is inapposite. They misconstrue the reasoning of *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016), which dealt with the narrow issue of "whether the sample at issue could have been used to establish liability in an individual action." *Id.* at 458. In other words, whether the sample the plaintiffs proffered could be used as representative evidence applicable to the whole class. *See id.* Answering that question in the affirmative, the Court engaged in an independent analysis to determine the class-wide applicability of the sample, explaining that "the study here *could have been sufficient* to sustain a jury finding . . . ." *Id.* at 459 (emphasis

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

REPLY ISO GOOGLE'S MOTION TO
DECERTIFY OR MODIFY THE CLASS
3:20-CV-04688-RS

added).  Had the Court deferred to the jury to determine the sample's class-wide applicability, the analysis would have started and ended with the verdict.[1]  But of course that was not the Court's reasoning, otherwise it would permit the jury to functionally decide both the merits and class certification.

The only other cases cited by Plaintiffs articulated a novel holding that has never been endorsed by the Ninth Circuit or district courts within the Northern District of California.  *See Mazzei v. Money Store*, 829 F.3d 260, 269 (2d Cir. 2016); *Wakefield v. ViSalus, Inc.*, No. 3:15-cv-1857-SI, 2019 WL 3945243, at *2 (D. Or. Aug. 21, 2019) (relying on *Mazzei*).  For the reasons articulated above, this Court should reject such an approach.  *Cf. Bahamas Surgery Ctr. LLC v. Kimberly-Clark Corp.*, 820 Fed. App'x 563, 566 (9th Cir. 2020) (vacating judgment following jury verdict because district court erred in "failing to decertify the class.").

This Court should similarly reject Plaintiffs' novel suggestion that a post-trial decertification motion must comport with the Rule 50(b) and/or Rule 59 standards.  Plaintiffs themselves cannot even decide which standard applies, since their cited authority so tenuously supports such a theory.  *See* Opp. at 5.  Regardless, the "rigorous analysis" of Rule 23 is the proper standard.  Rule 23 specifies that the cut-off point for class certification is final judgment, and nothing in the Rule suggests that after a jury verdict, courts must apply some blended analysis under Rules 23, 50(b), and 59.  *See* Fed. R. Civ. P. 23(c)(1)(C).  The Supreme Court has made clear that these analyses are distinct.  *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402 (1980).  And other courts suggest that Rule 23 is the correct standard even after trial.  *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998) (reversing class certification post-trial, noting that "any class that is certified must carefully observe the requirements of Rule 23."); *Frasco v. Flo Health, Inc.*, No. 21-cv-00757-JD, 2025 WL 2680068, at *8-15 (N.D. Cal. Sep. 17, 2025) (analyzing evidence presented at trial to determine satisfaction of Rule 23 requirements, explaining that "[t]he salient question is whether plaintiffs' prior demonstration of grounds for certification of

---

[1] To the extent Plaintiffs argue that evidence applicable to the whole class must be accepted as true, they misunderstand Google's motion.  Google argues that Plaintiffs admitted that the allegedly common class evidence (*i.e.*, Google's disclosures or uniform conduct) was insufficient on its own to establish offensiveness and that additional individualized evidence was necessarily relevant to the analysis, thus rendering class treatment inappropriate.

a Rule 23(b)(3) class continues to hold true.").

Even after trial, this Court must independently determine whether class treatment is proper by applying the standards of Rule 23.

### B. Rule 23(a)(2)'s Commonality Requirement Is Not Satisfied, Defeating Both Plaintiffs' Damages And Injunctive Relief Classes.

Plaintiffs' argument with respect to Rule 23(a)(2)'s commonality requirement misses the point. Regardless of any common questions or common proof available to Plaintiffs, the evidence presented at trial confirmed that issues *not common* to the class were determinative to the "highly offensive" analysis. Instead, Plaintiffs misstate the standard to satisfy Rule 23(a)(2)'s commonality requirement, and otherwise raise "common issues" that are either not in dispute or are insufficient to provide a complete analysis with respect to the offensiveness element.

Commonality under Rule 23(a)(2) requires not just any single common issue, as Plaintiffs argue. *See Ellis*, 657 F.3d at 981 ("[I]t is insufficient to merely allege any common question . . ."). There must be one that "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Further, commonality requires that the Plaintiffs all "suffered the same injury." *Id.* (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).

Plaintiffs cannot meet this standard. Rather, they misconstrue Google's argument and identify common questions and common proof that Google does not take issue with. *See* Opp. at 6-9. Plaintiffs assert that Google's disclosures, representations, and conduct were uniform across the class. *See id.* Yet, the Named Plaintiffs' trial testimony illustrated precisely how this allegedly common, class-wide evidence was insufficient to establish offensiveness. *See* Mot. at 5-7. To put it in concrete terms: Plaintiff Rodriguez explained that the data collected from apps like the NightOwl Companion, MIPC camera, and Career Karma was "private and personal." Trial Tr. Aug. 25 (Rodriguez) at 812:23-813:21. But his response to the Target app sharing his app data with Google Analytics: "I don't think it was a big deal. . . . I don't think that's an issue." *Id.* at 843:12-19. Plaintiffs' class-wide theory necessarily is that Google's conduct in collecting Mr. Rodriguez's Target-app was contrary to Google's common disclosures and representations and that

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

REPLY ISO GOOGLE'S MOTION TO
DECERTIFY OR MODIFY THE CLASS
3:20-CV-04688-RS

this *alone* satisfies the highly offensive element. But Plaintiffs' testimony confirms the opposite: that Google's collection in alleged contradiction of its uniform disclosures or representations was not dispositive and, in fact, the nature of an app and the nature of the data collected (all individual inquiries) were.[2]

In *Ellis v. Costco Wholesale Corp.*, the Ninth Circuit vacated the district court's decision granting class certification in an employment discrimination action. 657 F.3d at 988. In assessing commonality, the Ninth Circuit clarified that "it is insufficient to merely allege any common question, for example, 'Were Plaintiffs passed over for promotion?' Instead, they must pose a question that 'will produce a common answer to the crucial question *why was I disfavored*.'" *Id.* at 981 (internal citations omitted).

It is therefore insufficient for Plaintiffs to merely pose a common question such as, "Were Plaintiffs presented with Google's disclosures and representations?" *See id.* Instead, Plaintiffs must be able to answer the question, "Was Google's data collection highly offensive solely because it allegedly contradicted Google's disclosures and representations?"[3] Because the nature of the at-issue apps and the nature of the collected data is different for each class member, answering that question requires an individualized analysis. This defeats the certification of both Plaintiffs' damages and injunctive relief classes.[4]

---

[2] Because Plaintiffs eschewed survey or other class-wide evidence, the only relevant evidence of offensiveness came from Named Plaintiffs themselves.

[3] Plaintiffs cannot sidestep this requirement merely by arguing that the "highly offensive" element is an objective standard. *See* Opp. at 11. That misses the point. Even if offensiveness is an objective standard, what facts are relevant to the objective standard may be highly variable. Each class member used different apps, implicating different types of data. Any objective consideration of the offensiveness analysis would still turn on these considerations for each class member.

[4] Plaintiffs argue separately that the requirements of Rule 23(b)(2) are satisfied in support of the certification of their injunctive relief class. Opp. at 21-22. But of course, an injunctive relief class cannot be certified if class-wide liability cannot be established for a critical element of Plaintiffs' privacy claims due to a lack of commonality under Rule 23(a)(2).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

REPLY ISO GOOGLE'S MOTION TO
DECERTIFY OR MODIFY THE CLASS
3:20-CV-04688-RS

**C.    Rule 23(b)(3)'s Predominance Requirement Is Not Satisfied With Respect To The "Highly Offensive" Element.**

Since Plaintiffs cannot meet Rule 23(a)(2)'s commonality requirement with respect to this element,[5] they surely cannot meet the more stringent predominance requirement under Rule 23(b)(3).

Before trial, Plaintiffs asserted that Google's disclosures, representations, and its employees' conduct established offensiveness across the class. *See* Dkt. 398 (MSJ Opp) at 20-21; Dkt. 315 (Mot. for Class Cert.) at 13-15. But Plaintiffs emphasized a different picture of offensiveness at trial. Plaintiffs emphasized (falsely) the "puzzle piece" theory (that Google puts together a user's pseudonymous data from each app). Trial Tr. Aug. 25 (Rodriguez) at 811:7-17. They highlighted the sensitivity of certain types of data collected. Trial Tr. Aug. 25 (Rodriguez) at 812:23-813:24 (explaining that certain apps are particularly private); Trial Tr. Aug. 20 (Santiago) at 497:18-19 ("I was certainly more cautious with certain apps and probably veered away from some altogether . . ."). And they discussed the rare occurrence of Plaintiff Rodriguez's PII appearing in (s)WAA-off data sets. Trial Tr. Aug. 25 (Rodriguez) at 826:1-5 ("[H]ow is it de-identified if my name, my email, my phone number is in there? So in my case, it's -- it doesn't matter because it's all there."). In fact, Plaintiffs explicitly relied on these issues throughout their closing argument. Trial Tr. Sep. 2 (Closing) at 1879:13 ("Google can reidentify the data at any time."), 1881:4-7 ("[Y]ou saw that plaintiffs' data, his sWAA-off data, his data collected by Google when sWAA was off included his name, email address, and other personal information."). Now, in reevaluating class certification, Plaintiffs fall back to their original theory that Google's disclosures and representations establish offensiveness class-wide. *See* Opp. at 11-13. In short,

---

[5] Plaintiffs also address the reasonable expectation of privacy element, which Google has preserved for appeal, but did not directly raise in its opening brief on this motion. In any event, Plaintiffs' principal argument that a reasonable expectation of privacy can be established class-wide merely because it is an objective standard is without merit. *See* Opp. at 9-10. Even assuming the analysis is purely objective, that would not negate an individualized assessment where class members' particular circumstances have a bearing on the analysis. *See Garrabrants v. Erhart*, 98 Cal. App. 5th 486, 500 (2023); *Peterson v. Aaron's, Inc.*, No. 1:14-CV-1919-TWT, 2017 WL 364094, at *8 (N.D. Ga. Jan. 25, 2017). A resident of a glass house would, objectively, have a reasonable expectation of privacy lower than that of their neighbor in a windowless brick house, even if both lived in the same gated neighborhood. Plaintiffs point to the gate, but ignore the glass.

Plaintiffs advance one theory of offensiveness to the Court for class certification, and another to the jury for merits determinations. While Plaintiffs may have been able to mask this incongruity pre-trial, post-trial Plaintiffs can no longer avoid the weakness of their case for class treatment. As demonstrated by the Named Plaintiffs' own testimony, the nature of the at-issue apps and the nature of the data collected have the dispositive bearing on the offensiveness analysis. *Compare* Trial Tr. Aug. 25 (Rodriguez) at 812:23-813:24 *with id.* at 843:12-21 (explaining that activity on certain apps is "private and personal" but sharing information from other apps is not an issue).

Pointing to Google's disclosures and representations now cannot save Plaintiffs. Regardless of the uniformity of the disclosures and representations, the testimony confirms that individualized circumstances are highly relevant—and the dispositive factor—to the offensiveness analysis. Of course, as Plaintiffs point out, the nature of the apps and the nature of the data collected are not the only factors relevant to assessing offensiveness. Opp. at 12. But in this case, Plaintiffs' testimony *made it* the determinative factor. And that is unsurprising, because in data collection cases generally, the nature of the apps and data is always a highly important factor. *See McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816, at *8 (N.D. Cal. Feb. 2, 2021); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). As recently as August of this year, the Ninth Circuit explained that online tracking was not highly offensive because a plaintiff "identifie[d] no embarrassing, invasive, or otherwise private information collected." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). And this is precisely why the collection of data that is "routine commercial behavior" cannot be highly offensive. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022).[6] Further, the law is equally clear that a defendant's conduct is also not the only factor relevant to the offensiveness inquiry, which is precisely what Plaintiffs now base their entire post-trial theory of offensiveness on. *See Hammerling*, 615 F. Supp. 3d at 1090 (explaining that the highly offensive element "requires a

---

[6] While some courts have explained that the routine collection of data "*may*" be offensive where a defendant holds itself out as respecting privacy choices while simultaneously disregarding them, *see In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) (emphasis added), it does not necessarily mean that it always is. Otherwise, Plaintiffs' privacy claims would functionally turn into a breach of contract claim, which this Court already rejected. Dkt. 127 at 4-6. What is required is proof that the data collection, in all its various forms across the class, was uniformly offensive. Plaintiff Rodriguez's testimony proves that it was not.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

REPLY ISO GOOGLE'S MOTION TO
DECERTIFY OR MODIFY THE CLASS
3:20-CV-04688-RS

holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive.") (internal quotations and citations omitted); *Shulman v. Grp. W. Prods., Inc.*, 18 Cal. 4th 200, 236 (1998) (explaining "that all the circumstances of an intrusion . . . are pertinent to the offensiveness element."). Plaintiffs seemed to understand this at trial, since Plaintiffs' counsel asked Plaintiff Rodriguez specifically about individual apps, and how he felt about the data collection from *those specific apps*. Trial Tr. Aug. 25 (Rodriguez) at 812:23-813:24; *cf.* Dkt. 547 (Plaintiffs' Opp. to Google's MIL No. 11) at 1, 5-6 (explaining that evidence about "sensitive" apps is relevant to establishing offensiveness). Plaintiffs cannot now point to Google's disclosures and conduct, yet ignore other relevant factors that implicate individualized issues, particularly when they were central contentions to their case at trial.

### D. Further Nuances Defeat Commonality And Predominance.

#### 1. The Inclusion Of Personally Identifiable Information Is Not Common To The Class.

Plaintiff Rodriguez's testimony at trial that his name, email address, and phone number appeared in (s)WAA-off data sets is an issue unique to a small fraction of (s)WAA-off users, satisfying neither the commonality nor predominance requirements.

Plaintiffs' spin as to why this evidence can be applied class-wide strains credulity and succeeds only in showing why it cannot. Plaintiffs argue that the point of this evidence "is to prove uniform *failures* by Google that are common across all class members" and that "Google *uniformly* did not take steps to prevent such data from being saved in its logs." Opp. at 16-17 (emphases in original). It is difficult to see how this evidence supports such an inference.[7] To show "uniform failures," Plaintiffs would have had to present evidence of widespread inclusion of PII in (s)WAA-off data sets. Yet the evidence was clear that it did not. Trial Tr. Aug. 29 (Black) at 1712:3-7 (explaining that inclusion of PII in (s)WAA-off data sets is "extraordinarily rare"). And to show a

---

[7] Further, Plaintiffs raise this argument for the first time in their Opposition—nowhere in their original class certification briefing do they argue that the inclusion of PII in (s)WAA-off data sets was meant to prove class-wide offensiveness. *See* Dkt. 314 at 13-15; Dkt. 333 at 4-6. This only highlights Plaintiffs' post-hoc rationale.

uniform lack of safeguards, Plaintiffs would have had to similarly show widespread inclusion of PII in (s)WAA-off data sets, in addition to Google's disregard of the issue.  Yet Google *did* put safeguards in place and *did* want this information excluded from (s)WAA-off data sets.  Trial Tr. Aug. 26 (Ganem) at 1140:19-1142:14 (explaining this "is a violation of our policy" and "shouldn't be happening").  The fact that this occurrence was "extraordinarily rare," Trial Tr. Aug. 29 (Black) at 1712:3-7, a fact that Plaintiffs do not dispute, shows precisely why this evidence cannot show any class-wide failure on Google's part.

The only purpose for the inclusion of this evidence was to give jurors the impression that the inclusion of PII in (s)WAA-off data sets was a common occurrence.  It was highlighted by Plaintiffs and their counsel repeatedly.  Trial Tr. Aug. 25 (Rodriguez) at 818:10-19 ("Would Dr. Hochman have been able to confirm that Google's so-called de-identified data included events that had your name? . . . Your email address? . . . Your phone number?"), 826:3-4 ("[H]ow is it de-identified if my name, my email, my phone number is in there?"), 826:6-10 ("Q: So despite Mr. Monsees' testimony the other day that the data was de-identified, that it didn't include names and email addresses, it's your allegation that the puzzle pieces are all there together? A: My name, my email address, my phone number is all there."); Trial Tr. Sep. 2 (Closing) at 1963:17-18 ("Now, I'm not saying that Google does that as a practice. Okay? *But you did see that happen*." (emphasis added)).  But because this issue impacted so few (s)WAA-off users, this is not a common issue and cannot be a sufficient basis for a class-wide finding of offensiveness.

### 2. Third-Party Terms Of Service And Other SDKs Are Relevant To The Offensiveness Analysis.

Plaintiffs rinse and repeat their same arguments discussed elsewhere and re-package them here.  But again, since the offensiveness analysis turns on the nature of third-party apps and the type of data collected therefrom (as Plaintiffs' evidence at trial confirms), then what users were told by third-party apps similarly becomes relevant.

Plaintiffs reiterate the same point: all that matters is Google's disclosures and representations.  *See* Opp. at 17-19.  To Plaintiffs, it does not matter whether users were told by third parties that Google Analytics would collect their data, nor does it matter if users had consented

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

REPLY ISO GOOGLE'S MOTION TO
DECERTIFY OR MODIFY THE CLASS
3:20-CV-04688-RS

to the use of similar SDKs. *See id.* Even if a user was put on notice that their data would be sent to Google Analytics and the user consented, this would not impact whether there was "a shocking or outrageous breach of social norms regarding online data." Dkt. 666 (Jury Instructions) at 19, 21. Yet the law does not support this position. *See, e.g., Hammerling*, 615 F. Supp. 3d at 1090. And neither does Plaintiff Rodriguez's own testimony. *See* Trial Tr. Aug. 25 (Rodriguez) at 839:9-840:10, 841:11-842:17, 843:12-21 (explaining that after reviewing Target's privacy policy, he made a "deal" with Target and was ok with the Target app sharing data with Google Analytics).[8]

Just as the analysis does not—and cannot—turn merely on Google's disclosures and representations, the fact that third-party terms of service may not discuss WAA/(s)WAA settings is not relevant. What matters is, depending on what disclosures are made in third-party terms of service, how does that impact the offensiveness analysis *in addition* to Google's disclosures? Plaintiffs' citations to this Court's orders with respect to the consent analysis, *see* Opp. at 18-19, does not change this—Google is specifically discussing the impact of third-party terms of service on offensiveness, which is a holistic inquiry that takes into consideration more than just Google's disclosures.

### 3.   Individualized Issues Further Impact The iOS Class.

Partway through the class period, after the rollout of iOS 14.5, iOS users would receive a pop-up notification asking: "Ask app not to track." Mot. at 10. Despite this occurring partway through the class period, impacting only the iOS class, impacting only iOS users who downloaded iOS 14.5, and any response that a user may have provided to the prompt, Plaintiffs maintain this has no relevance to the analysis and does not defeat the predominance requirement.

Plaintiffs parachute in their same arguments from prior sections: "The relevant point is that all class members had their *Google* setting ((s)WAA) set to 'off.'" Opp. at 20 (emphasis in original). It is difficult to see how this could negate any individualized issues and have no impact

---

[8] Far from "rank speculation that is completely untethered to the evidence admitted at trial," *Flo Health*, 2025 WL 2680068, at *11, Google has presented clear instances of trial testimony throughout its briefing implicating individualized issues that threaten the propriety of class treatment. Here, as Plaintiff Rodriguez explained, his "deal" with Target, *based on Target's terms of service*, was ok with him. Trial Tr. Aug. 25 (Rodriguez) at 839:9-840:10, 841:11-842:17, 843:12-21. With other apps, not so much. *Id.* at 812:23-813:21.

on consent, reasonable expectation of privacy, or the offensiveness of continued data collection. *See* Mot. at 10-11. For instance, if a user said "no" and allowed an app to track (thereby allowing Apple to collect third-party app data), how would this not implicate the expectation of privacy or offensiveness with respect to Google's collection of (s)WAA-off data?

For the reasons discussed in Google's motion, issues within just the iOS class present further individualized issues, rendering class treatment inappropriate.

### E. Plaintiffs' Other Arguments Are Without Merit.

#### 1. Plaintiffs' Argument That They Did Not Change Their Theory Of Offensiveness At Trial Is Unpersuasive.

Plaintiffs' position that the "puzzle piece" theory reflected their stance all along is unpersuasive. The closest Plaintiffs got to such a theory pre-trial was through Dr. Hochman's opinion that Google could re-link (s)WAA-off data with specific user identifiers. *See, e.g.*, Dkt. 398 (Opp. to MSJ) at 3. Yet the Court rejected this theory of offensiveness at summary judgment, *see* Dkt. 445 (MSJ Order) at 11, so Plaintiffs pivoted to the separate theory that Google puts together (s)WAA-off users' pseudonymous, de-identified data, which when viewed all together, can reveal the identity of the user. *See* Trial Tr. Aug. 25 (Rodriguez) at 811:16-17 ("[W]hen you put it all together, it becomes -- it is me."), *id.* at 843:19-21 ("[W]hat the problem here is, it's more Google gathering all the data from all my apps to kind of paint a picture of who I am.").

Plaintiffs' argument that this new theory was merely in response to Google's opening statement is disingenuous. *See* Opp. at 13-14 (arguing that Plaintiff Rodriguez was responding to Google's position that (s)WAA-off data is "non-personal"). All along, Google has maintained that (s)WAA-off data is non-personal because it is pseudonymous and de-identified. *See, e.g.*, Dkt. 323 (Class Cert. Opp.) at 3 (describing (s)WAA-off data as "pseudonymous"); Dkt. 381 (MSJ) at 1 (describing (s)WAA-off data as "non-personal"). Yet Plaintiffs posed this new theory for the first time at trial.

Plaintiffs' second argument fares no better. Plaintiffs explain that the "puzzle piece" theory is consistent with their position that (s)WAA-off data is "personal information," as defined in Google's Privacy Policy, because it can be reasonably linked to unique identifiers. *See* Opp. at 14-

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

REPLY ISO GOOGLE'S MOTION TO
DECERTIFY OR MODIFY THE CLASS
3:20-CV-04688-RS

1  15. Yet this argument does not comport with Plaintiff Rodriguez's testimony. If the (s)WAA-off data is "personal information" because it can be linked to (s)WAA-off users using "unique identifiers tied to the browser, application, or device you're using," there is no need to allege that Google also compiles all (s)WAA-off users' pseudonymous data that, "when you put it all together, it becomes [a (s)WAA-off user]." *See* Trial Tr. Aug. 25 (Rodriguez) at 811:16-17.

Plaintiffs' previous theories of offensiveness were either rejected by this Court or would have been insufficient in the absence of common evidence that Google collected sensitive and de-anonymized data. At trial, they attempted to cure these deficiencies by presenting a new theory, which only succeeded in drawing out precisely why class treatment is improper.

### 2. Re-Identification Of (s)WAA-Off Users Cannot Be Used As A Basis For Offensiveness Merely Because Google "Could" Re-Identify (s)WAA-Off Data.

Any theory of offensiveness cannot be based on Google re-identifying (s)WAA-off data. As numerous witnesses testified, Google does not do this. *See, e.g.*, Trial Tr. Aug. 26-27 (Ganem) at 1162:1-4 (explaining (s)WAA-on and -off data are stored in separate logs), 1254:8-12 (explaining it is "technically impossible" for Google to re-identify (s)WAA-off users with Google's current infrastructure); Trial Tr. Aug. 29 (Black) at 1722:1-11, 1725:12-17, 1749:3-12 (explaining he found no evidence that Google re-identifies or combines data).

Plaintiffs now contend that it does not matter whether Google re-identifies (s)WAA-off data or not, what matters is that they *could*. Opp. at 15-16. This is without merit. Plaintiffs point to Dr. Hochman's testimony that, in his opinion, "nothing stops Google from reidentifying [(s)WAA-off data]." Opp. at 15. But saying so does not make it true. Just as they did at summary judgment, "Plaintiffs have provided no evidence that Google uses (s)WAA-off data to [re-identify users], only that Google has the technical capabilities of joining the identifiers it collects . . . ." Dkt. 445 (MSJ Order) at 11. That failure was fatal then and it remains fatal now. Plaintiffs must point to "Google's actual conduct." *Id.* at 11. This is because Plaintiffs' privacy claims require intentional conduct to be actionable. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037-38 (N.D. Cal. 2014); Dkt. 445 (MSJ Order) at 9. While a passerby *could* peer through a house's window, that alone would not make walking down the sidewalk highly offensive. Offensiveness cannot be based on a

"hypothetical scenario." Dkt. 445 (MSJ Order) at 11.

### F.  Vacatur Is Warranted.

Because the classes should be decertified, the Court should expressly vacate the jury's class-wide findings with respect to the intrusion upon seclusion and invasion of privacy claims. *See Bahamas Surgery Ctr.*, 820 F. App'x at 566.

The verdict as to the Named Plaintiffs should also be vacated, since much of the evidence and time spent at trial was dedicated to issues not specifically about them. *See Spitzfaden v. Dow Corning Corp.*, 833 So.2d 512, 522-23 (La. Ct. App. 2002). Despite Plaintiffs' contention that Google failed to specify which evidence did not pertain to the Named Plaintiffs, Google specified that Plaintiffs' damages case was not specific to the Named Plaintiffs. Mot. at 11. For instance, Plaintiffs' damages expert, Michael Lasinski, based damages on the ScreenWise Panel, which was a voluntary survey indicating to Plaintiffs that the value of users' (s)WAA-off data is $3/month. Trial Tr. Aug. 25 (Lasinski) at 937:2-940:11. None of this is specific to the Named Plaintiffs, but is focused on estimating class-wide damages. *See id.* at 940:16-21.

### III.  CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court decertify Plaintiffs' intrusion upon seclusion and invasion of privacy claims and vacate the jury verdict as to those claims.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

REPLY ISO GOOGLE'S MOTION TO
DECERTIFY OR MODIFY THE CLASS
3:20-CV-04688-RS

Dated: December 4, 2025

Respectfully submitted,

COOLEY LLP

By: */s/ Jonathan Patchen*
    Michael A. Attanasio
    Benedict Y. Hur
    Simona Agnolucci
    Eduardo E. Santacana
    Jonathan Patchen
    Argemira Flórez
    Naiara Toker
    Harris Mateen
    Thilini Chandrasekera
    Isabella McKinley Corbo
    Chelsea Hu
    Michael B. Morizono

*Attorneys for Defendant Google LLC*