COOLEY LLP
MICHAEL A. ATTANASIO (151529)
(mattanasio@cooley.com)
BENEDICT Y. HUR (224018)
(bhur@cooley.com)
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
EDUARDO E. SANTACANA (281668)
(esantacana@cooley.com)
JONATHAN PATCHEN (237346)
(jpatchen@cooley.com)
ARGEMIRA FLÓREZ (331153)
(aflorez@cooley.com)
NAIARA TOKER (346145)
(ntoker@cooley.com)
HARRIS MATEEN (335593)
(hmateen@cooley.com)
THILINI CHANDRASEKERA (333672)
(tchandrasekera@cooley.com)
ISABELLA MCKINLEY CORBO (346226)
(icorbo@cooley.com)
CHELSEA HU (357212)
(chu@cooley.com)
MICHAEL B. MORIZONO (359395)
(mmorizono@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA  94111-4004
Telephone:     (415) 693-2000
Facsimile:     (415) 693-2222

Attorneys for Defendant
GOOGLE LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ANIBAL RODRIGUEZ, et al. individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>GOOGLE LLC,<br><br>　　　　　　Defendant. | Case No. 3:20-CV-04688-RS<br><br>**GOOGLE LLC'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (FRCP 50(B))**<br><br>Dept:　　3, 17th Fl.<br>Judge:　　Hon. Richard Seeborg<br><br>Date Action Filed: July 14, 2020<br>Trial Date: August 18, 2025 |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................................. 2

II.     LEGAL STANDARD ...................................................................................................... 3

III.    ARGUMENT .................................................................................................................... 3

      A.    Google is Entitled to Judgment as a Matter of Law on Damages ........................... 4

           1.    The Jury's Actual Damages Verdict is Displaced by CUTSA ................... 4

           2.    CUTSA Displacement is Not an Affirmative Defense Subject to Waiver ........................................................................................................ 7

           3.    The Lack of Legally-Cognizable Damages Compels Judgment as a Matter of Law as to the Intrusion Upon Seclusion Claim .......................... 8

      B.    There is No Class-Wide Privacy Interest in (s)WAA-Off Data .............................. 8

      C.    Plaintiffs Failed to Establish a Reasonable Expectation of Privacy Over (s)WAA Data on a Class-Wide Basis ..................................................................... 10

           1.    No Subjective Class-Wide Expectation of Privacy .................................. 10

           2.    Any Expectation of Privacy was Objectively Unreasonable ................... 14

      D.    Plaintiffs Did Not Establish that Data Collection or Transfer is Highly Offensive to All Class Members ........................................................................... 17

           1.    Plaintiffs Failed to Present Class-Wide Evidence of the Offensive Nature of the Collected (s)WAA-Off Data ............................................... 18

           2.    Plaintiffs' Evidence that Google Misled Users was Insufficient for Offensiveness ........................................................................................... 20

           3.    Plaintiffs' Evidence in Support of the "Puzzle Piece" Theory was Non-Existent ............................................................................................ 22

      E.    Any "Intrusion" was Not Intentional .................................................................... 22

      F.    Affirmative Consent Precludes Liability on All Claims ....................................... 24

IV.     CONCLUSION ............................................................................................................... 24

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**GOOGLE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW 3:20-CV-04688-RS**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Ollie's Bargain Outlet, Inc.*,
   37 F.4th 890 (3d Cir. 2022).................................................................................................. 13

*Angelica Textile Servs., Inc. v. Park*,
   220 Cal. App. 4th 495 (2013) ................................................................................................ 4

*Artec Grp., Inc. v. Klimov*,
   No. 15-cv-3449, 2016 WL 8223346 (N.D. Cal. Dec. 22, 2016)............................................ 4

*Barker v. Insight Glob., LLC*,
   No. 16-cv-07186, 2017 WL 10504692 (N.D. Cal. Nov. 21, 2017) ........................................ 6

*Blanco v. Cnty. of Kings*,
   142 F. Supp. 3d 986 (E.D. Cal. 2015).................................................................................... 6

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017)................................................................................................ 3

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir.
   2011) .................................................................................................................................... 22

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*,
   No. 18-cv-07591, 2021 WL 842574 (N.D. Cal. Mar. 5, 2021)............................................ 17

*Darling v. Dignity Health, Dignity Cmty. Care*,
   No. 20-cv-06043, 2022 WL 1601408 (N.D. Cal. Apr. 16, 2022)......................................... 14

*Doe v. Regents of Univ. of Cal.*,
   672 F. Supp. 3d 813 (N.D. Cal. 2023) .................................................................................. 6

*Erhart v. BofI Holding, Inc.*,
   612 F. Supp. 3d 1062 (S.D. Cal. 2020)............................................................................. 4, 6

*In re Facebook Internet Tracking Litig.*,
   140 F. Supp. 3d 922 (N.D. Cal. 2015) ................................................................................. 11

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020)................................................................................................ 11

*Firetrace USA, LLC v. Jesclard*,
   800 F. Supp. 2d 1042 (D. Ariz. 2010).................................................................................... 7

*Gaedeke Holdings VII, Ltd. v. Mills*,
   No. CIV-11-649, 2014 WL 347629 (W.D. Okla. Jan. 30, 2014)........................................... 7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**GOOGLE'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
3:20-CV-04688-RS**

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Garrabrants v. Erhart*,
98 Cal. App. 5th 486 (2023) ...................................................................................... 11

*Glam & Glits Nail Design, Inc. v. #NotPolish, Inc.*,
No. 21-cv-0052, 2021 WL 2317410 (S.D. Cal. June 7, 2021) .................................... 6

*H&H Pharms., LLC v. Chattem Chems., Inc.*,
No. 23-15055, 2024 WL 1734134 (9th Cir. Apr. 23, 2024) ....................................... 7

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ............................................................. 17, 18

*Hammerling v. Google, LLC*,
No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024).................................. 14, 15, 23, 24

*Hart v. TWC Prod. & Tech. LLC*,
No. 20-cv-03842, 2023 WL 3568078 (N.D. Cal. Mar. 30, 2023)....................... 11, 12, 16, 17

*Heller v. Cepia, L.L.C.*,
No. C 11-01146, 2012 WL 13572 (N.D. Cal. Jan. 4, 2012) ....................................... 5

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .................................................................................... 8, 10, 11

*Hill v. Nat'l Collegiate Athletic Ass'n.*,
7 Cal. 4th 1 (1994) ......................................................................................... 8, 10, 11

*Joseph v. J.J. Mac Intyre Cos., L.L.C.*,
238 F. Supp. 2d 1158 (N.D. Cal. 2002) ..................................................................... 8

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) .............................................................................................. 4

*Language Line Servs., Inc. v. Language Servs. Assocs., Inc.*,
944 F. Supp. 2d 775 (N.D. Cal. 2013) ....................................................................... 4

*London v. New Albertson's, Inc.*,
No. 08-CV-1173, 2008 WL 4492642 (S.D. Cal. Sept. 30, 2008)............................. 17

*Marich v. MGM/UA Telecomms., Inc.*,
113 Cal. App. 4th 415 (2003) .................................................................................. 23

*McCoy v. Alphabet, Inc.*,
No. 20-cv-05427, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ........................... 18, 19

*Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos., Inc.*,
306 F.3d 806 (9th Cir. 2002).............................................................................. 10, 11

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
3:20-CV-04688-RS

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Miller v. Fed. Land Bank of Spokane,*
587 F.2d 415 (9th Cir. 1978)..................................................................................... 13

*NetApp, Inc. v. Nimble Storage, Inc.,*
41 F. Supp. 3d 816 (N.D. Cal. 2014) ........................................................................... 6

*New Show Studios LLC v. Needle,*
No. 14-cv-01250, 2014 WL 2988271 (C.D. Cal. June 30, 2014) ............................... 6

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y,*
135 F.3d 1260 (9th Cir. 1998)..................................................................................... 8

*Opperman v. Path,*
No.13-cv-00453, 2016 WL 3844326 (N.D. Cal. July 15, 2016)........................... 10, 11

*PHL Assocs., Inc. v. Super. Ct. of Yolo Cnty.,*
No. C088437, 2020 WL 4012763 (Cal. Ct. App. July 16, 2020) ............................... 7

*Popa v. Microsoft Corp.,*
153 F.4th 784 (9th Cir. 2025) ..............................................................................*passim*

*Pyro-Comm Sys. Inc. v. W. Coast Fire & Integration Inc.,*
No. SACV 14-2028, 2015 WL 12765143 (C.D. Cal. Apr. 2, 2015)............................ 6

*Roley v. Google LLC,*
No. 18-cv-07537, 2021 WL 1091917 (N.D. Cal. Mar. 22, 2021)............................. 21

*Rowland v. JPMorgan Chase Bank, N.A.,*
No. C 14-00036, 2014 WL 992005 (N.D. Cal. Mar. 12, 2014)................................. 8

*Sanders v. ABC,*
20 Cal. 4th 907 (1999) .............................................................................................. 16

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
559 U.S. 393 (2010)..................................................................................................... 3

*Sheehan v. San Francisco 49ers, Ltd.,*
45 Cal. 4th 992 (2009) ................................................................................... 10, 16, 17

*Shulman v. Grp. W. Prods., Inc.,*
18 Cal. 4th 200 (1998) ......................................................................................... 10, 11

*Silvaco Data Sys. v. Intel Corp.,*
184 Cal. App. 4th 210 (2010) ............................................................................. 2, 4, 6

*Stupp Corp. v. United States,*
619 F. Supp. 3d 1314 (Ct. Int'l Trade 2023)............................................................ 13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**GOOGLE'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
3:20-CV-04688-RS**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*SunPower Corp. v. SolarCity Corp.*,
No. 12-CV-00694, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ........................................... 4

*Taus v. Loftus*,
40 Cal. 4th 683 (2007) ........................................................................................................... 22

*Top Agent Network, Inc. v. Zillow, Inc.*,
No. 14-cv-04769, 2015 WL 10435931 (N.D. Cal. Aug. 6, 2015) ...................................... 4, 6

*Total Recall Techs. v. Luckey*,
No. C 15-2281, 2016 WL 199796 (N.D. Cal. Jan. 16, 2016) ............................................ 5, 6

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ................................................................................................................. 3

*UCAR Tech. (USA) Inc. v. Li*,
No. 17-cv-01704, 2018 WL 2555429 (N.D. Cal. June 4, 2018) ......................................... 4, 6

*In re Vizio, Inc. Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................................. 20

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........................................................................................................... 3, 13

*Williams v. DDR Media*,
LLC, No. 22-cv-03789, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ............................... 17

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ......................................................................... 8, 10, 22

*Zayas v. Ortega*,
No. 17-cv-02739, 2018 WL 11227735 (N.D. Cal. Aug. 10, 2018) ...................................... 23

**Statutes**

28 U.S.C. § 2072(b) ..................................................................................................................... 3

California Comprehensive Computer Data Access and Fraud Act................................................. 2

California's Uniform Trade Secrets Act ................................................................................. *passim*

**Other Authorities**

California Constitution................................................................................................... 3, 6, 11

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**GOOGLE'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
3:20-CV-04688-RS**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Fed. R. Civ. P.
   12(h)(2)(C) ............................................................................................................... 7
   23 ............................................................................................................................. 3
   50 ............................................................................................................................. 3
   50(a) .................................................................................................................. 3, 5, 7
   50(a)(1) .................................................................................................................... 3
   50(b) ............................................................................................................... 1, 3, 13

Restatement (2d) of Torts § 652B ....................................................................................... 11

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- vi -

**GOOGLE'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
3:20-CV-04688-RS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that pursuant to the schedule established in Docket 726, Defendant Google LLC ("Google") hereby submits its renewed motion for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(b), and moves the Court to grant judgment as a matter of law as to Plaintiffs' actual damages, and as to Counts II and III (Invasion of Privacy and Intrusion upon Seclusion, respectively, together the "Privacy Claims").

The Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings and other papers filed, any oral argument, the evidence and testimony presented at trial, and any other such matters that the Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED

1.  Should judgment on actual damages be entered in favor of Google?

2.  Should judgment be entered in favor of Google on Count II (the plaintiff classes' invasion of privacy claim)?

3.  Should judgment be entered in favor of Google on Count III (the plaintiff classes' intrusion upon seclusion claim)?

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.    INTRODUCTION

This case is a 98-million-member privacy class action.  On September 4, 2025, the jury returned a verdict in favor of Google on Count I (California Comprehensive Computer Data Access and Fraud Act ("CDAFA")) and in favor of Plaintiffs on Counts II and III (Invasion of Privacy and Intrusion upon Seclusion, respectively).  Google is, however, entitled to judgment as a matter of law on damages and on Counts II and III.

*First*, Plaintiffs failed to prove damages for Counts II and III.  Plaintiffs' actual damage theory was based on "the value of the data Google improperly collected and used."  Trial Tr. Sep. 2 (Plaintiffs' Closing) 1891:20-23.  But that theory is displaced by California's Uniform Trade Secrets Act ("CUTSA"), which provides that CUTSA is the exclusive vehicle for claims "based on the taking of information that [was] of value to the claimant."  *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 23 n.22 (2010).  And the jury expressly declined to award nominal damages.

*Second*, the common proof that Plaintiffs did present—Google's (s)WAA disclosures and other policies—were insufficient as a matter of law to establish a privacy interest in (s)WAA-off data, a reasonable expectation of privacy for class members, or that class members did not consent to Google's data collection practices.  Google unambiguously disclosed that the (s)WAA toggle only controlled whether data was saved to a user's Google Account, and even with (s)WAA toggled "off," third-party apps may still transmit user data to Google.

*Third*, as a matter of law, the collection of pseudonymous, de-identified data is not "highly offensive," as the Ninth Circuit recently confirmed.  Further, any offensiveness based on Google's alleged misrepresentation to users was not proved on a class-wide basis.  Plaintiffs presented no survey evidence, expert testimony, or other uniform evidence establishing that users were actually misled by Google's disclosures.  And no reasonable juror could conclude that Google's conduct was offensive because it might "build a fuller picture" of class members based on (s)WAA-off data—Plaintiffs presented no evidence that this actually occurs, and liability cannot be established through a hypothetical.

*Fourth*, Plaintiffs' evidence was insufficient to establish that Google acted intentionally to

Cooley LLP
Attorneys at Law
San Francisco

2

Google's Renewed Motion For
Judgment As A Matter Of Law
3:20-CV-04688-RS

intrude on class members' seclusion.  Indeed, the Privacy Claims require intentional conduct.  Yet the evidence unequivocally showed that Google took steps to respect users' privacy, believed it had permission to collect (s)WAA-off data, and did not intend to mislead users.

## II.    LEGAL STANDARD

Under Rule 50(b), if the court does not grant judgment as a matter of law under Rule 50(a), then after the entry of judgment, "the movant may file a renewed motion for judgment as a matter of law." Fed. R. Civ. P. 50(b).  Judgment as a matter of law should be granted if the Court "finds that a reasonable jury would not have a legally sufficient evidentiary basis" to find for the nonmoving party on an issue.  Fed. R. Civ. P. 50(a)(1).  This rule applies equally in a class action since, as the Supreme Court has repeatedly held, a class action may not be used to change the standards of proof and impose liability that a defendant would not face in an individual action.  "[T]he Rules Enabling Act [28 U.S.C. § 2072(b)] forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 458 (2016); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (plurality opinion) ("[a] class action ... leaves the parties' legal rights and duties intact and the rules of decision unchanged").  "[I]f the case proceeds past the certification stage, the plaintiff *class* must carry the burden of proving *every element* of its claims to prevail on the merits." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017) (emphasis added); *Dukes*, 564 U.S. at 351 n.6.  To avoid judgment as a matter of law, Plaintiffs must have introduced legally sufficient *class-wide* evidence on each issue.

## III.    ARGUMENT

Plaintiffs' Privacy Claims[1] fail as a matter of law.  Plaintiffs failed to prove legally cognizable damage.  They failed to prove any element of their claims class-wide.  And Google proved its defense of consent.  Judgment as a matter of law should be entered in favor of Google.

---

[1] Plaintiffs bring two privacy claims against Google: invasion of privacy under the California Constitution and intrusion upon seclusion. As this Court has recognized, while the claims are distinct, they consist of substantially similar elements and are typically addressed together.  While Google follows this convention here for convenience, to avoid any possibility of waiver under Rule 50, Google hereby expressly applies its arguments below to both claims.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

GOOGLE'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
3:20-CV-04688-RS

**A.      Google is Entitled to Judgment as a Matter of Law on Damages**

**1.      The Jury's Actual Damages Verdict is Displaced by CUTSA**

Plaintiffs' actual damage theory at trial was based on the economic value of the class members' (s)WAA-off data that Google obtained in violation of Plaintiffs' privacy rights.  But that theory is displaced by CUTSA.[2]

CUTSA provides the exclusive remedy for conduct falling within its terms.  *Silvaco Data Sys.*, 184 Cal. App. 4th at 236, disapproved on other grounds by *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 337 (2011).  CUTSA displacement applies beyond mere repackaged trade secret claims: it extends to all claims "based on the taking of information that, though not a trade secret, was nonetheless of value to the claimant."  *Id*. at 239 n.22 ("[A] prime purpose of the law was to sweep away the adopting states' bewildering web of rules and rationales and replace it with a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information ... of value.'").  As Judge Koh explained in *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694, 2012 WL 6160472, at *5 (N.D. Cal. Dec. 11, 2012), "[i]f the basis of the alleged property right is in essence that the information is not generally known to the public, then the claim is sufficiently close to a trade secret claim that it should be superseded notwithstanding the fact that the information fails to meet the definition of a trade secret." (cleaned up).  In short, a claim that seeks to "impose liability [] for 'acquiring, disclosing, or using' confidential information of purported value" is displaced by CUTSA.  *Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1118 (S.D. Cal. 2020).

Many courts in this district—including this Court—have adopted Silvaco's rule.  *See Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-cv-04769, 2015 WL 10435931, at *4-5 (N.D. Cal. Aug. 6, 2015) (Seeborg, J.); *Language Line Servs., Inc. v. Language Servs. Assocs., Inc.*, 944 F. Supp. 2d 775, 781 (N.D. Cal. 2013) (Seeborg, J.); *UCAR Tech. (USA) Inc. v. Li*, No. 17-cv-01704, 2018 WL 2555429, at *4 (N.D. Cal. June 4, 2018) ("[M]isappropriation of unspecified, intangible, non-trade secret 'computer data,' 'proprietary information and work product'" was displaced); *Artec*

---

[2] Courts often use the terms "preemption" or "supersession" when discussing whether one provision of state law supplants another.  Yet "displacement" is the proper terminology, and will be used here.  *See Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 498 n.1 (2013).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

**GOOGLE'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
3:20-CV-04688-RS**

*Grp., Inc. v. Klimov*, No. 15-cv-3449, 2016 WL 8223346, at *7 (N.D. Cal. Dec. 22, 2016) ("The majority of district courts that have considered Silvaco have held that CUTSA displaces claims based on the misappropriation of information that does not satisfy the definition of trade secret under CUTSA."); *Total Recall Techs. v. Luckey*, No. C 15-2281, 2016 WL 199796, at *8 (N.D. Cal. Jan. 16, 2016); *Heller v. Cepia, L.L.C.*, No. C 11-01146, 2012 WL 13572, at *7 (N.D. Cal. Jan. 4, 2012) (claims based on "the wrongful taking and use of confidential . . . information," whether or not trade secrets, "are superseded").

Plaintiffs' actual damages theory undeniably is based on the alleged taking of information of value.  Mr. Santiago testified that Google takes "private," Trial Tr. Aug. 20 (Santiago) at 555:1-21, "data from millions of people that obviously has value, and Google profited from that data," *id*. at 499:11-18.  Plaintiffs' damages expert, Mr. Lasinski, repeatedly testified his damages calculation was based on the value of the (s)WAA-off data.  *See, e.g.*, Trial Tr. Aug. 25 (Lasinski) at 877:21-25 (explaining that his actual damages calculation was based on "how much the class members should have been paid for the data that was taken from them."), 878:10-13 (explaining that compensatory damages is based on whether "you value that and you think you should be paid for it, it's something that you put a price on"), 879:7-13 (explaining that his damages calculation "is based on Google's non-payment or the amount that Google should have paid for the data"), 935:6-19 (Lasinski's estimate of compensatory damages was based on "information that relates to Google's payments made for user data").  Plaintiffs agreed to a Jury Instruction providing the same. *See* Trial Tr. Sep. 2 (Jury Instructions) at 1854:18-20 ("[P]laintiffs claim compensatory or actual damages based on the economic value of allowing access to the data at issue.") (emphasis added); Trial Tr. Aug. 29 (Charging Conference) at 1784:1-1819:11.  And putting the matter firmly to rest, Plaintiffs argued at closing: "Now, we seek four types of damages. . . . [C]ompensatory damages, the value of the data Google improperly collected and used."  Trial Tr. Sep. 2 (Plaintiffs' Closing) at 1891:20-23 (emphasis added).[3]

Plaintiffs' damages theory is displaced by CUTSA, even though damages were sought via

---

[3] Plaintiffs agreed to the jury instruction and made their closing argument after Google expressly raised CUTSA displacement in its Rule 50(a) motion.

Cooley LLP
Attorneys at Law
San Francisco

5

Google's Renewed Motion For
Judgment As A Matter Of Law
3:20-CV-04688-RS

their Privacy Claims.[4] *See Silvaco*, 184 Cal. App. 4th at 236; *see also New Show Studios LLC v. Needle*, No. 14-cv-01250, 2014 WL 2988271, at *5, *9–11 (C.D. Cal. June 30, 2014) (CUTSA displaced claims where defendants "accessed" and "public[ly] disclosed private facts"); *Glam & Glits Nail Design, Inc. v. #NotPolish, Inc.*, No. 21-cv-0052, 2021 WL 2317410, at *5, *9–11 (S.D. Cal. June 7, 2021) (CUTSA displaced claims arising from improper access to customers' "non-public personal cellphone numbers," purchasing history, pricing, and preferences); *Pyro-Comm Sys. Inc. v. W. Coast Fire & Integration Inc.*, No. SACV 14-2028, 2015 WL 12765143, at *8 (C.D. Cal. Apr. 2, 2015) ("invasion of privacy" claim based on "Defendants' use of [Plaintiff's] confidential information" displaced by CUTSA); *see Total Recall*, 2016 WL 199796, at *7-8 (explaining that tort claims were superseded by CUTSA to the extent they relied on the misappropriation of confidential information, despite the plaintiffs "[b]y strategy . . . studiously avoid[ing] the assertion of any trade secret claims.").[5]

Notably, CUTSA does not uniformly displace all damages theories for privacy claims. It only does so when the damage or loss claimed is based on the economic value of the information obtained—the theory Plaintiffs pursued here. *Cf. Erhart*, 612 F. Supp. 3d at 1116-1120; *UCAR*, 2018 WL 2555429, at *4-5 (recognizing that CUTSA displacement only applies to the extent the plaintiff pursues particular theories). It is apparent Plaintiffs pursued their "value of the data" theory because, unlike emotional distress and other typical privacy damages, this theory had the prospect of surviving class certification. But because Plaintiffs would not be able to claim such other damages on a class-wide basis, they are "[c]aught between Scylla and Charybdis" and their value-of-data, class-wide damage models "fail[] to navigate trade secret law's narrow straits." *Top*

---

[4] Plaintiffs' constitutional Invasion of Privacy claim (Count II) does not permit damages. *Doe v. Regents of Univ. of Cal.*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) (plaintiffs "can seek to enjoin [defendants] but cannot seek damages" under "Article 1, Section 1 of the California Constitution"); *Blanco v. Cnty. of Kings*, 142 F. Supp. 3d 986, 1001 (E.D. Cal. 2015) ("[T]the Court finds that the California Constitutional right to privacy contained in article I, section I does not give rise to a cause of action for money damages."). Thus, the jury's actual damages verdict should be overturned as to Count II on this additional basis.

[5] Plaintiffs' decision not to bring a CUTSA claim does not avoid displacement. *See NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 840 (N.D. Cal. 2014) (finding "meritless" the argument that displacement applies only if a CUTSA claim is actually pleaded); *Barker v. Insight Glob., LLC*, No. 16-cv-07186, 2017 WL 10504692, at *4 (N.D. Cal. Nov. 21, 2017) ("[T]here is no reason why preemption turns on and off depending on whether a trade secret claim is actually pled.").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

GOOGLE'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
3:20-CV-04688-RS

*Agent Network*, 2015 WL 10435931, at \*5 (Seeborg, J.).

**2.    CUTSA Displacement is Not an Affirmative Defense Subject to Waiver**

Plaintiffs have asserted that Google waived its CUTSA displacement argument because it allegedly is an affirmative defense that was not adequately pleaded.  Plaintiffs are wrong.  Under California law, CUTSA displacement is not an affirmative defense, but is instead failure to plead a cause of action.  *See PHL Assocs., Inc. v. Super. Ct. of Yolo Cnty.*, No. C088437, 2020 WL 4012763, at \*11–13 (Cal. Ct. App. July 16, 2020) (expressly rejecting that CUTSA displacement was an affirmative defense, establishing instead that it is a "defense that [plaintiff] failed to state a cause of action," and explaining the defendant "did not need to plead CUTSA supersession in its answer before raising it at trial").  And federal courts have held the same for parallel UTSA provisions.  *See Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1050 (D. Ariz. 2010) ("Because Plaintiffs' common law claims for misappropriation of confidential information are preempted [by Arizona's UTSA], they contain no cause of action that can proceed to trial. Defendants did not, and could not have, waived the defense that the Plaintiffs fail to state claims upon which relief can be granted."); *Gaedeke Holdings VII, Ltd. v. Mills*, No. CIV-11-649, 2014 WL 347629, at \*2–3 (W.D. Okla. Jan. 30, 2014), *aff'd sub nom., Gaedeke Holdings VII Ltd. v. Baker*, 683 F. App'x 677 (10th Cir. 2017) (rejecting assertion that UTSA displacement argument was waived when it was raised for the first time in a Rule 50(a) motion; "[T]he displacement provision of [Oklahoma's UTSA] is not equivalent to preemption, particularly federal preemption, and is not an affirmative defense that is waived if it is not timely asserted."); *see also* Fed. R. Civ. P. 12(h)(2)(C) (failure to state a claim can be raised for the first time at trial).  Indeed, the Ninth Circuit explained that when trade secret displacement applies, the putative claim is "no longer operative." *See H&H Pharms., LLC v. Chattem Chems., Inc.*, No. 23-15055, 2024 WL 1734134, at \*2 (9th Cir. Apr. 23, 2024).  "No longer operative" is language for failure to state a claim, not for an affirmative defense.

Google timely brought this argument by raising it at trial when seeking judgment as a matter of law under Rule 50(a).  *See* Dkt. No. 661 at 8-11, 23-24.

Cooley LLP
Attorneys at Law
San Francisco

7

Google's Renewed Motion For
Judgment As A Matter Of Law
3:20-CV-04688-RS

**3.    The Lack of Legally-Cognizable Damages Compels Judgment as a Matter of Law as to the Intrusion Upon Seclusion Claim**

Plaintiffs' actual damages theory—and the jury's damages verdict—are undoubtedly displaced by CUTSA. *See supra* Section III.A.1. And this conclusion also compels judgment as a matter of law as to the entirety of the intrusion upon seclusion claim. Damages are an essential element of this damages-seeking claim. *See Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 238 F. Supp. 2d 1158, 1169 (N.D. Cal. 2002) ("The essential elements of this claim are . . . [that] [t]he intrusion caused plaintiff to sustain injury, damage, loss or harm.") (citation omitted); *Rowland v. JPMorgan Chase Bank, N.A.*, No. C 14-00036, 2014 WL 992005, at *11 (N.D. Cal. Mar. 12, 2014) (same). The jury's actual damages verdict was displaced by CUTSA and the jury awarded no nominal damages. Dkt. No. 670 (Jury Verdict). Thus, the lack of damage compels judgment as a matter of law in favor of Google.

**B.    There is No Class-Wide Privacy Interest in (s)WAA-Off Data**

Plaintiffs' Privacy Claims require that Plaintiffs have a legally-recognized privacy interest. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009). Here, Plaintiffs have failed to show a privacy interest over (s)WAA-off data. There are only two classes of legally protectable privacy interests: (1) "interests in precluding the dissemination or misuse of sensitive and confidential information," and (2) "interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference." *Hill v. Nat'l Collegiate Athletic Ass'n.*, 7 Cal. 4th 1, 35 (1994). Plaintiffs' claims implicate only the first category. When claiming a privacy interest over information, what matters to the claim is the *content* of the information. *See Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1271 n.17 (9th Cir. 1998) ("Under California law, a legally recognizable privacy interest arises from the sort of information revealed[.]"); *see also Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (explaining there could be a privacy interest "in particular circumstances" depending on the sensitivity of the information). The test is whether the information is "sensitive" or "confidential." *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040–41 (N.D. Cal. 2014) (finding no privacy interest in emails categorically, but rather the particular content of an email).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**GOOGLE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**
**3:20-CV-04688-RS**

Because the existence of a privacy interest turns on the *content* of the information, Plaintiffs had to establish the (s)WAA-off data collected for each class member, across each third-party app, was sufficiently "sensitive" or "confidential" to establish a privacy interest. Plaintiffs failed: because each app controls what data is collected, *see* Trial Tr. Aug. 19 (Monsees) at 263:10-19, the range of what data is collected—and thus what privacy interest exists (if any)—is varied. Mr. Rodriguez confirmed this fact. Trial Tr. Aug. 25 (Rodriguez) at 857:21-858:4. Even as to the default data collected by Google Analytics, Trial Tr. Aug. 21 (Hochman) at 687:3-688:4, Plaintiffs have not shown what that data is or how it is sufficiently "sensitive" or "confidential" to establish a privacy interest. Plaintiffs utterly failed to establish that every class member had a privacy interest in the unique and varied stream of data requested by each app owner.

Moreover, the class-wide evidence presented at trial made clear that (s)WAA-off data is non-personal, pseudonymous, and stored in segregated, secured, and encrypted locations. It is not associated with a user's Google Account and is not associated with any individual user's identity. *See* Trial Tr. Aug. 19 (Monsees) at 300:21-24 (explaining that (s)WAA-off data is saved "not against their Web & App Activity, not against their Google Account. We save it as de-identified information"); Trial Tr. Aug. 21 (Hochman) at 685:16-686:3; Trial Tr. Aug 26 (Ganem) at 1138:8-12, 1161:19-1162:4, 1179:22-1180:8; Trial Tr. Aug. 28 (Ruemmler) at 1513:24-1514:3; Trial Tr. Aug. 29 (Black) at 1705:17-22. It is *never* used to "put the puzzle together." Trial Tr. Aug. 26 (Ganem) at 1130:16-1132:9, 1134:5-1135:15, 1137:2:15; Trial Tr. Aug. 29 (Black) at 1722:1-24. Plaintiffs failed to show that de-identified data, attributable to no one, is "sensitive" or "confidential" to them such that there is a privacy interest.

At best, Plaintiffs seek to shortcut the typical examination about whether there is even a possible privacy interest by claiming that users turning (s)WAA off created a class-wide privacy interest. But as explained below, Google's disclosures unambiguously preclude Plaintiffs' misreading of the (s)WAA toggle. And, even if Plaintiffs' reading were correct, there is no legally valid privacy interest in protecting de-identified data. *Popa*, 153 F.4th at 791. This court should hold that there is no privacy interest here, thus precluding the Privacy Claims.

**C.    Plaintiffs Failed to Establish a Reasonable Expectation of Privacy Over (s)WAA Data on a Class-Wide Basis**

Plaintiffs' Privacy Claims required proof of class-wide reasonable expectation of privacy. Having a "reasonable expectation of privacy" is distinct from a "privacy interest." *See Yahoo Mail*, 7 F. Supp. 3d at 1038. To establish a reasonable expectation of privacy, a plaintiff must show: 1) an actual, subjective expectation of privacy, and 2) that the expectation was objectively reasonable. *Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 812 (9th Cir. 2002); *Hill*, 7 Cal. 4th at 35. "Customs, practices, and physical settings" inform the analysis, and an expectation of privacy must be "objectively reasonable under the circumstances, especially in light of the competing social interests involved." *Sheehan v. San Francisco 49ers, Ltd.*, 45 Cal. 4th 992, 1000 (2009). Plaintiffs failed to offer legally sufficient class-wide evidence that they had a reasonable expectation of privacy over (s)WAA-off data.

**1.    No Subjective Class-Wide Expectation of Privacy**

Plaintiffs offered no class-wide evidence of an expectation of privacy. Doubtless they will again assert that California law does not require proof of subjective expectation. *See* Dkt. No. 333 at 18 (citing *Opperman v. Path*, No.13-cv-00453, 2016 WL 3844326, at *11 (N.D. Cal. July 15, 2016)); Dkt. No. 352 at 8-9 (accepting Plaintiffs' argument). But Plaintiffs are wrong.

Start with the case cited in *Opperman* that supposedly dispenses with the subjective expectation requirement: *Shulman v. Grp. W. Prods., Inc.*, 18 Cal. 4th 200, 232 (1998). *Shulman* did not dispense with a plaintiff needing to prove a subjective expectation of privacy; it *confirmed* this requirement. In reversing, the California Supreme Court in *Shulman* identified *two separate* triable issues of fact on the reasonable expectation of privacy question: "Whether [Plaintiff] *expected* her conversations with Nurse Carnahan or the other rescuers to remain private *and* whether *any such expectation* was reasonable." *Shulman*, 18 Cal. 4th at 233-34 (emphases added). Both the *expectation* and the reasonableness of *any such expectation* are elements; the former subjective, the latter objective. Expectations of privacy are not free-floating. A plaintiff must *have* such an expectation. *See Hernandez*, 47 Cal. 4th at 286 (the first element must be an intrusion "as to which the plaintiff *has* a reasonable expectation of privacy.") (citing *Shulman*;

emphasis added).

In any event, binding Ninth Circuit precedent requires that Plaintiffs prove a class-wide subjective expectation of privacy. California follows the Restatement (2d) of Torts section 652B. *Hernandez*, 47 Cal. 4th at 286 (describing *Shulman* as "approving and following" Restatement (2d) of Torts § 652B). And the Ninth Circuit has held that under Section 652B, "[t]o prevail on the first prong, the plaintiff must show (a) an actual, subjective expectation of seclusion or solitude in the place, conversation, or matter, and (b) that the expectation was objectively reasonable." *See Med. Lab'y Mgmt. Consultants*, 306 F.3d at 812-13 (interpreting Section 652(B) which Arizona similarly adopted and followed); *see also In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 933 n.5 (N.D. Cal. 2015) (same, applying California law).

It is true that courts do not often need to articulate the requirement of a subjective expectation of privacy because, obviously, the plaintiff in a given case is asserting a privacy claim. But the various formulations by California courts make this requirement clear. *See Hill*, 7 Cal. 4th at 36 ("The second essential element of a state constitutional cause of action for invasion of privacy is a reasonable expectation of privacy *on plaintiff's part*.") (emphasis added); *Hernandez,* 47 Cal. 4th at 286 ("[T]he expectation of privacy must be 'objectively reasonable.'"); *Garrabrants v. Erhart*, 98 Cal. App. 5th 486, 500 (2023) ("Whether an expectation of privacy is reasonable in any given circumstance is a context specific inquiry"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) ("Plaintiffs must show that … they maintain a reasonable expectation of privacy"). Even the district judge who decided *Opperman* later explained, in denying class certification in a different case, "[t]he Court agrees with [defendant] that the resolution of Plaintiffs' claim under the California Constitution turns on individualized factual questions of *whether each user actually maintained* their reasonable expectation of privacy." *Hart v. TWC Prod. & Tech. LLC*, No. 20-cv-03842, 2023 WL 3568078, at *9 (N.D. Cal. Mar. 30, 2023) (emphasis added).[6]

It is equally clear that Plaintiffs have failed to provide evidence establishing a subjective

---

[6] In addition, there would be insurmountable Article III standing issues if Plaintiffs could bring a class claim and not have to prove that the class members *actually had an expectation of privacy*.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

GOOGLE'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
3:20-CV-04688-RS

expectation of privacy on a class-wide basis.  The critical fact question here is what expectation of privacy, if any, did the class members have in turning (s)WAA off.  Class members could have many different expectations, not least of which is the expectation that (s)WAA-off does *exactly what Google says it does*: prevents Google Analytics data from third-party apps from being saved to the user's Google Account.  *See* Trial Tr. Aug. 19 (Monsees) at 300:21-24; 307:8-14; 312:1-3; Trial Tr. Aug. 20 (Monsees) at 391:5-22 (explaining that PX-002 showed survey participants correctly understood WAA-off); Trial Tr. Aug. 27 (Hoffman) at 1366:20-1367:1 ("[T]here is a very robust and rigorous body of research that has shown very clearly that different people have different preferences for privacy."), 1371:5-11 (explaining the challenge of creating a design interface that would satisfy "many millions of users"), 1395:19-1396:10, 1397:1-3 ("Google's account settings inform users that even with the settings off, their data will still be collected".).  Plaintiffs took this class case to trial, and thus assumed the burden of proving "whether individual users understood that their affirmative" act to turn (s)WAA off embodied an expectation that Google would not collect and save *any* Google Analytics data from that user's third-party apps.  *Hart*, 2023 WL 3568078, at *10.  It is not enough for Plaintiffs to point to ambiguities and cherry-picked language to argue that class members *reasonably could have* understood (s)WAA to mean what the named Plaintiffs assert.  That argument is relevant solely to the reasonableness of any such expectation; it does not prove that the class actually maintained an expectation of privacy.  Rather, Plaintiffs were obligated to prove that *each* and *every* class member—all 98 million of them—shared the same understanding of (s)WAA-off.

But at trial, Plaintiffs offered no class-wide evidence of subjective expectation.  They have the personal expectations of their two Named Plaintiffs, both from Florida.  That's it.  No survey.  Trial Tr. Aug. 27 (Hoffman) at 1410:8-1411:15.  No statistical evidence.  No expert testimony.  Trial Tr. Aug. 21 (Hochman) at 730:8-15.  Indeed, the only evidence of any widely-shared understanding of (s)WAA came from David Monsees and Steve Ganem, who both testified that apart from this lawsuit, they had never heard of anyone expecting that turning (s)WAA-off would prevent Google's collection of de-identified Google Analytics data.  Trial Tr. Aug. 20 (Monsees) at 368:19-369:3; Trial Tr. Aug. 26 (Ganem) at 1200:21-1201:2.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

GOOGLE'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
3:20-CV-04688-RS

In lieu of actual class-wide proof, Plaintiffs attempted to rely on the summary results of an April 2020 Google research project. *See* PX-002. The only testimony explaining that exhibit came from David Monsees, who clearly testified the research project was not about determining users' expectations about whether Google collected any data at all while (s)WAA was off. Rather, it was whether users understood that (s)WAA-off meant that Google would stop saving information *to their Google Account. See, e.g.,* Trial Tr. Aug. 19 (Monsees) at 330:20-21; Trial Tr. Aug. 20 (Monsees) at 391:11-18. But crediting Plaintiffs' *argument* as to how to read PX-002, Trial Tr. Sep. 2 (Plaintiffs' Closing) at 1887:18-1888-2, 1907:3-20, 1968:7-1969:15, still leaves Plaintiffs woefully short. They introduced no testimony or expert opinion about whether and to what extent the summary of results of the research—which consisted of 9 participants (PX-002.0007)—could be reliably applied class-wide to 98 million members. Nor could they, as the extrapolation of the summary results to the entire class would violate basic principles of statistics.[7]

At bottom, even crediting for Rule 50(b) purposes the Named Plaintiffs' testimony of *their* subjective expectations of privacy plus Plaintiff's reading of PX-002, the failure of class-wide proof is monumental. The Supreme Court in *Wal-Mart v. Dukes* explained that 120 affidavits were "too weak to raise any inference" of a discriminatory practice for certification purposes where the affidavits represented only 1/12,500th of the putative class and related to only 235 of Wal-Mart's 3,400 stores. 564 U.S. at 353-58. Plaintiffs' failure of proof—11 of 98,000,000 (or 1/8,909,090th)—is **two magnitudes of order** weaker than *Dukes. See also Allen v. Ollie's Bargain*

---

[7] This Court can understand and apply basic statistical principles to PX-002. *See, e.g., Stupp Corp. v. United States*, 619 F. Supp. 3d 1314, 1320 (Ct. Int'l Trade 2023) ("[T]he court may recognize the basic statistical principles discussed in these texts. The idea, for example, that a skewed statistical sample may yield inaccurate results is inductive reasoning—not an assertion of fact."); *Miller v. Fed. Land Bank of Spokane*, 587 F.2d 415, 422 (9th Cir. 1978) ("This is a matter of mathematics, of which the court could and should have taken judicial notice."). Basic statistical practices confirm the need for a representative, unbiased sample and a sufficiently large sample. Request for Judicial Notice ("RJN"), Ex. 1 at 225, 380.

There is no evidence in or regarding PX-002 that the nine participants were fairly representative of the 98 million class members. Indeed, PX-002 indicates the opposite: interviews were conducted (meaning no geographic diversity); the screens shown and interviews were apparently conducted exclusively in English; and only two of the nine were younger than 30.

Nor can a sample size of nine participants cannot be extrapolated reliably to a population of 98 million. It is standard practice in scientifically designed surveys to construct a sample at the 95% confidence level. RJN, Ex. 1 at 245, 251, 381. That required a sample of 385 participants. *See* RJN, Ex. 2 at 301. PX-002 notably does not present any confidence level or margin of error calculations or results.

*Outlet, Inc.*, 37 F.4th 890, 902 (3d Cir. 2022) (holding that less than a dozen customer complaints about inaccessible store aisles "prove[d] nothing at all" about store aisle accessibility across 400 stores throughout 29 states); *Darling v. Dignity Health, Dignity Cmty. Care*, No. 20-cv-06043, 2022 WL 1601408, at *8 (N.D. Cal. Apr. 16, 2022) (holding that the plaintiffs failed to establish that 11 declarants' experiences were sufficiently representative of the putative classes, which could consist of at most 40,600 members). No reasonable juror could conclude from Plaintiffs' trial evidence that the class members uniformly had a subjective expectation of privacy over (s)WAA-off data.[8]

### 2.    Any Expectation of Privacy was Objectively Unreasonable

Plaintiffs' sole pitch for a class-wide reasonable expectation of privacy is that they understood the (s)WAA-off disclosure to mean that Google would stop collecting *any and all* data from third-party apps for (s)WAA-off users and that alone makes their expectation reasonable. This fails for both Plaintiffs. *See Hammerling v. Google, LLC*, No. 22-17024, 2024 WL 937247, at *1 (9th Cir. Mar. 5, 2024). And there is no reasonable expectation of privacy for the class.

At a minimum, Plaintiffs' claimed expectation can be reasonable only if their reading of Google's disclosures is reasonable. It is not. Google's disclosures contradict Plaintiffs' selective reading of the (s)WAA-off disclosures. In *Hammerling v. Google*, Google's privacy policy explained that it "collect[ed] data about users' '[a]ctivity on third-party sites and apps that use [Google's] services.'" 2024 WL 937247, at *1. The Ninth Circuit held that, "[r]ead **in the context of the Policy as a whole**, the phrase . . . **<u>unambiguously discloses</u>** Google's collection of user activity data in third-party apps." *Id*. at *2 (emphasis added). That same disclosure was in Google's "unambiguously disclose[d]" Privacy Policy here. *See* PX-062 at 3; Trial Tr. Aug. 20 (Monsees) at 463:8-467:12. In the "Activity Controls" page of a user's Google Account settings (where the "Web & App Activity" setting can be toggled on or off), Google explains that the settings therein can be used to "[c]hoose which settings will save data **in your Google**

---

[8] Obviously cognizant of this utter lack of proof, Plaintiffs tried repeatedly to get Dr. Hochman to expand his "technical baseline" opinion into a broader opinion of consumer belief. This Court quite properly sustained Google's repeated objection. Even so, Dr. Hochman admitted that he did not initially understand (s)WAA-off to reach Google Analytics data. Trial Tr. Aug. 21 (Hochman) at 685:16-686:3.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

GOOGLE'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
3:20-CV-04688-RS

**Account**." PX-084 at 1 (emphasis added). Google further disclosed that "[i]f Web & App Activity is turned on, your searches and activity from other Google services are saved **in your Google Account**." PX-113 at 1 (emphasis added). When users toggled (s)WAA off, they are presented with, functionally, an "are you sure" pop-up notification, explaining that users can "learn about the data that Google continues to collect and why at policies.google.com." G0574.R2 at 22. Finally, in Google's general Privacy Policy, it discloses to users that "a website might use our . . . analytics tools (**like Google Analytics**) . . . These services **may share information** about your activity with Google . . ." PX-062 at 22 (emphasis added).[9] "[I]n the context of the Polic[ies] as a whole," Google's representations "unambiguously disclose[]" that the WAA/(s)WAA settings *only* pertain to data saved to a user's Google Account, and that third-party apps may collect and transmit data to Google. *See Hammerling*, 2024 WL 937247, at *2. Thus, Google's disclosures—as a matter of law—contradict Plaintiffs' reading.

To avoid these conclusions, Plaintiffs' expert Dr. Hochman engaged in the mental gymnastics of making up his own definition of "Google Account" so as to create a Plaintiff-friendly "technical baseline." Trial Tr. Aug. 21 (Hochman) at 673:6-675:8. And Plaintiff Rodriguez disagreed with the meaning of the word "and." Trial Tr. Aug. 25 (Rodriguez) at 829:6-8. Any expectation of privacy based on *redefining* Google's own defined terms or quibbling over the word "and" is unreasonable.

Google's disclosures unambiguously confirm that (s)WAA-off means only that Google will not save (s)WAA-off data to the user's account. But, at the very best for Plaintiffs, there was ambiguity—and ambiguity necessarily *defeats* an objectively reasonable expectation. There is no

---

[9] Professor Hoffman testified in detail that Google's disclosures were a good example of "progressive disclosures"—a "principle" of interface design—providing users with access to the amount of information they want without "cognitively overloading" them, and that Google's disclosures adequately informed users that even with (s)WAA off, their data would still be collected. *See* Trial Tr. Aug. 27 (Hoffman) at 1371:12-23 (explaining the "principle" of progressive disclosures), 1376:9-1377:13 (explaining that the Activity Controls page was a good example of progressive disclosures), 1377:24-1382:14 (describing the "are you sure" pop-up screen (i.e., revocation text) as a "guardrail" to prevent user error), 1387:9-11 ("[R]egardless of how you look at it, Google is informing you that it's going to continue collecting your data."), 1391:24-1393:5 (explaining that the privacy policy "very clearly" explains that Google will collect (s)WAA-off data), 1394:19-1396:10 (explaining how Google's progressive disclosures are "an example of good UI design."), 1397:1-3 (same).

Cooley LLP
Attorneys at Law
San Francisco

15

Google's Renewed Motion For
Judgment As A Matter Of Law
3:20-CV-04688-RS

"broadly based and widely accepted community norm" that an ambiguous disclosure can create.

Indeed, what common evidence there is refutes any objectively reasonable expectation. Plaintiffs' expectation is not reasonable because it would destroy Google Analytics—a service relied on by millions of apps. Trial Tr. Aug. 26 (Ganem) at 1176:17-1177:5; Trial Tr. Aug. 20 (Monsees) at 429:7-12, 410:8-13. Moreover, Plaintiffs' complaint about the ubiquity of phones, apps, and data collection cuts against such expectation. Trial Tr. Aug. 20 (Santiago) at 524:4-9 ("How do we know the other [] app[s] [don't] have a Google SDK as well? It's everything. It's everywhere."); *see Sheehan*, 45 Cal.4th at 1000. The "broadly based and widely accepted community norm" is directly contrary to Plaintiffs' claimed expectation. Indeed, the only bit of "survey" evidence provided by Plaintiffs came from Plaintiff Santiago: he brought up ESPN's use of Google's SDK on its fantasy football site and requested his league—presumably his friends—to move sites; he "was overruled" by the other eleven members of his league. Trial Tr. Aug. 20 (Santiago) at 522:21-523:5.

Moreover, the "competing social interests" further favor Google. Google's products ensure "personalized experiences," and Google Analytics allows app developers to improve their apps. *Id.* (Monsees) at 375:8-10, 404:16-21; Trial Tr. Aug. 26 (Ganem) at 1129:13-21. As explained above, the data at issue is non-personalized, de-identified browsing data. The data is not selected by Google, but by app developers. Trial Tr. Aug. 19 (Monsees) at 263:10-19; Trial Tr. Aug. 21 (Hochman) at 686:25-688:11. While the nature of data is such that Plaintiffs have no expectation of privacy in it all, *see supra* Section III.B., those same facts sharply reduce the reasonableness of Plaintiffs' expectation of privacy. *Sanders v. ABC*, 20 Cal. 4th 907, 915 (1999) (explaining that there are "degrees and nuances to societal recognition of our expectations of privacy").

Next, look at what class-wide evidence is missing: Plaintiffs' have no common evidence of "customs of time and place," or of relevant community social norms, or any other evidence that would confirm that their claimed expectation is reasonable. There is no consumer survey. No statistical evidence. *See Hart*, 2023 WL 3568078, at *9. Plaintiffs themselves have confirmed that the reasonable expectation of privacy varies based on the individual class member characteristics. Plaintiff Santiago admits that he shares data with Google in order to get a

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

GOOGLE'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
3:20-CV-04688-RS

personalized experience. Trial Tr. Aug. 20 (Santiago) at 505:3-5. And Plaintiff Rodriguez has no problem letting his children's (s)WAA-off data be captured because they just have video game apps. Trial Tr. Aug. 25 (Rodriguez) at 857:21-858:4.

Nor is there class-wide evidence that all class members conducted themselves as if there were an expectation of privacy. *Hart*, 2023 WL 3568078, at *10. In fact, when Plaintiff Rodriguez testified that he would not use any app that sent his data to third-party analytics companies, he was immediately contradicted by his consent to his Target app sending analytics data to Google, Crazy Egg, and Adobe. Trial Tr. Aug. 25 (Rodriguez) at 812:24-813:24, 843:12-19, 856:3-11. Incredibly, he then contradicted the entire class claim, testifying "I don't think it was a big deal" that Target shared his analytics data with Google Analytics—despite Google's doing so being contrary to his supposed "deal" with Google. *Id*. at 843:12-21. He testified that "what the problem here is, it's more Google gathering all the data from all my apps to kind of paint a picture of who I am." *Id*. This admission compels judgment as a matter of law. Plaintiffs did not conduct themselves in a manner consistent with the claimed expectation of privacy. *Sheehan*, 45 Cal. 4th at 1000. Doubtless millions of other class members did the same.

At bottom, Plaintiffs failed to demonstrate that the class members—all 98 million of them—had an objectively reasonable expectation of privacy.

**D.    Plaintiffs Did Not Establish that Data Collection or Transfer is Highly Offensive to All Class Members**

Plaintiffs failed to establish that Google's (s)WAA-off data collection was "highly offensive." Conduct is "highly offensive," if it is "an egregious breach of social norms" or an "intrusion [] in a manner highly offensive to a reasonable person." *See also Williams v. DDR Media*, LLC, No. 22-cv-03789, 2023 WL 5352896, at *5–6 (N.D. Cal. Aug. 18, 2023); *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, No. 18-cv-07591, 2021 WL 842574, at *2 (N.D. Cal. Mar. 5, 2021) (holding no privacy concerns in de-identified information in discovery dispute); *London v. New Albertson's, Inc.*, No. 08-CV-1173, 2008 WL 4492642, at *8 (S.D. Cal. Sept. 30, 2008) (same). "[D]ata collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling v. Google LLC*, 615 F.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

GOOGLE'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
3:20-CV-04688-RS

Supp. 3d 1069, 1090 (N.D. Cal. 2022); *see also Popa*, 153 F.4th at 792 (holding the plaintiff alleged no harm where information collected was not "embarrassing, invasive, or otherwise private"). Plaintiffs failed to submit sufficient evidence such that a reasonable jury could find this element satisfied class-wide.

### 1. Plaintiffs Failed to Present Class-Wide Evidence of the Offensive Nature of the Collected (s)WAA-Off Data

In a data collection case, the nature of the data collected is a critical factor in the offensiveness analysis. In *Popa*, the plaintiff sued Microsoft since its software installed on third-party websites collected the following information from users: "the date a user visited the website, the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website, the country where the user accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls." 153 F.4th at 786. The Ninth Circuit held that this online tracking was not highly offensive because the plaintiff "identifie[d] no embarrassing, invasive, or otherwise private information collected." *Id*. at 791. Rather, "the monitoring of [plaintiff's] interactions with [defendant's] website seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id*. That aptly describes the (s)WAA-off data at issue here. *See, e.g.,* Trial Tr. Aug. 21 (Hochman) at 597:21-23 (explaining that Google collects "event data"); Trial Tr. Aug. 19 (Monsees) at 300:21-24 (explaining that (s)WAA-off data is saved as "de-identified information"); Trial Tr. Aug. 26 (Ganem) at 1162:1-4 ("[I]f the sWAA isn't consented to, then the data is only logged in what we call pseudonymous logs, de-identified logs."). Similarly in *McCoy v. Alphabet, Inc.*, the defendant collected "confidential and sensitive data," including how long the plaintiffs and class members used and had open certain apps. No. 20-cv-05427, 2021 WL 405816, at *8 (N.D. Cal. Feb. 2, 2021). The court held that because the data "was not tied to any personally identifiable information, was anonymized, and was aggregated," the collection did not rise "to the requisite level of an egregious breach of social norms." *Id*. This is precisely why "routine" data collection cannot be highly offensive. *See, e.g., Hammerling*, 615 F. Supp. 3d at

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

GOOGLE'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
3:20-CV-04688-RS

1090.  Thus, the collection of non-sensitive and anonymized data is insufficient as a matter of law to establish offensiveness.  Throughout trial, Google presented substantial class-wide evidence that (s)WAA-off data is non-personal, pseudonymous, and stored in segregated, encrypted locations.  The data collected was selected by third-party apps—apps that each class member installed and used.  Trial Tr. Aug. 19 (Monsees) at 263:10-19; Trial Tr. Aug. 21 (Hochman) at 686:25-688:11.  Google imposed technical and policy barriers to prevent joining the (s)WAA-off data with any user.  Trial Tr. Aug. 26 (Ganem) at 1130:16-1132:9, 1134:5-1135:15, 1137:2:15, 1138:8-12, 1161:19-1162:4, 1179:22-1180:8; Trial Tr. Aug. 29 (Black) at 1705:17-22, 1722:1-24; Trial Tr. Aug. 20 (Monsees) at 429:18-430:3 (explaining that "[(s)WAA] data, when these settings are off, cannot be saved against [GAIA] IDs. It would violate policies."), 430:9-18 ("[W]e have code that basically makes sure that when WAA is off, even if a system tries to write that data to your Google Account, it's locked; it cannot be written.").  It therefore cannot be sufficiently confidential or sensitive to warrant a finding of highly offensiveness.  *See Popa*, 153 F.4th at 791; *McCoy*, 2021 WL 405816, at *8.

Plaintiffs offered no class-wide evidence that the nature of (s)WAA-off data is sufficiently invasive or sensitive to be highly offensive, or that the manner of collection was highly offensive.  Nor could they feasibly do so: the manner of collection and the nature of (s)WAA-off data is specific to each third-party app using Google Analytics.  There are 2.3 million third-party apps according to Plaintiffs' own expert, see Trial Tr. Aug. 21 (Hochman) at 586:2–3, and Google's SDKs are embedded in 97 percent of the top Android apps and over 50 percent of the top iOS apps, *id*. at 586:6–9.  Yet Plaintiffs offered no uniform evidence about the manner or nature of data collection across each.  Again, Plaintiffs had no survey or statistical evidence showing the level of offense, if any, that class members have toward Google's conduct.  In fact, the evidence Plaintiffs did offer regarding the nature of specific apps' (s)WAA-off data only established that offensiveness *could not* be proven class-wide on this basis without individualized analysis.  Trial Tr. Aug. 25 (Rodriguez) at 812:23-813:21, 843:12-19 (explaining that the collection from certain apps was problematic, but not from the Target app).

Even the Named Plaintiffs failed to provide sufficient evidence of offensiveness.  Plaintiff

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Santiago admitted that he continued to use apps that use Google Analytics, including ESPN, Twitter, MapMyRide, Target, and Duolingo. Trial Tr. Aug. 20 (Santiago) at 526:16-21, 547:19-548:1. He failed to mention this supposed "psychologically distressing" realization to any of his friends or coworkers. *Id*. at 516:16-18, 529:11-20. He was never diagnosed with a medical condition or prescribed medication. *Id*. at 517:21-518:11. And he had the Facebook App, even though Facebook does put the "puzzle pieces" of its users together. Trial Tr. Aug. 20 (Santiago) at 479:12-20; Trial Tr. Aug. 27 (Ganem) at 1260:23-1261:18.

Plaintiff Rodriguez permitted his children to suffer this supposed "highly offensive" conduct. Trial Tr. Aug. 25 (Rodriguez) at 856:3-858:4. And of course, despite claiming that Google's conduct was "highly offensive," he testified that Google's collection of (s)WAA-off data from his Target app—despite it being contrary to the "deal" he had with Google—was "not a big deal." *Id*. at 812:23-813:21, 843:12-19.[10]

### 2.    Plaintiffs' Evidence that Google Misled Users was Insufficient for Offensiveness

Plaintiffs' affirmative evidence that Google allegedly misled its users is insufficient to establish offensiveness class-wide.[11] For Plaintiffs' evidence to actually establish that class members were deceived, Plaintiffs must prove that class members uniformly had an expectation that did not match with Google's conduct. Offensiveness cannot be based on misleading class members who were, in fact, not misled. Yet none of the evidence Plaintiffs offered was sufficient to establish that class-members uniformly had an expectation that was contrary to Google's conduct.

First, take the Google-commissioned research. *See* PX-002. As explained above, the research itself was not about users' expectations about whether Google would collect (s)WAA-off data. *See supra* Section III.C.1. Further, Plaintiffs offered no testimony, expert or otherwise, to

---

[10] Dr. Hochman himself admitted that his own business website used Google Analytics, and he did not think that using Google Analytics harmed the visitors of his website. Trial Tr. Aug. 21 (Hochman) at 696:11-25.

[11] This is a factor that courts outside of this district have held to be relevant to offensiveness. *See, e.g., In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017). Yet this factor is not dispositive, as the *Vizio* court itself based its offensiveness analysis on additional factors. *See id*.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

GOOGLE'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
3:20-CV-04688-RS

opine on the reliability and class-wide applicability of this single study. Indeed, the research had a sample size of nine individuals. Because the survey was not even about the relevant issue and Plaintiffs offered no evidence that the results could be applicable class-wide, no reasonable juror could conclude that PX-002 established that *all* class members felt deceived by Google's conduct.

Second, Google's internal communications about (s)WAA disclosures are similarly unhelpful for establishing, class-wide, that class members were deceived by Google's disclosures. For instance, PX-003, communications between witnesses David Monsees and Chris Ruemmler, were not about how the collection of (s)WAA-off data actually works. As David Monsees and Chris Ruemmler both testified, Google employees were discussing a proposal to temporarily store *identified* data in a user's Google Account, even while (s)WAA was off. Trial Tr. Aug. 20 (Monsees) at 380:19-381:6, 382:22-388:17; Trial Tr. Aug. 28 (Ruemmler) at 1514:17-1516:16. Even so, the most that internal Google communications establish is what Google employees believed Google's disclosures to mean. If a Google employee believed that Google's disclosures were deceptive, yet a class member perfectly understood how the (s)WAA toggle functioned, then there can be no deception and hence, no offensiveness. *Cf. Roley v. Google LLC*, No. 18-cv-07537, 2021 WL 1091917, at *7 (N.D. Cal. Mar. 22, 2021) ("[F]raud requires both actual and reasonable reliance.").

Plaintiffs' evidence that class members were uniformly misled is woefully deficient. This is therefore an insufficient basis for finding that Google's conduct was highly offensive across the class. And even if Plaintiffs had presented evidence that would allow a reasonable jury to conclude the opposite, that would only be a factor in favor of the highly offensive requirement. And it is not enough. Plaintiffs' evidence showed that Google's alleged failure to abide by its (s)WAA representations was—by itself—"not a big deal." Trial Tr. Aug. 25 (Rodriguez) at 842:1-843:21. And the (s)WAA-off data here was anodyne, de-identified analytics data. Google's conduct falls far short of the "highly offensive" requirement class-wide. *Cf. Popa*, 153 F.4th at 791.

Cooley LLP
Attorneys at Law
San Francisco

21

Google's Renewed Motion For
Judgment As A Matter Of Law
3:20-CV-04688-RS

### 3. Plaintiffs' Evidence in Support of the "Puzzle Piece" Theory was Non-Existent

The evidence at trial proved that the (s)WAA-off data is de-identified, not inherently offensive, encrypted, and segregated. Thus, Plaintiffs fell back on the "puzzle piece" theory. But Plaintiffs' effort to establish "highly offensive" conduct via the "puzzle piece" theory fails as there is no evidence that Google ever put the puzzle pieces together.

The jury was presented with ample evidence that Google did not—and could not—do this. *See, e.g.*, Trial Tr. Aug. 26-27 (Ganem) at 1162:1-4 (explaining (s)WAA-on and -off data are stored in separate logs), 1254:8-12 (explaining it is "technically impossible" for Google to re-identify (s)WAA-off users with Google's current infrastructure); Trial Tr. Aug. 29 (Black) at 1722:1-11, 1725:12-17, 1749:3-12 (explaining he found no evidence that Google re-identifies or combines data). Plaintiff Rodriguez's bare assertion that Google could do so, based on nothing but speculation, is insufficient. *Cf. Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations."). Even Plaintiffs' expert, Dr. Hochman, could not definitively say that Google actually put users' (s)WAA-off data together to "build a fuller picture." The closest he got: "[N]othing stops Google from reidentifying [(s)WAA-off data]." Trial Tr. Aug. 21 (Hochman) at 739:3-4. Nothing stops passersby from peering through private windows, yet that does not make walking down the sidewalk an invasion of privacy. Thus, Plaintiffs' evidence fails to prove the "puzzle piece" theory of offensiveness.

Google's mere ability to "build a fuller picture," in the absence of actually doing so, cannot establish offensiveness. This would implicitly eliminate the requisite intent element. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037-38 (N.D. Cal. 2014); Dkt. No. 445 (MSJ Order) at 9. A mere "hypothetical scenario" cannot do. Dkt. No. 445 (MSJ Order) at 11.

### E. Any "Intrusion" was Not Intentional

For both their Privacy Claims, Plaintiffs must prove that Google acted with the intent to invade or intrude on their privacy. *See Taus v. Loftus*, 40 Cal. 4th 683, 724–25 (2007) ("[T]he intrusion upon another's privacy [must] be *intentional*[.]"). A mere intentional action—without an

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

GOOGLE'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
3:20-CV-04688-RS

intent to invade privacy—is not sufficient. *See Marich v. MGM/UA Telecomms., Inc.*, 113 Cal. App. 4th 415, 421-22 (2003); *Zayas v. Ortega*, No. 17-cv-02739, 2018 WL 11227735, at *19 (N.D. Cal. Aug. 10, 2018) ("'[I]ntent' . . . means that the actor desired to cause the consequences of his act or believed that the consequences were substantially certain to result from it."). The evidence does not support Google's intent to invade privacy.

Plaintiffs provided no evidence establishing that Google acted intentionally. Rather, David Monsees—the person who makes the decision at Google as to what (s)WAA applies to and how Google understands (s)WAA—testified that Google understood (s)WAA-off to revoke permission to save data to the user's Google Account; that he did not understand (and in 12 years never heard) anyone other than Plaintiffs claim (s)WAA-off revoked permission to store Google Analytics data; that he did not (and does not) understand the (s)WAA-off language to suggest that it revokes permission to store Google Analytics data; and that understanding (s)WAA-off to revoke permission as to storing Google Analytics data "wouldn't make any sense" because Google "couldn't provide app and site developers the features of Google Analytics." *E.g.*, Trial Tr. Aug. 19 (Monsees) at 257:25-258:1, 300:17-24, 306:17-18; Trial Tr. Aug. 20 (Monsees) at 366:7-17, 368:19-369:13, 410:2-411:14; PX-003; Trial Tr. Aug. 26 (Ganem) at 1155:14-1156:1.

Indeed, the undisputed evidence is that Google had reason to understand that the class members had given permission. The Ninth Circuit has confirmed that "[r]ead in the context of the [Privacy] Policy as a whole, the phrase 'apps that use [Google's] services' unambiguously discloses Google's collection of user activity data in third-party apps." *Hammerling*, 2024 WL 937247, at *2; *id.* at *3 ("the [Privacy] Policy here expressly disclosed Google's intention to track their activity on third-party apps."); *see also* PX-062; PX-123. It is similarly undisputed that Google's agreement with each third-party app required the app to disclose Google's data collection to, and obtain consent from, all class members. Trial Tr. Aug. 19 (Monsees) at 262:16-18; *see also* G0933; Trial Tr. Aug. 26 (Ganem) at 1148:18-1150:17, 1157:6-11; Trial Tr. Aug. 27 (Ganem) at 1259:24-1260:14.

The evidence is uniform: any privacy intrusion was inadvertent, not intentional.

Cooley LLP
Attorneys at Law
San Francisco

23

GOOGLE'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
3:20-CV-04688-RS

### F.      Affirmative Consent Precludes Liability on All Claims

Consent is an absolute defense to Plaintiffs' claims, and Plaintiffs failed to produce evidence sufficient for a reasonable juror to find that Plaintiffs did not affirmatively consent to Google's conduct.

The Ninth Circuit has held that Google's policies unambiguously disclose its user activity data in third-party apps. *See Hammerling*, 2024 WL 937247, at *2. As explained above, Google's disclosures—the (s)WAA-off toggle, the Activity Control Page, the Privacy Policy, and the (s)WAA-revocation "are you sure" pop-up—clearly explain Google's collection of third-party app data and that (s)WAA-off operates only to prevent Google from saving such third-party app data to the user's Google Account. *See supra* Section III.C.2.[12] Since Google unambiguously disclosed its third-party app data policies as a matter of law, no reasonable juror could find that Plaintiffs did not consent.

## IV.      CONCLUSION

For the reasons stated above, Google respectfully requests that the Court grant it judgment as a matter of law as to Plaintiffs' damages and their Privacy Claims.

---

[12] Google understands this Court's ruling that Google may not argue that third-party app disclosures separately or jointly with Google's disclosures provided consent. Google respectfully objects to that ruling. To preserve the issue, Google proffers here that the terms of the third-party app disclosures and consent from class members to those third party-app terms separately and/or combined with Google's disclosures establishes consent.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Dated: March 30, 2026

Respectfully submitted,

COOLEY LLP

By: */s/ Jonathan Patchen*
    Michael A. Attanasio
    Benedict Y. Hur
    Simona Agnolucci
    Eduardo E. Santacana
    Jonathan Patchen
    Argemira Flórez
    Naiara Toker
    Harris Mateen
    Thilini Chandrasekera
    Isabella McKinley Corbo
    Chelsea Hu
    Michael B. Morizono

*Attorneys for Defendant*
*Google LLC*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

GOOGLE'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW
3:20-CV-04688-RS