**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
Samantha Parrish, CA Bar No. 318681
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
alanderson@bsfllp.com
sparrish@bsfll.com
mwright@bsfllp.com

*Counsel for Plaintiffs*

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
Ryan Sila (admitted pro hac vice)
Xiaoming Wang (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com
twang@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>        Defendant. | Case No. 3:20-cv-04688-RS<br><br>**PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL**<br><br>Judge: Hon. Richard Seeborg<br>Hearing Date: August 13, 2026, at 1:30 p.m.<br>Courtroom: 3 – 17th Floor |

CASE NO. 3:20-cv-04688-RS

PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL

## PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on August 13, 2026, at 1:30 p.m., or on a day thereafter to be determined by the Court, the undersigned will appear before the Honorable Richard Seeborg of the United States District Court for the Northern District of California to renew their motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), and for a new trial under Federal Rule of Civil Procedure 59.

This Motion is made on the grounds that the evidence presented at trial permitted only one reasonable conclusion: that Google is liable to Plaintiffs for their claim under California's Comprehensive Computer Data Access and Fraud Act ("CDAFA"). Plaintiffs proved all elements of this claim and are entitled to judgment as a matter of law. If the Court grants this relief, then Plaintiffs also request an opportunity to seek additional attorneys' fees and costs from Google.

In the alternative, Plaintiffs seek a new trial on their CDAFA claim pursuant to Rule 59. The Court erred by declining to instruct the jury on "damage or loss" under the CDAFA. This deficiency prejudiced Plaintiffs and requires a new trial on that claim, primarily so that Plaintiffs can seek additional attorneys' fees and costs from Google.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the records and files in this action, all other materials in the Court's record and docket activity, argument of counsel, and such other matters as the Court may consider.

Dated: March 30, 2026

/s/ Mark C. Mao
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   LEGAL STANDARD .................................................................................................... 1

III.  ARGUMENT ................................................................................................................. 1

      A.    Plaintiffs Proved That Google Was Liable Under the CDAFA ......................... 1

           1.    Plaintiffs are owners of their mobile devices and data. ......................... 2

           2.    Google knowingly accessed Plaintiffs' mobile devices and data. ......................... 3

           3.    Google took, copied, or made use of data from Plaintiffs' mobile
devices without their permission. ......................... 3

           4.    Plaintiffs suffered damage and loss. ......................... 6

           5.    Google's conduct was a substantial factor in causing Plaintiffs'
damage and loss. ......................... 7

      B.    After Granting the Motion for Judgment as a Matter of Law on Plaintiffs'
CDAFA Claim, the Court Should Also Order Google to Pay Attorneys' Fees and Costs ............. 7

      C.    In the Alternative, the Court Should Grant a New Trial on the Plaintiffs'
CDAFA Claim ................................................................................................... 7

           1.    The Jury's Finding of No CDAFA Liability Was Against the
Weight of the Evidence .......................................................................... 8

           2.    The Jury Was Erroneously Instructed on the Standard for Proving
"Damage or Loss" under CDAFA ......................... 8

           a.    Legal Standards .......................... 8

           b.    This Court Denied Plaintiffs' Request for an Instruction on the
Meaning of "Damage or Loss" under CDAFA ......................... 9

           c.    The Jury Was Not Correctly Instructed on the Meaning of
"Damage or Loss" under CDAFA ......................... 9

IV.   CONCLUSION ............................................................................................................. 11

**PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Brown v. Google LLC,*
    2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ................................................................. 10

*Brown v. Google LLC,*
    685 F. Supp. 3d 909 (N.D. Cal. 2023) ...................................................................... 4, 6

*Brown v. Shasta Union High Sch. Dist.,*
    2010 WL 3442147 (Cal. App. Div. Sept. 2, 2010) ........................................................ 5

*Caballero v. City of Concord,*
    956 F.2d 204 (9th Cir. 1992) ................................................................................. 11

*City of Burlington v. Dague,*
    505 U.S. 557 (1992) ............................................................................................. 7

*Clem v. Lomeli,*
    566 F.3d 1177 (9th Cir. 2009) ................................................................................ 8

*Frost v. BNSF Railway Co.,*
    914 F.3d 1189 (9th Cir. 2019) ................................................................................ 8

*Goldamez v. Potter,*
    415 F.3d 1015 (9th Cir. 2005) ................................................................................ 8

*Hansen v. Cal. Dept. of Corrections,*
    920 F. Supp. 1480 (N.D. Cal. 1996) ....................................................................... 4

*Hill v. NCAA,*
    7 Cal. 4th 1 (1994) ............................................................................................... 4

*Houge v. Ford,*
    285 P.2d 257 (Cal.1955) ....................................................................................... 2

*In re Carrier IQ, Inc.,*
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) .................................................................. 7, 10

*In re Facebook, Inc. Internet Tracking Litig.,*
    956 F.3d 589 (9th Cir. 2020) ................................................................................ 10

*In re Jesusa V.,*
    85 P.3d 2 (Cal. 2004) ........................................................................................... 2

*Johnson v. City of San Jose,*
    2025 WL 2374004 (N.D. Cal. Aug. 15, 2025) ............................................................ 1

*Ketchum v. Moses,*
    24 Cal. 4th 1122 (2001) ......................................................................................... 7

*L.A. Mem'l Coliseum Comm'n v. National Football League,*
    726 F.2d 1381 (9th Cir. 1984) ................................................................................ 8

**PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

*Miller v. Republic Nat'l Life Ins. Co.*,
    789 F.2d 1336 (9th Cir. 1986) ........................................................................................ 8

*Molski v. M.J. Cable's, Inc.*,
    481 F.3d 724 (9th Cir. 2007) ......................................................................................... 1

*Montera v. Premier Nutrition Corp.*,
    2022 WL 10719057 (N.D. Cal. Oct. 18, 2022)............................................................. 1

*Murphy v. City of Long Beach*,
    914 F.2d 183 (9th Cir. 1990) ......................................................................................... 8

*O'Neal v. Johnson*,
    2018 WL 4050741 (E.D. Cal. Aug. 23, 2018) ............................................................ 11

*Sanders v. City of Newport*,
    657 F.3d 772 (9th Cir. 2011) ......................................................................................... 8

*Swinton v. Potomac Corp.*,
    270 F.3d 794 (9th Cir. 2001) ......................................................................................... 8

*Torres v. City of Los Angeles*,
    548 F.3d 1197 (9th Cir. 2008) ....................................................................................... 1

*Williams v. Facebook, Inc.*,
    498 F. Supp. 3d 1189 (N.D. Cal. 2019) ........................................................................ 7

*Zhang v. Am. Gem Seafoods, Inc.*,
    339 F.3d 1020 (9th Cir. 2003) ....................................................................................... 1

**Statutes**

Cal. Penal Code § 502(e)(1)............................................................................................... 2

**Rules**

Fed. R. Civ. P. 50 ....................................................................................................... *passim*

Fed. R. Civ. P. 59 ....................................................................................................... *passim*

**PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 50(b), Plaintiffs renew their motion for judgment as a matter of law on Claim 1 (the CDAFA claim). Plaintiffs moved for judgment under Rule 50(a) (Dkt. 660), and Plaintiffs now renew their request under Rule 50(b). In the alternative, under Rule 59(a), Plaintiffs seek a new trial for their Claim 1 because the jury's finding of no liability was against the weight of the evidence and because the jury was not properly instructed on what constitutes "damage or loss."

## II. LEGAL STANDARD

Under Rule 50(b), a motion for judgment as a matter of law "is appropriate when the evidence presented at trial permits only one reasonable conclusion." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008) (citations omitted). Put differently, a motion under Rule 50(b) should be granted "if no reasonable juror could find in the non-moving party's favor." *Id.*; *see also Johnson v. City of San Jose*, 2025 WL 2374004, at *2 (N.D. Cal. Aug. 15, 2025) (discussing and applying 50(b) standard).

Under Rule 59, following a jury trial, a court may grant a motion for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," but a court is "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). "Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence," or "for other reasons, the trial was not fair to the party moving." *Molski v. M.J. Cable's, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal marks and citation omitted). Unlike a motion for judgment as a matter of law, "the court reviewing a motion for new trial 'can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party.'" *Montera v. Premier Nutrition Corp.*, 2022 WL 10719057, at *2 (N.D. Cal. Oct. 18, 2022) (Seeborg, C.J.).

## III. ARGUMENT

### A. Plaintiffs Proved That Google Was Liable Under the CDAFA

Here, the admissions by Google's witnesses and other evidence presented at trial demonstrate that Google was liable under the CDAFA (Claim 1). Plaintiffs therefore are entitled to judgment on Google's

**PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

liability on that claim. That liability means that Google must also pay Plaintiffs' attorneys' fees and costs, in addition to the Judgment.

### 1. Plaintiffs are owners of their mobile devices and data.

No reasonable juror could find in Google's favor on Element 1, because Plaintiffs proved that they are "owners or lessees of mobile devices or data." Dkt. 666 (Jury Instructions) at 15 (No. 14, Element 1). Google agreed that Plaintiffs owned their devices. *See* Dkt. 534 (Joint Pretrial Statement) at 8 (undisputed fact 6 "Plaintiffs owned their mobile devices throughout the relevant time period"). Plaintiffs' undisputed ownership of their "devices" established Element 1 of the CDAFA claim, without any need for the jury to consider whether Plaintiffs also owned the "data" that Google collected from those devices. *See* Cal. Penal Code § 502(e)(1) (granting right to sue for damages to "the owner or lessee of the computer, computer system, computer network, computer program, or[1] data") (emphasis added).

In addition to undisputed evidence that Plaintiffs owned their "devices," the evidence also conclusively established Plaintiffs' ownership of the at-issue sWAA-off "data." Google's counsel and its employees consistently framed the sWAA-off data as belonging to users. For example, when Product Manager David Monsees was asked by Google's counsel: "Is de-identified data *user data . . .* as people talk about it within Google?" (Trial Tr. 370:25–371:8) (emphasis added), Mr. Monsees responded: "*I think if it comes from users, we tend to think of it as user data*, though it's not personal information" *Id.* (emphasis added). Google's counsel later questioned the "CEO" of Google Analytics, Steve Ganem, about Google's Privacy Policy (Plaintiffs' exhibit PX-62, which included statements regarding "your information") and whether Google allows users to control how "*your* analytics information is used." Trial Tr. 1183:13–1184:3. Mr. Ganem testified that Google does "offer controls over how *the user's data* is used and collected as it relates to specific use cases." Trial Tr. 1190:2–11 (emphasis added). These admissions establish ownership of the at-issue data. *See also, e.g.*, PX-62 at 1 ("When you use our services, you're trusting us with *your* information" and "across our services, you can adjust your privacy

[1] "The 'ordinary and popular' meaning of the word 'or' is well settled . . . . It has a disjunctive meaning: 'In its ordinary sense, the function of the word 'or' is to mark an alternative such as 'either this or that.'" *In re Jesusa V.*, 85 P.3d 2, 24–25 (Cal. 2004) (internal citation omitted). "In its ordinary sense, the function of the word 'or' is to mark an alternative such as 'either this or that.'" *Houge v. Ford*, 285 P.2d 257, 260 (Cal.1955).

**PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

settings to control what we collect and how *your* information is used"); Trial Tr. 264:11–22 (Mr. Monsees agreeing the "you" used in Google's Privacy Policy is the "Google user"); G0587 (Google User Data Access Policy broadly defining "User Data" to include "Personally Identifiable, Pseudonymous, and Anonymous Data").  The only reasonable conclusion based on the trial record is that Plaintiffs proved they are owners both of their mobile devices and of their data, establishing Element 1 twice over.

**2.  Google knowingly accessed Plaintiffs' mobile devices and data.**

No reasonable juror could find in Google's favor on Element 2 because Plaintiffs proved that "Google knowingly accessed Plaintiffs' mobile devices or data."  Dkt. 666 (Jury Instructions) at 15 (No. 14, Element 2).  Mr. Ganem, as Google's corporate representative, agreed that the sWAA-off data "comes directly from a device to Google."  Trial Tr. 1278:5–8.  Dr. Jonathan Hochman also explained how the at-issue Google SDKs take "data from the users' devices and gives that data to Google."  Trial Tr. 584:23–585:4, 594:25–595:3.  Dr. Hochman confirmed that Google collected 4.5 quadrillion pages of sWAA-off data from consumers' devices during the class period.  Trial Tr. 618:19–619:3.  The evidence established that Google designed the SDKs to obtain the at-issue data by accessing Plaintiffs' devices, and those SDKs successfully obtained Plaintiffs' at-issue data by accessing their devices.  Mr. Sam Heft-Luthy, former product manager for Google's Privacy Policy, even admitted that it was a "common understanding" among Google employees that Google was collecting this sWAA-off activity data.  Trial. Tr. 1060:10–15.  The only reasonable conclusion based on the trial record is that Plaintiffs proved that Google knowingly accessed their mobile devices and data, establishing Element 2.

**3.  Google took, copied, or made use of data from Plaintiffs' mobile devices without their permission.**

No reasonable juror could find in Google's favor on Element 3 because the trial record established that "Google took, copied, or made use of data from those Plaintiffs' mobile devices without Plaintiffs' permission."  Dkt. 666 (Jury Instructions) at 15 (No. 14, Element 3).  Google's witnesses admitted that Google took, copied, and made use of data from Plaintiffs' devices.  *See*, *e.g.*, Trial Tr. 319:24–320:6 (Mr. Monsees agreeing that as of July 25, 2019, Google was "collecting user's WAA-off data" without "disclosing [it] to the users"); *see also* Trial Tr. 1195:14–1196:1 (Ganem admitting that Google uses sWAA-off data to, *inter alia*, inform machine learning models), Trial Tr. 1206:13–20 (Ganem admitting

-3-

**PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

that Google receives the sWAA-off data with "all of the personal identifiers in it" and "makes a copy of that" data first), Trial Tr. 1207:17–22 (Ganem admitting that the sWAA-off data, upon receipt by Google, is copied multiple times and stored in different places), Trial Tr. 1212:25–1213:2 (Ganem admitting that Google uses "sWAA-off data for conversion tracking"); Trial Tr. 1340:4–9 (Langner admitting that Google uses sWAA-off data for "conversion measurement" which is "valuable to show—for Google to show how our ads are performing"); Trial Tr. 1733:20–25 (Google's expert, Dr. Black, agreeing that Google "collects and copies the same data from a person's use of third-party apps . . . regardless of whether sWAA is on or off"); *see also* Trial Tr. 583:15–19, 617:5–22, 631:6–632:12 (Dr. Hochman confirming that Google takes sWAA-off data "from people's devices when they were using non-Google apps" and that Google continuously during the class period saved, copied, and used that sWAA-off data to "drive their ad revenue, to support their advertising system," and to contribute to "product development and improvement").

No reasonable juror could have found permission for at least the following reasons.

First, Mr. Monsees admitted that Google was collecting this data without "disclosing that to the users, that 'I'm using your WAA-off data' and for what purpose." Trial Tr. 319:24–320:6; *see Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023) ("For consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue. … [C]onsent is only effective if the person alleging harm consented 'to the particular conduct, or to substantially the same conduct' and if the alleged tortfeasor did not exceed the scope of that consent.").

Second, Google's witnesses admitted that Google took this data without providing Plaintiffs with any choice. Trial Tr. 469:8–12 (Mr. Monsees confirming that Google does not provide any control that "give[s] users the ability and power to prevent [Google] from collecting" sWAA-off data); Trial Tr. 1191:21–24 (Mr. Ganem confirming that there is no "privacy setting that a Google user can use to stop Google from collecting the sWAA-off data"); PX-388 at 126:09–127:01, 128:21–129:03 (Miraglia deposition testimony confirming same); *see Hill v. NCAA*, 7 Cal. 4th 1, 26, 42 (1994) (holding that consent is ineffective if "involuntary," including for example where the "consequence" of refusal is exclusion from "an economic necessity that society has decreed must be open to all"); *Hansen v. Cal. Dept. of Corrections*, 920 F. Supp. 1480, 1505 (N.D. Cal. 1996) (holding consent invalid as a matter of law on this

basis); *Brown v. Shasta Union High Sch. Dist.*, 2010 WL 3442147, at *9 (Cal. App. Div. Sept. 2, 2010) (holding consent given as a condition of participation in certain extracurricular activities was involuntary and therefore invalid).

Third, Google's witnesses confirmed there is no way for users to even *view* the sWAA-off data Google has collected, let alone to force Google to delete that data.  Trial Tr. 311:22–312:3 (Monsees); Trial Tr. 1214:3–8, 1253:17–25 (Ganem); *see also* Trial Tr. 629:11–16 (Dr. Hochman).

Fourth, Google collected data first without even determining whether a user had given permission for that collection and subsequent use—Google's witnesses admitted that Google's so-called "consent check" happened *after* Google took and copied the data, with all the personal identifiers and sWAA-off data associated with it.  Trial Tr. 1206:13–20 (Ganem admitting that Google receives the sWAA-off data with "all of the personal identifiers in it" and "makes a copy of that" data first before checking whether the user's sWAA-setting was "off"); Trial Tr. 599:5–21 (Dr. Hochman confirming that Google "tak[es] the [sWAA-off] data bundle from the user's phone" and "does a variety of processing on that data packet" including making a copy of it "before [Google] checks for consent").  This pre-consent-check collection was done even though other systems at Google, like App Indexing, would not collect user data when sWAA was off.  Trial Tr. 602:25–603:24, 615:16–616:1, 633:22–634:2 (Dr. Hochman confirming how the App Indexing technology works and how it could be applied to Google's other systems, including analytics and advertising products).

Finally, no reasonable juror could have found permission given the internal documents admitted into evidence that demonstrate that Google did not inform Plaintiffs of the data that Google was collecting. *See, e.g.*, PX-3 at 1 (Google's disclosures described by Google employees as "very deceptive"); PX-4 (same disclosures described as "intentionally vague"); PX-2 at 20 (In an study that Google commissioned, "[a]ll participants expected turning off toggle to stop their activity from being saved"); PX-9 at 6 ("Most respondents will believe that turning off WAA will result in no data being collected").  The only reasonable conclusion from the evidence presented at trial is that Plaintiffs proved Element 3, that is, proved that Google acted "without Plaintiffs' permission" when Google took, copied, or made use of data from Plaintiffs' mobile devices.  Dkt. 666 (Jury Instructions) at 15 (No. 14, Element 3).

**PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

**4.  Plaintiffs suffered damage and loss.**

No reasonable juror could find in Google's favor on Element 4, where Plaintiffs also proved that they "suffered damage or loss." Dkt. 666 (Jury Instruction) at 15 (No. 14, Element 4).  Google's witnesses admitted that the sWAA-off data taken by Google was valuable.  *See, e.g.*, Trial Tr. 300:11–14 (Monsees); Trial Tr. 1194:21–24, 1195:14–23, 1198:1–6, and 1211:9–1213:6 (Ganem); Trial Tr. 1777:3–12 (Black); *see also* PX-163 at 7 (discussing the benefits Google derives from the conduct at issue).  Google's employee Mr. Ruemmler wrote in 2019 that Google "probably do[esn't] want to lose" data about "[a]ds you clock on, or things you buy" because "that is how we charge for Ads," including when sWAA is off. PX-3 at 3.  He elaborated at trial that Google does this because "We don't want to go out of business." Trial Tr. 1463:13–18.  The loss of that valuable data was a loss for purposes of this CDAFA claim.  *See* Dkt. 445 at 18 (recognizing that Plaintiffs' "intangible harms are sufficiently concrete to constitute damage or loss under current law") (citing *Brown v. Google LLC*, 685 F. Supp. 3d at 940).

The evidence also confirmed that Google's conduct resulted in battery degradation and bandwidth usage.  That is a concrete form of both damage and loss to Plaintiffs.  Trial Tr. 638:13–639:15 (Dr. Hochman on direct testifying that Google's data collection and taking data from the user's phone "uses up the phone's bandwidth" and "also uses energy because taking the data requires the phone to make radio transmissions, and this reduces the power in the battery.  So it means that the phone will die sooner. . . . And when the battery goes dead sooner, not only is your phone dead at the end of the day, your phone only has so many recharge cycles."), 648:20–22 (Dr. Hochman on direct testifying that Google's collection directly from the user's device "harms the devices" by "consuming the bandwidth" and "using up battery power."), 725:21–726:3 (Dr. Hochman on cross testifying that "Google themselves raised the issue of bandwidth and battery life" and developed a technique that "reduce[d] the impact on the user's device" because that use was "significant"), and 726:13–19 (Dr. Hochman on cross reiterating that Google considered resource consumption). As this Court previously held, other courts have repeatedly recognized that depletion of battery and bandwidth constitutes "damages or loss" for purposes of CDAFA.  *See* Dkt. 445 at 19 ("Courts recognize depletion of battery and computing resources as acceptable forms of damages or loss for the purposes of a CDAFA claim."); *see also Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189,

**PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

1199 (N.D. Cal. 2019); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1066–67 (N.D. Cal. 2015).  The evidence of battery degradation and bandwidth usage was undisputed by Google.

**5.  Google's conduct was a substantial factor in causing Plaintiffs' damage and loss.**

No reasonable juror could find in Google's favor on Element 5, because Plaintiffs proved that "Google's conduct was a substantial factor in causing Plaintiffs' damage or loss."  Dkt. 666 (Jury Instruction) at 15 (No. 14, Element 5).  Google never contended that there was another cause of Plaintiffs' damages or loss. Nor could it.  Google's taking, copying, and using Plaintiffs' sWAA-off data without their knowledge or permission was not merely a substantial factor in causing their damage and loss but the only cause that there is evidence to support.

**B.      After Granting the Motion for Judgment as a Matter of Law on Plaintiffs' CDAFA Claim, the Court Should Also Order Google to Pay Attorneys' Fees and Costs**

After entering judgment that Google is liable for violating the CDAFA, the Court should then also order Google to pay Plaintiffs' attorneys' fees and costs, in addition to the Judgment amount.

The CDAFA provides this Court with power to order Google to pay Plaintiffs' attorneys' fees: "In any action brought pursuant to this subdivision the court may award reasonable attorney's fees." Cal. Penal Code § 502(e)(2). That award is not limited to Class Counsel's lodestar, as it would be if this were a *federal* fee-shifting statute. *See City of Burlington v. Dague*, 505 U.S. 557 (1992) (enhancement of attorney fees awarded to prevailing party for contingency is not permitted under fee-shifting provisions of Solid Waste Disposal Act and Clean Water Act). Instead, California fee-shifting statutes are applied using "the lodestar adjustment method, including discretion to award fee enhancements." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1137 (2001). Class Counsel are today filing a motion seeking an award of attorneys' fees from the "common fund" created for the classes by their efforts, in the amount of one-third of the common fund, as well as costs from that common fund. Because Google is liable for violating the CDAFA, Google should also be ordered to make a payment in those amounts to the classes so that the classes are made whole and receive the entirety of the judgment entered by this Court against Google.

**C.      In the Alternative, the Court Should Grant a New Trial on the Plaintiffs' CDAFA Claim**

If the Court denies Plaintiffs' motion for judgment as a matter of law on their CDAFA claim, then in the alternative Plaintiffs request a new trial on this claim. A new trial is warranted because the verdict

was against the weight of the evidence and because the jury was not properly instructed on the element of "damage or loss" for Plaintiffs' CDAFA claim. If Plaintiffs prevail in that new trial, then Google should be ordered to pay all of Plaintiffs' attorneys' fees and costs.

### 1. The Jury's Finding of No CDAFA Liability Was Against the Weight of the Evidence

For all the reasons given above, *supra* § III.A, the jury's finding of no liability under the CDAFA was "against the weight of the evidence." *Molski,* 481 F.3d at 729. Therefore a new trial should be ordered on the CDAFA claim. *Id.*

### 2. The Jury Was Erroneously Instructed on the Standard for Proving "Damage or Loss" under CDAFA

#### a. Legal Standards

A "party is entitled to have theories supported by the evidence presented to the jury" in the form of jury instructions, as long as the theories have "legal as well as factual support." *L.A. Mem'l Coliseum Comm'n v. National Football League*, 726 F.2d 1381, 1398 (9th Cir. 1984). "[E]rroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). "An instruction is erroneous when, viewing the instructions as a whole, the 'substance of the applicable law was [not] fairly and correctly covered.'" *Frost v. BNSF Railway Co.*, 914 F.3d 1189, 1194 (9th Cir. 2019) (quoting *Miller v. Republic Nat'l Life Ins. Co.*, 789 F.2d 1336, 1339 (9th Cir. 1986) (alteration in original)).

Where there is an error in the instructions given to the jury, that error is presumed to be prejudicial "and the non-moving party bears the burden of establishing that 'it is more probable than not' that a properly instructed jury 'would have reached the same verdict.'" *Id.* (quoting *Goldamez v. Potter*, 415 F.3d 1015, 1025 (9th Cir. 2005)). A party is prejudiced by an erroneous instruction where "looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered." *Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir. 2001). Prejudice is generally "more likely than not if nothing about th[e jury's] verdict indicates that the result would have been the same without the error." *Sanders v. City of Newport*, 657 F.3d 772, 781 (9th Cir. 2011) (quoting *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (marks in original)).

### b. This Court Denied Plaintiffs' Request for an Instruction on the Meaning of "Damage or Loss" under CDAFA

Plaintiffs' Disputed Jury Instruction No. 33 would have instructed the jury on the standard for proving "damage or loss" under CDAFA.  Dkt. 595 at 43.  Specifically, this instruction would have informed the jury that "damage or loss" could be proven by: (1) the value of data taken from Plaintiffs; (2) Google's profits from data taken from Plaintiffs; (3) loss of the right to control Plaintiffs' data; (4) loss of privacy over Plaintiffs' data; (5) depletion of Plaintiffs' mobile devices' battery life and/or bandwidth; and (6) injury to Plaintiffs' peace of mind.  Dkt. 595 at 43.

The Court denied Plaintiffs' request to give Disputed Jury Instruction No. 33. The Court gave no specific reason for that denial. However, the Court did indicate on the record that all objections to the jury instructions had been preserved. *See* Trial Tr. 1785:3–6 ("And I know, because you just do all the things I ask you to do and I very much appreciate it, you are going to pick your fights and not decide that every single instruction needs to be ventilated"); *see also* Trial Tr. 1826:16–1827:1 (acknowledging the "fairly extensive record" of what the parties had proposed and inviting the parties to "file something" if "it gets a little unclear if you've agreed or not agreed to" an instruction and noting that the Court was "going to send you the [instructions] on Monday afternoon and we're done").

### c. The Jury Was Not Correctly Instructed on the Meaning of "Damage or Loss" under CDAFA

Because the Court refused to give Disputed Jury Instruction No. 33, the jury was not appropriately instructed regarding the meaning of "damage or loss" for purposes of CDAFA Elements 4 and 5. The only instruction the jury received came from Instruction No. 23, concerning the *measure* of damages. In Instruction No. 23, the Court told the jury: "First, Plaintiffs claim compensatory or 'actual' damages based on the economic value of allowing access to the data at issue." That description of damages covers only the first of the six categories of "damage or loss" provided in Plaintiffs' Disputed Jury Instruction No. 33, namely, the "value of data taken." But Instruction No. 23 *omitted* the other five categories of "damage or loss" listed in Proposed Instruction No. 33, namely, (2) "Google's profits from data taken," (3) the "loss of the right to control" the data, (4) the "loss of privacy" over the data, (5) the "depletion" of "battery life and/or bandwidth" and (6) the "injury to Plaintiffs' peace of mind." By omitting those other five examples of "damage or loss" from the final instructions, the Court guided the jury to believe that these categories

-9-   CASE NO. 3:20-cv-04688-RS

could *not* be considered, and that "damage or loss" for purposes of CDAFA was limited solely to the kind of "damage" described in Instruction No. 23, namely, "the economic value of allowing access to the data at issue."

That was error because the other five categories of harm, enumerated in Disputed Instruction No. 33, are legally sufficient to prove "damage or loss" for purposes of CDAFA. As for (2) Google's profits, those can suffice to show "damage or loss" under CDAFA. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600–01 (9th Cir. 2020) (because plaintiffs "allege that Facebook profited from" their "data," Plaintiffs had Article III standing to pursue a CDAFA claim). As for (5), depleted battery and bandwidth, these injuries also suffice to prove a CDAFA claim. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1067 (because plaintiffs alleged that defendants' tracking software caused "more than a de minimis impact on the battery life and performance of Plaintiffs' mobile devices," plaintiffs had Article III standing to pursue CDAFA claim). And as for (3), (4), and (6), Plaintiffs' "loss" of "control" and "privacy" and their "injury" to "peace of mind," those are also cognizable forms of "damage or loss" for purposes of CDAFA. Dkt. 587 at 2 (this Court recognizing that "the jury may also be weighing nominal damages for various hard-to-measure harms, such as lost peace of mind . . . and the violation of privacy"); *see also Brown v. Google LLC*, 2023 WL 5029899, at *19 (N.D. Cal. Aug. 7, 2023) (recognizing the market for data and plaintiffs' loss of control after Google took that data without paying for it).

Plaintiffs' request for this instruction was supported by ample evidence in the trial record that demonstrated Plaintiffs suffered from these additional kinds of "damage or loss." As for (2), Google's profits, Mr. Lasinski provided extensive testimony regarding these. Trial Tr. 922:9–18 (Lasinski estimating that Google's gross revenue related to (s)WAA-off collection and usage was at least $4.6 billion), Trial Tr. 894:4–11, 941:25–942:9 (Lasinski testifying that he considered whether to account for fixed costs, which he surmised should not be subtracted because they were not incremental); *see also* Dkt. 700 at 23–39 (summarizing the extensive trial testimony that Mr. Lasinski provided, and Google's own witnesses agreed with, to arrive at calculations for lost profits). As for (5) the depletion of battery and bandwidth, Dr. Hochman provided extensive testimony on this kind of harm. Trial Tr. 638:13–639:15, 648:20–22, 725:21–726.3, and 726:13–19 (Hochman). As for (3), the "loss" of "control" over their data, Google's witnesses confirmed that Plaintiffs were not even able to *know* the full extent of the sWAA-off

**PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

data collected, let alone exercise any control over Google's use of that data. *Supra*, at 4–5 (citing testimony from Monsees and Ganem). As for (4) and (6), the loss of "privacy" and the injury to "peace of mind," the jury had ample evidence to infer both of those kinds of harm based on the breadth of collection and the undisputed evidence that Google was able to reidentify and produce Plaintiffs' own sWAA-off data in this litigation. Trial Tr. 605:8–611:23, 612:22–25 (Dr. Hochman on direct testifying about the (s)WAA-off, "pseudonymized" data Google identified in its data sources belonging to the Plaintiffs and produced in this case), Trial Tr. 733:24–734:16 (Dr. Hochman on cross testifying about the "pseudonymized log data" that Google was able to pull from its data sources for the Plaintiffs).

Because Plaintiffs proved they and the class suffered these other five categories of damage or loss, they were "entitled to have theories supported by the evidence presented to the jury" in the form of an appropriate instruction on damage or loss. *L.A. Mem'l Coliseum Comm'n*, 726 F.2d at 1398.

By "fail[ing] to give [Plaintiffs' proposed] instruction," while also giving Instruction No. 23 that appeared to limit damages solely to the sWAA-off data's "economic value," the Court guided the jury to believe that these other five categories of harm did not qualify as "damage or loss." *Murphy*, 914 F.2d at 187; *see also O'Neal v. Johnson*, 2018 WL 4050741, at *2 (E.D. Cal. Aug. 23, 2018) (granting new trial on instructional error, because "'[a]n error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless'") (quoting *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir. 1992)).

This instructional error also infected the jury's deliberations. On the morning the jury delivered the verdict, the foreperson passed note stating that "the jury would like some clarification as to the definition of 'damage or loss.'" Dkt. 671 at 6. The Court responded that "[n]o further instruction is available on that definition." Dkt. at 7. The next time the jury passed a note, they announced that they had reached a verdict. Dkt. at 8. The jury did not find liability for violation of the CDAFA. Dkt. 670. The obvious inference from that sequence of events is that the jury returned a verdict of "no liability" under CDAFA because they were not correctly instructed on the meaning of "damage or loss."

## IV.    CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant this motion.

**PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

Dated: March 30, 2026

Respectfully submitted,

By: *Mark C. Mao*
**BOIES SCHILLER FLEXNER LLP**
Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

David Boies (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

James Lee (admitted *pro hac vice*)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
Samantha Parrish, CA Bar No. 318681
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
alanderson@bsfllp.com
sparrish@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander P. Frawley (admitted *pro hac vice*)
Ryan Sila (admitted *pro hac vice*)
Xiaoming Wang (admitted *pro hac vice*)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com
twang@susmangodfrey.com

-12-                    CASE NO. 3:20-cv-04688-RS

**PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
Kenya F. Reddy (admitted *pro hac vice*)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
kreddy@forthepeople.com
mram@forthepeople.com

*Counsel for Plaintiffs*

**PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**