**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
Alexander Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com
aboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
alanderson@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
Ryan Sila (admitted pro hac vice)
Xiaoming Wang (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com
twang@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br>  vs.<br><br> GOOGLE LLC,<br><br>        Defendant. | Case No.: 3:20-cv-04688-RS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Judge: Hon. Richard Seeborg<br>Hearing Date: August 13, 2026, at 1:30 p.m.<br>Courtroom 3 – 17th Floor |

# TABLE OF CONTENTS

**INTRODUCTION** ....................................................................................................................1

**BACKGROUND** ....................................................................................................................3

    I.    Class Counsel's Trial Victory Secures Groundbreaking Relief for the Classes ......................................................................................................................3

    II.    Class Counsel's Extensive Efforts Litigating This Case. ...................................4

        A.    Preparation of the Complaint (through July 2020). ................................4

        B.    Google's Motions to Dismiss (August 2020 – May 2021). .....................4

        C.    Fact Discovery (June 2021 – October 2022). ........................................5

        D.    Expert Discovery (November 2022 – July 2023). ...................................6

        E.    Class Certification (August 2023 – October 2023). ...............................7

        F.    Class Notice, Class Modification, & Summary Judgment (November 2023 – July 2024). .......................................................................7

        G.    Trial Preparation (August 2024 – July 2025). ......................................8

        H.    Trial (August 2025 – September 2025). .................................................9

        I.    Post-Trial Proceedings (October 2025 – Present, and Ongoing). ...............9

**ARGUMENT** ......................................................................................................................10

    I.    The Court Should Award Fees Equal to One-Third of the Common Fund. ..........................................................................................................10

        A.    Legal Standard ....................................................................................10

        B.    California Law Supports an Award of One-Third of the Common Fund. ......................................................................................12

        C.    Ninth Circuit Precedent Also Supports an Award of One-Third of the Common Fund. ..............................................................13

        D.    Class Counsel Achieved Exceptional Results for the Classes. ...................13

        E.    This Case Was Risky and Complex. .......................................................14

        F.    Class Counsel Have Litigated this Case on a Contingent Basis. ...............16

        G.    Class Counsel in Similar Cases Have Received Similar Fee Awards. ...............................................................................................17

        H.    A Lodestar Cross-Check Confirms that an Award of One-Third of the Common Fund Is Reasonable. .......................................19

    II.    Class Counsel's Request for Reimbursement of Costs Is Reasonable. .................22

i

III.    Service Awards for the Class Representatives Are Warranted. ............................24

**CONCLUSION** ................................................................................................................25

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. Plains All Am. Pipeline L.P.*,
2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) ..........................................................................17

*In re Anthem, Inc. Data Breach Litig.*,
2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ....................................................................11, 12

*In re Apollo Grp. Inc. Sec. Litig.*,
2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ............................................................................18

*Beaver v. Tarsadia Hotels*,
2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) ....................................................................12, 22

*Becerra v. Radioshack Corp.*,
2014 WL 1266622 (N.D. Cal. Mar. 26, 2014) ..........................................................................20

*Bernstein v. Virgin Am., Inc.*,
2023 WL 7284158 (N.D. Cal. Nov. 3, 2023) ............................................................................12

*Bitmouni v. PaySafe*,
No. 3:21-cv-641 (N.D. Cal. Feb. 2, 2024).................................................................................20

*In re: Blue Cross Blue Shield Antitrust Litig.*,
No. 2:13-cv-20000 (N.D. Ala. Aug. 9, 2022)............................................................................20

*In re Bluetooth Headset*,
654 F.3d 935 (9th Cir. 2011) ....................................................................................................19

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ..................................................................................................................11

*Calhoun v. Google LLC*,
349 F.R.D. 588 (N.D. Cal. 2025) ..............................................................................................14

*Californians for Alternatives to Toxics v. Kernen Constr. Co.*,
2022 WL 22227777 (N.D. Cal. Mar. 21, 2022) ........................................................................19

*In re Capacitors Antitrust Litig.*,
2023 WL 2396782 (N.D. Cal. Mar. 6, 2023) ............................................................................18

*In re Charles Schwab Corp. Sec. Litig.*,
2011 WL 1481424 (N.D. Cal. Apr. 19, 2011)...........................................................................22

*In re Checking Acct. Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011)......................................................................................17

iii

*In re Coll. Athlete NIL Litig.*,
  2025 WL 3171376 (N.D. Cal. July 11, 2025) ...................................................................23

*In re Combustion, Inc.*,
  968 F. Supp. 1116 (W.D. La. 1997) ..............................................................................18

*Cook v. Rockwell Int'l Corp.*,
  2017 WL 5076498 (D. Colo. Apr. 28, 2017) .................................................................17

*In re Credit Default Swaps Antitrust Litig.*,
  2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) ................................................................23

*del Toro Lopez v. Uber*,
  2018 WL 5982506 (N.D. Cal. Nov. 14, 2018) ...............................................................24

*Edwards v. Nat'l Milk Producers Fed'n*,
  2017 WL 3616638 (N.D. Cal. June 26, 2017)................................................................19

*Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.*,
  2017 WL 11632540 (C.D. Cal. Sept. 22, 2017)..............................................................21

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
  2023 WL 8445812 (N.D. Cal. Oct. 10, 2023) ................................................................21

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*,
  4 F. Supp. 3d 94 (D.D.C. 2013).....................................................................................23

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
  2017 WL 4685536 (C.D. Cal. May 8, 2017)..................................................................20

*Gates v. Deukmejian*,
  987 F.2d 1392 (9th Cir. 1992) .......................................................................................20

*Graham v. DaimlerChrysler Corp.*,
  34 Cal.4th 553 (2004).....................................................................................................16

*Haddock v. Nationwide Life Ins. Co.*,
  2015 WL 13942222 (D. Conn. Apr. 9, 2015) ................................................................18

*Hale v. State Farm Mut. Auto Ins. Co.*,
  2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) .................................................................18

*Hellyer v. Smile Brands Inc.*,
  No. 8:21-cv-1886 (C.D. Cal. Jan. 16, 2024)..................................................................20

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005).................................................................13

*Hernandez v. Burrtec Waste & Recycling Servs., LLC*,
  2023 WL 5725581 (C.D. Cal. Aug. 21, 2023) ...............................................................11

iv

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ................................................................................................. 19

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009) ..................................................................................... 17

*Katz-Lacabe v. Oracle Am., Inc.*,
  2024 WL 4804974 (N.D. Cal. Nov. 15, 2024) (Seeborg, C.J.) ....................................... *passim*

*Laffitte v. Robert Half Int'l Inc.*,
  1 Cal. 5th 480 (2016) .................................................................................................. 11, 12, 16

*Martin v. Toyota Motor Credit Corp.*,
  2022 WL 17038908 (C.D. Cal. Nov. 15, 2022) ...................................................................... 21

*Meta Platforms, Inc. v. Soc. Data Trading Ltd.*,
  2022 WL 18806267 (N.D. Cal. Nov. 15, 2022) ...................................................................... 20

*Morgan v. United States Soccer Fed'n*,
  2023 WL 2558417 (C.D. Cal. Jan. 4, 2023) ........................................................................... 22

*Nagy v. CEP Am., LLC*,
  2025 WL 2960448 (N.D. Cal. Oct. 17, 2025) (Seeborg, C.J.) ................................................ 11

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
  2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ..................................................................... 18, 19

*Newton v. Equilon Enterprises, LLC*,
  411 F. Supp. 3d 856 (N.D. Cal. 2019) .................................................................................... 19

*Nitsch v. DreamWorks Animation SKG Inc.*,
  2017 WL 2423161 (N.D. Cal. June 5, 2017) ........................................................................... 21

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) (Lee, J., dissenting) ............................................................... 2, 15

*Oliveira v. Language Line Servs., Inc.*,
  767 F. Supp. 3d 984 (N.D. Cal. 2025) .................................................................................. 1, 12

*Perez v. Rash Curtis & Assocs.*,
  2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ...................................................................... 17, 18

*Perez v. Rash Curtis & Assocs.*,
  2021 WL 4503314 (N.D. Cal. Oct. 1, 2021) ........................................................................... 18

*Perez v. Rash Curtis & Assocs.*,
  2021 WL 4553023 (9th Cir. Aug. 23, 2021) ........................................................................... 18

*Quiruz v. Specialty Commodities, Inc.*,
  2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) ......................................................................... 2, 13

v

*Rodriguez v. Penske Logistics, LLC*,
2019 WL 246652 (E.D. Cal. Jan. 17, 2019) ..................................................................... 14

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ........................................................................................... 24

*Roman v. Jan-Pro Franchising Int'l, Inc.*,
2024 WL 2412387 (N.D. Cal. May 23, 2024) ........................................................... 11, 13

*Schiller v. David's Bridal, Inc.*,
2012 WL 2117001 (E.D. Cal. June 11, 2012) ................................................................. 16

*Senne v. Kansas City Royals Baseball Corp.*,
2023 WL 2699972 (N.D. Cal. Mar. 29, 2023) ................................................................ 12

*St. Louis Police Ret. Sys. v. Severson*,
2014 WL 3945655 (N.D. Cal. Aug. 11, 2014) ........................................................... 14, 22

*Stanger v. China Elec. Motor, Inc.*,
812 F.3d 734 (9th Cir. 2016) ........................................................................................... 19

*In re Syngenta AG MIR 162 Corn Litig.*,
357 F. Supp. 3d 1094 (D. Kan. 2018), *aff'd* 61 F.4th 1126 (10th Cir. 2023) .......................... 17

*In re: Takata Airbag Products Liability*,
No. 1:15-md-02599 (S.D. Fla. Sept. 8, 2017) ................................................................. 20

*In re Telescopes Antitrust Litig.*,
2025 WL 1093248 (N.D. Cal. Apr. 11, 2025) .............................................................. 2, 13

*In re Tricor Direct Purchaser Antitrust Litig.*,
2009 WL 1074451 (D. Del. Apr. 23, 2009) ..................................................................... 18

*In re Twitter Inc. Securities Litig.*,
2022 WL 17248115 (N.D. Cal. Nov. 21, 2022) ............................................................... 21

*In re U.S. Foodservice, Inc. Pricing Litig.*,
2014 WL 12862264 (D. Conn. Dec. 9, 2014) ................................................................. 17

*In re: Urethane Antitrust Litig.*,
2016 WL 4060156 (D. Kan. July 29, 2016) ..................................................................... 17

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ................................................................................. 25

*In re Vitamins Antitrust Litig.*,
2001 WL 34312839 (D.D.C. July 16, 2001) .................................................................... 17

*Vizcaino v. Microsoft Corp.*,
142 F. Supp. 2d 1299 (W.D. Wash. 2001), *aff'd*, 290 F.3d 1043 (9th Cir.
2002) ................................................................................................................................ 15

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ....................................................................................................*passim*

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
2025 WL 3006647 (N.D. Cal. Oct. 27, 2025) (Seeborg, C.J.) ............................................*passim*

**Rules**

Fed. R. Civ. P. 23(b).................................................................................................................7

Fed. R. Civ. P. 23(h).................................................................................................................10

Fed. R. Civ. P. 50 ..............................................................................................................1, 10, 22

Fed. R. Civ. P. 59 ..............................................................................................................1, 10, 22

**PLEASE TAKE NOTICE** that, on August 13, 2026 at 1:30 p.m., or on a day thereafter to be determined by the Court, the undersigned will appear before the Honorable Richard Seeborg of the United States District Court for the Northern District of California to move the Court for an order granting Plaintiffs' motion for attorneys' fees, costs, and service awards.

This Motion is based upon this Notice, the incorporated Memorandum of Points and Authorities, the concurrently filed declarations with supporting exhibits of Mark Mao, James Lee, Steven Shepard, John Yanchunis, Ryan McGee, Ryan Sila, Alexander Frawley, Anibal Rodriguez, Julian Santiago, and Susan Harvey, all other materials in the Court's record and docket activity, argument of counsel, and such other matters as the Court may consider.

## ISSUE TO BE DECIDED

Whether the Court should award the requested attorneys' fees, costs, and service awards.

## RELIEF REQUESTED

Plaintiffs ask the Court to award attorneys' fees to co-lead class counsel Boies Schiller Flexner LLP, Susman Godfrey LLP, and Morgan & Morgan ("Class Counsel") in the amount of one-third of the common fund that Plaintiffs generated, which was $440,345,685.40 at the time of final judgment and is now accruing post-judgment interest, resulting in a fee award of $146,781,895.13 as of final judgment (*i.e.*, one-third of $440,345,685.40) that will continue to grow with the accrual of post-judgment interest.[1] Plaintiffs also request reimbursement for Class Counsel's $12,422,374.42 in litigation costs, and  Plaintiffs seek $50,000 service awards for each of the Class Representatives who testified at trial (Anibal Rodriguez and Julian Santiago) and a $35,000 service award for the Class Representative who prepared to testify at trial but could not do so for medical reasons (Susan Harvey).

Dated: March 30, 2026                         By */s/ Steven Shepard*

---

[1] The $440,345,685.40 amount is based on the jury's verdict of $425,651,947, plus pre-judgment interest, as required by the Court's Final Judgment Order. Dkt. 725 at 1. This amount is accruing post-judgment interest until satisfied, *id.*, and Class Counsel requests that the Court award as attorneys' fees one-third of the total amount of the judgment following exhaustion of appeals.

## INTRODUCTION

After more than five years of hard-fought litigation and a more-than-two-week jury trial, Class Counsel secured a "historic" $425 million verdict for the two classes certified by the Court, which has been honored as one of the "Top Verdicts of 2025." The verdict recognizes Google's invasion of class members' privacy rights, provides a substantial recovery for the classes, and prompted Google to finally change its privacy disclosures, after years of refusing to do so. This is a tremendous outcome, made possible by Class Counsel's relentless pursuit of Plaintiffs' claims. They worked tirelessly throughout the pleading stage, when Google filed multiple motions to dismiss; throughout fact discovery, when the parties litigated over 20 letter-briefs on motions to compel; throughout expert discovery, when the parties exchanged over 2,000 pages of expert reports, plus voluminous spreadsheets of data analysis; and throughout the pretrial process, when Plaintiffs overcame Google's motion for summary judgment and navigated multiple *Daubert* motions and nineteen motions *in limine*. And the work isn't done. Class Counsel has defeated Google's efforts to decertify the classes and will litigate any post-judgment Rule 50 or Rule 59 motions as well as any appeal. It may be years before this case is finally resolved.

Plaintiffs respectfully request that the Court award attorneys' fees in the amount of one-third of the common fund generated for the classes. California law applies to this request because Plaintiffs prevailed on their intrusion upon seclusion and invasion of privacy claims, which are state law claims. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). An award of one-third of the common fund is "typical" in "California state court." *Oliveira v. Language Line Servs., Inc.*, 767 F. Supp. 3d 984, 1001 (N.D. Cal. 2025). This case is anything but "typical," particularly given that it is a nationwide class action litigated for many years and tried to verdict. The legal issues were complex, as this Court observed in another case: "[d]ata privacy law is a relatively undeveloped and technically complex body of law, which creates uncertainty and, therefore, additional risk for Class Counsel." *Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 4804974, at *3 (N.D. Cal. Nov. 15, 2024) (Seeborg, C.J.) (citation omitted). The factual issues, too, were complex: this was an expert-heavy case involving the technical processes by which Google collects, stores, and monetizes app activity data. Class Counsel invested heavily in this case despite

1

the risks, devoting $56,768,654 in time and $12,422,374.42 in out-of-pocket expenses. Class Counsel did all of this work, and took on all of this expense, without any outside funding source. Finally, Class Counsel litigated the case to verdict, which increased their risk to unprecedented levels given that class trials are "almost extinct." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 685 (9th Cir. 2022) (Lee, J., dissenting).

Especially given all these exceptional circumstances, Class Counsel's requested "award of 33.33% is consistent with Ninth Circuit precedent," *In re Telescopes Antitrust Litig.*, 2025 WL 1093248, at *10 (N.D. Cal. Apr. 11, 2025), and within the "typical range of acceptable attorneys' fees in the Ninth Circuit." *Quiruz v. Specialty Commodities, Inc.*, 2020 WL 6562334, at *10 (N.D. Cal. Nov. 9, 2020) (citation omitted). Just last year, this Court awarded one-third in fees in a case that settled before trial. *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2025 WL 3006647, at *4 (N.D. Cal. Oct. 27, 2025) (Seeborg, C.J.). It should do so again here.

A lodestar cross-check, though unnecessary under California law, confirms the reasonableness of the fee request. The requested award represents a 2.59 multiplier on Class Counsel's lodestar, which falls comfortably within the "reasonable lodestar multiplier" range of "1.0 all the way up to 4.0." *In re Xyrem*, 2025 WL 3006647, at *3. The actual multiplier is even lower because the 2.59 calculation is based on a reduced lodestar (since Class Counsel removed certain time from their lodestar calculation) and also does not include the hundreds (if not thousands) of hours Class Counsel will spend litigating any appeal. Nor is there any basis to quibble with Class Counsel's calculations. Class Counsel's hours are lower than those approved by courts in other high-profile cases that settled before trial, and Class Counsel's hourly rates are on par with or lower than rates that have been repeatedly approved by other courts.

Reimbursement of Class Counsel's costs[2] is also warranted, as well as service awards for the Class Representatives. Class Counsel advanced all costs throughout this case, including substantial costs from trial—yet these expenses are on par with or less than those awarded in other

---

[2] The words "costs" and "expenses" have the same meaning in this submission. Any costs that the Court taxes against Google, pursuant to Plaintiffs' separate Bill of Costs, Dkt. 728, will be removed from the final calculation of expenses taken from the common fund.

high-stakes class cases that did not even make it to trial. Finally, all three Class Representatives dedicated significant time and effort to the case; two even gave up employment income and traveled across the country to attend trial. Their service to the classes should be rewarded.

**BACKGROUND**

**I.     Class Counsel's Trial Victory Secures Groundbreaking Relief for the Classes**

Following an almost three-week trial, Class Counsel won a $425 million jury verdict, which is believed to be the largest ever in a data privacy class case tried to verdict in federal court. The media described this result as a "historic"[3] verdict in a "landmark" trial,[4] and Class Counsel were honored as "Litigators of the Week" (the *American Lawyer*),[5] as "Legal Lions of the Week" (*Law360*),[6] and for securing one of the "Top Verdicts of 2025" (*Los Angeles Daily Journal*).[7] Class Counsel's victory also prompted Google to finally change its disclosures, which Google's employees had described as "very deceptive" (PX-3) and "intentionally vague" (PX-4). The Court concluded that Google's amended disclosures finally "tell[] Google's users what they need to know." Dkt. 721 at 4–5.[8] Even more importantly, Class Counsel's victory sends a critical message to Google and other big tech companies—that privacy still matters, that there are still some law

---

[3] Kat Black, *'The Defining Commodity of Our Time': Google Users Clinch Historic $425.7 Million Win in California Data Privacy Class Action*, The Recorder (Sept. 4, 2025), https://www.law.com/therecorder/2025/09/04/the-defining-commodity-of-our-time-google-users-clinch-historic-4257-million-win-in-california-data-privacy-class-action-/?slreturn=20250909113453.

[4] Ross Todd, *Litigators of the Week: Google Hit with a $425.7 Million Verdict in Landmark Data Privacy Class Action Trial*, The American Lawyer (Sept. 12, 2025), https://www.law.com/litigationdaily/2025/09/12/litigators-of-the-week-google-hit-with-a-4257-million-verdict-in-landmark-data-privacy-class-action-trial/.

[5] *Supra* n.4.

[6] Kevin Penton, *Law360's Legal Lions of the Week*, Law360 (Sept. 5, 2025), https://www.law360.com/articles/2384485/law360-s-legal-lions-of-the-week.

[7] *Susman Godfrey Secures Top Verdicts of 2025 Recognition from the Los Angeles Daily Journal* (Mar. 6, 2026), https://www.susmangodfrey.com/news/susman-godfrey-secures-top-verdicts-of-2025-recognition-from-the-los-angeles-daily-journal/.

[8] Plaintiffs sought additional injunctive relief, which this Court denied. Plaintiffs reserve the right to appeal from that denial. The point being made in text is that Google did make changes in its disclosures, which did have some value to the classes—as this Court implicitly acknowledged when it relied on the changed disclosures to deny Plaintiffs' request for injunctive relief.

3

firms that will take a privacy case of this magnitude to trial, and that courts will provide recourse to people whose privacy rights are violated.

## II.     Class Counsel's Extensive Efforts Litigating This Case.

Class Counsel's victory marked the culmination of more than five years of intense litigation against one of the largest and richest companies in the world. Below we summarize the tireless and painstaking work that made the verdict possible, separating the case into phases. These correspond with the phases of the case described in the accompanying declarations of James Lee, Steven Shepard, and John Yanchunis, which recount the number of hours worked during each phase by their respective law firms.[9]

### A.     Preparation of the Complaint (through July 2020).

This case did not follow in the footsteps of a government proceeding, nor was it born through a corrective disclosure by Google. This case exists because Boies Schiller Flexner ("BSF") conducted an extensive investigation (with expert assistance) to uncover Google's unlawful collection of class members' data. Mao Decl. ¶ 3. That investigation yielded a 41-page complaint filed in July 2020, with detailed allegations describing Google's collection of (s)WAA-off app activity data through its Firebase SDK. Dkt. 1. The other two Class Counsel firms (Susman Godfrey ("SG") and Morgan & Morgan ("MM")) joined BSF to jointly prosecute this case. In total, Class Counsel spent 169.60 hours on this stage of the case.

### B.     Google's Motions to Dismiss (August 2020 – May 2021).

Plaintiffs had to overcome multiple motions to dismiss. Google moved to dismiss all claims shortly after the case was filed (Dkt. 48), in response to which Plaintiffs filed an amended Complaint, this time with additional allegations totaling 78 pages. Dkt. 60. Google again moved to dismiss all claims, filing 441 pages of briefing and exhibits. Dkt. 62. This Court heard oral argument on that motion on March 4, 2021 (Dkt. 95), and on May 21, 2021, it issued an opinion denying Google's motion in substantial part, permitting Plaintiffs to proceed with their claims.

---

[9] In reality, the phases of the case necessarily overlapped (*e.g.*, fact discovery proceeded while motions to dismiss were briefed). For ease of review, however, the phases of the case were simplified into successive periods bounded by the beginning or end of months during which the corresponding activities began or ended.

Dkt. 109.

Following the motion to dismiss decision, on June 11, 2021, Plaintiffs amended their Complaint to add allegations about a different tracking tool (AdMob) that Google was also using to collect (s)WAA-off data from class members. Dkt. 113. Google once again filed a motion to dismiss, which included a request to strike Plaintiffs' AdMob allegations. Dkt. 115. On August 18, 2021, the Court denied Google's motion in part, including by permitting Plaintiffs to go forward with their AdMob theory, thus "expand[ing] the scope of discovery" and paving the way for Plaintiffs to present the jury with a more complete picture of Google's misconduct. Dkt. 127 at 7. In total, Class Counsel spent 2,244.70 hours on this stage of the case.

### C.    Fact Discovery (June 2021 – October 2022).

Fact discovery was intense. Plaintiffs served Google with 285 document requests, 25 interrogatories, and 52 requests for admission. Mao Decl. ¶ 4. The parties negotiated these requests by exchanging more than 35 formal letters, countless emails, and by conducting dozens upon dozens of meet-and-confers. *Id*. Class Counsel's persistence resulted in Google producing over 2 million pages of documents, *id.*, which included many of the critical admissions that Plaintiffs featured at trial.

Because Google often resisted providing important discovery, Plaintiffs filed numerous motions to compel. For example, Google initially took the position that Plaintiffs were entitled to only three document custodians, so Plaintiffs successfully moved to compel an additional nineteen custodians (Dkt. 184), including key trial witnesses Chris Ruemmler (who described the (s)WAA disclosures as a "real problem" (PX-3)) and Sam Heft-Luthy (who said the (s)WAA disclosures were "vague and hard-to parse for non-engineers/lawyers" (PX-18)). This Court relied on these employees' documents in denying Google's motion for summary judgment. *See* Dkt. 445 at 12 (citing Mr. Ruemmler's statements and reasoning that "Google's conduct is at least arguably offensive because it collects (s)WAA-off data despite concerns raised by its employees and with the knowledge that its disclosures are ambiguous and deficient"). Google also tried to limit Plaintiffs to the default 10 depositions per side, so Plaintiffs successfully moved to compel additional depositions of Google employees (Dkt. 299), which resulted in Plaintiffs deposing J.K.

Kearns, whose deposition was played at trial to admit a document where he wrote that "teams should not use user data at all if WAA is off" (PX-10); *see also* Dkt. 445 at 12 (MSJ Order citing same document). In total, the parties filed **over 20 letter-briefs to compel discovery**.[10]

During this same timeframe, Plaintiffs also had to respond to Google's substantial discovery demands. Google served each Class Representative with at least 7 interrogatories, 41 requests for production, and 36 requests for admission, such that Class Counsel served responses to over 250 discovery requests directed at the Class Representatives,[11] in coordination with those Class Representatives. Mao Decl. ¶ 5. Each Class Representative also sat for a full-day deposition. *Id*. In total, Class Counsel spent 10,224.14 hours on this stage of the case.

### D.    Expert Discovery (November 2022 – July 2023).

Expert discovery was yet another substantial undertaking. This case included 9 testifying experts (5 for Plaintiffs and 4 for Google), all of whom provided at least one expert report and all but one of whom sat for deposition. Mao Decl. ¶ 6. Altogether, the parties exchanged 14 expert reports, totaling almost 2,000 pages, to say nothing of voluminous data analysis spreadsheets prepared by both sides*. Id*.

The complexity of Google's data-collection practices made expert discovery particularly important. For example, Plaintiffs' technical expert Jonathan Hochman oversaw a data-production process whereby Google produced (s)WAA-off data from the Class Representatives and certain test devices, and Dr. Hochman worked with a team to analyze that data to develop his opinions for trial. Through this process, Plaintiffs obtained gigabytes of data which, if printed on regular paper, would exceed the height of a 30-story building. Mao Decl. ¶ 4; Trial Tr. 616:2–6. Relatedly, while Google's counsel could rely on Google's vast roster of accomplished engineers for assistance, Class Counsel had to rely on experts, including consulting experts, to assist with day-to-day review of Google's substantial technical documentation. Class Counsel invested significant time and resources into expert discovery, paying over $5 million to testifying and consulting experts,

---

[10] Dkts. 74, 75, 110, 155, 163, 167, 199, 201, 211 216, 233, 234, 237, 247, 250, 253, 260, 261, 262, 263, 264, 266, 274.

[11] This figure does not include the hundreds of discovery requests served on and responded to by formerly named plaintiffs in this case.

including time spent on discovery as well as time spent preparing for and testifying at trial. Lee Decl. ¶ 67. Class Counsel spent 5,125.30 hours on this stage of the case.

### E.    Class Certification (August 2023 – October 2023).

Class Counsel achieved a historic class certification ruling on behalf of almost one hundred million Americans whose data was unlawfully taken and used by Google. Plaintiffs filed their motion on July 20, 2023 (Dkt. 315), and the submissions on this motion, including Google's opposition and Plaintiffs' reply, totaled over 1,900 pages. Mao Decl. ¶ 7. Google's opposition took a big swing at Plaintiffs' intrusion upon seclusion and invasion of privacy claims, arguing these claims could not be certified because "[e]very aspect of a privacy claim is fact-dependent." Dkt. 329 at 12. Google also filed a *Daubert* motion against Plaintiffs' damages expert, seeking to exclude all of his opinions and relying on that motion as another basis to oppose class certification. Dkt. 326 at 22 ("Plaintiffs' actual damages model cannot support class certification.").

Following an October 5, 2023 oral argument, this Court on January 3, 2024 certified the proposed classes, under both Rule 23(b)(3) and Rule 23(b)(2), and denied Google's motion to exclude Plaintiffs' damages expert. Dkt. 352. The opinion addressed important issues in this area of law, including by rejecting Google's argument that Plaintiffs must lose given "their continued use of apps." *Id.* at 12. "It is unreasonable for Google to expect, as it does, that users must also stop using the many apps on their phone, after selecting sWAA to be off, to show a lack of consent. This places an undue burden on everyday users who indicated their privacy preferences by turning off sWAA." *Id.* at 9. Class Counsel spent 1,062.20 hours on this stage of the case.

### F.    Class Notice, Class Modification, & Summary Judgment (November 2023 – July 2024).

The class notice process was far from routine. It included direct email notice to "hundreds of millions of email accounts" associated with (s)WAA-off users. Dkt. 395 at 2. That scale presents a time-consuming and expensive undertaking for any case, but the process here was further complicated by Google's resistance to cooperating with Plaintiffs and the notice administrator. Class Counsel spent months participating in meet-and-confers to resolve disputes about whether and how Google would provide information to be used for class notice. Sila Decl. ¶ 4.

This process was further upended by Google's efforts to modify the class definitions, after this Court already ruled on class certification. *See* Dkt. 384 (Order on Google's motion to "clarify" the class definitions) at 4 ("Google's artful attempt to portray the instant motion as one seeking merely to clarify the class definition to align with the class certification order is unavailing. It is more fitting to characterize the instant motion as a request to modify the class certification order."). Google's untimely challenge to the class definitions resulted in Plaintiffs having to file two motions to direct notice, including an amended motion to account for revisions to the definitions. Dkts. 370, 395. Ultimately, the notice program was approved on May 31, 2024. Dkt. 405.

Google meanwhile moved for summary judgment, on April 4, 2024, seeking judgment on all claims. Dkt. 383. The submissions on this motion (including Plaintiffs' opposition and Google's reply) totaled over 2,000 pages. Mao Decl. ¶ 8. Following a July 25, 2024 hearing, this Court on January 7, 2025 denied the motion in its entirety, crediting Plaintiffs' liability theory and paving the way for Plaintiffs to present their claims to the jury. Dkt. 445. Class Counsel spent 5,662.80 hours on this stage of the case.

**G.      Trial Preparation (August 2024 – July 2025).**

After briefing and arguing summary judgment, Class Counsel focused on their preparations for trial. That work included two in-person focus group exercises and one remote user survey, enabling Class Counsel to better understand how jurors would react to the case. Mao Decl. ¶ 9. Class Counsel also began preparing witness outlines and holding prep sessions with their experts and the Class Representatives. Class Counsel also worked with Plaintiffs' experts to prepare supplemental reports to address new developments, including additional discovery provided by Google.

This phase of the case included a second round of *Daubert* motions. Google moved to exclude Plaintiffs' privacy expert (Bruce Schneier), Dkt. 474, and Plaintiffs moved to exclude in part three Google experts (Jonathan Black, Donna Hoffman, and Christopher Knittel). Dkt. 473. Following a hearing on May 15, 2025, this Court on June 2, 2025 issued an order denying Google's motion in substantial part and granting portions of Plaintiffs' motions. Dkt. 511.

Around the same time, Class Counsel completed a substantial number of pre-trial filings.

These filings included witness lists (Dkt. 599), the exhibit list (Dkt. 601), deposition and discovery designations (Dkt. 605), proposed jury instructions (Dkt. 560) and verdict forms (Dkt. 559), a jury questionnaire (Dkt. 515), *voir dire* questions (Dkt. 570), and the pretrial statement (Dkt. 534). Jury instructions were a particularly significant undertaking, with the parties initially filing 127 pages of briefing on their disputes. Dkt. 560. The parties also filed 20 motions *in limine* in July 2025, and while Plaintiffs fit their 8 motions into a single brief (Dkt. 518), Google filed twelve separate briefs (Dkts 519–530), which required twelve separate response briefs (Dkts. 541-545, 547, 549–551, 553–555). Following a daylong Pretrial Conference to address these many disputes, held on July 30, 2025, this Court on August 6, 2025 issued an order resolving the motions *in limine*. Dkt. 587. Class Counsel spent 13,082.30 hours on this stage of the case.

### H.    Trial (August 2025 – September 2025).

Trial was predictably intense. It lasted more than two weeks, from jury selection on August 18 through closing arguments on September 2. Class Counsel and their staff convened together in San Francisco two weeks prior and began working around the clock to prepare. In addition to preparations for jury selection, witness exams, and opening and closing arguments, Class Counsel had to contend with ongoing daily evidentiary disputes, including Google's submission of seven additional motions *in limine*. Dkts. 589, 600, 613, 628, 629, 634, 657. The parties also continued to brief disputed jury instructions throughout trial until the jury was charged. Dkts. 650, 658, 663. Ultimately, the jury heard from 9 fact witnesses and 5 expert witnesses during the trial.

The jury found Google liable for intrusion upon seclusion and invasion of privacy, awarding the two classes a total of $425,651,947 in damages. Dkt. 670. Thereafter, this Court graciously complimented both sides from the bench, thanking the parties for their "extraordinary" professionalism, "superb" lawyering, "first rate" briefing, and "seamless" trial presentations. Trial Tr. 1981:15–1982:13. Class Counsel spent 9,477.62 hours on this stage of the case.

### I.    Post-Trial Proceedings (October 2025 – Present, and Ongoing).

The work did not end with the jury's verdict. After trial, Class Counsel successfully opposed Google's motion to decertify the classes, Dkt. 662, thereby securing a final judgment in

9

the classes' favor in the amount of $440,345,685.40 (including pre-judgment interest but not including post-judgment interest, which continues to accrue). Dkt. 725.

Class Counsel also moved for a permanent injunction to obtain additional relief, including deletion and remediation of class member data, and Class Counsel pursued disgorgement of Google's ill-gotten profits. Dkt. 700. Although these motions were unsuccessful (Dkt. 721), they were the catalyst for Google to amend its disclosures. Plaintiffs have also preserved their right to pursue this and other relief on appeal.

Class Counsel also filed a bill of costs to obtain reimbursement of certain costs from Google (Dkt. 728), which if granted will decrease the costs to be reimbursed from the common fund. Class Counsel is also working with the notice administrator to design and implement another round of class notice, for purposes of the instant fees motion. Giving this notice will be an expensive and time-consuming process that is expected to last for many months.

Class Counsel have so far spent 2,621.20 hours on this stage of the case.

And the work is far from over. In the coming months (and potentially years), Class Counsel will litigate any Rule 50 and/or Rule 59 motions and any appeals. Class Counsel expect to spend hundreds (if not thousands) of additional hours on this work. These additional hours are of course not included in the lodestar cross-check calculations below, *see infra* Section I.H, which makes the current multiplier (2.59) conservative.

**ARGUMENT**

Plaintiffs respectfully request that the Court award Class Counsel attorneys' fees equal to one-third of the common fund, $12,422,374.42 in costs, and service awards of $50,000 to each of Named Plaintiffs Rodriguez and Santiago and $35,000 to Named Plaintiff Harvey.

**I.      The Court Should Award Fees Equal to One-Third of the Common Fund.**

**A.      Legal Standard.**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In this case, there has been no settlement "agreement" with Google regarding class fees. *Id.* Instead, Class Counsel seek fees that are "authorized by law," *id.*, pursuant to the common-fund doctrine. Under

10

the common-fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Because the common fund in this case has been created by litigating claims that are "governed" by California law, state law "also governs the award of fees" to Class Counsel from the common fund. *Vizcaino*, 290 F.3d at 1047 (holding that Washington's "percentage-of-recovery approach" would be applied to assess class counsel's fee application because "the settlement fund was the product of the successful claim" that was "governed" by "Washington law").

Under California law, "attorneys' fees in class action cases may be calculated in one of two ways: [1] the percentage method (a percentage of the common fund or settlement value) or [2] the lodestar-multiplier method." *Hernandez v. Burrtec Waste & Recycling Servs., LLC*, 2023 WL 5725581, at *6 (C.D. Cal. Aug. 21, 2023) (citing *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 489 (2016)).

"[M]ost courts and commentators now believe that the percentage method is superior." *Laffitte*, 1 Cal. 5th at 494 (citation omitted). The percentage method is now in "widespread and nearly exclusive use." 2 McLaughlin on Class Actions § 6:24 (22nd ed.); *see also Roman v. Jan-Pro Franchising Int'l, Inc.*, 2024 WL 2412387, at *4 (N.D. Cal. May 23, 2024) ("[T]he majority of courts [] apply[] the percentage-of-recovery method."). This Court applied the percentage method in two recent fee decisions. *Nagy v. CEP Am., LLC*, 2025 WL 2960448, at *2 (N.D. Cal. Oct. 17, 2025) (Seeborg, C.J.); *Katz-Lacabe*, 2024 WL 4804974, at *3. "The American Law Institute has also endorsed the percentage method's use in common fund cases, with the lodestar method reserved mainly for awards under fee shifting statutes and where the percentage method cannot be applied or would be unfair due to specific circumstances of the case." *Laffitte*, 1 Cal. 5th at 494.

The percentage method is favored for good reason. It ensures that "Class Counsel's interests are aligned with the Class, and Class Counsel are incentivized to achieve the best possible result." *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *5 (N.D. Cal. Aug. 17, 2018). Other "recognized advantages" include the "relative ease of calculation" as well as "better

11

approximation of market conditions in a contingency case." *Laffitte*, 1 Cal. 5th at 503. The percentage method is particularly appropriate for a novel and complex case litigated to verdict, like this one. This method "rewards Class Counsel for assuming the risks of the litigation in this developing area of the law and for prosecuting the case to obtain a benefit proportional to the Class's injury." *In re Anthem*, 2018 WL 3960068, at *5.

When applying the percentage method, California courts "may" choose to "cross-check" the result of that method against class counsel's "lodestar" to "ensure that the fee awarded is reasonable." *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 (2009). However, such a "cross-check" is "not required" under either California law, *id.*, or under Ninth Circuit precedent applying federal common law, *Senne v. Kansas City Royals Baseball Corp.*, 2023 WL 2699972, at *18 (N.D. Cal. Mar. 29, 2023). Should this Court choose to apply a lodestar cross-check, Class Counsel provided the necessary information for the Court in this motion and accompanying declarations.

**B.      California Law Supports an Award of One-Third of the Common Fund.**

"California courts routinely award attorneys' fees of one-third of the common fund." *Beaver v. Tarsadia Hotels*, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017) (citing *Laffitte*, 1 Cal. 5th at 506, *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008)); *Bernstein v. Virgin Am.*, *Inc.,* 2023 WL 7284158, at *2 (N.D. Cal. Nov. 3, 2023) ("In California, 'regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.'" (quoting *Consumer Privacy Cases*, 175 Cal. App. 4th at 558)); *Oliveira*, 767 F. Supp. 3d at 1001 (one-third of the common fund is "the typical award of attorneys' fees" in "California state court"); *see also Laffitte*, 1 Cal. 5th at 506 (affirming a fee award of one-third of the gross settlement amount).

In cases governed by federal law, the Ninth Circuit has referred to a "benchmark" of 25% of the common fund. However, the California Supreme Court has "not adopt[ed] such a benchmark for California cases." *Bernstein*, 2023 WL 7284158, at *2 (quoting *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 999 (N.D. Cal. 2017)).

### C. Ninth Circuit Precedent Also Supports an Award of One-Third of the Common Fund.

Even if California law did not apply (which it does), Class Counsel's request is also justified under Ninth Circuit precedent applying federal common law. "[A]n award of 33.33% is consistent with Ninth Circuit precedent," *In re Telescopes Antitrust Litig.*, 2025 WL 1093248, at *10, and within the "typical range of acceptable attorneys' fees in the Ninth Circuit," albeit on the higher end of that range, which "is 20 percent to 33.3 percent of the total settlement value," *Quiruz*, 2020 WL 6562334, at *10 (quoting *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013)). *See also In re Heritage Bond Litig.*, 2005 WL 1594403, at *18 n.12 (C.D. Cal. June 10, 2005) (crediting a list of "over 200 cases where a fee of 30% or higher was awarded"). Just last year, this Court awarded one-third in a case that settled before trial. *See In re Xyrem*, 2025 WL 3006647. The same percentage is justified here under Ninth Circuit precedent.

Ninth Circuit precedent teaches that 25% of the common fund is the "benchmark," from which the district court may "consider upward or downward departures" based on the circumstances of the case. *Roman v. Jan-Pro Franchising Int'l, Inc.*, 2024 WL 2412387, at *4 (N.D. Cal. May 23, 2024). Factors to be considered include: "(1) the results achieved, (2) the risk of litigation, (3) the complexity of the case and skill required, (4) the contingent nature of the litigation, and (5) awards made in similar cases." *Katz-Lacabe*, 2024 WL 4804974, at *3. All relevant factors would support Class Counsel's request for an upward departure, even if the Ninth Circuit's federal common-law precedents were to apply to this motion.

### D. Class Counsel Achieved Exceptional Results for the Classes.

Class Counsel secured a "historic" and "landmark" jury verdict of $425 million—believed to be the largest ever in a data privacy class case tried to verdict in federal court. *Supra* nn. 3–4. This achievement, hailed as a "Top Verdict of 2025", *supra* n.7, marked the culmination of over five years of hard-fought litigation.

Class Counsel also secured valuable non-monetary relief for the classes. *See Vizcaino*, 290 F.3d at 1049 (noting that "non-monetary benefits conferred by the litigation are a relevant circumstance"). Before this case, Google employees for years pushed for changes to the company's "very deceptive" and "intentionally vague" sWAA disclosures, which gave users a "false sense of

13

security" their data "is not being stored at Google, when in fact it is." PX-3, PX-4. Google's executives resisted those demands for change, including for the duration of this lawsuit—that is, until Plaintiffs prevailed at trial and subsequently moved for permanent injunctive relief. Only then did "Google amend[] its privacy disclosures to reflect its data-collection practices accurately." Dkt. 721 at 4–5. While Plaintiffs' position remains that additional relief is warranted, and they reserve their right to seek additional relief with any appeal, there can be no dispute that Plaintiffs were the catalyst for Google to finally change its disclosures. In this Court's view, the new disclosures finally "tell[] Google's users what they need to know." *Id*. at 5. The "importance of the changes" to Google's privacy "policies" support an award of one-third of the common fund. *St. Louis Police Ret. Sys. v. Severson*, 2014 WL 3945655, at *6 (N.D. Cal. Aug. 11, 2014).

**E.       This Case Was Risky and Complex.**

The substantial risk undertaken by Class Counsel in this complex case further supports the fee request. "Courts have recognized that a high risk factor is one reason for increasing class counsel's attorney's fee award above the 'benchmark' 25% fee." *Rodriguez v. Penske Logistics, LLC*, 2019 WL 246652, at *11 (E.D. Cal. Jan. 17, 2019). This case was particularly risky and complex for at least three reasons.

*First*, "[d]ata privacy law is a relatively undeveloped and technically complex body of law, which creates uncertainty and, therefore, additional risk for Class Counsel." *Katz-Lacabe*, 2024 WL 4804974, at *4 (citation omitted). At class certification, Google argued "[t]hese types of claims are virtually never certified for class treatment" because "making out a case for highly offensive conduct" will be "all but impossible at a class-wide level." Dkt. 329 at 1 (emphasis omitted). Another recent data privacy case against Google is instructive—*Calhoun v. Google*. The *Calhoun* plaintiffs overcame Google's consent arguments at the pleadings stage only for Google to win on summary judgment, following years of discovery at substantial expense to class counsel. Then, after the Ninth Circuit reversed the summary judgment decision and revived the claims, the district court on remand denied the motion for class certification. *Calhoun v. Google LLC*, 349 F.R.D. 588 (N.D. Cal. 2025). Class Counsel risked a similar outcome here—yet persevered through multiple motions to dismiss, class certification, summary judgment, and a post-trial

decertification motion. That perseverance in the face of substantial litigation risk warrants an upward adjustment. *See In re Xyrem*, 2025 WL 3006647, at *3 (awarding one-third of settlement fund where "the case [] raise[d] complex and novel issues").

*Second*, and relatedly, Plaintiffs litigated their claims all the way to verdict, thereby assuming virtually unprecedented risk. "[C]lass action cases rarely go to trial. If trials these days are rare, class action trials are almost extinct." *Olean Wholesale Grocery Coop., Inc.*, 31 F.4th at 685 (Lee, J., dissenting). A trial victory was by no means guaranteed; in fact, at summary judgment, this Court suggested the highly offensiveness element of Plaintiffs' claims is a "tough one for your side." Dkt. 419 at 47:17–20. Undeterred, Class Counsel tried the case because doing so was necessary to secure a fair outcome for the class. Still more risk lies ahead, as this case appears to be headed towards appeal. An award of one-third of the common fund will encourage other lawyers to likewise pursue their cases through trial (and beyond) instead of accepting settlement offers that may shortchange the classes.

*Third*, Class Counsel had to independently investigate and prosecute highly technical claims against a well-resourced defendant. "Unlike many class actions, this case did not evolve from revelations in the press about mishandling of data, investigations and fines by regulators, or a groundswell of public opinion against clearly offensive and illegal practices." *Katz-Lacabe*, 2024 WL 4804974, at *3. "Rather, Class Counsel independently investigated, documented, and innovatively challenged the underlying business model of one of the largest corporations in the world." *Id.* This case also implicated highly complex details about the inner workings of Google's data processing systems, giving Google a distinct advantage that Plaintiffs and their experts had to work to overcome. *See Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1303 (W.D. Wash. 2001) ("Class Counsel's risk was even greater, and their work made more difficult, because Microsoft is one of the nation's largest and most formidable companies."), *aff'd*, 290 F.3d 1043 (9th Cir. 2002). Class Counsel countered Google's informational and financial advantages by making a substantial long-term investment in this case. A fee award of one-third of the common fund is appropriate to reward Class Counsel for that investment.

15

**F.      Class Counsel Have Litigated this Case on a Contingent Basis.**

"[T]he contingent nature of the fee and the financial burden" to Class Counsel further support the request. *Schiller v. David's Bridal, Inc.*, 2012 WL 2117001, at *16 (E.D. Cal. June 11, 2012) (citing *Vizcaino*, 290 F.3d at 1047). Class Counsel litigated the case on a contingency basis, which "necessarily presented considerable risk." *Id.* at *18. Class Counsel also incurred substantial out-of-pocket expenses, including trial expenses, despite no guarantee these expenses would be reimbursed. *See infra* Section II. Class Counsel have not been paid a dime during the last five and a half years of litigation. And Class Counsel will continue to litigate the case without payment as it moves into the appeal stage. An award of one-third of the common fund is appropriate to reward Class Counsel for taking on this work on a contingency basis. As California courts recognize, a "contingent fee compensates the lawyer not only for the legal services he renders but [also] for the loan of those services." *Graham v. DaimlerChrysler Corp.,* 34 Cal.4th 553, 580 (2004). "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Id.* (citation omitted).

Class Counsel's request is also reasonable compared to the market rate for contingency representations. As noted by the Supreme Court of California, one "advantage[]" of the percentage method, relative to the lodestar method, is the former achieves a "better approximation of market conditions in a contingency case." *Laffitte*, 1 Cal. 5th at 503.

An award of one-third the classes' recovery is well within the market rate for contingency representations. For example, in non-class contingency cases, the Class Counsel firms typically receive the same percentage or higher than what Class Counsel request here. When Susman Godfrey advances expenses in non-class contingency cases, it often receives 35% to 45% of the gross sum recovered, with increases to 40% to 50% depending on the timing of recovery. Shepard Decl. ¶ 10. BSF typically receives 33.3% to 40% of the gross sum recovered in its non-class contingency cases, with increases above that percentage in certain circumstances. Lee Decl. ¶ 57. Morgan and Morgan's cases are litigated exclusively on a contingency basis, with all expenses advanced, and MM typically receives 33.3% to 40% of the gross sum recovered in its non-class

16

cases, with some cases commanding upwards of 50%. Yanchunis Decl. ¶ 72. If this Court were to award a fee of less than one-third of the common fund, then that below-market rate would discourage firms like SG, BSF, and MM from pursuing class cases like this one.

**G.      Class Counsel in Similar Cases Have Received Similar Fee Awards.**

Class Counsel's request is also reasonable relative to awards in other cases that have generated substantial recoveries. "[C]ourts nationwide have repeatedly awarded fees of 30 percent or higher in so-called 'megafund' settlements." *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1367 (S.D. Fla. 2011); *see also In re: Urethane Antitrust Litig.*, 2016 WL 4060156, at *6 (D. Kan. July 29, 2016) (crediting expert's "identif[ication] [of] 34 megafund cases with settlements of at least $100 million in which the court awarded fees of 30 percent or higher"). As for the Ninth Circuit specifically, "an award of 32% is within the range of reasonableness permitted in this Circuit." *Andrews v. Plains All Am. Pipeline L.P.*, 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022). Just last year, this Court issued a 33.33% award based on a $195 million settlement. *In re Xyrem*, 2025 WL 3006647.

Below are some examples of fee awards in other high-recovery class cases. All but one of these examples (*Perez*) resulted from a settlement. The lack of a settlement here cuts in favor of awarding a higher percentage to Class Counsel, since Class Counsel had to litigate their claims to verdict to obtain any recovery, and still face uncertainty with any appeal.

| Case | Class Recovery | Fee Award |
|---|---|---|
| *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094 (D. Kan. 2018), *aff'd* 61 F.4th 1126 (10th Cir. 2023) | $1.51b settlement | 33.3% |
| *In re Urethane Antitrust Litig.*, 2016 WL 4060156 (D. Kan. July 29, 2016) | $835m settlement | 33.3% |
| *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) | $586m settlement | 33.3% |
| *Cook v. Rockwell Int'l Corp.*, 2017 WL 5076498 (D. Colo. Apr. 28, 2017) | $375m settlement | 40% |
| *In re Vitamins Antitrust Litig.*, 2001 WL 34312839 (D.D.C. July 16, 2001) | ~$365m settlement | 34% |
| *In re U.S. Foodservice, Inc. Pricing Litig.*, 2014 WL 12862264 (D. Conn. Dec. 9, 2014) | $297m settlement | 33.3% |

17

| | | |
|---|---|---|
| *Perez v. Rash Curtis & Assocs.*, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020)[12] | $267m jury verdict | 33.3% |
| *In re Tricor Direct Purchaser Antitrust Litig.*, 2009 WL 1074451 (D. Del. Apr. 23, 2009) | $250m settlement | 33.3% |
| *Hale v. State Farm Mut. Auto Ins. Co.*, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) | $250m settlement | 33.3% |
| *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2025 WL 3006647 (N.D. Cal. Oct. 27, 2025) (Seeborg, CJ.) | $195m settlement | 33.3% |
| *In re Capacitors Antitrust Litig.*, 2023 WL 2396782 (N.D. Cal. Mar. 6, 2023) | $165m settlement | 40% |
| *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) | $145m settlement | 33.3% |
| *Haddock v. Nationwide Life Ins. Co.*, 2015 WL 13942222 (D. Conn. Apr. 9, 2015) | $140m settlement | 35% |
| *In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) | ~$127m settlement | 36% |

This Court should reject any request to lower the fee percentage based on the size of the jury verdict. In *Vizcaino*, the Ninth Circuit declined to adopt this so-called "increase-decrease rule"—under which "the percentage of an award generally decreases as the amount of the fund increases." 290 F.3d at 1047 (citation omitted). The Ninth Circuit reiterated that holding in *In re Optical Disk Drive Products Antitrust Litigation*: "we have already declined to adopt a bright-line rule requiring the use of sliding-scale fee awards for class counsel in megafund cases, and we are bound by circuit precedent." 959 F.3d 922, 933 (9th Cir. 2020) (citing *Vizcaino*, 290 F.3d at 1047). The Court's refusal to adopt that rule is good policy; the increase-decrease rule "create[s] perverse incentives," "encouraging quick settlements at sub-optimal levels." 5 Newberg & Rubenstein on Class Actions § 15:80 (6th ed.).

Granting Class Counsel's request for one-third of the common fund will not result in a windfall to Class Counsel. This case was nothing like "a mass tort or fraud case in which mere disclosure of a government investigation all but guarantees the creation of a megafund." *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *6 (N.D. Cal. Dec. 6, 2017). "[I]nstead, this case went from zero recovery to megafund solely because of counsel's efforts and expenditures of expert fees and other expenses," as well as Class Counsel's

---

[12] The court in this case later re-assessed fees following a settlement that occurred while an appeal was pending. *Perez v. Rash Curtis & Assocs.*, 2021 WL 4553023, at *1 (9th Cir. Aug. 23, 2021); *Perez v. Rash Curtis & Assocs.*, 2021 WL 4503314, at *5 (N.D. Cal. Oct. 1, 2021).

willingness to try this case to a jury. *Id.* (emphasis omitted). If there is any concern about a windfall recovery, "[r]ather than abandon the percentage-of-recovery method, the best way to guard against a windfall is first to examine whether a given percentage represents too high a multiplier of counsel's lodestar." *Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3616638, at *9 (N.D. Cal. June 26, 2017) (citation omitted).

**H.    A Lodestar Cross-Check Confirms that an Award of One-Third of the Common Fund Is Reasonable.**

A lodestar "cross-check" is discretionary under both California law (which governs) and Ninth Circuit federal common-law precedent. *Supra* Section I.A.

Under the crosscheck method, the court calculates a "presumptively reasonable" fee by multiplying the hours expended by an hourly rate comparable to other similarly experienced attorneys. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 571 (9th Cir. 2019); *In re Bluetooth Headset*, 654 F.3d 935, 941 (9th Cir. 2011). Should the Court choose to apply a crosscheck here, it would only further support the reasonableness of Class Counsel's requested fee award. Class Counsel's hourly rates have been repeatedly approved by other courts, and Class Counsel worked fewer hours in this case relative to other high stakes cases that settled long before trial. Applying Class Counsel's rates and hours, the requested multiplier is just 2.59, squarely within the range that is frequently approved by courts in this Circuit.

**1.    Class Counsel's Hourly Rates Are Reasonable.**

"To determine reasonable rates, the Court examines market rates in the relevant community, paying close attention to the fees charged by lawyers of reasonably comparable skill, experience and reputation." *Californians for Alternatives to Toxics v. Kernen Constr. Co.*, 2022 WL 22227777, at *1 (N.D. Cal. Mar. 21, 2022). It is also "appropriate for counsel to use their current hourly rates at the time of the fee motion." *Newton v. Equilon Enterprises, LLC*, 411 F. Supp. 3d 856, 882 (N.D. Cal. 2019) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994)); *see Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 740 (9th Cir. 2016) ("[A]ttorneys in common fund cases must be compensated for any delay in payment . . ."). Current rates are particularly warranted here because "Plaintiffs' attorneys have waited [far more

19

than] three years to be compensated." *Gates v. Deukmejian*, 987 F.2d 1392, 1406-1407 (9th Cir. 1992). Class Counsel's current rates are listed in the Shepard, Lee, and Yanchunis Declarations, which also contain summaries of each timekeeper's experience and role for this case.

Courts in this district and other districts have repeatedly approved the three Class Counsel firms' rates in class action cases. *See, e.g.*, *Meta Platforms, Inc. v. Soc. Data Trading Ltd.*, 2022 WL 18806267, at *5 (N.D. Cal. Nov. 15, 2022), *report and recommendation adopted*, 2022 WL 18806265 (N.D. Cal. Dec. 8, 2022) (approving SG's rates); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2017 WL 4685536, at *8-9 (C.D. Cal. May 8, 2017) (same); *Bitmouni v. PaySafe*, Dkt. 103, No. 3:21-cv-641 (N.D. Cal. Feb. 2, 2024) (approving MM's rates); *Hellyer v. Smile Brands Inc.*, Dkt. 95, No. 8:21-cv-1886 (C.D. Cal. Jan. 16, 2024) (same); *In re: Blue Cross Blue Shield Antitrust Litig.*, Dkt. 2932, No. 2:13-cv-20000 (N.D. Ala. Aug. 9, 2022) (approving BSF's rates); *In re: Takata Airbag Products Liability*, Dkt. 2168, No. 1:15-md-02599 (S.D. Fla. Sept. 8, 2017) (same).

Class Counsel's rates are also reasonable when compared to the rates of peer firms that have been approved by bankruptcy courts. Exhibit 1 to the Shepard Declaration contains a chart of bankruptcy court decisions approving such rates. The chart indicates that rates for partners are approved up to the low $2,000/hour range and rates for associates are approved up to $1,500/hour. *See* Shepard Decl. Ex. 1. All of Class Counsel's rates are at or below these ranges, with a small handful of exceptions. Class Counsel acknowledge that the billing rates for David Boies, Bill Carmody, Shawn Rabin, John Yanchunis, and Michael Ram are at the high end of the market. However, these rates are warranted based on these lawyers' experience and reputations, which are further discussed in the accompanying declarations. *See Becerra v. Radioshack Corp.*, 2014 WL 1266622, at *1 (N.D. Cal. Mar. 26, 2014) (evaluating reasonableness of rates "in light of the Class Counsel's skill, experience, and expertise"); Lee Decl. ¶¶ 8–13; Shepard Decl. ¶¶ 7–8, 25–32; Yanchunis Decl. ¶¶ 9–24.

That clients pay BSF's and SG's hourly rates further underscores the reasonableness of those rates. BSF and SG regularly represent clients in high-stakes litigation on an hourly basis, and the rates submitted for this motion are the standard hourly rates for the corresponding BSF and SG timekeepers, which clients have paid with certain exceptions. Lee Decl. ¶ 61; Shepard Decl. ¶ 5 &

20

n.3. "The rates counsel customarily bills clients is also probative because it evinces the actual rate that the attorney can command in the market." *Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.*, 2017 WL 11632540, at *5 (C.D. Cal. Sept. 22, 2017) (cleaned up); *see also Animation Workers*, 2016 WL 6663005, at *6 (approving a SG partner's rate because that "is the same rate that he charges clients, including corporations that are billed hourly, which provides a market-based cross-check"); *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (similar).

### 2.        Class Counsel's Total Hours Are Reasonable.

Counsel have presently devoted 49,670 hours to this litigation, resulting in a lodestar of $56,768,654. Before calculating this lodestar, Class Counsel proactively cut the following time: (1) time spent by attorneys and staff who worked fewer than sixty hours on the case; (2) time spent by summer associates; and (3) time devoted to this fee application. As detailed above and in the Lee, Shepard, and Yanchunis Declarations, the resulting 49,670 hours are more than reasonable given the extensive work this case required over nearly six years.

A comparison to other cases illustrates the reasonableness of Class Counsel's hours. For example, in *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, 2023 WL 8445812, at *1-2 (N.D. Cal. Oct. 10, 2023), a case concerning Facebook's data collection, the district court found 149,928 hours to be reasonable even though that case settled during discovery—before any expert reports were served or class certification was decided. Similarly, in *In re Twitter Inc. Securities Litigation*, 2022 WL 17248115, at *1 (N.D. Cal. Nov. 21, 2022), the court approved a lodestar based on 73,550 hours of work. And this Court recently found 57,523.9 hours spent to be reasonable in a case which settled before trial. *In re Xyrem*, 2025 WL 3006647, at *3. Here, not only did Class Counsel spend fewer hours litigating this nearly six-year long case, it did so while bringing the case through class certification to trial and verdict. These cases prove that while Class Counsel devoted substantial time and resources to this case, it did so efficiently.

Further, Class Counsel will continue to devote additional time and resources to protect the judgment and the classes, and such "projected [future] fees are appropriate considerations in lodestar cross-checks." *Martin v. Toyota Motor Credit Corp.*, 2022 WL 17038908, at *14 (C.D.

Cal. Nov. 15, 2022) (citing *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 746 F. App'x 655, 659 (9th Cir. 2018)). This ongoing and future work includes litigating the Rule 50 and/or Rule 59 issues, administering and advancing costs to provide notice to the classes of this fees motion, and litigating any appeals. Class Counsel has not included these anticipated hours in their lodestar calculation, which makes the calculation and resultant multiplier conservative.

### 3.     The 2.59 Multiplier Is Justified.

"Courts applying California law *often award multipliers* of the lodestar to take into account such factors as the contingent nature of the employment, the quality of the work, difficulty of pretrial and trial preparation, importance of the suit, and the public nature of plaintiffs' position." *St. Louis*, 2014 WL 3945655, at *5.

Here, the requested one-third award represents a multiplier of approximately 2.59, which falls squarely within the range of multipliers that the Ninth Circuit has blessed. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 (upholding a multiplier of 3.65, "which was within the range of multipliers applied in common fund cases"); *see id.* 1051 n.6 (surveying 34 common fund cases and finding "most" had multipliers from 1.0–4.0); *In re Xyrem*, 2025 WL 3006647, at *3 (noting that "reasonable lodestar multipliers [range] from 1.0 all the way up to 4.0"); *In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at *8 (N.D. Cal. Apr. 19, 2011) (awarding a 2.68 multiplier).

## II.     Class Counsel's Request for Reimbursement of Costs Is Reasonable.

The requested reimbursement of costs (less any recovered from the Bill of Costs) are also on par with cost awards in comparable cases that settled long before trial. Courts have repeatedly held that "attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Katz-Lacabe*, 2024 WL 4804974, at *5 (alteration adopted) (citation omitted); *see also Morgan v. United States Soccer Fed'n*, 2023 WL 2558417, at *2 (C.D. Cal. Jan. 4, 2023) (awarding as costs "what class counsel expended to pay for experts, mediation, filings, meals, travel, copying, and other costs that are also typically billed to a paying client"). "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Beaver*, 2017 WL

22

4310707, at \*14 (citation omitted) (applying California law).

Here, Class Counsel seek reimbursement of $12,422,374.42 in unreimbursed litigation expenses, including costs related to trial, experts, jury consultants, discovery, document hosting services, attorney travel, and other customary litigation expenses.[13] All of these costs are typically paid by fee-paying clients, including their own clients (in the case of BSF and SG). Shepard Decl. ¶ 66; Lee Decl. ¶ 65. Class Counsel's costs are described in more detail in the concurrently filed declarations of James Lee, Steven Shepard, John Yanchunis, Mark Mao, Ryan McGee, Alexander Frawley, and Ryan Sila. The costs figure above includes $800,000 in anticipated notice costs, including costs to provide the requisite class notice for this attorneys' fees motion. Lee Decl. at 21–22 & n.1; McGee Decl. ¶ 23. If actual costs incurred are lower than $800,000, Class Counsel will remit the difference back to the common fund, to be paid to class members.[14] Either way, Class Counsel will notify the Court of the final figure before the funds are used to reimburse Class Counsel. Although these costs are substantial, they are more than reasonable given the length (almost six years) and complexity of the case, and the need to try the case to verdict.

Class Counsel's costs are particularly reasonable when compared with cost awards in other complex cases that settled *before* trial. *See, e.g.*, *In re Coll. Athlete NIL Litig.*, 2025 WL 3171376, at \*2 (N.D. Cal. July 11, 2025) (awarding over $9 million in costs for a case which settled during the summary judgment briefing phase); *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at \*18 (S.D.N.Y. Apr. 26, 2016) (awarding "over $10 million in expenses incurred" for a case which settled during discovery and prior to any class certification briefing); *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 114 (D.D.C. 2013) (awarding over $15 million in costs for a case that settled just after the court issued its summary judgment decision). Class Counsel's costs are about the same or less, notwithstanding the over two-week jury trial in this case, which accounts for a substantial portion of the costs.

---

[13] Class Counsel has submitted a Bill of Costs seeking $176,624.04 in costs recoverable from Google. Dkt. 728. Any costs recovered through this Bill of Costs will be deducted from any costs awarded based on this motion.

[14] This procedure is preferable to Plaintiffs submitting yet another motion for costs further down the line and then administering yet another corresponding (and costly) class notice program.

### III.     Service Awards for the Class Representatives Are Warranted.

The requested service awards for the Class Representatives are fair and reasonable based on the substantial time and effort devoted by those individuals to this case and this excellent result. "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). They serve the dual purposes of "compensat[ing] class representatives for work done on behalf of the class" and "mak[ing] up for financial or reputational risk undertaken in bringing the action." *Id.*

Plaintiffs respectfully seek $50,000 service awards for the two Class Representatives who testified at trial (Anibal Rodriguez and Julian Santiago) and a $35,000 service award for Susan Harvey, who was prepared to testify but ultimately could not do so for medical reasons—for a total of $135,000. That total represents approximately 0.03% of the Common Fund.

Each Class Representative undertook significant burdens compared to other class cases. Google served voluminous written discovery on each Class Representative, requiring responses to numerous interrogatories, requests for production, and requests for admission—work that cumulatively demanded many days of effort from each Class Representative. Each Class Representative also permitted their personal devices to be imaged and allowed Google to pull sensitive, confidential account information from those devices as well as Google's data sources to better understand Google's data flows. Each Class Representative also provided a full day of deposition testimony following intensive preparation.

Each Class Representative remained actively engaged throughout years of post-certification proceedings—including summary judgment briefing, mediations, and trial preparation—periodically meeting with counsel and reviewing major filings. *See* Rodriguez Decl. ¶¶ 10–14; Santiago Decl. ¶¶ 10–14; Harvey Decl. ¶¶ 10–14. Beyond those shared burdens, each Class Representative also made personal sacrifices that further justify the requested service awards. Anibal Rodriguez and Julian Santiago both traveled across the country in August 2025 to prepare for and testify at trial, and each was unable to earn income during that time. *See* Rodriguez Decl. ¶ 15; Santiago Decl. ¶ 15. Susan Harvey likewise traveled to San Francisco to prepare for trial but was unable to testify given her medical conditions. Harvey Decl. ¶ 15.

24

Courts in this Circuit have awarded $50,000 service awards in cases that likewise imposed demanding burdens on class representatives. *See, e.g.*, *del Toro Lopez v. Uber*, 2018 WL 5982506, at *3 (N.D. Cal. Nov. 14, 2018) (awarding $50,000 service award for an individual class representative where plaintiffs "were substantially involved throughout the litigation"); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (awarding $50,000 for testifying class representative). The requested awards here match those benchmarks. As another reference point, this Court recently issued $40,000 service awards to class representatives "that were preparing to testify at trial" but did not testify because the case ended up settling. *In re Xyrem*, 2025 WL 3006647. Plaintiffs here request a lower service award for the Class Representative who traveled and prepared for trial but ultimately did not testify at trial (Susan Harvey, $35,000), and a slightly higher service award for the two Class Representatives who did testify and lost employment income as a result of their participation at trial (Santiago and Rodriguez, $50,000).

## CONCLUSION

Class Counsel respectfully ask the Court to award attorneys' fees to Class Counsel in the amount of one-third of the common fund that Plaintiffs generated, which was $440,345,685.40 at the time of final judgment and is accruing post-judgment interest, resulting in a fee award of $146,781,895.13 as of final judgment (*i.e.*, one-third of $440,345,685.40) that will continue to grow with the accrual of post-judgment interest.

Class Counsel also request reimbursement of their $12,422,374.42 in litigation costs, to the extent that portions of those costs are not reimbursed by Google as a result of the pending Bill of Costs.

Named Plaintiffs respectfully request $50,000 service awards for each of the Class Representatives who testified at trial (Anibal Rodriguez and Julian Santiago) and a $35,000 service award for the Class Representative who prepared to testify at trial but could not do so for medical reasons (Susan Harvey), for a total of $135,000 in service awards.

Dated: March 30, 2026                   Respectfully submitted,

                                        By: */s/ Steven Shepard*

25

David Boies (admitted *pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

James Lee (admitted *pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (admitted *pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Alison L. Anderson, CA Bar No. 275334
alanderson@bsfllp.com
M. Logan Wright, CA Bar No. 349004
mwright@bsfllp.com
BOIES SCHILLER FLEXNER LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (813) 482-4814

Bill Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley
afrawley@susmangodfrey.com
Ryan Sila
rsila@susmangodfrey.com
Xiaoming Wang (*pro hac vice*)

26

twang@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY  10001
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*