**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted *pro hac vice*)
Alexander Boies (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted *pro hac vice*)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
Samantha Parrish, CA Bar No. 318681
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
alanderson@bsfllp.com
sparrish@bsfllp.com
mwright@bsfllp.com

*Counsel for Plaintiffs*

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted *pro hac vice*)
Shawn J. Rabin (admitted *pro hac vice*)
Steven M. Shepard (admitted *pro hac vice*)
Alexander P. Frawley (admitted *pro hac vice*)
Ryan Sila (admitted *pro hac vice*)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted *pro hac vice*)
Ryan J. McGee (admitted *pro hac vice*)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, SAL CATALDO, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>     Defendant. | Case No. 3:20-cv-04688-RS<br><br>**DECLARATION OF MARK MAO ISO PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Judge: Hon. Richard Seeborg<br>Hearing Date: August 13, 2026, at 1:30 p.m.<br>Courtroom 3 – 17th Floor |

# DECLARATION OF MARK MAO

I, Mark Mao, declare as follows:

1.     I am a partner with the law firm of Boies Schiller Flexner LLP, counsel for Plaintiffs in this matter. I am an attorney at law, duly licensed to practice before all courts of the State of California. Except as otherwise stated, I have personal knowledge of the matters set forth herein, and I would and would testify competently thereto if called upon to do so.

2.     I was personally and actively involved in every stage of this case, including the prefiling investigation.

3.     Prior to filing suit, other lawyers from my firm and I worked with experts to uncover the at-issue data collection.

4.     During discovery, Plaintiffs served Google with 285 document requests, 25 interrogatories, and 52 requests for admission. The parties negotiated these requests by exchanging more than 35 formal letters, countless emails, and by conducting dozens upon dozens of meet-and-confers. Google ultimately produced over 2 million pages of documents. Google also produced gigabytes of data. As explained by Plaintiffs' technical expert Dr. Jonathan Hochman, that data, if printed on regular paper, would exceed the height of a 30-story building. Trial Tr. 616:2-6 (Hochman).

5.     Google served each Class Representative with at least 7 interrogatories, 41 requests for production, and 36 requests for admission, such that Class Counsel served responses to over 250 discovery requests directed at the Class Representatives, in coordination of the Class Representatives.[1] Each Class Representative also sat for a full-day deposition.

6.     This case included 9 testifying experts (5 for Plaintiffs and 4 for Google), all of whom provided at least one expert report and all but one of whom sat for deposition. Altogether, the parties exchanged 14 expert reports, totaling almost 2,000 pages, plus voluminous data analysis spreadsheets prepared by both sides.

---

[1] This figure does not include the hundreds of discovery requests served on and responded to by formerly named plaintiffs in this case.

DECLARATION OF MARK MAO ISO PLAINTIFFS' MOTION
FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

7.      Plaintiffs filed their class certification motion on July 20, 2023 (Dkt. 315), and the submissions on this motion, including Google's opposition and Plaintiffs' reply, totaled over 1,900 pages.

8.      Google moved for summary judgment on April 4, 2024, seeking judgment on all claims. Dkt. 383. The submissions on this motion (including Plaintiffs' opposition and Google's reply) totaled over 2,000 pages.

9.      To prepare for trial, Class Counsel conducted two in-person focus group exercises and one remote user survey, which helped us better understand how jurors would react to the case.

10.     The rest of this declaration addresses particular experts, with whom I worked closely: Avia Global Consulting Corporation, Analysis & Research, Inc., 233 Analytics, LLC and JE Hochman & Associates LLC. I will briefly address their costs and significant contributions.

**I.  Avia Global Consulting Corporation**

11.     I understand that Dr. Lillian Dai is the owner and Principal Consultant of Avia Global Consulting Corporation ("Avia"), where she has provided technical consulting expert services for technology-based litigation for over a decade, including for litigations involving data privacy, Internet technologies, online advertising, cybersecurity, AI, mobile devices/chipsets/apps, and wired and wireless technologies. I also understand that prior to her work in consulting, Dr. Dai had over 15 years of research experience in wireless and satellite networks, vehicular communications, and sensor systems. I understand that Dr. Dai holds a PhD in Electrical Engineering from MIT and is a co-inventor of 20 issued US patents.

12.     Class Counsel retained Dr. Dai and Avia to provide technical expertise in technical document review, data analysis, app testing, technical discovery assistance, report writing, and deposition and trial support.

13.     I understand that Avia billed their time and provided invoices. I understand the invoices were paid through a joint litigation fund administered by our firm, Boies Schiller Flexner.

14.     The costs associated with Avia's work totaled **$949,996.67**. These costs relate to **2,204.04 hours** of work performed between July 2020 and January 2026. Avia's work during each phase of the litigation is summarized in the following table:

CASE NO. 3:20-cv-04688-RS
DECLARATION OF MARK MAO ISO PLAINTIFFS' MOTION
FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

**Table 1: Avia's Hours and Fees & Expenses**

| Litigation Phase | Hours | Fees & Expenses |
|---|---|---|
| Preparation of Complaint (through Jul. 2020) | - | $0.00 |
| Motion to Dismiss (Aug. 2020 - May 2021) | - | $0.00 |
| Fact Discovery (Jun. 2021 - Oct. 2022) | 532.58 | $239,662.50 |
| Expert Discovery (Nov. 2022 - Jul. 2023) | 742.17 | $333,975.00 |
| Class Certification (Aug. 2023 - Oct. 2023) | 32.34 | $14,550.00 |
| Notice & Summary Judgment (Nov. 2023 - Jul. 2024) | 80.39 | $23,302.20 |
| Trial Preparation (Aug. 2024 - Jul. 2025) | 350.07 | $124,937.40 |
| Trial (Aug. 2025 - Sep. 2025) | 395.23 | $157,830.14 |
| Post-Trial Proceedings (Oct. 2025 - Jan. 2026) | 71.26 | $55,739.43 |
| **Total** | **2,204.04** | **$949,996.67** |

15.     Below I summarize Avia's work during the various phases of the case.

16.     **Fact Discovery**. Avia's work on the case began during fact discovery. Avia began reviewing technical documents produced by Google and supervised Concur IP's technical document review to gain technical understanding of Google's data collection, logging and usage infrastructure as well as Google's WAA/sWAA control functions. Avia worked with 233 Analytics to analyze produced data logs from Google to gain further insights into Google's data storage logs and type of information logged. Avia also worked with 233 Analytics to develop test plans of certain apps that contain Google SDKs in order to assess the corresponding logged data from Google. Avia shared understandings of Google's logging and privacy infrastructure with technical and damages testifying experts and conducted technical analyses under the guidance of the technical testifying expert. Avia helped counsel to formulate and review discovery requests aimed at the disclosure of documents and information useful in understanding Google's infrastructure and privacy settings. Avia also helped counsel to prepare for depositions of Google witnesses who may have knowledge about technology-related issues. Avia made material contributions to counsel's effort to build a factual record that includes information necessary to support privacy violation allegations.

17.     **Expert Discovery**. Avia performed a significant amount of work during expert discovery. Avia assisted the technical and damages testifying experts with their opening reports. Avia also reviewed and analyzed rebuttal expert reports offered by Google's experts. This work was of great assistance in counsel's preparation for depositions of Google's experts. Avia also assisted in preparing the technical

-4-                                    CASE NO. 3:20-cv-04688-RS

and damages testifying experts for their depositions. In addition, Avia assisted with lingering fact discovery issues, including data analysis, app test result analysis, and review of additional produced log data fields.

18. **Class Certification**. Avia analyzed Google's *Daubert* briefs and provided input on a response to Google's characterizations of Mr. Lasinski's opinions. Avia performed research on Google's advertising payment models, reviewed Google documents and assisted with demonstratives

19. **Notice & Summary Judgment**.  Avia assisted with document review and testing pertaining to impacted users, including children and enterprise users. Avia also assisted the legal team with technical aspects of the briefing on Google's motion for summary judgment.

20. **Trial Preparation**. Avia assisted the legal team in preparation for trial. This included working with counsel to prepare for witness examinations, to prepare demonstratives, and other tasks touching a wide range of tasks and subjects generally related to the technical aspects of this case.

21. **Trial**. Avia also played an important role at trial. Avia assisted with trial preparation, providing legal team and testifying experts with technical document and data evidence.

22. **Post-Trial Proceedings**. Finally, I understand that Avia continued to provide substantial support to counsel during proceedings after the jury rendered its verdict, and in particular in connection with briefing on the requested injunction and technical support for Dr. Hochman's declaration.

## II.  Analysis & Research, Inc.

23. I understand that Mr. Bhatia is an executive at Analysis & Research, Inc. ("Analysis & Research"), where he works full time as a technology expert on intellectual property litigation matters. Over the course of his career, Mr. Bhatia has been retained in more than 140 IP litigations involving patent infringement, copyright, privacy, and trade secrets, and has worked with approximately 40 AmLaw 100 firms representing clients across a wide range of technologies, including telecommunications (cellular, Internet of Things, and mobility management (3GPP)), web technologies (applications, operating systems, and systems), artificial intelligence and generative AI, commercial and enterprise software, and television platforms. Mr. Bhatia has made significant technical contributions that have directly resulted in more than $2 billion in financial benefits for clients and has participated throughout the full lifecycle of IP litigation,

including patent portfolio analysis, target identification, Rule 11 chart preparation, pleading support, infringement and invalidity contentions, document discovery, technical strategy development, experimentation, source code review, expert report preparation, and trial support.

24.     Class Counsel retained Mr. Bhatia to work closely with Plaintiffs' retained expert, Dr. Jonathan Hochman, in developing the testing strategy and plans for the accused instrumentalities. Mr. Bhatia prepared exemplar applications utilizing the accused instrumentalities on targeted platforms, including iOS, Android, and web-based environments, conducted experiments using custom-developed applications on those platforms, and analyzed the resulting data for inclusion in the expert reports. Mr. Bhatia also collaborated with other experts to discuss, synthesize, and present the experimental findings reflected in the expert reports.

25.     I understand that Analysis & Research billed time and provided invoices. I understand the invoices were paid through a joint litigation fund administered by our firm, Boies Schiller Flexner.

26.     Costs associated with Analysis & Research's work totaled **$106,899.36**, which includes **420** hours of work. Analysis & Research, Inc.'s work during each phase of the litigation is summarized in the following table:

**Table 2: Analysis & Research, Inc.'s Hours and Fees & Expenses**

| Litigation Phase | Hours | Fees & Expenses |
|---|---|---|
| Preparation of Complaint (through July 2020) | 0 | $0 |
| Motions to Dismiss (Aug. 2020 – May 2021) | 62 | $14,112.50 |
| Fact Discovery (June 2021 – Oct. 2022) | 44.5 | $10,000 |
| Expert Discovery (Nov. 1, 2022 – July 2023) | 310.50 | $81,961.86 |
| Class Certification (Aug. 2023 – Oct. 2023) | 3 | $825 |
| Notice & Summary Judgment (Nov. 2023 – July 2024) | 0 | $0 |
| Trial Preparation (Aug. 2024 – July 2025) | 0 | $0 |
| Trial (Aug. 2025 – Sep. 2025) | 0 | $0 |
| Post-Trial Proceedings (Oct. 2025 – Jan. 2026) | 0 | $0 |
| **Total** | **420** | **$106,899.36** |

27.     Below I summarize Analysis & Research, Inc.'s work during the various phases of the case.

28.     **Motion to Dismiss**.  Analysis & Research's work on the case began in the Motion to Dismiss phase. Analysis & Research conducted targeted technical investigation to support the pleadings

and opposition briefing. This work included researching Google's product history, Firebase architecture and SDK usage, and the integration between Firebase, Google Ads, iOS, and Android applications; identifying and compiling lists of widely used applications incorporating Firebase components; and analyzing technical documents relevant to Google's data-collection practices. Mr. Bhatia coordinated closely with the trial team through meetings and written communications, refined technical findings based on ongoing discussions, and provided research and analysis that informed the factual allegations and legal arguments advanced in response to Google's motions to dismiss.

29.    **Fact Discovery**. During fact discovery, Analysis & Research conducted in-depth technical analysis to support discovery strategy and expert development. Mr. Bhatia coordinated extensively with the counsel team through conferences and written communications, reviewed discovery-related filings, and provided technical analysis that informed discovery requests and ongoing factual development.

30.    **Expert Discovery**. Analysis & Research's largest contribution occurred at the expert discovery phase. Analysis & Research supported Plaintiffs' expert analysis through extensive hands-on testing, technical experimentation, and close coordination with the expert teams. This work, under the direction and supervision of Plaintiffs' expert, Dr. Hochman, included developing and iterating custom test applications, conducting repeated experiments across multiple devices and platforms, capturing and analyzing data from Google Analytics and Firebase dashboards, and troubleshooting technical and account-level issues affecting testing.

31.    **Class Certification**. Analysis & Research conducted limited work during this phase of the case. This included reviewing and analyzing expert rebuttal report, coordinating with counsel to address issues raised by Google's experts, and providing technical support to ensure briefing accurately reflected the underlying testing and analysis relevant to class certification.

### III. 233 Analytics

32.    I understand that Mr. Thompson is the founder and principal consultant of 233 Analytics, LLC ("233 Analytics"), where he has provided technical consulting and expert services in intellectual property and complex technology litigation since 2010. Mr. Thompson holds a Bachelor of Engineering in Computer Engineering from Vanderbilt University, with a minor in Engineering Management, and has an extensive academic background that includes peer-reviewed journal articles, conference publications,

and awarded research papers in mobile systems, software performance, and distributed computing. Over more than a decade, Mr. Thompson has served as a technical consultant and expert in numerous litigations across federal and state courts and the U.S. International Trade Commission, with subject-matter expertise spanning mobile and web technologies, data analytics, privacy and tracking technologies, cloud computing, AI-enabled systems, telecommunications, and enterprise software. Through 233 Analytics, Mr. Thompson has supported the full lifecycle of litigation, including technical investigation, experimental design and execution, source-code analysis, expert report development, deposition and trial support, and testimony, drawing on his prior experience as a CTO, product executive, and software architect in both commercial and research settings.

33.    Class Counsel retained Mr. Thompson to perform technical analysis of Google's Firebase, Google Analytics, AdMob systems, and to assist in the review and interpretation of highly technical documents and data produced in this action. Working under the direction of Plaintiffs' retained expert, Dr. Jonathan Hochman, Mr. Thompson supported the testing conducted in this matter and assisted with the preparation of Dr. Hochman's expert report and testimony.

34.    I understand that 233 Analytics billed time and provided invoices. I understand the invoices were paid through a joint litigation fund administered by our firm, Boies Schiller Flexner.

35.    Costs associated with 233 Analytics' work totaled **$444,566.14**, which includes **1,669.02** hours of work. 233 Analytics' work during each phase of the litigation is summarized in the following table:

**Table 3: 233 Analytics' Hours and Fees & Expenses**

| Litigation Phase | Hours | Fees & Expenses |
|---|---|---|
| Preparation of Complaint (through July 2020) | 0 | $0 |
| Motions to Dismiss (Aug. 2020 – May 2021) | 18.6 | $5,665 |
| Fact Discovery (June 2021 – Oct. 2022) | 847.8 | $235,940.61 |
| Expert Discovery (Nov. 1, 2022 – July 2023) | 428 | $107,266.63 |
| Class Certification (Aug. 2023 – Oct. 2023) | 0 | $0 |
| Notice & Summary Judgment (Nov. 2023 – July 2024) | 60.4 | $14,744.50 |
| Trial Preparation (Aug. 2024 – July 2025) | 8.3 | $2,539.50 |
| Trial (Aug. 2025 – Sep. 2025) | 176.5 | $46,775.10 |
| Post-Trial Proceedings (Oct. 2025 – Jan. 2026) | 129.42 | $31,634.80 |
| **Total** | **1669.02** | **$444,566.14** |

36.    Below I summarize 233 Analytics' work during the various phases of the case.

37. **Motion to Dismiss.** 233 Analytics' work on the case began in the Motion to Dismiss phase. 233 Analytics conducted targeted technical investigation to support the pleadings and opposition briefing. This work included researching Google's product history, Firebase architecture and SDK usage, and the integration between Firebase, Google Ads, iOS, and Android applications. 233 Analytics coordinated closely with counsel as they drafted the factual allegations and legal arguments advanced in response to Google's motions to dismiss.

38. **Fact Discovery**. 233 Analytics' largest contribution came during fact discovery, where it conducted in-depth technical analysis and experiments to support discovery strategy and expert development. 233 Analytics reviewed technical documents produced by Google and worked with Avia to analyze Google's data collection, logging, and usage infrastructure, including Google's WAA/sWAA control functions. In coordination with Avia, 233 Analytics analyzed produced Google data logs to gain insight into the nature of Google's data storage practices and the types of information logged, and collaborated on the development of test plans for applications incorporating Google SDKs to assess corresponding logged data. 233. Through these efforts, 233 Analytics made material contributions to the development of a factual record supporting Plaintiffs' privacy violation allegations.

39. **Expert Discovery**. During the expert discovery phase, 233 Analytics shared technical findings with Avia, Class Counsel, and testifying experts, conducted technical analyses under the direction of the technical testifying expert, and assisted counsel with expert-related discovery strategy and deposition preparation concerning Google's technology. 233 Analytics also provided data analysis and technical support for Dr. Hochman's expert reports and deposition testimony.

40. **Notice & Summary Judgment**. 233 Analytics continued to assist with technical document review and related issues. Analytics also provided technical analysis and input to Class Counsel in support of summary judgment briefing concerning Google's data-collection practices.

41. **Trial Preparation**. During trial preparation, 233 Analytics supported the development and refinement of expert demonstratives and testimony through targeted technical analysis and coordination with testifying experts. This work included Android testing and diagnostics, analysis of WAA/sWAA activity, review and refinement of Dr. Hochman's presentation materials, and preparation for expert examinations and cross-examinations. 233 Analytics also coordinated closely with Class Counsel and

-9-

experts to ensure that demonstratives accurately reflected the underlying technical evidence to be presented at trial.

42. **Trial**. During the trial phase, 233 Analytics provided intensive technical analysis and real-time trial support focused on evidentiary development and presentation. This work included analyzing discovery material and preparing and refining data for potential use in trial exhibits. 233 Analytics also worked closely with Class Counsel to support trial strategy and presentation throughout the proceedings.

43. **Post-Trial Proceedings**. During post-trial proceedings, 233 Analytics provided technical and strategic support in connection with Plaintiffs' equitable relief motion. This work included coordinating with Class Counsel regarding post-trial strategy and reviewing and refining expert demonstratives for potential use in the hearing on the post-trial motions.

## IV. JE Hochman & Associates LLC

44. I understand that Dr. Jonathan Hochman is a lecturer at Yale University, where he teaches digital identity, data use, and cybersecurity. I understand that Dr. Hochman is the founder of JE Hochman & Associates LLC ("JE Hochman"), which is an internet technology, marketing, and security consulting and software development firm since 2004. He is the co-founder of UNS, an internet infrastructure service firm for user authentication, federated identity, linking de-identified records, detection of fake-accounts, and recovery of lost securities keys since 2018. I further understand that he is a co-founder of Alchemists Associates, which is an internet technologies, marketing, and security consulting firm focused on digital platforms since 2024. Prior to all of this, he was also the co-founder of Codeguard, a website security platform, which was sold and acquired by Sectigo in 2018.

45. Class counsel retained Dr. Hochman to develop and provide opinions relating to technology issues in the case, including how Google's technologies purportedly worked, how Google's technologies actually worked, how Google collected and used data, how to interpret Google's stored data sources and logs, and various related technical issues. Dr. Hochman interpreted technical data and data sources that Google produced, in response to Plaintiffs' discovery.

46. Dr. Hochman prepared and offered an extensive expert report, served on March 22, 2023. I worked with Dr. Hochman on his report. To prepare the report, we made available to Dr. Hochman 5 GB of data across 21 data files spanning 152,125 records.

-10-

47.     Dr. Hochman also sat for a full day deposition on June 26, 2023, which was taken by counsel for Google.  I attended this deposition.  I also attended multiple prep sessions with Dr. Hochman, which Dr. Hochman prepared for by reviewing the data and documentation produced by Google, in addition to numerous deposition transcripts and filings made in this case.

48.     Dr. Hochman was prepared to testify at both the jury trial, and the equitable relief hearing. He spent four days with counsel preparing for the jury trial.  And he spent another day with counsel preparing for the equitable relief hearing.  Although he was not ultimately called at the equitable relief hearing, he testified at the jury trial.

49.     I understand that JE Hochman billed time provided invoices. I understand the invoices were paid through a joint litigation fund administered by our firm, Boies Schiller Flexner.

50.     Costs associated with their work totaled $**553,112.36**, which includes **1,273.15** hours of work. JE Hochman's work during each phase of the litigation is summarized in the following table:

**Table 4: JE Hochman's Hours and Fees & Expenses**

| Litigation Phase | Hours | Fees & Expenses |
|---|---|---|
| Preparation of Complaint (through July 2020) | 0 | $0 |
| Motions to Dismiss (Aug. 2020 – May 2021) | 0 | $0 |
| Fact Discovery (June 2021 – Oct. 2022) | 116.25 | $25,687.50 |
| Expert Discovery (Nov. 1, 2022 – July 2023) | 837.65 | $262,524.60 |
| Class Certification (Aug. 2023 – Oct. 2023) | 0 | $0 |
| Notice & Summary Judgment (Nov. 2023 – July 2024) | 1 | $800 |
| Trial Preparation (Aug. 2024 – July 2025) | 45 | $14,400 |
| Trial (Aug. 2025 – Sep. 2025) | 212.25 | $186,276.37 |
| Post-Trial Proceedings (Oct. 2025 – Jan. 2026) | 61 | $55823.89 |
| **Total** | **1273.15** | **$553,112.36** |

51.     Below I summarize their work during the various phases of the case.

52.     **Fact Discovery**. During fact discovery, Class Counsel relied on JE Hochman to interpret and analyze Google's technical systems and data in response to Plaintiffs' discovery. JE Hochman reviewed and evaluated technical documents, data sources, and logs produced by Google relating to Google's data-collection, logging, storage, and usage practices, including how Google technologies interacted with third-party mobile applications. JE Hochman worked with Class Counsel to understand the structure and meaning of Google's data, provided guidance on technical issues relevant to discovery

strategy, and helped shape discovery requests and deposition preparation directed at uncovering how Google's systems operated and how class members' data were collected and identifiable.

53.    **Expert Discovery**. During expert discovery, Dr. Hochman served as Plaintiffs' primary technical testifying expert and developed opinions concerning how Google's technologies purportedly worked, how they actually functioned in practice, how Google collected and used data, and how Google's stored data sources and logs should be interpreted. He prepared an expert report drawing on extensive technical documentation and approximately 5 GB of produced data across 21 files comprising over 152,000 records. Dr. Hochman worked closely with Class Counsel, and he prepared extensively for and gave a full-day deposition on June 26, 2023, following multiple preparation sessions involving review of produced materials, deposition transcripts, and filings in the case.

54.    **Notice & Summary Judgment**. JE Hochman assisted counsel with technical aspects of the briefing on summary judgment.

55.    **Trial Preparation**. During trial preparation, Dr. Hochman worked closely with Class Counsel over multiple days to prepare for live testimony at trial. This work included reviewing and refining expert demonstratives, preparing for direct and cross-examination, and other matters.

56.    **Trial.** During trial, Dr. Hochman also prepared for his live testimony and worked with Class Counsel to help them prepare for the presentation of technical evidence at trial. Dr. Hochman testified at trial.

57.    **Post-Trial Proceedings**. Following trial, Dr. Hochman continued to assist Class Counsel in post-trial proceedings. He prepared and submitted a declaration in support of Plaintiffs' motion for permanent injunction, applying his technical expertise to issues relevant to prospective relief. Although Dr. Hochman was not ultimately called to testify at the equitable relief hearing, he was prepared to do so and supported Class Counsel's presentation of the technical record underlying Plaintiffs' post-trial and injunctive relief requests.

Dated: March 30, 2026                    Respectfully submitted,


By:  /s/ Mark C. Mao

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

*Attorney for Plaintiffs*

CASE NO. 3:20-cv-04688-RS
DECLARATION OF MARK MAO ISO PLAINTIFFS' MOTION
FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS