**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
Ryan Sila (admitted pro hac vice)
Xiaoming Wang (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Michael F. Ram, CA Bar No. 104805
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, JULIAN SANTIAGO, and SUSAN LYNN HARVEY individually and on behalf of all other similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>GOOGLE LLC,<br><br>　　　　　　Defendant. | Case No.:  3:20-cv-04688-RS<br><br>**DECLARATION OF STEVEN SHEPARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FEES, COSTS, AND SERVICE AWARDS**<br><br>Judge: Hon. Richard Seeborg<br>Hearing Date: August 13, 2026, at 1:30 p.m.<br>Courtroom 3 – 17th Floor. |

### DECLARATION OF STEVEN SHEPARD

I, Steven Shepard, declare as follows.

1. I am a partner with the law firm of Susman Godfrey L.L.P ("Susman Godfrey"), with an office located at One Manhattan West, 50th Floor, New York, NY 10001. I am licensed to practice before all courts of the State of New York and Virginia and admitted *pro hac vice* in this matter. Dkt. 90. By order of the Court, Susman Godfrey, along with our co-counsel at Boies Schiller Flexner LLP and Morgan & Morgan, are Co-Lead Counsel to the certified classes. *See* Dkt. 352. I have prepared this declaration with the assistance of Susman Godfrey associates and staff, who in turn have relied on Susman Godfrey's internal timekeeping and expense records for the information contained herein. Except as otherwise stated, I have personal knowledge of the matters set forth herein, and I could and would testify competently thereto if called upon to do so.

2. In this declaration, I will: (A) provide information about the hours that Susman Godfrey personnel worked in this case and the rates Susman Godfrey charges for each individual's time; (B) describe Susman Godfrey's contributions to this litigation as a whole, and also describe each attorney and staff member's qualifications, experience, and contributions to this matter; and (C) provide information about the costs that Susman Godfrey incurred in prosecuting this action, and for which Susman Godfrey seeks reimbursement from the common fund.

**A.      Susman Godfrey's Hours and Rates**

3. Susman Godfrey's attorneys and paralegals (not including summer associates and staff who worked on this matter for fewer than 60 hours) contributed **16,703.6 hours** of their time to the litigation of this matter through February 2026. Applying the rates at which Susman Godfrey currently bills each individual's time (or, for individuals no longer with the firm, their rates at the time they left), this amounts to a lodestar of **$16,443,382.50**. Susman Godfrey's hours and lodestar are summarized by timekeeper in the following **Table 1**:

**Table 1: Susman Godfrey Lodestar by Timekeeper**

| Timekeeper | Bar Admission | Rate | Hours | Lodestar |
|---|---|---|---|---|
| **Partners** | | | | |
| Bonn, Amanda | 2010 | $1,500.00 | 809.0 | $1,213,500.00 |

| Timekeeper | Bar Admission | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Carmody, Bill | 1988 | $4,000.00 | 622.5 | $2,490,000.00 |
| Crosby, Ian B. | 1998 | $1,800.00 | 345.6 | $622,080.00 |
| Farleigh, Jenna | 2014 | $1,300.00 | 300.9 | $391,170.00 |
| Rabin, Shawn | 2003 | $2,500.00 | 180.9 | $452,250.00 |
| Shepard, Steven | 2009 | $1,500.00 | 619.6 | $929,400.00 |
| **Associates** | | | | |
| Frawley, Alexander | 2018 | $900.00 | 3,730.4 | $3,357,360.00 |
| Gregory, Amy | 2019 | $900.00 | 79.5 | $71,550.00 |
| Sila, Ryan | 2019 | $900.00 | 5,210.4 | $4,689,360.00 |
| Wang, Xiaoming | 2023 | $750.00 | 330.7 | $248,025.00 |
| **Staff Attorneys** | | | | |
| Donofrio, Nicholas[1] | 2021 | $300.00 | 504.7 | $151,410.00 |
| Galvan, Brittany | 2021 | $475.00 | 486.3 | $230,992.50 |
| O'Brien, Mary[2] | 2021 | $450.00 | 940.7 | $423,315.00 |
| Singh Zanders, Neha | 2021 | $475.00 | 624.4 | $296,590.00 |
| **Paralegals** | | | | |
| Abalos, Jianna | n/a | $450.00 | 267.7 | $120,465.00 |
| Dunseth, William M. | n/a | $475.00 | 440.2 | $209,095.00 |
| Santos, Vanessa | n/a | $450.00 | 1,119.1 | $503,595.00 |
| Schulze, Stacy | n/a | $475.00 | 91.0 | $43,225.00 |
| **Total** | | | **16,703.6** | **$16,443,382.50** |

4.      **Table 1** reflects each timekeeper's contemporaneous records of the hours they worked. All counsel and paralegals keep contemporaneous time records, which are stored in a centralized firm system. Susman Godfrey personnel used that system to prepare this table.

5.      The hourly rates in **Table 1** are Susman Godfrey's standard hourly rates for the corresponding timekeepers as of (1) today or (2) for timekeepers no longer with the firm, as of the year in which they left the firm. Fee-paying clients have paid these rates for hourly work for these timekeepers, with exceptions explained in the footnote below.[3]

---

[1] Mr. Donofrio left the firm in 2022. His rate stated in this chart ($300/hour) was his rate in that year.

[2] Ms. O'Brien left the firm in 2025. Her rate stated in this chart ($450/hour) was her rate in that year.

[3] Those exceptions are: Bill Carmody (last paid on an hourly basis in February 2020, at a rate of $1,615 per hour), Shawn Rabin (last paid on an hourly basis in August 2024, at a rate of $1,700 per hour), Alex Frawley (last paid on an hourly basis in March 2024, at a rate of $800 per hour), Xiaoming Wang (who has never worked on an hourly basis while employed as an associate at the firm), Mary O'Brien (last paid on an hourly basis in June 2023 at a rate of $350 per hour), Neha Singh Zanders (last paid on an hourly basis in December 2025 at a rate of $450 per hour), William Dunseth (last paid on an hourly basis in January 2025, at a rate of $450 per hour), Vanessa Santos (last paid on an hourly basis in November 2025, at a rate of $400 per hour), and Stacy Schulze (last paid on an hourly basis in July 2024, at a rate of $400 per hour).

6.    The rates for Susman Godfrey's attorneys and paralegals are reasonable. I understand that these rates are within the range of rates charged by comparable firms for work performed by attorneys and staff of comparable seniority. To illustrate, I have attached as **Exhibit 1** to this declaration a chart showing peer firms' rates as approved by bankruptcy courts, which are generally subject to scrutiny to protect estate assets. As reflected in Exhibit 1, all but two of the hourly rates that Susman Godfrey charges for time worked by the partners, associates, staff attorneys, and paralegals on this case fall within the average court-approved ranges of peer firms and are mostly in the lower half of these ranges. There are two exceptions: Mr. Carmody and Mr. Rabin each charge rates that are above the ranges shown in Exhibit 1. Their rates are well justified by their unique experience and expertise.

7.    Bill Carmody's hourly rate ($4,000) is reasonable given his stature as one of the nation's leading trial lawyers and the exceedingly complex nature of this litigation. Mr. Carmody's experience and accomplishments are described below in Section B.ii. Mr. Carmody's time was also wisely invested. Mr. Carmody spent fewer hours on this matter than many other members of the Class Counsel team, and the majority of his work in this case was either in preparation for trial or in conducting the trial. More than three quarters of Mr. Carmody's hours are from trial and the two months immediately prior. Mr. Carmody typically works on a fixed fee or contingency fee where his implied total hourly rate typically exceeds $4,000 per hour, calculated by dividing the amount of his fees collected by his hours worked.

8.    Shawn Rabin's hourly rate ($2,500) is also reasonable given his stature as one of the nation's top trial lawyers. His implied average hourly rate over the past five years, calculating the fees Mr. Rabin has earned over that time divided by his hours worked, far exceeds this amount. Mr. Rabin's experiences and accomplishments are described below in Section B.ii. Mr. Rabin's time was also wisely invested. Mr. Rabin spent fewer hours on this matter than many other members of the Class Counsel team, and nearly half of his work in this case was in preparation for trial, during trial, or relating to important post-trial issues.

9.      Unlike many firms that represent plaintiffs in class actions, Susman Godfrey represents both plaintiffs and defendants. When Susman Godfrey enters into result-based fee arrangements, it must compensate for the risks and opportunity costs associated with such work. These risks include the risk that the firm will not collect any fees for its time and the risk that the firm will not be reimbursed for expenses paid out of pocket. For Susman Godfrey, the opportunity costs include foregone opportunities to work on matters that provide a steady, timely, and more guaranteed stream of income (*e.g.*, matters paid on an hourly or fixed-fee basis).

10.     These risks and opportunity costs were significant here given Susman Godfrey's substantial investment of time and expenses, for which it has not received payment or reimbursement. Those are especially significant because of the long duration of this case. This litigation has lasted more than five and a half years at the time of writing, and it may last several more years if Google pursues an appeal. In non-class cases where the client advances expenses, Susman Godfrey's normal contingency fee ranges from 35–45% depending on the stage of the case. Where, as here, Susman Godfrey advances expenses and the case was tried, the fee generally ranges from 40–50%.

**B.      Susman Godfrey's Staff and Contributions to This Matter**

11.     Susman Godfrey and its staff performed substantial and critical work on behalf of the classes in this case, from the filing of the complaint and through the present. In this section, I will (i) provide an overview of the firm's contributions and (ii) introduce each member of Susman Godfrey's team, describe their qualifications and experiences, and provide a brief overview of their work on this case.

**i.      Susman Godfrey's Contributions**

12.     To illustrate the work performed by Susman Godfrey's attorneys and paralegals in this matter, my firm has prepared Table 2 below, which summarizes the total hours and lodestar (*i.e.*, the sum of each timekeeper's hours multiplied by that timekeeper's hourly rate) for each phase of the case. In reality, the phases of the case necessarily overlapped (*e.g.*, fact discovery proceeded while motions to dismiss were briefed). For ease of review, however, the phases of the

case were simplified into successive periods bounded by the beginning or end of months during which the corresponding activities began or ended. As with Table 1 above, we have excluded from this table all timekeepers who were summer associates or who spent less than 60 hours total on this matter.

**Table 2: Susman Godfrey Lodestar by Litigation Phase**

| Litigation Phase | Hours | Lodestar |
|---|---|---|
| Preparation of Complaint (through July 2020) | 6.5 | $13,630.00 |
| Motion to Dismiss (Aug. 2020 – May 2021) | 590.3 | $624,530.00 |
| Fact Discovery (June 2021 – Oct. 2022) | 3,828.1 | $2,957,720.00 |
| Expert Discovery (Nov. 2022 – July 2023) | 2,916.6 | $2,459,220.00 |
| Class Certification (Aug. 2023 – Oct. 2023) | 513.3 | $453,515.00 |
| Notice & Summary Judgment (Nov. 2023 – July 2024) | 1,307.7 | $1,109,635.00 |
| Trial Preparation (Aug. 2024 – July 2025) | 3,518.8 | $3,922,205.00 |
| Trial (Aug. 2025 – Sep. 2025) | 3,161.2 | $4,156,815.00 |
| Post-Trial Proceedings (Oct. 2025 – Feb. 2026) | 861.1 | $746,112.50 |
| **Total** | **16,703.6** | **$16,443,382.50** |

In the paragraphs that follow, I provide further information about what Susman Godfrey did during each of these litigation phases.

13.     **Preparation of the Complaint.** Susman Godfrey performed limited work through July 2020, the month in which the complaint was filed. In this phase, Susman Godfrey' work primarily related to evaluation of the claims asserted and background research.

14.     **Motion to Dismiss.** During this period, Susman Godfrey played a leading role in drafting Plaintiffs' First Amended Complaint, which Plaintiffs filed in response to Google's initial motion to dismiss. Susman Godfrey also played a leading role in drafting and arguing Plaintiffs' opposition to Google's second motion to dismiss, which the Court denied in substantial part.[4] Susman Godfrey also played a leading role in drafting Plaintiffs' second and third amended complaints and Plaintiffs' oppositions to Google's partial motions to dismiss those complaints. Susman Godfrey also interviewed, retained, and began working with experts to develop a

[4] Google's initial motion to dismiss was mooted by the filing of Plaintiffs' First Amended Complaint. The second motion to dismiss was the first motion to dismiss which this Court adjudicated.

discovery strategy. Susman Godfrey also worked with co-counsel to prepare and serve initial discovery requests, and briefed disputes relating to Google's responses to those requests.

15.    **Fact Discovery.** Susman Godfrey also played a leading role during fact discovery. Susman Godfrey attorneys drafted or co-drafted every set of discovery requests, participated in almost all meet-and-confers with opposing counsel, drafted or co-drafted at least 20 discovery briefs, took 6 of Plaintiffs' 14 depositions of fact witnesses, reviewed and led a team in reviewing over two million pages of documents produced in this matter, and worked with experts to integrate fact and expert discovery strategy. As a result of these efforts, Plaintiffs obtained and uncovered significant discovery material that played a meaningful role during this litigation, before and during trial.

16.    **Expert Discovery.** During this time period, Susman Godfrey attorneys worked with all expert witnesses as they developed their opinions and then documented those opinions in written reports. Susman Godfrey attorneys took two of Plaintiffs' four depositions of Google's expert witnesses. Together with Co-Class Counsel, Susman Godfrey attorneys also prepared Plaintiffs' experts for their depositions. This time period also included holdover issues from fact discovery, including certain motions to compel, depositions, and production of documents and discovery responses. These issues were also addressed in substantial part by Susman Godfrey attorneys.

17.    **Class Certification.** Susman Godfrey attorneys co-drafted Plaintiffs' successful motion for class certification and defeated Google's motion to exclude the testimony of one of Plaintiffs' experts. Susman Godfrey attorneys prepared materials for the hearing on these motions, and a Susman Godfrey attorney argued Plaintiffs' opposition to Google's motion to exclude.

18.    **Notice & Summary Judgment.** After the Court granted class certification, Plaintiffs turned to the process of notifying class members. This process was complicated by Google's efforts to partially decertify the class. Susman Godfrey attorneys co-wrote the response to this motion and defeated it in substantial part. The notice process was also complicated by the manner in which Google produced data about potential class members. Over a period of many

months, Susman Godfrey attorneys participated in well more than a dozen meet-and-confers with opposing counsel and consultations with the notice administrator. As a result, Plaintiffs proposed and implemented an effective notice program that was approved by the Court. The parties also briefed and argued Google's summary judgment motion during this period, which was denied in its entirety. Susman Godfrey attorneys co-drafted Plaintiffs' opposition brief and played a significant role in preparing for argument.

19.    **Trial Preparation.** After briefing and arguing summary judgment, Plaintiffs began preparing for trial. Together with Co-Class Counsel, Susman Godfrey prepared and conducted two focus group exercises and one survey. Susman Godfrey also worked closely with Plaintiffs' experts to prepare supplemental reports, drafted and co-drafted briefs opposing Google's motion to exclude portions of those supplemental reports, and drafted and co-drafted motions to exclude portions of supplemental reports offered by Google's experts. Together with Co-Class Counsel, Susman Godfrey prepared witness lists, exhibit lists, demonstratives, deposition designations, jury instructions, a verdict form, a jury questionnaire, voir dire questions, and the pretrial order. Susman Godfrey also drafted or co-drafted 8 motions *in limine* and drafted or co-drafted most of Plaintiffs' oppositions to Google's 19 motions *in limine*. Susman Godfrey and Co-Class Counsel also formulated their trial strategy and began preparing for examinations and opening statements.

20.    **Trial.** Susman Godfrey attorneys played a critical role at trial. Susman Godfrey attorneys examined three of the seven witnesses in Plaintiffs' case, including the first witness and two of the three adverse witnesses. Susman Godfrey attorneys cross-examined two of the five witnesses called in Google's case. Susman Godfrey attorneys also made significant contributions to trial strategy, preparation for Co-Class Counsel's examinations of other witnesses, and the preparation of opening and closing statements. Susman Godfrey attorneys also drafted or co-drafted briefs regarding various disputes that arose at trial and argued many of them. In addition, Susman Godfrey's paralegals and staff ensured that, among other things, the appropriate materials were provided for attorneys, opposing counsel, the Court, and the witnesses every day. Susman

Godfrey's staff performed this work not only to support Susman Godfrey attorneys, but also to support the attorneys associated with Co-Class Counsel.

21. **Post-Trial Proceedings.** Susman Godfrey's role has continued since trial, and will continue until all issues relating to this case are resolved. Susman Godfrey co-drafted Plaintiffs' briefs supporting their request for disgorgement and injunctive relief, as well as Plaintiffs' brief opposing Google's motion to decertify the class. Susman Godfrey attorneys also prepared Co-Class Counsel for argument on those motions. After the Court resolved those motions, Susman Godfrey attorneys have taken a leading role in the creation of a notice program to notify class members of this motion for fees, costs and expenses, and service awards. Susman Godfrey attorneys have also taken a leading role in preparing the bill of costs, drafting this motion for fees, costs and expenses, and service awards, and various other post-trial matters.

22. In the coming months or years, Susman Godfrey attorneys, along with Co-Class Counsel, will defend the judgment against Google's post-judgment motions, as well as pursue or defend against any appeals. I expect that Susman Godfrey attorneys and paralegals will work several hundred additional hours on these and other remaining tasks.

23. Throughout the case, Susman Godfrey also made substantial contributions to the successful strategy employed by Class Counsel in this case.

### ii. Susman Godfrey's Attorneys and Paralegals

24. As reflected in **Table 1** above, the Susman Godfrey team in this case included partners, associates, staff attorneys, and paralegals. The partners included Bill Carmody, Shawn Rabin, Amanda Bonn, Ian Crosby, Jenna Farleigh, and me. The associates included Alex Frawley, Amy Gregory, Ryan Sila, and Xiaoming Wang. The staff attorneys included Nicholas Donofrio, Brittany Galvan, Mary O'Brien, and Neha Singh Zanders. The paralegals included Jianna Abalos, William Dunseth, Vanessa Santos, and Stacy Schulze. In this section, I provide an overview of each person's qualifications and experience and describe their role in this case.

25. **Bill Carmody** is a nationally recognized trial lawyer. Mr. Carmody, a partner in Susman Godfrey's New York office, brings a wealth of experience to this litigation. He represents

both plaintiffs and defendants in state and federal courts across the country. Mr. Carmody has led many large and successful class actions, and he has won many trials. Mr. Carmody is a member of Susman Godfrey's Executive Committee and heads its New York office.

26. Mr. Carmody currently represents numerous clients in high-profile litigation, including the following:

a. Mr. Carmody represents the City of Baltimore in litigation relating to opioids, in which he and Susman Godfrey secured more than $427 million in settlements and an additional final judgment of $152.4 million.

b. Mr. Carmody represents survivors of wildfires in Oregon in their claims against the utility company PacifiCorp, for whom he and Susman Godfrey won trial verdicts totaling more than $400 million.

c. Mr. Carmody represents classes of purchasers of NFL Sunday Ticket in antitrust litigation against the NFL and its member teams, which resulted in a historic $4.7 billion verdict in summer 2024. The district court granted judgment to the defendants notwithstanding the verdict, but the plaintiff classes have appealed that decision to the Ninth Circuit, which heard oral argument in March 2026.

d. Mr. Carmody represents purchasers of debt securities based on the London Interbank Offered Rate ("LIBOR") in a class action asserting antitrust claims. Mr. Carmody and Susman Godfrey have amassed settlements totaling $781 million.

27. Mr. Carmody has been a leading trial lawyer for decades, and he has earned widespread recognition in the legal industry. He is a member of the American Board of Trial Advocates, a fellow of the Litigation Counsel of America, and a Life Fellow of the American Bar Foundation. He is listed in The Best Lawyers in America in seven categories, including Bet-the-Company Litigation. He is also listed in Who's Who Legal in Commercial Litigation. His peers have voted him both a "New York Super Lawyer" and a "Texas Super Lawyer," and he's listed in The Legal 500, in addition to being selected among America's Top 100 High Stakes Litigators by America's Top 100. Mr. Carmody was honored by Law360 as one of its 10 Titans of the Plaintiffs

Bar. He is also perennially listed in the Lawdragon 500 and was lauded as one of Lawdragon's 41 Legal Legends. In 2025, the New York Law Journal named Mr. Carmody the 2025 Attorney of the Year, and the National Law Journal named him Plaintiff Attorney of the Year. In 2021, 2022 and 2023, Benchmark placed Mr. Carmody on its shortlist—of five to six lawyers—for National Trial Lawyer of the Year.

28.    Mr. Carmody oversaw all aspects of the case and overall strategy in this case. Mr. Carmody took an active role in preparation for trial, including by overseeing focus group exercises. Mr. Carmody also took a leading role at trial itself, working with Co-Class Counsel to define and pursue Plaintiffs' strategy and examining two critical adverse witnesses.

29.    **Shawn Rabin** is a partner in Susman Godfrey's New York office and is nationally recognized for his many and significant trial successes in complex cases. Mr. Rabin has represented plaintiffs and defendants and has served as lead counsel for several class actions.

30.    Mr. Rabin's current and recent noteworthy representations include winning over $1.5 billion in verdicts and awards in the last three years alone by representing numerous clients in high-profile litigation. His recent successes include:

a.    Winning an over $1 billion award and then a motion to confirm for client Everly Health in litigation against Walgreens;

b.    Representing wildfire survivors in the litigation against PacifiCorp, for whom he has obtained over $400 million in jury verdicts;

c.    Representing the former CEO of RBGlobal in an arbitration, where a panel of three former federal judges awarded Mr. Rabin's client $59.6 million.

d.    In addition to those and many other successes, Mr. Rabin currently serves as a court-appointed co-chair of the Co-Lead Interim Class Counsel of Direct Purchasers in the *In re Apple Smartphone Antitrust Litigation* in the District of New Jersey, which is one of the largest direct purchaser class actions in the country. Mr. Rabin also serves as court-appointed interim co-lead counsel for

certain medical providers in the *In re MultiPlan Health Insurance Provider Litigation* in the Northern District of Illinois.

31.     Mr. Rabin is often recognized by the legal community for his work. Chambers USA named Mr. Rabin one of New York's Leading General Commercial Litigators in every year since 2020. Lawdragon has included Mr. Rabin on its list of 500 Leading Lawyers every year since 2019, and in 2025, it named him a Legend. The National Law Journal has twice named Mr. Rabin a Trailblazer for Plaintiff-side Litigation.

32.     In this case, Mr. Rabin served primarily in an advisory role so that his work did not duplicate Mr. Carmody's work. Mr. Rabin provided critical input on strategy decisions at each stage of the litigation, drawing on his extensive experience. From start to finish, Mr. Rabin was involved in case and trial strategy, helping to build a path to a favorable judgment. Mr. Rabin made particular contributions to Plaintiffs' preparations for trial, including focus group exercises, and Plaintiffs' presentation of the case at trial.

33.     **Amanda Bonn** is a graduate of Stanford Law School and a partner in Susman Godfrey's Los Angeles office. She has spent her career litigating high-stakes lawsuits for both plaintiffs and defendants, and her practice has spanned the gamut from intellectual property cases to class actions.

34.     Ms. Bonn's accomplishments are many. She represented Flutter Entertainment PLC in an multi-billion-dollar arbitration against FOX and secured a favorable award. Ms. Bonn was co-lead counsel to plaintiffs in a whistleblower case accusing the major wireless carriers of fraudulently overbilling the California government, which resulted in settlements worth a combined $175 million. Along with most of the Susman Godfrey team in this case, Ms. Bonn also represents a class of users of so-called private web browsers, including Google Chrome's Incognito mode, in litigation against Google asserting privacy claims similar to those asserted here. Ms. Bonn and others guided that litigation to a favorable proposed settlement, which is pending court approval. Ms. Bonn also worked with Mr. Carmody on the *NFL Sunday Ticket Antitrust Litigation* which, as described above, resulted in a $4.7 billion jury verdict. She argued the case

for the Plaintiff classes before the Ninth Circuit in March 2026. Ms. Bonn has also represented the City of Baltimore in the opioid litigation, in which she and Susman Godfrey secured more than $427 million in settlements and an additional final judgment of $152.4 million.

35.    Ms. Bonn has amassed numerous accolades for her work. Lawdragon has named her a Leading Litigator in every year since 2023. In 2020, the National Law Journal named Ms. Bonn a Litigation Trailblazer. Chambers and Partners named her a Leading Litigator in California, she appeared on Benchmark Litigation's *40 and Under Hot List* for seven years, and she has been named one of Lawdragon's 500 Leading Plaintiff Financial Lawyers in every year since 2019. Chambers also named Ms. Bonn a Leading Lawyer in both 2024 and 2025.

36.    Ms. Bonn made substantial contributions to this case. She supervised much of the day-to-day work of the Susman Godfrey team. She was also one of Class Counsel's creative engines, developing and implementing winning themes and strategies for major briefs and trial. Ms. Bonn argued Plaintiffs' opposition to Google's motion to dismiss. At trial, she also examined three witnesses, including two of Google's three experts.

37.    I, **Steven Shepard**, am a partner in Susman Godfrey's New York office. Before joining Susman Godfrey, I graduated from Yale Law School, clerked for Judge Alex Kozinski on the Ninth Circuit Court of Appeals, clerked for Justice Anthony Kennedy on the Supreme Court, and served honorably for four years in the U.S. Navy's Judge Advocate General's Corps.

38.    At Susman Godfrey, I have achieved precedent-setting wins in state and federal courts across the country. Along with Ms. Bonn and other Susman Godfrey attorneys, I litigated a False Claims Act case against the major cellphone carriers and secured settlements valued at $135 million. I represented classes of consumers in *In re: Automotive Parts Antitrust Litigation* and helped secure more than $1 billion in settlements, one of the largest recoveries that indirect purchasers had ever recovered in an antitrust lawsuit. I represented a whistleblower in a False Claims Act case against Novartis and other defendants, ultimately securing settlements of more than $450 million, which was the largest recovery the government had secured in a False Claims Act case based on a kickback theory. I currently represent a number of parties in high-stakes,

complex litigation. These include a nationwide healthcare provider, who I represent in litigation and regulatory disputes with insurance companies, Walmart, who I represent as an opt-out plaintiff in an antitrust class action, and many others.

39.     Like Ms. Bonn, I supervised much of Susman Godfrey's day-to-day work in this case. In the early stages of this case, I co-drafted and oversaw briefing on Google's motions to dismiss, co-drafted Plaintiffs' amended complaint, and assisted with numerous discovery disputes. I also spent substantial time helping to prepare this case for trial. I prepared materials for and attended the focus group exercises, helped to select trial witnesses and exhibits, prepared outlines for witness examinations, prepared Plaintiffs' expert witnesses for cross-examination, and briefed several of the disputes that arose during the trial. I also have co-drafted the post-trial briefing.

40.     **Ian Crosby** is a partner in Susman Godfrey's Seattle office and has a well-earned reputation as a leading litigator in technology-related cases like this one. Before joining Susman Godfrey, Mr. Crosby graduated with high honors from the University of Texas School of Law, clerked for Judge Robert Boochever on the Ninth Circuit Court of Appeals, and clerked for Chief Judge John Coughenour on the District Court for the Western District of Washington. Mr. Crosby contributed expertise in both complex litigation and the technical subject matter at issue.

41.     Mr. Crosby represented the plaintiff classes in the *NFL Sunday Ticket Antitrust Litigation* described above and examined plaintiffs' damages expert. Mr. Crosby has won or obtained favorable settlements in countless patent and intellectual property cases. Mr. Crosby currently represents the New York Times in high-profile litigation against Microsoft and OpenAI, alleging that they infringed copyrights in millions of articles used to train and run GPT artificial intelligence products. He also currently represents Chegg, Inc. in another lawsuit against Google, asserting that Google has violated the antitrust laws through its unlawful maintenance and exploitation of its monopoly in general search services to appropriate Chegg's content for use in AI and other non-search features.

42.     Mr. Crosby has won a number of accolades in recent years. In 2024, Business Insider published its first "AI Power List" of "the nation's most powerful people in artificial

intelligence," and Mr. Crosby was the only lawyer included. In 2025, Thomson Reuters recognized Mr. Crosby as a Super Lawyer. U.S. News has identified Mr. Crosby as one of The Best Lawyers in America® for Intellectual Property Litigation and Patent Litigation in every year since 2018. Lawdragon named Mr. Crosby one of the Top 100 AI and Legal Tech Advisors in 2024, and the National Law Journal named him an Intellectual Property Trailblazer in 2023.

43.    In this case, Mr. Crosby worked closely with Plaintiffs' technical and privacy experts as they prepared their reports and prepared for their depositions. Mr. Crosby also provided strategic guidance early in the case and during discovery.

44.    **Jenna Farleigh** is a partner in Susman Godfrey's Seattle office. Before joining Susman Godfrey, Ms. Farleigh graduated from Vanderbilt Law School and clerked for Judges Ronald Gould and Richard Tallman on the Ninth Circuit Court of Appeals. Ms. Farleigh has significant experience representing both plaintiffs and defendants, including several technology companies, in high-stakes matters.

45.    These included Ms. Farleigh's representation of QuoteWizard.com in a trade secret and contract dispute relating to an online advertising platform, in which Ms. Farleigh and Susman Godfrey secured a favorable settlement. Ms. Farleigh was also part of the Susman Godfrey team that litigated the *In re: Automotive Parts Antitrust Litigation* and secured more than $1 billion in settlements. She also represented General Electric in complex litigation regarding mortgage-backed securities.

46.    Ms. Farleigh has been repeatedly recognized by Lawdrawon as among The Next Generation of Leading Lawyers, receiving that honor in 2023, 2024, and 2025. Washington Super Lawyers also named her a Rising Star nine years running, from 2017 through 2025.

47.    Ms. Farleigh was intimately involved with discovery in this case. She negotiated and litigated disputes regarding document preservation, search terms, custodians, and depositions, among other things. Ms. Farleigh also helped to draft Plaintiffs' Rule 30(b)(6) deposition notice and briefing on Plaintiffs' motion to amend the complaint.

48.     **Alexander Frawley** is an associate in Susman Godfrey's New York office. Before joining Susman Godfrey, Mr. Frawley graduated from University of Pennsylvania Law School, clerked for Judge Dennis Jacobs on the Second Circuit Court of Appeals, and clerked for Judge Katherine B. Forrest on the United States District Court for the Southern District of New York. Mr. Frawley was one of the primary figures in Class Counsel's day-to-day litigation of this case and also contributed meaningfully to Plaintiffs' winning strategy at trial.

49.     Mr. Frawley was involved in every stage of this case, having joined the team in October 2020, shortly before Plaintiffs field their First Amended Complaint and prior to any briefing on Google's motion to dismiss that Complaint. Mr. Frawley drafted or co-drafted briefing on Google's motions to dismiss and Plaintiffs' amended complaints. He drafted or co-drafted discovery requests, led meet-and-confers with opposing counsel regarding Google's responses, drafted or co-drafted letter-briefs asking the Court to compel further productions, and personally reviewed much of Google's productions. Mr. Frawley took three of Plaintiffs' 14 depositions of fact witnesses. He worked closely with Plaintiffs' experts, including their privacy and technical experts, as they drafted their reports and prepared for their depositions. Mr. Frawley also took the deposition of Google's expert on disclosures, which was featured at trial. Mr. Frawley co-drafted Plaintiffs' briefing on class certification and summary judgment and prepared the team for argument on both. Mr. Frawley played a central role in preparing and putting on focus group exercises. He also took on a significant portion of the preparation for trial, including co-drafting the witness and exhibit lists, working with others to compile deposition designations, preparing Plaintiffs' experts for examination at trial, briefing motions *in limine*, and helping Class Counsel to prepare for examinations of key witnesses, both before and during trial. Mr. Frawley also co-drafted post-trial briefing and prepared Class Counsel for argument.

50.     **Amy Gregory** is an associate in Susman Godfrey's New York office. Before joining Susman Godfrey, Ms. Gregory graduated from Columbia Law School and clerked for Judge Dennis Jacobs on the Second Circuit Court of Appeals.

51.    Ms. Gregory made meaningful contributions to this case in its early stages. She co-drafted Plaintiffs' initial disclosures, co-drafted and negotiated the order on electronically stored information and protective order, and co-drafted and negotiated Plaintiffs' first discovery requests, among other things.

52.    **Ryan Sila** is an associate in Susman Godfrey's New York office. Before joining Susman Godfrey, Mr. Sila graduated from New York University School of Law and clerked for Judge Jesse M. Furman on the United States District Court for the Southern District of New York and for Judge Raymond J. Lohier on the Second Circuit Court of Appeals. Like Mr. Frawley, Mr. Sila was one of the primary figures in Class Counsel's day-to-day litigation of this case, and he contributed meaningfully to Plaintiffs' winning strategy.

53.    Mr. Sila has been involved in every stage of this case since he joined the team in the fall of 2021. Mr. Sila co-drafted amended complaints and briefing on Plaintiffs' motion to amend. During fact discovery, Mr. Sila drafted or co-drafted Plaintiffs' discovery requests, led meet-and-confers regarding Google's responses, drafted or co-drafted letter-briefs asking the Court to compel further productions, and personally reviewed much of Google's productions. Mr. Sila also took three of Plaintiffs' 14 depositions of fact witnesses. During expert discovery, Mr. Sila worked closely with Plaintiffs' experts, including their technical, privacy, and damages experts, as they drafted their reports and prepared for their depositions. Mr. Sila also took the deposition of Google's principal damages expert, whose deposition testimony was featured at trial. Mr. Sila co-drafted Plaintiffs' briefing on the motion for class certification and Plaintiffs' opposition to Google's motion to exclude Plaintiffs' damages expert, which he also argued. Mr. Sila also took a leading role in the creation and implementation of the notice program, which included working closely with the notice administrator, coordinating with opposing counsel, and co-drafting briefs addressing disputed issues. Mr. Sila co-drafted Plaintiffs' briefing on summary judgment and prepared the team for argument on that motion. Mr. Sila played a central role in preparing for and putting on focus group exercises. In the lead-up to trial, Mr. Sila worked closely with Plaintiffs' experts while they prepared supplemental reports and briefed and argued issues

relating to both parties' experts' supplements. Mr. Sila also co-drafted Plaintiffs' witness and exhibit lists, co-drafted jury instructions and related briefing, worked with others to compile deposition designations, prepared Plaintiffs' experts for trial, briefed motions *in limine*, and helped Class Counsel prepare for examinations of key witnesses, both before and during trial. Mr. Sila also co-drafted Plaintiffs' post-trial briefing.

54.    **Xiaoming Wang** is an associate in Susman Godfrey's New York office. Before joining Susman Godfrey, Mr. Wang graduated from Columbia Law School and clerked for Judge Joseph F. Bianco on the Second Circuit Court of Appeals and for Judge Rachel P. Kovner on the United States District Court for the Eastern District of New York. Mr. Wang recently joined the firm and the case, but he has made significant contributions since he arrived.

55.    Mr. Wang co-drafted Plaintiffs' post-trial briefing, including both Plaintiffs' opposition to Google's motion to decertify the classes and Plaintiffs' briefing on equitable relief. Mr. Wang also helped Class Counsel prepare for argument on those issues and performed other legal research.

56.    **Nicholas Donofrio** was a staff attorney in Susman Godfrey's Houston office. (He is no longer with the firm.) Before joining Susman Godfrey, Mr. Donofrio graduated from the University of Texas School of Law. Mr. Donofrio reviewed many documents in this case, helped others to prepare for depositions, conducted legal research, and supported experts as they drafted their expert reports.

57.    **Brittany Galvan** is a staff attorney in Susman Godfrey's Houston office. Before joining Susman Godfrey, Ms. Galvan graduated from University of Texas School of Law. Ms. Galvan reviewed many documents in this case, helped others to prepare for depositions, conducted legal research, supported experts as they drafted their expert reports, helped to prepare summary judgment briefs, Plaintiffs' exhibit list, and post-trial briefing on equitable relief.

58.    **Mary O'Brien** was a staff attorney in Susman Godfrey's Houston office. (She is no longer with the firm.) Before joining Susman Godfrey, Ms. O'Brien graduated from the University of Oklahoma College of Law. Ms. O'Brien reviewed many documents in this case,

helped others to prepare for depositions, conducted legal research, supported experts as they drafted their expert reports, and helped to prepare class certification and summary judgment briefs as well as Plaintiffs' exhibit list.

59.     **Neha Singh Zanders** is a staff attorney in Susman Godfrey's Houston office. Before joining Susman Godfrey, Ms. Singh Zanders graduated from University of Texas School of Law. Ms. Singh Zanders reviewed many documents in this case, helped others to prepare for depositions, and supported experts as they drafted their expert reports.

60.     Class Counsel, including but not limited to Susman Godfrey attorneys, were also supported throughout this case by a stellar group of paralegals. These include **Jianna Abalos**, **William Dunseth**, **Vanessa Santos**, and **Stacy Schulze**. They have more than 90 combined years of experience as paralegals and have conducted far more than 60 combined trials and arbitrations. They were invaluable to Class Counsel's efforts to litigate this case, prepare it for trial, and successfully present the case to the Court and the jury.

### C.      Susman Godfrey's Costs and Expenses

61.     Susman Godfrey also incurred significant costs and expenses to litigate this case. Most of these costs and expenses were paid from Class Counsel's joint litigation fund administered by Boies Schiller. Susman Godfrey contributed $3,372,667.00 to that joint litigation fund. I understand that James Lee, a partner with Boies Schiller and Co-Class Counsel in this case, addresses the costs and expenses paid from the joint litigation fund in his concurrently filed declaration. I will address only the expenses that Susman Godfrey directly incurred, separate and apart from the joint litigation fund. These directly incurred expenses amount to **$1,033,102.28** and are summarized in **Table 3** below. **Table 3** was created by Susman Godfrey personnel based on the expense records maintained in Susman Godfrey's centralized system.

**Table 3: Susman Godfrey's Direct Costs**

| Cost & Expense Category | Amount |
|---|---|
| Air Travel | $38,248.57 |
| Articles, Books & Reports | $20.00 |
| Computer Supplies | $1,761.50 |
| Court Document Alerts | $832.60 |

| Cost & Expense Category | Amount |
| --- | --- |
| Filing Fees | $1,582.00 |
| Ground Transportation (Taxis, Car Service) | $14,458.32 |
| Hotels (Travel) | $803,732.94 |
| In-House Printing | $19,243.90 |
| Meals | $28,052.99 |
| Messenger / Delivery Services | $20,632.55 |
| Mileage (Travel) | $61.60 |
| Miscellaneous Client Charges | $228.71 |
| Online Research Services | $296.32 |
| Outside Photocopy Services | $205.68 |
| Parking | $1,100.73 |
| Process Server Fee | $33.00 |
| Research Charges (e.g., Westlaw) | $39,566.50 |
| Secretarial Overtime | $45,283.20 |
| Travel Expenses | $1,506.00 |
| Trial & Trial Preparation Expenses | $14,263.02 |
| Trial Transcripts | $710.15 |
| Videotaped Deposition Expense | $1,281.00 |
| **Total** | **$1,033,102.28** |

62. Hotel costs are by far the most significant category of expense that Susman Godfrey directly incurred in this case. The vast majority of these costs relate to the room block for trial, which Susman Godfrey reserved on behalf of all Class Counsel, including Boies Schiller and Morgan & Morgan. Although this room block constituted a meaningful cost, it was also a fair value. The block included more than 40 rooms to accommodate both the participants at trial and the work that they needed to accomplish. The block included rooms for attorneys, staff, class representatives, vendors (e.g., graphics support) and experts, as well as rooms to prepare witnesses, and strategize with other attorneys and staff. The block also ran for a full month, in order to both accommodate the two-and-a-half-week trial and allow sufficient time for the trial team to prepare in advance.

63. A few of the other comparatively large costs are related to travel. These include costs for ground transportation, which generally include taxis and ride shares transporting attorneys and staff to or from the airport or courthouse to attend hearings, trial, focus group exercises, and a limited number of in-person strategy sessions. They also include meals for attorneys and staff while traveling; the costs of airfare to and from trial, hearings, focus groups,

depositions, and strategy meetings; the costs of parking vehicles primarily at trial; and limited miscellaneous travel expenses mostly relating to the hotel at trial.

64.    Secretarial overtime was another of the more significant costs. These costs were incurred primarily at trial, when I understand that attorneys and staff alike worked virtually around the clock to prepare for the following day of trial.

65.    The costs relating to messenger and delivery services were mostly incurred during the trial. Approximately three-quarters of these costs were incurred to ship to the hotel the equipment and materials necessary for trial. The remainder generally involved costs to ship materials to experts and attorneys in preparation for focus group exercises, trial, depositions, and other important events.

66.    The costs and expenses reflected in Table 3 were reasonably necessary for the prosecution of this case. These costs and expenses are similar in type and amount to the costs that Susman Godfrey normally incurs in similar litigation. Susman Godfrey's expense-paying clients typically pay for costs such as these.

67.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 30th day of March 2026, at New York, NY.

SUSMAN GODFREY L.L.P.

Dated: March 30, 2026                    By: /s/  Steven Shepard_____
                                              Steven Shepard

---