**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
Ryan Sila (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Michael F. Ram, CA Bar No. 104805
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, JULIAN SANTIAGO, and SUSAN LYNN HARVEY individually and on behalf of all other similarly situated,<br><br>    Plaintiffs,<br>  v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No.: 3:20-cv-04688-RS<br><br>**DECLARATION OF RYAN MCGEE IN SUPPORT OF PLAINTIFFS' MOTION FOR FEES, COSTS, AND SERVICE AWARDS**<br><br>Judge: Hon. Richard Seeborg<br>Courtroom 3 – 17th Floor<br>. |

**DECLARATION OF RYAN J. MCGEE**

I, Ryan J. McGee, declare as follows.

1.      I am a partner with the law firm Morgan & Morgan, P.A. ("Morgan & Morgan"), counsel for Plaintiffs in this matter.  I am an attorney at law duly licensed to practice before all courts of the State of Florida and admitted *pro hac vice* for this case. Dkt. 13. Except as otherwise stated, I have personal knowledge of the matters set forth herein, and I would testify competently thereto if called upon to do so.[1]

2.      I submit this declaration in support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards (the "Motion").

3.      The three law firms representing Plaintiffs—BSF, Morgan & Morgan, and Susman Godfrey (collectively, "Counsel")—were appointed by this Court to serve as Co-Lead Class Counsel in this matter.  We have collectively led the Classes' efforts in this case over the last six years from case inception to judgment.

4.      This declaration focuses on facts that bear on the Motion, including among other things particular costs and expenses incurred to litigate this case to verdict.

5.      In this case, I have personally and closely worked with Mark Keegan of Keegan & Donato Consulting, LLC, Epiq Systems Class Action & Claims Solutions, Inc., Full Nelson Investigations, International Litigation Services, LLC, and Crowe LLP (f/k/a 4Discovery, LLC). Each entity and its staff were instrumental in the litigation of this matter and, in my view, provided value beyond their invoiced charges. In this declaration, I will briefly address the costs and contributions of each.

**I.      Keegan & Donato Consulting, LLC**

6.      Plaintiffs retained Keegan & Donato Consulting, LLC ("Keegan & Donato") to provide expertise regarding surveys to gather important data for this litigation. These services

---

[1] I do not have personal knowledge of these firms' billing practices. I understand, however, that each firm regularly tracked its hours and provided accurate invoices to Boies Schiller Flexner LLP, which managed the litigation fund and paid the amounts due.

included consultation with a team of experts, an expert report, declaration, and preparing for the testimony of Mark Keegan, whose work supported other experts in this case.

7.      Although Mr. Keegan traveled to San Francisco and prepared to testify, because of how the evidence was presented and admitted at trial, Mr. Keegan's testimony ultimately was not needed.  The decision not to call Mr. Keegan did not impact the cost of his services; Mr. Keegan charges a flat fee of $60,000.00 to testify, and his travel to and preparation in San Francisco remained necessary until the results of his work were admitted at trial through Mr. Lasinski.

8.      Throughout the case, we worked directly with Mr. Keegan and his partner Mr. Tony Donato.  Mr. Keegan received his law degree from Brooklyn Law School in 1995, which was helpful because he understood not only his area of expertise, but also how that interacts with the law.  He is a Professional Certified Marketer (PCM), holds a certification from the American Marketing Association, and for more than 25 years has designed and implemented thousands of studies on brands and services to gather and interpret data from those studies, and has testified 12 times.

9.      The costs associated with Keegan & Donato's work totaled **$145,563.59**. These costs relate to work performed between January 2023 and January 2026. Keegan & Donato's work during each phase of the litigation is summarized in the following table:

**Table 1: Keegan & Donato Consulting, LLC**

| Litigation Phase | Hours | Fees & Expenses |
|---|---|---|
| Preparation of Complaint (through July 2020) | 0 | $0 |
| Motion to Dismiss (Aug. 2020 – May 2021) | 0 | $0 |
| Fact Discovery (June 2021 – Oct. 2022) | 0 | $0 |
| Expert Discovery (Nov. 2022 – July 2023) | 129.16 | $77,500.00 |
| Class Certification (Aug. 2023 – Oct. 2023) | 0 | $0 |
| Notice & Summary Judgment (Nov. 2023 – July 2024) | 0 | $0 |
| Trial Preparation (Aug. 2024 – July 2025) & Trial (Aug. 2025 – Sep. 2025) | Flat Fee Expenses | $60,000 $8,063.59 |
| Post-Trial Proceedings (Oct. 2025 – Jan. 2026) | 0 | $0 |
| **Total** | **-** | **$145,563.59** |

10.      **Expert Discovery**. Keegan & Donato performed extensive work during expert discovery. Keegan & Donato designed a study to obtain information regarding prospective class

members, with a focus on their device use and whether those individuals have one or more Google Gmail accounts. The study ultimately garnered responses from 1,039 U.S. respondents through a series of controls and procedures that minimized poor or unqualified responses, consistent with accepted standards of survey research. The report that Mr. Keegan authored opined on how many people have a smartphone for personal use, the makeup of Android and iOS devices for that group, and whether those respondents have a Gmail email account, and how many. This information was memorialized in an expert report, which another Plaintiffs' expert partially relied on to calculate damages. Google chose not to depose Mr. Keegan.

11. **Class Certification.** Although Keegan & Donato did not perform work during the briefing of class certification, Plaintiffs relied on Mr. Keegan's expert report in their motion for class certification. Google chose not to lodge any *Daubert* challenge to Mr. Keegan's opinions.

12. **Trial Preparation**. Mr. Keegan devoted significant time to prepare for trial. This work included a detailed review of the survey data, his report, and anticipating the topics and questions for cross examination. This was particularly challenging given that Google did not depose Mr. Keegan in this case, thus neither Plaintiffs nor Mr. Keegan had an initial starting point for how Google may attack the excellent work that Mr. Keegan performed.

13. **Trial**. Keegan & Donato played a critical role in trial, as the results of the survey they performed were an important input in the damages model that Plaintiffs presented to the jury. Ultimately, Plaintiffs' expert Mr. Lasinski was permitted to testify about those survey results without objection from Google, rendering Mr. Keegan's testimony unnecessary. Due to the time constraints associated with this trial, including that Plaintiffs had 20 hours to present their case, Plaintiffs decided not to call Mr. Keegan since his testimony would be duplicative.

**II.    Epiq Systems Class Action & Claims Solutions, Inc.**

14. Plaintiffs retained Cam Azari and Hilsoft Notifications, which is now part of Epiq Systems Class Action & Claims Solutions, Inc. ("Epiq"), to provide expertise regarding class notification. The Court later appointed Azari and Hilsoft as the class notice administrator. *See*

---

Dkt. 405. For clarity, I will refer to "Epiq," which is the trade name that I understand the class notice administrator now uses.

15.    In this litigation, Epiq provided expertise regarding class notice. In accordance with its role as class notice administrator, Epiq also executed the class notice process at class certification. Epiq will also execute the process to notify the class of this motion for fees, costs, and service awards, as well as any future notice of a claims administration process. Epiq's work and expertise were instrumental in the completion of class notice as required by the Federal Rules.

16.    The costs associated with Epiq's work totaled **$1,064,215.35**. This total reflects fees relating to 1,313.5 hours of work performed from early 2023 through the present, as well as substantial costs associated with the class notice process. Epiq's work and these costs are summarized in the following table:

**Table 2: Epiq Systems Class Action & Claims Solutions, Inc.**

| Litigation Phase | Hours | Fees & Expenses |
|---|---|---|
| Preparation of Complaint (through July 2020) | 0 | $0 |
| Motion to Dismiss (Aug. 2020 – May 2021) | 0 | $0 |
| Fact Discovery (June 2021 – Oct. 2022) | 0 | $0 |
| Expert Discovery (Nov. 1, 2022 – July 2023) | 53.1 | $16,415.00 |
| Class Certification (Aug. 2023 – Oct. 2023) | 1 | $200.00 |
| Notice & Summary Judgment (Nov. 2023 – July 2024) | 215.1 | $44,431.90 |
| Trial Preparation (Aug. 2024 – July 2025) | 937.5 | $985,127.52 |
| Trial (Aug. 2025 – Sep. 2025) | 24.6 | $3,864.96 |
| Post-Trial Proceedings (Oct. 2025 – Feb. 2026) | 82.2 | $14,175.97 |
| Fee Notice | TBD | $800,000.00 |
| Total | 1,313.5 | $1,864,215.35 |

17.    **Expert Discovery.** Epiq's work on this matter began during expert discovery. Mr. Azari offered an expert report offering the opinion that the proposed classes could be notified, and their claims could be processed, as required by the Federal Rules. Mr. Azari's report also summarized how notice and claims administration could be accomplished. In addition, Mr. Azari prepared and sat for a deposition, which I defended.

18.    **Class Certification.** Epiq performed limited work during the briefing of class certification. Plaintiffs relied on Mr. Azari's expert report in their motion for class certification, and Google chose not to lodge any *Daubert* challenge to Mr. Azari's opinions.

19.    **Notice & Summary Judgment.** After the Court granted class certification in January 2024, Epiq began to prepare a plan to notify class members of the class certification and their right to opt out. Between January and July 2024, Epiq worked closely with counsel to determine how notice would be distributed, draft the notices (including a long-form notice, a short-form email notice, publication notice, and other forms of notice), and ensure that Google provided sufficient information about the class members to enable an effective notice campaign. Mr. Azari also provided two declarations in support of Plaintiffs' motions for approval of the notice program. These declarations explained not only the procedures that Epiq would follow, but also the results expected and the reasons that Rule 23 and due process would likely be satisfied. The Court approved this notice plan and ordered Plaintiffs to direct notice to the class members. As I will explain, the notice process itself was carried out beginning in September 2024, during the trial preparation phase, when the costs of administering the approved notice plan were incurred.

20.    **Trial Preparation.** Epiq carried out the notice plan beginning in September 2024. Before that, however, Epiq did substantial preparatory work. This included review of the data that Google provided. I also understand that Google provided the data many files, which Epiq merged, de-duplicated, and otherwise processed to ready the notice campaign. In addition, and based on my extensive experience with class action notice programs in other cases, I understand that with an email campaign as large as the notice process in this case (many hundreds of millions of email addresses across various domains and service providers), there is a substantial likelihood that internet and email service providers may flag and ultimately block delivery of the sender's emails. I understand that Epiq worked closely with internet and email service providers to reduce that risk as much as practicable, and that ultimately the vast majority of emails were successfully delivered in accord with due process. The notice process was a massive undertaking. It involved sending hundreds of millions of emails, running ads online, establishing and operating a case website and telephone line, and much more, as detailed in Mr. Azari's submissions to this Court. I understand that Epiq staff spent many hours on these tasks, and that there are also significant associated costs. I understand that these include costs to operate the phone line, to operate the website, and to handle

inquiries from class members. After the completion of the notice process, Mr. Azari also provided a declaration explaining the results of the notice plan. Mr. Azari also provided a sealed list of class members who exercised their right to opt out of the certified classes.

21.    **Trial.** I understand that since the notice process concluded, class members have continued to engage with the case website and phone line and otherwise interact with the notice administrator. I understand that the limited additional hours worked during trial relate to this activity.

22.    **Post-Trial Proceedings.** Epiq's work continues after trial. In addition to the ongoing fees and costs associated with the case website, phone number, and other interactions with class members, Epiq has worked with class counsel to craft a plan to notify the class of this motion for fees, costs, and service awards. Together, Epiq and counsel have selected the proposed methods of notice and drafted the proposed forms of notice. Plaintiffs have moved for this Court's approval of the fee notice plan.

23.    **Anticipated Future Work.** Epiq's work is not complete. First, while Google's challenges to the judgment are ongoing, Epiq will continue to perform work and incur costs relating to the operation of the case website and phone number, as well as interaction with class members. Based on my extensive experience with class action notice programs in other cases, I expect that these costs will be generally consistent with the fairly limited costs incurred after the completion of the notice plan. Counsel asks for permission to pay up to $50,000 for these costs, and will exercise the same diligence in monitoring those costs as was done in the prior phases of this case. Second, Epiq will notify the classes regarding this motion for fees, costs, expenses, and service awards. This will involve another round of sending hundreds of millions of emails, running advertisements online, and updating the case website and phone line. Epiq has informed us that this process is estimated to cost approximately $750,000. Counsel asks for permission to pay up to that amount for these costs, as well, and will exercise the same diligence in monitoring those costs as was done in the prior phases of this case. In the event that these costs are less than the combined $800,000, then counsel will remit the remainder to the classes.

24.    **Anticipated Work For Post-Judgment Notice & Distribution.** Epiq's work will continue upon approval of a claims and related notice process, which Class Counsel will propose after the judgment becomes final. While Class Counsel do not have a proposed estimate, based on our collective extensive experience with class action notice and administration programs in other cases, we can estimate that these costs and expenses will likely exceed $1,000,000.00, given that Epiq will need to administer the claims process from the common fund and provide notice of that process to class members.  After the judgment becomes final, Class Counsel will provide a more detailed estimate of those anticipated costs and expenses, and request that the Court approve those costs and expenses to be paid from the common fund.

**III.    Full Nelson Investigations**

25.    Full Nelson Investigation ("FNI") is the entity Class Counsel contracted with to retain Mr. Dave Nelson, who formerly worked on cybercrime investigations at the Federal Bureau of Investigation ("FBI").  Mr. Nelson provided investigative research into current and former Google employees as potential witnesses for trial, assisted with the preparation of Plaintiffs' testimony for trial, and potential impeachment of witnesses on Google's witness list.  The costs associated with FNI's services totaled **$12,300.00**.  FNI's work during each phase of the litigation is summarized in the following table:

**Table 3: Full Nelson Investigations**

| Litigation Phase | Hours | Fees & Expenses |
|---|---|---|
| Preparation of Complaint (through July 2020) | 0 | $0 |
| Motion to Dismiss (Aug. 2020 – May 2021) | 0 | $0 |
| Fact Discovery (June 2021 – Oct. 2022) | 0 | $0 |
| Expert Discovery (Nov. 1, 2022 – July 2023) | 0 | $0 |
| Class Certification (Aug. 2023 – Oct. 2023) | 0 | $0 |
| Notice & Summary Judgment (Nov. 2023 – July 2024) | 0 | $0 |
| Trial Preparation (Aug. 2024 – July 2025) | 82 | $12,300.00 |
| Trial (Aug. 2025 – Sep. 2025) | 0 | $0 |
| Post-Trial Proceedings (Oct. 2025 – Feb. 2026) | 0 | $0 |
| Total | 82 | $12,300.00 |

26.    **Trial Preparation.** Mr. Nelson's experience and expertise during his time with the FBI provided the tools and knowledge to greatly assist with Class Counsel's preparation for trial

in this matter. Witness and exhibit lists were due June 24, 2025 (with the Joint Pretrial Statement, Dkt. 534), and Mr. Nelson's work in this case assisted Class Counsel's efforts to both narrow the witnesses identified in this case through discovery, consider additional current and former Google employees and other witnesses that may have been relevant for trial, and develop potential impeachment for trial testimony. Mr. Nelson's work in this case also assisted Class Counsel's efforts to prepare the Plaintiffs for their testimony at trial.

**IV.     International Litigation Services, LLC**

27.     International Litigation Services, LLC ("ILS") provided litigation support services for this case in the form of a document review platform. The costs associated with ILS's services totaled **$45,999.05**. ILS hosted the millions of documents and data that Google produced in this case, and when necessary, provided technical support to Class Counsel related to hosting and analyzing those documents at scale. Because ILS's services (document hosting) were uniform throughout this litigation and not phase-dependent, I have not broken out the costs by phase.

**V.     Crowe LLP (f/k/a 4Discovery, LLC)**

28.     Crowe LLP (formerly known as 4Discovery, LLC) ("Crowe") provided litigation support services for this case in the form of custodial document collections. The costs associated with Crowe's services totaled **$96,487.09** ($90,754.09 billed from 4Discovery, LLC and $5,733.00 bill from Crowe LLP). This technical work was complicated by the COVID 19 pandemic, where such collections needed to be done remotely with the use of computers and software that are not intuitive to the average consumer. This required multiple videoconferences and rounds of collections from multiple data sources. Crowe also stored the data source images throughout the litigation. Because Crowe's services were uniform throughout this litigation and not phase-dependent, I have not broken out the costs by phase.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 30th day of March 2026, at Tampa, FL.

MORGAN & MORGAN, P.A.

Dated: March 30, 2026          By: */s/  Ryan J. McGee*

Ryan J. McGee