**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No.
238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
725 S Figueroa St., 31st Floor
Los Angeles, CA 90017
Tel.: (213) 995-5720
alanderson@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
Ryan Sila (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Michael F. Ram, CA Bar No. 104805
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANIBAL RODRIGUEZ, JULIAN SANTIAGO, and SUSAN LYNN HARVEY individually and on behalf of all other similarly situated,<br><br>        Plaintiffs,<br><br> v.<br><br>GOOGLE LLC,<br><br>        Defendant. | Case No.:  3:20-cv-04688-RS<br><br>**DECLARATION OF RYAN SILA IN SUPPORT OF PLAINTIFFS' MOTION FOR FEES, COSTS, EXPENSES, AND SERVICE AWARDS**<br><br>Judge: Hon. Richard Seeborg<br>Courtroom 3 – 17th Floor<br>. |

**DECLARATION OF RYAN SILA**

I, Ryan Sila, declare as follows.

1.    I am an associate with the law firm of Susman Godfrey L.L.P., with an office located at One Manhattan West, 50th Floor, New York, NY 10001. Susman Godfrey is counsel for Plaintiffs in the above-captioned action. I am an attorney at law duly licensed to practice before all courts of the State of New York and admitted *pro hac vice* for this case. Dkt. 232. Except as otherwise stated, I have personal knowledge of the matters set forth herein, and I would and would testify competently thereto if called upon to do so.[1]

2.    In the above-captioned action, I have personally and closely worked with Ankura Consulting Group, LLC ("Ankura"); HKA Global, LLC ("Ankura"); and Dubin Research & Consulting ("DRC"); and Epiq Systems Class Action & Claims Solutions, Inc. ("Epiq"). Each firm and its staff were instrumental in the litigation of this matter and, in my view, provided value beyond their fees.

3.    In this declaration, I will briefly address the costs and contributions of Ankura, HKA, and DRC.

4.    I understand that in a concurrently filed declaration, Ryan McGee addresses Epiq's costs and contributions to this litigation. I add only that in addition to collaborating with Epiq on issues relating to class notice, Class Counsel met and conferred with Google many times to discuss the notice program and make it more efficient. These included, but were not limited to, several meet-and-confers regarding whether and how Google would provide information regarding potential class members for purposes of class notice. I do not remember exactly how many meet-and-confers we held, but I estimate that there were more than a dozen.

---

[1] I do not have personal knowledge of these firms' billing practices. I understand, however, that each firm regularly tracked its hours and provided accurate invoices to Boies Schiller Flexner LLP, which managed the litigation fund and paid the amounts due.

## I.    Ankura Consulting Group, LLC

5.    Plaintiffs retained Ankura to provide expertise regarding damages in this litigation. These services included consultation with a team of experts, as well as expert reports, declarations, and testimony offered by a testifying expert, Michael J. Lasinski.

6.    Throughout this case, we worked with highly qualified experts employed by Ankura. These included Michael J. Lasinski, who I understand has consulted on the financial aspects of intellectual property in and out of the courtroom for more than 30 years. I understand that Mr. Lasinski has testified many times in depositions, arbitrations, and trials, and that he served as President of Licensing Executives Society International during the pendency of this case. Ankura stopped billing for Mr. Lasinski's time in May 2025 because Mr. Lasinski had left Ankura and joined HKA Global, LLC.

7.    We also worked closely with other members of Ankura's staff. These individuals performed thousands of hours of consulting and preparatory work in this matter. Their contributions were integral to the investigation and presentation of damages-related issues, which were vigorously contested. Their work also defrayed costs because they billed their time at a lower rate than Mr. Lasinski.

8.    The costs associated with Ankura's work totaled **$1,768,762.02**. These costs relate to **4,633.4 hours** of work performed between September 2021 and January 2026. Ankura's work during each phase of the litigation is summarized in the following table:

**Table 1: Ankura Consulting Group**

| Litigation Phase | Hours | Fees & Expenses |
|---|---|---|
| Preparation of Complaint (through July 2020) | 0 | $0 |
| Motion to Dismiss (Aug. 2020 – May 2021) | 0 | $0 |
| Fact Discovery (June 2021 – Oct. 2022) | 585 | $187,691.00 |
| Expert Discovery (Nov. 2022 – July 2023) | 2,063.9 | $772,119.50 |
| Class Certification (Aug. 2023 – Oct. 2023) | 103.7 | $46.034.36 |
| Notice & Summary Judgment (Nov. 2023 – July 2024) | 81.5 | $31,386.50 |
| Trial Preparation (Aug. 2024 – July 2025) | 1,338.2 | $513,500.00 |
| Trial (Aug. 2025 – Sep. 2025) | 390.3 | $146,194.16 |
| Post-Trial Proceedings (Oct. 2025 – Jan. 2026) | 172.1 | $68,573.00 |
| **Total** | **4,734.7** | **$1,768,762.02** |

9.    **Fact Discovery**. Ankura's work on the case began during fact discovery. Ankura began analyzing potential methods of calculating Plaintiffs' damages and Google's unjust enrichment from its collection, saving, and use of (s)WAA-off app activity data. To do this, Ankura reviewed and analyzed information obtained during discovery. Ankura helped counsel to formulate and review discovery requests aimed at the disclosure of documents and information useful in the calculation of damages and unjust enrichment. Ankura also helped counsel to prepare for depositions of Google witnesses who may have knowledge about damages-related issues such as Google's use and profit from the data at issue. Ankura made material contributions to counsel's effort to build a factual record that includes information necessary to support calculations of damages and unjust enrichment.

10.   **Expert Discovery**. Ankura performed a tremendous amount of work during expert discovery. Ankura built models to calculate damages and unjust enrichment, reviewed the discovery record for information to input into those models, ran calculations reflected in more than 60 schedules, and drafted an expert report explaining these models and the bases for them. Ankura also reviewed and analyzed rebuttal expert reports offered by Google's experts. This work was of great assistance in counsel's preparation for depositions of Google's experts, including my deposition of Google's principal damages expert, Christopher R. Knittel. During the expert discovery period, Mr. Lasinski also spent significant time preparing for his deposition and giving testimony. The other members of Ankura's team spent many hours helping him to prepare. In addition, the Ankura team assisted with a few lingering fact discovery issues, including both depositions and document discovery, that were completed during this time period. Ankura's work in this period resulted in damages models that withstood challenge and were presented to the jury, which ultimately returned a significant verdict in Plaintiffs' favor.

11.   **Class Certification**. Ankura carried out important and appropriately limited work during briefing and argument of class certification. At this time, Google moved to exclude Mr. Lasinski's damages and unjust enrichment opinions under Federal Rule of Evidence 702. Google also opposed class certification in part on the ground that Plaintiffs had not offered a

sufficient method to calculate damages. Ankura analyzed Google's briefs and provided input on a response to Google's characterizations of Mr. Lasinski's models and opinions. Ankura also discussed and reviewed Plaintiffs' responses and helped counsel to prepare for argument on these issues. Plaintiffs defeated Googe's motion to exclude Mr. Lasinski's opinions and won class certification in part due to Ankura's contributions.

12. **Notice & Summary Judgment.** Ankura also performed limited but important work while the parties carried out class notice and briefed summary judgment. In particular, Ankura prepared for anticipated updates to the damages calculations and models to account for the passage of time and changes to Google's recordkeeping practices.

13. **Trial Preparation**. Ankura completed immense work in preparation for trial. For instance, Ankura drafted supplemental expert reports updating Mr. Lasinski's damages models to cover the time periods after his initial report and before the end of the class period. This was particularly challenging because many of the documents Google provided did not match documents provided during fact and expert discovery. Ankura also reviewed supplemental rebuttal reports offered by Google's experts. As a result, Ankura spent significant time analyzing the new documents, helping counsel to formulate requests for additional documentation, and modifying the models as necessary to account for changes in Google's recordkeeping practices. Ankura also spent many hours preparing for anticipated trial testimony. This included analysis of documents, written discovery, deposition testimony, and expert reports. Ankura consulted with counsel on the anticipated subjects of Mr. Lasinski's direct examination, cross-examination, and re-direct examination. Ankura also consulted with counsel on cross-examination of Google's witnesses whose testimony was anticipated to relate to damages issues.

14. **Trial**. Ankura also played an important role at trial. Ankura's staff worked around the clock with both Mr. Lasinski, who by then was a partner at HKA, and counsel. Ankura staff attended trial. At trial, Ankura consulted with counsel and helped them respond in real-time to testimony relating to damages issues. I understand that other members of Ankura's team reviewed daily trial transcripts and provided input on damages-related testimony to develop. Ankura also

consulted with counsel on the preparation of opening and closing statements, trial demonstratives, and other damages-related issues. It would be an understatement to say that Ankura's contributions at trial were significant.

15.    **Post-Trial Proceedings**. Finally, I understand that Ankura continued to provide substantial support to counsel during proceedings after the jury rendered its verdict, and in particular in connection with Plaintiffs' request for disgorgement. I understand that Ankura supported Mr. Lasinski with analyses relating to his declaration in support of Plaintiffs' request. I also understand that Ankura consulted with counsel in connection with its preparation of the briefing and argument on this issue.

## II.    HKA Global, LLC

16.    HKA also provided expertise with respect to damages-related issues. The costs associated with HKA's work totaled **$428,110.65**. These costs relate to **439.05 hours** of work between May 2025 and January 2026, the vast majority of which was performed by Mr. Lasinski. I understand that other HKA staff spent appropriately limited time help Mr. Lasinski prepare for his testimony. HKA's work during each phase of the litigation is summarized in the following table:

### Table 2: HKA Global, LLC

| Litigation Phase | Hours | Fees & Expenses |
|---|---|---|
| Preparation of Complaint (through July 2020) | 0 | $0 |
| Motion to Dismiss (Aug. 2020 – May 2021) | 0 | $0 |
| Fact Discovery (June 2021 – Oct. 2022) | 0 | $0 |
| Expert Discovery (Nov. 2022 – July 2023) | 0 | $0 |
| Class Certification (Aug. 2023 – Oct. 2023) | 0 | $0 |
| Notice & Summary Judgment (Nov. 2023 – July 2024) | 0 | $0 |
| Trial Preparation (Aug. 2024 – July 2025) | 184.75 | $158,441.59 |
| Trial (Aug. 2025 – Sep. 2025) | 198.05 | $208,740.28 |
| Post-Trial Proceedings (Oct. 2025 – Jan. 2026) | 56.25 | $60,928.78 |
| **Total** | **439.05** | **$428,110.65** |

17.    **Trial Preparation.** HKA began billing for Mr. Lasinski's time in May 2025, a few months before trial. Mr. Lasinski worked with counsel to prepare demonstratives to help the jury understand his models and opinions. Mr. Lasinski also spent significant time preparing for his

testimony. This included review of case materials including expert reports, deposition testimony, documents, and written discovery. Mr. Lasinski also consulted with counsel regarding topics to address during his testimony and anticipated topics of cross-examination. Mr. Lasinski was well prepared for his testimony, which was important at trial.

18.     **Trial.** Mr. Lasinski devoted significant time and effort to this case during trial. Mr. Lasinski stayed in San Francisco for most of the trial and attended court on most trial days. He regularly consulted with counsel regarding development of the trial record on damages issues. He spent many hours reviewing and revising demonstratives and preparing for his trial testimony. Mr. Lasinski presented effective trial testimony, and the jury awarded a significant Plaintiffs' verdict.

**III.     Dubin Research & Consulting, LLC**

19.     Plaintiffs DRC to serve as jury consultants in this matter. DRC conducted focus groups, carried out a community attitudes survey, consulted on trial strategy, assisted with jury selection, and developed or provided input on demonstratives that were presented to the jury. DRC made significant contributions to Plaintiffs' presentation of the case at trial.

20.     The costs associated with DRC's work totaled **$1,693,163.13**. These costs relate to **2,891.35 hours** of work performed between June 2024 and September 2025. DRC's work during this litigation is summarized in the following table:

**Table 3: Dubin Research & Consulting, LLC**

| Litigation Phase | Hours | Fees & Expenses |
|---|---|---|
| Preparation of Complaint (through July 2020) | 0 | $0 |
| Motion to Dismiss (Aug. 2020 – May 2021) | 0 | $0 |
| Fact Discovery (June 2021 – Oct. 2022) | 0 | $0 |
| Expert Discovery (Nov. 2022 – July 2023) | 0 | $0 |
| Class Certification (Aug. 2023 – Oct. 2023) | 0 | $0 |
| Notice & Summary Judgment (Nov. 2023 – July 2024) | 39.3 | $26,251.50 |
| Trial Preparation (Aug. 2024 – July 2025) | 2,552.05 | $1,515,048.86 |
| Trial (Aug. 2025 – Sep. 2025) | 300 | $151,862.77 |
| Post-Trial Proceedings (Oct. 2025 – Jan. 2026) | 0 | $0 |
| **Total** | **2,891.35** | **$1,693.163.13** |

21. **Notice & Summary Judgment.** At the same time that Plaintiffs briefed and argued summary judgment, DRC began to prepare for the first focus group exercise, which was scheduled for a few months later. DRC's work during this phase was appropriately limited and principally involved initial planning tasks. These tasks included drafting screening surveys for potential participants, questionnaires to gauge participants' initial views, and schedules for the exercise.

22. **Trial Preparation.** In the run-up to trial, DRC performed a significant volume of work, which influenced the presentation of the case at trial. DRC held two focus group exercises and either performed or was deeply involved in all aspects of each. DRC located and reserved facility space, recruited and selected participants, consulted on the content of the presentations to the focus groups, drafted demonstratives for use in the focus groups, and facilitated, analyzed, and drafted reports on the participants' deliberations. In addition to the two focus groups, DRC conducted an online written survey to collect information on prevailing views in the community. DRC recruited participants to the survey, worked with counsel to draft the survey, and analyzed and reported on the results. Through the focus groups and community attitudes survey, and in consultation with DRC, counsel refined the way the evidence and claims were presented, ultimately resulting in a more compelling case for the jury.

23. **Trial.** Immediately before and during trial, DRC consulted with counsel regarding various issues relating to the jury trial. Counsel consulted with DRC regarding the juror questionnaire, voir dire, case themes, and, as I understand it, jury selection. I understand that counsel valued and relied on DRC's expertise and deep experience in these areas.

24. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 30th day of March 2026, at New York, NY.

SUSMAN GODFREY L.L.P.

Dated: March 30, 2026                By: /s/  Ryan Sila_____

Ryan Sila