COOLEY LLP
MICHAEL A. ATTANASIO (151529)
(mattanasio@cooley.com)
BENEDICT Y. HUR (224018)
(bhur@cooley.com)
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
EDUARDO E. SANTACANA (281668)
(esantacana@cooley.com)
JONATHAN PATCHEN (237346)
(jpatchen@cooley.com)
ARGEMIRA FLOREZ (331153)
(aflorez@cooley.com)
NAIARA TOKER (346145)
(ntoker@cooley.com)
HARRIS MATEEN (335593)
(hmateen@cooley.com)
THILINI CHANDRASEKERA (333672)
(tchandrasekera@cooley.com)
ISABELLA MCKINLEY CORBO (346226)
(icorbo@cooley.com)
CHELSEA HU (357212)
(chu@cooley.com)
MICHAEL B. MORIZONO (359395)
(mmorizono@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA  94111-4004
Telephone:     (415) 693-2000
Facsimile:     (415) 693-2222

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANIBAL RODRIGUEZ, et al. individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:20-CV-04688-RS<br><br>**GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**<br><br>Dept:     3, 17th Fl.<br>Judge:    Hon. Richard Seeborg<br><br>Date Action Filed: July 14, 2020<br>Trial Date: August 18, 2025 |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

**TABLE OF CONTENTS**

| | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. ARGUMENT | 2 |
| A. Plaintiffs are Not Entitled to Judgment as a Matter of Law on Their CDAFA Claim | 2 |
| 1. Legal Standard for Judgment as a Matter of Law on a Class CDAFA Claim | 2 |
| 2. Plaintiffs Failed to Prove that Google is Liable Under CDAFA as a Matter of Law | 3 |
| a. Plaintiffs Failed to Prove that They are the Owners of (s)WAA-Off Data | 3 |
| b. Plaintiffs Failed to Prove that Google Knowingly Took, Copied, or Made Use of (s)WAA-Off Data Without Permission | 8 |
| c. Plaintiffs Failed to Prove Damage or Loss | 12 |
| (1) Plaintiffs' "Value-of-Data" Theory is Displaced by California's Uniform Trade Secrets Act | 12 |
| (2) Plaintiffs' Battery Degradation and Bandwidth Usage Theories are Insufficient to Establish "Damage or Loss" | 14 |
| d. Google Meets the Scope of Employment Exception | 15 |
| B. The Court Should Not Grant a New Trial on Plaintiffs' CDAFA Claim | 16 |
| 1. The Jury Verdict was Not "Against the Great Weight of the Evidence" | 16 |
| a. Legal Standard | 16 |
| b. The Jury's Verdict was Amply Supported by the Evidence | 17 |
| 2. The Court Did Not Erroneously Instruct the Jury on "Damage or Loss" | 17 |
| a. Legal Standard | 17 |
| b. Plaintiffs Waived Their Objection to the Court Not Giving Their Requested "Damage or Loss" Instruction | 18 |
| c. The Court's Instruction was Not Erroneous | 21 |
| 3. A Partial Retrial Would Violate the Seventh Amendment | 23 |
| III. CONCLUSION | 24 |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re A.L.*,
38 Cal. App. 5th 15 (2019).............................................................................................. 10

*Ace v. Aetna Life Ins. Co.*,
139 F.3d 1241 (9th Cir. 1998).......................................................................................... 17

*Alert Enter., Inc. v. Rana*,
No. 22-cv-06646, 2023 WL 2541353 (N.D. Cal. Mar. 16, 2023)........................................... 13

*Allison v. Citgo Petroleum Corp.*,
151 F.3d 402 (5th Cir. 1998)............................................................................................ 24

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................................................................................................... 2

*Boyle v. United Techs. Corp.*,
487 U.S. 500 (1988) ....................................................................................................... 2

*C.B. v. City of Sonora*,
769 F.3d 1005 (9th Cir. 2014) (*en banc*) .................................................................... 19, 21

*In re Cap. One Fin. Corp.*,
No. 25-cv-023, 2025 WL 1570973 (E.D.Va. June 2, 2025) ............................................. 5, 7, 8

*Chrisman v. City of L.A.*,
155 Cal. App. 4th 29 (2007)............................................................................................. 15

*Christian v. Betak*,
No. 24-cv-01867, 2025 WL 786056 (N.D. Cal. Mar. 11, 2025)........................................ 3, 14

*City of Pomona v. SQM N. Am. Corp.*,
801 F. App'x 488 (9th Cir. 2020) ..................................................................................... 23

*Doctor's Best, Inc. v. Nature's Way Prods., LLC*,
143 F.4th 1101 (9th Cir. 2025)........................................................................................ 7, 14

*EEOC v. Pape Lift, Inc.*,
115 F.3d 676 (9th Cir. 1997)............................................................................................ 17

*Erhart v. BofI Holding, Inc.*,
612 F. Supp. 3d 1062 (S.D. Cal. 2020) .............................................................................. 13

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016).......................................................................... 9, 10, 11, 12

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Garrabrants v. Erhart*,
    98 Cal. App. 5th 486 (2023).................................................................................................. 4, 5, 8

*Gasoline Prods. Co. v. Champlin Refining Co.*,
    283 U.S. 494 (1931) ................................................................................................................ 23, 24

*Grosvenor Props. Ltd. v. Southmark Corp.*,
    896 F.2d 1149 (9th Cir. 1990)........................................................................................... 18, 19, 20

*Hammer v. Gross*,
    932 F.2d 842 (9th Cir. 1991).................................................................................................... 19

*Hammerling v. Google, LLC*,
    No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024)...................................................... 10, 12

*Henry Schein, Inc. v. Cook*,
    No. 16-cv-03166, 2017 WL 783617 (N.D. Cal. Mar. 1, 2017)............................................... 13

*Kalitta Air LLC v. Central Texas Airborne Sys. Inc.*,
    547 F. App'x 832 (9th Cir. 2013) ............................................................................................ 23

*Korn v. Comm'r of Internal Revenue*,
    524 F.2d 888 (9th Cir. 1975).................................................................................................... 5

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) ............................................................................................................. 13

*Lakeside-Scott v. Multnomah Cnty.*,
    556 F.3d 797 (9th Cir. 2009).................................................................................................... 7, 14

*Leocal v. Ashcroft*,
    543 U.S. 1 (2004)...................................................................................................................... 16

*Lister v. City of Las Vegas*,
    148 F.4th 690 (9th Cir. 2025)................................................................................................... 20, 21

*M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*,
    No. 12-cv-1424, 2013 WL 12072526 (S.D. Cal. June 26, 2013) ........................................... 14

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
    250 F. Supp. 3d 409 (N.D. Cal. 2017) ..................................................................................... 17, 18

*Movement Mortg., LLC v. Scrima*,
    No. 2:23-cv-02904, 2024 WL 3011202 (E.D. Cal. June 11, 2024) ........................................ 14

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
    54 F.3d 1424 (9th Cir. 1995).................................................................................................... 12

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iii -

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Passantino v. Johnson & Johnson Consumer Prods., Inc.*,
212 F.3d 493 (9th Cir. 2000) ......................................................................................... 17

*Pavon v. Swift Transp. Co., Inc.*,
192 F.3d 902 (9th Cir. 1999) ......................................................................................... 18

*Peck v. Howard*,
73 Cal. App. 2d 308 (1946) ............................................................................................. 5

*People v. Hawkins*,
98 Cal. App. 4th 1428 (2002) ....................................................................................... 10

*People v. Sifuentes*,
83 Cal. App. 5th 217 (2022) ......................................................................................... 10

*PQ Labs, Inc. v. Yang Qi*,
No. 12-0450, 2014 WL 334453 (N.D. Cal. Jan. 29, 2014) (Wilken, J.) ....................... 15

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) ................................................................................................... 2, 6

*Regents of the Univ. of Cal. v. Aisen*,
No. 15-cv-1766, 2016 WL 4096078 (S.D. Cal. Apr. 22, 2016) ................................... 15

*Roy v. Volkswagen of Am., Inc.*,
896 F.2d 1174 (9th Cir. 1990) ....................................................................................... 17

*Russ Bldg. P'ship v. City and Cnty. of S.F.*,
44 Cal. 3d 839 (1988) ..................................................................................................... 5

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) (plurality opinion) ......................................................................... 2

*Sidibe v. Sutter Health*,
103 F.4th 675 (9th Cir. 2024) ....................................................................................... 22

*Silvaco Data Sys. v. Intel Corp.*,
184 Cal. App. 4th 210 (2010) ..................................................................................... 3, 13

*Stuart v. Cnty. of Riverside*,
No. 5:22-cv-00701, 2024 WL 3455263 (C.D. Cal. Apr. 22, 2024) ............................ 4, 8

*Taxinet Corp. v. Leon*,
114 F.4th 1212 (11th Cir. 2024) ................................................................................... 24

*Teran v. Super. Ct. of L.A.*,
112 Cal. App. 5th 371 (2025) ....................................................................................... 13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iv -

**GOOGLE'S OPP. TO PLAINTIFFS' RENEWED**
**MOT. FOR JMOL AND NEW TRIAL**
**3:20-CV-04688-RS**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Tritchler v. Cnty. of Lake*,
  358 F.3d 1150 (9th Cir. 2004).................................................................................. 17

*TrustLabs, Inc. v. An*,
  No. 21-cv-02606, 2024 WL 4778039 (N.D. Cal. Nov. 13, 2024) (Breyer, J.) ........................ 15

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) .................................................................................................. 2

*United Air Lines, Inc. v. Wiener*,
  286 F.2d 302 (9th Cir. 1961).................................................................................. 24

*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2015)............................................................................. 3, 14

*United States v. Nosal*,
  844 F.3d 1024 (9th Cir. 2016)................................................................................ 10

*United States v. Powell*,
  469 U.S. 57 (1984)................................................................................................. 22

*United States v. Santos*,
  553 U.S. 507 (2008) .............................................................................................. 16

*Wadler v. Bio-Rad Lab'ys., Inc.*,
  916 F.3d 1176 (9th Cir. 2019)................................................................................. 2

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................................ 2

**Statutes**

28 U.S.C. § 2072(b) ................................................................................................. 2

Cal. Penal Code
  § 502(c) ......................................................................................................... 3, 14, 15
  § 502(c)(1)............................................................................................................ 10
  § 502(c)(2)......................................................................................................*passim*
  § 502(c)(5)........................................................................................................... 3, 4
  § 502(c)(7)............................................................................................................... 4
  § 502(e) ................................................................................................................ 3, 4
  § 502(e)(1)......................................................................................................*passim*
  § 502(e)(2)............................................................................................................ 16
  § 502(h)(1) ........................................................................................................... 15

California Comprehensive Computer Data Access and Fraud Act....................................*passim*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- v -

**GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

California's Uniform Trade Secrets Act ................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P.
    23 ........................................................................................................................................... 2
    50(a)(1) .................................................................................................................................. 2
    51 .......................................................................................................................... 18, 19, 20
    51(a) .................................................................................................................................... 18
    51(a)(1) ................................................................................................................................ 18
    51(b) ............................................................................................................................... 18, 19
    51(b)(2) .......................................................................................................................... 18, 19
    51(c)(2) ............................................................................................................................... 18
    51(d)(1)(B) ......................................................................................................................... 18
    51(d)(2) .............................................................................................................................. 20
    59(a)(1)(A) ......................................................................................................................... 17

Fed. R. Evid. 606(b) ................................................................................................................. 23

U.S. Const. 7th Amendment ............................................................................................ 1, 16, 23

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

At trial, Plaintiffs failed to prove their claim under the California Comprehensive Computer Data Access and Fraud Act ("CDAFA").  In their motion seeking judgment as a matter of law on that claim, they outright ignore the ample trial evidence which provided the jury with more than a sufficient basis to find for Google.  *First*, Plaintiffs failed to present any proof, let alone class-wide proof, that class members "owned" (s)WAA-off data.  Such an inquiry is a detailed question of fact about the relationship between users and each third-party app, yet Plaintiffs offered no evidence relevant to such analysis.  *Second*, Plaintiffs failed to prove that Google knowingly acted without permission in collecting users' (s)WAA-off data.  Not only did the evidence establish that Google did have permission, but Plaintiffs offered no evidence establishing that Google knew that it did not have permission.  *Third*, Plaintiffs failed to prove that class members suffered "damage or loss" within the meaning of CDAFA.  Their value-of-data theory is displaced by California's Uniform Trade Secrets Act ("CUTSA"), and Plaintiffs' remaining theories of harm—battery life and bandwidth degradation of users' mobile devices—were backed up by no class-wide evidence and are not the relevant types of harms for their particular claim.  *Fourth*, the evidence established that at all relevant times, Google acted on behalf of—and within the scope of its relationship with— third-party apps, exempting it from liability under CDAFA's "scope-of-employment" exception. Plaintiffs are therefore not entitled to judgment as a matter of law on their CDAFA claim.

Plaintiffs' alternative request for a partial new trial fares no better.  There was more than sufficient evidence to support the jury's verdict.  And there was no instructional error regarding the "damage or loss" element to warrant a new trial.  Not only did Plaintiffs waive this argument, the Court's instruction comported with the CACI model jury instructions and Plaintiffs cannot show that the Court's instruction would have resulted in a different verdict.  Even so, Plaintiffs would not be entitled to a re-trial solely on their CDAFA claim—the Seventh Amendment would compel a full re-trial on each of Plaintiffs' causes of action.  For many reasons—including that Plaintiffs do not want a re-trial on the Privacy Claims—re-trial should not be granted.

Accordingly, the Court should deny Plaintiffs' motion in full.

Cooley LLP
Attorneys at Law
San Francisco

1

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

## II.    ARGUMENT

### A.    Plaintiffs are Not Entitled to Judgment as a Matter of Law on Their CDAFA Claim

#### 1.    Legal Standard for Judgment as a Matter of Law on a Class CDAFA Claim

Judgment as a matter of law may only be granted if "a reasonable jury would not have a legally sufficient evidentiary basis" to find for the nonmoving party.  Fed. R. Civ. P. 50(a)(1). Judgment is proper if only "one reasonable conclusion" can be reached. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The court must draw all reasonable inferences in favor of the nonmoving party and may not weigh the evidence.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  And the class action device amplifies Plaintiffs' burden—they must prove they are entitled to judgment as a matter of law as to every single class member.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) ("[T]he Rules Enabling Act [28 U.S.C. § 2072(b)] forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'"); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 458 (2016); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (plurality opinion) ("[a] class action ... leaves the parties' legal rights and duties intact and the rules of decision unchanged").

Plaintiffs' sole CDAFA claim is based on Google's alleged taking, copying, or making use of (s)WAA-off data.  *See* Dkt. No. 289 (Fourth Amended Compl.) at 69 ("Google violated Cal. Penal Code § 502(c)(2) by knowingly accessing and without permission taking, copying, saving, analyzing, and using Plaintiffs' and Class members' data").  To prevail on this claim, Plaintiffs were required to prove, across the 98-million-member class, that: (1) Plaintiffs were owners or lessees of data; (2) Google knowingly accessed Plaintiffs' data from mobile devices; (3) Google knowingly took, copied, or made use of that data from those devices without permission; and (4) Plaintiffs suffered damage or loss.  Cal. Penal Code §§ 502(c)(2), (e)(1).[1]

---

[1] For purposes of ruling on a motion for judgment as a matter of law, the Court must apply the relevant governing law, rather than the recitation of law as reflected in the jury instructions. *See Wadler v. Bio-Rad Lab'ys., Inc.*, 916 F.3d 1176, 1187 (9th Cir. 2019); *Boyle v. United Techs. Corp.*, 487 U.S. 500, 513 (1988); *see also* Dkt. No. 658 (Google's Objections to Final Jury Instructions).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

**2.     Plaintiffs Failed to Prove that Google is Liable Under CDAFA as a Matter of Law**

Plaintiffs failed to establish liability on a class-wide basis, and Google meets the scope of employment exception under the statute.  As such, judgment as a matter of law may not be entered in favor of Plaintiffs on the CDAFA claim.

**a.     Plaintiffs Failed to Prove that They are the Owners of (s)WAA-Off Data**

Plaintiffs failed to prove that they own (s)WAA-off data, defeating liability under CDAFA. Cal. Penal Code § 502(e)(1) (the "owner or lessee" of the relevant item "who suffers damages or loss by reason of a violation" can bring a civil action).

Plaintiffs' Section 502(c)(2) claim requires that each class member be the "owner or lessee"[2] of the (s)WAA-off data.  *Id*.  Plaintiffs attempt to circumvent their burden to prove ownership of the (s)WAA-off data by claiming ownership of the devices.  But Section 502(c)(2) liability cannot be premised on proof of ownership of the mobile devices.  Section 502(c)(2) pertains to the "tak[ing], copy[ing] or mak[ing] use of any *data*."  Cal. Penal Code § 502(c)(2) (emphasis added); *see also United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) ("A plain reading of [Section 502(c)(2)] demonstrates that its focus is on unauthorized taking or use of information.").  Plaintiffs' mix-and-match approach—claiming ownership of devices but asserting a claim based on data access—is invalid.  A civil action under Section 502(e) is limited to those that own the subject (*i.e.*, device <u>or</u> data) of the particular, allegedly-violated Section 502(c) subdivision.  *See Christian v. Betak*, No. 24-cv-01867, 2025 WL 786056, at *6 (N.D. Cal. Mar. 11, 2025).  In *Christian*, the plaintiff brought a claim under Section 502(c)(5), which prohibits disruption or denial of computer services.  *Id*.  The plaintiff claimed he had standing under Section 502(e) because he was the owner of data stored on the disrupted computer service.  Judge Hixson rejected this argument, explaining "[a]s Plaintiff's CDAFA claim concerns disruption or denial of computer services, rather than data, his alleged ownership of files stored on the [cloud server] does

_____

[2] Plaintiffs make no argument that they are the "lessees" of either devices or data.  *See* Mot. at 2-3. Thus, Google only focuses on the "ownership" element in this Opposition.

not give him standing to bring" the Section 502(c)(5) claim. *Id*. The inverse is equally true: Plaintiffs' claim that the class owned mobile devices "do[es] not give Plaintiff[s] standing to bring a claim under a section of the CDAFA that does not concern damage to [mobile devices]." *Id*. A close textual analysis of Section 502(e)(1) confirms this. Subsection (e)(1) grants a civil cause of action to "*the* owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss *by reason of a* violation of" one of the fourteen "provisions of subdivision (c)[.]" Cal. Penal Code § 502(e)(1) (emphasis added). While Section 502(e) lists all possible subjects of ownership across the fourteen provisions in subdivision (c), the relevant "ownership" is driven by the provision upon which the plaintiff sues—hence the "by reason of" language. Thus, to establish standing to bring the as-pleaded Section 502(c)(2) claim, Plaintiffs must establish that the class members were the owners of (s)WAA-off data.[3]

"[O]wnership" is "the right of one or more persons to possess and use a thing to the exclusion of others"—an owner is "someone who has the right to possess, use and convey something." *Garrabrants v. Erhart*, 98 Cal. App. 5th 486, 508 (2023). A plaintiff cannot establish ownership over data merely by showing that the data "concerns" the plaintiff, or because the plaintiff has "some form of interest—for example, a privacy interest" in the data. *Id*. at 508-09; *see also Stuart v. Cnty. of Riverside*, No. 5:22-cv-00701, 2024 WL 3455263, at *19 (C.D. Cal. Apr. 22, 2024) ("Here, in contrast, although the data pertains to Plaintiffs, there is no evidence that Plaintiffs 'own' (much less 'lease') that data. The State of California manages the CWS/CMS system, and an internal division with DPSS determines access permissions for DPSS employees.").

Plaintiffs' motion fails to cite any evidence of class members' right to possess, use, or convey the Google Analytics data provided to each app. Instead, Plaintiffs rely on Google employees' statements and their colloquial use of phrases like "user data." *See* Mot. at 2-3. Yet neither of these can establish legal ownership over (s)WAA-off data. Of course, it cannot be the case that legal ownership is established merely by one believing they, or another, owns property.

---

[3] Plaintiffs' class-wide ownership of their mobile devices (a "computer" under CDAFA) may well have been relevant had Plaintiffs brought a Section 502(c)(7) claim ("Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network"). But because Plaintiffs brought a class 502(c)(2) claim, they had to prove ownership of the data class-wide.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

*Cf. Peck v. Howard*, 73 Cal. App. 2d 308, 328 (1946) ("The existence of the claim of right in the mind of the person claiming it will not suffice to establish title by prescription."); *Russ Bldg. P'ship v. City and Cnty. of S.F.*, 44 Cal. 3d 839, 853 (1988) ("A vested right requires more than a good faith subjective belief that one has it."); *Korn v. Comm'r of Internal Revenue*, 524 F.2d 888, 890 (9th Cir. 1975) ("The taxpayer's belief as to ownership of the property, while it may be considered, is not decisive."). Ownership is independent of the belief of ownership. *See Garrabrants*, 98 Cal. App. 5th at 508 ("[O]wnership has particular meaning in the law."). Indeed, uttering the phrase "this is mine" cannot convert theft into ownership. For the same reason, Google employees' colloquial use of phrases like "user data" or "your information" does nothing to establish that class members had "the right to possess, use and convey something." *Id*. Such a chain of reasoning—*i.e.*, that some Google employees used language that could be used to raise the inference that those employees believed users owned their data, therefore the class members owned the (s)WAA-off data as a matter of law—cannot be made in Plaintiffs' favor. *See Reeves*, 530 U.S. at 150.

In fact, Plaintiffs failed to introduce any evidence of class-wide ownership over (s)WAA-off data at trial. Nor could they possibly have done so because the question of ownership is a detailed, bespoke, and individual "question of fact" involving the relationship between each class member and each third-party app used by each class member, including facts such as who "possessed the data," whether the third-party app "had the right to use the data," who "created" the data, and whether Google obtained the data in question from the third-party app or from the class member "directly." *See Garrabrants*, 98 Cal. App. 5th at 508, 510; *In re Cap. One Fin. Corp.*, No. 25-cv-023, 2025 WL 1570973, at *14 (E.D.Va. June 2, 2025). Here, "the trial record [is] devoid of evidence showing [each class member's] continued ability to use, possess, or otherwise control this data in [each of class member's third-party apps] possession." *Garrabrants*, 98 Cal. App. 5th at 510. *Garrabrants* identifies what such evidence would consist of: "customer terms of service … evidencing a continued ownership interest in the records." *Id*. Plaintiffs' trial evidence is that there are "2.3 million apps," Google Analytics for Firebase is used in "97 percent of the top thousand" Android Apps and "54 percent of the top thousand iOS apps." Trial Tr. Aug. 21 (Hochman) at

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

**GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS**

586:4-10. By Plaintiffs' own math, the question of ownership across the class called for examination of the "customer terms of service" of hundreds of thousands—if not millions—of third-party apps. Plaintiffs introduced none of them. There is no evidence that any class member retained any continued ability to use, possess, or control how the third-party apps used the data.

Worse for Plaintiffs is that they utterly ignore that the relevant Google employee—Steve Ganem—*did* testify about who owned the (s)WAA-off data. His testimony is crystal clear and alone defeats Plaintiffs' motion: Google's terms of service and upload use policy confirm the app developer owned the data. Trial Tr. Aug. 26 (Ganem) at 1157:6-11; Trial Tr. Aug 27 (Ganem) at 1259:24-1260:14; G0933. And there was substantially more trial evidence confirming that the app developers—not the class—owned the data. Google obtained the (s)WAA-off data from the third-party apps via the app's integration of the Firebase SDK and it was the third-party apps—not Google nor class members—who decided "what types of information to send to Google." *See* Trial Tr. Aug. 21 (Hochman) at 584:25-585:4; 686:15-687:9; 723:17-724:13; 725:3-7.[4] App developers—not Plaintiffs—chose how long the data was stored. Trial Tr. Aug. 26 (Ganem) at 1141:3-16. And the evidence is uniform that Google does not "take" data from Plaintiffs; it receives the data that the third-party app chose to collect and that Plaintiffs. Trial Tr. Aug. 29 (Black) at 1700:12-1701:7; Trial Tr. Aug. 25 (Rodriguez) at 842:23-24; Trial Tr. Aug. 20 (Monsees) at 463:8-11. All of this amply defeats any possible inference of ownership from the fact the apps were located on the phone. All of the data collection and transmission occurs inside the app, and class members had no ability to control, possess, use or convey the data. Trial Tr. Aug. 21 (Hochman) at 724:2-9 ("A: I would just say that the app developer designs their app and it works. You know, they design it. Q: The app developer designs the app, not Google; right? A: Google designs the SDK. Q: Google designs the SDK. It's up to the app developer to put it in the app; right? A: Yep, and then Google gets the data from the SDK"); Trial Tr. Aug. 19 (Monsees) at 264:7-10 ("It really depends on what the third-party developer is choosing to send, but yes, that data would go from the

---

[4] Worse, both classes include "enterprise accounts" and "supervised accounts" for the CDAFA claim. *See* PX-067 at 19-20. Plaintiffs offer no evidence that class members of these accounts—versus the enterprise or the minor's parent or guardian—have any ownership claim, much less a privacy interest.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

Uber app to Google Analytics."), at 306:5-9; Trial Tr. Aug. 29 (Black) at 1699:1-7. All of this undisputed evidence conclusively demonstrates that the third-party app developers had ownership of the (s)WAA-off data across the class. *See In re Cap. One Fin.*, 2025 WL 1570973, at \*14 ("[A]s other California courts have observed in connection with a CDAFA claim, ownership is often linked to the entity who created the property at issue…where a plaintiff's personal data (e.g., financial information, health data) is collected or generated by a third-party, and stored by a third-party, the plaintiff may retain 'some form of interest – for example, a privacy interest,' but cannot necessarily claim an ownership interest in that data under the CDAFA." (quoting *Garrabrants*, 98 Cal. App. 5th at 509)).

Even at the individual, non-class level, Plaintiff Santiago's only testimony of "ownership" was as to his devices, Trial Tr. Aug. 20 (Santiago) at 482:17-483:2, and his fantasy football team, *id*. at 521:22-522:8—not any third-party app data. Plaintiff Rodriguez was led by his counsel to speculatively claim ownership of third-party app data writ large. Trial Tr. Aug. 25 (Rodriguez) at 815:8-15 ("Q: Who owns the phone in your pocket? A: I do. Q: Who owns the apps on your phone? A: I do. Q: What about the data? … A: I do."). Such speculative and conclusory testimony, including his immediately prior assertion of owning the apps themselves, cannot be the basis for judgment in Plaintiffs' favor. *See Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 802-03 (9th Cir. 2009) ("JMOL is appropriate when the jury could have relied only on speculation to reach its verdict."); *Doctor's Best, Inc. v. Nature's Way Prods., LLC*, 143 F.4th 1101, 1111 (9th Cir. 2025) (genuine dispute of fact cannot be created by "mere speculation"). Importantly, Plaintiff Rodriguez did not testify as to any facts demonstrating that he had any ability to "use, possess, or otherwise control" the data he provided to any of his apps. And his litigation conduct demonstrates he had no such ability. *See* Trial Tr. Aug. 25 (Rodriguez) at 817:16-22; Mot. at 5 ("no way for users to even *view* the sWAA-off data[.]"); Trial Tr. Aug. 29 (Black) at 1710:12-1711:5; Trial Tr. Aug. 21 (Hochman) at 582:2-12.

Additional evidence from the named Plaintiffs further rebuts a finding of ownership. Plaintiffs admitted they installed the apps, agreed to each app's terms and privacy policy, and voluntarily provided app usage data to each app. Trial Tr. Aug. 20 (Santiago) at 518:23-519:23;

Cooley LLP
Attorneys at Law
San Francisco

7

Google's Opp. To Plaintiffs' Renewed
Mot. For JMOL And New Trial
3:20-CV-04688-RS

Trial Tr. Aug. 21 (Rodriguez) at 757:15-19; Trial Tr. Aug. 25 (Rodriguez) at 841:14-842:21. Indeed, Plaintiff Rodriguez agreed he "had a deal with Target" where Target "collect[s]" and "uses" his data. Trial Tr. Aug. 21 (Rodriguez) at 839:1-17. It was the third-party app developers who had ownership of the data that Mr. Rodriguez and Mr. Santiago provided via their use of the apps.

At bottom, while Plaintiffs may have asserted a privacy interest in the (s)WAA-off data, that is not "an ownership interest," and Plaintiffs utterly failed to provide any evidence that each class member—rather than the third-party app developers—own the data. *See Garrabrants*, 98 Cal. App. 5th at 508-09; *Stuart*, 2024 WL 3455263, at *19; *In re Cap. One Fin.*, 2025 WL 1570973, at *14 ("But where a plaintiff's personal data (e.g., financial information, health data) is collected or generated by a third-party, and stored by a third-party, the plaintiff may retain 'some form of interest – for example, a privacy interest,' but cannot necessarily claim an ownership interest in that data under CDAFA.").

### b. Plaintiffs Failed to Prove that Google Knowingly Took, Copied, or Made Use of (s)WAA-Off Data Without Permission

To establish this element, Plaintiffs must prove that Google acted "[k]nowingly . . . without permission." Cal. Penal Code § 502(c)(2). Plaintiffs failed to prove this since the evidence established that (1) Google in fact had permission to access (s)WAA-off data, and (2) that Google did not know that it lacked permission.

**First**, despite Plaintiffs' argument to the contrary, there was ample evidence from which the jury could have reasonably concluded that Google did have permission to access (s)WAA-off data. As argued in Google's Renewed Motion for Judgment as a Matter of Law, Google unambiguously disclosed its data collection practices to users. Dkt. No. 736 ("Google's Renewed JMOL") at 14-15. Google's Privacy Policy explained that it "collect[ed] data about users' '[a]ctivity on third-party sites and apps that use [Google's] services.'" PX-062. In its "Activity Controls" page, Google explains that the settings therein can be used to "[c]hoose which settings will save data in your Google Account." PX-084 at 1. Further, Google disclosed that "[i]f Web & App Activity is turned on, your searches and activity from other Google services are saved in your Google Account." PX-113 at 1. When users toggle (s)WAA off, they are presented with,

Cooley LLP
Attorneys at Law
San Francisco

8

Google's Opp. To Plaintiffs' Renewed
Mot. For JMOL And New Trial
3:20-CV-04688-RS

essentially, an "are you sure" pop-up notification, explaining that users can "learn about the data that Google continues to collect and why at policies.google.com."  G0574.R2 at 22.  Finally, Google's general privacy policy discloses that "a website might use our . . . analytics tools (like Google Analytics) . . . These services may share information about your activity with Google . . ." PX-062 at 22.  As Professor Hoffman testified in detail, Google's disclosures adequately informed users about its data collection practices without "cognitively overloading" them.  Trial Tr. Aug. 27 (Hoffman) at 1371:12-23, 1376:9-1377:13.  The "are you sure" pop-up was an effective "guardrail" to prevent user error.  *Id*. at 1377:24-1382:14; *see also id*. at 1387:9-11 ("[R]egardless of how you look at it, Google is informing you that it's going to continue collecting your data.").

Moreover, it is undisputed that Google's agreement with each third-party app required the app to disclose Google's data collection to, and obtain consent from, all class members.  Trial Tr. Aug. 19 (Monsees) at 262:16-18; *see also* G933; Trial Tr. Aug. 26 (Ganem) at 1148:18-1150:17, 1157:6-11; Trial Tr. Aug. 27 (Ganem) at 1259:24-1260:14; *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016) ("implied authorization" from third-parties can preclude CDAFA liability).[5]  While this Court has held that these agreements cannot be used to establish Google's affirmative defense of consent on the privacy claims (a ruling upon which Google reserves all rights), the question of "without permission" was Plaintiffs' burden and viewed from Google's perspective.  In that context, a reasonable jury could view such policies as corroboration of Google's policies and conclude that Plaintiffs failed to meet their burden that Google lacked permission.

Since, "[r]ead in the context of the Policy as a whole" Google "unambiguously disclosed" its collection of user activity in third-party apps, a jury could easily conclude that Plaintiffs failed to meet their burden showing that Google lacked permission.  *See Hammerling v. Google, LLC*, No. 22-17024, 2024 WL 937247, at *1 (9th Cir. Mar. 5, 2024).

**Second**, and more importantly, even if Google lacked permission, Plaintiffs must prove that

---

[5] Moreover, starting in 2021 with the introduction of iOS 14.5, members of the iOS Class were presented with a pop-up notification when using apps, confirming if the user wanted to "Ask app not to track."  Enabling this setting would prevent Google from knowing whether the iOS user was also a Google user, resulting in Google saving the data in de-identified form. Trial Tr. Aug. 29 (Black) at 1706:17-1707:10; Trial Tr. Aug. 28 (Knittel) at 1563:23-1564:8, 1579:21-23.

Google subjectively *knew* it did not have permission. *See Power Ventures*, 844 F.3d at 1069; *People v. Hawkins*, 98 Cal. App. 4th 1428, 1438-39 (2002) ("Knowingly" applies to all elements of Section 502(c)(2), not just access). This is a critical difference between the privacy claims and the CDAFA claims: while the privacy claims turn on the class members' knowledge and consent, the CDAFA claim turns on *Google's* knowledge and understanding.[6] The burden is on Plaintiffs to demonstrate that Google "unequivocally knew" that (s)WAA-off revoked permission to save class members' Google Analytics data. *See Power Ventures*, 844 F.3d at 1067; *see also United States v. Nosal*, 844 F.3d 1024, 1028 (9th Cir. 2016) (Under the CFAA, "[u]nequivocal revocation of computer access closes both the front door and the back door."). In *Power Ventures*, the defendant accessed Facebook's computers via its individual users' Facebook profiles. *Power Ventures*, 844 F.3d at 1067. Those users "arguably gave Power permission to use Facebook's computers" and "Power reasonably could have thought that consent from Facebook users to share the promotion was permission for Power to access Facebook's computers." *Id*. Facebook thereafter "expressly rescinded that permission" via a cease-and-desist letter. *Id*. Based on that "express revocation" "[t]he record shows unequivocally that Power knew that it no longer had authorization." *Id*. at 1067-68. Facebook "clearly notified Power of the revocation of access, and Power intentionally and admittedly refused to comply." *Id*. at 1069. Critically, in applying CDAFA, the court held that while Power "had implied authorization" via user permission, "it did not, at first, violate" CDAFA. *Id*. Only after Power "knew that it no longer had permission" was it liable. The Ninth Circuit thus directed the district court to "calculate damages only for the period after Power received the cease and desist letter." *Id*. at 1070.

Here, Plaintiffs provided no evidence that Google subjectively knew it acted without permission. David Monsees—the person who makes the decision at Google as to what (s)WAA

---

[6] "Knowingly," in Penal Code provisions like Section 502(c)(1), requires proof of the defendant's "subjective awareness" or "subjective appreciation" of the required fact. *People v. Sifuentes*, 83 Cal. App. 5th 217, 230 (2022); *In re A.L.*, 38 Cal. App. 5th 15, 22 (2019). The "knowingly" standard is a "higher standard than criminal negligence" and objective tests such as "reasonably should have known." *Sifuentes*, 83 Cal. App. 5th at 230. Requiring less than subjective knowledge would also be inconsistent with Ninth Circuit precedent. *See Power Ventures*, 844 F.3d at 1069 ("Power intentionally accessed Facebook's computers knowing that it was not authorized to do so[.]").

applies to and how Google understands (s)WAA—testified that Google understood (s)WAA-off to revoke permission to save data to the user's Google Account; that he did not understand (and in 12 years never heard) anyone other than Plaintiffs claim (s)WAA-off revoked permission to store Google Analytics data; that he did not (and does not) understand the (s)WAA-off language to suggest that it revokes permission to store Google Analytics data; and that understanding (s)WAA off to revoke permission as to storing Google Analytics data "wouldn't make any sense" because Google "couldn't provide app and site developers the features of Google Analytics." *E.g.*, Trial Tr. Aug. 19 (Monsees) at 257:25-258:1, 300:17-24, 306:17-18; Trial Tr. Aug. 20 (Monsees) at 366:7-17, 368:19-369:13, 410:2-411:14; PX-003; *see also* Trial Tr. Aug. 26 (Ganem) at 1155:14-1156:1, 1200:24-1201:2 ("[I]t never occurred to me that a user would expect that when sWAA was off, their Google Analytics data wouldn't be collected at all.").

Moreover, the fact that Google required each third-party app developer to disclose, and obtain consent to, the app's usage of Google Analytics gave Google reason to believe that users who installed the relevant apps had given permission. Trial Tr. Aug. 19 (Monsees) at 262:16-18; *see also* G933; Trial Tr. Aug. 26 (Ganem) at 1148:18-1150:17, 1157:6-11; Trial Tr. Aug. 27 (Ganem) at 1259:24-1260:14. A reasonable jury could easily conclude that—based on Google's policies—Google understood it had permission to collect (s)WAA-off data.

None of the testimony that Plaintiffs cite establishes that Google knew it did not have permission. Mot. at 4-5. At best, the cited testimony only establishes that Google knew it collects data. That's it. Google employees did not believe or know that users misinterpreted (s)WAA disclosures, *see, e.g.,* Trial Tr. Aug. 19 (Monsees) at 257:25-258:1, since (s)WAA disclosures made clear that (s)WAA toggled "off" only prevented data from being saved to a user's account. It does not matter then that Google did not disclose "I'm using your WAA-off data and for what purpose," did not give users a "choice," did not create some way for users to view their (s)WAA-off data, or did not run a consent check before collecting (s)WAA-off data. Mot. at 4-5. Since Google already qualified the contours of (s)WAA, it had no reason to take any of these actions. So long as Google did not save (s)WAA-off data against a user's account—which it did not—it would have no reason to know that it lacked permission. Finally, internal Google communications do not establish that

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

Google knew it lacked permission. *See* Mot. at 5. At best, Google employees' skepticism about Google's disclosures suggest they could be clearer—a far cry from demonstrating that Google unequivocally knew it lacked permission. *See Power Ventures*, 844 F.3d at 1067.

Thus, Plaintiffs' evidence falls far short of establishing—as a matter of law—Google's unequivocal subjective knowledge that (s)WAA-off revoked permission for any and all data collection, including the de-identified data for Google Analytics. Unlike Power, who only "arguably" had permission, Google understood it expressly had permission from multiple-sources, including the "unambiguously disclose[d]" Privacy Policy and Google's policy of requiring third-party app disclosure and consent. *See Hammerling*, 2024 WL 937247, at *2. Unlike Power, where the CEO and other executives admitted to knowing of Facebook's revocation, the relevant Google employees here (David Monsees and Steve Ganem) did not and would not have understood (s)WAA-off as revoking permission. *See* Trial Tr. Aug. 20 (Monsees) at 391:11-18, 416:9-12, 429:2-6; Trial Tr. Aug. 26 (Ganem) at 1155:14-1156:1; *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435-36 (9th Cir. 1995) (corporate intent requires relevant director or officer intent). And Plaintiffs' eliciting that the (s)WAA-off toggle does not explicitly mention "Google Analytics" cuts against them. Plaintiffs' alleged understanding—which sharply differs from Mr. Monses' and Mr. Ganem's understanding—indicates that (at best) the (s)WAA-off disclosure was ambiguous. Ambiguous language is not unequivocal revocation, much less as a matter of law.

### c. Plaintiffs Failed to Prove Damage or Loss

Plaintiffs present two theories of "damage or loss" under CDAFA: (1) damage or loss based on the "value" of (s)WAA-off data, and (2) damage or loss based on battery degradation and bandwidth usage. Mot. at 6-7. Neither are legally cognizable.

### (1) Plaintiffs' "Value-of-Data" Theory is Displaced by California's Uniform Trade Secrets Act

Plaintiffs explain that their "damage or loss" theory is based on the premise that (s)WAA-off data is "valuable." Mot. at 6 ("The loss of that valuable data was a loss for purposes of this CDAFA claim."). Yet, as explained fully in Google's Renewed Motion for Judgment as a Matter of Law, this theory of harm runs straight into displacement by California's Uniform Trade Secrets

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

Act ("CUTSA"). *See* Google's Renewed JMOL at 4-7.

CUTSA displaces all remedies—brought under a trade secret claim or otherwise—based on the taking of confidential information of purported value. *See Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 n.22 (2010), *disapproved on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 337 (2011) (CUTSA covers all claims "based on the taking of information that, though not a trade secret, was nonetheless of value to the claimant."); *Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1118 (S.D. Cal. 2020) (CUTSA displaces claims that seek to "impose liability [] for 'acquiring, disclosing, or using confidential' information of purported value").

Both elements of CUTSA displacement apply here. First, Plaintiffs assert that (s)WAA-off data is confidential information—their evidence at trial could not be clearer. *See, e.g.,* Trial Tr. Aug. 20 (Santiago) at 555:1-21 (describing (s)WAA-off information is "private"); Trial Tr. Aug. 25 (Rodriguez) at 812:18-22 (describing (s)WAA-off data as "private" and "personal"). Indeed, the type of data covered by Section 502(c)(2) must be non-public. *See Teran v. Super. Ct. of L.A.*, 112 Cal. App. 5th 371, 383 (2025) (interpreting Section 502(c)(2) as not applicable to public information). Second, (s)WAA-off data is, by Plaintiffs' admission, valuable. *See* Mot. at 6. Of course it must be, in order to form the basis of a "damage or loss" theory in the first place. *See, e.g.,* Trial Tr. Aug. 25 (Lasinski) at 877:21-25 (explaining that the damages model was based on "how much the class members should have been paid for the data that was taken from them."), 878:10-13 (explaining that compensatory damages is based on whether "you value that and you think you should be paid for it, it's something that you put a price on"); Trial Tr. Sep. 2 (Plaintiffs' Closing) at 1891:20-23 (explaining that compensatory damages are measured based on "the value of the data Google improperly collected and used."). Because of the parallels between the conduct covered by the two statutes, courts frequently find that CUTSA displaces CDAFA claims. *See Henry Schein, Inc. v. Cook*, No. 16-cv-03166, 2017 WL 783617, at *5 (N.D. Cal. Mar. 1, 2017); *Alert Enter., Inc. v. Rana*, No. 22-cv-06646, 2023 WL 2541353, at *6 (N.D. Cal. Mar. 16, 2023); *Movement Mortg., LLC v. Scrima*, No. 2:23-cv-02904, 2024 WL 3011202, at *5 (E.D. Cal. June 11, 2024); *M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*, No. 12-cv-1424, 2013 WL 12072526, at *3 (S.D. Cal. June 26, 2013).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

Plaintiffs' "value-of-data" theory is therefore legally insufficient to establish "damage or loss" under CDAFA.

### (2) Plaintiffs' Battery Degradation and Bandwidth Usage Theories are Insufficient to Establish "Damage or Loss"

Plaintiffs' alternative theory—premised on battery degradation and bandwidth usage—is also insufficient to establish "damage or loss."  Mot. at 6.

Plaintiffs introduced no class-wide evidence establishing that users uniformly experienced harm to battery and bandwidth.  The only evidence Plaintiffs presented on this theory was a cursory opinion from Dr. Hochman and conclusory class representative testimony.[7]  Trial Tr. Aug. 21 (Hochman) at 721:17-22; 725:17; 725:22-726:3; Trial Tr. Aug. 20 (Santiago) at 497:22-498:1; Trial Tr. Aug. 25 (Rodriguez) at 818:20-23.  But saying so does not make it so.  All this testimony demonstrates is that harm to battery or bandwidth is possible, not actual—and certainly not actual as to all class members.  Indeed, an individual user's pattern of device and app usage would impact the extent, and whether, their battery and bandwidth was harmed.  And Plaintiffs did no work to measure the degree of battery degradation that could be caused by Google's conduct.  Trial Tr. Aug. 21 (Hochman) at 723:11-16.  Plaintiffs therefore have no class-wide evidence that each class member suffered any "battery" or "bandwidth" harm.[8]

Similarly, there is a mismatch between what caused the alleged "loss or damage" and the alleged lack of permission.  The alleged "loss or damage" occurs to the device and bandwidth.  But even reading the (s)WAA-off disclosure as Plaintiffs' do—the key word is "save"—the revocation of permission is limited to Google storing and subsequently using the data.  *See* PX-084.  The same

---

[7] Plaintiffs do not even cite the Class Representatives' testimony.  *See* Mot. at 6-7.  This is no surprise, as their testimony was speculative and conclusory.  *See, e.g.,* Trial Tr. Aug. 20 (Santiago) at 497:22-498:1 (answering "Yes, I'd imagine so" when asked if Google's data collection harmed battery life or bandwidth); Trial Tr. Aug. 25 (Rodriguez) at 818:20-23 (answering "Now I do, yes" when asked if he understood data collection to impact bandwidth and battery life).  Such testimony need not be credited.  *See Lakeside-Scott*, 556 F.3d at 803; *Doctor's Best*, 143 F.4th at 1111.

[8] Although previously rejected by this Court, Dkt. No. 445 (MSJ Order) at 19, Google preserves the argument that a theory of "damage or loss" premised on bandwidth or battery harm does not confer standing under Section 502(c)(2).  Standing is limited to show who "suffer[] damage or loss *by reason of a violation* of any of the provisions" under Section 502(c).  Cal. Penal Code § 502(e)(1) (emphasis added).  Since Plaintiffs brought a claim pertaining to their data, they are limited to data-related harms.  *See Christensen*, 828 F.3d at 789; *Betak*, 2025 WL 786056, at *6.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

alleged bandwidth or battery harm occurs whether the Google Analytics SDK sent the data to Google or directly to the third-party app developer or if Google deleted (s)WAA-off data immediately upon receipt post-transit. This fact makes clear that bandwidth and battery harm are not caused "by reason of the fact" that Google continued to store de-identified Google Analytics data of class members who had (s)WAA off.[9]

### d.    Google Meets the Scope of Employment Exception

CDAFA exempts any acts from violating Section 502(c) if they are "committed by a person within the scope of lawful employment." Cal. Penal Code § 502(h)(1).[10] The undisputed evidence is that Google—at all times—acted on behalf of, and within the scope of its relationship, with the third-party apps. Trial Tr. Aug. 19 (Plaintiffs' Opening) at 207:16-19; Trial Tr. Aug. 21 (Hochman) at 584:23-585:21, 686:8-688:4; Trial Tr. Aug. 19 (Monsees) at 263:10-19. Plaintiffs' claim flounders on Section 502(h)(1).[11]

Plainly, the purpose of CDAFA's "scope of lawful employment" exception is to preclude criminal liability for those who operationalize permitted access. Hence, "lawful" employment. And the "scope of employment" is meant to be read broadly to cover all "acts which are reasonably necessary to the performance of their work assignment." Cal. Penal Code § 502(h)(1). In other words, the "scope of lawful employment" is about permitted versus unpermitted work, regardless of whether the person performing the "work assignment" is classified as an employee or contractor. *See id.*; *see also Chrisman v. City of L.A.*, 155 Cal. App. 4th 29, 36 (2007) ("respondents define 'scope of employment' too narrowly").[12] Here, Google's "work assignment" was to provide

---

[9] For all these same reasons, Plaintiffs have failed to prove that Google's conduct was a "substantial factor" in Plaintiffs alleged "damage or loss" under CDAFA. Mot. at 7.

[10] It is unclear whether Plaintiffs or Google have the burden of proof here. Section 502(c) begins "[e]xcept as provided in subdivision (h)...". Two district courts have suggested it falls on the plaintiff. *See PQ Labs, Inc. v. Yang Qi*, No. 12-0450, 2014 WL 334453, at *10-11 (N.D. Cal. Jan. 29, 2014) (Wilken, J.); *Regents of the Univ. of Cal. v. Aisen*, No. 15-cv-1766, 2016 WL 4096078, at *7 (S.D. Cal. Apr. 22, 2016). One suggests it falls on the defendant. *TrustLabs, Inc. v. An*, No. 21-cv-02606, 2024 WL 4778039, at *4 (N.D. Cal. Nov. 13, 2024) (Breyer, J.).

[11] Plaintiffs necessarily claim that Google is a "person" for purposes of CDAFA, given that Section 502(c) only applies to "any person" who commits one of the enumerated acts. Google is thus a "person" for Section 502(h)(1).

[12] Further, the rule of lenity compels resolving any ambiguity in Google's favor. *See United States v. Santos*, 553 U.S. 507, 513-14 (2008). Because statutes must be interpreted consistently, the rule of lenity applies evenly to statutes that provide both criminal and civil liability. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

Google Analytics to apps.  It did so by providing the Google Analytics SDK for incorporation into third-party apps and then only upon the app developer incorporating the code.  Then, the app developer directed Google as to receiving, storing, and processing the data—selected by the app developer—which the app had sent to Google as designed by the app developer.  Thus, Google was "performing acts which are reasonably necessary to the performance of [its] work assignment" of providing Google Analytics.  There is no liability under Section 502(c)(2).

*       *       *

Plaintiffs' motion for judgment as a matter of law on their CDAFA claim fails on nearly every element.  Judgment as a matter of law cannot be granted.[13]

**B.      The Court Should Not Grant a New Trial on Plaintiffs' CDAFA Claim**

A new, partial re-trial limited to Plaintiffs' CDAFA claim is unwarranted.  First, as established above, the jury's verdict was amply supported by the trial evidence.  Second, Plaintiffs' challenge to the "damage or loss" instruction is without merit.  Plaintiffs failed to preserve this objection, and even if it was not waived, the jury was properly instructed.  The instructions comported with the CACI model jury instructions, and Plaintiffs failed to establish that the Court's instruction precluded the jury from finding for Plaintiffs on this element.  Third, Plaintiffs are not free to self-interestedly pick and choose which claims to re-try—if the Court finds an instructional error, the Seventh Amendment compels re-trial of all Plaintiffs' claims.

**1.      The Jury Verdict was Not "Against the Great Weight of the Evidence"**

**a.      Legal Standard**

A new trial may be granted on grounds "for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  A trial court "may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or

---

[13] Even if Plaintiffs prevail on their CDAFA claim, they are not entitled to an award of attorneys' fees and costs.  Fees are discretionary under CDAFA.  *See* Cal. Penal Code § 502(e)(2).  The only argument Plaintiffs offer as to why Google should be ordered to pay fees: to make the class "whole" to make up for the Plaintiff Counsel's request of $146,781,895.13 in fees from the common fund.  Mot. at 7; Dkt. No. 739 at 25.  The Court should not award fees on this basis.  Since Plaintiffs' current motion for fees merely seeks fees from the common fund, Dkt. No. 739, Google does not oppose the motion.  If the issue of fees under CDAFA becomes ripe, Google reserves its right to object to Plaintiffs asserted fees and costs.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).  A new trial may be granted if the jury's verdict is "against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result." *Ace v. Aetna Life Ins. Co.*, 139 F.3d 1241, 1248 (9th Cir. 1998).  This is a "stringent standard." *See EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997).  And "the court is not justified in granting a new trial 'merely because it might have come to a different result.'" *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990).

### b.      The Jury's Verdict was Amply Supported by the Evidence

As detailed above, the "great weight of the evidence" supports the jury's verdict that Google is not liable under CDAFA. *See supra* Section II(A)(2).  There was a dearth of evidence supporting that class members "owned" (s)WAA-off data, that Google lacked permission to take, copy, access, or use (s)WAA-off data, and that it *knew* it lacked permission.  Further, Plaintiffs' "damage or loss" theories are legally incognizable—the "value-of-data" theory is displaced by CUTSA, and the harm to device battery and bandwidth are not the relevant harms for a Section 502(c)(2) claim.  Plaintiffs presented virtually no class-wide evidence: no surveys, statistical sampling, or other reason to extrapolate the named Plaintiff's testimony to the class.  And Google presented sufficient evidence to establish that it fell within the "scope of employment" exception to CDAFA liability.  For all the reasons discussed above, the jury's verdict is not "against the great weight of the evidence," and Plaintiffs' new trial motion should be denied on this basis.

### 2.      The Court Did Not Erroneously Instruct the Jury on "Damage or Loss"

### a.      Legal Standard

To warrant a new trial based on an instructional error, "the movant must show that there was instructional error and that such error was prejudicial." *Matthew Enter., Inc. v. Chrysler Grp. LLC*, 250 F. Supp. 3d 409, 414 (N.D. Cal. 2017) (citing *Tritchler v. Cnty. of Lake*, 358 F.3d 1150, 1154 (9th Cir. 2004)).  "[H]armless errors do not require reversal." *Tritchler*, 358 F.3d at 1154.  In determining whether an instruction was erroneous, the instructions must be considered as a whole, and whether they "fairly and adequately cover the issues presented, correctly state the law, and are not misleading." *Matthew Enter.*, 250 F. Supp. 3d at 414 (citing *Duran v. City of Maywood*, 221

CoOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

F.3d 1127, 1130 (9th Cir. 2000)).

### b. Plaintiffs Waived Their Objection to the Court Not Giving Their Requested "Damage or Loss" Instruction

Plaintiffs claim error in the Court not giving its requested "damage or loss" instruction (Disputed Instruction No. 33, hereinafter "DJI No. 22"). *See* Mot. at 9-11. But Plaintiffs failed to preserve this claim. To preserve a claim related to the Court not giving a requested instruction, a party must request the instruction under Rule 51(a) and, when the Court declines to include the requested instruction in the Rule 51(b) proposed instruction, renew that request by objection. *See* Fed. R. Civ. P. 51(a)(1), (b)(2), (c)(2), (d)(1)(B). The Advisory Committee Notes on Rule 51 make clear that an objection to the court omitting a requested instruction must be made *after* a court provides the parties with its proposed instructions under Rule 51(b): "The need to *repeat a request by way of objection* is continued by new subdivision (d)(1)(B) except where the court made a definitive ruling on the record. . . . Many cases hold that a proper request for a jury instruction is not alone enough to preserve the right to appeal failure to give the instruction. *The request must be renewed by objection*." Fed. R. Civ. P. 51 advisory committee's note to 2003 amendment (emphases added).[14] Further, submitting a requested instruction under Rule 51(a) prior to the Court informing the parties of its proposed instructions under Rule 51(b) is not enough. *See Grosvenor Props. Ltd. v. Southmark Corp.*, 896 F.2d 1149, 1152 (9th Cir. 1990) ("This court has held that remarks made by counsel in chambers, discussion of law in pretrial memoranda and mere submission of proposed instructions did not clearly show that the issue was focused before the court."); *Pavon v. Swift Transp. Co., Inc.*, 192 F.3d 902, 907-08 (9th Cir. 1999) ("Although Swift proposed its preferred alternative instruction, this was insufficient, under Fed.R.Civ.P. 51."); *see also Hammer v. Gross*, 932 F.2d 842, 847 (9th Cir. 1991) ("This court has enjoyed a reputation as the strictest enforcer of Rule 51[.]").

Plaintiffs failed to preserve their objections to the "damage or loss" instruction (or lack

---

[14] Rule 51(d)(1)(B) provides an exception to the requirement to renew the request via objection where the court provided a "definitive ruling on the record" rejecting the request. Fed. R. Civ. P. 51(d)(1)(B). Here, Plaintiffs admit that this exception is inapplicable. *See* Mot. at 9 ("The Court denied Plaintiffs' request to give Disputed Jury Instruction No. 33. The Court gave no specific reason for that denial.").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

18

thereof). Plaintiffs submitted DJI No. 33 on August 11, 2025. Dkt. No. 595. On August 28, 2025, per Rule 51(b), this Court provided its proposed instructions. Declaration of Jonathan Patchen in Support of Google's Opposition ("Patchen Decl."), Ex. 17; Trial Tr. Aug. 28 at 1612:16-19; Trial Tr. Aug. 29 at 1618:6-11. DJI No. 33 was excluded. On August 29, 2025, the Court held a charging conference for the Parties to discuss the proposed jury instructions. Plaintiffs did not object or otherwise renew their request. Notably, Plaintiffs specifically made two requests for additional instructions with respect to their CDAFA claim. Trial Tr. Aug. 29 (Charging Conference) at 1807:15-1809:19 (relevance of app developer communications and agreements, Disputed Jury Instruction No. 44), 1809:20-1814:3 (ambiguities in (s)WAA disclosures should be construed against Google, Disputed Jury Instruction No. 45). Notably absent: any objection or request with respect to the "damage or loss" element. The Court further provided the parties with its final instructions on September 1, 2025, and expressly invited the submission of written objections. Patchen Decl., Ex. 18; Trial Tr. Aug. 29 at 1826:20-24. Google did, Dkt. No. 658, but Plaintiffs did not. In short, there was no "object[ion] on the record," Fed. R. Civ. P. 51(b)(2), and the mere filing of DJI No. 33 *before* the Court even provided its proposed jury instructions is grossly insufficient. *See Grosvenor*, 896 F.2d at 1152; *C.B. v. City of Sonora*, 769 F.3d 1005, 1032 (9th Cir. 2014) (*en banc*) (finding waiver where "Defendants initially did propose a jury instruction" on damage allocation but "when the court provided its proposed jury instructions and verdict form, Defendants did not object to the exclusion of their proposed allocation" even though "Defendants objected to unrelated portions of the jury instructions" and citing *Grosvenor* approvingly).

Plaintiffs' failure to preserve their objection is even more egregious here than in *Grosvenor*, where the Ninth Circuit held that an objecting party failed to adequately object before the District Court. *Id*. at 1152-53. There, the party argued it properly objected to the court's rejection of one of its instructions by: (1) submitting the proposed instruction, and (2) at a sidebar, noting that its instruction had not been given, after which the court explained it "rejected that instruction" and "noted that it was not necessary for counsel to repeat previously submitted instructions or objections." *Id*. at 1152. Despite noting the lack of the instruction—which Plaintiffs here failed to do—the Ninth Circuit held that "th[e] sequence of events [was] not sufficient to constitute a

Cooley LLP
Attorneys at Law
San Francisco

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

19

sufficient objection to the instructions that were given[.]" *Id*.

Additionally, contrary to Plaintiffs' argument, the Court did not indicate at the charging conference that all challenges to the jury instructions were preserved. Indeed, the very remarks cited by Plaintiffs at the charging conference indicate the exact opposite. *See* Mot. at 9 (citing Trial Tr. Aug. 29 at 1785:3-6, 1826:16-1827:1). The first cited passage has the Court encouraging restraint in making objections to the Court's proposed instructions. *See* Trial Tr. Aug. 29 (Charging Conference) at 1785:3-6 (encouraging the parties "to pick your fights and not decide that every single instruction needs to be ventilated"). But the Court did not say that fights not picked were still, somehow, preserved. Rather, in the immediately preceding passage, the Court explained it would "just march through the instructions, and you each tell me when we get to -- one or the other of you or both has something you want to tell me, we will stop and deal with it." Trial Tr. Aug. 29 (Charging Conference) at 1784:24-1785:2. Notably, Plaintiffs chose which fights to pick: they raised the exclusion of their requested instructions 44 and 45 and chose not to raise the exclusion of DJI No. 33 at the conference. And the second passage Plaintiffs cite has the Court expressly noting it would give the Parties the opportunity to submit written objections to the final set of jury instructions "to preserve your objections." Trial Tr. Aug. 29 (Charging Conference) at 1826:20-24 ("Once you get the final set, if you want to file a -- to preserve your objections . . . [i]f you want to file something, that's fine."). But despite this *express invitation from the Court*, Plaintiffs chose not to file any written objection to the exclusion of DJI No. 33. Nothing in the record comes close to suggesting that the Court somehow preserved Plaintiffs' objection regarding DJI No. 33.

While Rule 51 preserves plain error review for waived instructions, plain error review is unwarranted here. Such a review is only implicated if the error impacts a party's "substantial rights." Fed. R. Civ. P. 51(d)(2). Correcting plain errors is discretionary, "and used only 'to prevent a miscarriage of justice.'" *Lister v. City of Las Vegas*, 148 F.4th 690, 695 (9th Cir. 2025) (quoting *City of Sonora*, 769 F.3d at 1018-19). Plain errors under Rule 51 are "rare." *Lister*, 148 F.4th at 695 (quoting *Hoard v. Hartman*, 904 F.3d 780, 791 (9th Cir. 2018)). In the context of civil jury instructions, "plain errors should encompass only those errors that reach the pinnacle of fault." *City of Sonora*, 769 F.3d at 1018 (cleaned up). Here, Plaintiffs identify no "substantial right" implicated

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

by the lack of a "damage or loss" instruction, nor do they identify any "miscarriage of justice." Nor could they—they just didn't get what they wanted. Plaintiffs therefore waived their challenge to the "damage or loss" instruction, and the Court need not reach the merits of this issue.

### c.    The Court's Instruction was Not Erroneous

Even if the Court finds that Plaintiffs did not waive their challenge to this instruction, a new trial is not warranted on this basis.

**First**, there was no instructional error and the Court was correct in declining to give DJI No. 33. Plaintiffs' claim requires that each class member suffered "damage or loss by reason of" the alleged violation of Section 502(c)(2). Cal. Penal Code § 502(e)(1). DJI No. 33 included six different theories of harm—the three that the court accepted at summary judgment and three that repackage those that the Court rejected. *See* Mot. at 9. The three theories that the Court previously accepted at summary judgment were properly excluded from the jury instructions. Plaintiffs' disgorgement and value-of-data theories are displaced by CUTSA. *See supra* Section II(A)(2)(c)(1); Google's Renewed JMOL at 4-7. And Plaintiffs' battery/bandwidth theory of harm is not legally cognizable as discussed above. *See supra* Section II(A)(2)(c)(2).

Plaintiffs' three remaining theories should be rejected for the same reasons that the Court rejected them at summary judgment. Plaintiffs' "loss of the right to control data" theory is nothing more than a repackaged "denial of the benefit of the bargain" theory, which the court correctly rejected. Dkt. No. 445 at 19-20. The same is true for Plaintiffs' "loss of privacy" theory, which was rejected when called a "deprivation of privacy." Dkt. No. 445 at 17. And finally, Plaintiffs' "injury to peace of mind" theory is nothing more than an "emotional harm" theory, for which Plaintiffs demonstrated no "concrete models or theories." *Id.*[15]

**Second**, to the extent there was an error (there was not), it was harmless. Plaintiffs have

---

[15] Further demonstrating the error of Plaintiffs' proposed instruction is its origins. DJI No. 33 is not derived from any CACI instructions regarding CDAFA. To be sure, the CACI instructions on CDAFA do not expound upon a definition for harm under the statute. Instead, DJI No. 33 is cobbled together from instructions on damages for *other* causes of action. Dkt. No. 595 at 39-40 (drawing from instructions on "damages for use of name or likeness" and "general tort damages"). But "damage or loss"—a standard for statutory standing, not damages—has a particular meaning under CDAFA as any "damage or loss" must be "by reason of" a violation of one of CDAFA's 14 substantive provisions. *See* Cal. Penal Code § 502(e)(1).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

21

failed to establish that the Court's as-given instruction precluded the jury from being able to find "damage or loss." Indeed, Plaintiffs pursued the exact same damages theories under their CDAFA claim and Privacy Claims, and the jury found actual damages against Google under the Privacy Claims. Dkt. 670 (Jury Verdict). It is unclear then how the jury would have been unable to find "damage or loss" under CDAFA due to the lack of DJI No. 33, when they already found one of DJI No. 33's proposed grounds for "damage or loss" as to the Privacy Claims.

Plaintiffs speculate that Instruction No. 23—an instruction about the *measure of damages*—somehow suggested that statutory standing under CDAFA was limited to "economic damages." Mot. at 9-10. Of course, statutory standing is a distinct inquiry from the calculation of damages, and Plaintiffs offer no reasonable basis as to why the jury would take such a leap based on a definition of damages nine instructions away, completely untethered to CDAFA specifically. Even so, the Instruction specifically explains that "any actual damages amount should be calculated separately from calculation of any other categories of damage," thereby explicitly acknowledging that damages are not necessarily limited to "economic damages." This defeats the premise that the jury would have believed that damages (and by Plaintiffs' logic, statutory standing) were limited to economic damages based on this Instruction. Further, it is unclear how failing to *limit* the definition of "damage or loss" by including specific examples would somehow preclude the jury from finding for Plaintiffs. Of course, a broader definition of "damage or loss" would provide the jury with more latitude to find for Plaintiffs. Thus, nothing indicates that the jury would have come to a different conclusion if they received DJI No. 33. *See Sidibe v. Sutter Health*, 103 F.4th 675, 685 (9th Cir. 2024) (explaining that harmless error occurs where "it is more probable than not that the jury would have reached the same verdict had it been properly instructed.").

Nor do the jury's deliberations suggest that they were improperly instructed. *See* Mot. at 11. As a threshold matter, the Court should not speculate about what the jury thought or believed, as Plaintiffs' argument requires. *See United States v. Powell*, 469 U.S. 57, 66 (1984) (reasoning that inquiring into the content of the verdict "would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake."); *see also* Fed. R. Evid. 606(b) (prohibiting juror testimony about "deliberations; the effect of anything on

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment."). Even so, Plaintiffs' argument is unpersuasive. Plaintiffs claim that, because the jury asked for clarification on "damage or loss" and subsequently returned a defense verdict, the "obvious inference" is that they were incorrectly instructed. Mot. at 11. It is unclear how this is "obvious." The Court was correct in responding that there was "[n]o further instruction [] available on that definition." Indeed, CACI provides none.

There was no instructional error—much less a prejudicial or harmful one—and Plaintiffs' request for a new trial should be denied on this basis.

### 3. A Partial Retrial Would Violate the Seventh Amendment

If there was an instructional error warranting a new trial, Plaintiffs are not entitled to a re-trial only on their CDAFA claim. Mot. at 7-8. A new trial on all of the issues would be required. The Seventh Amendment provides that "the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law." U.S. Const. 7th Amendment. A partial re-trial is only appropriate if it "clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931).

Where there is evidentiary overlap in evaluating the claims, they should be decided together. *See City of Pomona v. SQM N. Am. Corp.*, 801 F. App'x 488, 491 (9th Cir. 2020). In *Pomona*, the Ninth Circuit ordered a re-trial on all issues, since the issues of damages and causation were too intertwined to warrant a partial re-trial. *Id.* ("Because both issues require a determination of the extent to which the harm to Pomona's water supply was caused by SWM's fertilizer, as opposed to another source of perchlorate, they should be decided by the same jury."); *see also Kalitta Air LLC v. Central Texas Airborne Sys. Inc.*, 547 F. App'x 832, 833 (9th Cir. 2013) (holding that the issue of breach on a negligence claim was too "intertwined with the issues of causation and damages that holding a partial retrial on causation and damages alone would have caused confusion and uncertainty."); *United Air Lines, Inc. v. Wiener*, 286 F.2d 302, 306 (9th Cir. 1961) ("It is apparent that where parties are asking for exemplary damages which depend upon the degree of culpability

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS

of the defendant, they are required to establish by their evidence their contentions as to the degree of negligence."). Other Circuits are in accord. *See Taxinet Corp. v. Leon*, 114 F.4th 1212, 1230 (11th Cir. 2024) (ordering a new trial on the entirety of an unjust enrichment claim, rather than just the issue of the value of the benefit conferred, because the latter required "understanding the sequence of events" underlying the unjust enrichment claim); *cf. Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 425 (5th Cir. 1998) ("[T]he existence of factual issues common between the plaintiffs' disparate impact and pattern or practice claims precludes trial of the disparate impact claim in a class action severed from the remaining nonequitable claims in the case.").

Here, Plaintiffs' CDAFA claim cannot be disentangled from their Privacy Claims, as each relied on the same evidence. Their CDAFA claim is based on Google allegedly taking, copying, or making use of (s)WAA-off data, and their Privacy Claims are based on privacy harms relating to the collection, saving, or use of (s)WAA-off data. *Compare* Dkt. No. 666 at 15 (CDAFA) *with id.* at 19 (Invasion of Privacy) *and id.* at 21 (Intrusion Upon Seclusion). Indeed, there is extensive factual overlap between the "intentional intrusion" and "knowingly access" elements, as well as whether users consented to Google's conduct and whether Google acted "without permission." Because the CDAFA claim and Privacy Claims rely on the exact same evidence and challenge the exact same conduct, they are not so "distinct and separable" to warrant a partial re-trial on only the CDAFA claim. *Gasoline Prods.*, 283 U.S. at 500.

Plaintiffs cannot pick and choose which of the jury's conclusions to retain and which to get a second bite of the apple at. Plaintiffs must re-try all or none of their claims. And because Plaintiffs only seek re-trial of some, the Court should grant none.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs' Renewed Motion for Judgment as a Matter of Law should be denied.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

**GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS**

Dated: April 27, 2026

Respectfully submitted,

COOLEY LLP


By: */s/ Jonathan Patchen*
    Michael A. Attanasio
    Benedict Y. Hur
    Simona Agnolucci
    Eduardo E. Santacana
    Jonathan Patchen
    Argemira Flórez
    Naiara Toker
    Harris Mateen
    Thilini Chandrasekera
    Isabella McKinley Corbo
    Chelsea Hu
    Michael B. Morizono

*Attorneys for Defendant*
*Google LLC*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

GOOGLE'S OPP. TO PLAINTIFFS' RENEWED
MOT. FOR JMOL AND NEW TRIAL
3:20-CV-04688-RS