**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
Alexander Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com
aboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
alanderson@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
Ryan Sila (admitted pro hac vice)
Xiaoming Wang (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com
twang@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>       Defendant. | Case No.: 3:20-cv-04688-RS<br><br>**PLAINTIFFS' OPPOSITION TO GOOGLE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (DKT. 736)**<br><br>The Honorable Richard Seeborg<br>Courtroom 3 – 17th Floor<br>Date: August 13, 20226<br>Time: 1:30 P.M. |

i

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................1

II.   LEGAL STANDARD .........................................................................................................1

III.  ARGUMENT .....................................................................................................................2

   A.   There Is No Preemption by the California Uniform Trade Secrets Act. .........................2

      1.   Google Forfeited Any CUTSA Preemption Defense. .................................................2

      2.   CUTSA Does Not Preempt Plaintiffs' Constitutional Claim (Invasion of Privacy). ...5

      3.   CUTSA Does Not Preempt Plaintiffs' Common-Law Claim (Intrusion Upon Seclusion). ..............................................................................................................5

   B.   A Reasonable Jury Could Have Found a Legally Protected Privacy Interest. ................8

   C.   The Jury's Finding that Plaintiffs had a Reasonable Expectation of Privacy is Well Supported by the Evidence. ...................................................................................11

      1.   The Jury Had Sufficient Evidence that Plaintiffs Had an Expectation of Privacy. ...11

      2.   Google's Heightened Evidentiary Standard—Which Demands Evidence of Each Class Member's Individual Beliefs—Is Wrong. ...................................................16

   D.   The Jury's Finding That Google's Conduct was Highly Offensive Was Well Supported by the Evidence. ..........................................................................................19

      1.   Plaintiffs Presented Class-Wide Evidence. ............................................................19

      2.   Google Intentionally Misled Users. ........................................................................21

      3.   Google Again Misconstrues The "Puzzle Piece" Testimony. ....................................22

   E.   The Jury Reasonably Found That Google's Intrusion Was Intentional. ........................24

   F.   The Jury Reasonably Rejected Google's Consent Defense. .........................................25

IV.   CONCLUSION .................................................................................................................25

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*Angelica Textile Servs., Inc. v. Park*,
220 Cal. App. 4th 495 (2013) ................................................................................................2, 6

*Apple, Inc. v. Samsung Elecs. Co.*,
67 F. Supp. 3d 1100 (N.D. Cal. 2014) ........................................................................................4

*Broidy Cap. Mgmt. LLC v. Muzin*,
2022 WL 1801031 (D.D.C. June 2, 2022) ...........................................................................5, 7

*Broidy v. Glob. Risk Advisors LLC*,
2023 WL 6258135 (S.D.N.Y. Sept. 26, 2023) ...........................................................................5

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023)...............................................................................*passim*

*Calhoun v. Google*, LLC,
113 F.4th 1141 (9th Cir. 2024) .......................................................................................12, 25

*Cleghorn v. Blue Shield of Cal.*,
408 F.3d 1222 (9th Cir. 2005) ........................................................................................2

*Cohen v. ConAgra Brands, Inc.*,
16 F.4th 1283 (9th Cir. 2021) ........................................................................................2

*Convolve, Inc. v. Compaq Comp. Corp.*,
2006 WL 839022 (S.D.N.Y. Mar. 31, 2006)..............................................................................3

*Demroff v. State*,
152 F.3d 924 (9th Cir. 1998) .......................................................................................3, 4

*El-Hakem v. BJY Inc.*,
415 F.3d 1068 (9th Cir. 2005) ........................................................................................4

*Erhart v. BofI Holding, Inc.*,
612 F. Supp. 3d 1062 (S.D. Cal. 2020) ..................................................................................8

*Finmeccanica S.p.A. v. Gen. Motors Corp.*,
2008 WL 11336141 (C.D. Cal. Dec. 17, 2008).........................................................................3

*Firetrace USA, LLC v. Jesclard*,
800 F. Supp. 2d 1042 (D. Ariz. 2010) ....................................................................................4

ii

*Gaedeke Holdings VII, Ltd. v. Mills*,
2014 WL 347629 (W.D. Okla. Jan. 30, 2014) ..........................................................................4

*Garrabrants v. Erhart*,
98 Cal. App. 5th 486 (2023) ...................................................................................................17

*Hadley v. Kellogg Sales Co.*,
2019 WL 3804661 (N.D. Cal. Aug. 13, 2019) .........................................................................4

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ...............................................................................8, 20

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) ..............................................................................12

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ....................................................................................5

*Hart v. TWC Prod. & Tech. LLC*,
2023 WL 3568078 (N.D. Cal. Mar. 30, 2023) .......................................................................18

*Hawkins v. Kroger Co.*,
512 F. Supp. 3d 1079 (S.D. Cal. 2021) ..................................................................................22

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009).............................................................................................8, 10, 17

*Hill v. NCAA*,
7 Cal. 4th 1 (1994)..............................................................................................................9, 17

*Holley v. Gilead Scis., Inc.*,
379 F. Supp. 3d 809 (N.D. Cal. 2019).....................................................................................5

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......................................................................................*passim*

*In re Google Referrer Header Privacy Litig.*,
465 F. Supp. 3d 999 (N.D. Cal. 2020)..............................................................................9, 19

*In re Marriage of Steiner & Hosseini*,
117 Cal. App. 4th 519 (2004)..................................................................................................5

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014).....................................................................................23

*Johnson v. Paradise Valley Unified Sch. Dist.*,
251 F.3d 1222 (9th Cir. 2001)..................................................................................................1

iii

*Josephs v. Pac. Bell*,
    443 F.3d 1050 (9th Cir. 2006) ...................................................................................................1

*Kemp v. Block*,
    607 F. Supp. 1262 (D. Nev. 1985) .........................................................................................18

*Kryzyzek v. OpenX Techs., Inc.*,
    2026 WL 206855 (N.D. Cal. Jan. 27, 2026)......................................................................20, 22

*Lewis v. Magnite, Inc.*,
    2025 WL 3687546 (C.D. Cal. Dec. 4, 2025)......................................................................20, 22

*London v. New Alberton's, Inc.*,
    2008 WL 4492642 (S.D. Cal. Sept. 30, 2008) .......................................................................21

*M.H. v. Cnty. Of Alameda*,
    2015 WL 894758 (N.D. Cal. Jan. 2, 2015)..............................................................................18

*Marich v. MGM/UA Telecomms, Inc.*,
    113 Cal. App. 4th 415 (2003).............................................................................................24, 25

*Marine Lumber Co. v. Tracy*,
    2024 WL 5443163 (D. Or. Dec. 2, 2024)..................................................................................3

*McCoy v. Alphabet, Inc.*,
    2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .............................................................................20

*McDonald v. Kiloo ApS*,
    385 F. Supp. 3d 1022 (N.D. Cal. 2019)...................................................................................19

*Med. Lab'y Mgmt. Consultants v. Am. Broad. Companies, Inc.*,
    306 F.3d 806 (9th Cir. 2002) ...........................................................................................17, 18

*Medipro Med. Staffing, LLC v. Certified Nursing Registry, Inc.*,
    2021 WL 387879 (Cal. Ct. App. Feb. 4, 2021) ........................................................................6

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
    713 F. Supp. 3d 660 (N.D. Cal. 2024)....................................................................................22

*Mullins v. Premier Nutrition Corp.*,
    178 F. Supp. 3d 867 (N.D. Cal. 2016).....................................................................................21

*Opperman v. Path, Inc.*,
    2016 WL 3844326 (N.D. Cal. July 15, 2016) .........................................................................16

*Opperman v. Path, Inc.*,
    205 F. Supp. 3d 1064 (N.D. Cal. 2016)...................................................................................18

iv

*PETA v. Bobby Berosini, Ltd.*,
    895 P.2d 1269 (Nev. 1995)............................................................................................................18

*PHL Assocs., Inc. v. Superior Ct. of Yolo Cnty.*,
    2020 WL 4012763 (Cal. Ct. App. July 16, 2020) ......................................................................3, 4

*Popa v. Microsoft Corp.*,
    153 F.4th 784 (9th Cir. 2025).................................................................................................10, 20

*Popejoy v. Hannon*,
    37 Cal. 2d 159 (1951)......................................................................................................................3

*PQ Labs, Inc. v. Yang Qi*,
    2012 WL 2061527 (N.D. Cal. June 7, 2012)..................................................................................2

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 210  (2010) ....................................................................................................6, 7

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000) ........................................................................................................................2

*Riganian v. LiveRamp Holdings, Inc.*,
    791 F. Supp. 3d 1075 (N.D. Cal. 2025).........................................................................................22

*Rojas v. HSBC Card Servs. Inc.*,
    20 Cal. App. 5th 427 (2018)..........................................................................................................24

*S. Cal. Retail Clerks Union & Food Emps. Joint Pension Tr. Fund v. Bjorklund*,
    728 F.2d 1262 (9th Cir. 1984) .....................................................................................................4, 8

*Sanders v. Am. Broad. Companies, Inc.*,
    20 Cal. 4th 921 (1999)...................................................................................................................16

*Settlegoode v. Portland Pub. Schs.*,
    371 F.3d 503 (9th Cir. 2004) ...........................................................................................................2

*Shulman v. Group W Prods., Inc.*,
    18 Cal. 4th 200 (1998)...................................................................................................................16

*SunPower Corp. v. SolarCity Corp.*,
    2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) .............................................................................7, 8

*Taus v. Loftus*,
    40 Cal. 4th 683 (2007)...................................................................................................................24

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ......................................................................................................................15

v

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,*
   637 F.3d 1047 (9th Cir. 2011) ..................................................................................................23

*United States v. Burlington N. & Santa Fe Ry. Co.,*
   520 F.3d 918 (9th Cir. 2008) ......................................................................................................4

*Wallace v. City of San Diego,*
   479 F.3d 616 (9th Cir. 2007) ...............................................................................................11, 18

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ..................................................................................................................15

*Wesch v. Yodlee, Inc.,*
   2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) ...........................................................................10

*Wiley v. Universal Music Grp., Inc.,*
   2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) ...........................................................................19

*Williams v. DDR Media, LLC,*
   2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ...........................................................................21

*Winarto v. Toshiba Am. Elecs. Components, Inc.,*
   274 F.3d 1276 (9th Cir. 2001) ....................................................................................................1

**Statutes**

Cal. Civ. Code § 1798.120(a) ............................................................................................................7

Cal. Civ. Code § 1798.125(a) ............................................................................................................7

Cal. Civ. Code § 1789.140(v)(1)(F) ..................................................................................................7

Cal. Civ. Code § 3426.1(d) ...............................................................................................................2

Cal. Civ. Code § 3426.7(b) ...............................................................................................................5

Cal. Penal Code § 632(a) .................................................................................................................24

**Other Authorities**

Fed. R. Civ. P. 50(a)(1) .....................................................................................................................4

Restatement (Second) of Torts § 652B ............................................................................................16

## I.  INTRODUCTION

Google's motion provides no basis to overturn the jury's well-supported verdict.

*First*, California's trade-secret law provides no basis for preemption or overturning the verdict. Google failed to preserve this argument, which is meritless. This is not a trade secret case, and the privacy claims have no relation to the California Uniform Trade Secrets Act (CUTSA).

*Second*, the jury's findings that Plaintiffs had a legally protected privacy interest and a reasonable expectation of privacy were amply supported by evidence in the record, including user studies conducted and planned by Google itself. *See* PX-2 at 9; PX-9 at 6.

*Third*, ample evidence proved that Google's conduct was highly offensive. That evidence included false promises by Google and its CEO. Google's own employees characterized Google's disclosures as "intentionally vague" (PX-4 at 2) and "very deceptive" (PX-3 at 1).

*Fourth*, the trial record supports the jury's finding that Google's conduct was intentional. The evidence shows that Google knew what data it was collecting and how it was collecting it, and that Google was doing that after Plaintiffs switched sWAA off.

*Fifth*, the jury's rejection of Google's affirmative defense of consent was also beyond reasonable. Google had the burden of proving this defense, and the jury found that Google failed to meet that burden. The jury was not compelled to accept Google's argument, particularly because the trial record is replete with evidence regarding Google's deceptive disclosures.

## II.  LEGAL STANDARD

A post-verdict motion for judgment as a matter of law may be granted only if "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). The court "may not substitute its view for that of the jury." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001). The court must "weigh the evidence and view all inferences in the light most favorable to the nonmoving party" and "accept the jury's credibility findings consistent with the verdict." *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001). The court must also "review the record as a whole" and "disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

151 (2000). These "demanding" standards require Google to "vault a very high hurdle." *Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 512–13 (9th Cir. 2004).

## III.   ARGUMENT

### A.   There Is No Preemption by the California Uniform Trade Secrets Act.

After the trial record closed, Google for the first time raised a novel affirmative defense: that California's *trade secrets* law (CUTSA) somehow preempts Plaintiffs' *privacy* tort claims and damages.[1] Google did not plead this defense (*see* Dkt. 305), did not raise this issue in the pretrial statement (*see* Dkt. 534), and never mentioned it until filing its Rule 50(a) motion.

To prevail on the CUTSA defense, Google would have to prove, among other things, that Plaintiffs' sWAA-off data qualifies as a "trade secret." To do *that*, Google would have to prove that this data "[d]erives *independent economic value*, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use." Cal. Civ. Code § 3426.1(d) (emphasis added). That is a "largely factual" inquiry. *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 505 (2013) ("the determination of whether a claim is based on trade secret misappropriation is largely factual"). If a plaintiff's "claim is based on confidential information other than a trade secret, it is not preempted." *PQ Labs, Inc. v. Yang Qi*, 2012 WL 2061527, at *5 (N.D. Cal. June 7, 2012). Because Google did not timely raise CUTSA, there is no trial record on this issue. There are no expert opinions and there are no jury findings regarding whether sWAA-off data qualifies as a "trade secret" as defined by CUTSA.

### 1.   Google Forfeited Any CUTSA Preemption Defense.

Any CUTSA defense was forfeited. "Preemption is an affirmative defense." *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1289 (9th Cir. 2021). This is true even though it is often asserted on a motion to dismiss for failure to state a claim. *See Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1224 (9th Cir. 2005) (affirming dismissal "for failure to state a claim" because

---

[1] Although courts commonly call this "preemption," the California Supreme Court has indicated that the precise term for a *state* statute's foreclosure of a common-law remedy is "displacement." *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 247 n.5 (2007). "Technical[]" niceties aside, the substance is the same. *Id.* In either case, the defendant must prove that a statute (federal in the case of preemption, state in the case of displacement) bars the plaintiff's claim.

claim was preempted). Affirmative defenses, including preemption, are forfeited if not timely asserted. *See Popejoy v. Hannon*, 37 Cal. 2d 159, 173–74 (1951) (defendant bears burden to prove "affirmative defense" that worker's compensation statute's provision displaced plaintiff's common-law claims); *Demroff v. State*, 152 F.3d 924 at *2 (9th Cir. 1998) (unpublished) (defendant forfeited defense that worker's compensation law displaced common-law claims).

Any CUTSA defense should have been explicitly stated in Google's answer. *Marine Lumber Co. v. Tracy*, 2024 WL 5443163, at *3 (D. Or. Dec. 2, 2024) (defendant waived Oregon Uniform Trade Secrets Act preemption defense by not pleading it or including it in pretrial order); *Finmeccanica S.p.A. v. Gen. Motors Corp.*, 2008 WL 11336141, at *5 (C.D. Cal. Dec. 17, 2008) (CUTSA preemption "is an affirmative defense which ordinarily must be raised in an answer or it is waived"); *Convolve, Inc. v. Compaq Comp. Corp.*, 2006 WL 839022, at *5 (S.D.N.Y. Mar. 31, 2006) (same).[2] Google implicitly acknowledged as much: it *did* plead preemption by a *different* statute, the Children's Online Privacy Protection Act. Dkt. 305 at 42. But Google never pleaded that *CUTSA* preempts Plaintiffs' claims. And because Google never timely pleaded any CUTSA preemption defense, CUTSA was never at issue amongst the parties.

Even if Google's failure to *plead* the CUTSA defense in its answer could be forgiven (and it can't, given the prejudice), Google's failure to include the defense in the pretrial order would still be inexcusable. The California Court of Appeal's unpublished decision in *PHL Associates, Inc. v. Superior Court of Yolo County*, does not excuse Google's forfeiture. 2020 WL 4012763 (Cal. Ct. App. July 16, 2020). That decision applied California rules; it expressly stated that *federal* rules are different. In *federal* court, "preemption … cannot be raised for the first time after trial." *Id.* at *12. The *PHL* court also expressly distinguished circumstances where, as here, the defendant attempts to raise the issue after the trial record is closed. *Id.* at *13. And it wrongly suggested that

---

[2] The courts in *Finmeccanica* and *Convolve* permitted defendants to assert this defense during summary judgment briefing, at a time when the plaintiffs could supplement the summary judgment record, because defendants' failure to plead it was justified and because plaintiffs were not prejudiced. *See Finmeccanica*, 2008 WL 11336141, at *5; *Convolve*, 2006 WL 839022, at *5. None of those circumstances are present here.

an affirmative defense cannot give rise to a motion to dismiss for failure to state a claim. *Id.* at *11–12. Google's remaining cases rely on the same faulty logic or are unreasoned entirely.[3]

"[P]arties have a duty to advance any and all theories in the pretrial order." *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1077 (9th Cir. 2005). To preserve a CUTSA defense, Google needed to "put forward [its] position in the pretrial statement in a manner sufficient to put [Plaintiffs] on notice and allow the trial court to consider its merits." *United States v. Burlington N. & Santa Fe Ry. Co.*, 520 F.3d 918, 934 n.16 (9th Cir. 2008). "[I]ssues not preserved in the pretrial order have been eliminated from the action." *S. Cal. Retail Clerks Union & Food Emps. Joint Pension Tr. Fund v. Bjorklund*, 728 F.2d 1262, 1264 (9th Cir. 1984); *see also Demroff*, 152 F.3d at 924 (defendant waived defense that plaintiff's claim was displaced by state statute by "fail[ing] to preserve the issue in the parties' joint pretrial conference order"); *Apple, Inc. v. Samsung Elecs.*, 67 F. Supp. 3d 1100, 1116 (N.D. Cal. 2014) (eliminating defenses omitted from pretrial statement).

Because Google failed to mention CUTSA in the pretrial order, Plaintiffs had no opportunity to build a trial record and the jury was not asked to make findings regarding whether sWAA-off data constitutes a trade secret. For that reason, Google cannot now be heard to raise the issue under Rule 50, since Rule 50 only provides for any relief "[i]f a party has been fully heard on an issue during a jury trial." Fed. R. Civ. P. 50(a)(1). Here, *no party* was "heard" on CUTSA during the trial, thanks to Google's failure to timely raise the defense.

It is hard to imagine a clearer example of impermissible "sandbagging." *Hadley v. Kellogg Sales Co.*, 2019 WL 3804661, at *15 (N.D. Cal. Aug. 13, 2019). Had Google timely raised this issue, Plaintiffs would have tailored their "strategy and resource allocation decisions" to address it with this litigation and with evidence at trial. *Id.* at *11. Google's untimely disclosure of a CUTSA defense prevented Plaintiffs from doing that. The CUTSA defense was forfeited.

---

[3] *See Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1054 (D. Ariz. 2010) (holding that defendant could raise unpleaded preemption defense on summary judgment because "the defense that the Plaintiffs fail to state claims upon which relief can be granted" is not subject to waiver); *Gaedeke Holdings VII, Ltd. v. Mills*, 2014 WL 347629, at *3 (W.D. Okla. Jan. 30, 2014) (holding without explanation or authority that displacement under the Oklahoma trade-secret statute is unlike federal preemption and cannot be waived).

### 2. CUTSA Does Not Preempt Plaintiffs' Constitutional Claim (Invasion of Privacy).

Even if it were not forfeited, Google's CUTSA defense also fails as a matter of law. CUTSA cannot preempt Plaintiffs' constitutional claim for invasion of privacy, because the "California Constitution trumps any conflicting provision of" a California statute. *In re Marriage of Steiner & Hosseini*, 117 Cal. App. 4th 519, 527 (2004). Google in a footnote asserts that damages are unavailable for the constitutional claim (Mot. at 6 n.5), but "'[a]rguments raised only in footnotes . . . are generally deemed waived' and need not be considered." *Holley v. Gilead Scis., Inc.*, 379 F. Supp. 3d 809, 834 (N.D. Cal. 2019) (quoting *Estate of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014)). In any event, Google is wrong. Google's footnote relies on inapplicable decisions holding that *sovereign* defendants are immune from money damages. *See Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 602 (N.D. Cal. 2021) (distinguishing such cases). Google is not a sovereign and does not enjoy sovereign immunity from paying money damages for its violations of California's constitution. *See id.* (denying private defendant's motion to dismiss constitutional claim for invasion of privacy).

### 3. CUTSA Does Not Preempt Plaintiffs' Common-Law Claim (Intrusion Upon Seclusion).

Plaintiffs' common-law claim (intrusion upon seclusion) is saved from preemption by CUTSA's savings clause, which provides that CUTSA "does not affect . . . other civil remedies that are *not based upon misappropriation of a trade secret*." Cal. Civ. Code § 3426.7(b) (emphasis added). "There is no reason to think that the California Supreme Court would construe that language to cover claims that have no relation to trade secrets." *Broidy Cap. Mgmt. LLC v. Muzin*, 2022 WL 1801031, at *4 (D.D.C. June 2, 2022) (refusing to apply CUTSA preemption to a California intrusion upon seclusion claim); *Broidy v. Glob. Risk Advisors LLC*, 2023 WL 6258135, at *13 (S.D.N.Y. Sept. 26, 2023) (same).

Google cites *no* case in which CUTSA was held to preempt a freestanding privacy tort claim like intrusion on seclusion. Google cites *no* case applying CUTSA preemption to consumers' app-activity or browsing data. Instead, *all* of Google's cited cases applied CUTSA to the kinds of proprietary business information that routinely qualify as trade secrets.

5

Plaintiffs' privacy-tort claims implicate "facts distinct from [] facts that support [a] [trade-secret] misappropriation claim." *Angelica Textile Servs., Inc.*, 220 Cal. App. 4th at 506 (no CUTSA preemption). Plaintiffs' claims are not "based entirely on allegations that a trade secret was misappropriated"; Plaintiffs had to prove "far more." *Medipro Med. Staffing, LLC v. Certified Nursing Registry, Inc.*, 2021 WL 387879, at *9 (Cal. Ct. App. Feb. 4, 2021) (no CUTSA preemption). At trial, Plaintiffs proved a reasonable expectation that Google would not collect their data using their devices and that Google's conduct was highly offensive. *See id.* ("fraud-related claims" not preempted by CUTSA, even though those claims involved "taking [plaintiff's information]," because "those claims turn on [defendants'] deception").

Google's primary authority is *Silvaco*—a case that Google grossly overreads as holding that CUTSA preempts "*all claims* 'based on the taking of information that, though not a trade secret, was nonetheless of value to the claimant.'" Mot. at 4 (quoting *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 n.22 (2010)). Not so. Silvaco contended that Intel was using Silvaco's proprietary source code, which had been stolen. Silvaco *affirmatively asserted* that its source code was a "trade secret." That is the *opposite* of this case where Plaintiffs *dispute* that their sWAA-off data meets the CUTSA definition of "trade secret." Silvaco's causes of action against Intel were: (1) trade-secret misappropriation under CUTSA; (2) common-law *conversion* of the source code; and (3) various other torts, *none of which* were privacy torts of the kind at issue here. The *Silvaco* court affirmed summary judgment for Intel on the CUTSA claim because Intel did not knowingly "acquire" or "use" the source code for purposes of CUTSA. *Id.* at 223–30. The court then affirmed dismissal of all the other causes of action as preempted by CUTSA because those other causes of action were predicated on Intel's use of the trade-secret source code. "CUTSA provides the exclusive civil remedy for *conduct falling within its terms*, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.'" *Id.* at 236 (emphasis added) (quoting Cal. Civil Code § 3426.7).

*Silvaco* distinguished a prior decision (*Cenveo*) that had permitted a *conversion* claim to proceed on the theory that the stolen intellectual property, at issue in that case, might not satisfy the CUTSA definition of "trade secret." *Id.* at 239 n.22 (discussing *Cenveo v. Slater*, 2007 WL

6

527720, *3–4 (E.D. Pa. 2007)). The *Silvaco* court held that "'information' cannot be 'stolen' unless it constitutes *property*. And information is not property unless some law makes it so. If the plaintiff identifies no property right outside of trade secrets law, then he has no remedy outside that law, and there is nothing unsound or unjust about holding other theories superseded." *Id.* at 239.

Footnote 22 in *Silvaco* might give this Court some pause if this jury had found that the sWAA-off data was Plaintiffs' "property" and that Google had committed some property-like tort like conversion. But this jury did not hear or decide any claim about data *property*. This Court long ago held that Plaintiffs have no property interest in their sWAA-off data, dismissing Plaintiffs' UCL claim. Dkt. 109 at 17 & n.11. The *privacy-tort* claims that went to the jury did not require Plaintiffs to prove the sWAA-off data was their property. *See* Dkt. 1066 at Instructions 18, 20 (listing elements of the privacy-tort claims). Unlike in *Silvaco*, Plaintiffs are not trying to "create[] a new category of intellectual property." *Silvaco*, 184 Cal. App. 4th at 239 n. 22. (Even if Plaintiffs *had* been asserting a property right, they would have been doing so based on other California statutes; Plaintiffs would have identified a "property right outside of trade secrets law," and would have satisfied page 239 of *Silvaco* on that basis.[4])

Courts have limited *Silvaco* to its facts. *Silvaco* "has no bearing on what conduct constitutes intrusion upon seclusion, a tort that does not require a taking of property." *Broidy*, 2022 WL 1801031, at *3. The language of *Silvaco* on which Google relies (footnote 22) is also "dicta," because in *Silvaco* the plaintiff did *not* assert any privacy-tort claims and did *not* claim that its

---

[4] The California Consumer Privacy Act creates property rights in browsing data. Cal. Civ. Code §§ 1798.120(a), 1798.125(a), 1789.140(v)(1)(F). In the *Brown* case, the court relied on that Act in permitting property-based claims to proceed to trial. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 942 (N.D. Cal. 2023) (plaintiffs stated UCL claim based on web browsing data because "plaintiffs have identified an unopposed property interest" in browsing data "under the California Consumer Privacy Act"). If sWAA-off data were to qualify as property under the California Consumer Privacy Act, then preemption would not apply because in that case Plaintiffs could "show that the [non-trade secret proprietary] information was made property by some provision of positive law" that is "qualitatively different from the grounds upon which trade secrets are considered property." *SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *9 (N.D. Cal. Dec. 11, 2012) (cleaned up) (quoting *Silvaco*). All of this is theoretical, however, since Google forfeited the CUTSA preemption defense long ago and none of these matters were presented to the jury. And regardless, at trial, Plaintiffs proved that the conduct at issue intruded upon their privacy by using their mobile devices. *See* Dkt. 534 at 8 (undisputed that Named Plaintiffs owned their mobile devices).

7

source code was anything other than a trade secret. *Id.* The "rationale" underlying *Silvaco* simply does not apply to privacy torts. *SunPower Corp*, 2012 WL 6160472, at *5 (decision cited by Google, which summarizes *Silvaco*'s "rationale").

Aside from *Silvaco*, some of Google's other cited authorities actually support Plaintiffs. For example, in *Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1119 (S.D. Cal. 2020), a bank sued a former employee for stealing two kinds of information from the bank: (1) "confidential information" about the bank's licensing deals and (2) "nonpublic personal information of [the banks] customers." *Id.* The court ruled that CUTSA preemption only applied to (1) the information about the bank's own licensing deals. The bank's claim based on (2) the personal information of the bank's customers was *not* preempted by CUTSA because it was "more akin to a data breach claim" than "a claim premised on the wrongful taking and use of confidential business and propriety information." *Id*. Here, the at-issue app activity data is similar to (2) the nonpublic customer information; it is unlike (1) the bank's "proprietary" licensing information.

**B.        A Reasonable Jury Could Have Found a Legally Protected Privacy Interest.**

Google's assertion that there is no "legally protected" privacy interest fares no better. Mot. at 8. Google failed to raise this issue in the pretrial statement, Dkt. 534, so the argument is forfeited. *Bjorklund*, 728 F.2d at 1264.

Google's argument also easily fails as a matter of law as to Plaintiffs' common-law intrusion upon seclusion claim. The "legally protected" element would only apply to Plaintiffs' *constitutional* claim, not intrusion upon seclusion. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286–87 (2009) (listing elements of both claims).

Even if Google had not forfeited the argument, and even if the jury had been instructed that one element of Plaintiffs' constitutional claim was that the privacy interest be legally protected, this jury easily would have found that element proved on this trial record. "[C]ourts tend to find this [element] satisfied easily." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 n.10 (N.D. Cal. 2022). Legally protected privacy interests "generally" are of two classes: (1) "interests in precluding the dissemination or misuse of sensitive and confidential information," and (2) "interests in making personal decisions or conducting personal activities without observation,

PLAINTIFFS' OPPOSITION TO GOOGLE'S RENEWED MOTION FOR JMOL
CASE NO. 3:20-CV-04688-RS

intrusion, or interference." *Hill v. NCAA*, 7 Cal. 4th 1, 35 (1994).

The jury (if it had been so instructed) would easily have found a legally protected privacy interest for all class members based on:

- Google's representation that WAA "must be on" and sWAA "must be checked" for Google to collect this app activity data (PX-116 at 1);

- Testimony by Google's CEO before Congress that people could use these controls to decide "whether" Google collected their data (Trial Tr. (Monsees) at 288:10-19; PX-45 (clip report of Mr. Pichai's testimony played to the jury));

- The user study that Google conducted and planned, in which "[a]ll participants expected turning off toggle to stop their activity from being saved" (PX-2 at 20; *see also* PX-9 at 6 (similar "hypothesis" for separate study)); and

- The confidential, personal, and sensitive nature of the information contained in the sWAA-off data collected using Plaintiffs' personal devices and resources.

Google's Firebase SDK is used in nearly all of the top Android apps and most of the top iOS apps. Trial Tr. (Hochman) at 586:4–10. Google collects "event data" from our personal devices, meaning "something you've done on your phone." *Id.* at 596:17–597:1. There are dozens of events, including opening an app, selecting content, and clicking on a new page. *Id.* at 596:17–597:4, 597:24–599:4. Google collects that information from our devices by default, as well as information about the ads users see and click. Trial Tr. (Monsees) at 300:11–301:14; Trial Tr. (Hochman) at 620:17–621:23. The sWAA-off data contains an extremely detailed account of each user's daily activities. *See* Trial Tr. (Hochman) at 614:18–21, 616:2–14 (partial data Google collected about two people over two months amounted to "a stack of paper 30 stories high"). The information taken by Google is therefore sensitive enough for the law to protect it. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020) ("*Facebook Tracking*") (holding that there may be a reasonable expectation of privacy in a similarly "significant" amount of "surreptitious[ly]" collected internet data).

The jury (if it had been so instructed) could have found Plaintiffs' privacy interests were legally protected even if the jury also believed that the sWAA-off data did not personally identify Plaintiffs. "[I]nformation need not be personally identifying to be private." Dkt. 445 (MSJ Order) at 10; *see also In re Google Referrer Header Privacy Litig.*, 465 F. Supp. 3d 999, 1009–10 (N.D. Cal. 2020) (same); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 923–24, 940 n.39 (N.D. Cal. 2023)

9

(plaintiffs may have concrete injury and a reasonable expectation of privacy even in data that is allegedly anonymized because Google collected the data "without consent"); *Wesch v. Yodlee, Inc.*, 2021 WL 1399291, at \*3 (N.D. Cal. Feb. 16, 2021) (similar). Google cites *Popa*, but that decision said nothing whatsoever about "de-identified" data. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025).

Alternatively, the jury (if it had been so instructed) could have found a legally protected interest based on the ample evidence demonstrating that Google *was* able to identify Plaintiffs using the sWAA-off data. Google's own lawyers repeatedly refer to the data as "pseudonymous," (i.e., "pseudo"-anonymous), because it is in fact identifiable. *E.g.*, Dkt. 383 at 7. Google saved this sWAA-off data with "unique personal identifiers" that "identify that phone and the person who's carrying it," which information Google defined as "personal information." Trial Tr. (Hochman) at 596:17–597:13; Trial Tr. (Ganem) at 1277:19–1278:21; PX-72 (Google Privacy Policy) at 16 (defining "personal information" to include "unique identifiers tied to the [] device you're using"). Google also maintained a table identifying the Google accountholders who owned many of the devices from which sWAA-off data was taken. Trial Tr. (Black) at 1740:18–1742:6. Google can use the information it has to "link device ID and other sWAA-off data to, for example, a user's email address." Trial Tr. (Hochman) at 632:13–633:8, 738:22–739:4. The linkages are also made available by data brokers. Trial Tr. (Black) at 1736:19–1737:4.

It is no defense that Google may not have put all "puzzle pieces" together. Mot. at 22. Google made that argument to the jury and they rejected it. Trial Tr. 1135:5–15 (Ganem). These puzzle pieces *are* collected together in Google's logs, which can be queried for data relating to Plaintiffs' personal devices. *See* Trial Tr. (Black) at 1705:17–25, 1772:12–1773:10. The California Supreme Court has also held that a defendant can intrude on a reasonable expectation of privacy merely by obtaining the *means* to collect private information. *See Hernandez*, 47 Cal. 4th at 288–294 (installation of hidden camera capable of seeing into plaintiff's "semi-private" office "clearly" supported claim even though defendant "never viewed or recorded plaintiffs inside their office").

10

**C.**     **The Jury's Finding that Plaintiffs had a Reasonable Expectation of Privacy is Well Supported by the Evidence.**

The jury found that "Plaintiffs had an objectively reasonable expectation of privacy." Dkt. 666, at Instrs. 18 & 20. That finding was amply supported by evidence.

**1.**     **The Jury Had Sufficient Evidence that Plaintiffs Had an Expectation of Privacy.**

The jury heard evidence that: (1) all Plaintiffs were shown similar disclosures by Google promising them that Google would not collect or save their sWAA-off data; (2) all Plaintiffs chose to have sWAA "off"; and (3) that Google's user study indicated that "all participants" in that study expected that Google would not save sWAA-off data.

Taken together, these three categories of evidence were more than sufficient for a reasonable jury to find, as this jury did, that all "Plaintiffs had" an expectation of privacy. Google's quibbles and counterarguments come nowhere close to meeting the very high standard that Rule 50 sets. "The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007) (reversing judgment as a matter of law because "we cannot say that the evidence permits only a conclusion that is contrary to the jury's verdict").

**a.  Google's Disclosures**

First, Google's disclosures demonstrated that Plaintiffs had an expectation of privacy in their sWAA-off data. These disclosures are the "critical fact" in demonstrating Plaintiffs' expectations of privacy. *Facebook Tracking*, 956 F.3d at 603 ("the critical fact [for the reasonable expectation of privacy element] was that the online entity represented to the plaintiffs that their information would not be collected, but then proceeded to collect it anyway").

Page 1 of the Google Privacy Policy promised class members that, "across our services, you can adjust your privacy settings to *control what we collect* and how you information is used." PX-72 (emphasis added). The very same page defines "Google services" to include "products that are integrated into *third-party apps*" including Google's "ads" and "analytics" services. *Id.* (emphasis added). The Privacy Policy invited class members to exercise that control by using Google's "Privacy controls," with a hyperlink to the "Activity Controls" page (*id.* at 8), where

11

users could toggle "off" WAA and sWAA, PX-84 ("Activity controls" page). This "Activity controls" page informed class members that WAA and sWAA "saves your activity on Google sites and apps" as well as "activity from sites, *apps*, and devices that use Google services." This page also included a "Learn more" hyperlink to the WAA Help Page, which promised class members that WAA "must be on" and sWAA "must be checked" "to let Google save" "information about their "activity" on "[s]ites and apps that use Google services, including data that apps share with Google." (PX-116).

The reasonableness of the jury's finding—that Google's disclosures created an expectation of privacy in their sWAA-off data—is confirmed by statements from Google's own engineers. Chris Ruemmler wrote that Google's statements on the WAA Help Page (PX-116) "don't accurately describe what happens when WAA is off," creating a "real problem" that had to be addressed. PX-3 at 3. Mr. Ruemmler likewise wrote that the "Activity controls" page (PX-84) would cause "the user [to] ha[ve] a false sense of security that their data is not being stored at Google." PX-3 at 1. Even Mr. Ruemmler "didn't realize Google actually stored all of [his] activity even if those controls were off." *Id.* The jury could conclude that ordinary users did not realize this, either.

Google's reliance on *Hammerling* is (again) misplaced, including for the reasons this Court articulated at summary judgment. Mot. at 14 (citing *Hammerling v. Google, LLC*, 2024 WL 937247, at *1 (9th Cir. Mar. 5, 2024)); Dkt. 445 (MSJ Order) at 9-10. The *Hammerling* panel held that Google's general privacy policy discloses that Google may collect third-party app-activity data, but the "plaintiffs in th[at] case[] had not argued that [] Google had service-specific privacy policies [i.e., sWAA] that could reasonably be read to say the opposite of what its general privacy policies disclosed." *Calhoun v. Google*, LLC, 113 F.4th 1141, 1149 (9th Cir. 2024) (distinguishing *Hammerling*). Here, "[a]s in *Calhoun*, Google provides Plaintiffs with several disclosures, ranging from general privacy disclosures in its PP to more specific disclosures surrounding the WAA/sWAA buttons." Dkt. 445 at 9 (relying on *Calhoun* to distinguish *Hammerling*). These "more specific [sWAA] disclosures" (*id.*) contain "affirmative statement[s]" that Google "would not receive information" from sWAA-off users, *Calhoun*, 113 F. 4th at 1149.

12

*Hammerling* otherwise supports Plaintiffs. *Hammerling* construed the phrase "Google services" in the Privacy Policy to cover "third-party apps." 2024 WL 937247, at *1. That holding supports Plaintiffs' reliance on the following statement in Google's Privacy Policy: "across *our services*, you can adjust your privacy settings to control what we collect and how your information is used." PX-72 at 1 (emphasis added). As this Court explained at summary judgment: "Google's disclosures concerning the sWAA settings state that it governs a user's activity 'on sites, apps, and devices that use Google services'—language almost identical as that in *Hammerling—to describe data that Google will not save when sWAA is off*." Dkt. 445 at 10 (emphasis added).

Google of course reads these disclosures more narrowly as referring only to limitations on what "data saved to a user's Google Account." Mot. at 15. But the jury was not required to accept Google's narrow reading. As this Court explained at summary judgment, "a reasonable juror could be convinced by either party's argument regarding the sWAA setting and Google's PP." Dkt. 445 at 15; *see also* Dkt. 109 at 8 (denying Google's motion to dismiss in substantial part, including because "the concept of a 'Google Account' is, at best, nebulous"). Trial revealed that Google internally described the concept of a Google Account as "intentionally vague" (PX-4 at 2).

Even if a juror or class member *had* accepted Google's narrow reading of what these disclosures meant,[5] that same juror could reasonably have concluded that users would still have expected that Google would have refrained from collecting and saving at least their personal information. Google defined "[p]ersonal information" to include unique identifiers for the user's device or app, views and interactions with content and ads, activity on non-Google apps, and other data that can be reasonably linked to personal information.  PX-72 (Privacy Policy) at 16–17, 22.

A reasonable juror could conclude Google intruded on users' expectations of privacy, even if those expectations were as Google claimed because Google did collect personal information. The sWAA-off data that Google collected included information about, at a minimum, interactions with content and ads and the users' activity on non-Google apps. *See* Trial Tr. (Monsees) at 319:24–320:6; Trial Tr. (Ganem) at 1193:5–8; Trial Tr. (Heft-Luthy) at 1060:22–25. It is also

---

[5] Google argued to the jury that the import of the "Google Account" phrase is that users only have control over whether Google collects their "personal information." Trial Tr. 247:18–23 (Opening).

13

uncontested that Google also collects data from sWAA-off users regarding interactions with ads. *See* PX-3 at 3; Trial Tr. (Monsees) at 300:11–301:1; Trial Tr. (Ruemmler) at 1463:13–1464:13. And there is uncontroverted evidence that Google saved sWAA-off data with unique identifiers tied to class members' devices and apps. *See* Trial Tr. (Hochman) at 596:17–597:13, 741:15–742:19; Trial Tr. (Ganem) at 1277:19–1278:21; Trial Tr. (Black) at 1772:12–15. As discussed above, the jury also heard evidence that Google *could* link all this data to Plaintiffs' names and email addresses. *See supra* § III.B. *See also* PX-11 (Google engineer describing the "joinability risks" of WAA-off data, including Google's "ability to link app events collected by GA4F [Google Analytics for Firebase] to GAIA ID [Google Account identifier] even if end users turn off WAA").

Finally, Google claims that the disclosures are at most "ambiguous" and that an ambiguous disclosure cannot give rise to a reasonable expectation of privacy. Mot. at 15. But Google told the jury the opposite: its lawyers said that its disclosures were "very clear" and that "Google puts the important facts right up front." Trial Tr. 1918:4–8, 1921:9–14 (closing).

### b. Plaintiffs' Choices to Switch sWAA Off

The jury also heard evidence that all Plaintiffs had sWAA switched "off." Trial Tr. (Santiago) at 491:15–21; Trial Tr. (Rodriguez) at 769:21–25; PX-403, PX-404, PX-405 (Google's records showing the number of accounts with sWAA "off"); *see also* Trial Tr. (Opening) at 243:15–16 (Google's counsel conceding that "every class member in this case had sWAA off"). This was not a default setting; every class member made the decision to have this toggle turned "off." Trial Tr. (Monsees) at 270:13–271:7; (Hoffman) at 1411:21–24. By so doing, every Plaintiff indicated his or her expectation that Google would keep the promises made in its disclosures.

### c. Google's User Study

The third piece of evidence the jury heard is Google's own study of its users' privacy expectations. Google researched what real "users expect turning WAA off to mean." PX-2 at 6. In that study, "*[a]ll participants* expected turning [the] WAA toggle off to stop saving their activity." *Id.* at 9 (emphasis added). Google cannot now challenge the reliability of this study based on some statistics textbooks that it chose not to offer to the jury during trial. *See* Opp. to Req. for Jud. Notice. The trial record contains testimony from Google's own witness, Mr. Monsees, who worked

14

on this study. He testified that nobody had questioned the study's reliability before this lawsuit began. Trial Tr. (Monsees) at 327:11–14. He also agreed that the participants in the study included "a fair cross-section of people" of varying ages, genders, and knowledge of tech issues. *Id.* at 326:15–23. And he trusted that the woman who ran the study "follow[ed] whatever best practices Google had." *Id.* at 327:4–10.

Because the evidence showed that Google itself created and used this study, in the ordinary course of its business, this study is nothing like the evidence in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Nor is *Dukes* apposite in any event, since that case concerned the propriety of class certification. As the Court later made clear in *Tyson Foods*, the question at this stage (after a jury has actually found a classwide expectation of privacy) is the Rule 50 standard, namely, whether "no reasonable juror could have believed" that Plaintiffs had an expectation of privacy. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 459 (2016).

In opposition to all this evidence—Google's disclosures, Plaintiffs' choices, and Google's own study of user expectations—Google can muster only quibbles and counterarguments that come nowhere close to meeting the Rule 50 standard. Professor's Hoffman's lecture on "progressive disclosures" (Mot. at 5 n.9) fell apart on cross-examination when she was impeached with deposition testimony confirming that, at the time of her deposition and after reviewing Google's disclosures, she still had no clue whether Google saved sWAA-off data. Trial Tr. (Hoffman) at 1398:24–1399:15; PX-414 at 82:01–82:12 (Hoffman impeachment clips). The so-called "are you sure" pop-up disclosure (Mot. at 15) only reinforced Plaintiffs' position regarding the expectation of privacy because that pop-up disclosure says nothing about Google collecting *third*-party app activity data. G0574.R2 at 22. And contrary to Google's assertion, the jury heard evidence from Named Plaintiffs themselves that they did indeed "conduct themselves in a manner consistent with the claimed expectation of privacy." Mot. at 16–17. Google misconstrues Named Plaintiffs' testimony to suggest otherwise.[6]

---

[6] To create a misimpression that Mr. Santiago willingly shared relevant data with Google, Google cites testimony about his "searches on [] YouTube", a *first*-party Google owned-app, which is *not*

PLAINTIFFS' OPPOSITION TO GOOGLE'S RENEWED MOTION FOR JMOL
CASE NO. 3:20-CV-04688-RS

## 2.    Google's Heightened Evidentiary Standard—Which Demands Evidence of Each Class Member's Individual Beliefs—Is Wrong.

Google now contends that the law requires a much higher evidentiary standard, and that Plaintiffs were required to come forward with individualized evidence of each class member's subjective beliefs about the effect of turning sWAA "off." That contention fails, first and foremost, because Google never asked for a jury instruction on this heightened standard and therefore cannot now fault the jury for (supposedly) not applying that standard.

Even if Google *had* asked for an instruction like this—requiring evidence of each class member's subjective beliefs about the effect of turning sWAA "off"—the Court would have rejected it out of hand because there is no such requirement under California law. *Opperman v. Path, Inc.*, 2016 WL 3844326, at *11 (N.D. Cal. July 15, 2016) ("California law does not require Plaintiffs to prove subjective expectation."); *Brown*, 685 F. Supp. 3d at 941 ("Whether plaintiffs had a reasonable expectation of privacy is an objective inquiry.").

Google's demand for a heightened evidentiary standard is especially meritless with respect to Plaintiffs' claim for intrusion upon seclusion. That common-law tort "has two elements: (1) intrusion into a private place, conversation, or matter, (2) in a manner highly offensive to a reasonable person." *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998); *see also* Restatement (Second) of Torts § 652B (similar). Neither of those elements requires a subjective inquiry into the plaintiff's beliefs. *See Shulman*, 18 Cal. 4th at 234 (reversing decision granting summary judgment in defendant's favor because the "traditional and legally well-established expectation of privacy" in communications with medical providers "could support the conclusion that [the plaintiff] possessed a reasonable expectation of privacy").

---

one of the *third*-party apps at the center of Plaintiffs' claims. Trial Tr. 505:3–5. For Mr. Rodriguez, Google wrongly claims that he agreed to let Target share his data with Google. In fact, Mr. Rodriguez distinguished between Google, on the one hand, and "the other analytics companies" that Target may use, on the other hand, explaining how he "made a deal with Google saying, 'Don't collect data from this specific app or all apps on my phone'"—a deal which "Google should honor." Trial Tr. 843:2–11. Regardless, "[p]rivacy for purposes of the intrusion tort must be evaluated with respect to the identity of the alleged intruder"—here, Google. *Sanders v. Am. Broad. Companies, Inc.*, 20 Cal. 4th 907, 921 (1999). And Mr. Rodriguez did not say he has "no problem" with Google collecting his son's data. Mot. at 16 (citing Trial Tr. 857:21–858:4). He simply acknowledged that he permits his son to use apps.

16

The Ninth Circuit's *Facebook* decision rejected the notion that a heightened evidentiary standard applies. The question is whether "***there exists*** a reasonable expectation of privacy." *Facebook Tracking*, 956 F.3d at 601 (emphasis added). The Ninth Circuit's use of the passive voice reflects its understanding that a defendant's intrusion into the plaintiff's private affairs is actionable regardless of the plaintiff's subjective beliefs. *See id.* at 601–02 ("[T]he relevant question here is whether a user would reasonably expect that [the defendant] would have access to the [at-issue] data," which is determined based on objective and common factors such as "the customs, practices, and circumstances surrounding a defendant's particular activities.").

This does not mean that the expectation of privacy is "free-floating," as Google contends. Mot. at 10. It is a *social* expectation: a determination that the place or information is private based on the circumstances. For example, a dressing room is obviously private regardless of any subjective expectation, such as the expectation that someone might be peering under the door. To hold otherwise would set a dangerous precedent, perversely rewarding the worst privacy offenders with immunity from suit precisely *because* of their earned reputation and untrustworthiness.

Google cites no California court holding that a subjective expectation of privacy is an essential element of a claim for intrusion upon seclusion or invasion of privacy. Instead, Google relies on California cases requiring plaintiffs to prove that they "had" a reasonable expectation of privacy, or some similar "formulation." Mot. at 10–11.[7] But that is consistent with a requirement to prove only that the circumstances conferred upon the plaintiff a socially recognized, objectively reasonable expectation of privacy. There is only one explanation for the absence of California authority requiring heightened proof of a plaintiff's subjective beliefs: no such heightened standard exists.

Google relies on *Medical Laboratory Management Consultants v. American Broadcasting Companies, Inc.*, but that case involved claims asserted under the laws of Arizona, not California.

---

[7] *See Hernandez*, 47 Cal. 4th at 286 ("the plaintiff has a reasonable expectation of privacy"); *Hill*, 7 Cal. 4th at 36 ("reasonable expectation of privacy on plaintiff's part"); *Facebook Tracking*, 956 F.3d at 601 (plaintiffs "maintain a reasonable expectation of privacy"). *Garrabrants v. Erhart* is further afield. 98 Cal. App. 5th 486, 500 (2023). It holds this element may involve a "*context-specific* inquiry," not an inquiry into mental state. *Id.*

17

306 F.3d 806 (9th Cir. 2002). Although the court looked to the Restatement for some guidance, its articulation of a "subjective expectation" element was based on a *Nevada* decision that did not apply the Restatement. *See id.* at 813 (citing *PETA v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1279 (Nev. 1995)); *PETA*, 895 P.2d at 1279 (relying for this proposition on *M & R Inv. Co. v. Mandarino*, 748 P.2d 488, 493 (Nev. 1987)).[8]

Even if *Medical Laboratory Management* were an accurate statement of California law (and it is not), then it would still be satisfied in this case because the evidence demonstrated that *every* class member chose to have sWAA turned off, which proves a class-wide expectation of privacy. And that is to say nothing of the import of the clear language of the disclosures, the Plaintiffs' testimony, and Google's internal emails and user studies. In *Medical Laboratory Management*, the defendant won summary judgment by proving that plaintiff's owner did not in fact treat his medical laboratory as a private space off-limits to visitors. In theory, Google could have presented evidence at trial (if such evidence existed) demonstrating that some class members did not in fact expect that their sWAA-off data was private, or that the "off" option for an "on" / "off" button did not mean "off." But Google presented no such evidence, and the jury wouldn't have been required to credit any such evidence even if Google had presented it. *Wallace*, 479 F.3d at 624.

Google also relies on *Hart v. TWC Product & Technology LLC*, but that decision is also inapposite. 2023 WL 3568078 (N.D. Cal. Mar. 30, 2023). The *Hart* plaintiffs asserted only a constitutional claim, not a common-law intrusion on seclusion claim. *Id.* at *1. And the *Hart* court did not adopt a heightened evidentiary standard. It merely denied class certification for lack of any classwide-proof of the class's privacy expectation. Notably, in *Hart*, unlike here, the defendant's "Privacy Policy explicitly disclosed the [data-collection and use] practices at issue." *Id.* at *11.

---

[8] *Medical Laboratory Management* also cited *Kemp v. Block*, 607 F. Supp. 1262, 1264 (D. Nev. 1985), which similarly did not apply the Restatement.

18

**D.      The Jury's Finding That Google's Conduct was Highly Offensive Was Well Supported by the Evidence.**

The determination of whether conduct is "highly offensive" is uniquely within the purview of the jury, which represents a cross-section of the community. *See, e.g.*, *M.H. v. Cnty. Of Alameda*, 2015 WL 894758, at *14 (N.D. Cal. Jan. 2, 2015); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1080 (N.D. Cal. 2016). The evidence was more than sufficient for a reasonable juror to find Google's conduct highly offensive, and Google provides no basis to overturn the jury's finding.

**1.      Plaintiffs Presented Class-Wide Evidence.**

Google's contention that Plaintiffs somehow failed to offer "class-wide evidence" (Mot. at 18) is meritless. Plaintiffs presented evidence establishing, for example, the representations Google made to all class members. *Supra*, at III.C.1.a. That evidence also included the Google survey where "[a]ll participants expected turning off toggle to stop their activity from being saved." PX-2 at 20. That evidence also included admissions regarding how Google's disclosures were "intentionally vague" (PX-4 at 2) and "very deceptive" (PX-3 at 1). The jury also heard from Google employees who confirmed that Google refused to amend its disclosures, continued to collect the data, and uniformly used the data for its own pecuniary gain. *E.g.*, Trial Tr. (Ruemmler) at 1506:3–12; (Heft-Luthy) at 1040:16–19; (Ganem) at 1193:5–17; (Monsees) at 300:11–301:1.

There was no need for Plaintiffs to prove, or for the jury to find, exactly what data Google took from each class member. Plaintiffs did not even need to prove that the data was identifying, or how "pseudo-" was Google's "pseudonymous" data. *See, e.g.*, *In re Google Referrer Header*, 465 F. Supp. 3d at 1009–10 ("information need not be personally identifying to be private"); *Brown*, 685 F. Supp. 3d at 924 (recognizing that collection can be offensive even for purportedly anonymized data). Further, "deceit can be a kind of plus factor in determining whether an action is highly offensive." *Wiley v. Universal Music Group, Inc.*, 2025 WL 3654085, *5 (N.D. Cal. Dec. 17, 2025) (quoting *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021)); *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1036 (N.D. Cal. 2019).

Here, a reasonable juror could find offensiveness based on the type of data Google collected, directly using Plaintiffs' devices. The at-issue data included, uniformly, the device's

19

location, personal identifiers, and other "default" data, including when apps are opened and the screen users viewed in an app. Trial Tr. (Hochman) 596:6–599:4, 600:6–601:6, 687:3–17, 704:6–17, 734:24–735:4, 738:25–739:4. For example, the data Google collected from Mr. Rodriguez's phone during normal usage across a two-month span in 2021 included more than 58,000 (or over 900 daily) events associated with apps that he had installed on his phone. Trial Tr. (Hochman) at 652:9–656:23; *see also* PX-492; PX-493. Dr. Hochman confirmed that this event-level data is collected, copied, and personally identifying such that "Google, upon receiving the data, knows who that user is." Trial Tr. (Hochman) at 658:12–15. Google's own witnesses confirmed this. Trial Tr. (Ganem) 1206:13–20, 1207:17–22; (Black) 1699:1–23, 1733:20–25.

Google's repeated focus on one snippet of Plaintiff Rodriguez's comment about the Target app is just its latest effort to misconstrue Plaintiffs' claims and theories. Mot. at 19. As Plaintiffs have explained, the case is not against Target or some other SDK provider. This case focused on Google's collection of app activity when Google's sWAA toggle was off. Plaintiffs' continued use of their phones is also a red herring, as Google admitted there is no way to stop Google's collection using Plaintiffs' resources, or to delete this data. Trial Tr. (Hochman) at 586:4–10; (Monsees) at 311:22–312:5; (Ganem) at 1214:3–8, 1253:17–25; PX-388 (Miraglia dep. rep.) at 128:21–129:03.

Google's arguments concerning the pseudonymized nature of the data (what Google now relabels as "de-identified") are contrary to the law. *Kryzyzek v. OpenX Technologies, Inc.*, is instructive. There, a data broker tracked consumers across several websites and used that data for pecuniary gain. 2026 WL 206855, at *4 (N.D. Cal. Jan. 27, 2026). In rejecting defendant's arguments about "anonymous" data collection, the court found that "[w]here anonymity is rendered 'functionally meaningless,' lower courts have found 'pseudonymization' arguments unpersuasive." *Id.* (quoting *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1086–87 (N.D. Cal. 2025)); *see also Lewis v. Magnite, Inc.*, 2025 WL 3687546, *9 (C.D. Cal. Dec. 4, 2025) (utilizing data collected in mass can "essentially deanonymize" consumers) (collecting cases).

Google does not cite any case holding that the offensiveness of data collection requires individualized inquiry into the specific types of data collected nor into any other individual issues. Google chiefly relies on cases that Google has cited in its failed bids for summary judgment and

20

decertification, which do not change the analysis here.[9] *Popa v. Microsoft Corp.* and *Williams v. DDR Media, LLC* are also wholly distinguishable. In *Popa*, the court analyzed whether session replay technology, which "[i]n essence . . . helps a business to determine which parts of its website are effective with customers and which are not," invaded the privacy interests of consumers who visited a pet supply website with that technology. 153 F.4th at 786. Importantly, that case involved information about visits to a single website, the plaintiff never expressly rejected the tracking technology, and any data collected was only used by the owner of the website that employed that technology. Here, unlike in *Popa*, the jury found against Google on the basis that it had offered a binary "on-off" button, which did not work as represented. The rationale from *Williams* follows *Popa*, where the collection of data from a single website was "minimal," and the third parties did "no[t] use" the data that had been collected. 2023 WL 5352896, at *5–7 (N.D. Cal. Aug. 18, 2023). By contrast, Google's collection was not minimal, spanned millions of apps, and was used by Google to provide information to third parties for Google's profit, despite offering an on-off button that the Plaintiffs had set to off.

### 2.    Google Intentionally Misled Users.

The Court already ruled that "Plaintiffs presented ample evidence from which a jury could have determined that Google's decision to collect sWAA-off data was highly offensive *because it*

---

[9] Google's reliance on *Hammerling*, *McCoy*, and *London* remain as unpersuasive as it has in past motions practice. As this Court recognized in denying summary judgment, Google in *Hammerling v. Google LLC* had expressly disclosed that it would collect information at issue in that case, and that was not the case here. 615 F. Supp. 3d at 1090; Dkt. 445 at 10. Nevertheless, the *Hammerling* court acknowledged that data collection "is more likely to be 'highly offensive' *where the defendant surreptitiously collects sensitive information even while the plaintiff has logged off and is not even using the defendant's services*.'" 615 F. Supp. 3d at 1090 (cleaned up) (emphasis added). The court in *McCoy v. Alphabet, Inc.* reached a similar result, dismissing the privacy claim because the plaintiff pled only conclusory allegations and, like in *Hammerling*, alleged no affirmative misrepresentations. 2021 WL 405816 at *7 (N.D. Cal. Feb. 2, 2021). In *London v. New Alberton's, Inc.*, the plaintiffs conceded that the data was de-identified and pled only conclusory allegations that defendant inadequately de-identified the data. 2008 WL 4492642 at *4 (S.D. Cal. Sept. 30, 2008). None of that is the case here.

*misled users about its plan to do so*." Dkt. 721 at 16 (emphasis in original). Google's intentional misleading of users supports the jury's finding that Google's conduct was highly offensive.

Surveys "are not required to prove consumers held a false belief communicated by" a defendant's misrepresentations. *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 890 (N.D. Cal. 2016) (Seeborg, C.J.) (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008)). Evidence such as internal documents, deposition testimony, and the inherent meaning of the challenged disclosures themselves are sufficient to submit the case to a jury. *See, e.g.*, *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 713 F. Supp. 3d 660, 672–73 (N.D. Cal. 2024); *Hawkins v. Kroger Co.*, 512 F. Supp. 3d 1079, 1088–89 (S.D. Cal. 2021).

Here, a reasonable juror was entitled to find Google's conduct highly offensive based on the evidence presented, without any additional survey. Google's own user study found that "[a]ll participants expected turning off toggle to stop their activity from being saved." PX-2 at 20. That finding was consistent with other evidence presented at trial. *E.g.*, PX-3 at 2 ("The WAA and other controls imply we don't log the data"); PX-4 at 2 (Google was "intentionally vague"); PX-42 at 1 (Google's "gameable" "goal" was "giving users a *sense* of the system as working to their benefit" but "without actually improving any of the underlying condition"); Trial Tr. (Heft-Luthy) at 1066:11–14 (agreeing "Google was trying to convince its users that they had control over the data that Google collected and used"). Google's arguments regarding these internal documents and testimony (Mot. at 20–21) were presented to the jury, and the jury was entitled to reject those arguments in finding that Google's conduct was highly offensive.

### 3. Google Again Misconstrues The "Puzzle Piece" Testimony.

Google presented a similar argument concerning the "puzzle piece" testimony in its decertification motion. Dkt. 704 at 13. The Court rejected the argument, explaining that it "rests on a constricted view of the Plaintiffs' theory of offensiveness." Dkt. 721 at 16. Undaunted, Google continues to misconstrue the testimony here.

Putting the "puzzle pieces" together is not required to make Google's conduct offensive. Google copied that data to multiple data sources and used the data in ways that render any

pseudonymization "functionally meaningless." *Kryzyzek*, 2026 WL 206855 at *4; *see also Riganian*, 791 F. Supp. 3d at 1086–87 (same); *Lewis*, 2025 WL 3687546 at *9 (same).

Plaintiffs proved (through class-wide evidence) that Google was *capable* of linking class members sWAA-off data to their identities. *See, e.g.*, Trial Tr. (Hochman) at 738:25–739:4; 600:6–601:6. Google's witness Mr. Ganem confirmed that the sWAA-off data is "reidentifiable." Trial Tr. at 1205:2–19; *see also* G0929. Google's technical expert Dr. Black also admitted that "obviously it's possible" to connect the data. Trial Tr. at 1773:1–10. This capability to link data to identities is neither hypothetical nor speculative—Google *did* link sWAA-off data to identities *when it produced Plaintiffs' data in this case*. That is why Google concedes that the data is, at best, only pseudo-anonymous.

Moreover, there was evidence regarding how Google in fact puts those pieces together. That included Googe building larger pictures with conversion tracking, machine learning models, and "product development and improvement." Trial Tr. (Hochman) at 617:5–22, 631:6–632:12. Google's own witnesses confirmed Google uses the data for these bigger-picture purposes. Trial Tr. (Monsees) 300:11–301:14 (confirming Google monetizes sWAA-off data); (Ganem) 1195:14–1198:6 (confirming sWAA-off data "has a lot of value to Google" including to "inform machine learning models," boost "analytics conversions," and "enhance Google's products"); (Langner) 1340:4–9 (confirming Google uses sWAA-off data for conversion measurement). Google's witnesses even claimed that if it were to stop collecting the puzzle pieces and using them for its own financial gain, Google might "go out of business." Trial Tr. (Ruemmler) at 1463:13–18.

Google's conduct is a far cry from *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.* (Mot. at 22), which involved a retaliation claim, and where summary judgment was granted because that plaintiff's scant evidence "establishe[d] only that th[e] set of events could conceivably have occurred [but] does not give rise to a reasonable inference that it did in fact occur" and "would require undue speculation." 637 F.3d 1047, 1061 (9th Cir. 2011). Nor does Google's reliance on *In re Yahoo Mail Litigation* fare any better (Mot. at 22), where the court found as conclusory plaintiffs' allegations that emails were private without any support, and that users had consented to the challenged practice based on the "clarity of the language in th[e] disclosure." 7 F. Supp. 3d

23

1016, 1029 (N.D. Cal. 2014). Here, by contrast, all class members had sWAA set to "off" where Google uniformly represented that WAA "must be on" and sWAA "must be checked" for Google to collect this data (PX-116 at 1), and Google's employees admitted internally that Google's disclosures were "intentionally vague" (PX-4 at 2) and "very deceptive" (PX-3 at 1). The evidence established the highly offensive nature of Google's conduct, which was confirmed by the jury.

**E.      The Jury Reasonably Found That Google's Intrusion Was Intentional.**

There is no "intent" requirement for the invasion of privacy claim, and Google errs by arguing otherwise. Mot. at 22 (arguing that Plaintiffs must prove "intent" "[f]or both [] Claims"). Only the intrusion upon seclusion claim has an "intent" requirement. *Facebook Tracking*, 956 F.3d at 601 (listing the elements of each claim); Dkt. 666 at Instruction Nos. 18, 20 (listing different elements for each claim). Google did not object to these instructions; rather, Google agreed the constitutional claim is "distinct" from the common law claim, including because "intentional intrusion" is "not an element for a constitutional Invasion of Privacy claim." Dkt. 595 at 51.

For intrusion upon seclusion, there was no requirement that Plaintiffs prove Google had the "intent to invade privacy." Mot. at 23. "Intent is not limited to consequences which are desired." *Marich v. MGM/UA Telecomms, Inc.*, 113 Cal. App. 4th 415, 422 (2003) (cleaned up) (addressing intrusion upon seclusion claim). That Google purposefully collected class members' sWAA-off data is sufficient for this element. *Rojas v. HSBC Card Services Inc.*, 20 Cal. App. 5th 427 (2018) is instructive.[10] There, the appellate court ruled that a reasonable jury could find the defendant "had the requisite intent" to record confidential phone calls because the defendant "was purposefully recording all of the calls" and "there [was] nothing inadvertent or momentary" about these recordings. *Rojas*, 20 Cal. App. at 436. Here, likewise, Google purposefully collected the data, and there was nothing inadvertent or momentary about Google's conduct.

While not required, the evidence also supports a finding that Google had the "intent to invade privacy." Mot. at 23. At summary judgment, this Court explained how a jury could find

---

[10] *Rojas* addressed the meaning of an "intentional" act under California Penal Code § 632(a), which courts have construed as synonymous with an "intentional" act for the common law intrusion claim. *E.g.*, *Marich*, 113 Cal. App. 4th at 421; *see also* Cal. Penal Code § 632(a) (proscribing the "intentional[]" recording of a confidential communication).

24

that "Google's internal statements reflect a conscious decision to keep the WAA disclosures vague," thereby "satisfying the intent element of the tort claim." Dkt. 445 at 12. The jury considered evidence demonstrating that Google's sWAA disclosures are "intentionally vague" (PX-4 at 2) and "very deceptive" (PX-3 at 1). A reasonable juror could easily find that Google "intentionally misrepresent[ed]" its data-collection practices—a finding that would establish an actionable intrusion on seclusion. *Taus v. Loftus*, 40 Cal. 4th 683, 740 (2007) (case cited by Google, at 22);[11] *see also Marich*, 113 Cal. App. 4th at 422 ("If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result."). Finally, the evidence undermines Google's argument that it believed "class members had given permission" (Mot. at 23), including the Google-commissioned study which found that "[a]ll participants expected turning off toggle to stop their activity from being saved," PX-2 at 20. *See also* PX-10 (Google employee writing that "teams should not use user data at all if WAA is off").

**F.    The Jury Reasonably Rejected Google's Consent Defense.**

Consent is an affirmative defense that Google had the burden to prove. Dkt. 666 at Instruction No. 21. Google needed to prove that it "explicitly notified" Plaintiffs of the "particular" data collection and use. *Id.* Consent is "evaluated from the perspective of an objectively reasonable user reading Google's disclosures." *Id.*; *see also Calhoun*, 113 F.4th at 1149 (addressing consent defense). The jury reasonably rejected this defense based on the evidence. That evidence includes Google's disclosures as well as admissions by Google employees that support Plaintiffs' interpretation of the disclosures. *E.g.*, PX-6 at 49 ("At Google we still seem to believe in that fantasy that users agreed to this."); Section III.D.1–2, *supra*. Google's reliance on *Hammerling* is misplaced for the same reasons described above. Section III.C.1.a, *supra*.

**IV.    CONCLUSION**

Google's motion should be denied in its entirety.

---

[11] *Zayas v. Ortega*, 2018 WL 11227735, at *19 (N.D. Cal. Aug. 10, 2018), which Google cites, is far afield. *Zayas* addressed a Section 1983 claim against a police officer for an improper search, and the court granted summary judgment to the officer because the plaintiff admitted the officer "was just trying to do his job." *Id.* at *19. Plaintiffs here offered no analogous admission.

25

Dated:  April 27, 2026

Respectfully submitted,

By: /s/ Steven Shepard

David Boies (admitted *pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

James Lee (admitted *pro hac vice*)
jlee@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Alison L. Anderson, CA Bar No. 275334
alanderson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (813) 482-4814

Bill Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley
afrawley@susmangodfrey.com
Ryan Sila
rsila@susmangodfrey.com
Xiaoming Wang (*pro hac vice*)

26

PLAINTIFFS' OPPOSITION TO GOOGLE'S RENEWED MOTION FOR JMOL
CASE NO. 3:20-CV-04688-RS

twang@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY  10001
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*

27