COOLEY LLP
MICHAEL A. ATTANASIO (151529)
(mattanasio@cooley.com)
BENEDICT Y. HUR (224018)
(bhur@cooley.com)
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
EDUARDO E. SANTACANA (281668)
(esantacana@cooley.com)
JONATHAN PATCHEN (237346)
(jpatchen@cooley.com)
ARGEMIRA FLÓREZ (331153)
(aflorez@cooley.com)
NAIARA TOKER (346145)
(ntoker@cooley.com)
HARRIS MATEEN (335593)
(hmateen@cooley.com)
THILINI CHANDRASEKERA (333672)
(tchandrasekera@cooley.com)
ISABELLA MCKINLEY CORBO (346226)
(icorbo@cooley.com)
CHELSEA HU (357212)
(chu@cooley.com)
MICHAEL B. MORIZONO (359395)
(mmorizono@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA  94111-4004
Telephone:     (415) 693-2000
Facsimile:      (415) 693-2222

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANIBAL RODRIGUEZ, et al. individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:20-CV-04688-RS<br><br>**GOOGLE LLC'S REPLY IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (FRCP 50(B))**<br><br>Dept:      3, 17th Fl.<br>Judge:     Hon. Richard Seeborg<br><br>Date Action Filed: July 14, 2020<br>Trial Date: August 18, 2025 |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION .......................................................................................................... 1

II.  ARGUMENT ............................................................................................................... 1

    A.  Plaintiffs' Damages Are Displaced by CUTSA ............................................... 1

        1.  CUTSA Displaces Plaintiffs' Actual Damages Theory .......................... 1

        2.  Google Did Not Waive or Forfeit CUTSA Displacement ........................ 4

    B.  Plaintiffs Failed to Establish a Class-Wide Privacy Interest ............................ 7

    C.  Plaintiffs Failed to Establish a Reasonable Expectation of Privacy ..................... 8

        1.  Plaintiffs Cannot Establish a Subjective Expectation of Privacy Class-Wide ............................................................................................. 8

        2.  Any Expectation of Privacy was Objectively Unreasonable ................... 11

    D.  Plaintiffs Failed to Establish "Highly Offensive" Conduct ............................... 12

        1.  Plaintiffs Failed to Present Class-Wide Evidence of Offensiveness ......... 12

        2.  Evidence that Google Misled Users is Insufficient ................................ 13

        3.  The "Puzzle Piece" Theory Remains Insufficient .................................. 13

    E.  Plaintiffs Failed to Establish Intent ................................................................ 14

    F.  Affirmative Consent Precludes Liability ......................................................... 15

III.  CONCLUSION ............................................................................................................ 15

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**GOOGLE'S REPLY ISO RENEWED JMOL**
**3:20-CV-04688-RS**

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*389 Orange Street Partners v. Arnold*,
179 F.3d 656 (9th Cir. 1999)...................................................................................... 6

*Angelica Textile Servs., Inc. v. Park*,
220 Cal. App. 4th 495 (2013) ................................................................................. 2, 5

*In re Basher*,
2002 WL 31856712 (E.D. Pa. Dec. 3, 2002) ............................................................ 6

*Boyle v. United Techs. Corp.*,
487 U.S. 500 (1988)................................................................................................... 8

*Brannan v. United Student Aid Funds, Inc.*,
94 F.3d 1260 (9th Cir. 1996)..................................................................................... 4

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ........................................................................... 11, 15

*Cleghorn v. Blue Shield of Cal.*,
408 F.3d 1222 (9th Cir. 2005).................................................................................... 5

*Cohen v. ConAgra Brands, Inc.*,
16 F.4th 1283 (9th Cir. 2021) .................................................................................... 5

*In re Dargahi*,
2010 WL 6452906 (9th Cir. BAP Oct. 21, 2010) ..................................................... 6

*Erhart v. BofI Holding, Inc.*,
612 F. Supp. 3d 1062 (S.D. Cal. 2020)................................................................... 2, 3

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)............................................................................. 8, 9, 14

*Firetrace USA, LLC v. Jesclard*,
800 F. Supp. 2d 1042 (D. Ariz. 2010)....................................................................... 5

*Freeman v. Chevron Oil Co.*,
517 F.2d 201 (5th Cir. 1975)...................................................................................... 4

*Gaedeke Holdings VII, Ltd. v. Mills*,
2014 WL 347629 (W.D. Okla. Jan. 30, 2014), *aff'd sub nom., Gaedeke
Holdings VII Ltd. v. Baker*, 683 F. App'x 677 (10th Cir. 2017)............................... 5

*Garrabrants v. Erhart*,
98 Cal. App. 5th 486 (2023) ...................................................................................... 9

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Glasser v. Berzner*,
2022 WL 22870181 (C.D. Cal. Sep. 6, 2022) .................................................................. 6

*H&H Pharms., LLC v. Chattem Chems., Inc.*,
2024 WL 1734134 (9th Cir. Apr. 23, 2024) ................................................................... 5

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) .............................................................. 1, 11, 15

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........................................................................ 12

*Hart v. TWC Prod. and Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ........................................................................... 3

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ......................................................................................... 9, 14

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ............................................................................................... 9, 14

*Hill v. Workday, Inc.*,
2024 WL 3012802 (N.D. Cal. June 14, 2024) ................................................................. 3

*HTS, Inc. v. Boley*,
954 F. Supp. 2d 927 (D. Ariz. 2013) ............................................................................. 5

*Kennan v. Dow Chem. Co.*,
717 F. Supp. 799 (M.D. Fla. 1989) ............................................................................... 4

*Kryzyzek v. OpenX Technologies, Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) ......................................................................... 12

*Loop AI Labs Inc v. Gatti*,
2015 WL 5158461 (N.D. Cal. Sept. 2, 2015) .................................................................. 2

*Marich v. MGM/UA Telecomms., Inc.*,
113 Cal. App. 4th 415 (2003) ..................................................................................... 14

*Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos., Inc.*,
306 F.3d 806 (9th Cir. 2002) ............................................................................... 8, 9, 10

*Nat. Res., Inc. v. Wineberg*,
349 F.2d 685 (9th Cir. 1965) ....................................................................................... 4

*New Show Studios LLC v. Needle*,
2014 WL 2988271 (C.D. Cal. June 30, 2014) ................................................................. 2

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**GOOGLE'S REPLY ISO RENEWED JMOL
3:20-CV-04688-RS**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
54 F.3d 1424 (9th Cir. 1995)..................................................................................... 14

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998)..................................................................................... 8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ...................................................................................... 10

*PHL Associates, Inc. v. Superior Court of Yolo County*,
2020 WL 4012763 (Cal. Ct. App. July 16, 2020) ....................................................... 4

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .................................................................................... 12

*PQ Labs, Inc. v. Yang Qi*,
2012 WL 2061527 (N.D. Cal. June 7, 2012) ............................................................... 2

*Pyro-Comm Sys. Inc. v. W. Coast Fire & Integration Inc.*,
2015 WL 12765143 (C.D. Cal. Apr. 2, 2015) ............................................................. 2

*Remedi8, LLC v. All. Env't Grp., LLC*,
2024 WL 1829617 (C.D. Cal. Feb. 5, 2024).............................................................. 3

*Rojas v. HSBC Card Servs. Inc.*,
20 Cal. App. 5th 427 (2018) ...................................................................................... 14

*Sanchez-Scott v. Alza Pharms.*,
86 Cal. App. 4th 365 (2001) ....................................................................................... 8

*Sanders v. Am. Broad. Cos., Inc.*,
20 Cal. 4th 907 (1999) ................................................................................................ 9

*Shulman v. Grp. W. Prods. Inc.*,
18 Cal. 4th 200 (1988) ............................................................................................ 8, 9

*Silvaco Data Sys. v. Intel Corp.*,
184 Cal. App. 4th 210 (2010) .............................................................................. 2, 4, 7

*SunPower Corp. v. SolarCity Corp.*,
2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ............................................................ 2

*Taus v. Loftus*,
40 Cal. 4th 683 (2007) .............................................................................................. 14

*Thews v. Wal-Mart Stores, Inc.*,
560 F. App'x 828 (11th Cir. 2014) .............................................................................. 6

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

**GOOGLE'S REPLY ISO RENEWED JMOL**
**3:20-CV-04688-RS**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Troxler v. Owens-Illinois, Inc.*,
  717 F.2d 530 (11th Cir. 1983)....................................................................................... 4

*UCAR Tech. (USA) Inc. v. Yan Li*,
  2018 WL 2555429 (N.D. Cal. June 4, 2018) .............................................................. 3

*VBS Distrib., Inc. v. Nutrivita Lab'ys, Inc.*,
  2020 WL 6259999 (C.D. Cal. Sept. 28, 2020)............................................................ 2

*Wadler v. Bio-Rad Lab'ys., Inc.*,
  916 F.3d 1176 (9th Cir. 2019)..................................................................................... 8

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)................................................................................................... 10

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) .................................................................... 8, 11

*Zayas v. Ortega*,
  2018 WL 11227735 (N.D. Cal. Aug. 10, 2018)......................................................... 14

**Statutes**

California's Uniform Trade Secrets Act ...................................................................... *passim*

Uniform Trade Secrets Act (UTSA) .................................................................................. 5

**Court Rules**

Fed. R. Civ. P.
  8......................................................................................................................................... 4
  8(c) ............................................................................................................................... 4, 5
  12...................................................................................................................................... 1
  12(h)(2)(C) ............................................................................................................... 4, 6, 7
  15(b)(2) ........................................................................................................................... 6
  16(e) ................................................................................................................................. 6
  23(b)(3) ............................................................................................................................ 7
  50(a) ................................................................................................................................. 4

**Other Authorities**

CACI 1800 ....................................................................................................................... 14

5 Fed. Prac. & Proc. Civ. § 1271 (4th ed.)........................................................................ 4

6A Fed. Prac. & Proc. Civ. § 1491 (3d ed.) ................................................................. 6, 7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S REPLY ISO RENEWED JMOL
3:20-CV-04688-RS

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiffs' opposition fails to establish that they presented sufficient evidence at trial to prove Google's liability as to the intrusion upon seclusion and invasion of privacy claims (together, the "Privacy Claims").  ***First***, the evidence they did present only established why they are not entitled to damages: California's Uniform Trade Secrets Act ("CUTSA") displaces them.  Plaintiffs misconstrue the breadth of CUTSA's displacement effect—it applies beyond traditional trade secrets, covering torts and privacy claims based on the taking of confidential information of value, the very crux of Plaintiffs' claims.  Further, Google did not waive this argument.  Displacement is an argument for failure to state a claim—an argument that can be raised for the first time at trial under Federal Rule of Civil Procedure 12.  And the Parties' pre-trial statement does not preclude this argument either—the statement was never converted to an order, and Google would be prejudiced by being prevented from raising it.  ***Second***, Plaintiffs failed to introduce sufficient evidence to establish the elements of their Privacy Claims across the classes.  Essentially, they seek to prove their Privacy Claims, as to 98 million class members, based on: (1) a single, nine-person study, (2) out-of-context emails from a handful of Google employees, and (3) Google disclosures that "unambiguously disclose[d]" Google's data collection practices.  *See Hammerling v. Google, LLC*, 2024 WL 937247, at *1 (9th Cir. Mar. 5, 2024).  This fails as a matter of law.

**II.    ARGUMENT**

**A.    Plaintiffs' Damages Are Displaced by CUTSA**

Plaintiffs do not dispute the only potential factual issue related to CUTSA displacement—whether their actual damages theory was based on Google taking private information of value.  Rather, Plaintiffs make two *legal* arguments: that CUTSA displacement does not apply to their privacy claims and that Google waived the argument.  Neither is correct.

**1.    CUTSA Displaces Plaintiffs' Actual Damages Theory**

Plaintiffs' substantive response to CUTSA displacement rests on a fundamental misunderstanding.  Plaintiffs are wrong that CUTSA displaces only trade secret claims, thereby obligating Google to prove that (s)WAA-off data was a trade secret.  Opp. at 2, 5-6.  Plaintiffs cite

to *PQ Labs, Inc. v. Yang Qi*, 2012 WL 2061527, at *5 (N.D. Cal. June 7, 2012) but fail to acknowledge either: (1) Judge Koh's widely-adopted explanation as to why *PQ Labs* is not persuasive and that "CUTSA supersedes claims . . . *regardless of whether such information ultimately satisfies the definition of trade secret*," *see SunPower Corp. v. SolarCity Corp.,* 2012 WL 6160472, at *7 (N.D. Cal. Dec. 11, 2012) (emphasis added) & Mot. at 4-5; or (2) that the only other case they cite in that paragraph, *Angelica Textile Servs., Inc. v. Park*, **rebuts** Plaintiffs' assertion, *see* 220 Cal. App. 4th 495, 506 (2013) ("[T]he acquisition, disclosure or transfer of information that does not fit UTSA's definition of a trade secret does not give rise to any liability, even when that liability is couched in terms of a separate tort or statutory violation."). Hence why CUTSA displacement applies even when Plaintiffs chose not to bring a trade secret claim. *See* Mot. at 6 n.5.

Plaintiffs thus incorrectly premise their opposition on far too narrow of an understanding of the law. *Compare* Opp. at 5-7 ("Courts have limited *Silvaco* to its facts") *with, e.g., VBS Distrib., Inc. v. Nutrivita Lab'ys, Inc.,* 2020 WL 6259999, at *4 (C.D. Cal. Sept. 28, 2020) (CUTSA displacement "is broad—it supersedes all claims premised on the wrongful taking and use of confidential and proprietary information, even if that information does not meet the statutory definition of a trade secret."). The broad view has been what the "vast majority of courts" have applied for nearly two decades, which is now "the rule." *Loop AI Labs Inc v. Gatti*, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015) (joining the "vast majority of courts"); *Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1118 (S.D. Cal. 2020) (Plaintiff's argument "does not address *the rule* that CUTSA displaces *all claims* premised on the wrongful taking and use of confidential business and proprietary information") (emphasis added; internal quotations omitted). Indeed, Plaintiffs do not even cite this Court's decisions in *Top Agent Network* or *Language Line, see* Mot. at 4, both of which adopted and applied the broad sweep of CUTSA displacement.

Thus, contrary to Plaintiffs' assertion, *see* Opp. at 5-6, CUTSA does displace privacy torts based on the taking of confidential information of value, just as was the case here. *See Pyro-Comm Sys. Inc. v. W. Coast Fire & Integration Inc.*, 2015 WL 12765143, at *8 (C.D. Cal. Apr. 2, 2015); *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *9-10 (C.D. Cal. June 30, 2014).

Plaintiffs' assertion—and their attempt to distinguish *Erhart v. BofI Holding*—makes clear that they argue a strawman.  Google does not contend that CUTSA displaces all privacy torts, only that Plaintiffs' actual damages theory *in this case* is displaced because it "impose[s] liability [] for 'acquiring, disclosing, or using' confidential information of purported value." *Erhart*, 612 F. Supp. 3d at 1118.  This difference explains why the *Erhart* court found displacement based on the "value in the information [Defendant] converted" but not "for the damages [Plaintiff] incurred to recover this sensitive information[.]"  *Id*. at 1118-1119.  Courts focus on what was taken rather than the label applied.  *See, e.g., UCAR Tech. (USA) Inc. v. Yan Li*, 2018 WL 2555429, at *5 (N.D. Cal. June 4, 2018); *Remedi8, LLC v. All. Env't Grp., LLC,* 2024 WL 1829617, at *1, *4 (C.D. Cal. Feb. 5, 2024).  Applying the proper focus, Plaintiffs' concession that their damages theory is premised on "the value of the data Google improperly collected and used" confirms CUTSA displacement here.[1]

Finally, Plaintiffs similarly misconstrue Google's arguments with respect to Plaintiffs' invasion of privacy claim under the California Constitution.  *See* Opp. at 5.  Of course, Google does not suggest that CUTSA *displaces* the California Constitution.  *See id*.  Rather, Google argues that money damages are generally unavailable for the constitutional claim.  *E.g., Hill v. Workday, Inc.*, 2024 WL 3012802, at *15-16 (N.D. Cal. June 14, 2024).  The sole case cited by Plaintiffs is not to the contrary.  *See* Opp. at 5 (citing *Hart v. TWC Prod. and Tech. LLC*, 526 F. Supp. 3d 592, 602-03 (N.D. Cal. 2021)).  In fact, the *Hart* court expressly declined to address whether non-sovereign defendants could be ordered to pay damages.  *Id*. at 602 ("The Court finds it prudent to decline ruling on this issue[.]").  And even if the California Supreme Court were to permit some type of damage remedy, the scope would not upset the uniformity created by CUTSA.  Plaintiffs offer no reason for this Court to find that, even if the California Supreme Court would permit some form of damages (*e.g.*, for emotional distress), that it would permit monetary remedies based on the value of the information taken.  It is highly unlikely because doing so would undo a core purpose of CUTSA: establishing "a uniform set of principles for determining when one is—and is not—liable

---

[1] Plaintiffs suggest that they avoid CUTSA displacement based on the CCPA.  Opp. at 7 n.4.  But Plaintiffs did not advance a CCPA claim.  And the CCPA did not take effect until January 1, 2020, midway through the class period.  Relying on it to avoid CUTSA would require decertification.

for acquiring, disclosing, or using 'information . . . of value.'" *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 n.22 (2010).

### 2.   Google Did Not Waive or Forfeit CUTSA Displacement

Plaintiffs do not dispute the baseline rule: an argument for failure to state a claim can be raised at *any time* before trial, or even at trial.  Fed. R. Civ. P. 12(h)(2)(C).  Plaintiffs primarily assert Google was obligated to raise displacement as an affirmative defense.  Not so.

Displacement (or supersession or preemption) does not appear in Rule 8(c)'s express list of affirmative defenses.  Thus, Google had to plead it only if it falls within the residual catch-all ("avoidance or affirmative defense[.]").  Plaintiffs provide no analysis of why the catch-all applies here. It does not.  The foremost source in applying the catch-all in diversity cases is state law.  *See Nat. Res., Inc. v. Wineberg*, 349 F.2d 685, 688 n.3 (9th Cir. 1965) ("Under the law of the forum state [innocent purchaser] is an affirmative defense"); 5 Fed. Prac. & Proc. Civ. § 1271 (4th ed.); *Kennan v. Dow Chem. Co.*, 717 F. Supp. 799, 807 (M.D. Fla. 1989) ("In a diversity case, a state's substantive law will, therefore, determine whether or not a defense not enumerated in Fed. R. Civ. P. 8(c) will constitute an affirmative defense." (citing *Troxler v. Owens-Illinois, Inc.*, 717 F.2d 530, 532 (11th Cir. 1983), *Freeman v. Chevron Oil Co.*, 517 F.2d 201, 204 (5th Cir. 1975))).  *PHL Associates, Inc. v. Superior Court of Yolo County* establishes that CUTSA displacement is not an affirmative defense.  2020 WL 4012763, at *11–13 (Cal. Ct. App. July 16, 2020).[2]  Additionally, analogizing from first principles supports Google.  An affirmative defense concedes the claim but raises new factual reasons why the claim is "avoided."  That is not how displacement works; when a state law is displaced, it cannot be used to state a claim.  Thus, as the Ninth Circuit explained, when UTSA displacement applies, the claim itself is "no longer operative" —*i.e.*, there is no claim

---

[2] Notably, Plaintiffs do not even address *PHL Associates* in their affirmative defense argument. And Plaintiffs' arguments as to why *PHL Associates* is distinguishable are unavailing.  Opp. at 3-4.  First, the case that the *PHL Associates* court relied on for the proposition that, under federal law, "preemption . . . cannot be raised for the first time after trial" was not about displacement, but preemption. *See PHL Associates*, 2020 WL 4012763, at *12 (citing *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1266 (9th Cir. 1996)).  The two are distinct.  Second, when interpreting Rule 8's residual clause, federal courts look to state law.  Third, Plaintiffs flatly misstate what *PHL Associates* says about the timing of raising the CUTSA argument: it can be raised "at trial."  *See* 2020 WL 4012763, at *13.  The problem, according to *PHL Associates*, is raising it "after trial or on appeal."  *See id*.  Not, as Plaintiffs contend, "after the trial record is closed."  Opp. at 3.  Google timely raised this issue during trial on its Rule 50(a) motion.  *See* Dkt. No. 661 at 8-11, 23-24.

and nothing to avoid. *H&H Pharms., LLC v. Chattem Chems., Inc.*, 2024 WL 1734134, at *2 (9th Cir. Apr. 23, 2024). Google argued this in its opening brief; Plaintiffs had no answer.

Rather, Plaintiffs conflate preemption with displacement. *See* Opp. at 2-3. But most of Plaintiffs' cited cases for the proposition that "preemption" is an "affirmative defense" have to do with federal preemption. *See Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1289 (9th Cir. 2021); *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1224 (9th Cir. 2005).[3] The preemption versus displacement nomenclature matters. Preemption is vertical: federal law avoids application of a state law. Displacement is horizontal: one state law supplants another state law; the supplanted law is not operative. And that makes the difference. *See Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 498 n.1 (2013); *Gaedeke Holdings VII, Ltd. v. Mills*, 2014 WL 347629, at *2–3 (W.D. Okla. Jan. 30, 2014), *aff'd sub nom., Gaedeke Holdings VII Ltd. v. Baker*, 683 F. App'x 677 (10th Cir. 2017) ("[T]he Court finds that the displacement provision of the OUTSA is not equivalent to preemption, particularly federal preemption, and is not an affirmative defense that is waived if it is not timely asserted."). CUTSA displacement does not require pleading new facts; it merely requires evaluating whether Plaintiffs' claims seek a remedy for the taking of information of value. If so, then it is not a cause of action at all. *Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1050 (D. Ariz. 2010) ("Because Plaintiffs' common law claims . . . are preempted [by Arizona's UTSA], they contain *no cause of action*[.]" (emphasis added)); *HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 945 n.5 (D. Ariz. 2013) (declining to enter default judgment on claim that was displaced by Arizona's UTSA); *H&H Pharms.*, 2024 WL 1734134, at *2. Since CUTSA displacement is an argument for failure to state a claim, Google *did raise this* by pleading it in its Answer. Dkt. 305 at 38.

Plaintiffs' reliance on the pre-trial statement, Opp. at 3-4, fares no better. Google is not precluded from making the CUTSA argument, even if it was not expressly included in the pre-trial statement, because the Court did not enter the Parties' pre-trial statement as an Order. There is no preclusive effect of a pre-trial statement, it is the pre-trial *order* that is binding. *See* Fed. R. Civ. P.

---

[3] Plaintiffs' three cases involving UTSA claims make the same mistakes Plaintiffs do: none of them analyze the residual clause of Rule 8(c), none of them look to state law, none of them ask whether displacement operates like a typical affirmative defense, and all of them make the mistake of conflating horizontal displacement with vertical preemption.

16(e); *see* C.J. Seeborg Standing Order for Final Pretrial Conferences at 3 ("this *order* shall supplement the pleadings and govern the course of trial of this cause"); *In re Dargahi*, 2010 WL 6452906, at *5 (9th Cir. BAP Oct. 21, 2010) ("[F]or a pre-trial order to become binding and effective, the [] court must adopt the pre-trial order by signing it." (citing *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 666 (9th Cir. 1999))); *Glasser v. Berzner*, 2022 WL 22870181, at *6 (C.D. Cal. Sep. 6, 2022) ("[T]he Court did not issue a Final Pretrial Conference Order, so nothing in the Joint Proposed Final Pretrial Conference Order has the binding effect of a Court order."); *Thews v. Wal-Mart Stores, Inc.*, 560 F. App'x 828, 830 n.1 (11th Cir. 2014) ("[T]he Joint Pre-Trial Statement was not adopted by the court into a Pre-Trial Order, so the Complaint is controlling."); *In re Basher*, 2002 WL 31856712, at *2 n.5 (E.D. Pa. Dec. 3, 2002) ("*Once accepted by the Court*, the pretrial statement has the effect of a pretrial order[.]" (emphasis added)).

None of Plaintiffs' cases purport to make an unadopted pre-trial statement binding generally. And if it were possible that an unadopted pre-trial statement could be binding in some respects, it could not be so with respect to waiver of an argument for failure to state a claim because Rule 12(h)(2)(C) expressly permits that argument to be raised for the first time at trial. It would be prejudicial to Google to find waiver in the absence of a pre-trial order. Rule 16(e) and the Court's standing order only discuss modification of the *order* (not the statement). Google had no basis—and no procedural mechanism—to seek modification of a not-yet-issued order. Nor would it think it would need to, since a failure to state a claim defense is expressly preserved by Rule 12(h)(2)(C).

Finally, even if the Court were to reject all the foregoing, the Court still has the authority to modify the pre-trial statement and/or Google's answer in the absence of any prejudice to Plaintiffs. *See generally* Fed. R. Civ. P. 15(b)(2) (amending pleadings to conform to evidence); 6A Fed. Prac. & Proc. Civ. §§ 1491-92 (3d ed.) (leave to amend, including as to defenses, based on evidence presented at trial should be liberally granted to allow cases to be decided on the merits). While Plaintiffs assert prejudice, they are short on actually demonstrating it. *See* Opp. at 4. The relevant prejudice inquiry asks whether Plaintiffs were unable to develop facts at trial to rebut the argument. 6A Fed. Prac. & Proc. Civ. § 1491 (3d ed.) n.5. But Plaintiffs do not substantiate how Google raising a purely legal issue—failure to state a claim—is prejudicial; it cannot alone be so based on

Rule 12(h)(2)(C). Indeed, Plaintiffs' claim that they needed to "build a trial record" about whether (s)WAA-off data was a trade secret is based on their misunderstanding of the law. *See supra* Section III.A.1. They next claim they would have made different "strategy and resource allocation" decisions, without specification. *See* Opp. at 4. But what decisions? Plaintiffs were long committed to their "value of data" *class-wide* damages theory. They chose that theory, developed and submitted expert testimony as to that theory, obtained a Rule 23(b)(3) damages class based on that theory, and survived summary judgment on that theory. They could not have pivoted to another because they neither disclosed nor obtained certification on any other. And to the extent they would have raised other damages theories, they already had. They explicitly argued for their non-quantifiable "battery and bandwidth" theory, and the Court rejected their other damages theories at summary judgment. Indeed, to the extent that Plaintiffs' "strategy and resource allocation" means they would have pulled back on the facts that trigger CUTSA displacement, that would have simply undercut their case. They would have had to argue that (s)WAA-off data was either not "confidential" or not "valuable." This is inconsistent with the elements of the Privacy Claims and their damages theory. Plaintiffs have demonstrated no prejudice.

By contrast, permitting the actual damages verdict to stand is contrary to the public policy behind CUTSA. The California Legislature sought to create a uniform action for claims based on the taking of information of value. *See Silvaco*, 184 Cal. App. 4th at 239 n.22. The Privacy Claims are not that vehicle. This Court should not undercut that policy by declining to permit amendment even if it were to conclude that Google failed to timely assert this argument.

**B.      Plaintiffs Failed to Establish a Class-Wide Privacy Interest**

Plaintiffs' conception of a "privacy interest" is sweeping. According to Plaintiffs, there may be a privacy interest merely based on: (1) the *amount* of data collected, seemingly without regard for the sensitivity of the information collected, *see* Opp. at 9; (2) the collection of information that does not personally identify any particular user, *see* Opp. at 9-10; and (3) the alleged technical *ability* (but not actual) re-identification of users based on the collection of data, *see* Opp. at 10. Based on these theories, surely all activity on the internet would be "private."

In any event, Plaintiffs' argument that the jury[4] could have found a class-wide privacy interest misses the mark.  The types of data collected by third-party apps were so varied that there could be no privacy interest across the classes.  Plaintiff Rodriguez's testimony confirms this.  Trial Tr. Aug. 25 (Rodriguez) at 843:12-21 (collection of data from the Target app was "[n]ot a big deal").  What matters is the *type* of data, which in turn requires that the *content* be particularly sensitive or confidential.  *See Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1271 n.17 (9th Cir. 1998).  Merely amassing large amounts of data cannot create a privacy interest.[5]  Nor is it sufficient that the collected information identifies or relates to a particular person.  This is why the collection of emails, without "confidential" or "sensitive" content, does not implicate a privacy interest.  *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040-41 (N.D. Cal. 2014).[6]

**C.      Plaintiffs Failed to Establish a Reasonable Expectation of Privacy**

At trial, Plaintiffs were required to establish that all class members had: (1) an actual, subjective expectation of privacy, and (2) that the expectation was objectively reasonable.  *Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).  Yet Plaintiffs failed to present sufficient evidence to establish either element class-wide.

**1.      Plaintiffs Cannot Establish a Subjective Expectation of Privacy Class-Wide**

Plaintiffs were required to establish that users *subjectively* had an expectation of privacy.  *Med. Lab'y*, 306 F.3d at 812.  Incredibly, Plaintiffs assert that Google cites no California court so holding.  *See* Opp. at 17.  But the California Supreme Court did so in *Shulman v. Grp. W. Prods. Inc.* when it explained there were two triable issues of fact: whether plaintiff "expected her conversations [] to remain private and whether any such expectation was reasonable[.]"  18 Cal.

---

[4] Plaintiffs argue that this element is inapplicable to its intrusion claim and that because the jury was not instructed on the issue, the Court should not address it.  Doubly wrong.  *See, e.g., Sanchez-Scott v. Alza Pharms.*, 86 Cal. App. 4th 365, 372-73 (2001) (explaining "[w]hether a legally recognized privacy interest exists is a question of law *to be decided by the court*" and apply that rule to common law intrusion claim (emphasis added)).  Nor, as explained above, is this question of law waived because it is not specifically identified in the non-adopted pretrial statement.

[5] Plaintiffs rely on *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) for this point.  Yet the analysis there related to the reasonable expectation of privacy element, not whether there was a legally protected privacy interest.  *See In re Facebook*, 956 F.3d at 601-03.

[6] A motion for judgment as a matter of law is evaluated based on the law as it is, not as it is reflected in the jury instructions.  *See Wadler v. Bio-Rad Lab'ys., Inc.*, 916 F.3d 1176, 1187 (9th Cir. 2019); *Boyle v. United Techs. Corp.*, 487 U.S. 500, 513 (1988).

Cooley LLP
Attorneys at Law
San Francisco

8

**Google's Reply ISO Renewed JMOL**
**3:20-cv-04688-RS**

4th 200, 233-34 (1988). Any "heightened" evidentiary standard comes only from Plaintiffs' choice to try their claims as a class.

Other cases follow *Shulman* in requiring a subjective expectation of privacy. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009); *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994); *Garrabrants v. Erhart*, 98 Cal. App. 5th 486, 500 (2023); *In re Facebook*, 956 F.3d at 601.[7] Plaintiffs' only answer is to quibble about those cases' use of passive voice. Opp. at 17. Even if a *reasonable* expectation of privacy is a "social expectation," as Plaintiffs contend, it must still be an expectation of *someone*. *See id*. The social expectation goes to whether the expectation was reasonable (*i.e.*, the "objective" aspect); that still leaves the requirement that the person asserting the claim had a subjective expectation. Plaintiffs' argument that requiring a subjective expectation sets a "dangerous precedent" is backward; what is dangerous is crediting the assertion that a plaintiff could bring a privacy claim without ever having to prove they actually had an expectation of privacy.

Plaintiffs similarly mischaracterize the significance of *Medical Laboratory Management Consultants v. American Broadcasting Companies, Inc.* Opp. at 17-18. In *Medical Laboratory*, the Ninth Circuit clearly stated what the Restatement requires: a subjective expectation of privacy. 306 F.3d at 812-13 ("[T]he plaintiff must show [] an actual, subjective expectation of seclusion or solitude[.]"). It does not matter that that case involved Arizona claims, the point is broader: the Ninth Circuit's view of what the Restatement requires is a subjective expectation. *See id*. And the California Supreme Court follows the Restatement. *Sanders v. Am. Broad. Cos., Inc.*, 20 Cal. 4th 907, 914 (1999).

Properly understood, Plaintiffs largely duck the relevant question. Their argument focuses on the undisputed (all class members turned (s)WAA off) and the irrelevant (Google's disclosures). Opp. at 11-14. Neither of those answer the key question: what did Plaintiff class members actually expect in turning off (s)WAA? As to that question, Plaintiffs tacitly admit that their entire proof

[7] Plaintiffs again claim that Google did not advocate at trial for this proof. Not so. The Court employed a version of the CACI instruction that combined the subjective element ("Plaintiffs had") and the objective element ("an objectively reasonable expectation of privacy"). Dkt. 666 at Instructions 18 and 20. Google repeatedly argued that Plaintiffs are (and were) required to prove this on a class-wide basis. *See, e.g.,* Dkt. 658 at 1-2.

is, at most, "Google's user study" and the Named Plaintiffs' conduct. Opp. at 14-15. But there is no rebuttal to Named Plaintiffs' admissions that they failed to conduct themselves as if they had an expectation of privacy across the data collected from various third parties' apps. Trial Tr. Aug. 25 (Rodriguez) at 812:24-813:24, 843:12-19, 856:3-11, 857:21-858:4; Trial Tr. Aug. 20 (Santiago) at 526:16-21, 547:19-548:1. As to the User Study, Plaintiffs mischaracterize it and take it out of context. As Mr. Monsees testified, the entire study was within the context of what is *saved to a user's account*. Trial Tr. Aug. 20 (Monsees) at 391:5-22. There is no evidence to the contrary.

But even if the Court overlooks Named Plaintiffs' admission and accepts the mischaracterization of the User Study, Plaintiffs still fall woefully short. Plaintiffs suggest that because the User Study was created by Google, it somehow bypasses normal evidentiary standards. *See* Opp. at 15. Plaintiffs had the burden of establishing that the study could be extrapolated across the class, not Google. Yet they failed to offer any evidence that the sample of nine participants could reliably be applied class-wide. Plaintiffs attempt to re-purpose Mr. Monsees' testimony (a non-expert in statistics) to show that the study could be applied class-wide. *See* Opp. at 14-15. But what Google thought was reliable for this study (for its own internal purposes) is far different from what is required to establish liability in a court of law across a 98-million-member class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 358 (2011).[8] Not only that, but Plaintiffs wildly overstate Mr. Monsees' testimony. That nobody said the study was "inappropriate," Trial Tr. Aug. 19 (Monsees) at 327:11-14, is a far cry from reliably applying it across a 98-million-member class. His statement, "I think so," with respect to whether it involved a "fair cross-section of people," *id.* at 326:15-18, establishes nothing about the propriety of the study's methodology. And he merely "assume[d]" that the woman conducting the study would have "follow[ed] whatever best practices *Google* has," *id.* at 327:8-10, providing no content for "whatever" those best practices he "assume[d]" were followed consisted of and whether they could be reliably applied class-wide. Mr. Monsees' testimony is not sufficient to establish the study's reliable applicability class-wide.

---

[8] Plaintiffs' attempt to distinguish *Dukes* is unavailing. *See* Opp. at 15. Plaintiffs are correct that *Dukes* had to do with class certification. Yet that proves Google's point. Class certification asks whether a common issue is "capable of class-wide resolution." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667-68 (9th Cir. 2022). *Dukes* held that a much larger sample size for a much smaller class was not even capable of proving the common question.

**2.      Any Expectation of Privacy was Objectively Unreasonable**

Plaintiffs identify only one category of evidence relevant to an objectively reasonable expectation of privacy: Google's disclosures. *See* Opp. at 11-14.[9] These are insufficient as a matter of law and proof.

Plaintiffs' selective reading of Google's disclosures, *see* Opp. at 11-12, cannot change the fact that Google *did* disclose that it "collect[ed] data about users' '[a]ctivity on third-party sites and apps that use [Google's] services.'" *See* PX-062 at 3. With this disclosure, there is no objectively reasonable expectation of privacy. And Plaintiffs' continued reliance on Mr. Ruemmler's communications is unavailing. *See* Opp. at 12. As both Mr. Monsees and Mr. Ruemmler explained at trial, this email exchange was about a completely separate proposal. Trial Tr. Aug. 20 (Monsees) 375:25-388:17; Trial Tr. Aug. 28 (Ruemmler) at 1499:6-1501:1.

Plaintiffs attempt to distinguish *Hammerling* by relying on *Calhoun v. Google, LLC*, 113 F.4th 1141 (9th Cir. 2024). Opp. at 12. Yet *Calhoun*'s holding—that service-specific privacy policies may override a general privacy policy—does not compel a contrary result. *See* 113 F.4th at 1149. Here, Google's (s)WAA-specific disclosures were consistent with its general privacy policy: Google merely would not save information to a user's Google Account. PX-084 at 1; PX-113 at 1. That does not contradict its general privacy policy.

Nor can there be an expectation of privacy merely because Google collected "personal information." *See* Opp. at 13-14. Plaintiffs cite no authority that data relating to an individual comes with an expectation of privacy regardless of what it is about. *See id*. Without showing that the collected information is "confidential" or "sensitive," there is none. *See In re Yahoo*, 7 F. Supp. 3d at 1040.

Plaintiffs additionally misconstrue the significance of Professor Hoffman's testimony. Opp. at 15. Regardless of whether she knew that Google collected (s)WAA-off data, the point of her testimony was whether Google *disclosed that it did*. Her testimony was unequivocal: Google's

---

[9] It is of no moment that class members toggled (s)WAA "off." Opp. at 14. This begs the question. The import of toggling (s)WAA off—if any—follows only what users actually understood the toggle to do. And regardless of any subjective expectation, the only basis Plaintiffs offer for class members having the claimed objective expectation of privacy comes from Google's disclosures.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

disclosures "very clearly" explain that Google would collect (s)WAA-off data. Trial Tr. Aug. 27 (Hoffman) at 1391:24-1393:5; *see also id.* at 1371:12-23, 1376:9-1377:13, 1377:24-1382:14, 1387:9-11, 1394:19-1396:10, 1397:1-3.

Plaintiffs fail to address the other factors counseling against an objectively reasonable expectation of privacy. The "competing social interests," the "customs of time and place," and the conduct of (s)WAA-off users all suggest that there is none here. Mot. at 16-17.

### D.    Plaintiffs Failed to Establish "Highly Offensive" Conduct

#### 1.    Plaintiffs Failed to Present Class-Wide Evidence of Offensiveness

Despite Google's "repeated" emphasis on Mr. Rodriguez's testimony, Plaintiffs still fail to see the significance of it. *See* Opp. at 20. Regardless of the "survey" evidence, *see* PX-002, or Google employees' communications, *see* PX-003, PX-004, Plaintiff Rodriguez *still* thought that Google's data collection from the Target app—a purported violation of his deal with Google—was "[n]ot a big deal." Trial Tr. Aug. 25 (Rodriguez) at 843:12-19. If Plaintiffs' evidence is insufficient to establish for their own Named Plaintiff that Google's conduct was inherently offensive across the board, it is impossible to see how it could be sufficient across the 98-million-member class. This is exactly why the type of data collected by Google is highly relevant to the offensiveness analysis. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 786 (9th Cir. 2025). Indeed, Plaintiff Rodriguez's testimony supports Google's position,[10] making any evidence Plaintiffs presented insufficient to establish offensiveness class-wide. In the absence of class-wide evidence establishing that the type of data collected compels a finding of offensiveness across all apps and all types of data, Mr. Rodriguez's admission confirms that the collection of at least certain data precludes class liability.

Plaintiffs' reliance on *Kryzyzek v. OpenX Technologies, Inc.*, 817 F. Supp. 3d 857 (N.D. Cal. 2026) is misplaced. That case had to do with "compil[ing] detailed profiles to sell to advertisers." *Id.* at 865. Again, Plaintiffs ignore the testimony: Google does not, and cannot,

---

[10] The quantity of data collected cannot make it highly offensive. *See* Opp. at 19-20. "Routine" data collection cannot be "highly offensive," as a matter of law, no matter how much of it is collected. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022). Thus, "58,000 events" of, say, clicking on the Target app's homepage, still cannot be "highly offensive."

compile (s)WAA-off data to build a picture of, and re-identify, users. *See* Trial Tr. Aug. 26-27 (Ganem) at 1162:1-4, 1254:8-12; Trial Tr. Aug. 29 (Black) at 1722:1-11, 1725:12-17, 1749:3-12.

### 2.     Evidence that Google Misled Users is Insufficient

Evidence that Google misled users cannot establish offensiveness, unless those users were actually deceived. Mot. at 20-21. None of Plaintiffs' arguments or evidence establish this.

Plaintiffs continue to cite Google's internal study and employee communications as evidence of offensiveness. Opp. at 21-22. Yet they fail to address that (1) the study was not about the collection of (s)WAA-off data, but whether Google would save such data to a user's account, Trial Tr. Aug. 20 (Monsees) at 391:5-22; (2) that there was no evidence suggesting this could reliably be applied class-wide, *see supra* Section III.C.1.; and (3) Google employees' communications could only establish what *they* thought about Google's representations, but cannot show that users were actually misled. Without this, Plaintiffs cannot establish offensiveness on this theory.

### 3.     The "Puzzle Piece" Theory Remains Insufficient

Plaintiffs' "puzzle piece" theory, raised for the first time at trial, remains insufficient.

Plaintiffs misconstrue the testimony relating to Google's inability to re-identify (s)WAA-off data and "put the puzzle pieces together." Dr. Hochman's testimony was entirely speculative. Trial Tr. Aug. 21 (Hochman) at 739:3-4. And although the snippets of Mr. Ganem and Dr. Black's testimony that Plaintiffs cite suggest that Google can re-identify data in the abstract, the systems in place prevented them from doing so. Trial Tr. Aug. 26-27 (Ganem) at 1162:1-4, 1254:8-12.

As proof that Google can re-identify (s)WAA-off data, they point to the fact that they did so to produce discovery in this case. Opp. at 23. That was only after Google affirmatively acquired—*from Plaintiff Rodriguez*—certain identifiers that would make such an exercise possible. Plaintiffs completely misconstrue the testimony and the facts behind what Google is capable of.

None of the other testimony Plaintiffs cite confirms that Google re-identifies users by "putting the 'puzzle pieces' together." *See* Opp. at 23. "[C]onversion tracking, machine learning models, and 'product development and improvement,'" *id.*, may show that Google does *something* with (s)WAA-off data, but it fails to establish that Google builds profiles of (s)WAA-off users to

"paint a picture of who [they are]."  Trial Tr. Aug. 25 (Rodriguez) at 843:17-21.

### E.    Plaintiffs Failed to Establish Intent

Plaintiffs failed to establish that Google acted with the requisite intent—*i.e.*, the intent to invade or intrude on users' privacy or seclusion.

***First***, Plaintiffs are incorrect that the constitutional claim does not have an intent requirement.  The two claims are similar and considered together.  *See In re Facebook*, 956 F.3d at 601.  In fact, the Supreme Court of California looked to the Restatement of Torts, which does include an "intent" element, in considering the elements of the constitutional claim.  *See Hill*, 7 Cal.4th at 26.[11]

***Second***, to establish intent for both claims, Google must have intended to invade or intrude upon users' privacy or seclusion.  *See Taus v. Loftus*, 40 Cal. 4th 683, 724–25 (2007); *Marich v. MGM/UA Telecomms., Inc.*, 113 Cal. App. 4th 415, 421-22 (2003); *Zayas v. Ortega*, 2018 WL 11227735, at *19 (N.D. Cal. Aug. 10, 2018); *Hernandez*, 47 Cal. 4th at 286.  The "intrusion" is the privacy harm, and that is what must be intended.  Plaintiffs are correct that intent "is not limited to consequences which are desired."  Opp. at 24.  That is exactly the point.  It is broader than what Google desired—*i.e.*, to collect data.  It *also* includes what Google *knew* would result.  *See id*.  Yet here, Google did not know it was intruding on or invading privacy.

Plaintiffs' reliance on *Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427 (2018) supports Google.  There, the court explained that the relevant intent was to "intentionally *eavesdrop*."  *Id*. at 436-37 (emphasis added).  In other words, it was not the act of recording telephone calls, but the intent to listen-in without authorization (*i.e.*, eavesdrop).  Here, that would not be an intent to collect data, but to do so without permission, thereby invading privacy.

***Third***, the evidence Plaintiffs presented at trial did not establish intent.  At most, it showed that certain employees may have believed Google's disclosures were "vague" or "deceptive."  *See* Opp. at 25.  Yet the people in charge of the (s)WAA function had no intent to do so.  *See Nordstrom*,

---

[11] Plaintiffs suggest that Google conceded this issue in the Joint Proposed Jury Instructions.  Yet Google merely pointed out that *Plaintiffs* acknowledged a difference between the two Privacy Claims.  *See* Dkt. 595 at 51 ("As Plaintiffs themselves point out, CACI 1800 includes elements (such as that plaintiffs must prove an "intentional intrusion") that are present in an Intrusion Upon Seclusion claim, but not an element for a constitutional Invasion of Privacy claim.").

*Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435-36 (9th Cir. 1995) (corporate intent requires relevant director or officer intent). Indeed, the evidence established the exact opposite. Trial Tr. Aug. 19 (Monsees) at 257:25-258:1, 300:17-24, 306:17-18; Trial Tr. Aug. 20 (Monsees) at 366:7-17, 368:19-369:13, 410:2-411:14; PX-003; Trial Tr. Aug. 26 (Ganem) at 1155:14-1156:1.

### F.    Affirmative Consent Precludes Liability

Under *Hammerling*, Google "unambiguously disclose[d]" its data collection practices to users. *See* 2024 WL 937247, at *2. *Calhoun* is inapplicable for the reasons above. *See supra* Section III.C.2. Users therefore had constructive notice of Google's data collection practices as a matter of law, *see Hammerling*, 2024 WL 937247, at *2, so any determination by the jury that Google did not "explicitly notify" Plaintiffs about its practices is irrelevant. *See* Opp. at 25.

## III.    CONCLUSION

For the foregoing reasons, Google's motion should be granted.

Dated: May 11, 2026

Respectfully submitted,

COOLEY LLP

By: */s/ Jonathan Patchen*
Michael A. Attanasio
Benedict Y. Hur
Simona Agnolucci
Eduardo E. Santacana
Jonathan Patchen
Argemira Flórez
Naiara Toker
Harris Mateen
Thilini Chandrasekera
Isabella McKinley Corbo
Chelsea Hu
Michael B. Morizono

*Attorneys for Defendant*
*Google LLC*