**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
Alexander Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com
aboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
alanderson@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
Ryan Sila (admitted pro hac vice)
Xiaoming Wang (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com
twang@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIBAL RODRIGUEZ, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No.: 3:20-cv-04688-RS<br><br>**PLAINTIFFS' REPLY ISO RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL ON CDAFA CLAIM (DKT. 738)**<br><br>The Honorable Richard Seeborg<br>Courtroom 3 – 17th Floor<br>Date: August 13, 2026 |

i

**TABLE OF CONTENTS**

I.     INTRODUCTION..................................................................................................1

II.    ARGUMENT .......................................................................................................1

       A.     Plaintiffs Are Entitled to Judgment as a Matter of Law on CDAFA. .....................1

              1.     Plaintiffs Proved the Requisite Ownership.................................................1

                     a.     Device Ownership Was Sufficient. ...................................................1

                     b.     Alternatively, Plaintiffs Proved Damage to Their
                            Devices. ...........................................................................................4

                     c.     Alternatively, Ample Evidence Supports Plaintiffs'
                            Claim to Ownership of their (s)WAA-off Data.............................5

              2.     Plaintiffs Proved That Google's Conduct Was Without
                     Permission. ...................................................................................................6

              3.     Plaintiffs Proved Damage or Loss...............................................................8

                     a.     CUTSA Does Not Preempt CDAFA Claims Based on
                            Data.   ..............................................................................................8

                     b.     Plaintiffs Proved Damage or Loss by Injury to Devices. ................9

              4.     The "Scope of Employment" Exception Does Not Apply.........................10

       B.     The Court Should Grant a New Trial on Plaintiffs' CDAFA Claim.....................11

              1.     The Jury Verdict Was Against the Great Weight of the
                     Evidence. .....................................................................................................11

              2.     The Court Erroneously Instructed the Jury on "Damage or
                     Loss." ………………………………………………………………………..11

              3.     A Retrial Would Not Violate the Seventh Amendment............................14

III.   CONCLUSION ..................................................................................................15

i

# TABLE OF AUTHORITIES

**Cases**

*Alert Enter., Inc. v. Rana*,
    2023 WL 2541353 (N.D. Cal. Mar. 16, 2023) ...................................................................9

*Allison v. Citgo Petroleum Corporation*,
    151 F.3d 402 (5th Cir. 1998) ................................................................................................14

*Au New Haven, LLC v. YKK Corp.*,
    2022 WL 10122844 (S.D.N.Y. Oct. 17, 2022) ....................................................................14

*Brown v. Google LLC*,
    685 F. Supp. 3d 909 (N.D. Cal. 2023) ..............................................................................5, 8

*Cadence Design Sys., Inc. v. Avant! Corp.*,
    29 Cal. 4th 215 (2002) ...........................................................................................................9

*Chrisman v. City of L.A.*,
    155 Cal. App. 4th 29 (2007) ................................................................................................11

*Christian v. Betak*,
    2025 WL 786056 (N.D. Cal. Mar. 11, 2025) .......................................................................4

*City of Pomona v. SQM N. Am. Corp.*,
    801 F. App'x 488 (9th Cir. 2020) ........................................................................................15

*El-Hakem v. BJY Inc.*,
    415 F.3d 1068 (9th Cir. 2005) ..........................................................................................2, 11

*Garrabrants v. Erhart*,
    98 Cal. App. 5th 486 (2023) ..............................................................................................3, 4

*Gasoline Products Co. v. Champlin Refining Co.*,
    283 U.S. 494 (1931) .........................................................................................................14, 15

*Hasbrouck v. Texaco, Inc.*,
    663 F.2d 930 (9th Cir. 1981) ...............................................................................................14

*Henry Schein, Inc. v. Cook*,
    2017 WL 783617 (N.D. Cal. Mar. 1, 2017) .........................................................................9

*Hill v. NCAA*,
    7 Cal. 4th 1 (1994) .................................................................................................................6

ii

*In re Cap. One Fin. Corp.*,
  2025 WL 1570973 (E.D. Va. June 2, 2025)................................................................4

*JEB Group, Inc. v. San Jose III*,
  2020 WL 2790012 (C.D. Cal. Mar. 31, 2020) ...........................................................9

*Kalitta Air L.L.C. v. Cent. Texas Airborne Sys. Inc.*,
  547 F. App'x 832 (9th Cir. 2013)...........................................................................15

*Lincoln Place Tenants Ass'n v. City of L.A.*,
  155 Cal. App. 4th 425 (2007).................................................................................9

*M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*,
  2013 WL 12072526 (S.D. Cal. June 26, 2013) .......................................................9

*Matthew Enter., Inc. v. Chryslter Grp. LLC*,
  250 F. Supp. 3d 409 (N.D. Cal. 2017)...................................................................14

*Medtronic, Inc. v. White*,
  526 F.3d 487 (9th Cir. 2008) ................................................................................12

*Molski v. M.J. Cable's, Inc.*,
  481 F.3d 724 (9th Cir. 2007) ................................................................................11

*Movement Mortg., LLC v. Scrima*,
  2024 WL 3011202 (E.D. Cal. June 11, 2024)..........................................................9

*NovelPoster v. Javitch Canfield Grp.*,
  140 F. Supp. 3d 954 (N.D. Cal. 2014)...................................................................10

*Oracle USA, Inc. v. Rimini Street*,
  191 F. Supp. 3d 1134 (D. Nev. 2016) .....................................................................3

*People of Territory of Guam v. Marquez*,
  963 F.2d 1311 (9th Cir. 1992)...............................................................................12

*Philips N. Am. LLC v. Adv. Imaging Servs., Inc.*,
  2021 WL 5054395 (E.D. Cal. Nov. 1, 2021) ...........................................................9

*R.R. Donnelley & Sons Co. v. Pappas*,
  2021 WL 3488502 (E.D. Cal. Aug. 9, 2021) ...........................................................9

*Regents of the Univ. of Cal. v. Aisen*,
  2016 WL 4097072 (S.D. Cal. Apr. 18, 2016) ..........................................................9

*Rimini Street, Inc. v. Oracle Int'l. Corp.*,
  473 F. Supp. 3d 1158 (D. Nev. 2020) ................................................................7, 11

iii

*Robinson v. Metro–North Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001) ............................................................................................14

*Stuart v. Cnty. of Riverside*,
    2024 WL 3455263 (C.D. Cal. Apr. 22, 2024) ..................................................................4

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
    313 F. Supp. 3d 1056 (N.D. Cal. 2018) ...........................................................................9

*Taxinet Corp. v. Leon*,
    114 F.4th 1212 (11th Cir. 2024) .....................................................................................15

*Teran v. Superior Court of L.A.*,
    112 Cal. App. 5th 371 (2025) ...........................................................................................8

*United Air Lines, Inc. v. Wiener*,
    286 F.2d 302 (9th Cir. 1961) ..........................................................................................15

*United States v. Burlington N. & Santa Fe Ry. Co.*,
    520 F.3d 918 (9th Cir. 2008) ............................................................................................2

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) ............................................................................................4

*Wadler v. Bio-Rad Lab'ys, Inc.*,
    916 F.3d 1176 (9th Cir. 2019) ..........................................................................................5

**Statutes**

1987 Cal. Legis. Serv. 1499 ...........................................................................................................9

Cal. Civ. Code § 1798.120(a) ........................................................................................................5

Cal. Civ. Code § 1798.140(v)(1)(F) ..............................................................................................5

Cal. Civ. Code § 3426.7(b) ............................................................................................................8

Cal. Penal Code § 15 ....................................................................................................................11

Cal. Penal Code § 502(c)(2) ...........................................................................................................3

Cal. Penal Code § 502(c)(5) ...........................................................................................................4

Cal. Penal Code § 502(e)(1) ...........................................................................................................3

Cal. Penal Code § 502(h)(1) .........................................................................................................11

iv

**Rules**

Fed. R. Civ. P. 59(a)(1) ................................................................................................14

v

## I.    INTRODUCTION

Plaintiffs proved every element of their CDAFA claim as a matter of law. Google stipulated that Plaintiffs own their mobile devices; device ownership satisfies the statute's ownership element; Google never obtained Plaintiffs' permission to take, copy, and use their sWAA-off data; and Google's conduct caused damage or loss to Plaintiffs' devices and data. Google's belated attempts to escape liability—including arguments it forfeited by failing to raise them in the pretrial statement—cannot overcome these facts. At minimum, Plaintiffs are entitled to a new trial on this claim. The jury's verdict on the CDAFA claim was against the weight of the evidence, and the Court's refusal to instruct the jury on the full scope of "damage or loss"—including after the jury requested clarification on that issue—was prejudicial error.

## II.    ARGUMENT

### A.    Plaintiffs Are Entitled to Judgment as a Matter of Law on CDAFA.

#### 1.    Plaintiffs Proved the Requisite Ownership.

No reasonable juror could find for Google on the ownership element of the CDAFA claim. Plaintiffs were only required to prove ownership of their mobile devices *or* data, and Google stipulated that Plaintiffs own their devices. Google waived its argument that Plaintiffs had to prove ownership of their sWAA-off data to obtain damages relating to the collection of that data, raising that argument for the first time after the trial. That argument also misconstrues the law. Alternatively, Plaintiffs are at least entitled to nominal damages as a matter of law because Plaintiffs established damage or loss to their devices. Finally, even if ownership of data were required for Plaintiffs to pursue a claim based on damage or loss to their sWAA-off data, Plaintiffs proffered ample evidence from which a jury could have found that Plaintiffs own the data, which means Google's gripe with the jury instructions cannot support judgment in its favor.

##### a.    Device Ownership Was Sufficient.

The jury instructions correctly described the ownership element of CDAFA: "Plaintiffs are owners or lessees of mobile devices *or* data." Dkt. 666 at Instr. 14 (emphasis added); *see also* Trial Tr. 1796:1–8 (Court rejecting Google's novel assertion that the law requires ownership of data). This was based on the pattern instruction, CACI 1812. With this instruction, Plaintiffs could satisfy

the ownership element by proving *either*: (a) ownership of the mobile devices from which Google collected their data, *or* (b) ownership of their sWAA-off data. Plaintiffs established both.

Plaintiffs established this element with Google's stipulation that Plaintiffs own their mobile devices. *See* Dkt. 534 (Pretrial Statement) at 8 (listing as an "Undisputed Fact" that "Plaintiffs owned their mobile devices throughout the relevant time period"). Although not required given Google's stipulation, Plaintiffs also offered unrebutted testimony establishing ownership of their mobile devices. Trial Tr. at 814:2–22, 815:4–9 (Rodriguez), *id.* 481:17–482:3 (Santiago).

Google waived its argument that device ownership was somehow insufficient. "[P]arties have a duty to advance any and all theories in the pretrial order," *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1077 (9th Cir. 2005), which means Google had to "put forward [its] position in the pretrial statement in a manner sufficient to put [Plaintiffs] on notice and allow the trial court to consider its merits," *United States v. Burlington N. & Santa Fe Ry. Co.*, 520 F.3d 918, 934 n.16 (9th Cir. 2008). The parties agreed in the Pretrial Order that "[a]ny disputed legal issues are reflected in the jury instructions" as well as "the accompanying motions *in limine*." Dkt. 534 at 8. Yet Google did not raise its ownership argument in any motion *in limine*, nor in the parties' proposed jury instructions. Instead, the parties twice stipulated to the ownership instruction this Court ultimately gave—that "Plaintiffs are owners or lessees of mobile devices or data." *Compare* Dkt. 560 at Prop. Instr. 29, Dkt. 595 at Prop. Instr. 30, *with* Dkt. 666 at Instr. 14 (final jury instructions). Google waited to raise its argument until ***more than a week after trial began,*** and the evening before the close of evidence. Dkt. 650 at 1, 8.

Google's about-face was particularly surprising given its pretrial stipulation that Plaintiffs owned their mobile devices. Dkt. 534 at 8. As this Court rightly asked: "what was the point to stipulating to the fact that plaintiffs own the phones if you think that didn't make any difference here?" Trial Tr. 1802:8–11 (charge conference). This Court similarly asked why Google waited five years to raise this argument. *Id.* at 1797:13–23. In response, Google conceded it had never raised the issue—including in briefing on three motions to dismiss, class certification, summary judgment, and all pretrial proceedings. *Id.* Google has no excuse for waiting until the close of evidence at trial to raise this legal issue for the first time.

In any event, the plain language of the statute permits claims based on device ownership. The CDAFA provision makes a defendant liable if they: "knowingly access[] and without permission take[], cop[y], or make[] use of *any data* from a *computer*, computer system, or computer network." Cal. Penal Code § 502(c)(2) (emphasis added). The statute does not require Plaintiffs to own the data: it says "any" data. Similarly, the statute establishes a private right of action for "the owner or lessee of the *computer*, computer system, computer network, computer program, *or data* who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c)." Cal. Penal Code § 502(e)(1) (emphasis added). Plaintiffs concededly own their devices. And they "suffered damage or loss by reason of a violation" of the CDAFA, namely Google's taking, copying, and using sWAA-off data directly from Plaintiffs' devices. Nothing in the statute limits the claimed damage or loss to the item that is owned.

The CACI pattern instruction also reflects that ownership of either the device *or* the data is sufficient. *See* CACI 1812 ("That [name of plaintiff] is the [owner / lessee] of the [specify computer, computer system, computer network, computer program, *and/or* data]." (emphasis added)). As reflected in CACI, there are at least two bases for a claim: (1) the plaintiff owns the device but not the data (e.g., a library sues a defendant who accessed the library's computers and downloaded a patron's emails), or (2) the plaintiff owns the data but not the device (e.g., the patron sues a defendant who accessed her emails from the library's computers).

Courts agree that plaintiffs may succeed by virtue of ownership of either the device or the data. In *Oracle USA, Inc. v. Rimini Street*, the court held that the CDAFA's disjunctive language authorizes suit by the device's owner *and* the data's owner. 191 F. Supp. 3d 1134, 1142 (D. Nev. 2016) (rejecting defendant's argument that proof of device ownership is required to state a claim, relying on statute's use of the word "or"), *aff'd in part, rev'd in part on other grounds*, 879 F.3d 948 (9th Cir. 2018)). And while Google cites *Garrabrants v. Erhart*, that case explains that "the pattern instruction on Penal Code section 502 provides that one element a plaintiff must prove to prevail on such a claim is 'that the plaintiff is the owner or lessee of' the technology *or* data accessed." 98 Cal. App. 5th 486, 507 (2023) (emphasis added).

Google's principally relies on *Christian v. Betak* (Opp. at 3–4), but that case did not even

3

address § 502(c)(2). *See* 2025 WL 786056, at *6 (N.D. Cal. Mar. 11, 2025). It concerned a *§ 502(c)(5)* claim, which is meaningfully different. *Betak* held that a plaintiff's ownership of data was insufficient to confer standing for a *§ 502(c)(5)* claim because that CDAFA provision "concerns disruption or denial of computer services, rather than data." *Id.* at *6. In fact, that provision does not even mention "data." Cal. Penal Code § 502(c)(5). But here, the relevant CDAFA provision refers to *both* data and devices; it concerns taking "*any* data *from a computer*, computer system or computer network." Cal. Penal Code § 502(c)(2) (emphasis added). This provision implicates both "data" and devices, and ownership of either is sufficient.

Google's remaining cases turned on whether the plaintiff owned the data only because those plaintiffs did not even claim to own the device from which the data had been taken. *See Stuart v. Cnty. of Riverside*, 2024 WL 3455263, at *2 (C.D. Cal. Apr. 22, 2024) (county employee accessed plaintiff's adoption records through the *county's* computer system); *In re Cap. One Fin. Corp.*, 2025 WL 1570973, at *1–3, 14–15 (E.D. Va. June 2, 2025) (defendant accessed plaintiffs-advertisers' online tracking codes through *third-party users'* browsers); *Garrabrants*, 98 Cal. App. 5th at 507 (defendant accessed plaintiff's information through plaintiff's *employer's* computer system). None held that ownership of data is required; they did not address that question because the plaintiffs did not even claim to own the at-issue devices.

Google's reliance on *United States v. Christensen* is similarly misplaced. 828 F.3d 763, 789 (9th Cir. 2015). *Christensen* addressed the "access" requirement, not ownership.

### b. Alternatively, Plaintiffs Proved Damage to Their Devices.

Even if the Court were to find that Google did not waive this argument *and* adopt Google's interpretation of the statute, Plaintiffs would still be entitled to judgment because Plaintiffs proved that Google's conduct damaged their devices. Google implicitly concedes that device ownership can support a claim based on damage to a device: Google criticizes Plaintiffs only for purportedly pursuing *data-based damages* based on device ownership. And any reasonable juror would find that Plaintiffs' devices were damaged by Google's conduct. *See infra* § II.A.3.b (citing unrebutted evidence that Google's collection of data directly from Plaintiffs' devices degrades bandwidth and battery life). Plaintiffs are entitled to nominal damages for this type of injury. *See* Mot. at 5; Dkt.

4

560 at Prop. Instr. 32 (Google conceding that fact).

### c. Alternatively, Ample Evidence Supports Plaintiffs' Claim to Ownership of their sWAA-Off Data.

As for damage or loss involving data, the gist of Google's argument is that this Court improperly instructed the jury on the ownership element. But "when a district court commits instructional error," judgment is appropriate only if "the evidence presented at trial would not suffice, as a matter of law, to support a jury verdict under the properly formulated instruction." *Wadler v. Bio-Rad Lab'ys, Inc.*, 916 F.3d 1176, 1187 (9th Cir. 2019) (cleaned up). "Sufficiency is a low bar." *Id.* So even if Google were right about the law—and it is not—Google could sustain the judgment only if no reasonable juror could find Plaintiffs owned the at-issue sWAA-off data.

Google falls far short of that burden. While Google belittles Plaintiffs' evidence of ownership as "mere[] belie[f]" that "this is mine" (Opp. at 4-5), the truth is that Google's own written policies and witnesses support Plaintiffs' ownership of their sWAA-off data. That is what Google says in its Privacy Policy, which represented to all class members that they had "control" over "*your* information," including "information about *your* activity on other sites, apps, and devices that use Google services." PX-72 at 1, 8 (emphasis added). There is no way to reconcile Google's current position—that class members have no ownership of that data, and that the data is owned solely by third-party app developers—with its Privacy Policy. Google's Head of (s)WAA, David Monsees, also testified that "if [data] comes from users, we tend to think of it as user data." Trial Tr. 371:3–4. These assurances track the California Consumer Privacy Act, which also establishes Plaintiffs' non-trade secret property interest in their sWAA-off data.[1]

Google now asserts that third-party app developers owned the data, a point allegedly made clear by various app-specific privacy policies. Opp. at 5–6. But Google did not offer any such policies into evidence. In any event, Google's counterarguments would at most warrant a new trial for this claim, in which a jury could be asked to decide whether Plaintiffs owned their sWAA-off

---

[1] The CCPA creates property rights in browsing data. Cal. Civ. Code §§ 1798.120(a), 1798.140(v)(1)(F); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 942 (N.D. Cal. 2023) ("plaintiffs have identified an unopposed property interest" in browsing data "under the California Consumer Privacy Act").

data. But because this Court already rejected Google's proposal for that jury instruction, and because Google does not even request a new trial on that ground, the better path is to grant Plaintiffs' motion for judgment as a matter of law, which is warranted based on the jury instructions actually given and the evidence actually presented.

### 2. Plaintiffs Proved That Google's Conduct Was Without Permission.

***Google did not disclose its conduct.*** Google's first argument, that it "unambiguously disclosed its data collection practices to users" (Opp. at 8) flies in the face of overwhelming evidence at trial, including its lead employee's confession that Google was "collecting user's WAA-off data" without "disclosing [it] to the users." Trial Tr. 319:24–320:6 (Monsees); Mot. at 4–5; Dkt. 747 at 11–15, 19. Google ignores this damning testimony, as well as the fact that class members' lack of choice forecloses any claim of permission. Mot. at 4 (citing *Hill v. NCAA*, 7 Cal. 4th 1, 26, 42 (1994), which held that consent is ineffective if "involuntary"). Google also ignores the Court's own recognition of a "problem" with Google's disclosures, which its post-trial amendments allegedly cured. Dkt. 721 at 5 ("This change *now tells Google's users* what they need to know" because the amended disclosures "eliminate[] the need to draw any inference" and "*cured the core problem* with [Google's] initial disclosure."). While Plaintiffs respectfully maintain that additional changes are appropriate and reserve their right to seek additional relief, the Court's ruling made clear as a matter of law that Google's disclosures had not, at the time of trial, told "Google's users what they need[ed] to know." *Id.*

***No permission from third-party apps.*** Google's argument that third-party apps gave permission (Opp. at 9) overlooks this Court's ruling at summary judgment that "Google's third-party permission argument is not only unsupported by any applicable caselaw but also in tension with relevant Ninth Circuit precedent." Dkt. 445 at 16. And in responding to Plaintiffs' motion *in limine* on this precise issue, Google "recognize[d] that it may not argue the permission it got from app developers is sufficient under CDAFA" because "the court rejected that argument." Dkt. 587 at 6. At trial, Google's counsel acknowledged the Court's "quite clear[]" rulings that third-party agreements were "out" with respect to what "users understood what was being collected" and agreed to limit argument about app-specific policies to intent *and not permission*. Trial Tr. at

1150:19–1154:6. Google may not reverse course now. This argument provides no basis to deny Plaintiffs' motion.

***Google knew that it lacked permission.*** Google's final argument (Opp. at 9–12) is wrong on the law and facts. As for the law, Plaintiffs were not required to prove that Google knew it lacked permission. In the jury instructions, the term "knowingly" applied only to the "access" element, not the "permission" element. Dkt. 666 at Instr. 14 (requiring Plaintiffs to prove that "Google knowingly accessed Plaintiffs' mobile devices or data," and that "Google took, copied, or made use of data from those Plaintiffs' mobile devices without Plaintiffs' permission"). These instructions track CACI 1812 and the plain language of Section 502(c)(2). Before trial, Google twice stipulated to this instruction. Dkt. 560 at Prop. Instr. 29; Dkt. 595 at Prop. Instr. 30 (same). But the night before the charge conference, Google requested a modified instruction that would have required proof that Google *knew* it lacked permission. Dkt. 650 at 11. The Court correctly rejected that request. *See* Trial Tr. (Jury Instr. Conf.) at 1804:25–1805:5. Google waived this argument, and it is wrong. Dkt. 445 at 15 (explaining that this element concerns whether "Google knew *or should have known*" that it lacked permission (emphasis added)).

In any event, ample evidence proves that Google knew it lacked permission. Each class member affirmatively chose to have sWAA off; Google took and copied class members' sWAA-off data before checking the sWAA setting; and Google retained the data even after checking the setting. Trial Tr. (Ganem) at 1206:13–20; Trial Tr. (Hochman) 599:6–21. In so doing, Google ignored the clear message Plaintiffs had sent "expressly forbidd[ing]" Google from taking, copying, and using that data. *Rimini Street, Inc. v. Oracle Int'l. Corp.*, 473 F. Supp. 3d 1158 (D. Nev. 2020). Google employees' internal discussions and documents also undeniably establish that Google knew its disclosures were "very deceptive" (PX-3 at 1), "intentionally vague" (PX-4 at 2), and that users expected turning off WAA would stop Google from saving their activity (PX-2 at 9, PX-9 at 6). Nevertheless, Google continued to take, copy, and use class members' sWAA-off data, even after it checked the permission setting, and despite having the technology to stop the collection altogether. Trial Tr. (Hochman) 602:25–603:24, 615:16–616:1, 633:22–634:2.

7

### 3.    Plaintiffs Proved Damage or Loss.

Google does not dispute that the trial record established as a matter of law that it copied, took, and used personal and valuable data from Plaintiffs' devices. *See* Opp. at 12–15. And Google previously acknowledged that both "[l]oss of the right to control one's data" and "the loss of privacy over that data" constitute "damage or loss" under the CDAFA. Dkt. 560 at Prop. Instr. 32 (Google's proposed instruction on damage or loss). That resolves the issue. Nonetheless, Google now reverses itself and belatedly contends that CUTSA preempts all CDAFA claims based on copying, taking, and using valuable data. But as we have explained, CUTSA preemption is not a get-out-of-jail-free card. *See* Dkt. 747 at 2–8. Plaintiffs established this element.

### a.    CUTSA Does Not Preempt Plaintiffs' CDAFA Claim.

Google forfeited its argument on CUTSA preemption by failing both to plead it in the answer and to raise it in the pretrial statement. *See* Dkt. 747 at 2–4. Dkt. 305; Dkt. 534 at 8, 10. To the contrary, Google conceded that loss of control over data would be an actionable injury under the CDAFA in this case. *See* Dkt. 560 at Prop. Instr. 32.

Even if Google had not forfeited this affirmative defense, it would not bar Plaintiffs' CDAFA claim. CUTSA "does not affect … other civil remedies that are not based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7(b); Dkt. 747 at 5–8. Plaintiffs' CDAFA claim may succeed without proof that their sWAA-off app activity data constitutes a trade secret. *See supra* § II.A.1.a. (explaining that the statute allows owners of devices to assert claims for violations). Plaintiffs' CDAFA claim also may succeed based on proof that they have a "property right outside of trade secrets law" in their sWAA-off data. Dkt. 747 at 7. The California Consumer Privacy Act creates just such a property interest. *See Brown*, 685 F. Supp. 3d at 942.[2]

Moreover, the CDAFA was enacted three years *after* CUTSA. *See* 1987 Cal. Legis. Serv.

---

[2] Google also asserts that the data taken must be "confidential." Opp. at 13. This is another argument Google forfeited by failing to ask the Court to so instruct the jury. *See* Dkt. 560 at Prop. Instr. 29 (omitting this element). In any event, Google misstates the holding of *Teran v. Superior Court of L.A.*, 112 Cal. App. 5th 371 (2025). In that case, the court reached the unremarkable conclusion that a claim may not be based exclusively on unauthorized *use* of "purely public" records. *Id.* at 379–81, 385–86. It did not immunize defendants from liability for *taking* or *copying* data, nor did it address non-public data that may not be considered "confidential."

8

1499 (West) (enacting the CDAFA in 1987); *Cadence Design Sys., Inc. v. Avant! Corp.*, 29 Cal. 4th 215, 221 (2002) (CUTSA was "adopted … in 1984"). "[I]t is illogical to think that the California legislature enacted a computer crime provision and deliberately included a civil remedy that would in turn"—and immediately—"be preempted by other legislation authorizing civil protection for trade secrets." *Regents of the Univ. of Cal. v. Aisen*, 2016 WL 4097072, at *8 (S.D. Cal. Apr. 18, 2016) (holding that CUTSA does not preempt civil actions under the CDAFA). "Where two statutes touch upon a common subject, we must … seek to harmonize them in such a way that neither becomes surplusage." *Lincoln Place Tenants Ass'n v. City of L.A.*, 155 Cal. App. 4th 425, 440 (2007). Consistent with that principle, courts have held that CUTSA does not preempt claims under the CDAFA because they are "based upon a statutory violation, not common law." *JEB Group, Inc. v. San Jose III*, 2020 WL 2790012, at *4 (C.D. Cal. Mar. 31, 2020).[3]

The authorities upon which Google relies are distinguishable and unpersuasive. In each, the plaintiff asserted both trade-secret misappropriation claims and CDAFA claims that depended on trade-secret allegations. *See, e.g.*, *Henry Schein, Inc. v. Cook*, 2017 WL 783617, at *5 (N.D. Cal. Mar. 1, 2017) (plaintiff "cannot plausibly allege [their claim] without relying on facts from its CUTSA claim").[4] Here, by contrast, Plaintiffs do not assert that their data constitutes trade secrets, and their claims succeed by virtue of either their property interest in *devices*, or their distinct, non-trade secret property interest in data. *See supra* § II.A.1.

### b. Plaintiffs Proved Damage or Loss by Injury to Devices.

The record also establishes that when Google's SDKs co-opt Plaintiffs' devices to send sWAA-off app activity data to Google's servers, they chew up Plaintiffs' devices' battery life and

---

[3] *See also R.R. Donnelley & Sons Co. v. Pappas*, 2021 WL 3488502, at *3–4 (E.D. Cal. Aug. 9, 2021) (same); *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1074–75 (N.D. Cal. 2018) (same); *Philips N. Am. LLC v. Adv. Imaging Servs., Inc.*, 2021 WL 5054395, at *4 (E.D. Cal. Nov. 1, 2021) (same).

[4] *See also Alert Enter., Inc. v. Rana*, 2023 WL 2541353, at *6 (N.D. Cal. Mar. 16, 2023) (defendant was only relevant "in its capacity as an entity that allegedly received … misappropriated trade-secret information"); *Movement Mortg., LLC v. Scrima*, 2024 WL 3011202, at *5 (E.D. Cal. June 11, 2024) ("[T]here is no meaningful difference between facts underlying the [plaintiff's] section 502 and CUTSA claims."); *M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*, 2013 WL 12072526, at *3 (S.D. Cal. June 26, 2013) (same).

resources. The evidence on this point is unrebutted. Mr. Hochman testified that Google's data collection "uses up the phone's bandwidth" and "reduces the power in the battery," which "means that the phone will die sooner." Trial Tr. (Hochman) at 638:13–21. Google implicitly admitted as much in an interrogatory response, by describing purported efforts to *reduce* these injuries on Android phones and acknowledging that it takes no such efforts on iOS devices. *Id.* at 740:6–741:8 (reading interrogatory response into the record). Google argues that "the extent" of this injury may vary, but that does not matter. Opp. at 14. For liability, "any amount of damage or loss … is enough." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 964–65 (N.D. Cal. 2014).

Google argues that impact to battery life and bandwidth are not cognizable because "there is a mismatch between what caused the alleged 'loss or damage" and the 'alleged lack of permission'". Opp. at 14. Not so. While Google quibbles with whether *saving* Plaintiffs' data directly causes bandwidth and battery harm, it appears to concede that *collecting* Plaintiffs' data does so. *Id.* at 15. Contrary to Google's contention otherwise, Google's disclosures misrepresented to Plaintiffs not only what Google saves, but also what it collects. *See, e.g.*, PX-72 at 1 (promising that users "can adjust your privacy settings to control *what we collect*" (emphasis added)); *id.* at 8 (defining "[p]rivacy controls" to include "Activity Controls," such as sWAA). There is therefore no "mismatch." Indeed, that is why Google conceded that the "depletion of resources such as battery life or bandwidth" would constitute damage or loss. *See* Dkt. 560 at Prop. Instr. 32.[5]

### 4.    The "Scope of Employment" Exception Does Not Apply.

This defense, like many others Google concocted after trial, is forfeited. Google did not raise the "scope of employment" defense in the pretrial statement, and it did not ask for a jury instruction on the issue, either. *See generally* Dkts. 534, 560. Having failed even to attempt to

---

[5] Google also states in a footnote that it "preserve[s]" the argument that when the defendant violates Section 502(c)(2), damage or loss cannot include injury to battery life or bandwidth, an argument Google claims the Court rejected. Opp. at 14 n.8. Google forfeited this argument long ago. As stated above, Google agreed that injury to battery life and bandwidth *would* constitute damage or loss under this statute. Dkt. 560 at Prop. Instr. 32. Google did not argue otherwise at summary judgment or in the pretrial statement. *See* Dkt. 406 at 14 (arguing only that this form of injury has not been proven, not that it is legally irrelevant); *see generally* Dkt. 534. Regardless, if taking data injures a device, that of course constitutes damage or loss arising from the violation.

10

prove this defense at trial, Google cannot assert it now. *See El*-Hakem, 415 F.3d at 1077.

Setting aside the forfeiture, Google cannot make out the "scope of employment" defense. Even if Google were acting as an "agent" of an app developer, under Google's own policies, Plaintiffs "retained the right to terminate [Google's] access" to its app activity data. *Rimini*, 473 F. Supp. 3d at 1184. Google also is not an "employee" of third-party app developers, and courts have never applied this defense to a contractor. Google asks this Court to be the first, based on the statute's explanation that the "scope of employment" extends only to "acts which are reasonably necessary to the performance of their work assignment." Cal. Penal Code § 502(h)(1). That text does not transform contractors into employees; if it did, there would be no reason to use the phrase "scope of employment" in the first place. That text merely explains how to determine whether an employee's conduct was within the scope of their employment. The lone case upon which Google relies, *Chrisman v. City of L.A.*, addresses the *scope* of employment; it does not say that *anyone* with a "work assignment" is an employee. 155 Cal. App. 4th 29, 36 (2007). The *Chrisman* court also relied on the common law relating to employment, which would not classify Google as an employee. *Id.* (relying on common law to hold that employee acted within scope of employment despite violation of department rules).

In addition, the "scope of employment" exception only bars actions "to punish" the defendant, which is not at issue in this civil case. Cal. Penal Code § 502(h)(1); *see* Cal. Penal Code § 15 (listing five "punishments" not at issue here). For the same reason, Google cannot invoke the rule of lenity. That doctrine would not apply anyway, because the statute's reference to the "scope of employment" is not ambiguous. Google is not an employee, so it cannot take advantage of this limited statutory exemption.

**B.      Alternatively, the Court Should Grant a New Trial on the CDAFA Claim.**

**1.      The Jury Verdict Was Against the Great Weight of the Evidence.**

For the reasons described above, the CDAFA "verdict is against the weight of the evidence," warranting a new trial. *Molski v. M.J. Cable's, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).

**2.      The Court Erroneously Instructed the Jury on "Damage or Loss."**

***Plaintiffs did not commit waiver.*** Google devotes substantial argument to the suggestion

that Plaintiffs failed to preserve their request for a jury instruction defining "damage or loss." Opp. at 18–21. This argument ignores the Court's clear direction that objections were preserved. The argument also conflicts with Ninth Circuit law.

The Ninth Circuit has recognized exceptions to the "strictest enforce[ment] of Rule 51," which are available "when (1) throughout the trial the party argued the disputed matter with the court, (2) it is clear from the record that the court knew the party's grounds for disagreement with the instruction, and (3) the party offered an alternative instruction." *Medtronic, Inc. v. White*, 526 F.3d 487, 495 (9th Cir. 2008) (quoting *Glover v. BIC Corp.*, 6 F.3d 1318, 1326 (9th Cir. 1993)). It is a "pointless formality" to restate objections after the record is clear that a jury instruction is in dispute and the trial court disagreed with a party's position. *People of Territory of Guam v. Marquez*, 963 F.2d 1311, 1314 (9th Cir. 1992) (finding no waiver after defense counsel's "commendable civility" of thanking the court for its attention without further protest).

Prior to the charge conference, the Court made clear that "[a party] preserved [its] objections if the [Court's draft] instructions aren't consistent with what [a party] submitted." Trial Tr. at 1226:5–6. And at the August 29, 2025 charge conference, the Court emphasized that "there's been a fairly extensive record of what [the parties] proposed, and now we've had the conference and [the parties have] given me [their] positions." Trial Tr. 1826:16–24. Those directions included Plaintiffs' proposed instruction on "damage or loss" (DJI No. 33), which Plaintiffs repeatedly proposed and the parties extensively briefed. *See* Dkt. 560 at 44–49 (July 14, 2025 jury instruction submission and briefing), Dkt. 595 at 39–43 (August 11 jury instruction submission and briefing). That briefing was more than sufficient under *Medtronic* and *Marquez*. While this Court told the parties they *could* "file something" after "you get the [final] set [of instructions] from me," this Court also clarified that it had in mind a scenario where it became "unclear if you've agreed or not agreed to" an instruction. Trial Tr. at 1826:16–24. That guidance did not apply to DJI No. 33. The parties had a very clear dispute about this instruction, which the Court considered and resolved against Plaintiffs. This Court also told the parties to not "just reargue everything that you've already submitted in written form. I have—we've been diligent in considering it." Trial Tr. at 1226:5–12. Google now faults Plaintiffs for complying with the Court's instructions. Taking

12

Google's argument to its logical end, every litigant at every trial should recite every dispute with any instruction to preserve every possible objection, thus prolonging the trial process regardless of the trial court's directions. That is not what the Court ordered, and it is not what the law requires.

*Refusal to give the instruction was prejudicial error.* Google concedes that Plaintiffs' proposed instruction included three theories of "damage or loss" which "the court accepted at summary judgment"—including profits from the data, value of data, and battery/bandwidth. Opp. at 21. Google's only response is that these theories are displaced by CUTSA (for disgorgement and value of data) and "not legally cognizable" (for battery/bandwidth), but those arguments fail for the same reasons discussed above. *See supra* § II.A.3.a. (addressing CUTSA); § II.A.3.b. (addressing harm to devices).

The Court's failure to provide Plaintiffs' proposed instruction was not harmless. Plaintiffs asked the Court to instruct the jury that "damage or loss" includes, among other things, the loss of the right to control data, Google's profits from the data taken, and injury to mobile devices' battery life and bandwidth. Dkt. 560 at Prop. Instr. 32. Without this instruction, the jury might not have considered that these forms of injury constitute "damage or loss." In fact, the jury specifically asked for further direction on the meaning of that element. Dkt. 671 at 6. Had the Court given the requested instruction, the jury would have been compelled to find the element satisfied. There was no reasonable dispute that Plaintiffs lost control of their data, Google profited from that data, and Google depleted Plaintiffs' devices' battery life and bandwidth to do so. Contrary to Google's suggestion, the fact that the instruction given did not explain the meaning of "damage or loss" does not make it "broader." Opp. at 22. It makes the jury less likely to understand that element, and instead apply incorrect limitations such as a requirement to show out-of-pocket loss. The jury's damages award for the privacy tort claims also does not suggest the instructional error was harmless. As Google itself notes, an instruction on how to calculate *damages* did not address the liability element of "damage or loss," which remained unelaborated.

Finally, Plaintiffs do not seek to inquire into the minds of the jurors (Opp. at 22–23) but instead submit that upon the jury's request for "some clarification as to the definition of 'damage or loss'" (Dkt. 671 at 6) the Court's response that "[n]o further instruction *is available* on that

PLAINTIFFS' REPLY ISO RENEWED MOTION FOR JMOL AND NEW TRIAL ON CDAFA CLAIM
CASE NO. 3:20-CV-04688-RS

definition" (Dkt. 671 at 7) (emphasis added) affected the deliberations because an instruction *was available* but not provided. Without the context that disgorgement of profits qualified as damage or loss, the jury was further misguided into not finding for Plaintiffs on this claim. Dkt. 670 at Question 4. Thus, the Court's response to the jury did not "fairly and adequately cover the issues presented" and misguided the jury on the "correct[] state of the law," resulting in prejudicial error that was not harmless. *Matthew Enter., Inc. v. Chryslter Grp. LLC*, 250 F. Supp. 3d 409, 414 (N.D. Cal. 2017) (quoting *Duran v. City of Maywood*, 221 F.3d 1127, 1130 (9th Cir. 2000)).

### 3. A Retrial Would Not Violate the Seventh Amendment.

Federal Rule of Civil Procedure 59(a) authorizes courts to "grant a new trial on all *or some of the issues*." Fed. R. Civ. P. 59(a)(1) (emphasis added). Courts have "broad discretion to grant new trials on all or only some issues." *Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir. 1981). Google's contention that the CDAFA claim cannot be retried separate and apart from the invasion of privacy and intrusion upon seclusion claims is incorrect.

The cases Google cites in support of this argument actually refute it. As the Fifth Circuit noted in *Allison v. Citgo Petroleum Corporation*, a case cited by Google:

> "[t]he existence of common factual issues is to be distinguished from the existence of *overlapping evidence*. For purposes of the Seventh Amendment, the question is whether *factual issues* overlap, thus requiring one trier-of-fact to decide a disputed issue that must be decided by a subsequent jury, not whether the two fact-finders will merely have to consider similar evidence in deciding distinct issues."

151 F.3d 402, 423 n. 21 (5th Cir. 1998) (emphasis added).[6]

A separate retrial of Plaintiffs' CDAFA claim is proper because it would in no way create "confusion and uncertainty" amounting to denial of a fair trial. *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931). The question of whether Google violated CDAFA is not "so interwoven" with the question of whether Google's conduct amounted to an invasion of privacy or an intrusion upon seclusion that Google cannot receive a fair trial without also retrying those claims. The elements required to prove the CDAFA claim are distinct from the elements

---

[6] *See also Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 170 n.14 (2d Cir. 2001) (same), *overruled in part on other grounds by Wal–Mart v. Dukes*, 564 U.S. 338 (2011); *Au New Haven, LLC v. YKK Corp.*, 2022 WL 10122844, at *3 (S.D.N.Y. Oct. 17, 2022) (same).

14

required to prove the privacy claims. *Compare* Dkt. 666 at Instr. 14 with Instrs. 18, 20. Because the CDAFA claim can be independently submitted to a new jury without any confusion or uncertainty, Google is at no risk of being denied a fair trial.

Google's reliance on *Gasoline Products* is misplaced. There, the Supreme Court held that a new trial limited solely to damages is improper where the question of damages "is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial." 283 U.S. at 500.[7] Here, by contrast, Plaintiffs are not seeking to have the issue of damages retried separately from issues of liability. Neither *Gasoline Products* nor the other cases cited by Google hold that where a verdict is correct as to one claim and erroneous to another, the Seventh Amendment requires that the correct claim be retried with the erroneous claim. In fact, the Supreme Court explicitly rejected this idea, stating, "where the requirement of a jury trial has been satisfied by a verdict according to law upon one issue of fact, that requirement does not compel a new trial of that issue even though another and separable issue must be tried again." 283 U.S. at 499.

## III.   CONCLUSION

Plaintiffs are entitled to judgment as a matter of law on their CDAFA claim.

Dated: May 11, 2026                              Respectfully submitted,

                                                 By: */s/ Steven Shepard*

                                                 Mark C. Mao (CA Bar No. 236165)
                                                 mmao@bsfllp.com

---

[7] Google's other cases rely upon *Gasoline Products* in reaching similar conclusions about trying damages and liability together. *See City of Pomona v. SQM N. Am. Corp.*, 801 F. App'x 488, 491 (9th Cir. 2020) (holding that causation was "too intertwined with the issue of damages, which the jury did not reach at the second trial because it found no liability"); *Kalitta Air L.L.C. v. Cent. Texas Airborne Sys. Inc.*, 547 F. App'x 832, 833 (9th Cir. 2013) (holding that breach "was so intertwined with the issues of causation and damages that holding a partial retrial on causation and damages alone would have caused confusion and uncertainty"); *United Air Lines, Inc. v. Wiener*, 286 F.2d 302, 306 (9th Cir. 1961) (holding only that "under the circumstances presented," "the issues of liability and damages … [were] not so distinct and separable that a separate trial of the damage issues [could] be had without injustice"); *Taxinet Corp. v. Leon*, 114 F.4th 1212 (11th Cir. 2024) ("If the issues of liability and damages are 'sufficiently interwoven, a partial new trial is inappropriate.' … That is the case here.").

15

Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile (415) 999 9695

David Boies (admitted *pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

James Lee (admitted *pro hac vice*)
jlee@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Alison L. Anderson, CA Bar No. 275334
alanderson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (813) 482-4814

Bill Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley
afrawley@susmangodfrey.com
Ryan Sila
rsila@susmangodfrey.com
Xiaoming Wang (*pro hac vice*)
twang@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY  10001
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com

16

SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*