1/2 cover sheet

Name: **Arsenio Khaleef Washington**

Mailing address: **2446 N. 20th Street, Philadelphia, PA 19132**

Phone number: **267-934-0551**

Email address: <u>mr.wshngtn9@gmail.com</u>

Date: ___7/22/26___




FILED

JUL 28 2026

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**Clerk of the Court**

United States District Court — Northern District of California

Phillip Burton Federal Building

450 Golden Gate Avenue

San Francisco, CA 94102

RE: Pro Se Filing in *Rodriguez, et al. v. Google LLC*, Case No.
3:20-cv-04688-RS

Dear Clerk of the Court,

Enclosed for filing in the above-captioned matter please find my original, signed **Motion for Late Exclusion / Written Objection, USPS mailing receipt or Certificate of Mailing, Request for Representation & Class Member Verification Letter**, alongside a *Request for Judicial Notice*, and an *Unsworn Declaration of Service by Mail* executed pursuant to 28 U.S.C. § 1746.

Please note that I am an unrepresented, *pro se* class member experiencing acute financial indigence and chronic homelessness. Due to these structural hardships, I am entirely without access to a third-party process server, family members, or friends to execute a standard civil proof of service. Accordingly, I have utilized the federal statutory safety valve under 28 U.S.C. § 1746 to declare my own service by mail under penalty of perjury.

Kindly file these documents into the active case docket for review by *Chief Judge Richard Seeborg* ahead of the upcoming scheduled proceedings. Thank you for your time and administrative assistance.

2/2 cover sheet

Respectfully submitted,

(Physical Signature)

_____

**Printed Name**

_Arsenio Khaleef Washington_____

Pro Se Class Member

1/6 opt-out

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **MARIA RODRIGUEZ, et al.,** | **Case No. 3:20-cv-04688-RS** |
| Plaintiffs, | **CLASS MEMBER ARSENIO KHALEEF WASHINGTON'S MOTION FOR LATE EXCLUSION (Opt-Out) FROM THE CLASS ACTION** |
| v. | Judge: Hon. Richard Seeborg |
| | Courtroom: 3, 17th Floor |
| **GOOGLE LLC,** | |
| Defendant. | |

---

# MOTION FOR LATE EXCLUSION

Class Member **Arsenio Khaleef Washington** hereby respectfully moves this Court for an order permitting a late exclusion (opt-out) from the Class in the above-captioned matter. The court-ordered deadline to opt out was **February 20, 2025.** This motion is made on the grounds of excusable neglect pursuant to Federal Rule of Civil Procedure 6(b)(1)(B).

# MEMORANDUM OF POINTS AND AUTHORITIES

### I. RELEVANT BACKGROUND

Moving Class Member **Arsenio Khaleef Washington** is an individual residing at **2446 N. 20th Street, Philadelphia, PA 19132.** Moving Class Member is a member of the certified

class because **he maintained a Google account(s) during the relevant class period. Google unlawfully accessed my mobile devices to collect, save, and use the data concerning my activity on non-Google apps that have incorporated certain Google software code into the apps/companies.**

The Court set a deadline of February 20, 2025, for class members to submit a request for exclusion. Moving Class Member missed this deadline due to circumstances constituting excusable neglect, as detailed below.

## II. ARGUMENT: THE COURT SHOULD GRANT LATE EXCLUSION FOR EXCUSABLE NEGLECT

Under *Pioneer Investment Services Co. v. Brunswick Associates Black Partnership*, 507 U.S. 380 (1993), courts evaluate four factors to determine excusable neglect: (1) danger of prejudice to the non-moving party; (2) length of delay and its impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith.

Moving Class Member satisfies these criteria:

1. **Reason for Delay:** Moving Class Member failed to meet the deadline because:

   **Data corruption and lack of due process** - Google compromised the integrity of the court's notice plan by supplying a database of accounts they knew were experiencing structural deactivation errors, effectively crippling the administrator's ability to fulfill their neutral duty.

   **Civil Fraud and "Fraud on the Court"** - The defendant intentionally misled the court-appointed Notice Administrator (https://www.googlewebappactivitylawsuit.com/) by providing a corrupted or inactive database while certifying to **Chief Judge Seeborg** that they complied with the court-ordered data production.

   **Violation of Federal Rules of Civil Procedure 23(c)(2)(B) - Violations of the Federal Rules of Civil Procedure (FRCP)** - Handing over an unmonitored or broken database fails the "reasonable effort" and "best notice practicable" standards. Standard class action practice requires that if an email notice bounces back, the administrator **must attempt to cross-reference a physical**

**address** or send a secondary notice. Suppressing this bounce-back data would violate Rule 23.

**Constitutional Violation: The Fifth Amendment (Due Process)** - The U.S. Supreme Court ruled in *Mullane v. Central Hanover Bank & Trust Co.* that notice must be **"reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action."**

**Contempt of Court** - A notice administrator is a fiduciary appointed by Chief Judge Seeborg. Intentionally violating the court-approved schedule is a direct violation of a judicial order.

**Breach of Contract & Breach of Fiduciary Duty** - The administrator is under contract with Class Counsel and paid by the defendant to execute the plan honestly. Intentionally withholding notices constitutes a direct breach of fiduciary duty to the class members they are paid to protect.

- o Moving Class Member never received the class notice. Moving Class Member (I/He/Me/My/Objector/Plaintiff/His, etc.) was sporadically/periodically locked out of his kha.leefpromo@gmail.com account throughout **2021 - 2024**, between **June of 2025 - Jan of 2026, and May/June 2026 - currently** (this account was deactivated AGAIN directly after I received the *Rodriguez et al. v. Google LLC* email notification), and the notice was **not** sent to a prior/current residence (the court-approved notice plan dictated that the Notice Administrator send individual notices **primarily via email**) or other email address. Moving Class Member **did not** receive the notice via email (kha.leefpromo@gmail.com) until **May - June of 2026** and again on **6/20/26** and **7/14/26** (mr.wshngtn9@gmail.com). Moving Class Member **did not** receive timely notice because the Defendant also provided the *Notice Administrator* with an inactive or deactivated email address (kha.leefpromo@gmail.com, tkarmacollection@gmail.com, schooleyhigh@gmail.com, etc) owned by the Defendant (**Gmail** is owned by **Google**). The third-party Notice Administrator (**Epiq**) also informed the Moving Class Member on **7/14/26** that the mr.wshngtn9@gmail.com account is the only account that was provided by Google (which is false

information because the initial class action notification was received by the Moving Class Member on **May/June of 2026** via kha.leefpromo@gmail.com). The Defendant had prior knowledge of these account deactivation issues, rendering the executed email notice plan structurally incapable of reaching the Class Member in violation of Constitutional Due Process.

2. **Lack of Prejudice and Systemic Impact:** Allowing a single class member to opt out late will not prejudice Google LLC or disrupt the administration of the verdict. No claims process has opened, no distribution has begun, and the case is currently pending post-trial/appeal motions.

3. **Good Faith:** Moving Class Member acted in absolute good faith. Upon learning of the deadline omission, they promptly took steps to file this request.

The fact that the administrator **did not** send physical mail directly supports this petition for a late opt-out. If Google provided deactivated email addresses to the administrator, and **no physical mail backup was attempted,** this is strong grounds to argue that the notice plan was structurally incapable of reaching the Member. This supports the claim that missing the February 20, 2025, deadline constitutes EXCUSABLE NEGLECT. Also, this situation highlights the exact flaw in this system. If a defendant controls the email infrastructure (**Gmail**) and provides addresses that are undergoing deactivation issues (kha.leefpromo@gmail.com, schooleyhigh@gmail.com, tkarmacollection@gmail.com, etc.), the "best notice practicable" standard fails. Because the administrator relies entirely on database files provided by the defendant to send the emails, a defendant can exploit the system by turning over obsolete, deactivated, or unmonitored lists. While the administrator is acting in good faith, they are essentially blasting notices into a void. This breakdown is what proves that the Moving Class Member was denied proper due process. Because the lawsuit involves digital privacy and Google accounts, the court authorized the Notice Administrator (Epiq) to send direct notices straight to the **available email addresses found in Google's internal records**. Because the class size spans nearly 100 million accounts, mass physical mailing was deemed structurally impractical and cost-prohibitive by the parties and the court.

**Section II, Subsection 1 ("Reason for Delay"):**

## STATEMENT OF COMPREHENSIVE HARDSHIP AND EXCUSABLE NEGLECT

Moving Class Member **Arsenio Khaleef Washington** failed to meet the February 20, 2025, exclusion deadline due to severe, compounding personal and legal hardships that completely impaired their ability to receive notice or manage legal affairs. During the critical opt-out notice period, Moving Class Member experienced a catastrophic business collapse, immediate financial ruin, and subsequent chronic homelessness. Compounding these structural crises, Moving Class Member was forced to navigate the criminal justice system, culminating in a criminal conviction.

These severe, concurrent disruptions left Moving Class Member without stable housing, regular access to mail, or consistent access to the digital accounts and email addresses where class notices were purportedly sent. Under established federal guidelines, the combination of housing displacement, sudden financial collapse, and involvement with the criminal justice system constitutes a clear case of excusable neglect under Rule 6(b). Moving Class Member filed this motion as soon as practically possible upon "somewhat" stabilizing their circumstances and learning of the case proceedings.

Furthermore, Moving Class Member seeks exclusion because their claims involve distinct, severe, and independent causes of action—including corporate espionage, intentional interception of proprietary personal and business correspondence, and civil rights violations under color of law—which vastly exceed the technical data-tracking parameters of the certified class. Moving Class Member has **extraordinary, unique damages** that dwarf the rest of the class. The data breach caused the Moving Class Member to lose their entire life savings through identity theft, caused severe physical injury, and their damages are too high to accept a standard, low-value class action check. This formally disconnects the Member from the group so Google cannot claim that the $4 settlement bars the Objector from suing them for corporate theft.

### III. CONCLUSION

For the foregoing reasons, Class Member **Arsenio Khaleef Washington** respectfully requests that the Court grant this motion and permit their late exclusion from the Class, preserving their right to pursue individual claims.

Dated: 7/22/26

Respectfully submitted *(Signature)*,

_____

6/6 opt-out

**Printed Name** _Arsenio Khaleef Washington_

**Mailing Address** _2446 N. 20th St., Phila, PA 19132_

**Phone Number** _267-934-0551_

**Email Address** _mr.wshngtn9@gmail.com_

# DECLARATION OF ARSENIO KHALEEF WASHINGTON IN SUPPORT OF MOTION

I, **Arsenio Khaleef Washington**, declare under penalty of perjury under the laws of the United States that the following is true and correct:

1. I am a class member in *Rodriguez v. Google LLC*, Case No. 3:20-cv-04688-RS.
2. I did not submit an exclusion request by February 20, 2025, because **of the FACTS mentioned in my argument and conclusion**.
3. Attached as **Exhibit A** is true and correct documentation proving these circumstances **[e.g., medical records, lease agreements, mail forwarding confirmation]**.
4. I intend to pursue my legal rights individually against Google LLC.

Executed on _7/22/26_ at **[City, State]** _Phila, PA_.

(Signature)_Arsen Whut_

**Printed Name**

_Arsenio Khaleef Washington_

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **MARIA RODRIGUEZ, et al.,** | **Case No. 3:20-cv-04688-RS** |
| Plaintiffs, | **CLASS MEMBER ARSENIO KHALEEF WASHINGTON'S WRITTEN OBJECTION TO CLASS COUNSEL'S FEE APPLICATION (FILED SOLELY IN THE ALTERNATIVE)** |
| v. | Judge: Hon. Richard Seeborg |
| **GOOGLE LLC,** | Courtroom: 3, 17th Floor |
| Defendant. | |

---

# SPECIAL RESERVATION OF RIGHTS AND OBJECTING IN THE ALTERNATIVE

Objector **[Arsenio Khaleef Washington]** submits this Written Objection **strictly in the alternative**. Objector has concurrently filed a *Motion for Late Exclusion (OPT-OUT) from the Class Action* based on comprehensive hardship and excusable neglect. Nothing contained within this document shall be construed as a waiver, abandonment, or forfeiture of Objector's pending request to opt out of this **Class Action**. The objector maintains that they should be excluded from the Class. However, in the event that this Court denies Objector's *Motion for Late Exclusion (OPT-OUT)*, Objector submits these arguments regarding Class Counsel's requested attorney fees solely to preserve their rights as an involuntary member of the Class bound by the final judgment.

# OBJECTION TO CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES

Pursuant to Federal Rule of Civil Procedure 23(h), Class Member **Arsenio Khaleef Washington** hereby objects to Class Counsel's Fee Application requesting 33% of the $425.7 million common fund. The requested award is excessive and disproportionate under the unique circumstances of this case.

## I. CLASS COUNSEL'S NARROW LITIGATION FAILED TO ADDRESS SEVERE UNDERLYING INJURIES

Class Counsel requests an extraordinary benchmark fee for a technical compromise that completely ignored the severe, targeted harms suffered by certain class members. Objector's injuries involve a complex, multi-entity civil conspiracy under color of law involving **Google LLC, Acorns, BMI (Broadcast Music, Inc.), Rocket Lawyer** (Objector's corporate registered agent), **Citizens Bank, Department of Labor & Industry (Unemployment Compensation/benefits Department), Department of Human Services,** state actors within the **Commonwealth of Pennsylvania,** etc. This conspiracy intentionally intercepted proprietary personal and corporate correspondence, targeted Objector's identity, and misappropriated finances and invaluable intellectual property.

While Class Counsel claims their "skills and efforts" warrant 33% of the fund, their generalized litigation framework was entirely inadequate to address or remedy these profound constitutional and commercial violations. By reducing the litigation to a basic automated tracking dispute, Class Counsel's representation provided zero utility or protection for class members who faced extreme financial ruin, copyright infringement, housing displacement, and criminal justice intervention directly flowing from the weaponization of their intercepted data.

## II. A 33% AWARD IS UNJUST GIVEN THE ASYMMETRIC HARDSHIP OF VULNERABLE CLASS MEMBERS

In the Ninth Circuit, the standard baseline for attorneys' fees in a common fund case is 25% or less. Class Counsel's request to upwardly depart to 33% is unjust when vulnerable class members have suffered catastrophic, systemic losses. An award of this magnitude rewards counsel excessively while leaving deeply injured individuals with a nominal, flat-rate payout that fails to account for the total destruction of their business infrastructure and personal liberties. Federal Rule of Civil Procedure 23 requires the

"best notice that is practicable." In the *Rodriguez v. Google* case, **the class size consists of tens of millions of users**.

**The following information can easily be perceived as a "sweetheart deal" or a "sellout settlement" (unethical process of attorneys intentionally negotiating these skewed terms is referred to as collusion):**

- **An individual (the Lead Plaintiff) will initiate a class action due to several distinct legal, financial, and strategic realities. For the vast majority of consumers, the choice is not between a large individual payout and a small class action payout; the choice is between a small class action payout or nothing at all.** Individuals file class actions knowing they might get a lower personal payout because, in most cases, a class action is the **only financially viable way to sue a massive corporation.** However, there is usually a provision in the settlement where the defendant agrees they **will not** object to the massive attorney fee request submitted by the plaintiff's law firm. This structure forms a business partnership between the lead plaintiff and the firm. The lead plaintiff provides the concrete personal injury or violation needed to anchor the lawsuit. The class action firm provides the millions of dollars in capital and legal infrastructure required to fight a multi-billion-dollar corporation.
- **By pooling millions of victims together, the total damages skyrocket to hundreds of millions of dollars. This allows specialized law firms to work on a contingency fee basis (taking a percentage of the winnings), meaning the individual consumer pays $0 out of pocket to fight the corporation. The person who steps forward to file the motion is called the Lead Plaintiff or Class Representative. To compensate them for their time, risk, and effort, courts routinely award them a Service Award (or incentive award). While regular class members might only get a $20 or $50 payout, the Lead Plaintiff often receives an extra $5,000 to $25,000 directly from the settlement fund, approved by the judge. This frequently makes up for the lower standard payout.**
- The company agrees to pay a lump sum into a common fund, which is distributed to class members who submit valid claim forms. A large verdict is awarded, which eventually transforms into a claims payouts process after all appeals are exhausted. If class members **do not** claim their share of the settlement funds, the unclaimed money reverts back to the defendant rather than being redistributed to the class.
- Class action lawsuits occur when a large group of people suffer **"the same legal or financial harm from the same entity"**, allowing one representative individual to

sue on behalf of the entire group. A single company or entity commits a widespread legal violation that impacts **thousands or millions** of consumers. Instead of thousands of people filing **"identical"**, expensive lawsuits, the court consolidates them into a single case to maximize judicial efficiency. One or more individuals (the "Lead Plaintiffs") hire a specialized law firm ("Class Counsel"). They file a standard lawsuit in state or federal court detailing their **"specific injuries"**. However, the complaint explicitly states that the lawsuit is being brought on behalf of a **"putative class"—everyone else who suffered the "exact same issue" (suffering the "exact same issue" does not mean that everyone suffered the "exact same injuries")**. The group is so large that individual lawsuits are impractical (usually at least 40+ people). All class members share "identical legal and factual questions" **(sharing "identical legal and factual questions" does not mean that everyone shares "identical hardship" as a result of the "legal and factual questions")**. The Lead Plaintiff's "injuries are typical" of the rest of the group (this insinuates that the Lead Plaintiff and **all** class members have "typical" and/or the "same injuries"). The Lead Plaintiff and their lawyers will fairly protect the group's interests (there is **nothing** fair about receiving the same payout as a class member who may have experienced lesser or greater injuries).

- A single consumer has almost no leverage against a corporation with an army of corporate defense lawyers. If you sue individually for a small amount, the corporation can easily outspend you, stretch the case out for years, and force you to drop the suit. Transforming the case into a class action creates **existential financial risk** for the company. Once a judge certifies a class, the defendant faces a potential multi-million or billion-dollar judgment, forcing them to take the plaintiffs seriously and negotiate a massive settlement. Many Lead Plaintiffs are motivated by systemic change rather than personal profit. When a company illegally profits by taking $5 from 10 million people, they make $50 million through fraud. If no single individual can afford to sue them, the company keeps the stolen money. A class action forces the company to give up its illegal profits, change its business practices, and fix its security or privacy infrastructure. **If this were true and strategic, Google and their co-conspirators would not be actively (meaning currently and ongoing) and aggressively monitoring/stealing Mr. Washington's communication correspondence, intellectual property, personal and professional finances, deactivating email accounts and/or adding unauthorized alternative recovery options, etc.**

- The lead plaintiff does not pay out of pocket because Class Counsel works entirely on a **contingency fee basis,** meaning the law firm agrees to finance the entire lawsuit upfront in exchange for a percentage of the final winnings. The

lead plaintiff pays **$0 out of pocket** to hire these powerful law firms. This system functions through specific legal and financial arrangements.

- In this specific case, Class Counsel has submitted a **Fee Application** requesting **33% of the total judgment** plus their $12.4 million in expenses. The court—not the lead plaintiff—will review this application and decide exactly how much the lawyers get paid. The lead plaintiff doesn't need to be wealthy because they aren't funding the operation. Their only job is to serve as the "**Class Representative**". To start a lawsuit, the law firm needs a real human being who used a Google account, turned off their tracking settings, and had an Android or iPhone during the class window. As long as the lead plaintiff fits that description, the law firm can legally attach millions of other people to the back of their complaint. The firm uses its own multi-million dollar lines of credit to pay for the trial because they know that if they expose corporate wrongdoing, the financial reward from a jury verdict will be astronomical.
- The system looks rigged because the consumer receives a tiny payout while the attorneys claim massive cuts. However, the reality of the situation is that the lawsuit is a high-stakes business gamble where a massive law firm risks millions of its own dollars to catch a tech giant breaking its own privacy rules.
- Class Counsel (The Supervision), The Defendant (The Source Data & Funding), and The Notice Administrator (The Logistics) are literally constructing, administering, and distributing the class action notice/suit together.

## III. STATEMENT OF SELF-REPRESENTATION (PRO SE)

Objector **Arsenio Khaleef Washington** hereby clarifies and affirms to this Court that they are representing themselves *pro se* in this matter. Objector is not represented by legal counsel, has not retained a private attorney for these specific proceedings, and does not have an attorney who will be appearing on their behalf or requesting fees from this Court.

## IV. NOTICE OF INTENT TO APPEAR AT THE FINAL FAIRNESS HEARING

Objector **Arsenio Khaleef Washington** hereby gives formal notice of their intent to appear and speak at the Final Fairness Hearing currently scheduled for **August 27, 2026, at 10:00 a.m.** in Courtroom 3 of the **United States District Court for the Northern District of California**, presided over by *Chief Judge Richard Seeborg*.

Objector intends to address the Court regarding the asymmetric hardships, civil conspiracy claims, and excessive fee requests detailed in this objection, *provided that Objector's personal, medical, and professional finances permit travel and attendance at the time of the hearing.*

## V. CONCLUSION

If this Court denies Objector's primary request for late exclusion, Objector respectfully requests that the Court deny Class Counsel's upward departure, reduce the fee award to the 25% Ninth Circuit baseline or lower, and order that the preserved funds be **reallocated** to class members who document extraordinary, non-standard hardships resulting from data interception. Printing and mailing letters to 100 million people would cost roughly $50 million to $70 million in postage alone. If the notice administrator's bills are paid *out of* that $425 million, it shrinks the amount of cash left for the class. By forcing the defendant (Google) to pay the administrator separately, 100% of the verdict or settlement money is preserved for the victims and legal fees. Courts prefer email because it costs a fraction of the price, ensuring that millions of dollars are saved and can instead be paid directly to the victims if the plaintiffs win. Most certified class actions result in a **settlement** because the financial risk to the corporate defendant is too high to go to trial. **Google fiercely fought this case for over five years, attempting to have it thrown out multiple times before a jury finally hit them with the $425.7 million verdict.** Google's unauthorized tracking caused the Member/Objector **tangible financial, professional, or physical harm** that an average Google user never experienced. The jury found that Google broke the law by collecting data after users turned the setting off. The "damages" calculated for the class are based on the *value of the data itself* and the violation of privacy. Every class member gets a flat, equal share of the $425.7 million verdict regardless of whether they lost $0 or $10,000. This legal claim/objection involves an active, multi-entity conspiracy between a tech company (Google), my corporate registered agent (Rocket Lawyer), state government officials, etc. to intercept my personal/corporate correspondence and steal my intellectual property. This is about civil rights and corporate fraud.

I am a class member bound by this judgment, and I want the judge to change how the money or attorney fees are handled. The standard payout is unfair to me because Google's tracking occurred while I was experiencing severe vulnerabilities, including homelessness. The attorneys should not take 33% when victims like me suffered immensely during this time frame. Class Counsel does not deserve a 33% payout because their narrow case failed to address the severe, coordinated targeting that I experienced. Moving Class Member has **extraordinary, unique damages** that dwarf the

rest of the class. The data breach caused the Moving Class Member to lose their entire life savings through identity theft, caused severe physical injury, and their damages are too high to accept a standard, low-value class action check. This formally disconnects the Member from the group so Google cannot claim that the $4 settlement bars the Objector from suing them for corporate theft.

Dated: 7/22/26

Respectfully submitted,

(Signature)

Printed Name _Arsenio Khaleef Washington_

Address _2446 N. 20th St., Phila, PA 19132_

Phone Number _267-934-0551_

Email Address _mr.wshngtn9@gmail.com_

The name of all lawyers hired to represent you for the objection (if any). This includes any former or current lawyers who may be paid for any reason regarding your objection;

- N/A

When a class action law firm (like Boies Schiller Flexner LLP in your case) takes on a corporate giant, they assume 100% of the financial risk. The law firm pays for everything out of their own pockets, including filing fees, data analysis, and hiring expensive expert witnesses. In _Rodriguez v. Google_, Class Counsel spent **$12,422,374.42** of their own money just on litigation expenses over the course of the multi-year battle. If the jury had ruled in favor of Google, the law firm would have lost all $12+ million and received nothing for their thousands of hours of labor. The lead plaintiff would still owe nothing. Because the jury ruled against Google and awarded a **$425.7 million verdict**, the law firm is now legally allowed to request their payment. They do this by asking Chief Judge Seeborg to deduct their fees directly from the total winnings before the rest is split among consumers.

8/8 objection

- **Financial Stake:** In cases like securities fraud, courts often favor the applicant with the largest financial loss.

## RECOVERY OF GOOGLE ACCOUNT ACCOUNT INFORMATION

*(Required by the Court Notice to verify your identity as an affected user)*

In data privacy cases, the core legal claim is usually tied to actions taken while logged into a specific account. Sending the legal notice directly to that specific account's registered email address ensures that the notification goes to the exact person whose digital privacy was allegedly violated.

1. **Google Account Email Address(es) associated with the tracking: kha.leefpromo@gmail.com, mr.wshngtn9@gmail.com, schooleyhigh@gmail.com, tkarmacollection@gmail.com, etc.**
2. **Current Postal Address: 2446 N. 20th Street, Philadelphia, PA 19132**

1/2 rep request

# Request for Representation & Class Member Verification Letter

Date: ___7/22/26___

**To:**

Boies Schiller Flexner LLP

Attn: Rodriguez v. Google Class Counsel Team

44 Montgomery Street, 41st Floor

San Francisco, CA 94104

**Via Email:** rodriguezvgoogle@e.epiqnotice.com,
ClassCounsel@**GoogleWebAppActivityLawsuit.com** and/or
info@googlewebappactivitylawsuit.com

**RE: Class Member Verification and Late Notice Documentation**

**Case Name:** *Rodriguez, et al. v. Google LLC*, Case No. 3:20-cv-04688-RS (N.D. Cal.)

To Class Counsel:

I am writing to your firm as an eligible class member in *Rodriguez v. Google LLC*. I am a U.S. Google account holder who had either the "Web & App Activity" or "Supplemental Web & App Activity" settings turned off or paused between **July 1, 2016, and September 23, 2024**, during which time Google allegedly tracked my non-Google app activity.

Please take notice that **I did not receive the formal class action notice regarding this litigation until May/June of 2026.** Because of this delayed notification, I was completely unaware of the **February 20, 2025 exclusion deadline** and the prior windows to apply as a class representative.

While I understand that the trial concluded in **September 2025 with a $425.7 million verdict** and that new lead plaintiffs cannot be added post-trial, I am submitting this letter to:

1.  Formally request that your firm note my status as an actively represented class member.

2. Request that my contact and account information be officially logged into your internal database to ensure I am fully included in the upcoming claims distribution process once post-trial motions and appeals are resolved.

3. **Request that I am advised on any immediate steps required to preserve my stake in the $425.7 million judgment fund.**

4. **Request that your firm represents me in this matter/case and any/all related matters/cases. Under federal law (28 U.S.C. § 1915(e)(1)), a judge will only appoint a private attorney to represent an indigent *pro se* litigant under "exceptional circumstances."**

My verified account details are as follows:

- **Full Legal Name:** Arsenio Khaleef Washington
- **Mailing Address:** 2446 N. 20th Street, Philadelphia, PA 19132
- **Primary Phone Number:** 267-934-0551 (do not call or text)
- **Associated Google Account Email(s):** kha.leefpromo@gmail.com, mr.wshngtn9@gmail.com, schooleyhigh@gmail.com, tkarmacollection@gmail.com, etc.
- **Mobile Devices Used:** Android and iOS devices during the timeframe of the breach (I currently use an Android)

Please confirm receipt of this letter, verify that my account is safely logged in your class database, and provide any case updates regarding the upcoming **August 27, 2026** post-trial hearing.

Sincerely (print),

Arsenio Khaleef Washington

Signature

Feel free to contact Quentin.Bullock@cfpb.gov, FOIA@consumerfinance.gov, CFPB_FOIA@cfpb.gov and/or ogis@nara.gov for more details. View **all** correspondence received via **thekarmacollectionn@aol.com, kha.leefpromo@gmail.com** and/or **mr.wshngtn9@gmail.com**.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA RODRIGUEZ, et al., | Case No. 3:20-cv-04688-RS |
| Plaintiffs, | CLASS MEMBER ARSENIO KHALEEF WASHINGTON'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF FILINGS |
| v. | Rule: Fed. R. Evid. 201 |
| | Judge: Hon. Richard Seeborg |
| GOOGLE LLC, | |
| Defendant. | |

## REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201, Class Member **Arsenio Khaleef Washington** respectfully requests that this Court take judicial notice of public court records and active dockets from preceding and concurrent litigation. Federal Rule of Evidence 201 allows a judge to look at public records—including active court dockets, transcripts, and filed complaints—without requiring you to submit physical copies.

Federal Rule of Evidence 201(b)(2) permits a court to judicially notice a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." It is well-established in the Ninth Circuit that federal courts may take judicial notice of dockets, complaints, and orders filed in other state or federal courts (*see, e.g., Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998)).

Objector/Movant cannot afford the prohibitive administrative and printing costs required to replicate and attach voluminous physical exhibits due to ongoing financial hardship and housing displacement. Accordingly, Objector/Movant requests that this Court take judicial notice of the following publicly filed records, which contain significant forensic evidence, verified claims, and factual timelines directly relevant to the injuries and excusable neglect asserted in the accompanying filings:

1. **Active Docket Name:** *Arsenio K. Washington v. Department of Human Services*
2. **Case Number:** *806 C.D. 2026 (B-25-08-02518)*
3. **Court Jurisdiction:** Commonwealth Court of Pennsylvania
4. **Specific Filings of Relevance (initially mailed/filed on 6/13/26):**
   - 5/28/26 FOIA/PA (RTK) Request
   - Page 1 of DHS-BHA appeal/petition for review (continued) - 20 pages
   - Page 1 of DHS waiver (Commonwealth of Pennsylvania, Department of Human Services Authorization for Use or Disclosure of Personal Information) - 1 page (B.1 - B.3 of the second page have been removed, and the 2 page "CLAIMANT QUESTIONNAIRE REPORTING REQUIREMENTS BACKDATING" form has been removed without my authorization)
   - 6/8/26 DHS RTK notice - 1 page
   - 5/29/26 SSA itemized list for SSI/SSDI - 1 page
   - 12/2024 - 3/2025 Kevin A. Carson (Pennsylvania 61st Legislative District is a state House district in Montgomery County) email thread regarding SNAP/medical benefits, UC benefits appeal hearing, business endeavors, etc. - 5 pages
   - 2/6/26 SSA appointment confirmation notice - 2 pages
   - 3/5/26 SSA appointment/application summary - 12 pages
   - 6/26/26 application to proceed in IFP order
   - 6/30/26 Affidavit - 2 pages
   - 6/30/26 IFP (In Forma Pauperis) - 6 pages
   - 7/1/26 Affidavit - 1 page
   - 7/2/26 Supplemental/Corrective Affidavit - 1 page
   - 7/7/26 Commonwealth Court of PA "untimely" order (quash)
   - 7/21/26 "nunc pro tunc" petition

*Also (initially filed on **6/25/26**),*

5. **Active Docket Name:** *Commonwealth of Pennsylvania v. Arsenio Washington*

6. **Case Number:** *CP-46-CR-993-2024* **(CP-46-CR-0000993-2024)**
7. **Court Jurisdiction:** *Court of Common Pleas of Montgomery County, Pennsylvania Criminal Division*
8. **Specific Filings of Relevance:**
   - 6/30/26 PCRA Proceeding Order
   - 7/3/26 "court appointed attorney" notice (6/30/26 PCRA Proceeding Order) email sent to daappeals@montgomerycountypa.gov
   - 7/13/26 Initial client letter from Blevins Law, LLC (email sent to Ms. Blevins, Esquire on 7/13/26 as well)
   - 7/13/26 "court appointed attorney" notice (6/30/26 PCRA Proceeding Order) email sent to daappeals@montgomerycountypa.gov and Rachel R. Blevins, Esq. (blevins.law@outlook.com)
   - 7/14/26 and 7/15/26 "court appointed attorney" notice (7/13/26 Initial client letter from Blevins Law, LLC) email sent to daappeals@montgomerycountypa.gov and Rachel R. Blevins, Esq. (blevins.law@outlook.com)
   - 7/14/26 and 7/15/26 "court appointed attorney" notice (7/13/26 Initial client letter from Blevins Law, LLC) email sent to Rachel R. Blevins, Esq. (blevins.law@outlook.com)
   - 7/16/26 "court appointed attorney" notice (7/13/26 Initial client letter from Blevins Law, LLC) email sent to daappeals@montgomerycountypa.gov and Rachel R. Blevins, Esq. (blevins.law@outlook.com)
   - 7/16/26 "court appointed attorney" notice (7/13/26 Initial client letter from Blevins Law, LLC) email sent to Rachel R. Blevins, Esq. (blevins.law@outlook.com)
   - 7/17/26 "court appointed attorney" notice (7/13/26 Initial client letter from Blevins Law, LLC) email sent to daappeals@montgomerycountypa.gov and Rachel R. Blevins, Esq. (blevins.law@outlook.com)
   - 7/17/26 "court appointed attorney" notice (7/13/26 Initial client letter from Blevins Law, LLC) email sent to Rachel R. Blevins, Esq. (blevins.law@outlook.com)
   - 7/18/26 "court appointed attorney" notice (7/13/26 Initial client letter from Blevins Law, LLC) email sent to daappeals@montgomerycountypa.gov, Rachel R. Blevins, Esq. (blevins.law@outlook.com), and Paul Dewan (pdewan@lasp.org)
   - 7/18/26 "court appointed attorney" notice (7/13/26 Initial client letter from Blevins Law, LLC) email sent to Rachel R. Blevins, Esq. (blevins.law@outlook.com) (7/17/26 urine/drug test concerns)

4/13 judicial notice

- IN FORMA PAUPERIS AFFIDAVIT PETITION - 2 pages, PETITION FOR POST-CONVICTION COLLATERAL RELIEF (dc-198 continued) - 14 pages
- Form DC-198 - 7 pages
- Certificate of Service (Montgomery County District Attorney's Office is 1 page, Montgomery County Clerk of Courts is 2 pages)
- Magisterial District Judge 38-1-16 docket sheet (MJ-38116-CR-0000261-2023) - 3 pages
- COURT OF COMMON PLEAS OF MONTGOMERY COUNTY CP-38-46-Crim docket sheet (CP-46-CR-0000993-2024) - 15 pages
- Montgomery County Court of Common Pleas CP-38-46-Crim Court Summary (CP-51-MD-0000474-2026, CP-36-CR-0005986-2017, CP-46-CR-0000993-2024, CP-46-MD-0000063-2024, MC-51-SU-0007960-2025, and CP-67-MD-0004309-2015. The MC-51-SU-0007960-2025 docket is related to the 6/29/25 Septa transit arrest) - 2 pages (see 6/29/25 Septa Transit citation for more details. 2 pages)
- Page 1 of DHS waiver (Commonwealth of Pennsylvania, Department of Human Services Authorization for Use or Disclosure of Personal Information) - 1 page (B.1 - B.3 of the second page have been removed, and the 2 page "CLAIMANT QUESTIONNAIRE REPORTING REQUIREMENTS BACKDATING" form has been removed without my authorization)
- 9/2024 - 1/2025 Septa Transit (Commonwealth of PA) summary docket sheet - 3 pages
- 7/2/25 Montco Sheriff's Office Property/evidence report - 3 pages (has 801 Girard Ave address)
- 3/9/26 Philadelphia Adult Probation/parole rules of supervision notice - 1 page
- 1/14/26 Montco Adult Probation/parole rules of supervision notice - 2 pages
- 1/15/26 Montgomery County Correctional Facility (MCCF) summary release form, medical claim (Prime Healthcare, Inc.) - 1 page
- 5/29/26 SSA itemized list for SSI/SSDI - 1 page

- 5/13/26 Secretary DHS-BHA decision - 1 page (see # 21, 25 and 26 of

  exhibit A)

- Page 1 of DHS-BHA appeal/petition for review (continued) - 20 pages
- 4/27/26 DHS-BHA order/decision - 16 pages

- 6/8/26 DHS RTK notice - 1 page
- 2/6/26 SSA appointment confirmation notice - 2 pages
- 3/5/26 SSA appointment/application summary - 12 pages
- 12/2024 - 3/2025 Kevin A. Carson (Pennsylvania 61st Legislative District is a state House district in Montgomery County) email thread regarding SNAP/medical benefits, UC benefits appeal hearing, business endeavors, etc. - 5 pages
- 2/2/26 Montco fines and costs payment plan notice - 1 page (this document has Dr. Valerie A. Arkoosh listed as the Chair of the Montgomery County Board of Commissioners) (see # 14, 25 and 26 of exhibit A)
- 4/29/26 Montco fines and costs payment plan postponement notice - 1 page
- 3/9/26 - 3/25/26 Philadelphia Adult Probation/parole accounting and OCC payment plan notice - 5 pages
- 5/28/26 FOIA request - 15 pages
- 1/8/26 DHS-BHA remand order - 1 page (see # 14, 21 and 26 of exhibit A)
- 5/1/26 DHS-BHA petition - 1 page (see # 14, 21 and 25 of exhibit A)
- 6/11/26 DHS-BHA appeal - 6 pages
- 6/11/26 DHS-BHA IFP (In Forma Pauperis) form - 4 pages
- 6/11/26 Certificate of compliance and proof of service - 2 pages
- Rule 127. Form - 4 pages

These public records demonstrate the existence of independent, severe causes of action—including civil conspiracy under color of law and intellectual property misappropriation—that establish the necessary factual nexus to Objector/Movant's claims.

## Proximate Cause (causation):

6/13 judicial notice

- **The federal Wiretap Act (18 U.S.C. § 2511)**
- **The Defend Trade Secrets Act (18 U.S.C. § 1836)**
- **42 U.S.C. § 1983 (Civil Rights Violations)**
- **RICO (18 U.S.C. § 1962)**

Objector/Movant respectfully requests that this Court take **Judicial Notice pursuant to Fed. R. Evid. 201** of the public records and active dockets in the matter of **Arsenio K. Washington v. The Commonwealth of Pennsylvania (there are multiple defendants in this case)**, Case No. **pending**, currently pending in the **U.S. District Court for the Eastern District of Pennsylvania, Clerk's Office, Room 2609**. The filings in that matter (mailed/filed on **6/26/26**)—specifically **JS 44 Civil Cover Sheet (exhibit A/B, defendants), 5 pages**—contain the underlying forensic data and verified claims/list of exhibits relevant to the injuries asserted herein. .

9. **Specific Filings of Relevance:**
   - Civil Cover Sheet (Form JS 44) - 2 pages, JS 44 Civil Cover Sheet (exhibit A/B, defendants) 5 pages
   - IFP Application (Form AO 240) - 2 pages
   - Civil Rights Complaint (statement of claims) (Form Pro 15) - 6 pages (section III continued, 21 pages)
   - Statement of claims (details) - 60 pages
   - Motion for Service Pursuant to a Special Order: Under Pa.R.C.P. 430 - 4 pages
   - Magisterial District Judge 38-1-16 docket sheet (MJ-38116-CR-0000261-2023) - 3 pages
   - Montgomery County Court of Common Pleas CP-38-46-Crim Court Summary (CP-51-MD-0000474-2026, CP-36-CR-0005986-2017, CP-46-CR-0000993-2024, CP-46-MD-0000063-2024, MC-51-SU-0007960-2025, and CP-67-MD-0004309-2015. The MC-51-SU-0007960-2025 docket is related to the 6/29/25 Septa transit arrest) - 2 pages (see 6/29/25 Septa Transit citation for more details. 2 pages)

7/13 judicial notice

- 5/13/26 Secretary DHS-BHA decision - 1 page (see # 37, 45 and 46 of exhibit B)

- 4/27/26 DHS-BHA order/decision - 16 pages

- Page 1 of DHS-BHA appeal/petition for review (continued) - 20 pages
- Page 1 of DHS waiver (Commonwealth of Pennsylvania, Department of Human Services Authorization for Use or Disclosure of Personal Information) - 1 page (B.1 - B.3 of the second page have been removed, and the 2 page "CLAIMANT QUESTIONNAIRE REPORTING REQUIREMENTS BACKDATING" form has been removed without my authorization)
- 8/10/2017 Lancaster County District Attorney Drug & Alcohol Diversion Program CLASS RESERVATION notice - 2 pages
- 12/2023 - 3/2024 PNC Bank settlement/consultation email thread - 23 pages
- 6/8/26 DHS RTK notice - 1 page
- 5/29/26 PA Department of Transportation notice - 1 page
- CoCRecordsRequest@yorkcountypa.gov FOIA request email reply (Yolanda, Administrative Clerk/Records Check, York County Clerk of Courts) - 1 page (there is no date on the email reply)
- 9/13/23 - 9/21/23 Citizens Bank trespassing/cease and desist email thread - 4 pages
- 5/21/26 - 6/11/26 Google civil suit email thread - 5 pages
- IRS, Brandon McCray, Karma Collection Group, OCRE form (Case Number: CR-522) - 2 pages (there is no date on the email photo or OCRE form)
- COURT OF COMMON PLEAS OF MONTGOMERY COUNTY CP-38-46-Crim docket sheet (CP-46-CR-0000993-2024) - 15 pages
- COURT OF COMMON PLEAS OF LANCASTER COUNTY CP-02-36-Crim docket sheet (CP-36-CR-0005986-2017) - 15 pages
- 5/29/26 SSA itemized list for SSI/SSDI - 1 page
- 1/20/26 CVS/Ibuprofen receipt - 2 large pages
- 2/6/26 Rothman Orthopaedics cost policy - 3 pages
- 1/20/26 - 1/22/26 Jefferson Health ER visit and billing statement - 11 pages
- 2/2025 - 3/2025 Penn Medicine doctor visit/order - 17 pages

- 1/2025 Ivy Rehab physical therapy visit/consultation - 4 pages
- 11/2024 - 12/2024 Friends Urgent Care doctor visit - 8 pages
- 9/2024 - 1/2025 Septa Transit (Commonwealth of PA) summary docket sheet - 3 pages
- 7/2/25 Montco Sheriff's Office Property/evidence report - 3 pages (has 801 Girard Ave address)
- 3/9/26 Philadelphia Adult Probation/parole rules of supervision notice - 1 page
- 1/14/26 Montco Adult Probation/parole rules of supervision notice - 2 pages
- 2/6/26 SSA appointment confirmation notice - 2 pages
- 3/5/26 SSA appointment/application summary - 12 pages
- 1/15/26 Montgomery County Correctional Facility (MCCF) summary release form, medical claim (Prime Healthcare, Inc.) - 1 page
- 12/2024 - 3/2025 Kevin A. Carson (Pennsylvania 61st Legislative District is a state House district in Montgomery County) email thread regarding SNAP/medical benefits, UC benefits appeal hearing, business endeavors, etc. - 5 pages
- 2/2/26 Montco fines and costs payment plan notice - 1 page (this document has Dr. Valerie A. Arkoosh listed as the Chair of the Montgomery County Board of Commissioners) (see # 8, 45 and 46 of exhibit B)
- 4/29/26 Montco fines and costs payment plan postponement notice - 1 page
- 3/9/26 - 3/25/26 Philadelphia Adult Probation/parole accounting and OCC payment plan notice - 5 pages
- 5/28/26 FOIA request - 15 pages
- 6/11/26 DHS-BHA appeal - 6 pages
- 6/11/26 DHS-BHA IFP (In Forma Pauperis) form - 4 pages
- 6/11/26 Certificate of compliance and proof of service - 2 pages
- Rule 127. Form - 4 pages
- 5/1/26 DHS-BHA petition - 1 page (see # 8, 37 and 46 of exhibit B)
- 1/8/26 DHS-BHA remand order - 1 page (see # 8, 37 and 45 of exhibit B)
- 7/18/25 DHS "no longer qualify for medical coverage" notice - 8 pages
- REQUEST FOR DRIVER INFORMATION (DL-503 (9-25)) form - 2 pages
- Portfolio Snapshot - 12 or 13 pages
- PETITION FOR POST-CONVICTION COLLATERAL RELIEF (dc-198 continued) - 14 pages (IN FORMA PAUPERIS AFFIDAVIT PETITION - 2

pages, Form DC-198 - 7 pages, Certificate of Service/Montgomery County District Attorney's Office is 1 page/Montgomery County Clerk of Courts is 2 pages

**Financial Loss (Out-of-Pocket Damages) and Business Loss** - *Rocket Lawyer* (Objector's corporate registered agent) officially announced their expanded strategic partnership and collaboration with **Google Cloud** on **December 21, 2023**. Google intercepted proprietary business secrets or critical operational communications, and the exposure of *that specific data* directly caused Rocket Lawyer to stop communication and Objector's business to collapse. Defendants' alleged actions directly resulted in measurable financial losses. Plaintiff alleges unlawful evictions during the COVID-19 pandemic, banking irregularities involving Citizens Bank and PNC Bank, inaccurate unemployment and IRS reporting (including an allegedly false Form 1099-G), continued child-support collections despite DNA evidence, denial of public benefits, confiscation of personal property, and refusal to return or provide access to professional and legal records. Plaintiff further alleges payment of court costs, fines, transportation expenses, storage costs, litigation expenses, and other out-of-pocket expenditures that would not have been incurred absent Defendants' alleged misconduct.

Plaintiff also alleges that Defendants' refusal to timely process SNAP and Medical Assistance benefits, failure to investigate banking disputes, and interference with unemployment compensation and licensing matters deprived him of income and required him to expend additional money for food, transportation, housing, communications, document requests, and legal filings. These alleged financial losses were the foreseeable and natural consequence of the challenged conduct rather than the result of independent intervening causes.

As a direct and proximate result of Defendants' alleged acts and omissions, Plaintiff suffered concrete economic damages, including loss of income, loss of public benefits, property-related expenses, storage costs, banking losses, litigation expenses, licensing-related losses, and other out-of-pocket financial harm directly attributable to Defendants' alleged conduct.

**Severe Professional or Commercial Harm** - Defendants' alleged conduct substantially impaired Plaintiff's professional, business, and commercial opportunities. Plaintiff alleges that inaccurate governmental records, banking restrictions, frozen assets, denial of unemployment benefits, interference with his insurance licensing, refusal to terminate or resolve contractual disputes, confiscation of business records, incarceration, and denial of access to legal documents prevented him from operating

his businesses, protecting intellectual property, maintaining professional relationships, and pursuing commercial opportunities.

Plaintiff further alleges that the loss of stable housing, repeated interruptions of public benefits, criminal proceedings, incarceration, and administrative barriers disrupted ongoing business negotiations, delayed licensing activities, prevented meetings with business partners and investors, interfered with contractual relationships, and damaged Plaintiff's professional reputation. Plaintiff also alleges that he was unable to adequately maintain his music publishing interests, entertainment ventures, research projects, and other commercial enterprises because of Defendants' alleged actions.

These commercial and professional injuries were the foreseeable consequence of the alleged misconduct. As a direct and proximate result of Defendants' conduct, Plaintiff alleges lost business opportunities, diminished earning capacity, interference with existing and prospective contractual relationships, reputational injury, interruption of commercial operations, and continuing economic losses.

**Physical Safety or Security Violations** - Plaintiff alleges that Defendants' conduct created foreseeable risks to his personal safety and security. According to the complaint, Plaintiff reported suspected audio and video surveillance inside his residence, alleged surveillance while incarcerated, interference with medical care, denial of medical records, refusal to investigate reported safety concerns, confiscation of property, and conditions of confinement that allegedly exposed him to unsafe living conditions and inadequate medical treatment. Plaintiff further alleges that these reports were ignored or inadequately investigated despite repeated notice.

Plaintiff also alleges that the challenged actions resulted in physical harm, including injuries sustained following the New York incident, involuntary medical procedures during incarceration, denial of requested medical and dental care, exposure to allegedly unsafe environmental conditions, and interference with access to healthcare and legal remedies. Plaintiff contends that repeated failures to investigate or correct these alleged conditions increased the risk of continuing harm.

Accordingly, Plaintiff alleges that Defendants' acts and omissions were a substantial factor in creating and perpetuating dangerous conditions affecting his physical safety and personal security. The resulting injuries—including physical injury, deprivation of medical care, loss of security, and continued exposure to allegedly hazardous conditions—were the natural, foreseeable, and direct consequence of Defendants' alleged conduct.

**Unauthorized Exposure** - The data Google illegally collected was manipulated, intercepted by bad actors, or improperly handed over to law enforcement in a way that directly resulted in a wrongful conviction, chronic homelessness, etc. The financial ruin directly caused by Google's data interception, and their co-conspirators, was the immediate trigger for the Objector's loss of housing, personal and professional finances, medical claims, etc. Defendants' alleged conduct directly resulted in the unauthorized exposure of Plaintiff's private, legal, medical, financial, and personal information. According to the statement of claims, Plaintiff alleges that unauthorized audio and video surveillance occurred inside his residence, hidden surveillance was later installed within the Montgomery County Correctional Facility, undercover inmates and staff possessed knowledge of confidential legal matters and business activities that Plaintiff had not disclosed, inaccurate medical and governmental records were created and shared among agencies, and confidential court, probation, and DHS-related information was allegedly exchanged among Defendants without lawful authorization. Plaintiff also alleges that false information regarding his mental health, probation status, attorney, and criminal case was distributed to third parties, including evaluators involved in his PSI/PPI assessment.

Plaintiff further alleges that the unauthorized disclosure and dissemination of this information caused foreseeable harm by facilitating adverse governmental decisions, criminal and administrative proceedings, housing denials, benefit interruptions, reputational injury, interference with legal representation, and commercial harm. The alleged sharing of inaccurate or confidential information among correctional officials, DHS, BHA, court personnel, probation officials, healthcare providers, and other defendants allegedly became the basis for subsequent actions that negatively affected Plaintiff's liberty, property, finances, and access to public benefits.

Accordingly, Plaintiff alleges that Defendants' unauthorized exposure, disclosure, and use of confidential information were a substantial factor in causing the injuries complained of. The resulting privacy violations, reputational harm, administrative and judicial consequences, financial losses, and interference with Plaintiff's legal and business affairs were the natural, foreseeable, and direct consequences of Defendants' alleged conduct.

1. Law firms can confidently take on massive, financially strong defendants because they rely on **systemic corporate evidence** rather than the lead plaintiff's personal phone data.

2. In data privacy cases, the lead plaintiff does not need to provide "hard proof" of the breach or tracking from their own phone. The law firm hires elite software engineers and forensic data experts before they even file the lawsuit. In *Rodriguez v. Google*, these experts proved that Google embedded specific tracking code (called **Firebase and Google Mobile Ads SDK**) inside thousands of popular third-party apps like Uber and Venmo.

3. The experts proved that even if an individual user toggled their "Web & App Activity" setting to *OFF*, Google's code was hardwired to keep collecting, sending, and storing that user's data anyway.

4. The law firm (Boies Schiller Flexner LLP) forces Google under federal subpoena to hand over their internal server blueprints, developer logs, and emails. The "hard proof" used to win the case came directly from Google's own internal databases, showing that millions of users had their settings ignored.

5. When a lawsuit directly accuses a primary tech giant of covert surveillance and data manipulation, the parent company has no incentive to amplify that news on its own platforms. You will rarely see news about Google's privacy violations trending on Google Search, YouTube, or partner advertising networks because algorithmic trends favor content that maximizes corporate ad revenue. Because there is no active link for viral content creators to share, the case receives almost zero traction on TikTok, X (formerly Twitter), or Instagram.

6. Google has settled several multi-billion-dollar tracking lawsuits over the last few years, including a $1.38 billion settlement with the State of Texas and a $392 million location-tracking settlement. Because the public experiences "Google lawsuit fatigue," standard social media users often confuse the *Rodriguez* jury verdict with prior settlements that have already concluded. Google hired one of the most expensive defense firms in the world (<u>Cooley LLP</u>) to destroy the lawsuit. Google's lawyers are currently filing intensive, post-trial motions asking Chief Judge Seeborg to throw out the entire verdict, and they have publicly vowed to appeal the decision to the Ninth Circuit Court of Appeals.

7. Google's defense attorneys will argue a simple timeline: thousands of people had their data tracked by Google, but thousands of people **did not** get convicted of a crime or experience homelessness. Therefore, Google's code alone did not cause the Objector's hardship—Google's code/interception of data AND the collaborative/conspired events did.
   - See my attached 2-3 page email print out for more details (email print out was mailed to the Clerk of Courts - United States District Court -Northern District of California, BOIES SCHILLER FLEXNER LLP, and the Notice Administrator between **6/1/26** and **7/1/26**)
   - See the **7/2/26 CFPB (Consumer Financial Protection Bureau) Ack Letter**

13/13 judicial notice

- See my **7/8/26 FOIA/PA (RTK) Identity Verification/Demand Notice Amendment**
- See **6/24/26 IMA Group** (**Department of Labor & Industry, Pennsylvania Bureau of Disability Determination's** *medical examiner* for the *SSA*) notice
- See the **7/14/26** email notification that was sent to me (mr.wshngtn9@gmail.com) from ClassCounsel@googlewebappactivitylawsuit.com

Dated: __7/22/26__

Respectfully submitted,

*(Signature)*

_____

**Printed Name**

Arsenio Khaleef Washington

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA RODRIGUEZ, et al., | Case No. 3:20-cv-04688-RS |
| Plaintiffs, | CLASS MEMBER ARSENIO KHALEEF WASHINGTON'S UNSWORN DECLARATION OF SERVICE BY MAIL |
| v. | Statute: 28 U.S.C. § 1746 |
| | Judge: Hon. Richard Seeborg |
| GOOGLE LLC, | |
| Defendant. | |

## UNSWORN DECLARATION OF SERVICE BY MAIL

I, **Arsenio Khaleef Washington**, declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct:

1. I am a class member representing myself *pro se* in the above-captioned matter.
2. Due to documented, compounding personal hardships—including acute financial indigence and chronic homelessness—I am entirely without access to a third-party process server, family members, or friends to execute service on my behalf. Furthermore, commercial and government postal clerks at my point of transit have declined to execute a civil proof of service signature.
3. On ___7/22/26___, I personally enclosed a true and correct copy of the attached **Motion for Late Exclusion / Written Objection, Clerk Cover Letter, Request for Representation & Class Member Verification Letter, USPS mailing receipt or**

2/3 unsworn dec

**Certificate of Mailing,** and **Request for Judicial Notice** in sealed envelopes with first-class postage fully prepaid, and I personally deposited them into an official United States Postal Service mailbox located in the City of ___Philadelphia___, State of ___PA___, addressed to the following interested parties:

**CLERK OF THE COURT:**

United States District Court

Northern District of California — Phillip Burton Federal Building

450 Golden Gate Avenue

San Francisco, CA 94102

**CLASS COUNSEL:**

Mark C. Mao / Beko Reblitz-Richardson

BOIES SCHILLER FLEXNER LLP

44 Montgomery Street, 41st Floor

San Francisco, CA 94104

**DEFENSE COUNSEL:**

Benedict Hur / Google Defense Team

COOLEY LLP

3 Embarcadero Center, 20th Floor

San Francisco, CA 94111

**CLAIMS ADMINISTRATOR (Include ONLY if submitting an Objection):**

Rodriguez v. Google Notice Administrator

3/3 unsworn dec

P.O. Box 2749

Portland, OR 97208-2749

Executed on ___7/22/26___ at **[City and State]**

Phila, PA

_____.

*(Signature)*

_____

**Printed Name**

Arsenio Khaleef Washington