# Exhibit 1

[YOUR FULL NAME]

[YOUR MAILING ADDRESS]

[CITY, STATE, ZIP CODE]

[YOUR PHONE NUMBER]

[YOUR EMAIL ADDRESS]

Date: ______________________

**Clerk of the Court**

United States District Court

Northern District of California

Phillip Burton Federal Building

450 Golden Gate Avenue

San Francisco, CA 94102

**Re:** Objection to Class Counsel's Fee Application in *Rodriguez v. Google,* Case No. 3:20-CV-4688-RS

To the Honorable Court:

I am a Class Member in the above-referenced action and write to formally object to the Fee Application filed by Class Counsel in Rodriguez v. Google, Case No. 3:20-CV-4688-RS. I object to the requested attorneys' fees of 33% of the total judgment (approximately $145 million) on the grounds currently set forth.

## I. The Requested 33% Fee Substantially Exceeds the Ninth Circuit Benchmark

The Ninth Circuit has long established that 25% of a common fund is the appropriate benchmark for attorneys' fees in class action settlements. See In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 942 (9th Cir. 2011); Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000). Class Counsel's request for 33% departs significantly upward from this benchmark and the burden falls on counsel to justify that departure with extraordinary circumstances. No such extraordinary circumstances exist here.

A 33% fee on a judgment of over $440 million yields approximately $145 million in attorney compensation. This amount is unconscionable when measured against the actual recovery per class member, which will be a small fraction of what each affected user is owed for years of unauthorized data collection.

## II. The Fee Request Is Disproportionate to the Work Performed and the Results Obtained

Under Federal Rule of Civil Procedure 23(h) and the factors articulated in Vizcaino v. Microsoft Corp., 290 F.3d 1043 (9th Cir. 2002), this Court must evaluate the reasonableness of any fee request by examining, among other factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; and (5) awards in similar cases.

The results obtained here, while presented as a victory, are in fact woefully inadequate. Google is one of the largest and most profitable corporations in human history. A $425 million verdict, even with interest, represents a fraction of a single day's revenue for Google's parent company. Google's annual revenues exceed $300 billion. The judgment in this case, divided among millions of class members, will likely yield only a few dollars per affected user, while counsel walks away with hundreds of millions of dollars. This is not a victory for the Class. It is, at best,

a symbolic gesture, and at worst, a quiet settlement of one of the most serious privacy violations in modern history.

The disparity is staggering: Class Counsel seeks $145 million in fees for representing class members who will receive, on average, pocket change. This ratio is inherently unjust and turns the class action mechanism on its head. The class action procedure exists to vindicate the rights of ordinary people who have been wronged by powerful actors. It does not exist as a vehicle for attorneys to extract enormous sums while the actual victims receive token compensation.

## III. The Underlying Judgment Itself Is Inadequate to Deter Future Misconduct

While the question of the judgment amount is largely behind us, I write to express that the relatively modest sanction against Google compounds the injustice of an inflated fee award. Google is a near-monopoly in search, advertising, and mobile operating systems. It violated the privacy of tens of millions of Americans who had explicitly turned off tracking — meaning these users took deliberate action to protect their data, and Google ignored those preferences. A judgment of $440 million does not meaningfully deter such conduct from a company of Google's size and resources. It is, in practical terms, a rounding error on Google's balance sheet.

When the company that committed the wrong faces no meaningful financial consequence, and the attorneys who litigated the case extract the lion's share of the recovery, the American people are entitled to ask: who exactly does this system serve?

## IV. Public Confidence in the Civil Justice System Is at Stake

This case is being watched. Tens of millions of Americans were notified that their privacy was violated by Google. They have been told a federal jury vindicated their rights. If this case concludes with attorneys collecting $145 million, the class representatives collecting $135,000, and the actual victims receiving a few dollars each, the message sent to the public is

unmistakable: the civil justice system does not work for ordinary people. It works for lawyers and for corporations who can afford to absorb the cost of breaking the law.

Public faith in the institutions that govern this country is already strained. Americans are increasingly concerned that the system is captured by the wealthy and the well-connected, and that giant technology corporations operate with effective impunity. This Court has an opportunity to push back against that perception. By reducing the requested fee to a more reasonable percentage — at or below the Ninth Circuit's 25% benchmark, and ideally lower given the size of the fund — this Court can demonstrate that the civil justice system still serves the people it was designed to protect.

## V. The Notice of This Proceeding Was Filtered into Spam Folders by the Very Defendant Whose Conduct Is at Issue

I write separately to raise a serious procedural concern regarding the adequacy of notice in this proceeding. The court-ordered Notice of Class Action that informed me of Class Counsel's Fee Application and my right to object was delivered to my Gmail spam/junk folder, not my inbox. Gmail is, of course, owned and operated by the defendant in this action, Google LLC.

This was not an isolated incident. I have personally confirmed with multiple friends, family members, and professional colleagues — all of whom are likely Class Members — that the same Notice was routed to their spam or junk folders on their personal and professional Gmail accounts. Many were unaware they had received the Notice at all until I prompted them to check their spam folders. I have no doubt that countless other Class Members never discovered the Notice and have lost the opportunity to object or otherwise participate in this proceeding.

This presents an obvious and troubling conflict of interest. Federal Rule of Civil Procedure 23(c)(2)(B) requires that class members receive "the best notice that is practicable under the circumstances." When the defendant in a class action also controls the email infrastructure

through which notice is delivered, and that infrastructure systematically filters the notice away from class members' inboxes, the resulting notice is plainly not the best practicable under the circumstances. Google — the party with the greatest interest in suppressing awareness of this case — effectively controlled whether millions of Class Members would ever see the Notice at all.

This benefits Google in two concrete ways: (1) fewer Class Members are aware of the verdict, the judgment, and the privacy violations Google was found to have committed, which limits the reputational damage Google would otherwise suffer; and (2) fewer Class Members will be positioned to make claims if and when funds are ultimately distributed, leaving more residual money on the table. Neither outcome is acceptable, and neither is consistent with the due process protections that class actions are designed to provide.

Accordingly, I respectfully urge the Court to take the following corrective measures: (a) extend the deadline to object to the Fee Application and any other deadlines tied to the current notice; (b) require Google to ensure, through technical means within its sole control, that any future court-ordered notices in this matter are delivered directly to Class Members' inboxes and not routed to spam, junk, promotions, or other secondary folders on Gmail or any other Google-operated service; and (c) require Google itself — as the party best positioned to ensure deliverability on its own platform — to be a sender of record on future notices, so that Class Members see clearly that the company found liable is the company informing them of their rights. A notice from "Google" that lands in a Class Member's inbox is more honest, more visible, and more likely to restore public confidence than the current arrangement, in which a third-party administrator's email is silently quarantined by Google's own filters.

**VI. Requested Relief**

For the foregoing reasons, I respectfully request that this Court:

1. Deny Class Counsel's request for 33% of the judgment as excessive and contrary to Ninth Circuit precedent;
2. Award a fee at or below the Ninth Circuit's 25% benchmark, with downward adjustment appropriate given the size of the common fund and the modest per-class-member recovery;
3. Scrutinize the requested $12,422,374.42 in costs and expenses to ensure each line item is reasonable and necessary;
4. Direct that any reduction in attorneys' fees be redistributed to the Class;
5. Extend the deadline for objections to the Fee Application in light of the demonstrated notice failure described in Section V; and
6. Order Google to take affirmative technical steps — including whitelisting court-ordered notices on Gmail and any other Google-operated email service — to ensure that all future notices in this matter are delivered directly to Class Members' inboxes, and require Google itself to be identified as a sender of record on any such future notices.

## VII. Required Disclosures

Pursuant to the requirements set forth in the Court-ordered Notice, I provide the following information:

**Full Name:** [YOUR FULL NAME]

**Mailing Address:** [YOUR FULL MAILING ADDRESS]

**Telephone Number:** [YOUR PHONE NUMBER]

**Email Address:** [YOUR EMAIL ADDRESS]

**Lawyers Retained for This Objection:** None. Pro Se. I am appearing Pro Se and am submitting this objection on my own behalf, without legal representation. No attorney, current or former, has been retained or will be paid in any capacity in connection with this objection.

Respectfully submitted,

______________________________

[YOUR PRINTED FULL NAME]

**Objector, Pro Se**

Date: ____________________

Outlook

**Pathetic: Class Member Objection**

**From** [redacted]
**Date** Thu 5/28/2026 10:11 AM
**To** Mark C. Mao <[redacted]>; Beko Richardson <[redacted]>
**Cc** Jordan Bergsten <[redacted]>; Julia Bront <[redacted]>; Reed Forbush <[redacted]>; Tatiana Nikolaeva <[redacted]>; Ted Uno <[redacted]>; Andrew Villacastin <[redacted]

1 attachment (19 KB)
Objection_to_Fee_Application_Rodriguez_v_Google [Template].docx;

**CAUTION : External email. Please do not respond to or click on links/attachments unless you recognize the sender.**

Mr. Mao and Mr. Reblitz-Richardson,

I have cc'ed most of your organization in this email as well as blind cc'ed a few integrity journalist.

I am a class member in the recent google case (I don't even want to specify the case or use my gmail out of fear of google filtering this email out of inboxes). I am writing to express my contempt for how this case was litigated and the fee application you have now filed.

Let's talk about the numbers, because the numbers are embarrassing.

Google's market capitalization is approximately $4.71 trillion. The verdict you secured — and that you are now triumphantly pointing to in your fee request — is $425 million, or roughly $440 million with interest. That figure represents less than one one-hundredth of one percent (0.0093%) of Google's market value. Google generates that much revenue in roughly half a day. For a company found liable by a federal jury for systematically violating the privacy of tens of millions of Americans who explicitly turned off tracking, your "win " is a rounding error. Google will pay it out of petty cash and the executives responsible will not lose a minute of sleep.

Now let's talk about what should have been on the table. The class here numbers in the tens of millions — likely 70 to 100 million Americans or more, based on Android and iOS market share over the certified class period. Statutory damages under the California Invasion of Privacy Act alone run to $5,000 per violation. Even setting statutory damages aside and pricing this as a basic privacy tort, comparable settlements imply per-class-member damages between $500 and $1,500. At even the conservative end, that yields a true value of $35 to $50 billion. At the realistic end, with punitive multipliers reflecting the deliberate nature of Google's conduct, the case was worth somewhere between $75 and $150 billion. Google could pay $50 billion tomorrow and remain one of the most valuable companies on earth.

Instead of changing the the lives of your entire staff and positively impacting society, you settled for roughly half a percent of what this case was actually worth, and you are now pathetically excited to take 33% of that diminished number for yourselves. You appear to be celebrating $145 million in fees

as a career-defining outcome. It isn't. It is a reflection of how little ambition you brought to a case against a defendant whose pockets are effectively bottomless.

Here is what is genuinely confounding about your strategy: a lower fee percentage on a larger settlement would have been better for you on every dimension that matters. Imagine you had secured even $50 billion for the class. A 15% fee on that recovery is $7.5 billion — more than fifty times what you are now grasping at — and you would have been the firms that brought Big Tech to its knees. Instead, you will be remembered, if you are remembered at all, as the firms that let Google off cheap and then took an outsized cut of the scraps. Your reputations would have been built by going harder. They will be defined by how visibly you didn't.

You had an opportunity to make this case mean something. To send a message that mass privacy violations carry real consequences. To deter the next round of corporate surveillance. You settled for a paycheck.

This email is my objection registered directly to you. A formal written objection to your fee application has been filed with the Court and served on you in accordance with the notice procedures (see attached draft).

[redacted]
Class Member & Pro Se Objector