**BOIES SCHILLER FLEXNER LLP**
David Boies (admitted pro hac vice)
333 Main Street
Armonk, NY 10504
Tel.: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao, CA Bar No. 236165
Beko Reblitz-Richardson, CA Bar No. 238027
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

James Lee (admitted pro hac vice)
Rossana Baeza (admitted pro hac vice)
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
rbaeza@bsfllp.com

Alison L. Anderson, CA Bar No. 275334
M. Logan Wright, CA Bar No. 349004
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
alanderson@bsfllp.com
mwright@bsfllp.com

**SUSMAN GODFREY L.L.P.**
Bill Carmody (admitted pro hac vice)
Shawn J. Rabin (admitted pro hac vice)
Steven M. Shepard (admitted pro hac vice)
Alexander Frawley (admitted pro hac vice)
Ryan Sila (admitted pro hac vice)
One Manhattan West, 50th Floor
New York, NY 10001
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sshepard@susmangodfrey.com
afrawley@susmangodfrey.com
rsila@susmangodfrey.com

Amanda K. Bonn, CA Bar No. 270891
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 789-3100
abonn@susmangodfrey.com

**MORGAN & MORGAN**
John A. Yanchunis (admitted pro hac vice)
Ryan J. McGee (admitted pro hac vice)
Michael F. Ram, CA Bar No. 104805
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
mram@forthepeople.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

ANIBAL RODRIGUEZ, JULIAN SANTIAGO, and SUSAN LYNN HARVEY, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

GOOGLE LLC,

Defendant.

Case No.: 3:20-cv-04688-RS

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS (DKT. 739)**

The Honorable Richard Seeborg
Courtroom 12 – 19th Floor
Hearing Date: August 27, 2026 at 1:30 p.m.

# TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 1

ARGUMENT ........ 1

I. The Low Number of Objections Indicates Broad Class Support for This Motion. ........ 1

II. None of the Objections Warrant a Lower Fee Than Class Counsel Requested. ........ 2

A. The Objections Are Based on the Wrong Standard, Which Supports Plaintiffs' Request Regardless. ........ 2

B. The Lodestar Cross-Check Confirms the Reasonableness of a One-Third Fee Award. ........ 7

C. Attorneys' Fees Should Include Interest. ........ 8

D. The Remaining Objections Should Be Overruled. ........ 9

E. Class Counsel Defer to the Court's Discretion on Untimely Opt-Out Requests, Which Do Not Impact the Fee Request. ........ 11

III. Class Counsel's Costs Are Reasonable, and the Objections Warrant Neither a Reduction Nor an Audit. ........ 11

IV. The Objections Do Not Warrant a Reduction in the Requested Service Awards. ........ 12

CONCLUSION ........ 13

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andrews v. Plains All Am. Pipeline L.P.*,
2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) .......... 6

*Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
640 F. Supp. 697 (S.D. Ohio 1986) .......... 8

*Bernstein v. Virgin Am., Inc.*,
2023 WL 7284158 (N.D. Cal. Nov. 3, 2023) .......... 3

*Broadmoor Lumber & Plywood Co.*,
2026 WL 2001158 (N.D. Cal. July 10, 2026) .......... 3, 7, 12

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .......... 2

*Cruz v. Sky Chefs, Inc.*,
2014 WL 7247065 (N.D. Cal. Dec. 19, 2014) .......... 2

*Dempsey v. Smith's Food & Drug Centers, Inc.*,
2026 WL 1287192 (D. Nev. May 11, 2026) .......... 13

*Farrell v. Bank of Am. Corp., N.A.*,
827 F. App'x 628 (9th Cir. 2020) .......... 7

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
2017 WL 4685536 (C.D. Cal. May 8, 2017) .......... 11

*Goldenberg v. Marriott PLP Corp.*,
33 F. Supp. 2d 434 (D. Md. 1998) .......... 8

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) .......... 8

*Graham v. DaimlerChrysler Corp.*,
34 Cal. 4th 553 (2004) .......... 6

*Gutierrez v. Wells Fargo Bank, N.A.*,
2015 WL 2438274 (N.D. Cal. May 21, 2015) .......... 7

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) .......... 1

*In re Apple Inc. Device Performance Litig.*,
2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) .......... 5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2020 WL 1873554 (N.D. Cal. Mar. 11, 2020) ........ 10

*In re Charles Schwab Corp. Sec. Litig.*,
2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ........ 7

*In re Cincinnati Gas & Elec. Co. Sec. Litig.*,
643 F. Supp. 148 (S.D. Ohio 1986) ........ 8

*In re College Athlete NIL Litig.*,
803 F. Supp. 3d 959 (N.D. Cal. 2025) ........ 2, 10

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
2023 WL 8445812 (N.D. Cal. Oct. 10, 2023) ........ 7

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
2013 WL 5275618 (S.D. Cal. Sept. 17, 2013) ........ 10

*In re NCAA Grant-in-Aid Cap Antitrust Litig.*,
2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ........ 6

*In re Optical Disk Drive Prods. Antitrust Litig.*,
959 F.3d 922 (9th Cir. 2020) ........ 3

*In re Oracle Sec. Litig.*,
852 F. Supp. 1437 (N.D. Cal. 1994) ........ 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ........ 10

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
2025 WL 3006647 (N.D. Cal. Oct. 27, 2025) ........ 3, 5, 7, 13

*Katz-Lacabe v. Oracle Am., Inc.*,
2024 WL 4804974 (N.D. Cal. Nov. 15, 2024) ........ 4, 5

*Kent v. Hewlett-Packard Co.*,
2011 WL 4403717 (N.D. Cal. Sept. 20, 2011) ........ 4, 5

*Lobatz v. U.S. West Cellular of California, Inc.*,
222 F.3d 1142 (9th Cir. 2000) ........ 12

*Masalosalo by Masalosalo v. Stonewall Ins. Co.*,
718 F.2d 955 (9th Cir. 1983) ........ 9

*Moore v. PetSmart, Inc.*,
728 Fed. App'x 671 (9th Cir. 2018) ........ 10

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) (Lee, J., dissenting) ........ 5

*Oliveira v. Language Line Svcs., Inc.*,
767 F. Supp. 3d 984 (N.D. Cal. 2025) ........ 12

*Ontiveros v. Zamora*,
303 F.R.D. 356 (E.D. Cal. 2014) ........ 12

*Ray v. NCAA*,
2026 WL 1298135 (E.D. Cal. May 11, 2026) ........ 3, 7

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ........ 12

*Roman v. Jan-Pro Franchising Int'l, Inc.*,
2024 WL 2412387 (N.D. Cal. May 23, 2024) ........ 11

*Schiller v. David's Bridal, Inc.*,
2012 WL 2117001 (E.D. Cal. June 11, 2012) ........ 6

*Schneider v. Chipotle Mexican Grill, Inc.*,
336 F.R.D. 588 (N.D. Cal. 2020) ........ 12

*Sugarman v. Ducati N. Am., Inc.*,
2012 WL 113361 (N.D. Cal. Jan. 12, 2012) ........ 2

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ........ 12

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ........ *passim*

*Williams v. PillPack LLC*,
2025 WL 1149710 (W.D. Wash. Apr. 18, 2025) ........ 13

**Other Authorities**

5 *Newberg and Rubenstein on Class Actions* § 15:80 (6th ed. 2022) ........ 7

## INTRODUCTION

Class members' response to the Motion for Attorneys' Fees, Costs, and Service Awards (Dkt. 739, the "Motion" or "Mot.") has been overwhelmingly positive. Of nearly 100 million class members—all of whom stand to benefit from the years of effort by Plaintiffs and their counsel to secure this verdict—only 269 filed objections. That represents just 0.00027% of the class members. The objections raise issues that Class Counsel already addressed in the Motion, and which neither require nor warrant a lesser award of fees, costs, and service awards than Class Counsel requested. To be useful to the Court, Class Counsel has organized this submission by category, addressing each of the issues raised by objectors. Plaintiffs have also prepared a chart summarizing the objections, attached as Exhibit 1. For the reasons stated below, Class Counsel respectfully ask the Court to overrule these limited objections and grant the Motion in full.

## BACKGROUND

The Motion describes the relevant background, including the details of this litigation, the results achieved for the classes, and Class Counsel's efforts throughout. Class Counsel's efforts to defend the judgment have continued since then. And pursuant to this Court's order and in close consultation with Class Counsel, the appointed Notice Administrator has completed an extensive campaign to notify class members of this Motion. Dkt. 1003 (Azari Decl.) at ¶ 9; Dkt. 749. To complete the campaign, the Notice Administrator sent more than 300 million emails and rolled out broad publication notice resulting in nearly 100 million unique impressions. Azari Decl. at ¶¶ 12, 20. Of the recipients of those hundreds of millions of emails, and of the nearly 100 million class members, only 269 people objected to the fee application.

## ARGUMENT

### I. The Low Number of Objections Indicates Broad Class Support for This Motion.

One strong indicator that Class Counsel's requested fees, costs, and service awards are reasonable is that very few class members—again, just 0.00027% of them—submitted objections. In evaluating motions for approval of class settlements, which often include requests for fees, multiple courts have held that similarly "low rates of objections" are "indicia of the approval of the class." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320 (N.D. Cal. 2018) (quotation

marks omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming district court's approval of class action settlement where 45 of 90,000 class members—or 0.05%—objected to the settlement); *In re College Athlete NIL Litig.*, 803 F. Supp. 3d 959, 988 (N.D. Cal. 2025) (approving class settlement in part because the class had an "exceptionally positive reaction," evidenced by the fact that only 73 of the estimated 389,700 class members—or 0.02%—objected); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014); *Sugarman v. Ducati N. Am., Inc.*, 2012 WL 113361, at *3 (N.D. Cal. Jan. 12, 2012) (approving class settlement in part because of the class's "positive response," as evidenced by the fact that only 42 of 38,744 class members—or 0.1%—objected). The same logic applies here.

## II. None of the Objections Warrant a Lower Fee Than Class Counsel Requested.

It is striking that many objectors expressly stated their appreciation for Class Counsel's efforts to hold Google accountable for its unlawful data collection practices. The most common feature of the objections is not a complaint about the quality of the representation or the results, but a request for the Court to ensure that the fees awarded to Class Counsel are justified. *See*, *e.g.*, Dkt. 857 at 1 (requesting that the Court "carefully scrutinize whether the requested enhancement is necessary to fairly compensate counsel"); Dkt. 877 (requesting that the Court "carefully review whether 33% is reasonable under the circumstances"). Class Counsel agrees that the Court owes a duty to the classes to evaluate Class Counsel's fee request and determine whether the fees requested are justified. And upon such an evaluation, the Court should find that the fee requested—one-third of the common fund, which accrues interest—*is* justified, for reasons explained in the Motion and elaborated here. The few objections do not warrant a different conclusion.

### A. The Objections Are Based on the Wrong Standard, Which Supports Plaintiffs' Request Regardless.

**California law applies.** The most common objection to Class Counsel's requested fees is that the Ninth Circuit has adopted a benchmark of attorneys' fees equal to 25% of the recovery. *See*, *e.g.*, Dkts. 775, 795, 802, 807, 820. But that is the Ninth Circuit's application of *federal* law. As Class Counsel explained in the Motion, *California* law applies here because the common fund resulted from judgment on California state law claims. *See* Mot. at 11; *Vizcaino v. Microsoft Corp.*,

290 F.3d 1043, 1047 (9th Cir. 2002) ("Because [state] law governed the claim, it also governs the award of fees."). And under California law, courts routinely award attorneys' fees equal to one-third of the common fund. *See* Mot. at 12 (collecting cases); *Bernstein v. Virgin Am., Inc.*, 2023 WL 7284158, at *2 (N.D. Cal. Nov. 3, 2023) ("In California, 'regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.'"). The most common objection—focused on the Ninth Circuit benchmark—is therefore misplaced.

**Even applying federal law, Class Counsel's request for attorneys' fees equal to one-third of the judgment would be warranted under the *Vizcaino* factors.** Although several objectors contend that the large size of the common fund supports reducing the percentage awarded as fees, the Ninth Circuit has expressly "declined to adopt a bright-line rule requiring the use of sliding-scale fee awards for class counsel in megafund cases." *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 931 (9th Cir. 2020). Of course, courts should not award attorneys' fees that amount to a windfall. But as this Court has explained, attorneys' fees based on a percentage of the fund "only represent a windfall where the recovery stems more from class size than attorney effort." *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2025 WL 3006647, at *3 (N.D. Cal. Oct. 27, 2025) (Seeborg, C.J.) (quoting *In re T-Mobile Customer Data Sec. Breach Litig.*, 111 F.4th 849, 860 (8th Cir. 2024)) (cleaned up). That is not the case here, given that Class Counsel devoted by now more than 50,000 hours to litigating these claims through trial and secured a historic verdict.

Indeed, since Class Counsel filed this Motion in March, at least two courts in this Circuit have awarded attorneys' fees equal to or greater than 25% in megafund cases. In *Ray v. NCAA*, the court awarded attorneys' fees equal to 30% of a $303 million common fund created by a settlement entered after class certification but before trial. 2026 WL 1298135, at *7 (E.D. Cal. May 11, 2026). And in *Broadmoor Lumber & Plywood Co. v. Toyota Indus. Corp.*, the court awarded attorneys' fees equal to 25% of a $299 million common fund created by a settlement entered after briefing motions to dismiss. 2026 WL 2001158, at *6 (N.D. Cal. July 10, 2026). An even greater award is warranted here because, unlike in those cases, Class Counsel took this case to trial and won.

In *Vizcaino* and its progeny, the Ninth Circuit articulated five factors that courts should consider when awarding attorneys' fees: (1) the result of the litigation; (2) the risks of the litigation; (3) counsel's skill and the quality of their work; (4) the contingent nature of the representation; and (5) the market rates for and awards in similar cases. *See* 290 F.3d at 1047–50; *Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 4804974, at *3 (N.D. Cal. Nov. 15, 2024) (Seeborg, C.J.). Each of these factors supports Class Counsel's request for an award of attorneys' fees equal to one-third of the judgment.

**Factor 1: Exceptional Results.** There can be no dispute that the monetary relief secured—a $425 million jury verdict that has been described as "historic" and called a "landmark"—is exceptional.[1] Few objections suggest otherwise, and those that do simply criticize the result without more. *See, e.g.*, Dkt. 801 (arguing that the claims were not novel, the legal theories were well-established, and there was no "unusual financial exposure"); Dkt. 883 (suggesting the result lacks "tangible relief"); Dkt. 936 (contending that the results were a "mixed outcome" because the jury did not find liability under the CDAFA).

Class Counsel also secured valuable non-monetary relief. Mot. at 13–14. For years, Google employees implored Google's executives to be transparent about Google's data collection practices. Only after Class Counsel won at trial did Google finally make changes that "tell[] Google's users what they need to know." Dkt. 721 at 5 (order denying injunctive relief based on Google's post-verdict amended disclosures).

These results were possible only because Class Counsel spent years working tirelessly on behalf of the classes. That work included drafting and defending the pleadings from repeated attacks. It included building a discovery record one discovery request, meet-and-confer, discovery motion, and deposition at a time. And it included crafting that discovery record into a presentation that could win class certification, survive summary judgment, and appeal to a jury. This work is

[1] Kevin Penton, *Law360's Legal Lions of the Week*, Law360 (Sept. 5, 2025), https://www.law360.com/articles/2384485/law360-s-legal-lions-of-the-week; *Susman Godfrey Secures Top Verdicts of 2025 Recognition from the Los Angeles Daily Journal* (Mar. 6, 2026), https://www.susmangodfrey.com/news/susman-godfrey-secures-top-verdicts-of-2025-recognition-from-the-los-angeles-daily-journal/.

never easy, but against a formidable opponent like Google, it is especially arduous.

**Factor 2: Risks of Litigation.** Class Counsel pursued this litigation at great risk. As this Court has recognized, data privacy law is "relatively undeveloped and technically complex . . . which creates uncertainty and, therefore, additional risk for Class Counsel." *Katz-Lacabe*, 2024 WL 4804974, at *4. Google challenged the sufficiency of the complaint three times, opposed class certification, sought to trim and decertify the classes, launched a failed bid for summary judgment, and fought fiercely at trial. Mot. at 4–9. While class action trials are "almost extinct" because class actions often settle well before trial, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 685 (9th Cir. 2022) (Lee, J., dissenting), Class Counsel persisted in their pursuit of monetary and injunctive relief for class members—even after the Court warned at the summary-judgment hearing that Plaintiffs would face challenges at trial. Dkt. 419 at 47:17–20 (stating that "highly offensive" element was a "tough one for your side"). Class Counsel devoted themselves and the resources of their firms to six years of litigation, advanced many millions of dollars for costs, and then chose to put that investment on the line at trial rather than settle for a discount.

In light of these repeated challenges and substantial risks, a fee greater than the 25% benchmark is warranted. *See In re Xyrem*, 2025 WL 3006647, at *3 (awarding one-third of settlement fund where "the case [] raise[d] complex and novel issues").

**Factor 3: Skill and Quality of Work.** Class Counsel are all leading trial lawyers, and the results of this litigation speak to the quality of their work in this case. Class Counsel diligently pursued the necessary discovery into Google's data collection practices; achieved class certification in the uncertain and rapidly changing body of privacy law; defended against Google's efforts to decertify the classes; defeated summary judgment; prepared for trial, including by litigating multiple motions *in limine* and *Daubert* challenges; and then tried this case to a $425 million verdict. In today's world, that is almost unheard-of in a class action.

Moreover, Class Counsel's opponent is perhaps the most technologically advanced and well-resourced corporate defendant in history. *In re Apple Inc. Device Performance Litig.*, 2023 WL 2090981, at *14 (N.D. Cal. Feb. 17, 2023) ("Courts also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.") (citation omitted).

Google also engaged two elite law firms, Cooley LLP and Willkie Farr & Gallagher LLP, to defend this case. Google's retention of such serious firms underscores the stakes of this case. To date, Google has not disclosed the total hours of attorney time, engineer time, and other resources devoted to defending against the claims asserted here. But it would be an understatement to say Google and its counsel fought at every possible turn and litigated at the highest level. This, too, warrants a fee greater than 25%.

**Factor 4: Contingent Nature of the Representation.** The contingent nature of this representation also supports the requested one-third fees award. As of March 2026, Class Counsel had devoted more than 49,670 hours to this litigation. Since then, Class Counsel has spent hundreds of additional hours briefing post-trial motions, responding to class member outreach, and preparing for the August 27, 2026 hearing to address the pending motions. Litigating "on a contingency basis[] necessarily present[s] considerable risk." *Schiller v. David's Bridal, Inc.*, 2012 WL 2117001, at *16 (E.D. Cal. June 11, 2012). A "contingent fee compensates the lawyer not only for the legal services he renders but [also] for the loan of those services." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 580 (2004). In addition to the substantial litigation costs and lodestar, Class Counsel also advanced the cost of class notice twice (more than $1,000,000 before trial, and approximately $800,000 for notice of this Motion). Courts have long recognized that "the public interest is served by rewarding attorneys who assume representation on a contingent basis with an *enhanced fee* to compensate them for the risk that they might be paid nothing at all for their work." *In re NCAA Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *4 (N.D. Cal. Dec. 6, 2017) (emphasis in original). The contingent nature of Class Counsel's representation and investment in this case supports a fee award greater than 25%.

**Factor 5: Market Rates for Similar Cases.** For this factor, courts may consider fee awards in analogous class actions. *Vizcaino*, 290 F.3d at 1050. Plaintiffs' request for fees equal to one-third of the verdict is consistent with awards in similar "megafund" cases that generated substantial recoveries for class members. *See, e.g.*, *Andrews v. Plains All Am. Pipeline L.P.*, 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022); *see also* Mot. at 17–18 (collecting cases awarding between 33% and 40% in "megafund" cases with common funds ranging from $127 million to

$1.51 billion). An award of greater than 25% is especially warranted here because Class Counsel secured monetary relief not in a settlement, but from the jury—eschewing the "perverse incentives" resulting in "quick settlements at sub-optimal levels." 5 Newberg & Rubenstein on Class Actions § 15:80 (6th ed.).

**B. The Lodestar Cross-Check Confirms the Reasonableness of a One-Third Fee Award.**

Some objectors asked the Court to perform a lodestar cross-check. *See, e.g.*, Dkts. 882, 946. For one thing, a lodestar cross-check is not required. *See Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (compiling cases affirming district court's discretion not to perform a crosscheck of the lodestar). And as the Motion explains, here the cross-check confirms that it is reasonable to award attorneys' fees equal to one-third of the fund. Mot. at 19–23.

When Class Counsel filed the Motion, they had devoted nearly 50,000 hours to this litigation and generated a lodestar of nearly $57 million. Mot. at 21. The requested fee award implied a lodestar multiplier of approximately 2.59, which is well within the range of multipliers often applied even in "megafund" cases. *See, e.g.*, *Ray*, 2026 WL 1298135 at *9 (awarding fees amounting to 3.41 lodestar multiplier in $303 million settlement based on the quality of the results obtained for the class, the risk of non-payment, and the superior quality of work); *Broadmoor Lumber & Plywood Co.*, 2026 WL 2001158, at *9 (awarding fees amounting to 2.94 lodestar multiplier in $299.5 million settlement based on same); *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *7 (N.D. Cal. May 21, 2015) (awarding fees amounting to 5.5 lodestar multiplier in $203 million settlement based on same); *Vizcaino*, 290 F.3d at 1051 & App'x (affirming a multiplier of 3.65 and surveying 34 common fund cases with multipliers up to 4.0); *In re Xyrem*, 2025 WL 3006647, at *3 ("reasonable lodestar multipliers rang[e] from 1.0 all the way up to 4.0"); *In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at *8 (N.D. Cal. Apr. 19, 2011) (awarding 2.68 multiplier). Class Counsel's lodestar is even higher now—and the implied multiplier is even lower—because since filing the Motion, Class Counsel has spent hundreds of hours on post-trial motions and class notice. And Class Counsel expects to devote substantial additional time and resources to defending the judgment on appeal. *See In re Facebook, Inc.*

*Consumer Privacy User Profile Litig.*, 2023 WL 8445812, at *2 (N.D. Cal. Oct. 10, 2023) (future work assessed for cross-check).

Some objectors challenged Class Counsel's hourly rates, but none of these objections have merit. For example, one suggests that the "rate comparators" are only drawn from Chapter 11 bankruptcy approvals, which is not true. *See* Dkt. 926; Mot. at 20–21 (citing cases approving Class Counsel's hourly rates in litigation). Another objector takes the position that attorneys should be paid no more than twice the minimum wage. Dkt. 809. And another suggests that Class Counsel's use of some junior attorneys, staff, and technologies to efficiently litigate the case will somehow result in a windfall to "rockstar" partner-level lawyers. Dkt. 916. Several others raised more general objections to attorneys' hourly rates. Dkts. 756, 794, 798, 808, 823. As noted in the Motion, Class Counsel's rates have been approved in this District and others. Mot. at 20–21.

**C. Attorneys' Fees Should Include Interest.**

Approximately 10% of the objections take issue with Class Counsel's request for attorneys' fees as a percentage of the entire common fund, including accrued pre- and post-judgment interest. *See, e.g.*, Dkts. 778, 782, 861, 926, 936. This objection is meritless.

"In the absence of any explicit contrary agreement, the standard approach to interest should apply" to attorneys' fees in class litigation. *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1458 (N.D. Cal. 1994). "As contingent fee lawyers, class counsel are in every sense part-owners of the litigation claims in suit and entitled to the interest accruing on that portion of the claims in which they hold an ownership or equity interest," including a fee award. *Id.*; *see also, e.g.*, *Gottlieb v. Barry*, 43 F.3d 474, 490 (10th Cir. 1994) (permitting fee award to increase proportionately with interest earned on the settlement fund); *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 442 (D. Md. 1998) (recognizing that "courts have held that attorneys are entitled to interest on a settlement fund in the proportion that the underlying fee award bears to the basic fund" and awarding proportionate amount of the accrued interest) (citing *In re Oracle*, 852 F. Supp. at 1458); *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 640 F. Supp. 697, 708 (S.D. Ohio 1986) (increasing attorneys' fees by the "proportionate share of the interest earned on the settlement fund"); *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 153 (S.D. Ohio 1986)

("interest on an attorneys' fees and costs award is permissible").

It makes sense for attorneys' fees to include interest because otherwise the value of the fees would erode as the case plods through appeals. And it is especially sensible here because pre-judgment interest was by no means certain. Class Counsel negotiated for Google's agreement not to oppose the imposition of both pre- and post-judgment interest for the benefit of the classes. Dkt. 724 at 3 (Google "does not oppose Plaintiffs' requests for pre- and post-judgment interest").

**D. The Remaining Objections Should Be Overruled.**

**There is no basis to defer awarding fees.** Some class members claim that because the amount of the common fund remains subject to post-judgment motions and appeal, any decision on fees, costs, and service awards should occur after appeals are exhausted. *See, e.g.*, Dkts. 772, 832, 841, 848.[2] The Ninth Circuit does not endorse this approach. *See Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983) (explaining why it is preferable for district courts to rule on fee motions prior to waiting for appeals to be resolved, including because doing so "serves the policy against piecemeal appeals" and because otherwise "the relevant circumstances will no longer be fresh in the mind of the district judge"). And unlike in so-called "coupon settlements," where the amount distributed to class members depends on widely variable participation rates, the judgment here is definite, even if contingent on an appeal. If an appeal were to reduce the size of the judgment, Class Counsel's fees (one-third of the judgment) would decrease accordingly. And if the size of the judgment *increases* as a result of an appeal (other than through post-judgment interest), Class Counsel commits to file a separate request for any additional fees based on the *extra* monetary relief obtained.

**There is no settlement.** Some class members believe this case resulted from settlement. *See, e.g.*, Dkts. 758, 814. That is incorrect. Class Counsel seeks fees as one-third of the judgment.

**Class Counsel will only recover fees and costs after the judgment becomes final.** Some class members appear to incorrectly believe that they need to personally pay something to Class Counsel. *See, e.g.*, Dkt. 878 (stating inability "to pay the exorbitant sum [Class Counsel] are

[2] One of these objections notably agreed "that trying a class action to verdict might merit a fee above the 25% circuit benchmark." Dkt. 841 at 2 (emphasis omitted).

asking"). Others apparently believe that the attorneys' fees, reimbursement of costs, and service awards will be paid now, while members of the classes would need to wait until after appeal to recover their share of the judgment. *See, e.g.*, Dkts. 760, 763, 784. These concerns are misplaced. Google has not funded the judgment, there is no "quickpay" (Dkt. 841 at 2), and nobody—not class members, not Class Counsel, not the class representatives—will be paid until after the judgment is final and appeals are exhausted.

**Objections from non-class members should be stricken.** The Notice Administrator analyzed the email addresses associated with the 269 objections and determined that 35 of the objections did not originate from or reference addresses associated with any class member of record. *See* Dkts. 762, 773, 779, 783, 785, 825, 828, 844, 845, 846, 852, 855, 861, 862, 872, 890, 896, 899, 901, 928, 937, 947, 948, 972, 978, 981, 985, 991, 997, 998, 1000-1, 1000-3, 1000-9, 1000-18, and 1000-31; Azari Decl. at ¶ 28. Because these objectors have not demonstrated they are members of the classes, their submissions should be stricken for lack of standing. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2020 WL 1873554, at *4 (N.D. Cal. Mar. 11, 2020); *see also In re Hydroxycut Mktg. & Sales Practices Litig.*, 2013 WL 5275618, at *2 (S.D. Cal. Sept. 17, 2013) (striking objection for failure to carry "his burden of proving standing as a class member"); *Kent v. Hewlett-Packard Co.*, 2011 WL 4403717, at *3 (N.D. Cal. Sept. 20, 2011) (similar). Even if not stricken, those objections raise no new issues that would warrant any other outcome on this Motion.

**Untimely objections should be stricken.** Of the 269 objections, the following were submitted after the deadline: Dkts. 990–995, 997–998. Although courts have discretion to consider late objections, *Moore v. PetSmart, Inc.*, 728 Fed. App'x 671, 673 (9th Cir. 2018), this Court may disregard them as untimely, *In re College Athlete NIL Litig.*, 803 F. Supp. 3d at 995; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *3 (N.D. Cal. Dec. 27, 2011). In any event, the untimely objections raise no issues that would warrant any other outcome on this Motion.

**E. Class Counsel Defer to the Court's Discretion on Untimely Opt-Out Requests, Which Do Not Impact the Fee Request.**

Some individuals have submitted untimely requests to opt out from the classes. *See, e.g.*, Dkts. 727, 745, 880, 976. The Court denied these motions. *See* 1002. Other submissions, while not formally captioned as an opt-out request, ask to be excluded from the classes. *See* Dkts. 767, 800, 819, 821, 837, 854, 871, 894, 910, 931. While the deadline to opt out was February 20, 2025 (Dkt. 440), Plaintiffs defer to the Court's discretion as to whether to make exceptions for those ten individuals. Whether they are permitted to opt out does not impact Class Counsel's fee request.

**III. Class Counsel's Costs Are Reasonable, and the Objections Warrant Neither a Reduction nor an Audit.**

**The costs are reasonable.** In common fund cases, class counsel are entitled to reimbursement of reasonable litigation expenses. *Roman v. Jan-Pro Franchising Int'l, Inc.*, 2024 WL 2412387, at *5 (N.D. Cal. May 23, 2024). Here, Class Counsel incurred $12,422,374.42 in unreimbursed litigation expenses, including costs related to trial, experts, jury consultants, document hosting services, two rounds of notice to class members (before trial and for this Motion), and other customary litigation expenses. These costs are reasonable, directly associated with advancing the litigation, and proportionate to the judgment and changes Google made to its disclosures. Class Counsel documented all of these costs by category with attorney declarations, Dkt. 739-2 ¶¶ 79–82; Dkt. 739-3 ¶¶ 65–68; Dkt. 739-4 ¶¶ 61–66, and Class Counsel provided additional declarations describing the larger expenses in substantial detail. Dkt. 739-6, Dkt. 739-7, Dkt. 739-8.

Courts regularly find Class Counsel's expense categories to be recoverable. *See, e.g.*, *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2017 WL 4685536, at *10 (C.D. Cal. May 8, 2017) (reimbursing class counsel's expenses, including "discovery, the services of experts and specialist appellate counsel, mediation, travel, technology support costs, a mock trial, and the cost of computer research and services"). Class action settlements have been approved at similar levels. *See* Mot. at 23 (collecting cases approving class action settlements with costs upwards of $15 million incurred before trial).

**An audit of the litigation costs is not warranted.** To recover costs, "attorneys should

provide an itemized list of their expenses by category with the total amount advanced for each category so that the Court can assess whether the expenses were reasonable." *Oliveira v. Language Line Svcs., Inc.*, 767 F. Supp. 3d 984, 1002 (N.D. Cal. 2025) (citing *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011)). An assessment by category, rather than receipt-by-receipt audit, is standard practice in this Circuit. *See id.*; *Broadmoor Lumber & Plywood Co.*, 2026 WL 2001158, at *9; *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 602 (N.D. Cal. 2020); *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014).

A detailed audit may be appropriate where there is a strong indication of collusion. *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F.3d 1142, 1148–49 (9th Cir. 2000). But that is not the case here. This case was vigorously litigated to verdict and continues being litigated through post-judgment motions. There has been no collusion or improper billing, and no objector identifies evidence of either. Here, a detailed audit would be needlessly burdensome for both the Court and Class Counsel.

**IV. The Objections Do Not Warrant a Reduction in the Requested Service Awards.**

Plaintiffs respectfully seek $50,000 service awards for the two class representatives who testified at trial (Anibal Rodriguez and Julian Santiago) and a $35,000 service award for Susan Harvey, who was prepared to testify but ultimately could not do so for medical reasons.

Service awards "are fairly typical in class action cases" and are commonly issued to "compensate class representatives for work done on behalf of the class" as well as "make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Entitlement to and the amount of service awards is left to the Court's discretion. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). Of the objectors who commented on the service awards, some asked the Court to consider whether the requested amounts are reasonable (*see, e.g.*, Dkts. 763, 765, 845, 860, 866). Some suggested the service awards be reduced (*see, e.g.*, Dkts. 759, 772, 853, 941), and others objected outright (*see, e.g.*, Dkts. 920, 943, 956).

The class representatives were intimately involved in this litigation, from investigatory and discovery work through trial and post-verdict motions practice. Plaintiffs Rodriguez and Santiago

attended and testified at trial (without pay from their employers). Dkt. 739-9 at ¶ 15; Dkt. 739-10 at ¶ 15. Plaintiff Harvey traveled to San Francisco and attempted to attend trial but was sidelined due to prior strokes at least partially attributable to this case. Dkt. 739-11 at ¶ 15. Their sacrifices included allowing their personal devices to be imaged and reviewed, permitting Google to access their accounts and sift through their data, sitting for full-day depositions, and spending substantial time away from family and friends. *See generally*, Dkts. 739-9, 739-10, 739-11.

As noted in the Motion, Courts in this Circuit have issued $50,000 service awards in cases like this one that imposed demanding burdens on class representatives. *See* Mot. at 25 (collecting cases awarding $50,000 service awards). Last year this Court issued $40,000 service awards in a case that settled before trial. *In re Xyrem*, 2025 WL 3006647, at *4. Similar to *In re Xyrem*, the requested service awards here are a tiny fraction of the judgment—just 0.03%. *Id.* at *4. Other courts in this Circuit recently issued service awards up to $20,000 (and far greater percentages of the fund) in cases that settled well before trial. *See, e.g.*, *Williams v. PillPack LLC*, 2025 WL 1149710, at *3 (W.D. Wash. Apr. 18, 2025) (ordering $20,000 service award for case that proceeded to summary judgment and settled for $6,500,000; service award was 0.31% of the settlement); *see also Dempsey v. Smith's Food & Drug Centers, Inc.*, 2026 WL 1287192, at *2 (D. Nev. May 11, 2026) (ordering $15,000 service award for case that settled fewer than eleven months into litigation for $450,000; service award was 3.3% of the settlement).

Given the length of this litigation, the importance of this case, the results achieved on behalf of the classes, and the relatively small percentage of the fund, the service awards are reasonable and justified.

## CONCLUSION

Class Counsel respectfully request that the Court overrule the objections and award: (1) attorneys' fees to Class Counsel in the amount of one-third of the common fund that Plaintiffs generated, including post-judgment interest that will continue to grow during the pendency of any appeals; (2) reimbursement of their $12,422,374.42 in litigation costs, to the extent that portions of those are not reimbursed by Google as a result of the pending Bill of Costs; (3) service awards in the amount of $50,000 for each of Anibal Rodriguez and Julian Santiago and $35,000 for Susan

Harvey.

Dated: August 20, 2026

Respectfully submitted,

By: /s/ Steven Shepard
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330

David Boies (admitted *pro hac vice*)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 999-9695

James Lee (admitted *pro hac vice*)
jlee@bsfllp.com
Rossana Baeza (admitted *pro hac vice*)
rbaeza@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Alison L. Anderson, CA Bar No. 275334
alanderson@bsfllp.com
M. Logan Wright, CA Bar No. 349004
mwright@bsfllp.com
BOIES SCHILLER FLEXNER LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (213) 629-9022

Bill Carmody (*pro hac vice*)
bcarmody@susmangodfrey.com
Shawn J. Rabin (*pro hac vice*)
srabin@susmangodfrey.com
Steven Shepard (*pro hac vice*)
sshepard@susmangodfrey.com
Alexander P. Frawley (*pro hac vice*)
afrawley@susmangodfrey.com
Ryan Sila (*pro hac vice*)
rsila@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330

Amanda Bonn (CA Bar No. 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
Michael F. Ram (CA Bar No. 104805)
mram@forthepeople.com
MORGAN & MORGAN, P.A.
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

*Attorneys for Plaintiffs*