United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANIBAL RODRIGUEZ, et al.,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No. 20-cv-04688-RS

**ORDER DENYING PLAINTIFFS' MOTION FOR A NEW TRIAL AND DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

Following a three-week trial and a mixed jury verdict, Plaintiffs move for a new trial under Rule 59, and Google renews its motion for judgment as a matter of law under Rule 50(b). For the reasons set forth below, both motions are denied.

## I. BACKGROUND

The parties are intimately familiar with the factual and procedural background of this case, so there is no need to recite it in full. In brief, a class of Google users who turned off the supplemental Web App and Activity (sWAA) setting in their Google accounts sued Google for collecting anonymized data related to their app usage despite representing that turning off the sWAA button would stop Google from doing precisely that. They tried three claims to a jury, for (1) violation of the Comprehensive Computer Data Access and Fraud Act (CDAFA); (2) invasion of privacy under the California Constitution; and (3) common law intrusion upon seclusion. The jury found for Google on the CDAFA claim but for the class on the constitutional and common law claims. It awarded the class $425,651,947 in actual damages.

Both parties move for post-trial relief. Plaintiffs move for a new trial on the CDAFA claim,

United States District Court
Northern District of California

and Google moves for judgment as a matter of law on the constitutional and common law claims (together, the privacy claims).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 59 permits "a new trial on all or some of the issues" tried to a jury "for any reason for which a new trial has heretofore been granted in an action at law in a federal court." Fed. R. Civ. P. 59. "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251 (1940)).

Federal Rule of Civil Procedure 50(b) permits a party to renew a motion for judgment as a matter of law within 28 days of an adverse jury verdict. *See* Fed. R. Civ. P. 50(b). Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient basis to find for the party on th[e] issue" raised in the motion. Fed. R. Civ. P. 50(a). Under that standard, the evidence must be construed in the light most favorable to the nonmoving party, the jury's credibility findings consistent with the verdict must be accepted, and all evidence favorable to the moving party that the jury is not required to believe must be disregarded. *See Wintaro v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001).

## III. DISCUSSION

A. Plaintiffs' Motion for a New Trial

The sole basis for Plaintiffs' motion for a new trial is their contention that the jury was erroneously instructed on the standard for proving "damage or loss," an element of their CDAFA claim. Plaintiffs initially proposed an instruction which would have told the jury that "damage or loss" could be proven by: (1) the value of data taken from Plaintiffs; (2) Google's profits from data taken from Plaintiffs; (3) loss of the right to control Plaintiffs' data; (4) loss of privacy over Plaintiffs' data; (5) depletion of Plaintiffs' mobile devices' battery life and/or bandwidth; and (6) injury to Plaintiffs' peace of mind. The instruction ultimately given told the jury that "Plaintiffs

United States District Court
Northern District of California

claim compensatory or 'actual' damages based on the economic value of allowing access to the data at issue." Instruction 23. Apart from directing the jury to consider all the evidence, it did not further define compensatory or actual damages.

Google's frontline position is that Plaintiffs waived this argument, but they did not. Before the charging conference, the parties were told: "you've preserved your objections if the instructions aren't consistent with what you've submitted." Tr., at 1226:5–6. It was clear they were welcome to note specific objections orally or in writing, and they were invited to point out any "enormous error looming" in the instructions, but the pre-conference discussion absolved Plaintiffs of having to re-object to the failure to include their proposed instruction. *See id.* 1226:7–9 ("I appreciate the fact that you may want to, either in written form or otherwise, make clear which ones you object to."); 1226:12–16 ("So you may want to just bookmark it. If there's a real problem, if think, 'Oh, my god, there's an enormous error looming there,' of course I want to know that.").

On the merits, however, the failure to include Plaintiffs' proposed instruction does not warrant a new trial. An instructional error requires a new trial only if it was not harmless. *See Tritchler v. County of Lake*, 358 F.3d 1150, 1154 (9th Cir. 2004); *Mathew Enter., Inc. v. Chrysler Grp. LLC*, 250 F. Supp. 3d 409, 414 (N.D. Cal. 2017), *aff'd*, 738 F. App'x 569 (9th Cir. 2018) (unpublished) ("To warrant a new trial, the movant must show that there was instructional error and that such error was prejudicial."). Even if there was an error in the instructions—a question that need not be decided—Plaintiffs have not explained how it could have impacted the result. Instruction 23 on damage or loss applied to both the CDAFA claim and to the privacy claims, and the jury found liability on the privacy claims and awarded the class more than $425 million. Logically, then, the jury's conclusion that Google was not liable for a violation of CDAFA could not have stemmed from Plaintiffs' failure to establish that they suffered damage or loss—it had to come from their failure to satisfy some other element of the CDAFA claim. Providing the jury with further bases to find that Plaintiffs suffered damage or loss on the CDAFA claim would have, therefore, made no difference.

In insisting otherwise, Plaintiffs put far too much emphasis on a note sent by the jury shortly before they returned a verdict. That note stated that "the jury would like some clarification as to the definition of 'damage or loss.'" Dkt. 671, at 6. It was instructed that "[n]o further instruction is available on that definition." *Id.*, at 7. Because the jury *did* conclude that Plaintiffs suffered damage or loss (just not on the CDAFA claim), it is most likely that note was seeking to clarify how the jury was to do the math in arriving at their final damages figure.

B. Google's Motion for Judgment as a Matter of Law

Google presents several arguments why judgment as a matter of law as to the privacy claims is appropriate. None are persuasive.

First, Google contends that Plaintiffs' damages theory is displaced by California's Uniform Trade Secrets Act (CUTSA). To obtain monetary relief under CUTSA—and thus to displace another cause of action covering the same conduct—the plaintiff must show that the defendant misappropriated his "trade secret," which resulted or threatened injury to the plaintiff. *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220, 109 Cal. Rptr. 3d 27, 38 (2010), *as modified on denial of reh'g* (May 27, 2010). CUTSA defines a "trade secret" as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that [d]erives independent economic value, actual or potential, from not being generally known to the public or to persons who can obtain economic value from its disclosure or use; and [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3246.1(d).

The anonymized information at issue in this case is not a "trade secret," so CUTSA does not displace the privacy claims. The definition of a trade secret begins with a long list of examples, all of which are some kind of commercial asset to a business. That makes sense—after all, the statute is purporting to define a *trade* secret—a term of art in commercial litigation—not a secret of any kind. The anonymized data fits uncomfortably in that list. There was no evidence presented at trial that the class members valued this information because it was commercially valuable *to them*. Its value came from what it revealed about their private activity and the potential to provide a window into their personalities. That is simply not a trade secret, however liberally

defined.

Google's strongest support for a capacious understanding of the term "trade secret" under CUTSA is *SunPower Corp. v. SolarCity Corp.*, but even that case involves a paradigmatic business tort. *See* 2012 WL 6160472 (N.D. Cal. December 11, 2012). SunPower learned that several of its employees took confidential information shortly after departing the company and joining SolarCity. *See id.*, at *1. SunPower brought trade secrets and non-trade secrets claims, and SolarCity moved to dismiss the latter claims as displaced by CUTSA. *See id.*, at *2. The proprietary information underlying the non-trade secrets claims were, however, still confidential business information—even if it did not technically satisfy the definition of a trade secret. *See id.*, at *5. For that reason, the district court concluded that the claims fell within CUTSA's scope. *See id.* It was on those facts that the district court explained "[i]f the basis of the alleged property right is in essence that the information is that it is 'not . . . generally known to the public,' then the claim is sufficiently close to a trade secret claim that it should be superseded notwithstanding the fact that the information fails to meet the definition of a trade secret." *Id.* (internal citation omitted).

Understood in context, *SunPower* does not stand for the dramatic proposition that CUTSA displaces all causes of action that seek to protect private information. The better reading is that it and its progeny are limited to those cases in which plaintiffs bring claims for relief to protect intangible, commercially important information that, though not technically a trade secret, is functionally like a trade secret in its value and need for secrecy. This is not such a case. Plaintiffs are individuals, not businesses. The information here is valuable because of what it reveals (or could reveal) about them, not because of its ability to help them compete in the marketplace. It is thus not a trade secret nor, frankly, even remotely close to one.

Second, Google argues that the class did not produce common proof that they had a cognizable privacy interest in the data Google collected. This is largely a reformulation of arguments that have already been considered and rejected at other stages of this litigation. As was explained in the order denying Google's motion to decertify, Google's persistent, myopic focus on

United States District Court
Northern District of California

the content of the data it collected "rests on a constricted view of the Plaintiffs' theory of offensiveness." Dkt. 721, at 16. Though the nature of the data certainly mattered, its content cannot be disentangled from the fact that Google collected it after it told users that it would not do so. *See id.* ("Google's decision to collect sWAA-off data was highly offensive *because it misled users about its plan to do so*.") (emphasis in original). For this reason, Google's reliance on *Popa v. Microsoft Corporation*, 153 F.4th 784 (9th Cir. 2025), is unavailing. In that case, the plaintiffs' claims relied solely on the nature of the data collected. *See id.* at 786–87. There was no suggestion that Microsoft misled its users as Google did here.

Google's rejoinder, it appears, is that the manner in which the data was collected could not have been offensive because its privacy disclosures unambiguously disclosed what would happen if the sWAA button was turned off. Perhaps the jury could have adopted that reading of Google's disclosures, but it evidently did not. That conclusion was fully supported by the evidentiary record. *See* PX-002, at 20 (Google-commissioned survey in which participants revealed expectation that "turning off [the sWAA] toggle [would] stop their activity from being saved"); PX-003, at 1 (Google employees acknowledging that Google's disclosures gave users "a false sense of security that their data is not being stored at Google, when it fact it is" and referring to those disclosures as "very deceptive"); Tr., at 810:18–811:2 (Anibal Rodriguez expressing confusion as to "why [Google] would use th[e] term [privacy control" when, in fact, he had "no control" over what was being collected). Google can poke holes in all that evidence, but the decision to credit it or not is the province of the jury. Google took a shot at trial, and it lost.

Nor does *Hammerling v. Google, LLC*, a nonbinding memorandum disposition from the Ninth Circuit, require reading the privacy disclosures in the way Google urges. In that case, the panel affirmed the dismissal of privacy claims related to Google's collection of data about user's activity on third-party sites and apps. *See* 2024 WL 937247, at *1 (9th Cir. Mar. 5, 2024) (unpublished). The salient difference between *Hammerling* and this case, unexplored in Google's briefing, is that the plaintiffs there did not attempt to stop Google's collection of its data. Said otherwise, there was nothing analogous to the sWAA-off button. Therefore, it is of no value in

assessing whether Google's data collection practices were consistent with the totality of the representations it made to the class.

Finally, Google contends that, regardless of whether there was common evidence of the objective offensiveness of the data collection, there was no common evidence showing each class member *subjectively* was offended by the data collection. As an initial matter, it does not appear California law requires Plaintiffs to prove a subjective expectation of privacy. *See Opperman v. Path, Inc.*, 2016 WL 3844326, at *11 (N.D. Cal. July 15, 2016) (explaining that "California law does not require Plaintiffs to prove subjective expectation" and that "the common law tort of 'intrusion upon seclusion' requires: '(1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a *reasonable person.*'" (quoting *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998) (emphasis added), *as modified on denial of reh'g* (July 29, 1998))). Likely for that reason, Google did not request a jury instruction on subjective expectation.

Even if some common showing of a subjective expectation of privacy was required, Plaintiffs did all that was required. They defined the class to include only those individuals that actively turned the sWAA toggle off, thereby circumscribing the class to individuals who communicated to Google a desire not to have their anonymous data collected. That is sufficient to establish a classwide subjective expectation of privacy.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for a new trial as to the CDAFA claim and Google's renewed motion for judgment as a matter of law as to the privacy claims are denied.

**IT IS SO ORDERED**.

Dated: August 28, 2026

RICHARD SEEBORG
United States District Judge