UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANIBAL RODRIGUEZ, et al.,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No. 20-cv-04688-RS

**ORDER GRANTING ABSENT CLASS MEMBER MAYES'S MOTION FOR RECONSIDERATION AND DENYING MOTIONS FOR RELIEF OR LATE EXCLUSION FROM CLASS JUDGMENT**

Absent Class Member Michael Mayes originally moved on June 30, 2026, for relief from the judgment and enlargement of the time to opt out—in effect, seeking late exclusion from the class—in this case under FRCP Rule 60(b)(1) and 6(b)(1)(B). Dkt. 880. His motion, along with several others, was denied on August 20, 2026. Dkt 1002. The basis for that order was twofold: (1) the deadline to opt out of the class had expired on February 20, 2025, some 14 months before Mr. Mayes's motion; and (2) Mr. Mayes had made no showing that the notice provided to class members was inadequate under Rule 23(c)(2)(B) or the Due Process Clause of the United States Constitution. *Id.* As such, it was immaterial whether absent class members had received actual notice of the class certification and the status of the case prior to the deadline to opt out.

Mr. Mayes now moves for reconsideration of that order, arguing that even if notice was adequate, that does not end the inquiry, and he is still entitled to adjudication of his motions under the proper, discretionary standard governing late exclusions in cases of "surprise, inadvertence,

United States District Court
Northern District of California

and/or excusable neglect." Dkt. 1018. Although Mr. Mayes is correct on this point, further consideration under his desired standard yields the same result: He is not entitled to relief from judgment or enlargement of the time to opt out of the class. For the reasons explained more fully below, his motion for reconsideration is granted, but his underlying motions for relief are denied.

## I. DISCUSSION

A. Rule 59 and the Proper Standard of Review for Mr. Mayes's Motions

Mr. Mayes argues that his claims must be adjudicated under the standard articulated in *Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994). Mr. Mayes is correct that his claims merit more fulsome analysis that accounts for the *Silber* factors. Moreover, he is correct that his initial Rule 60(b) motion was timely, because it was made well within the deadline of one year after final judgment issued. As such, his Rule 59 motion for reconsideration is granted.

As an aside, it bears noting that Mr. Mayes's Rule 6(b) motion stretches the bounds of what can be considered a mere "enlargement" of the opt out period. It is true, as Mayes argues, that Rule 6(b)'s purpose is to grant relief after deadlines have passed. However, the deadline to opt out was not the only thing that had passed in this case. Mayes did not file his motion until after *final judgment* issued. This distinguishes his case from those on which he relies—*Silber, In re Volkswagen*, and *Ridgeway v. Walmart*—because in those cases the class members sought to opt out after the deadline but, crucially, before the actual entry of judgment or final approval of the settlement. *See In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 895 F.3d 597, 618-19 (9th Cir. 2018), *Ridgeway v. Wal-Mart Stores, Inc.*, No. 08-cv-05221-SI, 2016 WL 4529430, at *3-4 (N.D. Cal. August 30, 2016). It is unlikely that this rule was intended to give courts discretion to extend an opt-out period indefinitely, otherwise there could be no finality to any class settlement or verdict. Nor does Mr. Mayes point to any examples of courts extending an opt-out period past the date of final judgment. As such, it may be proper to deny his motion on the grounds that relief under Rule 6(b) is no longer available.

However, deciding that legal issue is unnecessary. Assuming without deciding that Rule 6(b) relief is available even after final judgment, such relief is not warranted here because Mr.

United States District Court
Northern District of California

Mayes has not shown excusable neglect. The analysis below examines the factors identified in *Silber* and *Bateman* as applied to his situation. Based on that evaluation, Mr. Mayes's motions under Rules 6(b)(1)(B) and 60(b) are denied.

B. Applying the *Silber* Factors

Courts evaluating excusable neglect apply an equitable test from *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993). *Silber* applies that test specifically to the context of late opt outs from class actions and directs courts to consider the following questions: "the degree of compliance with the best practicable notice procedures; when notice was actually received and if not timely received, why not; what caused the delay, and whose responsibility was it; how quickly the belated opt out request was made once notice was received; how many class members want to opt out; and whether allowing a belated opt out would affect either the settlement or finality of the judgment." Courts may also consider "the danger of prejudice to the opposing party" and "whether the movant acted in good faith." *Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1223-24 (9th Cir. 2000) (citing *Pioneer*, 507 U.S. at 395).

*1. Notice*

The first two factors from *Silber* deal with notice, asking courts to evaluate the (1) "[d]egree of compliance with best practicable notice procedures" and (2) "when notice was actually received and if not timely received, why not." *Silber*, 18 F.3d at 1455.

As previously explained, *see e.g.,* Dkt. 405, Class Counsel here complied with the best practicable notice procedures. First, the form of the notice complied with the requirements of Rule 23 and Due Process, clearly and concisely stating "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members." *Id.* (citing Fed. R. Civ. P. 23(c)(2)(B)). Likewise, the manner of notice was "the best notice that is practicable under the circumstances," including direct emails to more than 341 million affected accounts, a media plan that included digital and social

United States District Court
Northern District of California

media notice, and sponsored internet search listings. *See Dkt. 1003, Dkt. 395-3*. Taken together, this plan reflected a high degree of compliance with best practicable notice procedures, weighing against finding excusable neglect.

Mr. Mayes's dispute focuses more on the factor (2), which asks "when notice was actually received." Mr. Mayes's argument is premised on the claim that he did not actually receive notice until he read an email about Class Counsel's fee application on June 20, 2026. Although that email indicated he had originally been notified about the lawsuit by email in fall 2024, Mr. Mayes says he does not remember that email. However, failure to read one's email cannot be sufficient grounds for relief from a class opt out deadline. Not only is such a claim difficult for a court to verify, but it also runs counter to the entire inquiry about adequate notice, which focuses on factors within the control of Class Counsel and the notice administrator they employ.

Mayes points to *Ridgeway v. Wal-Mart*, where one class member was allowed to opt out late after testifying that he "didn't read any of the mail that came … I just pretty much trashed it, to be honest with you. So I didn't realize there was an opt out or what have you." *Ridgeway*, 2016 WL 4529430, at *3. However, two key differences distinguish this case. First, the class member there sought to opt out before any settlement or trial. Second, in *Ridgeway*, it was the defendant who sought to facilitate his exclusion—thus eliminating *any* concerns about prejudice and tilting the equitable scales in favor of allowing the late opt out.

To be sure, this case would be an easier one if Mr. Mayes had read and then disregarded the email, akin to *In re Volkswagen*. Nonetheless, his claims not to have seen or read the email still cannot overcome the fact that he received adequate and timely notice. Once the email was delivered, there was nothing more that Epiq—the notice administrator— could have done to ensure Mr. Mayes read it. How he managed his inbox was something squarely "within the reasonable control of the movant." *Pioneer*, 507 U.S. at 395.

Even if "actual receipt" is considered to have taken place on June 20, 2026, making it not timely, the chief reason for the late notice was Mr. Mayes's failure to check his email, rather than any neglect by class counsel or the notice administrator. The fact that Mr. Mayes read and

United States District Court
Northern District of California

responded to the notice in June 2026—delivered via the same mechanism as the earlier notice—only confirms that earlier notice was adequate, and that any delay was not the result of failed delivery or neglect on the part of Class Counsel or Epiq.

*2. Delay After Notice*

The next two *Silber* factors ask (3) "[w]hat caused the delay, and whose responsibility was it," as well as (4) "how quickly the belated opt out request was made once notice was received." *Silber*, 18 F.3d at 1455.

The analysis of factor (3) effectively merges with that of factors (1) and (2), because Mr. Mayes's sole explanation for the delay is that he did not know about the lawsuit until June 2026. However, as established above, that delay is ultimately still his responsibility because notice was adequate.

On factor (4), there is no doubt that Mr. Mayes acted quickly and diligently once he became aware of the lawsuit, as he sought to file his motion via ECF within three days of seeing the June 2026 email. The delays he encountered after that point, deriving from the need to serve counsel and file his motion on paper, certainly do not count against him. However, even his quick action here was too late, because *Silber* tells courts to evaluate speed relative to when "notice was received." As established above, notice was effectively received in 2024, even if Mr. Mayes does not recall seeing or reading the earlier email. Relative to that starting point, a response in 2026 was not quick at all. Even crediting Mr. Mayes's definition of when he received notice, his quick action is not sufficient on its own to merit relief.

In sum, the real delay was from the original opt-out deadline in 2025 to Mr. Mayes's eventual motion for exclusion in summer 2026, and the cause of that delay was his failure to check his Gmail inbox. As noted above, Mr. Mayes is correct that his case is distinguishable from others, like *In re Volkswagen*, where the party seeking to opt out concededly had learned about the case during the opt-out period and simply failed to take any action before the deadline. 895 F.3d at 618-19. However, for purposes of this motion, that is a distinction without a real difference, because Mr. Mayes had adequate notice but did not take any action until after final judgment had issued

United States District Court
Northern District of California

more than a year later.

*3. Danger of Prejudice to the Opposing Party*

Channeling the *Pioneer* factor evaluating prejudice to the opposing party, *Silber* next asks (5) "[h]ow many class members want to opt out" and (6) "whether allowing a belated opt out would affect either the settlement or finality of the judgment." *Silber*, 18 F.3d at 1455. Factor (5), the number of opt outs at issue, favors Mr. Mayes's motion, because he seeks late exclusion only for himself.

The more important question arises under factor (6): whether this isolated opt out would affect finality of the judgment or otherwise create a danger of prejudice for Google, the opposing party. Mayes argues any harm to Google is minimal because he does not seek to otherwise disturb the judgment, and no payments have been made because the judgment is being appealed to the Ninth Circuit. Another point likely in his favor is that because this is not a settlement, but rather a jury verdict, there is no risk here of an opt out upsetting the parties' bargained-for expectations.

Nonetheless, there are serious risks to finality here, undermining a fundamental principle of federal adjudication. To start, Mr. Mayes's reason for opting out is that he seeks to preserve the right to bring his own individual suit, suggesting that an opt out would likely subject Google to additional claims that it had every reason to think—at least since the opt-out deadline in March 2025—were included in the class action. More broadly, allowing Mr. Mayes to opt out may encourage others to do so, whether because the jury verdict was smaller than they hoped, Class Counsel's fee award was larger than they wanted, or for some other reason. Allowing such opt outs based on claims that class members simply did not see the notice emails—even if this is universally true—would seriously undermine finality in all class actions.

Those risks are only multiplied for late exclusion requests granted not just after the opt-out deadline, but also after final judgment. In that scenario, class members have basically perfect information about the outcome and can choose whether they want to be bound to the verdict or not. Such a system would invoke the same one-way intervention concerns that motivated the development of Rule 23(c)(2), requiring definition of the class *before* an adjudication of liability

to avoid "giving collateral estoppel effect to the judgment of liability in a case where the estoppel was not mutual." *Schwarzchild v. Tse*, 69 F.3d 293, 295 (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 759 (3rd Cir. 1974) (en banc)). The fact that Google has appealed the order is no comfort, and in fact may only increase the risk of prejudice. If opt outs like Mr. Mayes's are allowed on the basis that no money is yet available, individual class members would be incentivized to read the tea leaves of the appeal and, if it looks like it might go poorly for the class, to try to opt out and restore their individual rights to sue Google again.

In short, there is great risk of prejudice to the opposing party here, weighing against finding excusable neglect.

*4. Movant's Good Faith*

Finally, courts may consider "[w]hether the movant acted in good faith." *Bateman*, 231 F.3d at 1223-24. There is no reason to doubt that Mr. Mayes acted in good faith and with diligence in pursuing an opt-out once he became aware of the lawsuit. However, his good faith alone is not sufficient grounds to grant the relief he seeks. *A.B. v. Regents of Univ. of Cal.*, No. 2:20-cv-09555-RGK, 2021 WL 5194639, at *3 (C.D. Cal. October 3, 2021) ("While each Movant may have acted in good faith, their good faith alone does not make their neglect excusable."). That is especially true where, as here, nearly all the other factors weigh against finding excusable neglect.

*5. Summary*

Evaluating the above factors together, the facts do not support finding excusable neglect here. Notice was adequate and timely, delivered in 2024. Whether Mr. Mayes actually read and understood that notice was, from that time, something squarely within his control, so he is solely responsible for any delay from that point. Moreover, allowing him to opt out now would seriously endanger the finality of the judgment, a risk only heightened by Google's appeal of the verdict. Although he acted promptly and in good faith starting in June, that diligence is not enough to merit relief in light of the extreme delay and the high danger of prejudice to the opposing party.

## II. CONCLUSION

For the foregoing reasons, Mr. Mayes's motion for reconsideration under Rule 59 is

granted, but his motions for relief from the judgment under Rule 60(b) and for enlargement of the period to opt out under 6(b)(1)(B) are denied.

**IT IS SO ORDERED**.

Dated: October 28, 2026

RICHARD SEEBORG
United States District Judge

United States District Court
Northern District of California